**VIA ECF**

The Honorable Arun Subramanian
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:** *United States et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS-SLC

Dear Judge Subramanian:

      During the initial pretrial conference on June 27, 2024, Your Honor invited Defendants to file "a letter to the Court identifying the issues as to which [Defendants] would contemplate moving to dismiss" Plaintiffs' Complaint. June 27, 2024 Hr'g Tr. 31:9–32:11. This letter responds to that invitation. First, Plaintiffs' claim that Defendants have created an "unlawful tying arrangement concerning the use of large amphitheaters and artist promotions markets in violation of Sherman Act § 1," Compl. ¶ 81, should be dismissed because in substance it is tantamount to a claim that Defendants have a duty to deal with rival concert promoters, which is an antitrust theory foreclosed by Supreme Court precedent. Second, each of the state-law claims is deficient and should be dismissed for multiple reasons, including failure to adequately allege a prima facie case under the relevant statutes and because the claims are time-barred.

**I.     PLAINTIFFS' TYING CLAIM FAILS**

      The thrust of Plaintiffs' tying claim is that Live Nation allegedly ties access to its amphitheaters (the tying product) to the provision of Live Nation's concert promotion services (the tied product). *See* Compl. ¶ 228. Tying is a distinct antitrust offense requiring a specific type of conditional dealing. *See Kaufman v. Time Warner,* 836 F.3d 137, 141 (2d Cir. 2016). Yet, for purposes of this "amphitheater-to-concert-promotions" tying claim, the Complaint muddles the roles of the various participants in the live entertainment space. There are suggestions that artists *themselves* procure amphitheater access, *see, e.g.*, Compl. ¶ 19 (figure), which they do not. Other allegations correctly state that while artists ultimately choose the venues they play, *id.* ¶ 25, a different set of actors—concert promoters—"arrange and coordinate artist performances at venues," *id.* ¶ 178. In other words, artists contract with promoters, and promoters contract with venues.

      The allegation that promoters themselves are the ones who deal with venues is what drives the logic of the "tying" claim. According to the Complaint, Live Nation allegedly "exclude[s] rival promoters" by not allowing them to book shows at its amphitheaters. *Id.* ¶¶ 111–112. In other words, while artists may wish to direct their promoter of choice to contract with Live Nation-owned amphitheaters, Live Nation refuses to rent its venues to rival promoters. *Id.* ¶¶ 111, 191.

      These allegations describe a refusal to deal. Live Nation refuses to rent its amphitheaters to other promoters, thereby securing a competitive advantage in the promotions market. The conduct is therefore subject to the principle that "as a general matter, the Sherman Act does not restrict the long recognized right of a [defendant] engaged in an entirely private business, freely to

1

exercise his own independent discretion as to parties with whom he will deal." *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (quotation omitted). "Even a monopolist generally has no duty to share . . . its intellectual or physical property with a rival." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013). Accordingly, Live Nation has no obligation "to extend a helping hand to new entrants [or] help [rivals] survive or expand." *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986) (citation omitted). The unimpeachable freedom to refuse to deal with rivals (in all but the rarest circumstances, which are not even arguably present in this case) rests on bedrock antitrust principles: "[c]ompelling . . . firms to share the source of their advantage is in some tension with the underlying purpose of antitrust law, since it may lessen the incentive for the [defendant], the rival, or both to invest in those economically beneficial facilities." *Trinko*, 540 U.S. at 407–08.

Nothing about that analysis changes just because Plaintiffs have challenged Live Nation's refusal to deal with rival promoters in the guise of a tying claim, rather than a Section 2 claim explicitly framed as an unlawful refusal to deal. This effort is frequently made, but courts routinely reject it when, in substance, the plaintiff is asking the defendant to be forced to deal with its rivals. *See, e.g.*, *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-CV-2274, 2021 WL 1227593, at *8 (M.D. Fla. Mar. 8, 2021) ("tying" claim which would require defendant to deal with its rivals was "in essence a refusal to deal claim"). In fact, one court rejected this tactic in the context of a claim essentially indistinguishable from the one asserted here—a tying claim, against Live Nation, for preventing a rival concert promoter from booking shows at Live Nation's amphitheaters. *See It's My Party, Inc. v. Live Nation, Inc.,* 88 F. Supp. 3d 475, 501 (D. Md. 2015) ("Plaintiffs initially characterize this as a tying claim—and Live Nation argues it is actually a claim for refusal to deal. I will consider it as a refusal to deal claim."), *aff'd*, 811 F.3d 676 (4th Cir. 2016).

## II.   THE STATE-LAW CLAIMS FAIL

Of the 30 State Plaintiffs (including the District of Columbia) that joined the Complaint, 22 of them assert separate claims under their own state laws. These claims are threadbare and conclusory: they merely incorporate by reference *all* of the preceding allegations in the Complaint, cite the state laws Defendants supposedly violated, and request relief. *See* Compl. ¶¶ 249–370. The State Plaintiffs do not allege the elements of each state-law claim, and they do not say what conduct allegedly violates the state laws in question. *See, e.g.*, *id.* ¶ 280 (alleging without detail that "Defendants' acts alleged herein violate Section 3 of the Illinois Antitrust Act, 740 ILCS 10/3(1)-(4)"). And the State Plaintiffs that seek damages on behalf of their citizens do not even state what those alleged damages are or why the State Plaintiffs are entitled to them. *See id.* ¶¶ 249–370.

The present articulation of the state-law claims is deficient as a matter of law. First, none of these claims meets the bare minimum of Rule 8's requirements: "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Here, the State Plaintiffs' allegations fall short of even the level of detail the Supreme Court rejected as insufficient in *Twombly* and *Iqbal*. At least in those cases, the plaintiffs provided "[t]hreadbare recitals of the elements of [their] cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the State Plaintiffs do

not even do that, omitting the elements of their causes of action altogether—to say nothing of their failure to allege what facts form the bases of their claims. *See* Compl. ¶¶ 249–370; *cf. Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999) (such "shotgun pleading" demonstrates "utter disrespect for Rule 8"), *aff'd*, 234 F.3d 1261 (2d Cir. 2000).

Additionally, the State Plaintiffs that assert claims for damages in their *parens patriae* capacities do not adequately plead their entitlement to that remedy. By definition, *parens patriae* claims must be premised on underlying harm to the state's citizens. *See Parens Patriae*, Black's Law Dictionary (12th ed. 2024) (defining *parens patriae* as a "doctrine by which a government has standing to prosecute a lawsuit on behalf of [its] citizen[s]"). Such claims, therefore, require sufficient allegations to plausibly conclude that citizens were harmed. *See, e.g.*, Ark. Code § 4-75-212(b) (*parens patriae* action requires proof of "injury, directly or indirectly sustained by" "natural persons residing in this state" "because of any violation" of the law). But the State Plaintiffs do not allege any details about the injuries or harm incurred—including, for example, what kind of harm was suffered, who suffered that harm, and whether the injured parties were "natural persons residing in [the Plaintiff's] state" (as multiple statutes require). *See, e.g.,* Compl. ¶¶ 249–52. And the State Plaintiffs' initial disclosures—which merely clarify that all State Plaintiffs seeking monetary damages from Defendants in this action do so in their *parens patriae* capacities, without providing any detail about what those alleged damages are or how they occurred—do nothing to mitigate their pleading failures. The State Plaintiffs' *parens patriae* claims fail as a matter of law.[1]

Finally, the state-law claims fail for a separate reason: they are time-barred, at least to some degree. Although the precise conduct on which the State Plaintiffs base their claims is impossible to know (given the pleading failures described above), much of the conduct alleged in the Complaint dates back years. For example, the Complaint discusses the Ticketmaster merger in 2010, Compl. ¶¶ 65–66, the acquisition of promoters in 2016 and 2017, *id.* ¶¶ 120–33, and correspondence with Oak View Group in 2016, *id.* ¶ 73. Under every State Plaintiffs' relevant statute of limitations—the longest of which is six years—these claims are untimely. *See* Appendix A. Furthermore, the doctrine of laches "protect[s] defendants against unreasonable, prejudicial delay in commencing suit." *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019). The prejudice of allowing State Plaintiffs' claims to proceed after a years-long delay is obvious, especially given that Plaintiffs seek the divestiture of Ticketmaster—a merger that was completed a decade-and-a-half ago. *See New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 35 (D.D.C. 2021) ("[Divestiture], if ordered well after the merger has closed, will usually prejudice the defendant."), *aff'd*, 66 F.4th 288 (D.C. Cir. 2023). The Court should dismiss the state-law claims to the extent that they are untimely on their face.

---

[1] Some states' antitrust laws also require a plaintiff to specifically plead that the effects of the alleged anticompetitive conduct were felt in their state. *See, e.g.*, Minn. Stat. § 325D.54; Or. Rev. Stat. § 646.715(2). These State Plaintiffs do not allege any intrastate effects, and their claims should be dismissed. *See, e.g.*, *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 242–44 (W.D.N.Y. 2021) (dismissing state-law claims for failure to allege intrastate effects).

Dated: July 17, 2024

Respectfully submitted,

| | |
|---|---|
| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |
| *[signature]* | *[signature]* |
| Alfred C. Pfeiffer (admitted *pro hac vice*)<br>  *Co-Lead Trial Counsel*<br>Timothy L. O'Mara (admitted *pro hac vice*)<br>Jennifer L. Giordano<br>Andrew M. Gass (admitted *pro hac vice*)<br>Kelly S. Fayne (admitted *pro hac vice*)<br>Lindsey S. Champlin (admitted *pro hac vice*)<br>Robin L. Gushman (admitted *pro hac vice*) | David R. Marriott<br>  *Co-Lead Trial Counsel*<br>Lauren A. Moskowitz<br>Jesse M. Weiss<br>Nicole M. Peles |
| 505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>(415) 391-0600 | Two Manhattan West<br>375 Ninth Avenue<br>New York, NY 10001<br>(212) 474-1000 |
| 555 11th Street, NW, Suite 1000<br>Washington, D.C. 20004<br>(202) 637-2200 | dmarriott@cravath.com<br>lmoskowitz@cravath.com<br>jweiss@cravath.com<br>npeles@cravath.com |
| Al.Pfeiffer@lw.com<br>Tim.O'Mara@lw.com<br>Jennifer.Giordano@lw.com<br>Andrew.Gass@lw.com<br>Kelly.Fayne@lw.com<br>Lindsey.Champlin@lw.com<br>Robin.Gushman@lw.com | *Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* |
| *Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* | |

cc:     All Counsel of Record (via ECF)