**VIA ECF**

The Honorable Arun Subramanian
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

*Re:    United States et al. v. Live Nation Entertainment, Inc. et al., No. 1:24-cv-03973-AS*
       **Defendants' Letter-Motion for Entry of Protective Order**

Dear Judge Subramanian:

Live Nation Entertainment, Inc. and Ticketmaster L.L.C. ("Defendants") respectfully submit this letter in support of their proposed protective order, a copy of which is attached hereto as Exhibit A. The parties have conferred multiple times,[1] including with lead counsel most recently on July 11, and reached agreement on all aspects of a proposed order except one: paragraph 6(c), which allows two designated in-house counsel of Defendants to access confidential information produced in the case, subject to specified limitations. A redline comparison of Defendants' proposed protective order and the latest draft of Plaintiffs' proposal that Defendants received is attached as Exhibit B. A comparison of Defendants' proposal and the Court's Model Protective Order is attached as Exhibit C and has been emailed to Chambers.

Defendants recognize that it is customary and appropriate to ensure that non-party, competitively sensitive information is not exposed to individuals who, by virtue of their role, could use it to influence their competitive decision-making, or in commercial negotiations with the non-parties who produced it. At the same time, all parties agree that it is appropriate for Defendants to designate in-house counsel managing this litigation who may have access to the complete record—with reasonable limits on the roles that such counsel may serve at Defendants. Plaintiffs, however, are not proposing reasonable limits. To the contrary, they are proposing terms that would deny Live Nation the assistance of its long-time antitrust counsel, Daniel Wall, who was formerly an antitrust litigation partner at Latham & Watkins LLP and since February 2023 has served as Live Nation's Executive Vice President for Corporate and Regulatory Affairs.

Defendants' proposal makes clear that Mr. Wall and Kimberly Tobias, Defendants' Senior Vice President of Litigation, may fully participate in the defense of this case, subject to unambiguous parameters on the designated in-house counsel role and providing full protection to non-party confidential information. Plaintiffs' proposal, by contrast, presents Defendants with a Hobson's

---

[1] Consistent with Rule 5 of the Court's Individual Practices: (1) the parties met and conferred via videoconference on June 28 at 3 pm ET, July 2 at 1:30 pm ET, July 8 at 1:30 pm ET, July 9 at 12 pm ET, and July 11 at 4:30 pm ET; (2) each conference lasted between 15 to 45 minutes; (3) Nicole Peles and Robin Gushman were the principal participants for Defendants; Chinita Sinkler and Alex Cohen were the principal participants for Plaintiffs; lead counsel for Plaintiffs and Defendants participated in the meet and confers on July 8, July 9 and July 11; (4) on July 17, the parties agreed that they had reached an impasse and agreed to file simultaneous letter-motions.

choice: (a) have inside counsel continue to represent Defendants in this case, but not work on other antitrust/legal matters, or (b) have them continue to provide legal counsel to Defendants on other antitrust/legal matters, but not work on this case. That is unfair and unnecessary. Accordingly, Defendants respectfully request that the Court adopt Defendants' proposal.

To defend against Plaintiffs' allegations, Defendants require the assistance of in-house legal advisors who know the businesses well. Plaintiffs allege sprawling antitrust violations and seek to break up the company. Given the definition of "confidential", it is likely that a significant portion of the non-party record will be designated confidential—it usually is, and the materials designated confidential are usually the most important. It will therefore not be possible for in-house counsel to meaningfully participate in the defense of this case without access to confidential information.[2] *See, e.g.*, *United States v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 21, 24 (D.D.C. 2001) (granting in-house counsel access to confidential information reasoning that denying such access "to the lawyers most familiar with [defendants'] business and the industry in which they compete and who will have a much deeper and complete understanding of the documents . . . is to make [defendants] fight with one hand behind their backs").

Further, this is not a typical "in-house" counsel situation. Mr. Wall was Defendants' lead outside antitrust counsel from 2009 to 2023, during which time he worked on the Live Nation/Ticketmaster merger, the original Consent Decree, and the subsequent enforcement action and Amended Consent Decree. He retired from Latham and took an in-house position at Live Nation in 2023, but he continues to provide legal counsel to Defendants on antitrust and competition-related issues in the exact same manner that he has for over 15 years. The only distinctions between Mr. Wall's current role and his long-term outside counsel role for Defendants are that: (a) Mr. Wall has not appeared as counsel in this case, and (b) Mr. Wall now also has non-commercial roles in public affairs, investor relations and legislative/regulatory affairs. Nevertheless, Mr. Wall is one of the principal attorneys defending this case. Mr. Wall has been deeply involved in the investigations by Plaintiffs that led to this litigation and, in fact, spoke for Live Nation at Department of Justice staff and front office meetings, and several meetings with State Attorney General Offices. He is the primary in-house counsel, advising the company on all legal issues relating to this litigation, and he simultaneously continues to provide the full spectrum of antitrust counsel to Defendants across their business, including all active litigation, threatened or possible litigation risks and regulatory affairs.

Mr. Wall has no operational or business responsibilities relating to Live Nation's business outside of his role as a legal advisor. To the limited extent he is ever involved in "competitive decision-making", his role is to address legal risks concerning a proposed course of action—the same role he had as outside counsel. Mr. Wall also has responsibility for public affairs, investor relations and regulatory affairs, neither of which involve competitive decision-making. To be precise, Mr. Wall is called upon to communicate with investors and/or the public about legal issues, and he acts as a company representative with respect to legislative developments and regulatory affairs. Ms. Tobias likewise has no operational or business responsibilities. As Senior Vice President of

---

[2] For the same reason, Plaintiffs' last-minute proposal to include an "outside counsel only" confidentiality tier is unworkable. Non-parties are likely to designate a significant portion of their materials with the highest level of confidentiality.

Litigation for Live Nation, she is responsible for managing Defendants' litigations, advising the company on legal issues and coordinating with outside counsel.

Plaintiffs have not identified any real concerns about Mr. Wall's and Ms. Tobias's access to the confidential record while they continue to serve in these roles, and there are none. The objection, in other words, is not grounded in facts about this case or in Mr. Wall's and Ms. Tobias's work.

Defendants' proposal strikes the right balance. It allows Mr. Wall and Ms. Tobias to access confidential materials, but it also provides that they cannot be involved in competitive decision-making other than in a legal capacity, and that they will not participate in negotiations of commercial agreements with any non-party whose confidential information is produced in this action during its pendency and for one year thereafter without the non-party's written consent.[3] It clarifies that Mr. Wall's public affairs, investor relations and regulatory affairs responsibilities, which might be characterized as "non-legal" or "business" (depending on how one defines those terms) but which plainly are not roles that involve "competitive decision-making" or raise concerns, are not disqualifying. It also requires Mr. Wall and Ms. Tobias to sign confidentiality agreements, affirming they will abide by the terms of the protective order—including the express requirement that the information not be used outside this case or disclosed to anyone not allowed to see it—and acknowledging that any failure to do so will result in civil penalties for contempt of Court. Mr. Wall and Ms. Tobias are litigation counsel in good standing and officers of the court. Both have been bound by numerous protective orders and never been accused of violating those orders. Their access to confidential information in no way puts such information at risk.

By contrast, Plaintiffs' proposal is unfair and unworkable. Every proposal advanced by Plaintiffs during the meet and confer process had a "poison pill" of one kind or another, *i.e.,* something that prevented Mr. Wall, in particular, from accessing confidential information. The latest proposes that designated in-house counsel be barred from providing legal advice on competitive decisions any time that advice may touch on a third party that produced confidential information in this action. Yet, as Plaintiffs surely know, the record in this case will encompass materials from *every one* of Defendants' competitors. That means, as a practical matter, that Mr. Wall would have to choose between accessing confidential information here and serving in his role as antitrust counsel to Defendants. Plaintiffs' proposal also lacks the well defined parameters in Defendants' proposal, creating unnecessary risk that, for example, Mr. Wall would be barred from access to the full record merely because he maintains a role in investor relations. That makes no sense, and is avoidable by adopting Defendants' well defined and wholly reasonable framework.

For the foregoing reasons, Defendants respectfully request entry of their proposed protective order.

---

[3] Plaintiffs proposed this type of restriction, and Defendants proposed language similar to that which was used in *United States v. American Airlines Group, Inc. See* Stipulated Protective Order ¶ 10(j), No. 1:21-cv-11558-LTS (D. Mass. Apr. 20, 2022), ECF No. 99.

Dated: July 19, 2024

Respectfully submitted,

| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|
| */s/ Alfred C. Pfeiffer* | */s/ David R. Marriott* |

Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

David R. Marriott
   *Co-Lead Trial Counsel*
Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

dmarriott@cravath.com
lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

cc:    All Counsel of Record (via ECF)