UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *et al.*,

      *Plaintiffs,*

v.

LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER L.L.C.

      *Defendants.*

Case No. 1:24-cv-03973 (AS)(SLC)
[rel. 1:24-cv-03994 and 1:24-cv-04106]

**DECLARATION OF DANIEL M. WALL IN SUPPORT OF
DEFENDANTS' LETTER-MOTION FOR ENTRY OF PROTECTIVE ORDER**

I, DANIEL M. WALL, pursuant 28 U.S.C. § 1746, declare as follows:

1. I am the Executive Vice President of Corporate and Regulatory Affairs for Live Nation Entertainment, Inc., a Defendant in the above-entitled action, and the parent corporation of Defendant Ticketmaster L.L.C. (together, "Live Nation"). I make this Declaration in support of Defendants' Letter-Motion for Entry of Protective Order. The facts set forth herein are based on my personal knowledge; if called upon to do so, I can and will competently testify to these facts.

2. I am a member in good standing of the bar of the State of California.

3. I have practiced antitrust law for over 40 years. After law school, I joined the Department of Justice, Antitrust Division, where I was assigned to the trial team in *U.S. v. AT&T*, the historic monopolization action that led to the break-up of the Bell System. After a short period in the Washington D.C. office of Skadden, Arps, Slate, Meagher & Flom LLP, I returned to San Francisco in 1984 as an associate and later partner at McCutchen, Doyle Brown & Enersen LLP.

In 1999, I moved to Latham & Watkins LLP ("Latham").  I was a partner at Latham for twenty-four years, until I retired from the firm in January 2023.

4.  From 2009 until I retired from Latham, I was a key advisor and primary outside counsel to Live Nation.  My representation of Live Nation began in 2009, when I was the lead outside counsel advising the company on the merger of Live Nation, Inc. and Ticketmaster Entertainment, Inc.  From that point on, I was involved in all of Live Nation's antitrust-related matters (and many other legal matters unrelated to antitrust), including litigations, litigation risk, legislation assessment and counseling, regulatory compliance and investigations and general legal counseling issues.  In particular, I represented and advised Live Nation in connection with the Consent Decree and Amended Consent Decree entered in 2010 and 2020, respectively, including the Department of Justice investigation into Live Nation's compliance with the Consent Decree's behavioral terms.

5.  After retiring from Latham on January 31, 2023, I continued my relationship with Live Nation by joining the company (the next day) as Executive Vice President of Corporate and Regulatory Affairs.

6.  By that time, the Department of Justice investigation that led to this lawsuit had already begun.  My responsibilities at Live Nation therefore included virtually all of the same responsibilities that I had as Live Nation's outside counsel, both with respect to the investigation and antitrust matters more broadly.  This includes providing legal advice on regulatory and public affairs matters, all competition-related issues, and litigation risks related to competition and consumer protection issues.  With respect to the investigations that led to the filing of this litigation, I spoke for the company at many Department of Justice staff meetings, each of the front office meetings with the Department of Justice and several meetings with State Attorney General Offices

that occurred before the Complaint was filed.  I have not filed an appearance in this case, and I do not presently intend to appear as litigation counsel.  Short of that, however, I am a fully active, hands-on member of Live Nation's defense team, doing what I have always done for clients in similar circumstances.

7. I am also currently the primary in-house counsel advising the company on all issues relating to competition and antitrust litigation, generally.  Given the current environment, Live Nation is confronted daily with a broad spectrum of competition-related legal issues.  Consistent with my historical legal role of being lead antitrust counsel for Live Nation, and consistent with my role of leading the current litigation and on advising the company on the implications of this litigation on ongoing business matters, I provide counsel to Live Nation on these competition-related issues.

8. To be clear, I do not have operational or business responsibilities relating to Live Nation's business outside of my role as a legal advisor.  I report directly to Live Nation's CEO and President.  I am not a part of the Concerts or Ticketing Segments whose conduct is at issue.  I am not involved from a business or operational perspective in decision-making relating to competitors, potential competitors, customers or distribution partners—including decisions regarding contracts; marketing; pricing; product or service development or design; product or service offerings; research and development; mergers and acquisitions; or licensing, acquisition or enforcement of intellectual property rights.  My only involvement in competition-related issues is the rendering of legal advice as to litigation, litigation risk, regulatory compliance and risk, and intellectual property licensing issues—a role nearly identical to that I filled as primary outside counsel to Live Nation while I was at Latham.  The principal difference between my work today and my work at Latham is that I now also have responsibilities in public affairs, investor relations and regulatory

3

affairs. In short, I act as one of the company's representatives with the news media, the investment community and a host of government entities. While those additional roles could be described as non-legal, they are obviously not operational or commercial, and do not involve competitive business decisions or strategy.

9. I have had access to confidential materials and been subject to protective orders in numerous other cases without issue. With respect to Live Nation in particular, I have been privy to confidential information under protective orders that I could not and did not share with the company. I will, of course, comply with any protective order entered in this case, using confidential information I am allowed to see solely to guide and prepare the defense of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 19th day of July, 2024.

_____
Daniel M. Wall