O7T6USAC                    Teleconference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA, et
3  al.,

4              Plaintiffs,

5         v.                              24 CV 3973(AS)

6  LIVE NATION ENTERTAINMENT,
   INC., et al.,
7
               Defendants.
8  ------------------------------x
                                    New York, N.Y.
9                                   July 29, 2024
                                    1:00 p.m.
10 Before:

11              HON. ARUN SUBRAMANIAN,

12                                      District Judge

13         APPEARANCES (of speaking parties)

14 UNITED STATES DEPARTMENT OF JUSTICE
        Attorneys for Plaintiff United States of America
15 BY:  BONNY E. SWEENEY

16 KING & SPALDING LLP
        Attorneys for Plaintiffs United States of America
17 BY:  BRIAN WHITE

18 COHEN & GRESSER LLP
        Attorneys for Plaintiffs Maryland and Washington DC
19 BY:  RONALD F. WICK

20 CRAVATH SWAINE & MOORE LLP
        Attorneys for Defendants
21 BY:  DAVID R. MARRIOTT

22 HOGAN LOVELLS US LLP
        Attorneys for Intervenor Anschutz Entertainment Group,
23 BY:  JUSTIN BERNICK

24

25

O7T6USAC                        Teleconference

1        THE COURT:  Let's get started.

2        I have received the parties' proposed protective order

3   as well as submissions from some third parties — from SeatGeek,

4   AEG, ASM Global, and APE — just today.

5        Mr. White, are you on the line?

6        MR. WHITE:  I am, your Honor.  This is Brian White.

7        THE COURT:  Okay.  Can you tell me where we are in

8   discovery, just generally speaking?  I understood from the last

9   hearing we had that you are in possession of documents that

10  were turned over as part of the pre-complaint investigation.

11  And I take it those documents have not been turned over yet to

12  the defendants.  That's correct, right?

13       MR. WHITE:  That is correct, your Honor.  We will

14  produce them promptly upon issuance of the protective order.

15       THE COURT:  Is there any other discovery that's taken

16  place to date?  If you can just give me a high-level summary of

17  that.

18       MR. WHITE:  At a very high level, your Honor, we have

19  received requests for production from the defendants, and

20  that's the investigative file that will be produced after the

21  PO is entered.  We have also served requests for production.

22  We are expecting to get the responses to those very shortly.

23  That's party discovery.

24       And we expect that third-party subpoenas will start to

25  go out within the next -- well, early to mid August.

```
 1              THE COURT:  That's helpful.  They are going to be
 2      documents that you turn over from the pre-complaint
 3      investigation.  You are going to stamp them in accordance with
 4      the protective order, whatever is issued, and then produce
 5      those documents.
 6              There are also going to be subpoenas with respect to
 7      third parties, and the third parties, subject to any objections
 8      that they have, will be turning over documents, and they too
 9      will be submitting them in accordance with the protective
10      order.  Is all of that right?
11              MR. WHITE:  That's correct, your Honor.  I would just
12      add that there's a mechanism in the proposed protective order
13      that the parties sent for third parties, nonparties to
14      designate documents that are in the department's production as
15      confidential or highly confidential, as those are being
16      produced now.
17              So if they have already been designated as
18      confidential or highly confidential, they will go out in that
19      form, otherwise there's a period of time I think the nonparties
20      will have to make those kind of designations on what the
21      department already has.
22              THE COURT:  Okay.  Understood.
23              Mr. Marriott or Mr. Pfeiffer, anything to add to that?
24              MR. MARRIOTT:  No, your Honor.  I think all of that is
25      accurate.
```

O7T6USAC                         Teleconference

1          This is David Marriott.

2          THE COURT:  Okay.  So let me tell you what I'm

3     planning on doing, and I'm happy to hear from any of the third

4     parties that filed letters.  And I really do appreciate that

5     you filed those letters, notwithstanding the fact that the

6     Court had put in an order directing the parties to put in their

7     proposed order.  That's very helpful.  And there's never a

8     problem having more information.  Sometimes mistakes are made,

9     sometimes we overlook things and so I do appreciate the third

10    parties putting in that information.

11         What I'm planning on doing is taking the proposed

12    order from Thursday and taking Paragraph 7(c) which governs

13    highly confidential material, taking that out of Paragraph 7,

14    moving it in to replace what is now Paragraph 8(c).  So the end

15    result will be that highly confidential information is limited

16    to outside counsel.

17         Confidential information can go to in-house counsel

18    designated as the plaintiffs suggested initially.  And the only

19    addition would be the identification of those in-house counsel,

20    which several of the parties had asked for.  Now, to take a

21    step back, that's what we're -- we'd be doing right now.

22         Mr. Marriott, Mr. Pfeiffer, I understand that as

23    discovery actually moves forward and you receive documents,

24    there may come a time where there are certain things, certain

25    documents, deposition transcripts, briefs that are filed,

O7T6USAC                         Teleconference

1    attachments to briefs, certain key documents that you feel have

2    to be provided to Mr. Wall or Ms. Tobias.  And you can make

3    your case as to how that can happen.  You can go to the

4    plaintiffs, seek their approval, if they don't agree or there

5    are third parties that object and come to the Court and we can

6    resolve that.

7         But I think for present purposes, without knowing what

8    has been produced and what's going to be produced, I think that

9    makes the most sense.

10        Now, before I hear from the parties, if any of the

11   third parties who made submissions would like to be heard on

12   that proposal, I'm happy to hear you.  I think it answers all

13   the objections that were raised, but I'd like to hear if anyone

14   disagrees.  So I'll give you a second for anyone who wants to

15   chime in on that front.

16        MR. BERNICK:  Your Honor, this is Justin Bernick from

17   Hogan Lovells, counsel for AEG in this matter.  And we do

18   believe that addresses the concerns raised in our letter for

19   setting a default rule at this point in time in the case, and

20   that would address those concerns.

21        MR. WICK:  Your Honor, this is Ron Wick, counsel for

22   SeatGeek.  And we would echo Mr. Bernick's sentiments, that

23   those concerns are addressed.

24        THE COURT:  Mr. Marriott, I know you disagree with

25   that approach, so I'll give you a chance to respond.

O7T6USAC                          Teleconference

1              MR. MARRIOTT:   Thank you, your Honor.

2              Well, I do disagree with that approach.  I very much

3     do agree, however, with your Honor's approach in the July 23

4     order where you set out the notion of a two-tier protective

5     order.  I think that does strike the right balance between

6     protecting the competing interests of the third parties on the

7     one hand, and the interests that the defendants have in being

8     able to defend themselves on the other.

9              And the problem of course with what your Honor has

10    just laid out as an alternative to that is it effectively rules

11    everybody in-house for the moment that we've identified and who

12    is involved in this, out of bounds for sharing information.

13    Which really means we get no benefit in the kind of traditional

14    way that you would with a two-tiered order from the

15    participation of in-house counsel.

16             And for reasons we've laid out in our other papers,

17    your Honor, we think that the defendants need and benefit from

18    meaningful input from, in this case, Mr. Wall and Ms. Tobias.

19             They won't be able to do the kind of thing we need

20    most help from them doing without access to confidential

21    information because what we expect is going to happen,

22    your Honor, is that virtually all of the third-party

23    information is going to be designated either confidential or

24    highly confidential.  And without access to at least

25    confidential information, it's going to be very hard for them

O7T6USAC                        Teleconference

1    to do the job that they are accustomed to doing, and that we

2    think is valuable for the defendants to be able to have them

3    do.

4            It's not just an abstraction.  It's going to be very

5    difficult for them to provide meaningful impact, say, for

6    example, in expert reports or summary judgment papers without

7    access to the vast majority of the record that exists in this

8    case.

9            And I thought your Honor said it very well in the

10   7/23 order, when you basically said that there's likely going

11   to be no good argument for Mr. Wall or Ms. Tobias to be

12   precluded from viewing confidential information subject to the

13   limits that we have laid out, that the parties themselves to

14   the case have agreed to.  And we think, your Honor, that the

15   protections that the protective order -- the agreed-upon

16   protective order provides, really should be more than

17   sufficient to address the concerns raised here by the third

18   parties.

19           It is in our experience, your Honor, I think pretty

20   typical that outside counsel at least is given some -- not just

21   outside counsel, but in-house counsel is given some access to

22   the confidential information in the case.  And we'd be sort of

23   going here, I think, to the other extreme if we basically set

24   up a rule that says they get access to nothing unless we're

25   able to make an application to the Court, which I think also

O7T6USAC                    Teleconference

1    sets up a system that's going to become quite burdensome and

2    onerous and make it difficult to kind of, in the realtime, get

3    feedback that can be very valuable in litigating a case of this

4    kind.

5         So I can say more, your Honor, but I think you

6    understand that we think it's very important for them to be

7    able to have access.  And the protections that don't allow them

8    to use the information for any purpose other than the

9    litigation, we think go a very long way in offering any

10   protection.

11        And the alternative approach really is kind of, I

12   think, putting in-house counsel at a disadvantage.  They really

13   are in no worse position than anybody else here, to be able to

14   live by the protections of a protective order.  Every outside

15   lawyer has to compartmentalize to some degree.  We all have

16   access to information that is confidential and highly

17   confidential, and we're under the strictest obligations, both

18   from protective orders and from ethical rules to use that

19   information solely for purposes of litigating a case.

20        And in our judgment, there's really no reason here why

21   Mr. Wall, who has 40-some years' experience doing this kind of

22   thing, and Ms. Tobias to be able to do that same thing here.

23        The kind of compartmentalization that we are talking

24   about, lawyers do it all the time.  Everyone on this call does

25   it to some degree, and respectfully we think Mr. Wall and

O7T6USAC                        Teleconference

1    Ms. Tobias ought to be allowed to do that, your Honor.

2             THE COURT:  Well, I hear you on those concerns that

3    you voice.  I guess one question I have is under the proposal

4    that I just articulated, in-house counsel would have access to

5    documents that were designated confidential as opposed to

6    highly confidential.  And the parties hopefully put into the

7    proposed order a definition of what would fall into that

8    initial category of confidential documents.  They'd have access

9    to that.

10            But precisely for the reason that you raised, which is

11   that it may turn out that there's just no good argument for why

12   Mr. Wall or Ms. Tobias should not see certain documents down

13   the line, that maybe this is a tempest in a teapot.  Maybe

14   there's not really an issue here.

15            The problem, I think, is that we're trying to

16   hypothesize what's going to be in the record, what Mr. Wall and

17   Ms. Tobias might need to look at, and what the implications of

18   that might be based on their forward-looking role with the

19   defendants without having any documents turned over in

20   discovery, which is what I started the call with.

21            So I think that once we have a record and documents

22   have been produced, we're then going to have those compiled for

23   various purposes.  You outline one purpose, preparation of

24   expert reports.  There's going to be depositions, and then

25   there's going to be briefing of all kinds.  And there may be

1  certain times where you'd like to show one or more of those

2  things to Mr. Wall and Ms. Tobias, and you're going to be able

3  to make an application along those lines.

4         And at that point, the Court is going to be able to

5  look and see what type of information you want to show to them

6  in light of the role that you want to maintain for them, which

7  is to not be locked into this litigation and that's what they

8  are doing.  But rather, also maintain a non-litigation role

9  where they advise on business transactions.

10         So to be very clear, this protective order is without

11  prejudice to you making those types of applications, but I

12  think it will be easier to review those.  It's going to -- I

13  agree with you, it may turn out to be burdensome and onerous

14  for me, but I'll take the weight and hear the applications when

15  they come in.

16         The problem I think that the third parties have

17  articulated is if we put in place what I had proposed last

18  week, it may turn out that information that's being received by

19  Mr. Wall and Ms. Tobias is competitively sensitive.  And even

20  if they try their best to try to maintain those dual roles,

21  there will be a concern that the third parties, having just

22  complied with the government's investigation, somehow

23  unwittingly put themselves in a position where their sensitive

24  documents were being seen by a competitor.  And not only the

25  in-house counsel working on this litigation for the competitor,

O7T6USAC                    Teleconference

1    but people who are actually going to be working on business

2    transactions that had not anything to do with this litigation.

3            So that's just a long-winded way of saying, I'm going

4    to put in the proposed order as I articulated with those

5    provisos.  And we'll issue that today.

6            Mr. Marriott, anything else other than the protective

7    order that you see on the horizon right now that you could use

8    the Court's assistance with?

9            MR. MARRIOTT:  Thank you, your Honor.

10           May I ask a question, first, which I guess is a form

11   of assistance.  It may be a little bit different than what you

12   had in mind.

13           So the application that you were talking about we'd be

14   able to make, that's, I take it, going to be not an in-camera

15   application.  So anytime we want to request documents, we're

16   going to have the plaintiffs seeing exactly what it is that we

17   find interesting and want to show to Ms. Tobias and Mr. Wall.

18   So is there a way that application can be effectively an

19   in-camera obligation that protects our work product?

20           THE COURT:  Well, I'll think about that.  I'm not

21   seeing how that would work.  You would not be -- in my

22   experience, this is how it usually comes up.  There will be an

23   expert report on, for instance, let's say damages, and you'd

24   like to show that to the people who are actually going to be

25   making decisions about the litigation on your end.  And so you

1   ask the other side whether you can show some portion or all of

2   that report on damages to your folks in-house.  And then

3   there's a discussion on that.  And then you come to the Court

4   if it doesn't work out.  There's no confidential or secret

5   sauce in what you're asking for your clients to be able to see.

6        Same thing for other depositions.  If there's

7   something that's critical that you want your -- I guess the way

8   I'm putting it is, I don't know if this would be like a

9   document-by-document type analysis.

10        I think what's going to happen is the litigation is

11   going to come to a head at various points, whether it's in

12   pretrial briefing of various kinds that are go to come up,

13   whether it's expert reports, whether it's key depositions.  And

14   you're just going to be saying, these folks are so important

15   they need to have access to these particular types of

16   information, whether it's a transcript or report or a brief,

17   and then you're going to go to the other side.  I am thinking

18   that there are going to be a lot of times where the parties are

19   going to be able to work out what Mr. Wall and Ms. Tobias can

20   see in a way that will satisfy you.

21        For instance, there may be certain underlying

22   information that is redacted or you think shouldn't be shown to

23   them.  But the parties and the third parties may not have an

24   issue with the top line information, the general contentions

25   going to them, with the underlying details being known to

O7T6USAC                      Teleconference

```
 1    outside counsel, potentially also in-house counsel designated

 2    under Paragraph 8, and you'll be able to proceed along those

 3    lines.

 4         If there comes a point where there's particular

 5    information, and you feel that you need to make an in-camera

 6    application about that, can you certainly make that

 7    application.  You may say we want to make an in-camera

 8    application.  The other side can object and say why they don't

 9    think that's appropriate, but we can handle that at that

10    juncture.  So that's a roundabout and long-winded way of saying

11    that we'll see.  I'll hear any application you have to make,

12    but I want to give you some of my thinking on why I didn't

13    think that would come up or be likely to come up.  But you

14    never know.

15         MR. MARRIOTT:  Your Honor, I understand the Court's

16    ruling.  And while I don't, I'm afraid, share your optimism for

17    how simple this is going to be, we'll do our best in good faith

18    to make it work and hope not to have to burden the Court with

19    too many applications.

20         THE COURT:  Okay.  Understood.

21         Mr. White, anything from plaintiffs' side?

22         MR. WHITE:  Your Honor, thank you very much.

23         This strikes me as a very constructive and thoughtful

24    approach to take this incrementally and see where we might see

25    issues and a way to resolve them.  So we appreciate that.
```

O7T6USAC                    Teleconference

You asked Mr. Marriott if there's anything else that might be coming across the transom in the short term.  We're meeting and conferring on a number of discovery-related items; the ESI protocol, the deposition protocol, the expert protocol and some issues relating to initial disclosures.  I don't think we're at an impasse on any of those yet.  We might get to that point, either resolve them or get to an impasse.  So you may see letters from the parties.

One area where there's a little bit of a logjam, if you were inclined to give us an indication of your thoughts on this, that might be helpful for the meet-and-confer process, is document production.

We have a pretty tight discovery schedule here, and we're mindful of your admonition recently that the trial date is set in stone.  We've asked the defendants to agree to substantial completion deadlines of document production after responses to document requests are served.  And the position we've received from defendants was to keep it open-ended, and just have a requirement for rolling productions.

I don't think that's going to work.  I think we're going to need some substantial completion deadlines.  And if you have a view on that, your Honor, that might help with the ongoing meet-and-confer.

THE COURT:  Well, Mr. Marriott, what's the issue with the substantial completion deadline, even if it's way out in

O7T6USAC                      Teleconference

 1    the future?  It gives you some certainty that if you have that

 2    deadline in place, then you can sequence the remaining part of

 3    discovery in a way that works with the date when you know

 4    you're at least supposed to get most of the documents that are

 5    in play.

 6              MR. MARRIOTT:  Sure, your Honor.  Again,

 7    Dave Marriott.

 8              I don't know that there's anything necessarily

 9    problematic in concept about the idea of having a substantial

10    completion deadline.  But that is not, to my mind, what's been

11    discussed so far in the very, what I'd characterize as somewhat

12    preliminary meet-and-confers.

13              What I believe has been discussed is this idea that

14    the plaintiffs would serve a document demand, and we'd

15    presumptively -- not even presumptively, we would be under

16    order of the Court to complete substantially the production of

17    those documents within 60 days of their serving the requests.

18    And I think that is just not workable in the abstract to be

19    obligated to substantially complete a production that you

20    haven't even -- had an opportunity to respond and object to.

21    There hasn't been a meet-and-confer about.

22              It may be that it's possible with some categories of

23    documents to produce within 60 days of the receipt of the

24    request; it may be as to others entirely unworkable.

25              So I think what we've simply done so far is express

O7T6USAC                    Teleconference

1    skepticism that we can, in the abstract, as a general matter,

2    agree that every time they serve a request, we are obligated by

3    court order to respond within 60 days.

4              THE COURT:  Understood.  And, Mr. Marriott, can you

5    help me.  So in terms of the production of the defendant's

6    documents, there were no productions made prior to this

7    litigation, right?  So everything is happening from scratch on

8    the defendant's side?

9              MR. MARRIOTT:  No, that's not quite right, your Honor.

10   There were considerable productions, significant productions

11   made in connection with the investigation.  So a very large

12   volume of documents was produced and made available to the

13   plaintiffs over the course of the long period of time.

14             So they're now asking for more documents in addition

15   to those, and those productions that are specific to this

16   litigation have not yet occurred.

17             THE COURT:  So you're saying they've got a lot to chew

18   on, and if they want to propose a substantial completion

19   deadline for everything that they are asking you to produce,

20   you can probably talk about that.  Might be able to work

21   something out.

22             Your objection is just to having hard deadlines for

23   individual requests for production because you're going to be

24   working on about a billion different things at the same time.

25   And it just might not be feasible to have request-by-request

O7T6USAC                      Teleconference

1    deadlines.  Is that fair?

2                MR. MARRIOTT:  That's not only fair, it's exactly

3    right.  That's correct.

4                THE COURT:  Okay.  Mr. White, that seems reasonable,

5    but it seems like you maybe need to just speak more with

6    Mr. Marriott, because I'm not -- in concept, I'm not seeing an

7    objection to the general requirement of a substantial

8    completion deadline.  And, you know, I think -- and you do have

9    a lot of documents that you have received, I'm hearing, in the

10   pre-complaint investigation.

11               And so it seems like you can probably work it out

12   along the parameters that we're discussing.  Maybe one

13   substantial completion deadline at a certain juncture where it

14   will give you enough time to be able to work on expert reports,

15   depositions, et cetera.  But maybe a 60-day deadline for each

16   individual request is not going to be feasible given the volume

17   and scope of discovery here, and the fact that you already have

18   a voluminous set of documents that you've received in the

19   pre-complaint investigation.

20               Does that make sense?

21               MR. WHITE:  Your Honor, I would just respond to that

22   briefly by saying I'm not sure we would agree with the

23   characterization of the pre-complaint document production being

24   substantial.  But we do have some information.  We expect to

25   get a lot more in discovery in the litigation.

O7T6USAC                    Teleconference

1           But I do think our propose -- I don't want to get too

2      in the weeds in this context, but our proposal was that any

3      documents that aren't subject to an objection would be produced

4      within 60 days of the request.

5           I'm not sure how much further out we can go than that,

6      given that we have less than a year to complete discovery and

7      we're probably not going to start depositions until document

8      production is largely complete.  But we'll take on board what

9      you said this morning.  It sounds like the direction we're

10     heading is a substantial completion deadline, but it may not be

11     60 days after each request that we serve.

12          THE COURT:  Yeah, it might mean you need to get all

13     your requests out immediately so that there isn't an issue

14     along these lines.  But just give me one second.

15          (Pause)

16          THE COURT:  So the real deadlines come up, expert

17     reports are due by July 28 of next year, and all fact

18     depositions must be completed by June 27, 2025.  You're getting

19     out requests right now.

20          MR. WHITE:  Yes, your Honor, we sent out requests.

21     And I suspect we'll have some supplemental requests.

22          THE COURT:  And if I remember correctly, there are

23     quite a few depositions you intend to take.

24          MR. WHITE:  That's correct, your Honor.

25          THE COURT:  But what you're saying is that if -- well,

O7T6USAC                      Teleconference

1  if you're 60 days out, I think the real truth here, and I'm

2  happy to hear from Mr. Marriott here as well, but is that

3  you've got to get your requests out immediately.  There's

4  definitely going to be follow-up, but I think what you're

5  saying is, we need -- we're going to get all our requests out.

6  I don't know if you need to have a 60-day deadline for each

7  individual request.

8          But I hear you, that there may need to be a

9  substantial completion deadline that is well in advance of

10 those expert and deposition deadlines.  So if you do the math,

11 maybe it's not 60 days, but it's got to be close to that or

12 else you're not going to have enough time to be ready to do

13 depositions to get your experts ready.  Is that fair?

14         MR. WHITE:  That's exactly right, your Honor.

15         THE COURT:  I don't disagree with that.  And I'll hear

16 the parties on what they propose as substantial completion

17 deadline, if they want the Court to put it in.

18         Mr. Marriott, I know that you don't want it to be

19 60 days, but do you disagree with the math in terms of the

20 schedule?

21         MR. MARRIOTT:  Well, I certainly don't disagree with

22 what the schedule says, your Honor.  And I think those dates

23 are all right.  What I disagree with is the idea that there

24 hasn't been a substantial production.  I think it was over

25 600,000 pages of -- 600,000 documents, right, put aside pages.

O7T6USAC                        Teleconference

1    So I think that's a lot of documents.  I think that's

2    substantial.

3         We don't have a problem in concept with coming up with

4    a date here after we have the requests for producing the

5    information.  I think the simplest thing to do is, as your

6    Honor suggests, they ought to get out the requests.  We have

7    got the initial request, we have a more recent request that

8    just came out.  If they have got another follow-up on something

9    in a request, in my view they ought to serve that.  And we can

10   begin, when we have the exact requests in mind, and we know

11   what we're talking about, decide what the right cut off is.

12        But I think we all share the objective of having the

13   documents produced in advance of depositions and certainly in

14   advance of expert reports.  So we're hoping to having their be,

15   as I said, a substantial production deadline.  We just need to

16   have the requests sort of a bit more pinned down than they are

17   and then we can come up with that.

18        But I don't think 60 days, as a general matter, is a

19   realistic deadline because it doesn't -- it's sort of unmoored

20   to the particular requests, and the answer to whether we can

21   may depend on the particular request.

22        THE COURT:  Mr. White, you're getting out your

23   requests and then the parties are meeting and conferring about

24   all of that on both sides.  And is it fair to say that you're

25   trying to get those meet-and-confers done within the next month

O7T6USAC                        Teleconference

1    or so?

2            MR. WHITE:  Yes, that seems realistic to me,

3    your Honor.  And like I said before, we have sent a round of

4    requests out already.  The responses to those are due in a few

5    weeks.  So I think the discussion this morning has been helpful

6    and will inform the meet-and-confers that goes forward.  And I

7    hope it doesn't take, you know, all of August in order to get

8    those issues resolved.  But we will move forward and keep in

9    mind what you have indicated today.

10           THE COURT:  Okay.  Thank you.  And I can kind of see

11   the future here, which is that we may need to have an in-person

12   hearing probably not in August, but maybe in early September.

13   Because if you're having all these discussions over the next

14   30 days or so, hopefully faster than that, but in the next

15   30 days, it may be helpful to all sides to have a hearing where

16   we just would through anything that's been unresolved and see

17   if we can just figure things out in a way that would -- to do

18   what you're saying, which is have to some sort of substantial

19   completion deadline that is at least six months in advance of

20   the deposition cutoff in the case, so that you have adequate

21   time to make sure you've got most of the documents that you

22   will need.  And then you can start taking depositions.

23           Does that seem about right?

24           MR. WHITE:  I think that would be very helpful,

25   your Honor.  And maybe a date, just thinking through the

O7T6USAC                          Teleconference

1    mechanics of what we have going on right now.  Maybe a date in

2    mid-September would be more informative than the early part of

3    September.

4              THE COURT:  Okay.  So why don't you talk with

5    Mr. Marriott and see if there's maybe a set of dates that the

6    parties think would be the most helpful time to have a hearing.

7    And then in advance of that, I'll take the parties' submissions

8    on what the outstanding issues are and I'll make time for you

9    all.

10             So if you can give me maybe like three different days

11   in mid-September where the parties would be available for an

12   in-person hearing, then we'll go ahead and set that up and then

13   we'll have -- the parties can put in any submissions they want

14   in advance to tee up issues for the Court.

15             MR. WHITE:  We can certainly confer and get back to

16   you on that.  Thank you, your Honor.

17             THE COURT:  Okay.  Well, thank you very much.

18             Mr. Marriott, anything else for the defendants?

19             MR. MARRIOTT:  Nothing today, your Honor, thank you.

20             THE COURT:  Well, I thank everyone for joining today

21   and we'll get out an order, the protective order.  And if

22   there's anything further that the Court could help with, please

23   let us know.  Thanks a lot, we are adjourned.

24             (Adjourned)

25