**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA et al.,

*Plaintiffs*,

v.

LIVE NATION ENTERTAINMENT, INC.,
and TICKETMASTER L.L.C.,

*Defendants*.

Civil No. 1:24–cv–3973-AS

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' JOINT MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

    A.   All Section 1404 Factors Support Plaintiffs' Choice of Forum. ........................................ 4

        1.   The Convenience of Witnesses Disfavors Transfer. ....................................................... 5

        2.   The Convenience of the Parties Disfavors Transfer. ...................................................... 5

        3.   The Interests of Justice Disfavor Transfer. .................................................................... 6

        4.   Plaintiffs' Choice of Forum Is Entitled to Substantial Deference. ................................. 7

        5.   The Governing Law Does Not Favor Transfer. ............................................................. 8

        6.   The Four Remaining Factors Do Not Favor Transfer. ................................................... 8

        7.   Judicial Economy Also Disfavors Transfer. .................................................................. 9

    B.   The Retention-of-Jurisdiction Provision Does Not Apply Here and Cannot Overcome Plaintiffs' Choice of Forum. ....................................................................................... 10

        1.   Plaintiffs Do Not Seek to Enforce, Construe, or Modify the Decree. ........................... 11

        2.   Live Nation's Preferences Do Not Circumscribe Plaintiffs' Venue Options. ............... 14

        3.   The Consent Decree Does Not Immunize Defendants' Merger or Any of the Anticompetitive Conduct that Followed It. ................................................................ 16

        4.   Applying the Retaining-Jurisdiction Provision Here Would Violate the Rights of the Non-Decree Plaintiffs. .............................................................................................. 19

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*101 Frost St. Assocs., L.P. v. U.S. Dep't of Energy*,
2022 WL 5082444 (E.D.N.Y. July 27, 2022) .......................................................... 18

*Aerotel, Ltd. v. Sprint Corp.*,
100 F. Supp. 2d 189 (S.D.N.Y. 2000) ........................................................................ 5

*Albert Fadem Tr. v. Duke Energy Corp.*,
214 F. Supp. 2d 341 (S.D.N.Y. 2002) .................................................................... 4, 8

*Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*,
2017 WL 4712422 (S.D.N.Y. Sept. 25, 2017) ..................................................... 10, 20

*Antrim Mining, Inc. v. Davis*,
775 F. Supp. 165 (M.D. Pa. 1991) ........................................................................... 19

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) .................................................................... 4, 5

*Davidson v. Dean*,
1996 WL 534089 (2d Cir. Sept. 20, 1996) .............................................................. 13

*D.H. Blair & Co. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006) .................................................................................... 4, 7

*Dwyer v. Gen. Motors Corp.*,
853 F. Supp. 690 (S.D.N.Y. 1994) ............................................................................ 6

*Flanagan v. Arnaiz*,
143 F.3d 540 (9th Cir. 1998) .................................................................................. 13

*Flood v. Carlson Rests. Inc.*,
94 F. Supp. 3d 572 (S.D.N.Y. 2015) .......................................................................... 5

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
195 F. Supp. 3d 613 (S.D.N.Y. 2016) ........................................................................ 5

*Goulart v. United Airlines, Inc.*,
1994 WL 544476 (N.D. Cal. Sept. 28, 1994) .......................................................... 20

*It's a 10, Inc. v. PH Beauty Labs, Inc.*,
718 F. Supp. 2d 332 (S.D.N.Y. 2010) ....................................................................... 8

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955) ................................................................................................ 18

*Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501, 522 (1986) .................................................................................. 12, 19

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
590 U.S. 405 (2020) ............................................................................................... 11

*Magnolia v. Conn. Gen. Life Ins. Co.*,
   157 F. Supp. 2d 583 (D. Md. 2001) ............................................................ 13

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010) ................................................................. 1, 4

*Omnicell, Inc. v. Medacist Sols. Grp., LLC*,
   272 F.R.D. 469 (N.D. Cal. 2011) ............................................................ 13

*Peregrine Myanmar, Ltd. v. Segal*,
   89 F.3d 41 (2d Cir. 1996) ...................................................................... 19

*Republic Bldg. Co. v. Charter Twp. of Clinton*,
   81 F.4th 662 (6th Cir. 2023) ................................................................. 13

*Salazar ex rel. Salazar v. Dist. of Columbia*,
   896 F.3d 489 (D.C. Cir. 2018) ............................................................... 16

*SEC v. Comm. on Ways & Means*,
   161 F. Supp. 3d 199 (S.D.N.Y. 2015) ....................................................... 8

*Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*,
   809 F. Supp. 2d 1300 (N.D. Okla. 2011) .................................................... 8

*Smith v. Potter*,
   513 F.3d 781 (7th Cir. 2008) ................................................................. 17

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
   988 F.3d 690 (4th Cir. 2021) ................................................................. 17

*Taberna Cap. Mgmt., LLC v. Dunmore*,
   2008 WL 2139135 (S.D.N.Y. May 20, 2008) .............................................. 9

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
   676 F. Supp. 2d 169 (S.D.N.Y. 2009) ....................................................... 8

*Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r*,
   2008 WL 2228841 (D. Conn. May 27, 2008) ............................................. 19

*United Shoe Mach. Corp. v. United States*,
   258 U.S. 451 (1922) ............................................................................ 14

*United States v. Agri Stats, Inc.*,
   2024 WL 3061570 (D. Minn. May 17, 2024) ............................................... 7

*United States v. Am. Tel. & Tel. Co.*,
   1976 WL 1321 (D.D.C. Oct. 1, 1976) ...................................................... 15

*United States v. Am. Tel. & Tel. Co.*,
   524 F. Supp. 1336 (D.D.C. 1981) .......................................... 14, 15, 16, 17

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ...................................................................... 14, 16

*United States v. ASCAP*,
   32 F.3d 727 (2d Cir. 1994) .................................................................. 13

*United States v. Bechtel Corp.*,
   648 F.2d 660 (9th Cir. 1981) ............................................................... 17

*United States v. Brown Univ.*,
   772 F. Supp. 241 (E.D. Pa. 1991) ......................................................... 7

*United States v. Google LLC*,
   661 F. Supp. 3d 480 (E.D. Va. 2023) .................................................... 7

*United States v. Int'l Bhd. of Teamsters*,
   803 F. Supp. 758 (S.D.N.Y. 1992) ...................................................... 13

*United States v. Microsoft Corp.*,
   147 F.3d 935 (D.C. Cir. 1998) ............................................................ 16

*United States v. Microsoft Corp.*,
   1998 WL 614485 (D.D.C. Sept. 14, 1998) ...................................... 15, 16

*United States v. Nee*,
   573 F. App'x 37 (2d Cir. 2014) ............................................................. 8

*United States v. Rare Breed Triggers, LLC*,
   669 F. Supp. 3d 169 (E.D.N.Y. 2023) .............................................. 7, 19

*United States v. Republic Servs., Inc.*,
   723 F. Supp. 2d 157 (D.D.C. 2010) ..................................................... 17

*United States v. SBC Commc'ns, Inc.*,
   489 F. Supp. 2d 1 (D.D.C. 2007) .......................................................... 3

*United States v. W. Elec. Co.*,
   1956 U.S. Dist. LEXIS 4076 (D.N.J. Jan. 24, 1956) ........................... 15

*Willoughby v. Potomac Elec. Power Co.*,
   853 F. Supp. 174 (D. Md. 1994) .......................................................... 14

**Statutes**

15 U.S.C. § 4 ................................................................................................. 7, 18

15 U.S.C. § 22 ............................................................................................ 7, 8, 19

15 U.S.C. § 23 ................................................................................................ 8, 19

15 U.S.C. § 26 .................................................................................................... 18

28 U.S.C. § 1404 ........................................................................................... *passim*

Merger Filing Fee Modernization Act of 2022, § 301, 136 Stat. 4459 (2022) ............................ 20

## INTRODUCTION

As alleged in the Complaint, Defendants have violated Sections 1 and 2 of the Sherman Act, New York's Donnelly Act, New York's Executive Law, and many other state laws. This case belongs in New York, a city that has long been a hub in the live music industry for artists, fans, and industry participants. Plaintiffs, including the State of New York and the District of Columbia, chose to litigate in New York, a choice that is entitled to substantial deference, especially in a public antitrust enforcement action. The case-specific nexus to New York is broad and deep. New York is home to two of Ticketmaster's few competitors, twenty-plus entities from the parties' initial disclosures, numerous amphitheaters and arenas, material non-party and party witnesses, and Defendants' largest office outside of California.

Defendants seek to transfer this case, with its significant connections to New York, to Washington D.C. But their motion falls far short of the "clear and convincing" showing needed to justify transfer. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010). Defendants' arguments rest on a single foundation—that this case seeks to modify or enforce a prior consent decree between Defendants and certain Plaintiffs, filed in the United States District Court for the District of Columbia ("D.D.C.") in 2010, and amended in 2020 ("Consent Decree" or "Decree"). But Plaintiffs' suit does neither. It is undisputed that the Complaint pleads (i) different legal claims involving (ii) broader factual allegations and (iii) additional plaintiffs. ECF 174, at 8:13-9:7 (June 27, 2024 Hr'g Tr.). Put more directly, this case does "not seek[] to enforce or construe or undo" the Decree. *Id.* 7:11–8:1. Without that foundation, Defendants' transfer arguments collapse, and the § 1404(a) factors not only do not save Defendants' position, but, in fact, plainly support this Court's retention of this case.

The Court and the parties have already invested time in setting an appropriately expeditious schedule, which reflects the seriousness of the alleged ongoing harm to the public

and the need for prompt adjudication of those allegations. Transfer unjustifiably and unnecessarily risks delay to a resolution. Plaintiffs respectfully ask this Court to deny the motion.

## BACKGROUND

This case concerns Live Nation's and Ticketmaster's interconnected monopolies and anticompetitive conduct across the live music industry. Plaintiffs—the United States, twenty-nine States including New York, and the District of Columbia—allege that Live Nation and Ticketmaster gatekeep the delivery of nearly all live music in America today, harming competition and consumers in five different markets through sweeping, multifaceted, and mutually reinforcing conduct that violates Sections 1 and 2 of the Sherman Act and numerous states' laws, including those of New York. *E.g.*, Complaint, ECF 4 ("Compl.") ¶¶ 136–45, 148. Live Nation and Ticketmaster unlawfully maintain monopolies in markets for primary ticketing, concert promotion, and large amphitheaters, *id.* ¶¶ 207–15, 233–48; foreclose a substantial share of commerce in primary ticketing through long-term exclusive contracts, *id.* ¶¶ 216–23; and anticompetitively tie artists' ability to perform in large amphitheaters to their agreement to purchase Live Nation's promotion services, *id.* ¶¶ 224–32. The impact of Defendants' unlawful conduct is substantial and affects nearly every corner of the live music ecosystem.

This case involves different causes of action—and fourteen different Plaintiffs—from the case that resulted in the Decree. In 2009, Live Nation and Ticketmaster agreed to merge, combining the country's largest concert promoter and newest primary ticketer with the largest primary ticketer for major concert venues. The United States and nineteen states (the "Decree Plaintiffs") sued to enjoin the merger, alleging a single claim: that the merger may "substantially lessen competition" in the market for primary ticketing services for major concert venues, in violation of Section 7 of the Clayton Act. ECF 188-3 ¶¶ 6, 46. Live Nation, Ticketmaster, and the

Decree Plaintiffs proposed a consent judgment allowing Ticketmaster and Live Nation to merge subject to certain conditions. Based on then-available information and circumstances, the Decree Plaintiffs believed the Decree would be "in the public interest," and the district court agreed, applying sharply proscribed settlement review standards. ECF 188-4, at 26; *see United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 10-17 (D.D.C. 2007).

In 2020, the United States moved to amend the Decree, alleging certain violations of the Decree. Most Decree Plaintiffs joined the request, and the parties agreed to amendments, which the district court adopted and entered. Under the amended agreement, the Decree's main divestiture-related provisions expired in 2020 and its other provisions expire December 31, 2025. ECF 188-8, at 30. The district court, Judge Rosemary M. Collyer, adopted the initial and amended Decree without "any testimony . . . taken, without trial or adjudication of any issue of fact or law," and without a hearing. ECF 188-8, at 2. In Section XIV of the Decree, the district court "retain[ed] jurisdiction" over actions by the parties to "construe," "modify," or "enforce" the Decree. *Id*. at 29–30. Unlike many settlement agreements, however, the Decree did not release Defendants from liability or covenant that the Decree Plaintiffs could not sue anew. The district court closed the case after entering the amended Decree, and Judge Collyer is no longer an active judge. *See* Mem. in Support of Defs.' Mot. to Transfer, ECF 187 ("Mot.") 20 n.12.

Of the thirty-one plaintiffs in this case, the United States and sixteen states—Arizona, Arkansas, California, Florida, Illinois, Massachusetts, Nevada, New Jersey, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Wisconsin, and Washington—were parties to the Decree (three other states were parties to the Decree but are not currently plaintiffs here). *See* ECF 188-8, at 1. The remaining fourteen plaintiffs in this case—New York along with Colorado, Connecticut, the District of Columbia, Maryland, Michigan, Minnesota, New Hampshire, North

Carolina, Oklahoma, South Carolina, Virginia, West Virginia, and Wyoming (collectively the "Non-Decree Plaintiffs")—were never parties to the Decree. *See id.*

## LEGAL STANDARD

On a motion under 28 U.S.C. § 1404(a) to transfer a case for convenience to another district "where it might have been brought," the movant bears the burden to show through "clear and convincing evidence" that transfer is warranted. *N.Y. Marine*, 599 F.3d at 114. "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). In assessing whether transfer is warranted, courts "should disturb the plaintiff's choice of forum only if, on balance, the following factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009). "[C]ourts have typically accorded substantial weight to the … plaintiff's choice of forum." *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

## ARGUMENT

**A.    All Section 1404 Factors Support Plaintiffs' Choice of Forum.**

This case involves numerous witnesses, parties, and interests directly tied to New York. That is, in part, why none of the § 1404(a) factors favor transferring this case away from Plaintiffs' chosen venue. Indeed, the record falls far short of the "clear and convincing evidence" standard Defendants must meet to warrant transfer. *See N.Y. Marine*, 599 F.3d at 114.

4

1.    *The Convenience of Witnesses Disfavors Transfer.*

The convenience of witnesses, which is "generally considered the most important," disfavors transfer. *Atl. Recording*, 603 F. Supp. 2d at 695. "In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would be inconvenienced if the suit were to remain in the forum chosen by plaintiff." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016). This is a "necessary showing" for a party "to succeed on a transfer motion." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000). Yet Defendants identify no witnesses in or closer to D.D.C. and therefore "fail[] to make this necessary showing." *Id.*

Instead, witness convenience favors New York. Two of Ticketmaster's few ticketing competitors—SeatGeek and StubHub—are headquartered in New York. Both are referenced repeatedly in the Complaint. *See* Compl. ¶¶ 83, 90–94, 101, 109. Both are central to many of Plaintiffs' allegations. New York is also home to a venue (just a few miles from the Court) whose experience with Defendants' illegal monopoly maintenance tactics, *see* Compl. ¶¶ 90–93, exemplifies the type of "material[]" New York witness that is key to the case and the witness convenience analysis. *See Freeplay*, 195 F. Supp. 3d at 617. The numbers similarly favor New York. Of the 180 unique, non-party entities in the parties' initial disclosures, 24 are based in New York. *See* Declaration of Olivia Rynberg-Going ("Decl.") ¶ 3–4. In short, New York is where more and more important non-party witnesses reside. *Freeplay*, 195 F. Supp. 3d at 617.

2.    *The Convenience of the Parties Disfavors Transfer.*

A party "moving for transfer must show . . . that the original forum is inconvenient for it." *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015). Yet Defendants concede that this Court and D.D.C. are "roughly equivalent in . . . convenience for the parties." Mot. 19. Defendants could hardly argue otherwise, given their deep ties to this District.

5

Defendants occupy a nearly 100,000 square foot office just two miles from this Court, where more of Defendants' employees work than in any other state except California. Key Ticketmaster witnesses reside in New York, including the Managing Director of North America, who signed many of Ticketmaster's anticompetitive long-term exclusive contracts, and who was one of the few party witnesses deposed during Plaintiffs' pre-complaint investigation. Defendants are also actively litigating in this District in at least four other lawsuits where they have never contested venue, Decl. ¶ 6, including in two private lawsuits accepted by this Court as related to this case. In the past decade, Defendants have been parties in twenty-plus lawsuits in this District, without ever seeking transfer, compared to just three lawsuits in D.D.C. *Id.* ¶¶ 6–7. The contrast with D.D.C. is stark in other respects too: Defendants' D.C. office is comparatively insignificant, and Plaintiffs have not identified any key party witnesses in D.D.C.

3.     *The Interests of Justice Disfavor Transfer.*

The interests of justice also militate against transfer, which could create procedural problems and potentially years of delay. Transfer would make adjudication less "easy, expeditious and inexpensive"—contrary to the interests of justice. *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994).

Even discounting the inherent delay associated with transferring this case and starting proceedings in D.D.C., civil lawsuits in D.D.C. proceed to trial more slowly. In every U.S. Courts survey from the last year, it took longer to proceed to trial in D.D.C. than in this District, often around five months longer. Decl. ¶ 5. Significantly, the median time to civil jury trial in D.D.C. was always over four years—more than *double* the 21-months-to-trial timeframe set by the Court in this case—meaning transfer could easily slow this case by two-and-a-half years. *Compare* Decl. ¶ 5 (median of 52 months to civil jury trial in D.D.C. in 2024), *with* ECF 169 (setting trial for 21 months from filing). In Sherman Act actions brought by the government,

Congress requires that "the court shall proceed, as soon as may be, to the hearing and determination of the case." 15 U.S.C. § 4. Delay would only enable Defendants to continue to stifle and extinguish competition in the live music industry, further harming fans and the industry. Transfer—and the resultant likely delay—would be inimical to "the Congressional imperative to act quickly in antitrust enforcement [cases] where the United States is a plaintiff." *United States v. Agri Stats, Inc.*, 2024 WL 3061570, at *5 (D. Minn. May 17, 2024).

> 4.    *Plaintiffs' Choice of Forum Is Entitled to Substantial Deference.*

A plaintiff's choice of forum "is given great weight." *D.H. Blair*, 462 F.3d at 107. That great weight is even weightier in public antitrust enforcement actions, where "greater deference [is] afforded to the federal government's forum choice." *United States v. Google LLC*, 661 F. Supp. 3d 480, 491 (E.D. Va. 2023). Congress expressly authorized the government to file antitrust suits "not only in the judicial district whereof [a defendant] is an inhabitant, but also *in any district* wherein it may be found or transacts business." 15 U.S.C. § 22 (emphasis added). Reflecting this express Congressional intent, "many courts . . . have held that in [public antitrust enforcement] suits, plaintiffs' choice of forum is entitled to heightened respect." *United States v. Brown Univ.*, 772 F. Supp. 241, 242 (E.D. Pa. 1991); *see also United States v. Rare Breed Triggers, LLC*, 669 F. Supp. 3d 169, 185 (E.D.N.Y. 2023) ("giv[ing] significant weight to the Government's choice of forum" where, under anti-fraud statute, "Congress expressed its intention to give the Government broad leeway to pick its forum").

Here, the State of New York is a Plaintiff, deepening the local ties and the weight of Plaintiffs' choice. Even the District of Columbia made the deliberate decision to litigate in New York, based on an "assessment of the balance of relevant factors." *Albert Fadem Trust*, 214 F. Supp. 2d at 343. That some Plaintiffs reside elsewhere is irrelevant and inevitable: "it would not

have been possible to select one forum where they all reside." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1313 (N.D. Okla. 2011).

### 5.    The Governing Law Does Not Favor Transfer.

The "governing law" factor "provides no basis for granting a transfer motion, because all federal courts are presumed to be equally familiar with federal law." *SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 229 (S.D.N.Y. 2015). Defendants' suggestion that "the D.C. Court [is] more familiar with its own consent decrees" assumes that the Decree is at issue here, Mot. 20; that assumption is wrong, as explained below, *see infra* pt. B.1. In any event, Defendants' claim that the D.D.C. court would have unique familiarity with the Decree is misleading. Judge Collyer, who presided over the Decree, is now inactive, and a new judge in D.D.C. would be no better positioned than this Court to interpret the Decree and the limited record supporting it. *See United States v. Nee*, 573 F. App'x 37, 39 n.2 (2d Cir. 2014) (unpublished) ("[T]he rationale for according deference to the original judge who oversaw [a] stipulated consent decree is undercut when" the decree is assigned to a different judge).

### 6.    The Four Remaining Factors Do Not Favor Transfer.

Similarly, the remaining four § 1404 factors do not favor transfer. In the modern era, "the location of the documents is not a significant factor in the convenience analysis." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009). The availability of compulsory process is irrelevant because federal antitrust law authorizes nationwide service of process. *See* 15 U.S.C. §§ 22-23. Live Nation and Ticketmaster—which bring in more than $22 billion annually, Compl. ¶ 17—cannot argue "that transfer (or lack thereof) would be unduly burdensome to [their] finances." *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010). And while the locus of operative facts in this case involving nationwide

geographic markets and wide-ranging anticompetitive conduct is dispersed, the case is deeply tied to New York for the reasons previously explained.

>    7.    *Judicial Economy Also Disfavors Transfer.*

An additional factor also weighs against transfer: "the strong interest in preserving scarce judicial resources clearly weighs against transfer, since the parties in this action have already agreed to a discovery schedule and post-discovery motion schedule in this court, discovery has commenced, and the Court has set a[] . . . ready-for-trial date." *Taberna Cap. Mgmt., LLC v. Dunmore*, 2008 WL 2139135, at *3 (S.D.N.Y. May 20, 2008). So too here. This case is well underway. This Court has set trial "in stone" for March 2, 2026. ECF 193, at 2. It has entered a Case Management Plan and Scheduling Order and Protective Order. ECF 169; ECF 213. The parties have served and responded to discovery. The United States has substantially produced its investigative file. Around 180 third parties have been formally notified of this case. Parties and third parties have filed letter briefs and appeared at hearings. Defendants have formally previewed their forthcoming dismissal motion, and within ten days, Plaintiffs will amend their Complaint and join additional state co-plaintiffs. Negotiations of Deposition and Electronically Stored Information Protocols are near complete. The list goes on. Transferring this case would nullify much of this work—causing inefficiency, inconvenience, and delay.

Moreover, as Defendants effectively concede, most of the claims in this case lack *any* overlap with the Decree. Only Plaintiffs' claims of monopolization in the primary ticketing services market arguably relate in part to the retaliation and conditioning conduct that the Decree prohibits, *see* Compl. ¶ 210, and even those claims are based on other conduct not covered by— and postdating—the Decree, *see, e.g.*, *id.* (alleging Live Nation "[f]oreclos[ed] rival ticketing companies from the market" through exclusive dealing, strategic purchases, and expansion into the secondary-ticketing market). The remaining claims have nothing to do with the market at

issue in the Decree proceeding or the conduct the Decree prohibits and thus cannot possibly fall under the Decree's jurisdiction. There is no basis for transferring these claims.

Defendants' only response is to cite a single case granting transfer where *half* the claims arose out of an agreement with a forum selection clause, and the § 1404(a) factors suggested no "material reason to keep th[e] case" in the district. *Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, 2017 WL 4712422, at *9 (S.D.N.Y. Sept. 25, 2017). But those are not the facts here. None of Plaintiffs' claims arise from the Decree; the Decree only overlaps with—at most—a limited portion of the allegations underlying a minority of the claims; and the traditional § 1404(a) factors overwhelmingly weigh against transfer.

Ultimately, it is Defendants' request for transfer—not Plaintiffs' suit—that creates a "risk of multiple and potentially conflicting proceedings." Mot. 17. Transferring a few claims to D.D.C. would multiply the burden on the parties and the court system. Keeping the case in whole before this Court, by contrast, will allow all of Plaintiffs' claims to be resolved together in the most orderly and judicially economical fashion.

## B. The Retention-of-Jurisdiction Provision Does Not Apply Here and Cannot Overcome Plaintiffs' Choice of Forum.

Without the § 1404(a) factors on their side, Defendants seek refuge in an argument that Section XIV of the Consent Decree is a "mandatory forum selection clause" that sweeps an otherwise distinct action brought by a different group of plaintiffs back to the District of Columbia. Mot. 11. That is incorrect. Section XIV is a retention-of-jurisdiction provision, and it only retains jurisdiction for actions that seek to "construe," "modify," or "enforce" the Decree, and it only applies to parties to the Decree. ECF 188-8, at 29–30. This case is not such an action. Plaintiffs, including the fourteen Non-Decree Plaintiffs, allege violations of Sections 1 and 2 of the Sherman Act and state laws—not the Decree. Plaintiffs will prove the elements of liability

under the Sherman Act and state laws—not the Decree. And Plaintiffs seek the remedies provided by those laws—not the Decree. Nothing in the Decree, which resolved a different cause of action under the Clayton Act, relieved Defendants of their obligation to comply with the Sherman Act or immunized them in the event they violated the law.

1.    *Plaintiffs Do Not Seek to Enforce, Construe, or Modify the Decree.*

Contrary to Defendants' arguments, this case does not "fall[] within the ambit of the forum selection clause" in Section XIV of the Decree. Mot. 13. The 2010 complaint that led to the Decree alleged a single violation of Section 7 of the Clayton Act. ECF 188-3 ¶¶ 45–48. It alleged that the combination of Ticketmaster and Live Nation threatened substantially to lessen competition in the market for primary ticketing services for major concert venues, *id.* ¶ 46, and the Decree's provisions, including a limited divestiture and anti-retaliation conditions, aimed to address that "loss of competition," ECF 188-4, at 2.

By contrast, this case alleges violations of Sections 1 and 2 of the Sherman Act and twenty-two states' laws. Those violations involve anticompetitive conduct far beyond the conditioning and retaliation prohibited by the Decree, including acquisitions of rival ticketers, amphitheaters, promotion companies, and festivals; leveraging of secondary ticketing markets; agreements not to compete; cooperating rather than competing with actual and would-be competitors; forced access to competitors' data; long-term exclusive agreements; conduct in fan-facing and artist-facing markets, and much more. In short, Plaintiffs' current claims are separate and distinct from the Decree and the Clayton Act claim underlying it—as Defendants conceded by acknowledging that the Decree lacks preclusive effect here. ECF 174, at 7:3; *see, e.g.*, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 413 (2020) (suits "grounded on different conduct . . . occurring at different times" do not involve the same claims).

11

Defendants ignore all of this, arguing that *some* of the retaliation and conditioning Plaintiffs allege would also violate the Decree. Mot. 15. But that limited overlap does not transform this suit into one to construe or enforce the Decree for two reasons. First, conditioning and retaliation are not the sole basis for *any* of Plaintiffs' claims. Conditioning and retaliation are primarily relevant to Plaintiffs' claims in the primary ticketing market, which also rest on other conduct sufficient to demonstrate a violation. *See, e.g.*, Compl. ¶¶ 210–11 (alleging violation of Section 2 via conditioning, retaliation, *and* "[f]oreclosing rival ticketing companies from the market" through various other means). Thus, Defendants' liability does not turn on whether Defendants complied with the Decree. Indeed, even if Defendants were to "seek a declaration that [they] . . . did not violate" the Decree, Mot. 17, such a hypothetical declaration would not defeat any of Plaintiffs' claims, none of which depend solely on retaliation or conditioning.

Second, the Decree and the Sherman Act are separate sources of legal obligation that give rise to separate and independent claims. A consent decree's requirements are created by "the agreement of the parties, rather than the force of the law upon which the complaint was originally based." *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522 (1986). That is why, for example, a consent decree can impose relief that a court could not otherwise order, *id.* at 525, or create a new and different standard of liability. For example, the Decree here allows the government to obtain relief simply by proving, by a preponderance of the evidence, that Defendants engaged in a limited, specific set of prohibited conduct, ECF 188-8, at 38 (§ XVIII.A–B), without needing to prove relevant markets, market/monopoly power, or any of the other elements of Sherman Act claims—elements Plaintiffs will prove in this case.

Plaintiffs' claims, to the extent they involve conditioning and retaliation, do not rely on the prohibitions in the Decree. Rather, they are founded solely on Section 2 of the Sherman Act

and state laws, which independently prohibit Defendants' conduct. Contrary to Defendants'

suggestions, Mot. 14–15, this Court need not construe the Decree. Whether Defendants' conduct

"constitute[s] prohibited retaliation or threatening" under the Decree, *id.* at 15, does not answer

the question whether that conduct violates the antitrust laws at issue in this case.

D.D.C.'s jurisdiction over the Decree also has no bearing on this Court's ability to

adjudicate Plaintiffs' Sherman Act claims, which "exist in addition to and independent from the

Consent Decree." *United States v. Int'l Bhd. of Teamsters*, 803 F. Supp. 758, 761 (S.D.N.Y. 1992)

(worker's LMRA suit, even though based on "same series of events" as worker's earlier attempt

to challenge his termination under consent decree framework, was not a challenge to the decree).

Defendants marshal cases—unlike this one—that involve claims brought directly under a decree

or requiring the court to construe a decree. *Cf. Republic Bldg. Co. v. Charter Twp. of Clinton*, 81

F.4th 662, 669 (6th Cir. 2023) (affirming dismissal of breach-of-contract claim based on

noncompliance with consent judgment and constitutional claims that "stem[med] from" the

breach); *Flanagan v. Arnaiz*, 143 F.3d 540, 545–46 (9th Cir. 1998) (affirming injunction against

state-court lawsuit for breach of federal-court settlement); *United States v. ASCAP*, 32 F.3d 727,

732 (2d Cir. 1994) (district court had exclusive jurisdiction over suit "to construe and enforce the

terms of the Consent Decree"); *Davidson v. Dean*, 1996 WL 534089, at *2 (2d Cir. Sept. 20,

1996) (unpublished order) ("no jurisdiction over [plaintiff's] claim under the Consent Decree");

*Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 477 (N.D. Cal. 2011) (dismissing

declaratory judgment action that "turn[ed] upon construction of the settlement agreement"

granting plaintiff a patent license); *Magnolia v. Conn. Gen. Life Ins. Co.*, 157 F. Supp. 2d 583,

587 (D. Md. 2001) (court that approved class-action settlement was "the proper forum for

determining whether parties like [plaintiffs] received proper notice and were therefore bound by

13

the settlement"); *Willoughby v. Potomac Elec. Power Co.*, 853 F. Supp. 174, 175 (D. Md. 1994) (transferring claims asserting that plaintiff was "an intended beneficiary" of the consent decree and that "certain representations made to him in connection with the settlement were either fraudulent . . . or negligent"). The independent statutory foundations of Plaintiffs' claims distinguish the cases that Defendants cite—none of which support transfer here.

> 2.    *Live Nation's Preferences Do Not Circumscribe Plaintiffs' Venue Options.*

In effect, Defendants contend that Plaintiffs needed to file this case not only in D.D.C., but also potentially on the same docket as the closed Decree case. Not so. It is well established that "[w]here a defendant has previously entered into a consent judgment with the government in a prior antitrust case, the government has a choice among three alternatives: to seek to enforce the existing decree, to attempt to have that decree modified due to changed circumstances, or"— as here—"to bring a new action based on new antitrust violations." *United States v. Am. Tel. & Tel. Co.*, 524 F. Supp. 1336, 1374 (D.D.C. 1981) ("*AT&T*"); *accord United States v. Armour & Co.*, 402 U.S. 673, 674 (1971) (the government "could have brought" a new action under a different antitrust statute instead of invoking an existing consent decree). Defendants are thus incorrect from the outset when they argue the retention-of-jurisdiction provision mandates transferring this case to D.D.C. This case is a "new action based on new antitrust violations"— violations of the Sherman Act rather than the Clayton Act. *AT&T*, 524 F. Supp. at 1374; *see also United Shoe Mach. Corp. v. United States*, 258 U.S. 451, 459–60 (1922) (holding that Sherman Act and Clayton Act claims by the government are "not the same" "cause of action," and a judgment under one Act did not preclude a subsequent suit under the other Act, even where the two suits challenged the same "tying clauses").

Given that the law plainly authorizes a new action based on new antitrust claims, Defendants instead focus on trying to persuade the Court that Plaintiffs' election of this choice is

somehow unprecedented. S*ee, e.g.*, Mot. 11. They are wrong. The government can and does

bring new cases challenging conduct that may overlap with an existing consent decree. In *AT&T*,

for example, the United States reached a consent decree with AT&T in 1956 in the District of

New Jersey, and then sued AT&T in 1974 in D.D.C. *See* 524 F. Supp. at 1353 n.70. Notably, the

1956 decree contained a retention-of-jurisdiction provision indistinguishable from the one at

issue here:

> Jurisdiction is retained for the purpose of enabling any of the parties to this Final
> Judgment to apply to this Court at any time for such further orders and directions as
> may be necessary or appropriate for the construction or carrying out of this Final
> Judgment, or the modification or termination of any of the provisions thereof or for
> the enforcement of compliance therewith or for the punishment of violations thereof.

*United States v. W. Elec. Co.*, 1956 U.S. Dist. LEXIS 4076, at *24–25 (D.N.J. Jan. 24, 1956). Yet

the district court in the 1974 case concluded "the [1956] consent decree . . . does not require this

Court to relinquish jurisdiction to the United States District Court for the District of New Jersey."

*United States v. Am. Tel. & Tel. Co.*, 1976 WL 1321, at *3 (D.D.C. Oct. 1, 1976). Moreover,

AT&T moved to dismiss the 1974 suit, arguing that the consent decree barred the government

from "rely[ing] at all on the Bell System's integrated structure" as a basis for a monopolization

claim because the government had sought the divestiture of the relevant AT&T subsidiary in the

earlier suit but ultimately consented to a judgment without that relief. *AT&T*, 524 F. Supp. at

1374. And the district court rejected this argument, holding that AT&T was not "perpetual[ly]

immun[e] from antitrust scrutiny . . . as long as its structure remained essentially what it was in

1956." *Id.*

Similarly, in *United States v. Microsoft Corp.*, the United States filed a monopolization

suit against Microsoft in 1998, even though Microsoft was subject to an existing consent decree

entered in 1995. 1998 WL 614485, at *3 (D.D.C. Sept. 14, 1998). The prior decree, which

governed Microsoft's agreements with computer manufacturers, overlapped with allegations in

the 1998 suit that Microsoft anticompetitively required manufacturers to license and distribute Microsoft's Internet Explorer browser as a condition of licensing its Windows operating system. *Id.* at *1. Yet the decree was no bar to the United States' new lawsuit for similar anticompetitive conduct. Indeed, the parties "agree[d] that the consent decree [did] not bar a challenge under the Sherman Act." *United States v. Microsoft Corp.*, 147 F.3d 935, 950 n.14 (D.C. Cir. 1998).

Here, Plaintiffs were not only entitled, but effectively compelled, to bring a new action. A motion to enforce the Decree, for example, could address only a fraction of the conduct alleged in this case and secure only a slice of the relief demanded. Enforcement of the Decree would necessarily exclude the fourteen Non-Decree Plaintiffs and fail to address this case's twenty-seven claims for relief under separate statutes, involving distinct markets, consumers, subjects, and conduct. A motion to modify the Decree could be constrained for similar reasons. *See Salazar ex rel. Salazar v. Dist. of Columbia*, 896 F.3d 489, 498 (D.C. Cir. 2018) ("Courts may not, under the guise of modification, impose entirely new injunctive relief."); *Armour*, 402 U.S. at 674, 681–82 (essentially faulting the government for seeking to enforce a consent decree instead of filing a new action, where the government's claims exceeded the decree's scope). If Defendants' argument that the existence of a limited overlap with a prior decree barred the government from bringing "a new action based on new antitrust violations," *AT&T*, 524 F. Supp. at 1374, that choice could never actually be a choice. That outcome is contrary to both historical practice as well as a plain reading of precedent.

         3.     *The Consent Decree Does Not Immunize Defendants' Merger or Any of the Anticompetitive Conduct that Followed It.*

Defendants repeatedly suggest that the Consent Decree blessed Defendants' merged structure and business practices. Mot. 16-17. But the Decree court made no factual findings on the merits of the underlying Section 7 claim or the effects of the merger. ECF 188-4. Given the

limited scope of antitrust settlement reviews, the court's finding that the Decree was in the public interest indicates only that, giving due "deference to government predictions about the effects of [the] proposed remedies," it found a "reasonable basis upon which to conclude" that the Decree would "adequately remedy the competitive harms alleged." *United States v. Republic Servs., Inc.*, 723 F. Supp. 2d 157, 161 (D.D.C. 2010).

Indeed, few—if any—inferences can be drawn from the Decree Plaintiffs' decision to pursue settlement instead of litigation over the merger. Antitrust enforcement decisions—such as whether to challenge a merger or whether and when to settle versus litigate—may, just like any other type of litigants' decision to seek resolution, be driven by many different reasons, including resource constraints and the delicate balancing inherent in determining when and how to prosecute violations. *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 714 (4th Cir. 2021) (concluding that the Department of Justice's "decision not to pursue [a merger] isn't probative as to the merger's legality because many factors may motivate such a decision, including the Department's limited resources"); *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981) (recognizing the Attorney General must exercise discretion to balance the "competing social and political interests affected by a proposed antitrust consent decree").

Defendants complain that a remedy involving a breakup of Ticketmaster and Live Nation would "vitiate [the] bargain" in the Consent Decree. Mot. 5. They misconstrue that bargain and longstanding precedent. Addressing predictive concerns about a "violation of Section 7 of the Clayton Act," ECF 188-3 ¶ 6, the Decree permitted Defendants to merge in 2010. But it did not confer on Defendants "perpetual immunity from antitrust scrutiny," *AT&T*, 524 F. Supp. at 1374, or the legal entitlement to remain merged in violation of Sections 1 and 2 of the Sherman Act and state antitrust law. *See, e.g.*, *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (Posner, J.) ("The

filing of a suit does not entitle the defendant to continue or repeat the unlawful conduct with immunity from further suit."). Indeed, Supreme Court precedent expressly permits Plaintiffs to seek new relief for the causes of action here, regardless of the prior Decree case. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955). Under *Lawlor*, a later antitrust suit is "unaffected by" a prior suit's failure to secure "injunctive relief which, if granted, would have prevented the illegal acts now complained of." *Id.* at 328. To hold otherwise "would in effect confer on [Defendants] a partial immunity from civil liability for future violations" and undermine "the public interest in vigilant enforcement of the antitrust laws." *Id.* at 329.

The Decree does not immunize Defendants for conduct yet to occur, under statutes that were not investigated or settled, involving harms far beyond those alleged in the Decree, at the expense of competition and American consumers. The Decree also does not abrogate the government's statutory "duty" to "prevent and restrain [antitrust] violations" by Defendants. 15 U.S.C. § 4; *see id.* § 26. It is appropriate for the government to seek new relief here because Defendants' ongoing violations are equivalent to "an abatable nuisance." *Lawlor*, 349 U.S. at 327. And, as Defendants have conceded, the Decree does not preclude this case.

The Decree also does not authorize Defendants to violate the law so long as they do not violate the Decree. Nor could it. Unlike most settlement agreements, the Decree does not include a release of any claims. It thus clearly does *not* release Defendants from liability under the Sherman Act or state laws. *Cf., e.g.*, *101 Frost St. Assocs., L.P. v. U.S. Dep't of Energy*, 2022 WL 5082444, at *4 (E.D.N.Y. July 27, 2022) ("Because the 1999 Agreement did not contain any release language, or in any way address potential liability under CERCLA the plain meaning of the agreement is that it did not resolve CERCLA liability."). Moreover, even under Defendants' factually and legally incorrect portrayal of the Decree's "bargain," their argument would *still* fail

as a simple matter of timing. Should the Court find that a breakup is the appropriate remedy to restore competition, such an order would not come until *after* the Decree expires. *See* ECF 169, at 4 (setting March 2, 2026 trial in this case); ECF 188-8, at 30 (setting December 31, 2025 expiration for the amended Decree). In other words, Defendants will receive the full benefit of remaining merged though the expiration of the Decree. Indeed, while Plaintiffs believe that breaking up Ticketmaster and Live Nation is necessary to address Defendants' violations, *see* Compl. ¶ 371, any remedies will not be decided, much less implemented, until 2026.

4.    *Applying the Retaining-Jurisdiction Provision Here Would Violate the Rights of the Non-Decree Plaintiffs.*

Transfer would also be improper because it would disregard the rights of the fourteen Non-Decree Plaintiffs that did not sign the Consent Decree. "[C]onsent decrees can bind . . . only those parties who have agreed to the consent decree." *Antrim Mining, Inc. v. Davis*, 775 F. Supp. 165, 168 (M.D. Pa. 1991); *Local No. 93*, 478 U.S. at 529. Defendants' motion flouts that principle, asking the Court to consign Non-Decree Plaintiffs to a forum they did not choose and force them to litigate in a framework that they declined to join. That imposition would contravene the basic maxim that a settlement may not "impose duties or obligations on a third party, without that party's agreement." *Local No. 93*, 478 U.S. at 529.

Courts give great weight to a government plaintiff's choice of forum, particularly where Congress has conferred a broad choice of venues or provided for nationwide service of process; the Sherman Act does both. *See* 15 U.S.C. §§ 22-23; *see also Peregrine Myanmar, Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996) (the court "starts with a presumption in favor of the plaintiff's choice of forum"); *Rare Breed Triggers*, 669 F. Supp. 3d at 185 ; *cf. Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r*, 2008 WL 2228841, at *2 (D. Conn. May 27, 2008). Congress recently strengthened states' ability to litigate antitrust claims in their chosen

19

forums by preventing state enforcement actions from being consolidated in multidistrict litigation. *See* Merger Filing Fee Modernization Act of 2022, § 301, 136 Stat. 4459, 5970 (2022). The Non-Decree Plaintiffs' right to choose the forum for their enforcement claims cannot be tossed aside or glossed over.

Moreover, the Consent Decree's language expressly *precludes* applying the Decree against the Non-Decree Plaintiffs. The retention-of-jurisdiction provision is specifically limited to *signatories*. ECF 188-8, at 29 (retaining jurisdiction over requests from "any party to this Amended Final Judgment"). Defendants have not cited any authority for applying a retention-of-jurisdiction provision with such language to a nonparty without its consent. In *Goulart v. United Airlines, Inc.*, 1994 WL 544476 (N.D. Cal. Sept. 28, 1994), the plaintiffs were workers who were covered by a decree the EEOC had negotiated. *See id.* at *1–2. And as discussed above, *Androb Jewelry* is inapposite: It applied a forum-selection clause to a subsequent action between *the same parties,* none of them sovereigns. 2017 WL 4712422, at *3.

Finally, Defendants have made no showing of how transfer of the Non-Decree Plaintiffs claims would be more efficient. Nor could they: there are no judicial economies to be had in shoehorning the claims of nonparties into the Decree proceedings, particularly with respect to the state civil penalty and damages claims that have no analog at all in the Decree or the Clayton Act framework on which it is based. Thus, transferring the Non-Decree Plaintiffs' claims is a recipe for delay, marginalization, and unnecessary procedure.

## CONCLUSION

For these reasons, Plaintiffs ask this Court to exercise its broad discretion to deny Defendants' motion to transfer.

Dated: August 9, 2024

*/s/ Bonny Sweeney*
BONNY SWEENEY
*Lead Trial Counsel*
United States Department of Justice
Antitrust Division
Lorraine Van Kirk
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Bonny.Sweeney@usdoj.gov
Lorraine.VanKirk@usdoj.gov
*Attorneys for Plaintiff United States*

*/s/ Robert A. Bernheim*
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

*/s/ Amanda J. Wentz*
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-1178
Fax: (501) 682-8118
Email:  amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

*/s/ Paula Lauren Gibson*
Paula Lauren Gibson (Admitted *Pro Hac Vice*)
Deputy Attorney General
(CA Bar No. 100780)
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6040
Email: paula.gibson@doj.ca.gov
*Attorneys for Plaintiff State of California*


*/s/ Conor J. May*
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit f
Colorado Department of Law
Conor.May@coag.gov
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
*Attorney for Plaintiff State of Colorado*


*/s/ Kim Carlson McGee*
Kim Carlson McGee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: kim.mcgee@ct.gov
*Attorney for Plaintiff State of Connecticut*


*/s/ Elizabeth G. Arthur*
Elizabeth G. Arthur (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Elizabeth.arthur@dc.gov
*Attorney for Plaintiff District of Columbia*

*/s/ Lizabeth A. Brady*
Lizabeth A. Brady
Director, Antitrust Division
Liz.Brady@myfloridalegal.com
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
850-414-3300
*Attorney for Plaintiff State of Florida*


*/s/ Richard S. Schultz*
Richard S. Schultz (Admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
(872) 272-0996 cell phone
(312) 814-4209 facsimile
Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*


*/s/ Schonette J. Walker*
Schonette J. Walker (Admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
swalker@oag.state.md.us
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
(410) 576-6470
*Attorney for Plaintiff State of Maryland*


*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Katherine.Krems@mass.gov
(617) 963-2189
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
Scottl21@michigan.gov
*Attorney for Plaintiff State of Michigan*


/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
zach.biesanz@ag.state.mn.us
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Phone: (651) 757-1257
*Attorney for Plaintiff State of Minnesota*


/s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*


/s/ Zachary Frish
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-2150
zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

*/s/ Yale A. Leber*
Yale A. Leber (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Phone: (973) 648-3070
Yale.Leber@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*


*/s/ Jeremy R. Kasha*
Jeremy R. Kasha
Assistant Attorney General
Jeremy.Kasha@ag.ny.gov
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8262
*Attorney for Plaintiff State of New York*


*/s/ Sarah G. Boyce*
Sarah G. Boyce (admitted *pro hac vice*)
Deputy Attorney General & General Counsel
SBoyce@ncdoj.gov
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Phone: (919) 716-6000
Facsimile: (919) 716-6050
*Attorney for Plaintiff State of North Carolina*


*/s/ Sarah Mader*
Sarah Mader (Admitted *pro hac vice)*
Assistant Attorney General
Antitrust Section
Sarah.Mader@OhioAGO.gov
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
*Attorney for Plaintiff State of Ohio*

*/s/ Caleb J. Smith*
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street
Suite 1000
Tulsa, OK 74119
Telephone: 918-581-2230
Email: caleb.smith@oag.ok.gov
*Attorneys for Plaintiff State of Oklahoma*


*/s/ Tim Nord*
Tim Nord (admitted *pro hac vice*)
Special Counsel
Tim.D.Nord@doj.oregon.gov
Civil Enforcement Division
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301
Tel: (503) 934-4400
Fax: (503) 378-5017
*Attorney for Plaintiff State of Oregon*


*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
jbetsko@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: (717) 787-4530
*Attorney for Plaintiff Commonwealth of Pennsylvania*


*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, ext. 2064
(401) 222-2995 (Fax)
pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Danielle A. Robertson*
Danielle A. Robertson (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
DaniRobertson@scag.gov
(803) 734-0274
*Attorney for Plaintiff State of South Carolina*


*/s/ Hamilton Millwee*
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: 615.291.5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*


*/s/ Diamante Smith*
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Trevor Young (admitted *pro hac vice*)
Deputy Chief, Antitrust Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674
*Attorney for Plaintiff State of Texas*


*/s/ Tyler T. Henry*
Tyler T. Henry (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Facsimile: (804) 786-0122
thenry@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

27

*/s/ Rachel A. Lumen*
Rachel A. Lumen (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-5343
Rachel.Lumen@atg.wa.gov
*Attorney for Plaintiff State of Washington*


*/s/ Douglas L. Davis*
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Phone: (304) 558-8986
Fax: (304) 558-0184
douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*


*/s/ Laura E. McFarlane*
Laura E. McFarlane (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-8911
mcfarlanele@doj.state.wi.us
*Attorney for Plaintiff State of Wisconsin*


*/s/ William T. Young*
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841
william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*