UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC.<br><br>and<br><br>TICKETMASTER L.L.C.<br><br>    *Defendants.* | Case No. 1:24-cv-03973-AS-SLC |

**ORDER GOVERNING ESI DISCOVERY**

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better limit and define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the parties are aware of the importance of cooperation and commit to cooperate in good faith to promote the "just, speedy, and inexpensive determination" of this case, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant and discoverable information

1

consistent with Fed. R. Civ. P. 26(b)(l). The parties' cooperation includes identifying appropriate scope for eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to guide preservation and eDiscovery issues;

NOW THEREFORE, it is hereby ORDERED:

**1. GENERAL PROVISIONS**

    a) Except as specifically set forth herein, this ESI Order does not alter or affect the applicability of the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the Southern District of New York, or the Court's Individual Practices in Civil Cases.

    b) The production specifications set forth in this ESI Order do not apply to databases, data sources, logs, and other structured data except as described in Section 6(g) below.

    c) This ESI Order may be modified for good cause by a Stipulated Order of all parties or by the Court. The parties reserve their rights to seek reasonable modifications of these procedures as appropriate.

    d) If disputes arise concerning the scope and nature of a production, the parties will promptly meet and confer to reach agreement prior to seeking leave of the Court to resolve any disputed issues. If the parties' disagreement persists after meeting and conferring, the parties will notify the Court of their unresolved dispute(s) and seek resolution from the Court.

    e) The parties agree to meet and confer to the extent that new Plaintiff States are added later to this case and those states request reasonable modifications to these production specifications for their production obligations.

**2. COOPERATION**

    The parties are aware of the importance the Court places on cooperation and commit to cooperate and to meet in confer in good faith throughout the matter.

**3.    PRESERVATION**

a)    Each party will take reasonable and proportionate steps to preserve potentially relevant and discoverable documents and ESI in compliance with its duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. The parties agree to take reasonable and proportionate steps to preserve ESI in such a way that it can be produced in a reasonably usable form in accordance with Fed. R. Civ. P. 34(b)(2)(E)(ii).

b)    The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken and to be taken to preserve evidence relevant to the issues reasonably evident in this case.

c)    To reduce the costs and burdens of discovery, the parties represent that these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). ESI from these sources will be preserved to the extent it is preserved in the normal course of business, but they need not be collected, searched, reviewed, or produced, except for good cause shown:

    i.    Documents or communications sent solely between or among outside counsel for Defendants (or persons employed by or acting on behalf of such);

    ii.    Documents or communications sent solely between or among counsel for the United States (or persons employed by or acting on behalf of the U.S. Department of Justice);

    iii.    Documents or communications sent solely between or among counsel for Plaintiff States or state governmental agencies including the State Attorneys General (or persons employed by or acting on behalf of such counsel);

    iv.    Documents or communications sent between or among counsel for Plaintiff States or counsel for state governmental agencies including the State Attorneys General (or

persons employed by or acting on behalf of such counsel) and counsel for any State Attorney General (or persons employed by or acting on behalf of such counsel) in connection with the investigation that led to the filing of the complaint in this case;

  v. Documents or communications sent solely between or among counsel for the United States (or persons employed by or acting on behalf of the U.S. Department of Justice) and counsel for any Plaintiff States or other state governmental agencies including the State Attorneys General (or persons employed by or acting on behalf of such counsel);

  vi. Documents or communications sent solely between or among outside counsel for Defendants and inside counsel for Defendants;

  vii. Documents previously produced by Defendants to any Plaintiff and documents previously produced by any Plaintiff to Defendants;

  viii. backup systems used for disaster recovery purposes only or that are substantively duplicative of data that is more accessible to the party in control of such backup system elsewhere;

  ix. information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

  x. logs of calls made from cellular phones;

  xi. systems, server, and network logs;

  xii. systems and archives no longer in use that cannot be accessed without undue effort;

  xiii. temporary files;

  xiv. deleted, slack, fragmented, or other data accessible only by forensics;

xv. random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

xvi. data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates;

xvii. on-line access data such as temporary internet files, history, cache, and cookies;

xviii. dynamic fields of databases or log files that are not retained in the usual course of business; and

xix. voice messages that were inadvertently deleted before the Complaint was filed on May 23, 2024 and that cannot be recovered.

d) By preserving documents and ESI for the purpose of this case, the parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

**4. SEARCH & REVIEW**

a) The parties agree that, prior to undertaking an electronic search for ESI, a producing party shall specify the technique or techniques it will use to search for that material (the "Search Protocol"):

i. The parties will meet and confer regarding the use of search methodology, including formulation and use of search terms or application of technology assisted review (TAR). A producing party must specify the search universe against which search terms or TAR will be run and the search or TAR platform to be used (e.g., dtSearch, Lucene Search, Reveal, Relativity).

ii. If a party intends to use TAR, the parties shall first meet and confer to agree on a TAR protocol, including validation and disclosure of TAR metrics. The parties will not use TAR on paper documents or structured data types.

5

        iii.    The parties shall timely meet and confer regarding any disputes regarding their respective search methodologies.

    b)    **Search Terms and Custodians**. If the parties agree to use search terms and custodians to identify responsive documents, parties serving requests for production of documents may request search terms and custodians with service of the requests, which the producing party shall consider in good faith. The parties will meet and confer about search terms, including via the provision of search term hit reports (at the search-phrase and search-term level, de-duplicated across custodians and documents in other searches) after requests for production are served.

    c)    Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness or privilege review to determine if documents captured by search terms are in fact relevant to the requesting party's request or privileged.

    d)    Nothing in this Order may be construed or interpreted as requiring the production of all documents captured by any search term if any such documents are reasonably deemed not responsive to the requesting party's request or are otherwise privileged.

**5.    PROCESSING SPECIFICATIONS**

    a)    Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

    b)    Each party shall take reasonable steps to produce only a single copy of a responsive document. Reasonable steps include using automated de-duplication (i.e., de-duplication functionality provided by document review platforms) across custodians and at the family-level (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone

document) by removing documents identified as duplicative based on MD5 or SHA- 1 hash values or other industry standard methods to de-duplicate responsive ESI. Documents within a document family shall be considered duplicative of other documents only if all documents within each document's document family are duplicative. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication. A producing party will make a reasonable effort to identify all agreed-upon custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or AllCustodian. Duplicate custodian information may be provided by a metadata "overlay" and a producing party will make reasonable efforts to provide such overlay within 30 days after each production of documents. A producing party may use other commercially acceptable and reasonable methods to remove duplicate documents from production provided that method is disclosed to the requesting party. Provided, however, that this paragraph does not require manual de-duplication review, and it is not a violation of this paragraph for a party to produce any duplicate so long as they have taken reasonable steps to de-duplicate.

    c)    **Email Threading.** Production of a most inclusive email thread does not relieve the producing party of its obligation to produce responsive or lesser-included emails. No Document will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

**6.    PRODUCTION FORMATS**

    a)    **General Form of Production**. The parties agree that all documents existing in electronic and paper format, except those to be produced as native files, as set forth in Section 6(f)

below, shall be produced as black and white Group IV single-page TIFF image files with the associated text and metadata specified in this Section. If after reviewing any black and white document, a receiving party believes that color is critical to a document, the parties must engage in discussion regarding production of the specified documents in color, which production will not be unreasonably withheld. The parties are under no obligation to enhance an image beyond how it was kept in the ordinary course of business. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process. Hidden content (comments, draft markup, etc.) must be made visible prior to image conversion.

b) **Image Requirements**. TIFF image files shall be of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size. Each TIFF image file will use the Bates number of the page as its unique file name. The Bates stamp must: (1) be sufficiently descriptive to identify the party producing the document (the "producing party"); (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; and (3) be sequential within a given document. Images shall show all text and images that would be visible in the original native format. Original document orientation as displayed in the native file should be maintained in the TIFF image (e.g., portrait to portrait and landscape to landscape) to the extent practicable.

c) **Load File Requirements**. The parties shall provide image load files in Concordance (.OPT) format so as to facilitate the use of the produced images by a document management or litigation support system. The parties shall provide text files for each document containing searchable text with a filename that is the Bates number of the first page of the document. The extracted, relevant metadata should be provided in a Concordance .DAT in UTF-

8 Unicode format or other standard, compatible file format and extension as the receiving party specifies.

d) **Text Requirements**. All ESI and paper documents shall be produced with a corresponding multipage text file (i.e., one .TXT file per electronic file or paper document as opposed to one text file per page). The text file for ESI shall be created by extracting text directly from the underlying native file, unless the ESI must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI. The parties shall use reasonable efforts to create text files for paper documents using industry standard OCR technology. Each text file shall be named with the beginning Bates number of the electronic file or paper document to which the text file relates. Paper documents must be produced with the following metadata fields: (a) DOCID (b) ENDDOC, (c) CUSTODIAN, (d) TEXTLINK, (e) BEGDOC, (f) BEGATTACH, (g) ENDATTACH, and (h) EPROPERTIES.

e) **Hard Copy Files**. The parties agree that all documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. The parties will make reasonable efforts to unitize documents correctly. Where a Document or a Document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label must be scanned and produced as the first page of the Document or grouping to the extent reasonably practicable. Reasonable efforts are to be employed not to merge distinct documents into a single record, or split single documents into multiple records.

f) **Native Files**. The parties agree through the pendency of this litigation to exercise reasonable efforts to maintain all collected native files that may be relevant to this litigation in a manner that does not materially alter or modify the files or the metadata. The parties agree to

produce Microsoft Excel or other spreadsheet files (including .csv and similar files), audio or video files such as .wav or .mpeg files, and Microsoft PowerPoint files in their native electronic format, and the native files should contain the Bates number and confidentiality designation of the file in the file title. In addition, native spreadsheet, audio, or video files should be accompanied by an image (TIFF) placeholder that contains "File Produced in Native," the beginning Bates number and confidentiality designation, and Microsoft PowerPoint and PDF files should be produced as a TIFF file as well as a native file. If redactions of Microsoft PowerPoint files are necessary, then these files may be produced only in TIFF in accordance with Section 6(a) so long as the files are TIFFed in a manner that will yield production of all non-redacted content. If redactions of any other types of ESI produced natively are necessary, the parties shall meet and confer regarding how to implement redactions. Wherever reasonable and feasible, the producing party shall include accompanying metadata in the load file. Either party may, for good cause, request the production of file or files in native format where appropriate, in which case they will be processed and produced in an industry standard format. If a dispute arises with regard to requests for the production of files in native format, the parties will meet and confer to try to resolve the dispute.

      g)      **Structured Data and Source Code**. Except as provided in this subsection, this Order does not govern the production format in which structured data or highly confidential technical documents such as source code or detailed processor architecture designs and diagrams shall be made available for production or inspection. The parties shall meet and confer, as necessary, regarding issues related to the production or inspection format of these sources of information. To the extent a request for production calls for the production of structured data stored in a database, the parties agree to meet and confer to discuss methods for identifying, extracting, and producing the structured data in a format that is reasonably usable to the receiving party. To

the extent practicable, the parties will produce data contained in databases, data sources, and logs in a format that is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party. For example, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties will meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view or access the ESI.

      h) **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent document) shall be preserved whenever reasonable in such a way that a document and any attachments to that document are produced in the same production set and are identifiable as parent and child.

      i) **Embedded Objects**. Certain documents may be embedded within other documents (e.g., a spreadsheet embedded within a Microsoft PowerPoint document). Where reasonably and technically feasible, and not subject to claims of privilege, as applicable, nonimage embedded files shall be extracted as separate files and shall be treated as attachments to the file in which they were embedded. The parties shall take reasonable steps not to produce embedded images (e.g., logos, signature blocks) as separate Documents. The receiving party may request production of particular embedded files as separate file attachments, and the producing party shall not unreasonably deny such requests.

      j) **Compressed Files.** Container file types (*e.g.*, *.CAB, *.GZ, *.TAR, *.Z, *.ZIP) must be decompressed in a manner that ensures any and all nested containers are also

decompressed into the lowest uncompressed element, resulting in individual files. The container file(s) itself must not be produced.

k) **Linked Files and Collaborative Work Environments.** A producing party must conduct an automated search of documents to be produced to identify in those documents links to additional documents in any Collaborative Work Environment maintained by the party (such as OneDrive, SharePoint, Box, Google Workspace, Confluence, or Druva). For any such documents ("Linked Parents"), to the extent reasonably feasible and capable of being done automatically, the producing party shall use its best efforts using available technical solutions to produce the document corresponding with each identified link ("Linked Attachments"). To the extent reasonably feasible and capable of being done automatically, a party shall use its best efforts to populate the LINKEDATTACHIDS field with the document control numbers of every record the Linked Parent reference. To the extent reasonably feasible and capable of being done automatically, for each Linked Attachment, the producing party will use available technical solutions to attempt to populate the LINKEDPARENTIDS field with the document control numbers of every record that links to the Linked Attachment. In the event the Linked Parent or Linked Attachment were part of a prior production, the producing party will employ commercially reasonable efforts to provide an overlay file populating these two fields as needed and to the extent feasible with available technical solutions. For Collaborative Work Environments offering version control, the producing party will use automated collection methods to produce the version provided by the platform that has a DATESAVED value closest to the DATESENT of the referencing email or message (i.e., manual review and linking will not be necessary if the Collaborative Work Environment will link only to more recent versions of the document using automated methods). For documents where Linked Attachments and metadata were not produced, a receiving party may

request that the producing party search for and produce specific Linked Attachments with appropriate metadata within 30 days, which the receiving party will do to the extent the Linked Attachments still exist and can be retrieved from the identified link.

l) **Text and Chat Messages**. The parties must preserve, and take reasonable steps to identify, collect, and produce relevant text and chat messages, including ephemeral and encrypted messages. When producing text and chat messages (e.g., messages sent via SMS, Teams, Slack, WhatsApp, Signal, iMessage, and other short messaging platforms), messages must be unitized on the conversation/channel level into 24-hour calendar-day chunks, or conversation days, with each conversation day including all messages in that conversation or channel on a given calendar day. Each conversation day must be reviewed and produced as a single record, with redactions for privilege as provided below. The records must be produced with any applicable metadata fields listed in Section 6(n), including, but not limited to, BEGINDATETIME, ENDDATETIME, TXT-THREAD-GROUP (the BEGBATES of the first conversation day in a given discussion/channel, or other consistent value used to identify the conversation), and TXT-PARTICIPANTS (a list of participant names). The producing party will use best available automated solutions to assign full names to participants who are identified only by phone number, email address, handle, or other identifier, but manual review and identification will not be required to assign full names to such participants.  However, if specifically requested by the receiving party with reference to particular documents and participants, the producing party agrees to employ commercially reasonable efforts, including limited manual review, to locate the full names of the participants in the specific documents identified by the receiving party.

m) **Voice Messages, Audio Files, and Video Files**. The parties must preserve, and take reasonable steps to identify, collect, and produce all relevant voice messages, audio files, and

13

video files. These records should be produced in MP4, AVI, WAV or MP3 format and adhere to the specifications regarding Native Format. The records must be produced with any applicable metadata fields listed in Section 6(n), including, but not limited to, SENTDATETIME, FROM, and TO fields (with full names assigned for any participants identified only by phone number when those names may be determined by best available automated solutions or manually when specifically requested by the receiving party). In the event a party is unable to collect and produce the voice messages as native audio or video files, the party shall produce a manual transcription of each relevant file.

n)      **Metadata Fields**. Each of the metadata and coding fields set forth below that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, such data need not be produced. Any metadata fields for redacted documents that would reveal privileged information shall be excluded and that removal shall be noted as a separate category of redaction.

- BEGBATES
- ENDBATES
- BEGATTACH
- ENDATTACH
- HASHVALUE
- CUSTODIAN
- ALLCUSTODIAN
- SENTDATETIME
- RECEIVEDDATETIME

- BEGINDATETIME

- ENDDATETIME

- TIME ZONE

- NATIVE FILE LINK

- AUTHOR

- FROM

- CC

- TO

- BCC

- SUBJECT

- TITLE

- FILENAME

- FILEEXT

- FILESIZE

- DATETIMECREATED

- DATETIMELASTMOD

- TEXT

- ORIGINALFILEPATH

- ATTACHMENT COUNT

- CONFIDENTIALITY

- REDACTED

- MEDIAID

- VOLUMENAME

15

- IMPORTANCE
- DELIVERYRECEIPT
- READRECEIPT
- TXT-CHATROOMNAME
- TXT-PARTICIPANTS
- TXT-THREAD-GROUP
- LINKEDATTACHIDS
- LINKEDPARENTIDS
- INTERNETMSGID
- MESSAGEID
- INREPLYTOID
- CONVERSATIONINDEX

o) **Re-Productions**. Documents previously produced by Defendants in response to any civil investigative demand, subpoena, or request issued by the Plaintiffs need not be re-produced in this case. Documents previously produced in another litigation, arbitration, government inquiry or other matter that are re-produced in this matter may be re-produced in the same manner and form as originally produced in the other matter. For any documents that are produced in this manner, a privilege log will be provided simultaneously if a privilege log was provided in the original matter, and the receiving party may challenge privilege designations using the procedures governing privilege challenges in this case.

p) **Non-Party Productions.** Whenever a non-party makes a production, the production shall be made simultaneously to Plaintiffs and Defendants. In the event, that a non-

party fails to make a production to all parties, the party that received the production will re-produce the production to other parties within three (3) business days.

**7. PRIVILEGE LOGS**

a) If any party withholds any document that is responsive to a discovery request, and is otherwise discoverable under the Federal Rules of Civil Procedure, on the basis of the attorney-client privilege, work product doctrine, or any other discovery privilege, that party shall prepare a privilege log (Fed. R. Civ. P 26(b)(5)) setting forth the privilege relied upon and specifying separately for each document. The producing party will produce privilege logs in MS Excel (.xlsx) format.

b) A party or non-party seeking to withhold or redact a document under the attorney-client privilege, deliberative process privilege, work product protection, or any other privilege or protection must, at a minimum, provide the essential elements necessary to sustain a claim of privilege, including a description of the document's subject matter with sufficient detail to enable the parties to assess the privilege claim and the facts relied upon to support the claim.

c) If the producing party contends that more than one basis for withholding applies to a single document, all bases must be asserted in the privilege log.

d) A party is not required to log redactions based on personally identifiable information (PII) provided that (1) a metadata field is provided indicating what documents are redacted due to personally identifiable information, (2) the redacted document states "Redacted PII" in the text of the redaction box, and (3) the producing party agrees to provide additional information in response to reasonable, individualized requests. All non-PII redactions must be logged.

e) A single document containing multiple email message (i.e., an email chain) may be logged as a single entry with sender and recipient information for only the most inclusive email message.

f) If any member of a produced document family is withheld on grounds of privilege or work-product, the producing party will produce a Bates stamped placeholder slipsheet that identifies the document as withheld as privileged and will identify the document in the privilege log by the Bates number on the placeholder slipsheet. If the withheld document is part of a responsive document family, the parties will insert a placeholder to indicate that the document has been withheld from that family and will produce all non-privileged documents in the family.

g) For each entry on the privilege log, all attorneys who acted in a legal capacity with respect to that particular document or communication must be marked with the designation ESQ after their last name (including a space before and after "ESQ"). The privilege log must include the name, title, and company affiliation for each listed individual. Upon request, a producing party must make commercially reasonable efforts to produce the names of all members of a producing party's email listserv or group (including last name, first name, and any ESQ designation) for a listserv or group in a privilege log.

h) Following receipt of a privilege log, the receiving party may challenge any individual entry on the log. Such challenge shall be made in writing, and the challenging party shall provide a specific reason for its challenge to each individual entry. The parties will meet and confer on any such challenge within ten (10) days. If the parties are unable to resolve any dispute, the challenging party may submit the dispute to the Court pursuant to the Local Rules.

8. **REDACTION**

To protect against potentially improper disclosure of information subject to the attorney-client privilege, work product doctrine, or other recognized litigation privilege, the parties may

redact only those portions of a document that contain information protected from disclosure under the attorney-client privilege, work product doctrine, or any other recognized litigation privilege. Redactions will be applied narrowly so that the receiving party has the ability to discern to the maximum extent practicable the privilege assertion within the document and to view all non-privileged communications and material. If a document is produced with redactions, the redactions must not obscure any header information (e.g., from, to, subject, sent date) of any emails or other communications reflected in the document, except to the extent that information is privileged. The parties may also redact sensitive personally identifiable information so long as that information is not responsive to any requests for production.[1] Such redactions in the text and in an accompanying metadata field shall indicate the reason for the redaction, such as, for example, "REDACTED: PRIVILEGE" or "REDACTED: PII."

**9.  PRODUCTION AND CLAW-BACK OF PRIVILEGED DOCUMENTS**

Paragraphs 11 through 15 of the Protective Order (ECF No. 213) governing Inadvertently Disclosed Information, dated July 29, 2024 constitutes an order for purposes of Federal Rule of Evidence 502(d).

**10. REPLACEMENT PRODUCTION**

If a producing party changes, in whole or in part, the redaction or privilege designation of a document, the updated document shall be produced with a load file necessary to link the replacement file to other previously produced document family members. The replacement document shall bear the same Bates number or, if agreed by the parties, a Bates stamp suffix reflecting that the document is a replacement.

---

[1] Sensitive personally identifiable information means information or data that would identify an individual, including a person's Social Security Number, address, date of birth, driver's license number (or other state identification number, or a foreign country equivalent), passport number, financial account number, or credit or debit card number.

**11.   PASSWORDS AND ENCRYPTION**

The parties will take commercially reasonable steps to provide all Documents and ESI such that the receiving party is not blocked by any passwords or encryptions on those documents and ESI. If a party inadvertently produces password-protected files, that party will attempt to remediate the issue.

**12.   COSTS OF PRODUCTION**

Unless the Court orders otherwise for good cause shown, each party and nonparty will bear their own costs related to the production of their own documents. Nothing in this Order prevents either party from later making arguments for the recovery or sharing of costs related to the collection, review or production of relevant ESI.

**IT IS SO ORDERED.**

Dated:  August 28, 2024

Hon. Arun Subramanian
United States District Judge