<u>VIA ECF</u>

The Honorable Arun Subramanian                                                                October 23, 2024
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:   <u>United States, et al. v. Live Nation Entertainment, Inc., et al.</u>, No. 1:24-cv-03973

Dear Judge Subramanian:

  Plaintiffs respectfully move for an order compelling Defendants to (1) meet interim deadlines for custodial productions, and (2) collect and search custodial files that are appropriate and proportional to the needs of this case, consistent with Plaintiffs' proposal. *See* Exhibit 1 (Plaintiffs' proposed interim production deadlines); Exhibit 2 (Plaintiffs' proposed custodians).

  Despite Plaintiffs' best efforts to work with Defendants to develop a reasonable discovery plan, Defendants have failed to put forward an appropriate proposal for timely collecting and producing custodial documents consistent with their obligations, the scope of discovery at issue, and importance of this action to the American public. Defendants have produced <u>fewer than 200 documents in total</u> in this litigation to date, and without intervention from the Court, Defendants will not meet the Court's January 15, 2025, substantial completion deadline.

## Plaintiffs' Interim Deadlines Proposal

  Plaintiffs have expeditiously pursued discovery in this case, heeding the Court's guidance. After the September 27 conference, Plaintiffs quickly sent a narrowed custodian proposal and provided proposed search terms to narrow the scope of Defendants' Technology Assisted Review (TAR). Nevertheless, Defendants continue to insist on an unreasonable discovery plan that fails to account for the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

  Specifically, Defendants have set an arbitrary limit on the number of documents they will review (and therefore produce). Defendants insist that they will (1) utilize no more than 100 contract attorneys for 40 hours a week on the business days between October 15, 2024, and December 31, 2024 for a maximum total of 1.5 million documents reviewed (based on each attorney reviewing less than 32 documents an hour) and (2) require an attorney to review every document before it is produced (despite using TAR).

  Defendants do not dispute that Plaintiffs' document requests seek relevant materials, instead they claim only that the "finite amount of time" before the substantial completion deadline precludes requiring Defendants to review more than 1.5 million documents. *See* Exhibit 3 (the parties' email correspondence). Defendants have arbitrarily limited their document production to "what 100 contract attorneys can review" while refusing to consider obvious alternatives: committing more resources to discovery or choosing a different production method.

  Having delayed review and limited review resources, Defendants are now perversely attempting to use the Court's substantial completion deadline to justify unilaterally *limiting* their discovery obligations. While Defendants are free to choose a reasonable methodology to identify responsive documents, they are not empowered under the Federal Rules to curtail discovery by refusing to commit the necessary resources to that methodology. *See In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2021 WL 4295729, at *6 (W.D. Pa. Aug. 23, 2021), *R. & R.*

*adopted*, 2021 WL 4295719 (W.D. Pa. Sept. 21, 2021) (noting that general right to select review methodology "does not . . . give carte blanche to a producing party"). In other large-scale government enforcement actions, similar defendants have committed resources far exceeding Defendants' "what 100 contract attorneys can review" standard to produce many more documents than Defendants even propose reviewing. *See*, *e.g.*, *United States v. Google*, No. 1:23-cv-00108 (E.D. Va. Sept. 15, 2023), Dkt. #444 at 2 (Google reviewed approximately 4.8 million documents in twenty-two days); *id.* at Dkt. #478 at 1-2 (same); *FTC v. Qualcomm, Inc.*, 5:17-cv-00220, (N.D. Cal. Dec. 15, 2023), Dkt. #403 at 1 (third-party Apple utilized a review team of 500 attorneys to produce approximately 2.6 million documents, inevitably reviewing a far greater number, in two months).

Importantly, Defendants have not claimed they lack resources to commit to discovery. *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 305 (S.D.N.Y. 2012) (rejecting proportionality claims when party has "ample resources to respond in discovery"). Indeed, they could not: Defendants command a market capitalization of more than $25 billion and retained two of the largest law firms in the world; there is no reason they cannot commit the necessary resources to satisfy their discovery obligations.

In any event, the use of attorney resources is a red herring. Defendants have chosen to use a TAR 2.0 process where "[a]ll coding is performed by human reviewers," instead of one of the other readily available production methodologies that does not require a linear review of every document. *See* Exhibit 3. For example, Apple (a sophisticated party represented by one of Defendants' law firms) used TAR to identify documents that would "be subject to human review or *produced without human review.*" *Epic v. Apple,* 19-cv-03074 (N.D. Cal. Dec. 15, 2020), Dkt. #189 at ¶ 1 (emphasis added). But if Defendants wish to continue applying their chosen protocol, they must sufficiently scale up their attorney review team to meet the scope of production required by Rule 26, just as other similarly situated defendants have done.

The proposed interim deadlines would ensure that Defendants fulfill their discovery obligations.[1] While Defendants have agreed to limited aspects of Exhibit 1, they will not agree to devote the necessary resources to reviewing at least 400,000 documents a week, which is appropriate given the nature of the action and the Rule 26(b)(1) factors described above. Defendants' anticompetitive conduct continues to affect tens of millions of American concertgoers and tens of billions of dollars in commerce each year; Plaintiffs are entitled to discovery proportional with this alleged harm. Plaintiffs ask the Court to adopt interim production deadlines consistent with Exhibit 1.

## Plaintiffs' Custodian Proposal

Plaintiffs' custodian proposal (*see* Exhibit 2), accounts for the contested issues in this action, the expedited discovery timeline, and the burden concerns Defendants have expressed. Plaintiffs respectfully request 74 total custodians, including 39 custodians from the pre-Complaint investigation. The proposal limits full custodial collection, however, to only 25 individuals. The number of custodians is smaller than in many other large-scale enforcement

---

[1] On October 22 Defendants indicated they now think search terms utilized in Plaintiffs' pre-Complaint investigation are sufficient to utilize with TAR review, but the terms Plaintiffs provided Defendants on October 21 better account for all the claims in the Complaint and the damages sought by State Plaintiffs.

litigations and is tailored to fit the needs of the case.[2] *See, e.g.*, *United States v. Anthem, Inc.*, No. 20CV2593ALCKHP, 2024 WL 1116276, at *2 (S.D.N.Y. Mar. 13, 2024) ("During the Poehling litigation, the government collected documents from 187 custodians for the time period 2000 to 2019."); *United States v. Google*, No. 1:20cv3010 (D.D.C. March 23, 2021), Dkt. #120 at 3 (approving 116 custodians); *United States v. Google,* No. 23-00108 (E.D.Va. June 1, 2023), Dkt. #239 at 4 (brief noting 119 custodians). The new custodians proposed by Plaintiffs are intended to address issues that are core to Plaintiffs' claims—principally amphitheater operations and strategy, acquisitions, premium ticket strategy, and Defendants' relationship with Oak View Group—not fully covered by custodians selected in the pre-Complaint investigation.

  Given the importance of appropriate custodians to document discovery, Plaintiffs attempted to engage with Defendants on this issue early on. Despite receiving Plaintiffs' document requests on July 15 and August 7, however, Defendants rejected Plaintiffs' proposal to begin discussing custodians and search terms in August, insisting instead on delaying until after they had served objections. After Defendants finally produced organizational charts on September 10, Plaintiffs unilaterally proposed potential custodians and related questions on September 25. Thereafter, it took Defendants nearly three weeks to provide information about the individuals employed by Defendants. Once they did, Plaintiffs responded with a revised and narrowed custodian proposal in less than a week, on October 18.

  Defendants object to providing pre-2017 documents based on burden, ignoring that these custodians' documents are directly relevant to allegations in the Complaint. For example, Plaintiffs allege that one of the ways Defendants have neutralized competitors is through acquisitions, including, among several others, AC Entertainment in 2016 Am. *See* Compl. ¶ 124-25. At least seven of Plaintiffs' newly-proposed custodians relate to Defendants' acquisitions. The Complaint also includes allegations from 2014 that Defendants used SafeTix to keep competitors at bay, *see* Am. Compl. ¶ 110, and that Live Nation's CEO agreed to a competitive detente with Oak View Group as early as 2016. *See* Am. Compl. ¶ 7. Plaintiffs are entitled to custodial documents relevant to these, and other, allegations regarding pre-2017 conduct.

  Defendants do not contest the relevance of any of Plaintiffs' proposed custodians. Instead, they object on burden grounds, but as described above, Defendants cannot show the discovery Plaintiffs seek is inconsistent with the Rule 26(b)(1) factors. To the extent necessary, Plaintiffs are amenable to further narrowing the number of documents subject to collection from each proposed custodian, but Plaintiffs cannot assess the need for any additional changes until Defendants provide additional information consistent with Exhibit 1.

  Plaintiffs met and conferred with Defendants regarding interim deadlines and custodians on: October 3 at 4 PM (approx. 1 hour), October 14 at 3 PM (approx. 1 hour and 15 minutes), October 16 at 1:30 PM (approx. 1 hour), October 18 at 4 PM (approx. 1 hour) and October 22 at 5 PM (approx. 1 hour). A lead trial counsel meet and confer was held on October 22, 2024, concerning both issues, at which time Plaintiffs informed Defendants they were at an impasse. John Thornburgh was the principal participant for Plaintiffs concerning these issues, and Robin Gushman and Tim O'Mara were the principal participants for Defendants.

  For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to proceed with document collection from the custodians as set forth in Exhibit 2.

---

[2] Plaintiffs removed five custodians from the pre-Complaint investigation to ensure their custodian proposal reflects the claims now at issue, and after Defendants identified on October 22 three individuals they did not think had relevant documents, Plaintiffs removed them as well.

Respectfully submitted,
*/s/ Bonny Sweeney*

Bonny Sweeney

4