**VIA ECF**

The Honorable Arun Subramanian
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re: United States, et al. v. Live Nation Entertainment, Inc., et al., No. 1:24-cv-03973**

Dear Judge Subramanian:

Non-party Anschutz Entertainment Group, Inc. ("AEG"), through the undersigned counsel, respectfully submits this letter in opposition to Defendants' Motion to Amend the Protective Order. As noted in its prior filing, AEG is Defendants' primary competitor in both primary ticketing services and concert promotion services. *See* ECF No. 201-1 at 1. In their Motion, Defendants seek to amend the Protective Order to allow disclosing "the substance of reports of alleged conduct, conversations, or actions involving Defendants" to any of their employees. *See* ECF No. 319 at 1. Defendants argue that the proposed amendment: (1) would not disclose any non-party's competitively sensitive information to Defendants' employees; (2) would be critical for their defense in this action; and (3) would promote efficiency and reduce burden on Defendants, non-parties, and the Court. *See generally id*. None of these arguments hold water. Because Defendants' proposed amendment risks disclosure of AEG's confidential information and deprives AEG of notice and the opportunity to object to a competitor's unilateral de-designation of information contained in AEG's Confidential and Highly Confidential documents, AEG requests that this Court deny Defendants' Motion.

***First***, Defendants' proposed language—which allows for the disclosure of the "substance of reports of alleged conduct, conversations, or actions involving Defendants" to any Defendants' employees—captures a wide-range of topics and allows potential misuse of AEG's confidential information. Just a few examples below demonstrate its overwhelming breadth and problematic nature:

- A venue complains to AEG about Live Nation's threat to divert content away from the venue for using one of Ticketmaster's competitors. This complaint would fall under "reports of alleged conduct" involving Defendants, and the information could be shared with Defendants' employees. Not only will Defendants gain insight into AEG's relationship with the venue, the venue also becomes a potential target for Defendants' retaliation for information they told AEG in confidence.
- AEG internally discusses its impressions of an ongoing negotiation with Live Nation relating to the booking of Live Nation-promoted shows at an AEG-owned or operated venue. This discussion would fall under "conversations" involving Defendants, and the information could be shared with Defendants' employees. Such disclosure would significantly disadvantage AEG in future negotiations.
- AEG internally discusses how to respond to an initiative that it heard Live Nation is undertaking to compete for AEG-promoted artists. This scenario would also fall under

"actions" involving Defendants, and the information could be shared with Defendants' employees to provide insight into AEG's internal deliberations in areas in which they are in direct competition.

Moreover, as explained in their own Motion, Defendants' proposed amendment allows disclosure of AEG's confidential information to *any* of Defendants' employees, including their in-house counsel and senior executives who are involved in competitive decision-making. ECF No. 319 at 3. This disclosure further increases the risk of Defendants' misuse of AEG's confidential information to the detriment of AEG's and others' ability to compete, a risk that is pronounced in the backdrop of the United States Department of Justice's prior findings that Live Nation repeatedly violated an existing consent decree by retaliating against venues for electing to use competing ticketing platforms. *See* ECF 201-1 at 3 (citation omitted). Defendants argue that "it will not always be clear from the documents which individuals at Defendants purportedly were involved in the relevant events." ECF No. 319 at 3. But they fail to explain why the disclosure shouldn't be limited to those individuals whom Defendants' counsel, in good faith, believe were involved in those events. Their argument also rests on the assumption that "substance of reports of alleged conduct, conversations, or actions involving Defendants" can "hardly be considered competitively sensitive." *Id*. As explained above, that assumption is misguided.

Equally concerning is the fact that Defendants' proposed amendment provides no procedural protection for non-parties like AEG. This Court instructed Defendants "to give some notice to the third parties who are at issue to allow them a chance to raise objections" before disclosing their documents. Sept. 27, 2024 Status Hr'g Tr. 64:13-15, ECF 288. Defendants fail to explain why "substance" of those documents deserves a different treatment. Their proposed language deprives non-parties, like AEG, of notice and the opportunity to object *before* the disclosure occurs. It instead allows Defendants' counsel to unilaterally de-designate Highly Confidential or Confidential information. *See* ECF No. 319 at 1. As a result, the employees that shape Defendants' competitive strategy against AEG may have knowledge of the contents of AEG's sensitive business documents, without AEG ever knowing. Such a result contradicts the courts' guidance "to provide additional protections for non-parties who are uninvolved in the day-to-day litigation of [the] matter, and therefore, are disadvantaged with respect to their ability to protect their business interests." *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, No. 10-cv-00781, 2017 WL 1483548, at *2 (W.D.N.Y. Apr. 25, 2017) (collecting cases).

**Second**, the proposed amendment is *not* necessary for Defendants to prepare their defense in this case. Defendants can investigate the allegations against them without revealing confidential information to their employees. After reviewing the confidential information contained in documents produced by third-parties, Defendants' counsel may ask open-ended questions to relevant employees about their actions, such as "did you have a conversation with anyone at venue X and, if so, what did you say?" The answers to these questions from Defendants' employees (not the information contained in competitively sensitive third party communications) is what Defendants require to prepare their case and their witnesses. Disclosing such sensitive third-party communications to those Defendants' witnesses will do nothing other than allow those witnesses to adjust their testimony to accommodate information from third-parties, when they should in fact

2

be sequestered from such information. No amendment is needed for Defendants to adequately prepare their defense.

***Third***, Defendants have not shown why "[i]t would be impracticable and unnecessarily burdensome to require Defendants to seek relief on a document-by-document basis[.]" ECF No. 319 at 1-2. They merely complain that there are at least 640,000 documents designated Confidential or Highly Confidential. *Id*. at 2 n.1. But they fail to identify any examples of actual third-party documents that they need to share with their employees or explain why they cannot quickly ask third parties for consent to their disclosure. They also do not explain why they cannot group some documents together into certain categories to narrow disputes. Their instant proposal ignores this Court's instruction that Defendants "at least [ ] narrow[ ] what's in dispute, because . . . there's a lot here that [non-parties are] not trying to get in front of the eyes of Live Nation employees[.]" Sept. 27, 2024 Status Hr'g Tr. 71:1-3. Moreover, because they have made no effort to coordinate with third-parties like AEG on this issue—despite being on the phone for hours of meet and confer negotiations with AEG—Defendants cannot credibly claim that working with non-parties is too burdensome or unworkable. Indeed, AEG is willing to allow limited disclosures where appropriate, and already responded with affirmative consent allowing Defendants to disclose a particular document within a mere 48 hours of Defendants' request. There is no reason why Defendants cannot at least attempt such a process going forward—already contemplated by the protective order—before requesting the dramatic relief of unilateral de-designation of third party sensitive information.

Furthermore, contrary to Defendants' claim that the proposed amendment would somehow promote efficiency, it risks undermining efficiency in this case. Non-parties who were previously expeditiously cooperating with discovery requests may suddenly find themselves subject to retribution or at a competitive disadvantage by virtue of responding to a subpoena. "[P]arties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited. . . . [I]f a non-party is not fearful of public disclosure of their proprietary documents due to the protection gained from a protective order, they will likely be more forthcoming. As a result, cases will be able to proceed more efficiently through the discovery phase." *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 343 (N.D. Ill. 2008). In other words, Defendants' proposed amendment will result in inefficiency by creating the potential for additional discovery disputes in this case.

For the foregoing reasons, AEG requests this Court to deny Defendants' Motion to Amend the Protective Order.

Dated: October 24, 2024

Respectfully submitted,

**Hogan Lovells US LLP**

3

*/s/ Justin Bernick*
Justin W. Bernick (admitted *pro hac vice*)
Molly Pallman (admitted *pro hac vice*)
555 13th St. NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
molly.pallman@hoganlovells.com

*/s/ Claude G. Szyfer*
Claude G. Szyfer
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
claude.szyfer@hoganlovells.com

*Attorneys for Anschutz Entertainment Group, Inc.*