<u>VIA ECF</u>

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**    *United States et al. v. Live Nation Entertainment, Inc. et al.*; **1:24-cv-03973-AS-SLC**

Dear Judge Subramanian:

Plaintiffs' motion regarding document review and production is completely disingenuous. Plaintiffs misleadingly represent to the Court that "Defendants have produced fewer than 200 documents in total in this litigation to date." Pls.' Letter-Motion (ECF No. 320) ("Ltr.") at 1. This ignores the fact that Defendants have already produced over 600,000 documents to Plaintiffs at a cost of over $16 million. And since the September 27 discovery conference, Defendants have reviewed another 500,000 documents at a cost of over $1 million, and expect to produce the responsive, non-privileged documents from this set by mid-November. Defendants' proposal for completing the custodial review uses a combination of search terms and industry-leading "technology assisted review" to focus and streamline the review, includes employing 100+ contract attorneys per business day, will cost about $75,000 per business day (about $4 million going forward, and over $21 million in total), and will result in the review of an additional 24,000 documents per business day of documents *that technology has identified as the most likely to be responsive*, totaling over 1.5 million documents reviewed by the January 15, 2025 substantial completion deadline.

At its core, Plaintiffs' position is that $75,000 a day and over $21 million in total is not enough. Plaintiffs demand that Defendants review at least 400,000 documents a week (three-times Defendants' proposal) and, on top of that, arbitrarily produce—without actual review—whatever remaining documents TAR identified as potentially responsive once we reach January 15, 2025. In light of Plaintiffs' overbroad requests, that's likely to  include millions of documents. At a minimum, Plaintiffs are demanding that Defendants spend at least three times the cost of Defendants' proposal—i.e., $12 million between now and January 15, for a total of nearly $30 million since the investigation started. Plaintiffs' proposal is "unreasonable," "unduly burdensome," "expensive," and not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b), (g). The Court should reject Plaintiffs' request, and adopt Defendants' proposal to review 24,000 documents a day / approximately 1.5 million documents total. *See* attached Exhibit 1 (Defendants' proposal).

**Plaintiffs Ignore the Investigation Productions & Fail To Adopt a "Rifleshot" Approach**
Plaintiffs wholly disregard Defendants' substantial discovery efforts to date. This lawsuit resulted from a nearly two-year investigation in which Defendants collected over *16 million* documents from *46* custodians spanning a *five-year* time period; reviewed *2.4 million* documents; and produced *~600,000* documents at a cost of *~$16 million*.[1] Since the Complaint was filed,

---

[1] These figures do not include the ~1.7 million documents Defendants previously produced to Plaintiffs between 2015 and 2019 in response to Plaintiffs' prior investigations.

Defendants have worked diligently to respond to dozens of broad discovery requests, reviewing over *500,000* documents in the past three weeks. Following the Court's September 27 suggestion that Defendants consider "technological solutions" to streamline review, Defendants have done just that, and now propose to use "TAR 2.0"—a widely-accepted technology-assisted review solution—to prioritize the review and production of responsive documents to Plaintiffs on a quicker basis. Under this proposal, Defendants will employ 100+ contract attorneys, at a cost of about $75,000 per day, and review 24,000 documents <u>every business day</u> between October 3, 2024 (when custodial review began) and the January 15 substantial completion deadline. All at a total estimated cost of over $21 million ($16 million spent during the investigation, $1 million spent month-to-date, and $4 million going forward). To establish the review set, Defendants propose to run the search terms previously negotiated with Plaintiffs (with minor modifications to account for differences between the investigation and the litigation) over the email, text, and chat files of 41 custodians, with a seven-year date range for individuals who were not CID custodians, and a shorter date range for prior CID custodians. *See* Exhibit 1. Defendants have also told Plaintiffs—repeatedly—they are "open to identifying the document review set in other ways," such as reducing the number of custodians, limiting the document sources, narrowing search terms, or adjusting date ranges. ECF No. 320-3 at 5. In total, Defendants have committed to review approximately 1.5 million custodial documents by the January 15, 2025 substantial completion deadline. This is in addition to the tens of thousands of documents that Defendants are also reviewing for Plaintiffs' non-custodial, targeted document requests.

Plaintiffs say that's not enough. At the September 27 conference, the Court made clear that it expected Plaintiffs to "be a little bit rifleshot in terms of what you're looking for" given the expedited discovery schedule in this case, and that "you're not going to get every single piece of paper that's potentially about the things that are at issue in this case." Sept. 27, 2024 Hr'g Tr. at 21, 45–46. Plaintiffs have not heeded the Court's advice. Instead, they continue to demand 74 custodians over varying date ranges—from two years to nearly ten years—and propose additional, overbroad search terms, resulting in a document review set that, for primarily system emails alone, is nearly *10.4 million* documents. And this number is likely to increase by many millions more when Defendants complete the collection of additional document sources. Plaintiffs then demand that Defendants arbitrarily review *at least* 400,000 documents a week from this set, which would require the review of over 4 million more documents between now and January 15. *See* ECF 320-1 at 1. On top of that, Plaintiffs demand that, if Defendants do not achieve a certain TAR "recall rate" by January 15, Defendants must produce "all remaining documents identified by TAR as potentially responsive" from the 10.4 million document set—which would require the production of potentially millions of documents Defendants have not reviewed. *See id.* at 1–2. Plaintiffs argue this approach "is tailored to fit the needs of the case," but Plaintiffs have shaped their case—and their discovery requests—far too broadly. *See* Ltr. at 2. After nearly two years of investigation and receiving over 1,100,000 documents from Defendants and third parties, Plaintiffs continue to seek virtually boundless, overbroad discovery and have failed to adopt the targeted "rifleshot" approach suggested by the Court.

**Defendants' Proposed Methodology Is Reasonable & Proportional**

Plaintiffs' primary complaint about Defendants' proposed review process is the proposed use of a "TAR 2.0" process (where a "continuous active learning" technology prioritizes the review of likely responsive documents, and coding is performed by human reviewers) instead of a "TAR 1.0" process (where a "seed set" of documents trains a model that is used to identify likely responsive documents and many documents are produced without human review). *See* Ltr. at 2;

*see also* The Sedona Conference, TAR Case Law Primer, Second Edition, 24 Sedona Conf. J. 1, 16–17 (2023). The implicit premise is that TAR 1.0 is superior to TAR 2.0. That's wrong, and it's the wrong inquiry.

"'[T]he standard is not perfection, or using the 'best' tool, but whether the search results are reasonable and proportional." *Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) (citing Fed. R. Civ. P. 26(g)(1)(B)). It's beyond dispute that Defendants' TAR 2.0 proposal is reasonable. In fact, multiple courts have endorsed the very approach Defendants propose: using search terms to cull a review set before applying a TAR 2.0 process. *See, e.g.*, *Livingston v. City of Chicago*, No. 16 CV 10156, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020) (holding that TAR 2.0 combined with search terms "satisfies the reasonable inquiry standard and is proportional to the needs of this case under the federal rules"). By contrast, Defendants are not aware of a case obligating a party to use TAR 1.0 or even that a party must use TAR at all. *See Hyles*, 2016 WL 4077114, at *3 (holding TAR 2.0 is preferable to TAR 1.0 and that parties are not obligated to use TAR at all, because "it is not up to the Court, or the requesting party . . . , to force . . . the responding party to use TAR"). Defendants propose a reasonable search methodology that is entirely consistent with their obligations under the federal rules.

Defendants' proposal to review over 1.5 million documents over a three-month period is also reasonable and proportional to the needs of this case. Plaintiffs point to Defendants' "market capitalization of more than $25 billion," and cite cases where Apple reviewed 2.6 million documents and Google reviewed 4.8 million documents in arguing for additional review. Ltr. at 2. If market capitalization is the relevant measure of how many documents a company should review in a "large-scale government enforcement action[]," *id.*, and Apple and Google are relevant benchmarks, Defendants should review far less than 1.5 million documents: Live Nation's market capitalization is *less than 1%* of Apple's, and *just over 1%* of Google's.

**Plaintiffs' "Interim Deadlines" & Custodian Proposal Are Not Reasonable or Proportional**

Plaintiffs ask the Court to impose a schedule that would require Defendants to "provide rolling productions at least every two weeks until January 10, 202[5]." ECF No. 320-1 at 1. This is unreasonable and, given the time and resources necessary to prepare production, will only add delay and cost to Defendants' review. Nevertheless, Defendants have committed to making rolling productions once a month in November, December and January. Defendants' responses to Plaintiffs' interim deadline proposals are attached as Exhibit 2.

The dispute over custodians is largely a red herring—the real question is simply how many documents Defendants must review before the substantial completion deadline. That said, Plaintiffs' request for 74 custodians is neither reasonable nor proportional. Defendants agreed to 41 custodians, including their most senior executives and individuals covering all relevant business units that touch on Plaintiffs' claims in this litigation. Plaintiffs' 74 custodians would yield a review set far larger than *10 million* documents. Plaintiffs cite no case where a Court upheld a review set of this size.

Finally, contrary to Plaintiffs' assertion, Defendants do not object to providing pre-2017 documents. Rather, Defendants are open to defining the document review set in various ways, including by adjusting the date range. But Defendants cannot agree to a proposal that would pull "everything under the sun" into the document review set. *See* Sept. 27, 2024 Hr'g Tr. at 46. Plaintiffs need to find some compromise, as the Court instructed at the September 27 hearing. *See id.* Defendants respectfully request that the Court deny Plaintiffs' motion and endorse Defendants' proposed approach.

Dated: October 25, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*


CRAVATH, SWAINE & MOORE LLP

David R. Marriott
   *Co-Lead Trial Counsel*
Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

dmarriott@cravath.com
lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*


cc:    All Counsel of Record (via ECF)