**VIA ECF**

The Honorable Arun Subramanian					November 20, 2024
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:	<u>United States, et al. v. Live Nation Entertainment, Inc., et al.</u>, No. 1:24-cv-03973

Dear Judge Subramanian:

  Plaintiffs respectfully move for an order: (1) compelling Defendants to produce 18 documents responsive to Plaintiffs' Request for Production No. 2 ("RFP 2") that Defendants withheld as work product but shared with non-parties; or, in the alternative, (2) compelling Defendants to specify the purported common interest Live Nation shares with each non-party and provide the documents to the Court for *in camera* review.

  RFP 2 sought communications between Defendants and any non-parties that relate to Plaintiffs' pre-Complaint investigation and/or this litigation. Defendants withheld responsive communications between Defendant Live Nation Entertainment, Inc.'s ("Live Nation") counsel and counsel for Oak View Group, LLC ("OVG"), which describes itself as Live Nation's "hammer" and "protect[or]." Am. Compl., ¶6(a). Defendants also withheld communications with counsel for two of OVG's owners: Irving Azoff and his affiliated companies (collectively, "Azoff"); and Silver Lake Technology Management, LLC ("Silver Lake").

  Defendants invoke work product protection and the common interest rule. Initially, Defendants asserted both attorney-client privilege and work product protection as to the documents and claimed that the entire contents of their privilege log was "Confidential" under the Protective Order. *See* Ex. A, Defendants' Privilege Log for RFP 2 (the "Log"). When challenged, Defendants abandoned their privilege claim and withdrew their confidentiality designation, but Defendants continue to assert work product protection. In any event, Defendants have not established that the common interest rule applies, and Live Nation therefore waived any work product protection for the 18 documents by sharing them with non-parties.

  Defendants assert that Live Nation's outside counsel reached oral common interest agreements with counsel for each non-party, although in April 2024, Azoff's counsel denied in writing that Azoff has any such agreement. Ex. B, 4/23/2024-11/4/2024 e-mails between B. Dimond, P. Herrick, and A. Cohen. Azoff's counsel reconfirmed the non-existence of such an agreement verbally to Plaintiffs on November 14, 2024. Nevertheless, according to Defendants: (1) the interest vaguely relates to defending against potential litigation contemplated, and later brought, by Plaintiffs; (2) the interest was triggered when Plaintiffs issued Civil Investigation Demands ("CIDs"), which took place over a period of years starting in 2022; and (3) the common interest persists now that Live Nation is a Defendant in this action, notwithstanding that the three other entities are not parties to the litigation. Ex. C, 10/18/2024-11/8/2024 e-mail exchange between R. Gushman, B. White, and L. Champlin.

  **First,** Defendants have not proved the existence of any common interest agreements. "For courts to find such a common legal interest, the parties must have come to an agreement . . . embodying a cooperative and common enterprise towards an identical legal strategy." *United States v. Napout*, No. 15CR252S1PKCRML, 2017 WL 980323, at *3 (E.D.N.Y. Mar. 10, 2017) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012)).

Moreover, "[P]arties relying on an oral agreement run the risk that the Court can not determine when or if an agreement was reached." *Id.* (quoting *In re Rivastigmine Pat. Litig.*, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at *4 (S.D.N.Y. Sept. 22, 2005), *aff'd*, No. 05 MD 1661 (HB), 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005)). "[T]he party invoking the privilege has the burden of demonstrating" a "meeting of the minds," and it is not sufficient that counsel believes they "had an understanding" with another lawyer. *Sec. & Exch. Comm'n v. Rashid*, No. 17-CV-8223 (PKC), 2018 WL 6573451, at *1 (S.D.N.Y. Dec. 13, 2018). As the Second Circuit has held, "the impression of one side" creates no agreement. *United States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999). This is particularly true where the lawyer for one side disputes the agreement's existence. *Rashid*, 2018 WL 6573451, at *2 (no agreement where one side's counsel sent an "express rejection of a common interest privilege or a joint defense agreement").

Here, Defendants are unable to provide critical details of the purported oral agreements, such as the dates on which the agreements were reached, whether they were prospective or retroactive, or their duration. *See* Ex. C. Nor have Defendants articulated any of the terms of the agreements, such as what common interest they invoked or any general information about the common legal strategy they facilitated. Tellingly, Silver Lake is represented by the same law firm as Live Nation, but the Latham & Watkins lawyers who entered into the purported oral agreement with each other cannot recall simple facts about that agreement. The best Defendants could do in providing a date for the Silver Lake agreement—or the OVG agreement—was an "approximate date[]" of "April 2023." *Id.* The record with respect to Silver Lake and OVG falls far short of the showing Defendants must make to deprive Plaintiffs of relevant discovery.

The facts are even worse for Defendants with respect to Azoff because Azoff's counsel has consistently denied the existence of any common interest agreement with Live Nation. *See, e.g.,* Ex. B. That alone defeats Defendants' common interest claim. *See Rashid*, 2018 WL 6573451, at *2. Moreover, not only did Defendants struggle to identify a date range for the Azoff agreement—ultimately claiming an "approximate date[]" of October 2023, Ex. C, —they initially failed even to identify the individual lawyer for Azoff who purportedly entered into the agreement. Defendants belatedly identified that lawyer as David Marroso, who is one of the O'Melveny & Myers lawyers representing Azoff and who was copied on the e-mails denying the existence of an agreement and never objected. Exs. B & C.

The facts set forth by Defendants fail to establish the formation of valid common interest agreements.

**Second**, even if Defendants and the non-parties verbally agreed that they had a common interest, that would not be enough. Defendants would have to identify the purported common interest with specificity and show that the logged documents were shared for purposes of developing an identical legal strategy. *Rivastigmine* is instructive. There, the Court held that "it is not sufficient for the party seeking the protection of the common interest doctrine merely to show that a unified legal interest theoretically existed. Rather, it must also demonstrate that the parties demonstrated cooperation in developing a common legal strategy." *Rivastigmine*, 2005 WL 2319005 at *2. In addition, parties may have some interests that satisfy the common interest test and others that do not. *Id.* at *4 (Where parties share some legal interests in common but others that diverge, "the common interest doctrine would apply, but only insofar as their interests were in fact identical.").

Here, Defendants have identified the purported common interest at such a high level of generality that it is impossible to test the assertion. Defendants assert that "[a]ll of these entities . . . are named and/or referenced in Plaintiffs' Amended Complaint." Ex. B. That is fails to

establish a common legal interest, as demonstrated by the fact that a number of Live Nation's victims, whose interests clearly diverge from Live Nation's, also are named in the Amended Complaint. *See, e.g.,* Am. Compl., ¶91 ("[I]n 2021, Live Nation threatened retaliation against a venue that had decided to switch from Ticketmaster to SeatGeek for primary ticketing.").

Arguably, Live Nation and OVG may share a narrow common legal interest over certain relevant issues given the allegations in the Amended Complaint concerning OVG's role as "Live Nation's self-described 'hammer.'" *Id.*, ¶95. Other relevant issues, however, touch on no common legal interest between Live Nation and OVG. Defendants cannot meet their burden of proving that the logged documents reflect an identical legal interest without first identifying the interest(s) at issue with sufficient detail for Plaintiffs to test the privilege claim. *See, e.g., Hayden v. IBM Corp.*, No. 21 Civ.. 2485 (VB/JCM) 2023 WL 4622914, at *8-9 (Because "Plaintiff's assertions of the common interest doctrine [we]re overbroad and inapplicable in certain circumstances," the court conducted an *in camera* review, determined which documents related to common legal interests and which did not, and compelled production of the documents falling outside the scope of the common legal interests.).

Further, Defendants' primary argument concerning Silver Lake and Azoff is derivative of their argument concerning OVG: Silver Lake and Mr. Azoff are investors in OVG. Ex. B. Whatever interest Silver Lake and Mr. Azoff may have in protecting OVG from legal exposure, that mere economic interest is not cognizable under the common interest rule. *Alta Ptrs. LLC v. Getty Images Holdings, Inc.*, No. 22-cv-8916 (JSR), 2023 WL 5717483, at *1 (S.D.N.Y. Sept. 5, 2023) (Corporate defendant shared no "common legal interest with shareholders…who were not officers or directors of the company.").

Defendants' fallback argument concerning Silver Lake and Azoff is that those entities "received separate CIDs . . . and are individually referenced in Plaintiffs' Complaint." Ex. B. Again, these facts are insufficient. Plaintiffs issued multiple CIDs, including CIDs to Defendants' competitors. The Amended Complaint names numerous entities whose interests are adverse to Defendants' interests. Defendants do not, and could not, assert that they share a sweeping common legal interest with each CID recipient or entity named in the Amended Complaint. Defendants also cannot establish that the common interest rule applies simply because Live Nation made a choice to communicate with other entities that also received CIDs.

\* \* \*

The parties met and conferred by email between October 25, 2024, and November 3, 2024. Ex. C. The parties held a Lead Trial Counsel meet and confer by telephone on November 4, 2024, that lasted approximately twenty minutes. The principal participants were Brian White (Plaintiffs) and Robin Gushman (Defendants). Plaintiffs summarized the Lead Trial Counsel meet and confer in an e-mail dated November 7, 2024, and declared an impasse. *Id.* Defendants provided additional information by e-mail on November 8, 2024, that did not resolve the deficiencies in Defendants' common interest assertion.

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to (1) produce the 18 logged documents to Plaintiffs or, in the alternative, (2) specify the common legal interests asserted with respect to each non-party with sufficient and appropriate detail and provide the 18 logged documents to the Court for *in camera* review.

Respectfully submitted,
*/s/ Bonny Sweeney*
Bonny Sweeney