**VIA ECF**

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**   *United States et al. v. Live Nation Entertainment, Inc. et al.*, 1:24-cv-03973-AS-SLC

Dear Judge Subramanian:

      Plaintiffs' motion to compel has nothing to do with the merits of this litigation, and has the unfortunate and costly impact of forcing Defendants to focus their time and efforts on litigating the litigation rather than responding to substantive discovery requests and meeting the Court-ordered substantial completion deadline. To be frank, this motion makes it clear that Plaintiffs are more focused on engaging in wasteful litigation tactics and not-so-subtle games of "gotcha" than discovering relevant facts. The subject of this motion to compel is a set of 18 email strings Defendants have withheld as privileged because they reflect law firm, counsel-to-counsel communications between outside counsel for Defendants and outside counsel for three other entities/companies involved in this litigation—Silver Lake, Oak View Group, and Irving Azoff and his companies—that all occurred after the DOJ served these entities with CIDs. Plaintiffs have spent weeks (including multiple calls and nearly 20 pages of email correspondence, *see* ECF No. 351-3) trying to obtain copies of these emails. These communications are not relevant to the facts alleged in the Amended Complaint; they are emails among lawyers discussing legal strategy in response to the DOJ's investigation and in anticipation of the DOJ's lawsuit. The fact that Plaintiffs are moving to compel production of these emails speaks volumes about their approach to this litigation.

      The facts are straightforward. As part of their pre-complaint investigation, the DOJ issued civil investigative demands ("CIDs") to Oak View Group, LLC ("OVG"), Silver Lake Technology Management LLC ("Silver Lake"), and Irving Azoff, as well as Azoff's affiliated companies (collectively, "Azoff"). Silver Lake and Azoff own OVG. The DOJ broadly investigated the business dealings and interactions between Live Nation and these companies and whether they were acting on each other's behalf. For example, in a CID issued to Live Nation, the DOJ requested all documents relating to the business relationships between Live Nation and OVG, Azoff, or their affiliates. While Live Nation obviously did not know the DOJ's precise theory with respect to Silver Lake, OVG, and Azoff, the DOJ's interest in Live Nation's business dealings with these third parties was clear from the start. As a result, Live Nation had a common interest with each of these entities in defending against whatever claims the DOJ would bring, entered into oral common interest agreements with each of them, and exchanged the 18 email strings accordingly.

      **With respect to OVG and Silver Lake**, there was a "meeting of the minds" between Live Nation and each of these two companies to "pursue a joint legal strategy," which is all the case law requires in order to demonstrate that a common interest agreement was reached. *See SEC v. Rashid*, 2018 WL 6573451, at *1 (S.D.N.Y. Dec. 13, 2018) (the agreement can be "either formal or informal"). As Defendants previously explained to Plaintiffs, Live Nation entered into separate, bilateral, oral joint defense agreements with OVG and Silver Lake, through specified outside counsel, in April 2023. *See* ECF No. 351-3 at 2–3 (Nov. 8, 2024 email from L. Champlin to B.

White). Plaintiffs cite no case (and Defendants have found none) stating that Defendants must provide details like the exact "dates on which the agreements were reached" to establish that common interest agreements were formed. *See* Pls.' Letter-Motion (ECF No. 351) ("Mot.") at 2; *see also In re Rivastigmine Pat. Litig.*, 2005 WL 2319005, at *4 (S.D.N.Y. Sept. 22, 2005), *aff'd*, 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005) ("While such cooperation [toward a common legal goal] may be definitively shown through a formal collaboration agreement . . . no such written documentation is required."). And Plaintiffs implicitly acknowledge, as they must, that counsel for OVG and Silver Lake have confirmed the existence of these agreements. *See* Mot. at 2 (distinguishing OVG and Silver Lake from Azoff on the basis that "Azoff's counsel has consistently denied the existence of any common interest agreement with Live Nation").

The common legal interest between Live Nation and each of OVG and Silver Lake is clear. In fact, *Plaintiffs admit that Live Nation and OVG share a common legal interest* over "certain relevant issues given the allegations in the Amended Complaint concerning OVG's role as Live Nation's self-described 'hammer.'" *See id.* at 3 (internal quotation marks omitted). Plaintiffs' suggestion that this is not enough is completely disingenuous. It is not Plaintiffs' ultimate claims that define the scope of the common legal interest. It was clear from the outset that OVG and Silver Lake (along with Live Nation) were targets of the DOJ's broad and unfocused investigation. It was also clear—particularly after the DOJ served document requests in January 2023 that specifically implicated OVG and Silver Lake, and requested that Live Nation use search terms specifically designed to capture documents relating to OVG and Silver Lake—that OVG's and Silver Lake's business dealings with Live Nation were a focus of the investigation. At that time, while the DOJ's ultimate allegations were unknown, Live Nation had a common legal interest with each of OVG and Silver Lake in responding to the DOJ's broad CIDs and preparing for expected litigation. Indeed, the fact that the Amended Complaint describes OVG as "a functionary for aspects of Live Nation's anticompetitive scheme," and alleges that OVG and Live Nation "colluded and established a partnership to allocate business lines, avoid competing with each other, and chart a mutually beneficial plan to cement Live Nation's dominance," Am. Compl. (ECF No. 257) ¶¶ 70, 82, proves the point: Live Nation and OVG rightly anticipated that the DOJ was investigating whether the companies were acting on each other's behalf. With respect to Silver Lake, Live Nation is not attempting to "expand the privilege to include those with whom it shared a commercial or financial, rather than legal, interest." *Cf. Alta Partners, LLC v. Getty Images Holdings, Inc.*, 2023 WL 5717483, at *1 (S.D.N.Y. Sept. 5, 2023); *see* Mot. at 3. The common interest between Live Nation and Silver Lake is not based on a commercial relationship between those entities, and it is not based solely on Silver Lake's ownership interest in OVG. Rather, it is based on a "common legal, rather than commercial, interest" between Live Nation and Silver Lake that arose as a result of the DOJ's investigations into their business dealings. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012). The common interests between Live Nation and Silver Lake, and separately, between Live Nation and OVG, were confirmed through counsel's oral agreements and embodied in "a cooperative and common enterprise towards an identical legal strategy"—i.e., responding to the DOJ's CIDs and preparing for expected litigation. *See id.*

The communications between counsel for Live Nation and counsel for OVG and Silver Lake that are listed on Defendants' privilege log were "made in the course of formulating" this "common legal strategy." *See id.* at 140. They are all communications among outside counsel; no business people are involved. And as described in the privilege log, these communications reflect the mental impressions and legal theories of counsel relating to the DOJ's investigation into

the live entertainment industry. *See* ECF No. 351-1. These documents are protected by the work product doctrine, pursuant to common interest agreements, and Defendants should not be required to produce them.

**With respect to Azoff**, Plaintiffs argue that Defendants should produce their outside counsel's communications with Azoff's outside counsel because "Azoff's counsel has consistently denied the existence of any common interest agreement with Live Nation." Mot. at 2. This is not so. Outside counsel for Live Nation unequivocally understood based on their communication with Azoff's counsel that there was an oral common interest agreement with Azoff *with respect to outside counsel communications relating to the DOJ's investigation*, beginning in approximately October 2023. *See* ECF No. 351-3. During the DOJ's investigation, Live Nation's counsel communicated with Azoff's counsel pursuant to this agreement, as reflected in the three communications listed on Defendants' privilege log. *See* ECF No. 351-1 (log nos. 8, 12, 13). Live Nation's counsel was surprised to learn that Azoff's counsel informed the DOJ in April 2024 that no common interest agreement existed between the parties. *See* ECF No. 351-2 at 2–3. At first, counsel for Live Nation understood the apparent contradiction to be a misunderstanding between whether there was a common interest agreement between the parties that pre-dated the DOJ's investigation, and a common interest agreement arising after the CIDs were issued and covering counsel-to-counsel communications. On at least two occasions since April 2024—once in late April 2024, and again in early November 2024—Azoff's counsel told Live Nation's counsel that Live Nation and Azoff have a common legal interest with respect to *communications between outside counsel* related to the DOJ's investigation and in particular the three communications that Defendants placed on their privilege log. It was not until mid-November 2024 that Azoff's counsel first informed Live Nation's counsel of their new view that no common interest agreement exists between Live Nation and Azoff, even with respect to the outside counsel communications. In light of Azoff's counsel's new position, Live Nation agrees to produce the three communications between Live Nation's counsel and Azoff's counsel listed on Defendants' privilege log. *See* ECF No. 351-1 (log nos. 8, 12, 13).

\*        \*        \*

Plaintiffs claim that Defendants have engaged in pervasive wrongdoing, but for some reason the key "evidence" that they need to prove their case is 18 emails (i) written by Live Nation's outside counsel (ii) after the DOJ initiated its investigation (iii) to outside counsel for (iv) three other companies that also were involved in the investigation and received CIDs. To be clear, there is nothing remotely important or interesting about these 18 documents. These are emails between outside counsel for entities being investigated by the DOJ. In any rational world, this is the paradigm of common interest/joint defense agreement communications, and no one even thinks to question it, let alone spend months litigating it. Ultimately, the real question presented by Plaintiffs' motion is not whether these 18 documents fall perfectly within the common interest scope of protection, but rather whether this case is really about Defendants' business practices and the competitive dynamics of this industry, or instead just another case where the merits are so lacking that the counsel spend all their time and effort litigating the litigation.[1]

---

[1] Pursuant to the Court's Order (ECF No. 352), Defendants will separately provide copies of the 15 communications with OVG's and Silver Lake's counsel for the Court's *in camera* review. Defendants will produce the three communications with Azoff's counsel to Plaintiffs.

Dated: November 25, 2024

Respectfully submitted,

| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|
| *[signature]* | *[signature]* |
| Alfred C. Pfeiffer (admitted *pro hac vice*)<br>    *Co-Lead Trial Counsel*<br>Timothy L. O'Mara (admitted *pro hac vice*)<br>Jennifer L. Giordano<br>Andrew M. Gass (admitted *pro hac vice*)<br>Kelly S. Fayne (admitted *pro hac vice*)<br>Lindsey S. Champlin (admitted *pro hac vice*)<br>Robin L. Gushman (admitted *pro hac vice*)<br><br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>(415) 391-0600<br><br>555 11th Street, NW, Suite 1000<br>Washington, D.C. 20004<br>(202) 637-2200<br><br>Al.Pfeiffer@lw.com<br>Tim.O'Mara@lw.com<br>Jennifer.Giordano@lw.com<br>Andrew.Gass@lw.com<br>Kelly.Fayne@lw.com<br>Lindsey.Champlin@lw.com<br>Robin.Gushman@lw.com<br><br>*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* | David R. Marriott<br>    *Co-Lead Trial Counsel*<br>Lauren A. Moskowitz<br>Jesse M. Weiss<br>Nicole M. Peles<br><br>Two Manhattan West<br>375 Ninth Avenue<br>New York, NY 10001<br>(212) 474-1000<br><br>dmarriott@cravath.com<br>lmoskowitz@cravath.com<br>jweiss@cravath.com<br>npeles@cravath.com<br><br>*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* |

cc:    All Counsel of Record (via ECF)