<u>Via ECF</u>

The Honorable Arun Subramanian  
Daniel Patrick Moynihan U.S. Courthouse  
500 Pearl St., Courtroom 15A  
New York, NY 10007

January 27, 2025

Re:  *United States, et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-3973-AS

Dear Judge Subramanian:

Pursuant to the Court's January 23 Order, Plaintiffs submit this letter to address the Court's questions and demonstrate how Plaintiffs have sufficiently pled tying and damages claims. Plaintiffs request that the Court deny the motion with respect to both.

**I.      The Section 1 Tying Claim Should Not be Dismissed**

**A.   <u>The Facts Support a Tying Claim</u>**

   1.   *Amphitheater Access and Promotion Services Are Separate Products.*

Concert promotion services and access to large amphitheaters are distinct and offered to artists by different industry participants. *E.g.*, ECF 257 ("Compl.") ¶ 244. Defendants conflate these two distinct services because Live Nation conditions artists' access to its amphitheaters on the artists' agreement to also purchase promotion services. Other industry actors, however, disaggregate them. *See id.* ¶ 244. ███████████████████████, for example, rents its amphitheater to artists, who separately choose their promoter. Exhibit A is an example of a rental contract between ███████ and a promoter—in this case Live Nation—acting on behalf of a specific artist for a specific date. *See* Compl. ¶ 208. Similar to ███████, other amphitheaters offer access unconditionally, and artists enjoy the benefits of competition between promoters.

Defendants' argument that promotion and venue services are always offered together is incompatible with their position that promoters are the customer in the amphitheater access market. Indeed, Defendants implicitly acknowledged that promotion and venue access are separate services when they admitted in previous litigation that *artists* are the consumer in each market: "[t]he relevant competition . . . is competition either among venues or among promoters for the patronage of artists." ECF 309-2 (MTD Opposition Ex. B), at 8, Br. of Live Nation in *IMP*. They have also admitted that "the artist and/or their management and agent teams always retain control over which venues to play." ECF 309-3 (MTD Opposition Ex. C), at 28, Live Nation's Mot. for Summary Judgment in *IMP*. Consistently, the Complaint alleges competition among venues regardless of the promoter. Compl. ¶ 25. Additionally, artist agents sometimes bypass a promoter and reach out directly to venues to reserve dates. *Id.* ¶ 208. Indeed, as one senior executive for another industry participant put it, "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Dep Tr. (Sept. 27, 2023), at 53:18–54:3, attached as Ex. B. Further, there are certain bilateral economic terms and negotiations between artists and venues that are not shared with promoters, such as merchandising. Compl. ¶ 26.

### 2. *Additional Anticompetitive Conduct and Artists' Understanding of Live Nation's Conditional Sale Policy Demonstrates This Is Not a Unilateral Refusal to Deal.*

Plaintiffs' allegations and discovery answer this Court's inquiry as to (1) whether there is any "other separate anticompetitive conduct that's at issue" (Tr. at 7:11–12), and (2) whether "there are direct lines of communication between Live Nation and artists that are relevant to this tying claim and the anticompetitive conduct" (Tr. at 6:18–21). Plaintiffs allege that Live Nation enforces an unremitting policy conditioning access to its large amphitheaters on an agreement to also purchase concert promotion services from Live Nation. This policy is well-known in the industry, as Live Nation admits. *See* Compl. ¶¶ 113-116 ("if [artists] want to do an extensive amphitheaters tour with a lot of shows, they would typically be coming to us [for promotion services], and they do."); *id.* ¶¶ 207-14. Indeed, if artists were *unaware* of Live Nation's tying policy, artists would not feel compelled to use Live Nation's promotion services in those venues.

Plaintiffs expect that continued development of the record will support allegations that artists and their agents are not only familiar with Defendants' longstanding policy and practice—as illustrated by Defendants' statements (*see* Compl. ¶ 116) and the attached exhibits—but also that the artists and their agents take that policy and practice into account in choosing a promoter. As one industry participant explained, because of Live Nation's policy of conditioning amphitheater access on signing Live Nation as a promoter, "███████████████████████████████████████████████████████████████████████." Ex. B, at 50:24–51:01. Exhibit C, for example, ███████████████████████████████████████████████████████████████████████. The next inferential step is clear: the promoter communicates the rejection and its rationale to the artist clients. This is exactly the sort of evidence that Plaintiffs will continue to develop through discovery (including in depositions).

Live Nation's longstanding and unremitting tying policy, its enforcement of that policy, and its communication of that policy to artists and their agents, is just the sort of "'assay by the monopolist into the marketplace' that interferes with the relationship between rivals and third parties" and distinguishes this case from a unilateral refusal to deal.[1] *New York v. Facebook*, 549 F. Supp. 3d 6, 31–32 (D.D.C. 2021) (citing *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013)). Because artists seeking to do an amphitheater tour know that they have to sign with Live Nation for promotion services if they want to play in Live Nation amphitheaters, Live Nation's conditional sale policy—which is coupled with a broad exclusivity clause in their tour contracts with Live Nation (as discovery has shown)—forces artists to choose Live Nation over competing promoters for their entire tour, including shows in non-Live Nation venues. *See* Compl. ¶ 41, 113, 116. Live Nation's policy can also interfere with the relationship between rival promoters and artists for tours that do not focus on amphitheaters, because artists often sign multi-year tour deals that include amphitheater legs and arena legs. Ex. B, at 51:22–52:12.

### B. The Law Supports Plaintiffs' Tying Claim

Plaintiffs' allegations support a Section 1 tying claim under relevant case law. In addition to the material in our prior briefs, we note the following.

### 1. *The Concerted Action on the Section 1 Tying Claim Is the Conditioned Sale.*

---

[1] Defendants' tying policy not only restricts artists' choice of promoters but also reduces their compensation. Compl. ¶ 149.

In Defendants' reply brief, they raised for the first time the question of concerted action. On the Section 1 tying claim, the concerted-action requirement is satisfied by the contract that conditions artists' access to Live Nation amphitheaters on their purchase of promotional services from Live Nation. Compl. ¶ 41; *see Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 473 (7th Cir. 2020) ("A sale on the announced or implied condition that the buyer purchase the tied goods from the seller ordinarily satisfies the tying-agreement requirement.") (citing Areeda & Hovenkamp ¶ 1754 b-c, at 315-20); *Systemcare, Inc. v. Wang Lab'ys Corp.*, 117 F.3d 1137, 1142-43 (10th Cir. 1997) (en banc) ("[A] contract between a buyer and seller satisfies the concerted action element of section 1 of the Sherman Act where the seller coerces a buyer's acquiescence in a tying arrangement imposed by the seller."); *cf. Epic Games v. Apple,* Inc., 67 F. 4th 946, 982 (9th Cir. 2023) (even a "non-negotiated contract of adhesion" is concerted action under Section 1).

    2. *Viamedia Is Directly Analogous to the Facts Here.*

*Viamedia* shows that tying is a distinct claim from a unilateral refusal to deal with a rival. Plaintiffs in *Viamedia* alleged both an illegal refusal-to-deal (with its rival in the ad rep market, Viamedia) and a tying arrangement (tying sales to MVPDs of Comcast's Interconnects with its ad rep services) under Section 2. *Viamedia*, 951 F.3d at 462, 474. The refusal-to-deal claim was based on Comcast's denial of Interconnect access to ad-rep rival Viamedia, and the tying claim was based on Comcast conditioning sales to MVPDs of Interconnect services on their use of Comcast's ad rep services. *Id.* at 453; *see id.* at 453-474. The court recognized that "[s]maller MVPDs . . . must work with an ad rep to interface with the Interconnects." *Id.* at 470-71. Notably, while recognizing that "the categories of conduct here are conceptually related and may overlap," *id*. at 453, the court did *not* apply the refusal-to-deal framework to the Section 2 tying claim. *Id.* at 466-474.

At the January 22 hearing, Your Honor, referencing *Viamedia*, asked what "Live Nation is doing" that is "separate" from its purported refusal to "rent these venues to rival promoters," Tr. at 12:19–25. The facts about tying in *Viamedia* are directly analogous to the allegations here.

*First*, the tying conduct here, as with the tying claim in *Viamedia*, is an interrelated "two-front strategy," 951 F.3d at 466, that is two sides of the same coin. *Id*. at 470 ("The entire purpose of [Comcast's] refusal to deal with Viamedia . . . was to force RCN and WOW! to become full-turnkey clients for ad rep services," and this forced sale of ad rep services was the "practical effect of banning from the Interconnects MVPDs that received ad rep services from Viamedia."). The court described "Comcast's . . . tying of Interconnect services to ad rep services" as being "implemented by refusing to deal with" Viamedia. *Id*. at 472. The refusal was the tying mechanism because, "[a]s a practical matter, [MVPDs] cannot self-provide ad rep services and must work with an ad rep to interface with the Interconnects." *Id*. at 471. Here, Plaintiffs similarly allege that Live Nation, as amphitheater owner, declines to contract with non-Live Nation promoters for the purpose of forcing artists "into its not-so-tender arms," *id*. at 474, which "[a]s a practical matter," *id*. at 471, leaves artists no choice but to hire Live Nation as their promoter. *See* Compl. ¶¶ 241-248.

*Second*, Plaintiffs also allege a "second anticompetitive act" directed toward artists. Namely, the Complaint alleges a "longstanding" Live Nation policy that "if an artist wants to use a Live Nation venue as part of a tour, he or she almost always must contract with Live Nation as the tour's concert promoter." Compl. ¶ 113. This is virtually identical in substance to Comcast's policy that "if an MVPD wants to get access to a Comcast [Spotlight] controlled Interconnect, it has to hire Comcast [Spotlight] as its ad sales representative." *Viamedia*, 951 F.3d at 470.

3

3. *Live Nation's Unremitting Conditional Sale Policy Is Sufficient.*

Contrary to Defendants' argument that Plaintiffs must allege a specific instance in which an artist directly attempted to rent an amphitheater from Live Nation and was rebuffed, Second Circuit law makes clear that Live Nation's long-standing, unremitting, and well-known policy is sufficient to establish coercion. *Hill v. A-T-O, Inc.*, 535 F.2d 1349, 1355 (2d Cir. 1976) ("[a]n unremitting policy of tie-in, if accompanied by sufficient market power in the tying product to appreciably restrain competition in the market for the tied product constitutes the requisite coercion"); *Park v. Thomson Corp.*, 2007 WL 119461 at *4 (S.D.N.Y. Jan. 11, 2007) ("[w]hen a policy of conditioned sales is demonstrated, proof of coercion on an individual basis is unnecessary" (discussing *Hill*)). There is no requirement that a plaintiff demonstrate coercion on an individual basis or any anticompetitive conduct apart from the unremitting policy described in the Complaint. *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 1754b ("The announced condition is thus the legal alternative for the express and unambiguous tying contract . . . That is all that is meant by 'coercion,' for the Supreme Court has made clear that the necessary condition is the key.").

4. *Trinko Does Not Apply to Section 1 of the Sherman Act.*

The Supreme Court has rejected the application of unilateral refusal-to-deal-with-rivals doctrine to Section 1 claims. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 n.8 (1992). Lower courts have followed suit. *See* Pls.' Jan. 2025 Ltr., ECF 398. Defendants' sole support for this proposition is *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1080 (S.D. Cal. 2012)), which misapplied the law (*see* Ex. D, Antitrust Division SOI at 2-3), and was found to be "not persuasive" by another court in the same district. *See Dream Big Media Inc. v. Alphabet Inc.*, 2024 WL 3416509, at *2, n.2 (N.D. Cal. July 15, 2024).

*Trinko* itself distinguishes Section 1 *concerted* actions from unilateral conduct under Section 2, noting that concerted action "presents greater anticompetitive concerns." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 410 n.3 (2004). *See also Am. Needle, Inc. v. Nat'l Football* League, 560 U.S. 183, 190-91 (2010) (concerted activity "deprives the marketplace of independent centers of decisionmaking that competition assumes and demands," and because concerted action is "discrete and distinct, a limit on such activity leaves untouched a vast amount of business conduct," there is "less risk of deterring a firm's necessary conduct" and "such conduct may be remedied simply through prohibition").[2]

C. Available Remedies Show that Plaintiffs Do Not Allege a Unilateral Refusal to Deal

The array of remedies available to Plaintiffs if they prevail on their tying claim also demonstrates that this claim is not a refusal to deal. In addition to the remedies described by Plaintiffs' counsel at the January 22 conference (Tr. at 10-12), the Court could prohibit Defendants from conditioning access to their amphitheaters on artists contracting with Live Nation for promotional services. *Artists* could work directly with venues, and separately with the promoter of their choosing, to put on a concert in a Live Nation amphitheater. This is not an

---

[2] Even assuming the refusal-to-deal doctrine applied to this Section 1 claim, even unilateral refusals to deal are not per se lawful. *See, e.g.*, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985); *Trinko*, 540 U.S. at 410 (approvingly citing *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973)). *Cf. Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354 (4th Cir. 2024).

abstract remedy to an abstract harm: while promoters frequently reach out to venues on artists' behalf, artists already work directly with venues with respect to staging and lighting, and some artists use their agents to communicate with venues about available dates. *See* Compl. ¶¶ 26, 207-208; Ex. B, at 53:18–54:3. The fact that artists may be limited in their ability to self-promote their concerts, *see* Compl. ¶ 202, does not implicate their ability to separately work with venues and promoters. In the future, with such a remedy in place, artists (or their agent/manager representatives) might become the usual points of contact in negotiating amphitheater access.

### D. Plaintiffs Should Be Permitted Leave to Amend the Complaint, as Necessary

While Plaintiffs believe they have sufficiently alleged a tying claim, should this Court dismiss that claim Plaintiffs request leave to amend. Discovery is far from complete, and additional evidence of the sort the Court has inquired about—artists' knowledge of Live Nation's policy and additional exclusionary conduct—can be developed through discovery. And because there is substantial factual overlap between this claim and Plaintiffs' amphitheater and promotions monopolization claims, Defendants would not be prejudiced by any amendment.

## II. The Court Should Deny the Motion to Dismiss the State Plaintiffs' Federal Damages Claims

State Plaintiffs rest on their prior briefing and arguments of counsel, except to address the case law that Defendants identified for the first time in their January 21 letter. These cases do not undermine Plaintiffs' theory. At argument, Defendants invoked *Bakay v. Apple Inc.*, 2024 WL 3381034 (N.D. Cal. July 11, 2024), where plaintiffs lacked standing in part because the causal chain required multiple links to connect Apple's dealings with browser and engine developers to the increased cost of iPhones. *See also Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1027-28 (N.D. Cal. 2015) (multiple levels of distribution and plaintiffs failed to connect browser exclusivity to loss of innovation or supracompetitive prices for phones). Here, the chain of causation to consumer harm is but a single link. Defendants pay venues to limit consumers to only one ticketing option: Ticketmaster. The "site of Plaintiffs' injury" *is* the primary ticketing market. *Bakay*, 2024 WL 3381034, at *7.

*Hogan v. Amazon.com, Inc.*, is similarly inapposite—simply put, in *Hogan*, plaintiffs did not pay for the allegedly monopolized product: merchants' purchases of logistics services. 2023 WL 3018866, at *2, *4–5 (W.D. Wash. Apr. 20, 2023); *see also Nypl v. JPMorgan Chase & Co.*, 2017 WL 1133446, at *5 (S.D.N.Y. Mar. 24, 2017) (plaintiffs claimed the end-user market was "completely different" from the corrupted market); *Palladino v. JPMorgan Chase & Co.*, 2024 WL 5248824, at *13–14 (E.D.N.Y. Dec. 30, 2024) (plaintiffs conceded that they were indirect purchasers and their claims were premised on injuries to third parties). Here, the retailer imposes a constraint, and even if it is characterized as "upstream," it forces consumers to pay more for, and enables retailers to profit more from, the retail product.[3]

---

[3] Whatever Defendants theorize about whether, absent that "upstream" constraint, some venues would have tried and succeeded in charging consumers more than in the actual world, drawing such inferences in Defendants' favor continues to be inappropriate at this stage. *See, e.g.*, *Apple Inc. v. Pepper*, 587 U.S. 273, 284 (2019) (denying motion to dismiss while acknowledging: "If the competitive commission rate were 10 percent rather than 30 percent but Apple could prove that app developers in a 10 percent commission system would always set a higher price such that consumers would pay the same retail price regardless of whether Apple's commission was 10 percent or 30 percent, then the consumers' damages would presumably be zero.").

Respectfully submitted,

/s/ *Bonny Sweeney*
BONNY SWEENEY
*Lead Trial Counsel*

Rachel Hicks
Matthew R. Huppert
Collier Kelley
Arianna Markel
John R. Thornburgh II
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Email:Bonny.Sweeney@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*


/s/ *Adam Gitlin*
ADAM GITLIN (admitted *pro hac vice*)
Chief, Antitrust and Nonprofit Enforcement Section
COLE NIGGEMAN (admitted *pro hac vice*)

Office of the Attorney General for the
District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Adam.Gitlin@dc.gov
Cole.Niggeman@dc.gov

*Attorneys for Plaintiff District of Columbia*

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Amanda J. Wentz
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Telephone: (501) 682-1178
Fax: (501) 682-8118
Email: amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

/s/ Paula Lauren Gibson
Paula Lauren Gibson (admitted *pro hac vice*)
Deputy Attorney General
(CA Bar No. 100780)
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6040
Email: paula.gibson@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

/s/ Kim Carlson McGee
Kim Carlson McGee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: kim.mcgee@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (Admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Jesse Moore
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

/s/ Noah Goerlitz
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 281-5164
Email: noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

/s/ Lynette R. Bakker
Lynette R. Bakker (admitted *pro hac vice*)
First Assistant Attorney General
Public Protection Division
Kansas Office of Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: lynette.bakker@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

/s/ Mario Guadamud
Mario Guadamud *(admitted pro hac vice)*
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

/s/ Schonette J. Walker
Schonette J. Walker (Admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ Gerald L. Kucia
Gerald L. Kucia (admitted *pro hac vice*)
Special Assistant Attorney General
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-4223
Email: Gerald.Kucia@ago.ms.gov.
*Attorney for Plaintiff State of Mississippi*

/s/ *Justin C. McCully*
Justin C. McCully (Admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

/s/ *Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ *Zachary Frish*
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

/s/ *Yale A. Leber*
Yale A. Leber (admitted *pro hac vice*)
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Email: Yale.Leber@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

/s/ *Jeremy R. Kasha*
Jeremy R. Kasha
Assistant Attorney General
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8262
Email: Jeremy.Kasha@ag.ny.gov
*Attorney for Plaintiff State of New York*

/s/ *Jeff Dan Herrera*
Jeff Dan Herrera (*pro hac vice* pending)
Assistant Attorney General
Consumer Protection Division
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-4878
Email: JHerrera@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

/s/ *Jessica V. Sutton*
Jessica V. Sutton (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: jsutton2@ncdoj.gov
*Attorney for Plaintiff State of North Carolina*

/s/ *Sarah Mader*
Sarah Mader (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

/s/ Robert J. Carlson
Robert J. Carlson (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street
Suite 1000
Tulsa, OK 74119
Telephone: 918-581-2230
Email: robert.carlson@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma*

/s/ Gina Ko
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

/s/ Joseph S. Betsko
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

/s/ Paul T.J. Meosky
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

/s/ Danielle A. Robertson
Danielle A. Robertson (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-0274
Email: DaniRobertson@scag.gov
*Attorney for Plaintiff State of South Carolina*

/s/ Aaron Salberg
Aaron Salberg (admitted *pro hac vice*)
Assistant Attorney General
1302 E. Hwy 14, Suite 1
Pierre SD 57501
Email: aaron.salberg@state.sd.us
*Attorney for Plaintiff State of South Dakota*

/s/ Hamilton Millwee
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ Diamante Smith
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1674
*Attorney for Plaintiff State of Texas*

/s/ Marie W.L. Martin
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

/s/ Sarah L. J. Aceves
Sarah L. J. Aceves (*pro hac vice* forthcoming)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

/s/ Rachel A. Lumen
Rachel A. Lumen (admitted *pro hac vice*)
Assistant Attorney General
Travis Kennedy (admitted *pro hac vice*)
Managing Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 464-5343
Email: Rachel.Lumen@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

/s/ Douglas L. Davis
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

/s/ Laura E. McFarlane
Laura E. McFarlane (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us
*Attorney for Plaintiff State of Wisconsin*

*/s/ William T. Young*
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7841
Email: william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*

*/s/ William T. Young*
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841
william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*