# EXHIBIT A



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE


SKOT HECKMAN, et al,

                        Plaintiffs,

        vs.                              Case No. CV 22-047

LIVE NATION ENTERTAINMENT, INC.,

                        Defendants.
_____/




                    REPORTER'S TRANSCRIPT OF
                       STATUS CONFERENCE
                    Monday, January 6, 2025
                         8:30 A.M.
                   LOS ANGELES, CALIFORNIA













_____
              TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                FEDERAL OFFICIAL COURT REPORTER
                350 WEST FIRST STREET, ROOM 4311
                LOS ANGELES, CALIFORNIA  90012
                        (213) 894-2849

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        QUINN EMANUEL URQUHART and SULLIVAN LLP
         BY:  KEVIN Y. TERUYA
5             ADAM B. WOLFSON
         Attorneys at Law
6        865 South Figueroa Street, 10th Floor
         Los Angeles, California  90017
7

8    **FOR THE DEFENDANT:**

9        LATHAM and WATKINS LLP
         BY:  TIMOTHY L. O'MARA
10            SAMUEL R. JEFFREY
         Attorneys at Law
11       505 Montgomery Street, Suite 2000
         San Francisco, California  94111
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 6, 2025**

2                          **8:30 a.m.**

3                          --oOo--

4

5              THE COURT:  Let me call the matter of *Heckman versus*

6    *Live Nation*.

7         Let me have appearances starting with plaintiff's

8    counsel first.

9              MR. TERUYA:  Good morning, Your Honor.  Kevin Teruya

10   from Quinn Emanuel for plaintiffs.

11             THE COURT:  All right.

12             MR. WOLFSON:  Good morning, Your Honor.  Adam

13   Wolfson from Quinn Emanuel.

14             THE COURT:  For the defense?

15             MR. O'MARA:  Good morning, Your Honor.  Tim O'Mara

16   for defendants.

17             THE COURT:  All right.

18             MR. JEFFREY:  Samuel Jeffrey for defendants.

19             THE COURT:  We are here on the motion to stay.  I

20   issued at tentative on this.  I presume both sides have seen

21   it?

22             MR. WOLFSON:  Yes, Your Honor.

23             MR. TERUYA:  Yes, Your Honor.

24             THE COURT:  Does somebody want to argue something?

25   It is not a trick question.  The answer is yes, we do or no, we

```
 1   don't.
 2            MR. TERUYA:  From the plaintiff's perspective, we
 3   agree with the conclusions the Court reached.
 4        We would like to --
 5            THE COURT:  The answer to my question is no, the
 6   plaintiffs at this point do not wish to argue anything further
 7   subject to any arguments from the defense?
 8            MR. TERUYA:  That is correct, Your Honor, except
 9   with respect to the case schedule, which we will address
10   separately?
11            THE COURT:  Yes.
12            MR. O'MARA:  So, Your Honor, I take it as an uphill
13   battle, honestly, to change your mind about the stay.
14        You raised a couple of questions, and I think that those
15   questions lead to why the stay should be granted.
16            THE COURT:  Who knows, maybe you will be able to
17   convince me.
18        The problem I see -- this is a little bit of an unusual
19   type of situation, because even though the defendant is kind of
20   going under the first-to-file rule, you are actually arguing,
21   like, an exception to the rule, so I do understand that, and I
22   understand the reasons for the first-to-file rule.
23        But the way this case -- well, the current posture of
24   this case is really atypical to a first-to-file normal
25   situation.
```

1          Usually the situation is one where there is a lawsuit

2     filed in Court A, and then there is a very similar or the same

3     lawsuit filed in Court B, and the question is, you know, does

4     the Court in Court B say, you know, this is the same case and

5     send that case to Court A or otherwise dismiss it, because the

6     first-to-file ruling -- and that is not a problem.

7          But then there is these variations of the situation, and

8     I do understand that sometimes -- I don't want to call it the

9     inverse of the first-to-file rule, it's a situation where a

10    lawsuit is filed in Court A, which obviously, the first case,

11    and then a case that is very similar, the same case is filed in

12    Court B, but for one reason or another, Court B deals with the

13    case in a way that approaches completeness or whatever, such as

14    I think the *Church of Scientology* case, where the whole

15    rationale behind the first-to-file rule transfer from Case B to

16    A becomes a non sequitur, because Case B is already resolved,

17    what are you going to do in Court A?

18         I do understand that situation, but this situation is

19    not -- doesn't fall within either of those extremes.

20         This case was originally filed more than three years

21    ago, and then in the interim within this last year, there was a

22    separate action that was filed by Department of Justice, along

23    with all of these Attorney Generals of many states, raising

24    many of the same issues, but not all of the issues that are

25    involved in this case, and potentially covering many, but not

1   all of the plaintiffs in this case.

2          So, this is kind of like a situation which is somewhat

3   unusual.

4          MR. O'MARA:  Your Honor, we agree with that.  And so

5   I think what I would say is that what we briefed and what we

6   think the law states is that the rule is less about the first

7   to file, the rule is about avoiding the inefficiencies of

8   having two substantially similar cases proceed in Federal Court

9   simultaneously, in addition to the risk of inconsistent

10  rulings, judgments, and potential overlapping damages awards.

11         So what I think that the case law says that you look to

12  in these situations, where the predicate is established that

13  the cases are substantially similar, you look to which case is

14  the most progressed and that one should go forward.

15         THE COURT:  I don't see why that would necessarily

16  be.

17         I mean, if it gets -- it's progressed to the point that

18  is similar to the *Church of Scientology*, I agree that is

19  obvious.

20         But if it hasn't gone as far as *Church of Scientology*

21  situation, then I do think -- I mean, why should this Court

22  with these plaintiffs stay my action simply for the fact that

23  another group of entities bring a similar case, more than a

24  year and a half, two years later, in a jurisdiction that is not

25  even the jurisdiction where the defendants -- defendants have

1    their principal place of business.

2         Not that it was improper, because obviously, the venue

3    provisions of antitrust statutes allow for it, but I don't

4    understand why I should stay my case in that situation.

5         Now, that is a different question as to whether or not I

6    would agree to transfer this case, because transferring -- I

7    think -- really do think the issue is really transferring, not

8    the issue of staying, because I don't see the reason to stay.

9         MR. O'MARA:  Your Honor, I think on the transfer

10   question, which I think that leads to the questions you raised

11   in the tentative is what is our position whether this case

12   could be transferred to New York or the New York case should be

13   transferred here, I think Your Honor's footnote basically has

14   it right, which is we don't think a transfer motion for the

15   convenience of the party, 1404, to transfer this case to New

16   York is viable, because of the forum selection clause.

17        THE COURT:  I agree.  There is a Circuit case that

18   basically says -- or Supreme Court case that says basically you

19   can't ignore the transfer statute, so I think the only way,

20   unless everybody agrees -- if everybody agrees, then there is

21   no problem.

22        But I don't think that -- I don't get a sense that the

23   plaintiffs agree, although, I may be surprised.

24        MR. TERUYA:  Your Honor, as a starting point, we

25   understand the defendants intend to enforce their forum

1   selection clause, but even putting that aside, to answer your

2   question, we believe it's in the best interest of the class in

3   terms of prosecution of the claims, and also the convenience of

4   the parties, both sides, to prosecute in California, and, you

5   know, I can list the reasons.  We have listed many of the

6   reasons in the briefing, in terms of this being the right

7   place.

8            THE COURT:  Was there any -- obviously, there is a

9   legal bar from this Court transferring this case to the Central

10  District of New York.

11      Is there any legal bar that prevents the Court in the

12  Southern District of New York transferring its case here,

13  assuming that that Court agrees that this should be

14  transferred?

15           MR. TERUYA:  Your Honor, we believe that is right.

16  It's theoretically possible that the Court -- the Judge in the

17  Southern District of New York could transfer that case to

18  California.

19          Perhaps it's unlikely that he would agree at this point,

20  given his ruling on the defendant's prior motion to transfer

21  from New York to DC, which is different, and we're not sure

22  that the government would agree to that, given their choice of

23  filing there.

24          But we think you are right, that that is a possibility.

25  You know, I would note in terms of that issue of which is the

1  right forum.

2       Another, given the briefing, I think ultimately led to a

3  risk of inconsistent rulings, and the Court expressed some

4  sympathy to that.

5            THE COURT:  Well, let me ask this question, should

6  this Court ask that Court or require the defendants to ask that

7  Court and the plaintiffs in that case, their position as to

8  whether or not that case should be transferred to this Court

9  and, you know, just see what the response is.

10       Maybe the response is maybe the Judge in New York will

11  say, hey, I'm happy to get rid of this case.  I have other more

12  pressing fish to fry, in which case, that is one situation, but

13  if that Court says, no, I'm not going to transfer the case,

14  then if that is the position of that Court, I understand that.

15       Also, what I would like to know what DOJ's position is

16  and also as many of the State Attorney Generals want to make a

17  comment on the issue, the question is, should I do that?

18            MR. TERUYA:  Your Honor, I mean, from our

19  perspective, we would not oppose that, and are open to the

20  Court asking the question.

21       We did infer probably that is a theoretical possibility,

22  not a strong likelihood, but it couldn't hurt to ask.

23            THE COURT:  Well, I presume the defense has no

24  problem with that request?

25            MR. O'MARA:  My only concern with it, to be

1  completely frank, is that we filed a motion to transfer that

2  case, because we did think it was improperly filed in New York,

3  and we filed a motion to transfer.

4      THE COURT:  Why didn't you make a request to

5  transfer the case here, which is, I think, a different question

6  as to why -- the question is should it be transferred to DC?

7      At that point in time, this case was pending, so

8  therefore, it would seem to me that, you know, you should have

9  -- somebody should have made the motion to transfer that case

10  here.

11      MR. O'MARA:  Your Honor, so let me start off by

12  saying at the outset, what I most wanted to say to the Court is

13  that with respect to the merits of these cases, whether it's

14  the government case or this one, we adamantly believe we are

15  right on the law and the facts and we will ultimately prevail.

16      We are happy to litigate them anywhere.  It doesn't make

17  any difference to us whether it is New York or California.

18      THE COURT:  Well, it seems the defendants, as do

19  plaintiffs, have forum shopping.  I'm not saying you guys did,

20  because obviously, you would have no control over where the DOJ

21  files its case, they could have filed it here, if they so

22  desired, or anywhere, that is beyond your control, I understand

23  that.

24      But once the case is filed, I do have a question as to

25  why a request to transfer that case, once it's filed anywhere

1    else, other than this district, to transfer that matter here

2    because there was a case that was pending on most of the exact

3    same issues.

4           MR. O'MARA:  Yes.  I think, Your Honor, the answer

5    to that question, is when the DOJ filed in May of 2024, this

6    case was stayed in the District Court, and upon appeal in Ninth

7    Circuit, we hadn't had oral argument, we were asking the Ninth

8    Circuit to send this case to arbitration, and if that is

9    granted, this case goes to arbitration, and doesn't stay in

10   Federal Court.

11          Against that procedural background, we did not think a

12   motion to stay or transfer the government case would be well

13   received by the Southern District of New York, let alone have

14   any chance of being granted.

15          I can add to that, which is that in terms of a stay at

16   that point, we know what the government plaintiffs would have

17   said and what the ultimate of Southern District of New York

18   did, because in response the transfer to DC motion, one of the

19   things they said is that it is one of the factors for a

20   transfer, same as a stay, the interest of justice.

21          And the government plaintiff said that any delay, and

22   there, they were talking about basically a two- to three-month

23   delay, would be contrary to the interest of justice, and

24   therefore, they should deny the transfer.

25          That would obviously apply to a stay.

1          THE COURT:  My response to that is why, if it was

2    contrary to the interest of justice, did DOJ and the other

3    Attorney Generals wait more than 18 months, or more than that

4    after this case was filed, to bring a similar case?

5          Why didn't they bring it earlier than this case,

6    especially since these issues were being raised prior even to

7    this case?

8          It was *Oberstein* that suggested these arguments, which

9    was filed even years before that, so I don't understand -- I

10   understand DOJ says, oh gosh, interest of justice.

11         Well, they apparently sat and did nothing for years.  So

12   when they say, I don't know if you made these arguments to the

13   New York Judge, but that is what my response would have been.

14         You couldn't have cared that much since the cases are

15   being litigated in other jurisdictions.

16          MR. TERUYA:  Your Honor, two observations, if I may.

17         One, because of the prior summary judgment ruling in the

18   *Songkick* case, in this district, which actually preceded that

19   case or that case preceded the *Oberstein* case, involved a lot

20   of the same conduct, because of that prior ruling, the

21   avoidance of inconsistent rulings, tips in favor or militates

22   in favor of having this case proceed here.

23         So a lot of the issues discussed in the briefing

24   actually cut the other way.

25         But, No. 2, on this issue of the government action, you

1  know, we would note in the earlier motion to transfer from

2  defendants, and the response from the government, the issue was

3  New York versus DC, and we observed that the government

4  responded, and said, well, New York is actually more convenient

5  than any other place, pretty much, except California.

6      So the earlier discussion and issue seemed to be New

7  York versus DC, not New York versus here, and we think for

8  other reasons we laid out and the Court discussed in its

9  tentative ruling, this is the right forum in a lot of different

10 ways, including with respect to consistencies of rulings.

11     THE COURT:  All right.  Let me ask, I led the

12 parties to argue other things than what they intended to argue.

13     What do you want to argue insofar as the motion today is

14 concerned?

15     MR. O'MARA:  Your Honor, my point is simply, I think

16 that the Court's instincts is correct that a 1404 transfer

17 motion is not viable in either direction.

18     THE COURT:  No, I didn't say that.  I said in one

19 direction it's not viable, as a matter of law.

20     The other way, I don't know whether or not it's viable

21 or not, nobody has argued that it's not viable.

22     I don't see anything other than the reluctance of the

23 Judge in the Southern District of New York to transfer, I don't

24 see any reason why it couldn't be transferred.

25     MR. O'MARA:  I don't think there is any technical

1   reason it couldn't be transferred.  I think the DOJ and the

2   State AG's have been very clear.

3        I think their opposition is not actually DC versus New

4   York, it's that New York is the right place, and in

5   particular --

6             THE COURT:  Why would New York be the right place?

7             MR. O'MARA:  We filed, attached to my declaration,

8   Your Honor, is the government's opposition to the transfer

9   motion, you can see what they say in it.

10        One of the main points they make is that the plaintiff's

11  choice of forum is intent of substantial deference, but then

12  they doubled down on that in saying the government case is

13  entitled to even greater deference with citation to case law.

14  So, I think that factor alone --

15            THE COURT:  No, obviously, there is a venue

16  provision that allows for it.

17        When you make a change of venue, you have to weigh the

18  normal elements of a change of venue.

19        But normally plaintiff's selection, you know, is given a

20  large measure of deference, that is understandable.

21        I have no problem with that.

22        Conversely, however, again, given the situation we have

23  here, not only do we have the existence of these two actions

24  but also all of the documents and other stuff is here in the

25  Central District.

1          I mean, last time I looked, even though the place of

2     incorporation for the defendants is, I think, Delaware, well

3     actually, as to one of the corporations, I guess the other one

4     is an LLC, but the principal place of business for both of the

5     defendants is here in Los Angeles.

6          MR. O'MARA:  That's true, Your Honor.

7          Again, it's putting me in a little bit of an odd

8     position to argue the government is for or against this.

9          THE COURT:  I like doing that.

10         MR. O'MARA:  To be clear, I don't think -- I think

11    the case law says that the location of the documents in the

12    modern era is kind of irrelevant.

13         We look to the witnesses, for example, one of the things

14    the government said, in opposing to transfer to DC, is that

15    communication of the third party, when it is, in particular,

16    that DC is actually a hub for these issues that to

17    Ticketmaster's key primary competitors are headquartered in New

18    York.

19         One of the issues -- one of the main issues in the DOJ

20    case is this allegation that Ticketmaster makes threats to

21    venues to get them to enter into contracts with Ticketmaster.

22         There are thousands of these contracts, and thousands of

23    interactions with venues.

24         In the course of discovery, the government has only been

25    able to identify three alleged incidents of that, one is in New

```
 1   York and none are in California.
 2         They went through their list of the parties' initial
 3   disclosures and cited dozens of them that are in New York, not
 4   in California.
 5         The principal defendant employee, who is in charge of
 6   ticketing, is located in New York, not California.
 7         So as between New York and California, Your Honor, in
 8   the Second Circuit, the answer is -- the test has to be clear
 9   and convincing, it's an eight-factor test, more or less, the
10   same as here.
11         The factors have to clearly weigh in favor of transfer,
12   and given what the DOJ and the State AGs argued in the motion
13   to DC, and given what Southern District of New York held in
14   response to that --
15              THE COURT:  Well, my problem is that I don't think
16   this is a situation where a stay is appropriate.
17         I would, however, think the situation is one, where a
18   transfer probably would be appropriate, but if you are telling
19   me that a transfer is not appropriate -- is possible, then you
20   can fall back and question whether or not I will stay.
21         I have indicated, I don't see a reason for staying.
22              MR. O'MARA:  That leads me to the only thing I would
23   like to argue.
24         I understand that is particularly -- if it's sort of
25   like a pox on your house, it is not our problem.
```

1          THE COURT:  It's not a pox on your house.  This case

2    was filed way before the New York case, and I do understand the

3    procedural machinations, not in a devious way, but there were

4    the things that went on procedurally that caused this case not

5    to progress as fast as the New York case.

6          I'm not putting blame on anybody for that, it is the way

7    it is.

8          But, you know, I stated for the reasons I have.

9          In a way, this is what I'm going to wind up doing, you

10   can argue a little bit further, if you so desire.

11         My feeling at this point is to deny the motion to stay

12   without prejudice.

13         If the defendants want to go to the Court in the

14   Southern District of New York and ask them what their feelings

15   are about this case going forward, if it's going to be somewhat

16   problematic, something like that, I would be interested in

17   hearing what the DOJ has to say, and maybe, if any of the State

18   Attorney Generals who have an independent mind on this stuff,

19   what they have to say, and what the Southern District of New

20   York Judge's reaction transferring his case here.

21         And, you know, I will entertain any of that further

22   information.

23         At this point in time, given the status of what we have

24   now, my tentative is not to grant the stay without prejudice.

25              MR. O'MARA:  Thank you, Your Honor.  If I can have

1   30 more seconds, then I will sit down.

2           The only point I'm trying to spit out here is that if

3   you look at all of these cases we cited, where a stay was

4   granted, the same question could have been raised about a 1404

5   transfer.

6           In every instance, for some reason, that wasn't viable,

7   which is here.

8           I would say the point is once you establish that a 1404

9   won't work, the part of the reasons the Courts call for a stay

10  is it's not talking the plaintiff out of their day in court or

11  out of their chosen forum, it's simply saying, let's let the

12  overlapping issues be resolved in one Court as opposed to two,

13  and part of the inconvenience here is to the third parties.

14          THE COURT:  If the defendant loses in the Southern

15  District of New York, will the defendants agree that they will

16  be bound by that -- res judicata collateral estoppel, they will

17  not be able to argue any of the merits in any way, shape, or

18  form?

19          Is the defendant going to take that position?

20          MR. O'MARA:  Your Honor, I don't think we can take

21  that position here today, obviously.

22          THE COURT:  That is one of the things -- that is

23  reason I'm doing this without prejudice.

24          A lot of things can happen.  If your client says stay,

25  and we guarantee you that it won't have to be relitigated here,

1    because if we lose, we are going to agree that we are bound by

2    that loss, and the plaintiffs will have established liability.

3          If you win, they are not going to be bound, because they

4    are not parties to that suit.  There is no collateral estoppel

5    or res judicata as to them.

6          If that is the defense's position, I will consider that.

7    I can't make up my mind whether or not that would be a deciding

8    factor, but it would obviously be a factor to consider.

9          MR. O'MARA:  Thank you, Your Honor.

10          THE COURT:  So feel free to let me know what your

11    client's response to that question is.

12          MR. O'MARA:  I will.

13          MR. TERUYA:  Your Honor, Mr. Wolfson was going to

14    talk about the scheduling, if we could turn to that?

15          MR. WOLFSON:  Thank you, Your Honor.

16          In the Court's order, you had mentioned whether the

17    parties think that they could agree and come up with a schedule

18    to have class certification heard by June 30th.

19          And so our initial reaction is we don't have any

20    documents yet and data, which are fairly critical, and I'm

21    actually going to get to what I think is a very finite --

22          THE COURT:  Well, let me put it this way, if you

23    need those documents, I presume that those documents -- has

24    there been any discovery in the New York case?

25          MR. WOLFSON:  Yes.

1          THE COURT:  There was discovery in the New York

2    case?

3          MR. WOLFSON:  At pages 12 and 13 of their stay

4    motion, defendants pointed out that over the course of the

5    first investigation, the second investigation, and discovery in

6    Southern District of New York so far, that there has been back

7    and forth over 4.3 million documents produced, more than 12

8    billion data observations, which is critical for an antitrust

9    case like this, and 27 depos.

10          THE COURT:  Let me stop you.  When you make a

11    motion for class certification, while I do understand that some

12    discovery into the merits is required or necessary, you don't

13    have to establish all of the discovery to establish the merits,

14    you just have to show that the requirements of 23 are met; so

15    therefore, I don't think there is an issue as to numerosity, I

16    don't think there is issue of commonality.

17          Most of the stuff, there may be some slight issue as to

18    predominance, but again, it doesn't seem to me that it's going

19    to take that long to do the discovery in this case, because

20    even though I do understand there might be billions of data

21    bits that are out there, to what extent those things are going

22    to be relevant to the issue of whether or not the Court

23    certifies the class.

24          MR. WOLFSON:  Your Honor, when it comes to antitrust

25    class actions, the rubber usually meets the road at the

1  predominance requirement for damages classes, and often what

2  that requires is a very detailed analysis into the, at least,

3  substance of the data.

4        THE COURT:  But what do you think the predominance

5  issue would be?

6        Even though I understand that predominance is probably

7  the major issue, I don't understand what aspect of it would

8  require a ton of discovery on the point.

9        MR. WOLFSON:  So to answer, Your Honor, we are going

10  to have to show that we are capable of establishing class-wide

11  damages, and what that means is looking at all of the fees that

12  Ticketmaster has charged primary and secondary ticketing

13  purchasers back to 2010, and showing that they have been

14  overcharged.

15        Now, the way to do that, there is a number of different

16  ways, there is before and after looks, there are regression

17  models, there are a number of different ways that econometric

18  analysis that you apply for these that require digging into

19  data.

20        And often what happens is when you have 12 billion

21  points of data, you need time to clean it, meaning, asking

22  questions about how to make sense of it, getting it into these

23  models, creating these calculations.

24        It's very commonly a complex process for antitrust class

25  actions like this, where, if we get that now, we can get

1   started now, but being able to be ready to argue it by

2   June 30th, would probably be a stretch, at least, for the

3   classes in terms of the class's interest.

4       We would suggest -- if Your Honor ordered everything

5   that they have produced that they mentioned at 12 and 13 of

6   their stay motion, produced to us within the next, you know,

7   few weeks, then maybe September 30th, as a class certification

8   hearing, we think is probably doable, because then any

9   additional discovery --

10          THE COURT:  Have those materials been produced to

11  the plaintiffs, in the New York case?

12          MR. O'MARA:  Your Honor, the material that counsel

13  is referring to was a list of discovery that has been provided.

14          THE COURT:  Okay.

15          MR. WOLFSON:  Not to us.

16          THE COURT:  I understand that.

17      Do you have a problem providing that same discovery to

18  -- since I am not staying at this point in time, do you have a

19  problem producing those materials in the next two weeks to

20  plaintiff's counsel?

21          MR. O'MARA:  Your Honor, given the holidays that we

22  were dealing with the motion to stay, I haven't been able to

23  consult with the client about that.

24      I don't anticipate, but I can't bind the client to that

25  today.

1          THE COURT:  All right.  I will require it, subject

2     to an argument that there is some problem -- I presume, it's

3     all, like, two presses of a button that can transfer it.

4          MR. O'MARA:  That is not going to be it at all.

5     Every time one of these productions goes out the door, and I

6     can't even explain why, in the modern era, it takes weeks to

7     put it together.

8          THE COURT:  Well, I will order it to be produced

9     within two weeks, but subject to an explanation as to why it

10    can't, but that explanation has to be provided within two

11    weeks.

12         You can do it on *ex parte* basis -- not *ex parte*, you can

13    do it on an expedited basis, and I will entertain it at that

14    point in time.

15         But let me indicate to counsel, once you get those

16    materials and you start working on it, then you can explain to

17    me why it will take more time to do the hearing, but I'm

18    leaving the hearing at this point in time for June the 30th.

19         MR. WOLFSON:  Thank you, Your Honor.  Yeah, with

20    that caveat, to be able to explain to Your Honor what will go

21    into it, we appreciate that.

22         And, frankly, we appreciate the quick schedule because

23    we believe it's --

24         THE COURT:  I'm trying to catch up to the Court in

25    the Southern District of New York.

1          MR. WOLFSON:  One additional set of materials, Your

2    Honor, that we have mentioned in the briefing, it's the

3    materials from the previous *Songkick* case.

4          There was quite a lot of actual analysis and data

5    exchanged in that case.

6          If we could have access to those -- permission to use

7    them here, then that also is something that helps us jump

8    start.

9          THE COURT:  Let me ask, was that stuff -- I presume

10   that stuff is not part of the public record, or was it?

11         MR. WOLFSON:  Some of it was made public, and that's

12   what we relied upon for portions of our complaint.

13         THE COURT:  The case number for that case, is what

14   again?

15         MR. WOLFSON:  Just one moment, Your Honor.  It is

16   15 CV -- 15 CV 09814.

17         The case is before Judge Fischer.

18         THE COURT:  Okay.  Let me just ask, was that -- I

19   presume, those materials were produced under a confidentiality

20   provision, so therefore, you know, before I could order it, I

21   would have to ask Judge Fischer, Judge Fischer -- or somebody

22   would have to ask Judge Fischer if Judge Fischer has a problem

23   with it being released, since it's over a confidentiality

24   order.

25         MR. WOLFSON:  It was produced to us under the

**UNITED STATES DISTRICT COURT**

1    confidentiality order and the operative settlement in that

2    matter, we were able to retain copies and these are their

3    materials.

4            THE COURT:  So, in other words, you already have

5    those materials.  You only want to be authorized to use those

6    materials for this case, because you already have them?

7            MR. WOLFSON:  Exactly.

8            THE COURT:  I presume there would be no problem --

9    does the defense have copies of all of those documents as well

10   or do you need to produce them to the defense?

11           MR. WOLFSON:  The answer is yes, they do, but once

12   we identify what we actually have --

13           THE COURT:  You will produce them to the defendant?

14           MR. WOLFSON:  Yes.

15           MR. O'MARA:  If I may, for a second, I don't think

16   it's that simple.

17       He's talking about expert reports and stuff like that in

18   that case.

19       They have exhibits and those exhibits will be subject to

20   the protective order of that prior case.

21       This is a case that was settled in 2017, and brought --

22   not on behalf of consumers -- it was brought by a competing

23   alleged ticketing provider, and I think that the *Songkick* case

24   and the discovery into whether or not any of these issues are

25   relevant and could be used here should be something that should

1    be teed up in a motion and addressed by the Magistrate Judge.

2           It is not a straightforward issue, that it should

3    necessarily roll forward here, given the terms of the

4    settlement agreement.

5           MR. WOLFSON:  If I can respond, Your Honor.

6           So, for example, the expert reports in that case, they

7    were made public as part of the summary judgment briefing and

8    summary judgment decision in that case.

9           The underlying backup data, I was telling you how these

10   are complicated regression analyses and calculations.  The

11   underlying backup data relies on extensive data productions

12   that they made to us in that case.

13          And being able to, you know, just access that again,

14   allowed -- it involved issues highly similar to here, such as

15   what are the effects of Ticketmaster's exclusive dealing on

16   competition.

17          THE COURT:  This is what I will do, I will allow the

18   plaintiff's counsel here to access that information.

19          However, before any use or disclosure of any nonpublic

20   documents, you will notify defense counsel of what your

21   intentions are identifying, and if the defense counsel has any

22   objections to either release or even use, I will allow you to

23   bring it to my attention prior to its either disclosure or use.

24          So, in other words, I will allow them to look at the

25   materials they already have, because it's already in their

1  possession.

2      It's not being -- I'm not requiring any third party to

3  produce stuff to them, but insofar as their attempts to use it

4  in this case, or to disclose it, if it hasn't been previously

5  disclosed in public record, I would require them to indicate to

6  you what those are, and defense at that point in time, can

7  raise whatever objections they want, before any further use of

8  disclosure, and I will rule on it.

9      MR. O'MARA:  Thank you, Your Honor.

10      Just to preview that I think you are going to hear from

11  us, we don't think, under the settlement agreement, any data

12  should have been retained from that case.

13      We don't think there should be any data to be looked at

14  and used.

15      THE COURT:  I understand that.  That can be your

16  position.

17      I won't make a ruling right now, because I don't have

18  enough information, but I understand that can be an argument

19  that is raised, but they still have the materials, and if there

20  was a requirement that it not be referenced or used, I would

21  have thought there could have been a request for its surrender,

22  such that they wouldn't be able to use that.

23      MR. O'MARA:  We would have agreed with that.

24      THE COURT:  Perhaps maybe, yes, but I don't know

25  what happened in that other case, because I wasn't the Judge on

1    that one.

2        So I will allow them to do what they are going to do,

3    but with all of those provisos I put on the record.

4        MR. O'MARA:  Your Honor, if I may, one more quick

5    thing on the schedule, which is to echo a little bit what

6    plaintiff's counsel said, we do agree that the heart of these

7    class motions and antitrust case turn on complicated economics,

8    and in my experience, what we get when the motion is filed on

9    the defense side, is usually a series of expert reports, or at

10    least, a single expert report that is several hundred pages,

11    has some unbelievably complicated data analysis, which we then

12    have to ask them to produce their backup and understand what

13    they did and then respond to it.  It's usually three months.

14        THE COURT:  I will -- I'm going to still set it for

15    a hearing on June the 30th, but I could understand the

16    situation where because if a lot of the decision will be

17    dependent upon expert reports, and if there is a situation

18    which gives rise to making a *Daubert* motion in regards to

19    expert reports, I will entertain that -- I could possibly

20    continue the June 30th hearing date on the motion for class

21    cert to make a ruling on the *Daubert* motion aspect of any

22    expert reports that are offered.

23        I would do it in that fashion.

24        I don't know if that helps you.

25        MR. O'MARA:  I guess if the hearing date holds, Your

1  Honor, we will try to work out a briefing schedule with

2  plaintiffs per the order, we will be asking for three months.

3          THE COURT:  If both sides agree that it cannot be

4  done on June 30th, no matter how you slice it or dice it, and

5  both sides come back to me, as long as I find that your

6  explanations are somewhat credible, I will probably agree to

7  continue it from June 30th.

8      I don't want to have a situation where you guys say, oh,

9  you have given us until such and such a day, we can slide

10  along, because again, I want this stuff to go fairly fast.

11      So I will leave it at this point in time on June 30th

12  but you are going to be talking about these other things as

13  well.

14      If both sides agree and give me a new schedule with an

15  explanation, obviously, I will look at it, and I will consider

16  it.

17          MR. O'MARA:  Thank you, Your Honor.

18          MR. WOLFSON:  Thank you, Your Honor.

19          THE COURT:  Anything else?

20          MR. O'MARA:  No, Your Honor.

21          THE COURT:  Thank you both.  Have a very, very nice

22  day.

23          MR. TERUYA:  Thank you, Your Honor.

24          (The proceedings concluded at 10:08 a.m.)

25                              * * *

UNITED STATES DISTRICT COURT

1            **CERTIFICATE OF OFFICIAL REPORTER**

2

3 COUNTY OF LOS ANGELES   )
                             )

4 STATE OF CALIFORNIA    )

5

6           I, TERRI A. HOURIGAN, Federal Official Realtime

7 Court Reporter, in and for the United States District Court for

8 the Central District of California, do hereby certify that

9 pursuant to Section 753, Title 28, United States Code that the

10 foregoing is a true and correct transcript of the

11 stenographically reported proceedings held in the

12 above-entitled matter and that the transcript page format is in

13 conformance with the regulations of the judicial conference of

14 the United States.

15

16 Date: 7th day of January, 2025.

17

18

19                    /s/ TERRI A. HOURIGAN

20            _____
           TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                    Federal Court Reporter

21

22

23

24

25

**/**

**/s** [1] - 30:19

**0**

**09814** [1] - 24:12

**1**

**10:08** [1] - 29:18
**10th** [1] - 2:6
**12** [4] - 20:2, 20:7, 21:18, 22:3
**13** [2] - 20:2, 22:3
**1404** [4] - 7:16, 13:17, 18:3, 18:7
**15** [2] - 24:12
**18** [1] - 12:4

**2**

**2** [1] - 13:1
**2000** [1] - 2:11
**2010** [1] - 21:12
**2017** [1] - 25:15
**2024** [1] - 11:6
**2025** [3] - 1:13, 3:1, 30:16
**213** [1] - 1:24
**22-047** [1] - 1:7
**23** [1] - 20:13
**27** [1] - 20:8
**28** [1] - 30:9

**3**

**30** [1] - 17:25
**30th** [9] - 19:17, 21:24, 22:5, 23:15, 28:9, 28:14, 28:23, 29:1, 29:5
**350** [1] - 1:23
**3838** [2] - 1:22, 30:20

**4**

**4.3** [1] - 20:6
**4311** [1] - 1:23

**5**

**505** [1] - 2:11

**6**

**6** [2] - 1:13, 3:1

**7**

**753** [1] - 30:9

**7th** [1] - 30:16

**8**

**865** [1] - 2:6
**894-2849** [1] - 1:24
**8:30** [2] - 1:14, 3:2

**9**

**90012** [1] - 1:24
**90017** [1] - 2:6
**94111** [1] - 2:11

**A**

**A.M** [1] - 1:14
**a.m** [2] - 3:2, 29:18
**able** [9] - 4:16, 15:24, 18:16, 21:24, 22:20, 23:17, 24:22, 26:7, 27:16
**above-entitled** [1] - 30:12
**access** [3] - 24:2, 26:7, 26:12
**action** [3] - 5:23, 6:23, 13:1
**actions** [3] - 14:23, 20:24, 21:23
**actual** [1] - 24:1
**ADAM** [1] - 2:5
**Adam** [1] - 3:12
**adamantly** [1] - 10:15
**add** [1] - 11:16
**addition** [1] - 6:10
**additional** [2] - 22:7, 23:23
**address** [1] - 4:9
**addressed** [1] - 25:20
**AG's** [1] - 14:3
**ago** [1] - 5:22
**agree** [15] - 4:3, 6:5, 6:19, 7:7, 7:18, 7:24, 8:20, 8:23, 18:14, 18:25, 19:16, 27:25, 28:22, 28:25, 29:8
**agreed** [1] - 27:17
**agreement** [2] - 25:23, 27:5
**agrees** [3] - 7:21, 8:14
**AGs** [1] - 16:11
**al** [1] - 1:5
**allegation** [1] - 15:19
**alleged** [2] - 15:24, 25:17
**allow** [5] - 7:4, 26:11,

26:16, 26:18, 27:21
**allowed** [1] - 26:8
**allows** [1] - 14:16
**alone** [2] - 11:14, 14:14
**analyses** [1] - 26:4
**analysis** [4] - 21:1, 21:17, 24:1, 28:5
**ANGELES** [4] - 1:14, 1:24, 3:1, 30:3
**Angeles** [2] - 2:6, 15:5
**answer** [7] - 3:25, 4:5, 8:2, 11:5, 16:7, 21:8, 25:6
**anticipate** [1] - 22:22
**antitrust** [5] - 7:4, 20:8, 20:23, 21:22, 28:1
**appeal** [1] - 11:7
**appearances** [1] - 3:7
**APPEARANCES** [1] - 2:1
**apply** [2] - 12:1, 21:17
**appreciate** [2] - 23:18, 23:19
**approaches** [1] - 5:14
**appropriate** [3] - 16:15, 16:17, 16:18
**arbitration** [2] - 11:9, 11:10
**argue** [10] - 3:24, 4:6, 13:13, 13:14, 15:8, 16:22, 17:9, 18:16, 21:24
**argued** [2] - 13:22, 16:11
**arguing** [1] - 4:21
**argument** [3] - 11:8, 22:24, 27:12
**arguments** [3] - 4:7, 12:9, 12:13
**aside** [1] - 8:2
**aspect** [2] - 21:6, 28:15
**assuming** [1] - 8:14
**attached** [1] - 14:7
**attempts** [1] - 26:22
**attention** [1] - 26:17
**Attorney** [4] - 5:24, 9:17, 12:4, 17:17
**Attorneys** [2] - 2:5, 2:10
**atypical** [1] - 4:25
**authorized** [1] - 24:25
**avoidance** [1] -

12:21
**avoiding** [1] - 6:8
**awards** [1] - 6:11

**B**

**background** [1] - 11:12
**backup** [3] - 26:3, 26:5, 28:6
**bar** [2] - 8:10, 8:12
**basis** [2] - 23:9, 23:10
**battle** [1] - 4:13
**becomes** [1] - 5:17
**behalf** [1] - 25:16
**behind** [1] - 5:16
**best** [1] - 8:3
**between** [1] - 16:6
**beyond** [1] - 10:23
**billion** [2] - 20:7, 21:18
**billions** [1] - 20:19
**bind** [1] - 22:22
**bit** [4] - 4:18, 15:7, 17:9, 27:24
**bits** [1] - 20:20
**blame** [1] - 17:5
**bound** [3] - 18:15, 18:25, 19:2
**briefed** [1] - 6:6
**briefing** [6] - 8:7, 9:3, 12:24, 23:24, 26:1, 28:20
**bring** [4] - 6:24, 12:5, 12:6, 26:17
**brought** [2] - 25:15, 25:16
**business** [2] - 7:2, 15:4
**button** [1] - 22:25
**BY** [2] - 2:4, 2:9

**C**

**calculations** [2] - 21:21, 26:4
**CALIFORNIA** [5] - 1:2, 1:14, 1:24, 3:1, 30:4
**California** [11] - 2:6, 2:11, 8:5, 8:19, 10:18, 13:6, 15:25, 16:3, 16:5, 16:6, 30:8
**cannot** [1] - 28:22
**capable** [1] - 21:9
**cared** [1] - 12:15
**Case** [3] - 1:7, 5:16, 5:17
**case** [85] - 4:9, 4:24,

4:25, 5:5, 5:11, 5:12, 5:14, 5:15, 5:21, 6:1, 6:2, 6:12, 6:14, 6:24, 7:5, 7:7, 7:12, 7:13, 7:16, 7:18, 7:19, 8:10, 8:13, 8:18, 9:8, 9:9, 9:12, 9:13, 9:14, 10:3, 10:6, 10:8, 10:10, 10:15, 10:22, 10:25, 11:1, 11:3, 11:7, 11:9, 11:10, 11:13, 12:5, 12:6, 12:8, 12:19, 12:20, 12:23, 14:12, 14:13, 15:11, 15:19, 16:25, 17:1, 17:3, 17:4, 17:14, 17:19, 19:23, 20:1, 20:8, 20:18, 22:9, 23:25, 24:1, 24:9, 24:13, 25:1, 25:13, 25:14, 25:15, 25:17, 25:25, 26:2, 26:6, 26:23, 27:6, 27:19, 28:1
**cases** [5] - 6:9, 6:14, 10:14, 12:15, 18:2
**catch** [1] - 23:21
**caused** [1] - 17:3
**caveat** [1] - 23:17
**CCRR** [1] - 1:22
**Central** [3] - 8:10, 14:25, 30:8
**CENTRAL** [2] - 1:2
**cert** [1] - 28:15
**CERTIFICATE** [1] - 30:1
**certification** [3] - 19:17, 20:10, 22:5
**certifies** [1] - 20:22
**certify** [1] - 30:8
**chance** [1] - 11:15
**change** [3] - 4:13, 14:17, 14:18
**charge** [1] - 16:4
**charged** [1] - 21:11
**choice** [2] - 8:23, 14:11
**chosen** [1] - 18:10
**Church** [3] - 5:15, 6:19, 6:21
**Circuit** [4] - 7:18, 11:8, 11:9, 16:7
**citation** [1] - 14:13
**cited** [2] - 16:2, 18:2
**claims** [1] - 8:4
**class** [6] - 8:3, 19:17, 20:10, 20:22, 20:24, 21:9, 21:22, 22:5, 28:1, 28:14
**class's** [1] - 22:1
**class-wide** [1] - 21:9

2

classes [2] - 20:25, 21:25
clause [2] - 7:17, 8:2
clean [1] - 21:19
clear [3] - 14:3, 15:10, 16:7
clearly [1] - 16:10
client [3] - 18:23, 22:21, 22:22
client's [1] - 19:10
Code [1] - 30:9
collateral [2] - 18:15, 19:3
comment [1] - 9:18
commonality [1] - 20:15
commonly [1] - 21:22
communication [1] - 15:15
competing [1] - 25:16
competition [1] - 26:10
competitors [1] - 15:17
complaint [1] - 24:8
completely [1] - 10:2
completeness [1] - 5:14
complex [1] - 21:22
complicated [3] - 26:4, 28:1, 28:5
concern [1] - 10:1
concerned [1] - 13:15
concluded [1] - 29:18
conclusions [1] - 4:3
conduct [1] - 12:21
CONFERENCE [1] - 1:13
conference [1] - 30:13
confidentiality [3] - 24:15, 24:19, 24:21
conformance [1] - 30:13
consider [3] - 19:5, 19:7, 29:9
consistencies [1] - 13:11
consult [1] - 22:21
consumers [1] - 25:16
continue [2] - 28:14, 29:1
contracts [2] - 15:20, 15:21
contrary [2] - 11:24,

12:3
control [2] - 10:21, 10:23
convenience [2] - 7:16, 8:4
convenient [1] - 13:5
conversely [1] - 14:22
convince [1] - 4:17
convincing [1] - 16:8
copies [2] - 24:22, 25:4
corporation [1] - 15:3
correct [3] - 4:8, 13:17, 30:10
counsel [8] - 3:8, 22:10, 22:18, 23:12, 26:12, 26:14, 26:15, 27:25
COUNSEL [1] - 2:1
COUNTY [1] - 30:3
couple [1] - 4:14
course [2] - 15:23, 20:3
court [1] - 18:9
COURT [52] - 1:1, 1:23, 3:5, 3:11, 3:14, 3:17, 3:19, 3:24, 4:5, 4:11, 4:16, 6:16, 7:18, 8:9, 9:6, 9:24, 10:5, 10:19, 12:2, 13:12, 13:19, 14:6, 14:15, 15:9, 16:14, 16:25, 18:13, 18:21, 19:9, 19:21, 19:25, 20:9, 21:3, 22:8, 22:12, 22:14, 22:23, 23:5, 23:21, 24:5, 24:9, 24:14, 24:24, 25:3, 25:8, 26:11, 27:9, 27:18, 28:8, 28:22, 29:13, 29:15
Court [36] - 4:3, 5:3, 5:4, 5:5, 5:6, 5:11, 5:13, 5:18, 6:9, 6:22, 7:19, 8:10, 8:12, 8:14, 8:17, 9:4, 9:7, 9:8, 9:9, 9:14, 9:15, 9:20, 10:13, 11:7, 11:11, 13:9, 17:12, 18:11, 20:21, 23:21, 30:7, 30:20
Court's [2] - 13:17, 19:15
Courts [1] - 18:8
covering [1] - 6:1
creating [1] - 21:21
credible [1] - 28:25
critical [2] - 19:19,

20:7
CRR [1] - 30:20
CSR [2] - 1:22, 30:20
current [1] - 4:24
cut [1] - 12:25
CV [3] - 1:7, 24:12

**D**

damages [3] - 6:11, 20:25, 21:10
data [13] - 19:19, 20:7, 20:19, 21:2, 21:17, 21:19, 24:1, 26:3, 26:5, 27:5, 27:7, 28:5
date [2] - 28:14, 28:19
Date [1] - 30:16
Daubert [2] - 28:12, 28:15
DC [9] - 8:22, 10:7, 11:19, 13:4, 13:8, 14:4, 15:14, 15:16, 16:12
dealing [2] - 22:20, 26:9
deals [1] - 5:13
deciding [1] - 19:6
decision [2] - 26:2, 28:10
declaration [1] - 14:7
defendant [5] - 4:19, 16:4, 18:13, 18:18, 25:8
DEFENDANT [1] - 2:8
defendant's [1] - 8:21
Defendants [1] - 1:9
defendants [12] - 3:16, 3:18, 7:1, 8:1, 9:7, 10:19, 13:3, 15:2, 15:5, 17:12, 18:14, 20:3
defense [9] - 3:14, 4:7, 9:24, 25:4, 25:5, 26:14, 26:15, 26:25, 28:3
defense's [1] - 19:5
deference [3] - 14:11, 14:13, 14:20
Delaware [1] - 15:2
delay [2] - 11:22, 11:24
deny [2] - 11:25, 17:10
Department [1] - 5:23
dependent [1] -

28:11
depos [1] - 20:8
desire [1] - 17:9
desired [1] - 10:23
detailed [1] - 21:1
devious [1] - 17:2
dice [1] - 28:23
difference [1] - 10:18
different [6] - 7:6, 8:22, 10:6, 13:10, 21:14, 21:16
digging [1] - 21:17
direction [2] - 13:18, 13:20
disclose [1] - 26:23
disclosed [1] - 26:24
disclosure [3] - 26:13, 26:17, 27:2
disclosures [1] - 16:2
discovery [12] - 15:23, 19:23, 19:25, 20:4, 20:11, 20:12, 20:18, 21:7, 22:7, 22:11, 22:15, 25:18
discussed [2] - 12:24, 13:9
discussion [1] - 13:7
dismiss [1] - 5:6
DISTRICT [3] - 1:1, 1:2, 1:3
district [2] - 11:2, 12:19
District [16] - 8:11, 8:13, 8:18, 11:7, 11:14, 11:18, 13:24, 14:25, 16:12, 17:13, 17:18, 18:14, 20:5, 23:22, 30:7, 30:8
DIVISION [1] - 1:2
doable [1] - 22:6
documents [8] - 14:24, 15:11, 19:19, 19:22, 20:6, 25:4, 26:14
DOJ [8] - 10:21, 11:6, 12:3, 12:11, 14:2, 15:18, 16:11, 17:16
DOJ's [1] - 9:16
done [1] - 28:23
door [1] - 23:2
doubled [1] - 14:12
down [2] - 14:12, 17:25
dozens [1] - 16:2

**E**

echo [1] - 27:24

econometric [1] - 21:16
economics [1] - 28:1
effects [1] - 26:9
eight [1] - 16:8
eight-factor [1] - 16:8
either [4] - 5:20, 13:18, 26:16, 26:17
elements [1] - 14:18
EMANUEL [1] - 2:4
Emanuel [2] - 3:10, 3:13
employee [1] - 16:4
enforce [1] - 8:1
enter [1] - 15:20
entertain [3] - 17:20, 23:10, 28:13
ENTERTAINMENT [1] - 1:8
entities [1] - 6:24
entitled [2] - 14:13, 30:12
era [2] - 15:12, 23:3
especially [1] - 12:7
establish [3] - 18:7, 20:12
established [2] - 6:13, 19:1
establishing [1] - 21:9
estoppel [2] - 18:15, 19:3
et [1] - 1:5
ex [2] - 23:9
exact [1] - 11:3
exactly [1] - 25:2
example [2] - 15:13, 25:25
except [2] - 4:8, 13:6
exception [1] - 4:21
exchanged [1] - 24:1
exclusive [1] - 26:9
exhibits [2] - 25:13
existence [1] - 14:23
expedited [1] - 23:10
experience [1] - 28:2
expert [7] - 25:12, 25:25, 28:3, 28:4, 28:11, 28:13, 28:16
explain [3] - 23:3, 23:13, 23:17
explanation [3] - 23:6, 23:7, 29:9
explanations [1] - 28:25
expressed [1] - 9:4
extensive [1] - 26:5
extent [1] - 20:20

**extremes** [1] - 5:20

## F

**fact** [1] - 6:23
**factor** [4] - 14:14, 16:8, 19:7
**factors** [2] - 11:20, 16:10
**facts** [1] - 10:16
**fairly** [2] - 19:19, 29:4
**fall** [2] - 5:20, 16:19
**far** [2] - 6:21, 20:5
**fashion** [1] - 28:17
**fast** [2] - 17:4, 29:4
**favor** [3] - 12:22, 16:10
**Federal** [4] - 6:9, 11:11, 30:6, 30:20
**FEDERAL** [1] - 1:23
**feelings** [1] - 17:13
**fees** [1] - 21:10
**few** [1] - 22:4
**Figueroa** [1] - 2:6
**file** [7] - 4:20, 4:23, 4:25, 5:6, 5:10, 5:16, 6:8
**filed** [18] - 5:3, 5:11, 5:12, 5:21, 5:23, 10:2, 10:3, 10:4, 10:22, 10:25, 11:1, 11:6, 12:5, 12:10, 14:7, 17:1, 28:2
**files** [1] - 10:22
**filing** [1] - 8:24
**finite** [1] - 19:20
**FIRST** [1] - 1:23
**first** [10] - 3:8, 4:20, 4:23, 4:25, 5:6, 5:10, 5:11, 5:16, 6:7, 20:4
**first-to-file** [6] - 4:20, 4:23, 4:25, 5:6, 5:10, 5:16
**Fischer** [5] - 24:13, 24:17, 24:18
**fish** [1] - 9:13
**Floor** [1] - 2:6
**footnote** [1] - 7:14
**FOR** [2] - 2:3, 2:8
**foregoing** [1] - 30:10
**form** [1] - 18:17
**format** [1] - 30:12
**forth** [1] - 20:6
**forum** [7] - 7:17, 8:1, 9:2, 10:20, 13:10, 14:11, 18:10
**forward** [3] - 6:15, 17:14, 25:22
**Francisco** [1] - 2:11

**frank** [1] - 10:2
**frankly** [1] - 23:19
**free** [1] - 19:9
**fry** [1] - 9:13

## G

**Generals** [4] - 5:24, 9:17, 12:4, 17:17
**GEORGE** [1] - 1:3
**given** [1] - 8:21, 8:23, 9:3, 14:19, 14:22, 16:11, 16:12, 17:22, 22:19, 25:22, 29:3
**gosh** [1] - 12:11
**government** [12] - 8:23, 10:15, 11:13, 11:17, 11:22, 13:1, 13:3, 13:4, 14:12, 15:8, 15:14, 15:23
**government's** [1] - 14:8
**grant** [1] - 17:23
**granted** [4] - 4:15, 11:10, 11:15, 18:3
**greater** [1] - 14:13
**group** [1] - 6:24
**guarantee** [1] - 18:24
**guess** [2] - 15:3, 28:19
**guys** [2] - 10:20, 29:2

## H

**half** [1] - 6:25
**happy** [2] - 9:12, 10:17
**headquartered** [1] - 15:17
**hear** [1] - 27:4
**heard** [1] - 19:17
**hearing** [7] - 17:16, 22:6, 23:14, 23:15, 28:9, 28:14, 28:19
**heart** [1] - 27:25
**Heckman** [1] - 3:5
**HECKMAN** [1] - 1:5
**held** [2] - 16:12, 30:11
**helps** [2] - 24:3, 28:18
**hereby** [1] - 30:8
**highly** [1] - 26:8
**holds** [1] - 28:19
**holidays** [1] - 22:19
**honestly** [1] - 4:13
**Honor** [40] - 3:9, 3:12, 3:15, 3:22, 3:23,

4:8, 4:12, 6:5, 7:10, 7:25, 8:16, 9:19, 10:12, 11:5, 12:17, 13:16, 14:8, 15:6, 16:6, 17:24, 19:8, 19:12, 19:14, 20:23, 21:8, 22:2, 22:10, 22:19, 23:16, 23:17, 23:24, 24:11, 25:24, 27:3, 27:23, 28:20, 29:11, 29:12, 29:14, 29:17
**Honor's** [1] - 7:14
**HONORABLE** [1] - 1:3
**HOURIGAN** [4] - 1:22, 30:6, 30:19, 30:20
**house** [1] - 16:24, 16:25
**hub** [1] - 15:16
**hundred** [1] - 28:4
**hurt** [1] - 9:23

## I

**identify** [2] - 15:24, 25:7
**identifying** [1] - 26:15
**ignore** [1] - 7:20
**improper** [1] - 7:3
**improperly** [1] - 10:3
**INC** [1] - 1:8
**incidents** [1] - 15:24
**including** [1] - 13:11
**inconsistent** [3] - 6:10, 9:4, 12:22
**inconvenience** [1] - 18:12
**incorporation** [1] - 15:2
**independent** [1] - 17:17
**indicate** [2] - 23:12, 26:24
**indicated** [1] - 16:20
**inefficiencies** [1] - 6:8
**infer** [1] - 9:22
**information** [3] - 17:21, 26:12, 27:12
**initial** [2] - 16:1, 19:18
**insofar** [2] - 13:14, 26:22
**instance** [1] - 18:5
**instincts** [1] - 13:17
**intend** [1] - 8:1
**intended** [1] - 13:13

**intent** [1] - 14:11
**intentions** [1] - 26:15
**interactions** [1] - 15:22
**interest** [6] - 8:3, 11:21, 11:24, 12:3, 12:11, 22:1
**interested** [1] - 17:15
**interim** [1] - 5:22
**inverse** [1] - 5:10
**investigation** [2] - 20:4
**involved** [3] - 6:1, 12:20, 26:8
**irrelevant** [1] - 15:12
**issue** [14] - 7:8, 7:9, 9:1, 9:18, 13:1, 13:3, 13:7, 20:14, 20:15, 20:16, 20:21, 21:4, 21:6, 25:21
**issued** [1] - 3:20
**issues** [11] - 5:25, 11:4, 12:7, 12:24, 15:16, 15:18, 18:11, 25:18, 26:8

## J

**JANUARY** [1] - 3:1
**January** [2] - 1:13, 30:16
**JEFFREY** [2] - 2:10, 3:18
**Jeffrey** [1] - 3:18
**Judge** [11] - 8:17, 9:11, 12:14, 13:24, 24:13, 24:17, 24:18, 25:20, 27:19
**JUDGE** [1] - 1:3
**Judge's** [1] - 17:19
**judgment** [3] - 12:18, 26:1, 26:2
**judgments** [1] - 6:11
**judicata** [2] - 18:15, 19:4
**judicial** [1] - 30:13
**jump** [1] - 24:3
**June** [9] - 19:17, 21:24, 23:15, 28:9, 28:14, 28:23, 29:1, 29:5
**jurisdiction** [2] - 6:25, 7:1
**jurisdictions** [1] - 12:16
**Justice** [1] - 5:23
**justice** [4] - 11:21, 11:24, 12:3, 12:11

## K

**KEVIN** [1] - 2:4
**Kevin** [1] - 3:9
**key** [1] - 15:17
**kind** [4] - 4:19, 6:3, 15:12
**Kit** [2] - 12:19, 23:25
**knows** [1] - 4:16

## L

**laid** [1] - 13:9
**large** [1] - 14:20
**last** [2] - 5:22, 15:1
**LATHAM** [1] - 2:9
**law** [6] - 6:7, 6:12, 10:16, 13:20, 14:13, 15:11
**Law** [2] - 2:5, 2:10
**lawsuit** [3] - 5:2, 5:3, 5:11
**lead** [1] - 4:15
**leads** [2] - 7:11, 16:21
**least** [3] - 21:1, 21:25, 28:4
**leave** [1] - 29:5
**leaving** [1] - 23:15
**led** [2] - 9:3, 13:12
**legal** [2] - 8:10, 8:12
**less** [2] - 6:7, 16:8
**liability** [1] - 19:1
**likelihood** [1] - 9:23
**list** [3] - 8:6, 16:1, 22:11
**listed** [1] - 8:6
**litigate** [1] - 10:17
**litigated** [1] - 12:16
**Live** [1] - 3:6
**LIVE** [1] - 1:8
**LLC** [1] - 15:4
**LLP** [2] - 2:4, 2:9
**located** [1] - 16:5
**location** [1] - 15:11
**look** [6] - 6:12, 6:14, 15:13, 18:2, 26:18, 29:9
**looked** [2] - 15:1, 27:7
**looking** [1] - 21:10
**looks** [1] - 21:15
**LOS** [4] - 1:14, 1:24, 3:1, 30:3
**Los** [2] - 2:6, 15:5
**lose** [1] - 18:25
**loses** [1] - 18:13
**loss** [1] - 19:1

## M

**machinations** [1] - 17:2
**Magistrate** [1] - 25:20
**main** [2] - 14:10, 15:18
**major** [1] - 21:6
**material** [1] - 22:10
**materials** [11] - 22:8, 22:17, 23:13, 23:23, 23:25, 24:15, 24:23, 24:25, 25:1, 26:19, 27:13
**matter** [6] - 3:5, 11:2, 13:20, 24:22, 28:23, 30:12
**mean** [4] - 6:18, 6:22, 9:19, 15:1
**meaning** [1] - 21:19
**means** [1] - 21:10
**measure** [1] - 14:20
**meets** [1] - 20:24
**mention** [1] - 22:3
**mentioned** [2] - 19:15, 23:24
**merits** [4] - 10:14, 18:16, 20:11, 20:12
**met** [1] - 20:13
**might** [1] - 20:19
**militates** [1] - 12:22
**million** [1] - 20:6
**mind** [3] - 4:13, 17:17, 19:6
**models** [2] - 21:16, 21:21
**modern** [2] - 15:12, 23:3
**moment** [1] - 24:11
**Monday** [1] - 1:13
**MONDAY** [1] - 3:1
**Montgomery** [1] - 2:11
**month** [1] - 11:23
**months** [2] - 12:4, 28:7, 28:21
**morning** [3] - 3:9, 3:12, 3:15
**most** [4] - 6:15, 10:13, 11:3, 20:16
**motion** [23] - 3:19, 7:15, 8:21, 10:2, 10:4, 10:10, 11:13, 11:19, 13:2, 13:14, 13:18, 14:9, 16:11, 17:10, 20:3, 20:10, 22:4, 22:20, 25:20, 28:2, 28:12, 28:14, 28:15
**motions** [1] - 28:1

**MR** [56] - 3:9, 3:12, 3:15, 3:18, 3:22, 3:23, 4:2, 4:8, 4:12, 6:5, 7:10, 7:25, 8:16, 9:19, 10:1, 10:12, 11:5, 12:17, 13:16, 14:1, 14:7, 15:6, 15:10, 16:21, 17:24, 18:19, 19:8, 19:11, 19:12, 19:14, 19:24, 20:2, 20:23, 21:8, 22:10, 22:13, 22:19, 23:1, 23:16, 23:23, 24:7, 24:11, 24:20, 25:2, 25:6, 25:9, 25:10, 25:24, 27:3, 27:17, 27:23, 28:19, 29:11, 29:12, 29:14, 29:17

## N

**NATION** [1] - 1:8
**Nation** [1] - 3:6
**necessarily** [2] - 6:16, 25:22
**necessary** [1] - 20:11
**need** [3] - 19:22, 21:19, 25:5
**new** [1] - 29:8
**New** [37] - 7:13, 7:16, 8:11, 8:13, 8:18, 8:22, 9:11, 10:3, 10:18, 11:14, 11:18, 12:14, 13:4, 13:5, 13:7, 13:8, 13:24, 14:4, 14:6, 15:17, 15:24, 16:2, 16:5, 16:6, 16:12, 17:1, 17:4, 17:13, 17:18, 18:14, 19:23, 19:25, 20:5, 22:9, 23:22
**next** [2] - 22:4, 22:17
**nice** [1] - 29:15
**Ninth** [2] - 11:8, 11:9
**NO** [2] - 1:22, 30:20
**nobody** [1] - 13:22
**non** [1] - 5:17
**none** [1] - 15:25
**nonpublic** [1] - 26:13
**normal** [2] - 4:25, 14:18
**normally** [1] - 14:19
**note** [2] - 9:1, 13:2
**nothing** [1] - 12:12
**notify** [1] - 26:14
**number** [3] - 21:14, 21:16, 24:9
**numerosity** [1] - 20:14

## O

**O'MARA** [28] - 2:9, 3:15, 4:12, 6:5, 7:10, 10:1, 10:12, 11:5, 13:16, 14:1, 14:7, 15:6, 15:10, 16:21, 17:24, 18:19, 19:8, 19:11, 22:10, 22:19, 23:1, 25:10, 27:3, 27:17, 27:23, 28:19, 29:11, 29:14
**O'Mara** [1] - 3:15
**Oberstein** [2] - 12:9, 12:20
**objections** [2] - 26:16, 27:1
**observations** [2] - 12:17, 20:7
**observed** [1] - 13:4
**obvious** [1] - 6:20
**obviously** [9] - 5:11, 7:3, 8:9, 10:21, 12:1, 14:15, 18:20, 19:7, 29:9
**odd** [1] - 15:7
**OF** [6] - 1:2, 1:12, 2:1, 30:1, 30:3, 30:4
**offered** [1] - 28:16
**OFFICIAL** [2] - 1:23, 30:1
**Official** [1] - 30:6
**often** [2] - 20:25, 21:18
**once** [5] - 10:25, 11:1, 18:7, 23:12, 25:6
**one** [24] - 4:5, 5:2, 5:13, 6:15, 9:13, 10:15, 11:19, 11:20, 12:18, 13:19, 14:10, 15:3, 15:13, 15:18, 15:24, 16:16, 18:11, 18:21, 23:2, 23:23, 24:11, 27:20, 27:23
**oOo** [1] - 3:3
**open** [1] - 9:20
**operative** [1] - 24:21
**oppose** [1] - 9:20
**opposed** [1] - 18:11
**opposing** [1] - 15:14
**opposition** [2] - 14:3, 14:8
**oral** [1] - 11:8
**order** [7] - 19:15, 24:16, 24:19, 24:21, 25:14, 28:21
**ordered** [1] - 22:2
**originally** [1] - 5:21
**otherwise** [1] - 5:6

**outset** [1] - 10:13
**overcharged** [1] - 21:13
**overlapping** [2] - 6:11, 18:11

## P

**page** [1] - 30:12
**pages** [2] - 20:2, 28:4
**part** [4] - 18:8, 18:12, 24:6, 26:1
**parte** [1] - 23:9
**particular** [2] - 14:5, 15:15
**particularly** [1] - 16:23
**parties** [5] - 8:5, 13:13, 18:12, 19:3, 19:16
**parties'** [1] - 16:1
**party** [3] - 7:16, 15:15, 26:21
**pending** [2] - 10:8, 11:3
**per** [1] - 28:21
**perhaps** [2] - 8:20, 27:18
**permission** [1] - 24:2
**perspective** [2] - 4:2, 9:20
**place** [7] - 7:2, 8:8, 13:6, 14:5, 14:6, 15:1, 15:4
**PLAINTIFF** [1] - 2:3
**plaintiff** [2] - 11:22, 18:9
**plaintiff's** [7] - 3:7, 4:2, 14:10, 14:19, 22:18, 26:12, 27:25
**Plaintiffs** [1] - 1:6
**plaintiffs** [11] - 3:10, 4:6, 6:2, 6:23, 7:24, 9:8, 10:20, 11:17, 19:1, 22:9, 28:21
**point** [17] - 4:6, 6:18, 7:25, 8:20, 10:8, 11:17, 13:16, 17:10, 17:22, 18:1, 18:7, 21:7, 22:16, 23:11, 23:15, 26:25, 29:5
**pointed** [1] - 20:3
**points** [2] - 14:10, 21:19
**portions** [1] - 24:8
**position** [9] - 7:12, 9:8, 9:15, 9:16, 15:8, 18:18, 18:19, 19:5, 27:10

**possession** [1] - 26:20
**possibility** [2] - 8:25, 9:22
**possible** [2] - 8:17, 16:18
**possibly** [1] - 28:13
**posture** [1] - 4:24
**potential** [1] - 6:11
**potentially** [1] - 6:1
**pox** [2] - 16:24, 16:25
**preceded** [2] - 12:19, 12:20
**predicate** [1] - 6:13
**predominance** [4] - 20:17, 20:25, 21:3, 21:5
**prejudice** [3] - 17:11, 17:23, 18:22
**presses** [1] - 22:25
**pressing** [1] - 9:13
**presume** [3] - 3:20, 9:24, 19:22, 22:24, 24:5, 24:15, 25:3
**pretty** [1] - 13:6
**prevail** [1] - 10:16
**prevents** [1] - 8:12
**preview** [1] - 27:4
**previous** [1] - 23:25
**previously** [1] - 26:23
**primary** [2] - 15:17, 21:11
**principal** [3] - 7:2, 15:4, 16:4
**problem** [12] - 4:18, 5:7, 7:22, 9:25, 14:21, 16:14, 16:24, 22:15, 22:17, 22:24, 24:18, 25:3
**problematic** [1] - 17:15
**procedural** [2] - 11:12, 17:2
**procedurally** [1] - 17:3
**proceed** [2] - 6:9, 12:23
**proceedings** [2] - 29:18, 30:11
**process** [1] - 21:22
**produce** [4] - 25:5, 25:8, 26:22, 28:6
**produced** [7] - 20:6, 22:3, 22:4, 22:8, 23:5, 24:15, 24:20
**producing** [1] - 22:17
**productions** [2] -

23:2, 26:5
**progress** [1] - 17:4
**progressed** [2] - 6:15, 6:18
**prosecute** [1] - 8:5
**prosecution** [1] - 8:4
**protective** [1] - 25:14
**provided** [2] - 22:11, 23:7
**provider** [1] - 25:17
**providing** [1] - 22:15
**provision** [2] - 14:16, 24:16
**provisions** [1] - 7:4
**provisos** [1] - 27:22
**public** [4] - 24:6, 24:7, 26:1, 26:24
**purchasers** [1] - 21:12
**pursuant** [1] - 30:9
**put** [3] - 19:21, 23:4, 27:22
**putting** [3] - 8:2, 15:7, 17:5

### Q

**questions** [4] - 4:14, 4:15, 7:11, 21:20
**quick** [2] - 23:19, 27:23
**QUINN** [1] - 2:4
**Quinn** [2] - 3:10, 3:13
**quite** [1] - 23:25

### R

**raise** [1] - 27:1
**raised** [5] - 4:14, 7:11, 12:7, 18:3, 27:13
**raising** [1] - 5:24
**rationale** [1] - 5:16
**reached** [1] - 4:3
**reaction** [2] - 17:19, 19:18
**ready** [1] - 21:24
**really** [3] - 4:25, 7:8
**Realtime** [1] - 30:6
**reason** [7] - 5:13, 7:9, 13:25, 14:2, 16:20, 18:5, 18:22
**reasons** [6] - 4:22, 8:6, 8:7, 13:9, 17:7, 18:8
**received** [1] - 11:14
**record** [3] - 24:6, 26:24, 27:22
**referenced** [1] -

27:14
**referring** [1] - 22:11
**regards** [1] - 28:12
**regression** [2] - 21:15, 26:4
**regulations** [1] - 30:13
**release** [1] - 26:16
**released** [1] - 24:19
**relevant** [2] - 20:21, 25:19
**relied** [1] - 24:8
**relies** [1] - 26:5
**relitigated** [1] - 18:24
**reluctance** [1] - 13:23
**report** [1] - 28:4
**reported** [1] - 30:11
**REPORTER** [2] - 1:23, 30:1
**Reporter** [2] - 30:7, 30:20
**REPORTER'S** [1] - 1:12
**reports** [6] - 25:12, 25:25, 28:3, 28:11, 28:13, 28:16
**request** [4] - 9:25, 10:5, 11:1, 27:15
**require** [5] - 9:7, 21:7, 21:17, 22:23, 26:24
**required** [1] - 20:11
**requirement** [2] - 20:25, 27:14
**requirements** [1] - 20:13
**requires** [1] - 21:1
**requiring** [1] - 26:21
**res** [2] - 18:15, 19:4
**resolved** [2] - 5:17, 18:11
**respect** [3] - 4:9, 10:14, 13:11
**respond** [2] - 25:24, 28:7
**responded** [1] - 13:5
**response** [8] - 9:10, 9:11, 11:19, 12:2, 12:14, 13:3, 16:13, 19:10
**retain** [1] - 24:22
**retained** [1] - 27:6
**rid** [1] - 9:12
**rise** [1] - 28:12
**risk** [2] - 6:10, 9:4
**road** [1] - 20:24
**roll** [1] - 25:22
**ROOM** [1] - 1:23
**RPR** [1] - 30:20

**rubber** [1] - 20:24
**rule** [8] - 4:20, 4:22, 4:23, 5:10, 5:16, 6:7, 6:8, 27:2
**ruling** [7] - 5:7, 8:21, 12:18, 12:21, 13:10, 27:11, 28:15
**rulings** [4] - 6:11, 9:4, 12:22, 13:11

### S

**SAMUEL** [1] - 2:10
**Samuel** [1] - 3:18
**San** [1] - 2:11
**sat** [1] - 12:12
**schedule** [6] - 4:9, 19:16, 23:19, 27:24, 28:20, 29:8
**scheduling** [1] - 19:13
**Scientology** [3] - 5:15, 6:19, 6:21
**second** [2] - 20:4, 25:10
**Second** [1] - 16:7
**secondary** [1] - 21:11
**seconds** [1] - 17:25
**Section** [1] - 30:9
**see** [8] - 4:18, 6:16, 7:9, 9:10, 13:23, 13:25, 14:9, 16:20
**seem** [2] - 10:9, 20:17
**selection** [3] - 7:17, 8:2, 14:19
**send** [2] - 5:5, 11:9
**sense** [2] - 7:23, 21:20
**separate** [1] - 5:23
**separately** [1] - 4:10
**September** [1] - 22:5
**sequitur** [1] - 5:17
**series** [1] - 28:3
**set** [2] - 23:23, 28:8
**settled** [1] - 25:15
**settlement** [3] - 24:21, 25:23, 27:5
**several** [1] - 28:4
**shape** [1] - 18:16
**shopping** [1] - 10:20
**show** [2] - 20:13, 21:9
**showing** [1] - 21:12
**side** [1] - 28:3
**sides** [5] - 3:20, 8:5, 28:22, 28:24, 29:8
**similar** [8] - 5:3, 5:12, 6:9, 6:14, 6:19,

6:24, 12:5, 26:8
**simple** [1] - 25:11
**simply** [3] - 6:23, 13:16, 18:10
**simultaneously** [1] - 6:10
**single** [1] - 28:4
**sit** [1] - 17:25
**situation** [17] - 4:19, 5:1, 5:2, 5:8, 5:10, 5:19, 6:3, 6:22, 7:5, 9:13, 14:22, 16:15, 16:16, 28:10, 28:11, 29:2
**situations** [1] - 6:13
**SKOT** [1] - 2:9
**slice** [1] - 28:23
**slide** [1] - 29:3
**slight** [1] - 20:16
**sometimes** [1] - 5:9
**somewhat** [3] - 6:3, 17:14, 28:25
**Song** [2] - 12:19, 23:25
**Songkick** [1] - 25:17
**sort** [1] - 16:23
**South** [1] - 2:6
**Southern** [11] - 8:13, 8:18, 11:14, 11:18, 13:24, 16:12, 17:13, 17:18, 18:13, 20:5, 23:22
**spit** [1] - 18:1
**start** [3] - 10:12, 23:13, 24:4
**started** [1] - 21:23
**starting** [2] - 3:7, 7:25
**STATE** [1] - 30:4
**State** [4] - 9:17, 14:3, 16:11, 17:16
**states** [2] - 5:24, 6:7
**STATES** [1] - 1:1
**States** [3] - 30:7, 30:9, 30:14
**status** [1] - 17:22
**STATUS** [1] - 1:13
**statute** [1] - 7:20
**statutes** [1] - 7:4
**stay** [21] - 3:19, 4:13, 4:15, 6:23, 7:5, 7:9, 11:10, 11:13, 11:16, 11:21, 12:1, 16:15, 16:19, 17:10, 17:23, 18:2, 18:8, 18:23, 20:2, 22:4, 22:20
**stayed** [1] - 11:7
**staying** [3] - 7:9, 16:20, 22:16
**stenographically** [1]

- 30:11
**still** [2] - 27:13, 28:8
**stop** [1] - 20:9
**straightforward** [1] - 25:21
**Street** [2] - 2:6, 2:11
**STREET** [1] - 1:23
**stretch** [1] - 21:25
**strong** [1] - 9:23
**stuff** [8] - 14:24, 17:17, 20:16, 24:5, 24:6, 25:12, 26:22, 29:4
**subject** [4] - 4:7, 22:23, 23:6, 25:14
**substance** [1] - 21:2
**substantial** [1] - 14:11
**substantially** [2] - 6:9, 6:14
**suggest** [1] - 22:2
**suggested** [1] - 12:9
**suit** [1] - 19:3
**Suite** [1] - 2:11
**SULLIVAN** [1] - 2:4
**summary** [3] - 12:18, 26:1, 26:2
**Supreme** [1] - 7:19
**surprised** [1] - 7:24
**surrender** [1] - 27:15
**sympathy** [1] - 9:5

### T

**technical** [1] - 14:1
**teed** [1] - 25:20
**tentative** [4] - 3:20, 7:12, 13:10, 17:23
**terms** [6] - 8:4, 8:7, 9:1, 11:16, 21:25, 25:22
**TERRI** [4] - 1:22, 30:6, 30:19, 30:20
**TERUYA** [11] - 2:4, 3:9, 3:23, 4:2, 4:8, 7:25, 8:16, 9:19, 12:17, 19:12, 29:17
**Teruya** [1] - 3:9
**test** [2] - 16:7, 16:8
**THE** [52] - 2:3, 2:8, 3:5, 3:11, 3:14, 3:17, 3:19, 3:24, 4:5, 4:11, 4:16, 6:16, 7:18, 8:9, 9:6, 9:24, 10:5, 10:19, 12:2, 13:12, 13:19, 14:6, 14:15, 15:9, 16:14, 16:25, 18:13, 18:21, 19:9, 19:21, 19:25, 20:9, 21:3, 22:8, 22:12, 22:14,

22:23, 23:5, 23:21, 24:5, 24:9, 24:14, 24:24, 25:3, 25:8, 26:11, 27:9, 27:18, 28:8, 28:22, 29:13, 29:15

**theoretical** [1] - 9:22

**theoretically** [1] - 8:17

**therefore** [4] - 10:9, 11:25, 20:14, 24:16

**third** [3] - 15:15, 18:12, 26:21

**thousands** [2] - 15:21

**threats** [1] - 15:19

**three** [5] - 5:21, 11:23, 15:24, 28:7, 28:21

**three-month** [1] - 11:23

**ticketing** [3] - 16:5, 21:11, 25:17

**Ticketmaster** [3] - 15:19, 15:20, 21:11

**Ticketmaster's** [2] - 15:16, 26:9

**Tim** [1] - 3:15

**TIMOTHY** [1] - 2:9

**tips** [1] - 12:22

**Title** [1] - 30:9

**today** [3] - 13:14, 18:20, 22:22

**together** [1] - 23:4

**ton** [1] - 21:7

**TRANSCRIPT** [1] - 1:12

**transcript** [2] - 30:10, 30:12

**transfer** [29] - 5:16, 7:7, 7:10, 7:15, 7:16, 7:20, 8:18, 8:21, 9:14, 10:2, 10:4, 10:6, 10:10, 11:1, 11:2, 11:13, 11:19, 11:21, 11:25, 13:2, 13:17, 13:24, 14:8, 15:14, 16:10, 16:17, 16:18, 18:4, 22:25

**transferred** [7] - 7:13, 7:14, 8:15, 9:9, 10:7, 13:25, 14:2

**transferring** [5] - 7:7, 7:8, 8:10, 8:13, 17:19

**trick** [1] - 3:25

**true** [2] - 15:6, 30:10

**try** [1] - 28:20

**trying** [2] - 18:1, 23:21

**turn** [2] - 19:13, 28:1

**two** [10] - 6:9, 6:25, 11:23, 12:17, 14:23, 18:11, 22:17, 22:25, 23:6, 23:7

**type** [1] - 4:19

## U

**U.S** [1] - 1:3

**ultimate** [1] - 11:18

**ultimately** [2] - 9:3, 10:16

**unbelievably** [1] - 28:5

**under** [4] - 4:20, 24:15, 24:20, 27:5

**underlying** [2] - 26:3, 26:5

**understandable** [1] - 14:20

**UNITED** [1] - 1:1

**United** [3] - 30:7, 30:9, 30:14

**unless** [1] - 7:21

**unlikely** [1] - 8:20

**unusual** [2] - 4:18, 6:4

**up** [5] - 17:8, 19:6, 19:16, 23:21, 25:20

**uphill** [1] - 4:12

**URQUHART** [1] - 2:4

## V

**variations** [1] - 5:8

**venue** [4] - 7:3, 14:15, 14:17, 14:18

**venues** [2] - 15:20, 15:22

**versus** [5] - 3:5, 13:4, 13:8, 14:4

**viable** [6] - 7:17, 13:18, 13:20, 13:21, 13:22, 18:5

**vs** [1] - 1:7

## W

**wait** [1] - 12:4

**WATKINS** [1] - 2:9

**ways** [3] - 13:11, 21:15, 21:16

**weeks** [5] - 22:5, 22:17, 23:3, 23:6, 23:8

**weigh** [2] - 14:17, 16:10

**WEST** [1] - 1:23

**whole** [1] - 5:15

**wide** [1] - 21:9

**win** [1] - 19:2

**wind** [1] - 17:8

**wish** [1] - 4:6

**witnesses** [1] - 15:13

**WOLFSON** [19] - 2:5, 3:12, 3:22, 19:14, 19:24, 20:2, 20:23, 21:8, 22:13, 23:16, 23:23, 24:7, 24:11, 24:20, 25:2, 25:6, 25:9, 25:24, 29:12

**Wolfson** [2] - 3:13, 19:12

**words** [2] - 24:24, 26:18

**WU** [1] - 1:3

## Y

**year** [2] - 5:22, 6:25

**years** [4] - 5:21, 6:25, 12:10, 12:12

**York** [37] - 7:13, 7:17, 8:11, 8:13, 8:18, 8:22, 9:11, 10:3, 10:18, 11:14, 11:18, 12:14, 13:4, 13:5, 13:8, 13:24, 14:4, 14:6, 15:17, 15:25, 16:2, 16:5, 16:6, 16:12, 17:1, 17:4, 17:13, 17:19, 18:14, 19:23, 19:25, 20:5, 22:9, 23:22

**UNITED  STATES  DISTRICT  COURT**