**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA et al., | |
| Plaintiffs, | |
| v. | Civil No. 1:24–cv–3973-AS |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

*HECKMAN* **PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO INTERVENE AND MODIFY THE PROTECTIVE ORDER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

I.     Intervention Is the Most Practical and Efficient Solution Here ...........................3

       A.     The Motion to Intervene Is Meant to Minimize Third-Party Burdens....................3

       B.     The Limited Intervention the *Heckman* Plaintiffs Propose Would Not
              Discourage Future Government Cooperation ...........................................................4

       C.     *Heckman* Is Broader, Not Narrower, Than This Case ..............................................6

II.    Modifying the Protective Order to Allow the *Heckman* Plaintiffs Access to Third-
       Party Productions Is Appropriate.........................................................................................7

       A.     The *Heckman* Plaintiffs Are Happy to Subject Themselves to the
              Protective Order and Are Undertaking Steps to Ensure Third-Party
              Safeguards in *Heckman* (Despite Defendants' Efforts to the Contrary)..................7

       B.     The *EPDM* Factors Continue to Support Intervention ...........................................8

              1.     The Scope of the Protective Order Is Broad ...............................................10

              2.     The Protective Order's Language Supports Modification ........................10

              3.     Level of Inquiry Taken Before Entering the Protective Order ..................11

              4.     Even If Third Parties Received the Current Amended Protective
                     Order Before Producing, Their Reliance on It Should Receive
                     Little Weight Here, Where Third Parties Could Be Compelled to
                     Produce ........................................................................................................11

CONCLUSION......................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Delphi Corp. Sec. Litig.*,
MDL No. 1725, 2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ................................................4

*In re Dep't of Investigation of City of New York*,
856 F.2d 481 (2d Cir. 1988).................................................................................................5

*EEOC v. Exxon Mobile Corp.*,
2024 WL 4249229 (M.D. La. Sept. 11, 2024) ...........................................................................9

*In re Enron Corp. Sec. Litig.*,
MDL-1446, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) .......................................................4

*In re Ethylene Propylene Diene Monomer Antitrust Litig.*,
255 F.R.D. 308 (D. Conn. 2009)....................................................................................7, 9, 10, 11

*Giuffre v. Maxwell*,
2020 WL 6947435 (S.D.N.Y. Nov. 25, 2020)............................................................................8

*Heckman v. Live Nation Entertainment, Inc., et al.*,
Case No. 2:22-cv-00047-GW-GJS ......................................................................................1, 2

*Iridium India Telecom Ltd. v. Motorola, Inc.*,
165 F. App'x 878 (2d Cir. 2005) ...........................................................................................8

*M&T Bank Corp. v. Gemstone CDO VII, Ltd.*,
78 A.D.3d 1664 (N.Y. App. Div. 2010) ..................................................................................4

*Martindell v. Int'l Tel. & Tel. Corp.*,
594 F.2d 291 (2d Cir. 1979)...................................................................................................8

*Munoz v. PHH Corp.*,
2013 WL 684388 (E.D. Cal. Feb. 22, 2013)..............................................................................4

*S.E.C. v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001).....................................................................................................8

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
825 F.3d 299 (6th Cir. 2016) ...................................................................................................9

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995)..................................................................................................5, 8

## Rules/Statutes

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................................2

Fed. R. Civ. P. 34.................................................................................................................3

Fed. R. Civ. P. 37.............................................................................................................3, 11

Fed. R. Civ. P. 45.................................................................................................................8

## Other Authorities

Fifth Amendment..................................................................................................................8

**INTRODUCTION**

The *Heckman* Plaintiffs[1] respectfully submit this reply in further support of their Motion to Intervene (ECF No. 424). Given the apparent hornet's nest they (unintentionally) kicked up, the *Heckman* Plaintiffs address as many points as possible from both the government's Opposition (ECF No. 433) and the various third-party briefs.

To start, it may be helpful to reiterate how *Heckman* relates to this case, and who the federal and state government Plaintiffs claim Defendants harmed with their anticompetitive scheme. The *Heckman* Plaintiffs are ticketing-buying consumers (of both primary and secondary tickets and ticketing services) who seek overcharge damages from Defendants going back to 2010. As Plaintiffs themselves allege, the effect of Defendants' scheme is to impose "a 'Ticketmaster Tax' that ultimately raise[s] the price fans pay." (ECF No. 257 ¶ 9.) And, indeed, it is on this basis that many of the state Plaintiffs seek *parens patriae* damages.

But the *Heckman* Plaintiffs are not just victims the government itself identified; they also trailblazed the way to this case, aided by the lawyers representing them. The *Heckman* Complaint was filed in January *2022*, but it is virtually identical to a complaint filed by a parallel group of consumers (represented by the same law firm, Quinn Emanuel) in April *2020*. And that complaint follows extensive work by the same firm in an antitrust case originally filed in *2015*, for a company called Songkick, that was the first to get past summary judgment on antitrust claims against Ticketmaster and went up to the eve of trial before settling. The government's Complaint here

---

[1]    Non-parties Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all others similarly situated (the "*Heckman* Plaintiffs"), are plaintiffs in the putative class action *Heckman v. Live Nation Entertainment, Inc., et al.*, Case No. 2:22-cv-00047-GW-GJS.

1

relies in large part on evidence, economic theories, and formulation of approach (*e.g.*, market definition) first developed in those preexisting cases.

This is not just speculation. The U.S. Department of Justice served a broad legal hold on the *Heckman* Plaintiffs' law firm seven years ago, covering all discovery from the *Songkick* matter, including discovery produced by third parties.

With these facts in mind, the Court may understand why the *Heckman* Plaintiffs were somewhat surprised to read the contents of the government's Opposition. After defeating Defendants' unconscionable efforts to compel their case to arbitration, the *Heckman* Plaintiffs have been transparent with the government about the status of their case, including that discovery began in earnest earlier this year when Judge Wu of the Central District of California originally ordered Defendants to produce all third-party materials in their possession from this case (but then, as the government notes, modified that approach).[2] The *Heckman* Plaintiffs discussed their intended

---

[2]    In the lead up to a January 6, 2025 status conference, Defendants moved to stay the *Heckman* case on the basis that discovery in this case was more advanced. *See* Ex. C, Dec. 30, 2024 *Heckman* Stay Mot. As support for that argument, Defendants recounted the amount of discovery exchanged at that time, which included party *and* non-party productions. *Id.* at 12-13. Judge Wu denied that motion on January 6 and, in response to the *Heckman* Plaintiffs' request, ordered Defendants to produce all of those materials "within two weeks, but subject to an explanation as to why it can't." Mot. to Intervene, Ex. A (ECF No. 424-1), 1/6/25 Tr. at 23:8-11. Defendants subsequently argued they could not produce third-party materials from this case due to protective order concerns, and the Court therefore ordered that the *Heckman* Plaintiffs "may seek to specifically compel these

intervention request with the government and asked if they could address any concerns beforehand and, although the government said it would object, it did not raise any of the specific issues in its Opposition at that time. Nevertheless, the *Heckman* Plaintiffs respond to each of those arguments below.

## I.      Intervention Is the Most Practical and Efficient Solution Here

The government concedes (at 2) the *Heckman* Plaintiffs satisfy the first intervention factor because they "[have] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). It therefore argues that a number of balancing factors weigh against intervention. The *Heckman* Plaintiffs respectfully disagree.

### A.      The Motion to Intervene Is Meant to Minimize Third-Party Burdens

A common theme from the response briefs is that the *Heckman* Plaintiffs seek to shortcut discovery. This misunderstands the purpose of the Motion to Intervene. What the *Heckman* Plaintiffs seek is to minimize third parties' burden.

Defendants appear not to have informed the Court, government, or third parties here that the *Heckman* Plaintiffs served Rule 34 discovery requests on February 3, 2025, seeking all third-party materials from this case that are ***in Defendants' possession***. Rather than invite a dispute in the Central District of California about whether and under what circumstances Defendants could make those productions, the *Heckman* Plaintiffs sought to give assurances to all of the third parties at issue that their materials would retain the protections this Court afforded them, and that they would not need to undergo the same third-party discovery yet again. The *Heckman* Plaintiffs did

---

materials…through the regular discovery process." Opp. re Mot. to Intervene, Ex. A (ECF No. 433-1, at 2).

so to increase efficiency, lower burdens, and maintain confidentiality—as well as provide this Court oversight of the *Heckman* Plaintiffs that it would not otherwise have.

The government appears to instead propose a far more cumbersome process: that the *Heckman* Plaintiffs should serve individual subpoenas on more than 150 third parties via a court across the country. That would impose more burden on third parties than the *Heckman* Plaintiffs' proposal, and ignores practicality and efficiency. Defendants already have in their possession all of the materials the *Heckman* Plaintiffs seek through their Motion. The documents and the deposition transcripts, videos, and exhibits (both past and future) are or will be in electronic format. Each category of material can be easily reproduced.

One option that remains open to the *Heckman* Plaintiffs is a motion to compel these productions under Rule 37 in the Central District of California. But, as noted, they hope to avoid generating a fight there, when there is a more practical option available here. The Motion to Intervene therefore is not an attempt to shortcut anything, but rather a practical approach to resolving this situation.

**B.    The Limited Intervention the *Heckman* Plaintiffs Propose Would Not Discourage Future Government Cooperation**

Throughout its Opposition, the government argues that allowing the *Heckman* Plaintiffs access to third-party discovery here would discourage third parties from cooperating with government investigations in the future. That is difficult to credit for several reasons.

First, over multiple decades, courts have repeatedly compelled wholesale reproduction of documents produced in government investigations, whether those productions were voluntary or not. *See*, *e.g.*, *Munoz v. PHH Corp.*, 2013 WL 684388, at \*4-6 (E.D. Cal. Feb. 22, 2013) (ordering reproduction of documents previously produced to the CFPB); *In re Delphi Corp. Sec. Litig.*, MDL No. 1725, 2007 WL 518626, at \*4-8 (E.D. Mich. Feb. 15, 2007) (same, for materials produced to

4

the SEC, DOJ, FBI, and U.S. Postal Inspector); *In re Enron Corp. Sec. Litig.*, MDL-1446, 2002 WL 31845114, at *1-2 (S.D. Tex. Aug. 16, 2002) (same, for materials related to the government's investigation of Enron); *M&T Bank Corp. v. Gemstone CDO VII, Ltd.,* 78 A.D.3d 1664, 1664 (N.Y. App. Div. 2010) (same, for the N.Y. State Attorney General's investigation of possible RMBS fraud). These decisions have not dissuaded voluntary cooperation in government investigations.

However, more important is that the government (and many third parties) appear to misapprehend what materials the *Heckman* Plaintiffs actually seek. As noted, the *Heckman* Plaintiffs seek production of whatever third-party materials Defendants have received or will receive in this action, given the substantial overlap between the two cases. If ***Defendants'*** access to those materials would not dissuade future cooperation with government investigations, it is difficult to see why allowing the *Heckman* Plaintiffs access would do so.

Furthermore, the government is essentially arguing it can bring suit for harm to consumers, but if those consumers bring their own lawsuit—or, in this case, brought suit years before the government did—they should not be allowed to see the evidence the government ostensibly collected to protect their interests. The *Heckman* Plaintiffs are unaware of any case so holding, and respectfully note they did not see any in the multiple submissions from the government and various third parties.[3]

---

[3]   The government's primary case citations are *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*"), and *In re Dep't of Investigation of City of New York*, 856 F.2d 481 (2d Cir. 1988). Neither are apposite. *Amodeo II* addressed third-party access to documents filed with a court; it had nothing to do with civil litigants seeking materials for purposes of civil discovery. 71

### C.    *Heckman* Is Broader, Not Narrower, Than This Case

In opposition to intervention, the government argues this litigation is broader than *Heckman*, which supposedly means the *Heckman* Plaintiffs should not be allowed to review discovery produced here. That is puzzling, and incorrect. The *Heckman* Plaintiffs allege Defendants' long-running scheme harmed both primary and secondary ticket purchasers. In contrast, for fans, the government only alleges harm to primary ticket purchasers. *Compare* ECF No. 257 (*US. v. LNE, et al.* Am. Compl.) ¶¶ 107, 143, 156, 158; *with* Ex. A, Jan. 4, 2022 *Heckman* Complaint ¶¶ 6, 12, 19.

As support for its position, the government contends the *Heckman* Plaintiffs do not allege monopolization of the promotions or amphitheaters markets. True, but that is because the *Heckman* Plaintiffs are **consumers** and therefore do not have antitrust standing to sue for harm to concert promoters or amphitheater owners. Instead, they assert, *inter alia*, Defendants tied concert promotion services to primary ticketing services, and that this damaged them as primary ticket purchasers. Ex. A, Jan. 4, 2022 *Heckman* Complaint ¶¶ 164-168. Their allegations also note that Defendants use their organization's dominance in the amphitheater space to support their market dominance. *Id.* ¶ 38.

*    *    *    *    *

As all of this shows, there remain strong reasons to grant intervention here, as it substantially improves judicial efficiency and allows this Court to meaningfully oversee and

---

F.3d at 1050. In *Dept' of Investigation*, at issue were materials subject to the law enforcement privilege. The Second Circuit found it was error to order their production. 856 F.2d at 485-86. The government asserts no privileges here.

protect third parties that have already produced, and will continue to produce, discovery for claims that substantially overlap with the *Heckman* Plaintiffs' earlier-filed claims.

**II.     Modifying the Protective Order to Allow the *Heckman* Plaintiffs Access to Third-Party Productions Is Appropriate**

      **A.     The *Heckman* Plaintiffs Are Happy to Subject Themselves to the Protective Order and Are Undertaking Steps to Ensure Third-Party Safeguards in *Heckman* (Despite Defendants' Efforts to the Contrary)**

When it comes to the protective order itself, the opposition briefs raise a number of concerns that are easily addressed.

*First*, the government and various third parties indicate the proposed modifications are insufficient because they do not subject the *Heckman* Plaintiffs to the Protective Order here. *See* Opp. at 1-2. This a non-issue; the *Heckman* Plaintiffs are fine doing so and any omission in this regard was unintentional.

*Second*, the *Heckman* Plaintiffs do not object to providing notice to non-parties, if they intend to use their materials in the *Heckman* case. *See* Opp. at 1-2. This is a common sense and fair request the *Heckman* Plaintiffs are happy to take on.

*Third*, some third parties (*e.g.*, Inter Miami) request that the *Heckman* Plaintiffs only be allowed to use third-party materials for the purpose of their case. But that is already a requirement under the existing protective order in *Heckman*. Ex. B, Aug. 5, 2022 *Heckman* Protective Order (ECF No. 62), ¶ 7.1.

*Fourth*, some third parties have expressed concerns about competitive harm if their productions are used outside of this Action. *See, e.g.,* Azoff Ltr. (ECF No. 464), at 1; AEG Ltr. (ECF No. 453), at 5. The *Heckman* Plaintiffs are not competitors in the live music industry, so there is no risk of misuse in that regard. But it also bears noting that the *Heckman* Plaintiffs only seek to allow their lawyers (and permitted individuals, like expert witnesses) access to the

documents for use in their action. Furthermore, the Defendants are the same across both cases, so there is no risk some additional party would gain access to these materials in *Heckman*.

*Finally*, some third parties have raised concerns that, unlike the Protective Order here, the *Heckman* protective order does not currently prevent Defendants' in-house counsel from seeing third-party materials. *E.g.*, AEG Ltr. (ECF No. 424), at 4-5. As an initial matter, this underscores why putting the *Heckman* Plaintiffs under the Protective Order here aids third parties, because Defendants' in-house counsel *cannot* view materials produced or shared in this case. In any event, the *Heckman* Plaintiffs tried to address this understandable concern, but Defendants convinced the Magistrate not to adopt these protections. The *Heckman* Plaintiffs intend to appeal the Magistrate's Order.

The *Heckman* Plaintiffs do not see how Defendants could realistically argue that reproducing these documents in *Heckman* would allow them to somehow unilaterally remove the protections of this Court's Protective Order. The *Heckman* Plaintiffs believe it would be useful and appropriate for the Court to ask Defendants why they oppose third-party protections this Court ordered and which the *Heckman* Plaintiffs sought to reconfirm for third parties.

### B.    The *EPDM* Factors Continue to Support Intervention

The government does not dispute that this Court's analysis is guided by the factors discussed at length in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 315 (D. Conn. 2009). Its quarrel is with how those factors apply here.

Notably, the government does not cite cases where courts denied plaintiffs access to discovery in circumstances like these. Instead, it relies heavily on the standard set forth in *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), to argue that the *Heckman* Plaintiffs supposedly must establish "some extraordinary circumstance or compelling need" to modify the protective order here. What the government omits, however, is *Martindell*'s actual facts

and why they required extraordinary circumstances, but why other situations (like this) have a much lower bar. In *Martindell*, the **government** tried to obtain access to ***civil litigation testimony*** given pursuant to a protective order, in order to obtain evidence for a ***criminal*** investigation. *Martindell*, 594 F.2d at 296-97. This obviously raised numerous issues and the Second Circuit denied the government access because the civil testimony had been provided under a protective order with no expectation that doing so might waive the testifier's Fifth Amendment rights. *Id.*[4]

In contrast, *TheStreet.com* involved a civil litigant seeking access to sealed SEC deposition testimony and the Second Circuit granted access to those materials. *S.E.C. v. TheStreet.com*, 273 F.3d 222, 233-34 (2d Cir. 2001). *TheStreet.com* therefore supports the *Heckman* Plaintiffs' request to modify the protective order; not the government's Opposition.[5]

More broadly, the government has put the third-party materials at issue by using them as support for its civil claims, and by producing them to Defendants—as well as seeking additional third-party discovery via Rule 45 subpoenas. It does not cite an analogous case denying other civil litigants discovery under these circumstances and, indeed, the *Heckman* Plaintiffs cited numerous decisions recognizing that avoiding duplicative discovery efforts constitutes a compelling reason to modify protective orders. *See* Motion to Intervene (ECF No. 424), at 2-3.

---

[4]   The Court in *Giuffre v. Maxwell*, 2020 WL 6947435 (S.D.N.Y. Nov. 25, 2020), faced similar issues and denied access for similar reasons. *Id.* at *1-2.

[5]   The government also cites *Amodeo II* and *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878 (2d Cir. 2005), but, as noted above, the former is not about civil litigants obtaining discovery from other civil litigation and, in the latter, the Second Circuit only denied intervention because the applicant's motion was not "timely." *Iridium*, 165 F. App'x at 879.

In any event, the government's specific *EPDM* discussion does not change the end conclusion.

### 1.     The Scope of the Protective Order Is Broad

The government takes issue with whether the Protective Order in this case is "a blanket protective order"; in essence, arguing it cannot be because the Order does not indiscriminately grant confidentiality to every single piece of discovery in this case. ECF No. 433, at 7. This is incorrect. "Blanket" protective orders are those that "allow the parties to determine in the first instance whether particular materials fall within the order's protection." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016); *EEOC v. Exxon Mobile Corp.*, 2024 WL 4249229 (M.D. La. Sept. 11, 2024) (similar). That was the type of order at issue in *EPDM*, 255 F.R.D. at 313 (stating "'[a]ll documents and materials containing or which are derived from trade secrets or other confidential research, development, or commercial information of current commercial value' may be filed under seal and are available only to designated parties"), and it is the type of order at issue here. ECF No. 347 ¶ 2. It does not render the Protective Order here problematic; it just informs the (lower) level of scrutiny the Court applies to the *Heckman* Plaintiffs' requested modifications. A "blanket protective order[s]" are "more likely to be subject to modification." *EPDM*, 255 F.R.D. at 319.

### 2.     The Protective Order's Language Supports Modification

The government (at 8-9) points to stock language in the Protective Order that states it "survive[s] the termination of the litigation" and requires "promptly return[ing]" or "upon permission . . . destroy[ing]" all Confidential and Highly Confidential materials. *See* ECF No. 347, ¶ 19. Although the same sort of protections exist under most protective orders (including the

*Heckman* protective order),[6] the Opposition appears to claim this is unusual language that shows the Protective Order cannot be modified. But the Protective Order is itself an ***amended*** order, demonstrating that of course it can be (and has been) amended. *See* ECF No. 347, at 1.

### 3.    Level of Inquiry Taken Before Entering the Protective Order

The government argues (at 9-10) that the third *EPDM* factor weighs against modification because the Court undertook careful inquiry before entering the Order. Yet the Opposition fails to point to any specific inquiry regarding how to handle discovery requests from non-parties with overlapping claims, and for discovery in Defendants' possession. Many protective orders address notice requirements when, like here, a receiving party (Defendants) receives a document request for those materials in another action. Nothing in the Protective Order's history indicates the parties submitted to the Court what to do in that situation.

### 4.    Even If Third Parties Received the Current Amended Protective Order Before Producing, Their Reliance on It Should Receive Little Weight Here, Where Third Parties Could Be Compelled to Produce

Finally, the Opposition argues (at 10-11) that the fourth *EPDM* factor weighs against modification because third parties supposedly relied on the Protective Order to make their productions. Yet the Amended Protective Order was not entered until November 15, 2024. Even the Opposition appears to acknowledge that some, if not all, of these third parties only received a copy of the Protective Order ***after*** they had already produced documents to the government, and that the Protective Order was only created before the third-party documents were produced to Defendants (*see* Opp. (ECF No. 433) at 10). To the extent that is accurate, it is difficult to imagine how these third parties could have relied on the Protective Order before producing. But, even if

---

[6]   See Ex. B (*Heckman* Protective Order, ECF No. 62), at ¶ 13.

they did, as the *Heckman* Plaintiffs noted, where a party could be compelled to produce—*e.g.*, by a Rule 37 motion to compel—this factor weighs little against reproduction to other civil litigants.

In sum, the *EPDM* factors weigh in favor of the *Heckman* Plaintiffs, and in favor of the requested modification, and neither the government nor various third parties articulate reasons to draw the opposite conclusion.

## CONCLUSION

For the above reasons, the *Heckman* Plaintiffs respectfully request that the Court grant their Motion to Intervene and modify the Protective Order to add the *Heckman* Plaintiffs as covered parties subject to the Court's supervision. In its Opposition, the government requested oral argument and the *Heckman* Plaintiffs believe that would aid the Court, both to address specific concerns raised in the various opposition and response briefs, and to also discuss why Defendants oppose protecting third parties in *Heckman* in the same way the Court ordered here.

DATED:  March 3, 2025                    QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP


                                         By  /s/ Kevin Teruya
                                         _____
                                            Kevin Y. Teruya
                                            Adam B. Wolfson
                                            865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017-2543
                                            (213) 443-3000
                                            kevinteruya@quinnemanuel.com
                                            adamwolfson@quinnemanuel.com

                                            *Attorneys for: Skot Heckman, Luis Ponce,*
                                            *Jeanene Popp, and Jacob Roberts, on behalf of*
                                            *themselves and all others similarly situated*

12

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Kevin Teruya, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,447 words as calculated by the application's word-counting function, excluding the parts of the Affirmation exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the foregoing statements are true and correct. Executed on this 3rd day of March, 2025 in Los Angeles, California.

_/s/ Kevin Teruya_
Kevin Teruya

13