The Court will hold a status conference on **March 13, 2025 at 2:00 PM**. The parties should dial in by calling (646) 453-4442 and entering the Phone Conference ID: **872 045 293**, followed by the pound (#) sign. By **March 11, 2025 at 5:00 PM**, defendants should respond to plaintiffs' letter.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: March 10, 2025

<u>VIA ECF</u>   March 7, 2025

The Honorable Arun Subramanian
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re:   *United States et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS-SLC

Dear Judge Subramanian:

While Plaintiffs have diligently pursued both party and non-party discovery throughout the discovery period, Defendants have not. Plaintiffs recently learned that Defendants—contrary to prior representations—failed to meet the January 15 document production deadline for priority custodians. In addition, Defendants have engaged in delay tactics prejudicing Plaintiffs' ability to timely and efficiently complete necessary discovery. Plaintiffs therefore respectfully move for an order (1) requiring Defendants to produce all remaining priority custodian responsive documents by March 14 and produce at least 95% of all non-priority custodial documents by April 15 (and to certify with the Court they have done so); (2) requiring Defendants, by March 14, to issue all of their "cross" document subpoenas to entities Plaintiffs subpoenaed prior to February 28; (3) prohibiting delay to depositions noticed for any day after April 14 based on purported document production issues related to Defendants' late-served subpoenas; (4) setting biweekly remote/video discovery status conferences; and any other relief the Court deems appropriate.

**Defendants' Failure to Comply with the January 15 Substantial Completion Deadline**

Despite their prior representations, Defendants failed to comply with the Court's January 15 substantial completion deadline. At the October 29 status conference, the Court ordered that the "review and production of documents related to [the 25] priority custodians must be done by the substantial completion deadline." Tr. at 4. The Court noted that "as to the other remaining custodians and documents, there will still be time after the substantial completion deadline for the review and production of those documents." *Id*. As the Court made clear, Defendants were required to produce essentially all documents associated with the 25 priority custodians by January 15, while Defendants could continue to produce documents associated with other custodians through April 15. These deadlines were critical to providing Plaintiffs adequate time to review documents, identify potential deponents, and complete depositions before June 27.

But that is not what Defendants did. Defendants represented to Plaintiffs via email on January 21 that they had complied with the Court's January 15 substantial completion deadline, although they notably did not include a substantial completion certification in their weekly discovery update letter to the Court on January 17. Their subsequent custodial document productions have revealed otherwise. By the deadline, Defendants produced approximately 435,000 priority custodian documents. Since January 15, however, Defendants have produced approximately 290,000 additional priority custodian documents, representing nearly 40% of the total priority custodian documents produced to date. For several priority custodians, the majority of their documents—and in some cases more than 80%—were not produced by the deadline. *See* Ex. A (total number and percent of each priority custodian's documents by date).

Defendants did not provide any notice of their breach. Rather, Plaintiffs discovered the breach after receiving Defendants' February 27 production containing approximately 121,000

priority custodian documents. Defendants confirmed that, as of March 5, their priority custodian productions remain incomplete, with at least 35,000 documents still to be reviewed.

Defendants contend that their belated productions are consonant with the TAR Protocol, because it requires Defendants to continue producing documents after the substantial completion deadline if necessary to reach an 80% Recall rate. But the TAR Protocol does not—and cannot—justify Defendants' production of nearly 40% of priority documents after the substantial completion deadline. Instead, Defendants' belated productions appear driven by Defendants' exclusion of thousands of required documents from the Primary TAR Set, which, long before January 15, should have consisted of all primary custodial documents. *See* Ex. B at 2. This failure violates the Court's January 15 deadline and the TAR Protocol; it is not consonant with it.

Defendants' failure to comply with the January 15 substantial completion deadline seriously prejudices Plaintiffs' ability to timely prepare for and take depositions. After January 15—with the understanding Defendants had substantially completed their production—Plaintiffs spent considerable time reviewing Defendants' document productions to make important strategic decisions about who to depose and when. Plaintiffs noticed several depositions of priority custodians for March, including Geoff Carns, for example, for whom Defendants provided less than 10% of his litigation-produced custodial documents prior to January 15. Plaintiffs will have to determine whether it is viable to proceed with these depositions as scheduled, given that hundreds of thousands of additional relevant documents were produced just last week. Moreover, Plaintiffs will also need to spend time going back and reviewing documents for individuals that Plaintiffs had previously determined, based on incomplete document productions, *not* to depose, but who now may merit a deposition, because of the documents Defendants have since produced. This review is ongoing but remains incomplete just a week after Defendants' February 27 production. Defendants' conduct has upended the fact discovery schedule and may prevent Plaintiffs from completing the fact discovery to which they are entitled and have been diligently working toward by the deadline of June 27.

**Defendants' Belated Non-Party Subpoenas**

Since discovery opened, Plaintiffs have issued over 140 document subpoenas to non-parties for documents and data relevant to Plaintiffs' claims, including by serving 121 subpoenas on non-parties prior to October 1. Plaintiffs issued these subpoenas early in discovery to ensure non-parties would produce relevant documents with sufficient time to enable necessary depositions to occur this spring and summer, before fact discovery closes. By contrast, Defendants issued only six subpoenas by December 31.

Since January 1, Defendants have issued approximately 28 subpoenas to non-parties, none of which account for the documents already being produced in response to Plaintiffs' subpoenas. And because non-parties understandably do not want to collect documents and data more than once, Defendants' late document subpoenas have slowed compliance with Plaintiffs' subpoenas as well. This includes, for example, subpoenas Defendants issued on January 23 to Paciolan LLC and Tickets.com, each with 73 specifications, after Plaintiffs had subpoenaed both entities more than four months prior. It also includes Nederlander and Jam Productions, to which Defendants issued document subpoenas on February 21, six months after Plaintiffs subpoenaed them. Even for entities to which Defendants issued subpoenas earlier in discovery, like Anschutz Entertainment Group and SeatGeek, Defendants have engaged in protracted subpoena negotiations that went on for months after Plaintiffs' own negotiations were largely complete, significantly delaying custodial document productions from both entities.

Defendants' tardy document subpoenas are now obstructing Plaintiffs' ability to take necessary depositions with the time left in discovery. As one example, Plaintiffs issued a document subpoena to It's My Party, Inc. ("IMP") on August 21. IMP made seven document productions to both sides, substantially completing its production on February 19. On February 20, after consultation with IMP, Plaintiffs issued a subpoena to a senior IMP executive for a deposition on March 12. The following day, however, Defendants issued a document subpoena to IMP with 21 broad requests and insisted they should have the right to depose the executive *after* IMP complies with the subpoena. IMP understandably objected to the deposition going forward as scheduled, on the grounds that its executive should only be required to sit for one deposition. Similarly, Defendants' belated document subpoena to non-party 313 Presents, served on February 21, threatens to derail two 313 Presents depositions Plaintiffs have noticed for late March.

Plaintiffs sought to avoid future delays by asking Defendants to agree that both sides will issue all "cross" document subpoenas by a date certain in March. Defendants refused, and instead asked Plaintiffs to give Defendants a list of all non-party depositions Plaintiffs intend to seek. While Plaintiffs have provided notice to Defendants on a monthly basis of the depositions they intend to take, Plaintiffs should not be required to reveal their entire deposition strategy so that Defendants can decide when and to whom to target their discovery. That is particularly true because Defendants have not offered any reasonable explanation for their lengthy delays in issuing subpoenas to entities Plaintiffs subpoenaed last summer and fall. At most, Defendants have suggested they were prejudiced due to an oversight by some non-parties that initially failed to simultaneously produce documents to both sides. When Plaintiffs became aware of this issue, they swiftly addressed it. There has been and could be no prejudice to Defendants since none of the non-parties at issue have been noticed yet for a deposition.

In sum, Defendants' subpoena strategy threatens to derail Plaintiffs' discovery efforts and further delay depositions that should begin shortly and finish by June 27.

### Plaintiffs' Proposed Relief

Plaintiffs propose relief to ensure that the remainder of fact discovery can proceed efficiently and meet the June 27 deadline, in the face of Defendants' delays and missed deadlines. Requiring Defendants to produce and certify production of all priority custodian documents is the only way to ensure the production ends. Compelling Defendants to issue any remaining "cross" subpoenas by March 14 will ensure Defendants cannot use document subpoenas to stymie Plaintiffs' deposition plans going forward, or delay depositions scheduled for after April 14. Biweekly video discovery conferences will keep the parties on track to meet the discovery deadline and ensure no further delays.

Plaintiffs are making every effort to work within the deadlines set by the Court. But due to Defendants' late and ongoing productions, Plaintiffs' need to review tens of thousands of new documents to prepare for depositions, and Defendants' additional prejudicial delay tactics all threaten those deadlines. Accordingly, Plaintiffs request a status conference, as soon as Wednesday March 12, to address this motion, and a second status conference soon after Defendants certify production of all priority custodian documents (once Plaintiffs have full knowledge of the scope of the document production delay) to determine whether further relief, or other remedies, are necessary.

The parties met and conferred concerning these issues on February 24, 27, and March 5. The calls on February 27 (1 hour) and March 5 (40 minutes) were Lead Trial Counsel meet and confers. Plaintiffs declared an impasse on March 5. The principal participants were John Thornburgh (Plaintiffs), Jesse Weiss (Defendants), and Robin Gushman (Defendants).

Respectfully submitted,
/s/ Bonny Sweeney
Bonny Sweeney

4