<u>VIA ECF</u>

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**   *United States et al. v. Live Nation Entertainment, Inc. et al.*; **1:24-cv-03973-AS-SLC**

Dear Judge Subramanian:

As the Court is aware, months have gone by without any hint of a discovery dispute.  Now, out of the blue, Plaintiffs' letter-motion contends that Defendants are not "diligently" completing discovery.  *See* Pls.' Ltr. Mot. (ECF No. 472) at 1.  The claim is entirely groundless.

Over the past five months, Defendants have reviewed more than ***4.5 million documents***, produced nearly ***1.4 million documents***, employed **hundreds** of contract attorneys, and spent more than ***200,000 hours*** reviewing documents—the equivalent of nearly 100 years of review, assuming a 40-hour workweek—all at a cost of approximately ***$16 million***.  This is in addition to the more than 600,000 documents Defendants produced to Plaintiffs at a cost of over $16 million during their pre-complaint investigations, and the approximately 1.7 million documents Defendants previously produced to Plaintiffs between 2015 and 2019 in response to Plaintiffs' prior investigations.  On top of this, Defendants expect to produce hundreds of thousands of additional documents by the April 15, 2025 deadline for substantial completion of production of non-priority custodial documents.

In that context, Plaintiffs have filed a motion "requiring Defendants to produce all remaining priority custodian responsive documents by March 14."  *Id*.  But Defendants informed Plaintiffs that they will complete production of *all* remaining priority custodian documents by March *13* (with minor exceptions disclosed to Plaintiffs weeks ago).  Defendants are also on track to meet the April 15 deadline for substantial completion of production of non-priority custodian documents.

Plaintiffs also complain that their efforts to take non-party depositions have been compromised by the pace of Defendants' non-party subpoenas.  First, that cannot explain why Plaintiffs have yet to take a single deposition in this case.  If, as the motion suggests, "Plaintiffs' ability to take necessary depositions with the time left in discovery" is now in doubt, that is entirely their fault.  *See id.* at 3.  Regardless, yes, Defendants followed the over 150 non-party subpoenas Plaintiffs have issued with 28 supplemental subpoenas.  What is possibly wrong—or surprising— about that?  It is exactly what a defendant ought to do.  Plaintiffs had an 18-month+ head-start on non-party discovery through their pre-complaint investigations and then issued 150 non-party subpoenas.  Defendants took a reasonable amount of time to analyze the pre-complaint record and the new subpoenas in order to formulate a targeted response, as Rule 45 requires.  And as to the claim that this has interfered with non-party depositions, it has not.  Only *one* non-party deposition (It's My Party) has been rescheduled (by only a few weeks) because the non-party's document productions in response to Defendants' subpoena remain in progress.  As to the other two witnesses raised in Plaintiffs' letter (both from 313 Presents), the non-party has not even confirmed the witnesses are available for the dates Plaintiffs put in their subpoenas (*see* Ex. A).  No other non-party deposition has been rescheduled.  This motion is thus as unnecessary as it is unfounded.

**Defendants Complied with the January 15 Substantial Completion Deadline.**

At the October 29, 2024 discovery conference, the Court ordered substantial completion of priority custodian documents by January 15, 2025, and substantial completion of non-priority custodian documents by April 15, 2025. *See* Oct. 29, 2024 Hr'g Tr. at 4:1–5:1. The Court explained that there was "no hard cap" on the number of documents Defendants had to review, and that "the review of documents does not end at the end of the substantial completion deadline." *Id.* at 3:23–25. The Court ordered the parties to "meet and confer and work out the parameters of that review." *Id.* at 4:15–17. The parties did so, and on December 13, 2024, reached agreement on a protocol for technology assisted review ("TAR Protocol"). *See* ECF No. 472-2. The TAR Protocol required Defendants to "use their reasonable best efforts" to achieve "recall" of 80% for the primary custodian review set <u>by</u> January 15, 2025, and—at Plaintiffs' insistence—it required Defendants to continue reviewing priority custodian documents <u>*past January 15*</u> if the specified recall rate was not achieved by that date. *See id.* at 3. Under the TAR Protocol, January 15 was not a final deadline to complete production of 100% of all priority custodian documents. It was a deadline for achieving "recall" of 80% for the primary custodian review set. *See id.* "Recall" measures the percentage of responsive documents that the TAR model identifies out of all responsive documents. It is a step *towards* production, meaning that, by agreement, the parties adopted procedures that necessarily meant that some percentage of the production would occur after January 15. By Defendants' calculation, Defendants produced nearly 70% of priority documents by January 15. Defendants informed Plaintiffs on January 21, 2025, that Defendants would be producing additional priority custodian documents in the coming weeks. Plaintiffs did not respond—belying their position that they expected Defendants to have completed production of all priority custodian documents by January 15. In fact, Defendants produced *over 85%* of priority custodian documents by January 29, 2025.

Productions have been ongoing—exactly as the Court predicted. As explained below, Defendants are on track to meet the April 15 deadline for substantial completion of production of non-priority custodian documents. It is therefore entirely unfounded—and unfair—for Plaintiffs to accuse Defendants of a lack of "diligence" under these circumstances. And respectfully, it just cannot be true that when, by January 29, Plaintiffs have had over 85% of the priority custodian documents in their possession—and *1.4 million documents* in total (on top of what Plaintiffs obtained prior to filing this case)—*Defendants* are responsible for Plaintiffs' failure to take even a single deposition.

Finally, most of the relief Plaintiffs seek is moot because Defendants have already agreed to it. Plaintiffs request an order "requiring Defendants to produce all remaining priority custodian responsive documents by March 14 and produce at least 95% of all non-priority custodial documents by April 15." Pls.' Ltr. Mot. at 1.

- Defendants informed Plaintiffs on a March 5 call that they would be completing production of all remaining priority custodian documents (approximately 37,000 documents remain) by March 13, with the exception of (1) any responsive, non-privileged documents from email archives on one custodian's laptop, which are delayed due to technical reasons Defendants disclosed to Plaintiffs weeks ago, (2) any responsive, non-privileged documents from approximately one month's worth of text messages from the files of one custodian (whom Plaintiffs do not intend to depose in March or April), and (3) any responsive, non-privileged documents from approximately seven months' worth of text messages from the files of another custodian (whom Plaintiffs do not intend to depose in

2

March or April).  Defendants are expediting the review of category (1) and expect to produce any responsive, non-privileged documents by early April.  Defendants expect to produce any responsive, non-privileged text messages from category (2) and (3) by the end of March.

- By April 15, Defendants expect to produce approximately 95% of the responsive, non-privileged non-priority custodian documents that are not in Defendants' privilege review workflow.  By April 29—the deadline for Defendants' privilege log for the April 15 production—Defendants expect to produce any non-privileged or redacted non-priority custodian documents from the privilege review workflow.  If Defendants encounter technical or other issues that are likely to delay production of more than 5% of non-priority custodian documents beyond April 29, Defendants will promptly inform Plaintiffs.

**Defendants' Subpoenas Are Timely; Plaintiffs' Arbitrary Deadline Is Inappropriate.**

Plaintiffs' complaints about Defendants' non-party subpoenas make no sense.  In response to sweeping subpoenas to over 150 non-parties, Defendants issued supplemental subpoenas to roughly one in six of those parties.  There is nothing the least bit wrong or surprising about that.  On its face, it is a reasonable and measured response.

The real question is why, after an 18-month investigation, Plaintiffs felt the need to issue subpoenas to over 150 non-parties—which even now continue to roll in.  It suggests a case in disarray.  And it poses a huge challenge for Defendants, who cannot chase Plaintiffs down every one of these rabbit holes.  So, exercising the diligence and restraint required by Rule 45, Defendants crafted a targeted response.  That's all that's going on here.  It's a non-issue.

It is notable that Plaintiffs single out Defendants' supplemental subpoenas to Live Nation and Ticketmaster rivals, *e.g.,* Anschutz Entertainment Group, SeatGeek, Paciolan, and Jam Productions.  Nothing could be less surprising than that these entities—which lobbied for this case to be brought—are cooperating with Plaintiffs' discovery efforts but resisting Defendants'.  That Plaintiffs negotiated subpoena responses from friendly witnesses more quickly that Defendants can negotiate responses from hostile witnesses does not suggest delay.  It always happens, whether or not it should.  If Plaintiffs did not anticipate this and it explains why they have not taken any depositions (which cannot be the explanation for *none*), that is on Plaintiffs.

Plaintiffs ask the Court to "prohibit[] delay to depositions noticed for any day after April 14 based on purported document production issues related to Defendants' late-served subpoenas."  Pls.' Ltr. Mot. at 1.  But what if the "delay" stems from the non-party's intransigence—or simply that good faith production efforts take time?  This one-sided "prohibition" is arbitrary.  The fact is many non-parties have only recently produced or are still in the process of producing documents and data in response to *Plaintiffs'* earlier subpoenas, let alone Defendants' supplemental subpoenas.  Defendants are entitled to evaluate those productions as they come in, and issue targeted document subpoenas for any necessary supplementation.  Plaintiffs seem to forget that Defendants are also subject to the June 27 discovery cutoff and therefore have every interest in moving swiftly.  Defendants have not been dragging their feet in any way, and won't over the next three months.  Defendants have no intention of seeking an extension of the discovery period and will oppose any request by Plaintiffs to extend it.

Dated: March 11, 2025

Respectfully submitted,

LATHAM & WATKINS LLP



Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

CRAVATH, SWAINE & MOORE LLP



David R. Marriott
   *Co-Lead Trial Counsel*
Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

dmarriott@cravath.com
lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

cc:    All Counsel of Record (via ECF)