<u>**VIA ECF**</u>

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re:     ***United States et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS-SLC**

Dear Judge Subramanian:

Plaintiffs' letter-motion is yet another attempt to manufacture a discovery dispute that does not exist. Amidst the mountain of evidence that Defendants have produced in this case and the preceding investigation, there are some so-called "gaps" in Defendants' production of texts and chats. Some are not deficiencies at all: they are explained by time periods in which no one was obligated to preserve anything relevant to Plaintiffs' investigation/litigation or because texts and chats have proven to have an extremely low responsive rate. A very few others are because good faith efforts at preserving and producing these materials weren't perfect. None of this justifies the overheated rhetoric in Plaintiffs' motion, nor Plaintiffs' decision to unilaterally "call" an impasse on these issues and file the motion, ostensibly to compel answers to questions Defendants will respond to shortly. But most of all, there is no merit whatsoever to the suggestion that these discrete issues have prejudiced Plaintiffs' ability to prosecute this case—where Defendants have produced nearly *4 million documents and over 34 billion observations of data.*

**1. Defendants' Preservation Efforts.** Defendants have worked diligently to ensure that each custodian understands their retention obligations—including with respect to texts and chats—by sending numerous legal hold notices, reminders, and other communications.

- On October 18, 2022—one week after the DOJ issued its Civil Investigative Demand ("CID") to Defendants—Defendants sent preservation emails to certain executives.
- On October 19, 2022, Defendants sent a formal document retention notice to a broader set of relevant individuals, instructing them to retain relevant materials.
- On December 14, 2022, Defendants sent an updated document retention notice to additional relevant individuals.
- On December 16, 2022, Defendants sent a reminder email to each individual who received a document retention notice, including language about text messages.
- On February 13, 2023, Defendants sent the first of a series of updated document retention notices to all relevant individuals, adding individuals as the investigation expanded in scope.
- Starting in March 2023, Defendants began collecting documents from negotiated custodians in response to the DOJ's CIDs. During that process, Defendants repeatedly reminded the custodians of their retention obligations.
- On March 6, 2024, Defendants sent an email to each individual who received a document retention notice focused on their obligations with respect to text and other messages.
- On April 22, 2024, Defendants sent an email to each document retention notice recipient asking for an immediate reply if they did not understand their obligations.
- On June 21, 2024, shortly after this lawsuit was filed, Defendants sent yet another updated document retention notice to all relevant individuals.

1

- Starting in September 2024, Defendants began collecting documents from negotiated custodians in response to Plaintiffs' document requests in this litigation. During that process, Defendants reminded the custodians of their retention obligations.
- On March 10, 2025, Defendants sent an email to each recipient of the document retention notice for this litigation, reminding them of their obligations with respect to text and other messages and asking them to affirmatively confirm they understand their obligations.

These steps are more than sufficient to satisfy Defendants' obligations. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431-32 (S.D.N.Y. 2004).

**2. Defendants' Investigation of Potential Deficiencies.** No discovery process is perfect, so it is hardly surprising that after well over two years of scorched-earth discovery covering virtually every aspect of Defendants' businesses, and dozens of document custodians, there have been a few issues. Defendants learned of two issues involving texts on personal devices: some custodians did not properly set the text retention function on their personal phones to keep texts "Forever," and one misunderstood how the keep "Forever" setting actually worked.

The first issue predates this case. Defendants learned about it during the pre-complaint investigation and the DOJ was told about it in March 2024. While the great majority of custodians correctly set the iMessage retention setting on their personal mobile phones to keep messages "Forever," some did not. Of course, steps were taken to correct that. Notably, Defendants provided detailed information to the DOJ about Defendants' retention practices and collection efforts, including data about the texts and chats collected from each custodian. *See* ECF No. 480-3. After Defendants' last communication on this in May 2024, the DOJ did not respond or ask any follow-up questions (until now).

The issue that supposedly shows Defendants' "Ongoing Failure" to preserves texts is different and discrete. It arose because a non-party produced a set of texts with Live Nation executive Bob Roux that were not in Defendants' production. There is an innocent explanation for that: most of these text messages are either outside the time period when Mr. Roux was obligated to retain materials relevant to Plaintiffs' investigation/litigation, or are not responsive to Plaintiffs' document requests. Nevertheless, when Plaintiffs raised this issue, Defendants immediately investigated and discovered that most of these text messages were not present in Defendants' collection of text messages from Mr. Roux's personal iPhone (the universe from which responsive texts were culled). Mr. Roux had received the litigation hold instructions discussed above, and he understood his retention obligations with respect to this case. However, he misunderstood how the technology worked. Mr. Roux thought that iMessage works like Microsoft Outlook so that, if one "deletes" a message, it simply moves to a deleted messages file and remains there. Since he had set his iPhone to keep messages "Forever," he thought he could keep his iMessage app "clean" by deleting texts without losing messages. The keep "Forever" setting on an iPhone, however, does not work that way: a deleted text remains in the deleted folder for only 30 days. This is one person making an innocent error. Mr. Roux now fully understands how the technology works, and has changed his text practices accordingly.

Plaintiffs accuse Defendants of being indifferent about this. Not so. Defendants have made timely disclosures to Plaintiffs about all of this. *See* ECF No. 480-3; ECF No. 480-4 at 10. Defendants have also retained a forensic expert to determine whether there is any additional data that can be recovered from Mr. Roux's iPhone or other devices, even though ***Plaintiffs already have the text messages that were missing from Mr. Roux's collection***. Defendants also sent an

additional notice to all custodians, reminding them (again) of their retention obligations, including with respect to setting their text retention to keep "Forever," and requesting affirmative confirmation that they understand these obligations.[1]

**3. Defendants Have Complied with Their Production Obligations.** So much of this motion is an effort to insinuate much larger problems. To that end, Plaintiffs contend texts and chats would be a treasure trove of damning information. But the number of issues that have arisen with respect to texts and chats have been very limited. There is nothing widespread about this.

Plaintiffs seem to be justifying this motion because Defendants produced fewer texts and chats than they expected. There are two explanations for this, neither of which is that files are "missing." First, Plaintiffs had difficulty interpreting the metadata fields that Defendants provided, leading them to believe *erroneously* that there were "gaps" in the text and chat productions. As Plaintiffs acknowledge, Defendants provided a metadata overlay file (as a courtesy) that resolved these issues. Second, the responsiveness rate for texts and chats is extremely low: approximately 2% for priority custodians. In other words, while Defendants *collected* a large number of texts and chats from the priority custodians, barely any of them were responsive to Plaintiffs' document requests and therefore very few were *produced*. That is not a deficiency.

Plaintiffs also (once again) take issue with the pace of Defendants' productions. As explained in Defendants' March 11 response to Plaintiffs' previous letter-motion, Defendants complied with the January 15 substantial completion deadline and the parties' negotiated agreement in the TAR protocol. *See* ECF No. 476. Additionally, Plaintiffs are wrong that "Defendants still have not produced significant tranches of priority texts." Pls.' Ltr. Mot. at 2. The only priority texts that remain outstanding are from two custodians covering short time periods (one month and seven months, respectively). If there are any responsive texts in this set, the volume is likely to be very small, and Defendants expect to produce them in the next few weeks.

**4. This Motion Should Not Have Been Filed.** In response to Defendants' disclosure about Mr. Roux, Plaintiffs sent a long list of complex questions to Defendants regarding their text and chat messages—most of which are included in Appendix A to Plaintiffs' letter-motion. They demanded written responses two business days later. *See* ECF No. 480-4 at 7-9. Defendants responded the next day that "[w]e take Plaintiffs concerns seriously and we are diligently investigating your questions," but that Defendants would not be in a position to respond by Plaintiffs' requested deadline. *Id.* at 6. The next business day (this Monday), Defendants stated they would be available for a call on Wednesday, March 12 and would respond to Plaintiffs' questions before that call. *Id.* at 2-3. Plaintiffs declined this offer, "called" an impasse, and then filed this motion. *Id.* at 1. *There was no impasse.* If Plaintiffs had waited one day, they would have learned that Defendants were willing to provide nearly all of the information requested. They also would have learned that the supposed "missing" text messages from other custodians, *see* Pls.' Ltr. Mot. at 2, are not missing at all—they are simply not responsive to Plaintiffs' document requests, or occurred during time periods in which no one was obligated to preserve anything relevant to Plaintiffs' investigation/litigation. Consistent with the Court's guidance at today's conference, Defendants will respond to the questions in Plaintiffs' Appendix A by March 21, 2025.

---

[1] Defendants' recent investigation resulted in a determination that one additional custodian did not have his phone set to keep "Forever." Defendants will provide Plaintiffs further details about this.

Dated: March 13, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

CRAVATH, SWAINE & MOORE LLP

Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

David R. Marriott
   *Co-Lead Trial Counsel*
Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

dmarriott@cravath.com
lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

cc:     All Counsel of Record (via ECF)