**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA et al.,

*Plaintiffs*,

v.

LIVE NATION ENTERTAINMENT, INC.,
and TICKETMASTER L.L.C.,

*Defendants*.

Civil No. 1:24–cv–3973-AS

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' JOINT MEMORANDUM OF LAW IN**
**SUPPORT OF PLAINTIFFS' MOTION TO BIFURCATE TRIAL**

**TABLE OF CONTENTS**

INTRODUCTION AND OVERVIEW OF PLAINTIFFS' PROPOSAL ...................................... 1

ARGUMENT .................................................................................................................. 2

   I.   The Trial Should Be in Two Phases, with a Liability Trial First and a Remedies Proceeding Second .................................................................................................. 2

      A. Bifurcation of Liability and Remedies Is the Optimal Trial Structure for Plaintiffs' Equitable Claims ...................................................................................................... 2

      B. Combining Monetary and All Other Remedies Enables a Focused and Streamlined Jury Trial on Liability ........................................................................................ 5

  II.  Consistent with the Seventh Amendment, the Jury Must Make the Liability Determination ............................................................................................................... 6

      A.  State Plaintiffs Seek Legal Remedies, Which Entitle Them to a Jury Trial ................. 8

      B. State Plaintiffs Assert Federal and State Legal Claims, Which Must Be Heard by the Jury .............................................................................................................. 11

      C. For Purposes of Bifurcation, State Plaintiffs Assert Their Jury Trial Right Only with Respect to the First (Liability) Phase .................................................................. 14

 III.  All Plaintiffs Are Entitled to Have a Jury Decide Defendants' Liability for Their Federal Claims ................................................................................................................. 15

      A. The Jury Should Decide All Claims Because the Legal and Equitable Claims Have Substantial Overlapping Factual Issues .......................................................... 15

      B. All Plaintiffs Are Entitled to Have the Jury Determine Issues of Fact Common to the Legal and Equitable Claims ............................................................................. 19

 IV.  Defendants' Proposal Is Unworkable at Best and Unconstitutional at Worst ................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s):

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ........................................................................... 16

*Am. Soc. of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) ........................................................................................ 9

*Associated Press v. United States*,
    326 U.S. 1 (1945) ............................................................................................. 3

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959) ................................................................................. passim

*Bigelow v. RKO Radio Pictures, Inc.*,
    327 U.S. 251 (1946) ....................................................................................... 11

*Chan v. Schatz*,
    280 F. Supp. 3d 546 (S.D.N.Y. 2017) ............................................................ 10

*Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1998) ............................................................................... 9, 13, 14

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) ....................................................................................... 12

*City of New York v. Beretta, U.S.A. Corp.*,
    312 F. Supp. 2d 411 (E.D.N.Y. 2004) ....................................................... 8, 14

*Clark v. Hanley*,
    89 F.4th 78 (2d Cir. 2023) ............................................................................. 16

*Curtis v. Loether*,
    415 U.S. 189 (1974) ................................................................................. 12, 16

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962) ................................................................................. 15, 19

*Dawson v. Contractors Transp. Corp.*,
    467 F.2d 727 (D.C. Cir. 1972) ....................................................................... 19

*Dimick v. Schiedt*,
    293 U.S. 474 (1935) ......................................................................................... 8

*Epic Games, Inc. v. Google LLC*,
    20-cv-5671 (N.D. Cal. Nov. 1, 2023), ECF 499 ............................................ 20

*Epic Games, Inc. v. Google LLC*,
  20-cv-5671 (N.D. Cal. Nov. 2, 2023), ECF 501 ................................................ 20

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................................ 7

*Evans v. S.J. Groves & Sons Co.*,
  315 F.2d 335 (2d Cir. 1963) .................................................................................. 7

*Fleitmann v. Welsbach Street Lighting Co.*,
  240 U.S. 27 (1916) .............................................................................................. 12

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*,
  76 F.3d 1023 (9th Cir. 1996) .............................................................................. 20

*In re Google Play Store Antitrust Litig.*,
  21-md-02981 (N.D. Cal. Dec. 16, 2021), ECF 169 ...................................... 19, 20

*In re Google Play Store Antitrust Litig.*,
  3:21-md-02981 (N.D. Cal. May 12, 2023), ECF 505 ........................................... 5

*In re Namenda Indirect Purchaser Antitrust Litig.*,
  338 F.R.D. 527 (S.D.N.Y. 2021) ........................................................................ 18

*In re PHC, Inc. S'holder Litig.*,
  894 F.3d 419 (1st Cir. 2018) ............................................................................... 16

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  338 F.R.D. 294 (D. Mass. 2021) ......................................................................... 18

*LeBlanc-Sternberg v. Fletcher*,
  67 F.3d 412 (2d Cir. 1995) .................................................................................. 16

*Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.*,
  425 F. Supp. 3d 165 (E.D.N.Y. 2019) ................................................................ 15

*Lewis v. Triborough Bridge and Tunnel Authority*,
  2000 WL 423517 (S.D.N.Y. Apr. 19, 2020) ...................................................... 21

*Leyse v. Bank of America Nat. Ass'n*,
  804 F.3d 316 (3d Cir. 2015) .................................................................................. 8

*Lytle v. Household Mfg., Inc.*,
  494 U.S. 545 (1990) ............................................................................................ 15

*N.W. Oil Co. v. Socony-Vacuum Oil Co.*,
  138 F.2d 967 (7th Cir. 1943) .............................................................................. 12

*Reines Distribs., Inc., v. Admiral Corp.,*
    257 F. Supp. 619 (S.D.N.Y. 1965) ................................................................. 5

*Robine v. Ryan,*
    310 F.2d 797 (2d Cir. 1962) ......................................................................... 19

*Robinson v. Metro-North Commuter R.R. Co.,*
    267 F.3d 147 (2d Cir. 2001) ......................................................................... 16

*Ross v. Bernhard,*
    396 U.S. 531 (1970).................................................................................... 13

*SEC v. Jarkesy,*
    603 U.S. 109 (2024)................................................................................. 7, 8

*SEC v. Jensen,*
    835 F.3d 1100 (9th Cir. 2016) ....................................................................... 9

*Simler v. Conner,*
    372 U.S. 221 (1963).................................................................................... 7

*Song v. Ives Labs., Inc.,*
    957 F.2d 1041 (2d Cir. 1992) ....................................................................... 17

*Standard Oil Co. of California v. Arizona,*
    738 F.2d 1021 (9th Cir. 1984) ..................................................................... 12

*Standard Oil Co. v. FTC,*
    340 U.S. 231 (1951).................................................................................. 12

*Steves & Sons, Inc. v. Jeld-Wen, Inc.,*
    345 F. Supp. 3d 614 (E.D. Va. 2018) ......................................................... 4, 5

*Street v. Isthmian Lines, Inc.,*
    313 F.2d 35 (2d Cir. 1963) ....................................................................... 8, 14

*Sullivan v. DB Inv.s, Inc.,*
    667 F.3d 273 (3d Cir. 2011) ......................................................................... 18

*Texas v. Penguin Grp. (USA), Inc.,*
    2013 WL 1759567 (S.D.N.Y. Apr. 13, 2013).............................................. 12, 21

*Trott v. Deutsche Bank, AG,*
    2024 WL 1313040 (S.D.N.Y. Mar. 26, 2024) ................................................. 7

*Tull v. United States,*
    481 U.S. 412 (1987)............................................................................. passim

iv

*Union Carbide Corp. v. Montell NV*,
    28 F. Supp. 2d 833 (S.D.N.Y. 1998) ................................................................ 6

*United States v. Google LLC ("Google Ad Tech")*,
    23-cv-108, Order (E.D. Va. June 11, 2023), ECF 283 ............................... 2, 3, 4

*United States v. Google LLC ("Google Ad Tech")*,
    23-cv-108 (E.D. Va.), June 7, 2024 Minute Entry, ECF 744 ............................ 2

*United States v. Google LLC ("Google Ad Tech")*,
    23-cv-108 (E.D. Va.), Transcript of June 7, 2024 Conference, ECF 747 ......... 2

*United States v. Google LLC ("Google Ad Tech")*,
    23-cv-108 (E.D. Va. Apr. 17, 2025), ECF 1410 ............................................... 2

*United States v. Google LLC ("Google Search")*,
    1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF 264 .......................................... 3, 4

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ...................................................................... 3, 4

*Wade v. Orange Cnty. Sheriff's Off.*,
    844 F.2d 951 (2d Cir. 1988) ..................................................................... 15, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ 16

**STATUTES**

15 U.S.C. § 16 (a) ................................................................................................ 17

Arizona's Antitrust Act, A.R.S. § 44-1402 ................................................... 13, 14

Arizona's Antitrust Act, A.R.S. § 44-1403 ......................................................... 13

District of Columbia Restraints of Trade Act, D.C. Code § 28-4507(b) .............. 9

Donnelly Act, N.Y. Gen. Bus. Law § 342-a ......................................................... 8

Illinois Antitrust Act, 740 ILCS 10/7(2) .............................................................. 9

New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-10(c) ........................................ 8

**OTHER AUTHORITIES**

Fleming James, Jr., *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655 (1963) ..................... 8

**RULES**

Fed. R. Civ. P. 38 ........................................................................................... 14, 15

Fed. R. Civ. P. 39 .................................................................................................. 14

Fed. R. Civ. P. 42 .............................................................................................. 3, 21

**TREATISES**

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2302.1 (4th ed.) .............................. 16

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2306 (4th ed.) ................................. 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. VII ............................................................................................ 6

**INTRODUCTION AND OVERVIEW OF PLAINTIFFS' PROPOSAL**

The trial structure that Plaintiffs seek is simple, intuitive, and grounded in decades of precedent: (1) a jury trial on liability for all claims, and (2) a bench trial on equitable remedies and damages, after limited additional discovery on remedies tailored to the jury's findings. This bifurcated trial structure would simplify issues for the jury and the Court, economize expert and other costs for the parties, and result in efficiencies for all involved.

In this case, the United States partnered with forty states, commonwealths, and the District of Columbia as co-Plaintiffs to bring a set of related claims against Defendants. The United States seeks only equitable relief for its five federal claims. State Plaintiffs bring antitrust claims under the Sherman Act and their respective state statutes through which they seek various forms of monetary relief (the "Monetary Remedies"). Thus, those State Plaintiffs have a constitutional right to a jury based on those claims.

The factual issues presented by State Plaintiffs' jury-triable claims overlap substantially with the equitable claims asserted by all Plaintiffs, and thus all Plaintiffs are entitled to have a jury decide those common issues. As the Supreme Court, the Second Circuit, and federal courts across the country have repeatedly held, the right to a jury trial as to all common issues is inviolable.

Defendants, however, have not agreed to Plaintiffs' proposal. Although Defendants' position has been far from clear, Defendants have suggested to Plaintiffs that they would agree to bifurcation only if State Plaintiffs waived their rights to a jury. Otherwise, Defendants believe the default trial structure should consist of three trials: first, a bench trial to decide liability for the United States' claims, then a jury trial to decide liability and damages for the states' claims, and then finally a second bench trial to decide equitable remedies. In other words: trifurcation. The

1

Court should reject Defendants' proposed structure because it would infringe upon the States'
jury trial rights and be grossly inefficient. The Court should instead adopt the simple,
straightforward, and legally sound trial structure that Plaintiffs propose.

## ARGUMENT

I. **The Trial Should Be in Two Phases, with a Liability Trial First and a Remedies Proceeding Second**

A. **Bifurcation of Liability and Remedies Is the Optimal Trial Structure for Plaintiffs' Equitable Claims**

Liability should be tried separately from equitable remedies. Courts across the country
have recognized the benefits of structuring complex antitrust trials in this way—including federal
courts in Virginia (*Google Ad Tech*), California (*Google Play Antitrust Litigation*), and the
District of Columbia (*Google Search*). The procedure that Plaintiffs propose is like the one
ordered by the district court in *Google Ad Tech* for a jury trial on liability and a bench trial on
equitable remedies:

> [T]he first step in this process is that plaintiffs must obtain a jury verdict in
> its favor. The next step would be for plaintiffs to decide, based on the
> jury's findings, whether they want to seek any equitable relief and, if so,
> what relief they want to request. . . . At that point, it is likely that the
> parties would need to engage in some limited, additional exchange of
> expert reports that would address the specific remedies being sought. . . .

*United States v. Google LLC ("Google Ad Tech")*, 23-cv-108, Order (E.D. Va. June 11, 2023),
ECF 283, at 3-4.[1]

---

[1] In *Google Ad Tech*, the court ultimately struck the jury demand count for reasons not present
here, namely that the court found that the damages claim was moot in light of a payment made
by Google. 23-cv-108 (E.D. Va.), Transcript of June 7, 2024 Conference, ECF 747, and June 7,
2024 Minute Entry, ECF 744. Even then, the *Google Ad Tech* trial remained bifurcated. On April
17, 2025, the court found Google liable on three of the four counts (ECF 1410), and stated that it
would "set a briefing schedule and hearing date to determine the appropriate remedies." ECF
1410, at 1.

At minimum, the parties would submit separate expert reports on liability and remedies—with any expert reports and depositions on remedies occurring after the liability findings. The court in *Google Ad Tech* reserved for a post-liability conference what "additional fact discovery will be necessary for the court to decide what, if any, equitable remedies are appropriate," *id*., and Plaintiffs propose the same sequenced approach here. This procedure would promote the efficiency counseled by Federal Rule of Civil Procedure 42(b), while preserving Plaintiffs' rights to a jury trial to decide common issues of fact as well as the parties' procedural rights to an evidentiary hearing prior to the imposition of a remedy. *See infra* Sections II and III.

All Rule 42(b) factors support bifurcation. Under Rule 42(b), the Court may bifurcate trial "[f]or convenience, to avoid prejudice, or to expedite and economize," provided, however, that "[w]hen ordering a separate trial, the court must preserve any federal right to a jury trial." *See also United States v. Google LLC ("Google Search")*, 1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF 264, at 2 (finding that bifurcation of liability and remedies "will be more convenient for the Court and the parties, and will expedite and economize this [antitrust] litigation"). Here, the bifurcation of liability and equitable remedies would be convenient, efficient, and economical, and would minimize the jury's burden while avoiding prejudice. For example, if Defendants are found liable on some but not all of Plaintiffs' claims, testimony on remedies would likely be more limited and better tailored to the liability determination. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 98, 103, 107 (D.C. Cir. 2001) (for the Court to appropriately tailor equitable relief, it must first know "the wrong creating the occasion for the remedy"); *see also Associated Press v. United States*, 326 U.S. 1, 22 (1945) ("The fashioning of a decree in an Antitrust case in such way as to prevent future violations and eradicate existing evils, is a matter which rests largely in the discretion of the Court. A full exploration of facts is usually necessary in order

properly to draw such a decree.") (citations omitted). And expert reports and testimony would narrowly focus on remedies tied to the liability findings. On the other hand, if the finder of fact were to find in favor of Defendants on liability, there would be no need for a remedies trial at all. Bifurcation would also preserve the parties' "basic procedural right to have disputed facts resolved through an evidentiary hearing." *Microsoft*, 253 F.3d at 103.

Deferring testimony on equitable remedies to a subsequent trial would also limit the burden on the jury because the jury would hear only evidence it needs to determine liability. This would reduce the amount of time that the jury would be required to sit, and it would protect against any confusion that could be caused by expert testimony on topics that are not germane to the jury's determination.

Plaintiffs' proposal accords with how other courts have structured complex antitrust trials in recent years—including *Google Search*, *Google Ad Tech*, and *Google Play Antitrust Litigation*. *See, e.g.*, *Google Search*, 1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF 264, at 2, ¶¶ 1-2 ("There will be a liability phase in each matter that will address only the Defendant's liability under the Sherman Act, and, if the Court renders a decision finding the Defendant liable, the Court will hold separate proceedings regarding the remedies for Defendant's violation(s) of the Sherman Act. During the liability phase, expert discovery and testimony need not offer specific opinions regarding particular remedies beyond that necessary to demonstrate liability. . . ."); *Google Ad Tech*, 23-cv-108, Order (E.D. Va. June 11, 2023), ECF 283, at 2 & n.1 (bifurcating liability and remedies, and noting that in *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 345 F. Supp. 3d 614 (E.D. Va. 2018), "the process . . . after the initial jury trial included having the plaintiff identify the specific equitable relief being sought, the legal basis for that relief, the witnesses to be called, and the documents intended to be introduced," and "[t]he parties were directed to

provide a list of expert witnesses to be called at the hearing and to agree on a schedule for exchanging expert reports relating to the equitable relief being sought"); *In re Google Play Store Antitrust Litig.*, 3:21-md-02981 (N.D. Cal. May 12, 2023), ECF 505, at 12 (parties agreed that, after the jury verdict on liability, the parties would meet and confer regarding any issues and evidence that may be necessary to resolve any requests for injunctive or equitable relief, and submit a joint statement to the Court within 10 days of the jury verdict); *Steves & Sons*, 345 F. Supp. 3d at 626 ("In making the decision about equitable relief, it is necessary to respect and apply the jury's findings which are binding factual findings and then for the Court to make factual findings based on the trial record and the record at the Remedies Hearing."), *aff'd in part, vacated in part, on other grounds, and remanded*, 988 F.3d 690 (4th Cir. 2021).

For the foregoing reasons, the Court should bifurcate trial—with a jury trial on liability to be followed by a bench trial on equitable remedies after additional limited discovery on remedies.

### B.  Combining Monetary and All Other Remedies Enables a Focused and Streamlined Jury Trial on Liability[2]

The efficiency, clarity, and convenience of a streamlined jury trial focused only on liability strongly supports bifurcating all remedies, including State Plaintiffs' Monetary Remedies. *First*, trying Monetary Remedies with equitable remedies would narrow the issues for presentation in the liability proceeding, which would facilitate the jury's assessment of the related federal and state claims. *See Reines Distribs., Inc., v. Admiral Corp.*, 257 F. Supp. 619, 621–22 (S.D.N.Y. 1965) (bifurcating liability and damages simplifies the litigation, and noting that "[t]he inherent complexity of an antitrust case is itself a factor promoting a separate trial of

---

[2] Since the United States seeks only equitable relief, the United States takes no position on when damages are determined, and which fact finder determines them.

an issue in such a case where the result of the separate trial may simplify the litigation"). *Second,* this bifurcated trial structure would promote judicial efficiency by deferring the Court's review of any damages-related motions and conserve the parties' resources by deferring certain expert discovery, until after the Plaintiffs have secured a favorable jury verdict on liability. *See Union Carbide Corp. v. Montell NV*, 28 F. Supp. 2d 833, 837–38 (S.D.N.Y. 1998) (since remedies depend on liability, bifurcation of remedies is efficient). *Finally*, this bifurcated trial structure would increase the likelihood of a negotiated resolution following any liability determination because it would allow the parties to consider all remedies during any settlement discussions. *Id.* at 837 (increased potential for settlement favors bifurcation).

As discussed in Section II.C below, to facilitate bifurcation, with respect to solely their Monetary Remedies State Plaintiffs elect not to exercise their right to a jury trial and instead elect to have this Court resolve those remedies in a second proceeding after a jury trial on liability.

## II.    Consistent with the Seventh Amendment, the Jury Must Make the Liability Determination

The Seventh Amendment of the United States Constitution guarantees State Plaintiffs the fundamental right to have a jury determine whether Defendants violated the antitrust laws and must pay what State Plaintiffs demand in Monetary Remedies. *See* Order, ECF 483 (denying Defendants' motion to dismiss State Plaintiffs' claims); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 504 (1959) (underscoring that "the right to trial by jury applies to trebles damages suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade.").

The Seventh Amendment preserves a jury-trial right in "Suits at common law." *See* U.S. Const. Amend. VII. The Supreme Court has construed this to mean that a litigant has a right to a

jury trial on the merits where (1) their cause of action resembles those tried in an eighteenth-century English court of law rather than in a court of equity or admiralty, and (2) the remedy they seek is legal, rather than equitable. *Tull v. United States*, 481 U.S. 412, 417–418 (1987). The State Plaintiffs' suit fits squarely within this definition.[3]

While the *Tull* Court reasoned that there were multiple ways the cause of action there could be understood (e.g., as a nuisance (equity) or as an action in debt (law)), it concluded that "characterizing the relief sought is 'more important' than finding a precisely analogous common-law cause of action." *See id.* at 421 (citation omitted). In *SEC v. Jarkesy*, the Supreme Court reiterated that, because a cause of action can be both "legal" and "equitable," the remedy is "the 'more important' consideration" in the Seventh Amendment analysis and may be "all but dispositive." *See* 603 U.S. 109, 123 (2024) (quoting *Tull*, 481 U.S. at 421).

In close cases—where the cause of action is not uniquely legal or equitable—the Court must resolve the ambiguity in favor of preserving the right to a jury trial. Because "the line between law and equity . . . [is] not a fixed and static one," the Seventh Amendment analysis requires flexibility. *Cf. Trott v. Deutsche Bank, AG*, 2024 WL 1313040, at *4 (S.D.N.Y. Mar. 26, 2024) (quoting Fleming James, Jr., *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655, 658–

---

[3] Even though this case involves state-law claims, the Seventh Amendment inquiry is governed by federal law. *Simler v. Conner*, 372 U.S. 221, 222 (1963). *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) (and its progeny) do not apply here, especially given that this Court does not sit in diversity. *See Evans v. S.J. Groves & Sons Co.,* 315 F.2d 335, 342 n.2 (2d Cir. 1963) (recognizing that state law is not binding on a federal court under the Seventh Amendment even in a diversity case, "as it surely would not be in a federal question case"). Therefore, *Tull* controls and the Seventh Amendment analysis does not necessitate a survey of each of the State Plaintiffs' state laws regarding the jury-trial right. The only exception is California, which does not believe that claims brought in federal court under California's Unfair Competition Law carry a jury trial right, including when civil penalties are sought, or join in any argument to the contrary. But California does not object in this instance—for purposes of judicial efficiency—to its claim being tried to a jury.

59 (1963)). The Seventh Amendment is "a great instrument of government, intended to endure for unnumbered generations," *Dimick v. Schiedt,* 293 U.S. 474, 490 (1935), and it "should be jealously guarded by the courts." *Street v. Isthmian Lines, Inc.*, 313 F.2d 35, 38 (2d Cir. 1963). Therefore, "[o]ne guiding beacon has been lit by the Supreme Court: when in doubt, grant a jury trial." *City of New York v. Beretta, U.S.A. Corp.*, 312 F. Supp. 2d 411, 414 (E.D.N.Y. 2004).

### A.  State Plaintiffs Seek Legal Remedies, Which Entitle Them to a Jury Trial

As Defendants all but admit,[4] the Monetary Remedies that State Plaintiffs seek through their federal and state claims clearly satisfy the second, "more important," remedies prong of the *Tull* test.

*Civil Penalties.* The majority of State Plaintiffs seek to recover civil penalties under their state statutes. *See, e.g.*, Donnelly Act, N.Y. Gen. Bus. Law § 342-a (authorizing penalties of up to $1 million per violation); New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-10(c) (authorizing penalties per day for each and every day of a violation). Because civil penalties, under federal law, are "by definition" a punitive type of monetary relief that "can make no pretense of being equitable," *see Jarkesy*, 603 U.S. at 124, the Seventh Amendment jury-trial right attaches in federal

---

[4] State Plaintiffs do not understand Defendants to be challenging their jury-trial right on the federal damages claims in principle. Rather, Defendants recently asserted that "Plaintiffs' *federal* claims are not entitled to a trial by jury and [] they have not properly pled, and cannot sustain, *non-federal claims triable to a jury*," ECF 493 at 2 (emphasis added), and have suggested that State Plaintiffs lack a jury-trial right on their federal damages claims, and by extension their state-law damages claims, for want of standing, for the reasons they articulated in their motion to dismiss. With respect to the federal claims, Defendants cannot seek to impose an otherwise unconstitutional trial structure on State Plaintiffs by ignoring this Court's denial of their motion. With respect to the state-law claims, having failed to move to dismiss any of the State Plaintiffs' "non-federal" (state-law) claims at the pleading stage, Defendants are now barred from recasting this Court's ordered briefing on bifurcation as a second motion to dismiss. *See Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 320–21 (3d Cir. 2015) (ruling that Rules 12(g) and 12(h) prohibit "all [successive] motions to dismiss for failure to state a claim, regardless of the grounds asserted" other than narrow exceptions inapplicable here).

actions in which the Government seeks "to recover civil penalties under statutory provisions." *See Tull,* 481 U.S. at 418–19; *see also SEC v. Jensen*, 835 F.3d 1100, 1006 (9th Cir. 2016) (concluding that the SEC was entitled to a jury trial and "that the SEC, in addition to seeking civil penalties, also requested equitable relief for Claims One through Six does not undercut its entitlement to a jury").

*State-Law Damages.* Additionally, certain State Plaintiffs seek damages under their state claims. *See, e.g.*, District of Columbia Restraints of Trade Act, D.C. Code § 28-4507(b)(1), (2) (authorizing up to three times the damages sustained); Illinois Antitrust Act, 740 ILCS 10/7(2) (authorizing treble damages). Because damages may serve punitive or compensatory purposes, they are also legal remedies that entitle State Plaintiffs to a jury trial on all issues pertinent to their award. *See Am. Soc. of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575–576 (1982) (explaining that treble damages are designed to "punish past violations of the antitrust laws," "deter future antitrust violations," and provide a meaningful remedy to injured plaintiffs (internal citations omitted)); *Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 570–73 (1998) (concluding that damages in the form of backpay that employees "would have received" had the union acted properly is legal and entitles plaintiffs to a jury trial).

*Federal-law damages.* The majority of State Plaintiffs assert federal claims through which they seek treble damages (the "Section 4c Claims"). The Section 4c Claims, which this Court has already determined the State Plaintiffs have standing to assert, unequivocally entitle State Plaintiffs to a jury trial under the Seventh Amendment.[5] *See Beacon Theatres*, 359 U.S. at 504 (holding that "the right to trial by jury applies to treble damage suits under the antitrust laws").

---

[5] In its Order on the Motion to Dismiss, the Court indicated that it understood that State Plaintiffs' Section 4c Claims corresponded only to Claim 1 in the Complaint. Order, at 4-5 n.1,

And State Plaintiffs are entitled to a jury trial on all of their claims, not just those through which they seek Monetary Remedies. As recognized in *Beacon Theatres,* the Seventh Amendment extends the fundamental right to a jury trial to all issues relevant to the award of legal, monetary relief. *See id.*; *Chan v. Schatz*, 280 F. Supp. 3d 546, 549 (S.D.N.Y. 2017) (even in copyright infringement suit where the nature of the action may be unclear, "a plaintiff seeking damages has a right to a jury trial on *all issues* pertinent to the award of damages" (emphasis added)).

In *Beacon Theatres*, the plaintiff, Fox West Coast Theatres ("Fox"), brought a declaratory relief suit under the Sherman Act against defendant Beacon Theatres ("Beacon"); Beacon counterclaimed, seeking treble damages under the Sherman Act, and demanded a jury trial. 359 U.S. at 503. The district court, on its own accord under Rule 42, bifurcated the case, severing Fox's and Beacon's claims, and ordered that (1) Fox's claim for declaratory relief, which sought no monetary relief, be tried first to the court, and (2) Beacon's claims, which sought treble damages, be tried afterwards to a jury. *Id.* Beacon appealed but the Court of Appeals affirmed. *Id* at 504. The Supreme Court reversed, rejecting the district court's fragmentation of claims, which had compelled Beacon "to split [its] antitrust case, trying part to a judge and part to a jury" because the result of the district court's disaggregation was to "limit [Beacon's] opportunity fully to try to a jury *every issue* which has a bearing upon its treble damage suit." *Id.* at 504, 508 (emphasis added). The Supreme Court construed Fox's own claim for declaratory relief—which involved no monetary remedies—as a "legal" issue because its determination bore upon the ultimate award of damages. *Id.* at 504. Since "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence" and should be "scrutinized with the

---

ECF 483. State Plaintiffs' respectfully note that these Claims in fact correspond to the primary ticketing markets, where State Plaintiffs allege harm under Claims 1 *and* 2 in the Complaint. *See* Pls. Joint. Mem. in Opp. Mt. to Dismiss, at 16, ECF 308; Ex. A, at 2, ECF 309-1.

utmost care," *id.* at 501, the district court's use of discretion "to deprive Beacon of a full jury trial" which Beacon had properly demanded, could not be justified. *Id.* at 508.

Like in *Beacon Theatres*, the Monetary Remedies that State Plaintiffs seek are intertwined with misconduct State Plaintiffs allege in the Complaint. *See id.* at 504, 508. As State Plaintiffs expressly allege: "each of [Defendants'] acts is anticompetitive when considered alongside Live Nation's associated conduct, [as] each act occurs in concert with and against the backdrop of allegations and facts outlined throughout this Complaint. These acts have synergistic anticompetitive effects that have harmed competition and the competitive process." Am. Compl. ¶¶ 228 (Section 4c Claim 1); 252 (Sherman Act, Claim 4); 260 (Sherman Act, Claim 5), ECF 257. For instance, allegations that Live Nation coerces artists into exclusive use of Live Nation promotion services, such that artists who want to perform in Live Nation's coveted, large amphitheaters effectively have no option but to use Live Nation promotion services, describe a dynamic that reinforces Live Nation's monopoly in the primary ticketing services market. *See* Am. Compl. ¶¶ 225 (Section 4c Claim 1); 242–43 (Sherman Act, Claim 3), ECF 257. Therefore, the Monetary Remedies claims and the liability claims (Claims 3 to 5 in the Complaint) are connected in terms of the scope of the applicable Seventh Amendment rights, and State Plaintiffs are entitled to have a jury determine liability on all of their claims.

### B.  State Plaintiffs Assert Federal and State Legal Claims, Which Must Be Heard by the Jury

State Plaintiffs bring antitrust claims under the Sherman Act and their respective state statutes. Am. Compl. ¶¶ 224–517, ECF 257. These federal and state claims satisfy the traditional Seventh Amendment analysis under the first, "cause of action," prong of the *Tull* test because antitrust violations are analogous to common law torts. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946) (labeling restraints of trade as "tortious acts"). It is "settled law" that a

statutory claim that "sound[s] basically in tort" and seeks legal relief is a classic jury-triable claim. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 689 (1999) (cleaned up); *accord, Curtis v. Loether*, 415 U.S. 189, 195–96 (1974).

The Sherman Act itself created causes of action that reflect an American policy premised on "faith in the value of competition," *Standard Oil Co. v. FTC,* 340 U.S. 231, 248 (1951), an idea that did not necessarily have a precise analog in eighteenth-century England. However, because the Seventh Amendment analysis does not ultimately require "an abstruse historical search," the test is not one of precision; so long as one appropriate legal analog exists at common law for the State Plaintiffs' claims, the first prong of *Tull* test is satisfied. *See Tull*, 481 U.S. at 421 (cleaned up). Indeed, Sherman Act claims for damages are well-established legal claims and have been tried to the jury for over a century. *See Fleitmann v. Welsbach Street Lighting Co.,* 240 U.S. 27, 29 (1916); *Standard Oil Co. of California v. Arizona*, 738 F.2d 1021, 1024–32 (9th Cir. 1984) (holding Seventh Amendment protects states' rights to jury trial in federal-court antitrust actions, especially when they sue on their citizens' behalf); *N.W. Oil Co. v. Socony-Vacuum Oil Co.*, 138 F.2d 967, 970 (7th Cir. 1943).[6]

Additionally, because all of the State Plaintiffs' state-law claims challenge the same underlying conduct as the Sherman Act claims, all of the State Plaintiffs' state-law claims are

---

[6] In *Texas v. Penguin Group*, State Plaintiffs expressly consented to waive their right to have the jury determine the liability of their federal Section 4c and state-law civil penalties claims, mainly so that their parallel case could be brought together with the United States' case, which would have otherwise been given priority for a trial under the framework of Section 4 of the Clayton Act. *See* 2013 WL 1759567 (S.D.N.Y. Apr. 13, 2013). This case is procedurally different, of course, because State Plaintiffs are co-Plaintiffs in the same suit as the United States. Regardless, State Plaintiffs are not aware of any court that has prevented States from having a jury decide their Section 4c claims.

similarly embraced by the Seventh Amendment, and satisfy the first prong of the *Tull* test. [7] *See Terry,* 494 U.S. at 569 (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)) (explaining that the nature of the action depends "on the nature of the *issue* to be tried, rather than the character of the overall action").

Indeed, to say the federal and state claims overlap is an understatement. For a large majority of State Plaintiffs, a jury verdict of liability as to *any* of the Sherman Act claims (Claims 1 through 5) is sufficient to establish a violation of state antitrust laws.[8] Arizona alleges, for instance, that:

- Live Nation, as described in [**Claim 1**], has unlawfully established, maintained, and used its monopoly power in several markets, which constitutes a violation of A.R.S. § 44-1403.

- Ticketmaster's long-term exclusive agreements to provide primary ticketing services to major concert venues, as described in [**Claim 2**], are contracts, combinations, or conspiracies between two or more persons that restrain or monopolize trade, which constitutes a violation of A.R.S. § 44-1402.

- Live Nation, as described in [**Claim 3**], has required artists to purchase substantial promotional services from Live Nation in order for artists to use its large amphitheaters for shows as part of a tour, which constitutes an unlawful trying arrangement in violation of A.R.S. § 44-1402.

*See* Am. Compl. ¶ 266 (truncated), ECF 257. Therefore, a jury verdict finding a violation of Section 2 of the Sherman Act (per Claim 1) also establishes a violation of Arizona's Antitrust Act, A.R.S. § 44-1403, which prohibits "the establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce," and that violation of Section 1 of the

---

[7] Massachusetts, South Dakota, and Wyoming do not seek Monetary Remedies in this action and are not entitled to a jury trial by right in this action. Similarly, California's Unfair Competition Law does not grant a right to a jury trial. Nevertheless, these State Plaintiffs' factual claims are covered under *Beacon Theatres*, and for the sake of fairness, convenience, and judicial efficiency, should be tried to a jury jointly with the rest of their State co-Plaintiffs' claims.

[8] While certain state claims may have modest differences—e.g., South Carolina requires a showing of "knowledge" to prove a statutory violation of their unfair trade practices statute—the core elements of the state-law claims challenging the Defendants' conduct are largely the same.

Sherman Act (per Claims 2 and 3) would constitute a violation of Arizona's Antitrust Act, A.R.S. § 44-1402, which prohibits "[a] contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce . . . ."

In sum, because the State Plaintiffs' state and federal claims challenge the same underlying conduct as an antitrust violation, the Seventh Amendment supports a jury trial for all of them insofar as State Plaintiffs seek it. *See Terry,* 494 U.S. at 569. To the extent Defendants raise any doubt on that score, the analysis must be resolved in State Plaintiffs' favor. *See Isthmian Lines.*, 313 F.2d at 38; *Beretta,* 312 F. Supp. 2d at 414.

### C.  For Purposes of Bifurcation, State Plaintiffs Assert Their Jury Trial Right Only with Respect to the First (Liability) Phase

In this case, for the sake of promoting judicial economy, fairness, and efficiency, and to permit a streamlined jury trial focused on liability, State Plaintiffs elect to have this Court, not the jury, address all their Monetary Remedies in a bench trial following a jury trial deciding all liability issues. State Plaintiffs have made a proper demand for "a trial by jury of all issues properly triable to a jury in this case." *See* Am. Compl. ¶ 518, ECF 257. When a jury trial has been demanded, "the trial on all issues so demanded must be by jury" and the demand "may be withdrawn only if the parties consent." *See* Fed. R. Civ. P. 38(d); *see also* Fed. R. Civ. P. 39(a). For purposes of seeking bifurcation, State Plaintiffs partially withdraw their demand for a jury trial on Monetary Remedies and consent to exercising their Seventh Amendment right to a jury trial only for a unified proceeding on liability. That way, the Court can address damages jointly with other remedies during the second phase of the proceedings. Based on the parties' conferences, State Plaintiffs understand that Defendants also prefer to try damages before this Court.

State Plaintiffs seek the most efficient adjudication of their claims. State Plaintiffs therefore ask that all remedies be decided jointly in a bifurcated proceeding, while preserving their jury-trial right as to all remaining issues, and partially withdraw their jury-trial demand *solely for purposes of this motion*. *See* Fed. R. Civ. P. 38(c) (providing that a party "may specify the issues that it wishes to have tried by a jury" in its demand); *cf. Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.*, 425 F. Supp. 3d 165, 169 (E.D.N.Y. 2019) (concluding that, even though the plaintiff stipulated to the amount of damages it could recover in the suit, the stipulation did not vitiate the jury-trial right because the plaintiff still "vigorously [sought] damages" and "the stipulation [was] merely a way to streamline the case to get there"); *Tull*, 481 U.S. at 425, 427–28 (holding that authorizing judges to calculate the amount of monetary remedies is consistent with the Seventh Amendment).

## III.    All Plaintiffs Are Entitled to Have a Jury Decide Defendants' Liability for Their Federal Claims

The State Plaintiffs' constitutional right to a jury trial on their legal claims means that even those Plaintiffs asserting only equitable claims, including the United States, have a right to try all common issues to a jury. Here, that means all Plaintiffs have a right for a jury to decide Defendants' liability on Plaintiffs' federal claims because the issues that will determine Defendants' federal liability are the same across legal and equitable claims.

### A.  The Jury Should Decide All Claims Because the Legal and Equitable Claims Have Substantial Overlapping Factual Issues

"When an action involves both legal and equitable claims that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the parties have a right under the Seventh Amendment to have the legal claims tried to a jury." *Wade v. Orange Cnty. Sheriff's Off.*, 844 F.2d 951, 954 (2d Cir. 1988) (citing *Beacon Theatres*, 359 U.S. 500, and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962)); *see also Lytle v. Household Mfg.,*

*Inc.*, 494 U.S. 545, 550 (1990) ("When legal and equitable claims are joined in the same action, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." (quotation marks omitted) (quoting *Curtis v. Loether*, 415 U.S. 189, 196, n. 11 (1974))); *see also* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2302.1 (4th ed.) ("the jury trial right attaches to issues, not [individual] causes of action"). "This long-standing principle of equity dictates that only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres*, 359 U.S. at 510–11 (footnote omitted). This rule "safeguard[s]" the right to a jury trial of legal claims because it "prevent[s] the court's determination of a common factual issue from precluding, by collateral estoppel effect, a contrary determination by the jury." *Wade*, 844 F.2d at 954. *See also Clark v. Hanley*, 89 F.4th 78, 100 (2d Cir. 2023) (same); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir. 1995) (same); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) (same), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *In re PHC, Inc. S'holder Litig.*, 894 F.3d 419, 437 (1st Cir. 2018); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423–24 (5th Cir. 1998)).

Here, the factual issues that will determine Defendants' liability for Plaintiffs' legal claims seeking monetary relief overlap with the factual issues that will determine Defendants' liability for Plaintiffs' equitable claims. The State Plaintiffs' Section 4c Claims are based on the first and second federal claims (monopolization of primary ticketing services markets in violation of Sherman Act § 2, and unlawful exclusive dealing in violation of Sherman Act § 1). *See, e.g.*, ECF 309-1, at 2-3 (identifying Claims 1 and 2 as the basis for federal damages). Thus, there is necessarily significant overlap of factual issues for Claims 1 and 2, which sound in both

law and equity. *See, e.g.*, *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) (considering "whether the elements of" legal and equitable claims "are so similar that a finding in favor of the plaintiff on one claim necessitates a finding for the plaintiff on the other claim"); *cf.* 15 U.S.C. § 16 (a) ("A final judgment" rendered in a civil proceeding "brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto . . . ."). And, as described above and in the Complaint, those two federal claims share core facts with the other federal claims given Defendants' mutually reinforcing anticompetitive conduct through its flywheel. *See supra* Section II.A.

The same is true for the State Plaintiffs' civil penalty demands, which are based on the same course of anticompetitive conduct that is the basis of the five federal claims. *See supra* Section II.A. For example, Arizona seeks civil penalties based on Defendants' anticompetitive conduct while selling tickets, promoting concerts, and operating venues, violating Arizona's laws prohibiting unlawful monopolization, unlawful combinations and contracts in restraint of trade, and unlawful tying arrangements, which overlap with the factual issues needed to determine liability for the federal claims. *See* Am. Compl. ¶¶ 265-269, ECF 257. Those overlapping factual issues include, without limitation:

- whether the relevant markets are properly defined;

- whether Defendants have monopoly power in those markets;

- whether Defendants have engaged in anticompetitive conduct (such as by retaliating against venues that contracted with rival ticketers, threatening venues

and rival promoters, acquiring other promoters, amphitheaters, and festivals, or

imposing restrictive terms in venue contracts);

- whether Defendants have foreclosed competition by rival ticketers or promoters;

- whether Ticketmaster's long-term exclusive agreements unreasonably restrain

   competition;

- whether Defendants have a policy that requires artists to purchase Defendants'

   promotions services as a condition of accessing their amphitheaters; and

- whether Defendants' amphitheater policy coerces artists to purchase amphitheater

   access from them.

*See, e.g.*, *id.* ¶¶ 224-264 (Claims 1-5).

Because the factual issues that will determine Defendants' liability for Plaintiffs'

equitable federal claims are also at issue in Plaintiffs' legal claims, a jury must determine all of

those dispositive factual issues. The benefits of combining claims asserted by multiple plaintiffs

involving common issues of law and fact are well-recognized by courts handling cases involving

analogous federal and state-law claims, as well as analogous state-law claims under different

state laws. *See, e.g.*, *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 572–576

(S.D.N.Y. 2021) (finding claims arising under twenty-four state antitrust laws and fourteen state

consumer protection laws had overlapping factual issues and could be tried together); *In re*

*Ranbaxy Generic Drug Application Antitrust Litig.,* 338 F.R.D. 294, 306 (D. Mass. 2021)

(finding state antitrust and consumer protection claims had substantial similarities with federal

antitrust provisions, and "[a]ny minor differences in the relevant state laws [could] be

accommodated through the use of special jury instructions and verdict forms"); *Sullivan v. DB*

*Invs., Inc.*, 667 F.3d 273, 302 (3d Cir. 2011) (grouping all issues in a single action where there

was a "sufficient constellation of common issues").

The Supreme Court's decision in *Beacon Theatres* is instructive. There, as discussed above, Fox's claims sought equitable relief, whereas Beacon's counterclaims sought treble damages and a jury trial. *See supra* Section II.A. Applying the principles described above, the Supreme Court held that "all the issues in the antitrust controversy" needed to be tried to a jury. *Beacon Theatres*, 359 U.S. at 506. The same result should occur here because any other result would infringe upon the State Plaintiffs' right to have all the issues underlying their legal claims decided by a jury.

### B. All Plaintiffs Are Entitled to Have the Jury Determine Issues of Fact Common to the Legal and Equitable Claims

Importantly, "*any party* has a right to a jury determination of [common factual] issues before the court rules on the equitable claim." *Dawson v. Contractors Transp. Corp.*, 467 F.2d 727, 733 (D.C. Cir. 1972) (emphasis added) (citing *Beacon Theatres*, 359 U.S. 500 and *Dairy Queen*, 369 U.S. 469); *see also Robine v. Ryan*, 310 F.2d 797, 798 (2d Cir. 1962) ("[T]he right to a jury trial of a legal cause of action is not lost by joinder with an equitable claim except in extraordinary circumstances. This is true even if the cause of action at law is thought to be 'incidental' to another cause of action in equity or if the plaintiff could have proceeded entirely in equity."); *accord* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2306 (4th ed.) ("[I]t appears that the constitutionally required solution in the situations in which a single issue may be either legal or equitable depending upon the remedy that may be awarded is to have a jury decide the issue, even though the district court then may have to determine for itself, on the basis of the jury's determination, whether to grant relief of a type that historically was viewed as equitable.").

For example, in the *Google Play Store* multidistrict litigation, the court ordered a single jury trial for multiple antitrust actions against Google—including an action by state plaintiffs

seeking damages and equitable relief, and an action by plaintiff Epic that sought only equitable

relief. Transcript of Zoom Video Conference Proceedings at 19:23-21:19, 29:11-16, *In re Google*

*Play Store Antitrust Litig.*, 21-md-02981-JD (N.D. Cal.  Dec. 16, 2021), ECF 169. The court

included Epic's equitable claims as part of the jury trial because Epic "brought the exactly same

antitrust claims that every other plaintiff brought," even though its claims did not seek monetary

relief. *Id.* at 21:9-19. Even the defendant in that litigation—which ultimately opposed Epic's bid

for a jury trial—acknowledged that the court's ruling followed from the principle that "'when

legal and equitable claims are joined in the same action,' the common issues are tried to the

jury." Google's Statement on a Non-Jury Trial on Epic's Claims and Defenses at 3, *Epic Games,*

*Inc. v. Google LLC, et al.*, 20-cv-05671 (N.D. Cal. Nov. 1, 2023), ECF 499 (quoting *Granite*

*State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996)). And even after

the other plaintiffs settled their separate actions in the multidistrict litigation, the court still tried

Epic's equitable claims before a jury. *See id.*; Civil Minutes at 1-2, *Epic Games, Inc. v. Google*

*LLC, et al.*, 20-cv-05671-JD (N.D. Cal. Nov. 2, 2023), ECF 501. The court found that Epic

would be prejudiced by the late request to switch to a bench trial, but also that Epic's claims still

overlapped factually with Google's counterclaims seeking monetary relief. Civil Minutes at 1-2,

*Epic Games, Inc. v. Google LLC, et al.*, 20-cv-05671-JD (N.D. Cal. Nov. 2, 2023), ECF 501.

         In sum, all federal claims—for all Plaintiffs—should be tried to a jury.

## IV.     Defendants' Proposal Is Unworkable at Best and Unconstitutional at Worst

         Defendants' proposal, as articulated to Plaintiffs, is to have either (1) no jury trial or (2) a

bench trial on liability on all the United States' claims and some of the State Plaintiffs' Sherman

Act Claims (Claims 3 to 5), then a jury trial on the State Plaintiffs' Monetary Remedies Claims

(the Section 4c claims, i.e., Claims 1 and 2, and the state-law damages and civil penalties

claims), followed by a bench trial on all other remedies. In other words, the only alternative that

Defendants have conveyed to Plaintiffs that is not plainly unconstitutional envisions this case proceeding in three phases. That is unreasonable, inefficient, and impractical.

Defendants' proposal to artificially split intertwined Sherman Act claims is not merely administratively clunky and wasteful—though that would be reason enough to reject it—but potentially substantively prejudicial. An initial bench trial on the United States' liability claims could raise collateral estoppel issues for State Plaintiffs' jury-triable claims and deprive State Plaintiffs of their constitutional right to have those claims tried by a jury. As Judge Cote has recognized, "to protect the parties' fundamental Seventh Amendment rights" with respect to claims triable to the jury, "the general rule is that the jury must be allowed to decide the legal claims *prior* to the court's determination of the equitable claims"—otherwise, the court's determination of a common factual issue could preclude a contrary determination by the jury through collateral estoppel. *Texas v. Penguin Grp. (USA), Inc.*, 2013 WL 1759567, at *6 (S.D.N.Y. 2013) (emphasis added) (citations omitted).

As a result, Defendants' proposal would require either: (1) the empanelment of two separate juries to hear largely overlapping evidence, or (2) a single jury—and the Court itself—to sit through two duplicative proceedings covering the same core facts. *See, e.g.*, *Lewis v. Triborough Bridge and Tunnel Authority*, 2000 WL 423517, at *3 (S.D.N.Y. Apr. 19, 2020) ("[I]t would be a waste of judicial resources to have to rehash factual issues regarding [the defendant's alleged conduct] in two separate proceedings before two different juries.").

Federal Rule of Civil Procedure 42 vests this Court with discretion to bifurcate where it promotes convenience, avoids prejudice, and enhances judicial efficiency. Defendants' proposal would waste judicial resources, increase the time and costs of litigation for both parties and non-party witnesses, and risk prejudice to State Plaintiffs through the fragmentation of the

interconnected legal issues in this case. In other words, Defendants' proposal would undermine the very goals that bifurcation is intended to advance.

Plaintiffs respectfully ask this Court to reject Defendants' invitation to undermine the integrity of these proceedings and the protections of the Seventh Amendment, and instead, preserve the coherence and integrity of the Plaintiffs' unified enforcement action by joining all legal issues for resolution in one, single jury trial on liability.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' joint request for bifurcation.

Dated: April 28, 2025


 */s/ Bonny Sweeney*
BONNY SWEENEY
 *Lead Trial Counsel*
ARIANNA MARKEL
MATTHEW R. HUPPERT

United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Bonny.Sweeney@usdoj.gov
Arianna.Markel@usdoj.gov

*Attorneys for Plaintiff United States of America*

*/s/ Adam Gitlin*
ADAM GITLIN (admitted *pro hac vice*)
ESTEFANIA YULIANNY TORRES PAEZ (admitted *pro hac vice*)

Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Adam.Gitlin@dc.gov
Estefania.TorresPaez@dc.gov

*Attorneys for Plaintiff District of Columbia*

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Amanda J. Wentz
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-1178
Fax: (501) 682-8118
Email: amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

/s/ Paula Lauren Gibson
Paula Lauren Gibson (admitted *Pro Hac Vice*)
Deputy Attorney General
(CA Bar No. 100780)
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6040
Email: paula.gibson@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
Conor.May@coag.gov
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
*Attorney for Plaintiff State of Colorado*

/s/ Kim Carlson McGee
Kim Carlson McGee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: kim.mcgee@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Liz.Brady@myfloridalegal.com
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
850-414-3300
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
(872) 272-0946 cell phone
Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Jesse Moore
Jesse Moore (*pro hac vice* forthcoming)
Deputy Attorney General
Jesse.Moore@atg.in.gov
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Phone: 317-232-4956
*Attorney for the Plaintiff State of Indiana*

*/s/ Noah Goerlitz*
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Tel: (515) 281-5164
noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

*/s/ Lynette R. Bakker*
Lynette R. Bakker (admitted *pro hac vice*)
First Assistant Attorney General
Antitrust & Business Organizations
lynette.bakker@ag.ks.gov
Kansas Office of Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Phone: (785) 296-3751
*Attorney for Plaintiff State of Kansas*

*/s/ Mario Guadamud*
Mario Guadamud
Assistant Attorney General
Complex Litigation Section
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Phone: (225) 326-6400
Fax: (225) 326-6498
GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

*/s/ Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
swalker@oag.state.md.us
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
(410) 576-6470
*Attorney for Plaintiff State of Maryland*

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Katherine.Krems@mass.gov
(617) 963-2189
*Attorney for Plaintiff Commonwealth of Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
Scottl21@michigan.gov
*Attorney for Plaintiff State of Michigan*

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
zach.biesanz@ag.state.mn.us
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Phone: (651) 757-1257
*Attorney for Plaintiff State of Minnesota*

*/s/ Gerald L. Kucia*
Gerald L. Kucia (admitted *pro hac vice*)
Special Assistant Attorney General
Gerald.Kucia@ago.ms.gov.
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Phone: (601) 359-4223
*Attorney for Plaintiff State of Mississippi*

/s/ Justin C. McCully
Justin C. McCully (admitted *pro hac vice*)
Colin P. Snider (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Tel: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorneys for Plaintiff State of Nebraska*

/s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ Zachary Frish
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-2150
zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

/s/ Yale A. Leber
Yale A. Leber (admitted *pro hac vice*)
Deputy Attorney General
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Phone: (973) 648-3070
Yale.Leber@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

/s/ Bryan L. Bloom
Bryan L. Bloom
Senior Enforcement Counsel
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8262
*Attorney for Plaintiff State of New York*

/s/ Jeff Dan Herrera
Jeff Dan Herrera (*pro hac vice* forthcoming)
Assistant Attorney General
Consumer Protection Division
JHerrera@nmdoj.gov
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
Phone: (505) 490-4878
*Attorney for Plaintiff State of New Mexico*

/s/ Francisco Benzoni
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
fbenzoni@ncdoj.gov
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Phone: (919) 716-6000
Facsimile: (919) 716-6050
*Attorney for Plaintiff State of North Carolina*

/s/ Sarah Mader
Sarah Mader (Admitted *pro hac vice*)
Assistant Attorney General, Antitrust Section
Sarah.Mader@OhioAGO.gov
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
*Attorney for Plaintiff State of Ohio*

/s/ Caleb J. Smith
Caleb J. Smith (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street
Suite 1000
Tulsa, OK 74119
Telephone: 918-581-2230
Email: caleb.smith@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma*

/s/ Gina Ko
Gina Ko (admitted pro hac vice)
Assistant Attorney General
 Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
Attorney for Plaintiff State of Oregon

/s/ Joseph S. Betsko
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
jbetsko@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Phone: (717) 787-4530
*Attorney for Plaintiff Commonwealth of Pennsylvania*

/s/ Paul T.J. Meosky
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, ext. 2064
(401) 222-2995 (Fax)
pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

/s/ Danielle A. Robertson
Danielle A. Robertson (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
DaniRobertson@scag.gov
(803) 734-0274
*Attorney for Plaintiff State of South Carolina*

/s/ Aaron Salberg
Aaron Salberg (admitted *pro hac vice*)
Assistant Attorney General
aaron.salberg@state.sd.us
1302 E. Hwy 14, Suite 1
Pierre SD 57501
*Attorney for Plaintiff State of South Dakota*

/s/ Hamilton Millwee
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: 615.291.5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ Diamante Smith
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
(512) 463-1579
Diamante.Smith@oag.texas.gov
*Attorney for Plaintiff State of Texas*

*/s/ Marie W.L. Martin*
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
mwmartin@agutah.gov
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Tel: 801-366-0375
*Attorney for Plaintiff State of Utah*

*/s/ Sarah L. J. Aceves*
Sarah L. J. Aceves (*pro hac vice* forthcoming)
Assistant Attorney General
Consumer Protection and Antitrust Unit
sarah.aceves@vermont.gov
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Phone: (802) 828-3170
*Attorney for Plaintiff State of Vermont*

*/s/ Tyler T. Henry*
Tyler T. Henry (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Facsimile: (804) 786-0122
thenry@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

*/s/ Rachel A. Lumen*
Rachel A. Lumen (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-5343
Rachel.Lumen@atg.wa.gov
*Attorney for Plaintiff State of Washington*

*/s/ Douglas L. Davis*
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Phone: (304) 558-8986
Fax: (304) 558-0184
douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

*/s/ Laura E. McFarlane*
Laura E. McFarlane (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-8911
mcfarlanele@doj.state.wi.us
*Attorney for Plaintiff State of Wisconsin*

*/s/ William T. Young*
William T. Young (admitted *pro hac vice*)
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841
william.young@wyo.gov
*Attorney for the Plaintiff State of Wyoming*

## **Certificate of Compliance**

In accordance with Local Civil Rule 7.1(c), and Rule 8(c) of this Court's Individual Practices in Civil Cases, I certify that the word count of this memorandum of law is 7,373 words, which includes footnotes but excludes the caption, any index, table of contents, table of authorities, signature blocks, or any certificates. This certificate is made in reliance on the word count of the word-processing program used to prepare the document.

*/s/ Bonny Sweeney*
BONNY SWEENEY
*Lead Trial Counsel*

*Attorney for Plaintiff United States of America*