<u>VIA ECF</u>

The Honorable Arun Subramanian                                                                                         May 2, 2025
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**   *United States et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS-SLC

Dear Judge Subramanian:

      Plaintiffs have diligently pursued discovery in a way that carefully balances the 300-hour deposition time limit (ECF No. 169 at 3) against the complexity and breadth of the facts that require exploration. Because the challenged conduct spans more than a decade and virtually every facet of the live entertainment ecosystem, even focused discovery has required Plaintiffs to pursue important evidence from more than 100 entities and individuals. Despite Plaintiffs' best efforts at efficiency and prioritization, we now expect that 300 deposition hours will be insufficient to create a complete factual record. This expectation is informed by multiple developments, but is best illustrated by Defendants' supplemental initial disclosures, served one week ago. Defendants added 102 new individuals and entities that have not been subject to *any* discovery thus far. *See* Ex. A. This strategic information dump—deployed with less than two months remaining in the current fact discovery schedule when 17 depositions have already been taken and 63 additional depositions are already scheduled and/or noticed—not only unfairly burdens Plaintiffs but threatens to deprive the factfinder of a complete record at trial.

      Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs 100 additional fact deposition hours and extend by 31 days, to July 28, 2025, the deadline for completing fact depositions. This would not impact any other deadline in this case, would not prejudice any party, and would serve the "important purposes" of discovery, including "avoiding surprise" and "enabling the parties to obtain the factual information needed to prepare for trial." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985).

### Plaintiffs Have Good Cause for Seeking Additional Deposition Time

      At the initial conference last June, the Court stated that Plaintiffs could seek additional deposition time based on a showing of good cause. Tr. at 20; *accord* Fed. R. Civ. P. 16(b)(4). Plaintiffs now have good cause to seek additional time.

      *First*, Defendants' extensive supplementation of their initial disclosures in the final weeks of fact discovery has vastly expanded the universe of people who warrant a deposition. This list includes, for the first time, scores of well-known artists, artist managers, and other entities, many of whom are clients, partners, or even employees of Defendants. This expansion is especially surprising, given Plaintiffs' persistent requests to Defendants for more than a year, both informally and through formal discovery requests, to identify artists and other industry participants who Defendants contend support their defenses. It also stands in stark contrast to the disclosures Defendants provided last July, which identified only 13 non-party entities and zero non-party individuals. *See* Ex. B. Despite being "the largest live entertainment company in the world," 2024

Form 10-K at 2, Defendants have not explained why they only recently discovered that so many of their fellow industry participants, whom Defendants knew well before this litigation began, are now so relevant to this litigation that Defendants "may use [them] to support [their] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Indeed, Defendants' counsel refused to confirm during the parties' meet and confer whether Defendants had even communicated with each of these newly identified individuals and entities since Defendants' original disclosures.

Defendants' tactic undermines the purpose of exchanging initial disclosures, which is "disclosure of fact witnesses in a timely fashion so the opposing party may take the discovery of that witness." *Irish v. Tropical Emerald LLC*, 2021 WL 1827115, at *3 (E.D.N.Y. May 6, 2021). Disclosing more than 100 new potential witnesses near the end of fact discovery "gives little to no time to notice a deposition or to obtain documents from the witness[es] in a reasonable manner." *Id.*; *see also Freeman v. Giuliani*, 2025 WL 81370, at *5 (S.D.N.Y. Jan. 13, 2025) (supplementation of initial disclosures "is not intended to permit the disclosing party to sandbag her opponent"). Absent relief from the Court, Plaintiffs must make the impossible choice of using scarce deposition time either to pursue planned depositions of witnesses Plaintiffs know possess relevant information or to determine what relevant information, if any, Defendants' newly-disclosed potential witnesses possess. Plaintiffs, in contrast, made fulsome initial disclosures last July, identifying 180 entities and related individuals, and supplemented them on April 25 by adding only entities or individuals Plaintiffs learned, during the course of discovery, possess relevant information we may use to support our claims. All but 14 of the individuals Plaintiffs added to their supplemental disclosures have already been subject to discovery.

*Second*, discovery has revealed the full extent to which the live entertainment industry is fragmented across a myriad of actors, which will necessitate more deposition time than initially anticipated. Plaintiffs are pursuing five federal claims and 34 state claims, including allegations of anticompetitive conduct in seven relevant markets. In addition to competitors and affiliates, the customers in these markets include artists, venues, and fans, but discovery has disclosed just how many different actors are relevant within these groupings. For example, artists use managers, agents, and other representatives to help manage their careers, thus Plaintiffs have had to pursue discovery of these different types of industry actors, across several companies. Similarly, each venue often employs multiple people with non-overlapping responsibilities relevant to Plaintiffs' claims. For example, at recent depositions, employees of arenas who handle one aspect of the venue's live event business (*e.g.*, ticketing, concerts) could not testify about other parts of that businesses. The upshot of these market realities is that Plaintiffs need to depose more individuals associated with artists and venues than initially anticipated.

*Third*, Defendants' business is much more compartmentalized than Plaintiffs understood at the beginning of discovery. While Plaintiffs have known from the outset that Defendants' business is separated into three segments—ticketing, concerts, and sponsorship—discovery has revealed that, according to Defendants' employees, the three segments operate independently of one another, such that employees in one segment claim to have only limited visibility into the other two. Live Nation's Chief Strategy Officer, for example, testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Even within the Concerts segment, there are separate divisions for the venue business and promotions business in the United States, both at issue in this litigation.

The segmented nature of Defendants' business makes it more difficult to identify the right deponents to answer questions about intracompany relationships. For example, a Ticketmaster Vice President of Commercial Strategy was recently unable to testify to the specifics regarding ▇ ▇.

Plaintiffs have efficiently planned and used their deposition time thus far in discovery. Across the 17 depositions that have already taken place, Plaintiffs have used approximately 59 hours, including using less than four hours in each of 14 depositions. Plaintiffs have diligently tracked deponents and deposition hours to avoid unnecessarily duplicative testimony and have already canceled or shortened depositions when necessary. But the parties have already collectively noticed and/or scheduled 63 more depositions to occur prior to June 27, including 24 depositions first noticed by Defendants. These forthcoming depositions include most of the senior executives at Defendants, as well as leaders at other large ticketers and promoters. For this reason, Plaintiffs anticipate that these depositions will be, on average, slightly longer than the depositions that have occurred to date. Assuming Plaintiffs use only 3.75 hours at each deposition noticed by Plaintiffs, and 2.25 hours for each noticed by Defendants, scheduled and/or noticed future depositions will account for 200 of Plaintiffs' remaining 241 hours. But many important and relevant depositions remain to be noticed. Before receiving Defendants' supplemental disclosures, Plaintiffs had identified another 20 non-party and five party deposition candidates. If Plaintiffs were to depose these 25 individuals and only one fourth of the newly disclosed individuals appearing on Defendants' disclosures (*i.e.*, 25 deponents), that would add 50 depositions. Assuming just 3.5 hours per deposition for category D below, and 2.25 hours per deposition for category E, that would account for 143.75 hours.

|   | Category of Depositions | Hours |
|---|---|---|
| A. | 17 Completed (average ~3.5 hours/deposition) | ~59 |
| B. | 39 Noticed / Scheduled by Plaintiffs (assume 3.75 hours/deposition) | ~146 |
| C. | 24 Noticed / Scheduled by Defendants (assume 2.25 hours/deposition) | ~54 |
| D. | 25 Identified by Plaintiffs, Not Yet Noticed (assume 3.5 hours/deposition) | ~87.5 |
| E. | 25 (of 102) Recently Disclosed by Defendants (assume 2.25 hours/deposition) | ~56.25 |
|   | **TOTAL** | ~402.75 |

**Plaintiffs Seek a Short Extension of Fact Discovery That Will Not Affect Other Deadlines**

To allow time to take the additional depositions described above, Plaintiffs request that the Court allow fact depositions to continue for an additional 31 days, until July 28. This extension would align the end of fact depositions with the date Plaintiffs' initial expert report(s) are due and would not impact any other deadlines. Defendants would not be prejudiced since there would be no changes to their expert report schedule or their ability to respond to Plaintiffs' experts.

\*\*\*

The parties held a lead trial counsel meet and confer regarding these issues on April 30 for approximately 25 minutes. The principal participants were John Thornburgh (Plaintiffs) and Leah Wisser (Defendants). Plaintiffs declared an impasse by email on May 2.

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs 100 additional deposition hours and allow fact depositions to continue until July 28, 2025.

Respectfully submitted,
/s/ Bonny Sweeney
Bonny Sweeney