<u>VIA ECF</u>

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl St., Courtroom 15A
New York, NY 10007-1312

Re:   *United States et al. v. Live Nation Entertainment, Inc. et al.*, 1:24-cv-03973-AS-SLC

Dear Judge Subramanian,

The Court should deny Plaintiffs' request for 100 additional hours of fact deposition time and another month of fact discovery—which, tellingly would give them the deposition hours they requested and the Court declined at the beginning of the case. Plaintiffs' request is predicated almost entirely on their feigned surprise that, in a case in which Plaintiffs themselves have made national concert tours at large concert venues the entire focus of their claims, the very artists and large venues Plaintiffs claim are the victims of the alleged conduct would have information that *may* be used to support Defendants' defenses. It is also predicated on the stunning contention that Plaintiffs have only recently discovered rudimentary facts about the industry—that it is "fragmented," that artists use managers and agents, and that venues employ different people to run ticketing and concert operations—and the fact that Defendants' businesses are to some degree segmented. These are not remotely credible contentions and do not support the massive expansion of discovery that Plaintiffs seek.

Plaintiffs have been studying this industry and Defendants' businesses since the Live Nation/Ticketmaster merger was proposed in 2009. In addition to the lengthy merger investigation, they conducted a five-year consent decree compliance investigation, and an 18-month pre-complaint investigation related to this case. They have demanded, and Defendants have produced, many millions of documents and billions of data observations about the industry and Defendants' businesses. In that context, it is both implausible and unacceptable that they are surprised by what they are claiming to be surprised about. It cannot possibly be *justifiable* surprise.

There is no reason the parties' counsel—including the more than 100 lawyers who have filed appearances in this case on behalf of Plaintiffs—cannot complete any additional discovery within the current schedule and allotted deposition limits. The schedule and discovery limits set by the Court were and remain sufficient. For these reasons and those below, the Court should deny Plaintiffs' requests.

*First*, contrary to Plaintiffs' claim, Defendants' supplemental initial disclosures are not a "strategic information dump." They are fully compliant with the timing that the parties stipulated to *after* the Court set the deposition time limits and fact discovery deadline, and consistent with Plaintiffs' disclosure of more than eighty new non-parties in their supplemental disclosures of the same date.[1] To review, Plaintiffs themselves proposed a spring 2025 deadline for supplementing

---

[1] Plaintiffs' claim that most of these non-parties have been subject to discovery is misleading; while many received document subpoenas, scores have produced a *de minimis* volume of or no documents.

initial disclosures, and the parties agreed upon a deadline of April 25, 2025. The parties also agreed that either side could further supplement their disclosures (*after* April 25) for good cause, and that for individuals or entities *added after April 25*, neither side would oppose efforts to secure document or deposition discovery after the fact discovery cut off. *See* Ex. A. Thus, the parties clearly contemplated that for individuals who were disclosed *on or before April 25*, there would be no good cause for seeking discovery outside the fact discovery period. That was to be addressed in the final two months of the discovery period.

What, then, is the supposed surprise that justifies re-trading the agreement? The majority of the supposedly "new" non-parties identified in Defendants' supplemental disclosures are not new at all: They are on Plaintiffs' own disclosures; have already received document or deposition subpoenas; are entities that Plaintiffs disclosed in their *own* interrogatory responses; or are entities and persons that Defendants previously disclosed in their interrogatory responses. The bulk of the remaining non-parties are mostly Defendants' *customers* in Plaintiffs' alleged relevant markets: touring artists and large venues. Nothing should be less surprising than that customers in the alleged relevant markets may have discoverable information.[2] Defendants' disclosures are also a function of Plaintiffs' unfocused case, which—despite repeated requests for specificity through focused interrogatories—remains sweeping, vague and ill-defined. To this day, Defendants do not know of one artist in the alleged national concert touring market or one venue in the alleged large concert venues market that supports Plaintiffs' claims in this case, let alone is prepared to testify for Plaintiffs.

***Second***, the requested relief is not justified by Plaintiffs' representation that they have only just learned basic facts about the industry and Defendants' businesses after having investigated it, scrutinized it, monitored it, and having had access to every nook and cranny of it for over two decades. Even cursory reference to Plaintiffs' own pleading and disclosures, as well as the documents that have been in their possession for years, debunks Plaintiffs' claims of recent enlightenment concerning the industry and Defendants' businesses. The 2010 competitive impact statement that the Department of Justice prepared in approving the Live Nation/Ticketmaster merger describes the fragmented nature of the industry and the many constituents involved. *See* Competitive Impact Statement (ECF No. 2) at 3, *United States v. Ticketmaster Ent., Inc.*, No. 10-cv-0139 (D.D.C. 2010). During their multi-year investigations, Plaintiffs have taken over two dozen depositions of Live Nation and non-party witnesses, including eliciting testimony from Defendants' high-level executives about the structure of Defendants' business, details of its different business segments, and employees' roles and responsibilities. Plaintiffs' complaints in this case contain pages of allegations purporting to describe how the live entertainment industry and Defendants' business works. *See* ECF Nos. 4, 257. At the June 27, 2024 scheduling conference, Plaintiffs argued for an 80-deposition limit—which the Court rejected—by listing the "whole host of nonparties" from whom Plaintiffs would need to take depositions and pointing to the "very distinct business segments within Live Nation and Ticketmaster." (June 27, 2024 Hr'g Tr. 16:5-17:11.) And Plaintiffs have 4.5 million documents from Defendants and hundreds of

---

[2] Several are large stadiums, which Defendants only recently learned through an interrogatory response—after months of trying to get Plaintiffs to provide more detail on the contours of their alleged markets—that Plaintiffs are *excluding* from their alleged markets based on "major concerts venues".

thousands of documents from non-parties, which provide even more detail about the nature of Defendants' business and the industry.[3]  With all that, Plaintiffs have no right to claim surprise about *anything*.

**Third**, Plaintiffs overstate the amount of time they credibly might need for remaining depositions.  The vast majority of Plaintiffs' existing time allotment remains unused.  Many non-party depositions have taken less than three hours of Plaintiffs' deposition time, not because (as Plaintiffs suggest) Plaintiffs have strategically held back questions, but because the non-party simply did not have much to say on Plaintiffs' theories.  Moreover, Plaintiffs fail to mention that they have agreed to deposition limits with some upcoming non-parties that will inevitably result in Plaintiffs using less than two hours of time with those non-parties.

**Fourth**, more deposition time is not necessary to prevent surprise at trial.  The deposition protocol here allows a party to depose *anyone* on the other party's trial witness list who was not deposed during fact discovery.  ECF No. 303, ¶ 27.  There is thus no risk that Plaintiffs would not be permitted to depose a party or non-party witness that Defendants intend to call at trial.

Finally, contrary to Plaintiffs' claim, the requested relief would in fact prejudice Defendants.  That is not just because Plaintiffs have already subjected Defendants to a massive amount of discovery, imposing extraordinary costs and disruption, and extending the deadline to take more depositions would significantly increase those costs.  And it is not just that an extension would fundamentally change, midstream, the framework under which the parties have been planning for and approaching deposition discovery.  On top of all of that, it would delay crystallization of the factual record on which the parties' experts will rely, leaving Defendants' experts, who are in a purely responsive posture (with only 5.5 weeks to respond to Plaintiffs' opening reports), with insufficient time to take account of the factual record in preparing their reports.

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' request for an additional 100 deposition hours and an extension of fact discovery to July 28, 2025.

---

[3] There is also no truth to Plaintiffs' suggestion that they have been unable to obtain substantive answers to their deposition questions.  The suggestion is based on a reference to two out-of-context snippets of testimony out of over seventy-three hours of deposition time.  In reality, Plaintiffs have obtained fulsome answers from those deposed to date, and there are many more depositions scheduled, including of Live Nation executives who supervise all segments of its business.

Dated: May 6, 2025

Respectfully submitted,

| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|
| *[signature]* | *[signature: David R. Marriott]* |
| Alfred C. Pfeiffer (admitted *pro hac vice*) | David R. Marriott |
|     *Co-Lead Trial Counsel* |     *Co-Lead Trial Counsel* |
| Timothy L. O'Mara (admitted *pro hac vice*) | Lauren A. Moskowitz |
| Jennifer L. Giordano | Jesse M. Weiss |
| Andrew M. Gass (admitted *pro hac vice*) | Nicole M. Peles |
| Kelly S. Fayne (admitted *pro hac vice*) | |
| Lindsey S. Champlin (admitted *pro hac vice*) | Two Manhattan West |
| Robin L. Gushman (admitted *pro hac vice*) | 375 Ninth Avenue |
| | New York, NY 10001 |
| 505 Montgomery Street, Suite 2000 | (212) 474-1000 |
| San Francisco, CA 94111 | |
| (415) 391-0600 | dmarriott@cravath.com |
| | lmoskowitz@cravath.com |
| 555 11th Street, NW, Suite 1000 | jweiss@cravath.com |
| Washington, D.C. 20004 | npeles@cravath.com |
| (202) 637-2200 | |
| | *Attorneys for Defendants Live Nation* |
| Al.Pfeiffer@lw.com | *Entertainment, Inc. and Ticketmaster L.L.C.* |
| Tim.O'Mara@lw.com | |
| Jennifer.Giordano@lw.com | |
| Andrew.Gass@lw.com | |
| Kelly.Fayne@lw.com | |
| Lindsey.Champlin@lw.com | |
| Robin.Gushman@lw.com | |

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

cc:     All Counsel of Record (via ECF)