P521LIVC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA, et
     al.,
 4
                     Plaintiffs,
 5
                 v.                        24 Civ. 3973 (AS)
 6
     LIVE NATION ENTERTAINMENT,
 7   INC., et al.,

 8                   Defendants.           Conference (Remote)
     ------------------------------x
 9                                         New York, N.Y.
                                           May 2, 2025
10                                         2:06 p.m.

11   Before:

12                      HON. ARUN SUBRAMANIAN,

13                                          District Judge

14                             APPEARANCES

15   U.S. DEPARTMENT OF JUSTICE
     ANTITRUST DIVISION
16        Attorneys for Plaintiff United States
     BY:  BONNY E. SWEENEY, ESQ., Senior Trial Counsel
17        ARIANNA MARKEL, ESQ., Lead Trial Counsel

18   DISTRICT OF COLUMBIA OFFICE OF THE ATTORNEY GENERAL
          Attorneys for State Plaintiffs
19   BY:  ADAM GITLIN, ESQ.
          Assistant Attorney General
20
     LATHAM & WATKINS LLP
21        Attorneys for Defendants
     BY:  ALFRED C. PFEIFFER, JR., ESQ.
22
     CRAVATH SWAINE & MOORE LLP
23        Attorneys for Defendants
     BY:  DAVID R. MARRIOTT, ESQ.
24

25
```

P521LIVC

```
 1              (Case called)
 2              THE COURT:  Let's have appearances, starting with the
 3    plaintiff.  And only the attorneys who are going to be speaking
 4    need to speak up at this time.
 5              MS. SWEENEY:  Good afternoon, your Honor.  This is
 6    Bonny Sweeney for the United States.
 7              THE COURT:  And do we have anyone else for the
 8    plaintiff?
 9              MR. GITLIN:  Yes, your Honor.  Good afternoon.  This
10    is Adam Gitlin of the Office of the Attorney General of the
11    District of Columbia for the state plaintiffs.
12              THE COURT:  And for the defendants?
13              MR. PFEIFFER:  Good afternoon, your Honor.  This is Al
14    Pfeiffer of Latham & Watkins on behalf of defendants.
15              MR. MARRIOTT:  And also David Marriott on behalf of
16    defendants, your Honor.  Good afternoon.
17              THE COURT:  All right.  Good afternoon to everybody.
18    Thank you for joining at the last minute.  I know it's a Friday
19    afternoon.  I do appreciate everyone joining.
20              And I'll just ask, for the court reporter's benefit,
21    that before anybody speaks, they just say their name so that
22    the court reporter can keep tabs on who is speaking.
23              All right.  So the reason why I called this conference
24    is, I received a——I'm just looking at the pages here——a
25    20-plus-page motion to bifurcate, and what I realized, after
```

P521LIVC

1   reviewing the motion and ruling on the defendants' request for

2   an extended briefing schedule, is that this might be the kind

3   of thing that it's worth everyone talking about now, given that

4   we have an expert disclosure deadline of July 28, which is in

5   just a few months.  So that's the reason why I wanted to have

6   this conference.  And I have a few questions for the plaintiff

7   here on the motion to bifurcate, and I'll obviously hear

8   anything else the plaintiffs want to say, and the defendants as

9   well.

10          So who's going to be speaking on this issue from the

11   plaintiff's side?

12          MS. SWEENEY:  Your Honor, Bonny Sweeney for the United

13   States, but the states have some separate issues that

14   Mr. Gitlin is going to address——

15          THE COURT:  All right.

16          MS. SWEENEY:  ——depending on your Honor's questions.

17          THE COURT:  Sure.  So I'm going to be asking you some

18   really basic questions.  I apologize at the outset.  What I'm

19   hoping is that we're all on the same page and your answers will

20   just help me understand what is being requested and hopefully

21   will frame the inquiry.

22          So let me start off with just my understanding of

23   what's happening, and you can tell me where I'm wrong.  Now I

24   understand from your motion that you say the plaintiffs have a

25   right to a jury trial under the Seventh Amendment, given that,

P521LIVC

| | |
|---|---|
| 1 | among other things, they are seeking legal relief, which is one |
| 2 | of the prongs of the *Tull* test.  Am I right about that? |
| 3 |       MS. SWEENEY:  Yes, your Honor. |
| 4 |       THE COURT:  Okay.  And for purposes of bifurcation, |
| 5 | the plaintiffs seek to waive their jury trial rights as to the |
| 6 | relief portion, meaning the damages part of the case, and |
| 7 | solely a jury trial on liability, right? |
| 8 |       MS. SWEENEY:  Your Honor— |
| 9 |       MR. GITLIN:  Your Honor, this is Adam Gitlin.  We'll |
| 10 | be doing our best to tag team on this, depending on your |
| 11 | Honor's questions, but since that pertains to the states' jury |
| 12 | trial rights as pertains to the damages, yes. |
| 13 |       THE COURT:  Okay.  Good.  And so put another way, the |
| 14 | state plaintiffs want to waive their jury trial right to the |
| 15 | very thing that gave them a right to a jury trial in the first |
| 16 | place.  Right? |
| 17 |       MR. GITLIN:  I wouldn't quite put it that way, your |
| 18 | Honor.  That is to say, the nature of the action is legal and, |
| 19 | yes, the treble damages and, with respect to the state damages |
| 20 | causes of action, they are part—they are the remedial parts |
| 21 | that I think maybe makes it most clearly legal in nature, but |
| 22 | we think of the claims as a whole.  I mean, I think that's why |
| 23 | *Tull* has two prongs.  You don't just look at the remedy, you |
| 24 | look at the nature of the claims, and we argue that they are |
| 25 | legal in our brief. |

1              THE COURT:  Right.  You hit the nail on the head.  I'm

2    trying to look at the claims as a whole because of the relief

3    that you're seeking.  I mean, there's another aspect to the

4    *Tull* test, but one of the aspects focuses on the relief sought,

5    and that's the damages that you referred to, and so that is a

6    component; that's a reason why you have a right to a jury trial

7    in the first place.  But the motion says that as to that thing

8    that gave rise to the Seventh Amendment jury trial right,

9    you're now saying, well, I'm waiving the jury trial right as to

10   just that piece, the damages portion, and I guess my question

11   is whether there's a case that you have that addresses the

12   Seventh Amendment issue and says that that's okay.

13             MR. GITLIN:  So, your Honor, I think the most

14   analogous case that we've——and I should say that we did not

15   understand this, in a sense, to be actually part of the

16   parties' dispute in that, insofar as we've discussed this with

17   defendants, one of the things that we seem to be in agreement

18   on is the defendants are not interested in trying these damages

19   portions to a jury.  The thing you will see in common, at least

20   as we understand the different proposals, is that damages would

21   be part of the remedies proceedings that would happen before

22   your Honor.  So——

23             THE COURT:  Let me stop you right there and confirm

24   that that's accurate.

25             So either Mr. Pfeiffer or Mr. Marriott, is that right

P521LIVC

1    that, whether there's a case or not, there's no dispute between

2    the parties that there's a right to a jury trial and that the

3    plaintiffs are permitted to waive that right and only assert it

4    as to liability, and as to the damages portion, that could be

5    waived and it can go to the bench?

6            MR. PFEIFFER:  Your Honor, this is Al Pfeiffer.  I'll

7    speak to that first, at least.

8            Actually, I don't think that's correct, your Honor.  I

9    certainly don't remember us having a discussion in which we,

10   the defendants, said that.  And in fact, in terms of your

11   Honor's question about precedent on this, I think the *Google* ad

12   search case may be instructive because——it's different, but

13   perhaps analogous.  In that case, when the plaintiffs, state

14   plaintiffs did assert their damages claims, Google paid them

15   off, rendering the damages actual portion moot, at which point

16   the court decided that there was not an entitlement to a jury

17   trial on liability anymore.  Now the nature of the claims

18   didn't change, but because the damages portion was removed,

19   there was no longer a jury trial right.  Again, slightly

20   different circumstances, but I would think here analogous that

21   if there is a waiver of that which at least is a big part of

22   what creates the jury right, then we don't agree that there

23   would be entitlement to the jury trial.

24           MR. GITLIN:  Adam Gitlin for the state plaintiffs,

25   your Honor.  If I could respond briefly.

P521LIVC

```
 1              THE COURT:  Sure.

 2              MR. GITLIN:  So first of all, defendants haven't

 3    offered to pay us for our damages claims.  If they want to,

 4    we're happy to have that conversation.  But if we're just

 5    talking about the proposal that we provided, I think the case

 6    that we cite in our brief, *Leviton Manufacturing v. Pass &*

 7    *Seymour,* 425 F.Supp.3d 165, that responds directly to

 8    Mr. Pfeiffer's point, right?  That's a case in which there was

 9    a patentee who stipulated with the alleged infringer on having

10    to pay damages, but only if the alleged infringer failed to

11    secure declaratory judgment on the patent's invalidity, right,

12    so they were happy to set aside having to try one portion, the

13    portion of the case, and the damages portion that, again, we're

14    arguing just for the sake of argument that——that is, it's only

15    the damages that provides the hook, and we don't take that

16    position.  We take the position that these are legal claims,

17    antitrust sounds in tort, as explained in our briefing, our

18    position.  But even if you just focus on the damages side of

19    it, the mere fact that we are proposing a scenario where we are

20    not trying damages to a jury doesn't mean that we have to waive

21    our jury trial right.

22              THE COURT:  Okay.  Let's assume for the moment that

23    you're right, all right?  So, I mean, I'm going to step through

24    the next part of my questions here.  So let's assume you're

25    right.  And then in your motion, you're requesting that the
```

P521LIVC

1    Court bifurcate liability and damages.  And what I understand

2    you to be saying is that the Court has discretion to bifurcate

3    liability and damages, meaning you are not saying that the

4    Court is required to bifurcate liability and damages as a

5    result of the plaintiffs' waiver of the jury trial right as to

6    the damages piece, you're saying that it's up to the Court's

7    discretion; am I right about that?

8            MR. GITLIN:  Yes, your Honor.  And again, we don't

9    think that——or at least up until today.  If defendants are now

10   demanding——if I understand correctly, that now defendants are

11   now demanding a jury trial with respect to damages, and that

12   that's not a position they can walk back after this, that's one

13   thing.  We had understood that there wasn't a dispute on that

14   issue, and then it would simply be that the Court could use its

15   discretion to decide whether it's an all-jury trial or does it

16   get bifurcated in the way that changes things.

17           THE COURT:  Okay.  Understood.  Thank you.

18           All right.  And now I want to figure out why you're

19   making this request.  And so now let's say that I were to deny

20   your request to bifurcate, and so we keep moving along as was

21   previously scheduled.  So is that possible?  Meaning, are the

22   plaintiffs saying that they cannot finish discovery on

23   liability and damages given the current schedule?  Or are you

24   just saying that you think it would be more efficient to

25   bifurcate?

P521LIVC

1          MR. GITLIN:  So on behalf of the state plaintiffs,

2     your Honor——I'll let Ms. Sweeney speak as to bifurcation, with

3     respect to equitable remedies.  If the Court rules that

4     defendants essentially, you know, have preserved their jury

5     trial demand with respect to damages, state plaintiffs are fine

6     proceeding with a jury trial on damages.  It may make sense as

7     a matter of efficiency, the same kind of efficiency that

8     animates bifurcation decisions under Rule 42, to see whether or

9     not we have a jury verdict on liability and then see whether

10    essentially we need to keep the jury impaneled for expert

11    testimony on damages soon after, and that may in turn, yes,

12    warrant a slight extension of the discovery schedule, at least

13    with respect to experts who are going to testify regarding

14    damages.  And the United States won't present expert testimony

15    about that, but state plaintiffs can meet and confer with

16    defendants on whether that makes sense for everyone.

17          THE COURT:  Okay.  I think I understand.  So as to

18    damages——I really want to focus on that——what I'm hearing from

19    you is:  We can get this done; we just think that given the

20    equitable piece of the case and the proposal to have

21    bifurcation as to that, it might make sense to throw damages in

22    that pot as well and focus on liability in the initial trial.

23    Is that fair?

24          MR. GITLIN:  Yes, your Honor.  Of course, in full

25    candor, right, this case is moving very quickly, and we don't

P521LIVC

```
1    have an interest in——since it wouldn't necessarily affect the
2    timing of resolution of this case one way or another, the
3    ultimate resolution, additional time may be useful for
4    everyone, and particularly if we have in mind an understanding
5    that essentially the damages portion is going to come last,
6    even if it isn't sort of part of maybe the broader equitable
7    proceedings, but we'll get it——we committed to this schedule,
8    and if that's what's required, we're certainly proceeding on
9    that schedule until the Court changes it.
10              THE COURT:  Okay.  And on that point that you raised
11    about it not really changing anything, that this is a general
12    point about efficiency, I guess my question is——and I'm happy
13    for either Ms. Sweeney or for you, Mr. Gitlin, to address
14    this——what you're proposing is that instead of just finishing
15    up discovery on liability and damages and having a single jury
16    trial on that, you want to have liability discovery and then
17    have summary judgment practice just on liability, then have a
18    trial just on liability, where I can already see the future,
19    that there are going to be arguments about whether certain
20    evidence or argument would be admissible and relevant to just
21    liability or whether it would only go to causation and damages
22    and so it should be kind of put to the side.  I can already see
23    that happening.  And then if you prevail in that trial, putting
24    aside any potential appeal that the defendants would seek to
25    take, you would then have discovery on damages and equitable
```

P521LIVC

1    relief, and those two forms of relief are different in a lot of

2    material ways.  And then I take it that the defendants would at

3    least seek leave to move for summary judgment again, raising

4    the arguments that they've already raised, for instance, on the

5    motion to dismiss, and then we would have trial on damages and

6    equitable relief.  That seems like a lot of additional work

7    that you really wouldn't need if the second trial was just

8    focused on equitable relief and not damages.  So maybe you can

9    set me straight.  Why is that not right?  Why would it actually

10   be more efficient to bifurcate damages?

11        MR. GITLIN:  Adam Gitlin for the state plaintiffs,

12   your Honor.  And Ms. Sweeney may also have thoughts from the

13   Department of Justice.  But from our perspective, if you—of

14   course the parties are going to do all the liability-related

15   discovery now.  The issue is that there may be very limited

16   additional damages-related discovery that would have to happen,

17   and if we talk about—if we're thinking about the kinds of

18   discovery that's at issue with respect to equitable relief,

19   that's significantly broader, and I think we would be able to

20   do it relatively quickly.  However, if there's a liability

21   verdict in favor of defendants, then we avoid that altogether,

22   and in that sense, we save resources for everyone involved.

23        THE COURT:  All right.  All right.  So I'm going to

24   give the defendants a chance to chime in here, but Ms. Sweeney,

25   turning to the equitable piece, it was always my understanding

P521LIVC

1    that the equitable claims, if you prevail on liability, would

2    be tried to the bench.  I take it that the only real

3    modification or clarification that you're seeking is that

4    discovery, to the extent you need discovery, that would be

5    solely relevant to the equitable relief you might seek, there

6    would be a period of time after the trial that's scheduled for

7    March of next year to conduct that discovery.  Is that fair?

8         MS. SWEENEY:  That's right, your Honor.  We think

9    there would be enormous efficiencies in separating out the

10   equitable phase of the trial from the liability phase, and it's

11   really coming upon us fairly quickly with regard to experts

12   because our initial report is due July 28, and while our

13   experts could opine on the various alternative permutations of

14   remedies that would be appropriate in the event we won on some

15   or all of the claims, it would be a lot more efficient if the

16   expert is rendering that opinion when we have knowledge of

17   which claims are at play at the remedies phase of the case.  So

18   we think it would be very beneficial.  And certainly this is

19   the way that other courts have treated these kinds of complex

20   monopolization trials in very recent history, and in *U.S. v.*

21   *Google*, what we call the search case, which was in the District

22   of Columbia, the court bifurcated liability from the remedies

23   phase.  In fact, the remedies trial is going on right now.  And

24   also in the other case against Google, *U.S. v. Google*

25   concerning ad tech, which is pending in the Eastern District of

P521LIVC

```
 1    Virginia.  Although there was an issue, a jury trial demand, as
 2    Mr. Pfeiffer pointed out, Google made a payment that mooted
 3    that demand.  That case then was tried to the bench.  And from
 4    the beginning, the liability phase was separated from the
 5    equitable remedies phase.  So right now, the parties——and the
 6    court has entered an order for a separate remedies trial to
 7    take place several months after the conclusion of the liability
 8    trial.  So——
 9              THE COURT:  Okay.  So I'll hear from the defendants,
10    but I'm on board with that proposal, but what do you mean by
11    several months?
12              MS. SWEENEY:  Well, in that case, the trial, the
13    liabilities trial resulted in a ruling in favor of the
14    plaintiffs in April, and the trial is scheduled for September.
15    Now I'm not saying we would need that much time, your Honor,
16    and it's something that we would be happy to discuss either
17    ahead of time or after we were to receive the ruling or verdict
18    on liability.  But that's just an example.
19              THE COURT:  So let's assume that we try this case in
20    March, assuming you overcome summary judgment and everything
21    else; we have the trial in March, and let's say in April, we're
22    done, we get a verdict that's in your favor.  Your proposal, in
23    general terms, would be to then have the second trial happen in
24    something like September; is that fair?
25              MS. SWEENEY:  Something like that, your Honor.  We
```

P521LIVC

1    would expect we would want to exchange additional expert

2    reports on appropriate remedies and then have expert discovery.

3    It's possible that could be a limited amount of additional fact

4    discovery that would be helpful to the Court and to the

5    parties, which would require a little more time, and in the

6    case of *Google* search, I think that the Court gave the parties

7    60 days for fact discovery, to be followed by expert reports

8    and expert discovery and then the trial.

9            THE COURT:  All right.

10           MS. SWEENEY:  I think I meant *Google* ad tech.

11           THE COURT:  Okay.  That's fine.

12           Again, I'll hear from the defendants; they may tell me

13   that all of this makes no sense.  But based on what you're

14   telling me, I'm generally okay with that time frame that you're

15   laying out.  The only real logistical issue within the chambers

16   is that our staff turns over every year, as you know, and so

17   you'll just have different staffing on these two cases, which

18   I'd like to avoid because it's always helpful when everyone

19   who's been involved in the first trial is there for the second

20   one, but that's a concern for the Court that we will deal with.

21   But generally speaking, I'm on board with that.  But now either

22   Mr. Pfeiffer or Mr. Marriott may tell me that none of what you

23   said should be followed and you're wrong about everything.

24           So from the defendants' side, who's going to handle

25   this?

P521LIVC

1          MR. PFEIFFER:  Your Honor, this is Al Pfeiffer.  I'll

2    be speaking to that topic, but not quite framed that way.

3          THE COURT:  Okay.

4          MR. PFEIFFER:  So I do want to set one thing straight,

5    though.  The sort of——I think the plaintiff's brief and also a

6    bit of the argument today is framed almost from the posture

7    that we, defendants, are making some kind of a motion, or it

8    was framed earlier that we had demanded a jury trial on

9    damages.  We've been responding to their positions on this

10   throughout, so we haven't demanded a jury trial.  What we said

11   is they have waived their right to a jury trial on the

12   determination of damages, and we said that because that's what

13   they said, and said it in writing.  So it's not a position of

14   us demanding something; it's, again, reacting to what they're

15   doing here.

16          Let me kind of start with first principles, your

17   Honor, I guess.  Our antennae went up to begin with about all

18   of this because it's highly unusual, what we're seeing here;

19   not just the unusual circumstances of the states saying that

20   they will waive their right to a determination of damages by a

21   jury, which, again, is at least a big component of what creates

22   the right, but also that DOJ is using that opportunity to then

23   say that it therefore, more or less by the osmosis of

24   association, gets a right to a jury, which is unprecedented.

25   And states and DOJ have done cases together for longer than

P521LIVC

1    I've been practicing, which at this point is quite a while.

2    And I asked them, Have you ever done this before?  Couldn't

3    come up with anything.  This is really a first time where

4    they're trying to use this mechanism to get a jury trial.  That

5    just raises, you know, suspicions.

6           But ultimately it comes down to——the determination of

7    bifurcation, as your Honor is focused on, I think comes down to

8    efficiency and fairness, according to the rules.  And the way

9    they've structured the original proposal, at least, we don't

10   think it meets those criteria.  I will say at the outset, I do

11   think that one can separate out equitable remedies, and I think

12   that's very different than trying to bifurcate damages.  And

13   the biggest problem I think is one your Honor also alluded to,

14   which is the question of——it traces back to the question of do

15   the states have any claims here that they have proper standing

16   to assert that would give them a right to a jury.  Your Honor

17   had addressed that in ruling on our motion to dismiss and

18   specifically said, this is something we should be addressing at

19   summary judgment.  So my assumption is, we'd be seeing, as part

20   of the liability case——which means as part of the expert report

21   process and as part of the summary judgment motions, and if it

22   goes further than that, on from there——the states asserting the

23   basis for which they, you know, can actually claim damages in

24   that primary ticketing market that your Honor observed in the

25   motion to dismiss is the basis for their claims.  We don't

P521LIVC

1  think they can.  And we certainly look forward to that, but

2  what we don't want to do is see a situation where they somehow

3  get a free pass on laying out their theory of damages, because

4  it's not just damages.  In this case, their theory of damages,

5  their proof of damages, is a fundamental part of their

6  liability case, and might moot all of this question about who

7  gets a jury right or not.  So we don't agree from either——

8      THE COURT:  Wait.  Mr. Pfeiffer, can you just pause

9  for a second and can you just maybe run it back again.  Why is

10  the damages issue also relevant to the liability phase?  Maybe

11  you can just expand on that.

12      MR. PFEIFFER:  Absolutely, your Honor.

13      So they're proceeding, the states are proceeding *in*

14  *parens patriae*, on behalf of their citizens.  The theory under

15  which they are proceeding is that there has been harm to

16  competition in the primary ticketing market that has harmed

17  their citizens.  The way that works is through an overcharge.

18  It basically has to be.  And in any other setting, you'd see

19  this would be a class action, I guess, and the putative class

20  would have to be presenting proof, you know, before liability

21  is determined, as part of their liability case, proof that

22  their plaintiffs, their class members, their citizens here,

23  have actually suffered the type of harm that they say they've

24  suffered.  That's going to be something we would expect would

25  be a large focal point of the states' expert reports.  If they

P521LIVC

1    don't come forward with a compelling way to do that, if, for

2    example, it's subject to a *Daubert* challenge or if it simply

3    doesn't pass muster on summary judgment, then they have no

4    case, they have no basis by which to prove harm to competition,

5    and they lose.  They may also prove it in such a way that it's

6    so convoluted that it demonstrates our point, your Honor, which

7    we asserted earlier and you deferred to later in the case, as

8    to whether they are efficient enforcers of the type of claims

9    they're doing, however they proceed with that.  And we

10    obviously don't know the answer to this, which is why we

11    couldn't even contemplate whether we could pay off their

12    damages because we don't even know what their theory is, much

13    less what their number is, but they need to proceed and give

14    that information before the Court decides whether anybody has a

15    right to a jury, and in fact, whether they have a right to

16    proceed on those claims at all.

17            THE COURT:  All right.  Understood.

18            So Ms. Sweeney, or Mr. Gitlin, if you want to respond

19    to what Mr. Pfeiffer just said?

20            MR. GITLIN:  Your Honor, Adam Gitlin for the state

21    plaintiffs.  I think most of that was directed at state

22    plaintiffs so I'll start, and if Ms. Sweeney has anything to

23    add, I'm sure she will.

24            So first, we don't agree that we have waived anything.

25    We've made very clear that to the extent in discussions about

P521LIVC

1    what would be your optimal trial structure in this case, having

2    those conversations with defendants, that any of our——that any

3    agreement to elect to only exercise our jury trial right for

4    the liability phase was conditional, was based on the

5    conversations we were having.  And we make that clear in our

6    brief at page 14.  We make clear that for purposes of seeking

7    bifurcation and partially withdraw our demand for a jury trial

8    on monetary remedies.  Of course, if the Court declines to

9    adopt the structure we've proposed, we otherwise preserve our

10    jury trial right, and if that means it's a jury trial on

11    liability and damages all at once, that's fine.

12        I would note, in response to a comment the Court made

13    earlier before we changed subjects, I don't think if we were

14    talking about the bifurcation that plaintiffs proposed, we

15    would not expect to have material damages-related discovery

16    after a liability trial since damages are backwards looking.  I

17    think we would do any discovery we needed for damages on the

18    current schedule, and then, you know, there would be expert

19    testimony in whatever damages phase.

20        But to go back to Mr. Pfeiffer's point, I think the

21    second one was that essentially states lack standing and

22    therefore we don't——we haven't established we have a jury trial

23    right at all.  So first of all, as we've argued in our brief,

24    the civil penalties claims don't turn on whether or not the

25    states lack standing to press damages claims.  Those get a jury

P521LIVC

| | |
|---|---|
| 1 | trial either way.  And if the point is that we're supposed to |
| 2 | defer this decision on whether or not we have a jury trial |
| 3 | right until summary judgment for the Court to determine the |
| 4 | scope of that right, then we submit that the Court should adopt |
| 5 | the trial structure we've proposed for the jury trial on |
| 6 | liability and then, if the Court grants summary judgment on |
| 7 | plaintiff's federal and state damages claims, then the parties |
| 8 | just won't present damages-related proof at trial on liability. |
| 9 | But in terms of the civil penalties, the jury trial right only |
| 10 | goes away if the Court grants summary judgment as to liability |
| 11 | on all claims. |
| 12 | THE COURT:  Okay.  Understood.  And as to the |
| 13 | antitrust standing issues, under your proposal, those would be |
| 14 | taken up in Phase II, when we address damages; is that right? |
| 15 | Or would you address that in the efficient enforcer factors in |
| 16 | this phase of the case? |
| 17 | MR. GITLIN:  I think the way it would work as a matter |
| 18 | of practice, your Honor, is that—this isn't quite the same as |
| 19 | a class case, but I think certainly the quantum of damages |
| 20 | would happen in that later phase.  I think, you know, what's |
| 21 | sometimes referred to in the class context as antitrust impact |
| 22 | would be certainly something where the proof would—a lot of |
| 23 | the underlying facts would be presented at the liability trial. |
| 24 | I think, you know, there's some overlapping evidence, |
| 25 | obviously, there. |

P521LIVC

```
1              THE COURT:  All right.  And Ms. Sweeney, anything from
2     your end?
3              MS. SWEENEY:  Yes.  I would just like to respond to
4     Mr. Pfeiffer's comment that the United States does not have a
5     jury trial right and says we get there by virtue of osmosis of
6     association, and Mr. Pfeiffer is of course ignoring
7     well-settled law, including the United State Supreme Court's
8     decision in Beacon Theatres v. Westover, the Second Circuit's
9     decision in Wade v. Orange County Sheriff's Office.  And I hear
10    Mr. Pfeiffer addressing at length issues pertaining to summary
11    judgment.  Well, when we first made our proposal to the
12    defendants, we talked about bifurcation without addressing all
13    of these issues which may be resolved by summary judgment, and
14    so I don't understand why Mr. Pfeiffer concludes that this
15    initial determination as to whether to bifurcate between
16    liability and the remedies phase has to be considered together.
17    So we would suggest, your Honor, that if your Honor is inclined
18    to think that summary judgment has to occur before this
19    decision can be made whether there's a jury trial right, that
20    doesn't mean that the Court can't nonetheless bifurcate between
21    liability and remedies.
22             THE COURT:  All right.  Thank you.
23             So the motion to bifurcate trial will be granted in
24    part and denied in part.  It will be granted as to the
25    equitable remedies.  It appears that there's no disagreement
```

P521LIVC

1    between the parties that that portion of the case can be

2    addressed at a second trial to the bench.  And the Court is of

3    the view that that would foster fairness and efficiency.  And

4    so for those reasons, that portion of the motion is granted.

5            The portion of the motion relating to damages is

6    denied.  For the reasons that Mr. Pfeiffer articulated and as

7    in the course of this colloquy we've addressed, the Court is

8    not of the view that bifurcating damages from liability would

9    foster either fairness or efficiency and so that will be part

10   of the initial trial that as of the current time would be to a

11   jury in March of 2026.

12           As to the schedule, just in case this wasn't clear, to

13   the extent that the parties can meet and confer and there are

14   adjustments to some of the interim deadlines that would not

15   affect the actual trial date and that affords the Court enough

16   time to address the defendants' summary judgment motions, which

17   I have heard that they plan to make, I am fine with the parties

18   proposing some adjustments, for instance, to the expert report

19   deadlines, Ms. Sweeney, so that is to say that if you can talk

20   to the other side and there's a proposal that would work, I'm

21   open to moving some of those interim deadlines around.  If

22   there's a dispute, I'll take it up, and I'll take a look and

23   see if there's something that we can do to make things a little

24   easier for the parties while holding our trial date.  Does that

25   make sense?

P521LIVC

1          MS. SWEENEY:  Yes, your Honor.

2          THE COURT:  All right.

3          MR. PFEIFFER:  This is Al Pfeiffer.  That makes sense

4    to us too, your Honor.

5          THE COURT:  Okay.  Good.  So we'll put in an order

6    reflecting the resolution of this motion.

7          And before we leave, Ms. Sweeney, any other issues

8    that you'd like to address or put on the Court's radar or

9    anything we can help with here?

10         MS. SWEENEY:  Your Honor, we do have something to put

11   on the Court's radar, and that is that due in part to the

12   supplemental initial disclosures we received last week from the

13   defendants, which included 102 new individuals and entities

14   with knowledge, we're about to file a letter motion requesting

15   an additional number of hours for fact depositions.  And in

16   addition——and this pertains to the point your Honor already

17   made, which is whether we can extend the taking of those fact

18   depositions through the end of July, so it wouldn't affect the

19   other schedule, the other dates, deadlines in the schedule, but

20   I just want to point out that, just briefly, that the

21   defendants' initial disclosures are in sharp contrast to their

22   initial disclosures made a year ago, when they only disclosed

23   13 nonparty entities and 0 nonparty individuals, and now we

24   have a very long list of individuals and entities in the live

25   entertainment business that we have to investigate and

P521LIVC

1    potentially depose.  So that's why, even though we have been

2    very careful in taking short depositions and allocating our

3    time, deposition by deposition, we're going to need additional

4    hours, and we're asking for 100 additional hours of deposition

5    time.

6            THE COURT:  Okay.  I'll take a look at that

7    application when I receive it.

8            MS. SWEENEY:  Thank you, your Honor.

9            THE COURT:  Mr. Gitlin, anything else on your end?

10           MR. GITLIN:  Nothing further, your Honor.

11           THE COURT:  All right.  Mr. Pfeiffer, anything for the

12   good of the order?

13           MR. PFEIFFER:  Nothing here, your Honor.  Thank you.

14           THE COURT:  All right.  Mr. Marriott, anything on your

15   end?

16           MR. MARRIOTT:  Nothing here, your Honor.  Thank you.

17           THE COURT:  Okay.  And just one additional point.  And

18   this isn't urgent; it doesn't need to be done immediately.  But

19   if the parties can meet and confer on a schedule for the

20   equitable phase of the case, if the plaintiffs prevail, what

21   would the parties propose as a schedule and a trial date on the

22   equitable remedies phase of the case and trial, that would be

23   helpful to the Court.  Try to get it in in the next couple of

24   weeks, just so we can have a complete schedule here.

25           With that, thank you very much to both sides.  Have a

P521LIVC

1    great weekend.  And we are adjourned.

2             ALL COUNSEL:  Thank you, your Honor.

3                          o0o