```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA, et
    al.,
 4
                  Plaintiffs,
 5
                v.                          24 CV 3973 (AS)
 6
    LIVE NATION ENTERTAINMENT,
 7  INC., et al.,

 8             Defendants.            Conference
                                      (via Microsoft Teams)
 9  ------------------------------x
                                      New York, N.Y.
10                                    May 9, 2025
                                      3:00 p.m.
11
    Before:
12
                      HON. ARUN SUBRAMANIAN,
13
                                           District Judge
14

15                       APPEARANCES

16  U.S. DEPARTMENT OF JUSTICE
    ANTITRUST DIVISION
17       Attorneys for Plaintiff United States
    BY:  BONNY E. SWEENEY
18       JOHN THORNBURGH

19  CRAVATH SWAINE & MOORE LLP
         Attorneys for Defendants
20  BY:  DAVID R. MARRIOTT

21

22

23

24

25
```

```
 1              THE COURT:  Good afternoon.  We are here for a
 2   conference in 24 CV 3973.  Can I get appearances from the
 3   attorneys who will be speaking on this call.
 4              MS. SWEENEY:  Good afternoon, your Honor, this is
 5   Bonnie Sweeney.  Mr. Thornburgh is going to be handling the
 6   motion today.
 7              THE COURT:  OK.  Great.
 8              MR. THORNBURGH:  This is Mr. Thornburgh, your Honor.
 9   Good afternoon.
10              THE COURT:  Good afternoon.
11              For the defendants.
12              MR. MARRIOTT:  Good afternoon, your Honor, David
13   Marriott for defendants.
14              THE COURT:  Good afternoon.
15              Mr. Marriott, let me just make sure I understand what
16   the defendants are saying.
17              So if the individuals on your supplemental disclosure
18   who were not on the initial disclosure appear on your trial
19   witness list, if the case gets to trial, then you're saying the
20   plaintiffs get to depose those people.  Is that right?
21              MR. MARRIOTT:  If they have not been deposed, your
22   Honor, that's the parties' agreement, yes.
23              THE COURT:  Those depositions would not be subject to
24   the 300-hour limit.
25              MR. MARRIOTT:  Well, I suppose that's right.  The
```

1   parties haven't really -- that's an ambiguity, I suppose, in

2   the drafting of things and one we have not discussed, but I

3   think it's probably fair to say, with the Court's permission,

4   we would need to exceed that limit on the assumption that

5   people are going to use the time that they have presently been

6   given.

7            THE COURT:  Right.

8            For summary judgment purposes you are not going to be

9   relying on any affirmations from these individuals, right?

10           MR. MARRIOTT:  Well, I think it would be kind of

11  subject to the same thing, your Honor.  We haven't mapped out a

12  summary judgment motion in its detail, and I don't know

13  precisely what we would be using in support of that motion.

14  But I don't have any hesitation in saying, to the extent we

15  were to do that, we would have every expectation that

16  plaintiffs would have an opportunity to depose those people.

17           THE COURT:  For summary judgment.

18           MR. MARRIOTT:  Yes, your Honor.

19           If they hadn't been deposed -- if they hadn't been

20  deposed before they had to respond, if we relied upon them, we

21  would expect that the Court would allow them, and we would not

22  oppose them having those depositions.

23           THE COURT:  In that case we can't actually have you

24  put in a motion for summary judgment and then, while the

25  plaintiffs are crafting their response, be in the position of

1  having to depose witnesses.  Don't you think that's going to be

2  a little hard to do?

3       MR. MARRIOTT:  Well, I suppose it might be a little

4  bit hard, your Honor, but we are doing a lot harder things than

5  that at present, given all the things that are going on.

6       That said, that isn't specifically contemplated.  I

7  don't, as I sit here, have reason to think we are going to be

8  relying and seeking summary judgment on the people whose

9  depositions we are, I think, talking about, which are the

10 depositions of some venues and depositions of probably,

11 presumably, some artists.

12      It would just depend, I suppose, what we did, your

13 Honor, but I don't imagine we would be relying upon much in

14 that regard, and I don't imagine there would be much of a

15 burden associated with doing it upon receiving the motion.  If

16 there were, we would be undoubtedly open to some adjustment in

17 the response time so that the defendants weren't jammed up.

18      THE COURT:  But if you agree to an adjustment of the

19 response time, then you are going to take time away from me

20 deciding the motions consistent with our current schedule.

21      MR. MARRIOTT:  I suppose that's true.  That's not the

22 intent of suggesting that, your Honor.

23      THE COURT:  I know.  I can take the heat too.  I can

24 work weekends and nights.  I'm used to it.

25      That's helpful.

1           Mr. Thornburgh, what Mr. Marriott is saying is, there

2   is not really any issue because they are not planning on

3   actually relying on any affirmations of these people for

4   summary judgment.  If they do, then you can depose them in that

5   period, and then for trial purposes the parties' deposition

6   protocol already allows you to take those depositions not

7   subject to the 300-hour limit.

8           So if all of that is true, then what is the basis for

9   the 100 extra hours, given that the primary argument is this

10  late supplement of the initial disclosures?

11          MR. THORNBURGH:  Your Honor, two points there.

12          First of all, consistent with your Honor's pretrial

13  practices, the witness list would not be exchanged until

14  January 30 of next year, and trial or jury selection is slated

15  to start March 2.

16          What potentially could happen is defendants add a

17  bunch of individuals to their witness lists on January 30, and

18  we are stuck not only trying to prepare for trial but also to

19  schedule and plan depositions between January 30 and March 2.

20  The same is true for summary judgment.  If defendants disclose

21  these individuals while we are going through summary judgment,

22  plaintiffs are now forced to work on summary judgment motions

23  and our response to summary judgment while at the same time

24  proceeding to take depositions.  In that sense, it seems really

25  to sandbag us in an unfair way.

```
 1              My second point, your Honor, the purpose of that
 2   provision that we are talking about in the deposition protocol
 3   was to allow for depositions to take place of people that
 4   either side identifies maybe during the expert discovery
 5   process or after the end of fact discovery that they want to
 6   add to their trial witness list.  It was not intended to allow
 7   one side two months before the end of fact discovery to
 8   identify for the first time 100 individuals -- over 100
 9   individuals that defendants are now saying they may rely on to
10   support their defenses.  I think it fundamentally is
11   inconsistent with the basis of that provision when we were
12   discussing it with defendants.
13              THE COURT:  How much of the 300-hour limit have you
14   used to date?
15              MR. THORNBURGH:  There was a deposition today, your
16   Honor, so I don't have the exact up-to-date number, but it's
17   approximately 65 and a half hours.
18              THE COURT:  So you're taking a lot of depositions over
19   the next two months.
20              MR. THORNBURGH:  That's correct, your Honor.
21              I'll just add that we have been working with
22   defendants in good faith to schedule those, but in some
23   instances, particularly -- some of them are nonparties, and
24   they have had limited availability because of, say, a sports
25   season, or something like that.  But we have also had, in some
```

1    cases, difficulty scheduling defendants' employees for

2    depositions, and there has been a handful of instances where we

3    have had to push out a deposition to be scheduled for three or

4    four weeks.  Certainly now we have a number of depositions to

5    take in the next six to seven weeks, as you just indicated.

6         THE COURT:  What's your response to the defendants'

7    observation, I suppose, that the reason for this logjam and the

8    need for an extension isn't really anything about these

9    disclosures but rather the unformed nature of the plaintiffs'

10   case, meaning that rather than targeting particular claims and

11   allegations and focusing on those, the plaintiffs have too many

12   claims, too many theories, and are looking for too many kind of

13   piles of documents, such that they just have a lot of stuff but

14   not really a coherent theory of the case.

15        And what's your response to that, given that we are

16   getting close to the end of the road in fact discovery, moving

17   to expert discovery, where the defendants are saying, look, the

18   plaintiffs really need to sharpen things up if they want to

19   kind of move this case on the current schedule, overcome

20   summary judgment, etc.?

21        MR. THORNBURGH:  Well, the first thing I would say,

22   your Honor, is, the claims that plaintiffs have brought are

23   indicative of the wide-ranging anticompetitive conduct that we

24   think defendants have been engaged in across the industry.

25   It's not simply that we are not focused.  There is a lot of

1   conduct for us to address.

2          Second, we are not going out and deposing random

3   venues or random third parties.  It is more a reflection of the

4   fact, as indicated in our letter motion that, for example, at a

5   venue there are individuals, often a single individual, maybe a

6   few, that work on the ticketing side of things, and then there

7   are separate individuals, distinct individuals, who work on the

8   concert or promotion side of the house.  While sometimes they

9   overlap, oftentimes they do not.  So what that necessitates,

10  based on the claims we have brought, is to get deposition

11  testimony from both of those individuals, somebody working on

12  ticketing and somebody working on concerts and promotions.

13         It's not that plaintiffs' claims or case is not

14  focused, your Honor.  It's that there is lots of relevant

15  information, lots of relevant testimony to get, and we are

16  endeavoring to do that in the most efficient way possible, and

17  I think we have done to that date, but there is additional,

18  certainly, relevant information that we think we would like to

19  get before discovery closes.

20         THE COURT:  Also, with the 300-hour limit, here is

21  where you have to remind me where we left things with the case

22  management plan.  Both sides have 300 hours, is that right?

23         MR. THORNBURGH:  That's correct, your Honor.

24         THE COURT:  If I were to extend your time to 400

25  hours, you would have no objection to my also extending the

1    defendants' time to 400 hours, right, which will obviously be

2    taxing for the plaintiffs as they proceed with their case.

3            MR. THORNBURGH:  Of course not, your Honor.

4            THE COURT:  Mr. Marriott, you can respond to any or

5    all of that.

6            MR. MARRIOTT:  Thank you, your Honor.

7            With respect to the suggestion of sandbagging, I

8    respectfully don't think that's in any way what's going on

9    here.  While it is true that there are a number of additional

10   people added in the supplemental disclosures, a lot of that, I

11   think, rather than being characterized as a data dump, which is

12   the way it has been characterized, is an information dump or

13   some sort of tactic.  It's as much as anything as a

14   housekeeping exercise bringing those disclosures into

15   conformity with what it is that the parties have learned in the

16   case.

17           And the parties contemplated this sort of April 25

18   deadline with the very idea that there would be disclosures of

19   a number of additional people on both sides, and that's

20   precisely what we got from the plaintiffs.  We got 80 or so

21   nonparties from the plaintiffs, and these are people, by the

22   way, your Honor, that we put on the list that are, for the most

23   part, if not almost entirely, people who would be in no way a

24   surprise.  Either they were already disclosed by the

25   plaintiffs, they were included in the plaintiffs' initial or

supplemental disclosures or, certainly in the cases of the

artists and the venues, kind of implicated by the means by

which the government has defined the case.

        We do believe that the challenge for us has been not

understanding with any level of precision precisely what it is

the government contends here.  To be sure, they have got a

number of causes of action in the complaint, but we have been

pursuing, by way of interrogatory, from the early stages of

this case more refinement and explication of precisely what it

is they have been saying so we can understand what we need to

do to respond to those allegations.  Our case is largely a

responsive case.  We need to hear what it is they have got to

say, and then we need to respond to it.

        While it is true that in the plaintiffs' initial

disclosures they identified a bunch of people, the descriptions

were often, here is an entity with all employees associated

with it, without that kind of refinement.  As discovery has

progressed, as we have taken depositions, because we still

don't have what we believe are sufficient appropriate responses

to our interrogatories, we have had to infer from questions

asked at depositions and from other means what it is we think

they are after, and that's what gets you the number of

witnesses that are on the list.

        **Again, no effort here to sort of like sandbag and have**

**plaintiffs not figuring out who we intend to call late in the**

1    **day.  If the deadline for the disclosure of trial witnesses**

2    **isn't until sometime next year, we can certainly make an effort**

3    **as to these people we are talking about who have not been**

4    **deposed to flag those people earlier rather than later so they**

5    **don't become a problem; again, to the extent there are, when**

6    **all said and done, such people.**

7            The same thing could be done with respect to summary

8    judgment.  We can make an effort to the extent we are -- we

9    think we are going to rely upon any of those folks in

10   connection with summary judgment motions to do that, not just

11   in the motion but to do that somewhat in advance of that.  We

12   can make an effort to do that.

13           The additional time, your Honor, we think,

14   respectfully, and the initial hours are going to be prejudicial

15   to defendants.  The parties have already undertaken a massive

16   amount of discovery.  We don't believe there credibly could

17   really be any surprise here on the part the plaintiffs.  While

18   I'm not questioning that they have been working hard, they have

19   also been working in this by way of investigation for many

20   years.

21           There is a five-year period post the amended consent.

22   There is an investigation that was done.  There were IHs that

23   were taken.  We have produced literally millions of documents,

24   put aside how many numbers of pages of paper it is.

25           And the people that we are now identifying are the

1    natural, logical extension of the plaintiffs' own class

2    proposed definition, that there are artists that they say are

3    implicated because of the way they define the market, and there

4    are the venues.  We really don't think there is any surprise in

5    this at all.

6         And extending the time, while it's true, your Honor,

7    can give us 100 and give them 100 too, that's a compounding

8    prejudicial problem, in our view, on our side because, for the

9    most part, in fact if not entirely, the plaintiffs don't have

10   individuals who they have to, for every deposition of them,

11   because there are no depositions of them, prepare and defend.

12        If we are both taking more to balance out the

13   availability of depositions that can be used affirmatively and

14   defending the depositions that they are going to take of us,

15   it's a lot to do in the time that's left.

16        As has been pointed out, your Honor, we are about two

17   months out.  There are 66 noticed depositions.  Only 20

18   depositions have been taken.  There are 66 noticed depositions

19   to be done in, so far as I can tell, less than 66 days, so it

20   is going to be a busy time as it is.  And compounding that by

21   adding a bunch of depositions at the end, in a world in which

22   we feel like we are already being required to figure out what

23   their case is about indirectly, as opposed to through answers

24   to interrogatories, we think results in a prejudice to the

25   defense.

1          We ask your Honor, respectfully, to deny the requests.

2          THE COURT:  Mr. Marriott, I don't know if you have the

3    case management plan in front of you, but can you remind me

4    when summary judgment briefing will be complete.

5          MR. MARRIOTT:  Your Honor, I don't have the actual

6    schedule, but I have the date.  We make our summary judgment

7    motion on November 10.  If there is a full schedule, your

8    Honor, I don't have that handy.  I just know the motion goes in

9    on November 10.

10         MR. THORNBURGH:  Your Honor, I can tell you that the

11   plaintiffs' response would be due December 8 and the reply

12   would be due December 22.

13         THE COURT:  Thank you.  I am just thinking.

14         Let me take a step back.  As to the requested

15   extension, that's fine.  I'll grant the requested extension of

16   the fact deposition schedule because, as Mr. Marriott points

17   out, you have 60 some odd depositions that need to take place.

18   There is going to be scheduling issues, especially during the

19   summer months, and I think it makes sense to extend the

20   schedule, given that the requested extension is not very long.

21   I will grant that request.

22         As to the request for additional deposition time, I

23   will give the defendants the choice.  The choice is this.

24   Either you can agree right now that you will not use on summary

25   judgment any affirmation or affidavit of any of these newly

1    added people, or you can say, because we want to leave the

2    option open to rely on such materials, we will give the

3    plaintiffs their additional 100 hours that they have requested.

4    So I'll leave that up to the defendants to decide in the

5    next -- say by the end of next week how they wish to proceed in

6    that way.

7         To address Mr. Thornburgh's concern about the witness

8    lists coming in in some kind of sandbagging, I am going to put

9    a pin in that for the moment, but I think that issue can be

10   addressed either by making sure that the witness list is

11   essentially a will-call list, meaning that things happen.  But

12   aside from just things happening, the witnesses identified on

13   that list should be people that the party actually intends to

14   call.  That will go for both sides.  And I think it will be

15   helpful for everyone for other reasons.  But it will also

16   prevent the kind of sandbagging that Mr. Thornburgh is

17   referring to.  That's one option.

18        The other option would be to have an interim list that

19   is provided by the defendants of individuals who they, in good

20   faith, seriously are considering calling at trial, and they can

21   make an earlier disclosure of that to the plaintiffs so that

22   they can take any depositions that they need to during the

23   months before trial.

24        And we have all done this.  We have all taken trial

25   depositions.  Things happen at the last minute.  I gather that

 1    some of you probably did this during COVID because some of

 2    these issues would sometimes pop up.

 3          I don't know that it's going to be as big an issue,

 4    based on the number of people, for the reasons that Mr.

 5    Marriott is indicating.

 6          That's what I am going to do.

 7          But, as always, let me hear from Mr. Thornburgh and

 8    then Mr. Marriott as to any requested adjustments to that

 9    decision.

10          MR. THORNBURGH:  Yes, your Honor.  I certainly

11    understand where you're coming out on this.

12          I just want to react to one thing Mr. Marriott said

13    that I think is relevant, which is that Mr. Marriott suggested

14    or indicated that many of these individuals were individuals

15    that defendants had identified through the discovery process as

16    having relevant information that it needs to rely on in their

17    defenses.

18          As we indicated in our letter, many of these

19    individuals that defendants added are clients or customers of

20    defendants, and they have not been -- over a hundred have not

21    been subject to discovery thus far in the litigation.

22          In fact, I can tell you that we just started our

23    outreach to these individuals the defendants added.  At least

24    in one case we were informed that defendants had not been in

25    touch with this nonparty individual at all thus far in

1  discovery.

2          It's not clear to me that defendants really in many

3  cases found out about these individuals during discovery.  It

4  seems like in many cases these were individuals defendants knew

5  of certainly last July, when they gave us their initial

6  disclosures that had only 13 entities on there and no

7  individuals.

8          And so I certainly understand the choice that you have

9  provided to defendants, but I would just add, your Honor, that

10 there are -- certainly at least in some cases these are

11 individuals that defendants have known about for a long time

12 and disclosing them now, without plaintiffs having the

13 opportunity to take discovery, is prejudicial to us.

14         THE COURT:  You can take discovery of those people,

15 and the purpose of the rule is to make sure that you know who

16 the other side is going to actually use at trial because, in

17 fairness, you should be able to depose and take discovery of

18 those people.

19         So that's why, as a condition of not giving you these

20 additional 100 hours of deposition time, I am requiring the

21 defendants to make the choice not to rely on these people for

22 summary judgment purposes, and when we get a little farther

23 along, they will also have to give either an earlier or a more

24 definitive indication that they are relying on these people for

25 trial so that they can take depositions of those people.  But

1    that's all we are talking about right now because I don't think

2    that the defendants are suggesting that you are inhibited in

3    any way from taking discovery of these people.

4          Now, if you have a separate issue that the defendants

5    played games and did not properly identify these people in

6    response to other discovery demands and didn't identify them as

7    custodians, etc., this is certainly an issue that you can raise

8    to the Court, but that is not the issue that has been raised on

9    the current motion to compel.

10          Does that make sense?

11          MR. THORNBURGH:  It does, your Honor.  Thank you.

12          THE COURT:  Mr. Marriott, anything further to add?

13          MR. MARRIOTT:  Your Honor, yes, please.  One, I guess,

14    observation and then a request for clarification.

15          As the observation, to be clear, we are not saying we

16    didn't know of the existence of these people.  One of them, for

17    example, is Taylor Swift.  Everybody knows of Taylor Swift and

18    many of the other artists that are there.

19          What we are saying is that, in view of the allegations

20    made that were not properly articulated in response to

21    interrogatories, but that as we have inferred what it is that

22    plaintiffs are saying, we think there are people that we may, I

23    underscore may, need to rely upon.

24          It's not that we didn't know of the existence of the

25    individuals.  I think largely the world knows of the existence

1    of most of these people and venues.

2         That's the statement, your Honor.  The observation is,

3    just so I make sure I understand it, as to the choice that your

4    Honor has given us, and we appreciate the choice, as to the

5    100, I assume that 100 would go both ways so that we would both

6    get 100, and we would have to -- and plaintiffs would get 100,

7    but I wanted to make sure I understood that correctly.

8         THE COURT:  Yes.  You have Mr. Thornburgh's agreement

9    on that.

10        MR. MARRIOTT:  Thank you.

11        The other one was just, what I thought we were talking

12   about with respect to the 100 is what would be 100 depositions

13   of third parties, but I want to make sure that it's third

14   parties and it is not both third parties and Live Nation and/or

15   Ticketmaster.  If there is any clarity on whether the 100 are

16   limited to third parties or could also be used for Live Nation

17   Ticketmaster, it would be useful to understand that.

18        THE COURT:  Let me ask Mr. Thornburgh.  Who are these

19   additional people, and do you have a view on what Mr. Marriott

20   just said?

21        MR. THORNBURGH:  Your Honor, I would just point out

22   that once you add 100 hours to the bucket of hours, so to

23   speak, I am not quite sure how Mr. Marriott is intending those

24   to be divvied up.  If the question is, the last 100 hours, how

25   would those be used?  Certainly I think plaintiffs would be

 1    amenable to only using those last 100 hours later in fact

 2    discovery for third parties.

 3         THE COURT:  Mr. Marriott, I think that's the

 4    clarification that you were looking for.

 5         MR. MARRIOTT:  It is, and I appreciate it.  Thank you.

 6         THE COURT:  Anything further, Mr. Thornburgh?

 7         MR. THORNBURGH:  No, your Honor.

 8         THE COURT:  Anything further, Mr. Marriott?

 9         MR. MARRIOTT:  No, your Honor.

10         For clarity, should we make the choice by letter to

11    the Court a week from today, so I make sure we have the

12    mechanics down of how you would like us to do this.

13         THE COURT:  If you make the choice and the parties are

14    in agreement, then you certainly don't need my approval.  But I

15    guess, just so the record is clear, maybe put in a letter and

16    say the parties have discussed, and we have agreed to provide

17    the additional 100 hours, and you can just put that in the

18    record.  If you need it, I'll so order it.

19         MR. MARRIOTT:  Understood.  Thank you, your Honor.

20         THE COURT:  Great.

21         The only thing that's left on my to-do list would be

22    the issue of the witness lists and how we might modify that

23    slightly to accommodate the plaintiffs' concerns.  That's

24    obviously not an issue that needs to be resolved right now.

25         But please, Mr. Thornburgh, don't let me forget.  OK?

1          MR. THORNBURGH:  We will not let you forget, your

2     Honor.

3          THE COURT:  Very good.  Everyone, have a great

4     weekend.  We are adjourned.

5          (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25