**VIA ECF**                                                                                                June 27, 2025

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

Re: *United States, et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-03973

Dear Judge Subramanian:

Non-party SeatGeek, Inc. ("SeatGeek"), through the undersigned counsel, submits this opposition to Defendants' letter-motion to compel ("Mot.") (ECF No. 586.) Defendants' motion is a belated attempt to rewrite their subpoena compliance agreement with SeatGeek, which Defendants delayed until after SeatGeek had fulfilled that agreement. During SeatGeek's six-month compliance negotiation with Defendants, Defendants never even mentioned text or Slack messages, and their claim that they simply assumed that some unspecified set of messages would be produced—without any discussion of volume, parameters, or methodology—is disingenuous and absurd. Defendants are simply abusing the discovery process to retaliate against SeatGeek for what Defendants perceive to be SeatGeek's role in Plaintiffs' decision to file this lawsuit.

SeatGeek objected to Defendants' 89-request subpoena on grounds, *inter alia,* of undue burden and disproportionality (particularly for a non-party), and, for many requests, relevance. (ECF No. 585-2.) SeatGeek added, however, that it was "willing to produce a subset of responsive, nonprivileged materials" after a "reasonable search," and to "meet and confer with Defendants with the intent of reaching agreement on the parameters of such a subset." (ECF No. 585-2 at 3.)[1] SeatGeek engaged in precisely such a process, beginning in October 2024, and reached agreement on a subset with Defendants in April 2025.[2]

The framework of that subset was set forth in Defendants' March 19, 2025 compliance proposal, prior to which SeatGeek had run requested hit reports on iterations of search terms proposed by Defendants against 12 custodians requested by Defendants. (Exh. 1.) Defendants' proposal was detailed and specific: SeatGeek would (i) run the narrowed search terms across the files it had collected (which it had repeatedly specified was limited to company custodial files) and (ii) produce certain documents as "go-gets," including refreshes of vast Excel files produced in response to the DOJ's CID. (*Id.* at 1.) Defendants added: "If the proposal looks OK to you, please

---

[1] SeatGeek did not object to the inclusion of text and chat messages in the subpoena's definition of "Communications," because it had no categorical objection to the inclusion of such documents. Had Defendants sought such materials in negotiating the subpoena response, SeatGeek would have factored that request into its response burden, and it would have negotiated accordingly.

[2] The prolonged negotiation, which is chronologized more fully in Exhibit 2, was largely due to Defendants' delays. For example, after SeatGeek provided the last of several items of information sought by Defendants regarding SeatGeek's organizational chart and employees on November 14, 2024, Defendants did not revert to SeatGeek with their promised custodian proposal until January 23, 2025—a delay of more than two months. (Exh. 3 at 30-33.)

commence production on that basis." (*Id.*) Defendants added they would be in touch separately regarding possible data requests, further evidencing the completeness of their proposal. (*Id.*) After negotiating minor modifications to the search terms and go-gets, SeatGeek agreed to the proposal and committed to begin productions on May 8, with an anticipated substantial completion date of May 19 for five "priority" custodians whose depositions had been scheduled beginning May 27.

There was no mention of text or Slack messages in Defendants' proposal, just as there had not been at any time during the negotiations—even though, as Defendants note (Mot. 3), SeatGeek had produced Slack communications in response to the CID. And it was clear that texts and Slack messages were not included in the collected documents against which SeatGeek had run the search terms. On April 23, SeatGeek sent Defendants a proposed TAR protocol (Exh. 4), adapted from Defendants' own publicly filed TAR protocol (ECF 472-2). Exhibit A to the protocol specified that "SeatGeek will run the Search Terms over the emails, attachments, and modern attachments where any custodian appears in the AllCustodians field." (Exh. 4 at 5.) The TAR protocol did not state that SeatGeek would search or review text or Slack messages.[3] Quite the contrary: In adapting Defendants' protocol, consistent with its prior discussions with Defendants, SeatGeek *deleted* the section of Defendants' protocol in which Defendants had agreed to "review texts and chats (without applying the Search Terms)" for certain of their custodians. (*Compare* ECF 472-2 at 3 *with* Exh. 4 at 5.) During a discussion the next day, Defendants noted that SeatGeek had used Defendants' own TAR protocol as a template, and they raised detailed questions about Exhibit A—including noting inapplicable language that SeatGeek had neglected to delete from Defendants' protocol. (*See* Exh. 3 at 5-6, noting "minor comments" on protocol, including "inadvertently included" language from Defendants' protocol.) But Defendants raised no objection to SeatGeek's statement that search terms were being run only over "emails, attachments, and modern attachments" or to the removal of the reference to text/chat review. On April 28, after their comments were resolved, Defendants "confirm[ed] we are in agreement regarding the TAR protocol." (Exh 3 at 3, Peles 4/28 email).

SeatGeek began rolling productions on May 8, as Defendants had requested. Defendants now state they "noted the absence of [texts and Slack messages] since SeatGeek's May 8, 2025 production." (Exh. 5 at 4.) Thus, when SeatGeek advised Defendants on May 19 (Exh. 6) that its production was substantially complete as to priority custodians (also as agreed), Defendants knew that SeatGeek was not producing text or Slack messages. Yet Defendants did not raise the issue with SeatGeek for nearly three weeks, during which time they received additional productions and *took two SeatGeek depositions* (May 27 and 28). On June 6, when Defendants emailed SeatGeek to raise "housekeeping matters" regarding its productions, including issues regarding metadata and production format, they said nothing about the absence of text/Slack messages. (Exh. 3 at 1-2.) Only on Saturday evening, June 7, on the eve of three depositions, did Defendants ask about the text messages they supposedly had been expecting for nearly a month. (Exh. 3 at 1.) Whatever caused Defendants' sudden interest in this material on June 7, their conduct up to that point cannot be reconciled with any expectation that the production would include text or Slack messages.

---

[3] Nor did Defendants expect SeatGeek to run search terms against text/Slack messages. Their position is that "search terms are not well suited" for review of such messages. (Exh. 5 at 2-3.)

Defendants now claim that in addition to the detailed, negotiated subset of documents SeatGeek agreed in writing to search and review, there was an unwritten, unspoken agreement that (i) SeatGeek would also review text and Slack messages, (ii) it would do so for all 12 custodians for whose company files it had agreed to run search terms, and (iii) the search would not be limited by the search terms that had been negotiated in conjunction with those custodians. This is preposterous. No non-party[4] would have agreed to such a burden, and any such agreement would have required discussion of such details as the likely production volume; which threads on an individual device would be searched; how "custodian" would be defined for purposes of Slack, a non-custodial repository; and how much of a responsive thread would be produced. None of these discussions occurred until the run-up to this motion, when Defendants addressed these issues for the first time. (Exh. 5 at 1-3.) Defendants' claim that SeatGeek could or would have undertaken to review such a vast set of material without such discussions is not credible.

In the two months since agreement was reached, SeatGeek has complied with it to the letter, produced approximately 92,000 documents, and produced witnesses for five depositions (with a sixth scheduled). Yet Defendants now apparently would require SeatGeek to review every message over years of text threads on the personal devices of its employees, as well as every message in every Slack channel to which a "custodian" ever had access, if that channel may address a topic covered by one of the 89 requests in Defendants' overbroad subpoena. Given that SeatGeek has an estimated 26,000 active and archived channels on its Slack platform, this is likely to include hundreds, if not thousands, of Slack channels—some of which span years.

Defendants cannot possibly demonstrate the need for such a sweeping review. SeatGeek's conduct is not at issue in this case, it has not materially interacted with those whose conduct is at issue, and Defendants offer no basis to believe that the documents it seeks will be materially additive to the documentation and testimony SeatGeek has already provided. While space does not permit SeatGeek to fully address here Defendants' gross mischaracterization of their Exhibit C and other documents and testimony, three points will suffice for purposes of this motion. First, neither the document nor the referenced testimony "refutes" any statements SeatGeek has made, either publicly or to Plaintiffs. Second, Defendants do not and cannot argue that the quoted passage from Exhibit C is materially additive; SeatGeek has produced a number of emails and other communications containing similar statements, and Defendants have questioned SeatGeek deponents about them extensively. Third, as Defendants point out, SeatGeek's knowledge of Defendants' conduct comes exclusively from its communications with others in the market; its speculation about Defendants' future conduct, to the extent probative at all of whether Defendants engaged in the conduct alleged, is certainly not "critical discovery." (*See* Mot. 3.)

Defendants' demand would have been unreasonable and disproportionate even if made during negotiations, when SeatGeek could have used that demand to seek other concessions, such as narrower search terms or fewer custodians. It is even more so now that SeatGeek has incurred its agreed-upon burden, wound down its review, and released the contract attorneys familiar with the case. It patently ignores Defendants' obligation under Fed. R. Civ. P. 45(d)(1) to "take reasonable steps to avoid undue burden or expense" on SeatGeek. Defendants' motion should be denied.

---

[4] Notwithstanding Defendants' reference to SeatGeek as "Plaintiffs" in footnote 1 of their Motion, SeatGeek is a non-party to this case.

Respectfully submitted,

COHEN & GRESSER LLP

*/s/ Ronald F. Wick*
Melissa H. Maxman (admitted *pro hac vice*)
Ronald F. Wick (admitted *pro hac vice*)
2001 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C.  20006

William E. Kalema
800 Third Avenue
New York, New York  10022

mmaxman@cohengresser.com
rwick@cohengresser.com
wkalema@cohengresser.com

Attorneys for Non-Party SeatGeek, Inc.