

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br>v. | Case No. : 1:24-CV-03973-AS<br><br>NOTICE OF MOTION SEEKING MANDATORY OR PERMISSIVE JOINDER OF LIVE-Fi® TECHNOLOGY HOLDINGS, AS A PARTY PLAINTIFF<br><br>ORAL ARGUMENT REQUESTED |
| LIVE NATION ENTERTAINMENT, INC.,<br>et al., Defendants. | |

------------------------------------------------X

To: Hon. Arun Subramanian
Response to Minute Order entered July 30, 2025 (Docket #621)

    Amy Weissbrod Gurvey, a California attorney-entrepreneur in good standing, declares to the truth of the following statements in moving this Court to grant current non-party LIVE-Fi® Technology Holdings LLC ("LIVE-Fi®"), the right to join this lawsuit as a party plaintiff pursuant to FRCP Rules 19 and 20. LIVE-Fi® moves for mandatory joinder or in the alternative for permissive joinder. LIVE-Fi® interests are not being adequately represented by the named

1

plaintiffs. Gurvey paid $200 to appear *pro hac vice* as counsel for LIVE-Fi® and her application was approved by SDNY attorney regulation. The court is being petitioned to correct unilateral default errors on the docket. In support of LIVE-Fi®'s motion, Gurvey declares to the truth of the following statements.

1. The SDNY ECF department, Supervisor Lourdes Aquino, admitted to entry of ministerial docket errors by default that could adversely affect defendant LIVE-Fi®'s interests. Without notice or due process, LIVE-Fi® was entered as an "ADR provider" when such status qualifier was never selected. In addition, an improper email for Petitioner was entered. Petitioner's email is amyg@live-fi.com. Further correction of the docket errors are requested of the Court.

2. This antitrust class action was filed on May 23, 2024 by the US Dept. of Justice and 29 plaintiff states. For fourteen years since 2010 when merger was opposed by 19 states but conditionally granted by the DC District Court, defendant Live Nation Entertainment, Inc. (LNE) and its two merged partners, defendants Live Nation, Inc., and Ticketmaster LLC, continually and contumaciously violated the terms of the (i) the consent decree; and (ii) the competitive impact statement both so ordered. *US v. Ticketmaster and Live Nation*, 2010 WL 975407, 975408. In a previous order denying transfer to defendants entered on 10/3/2024 (Docket #294), this Court referred only to the consent decree.

3. Per the complaint filed in this action, defendants' monopolistic violations since 2010 did not just involve the unlawful tying of the right to hire high tier artists managed by defendant Live Nation with an agreement to continue Ticketmaster's ticketing services. Now, Ticketmaster's webpage makes the user's right to buy tickets with the unrestricted right to use customer data. In 2010, Ticketmaster contracts were limited to ticketing services. Now they include a multitude of bonus features that enable significant revenues not shared with artists including targeted advertising agreements with Google, Meta, Rokt and others. End users and ticketing customers can only get access to deeper pages of the Ticketmaster website if they sign a release for unrestricted use of their ticketing data. During the Senate Judiciary Committee hearings in January 2023, defendant LNE's divisional president Joe Berchtold admitted that targeting advertising revenues are not shared with artists.

[In 2003, Ticketmaster, Inc. sued Tickets.com, the ticketing system ultimately acquired by the Commissioner of Major League Baseball to service the thirty national baseball teams. The claims included alleged unlawful theft of customer data, placing spiders on the Ticketmaster website to steal data, trespass to chattels and copyright infringement. The Central District of California found that because the Tickets.com spiders were referring all ticket orders back to Ticketmaster, damages could not be proven as to copyright infringement. *Ticketmaster, Inc. v. Tickets.com*, 2003 WL 21406289 (CACD 2003)(Hupp, J.) Now the data itself has become a principal asset for targeting advertising contracts. It should also be noted that in 2021, the US Dept. of Justice sued Ticketmaster before the EDNY for the same crimes defendant Ticketmaster perpetrated against Tickets.com. *US v. Ticketmaster*, 21-cr- 22, 24 (EDNY 2021)]

4. Both the 2010 DC District Court consent decree and competitive impact statement set forth the preliminary conditions of merger that defendants owed to its principal ticketing and venue competitors <u>at that time</u>. Ticket issuer competitors have since skyrocketed in the market and many have been added as interested non-parties in this lawsuit. Expressly iterated within the mandates were certain conditions in favor of AEG (Anschutz) and Comcast including that Ticketmaster would divest itself of its Host and Paciolan software and make that software available to these entities so they could "get up to speed".

5. However another mandate, tucked in between the lines [2010 Competitive Impact Statement pp. 8 line 10] precluded the merged entity from withholding ticket data from companies seeking to enter the merged entity's dominant share of event venues to conduct "non-ticketing" businesses. This provision, immediately breached, has become a gold mine in the evolving targeting advertising market.

6. LIVE-Fi® has several "non-ticketing" businesses that are protected by patents and priority patents pending that are violated by defendants. It should be noted that the stated right to return to the DC District Court for enforcement of the 2010 mandates and an amended judgment pertained only to *parties* to the original proceedings.

7.  However, unique to LIVE-Fi® is that since 2010, the merged entity has also been maliciously and willfully using without permission LIVE-Fi®'s issued electronic ticketing, ticket resale and authenticated event content management and distribution patents that include apparatus, utility and design disclosures. US Patents 11403566, D647910S, 7603321. Other interested non-parties are also using Petitioner's patents. The relevant disclosures were in fact suspiciously "taken out of the queue" by the United States Patent and Trademark Office (USPTO) Commissioner of Patents Wynn Coggins causing a significant delay in prosecution at the USPTO well beyond the three-year statutory prosecution deadlines. See, 35 USC§ 154(b)(1)(B); *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010). Investigation established that the delay was based on conflict of interest violations by defendant Live Nation and Petitioner's common practitioners at Cowan Liebowitz & Latman and Hinshaw & Culbertson of New York City. The attorneys were put under investigation by the USPTO Commissioner of Patents for seven years based on conflicts of interest *admitted* to USPTO officers. The law is unanimous, *i.e.*, if one intellectual property client gets access to trade secrets or patents through the torts of a law firm both the firm and the benefited client are liable for damages. *Mindy's Cosmetics v. Dakar*, 610 F. 3d 590 (9th Cir. 2010)

8.  LIVE-Fi® issued patents are considered standard essential patents for electronic mobile ticketing, ticket resale, content management and user generated event interaction. The third patent, a continuation, 11403566, should have issued in 2009 but for the conflicts of interest investigation against defendant LNE's attorneys. Defendant Live Nation's divisional president Stephen Prendergast told Petitioner that defendants knew of her patents, would continue to use her patents without permission and she could sue.

9.  In many instances, a patent holder that sues an entity pursuant to 35 USC §§271, 284, 285, 286 for infringement, contributory infringement and/or willful infringement is often countersued for antitrust violations as an alleged monopolist. However, in the case at bar, defendant LNE is both a willful infringer and a monopolist against LIVE-Fi®'s interests, making this case unique.

10. Investigation confirmed that since 2011, defendant LNE embarked on a plan with five of its law firms to keep LIVE-Fi® out of the relevant US market altogether. It was in 2010, that LIVE-Fi® filed its first complaint with the US Dept. of Justice for unfair competition and RICO violations including before the USPTO, a complaint that was selected for posting by the US Dept. of Justice in March 2010. Hon(s). Aaron Hoag and Owen Kendler of the Antitrust Division.

11. Starting in or about 2007, defendant Live Nation released false and misleading press releases to the international market. The releases fraudulently stated that defendant owned a "monopoly" on distributing live concert recordings. The releases were blatantly false. They constituted unfair competition and Lanham Act violations against LIVE-Fi®'s interests. 15 USC §1 et seq. In fact, it was LIVE-Fi® that owned the relevant apparatus and software patents and defendant Live Nation owned nothing.

12. What is true is that in 2005, defendant Live Nation acquired a third-party inventor's *recording* gadget, Griner US Patent No. 6614729, that only pertained to certain expedited *recording* technologies that allowed two recording functions to operate simultaneously. When the Griner patent issued in 2005, CD burning was at 52X and the disclosed system was less efficient than the norm. The issued disclosure therefore had no utility, a requirement for a patent. In 2007, the Griner patent was invalidated by the USPTO on application of the Electronic Frontier Foundation. Thereafter, defendant Live Nation spent over 10 years attempting to revive the patent and was never successful and upon belief engaged in fraud before the USPTO in that attempt. Upon belief Prendergast left the company. Important is that the patent never gave defendant a "monopoly" on *distributing* live concert recordings as was alleged proving LIVE-Fi®'s treble unfair competition claims. Nonetheless, the hype allowed defendant LNE to induce certain veteran artists including Madonna, Jay-Z and Shakira to leave their respective record labels. In essence, defendant became a live record label and unfairly and fraudulently competed with LIVE-Fi®'s business including by using its patents without permission.

13. However, this is not the full extent of defendant's anticompetitive practices, malicious fraud and bad faith. In 2008, defendant Live Nation hired

5

New York State court attorneys dually serving at Hinshaw & Culbertson's NY office including J. Richard Supple. Defendant LNE's USPTO trademark lawyers at Cowan Liebowitz & Latman of NYC also hired Hinshaw and Culbertson and Supple. By order entered April 21, 2016, Supple was caught red handed by the Appellate Division First Dept. entering fraudulent and forged documents into state court files at 41 Madison Avenue that were never ordered served on Petitioner.

14. In 2008, investigation revealed that defendant Live Nation via Supple and Baker Botts attorney Steven Schortgen conspired that Supple would enter NYS files and enter fraudulent and forged documents into those files. At the same time, Schortgen of Baker Botts filed fraudulent SDNY jurisdictional papers that defendant Live Nation "*had no New York contacts*" and could not be compelled to answer Petitioner's claims for unfair competition and patent infringement before the SDNY. AT the same time Supple secured an unlawful ex parte stay of patent discovery that was overturned by the Second Circuit in 2012 as abuse of discretion. 462 Fed. Appx. 26. Then it was confirmed that the USPTO investigation against the other Cowan lawyers had been opened by the Commissioner of Patents.

15. In 2012, it was also confirmed that Petitioner's Rule 60(b) motion papers and infringement complaint had vanished from the SDNY docket. 06cv1202. In 2024, a SDNY clerk Dionisio Figueroa was convicted of taking bribes for 18 years in exchange for deleting docket entries. Petitioner's infringement complaint was never allowed reinstatement by Magistrate Henry Pitman, who is no longer serving on this court. Thereafter no infringement claim was ever allowed a hearing in violation of the Fourteenth Amendment. This matter is now before the US Supreme Court on a petition for writ of mandamus but has nothing to do with LIVE-Fi®'s antitrust claims. Docket #24-7441.

16. In 2025, the smoking gun was discovered. It was revealed that since 2018, for seven years, a NYS OCA attorney Shawn Kerby was writing *ex parte* secret letters to the Federal Circuit not to hear Petitioner's arising under patent appeals to orders of the SDNY denying infringement hearings. Petitioner was never served with Kerby's *ex parte* proffers in violation of ABA Rule 2.9 on *Ex parte* Communications.

17. Unknown to Petitioner, three arising under patent appeals under the exclusive appellate jurisdiction of the Federal Circuit were transferred back to the 2d Circuit since 2018. The Second Circuit that has no power, authority or jurisdiction to hear patent appeals to claims that arise under patent statutes. Supremacy Clause, Art. VI, Cl. 2; *Haywood v. Drown*, 556 US 729 (2009). 18-2076; 20-1620, 23-134. The three appeals have since been reinstated to the dockets pending determination by the US Supreme Court (Docket #24-7441). Petitioner's separate appeal to an order of the Central District of California was in fact properly transferred by the Ninth Circuit to the Federal Circuit. 25-2026. It is to be determined if this appeal will also be prejudiced by the crimes of NYS court officers that included attorneys dually serving at Hinshaw & Culbertson. Kerby's fraudulent letters are per se defamatory and unprivileged. They say said that Gurvey was "disbarred" in New York when **Gurvey is not admitted in NYS and has never been disbarred**. The State of New York has no jurisdiction over Gurvey in the capacity of an attorney. The crimes of defendant LN's attorneys with NYS officers of the courts are not protected by immunity. They constitute wrongful state action and RICO corruption warranting treble damages.

18. In addition, the documents thus far discovered are forgeries. They affixed the signature of a 2002 NYS attorney grievance committee (AGC) chief counsel Paul Curran to documents found manufactured by Supple since 2011. Curran died of cancer in 2007. The Appellate Division First Dept. found in its order entered April 21, 2016 that Supple as defendant LNE's attorney and agent was the manufacturer, making defendant LNE jointly and severally liable for Petitioner's damages and RICO ex parte fraud. The forgery crimes warrant disbarment of the attorneys. *US v. Reich*, 479 F. 3d 179 (2d Cir. 2007).

19. These are only some of the monopolistic crimes that continue to be perpetrated by defendant LNE against the public and its competitors.

20. Further investigation confirmed that former USPTO Commissioner of Patents Wynn Coggins and the USPTO Office of Enrollment and Discipline accepted *ex parte* documents from defendant LNE's attorneys that were never ordered served on Petitioner and substantially contributed the delay of issuance and enforcement of Petitioner's patents. ABA Rule 2.9 on *Ex parte* Communications.

Petitioner has moved for both a patent term adjustment and extension of patent term on issued and pending patents and an investigation as to defendant LNE's role in delaying issuance of her patents before the USPTO.

21.   Unauthorized use of Petitioner's patents and delayed patents pending continues by defendant LNE and by other interested non-parties parties added to this lawsuit.

22.   *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017) entitles Petitioner to recover six years of relate-back infringement damages and damages against defendant LNE from the date of any filed infringement complaint. The first infringement complaint was filed before this Court in 2010 after the merger mandates were so ordered and the complaint was "somehow" unilaterally deleted by crimes from the SDNY docket.

23.   Petitioner's continuation patent that issued on August 2, 2022 (Gurvey US Patent No. 11403566) was anticipated in the original operative complaint filed in 2010. It was required to be given a hearing in 2023 by this Court against defendant LNE as a named defendant. *Anza Technology v. Mushkin*, 934 F. 3d 1359 (Fed Cir. 2019). The complaint was not given hearing, and in violation of the Fourteenth Amendment, the motion papers were returned. The patents remain in term and fully enforceable.

24.   The name "Amy Rebecca Gurvey" has been improperly added to the service list as amy@gurvey.name. This is not the correct email for Petitioner. The correct email is amyg@live-fi.com.

25.   FRCP Rule 19 provides as follows:

"(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
   (A) In that person's absence, the court cannot accord complete relief among existing parties; or

(B) That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
  (i) as a practical matter impair or impede the person's ability to protect the interest; or
  (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party…"

LIVE-Fi® therefore claims that it must be joined as a party to this action.

**WHEREFORE**, based on the above authorities, LIVE-Fi® Technology Holdings prays that it be joined as a party plaintiff in this lawsuit either by order granting mandatory or permissive joinder, that California attorney Amy Weissbrod Gurvey be granted pro hac vice status to appear for LIVE-Fi® for all purposes in this lawsuit, and that the ministerial docket error entered by default listing LIVE-Fi® as an ADR provider be vacated.

August 1, 2025
Princeton, NJ

Yours etc.,

AMY R. WEISSBROD GURVEY
Pro Hac Vice California attorney
LIVE-Fi® Technology Holdings, LLC
amyg@live-fi.com
7302 Woodstone Circle
Princeton, NJ 08540
PH 917-733-9981