

*Live-Fi™ Technology Holdings*
*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---X

UNITED STATES OF AMERICA, et al.,     Case No. : 1:24-CV-03973-AS
Plaintiffs,
v.     **MOTION TO INTERVENE AS OF RIGHT FRPC 24(a)(2)**

ORAL ARGUMENT
REQUESTED

LIVE NATION ENTERTAINMENT, INC.,
et al., Defendants.

---X

To Judge Arun Subramanian:

    LIVE-Fi® TECHNOLOGY HOLDINGS respectfully submits this motion to intervene as of right in this antitrust lawsuit pursuant to FRCP Rule 24(a)(2). *Bridgeport v Delmonte,* 602 F. 3d 469 (473 (2d Cir. 2010). The fact that LIVE-Fi®'s previous motion for joinder was denied does not affect LIVE-Fi®'s right to independently move for intervention. *Brennan v. NYC Board of Education*, 260 F. 3d 123 (2d Cir. 2001).

    California counsel Amy Weissbrod Gurvey admitted *pro hac vice* declares to the truth of the following statements in support of LIVE-Fi®'S motion as a rights holder, a market participant harmed by defendants Live Nation and Ticketmaster's exclusionary misconduct precluding access to venue customers and as an advocate for artists denied fair revenue sharing.

1

## I. FACTS IN SUPPORT OF MOTION TO INTERVENE AS OF RIGHT

1. Proposed Intervenor LIVE-Fi® is a US-based technology company that invented, owns and controls standard essential US patents, patents pending and US-registered copyrights for direct-to-user confidential data transmissions, hybrid encryption, routing logic and transmission matrices for live event content distribution, interaction and AI analysis. Most of the patent claims disclose non-ticketing operations. While they do disclose apparatuses and methods for electronic ticketing, the independent claims and operations are the priority systems for end-to-end management of live events, authenticated content distribution, resale and exchange of tickets, mobile ticket displays, and AI analysis.

2. There are three issued US patents and 13 pending patents in the portfolio with confidential patent data applications pending before the United States Patent and Trademark Office (USPTO).[1] The inventions are the priority privacy-first alternative to defendant Ticketmaster's opaque data flows and adhesionary release of consumer data mandated when the consumer logs in the webpage to purchase tickets for an event. They are also and a revenue unlock for artists and venues via ethical advertising and ticket resale systems. In a nutshell LIVE-Fi® methods restore transparency and revenue equity in live entertainment and sports. By enforcing our rights, we are not just protecting innovation but empowering artists and venues to reclaim value from data they generate.

3. The relevant preferred embodiment discloses the apparatuses, systems and designs for direct-to-user event ticketing operations, venue readers, confidential royalty accounting, secured data transmission and analysis methods and designs for new venue architecture. New continuation in part filings before the United States Patent and Trademark Office disclose secure direct to patient health care delivery methods with hybrid encryption protection of data transmissions.

---

[1] Gurvey US Patent Nos. 11403566, D647910S and 7603321

4. The 11403566 US patent that issued on August 2, 2022 disclosing methods for event ticketing management is a continuation of the October 13, 2009 321 patent. It issued an unprecedented 17 years after the relevant application was filed in 2005 (11253912). Per the Federal Circuit, the deadline is three years from the date of filing, making the 566 <u>late by fourteen years.</u> *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010). The 566 patent is considered a standard essential patent for ticketing management and by law all claims should have issued in 2008.

5. A *sua sponte* investigation was opened by the Commissioner of Patents to investigate the cause for prejudicial delay. It was determined that defendant Live Nation's intellectual property attorneys at Cowan Liebowitz & Latman of NYC, also representing LIVE-Fi® and its counsel Weissbrod Gurvey without disclosing conflicts of interest, and defendant Live Nation's defense attorneys at Hinshaw & Culbertson NY's office engaged in collusive conflict of interest violations and *ex parte* obstruction of justice with NYS officers of the courts. Forged documents were circulated to USPTO officers and the US Court of Appeals for the Federal Circuit, delaying LIVE-Fi® patents in USPTO prosecution and appeals to orders of this court denying infringement hearings. The Commissioner found that conflicts of interest violations admitted to by the Cowan firm were determined to be per se practitioner ethics violations in breach of federal mandates. 37 CFR 2.10, 2.19, 10.66, 11.108, 11.116. The violations also included abandonment of patent applications, forfeiture of valuable priority dates and withholding patent files ordered produced by the 2d Circuit in 2012 (462 Fed Appx. 26). The violations also induced the Commissioner of Patents to take fourteen (14) of LIVE-Fi®'s applications out of the queue *sua sponte* for seven years to complete the investigation, per se violations of the Administrative Procedures Act that does not allow these acts by federal officers. [2] 5 USC §§500-596

6. However, the Act does expressly require the USPTO to serve LIVE-Fi® with the results of the investigation, but LIVE-Fi® was never served and all FOIA requests were ignored since 2017. In 2025, it was discovered that Hinshaw & Culbertson partners were dually serving as state court counsels to divisions of

---

[2] 37 CFR 2.10,. 2.19, 01.66, 11.108, 11.116.

3

the NYS office of Court Administration, an attorney Shawn Kerby, who began writing ex parte to the Federal Circuit in 2018 to prevent constitutional appeals by fraud. In total fourteen (14) applications were removed from the queue *sua sponte* by the former Commissioner, Wynn Coggins. The documents were never produced based on fraud and forged documents circulated by the Hinshaw defense attorneys to administrative clerks and circuit attorneys of this court including Magistrate Pitman, no longer serving. In 2016, the Hinshaw lawyer J. Richard Supple was identified as NYS staff counsel attorneys for the First Dept. attorney grievance committee (AGC) dually serving while representing defendant Live Nation and the Cowan lawyers before this Court without disclosing conflicts of interest. In 2017, the NY's Judiciary Law Part 1240 Amendments were enacted and the Hinshaw lawyers were required to be sanctioned and ordered withdraw from the Cowan firm's representation. They never withdrew and the acts remain on appeal to the US Supreme Court. Docket #24-7441.

7. LIVE-Fi® is currently negotiating to be a partner in a new performance venue located within the Southern District of New York (SDNY). The venue will not use defendant Ticketmaster's ticketing platform. LIVE-Fi remains at significant risk for having its ticketing data stolen based on defendant Ticketmaster's past anticompetitive conduct including placing spiders on competitors' websites to steal ticketholder data for which it was criminally prosecuted by the EDNY in 2021. [3] [4] The conviction demonstrates continuing

---

[3] It should be noted that in 2007, to diffuse liability for infringement the LIVE-Fi® patents by the doctrine of equivalents, defendant Live Nation venture partnered with Apple, Inc.'s *iTunes* that copied Live-Fi® ticketing management system in applying for a competing patent in 2008 with 50 claims. 2008-082491. Apple was denied a patent for eight years based on LIVE-Fi®'s prior art. But in 2017, Apple was granted a single "near field" claim which is being challenged. However, it is currently the only claim used for entrance at checkpoints to the new Yankee Stadium, a venture partner of the City of New York.

[4] In 2008, defendant Live Nation's intellectual property attorneys at Cowan Liebowitz & Latman who were also Weissbrod Gurveys' originally retained patent prosecution attorneys, were found to have engaged in conflict of interest violations

4

anticompetitive conduct, the innate intrinsic value of ticketholder data and the ongoing risk of theft of LIVE-Fi®'s data and patent pending systems before the USPTO. *US v. Ticketmaster*, 21-cr-22, 24, (EDNY 2021). To exemplify, in 2008, defendant Live Nation partnered with Apple's iTunes to split the infringement of LIVE-Fi®'s patents by the doctrine of equivalents. The patents were infringed in NYC in this district. Apple applied for its own ticketing management patent in 2008 (2008-082491), was denied a patent for eight years based on LIVE-Fi®'s prior art, but in 2017, was granted a single near field claim, being investigation as improper. This claim is used at the checkpoint for the new Yankee Stadium, a venture partner of NYC, that can be sued directly in this court.

8. In addition, defendant Ticketmaster's platforms are opaque and not compliant with law. Therefore, clear motive exists to attempt to exclude LIVE-Fi® confidential data protection systems from competing for nationwide venue businesses.

9. Contrary to the court's previous order denying joinder, in the 2010 consent decree and competitive impact statement signed before the US District Court for the District of Columbia (DDC), defendant Live Nation *admitted* to ownership and control of several NYC venues including House of Blues, Irving Plaza and Roseland Ballroom. *US v. Ticketmaster and Live Nation*, 2010 WL 975408, pp. 8 line 10. In addition, in 2005 defendant Live Nation's logo was captured on the Irving Plaza marquis in Gramercy Park within the promotional stills distributed for the theatrical release "*August Rush*". Then during the merger in 2009, defendant Live Nation also *admitted* that since at least 2007, it was importing a ticketing system from CTS Eventim of Germany to service its NYC venues owned and operated venues in an attempt to compete with defendant Ticketmaster prior to the merger. These facts prove defendant Live Nation's and its

---

by the US Commissioner of Patents. The Cowan lawyers were placed under investigation for seven years. This resulted in LIVE-Fi® patents being taken out of the queue for eight years, making defendants liable for delayed patent enforcement rights by its counsel. *Mindy's Cosmetics v. Dakar*, 611 F. 3d 590 (9th Cir. 2010)

Hinshaw & Culbertson and Baker Botts lawyers jurisdictional fraud in 2009 when defendant denied all contacts with NYS in response to LIVE-Fi® lawsuit seeking damages for misappropriation of trade secrets and patent infringement. In addition, the Hinshaw lawyer J. Richard Supple conspired with defendant Live Nation second counsel Steven Schortgen secured an unlawful ex parte stay of patent discovery before Judge Barbara Jones in 2009 that was reversed by the 2d Circuit in 2012. In the interim, the infringement complaint and Rule 60(b) motion papers were both deleted *ex parte* from the SDNY docket by a clerk convicted of taking bribes in 2024. These mysterious discoveries happened at the same time defendant Live Nation was issuing false and misleading press releases that it "owned a monopoly" on distributing live concert recordings to lure artists away from their respective record labels. There was no monopoly ever owned by defendants proving Lanham Act violations and advertising fraud. 15 USC §1 et seq.[5] A recording patent acquired by defendant Live Nation was invalidated by the USPTO in 2007 and did not give defendant Live Nation a monopoly. In the meantime, ticketing data was used to authenticate live recording sales.[6]

10.   Contrary to the court's previous order, past strict liability infringement damages and willful infringement damages owed to LIVE-Fi® will not being pursued in this lawsuit in spite of the SDNY officers being duped by defendants' fraud. These matters are currently before the US Supreme Court in a petition seeking a writ of mandamus. Docket #24-7441. However, what is being pursued is injunctive relief to prevent future theft of ticketing data from competitors in violation of patent pending systems, a preclusion order to prevent disclosure of confidential patent data currently before the USPTO, declaratory determinations of constitutional violations in violation of the Fourteenth Amendment by defendant Live Nation and its Hinshaw attorneys against defendant LIVE-Fi and its counsel.

---

[5] This means that LIVE-Fi® patents were being willfully infringed since before 2009 and in this district when the first US patent issued and that LIVE-Fi® had patent enforcement rights immediately in 2010 when the first infringement action could be filed. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017)

[6] Griner US patent 6614729.

6

Defendant's lawyers at Hinshaw & Culbertson at all times, were doubling as NY officers of the courts without disclosing conflicts of interest. Damages for defendant Live Nation and its law firms' anticompetitive acts including forgery crimes, fraud, *ex parte* obstruction of justice, malicious abuse of process and unprivileged defamation in NY courts are not protected by immunity. Weissbrod Gurvey as California counsel is not admitted in NY and there is no jurisdiction over counsel as a NY attorney. The acts perpetrated were abhorrent and heinous and calculated both to prevent enforcement of LIVE-Fi® patents before New York courts and keep LIVE-Fi® out of the relevant non-ticketing markets nationwide.

11.  In 2016, the Hinshaw NYC attorney J. Richard Supple and another attorney O. Lee Squitieri were found by the First Dept. to have inserted forged, fraudulent and unserved documents *ex parte* into the confidential state files located at 41 Madison Avenue NYC and then denied Weissbrod Gurvey access to those files. The exhibits appended hereto establish that state officers acting in coordination with defendant Live Nation Entertainment's attorneys also transmitted defamatory and fraudulent document to the US Court of Appeals for the Federal Circuit without service in an apparent effort to block arising under patent appeals from SDNY orders. These same documents were first discovered in 2025. They were upon belief also circulated to the USPTO officers resulting in unexplained prejudicial delays in prosecution of LIVE-Fi® patents. Counsel Weissbrod Gurvey was never notified of these *ex parte* communications nor given an opportunity to response in violation of due process of law also violations of the APA statutes.

12.  The 2010 final judgment was entered in *US v Ticketmatser and Live Nation* Case No. 1:10-cv-0139-RMC (DDC) after which the amended judgment was entered on January 8, 2020. It prohibited defendants from withholding ticketing data from third parties seeking to conduct non-ticketing businesses at venues where defendants hold dominate market share. The Government delayed in filing this action until prompted by a bipartisan petition of the Senate Judiciary Committee in 2023, making this motion more than timely. *Bridgeport v Delmonte*, 602 F. 3d 469 (473 (2d Cir. 2010). There can be no prejudice to defendants because discovery has hardly begun. Weissbrod Gurvey's discovery of the *ex parte* defamatory documents circulated since 2018 by NYS OCA officers who were

consorts with defendant Live Nation's defense lawyers did not occur until 2025. *Detention Watch Network v. US ICE*, 2016 WL 11793613

13. The stated preclusion entered in 2010 by the DDC against withholding ticketing data from non-ticketing businesses *was ordered to prevent the merged entity from leveraging ticketing dominance and to foreclose competitors from adjacent markets such as analytics, market access, direct to fan marketing, and fan engagement platforms*. The order was contumaciously defied immediately in 2010 by both defendants and continued to be defied after the amended judgment was entered in 2020. The withholding of ticketing data from LIVE-Fi® has caused monumental exclusionary damages to LIVE-Fi®'s business. Because this is not the only antitrust violation perpetrated against defendant LIVE-Fi®, this court maintains jurisdiction. See order of October 4, 2024 denying defendants' motion to transfer this action.

14. Because defendant Ticketmaster's systems are opaque and unsecured, a confidential data transmission and hybrid encrypted system also performing AI transmission matrices remains sorely coveted by competitors. It cannot be excluded by defendant Live Nation and its attorneys' crimes in NYS files.

15. The current SDNY lawsuit, 24cv3973-AS is a Sherman Antitrust Act enforcement and divestiture action. As stated, this court previously denied defendants' motion to transfer to the DC District Court in October 2024. Defendants argued that the Government's complaint sought to enforce the original terms and conditions of merger. However, the court disagreed. It held that defendants' anticompetitive acts included a plethora of acts not covered by the DDC orders. This is proven by the EDNY criminal proceedings against defendant Ticketmaster filed in 2021 and the other anticompetitive acts of unserved forgery and fraud by defendant Live Nation Entertainment's attorneys in NYS court files. *US v. Ticketmaster*, 21-cr-22, 24 (EDNY). Documents were found affixing the signature of a 2002 former AGC chief counsel, Paul Curran, who died of cancer in 2007.

## II. MEMORANDUM OF LAW

16. A third party may see intervention as of right under Rule 24(a)(2) if:

(i) It has a legally protectable interest such as market access and relevant US patents which LIVE-Fi® does own and control;

(ii) The outcome of the lawsuit may impair those interest(s) such as LIVE-Fi®'s continuing right to get injunctive relief, preclusion orders and injunctive relief to protect confidential patent data before the USPTO, declaratory determinations against defendants and its attorney/agents for continuing violations of constitutional rights, and to recover damages for LIVE-Fi® and artists who continue to be excluded from targeting advertising and revenue participations.

(iii) The outcome could further impair LIVE-Fi®'s already-delayed recovery of strict liability patent infringement damages, copyright infringement damages, and a patent term adjustment from the DC District Court. 23cv3549.

(iv) In addition, the outcome could impede LIVE-Fi®'s recovery of damages and treble damages based on defendant Live Nation and its attorneys' fraud before the USPTO and collusion with NYS officers of the courts before the Federal Circuit [7]; and

(v) The Government and the 35 US states do not adequately represent all of LIVE-Fi®'s interests. *Detention Watch Network v. US ICE*, 2016 WL 11793613 (SDNY); *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 US 519 (1947)

17. LIVE-Fi®'s harm is ongoing and stems from:

(i) The merged entity's exclusionary use of ticketing data it acquired both from its own ticketing customers and from data acquired from competitors by criminal acts. *US v. Ticketmaster*, 21-cr-22, 24 (EDNY). These acts are at risk to continue against LIVE-Fi® including at its new venue partnership where tickets protected by confidential data transmission will be sold and resold with LIVE-Fi® patented and patent pending systems.

---

[7] This claims supports a claim for unjust enrichment and potentially a constructive trust over divested revenues.

(ii) Defendants' conduct not only impairs access to confidential ticketing data in violation of the 2010 final judgment and 2020 amended judgment but misappropriates the economic value of patented innovations – diverting revenues from artist and innovators to Ticketmaster-controlled channels.

(iii) Defendants continue willful infringement of LIVE-Fi® patents that remain in term further demonstrating a direct substantial and legally protectable interest in the subject matter of this litigation; and

(iv) Forgery crimes, *ex parte* obstruction of justice and collusion by defendant Live Nation's lawyers doubling as NY officers of the courts continue to be perpetrated before the United States Patent and Trademark Office, the US Commissioner of Patents, the Federal Circuit and the state and federal courts in New York demonstrating RICO corruption. [8]

18. The disposition of this action will undoubtedly further delay and prejudice LIVE-Fi®'s continuing ability to protect its interests with respect to market access to venue clients, patent and copyright enforcement and to get injunctive relief against defendants for perpetrating crimes and unprivileged defamation to prevent infringement hearings.

19. In addition, LIVE-Fi®'s unpublished patent applications are confidential property interests. They are entitled to protective orders against discovery production from this court. *Radio Music License v. BMI*, 347 FRD 262 (SDNY 2024)

20. Moreover, the documents generated from defendant Live Nation's participation in *ex parte* fraud, obstruction of justice and circulation of forged documents to tribunals, the USPTO officers and the Federal Circuit were required to be served on LIVE-Fi® pursuant to the Administrative Procedure Act (APA), 5

---

[8] The Federal Circuit fraud crimes were perpetrated without NY attorney jurisdiction malicious abusing process against LIVE-Fi®'s counsel Amy Weissbrod Gurvey who is only admitted in California. As such the fraud crimes are not protected by immunity.

USC §§500-596, 701-706. That the anticompetitive conduct involved violations of federal statutes is a separate ground for granting intervention as a matter of right under mandates of the US Supreme Court. *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 US 519 (1947). NYS's Office of Court Administration attorney Shawn Kerby has been circulating ex parte fraudulent and defamatory documents to the Federal Circuit since 2018 concerning defendant LIVE-Fi®'s counsel. The documents were discovered in 2025 and were unlawfully intended to interfere with the patent appeals process without jurisdiction over Weissbrod Gurvey in the capacity of a NY attorney and must be assessed for sanctions.

21.  Patent infringement claims are not enforceable against the 35 US state plaintiffs before the federal district courts because of the Eleventh Amendment. *Florida Prepaid Post Secondary Education Expense Board v. College Savings Bank*, 527 US 627 (1999). Therefore, LIVE-Fi® interests <u>cannot</u> be adequately protected by the existing plaintiffs. The exception would be NYS that deprived LIVE-Fi® of due process of law after the EDNY separately found criminal violations by defendant Ticketmaster.

22.  In a summation, there can be no dispute: (i) that ticketing and advertising revenues derived from LIVE-Fi® patented methods are retained by defendants Live Nation and Ticketmaster; (ii) performing artists and third party innovators like Live-Fi® are excluded from revenue participation despite enabling the underlying value and profits; (iii) this supports a claim for unjust enrichment and potentially a constructive trust over diverted revenues against the merged entity defendants.

23.  Because defendants are using ticket data to perform functions covered by LIVE-Fi® delayed patents (e.g. resale, authentication, targeted advertising and AI analysis) and require ticket purchasers to release their right to use of data, defendant LIVE-FI ® may also assert breach of confidentiality if ticket data is not adequately protected by defendant Ticketholder's opaque system. This violates both LIVE-Fi®'s intellectual property and privacy engineering principals.

24.  In summation, LIVE-Fi®'s intervention is necessary to protect legally cognizable interests, including: (i) preservation of patent rights under 35

USC §271; (ii) the right to a patent term adjustment based on defendant Live Nation and its attorneys' acts that caused forfeiture of seven years of patent term in valuable disclosures and induced USPTO officers to violate the APA statutes, 5 USC §§ 500-596, 702–706; (iii) preservation of copyrights under Title 17; (iv) the right to protective orders to prevent production of confidential patent data and applications still pending; and (v) the right to preserve evidence relevant to *ex parte* crimes before court officers by defendant Live Nation and its attorneys.

25. The US Supreme Court has also held that intervention is appropriate where the applicant's interests may be impaired but are not adequately represented. See *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972); *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967).

26. Documents submitted *ex parte* by NYS officers of the courts to the Federal Circuit in collusion with defendant Live Nation's defense attorneys, prove acts of unlawful influence, constitutional indifference, improper *ex parte* communications, and retaliatory exclusion from federally regulated platforms and patent appeals —all of which intersect with the monopolistic conduct alleged in this case.

27. This Court has already held that the Government's claims are independent of the orders contained in the prior DDC consent decree and amended judgment, because the ongoing and expanded violations are properly before this Court. Order entered Oct. 3, 2024.

28. Evidence of defendant Live Nation's attorneys' in-court fraud, defamatory and malicious abuse of process in collusion with NYS officers of the courts are appended as exhibits. They are antitrust violations by a monopolist. Facts in LIVE-Fi®'s Reply papers and exhibits docketed as #637 may be relevant to this motion.

29. Under U.S. antitrust law and the Sherman Act Section 2, an antitrust monopolist is:

- A single firm or company with significant and durable market power, meaning it can raise prices or exclude competitors over time.
- The company acquired or maintained monopoly power through exclusionary or predatory conduct, not just through superior products, innovation, or business acumen.
- The company is subject to legal scrutiny if its behavior unreasonably restrains competition or harms the competitive process against others.

Examples of unlawful conduct include:

- Predatory pricing
- Tying arrangements
- Exclusive dealing
- Refusal to deal

District courts are required to assess:

- Whether the firm has monopoly power (often >50% market share)
- Whether its conduct has anticompetitive effects against others.

In everyday colloquial language, an antitrust monopolist is described as:

- **"Too big to compete with"**—a company that dominates its market so thoroughly that others can't survive.
- **"A bully in the marketplace"**—using its size or control to squash rivals, manipulate prices, or limit consumer choice.
- **"A gatekeeper"**—controlling access to essential platforms, technologies, or services in ways that stifle innovation
- **A company thought of** as a firm that doesn't just win—it **rigs the game** to keep winning, even if it means hurting consumers or blocking better alternatives and violating constitutional rights including access to all courts.

    **WHEREFORE**, Prospective Intervenor LIVE-Fi® respectfully seeks that this Court grant its Motion to Intervene as of right in all respects.

    Respectfully submitted,
    AMY WEISSBROD GURVEY
    California counsel