

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____X

US Dept. of Justice (and 35+ US States)
Plaintiffs,

FRCP RULE 59 (e) and
LOCAL RULE 6.3
MOTION FOR
RECONSIDERATION TO
STRIKE DOCKET ENTRY
#633 AND TO
DISQUALIFY CRAVATH
SWAINE AND MOORE

v.

Live Nation Entertainment, Inc.,
Live Nation Inc., Ticketmaster, LLC and
Does I-X, Defendants.
_____X

To the Honorable Arun Subramanian, United States District Judge:

Pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3 based on NEW EVIDENCE in the form of an injunction against NYS officers of the courts entered on September 5, 2025 by the

Northern District of New York[1], proposed Intervenor LIVE-Fi® LLC respectfully moves this Court to reconsider its Order denying LIVE-Fi®'s motion to intervene in this antitrust and divestiture lawsuit as of right or by permission. The Court accepted fraudulent *sua sponte* submissions by defendant Live Nation Entertainment (LNE)'s attorneys at Cravath Swaine and Moore, Docket #633, proven false by the NDNY injunction. The papers fraudulently defamed LIVE-Fi®'s California counsel and cannot be left hanging on the docket or they will continue to be cited and cause further prejudice. LIVE-Fi®'s Reply exhibits and demand for this Court to compel the state files by injunction in response to Cravath's Opposition Docket #633 were not considered by the Court.

LIVE-Fi®'s was involved in a previous patent litigation before the SDNY in 2009 at the time the DCD district court granted Live Nation and Ticketmaster merger based on proscriptives contained in a competitive impact statement and consent decree. The conditions were contumaciously defied. LIVE-Fi®'s first US ticketing patent claims issued at the same time on October 13, 2009 and LIVE-Fi sued before this Court on April 22, 2010 for willful infringement and inducing infringement. Before this Court, infringer defendants Live Nation and Cowan Liebowitz & Latman were being represented by Hinshaw & Culbertson. Unknown to LIVE-Fi® the Hinshaw firm had partners dually serving as staff counsels on the First Dept. attorney grievance committee (AGC) without disclosing conflicts of interest and were inserting forged documents into the state files without a warrant. NY's Judiciary Law Part 1240.18.

In 2009, LIVE-Fi® won binding arbitration on certain contract claims before the SDNY but on remand received no patent discovery or infringement hearings ordered by the 2d Circuit in 2012 (462 Fed. Appx. 26). LIVE-Fi®'s infringement complaint date-stamped and filed

---

[1] 24cv211

on April 22, 2010 [2], was deleted *ex parte* from the docket during the stay of appeal. Hinshaw's attorney J. Richard Supple, a concealed First Dept. staff counsel, then began circulating his forged state documents to SDNY officers and judges to deprive LIVE-Fi® of infringement hearings. The circulated forgeries created in 2011 affixed the signature of a dead 2002 former First Dept. chief counsel Paul Curran who died of cancer in 2007. A state orders entered *sua sponte* without motion on notice in 2012 was determined non final by the NY Court of Appeals and could not be collaterally applied by any subsequent court. It was applied improperly by the SDNY and improperly cited by Cravath in this lawsuit warranting sanctions.

Supple's *ex parte* proffers were never ordered served on LIVE-Fi®'s counsel in violation of ABA Rule 2.9 on Ex Parte Communications. However, a magistrate Henry Pitman who accepted them *ex parte* was dismissed from the case and the court. The legal result was that LIVE-Fi® got no patent or infringement hearings through 2023 as more US patent claims issued during that lawsuit (06cv1202). The orders defy *Anza Technology v. Mushkin*, 934 F. 3d 1349 (Fed Cir., 2019) and the liberal pleading rules of the 2d Circuit. *Metzler Investments Gmbh v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir. 2020) (citing *Grant Williams v. Citicorp,* 658 F. 3d 208 (2d Cir. 2011)

The smoking gun, however, was that Supple cohorts Shawn Kerby and Sam Younger at the NYS Office of Court Administration (OCA), were caught writing *ex parte* letters to the Federal Circuit not to hear LIVE-Fi®'s three arising under patents appeals to orders of the SDNY denying patent hearings on willful infringement, inducing infringement and nonjoinder. The three appeals were issued Docket #s 18-2076. 20-1620, 23-134 by the Federal Circuit. In response, the Federal Circuit improperly transferred these appeals sua *sponte* to the Second Circuit

---

[2] *US v. Ticketmaster and Live Nation*, 2010 WL 975407, 975408 (DCD January 25, 2010)(RMC); Amended Judgment January 8, 2020

when the Second Circuit has no jurisdiction under the Supremacy Clause Art. VI, Cl. 2 to hear the appeals. See also, *Haywood v. Drown*, 556 US 729 (2009). These orders are on petition to the US Supreme Court. Docket #24-7441.

However, empirically relevant to this motion is that starting in 2016 during the SDNY patent lawsuit, the NY Legal Assistance Group (NYLAG), a NYS agency serving as the pro se self-help unit for the SDNY, refused to assist LIVE-Fi®'s counsel get Supple disqualified, the forged and unserved state files ordered by injunction and the infringement hearings ordered. NY's Judiciary Law Part 1240.6d. The chief state lawyer, Robyn Tarnofsky, harbored an irreconcilable conflict of interest. She forced LIVE-Fi®'s counsel to sign 5 state retainers and advised LIVE-Fi®'s California counsel that as an out of state attorney she would never get an infringement hearing in this court and that "*there are some acts for which there is no remedy*".

This of course is a totally wrong statement of the law and improper legal advice for a district court help attorney to give to a patent holder whose patents are being used without permission in the district. Tarnofsky is deemed on notice that NY's Judiciary Law Part 1240 required disqualification of Supple from the Cowan defendants representation and that LIVE-Fi® and its counsel had a constitutional right to infringement hearings against the named defendants guaranteed by the Fourteenth Amendment. In addition, LIVE-Fi's counsel had a constitutional right to injunction to compel the forged state files and for state officers' continuing to violate constitutional rights. *Ex parte Young*, 209 US 123 (1908). On August 26, 2025, LIVE-Fi®'s counsel was given first access to the "ordered concealed" First Dept. files by armed marshals. The documents discovered in 12-14 Redwells are shocking and prove RICO corruption with live nation's defense attorneys with state officers.

Docket #633 filed by Cravath Swaine and Moore undermines the integrity of these proceedings. <u>A Cravath partner, Antony Ryan, is the husband of Ms. Tarnofsky</u>, creating further conflicts of interest. The opposition is a further defamatory slur and must be stricken based on the Court of Appeals orders of nonfinality and that the sua sponte orders induced by Supple are now before the US Supreme Court.

It is astounding that Ms. Tarnofsky who defrauded LIVE-Fi®'s counsel as a NYLAG staff senior attorney, is now a magistrate in this court. It is astounding that the State of NY would have state attorneys serving on a *pro se* help unit for a federal district court, when in patent litigation federal law preempts the law of the state and conflicts of interest are unavoidable.

Ms. Tarnofsky is currently serving as the magistrate in Case No. 24cv2930 (PAE)(SDNY). In this case, plaintiffs Alan Amron and Amron's alter ego echangingbarcode, LLC sued defendants herein Live Nation and Ticketmaster and also *inter alia* defendants StubHub and MLB and MLB Advanced Media (MLBAM) for patent infringement. Live Nation defendants in this lawsuit never filed fraudulent jurisdictional papers that they had "*no NY contacts and could not be compelled to answer infringement claims in this district*" as they did in LIVE-Fi®'s lawsuit Those fraudulent papers were filed by Hinshaw's Supple and Baker Botts attorney Steven Shortgen in 2009 in direct conflict with defendant Live Nation's documents signed before the DC District Court that defendant owned NYC venues House of Blues, Irving Plaza and Roseland Ballroom since 2005 and was importing a ticketing system from CTS Eventim of Germany to service those venues to compete with Ticketmaster.

The current 24cv2930 defendants MLB, MLB Advanced Media and 30 national baseball teams are infringers of LIVE-Fi®'s patents and along with defendant StubHub are derivative violators of the DC District Court antitrust consent decree and competitive impact

statement signed by defendants Live Nation and Ticketmaster. MLB and MLBAM defendants are using Ticketmaster's ticketing system without permission pursuant to extended long-term serving contracts and wherein Ticketmaster continues to withholding ticket data from non-ticketing businesses at defendants' serviced sports venues in violation of the Competitive Impact Statement, pp. 8, line 10. There is no dispute that plaintiff Amron failed to cite to LIVE-Fi® issued patents before the USPTO as prior art and his patent seeking to be enforced in this lawsuit may be invalidated or found unenforceable. A copy of LIVE-Fi®'s motion to intervene in the 24cv2930 lawsuit is appended as exhibit to this motion.

## I. STATEMENT OF MOTION

The injunction entered by NDNY on September 5, 2025 is newly discovered evidence anticipated in LIVE-Fi®'s reply to Cravath #633 false and defamatory opposition. That opposition must be stricken and sanctioned or it will cause further prejudice to LIVE-Fi® and its counsel. The court overlooked controlling law by *sua sponte* referring LIVE-Fi ® to defendant's opposition papers and did not consider the relief sought in the reply.

Defendant Cravath Swaine and Moore should be disqualified. Key factual matters bear directly on LIVE-Fi®'s substantial continued legal interest in the divestiture proceedings based on continued exclusion from this court to enforce patents. Moreover, based the injunction granted by the NDNY that was never granted by this Court, continued manifest injustice that will result from exclusion.

Additionally, newly discovered evidence reveals that Cravath Swaine and Moore's partner Antony Ryan has a conflict of interest and the firm engaged in conduct warranting disqualification under the New York Rules of Professional Conduct and applicable federal standards.

## II. STANDARD OF REVIEW

Under Rule 59(e), a motion to alter or amend judgment may be granted to correct clear error of law or fact, prevent manifest injustice, or consider newly discovered evidence. Reconsideration is appropriate where the Court has misapprehended the facts, a party's position, or controlling law or new evidence not previously available would alter the outcome.

## III. GROUNDS FOR RECONSIDERATION

### A. Overlooked Legal Interest and Standing

LIVE-Fi® demonstrated a direct and substantial patent interest in its competitive positioning in the relevant market. The Court's denial failed to account for Second Circuit precedent recognizing intervention rights in antitrust actions where the movant's business interests are directly affected. Here the defendants' attorneys also continue to defame LIVE-Fi®'s California counsel in violation of NY Court of Appeals orders.

### B. Manifest Injustice

Exclusion of LIVE-Fi® from the proceedings deprives it of the opportunity to protect its property interests and its counsel's business reputation and offer a competitive alternative to the proposed divestiture structure. This undermines the public interest in robust antitrust enforcement and transparency.

### C. Newly Discovered Evidence Warranting Disqualification

LIVE-Fi® being granted an injunction highlights an elaborate RICO conspiratorial enterprise between all of defendant LNE's law firms and NYS officers of the courts. Additionally, Cravath's failure to disclose this conflict to the Court violates other Rules of Professional Conduct.

## IV. REQUEST FOR RELIEF

LIVE-Fi ®respectfully requests that the Court:

1. Vacate its prior Order denying intervention;
2. Grant LIVE-Fi® leave to intervene as of right or by permission;
3. Disqualify Cravath Swaine and Moore from further representation in this matter;
4. Grant such other relief as the Court deems just and proper.

## V. CONCLUSION

For the foregoing reasons, LIVE-Fi urges the Court to reconsider its prior ruling and permit intervention to ensure fairness, protect competitive interests, and uphold the integrity of the proceeding.

Dated:  September 14, 2025

Princeton, NJ

/amyweissbrodgurvey/

AMY R. WEISSBROD GURVEY
LIVE-Fi® TECHNOLOGY HOLDINGS, LLC

# EXHIBIT 1



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____X

| | |
|---|---|
| Alan Amron, echangingbarcode, LLC, Plaintiffs,<br>v. | Case No. 24-CV-2930 (PAE)<br><br>**NOTICE OF MOTION TO INTERVENE**<br>**FRCP §24(a)(b)**<br><br>ORAL ARGUMENT REQUESTED |

MLB, MLB ADVANCED MEDIA (MLBAM),
Live Nation Entertainment (LNE), StubHub,
and 30 national baseball teams and event stadiums

(*LNE and STUBHUB noticed as*
*Voluntarily terminated by the Plaintiff*)
and Does I-X, Defendants.
_____X


**PLEASE TAKE NOTICE** that on September 23, 2025 in the Chambers of Hon. Paul A. Engelmayer at 40 Foley Square Room 2201, an annex of the main US District Court Southern District of New York

courthouse located at 500 Pearl Street, NY 10007, proposed interventor LIVE-Fi® TECHNOLOGY HOLDINGS, by its California counsel Amy Weissbrod Gurvey previously granted *pro hac vice* status by this Court[3], will move to intervene in this lawsuit pursuant to FRCP 24(a)(b) to protect its interests. *Bridgeport v Delmonte*, 602 F. 3d 469 at 473 (2d Cir. 2010).

LIVE-Fi®, proposed intervenor, is the priority patent holder of standard essential US apparatus and method patents and registered copyrights that enable "*non-ticketing businesses*" at defendant Live Nation and Ticketmaster's owned, serviced and operated event venues [4]. US Patent Nos. 11403566, D647910S, 7603321. TXu001265644. Non-ticketing businesses" is a term defined in the 2010 DC District Court consent decree and competitive impact statement and Amended Judgment entered January 2020. Defendants MLB and MLB Advanced Media (MLBAM) herein are venture partners or licensees of defendants Live Nation and Ticketmaster who are contumaciously defying these mandates since 2010 and also infringing LIVE-Fi® patents.

The first LIVE-Fi® ticketing management patents issued in 2009 and 2011 much before the plaintiff herein Alan Amron moved for his own competing patent. Plaintiff Amron improperly failed to cite to LIVE-Fi®'s first two published and issued patents as prior art with willful blindness and in bad faith. This fact could prevent enforcement of Amron's 2015 patent or otherwise cause invalidation of his patent by the USPTO.

In addition, LIVE-Fi® patents are also being used without permission by defendants MLB and MLB Advanced Media since 2011.

---

[3] *US and 35+ US States v. Live Nation Entertainment, Inc*., 24cv3973 (SDNY)(AS)
[4] *US v. Live Nation and Ticketmaster,* 2010 WL 975407, 975408 (January 25, 2010), Amended Judgment entered January 8, 2020, still in full force and effect against the reorganized merged entity defendant Live Nation Entertainment (LNE).

There is no such thing as laches and the issued patents remain enforceable. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017).

Moreover, at all times relevant, defendant MLB was being represented before the United States Patent and Trademark Office (USPTO) by the same practitioners representing LIVE-Fi® and its counsel at Cowan Liebowitz & Latman. Commissioner of Patents Wynn Coggins opened a conflicts of interest, abandonment and withholding investigation *sua sponte* and violations were found. 37 CFR §§2.10, 2.19, 10.66, 11.108. 11.116.

Defendants MLB, MLBAM and its thirty national baseball teams have signed contracts with defendant Ticketmaster and StubHub that force ticket consumers to release unrestricted use of ticket data to Ticketmaster.

In addition, LIVE-Fi® regrets that it must seek recusal of magistrate Robyn Tarnofsky, a former state court officer who is well aware of LIVE-Fi®'s priority ticketing management patents and that the patents cover claims seeking to be enforced by plaintiff Amron. It is argued that Magistrate cannot serve in any judicial capacity in this lawsuit because she was serving as the senior staff attorney at the NY Legal Assistance Group, a NYS agency serving as the *pro se* help unit for the SDNY at 40 Foley Square, during the time that the SDNY improperly refused to grant LIVE-Fi® patent discovery and infringement and inducing infringement hearings against defendants Live Nation and Cowan Liebowitz & Latman in violation of the Fourteenth Amendment. LIVE-Fi® sought the assistance of the NYLAG and signed seven retainer agreements with NYS. This matter is on mandamus petition to the US Supreme Court. Docket #24-7441.

Ms. Tarnofsky told LIVE-Fi®'s California counsel that the court would not grant an infringement or an inducing infringement hearings against defendant Live Nation or the Cowan firm and she would not assist LIVE-Fi®'s counsel in pursuing constitutional rights to get infringement hearings or damages on any claim for which an issued patent is a condition precedent. As it turns out the State of New York harbored conflicts of interest caused by several officers who were dually serving as the Cowan and Live Nation's defense attorneys at Hinshaw & Culbertson, and at the same time as staff counsel to the First Dept. without disclosing conflicts of interest. This dual representation is a violation of law. NY's Judiciary Law Part 1240.6d.

**One week ago, on September 5, 2025, the Northern District of NY Chief Judge, Hon. Brenda Sannes in 24cv211, issued an injunction against NYS court officers to produce the complete state files including those found corrupted *ex parte* by attorneys for Live Nation and the Cowan firm at Hinshaw & Culbertson. The Cowan firm was representing defendants MLB and MLBAM at this time without disclosing conflicts of patent and business interests. A First Dept. order was entered April 21, 2016 ordering permanent concealment of all state files including those corrupted by defendants and Supple. Those documents prove forgery crimes by state officers not protected by immunity because Weissbrod Gurvey is not admitted in NYS and warrant disbarment. *US v. Reich*, 479 F. 3d 179 (2d Cir. 2007)**

The USPTO Commissioner of Patents Wynn Coggins *sua sponte* opened an investigation over seven years against the Cowan Liebowitz & Latman practitioners and found conflict of interest and abandonment violations in favor of other clients. Results were required to be served on LIVE-Fi® and its counsel under the Administrative Procedures Act, 5 USC §500-596 (APA) The results were never served nor were they

13

ordered in patent discovery by the SDNY after a mandate by the 2d
Circuit in 2012. 462 Fed. Appx. 26.

Both defendant Live Nation and the Cowan practitioner hired
Hinshaw & Culbertson and Supple as defense attorneys before the
SDNY in 2011 when by law that firm could never accept defense of the
Cowan lawyers (NY's Judiciary Law Part 1240.6d). Supple was
identified in a First Dept. order entered April 21, 2106 as the individual
manufacturing and inserting forged and unserved fraudulent
documents into "ordered concealed" state files. These documents were
circulated *ex parte* to this Court to deprive LIVE-Fi® of patent discovery
and infringement hearings. Supple's *ex parte* proffers were never
ordered served on LIVE-Fi® or its counsel in violation of ABA Rule 2.9
on *Ex parte Communications*. His acts caused further conflicts with
several NYS officers of the courts, one of whom was Ms. Tarnofsky.

In the parallel antitrust and divestiture lawsuit currently pending
before this Court against Live Nation and Ticketmaster, 24cv3973,
defendant Live Nation Entertainment, the merged entity is being
defended by Cravath Swain and Moore where Ms. Tarnofsky's husband
Antony Ryan, is a partner, causing a further conflict.

**WHEREFORE,**

(1)    The bad faith acts of the plaintiff Alan Amron prove willful
blindness of published LIVE-Fi® patents and pending patents
that were delayed for enforcement based on the Commissioner's
investigation.

(2)The NDNY order entered September 5, 2025 granting
injunction against NYS court officers and setting a hearing for
September 26, 2025 is proof positive that SDNY defendants

Live Nation Entertainment (LNE) and Cowan Liebowitz & Latman had their common defense attorney Richard Supple misuse his concealed state post and state authority, to enter forged and unserved documents into ordered concealed NYS files <u>without jurisdiction</u> over LIVE-Fi®'s California counsel, and solicit illegal acts by other NYS court officers to interfere with federal patent proceedings before the SDNY, the United States Patent and Trademark Office (USPTO), the CACD and the US Court of Appeals for the Federal Circuit

(3) The fraudulent *ex parte* letters of Office of Court Administration (OCA) staff attorney Shawn Kerby written to the Federal Circuit since 2017 that were first discovered in 2025 and are appended hereto. They are proof positive of continuing violations of LIVE-Fi®'s patent interests in this district in violation of the Fourteenth Amendment, retaliatory harassment and unprivileged defamation.

(4) Defendants MLB and MLBAM are headquartered in this district and its thirty national baseball teams including the new Yankee Stadium and Citifield are using the same LNE, Ticketmaster and StubHub systems under supervision of MLB to conduct non-ticketing businesses and generate concession revenues and other benefits for ticketholders. These derivative acts are proscribed by the DC District Court against defendant LNE and its licensees.

(5) LIVE-Fi®'s priority ticketing management patents are being used without permission by venture partners and licensees of LNE and in violation of the 2010 DCD mandates of merger and the 2020 Amended Judgment. Defendant LNE and Ticketmaster's illegal tying violations are being assessed before this court in the parallel antitrust and divestiture lawsuit,

24cv3973, demonstrating that defendants MLB and MLBAM as licensees or venture partners are engaging in derivative anticompetitive acts against LIVE-Fi®.

(6) A motion to enforce the DCD mandates before the district court in Washington DC was separately filed requiring multi-district litigation.

(7) This court must order intervention to prevent inconsistent judgments and ensure that LIVE-Fi® and its counsel's constitutional rights are protected.

Dated:  September 12, 2025
Princeton NJ

**/amyweissbrodgurvey/**

AMY R. WEISSBROD GURVEY
*California Counsel*
LIVE-Fi® Technology Holdings, LLC



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____X

Alan Amron, echangingbarcode, LLC,
Plaintiffs,
v.

Case No. 24-CV-2930 (PAE)

**DECLARATION AND
MEMORANDUM OF
LAW IN SUPPORT OF
INTERVENTION
FRPC §24(a)(b)**

ORAL ARGUMENT
REQUESTED

MLB, MLB ADVANCED MEDIA (MLBAM),
Live Nation Entertainment (LNE),   StubHub,
And 30 national baseball teams and event stadiums
(LNE and STUBHUB noticed on the docket as
Voluntarily terminated by the Plaintiff Amron),
and Does I-X, Defendants.

_____X

        In support of LIVE-Fi® Technology Holdings' motion for an
evidentiary hearing before this Court on September 23, 2025 to
intervene in this lawsuit, California counsel Amy Weissbrod Gurvey

granted *pro hac vice* status from California in good standing by this
Court, declares to the truth of the following statements:

1.      Proposed Intervenor LIVE-Fi® Technology Holdings is a US-
based technology company that invented, owns and controls standard
essential US patents, patents pending and US-registered copyrights for
direct-to-user privacy-first data transmissions, hybrid encryption,
routing logic, transmission matrices for live event and virtual event
content distribution, user interactions and AI analytics.  Issued patents
and copyrights include US patent Nos. 11403566, D547910S, 7603321;
TXu001265644. Most of the independent and dependent patent claims
and registered copyrights disclose non-ticketing operations and
software platforms that enable other benefits for producers, artists,
sports teams and venues.

2.      The patents do disclose apparatuses and methods for
electronic screen ticketing interfaces and multifunctional bar codes. Yet,
a subsequent patent sought to be enforced by the plaintiff Alan Amron
herein, was issued with Amron failing to cite to LIVE-Fi's issued
patents to the USPTO as prior art at the time he filed patent
applications. This could cause invalidation or prohibition of enforcement
of the Amron patent.

3.      LIVE-Fi®'s priority patents and copyrights include
independent claims and platforms disclosing the priority apparatuses
and systems for end-to-end management of live events, privacy-first
authenticated content distribution, resale and exchange of tickets,
multifunctional barcode systems, mobile ticket displays, and AI
analysis. These are the standard essential platforms that enable most of
the non-ticketing businesses to which the DC District Court referred in
2010 when precluding defendants Live Nation and Ticketmaster from
withholding ticket data from entities and individuals seeking to conduct
non-ticketing businesses.

4.    The 2010 Competitive Impact Statement signed by Live
Nation and Ticketmaster as conditions of merger on January 25, 2010
provided that "***LNE defendants are precluded from withholding
ticketing data from entities seeking to conduct <u>non-ticketing
businesses</u> at the merged entity's dominant share of owned,
operated and serviced event venues***". This provision was
contumaciously defied by LNE defendants as soon as it was "so ordered"
and then by defendants MLB and MLBAM as derivative antitrust
venture partners or licensees. Defendants MLB and MLBAM have been
excluding LIVE-Fi® technology from its defendant 30 national baseball
teams and stadiums based on extended venue ticket service contracts
with defendant Ticketmaster. The terms of use (TOU) solicit
unconditional releases in exchange for the consumer's right to purchase
tickets on its website.

5.    It is alleged that defendants MLB and MLBAM and the
plaintiff Amron are making, using selling, offering for sale, and
importing products and services that practice LIVE-Fi®'s claimed
inventions without authorization.

6.    LIVE-Fi® properly moves pursuant to FRCP Rule 24(a)(b).
*Bridgeport v Delmonte*,  602 F. 3d 469 (473 (2d Cir. 2010) to be granted
the right to intervene.

7.    There are three issued LIVE-Fi® patents and copyrights and
13 pending patents in LIVE-Fi®'s portfolio with eleven confidential
patent applications pending before the United States Patent and
Trademark Office (USPTO). [5] The inventions are the priority  privacy-
first alternative to defendant Ticketmaster's opaque data flows and
coerced release of consumer data mandated when the consumer logs in
the Ticketmaster website to purchase tickets for an event. The patents

---

[5] Gurvey US Patent Nos. 11403566, D647910S and 7603321

also serve as a revenue unlock for artists and venues via ethical advertising and ticket resale systems. In a nutshell, LIVE-Fi® methods restore transparency and revenue equity in live entertainment and sports and maximum revenues generated from every live event. By enforcing its rights in this lawsuit, LIVE-Fi® is not just protecting innovation but empowering artists and venues to reclaim value from data they create and generate.

8.    One preferred embodiment discloses the apparatuses, systems and designs for privacy-first direct-to-user event interaction content enablement, venue readers, multifunctional bar codes, confidential royalty accounting, secured data transmissions and AI analysis methods and designs for new venue architecture.

9.    The 11403566 third US patent that issued on August 2, 2022 is a continuation of the October 13, 2009 7603321 patent. It was required to be granted a hearing before the SDNY as soon as it issued. *Anza Technology v. Mushkin*, 934 F. 3d 1349 (Fed Cir. 2019); *Metzler investments Gmbh v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir. 2020); *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2011). That patent issued an unprecedented 17 years after the relevant patent application was filed in 2005 (11253912).  Per the Federal Circuit, the deadline is three years from the date of filing, making the 566 <u>late by fourteen years.</u> *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010). The 566 patent is considered a standard essential patent for ticketing management and by law, all claims should have issued in 2008.  The SDNY never granted an infringement hearing against the named defendants Live Nation, Phish or Cowan Liebowitz & Latman.

10.    However, defendant MLB and MLBAM were not parties in the previous SDNY lawsuit and with no infringement hearings ever allowed, no collateral estoppel or claim preclusion can be entered. *Lucky*

*Brand Dungarees v. Marcel Fashions*, 140 S. Ct. 1589, 590 US ___
(2020)[6]

11.    A *sua sponte* investigation was opened by the US
Commissioner of Patents Wynn Coggins to investigate the cause for
prejudicial delay.  It was determined that defendants MLB, MLBAM
and Live Nation Entertainment's common intellectual property
attorneys at Cowan Liebowitz & Latman of NYC, were also
representing LIVE-Fi® counsel Weissbrod Gurvey before the USPTO
without disclosing conflicts of interest. The Cowan lawyers and their
defense attorney Supple engaged in collusive conflict of interest
violations and *ex parte* obstruction of justice with NYS officers of the
courts before the state courts, the SDNY, the USPTO and Federal
Circuit.  Supple was dually serving as a NYS staff attorney at the First
Dept. An order of the First Dept. entered April 21, 2016 identified
Supple as the manufacturer and forger of "ordered concealed" and
unserved state documents that were circulated to the NYS court officers
in the First Dept., to the NYS Office of Court Administration, to the
SDNY, to the Federal Circuit and to USPTO officers. The legal result
was the unprecedented delay in issuance and enforcement rights in and
to LIVE-Fi® patents.

12.    The Commissioner found that conflicts of interest violations
admitted to by the Cowan firm in withheld files were per se patent
ethics violations in breach of federal mandates. 37 CFR 2.10, 2.19,
10.66, 11.108, 11.116. The Cowan practitioner violations also included
abandonment of patent applications and withholding of LIVE-Fi®'s
USPTO files and caused forfeiture of valuable priority dates. The 2d
Circuit ordered production of these files in 2012 (462 Fed Appx. 26) and
reversed an *ex parte* stay of patent discovery as abuse of discretion

---

[6] LIVE-Fi®'s  first SDNY infringement complaint docketed and date stamped on
April 22, 2010  was deleted ex parte by a clerk in 2013, Dionisio Figueroa, who upon
belief was convicted of taking bribes in 2023 by the US Dept. of Justice.

secured by Live Nation and Cowan's defense attorneys, Hinshaw & Culbertson, Supple and Steven Schortgen of Baker Botts. The Cowan and Hinshaw violations induced the Commissioner of Patents to take fourteen (14) of LIVE-Fi®'s applications out of the queue *sua sponte* for seven years to complete the investigation in violation of the Administrative Procedures Act. [7] 5 USC §§500-596 (APA)

13.    The APA expressly required the USPTO and all federal tribunals to order service on LIVE-Fi® of the results of the Commissioner's investigation. But LIVE-Fi® was never served and all FOIA requests filed at the USPTO, the First Dept. and the SDNY were ignored since 2017.

14.    In 2025, it was discovered that OCA attorney Shawn Kerby who got the forged documents circulated from Supple, began writing *ex parte* letters to the Federal Circuit in 2018 not to hear LIVE-Fi®'s "arising under" appeals to orders of the SDNY denying hearings on infringement, inducing infringement and willful infringement. The documents were never ordered served on LIVE-Fi®. They were fraudulent and defamatory saying that LIVE-Fi®'s counsel was disbarred in NYS. **LIVE-Fi®'s counsel was never disbarred and never sanctioned in any order by the NY Court of Appeals, mandating injunctive relief for state officers' continuing violations of constitution rights.**

15.    **Injunction was granted by the NDNY in 24cv211 on September 5, 2025 to compel production of the complete state files against NYS court officers.** There is no immunity for malicious harassment without jurisdiction. *Forrester v. White*, 484 US 219 (1989); *Stump v. Sparkman*, 435 US 349 (1978)

---

[7] 37 CFR 2.10,. 2.19, 01.66, 11.108, 11.116.

16.    By 2017, the Hinshaw lawyers and Supple were required to withdraw from the Cowan firm's SDNY representation or be disqualified. NY's Judiciary Law Part 1240.6d. They never withdrew and disqualification was never ordered. This matter is before the US Supreme Court with orders to reverse the Federal Circuit's orders transferring three arising under patent appeals to orders of the SDNY denying infringement hearings against defendants Live Nation and Cowan Liebowitz. 18-2076; 20-1620; 23-134. The 2d Circuit that has no jurisdiction to hear arising under patent appeals. Supremacy Clause, Art. VI, Cl. 2; *Haywood v. Drown*, 556 US 729(2009). See, US Supreme Court Docket #24-7441.

17.    However, the pending US Supreme Court appeal has nothing to do with LIVE-Fi®'s right to enforce its patents against defendants MLB and MLB Advanced Media and seek recourse against the plaintiff Amron herein for bad faith and willful blindness before the USPTO.

18.    There can be no prejudice to any parties if LIVE-Fi®'s motion seeking intervention is granted because discovery has hardly begun.  Weissbrod Gurvey's recent discovery of the *ex parte* defamatory documents circulated since 2018 by NYS OCA officer Shawn Kerby and clerk San Younger who worked in consort with defendant Live Nation's and the Cowan firm's defense lawyer Supple did not occur until 2025, delaying discovery through no fault of LIVE-Fi®.  *Detention Watch Network v. US ICE*, 2016 WL 11793613.

19.    The NDNY order entered an injunction on September 5, 2025 ordering NYS court officers to produce the complete state files corrupted with entry of forged and fraudulent documents by defendant Live Nation' and the Cowan firm's defense attorneys. There is no dispute that Supple misused his concealed state post and state authority, to enter forged and unserved documents into ordered

concealed NYS files <u>without jurisdiction</u> over LIVE-Fi®'s California counsel, and solicit illegal acts by other NYS court officers to interfere with federal patent proceedings before the SDNY, the United States Patent and Trademark Office (USPTO), the US Court of Appeals for the Federal Circuit and the CACD.

20.    The stated preclusion entered in 2010 by the DCD in the competitive impact statement proscribing the withholding of ticketing data from non-ticketing businesses *was ordered to prevent the merged entity from leveraging ticketing dominance and to foreclose competitors from adjacent markets such as analytics, market access, direct to fan marketing, and fan engagement platforms*.

21.    Because defendant Ticketmaster's systems are opaque and unsecured, a confidential data transmission and hybrid encrypted system also performing AI transmission matrices remains sorely coveted by competitors. It cannot be excluded by defendants MLB and MLBAM as derivative venture partners or licensees of defendant LNE.

22.    In the parallel antitrust and divestiture lawsuit, the court found that defendants' anticompetitive acts included a plethora of acts in addition to the proscriptions ordered by the DC District Court. This is proven by the EDNY criminal proceedings against defendant Ticketmaster filed in 2021 and the other anticompetitive acts of forgery and fraud by defendant Live Nation Entertainment's attorneys in ordered concealed NYS court files. *US v. Ticketmaster*, 21-cr-22, 24 (EDNY).  Documents were found in these files manufactured in 2011 that affixed the signature of a 2002 former AGC chief counsel, Paul Curran, who died of cancer in 2007.

# MEMORANDUM OF LAW

23.     A third party may see intervention as of right under Rule 24(a)(2) if:

(i)     It has a legally protectable interest such as market access and relevant US patents which LIVE-Fi® does own and control;

(ii)    The outcome of the lawsuit may impair those interest(s) such as LIVE-Fi®'s continuing right to get injunctive relief, procure discovery of withheld and confidential USPTO files, preclusion orders and injunctive relief, and to recover strict liability infringement damages that has already been delayed based on defendants' misconduct through its Cowan Liebowitz & Latman and Hinshaw lawyers.

(iii)   Defendants MLB and MLBAM may possess trade secrets related to ticketing and data architecture, user analytics and venue operations disclosed to defendants by LIVE-Fi®'s common USPTO lawyers. The Cowan lawyers were found to have engaged in breach of fiduciary duty, attorney client privilege by the Commissioner of Patents. The trade secrets were disclosed to Cowan Liebowitz & Latman, previous SDNY defendant, under confidentiality obligations and were improperly shared with defendants MLB and MLBAM.

(iv)    The outcome of this lawsuit could further impair LIVE-Fi®'s already-delayed recovery of strict liability patent infringement damages and copyright infringement damages based on pre-existing patents.

(v)     In addition, the outcome could impede LIVE-Fi®'s recovery
        of damages and treble damages based on the plaintiff
        Amron's bad faith and willful blindness and defendant MLB
        and MLBAM's USPTO attorneys' conflict of interest[8] and
        misappropriation found by the US Commissioner of Patents.
        (*Mindy's Cosmetics v. Dakar*, 611 F. 3d 590 (9th Cir. 2010));

(vi)    The plaintiff herein cannot adequately represent all of
        LIVE-Fi®'s patent interests when LIVE-Fi® is the priority
        patentee holding more comprehensive patents against the
        same defendants. *Detention Watch Network v. US ICE*, 2016
        WL 11793613 (SDNY); *Brotherhood of R.R. Trainmen v.
        Baltimore & O.R. Co.*, 331 US 519 (1947)

24.     LIVE-Fi®'s harm is ongoing and stems from:

(i)     Defendants MLB and MLBAM are both impairing access to
        confidential ticketing data in violation of the 2010 DCD final
        antitrust judgment and 2020 amended judgment based on
        contracts with defendants Live Nation and Ticketmaster.

(ii)    Upon belief defendants MLB and MLBAM have signed
        Ticketmaster's extended Terms of Use agreements wherein
        Ticketmaster is given the exclusive right to user ticket data
        from MLB and MLBAM ticketholders and customers.

(iii)   Defendants MLB and MLBAM continue willful infringement
        of LIVE-Fi® patents that remain in term further
        demonstrating a direct substantial and legally protectable
        interest in the subject matter of this litigation;

---

[8] This claim supports a claim for unjust enrichment and potentially a constructive
trust over divested revenues.

(iv)    Forgery crimes, *ex parte* obstruction of justice and collusion by defendant Live Nation and the Cowan firm's common lawyer Supple, who was doubling as a NY officer of the courts and perpetrated *ex parte* crimes on behalf of these defendants was confirmed on August 26, 2025 by limited access to state files by LIVE-Fi®'s attorney.  In response to shocking findings, the NDNY chief judge ordered production of the complete state files by injunction on September 5, 2025. However, to date the documents remained ordered concealed by the State in violation of due process of law and NY's Judiciary Law Part 1240 and prove unconstitutional protocols by NYS officers in patent litigation.  [9]

(v)     The disposition of this action will undoubtedly further delay and prejudice LIVE-Fi®'s continuing ability to protect its interests with respect to market access to venue clients, patent and copyright enforcement and to get injunctive relief against defendants for perpetrating crimes and unprivileged defamation to prevent infringement hearings.

(vi)    In addition, LIVE-Fi®'s unpublished patent applications are confidential property interests. They are entitled to protective orders against discovery production from this court. *Radio Music License v. BMI*, 347 FRD 262 (SDNY 2024)

(vii)   Moreover, the documents generated from defendant Cowan's participation in *ex parte* conflicts of interest violations before the USPTO, obstruction of justice and having its lawyers

---

[9] The Federal Circuit fraud crimes were perpetrated without NY attorney jurisdiction malicious abusing process against LIVE-Fi®'s counsel Amy Weissbrod Gurvey who is only admitted in California. As such the fraud crimes are not protected by immunity.

circulate forged documents to tribunals, were required to be
served on LIVE-Fi® pursuant to the Administrative
Procedure Act (APA), 5 USC §§500-596, 701-706. That the
anticompetitive conduct involved violations of federal
statutes is a separate ground for granting intervention as a
matter of right under mandates of the US Supreme Court.
*Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331
US 519 (1947).

(viii)  NYS's Office of Court Administration attorney Shawn Kerby
has been circulating ex parte fraudulent and defamatory
documents to the Federal Circuit since 2018 concerning
defendant LIVE-Fi®'s counsel. The documents were
discovered in 2025 and were unlawfully intended to interfere
with the arising under patent appeals process without
jurisdiction over Weissbrod Gurvey in the capacity of a NY
attorney and must be assessed for sanctions.

25.    In a summation, there can be no dispute: (i) that ticketing
and advertising revenues derived from LIVE-Fi® patented methods are
being precluded by defendants Live Nation and Ticketmaster and hence
by licensee defendants MLB and MLB Advanced Media through
derivative acts; (ii) performing artists and third party innovators like
LIVE-Fi® are excluded from revenue participation despite enabling the
underlying value and profits through issued patents; and (iii) this also
supports a claim for unjust enrichment and potentially a constructive
trust over diverted revenues against the merged entity defendants and
their venture partners and licensees.

26.    Because defendants MLB and MLBAM are using ticket data
to perform functions covered by LIVE-Fi® delayed patents (e.g. resale,
multifunctional bar code authentication, targeted advertising and AI
analysis) and require access to ticket purchasers' data, defendant LIVE-

FI® may also assert breach of confidentiality if ticket data is not adequately protected by defendant Ticketholder's opaque system against defendants MLB and MLBAM. This violates both LIVE-Fi®'s intellectual property and privacy engineering principals.

27.    In summation, LIVE-Fi®'s intervention is necessary to protect legally cognizable interests, including: (i) preservation of patent rights under 35 USC §271; (ii) preservation of copyrights under Title 17; (iii) the right to protective orders to prevent destruction of confidential patent data and patent applications delayed by defendant MLB and MLBAM's Cowan lawyers' misconduct before the USPTO; and (iv) the right to preserve evidence relevant to *ex parte* crimes before NYS and SDNY court officers by defendant Live Nation and the Cowan SDNY attorney Richard Supple.

28.    The US Supreme Court has held that intervention is appropriate where the applicant's interests may be impaired but are not adequately represented. See, *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972); *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967).

29.    Documents circulated *ex parte* by NYS officers of the courts who were the Cowan defendants' defense attorneys before this court without motions on notice prove acts of unlawful influence, constitutional indifference, improper *ex parte* communications, and retaliatory exclusion from federally regulated platforms and patent appeals —all of which intersect with the monopolistic conduct alleged in the parallel antitrust and divestiture action pending before this Court.

**WHEREFORE**, Prospective Intervenor LIVE-Fi® respectfully seeks that this Court grant its Motion to Intervene in all respects based on the following statutes:

**Intervention as of right:  Rule 24(a)**

(1) LIVE-Fi® has a direct and substantial interest in the subject matter of this litigation including (a) enforcement of its patent rights and copyrights against all named parties; (b) protection of its trade secrets before the USPTO and proprietary data; and (c) prevention of further unauthorized use of its proprietary technology.

(2) LIVE-Fi®'s interest cannot be adequately represented by any of the existing parties and disposition of this case may impair or impede LIVE-Fi®'s ability to protect its rights.

**Permission Intervention under Rule 24(b)** is also proper based on:

(1) LIVE-Fi®'s claims share common questions of law and fact with the main action including: (a) use and dissemination of ticketing data; (b) the scope and application of LIVE-Fi®'s patented technologies; and (c) the contractual and regulatory obligations stemming from the Live Nation-Ticketmaster merger.

(2) Intervention will promote judicial economy and avoid duplicative litigation.

(3) There can be no prejudice to existing parties because discovery has hardly begun.

**IN SUM,**

LIVE-Fi® respectfully requests that this Court:
(a) Grant LIVE-Fi® an order to intervene as of right in this action;

(b) Permit LIVE-Fi® the right to file a third party complaint in intervention;

(c) Grant such other and further relief as the Court deems just and proper.

Dated;  Princeton, NJ
September 13, 2025
/amyweissbrodgurvey/

Respectfully submitted,
AMY WEISSBROD GURVEY
California Counsel