**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | |
| Plaintiffs, | Case No. 1:24-cv-03973-AS-SLC |
| v. | **REDACTED** |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., | |
| Defendants. | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PARTIALLY EXCLUDE THE EXPERT TESTIMONY OF PAUL K. MEYER**

December 22, 2025

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

   I.   MR. MEYER'S CROSS-INDUSTRY COMPARISONS ARE INADMISSIBLE ............. 2

     A.   The Comparisons Are Irrelevant, Unreliable, and Misleading ..................................... 2

     B.   Applicable Caselaw Supports Exclusion ...................................................................... 4

   II.   MR. MEYER'S TESTIMONY ON "SUPERCOMPETITIVE" PRICES AND PROFITS IS INADMISSIBLE ........................................................................................... 9

CONCLUSION .................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alfa Corp. v. OAO Alfa Bank*,
  475 F. Supp. 2d 357 (S.D.N.Y. 2007) ......................................................................... 8

*Bailey v. Allgas, Inc.*,
  148 F. Supp. 2d 1222 (N.D. Ala. 2000) ...................................................................... 5

*Bailey v. Allgas, Inc.*,
  284 F.3d 1237 (11th Cir. 2002) ................................................................................. 5

*Cayuga Indian Nation of New York v. Pataki*,
  83 F. Supp. 2d 318 (N.D.N.Y. 2000) ......................................................................... 7

*Celebrity Cruises, Inc. v. Essef Corp.*,
  434 F. Supp. 2d 169 (S.D.N.Y. 2006) ........................................................................ 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................................................... 6, 10

*In re Paraquat Prods. Liab. Litig.*,
  730 F. Supp. 3d 793 (S.D. Ill. 2024) ........................................................................ 10

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
  No. 05-MD-1720, 2022 WL 15053250 (E.D.N.Y. Oct. 26, 2022) ............................ 9

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
  No. 20 Civ. 3773 (LGS) 2022 WL 4225543 (S.D.N.Y. Sept. 13, 2022) ................... 8

*Mirkin v. XOOM Energy LLC*,
  No. 18-CV-2949, 2025 WL 16333 (E.D.N.Y. Jan. 2, 2025) .................................. 6, 7

*United States v. Gatto*,
  986 F.3d 104 (2d Cir. 2021) ....................................................................................... 2

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007) ....................................................................................... 2

### Rules

Fed. R. Evid. 702 ........................................................................................... 1, 2, 6, 10

Fed. R. Evid. 403 ........................................................................................... 1, 2, 7, 10

## <u>INTRODUCTION</u>

Defendants fail to meet their burden under Rule 702. They cite no credible reason why Mr. Meyer's Cross-Industry Comparisons—which compare Live Nation to groups that include fast food chains, smartphone manufacturers, airlines, and theme parks—are relevant to this case. They admit these comparisons do not serve to "refute market power" and muster only a vague assertion that they offer "context to Live Nation's financial results." Defs. Br. at 15. Defendants provide no meaningful explanation of why "context" regarding companies in industries with entirely different financial profiles would assist the jury in resolving a relevant factual issue.

Instead, Defendants' brief demonstrates how this testimony would be misleading. They argue that the jury should rely on the Cross-Industry Comparisons to evaluate the impact of Live Nation's "flywheel" on its profitability. *Id.* at 9. But comparing Live Nation's operating margins to those of McDonald's, Apple, or Sea World is irrelevant to this evaluation. There is a serious risk that presenting these comparisons would cause the jury to infer they carry probative weight that they do not. Accordingly, Rule 403 provides an additional basis for exclusion.

As to Mr. Meyer's testimony that Live Nation's profits are "inconsistent with what one would expect from a monopolist allegedly charging supercompetitive prices,"[1] Defendants offer a flawed solution. They now represent that Mr. Meyer will not "offer an opinion about the quantum or degree of profits one would expect from a monopolist." Defs. Br. at 19. However, they hold open the possibility that he will testify on whether Live Nation's prices or profits are "'supercompetitive' in a colloquial sense." *Id.* at 18, 20 n.4. Neither Defendants nor Mr. Meyer has offered a reliable definition of this term, much less one worthy of expert testimony. Thus, like the Cross-Industry Comparisons, this testimony is inadmissible and should be excluded.

---

[1] Ex. 2, Expert Surrebuttal Report of Paul K. Meyer, Oct. 29, 2025, ¶¶ 10, 28.

## ARGUMENT

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  Even when this burden is met, courts exclude expert testimony that would be unduly prejudicial.  *See United States v. Gatto*, 986 F.3d 104, 117–118 (2d Cir. 2021) (affirming exclusion under Rule 403).  Mr. Meyer's testimony fails on both fronts.

## I.    MR. MEYER'S CROSS-INDUSTRY COMPARISONS ARE INADMISSIBLE

### A.  The Comparisons Are Irrelevant, Unreliable, and Misleading

Defendants have not demonstrated that Mr. Meyer's use of out-of-industry businesses as comparators for Live Nation provides information relevant to this case.

*Valuation Benchmarking Firms.*  Defendants offer no new evidence to support Mr. Meyer's comparison of Live Nation's operating margin to those of the Valuation Benchmarking Firms.  Defendants continue to rely exclusively on two Board of Directors slides from 2021 and 2022 that compare these firms' valuation multiples based on their then-current *stock prices*.  *See* Pls. Br. at 4 n.7; Defs. Br. at 12.  These slides, which appear alongside other slides regarding Live Nation's stock price, assess only how capital markets were valuing these businesses.  *See* Ex. 5, LNE-LIT24-001000295, at -316–317; Ex. 6, LNE-LIT24-000019463, at -505–509.  There is no indication that the Board ever believed comparing these firms' *operating margins* would be appropriate or informative for any purpose.

Defendants try to connect the dots by arguing that "profitability is an input into a company's valuation."  Defs. Br. at 12.  But Mr. Meyer's own analysis demonstrates that these firms' operating margins are not correlated to the valuation multiples that the Board reviewed.  For example, two of the firms with the *lowest* valuation multiples on the 2021 slide ██████████ ██████████) have two of the *highest* operating margins in Mr. Meyer's analysis, and while

2

Live Nation itself has one of the *highest* valuation multiples on this slide, Mr. Meyer purports to show that it has the *lowest* operating margin of the group.[2] Defendants' attempt to equate these modes of analysis fails and would only mislead the jury.

*S&P 500.* Mr. Meyer has conceded that the S&P 500 includes companies that are not "relevant comparator[s]" to Live Nation. Ex. 3, Deposition of Paul K. Meyer (Nov. 5, 2024) at 237:22–238:2. Defendants have no response to this testimony. In fact, they do not attempt to identify *any* member of the S&P 500 that they view as a relevant comparator. Aggregating hundreds of irrelevant data points does not produce probative evidence.

Defendants' only justification for using the S&P 500 as a comparator set is that Live Nation is a member of that index. Defs. Br. at 12. But the S&P 500 is "[c]onsidered to be a proxy of the U.S. equity market," and its inclusion criteria ensure only that members are large, domestic firms that meet certain technical requirements.[3] Nothing in these criteria suggests that members' business models are at all comparable or that comparing their operating margins would produce information relevant to this case.

*Meyer's "Big Tech" Firms.* Defendants offer less than two sentences to explain the relevance of comparing Live Nation to five handpicked "big tech" firms. They assert in passing that these firms have "relevant operational structures" but offer zero explanation of what this means. Defs. Br. at 9. Defendants then claim that Mr. Meyer selected this group "to highlight companies with 'significant free cash flow, really high operating profits, really high gross

---

[2] *Compare* Ex. 5 at -317 *with* Ex. 1, Expert Report of Paul K. Meyer, Sept. 16, 2025, p. 80 fig 9. Mr. Meyer based his affirmative analysis on this 2021 slide alone. *See* Pls. Br. at 4 n.7. Defendants' justification for including additional firms from the 2022 slide (█████████████████) is that Mr. Meyer added them "in response to Dr. Anderson's critique." *See* Defs. Br. at 12. Dr. Anderson did not suggest these would be appropriate comparators, nor would she. She merely stated that Mr. Meyer should explain his methodology for choosing firms from these slides after he failed to do so. Ex. 4, Rebuttal Expert Report of Shannon Anderson, Oct. 9 2025, ¶ 103.

[3] *See* S&P Global, S&P U.S. Indices Methodology, at 4, 7–11, *available at* https://www.spglobal.com/spdji/en/documents/methodologies/methodology-sp-us-indices.pdf.

margins,' to illustrate that '[t]hat's not this business.'" *Id.* at 14.  This only confirms that Mr. Meyer's approach was results-driven.  Intentionally choosing five unrelated firms to reach a predetermined conclusion does not represent a reliable methodology.

Defendants' remaining attempts to demonstrate relevance fare no better.  They defend Mr. Meyer's use of company-wide figures on the basis of Live Nation's flywheel business model. *See id.* at 8.  But while Live Nation's business lines do have mutually reinforcing effects, this does not establish that company-wide figures accurately measure Live Nation's performance in each relevant market individually.  Defendants also downplay statements by Live Nation's leadership indicating that operating margins are an inappropriate metric for assessing its Concerts segment.  *See* Pls. Br. at 13–14; Defs. Br. at 11.  But the Concerts segment is the largest component of the company-wide operating margin, as it accounted for roughly $19 billion of Live Nation's total $23.2 billion in revenue last year.[4]  Defendants fail to explain why it is appropriate for Mr. Meyer to rely on operating margins to assess the company as a whole when that same measure is inappropriate for assessing such a large part of the company.[5]

### B.  Applicable Caselaw Supports Exclusion

Defendants' attempt to reframe the applicable caselaw fails, and even the new cases they cite illustrate the problems with Mr. Meyer's approach.

*First*, Defendants attempt to reframe *Bailey*—a case in which the Eleventh Circuit found that comparing the defendant's profitability to that of the Fortune 500 did not produce

---

[4] Live Nation Entertainment, Inc. 10-K (Dec. 31, 2024), at 91.

[5] Defendants also state that the Cross-Industry Comparisons "do not rely solely on operating margin."  Defs. Br. at 11 n.2.  While Mr. Meyer's S&P 500 comparison assesses operating margins and three other metrics, his comparison with the Valuation Benchmarking Firms assesses only operating margins.  *See* Ex. 1, p. 80 fig. 9.  Mr. Meyer did not specify *any* metrics on which he believes Live Nation should be compared to "big tech" firms despite claiming (in one instance) that this comparison served as his basis for determining what is "supercompetitive."  *See* Ex. 3 at 78:6–14; Ex. 1 ¶ 236 n.356.

meaningful information.  *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1253 (11th Cir. 2002).  In doing so, Defendants claim that the case's procedural posture "demonstrates that Plaintiffs' arguments more rightly go to the sufficiency of Mr. Meyer's work not the admissibility."  Defs. Br. at 6.  It does not.

In *Bailey*, the district court excluded the expert's testimony and granted summary judgment for the opposing party.  *See Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1246–47 (N.D. Ala. 2000).  Defendants point out (as Plaintiffs previously noted) that the Eleventh Circuit did not reach the question of admissibility on appeal because it found that summary judgment would have been warranted even if the testimony had been admitted.  *See* Pls. Br. at 9 n.8.  Contrary to Defendants' suggestion, this posture does not diminish the fact that the district court excluded the expert's testimony, nor does it diminish the Eleventh Circuit's holding that the expert's comparison with the Fortune 500 failed to produce meaningful information.  *See Bailey*, 284 F.3d at 1253.[6]  As the Eleventh Circuit explained, in order for the comparison to have "*any* significance," it would have to compare the defendant's profitability to that of "similar firms in the same or similar industries."  *Id.* (emphasis added).  After the expert submitted a supplemental affidavit comparing the defendant to a narrower group, the court found that the comparison was still "meaningless" because even this narrower group included firms that were "in no way similar to [the defendant] or its industry."  *Id.* at 1253 n.22.

---

[6] Defendants also incorrectly claim a prior decision in *Bailey* supports their position.  Defs. Br. at 6, 15–16.  It is true, as Defendants note, that the district's court's initial order excluding the expert's testimony was vacated on appeal.  *See Bailey*, 284 F.3d at 1241-42 (recounting prior history).  However, the Eleventh Circuit did not hold in that appeal that the testimony was admissible.  Rather, the Eleventh Circuit remanded the case so that the district court could apply the *Daubert* standard, which it had not done.  *See id.* at 1241–42.  When the district court applied this standard on remand, it found that the testimony was inadmissible.  *Bailey*, 148 F. Supp. at 1234–46.  The fact that the district court did not originally apply *Daubert*, and found the testimony inadmissible once it did so on remand, does not support Defendants' position.

Like the expert in *Bailey*, Mr. Meyer does not compare Live Nation's profitability to that of "similar firms in the same or similar industries," rendering these comparisons "meaningless." Defendants' other attempts to distinguish *Bailey* do not address this critical fact. *See* Defs. Br. at 15–16. Regardless of *Bailey*'s procedural posture, whether Mr. Meyer's comparisons produce meaningful information clearly bears on this Court's analysis under Rule 702, which requires that expert testimony be both relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–93 (1993). Mr. Meyer's "meaningless" comparisons fail this test.

*Second*, Defendants attempt to distinguish *Mirkin*—a case in which the court excluded a comparison of the defendant's profit margins to those of the companies in the Dow Jones Industrial Average ("DJIA"). *See Mirkin v. XOOM Energy LLC*, No. 18-CV-2949, 2025 WL 16333, at *6–*7 (E.D.N.Y. Jan. 2, 2025). Defendants suggest that the court's sole basis for exclusion was the difference in size between the defendant and the members of the DJIA. Defs. Br. at 16. This is incorrect.

The *Mirkin* court did cite size differences, but it also relied on the fact that the defendant operated in a different industry with a different business model than many firms in the DJIA. *See Mirkin*, 2025 WL 16333, at *6 ("[A]part from Chevron, none of the companies are even in the same sector (energy) as XOOM, much less the same industry. . . . [T]he DJIA includes Coca-Cola, Nike, Microsoft, Merck, and Disney. [The expert] offers no basis for his opinion that the margins realized from the production and sale of products like soda, clothing, software, pharmaceuticals, and entertainment have any relationship to XOOM's margins selling (but not producing) energy.") (internal citation and emphasis omitted). Based on these factors, the court found that the expert's analysis was akin to other cases in which courts have excluded "apples

6

and oranges" comparisons.  *Id.*  Mr. Meyer's analysis fits comfortably within this caselaw, "mandating exclusion."  *Cayuga Indian Nation of New York v. Pataki*, 83 F. Supp. 2d 318, 327 (N.D.N.Y. 2000).[7]

Moreover, Defendants' acknowledgement that size differences were a relevant factor in *Mirkin* cuts against them.  In his "big tech" comparison, Mr. Meyer compares Live Nation to Meta (which is seven times its size), Apple (which is seventeen times its size), Alphabet (which is fifteen times its size), NVIDIA (which is five times its size), and Microsoft (which is eleven times its size).[8]  Defendants offer no explanation of why size differences are not similarly problematic here.

Further damning for Defendants is the *Mirkin* court's application of Rule 403.  The court held that, even if the expert's comparison with the DJIA had "some minimal level of probative value," it would be "substantially outweighed by the danger of 'confusing the issues' and 'misleading the jury.'"  *Id.* at *7 n.4 (quoting Fed. R. Evid. 403).  The expert's "apparent inability to explain the applicability of the various DJIA companies' margins to XOOM's margins 'would leave the factfinder to guess at the answers' to that question."  *Id.* (internal citation omitted).  Mr. Meyer's testimony would leave the jury in exactly the same position, bolstering the case for exclusion.

---

[7] Elsewhere, Defendants characterize a ruling from *U.S. Airways* as "denying defendants' motion to exclude the testimony of [an] accounting expert who compared [a] company's profitability to 'other big companies' in the S&P 500."  Defs. Br. at 13.  That characterization is incorrect.  The ruling that Defendants cite pertained to the admissibility of testimony by the plaintiff's expert, Mr. Zimmerman, who had not performed a comparison with the S&P 500.  Defendants' quote comes from a transcript segment in which a *different* expert (Mr. Meyer himself) was posed a question about the S&P 500 by counsel, but the court did not issue a ruling on the admissibility of that testimony.  *See id.* at 13 (citing Trial Tr. at 4081:10-4082:11 (Meyer)).

[8] *See* Live Nation Entertainment, Inc. 10-K (Dec. 31, 2024), at 32 (reporting $23.16 billion in revenue); Meta Platforms, Inc. 10-K (Dec. 31, 2024), at 60 (reporting $164.5 billion in revenue); Apple Inc. 10-K (Dec. 31, 2024), at 29 (reporting $391.04 billion in net sales); Alphabet Inc. 10-K (Dec. 31, 2024), at 35 (reporting $350.02 billion in revenue); NVIDIA Corporation 10-K (Jan. 26, 2025), at 52 (reporting $130.5 billion in revenue); Microsoft Corporation 10-K (June 30, 2024), at 43 (reporting $245.1 billion in revenue).

*Third*, relying on *Manbro* and *Alfa*, Defendants suggest that the Court should view *any* criticism of comparator selection as going to the weight of the comparison rather than its admissibility.  Defs. Br. at 14.  These cases do not stand for that proposition and further illustrate the shortcomings of Mr. Meyer's approach.

In *Manbro*, the court admitted a comparison of firms that were *all involved in the same industry* (the "naptha-cracking industry").  *See* Pl.-Counter Def.'s Mem. of Law in Opp'n to Defs.-Counter Cls.' Mot. to Exclude the Reports & Testimony of Dr. Antoinette Schoar at 8, *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 Civ. 3773 (LGS) (S.D.N.Y. Jan. 24, 2022), ECF No. 184.  The movant's sole challenge to the comparison was that the comparator firms were located outside of India.  *See id.*  In rejecting this argument, the court reasoned that selecting comparators involves the exercise of expert judgment, that there was "no suggestion" the expert had "failed to exercise expert judgment," and that the expert had "explained why she identified these companies as comparable." *Manbro*, 2022 WL 4225543, at *9 (S.D.N.Y. Sept. 13, 2022).  Unlike in *Manbro*, Mr. Meyer compares firms across completely unrelated industries and has not explained why these firms are comparable to Live Nation.

Likewise, in *Alfa*, the court admitted a comparison *among insurance companies*, rejecting an argument that the comparison was inadmissible because the subject firm was "not as well-known as State Farm or Prudential."  *Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).  The court noted that comparator selection may not "approach the 'Utopian ideal' of identifying the perfect clone," *id.*, but the court did *not* suggest that completely unrelated firms would suffice.  In fact, the court was quoting another case in which an expert had compared a cruise line *to other cruise lines*.  *See id.* (quoting *Celebrity Cruises, Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 189 (S.D.N.Y. 2006)).

Here, Plaintiffs are not arguing that each comparator must be "the perfect clone" of Live Nation (and indeed are not challenging the admissibility of Mr. Meyer's comparisons with other promotions and ticketing firms, even though a number of those firms are dissimilar from Live Nation in many ways). Rather, Plaintiffs challenge Mr. Meyer's departure from the practices in these cases to compare Live Nation to firms in unrelated industries with entirely different financial profiles.[9] The Court should reject Defendants' overbroad interpretation and exclude these comparisons under established standards of admissibility.

## II.    MR. MEYER'S TESTIMONY ON "SUPERCOMPETITIVE" PRICES AND PROFITS IS INADMISSIBLE

In his surrebuttal report, Mr. Meyer offered the opinion that Live Nation's profits are "inconsistent with what one would expect from a monopolist allegedly charging supercompetitive prices." Ex. 2 ¶¶ 10, 28. Facing possible exclusion, Defendants now represent that Mr. Meyer will *not* "offer an opinion about the quantum or degree of profits one would expect from a monopolist." Defs. Br. at 19. This representation would prevent Mr. Meyer from testifying that Live Nation's profits "are not at the high level one would logically expect from a company allegedly dominating the marketplace." *Id.* at 18–19.

Perplexingly, however, Defendants seek to preserve Mr. Meyer's ability to testify about whether Live Nation's prices or profits are "supercompetitive" in some other undefined way. They argue that "Mr. Meyer's opinion that Live Nation's modest profits are 'inconsistent with what one would expect from a monopolist allegedly charging supercompetitive prices' *is admissible*." *Id.* § II (heading) (emphasis added). They insist that Mr. Meyer was not referring

---

[9] For the same reason, Defendants' reliance on the statement that comparators need not be "perfect" is a strawman. *See* Defs. Br. at 16 (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* No. 05-MD-1720, 2022 WL 15053250 (E.D.N.Y. Oct. 26, 2022)). Plaintiffs are not arguing that comparators must be "perfect." In the case Defendants cite, the court admitted the expert's testimony because the comparator firms were "in the payments space," which justified comparing them to Visa and Mastercard. *See id.* at *29–*30; Pls. Br. at 12.

to *supra*competitive pricing and was using "'supercompetitive' in a colloquial sense." *Id.* at 18. And they contend that concerns over Mr. Meyer's conflicting definitions of "supercompetitive" should "go to the weight of the evidence, not to its admissibility." *Id.* at 20 n.4.

Even as modified by Defendants' new representation, Mr. Meyer's testimony on this topic would only sow confusion. Plaintiffs are not aware of any "colloquial sense" in which the term "supercompetitive" (or "*supra*competitive") is used. Defendants do not explain whether their colloquial form of "supercompetitive" is intended to convey anything beyond the fact that Live Nation's operating margins (measured as a percentage of revenue) are less than those of certain other firms. If this is all Mr. Meyer means to say, he should limit his testimony to that point and omit misleading labels.

As Plaintiffs have explained, Mr. Meyer offered at least three conflicting definitions of "supercompetitive" in his deposition. Pls. Br. at 15–16. Having failed to provide a coherent definition of this term, any testimony that Live Nation's prices or profits are not "supercompetitive" would be irrelevant and unreliable. *See In re Paraquat Prods. Liab. Litig.*, 730 F. Supp. 3d 793, 827–29 (S.D. Ill. 2024) (excluding testimony under Rule 702 where expert had redefined a standard "no less than *three* times, creating more questions than answers"). It would also pose a serious risk of misleading the jury. *See Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses.") (internal citation omitted). Accordingly, the proposed testimony does not satisfy the requirements of the Federal Rules of Evidence and should be excluded.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion to partially exclude the expert testimony of Paul. K. Meyer.

Respectfully submitted,


 */s/ Bonny Sweeney*
BONNY SWEENEY
*Co-Lead Trial Counsel*
David Dahlquist
*Co-Lead Trial Counsel*
Matthew Jones
Jonathan S. Goldsmith
Zeynep Elif Aksoy
Andy Tan
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Bonny.Sweeney@usdoj.gov
David.Dahlquist@usdoj.gov

*Attorneys for Plaintiff United States of America*

*/s/ Robert A. Bernheim*
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

*/s/ Amanda J. Wentz*
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
Fax: (501) 682-8118
Email:  amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

*/s/ Brent K. Nakamura*
Brent K. Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 9200-6
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

*/s/ Conor J. May*
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

*/s/ Victoria Maria Orton Field*
Victoria Maria Orton Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: victoria.field@ct.gov
*Attorney for Plaintiff State of Connecticut*

*/s/ Elizabeth G. Arthur*
Elizabeth G. Arthur (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Elizabeth.arthur@dc.gov
*Attorney for Plaintiff District of Columbia*

*/s/ Lizabeth A. Brady*
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

*/s/ Richard S. Schultz*
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

12

*/s/ Jesse Moore*
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

*/s/ Noah Goerlitz*
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 281-5164
Email: noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

*/s/ Christopher Teters*
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

*/s/ Mario Guadamud*
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

*/s/ Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust
Division
Office of the Massachusetts Attorney
General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of
Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ Lee Morris
Lee Morris (admitted pro hac vice)
Special Assistant Attorney General
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-9011
Email: Lee.Morris@ago.ms.gov
Attorney for Plaintiff State of Mississippi

/s/ Justin C. McCully
Justin C. McCully (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

/s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ Zachary Frish
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New
Hampshire*

/s/ Andrew F. Esoldi
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
Attorney for Plaintiff State of New Jersey

/s/ Jonathan Hatch
Jonathan Hatch
Assistant Attorney General
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

/s/ Evan Crocker
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General, Division
Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

/s/ Francisco Benzoni
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email:

14

*Attorneys for Plaintiff State of North Carolina*

*/s/ Sarah Mader*
Sarah Mader (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

*/s/ Cameron R. Capps*
Cameron R. Capps (admitted *pro hac vice*)
Deputy Attorney General
Consumer Protection
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma  73105
Telephone:  (405) 522-0858
Fax:  (405) 522-0085
Email: Cameron.Capps@oag.ok.gov
Attorney for Plaintiff State of Oklahoma

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy
Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted *pro hac vice*)
Assistant Deputy Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South Carolina*

*/s/ Bret Leigh Nance*
Bret Leigh Nance (admitted *pro hac vice*)
Assistant Attorney General
1302 E. Hwy 14, Suite 1
Pierre SD 57501-8501
Email: bretleigh.nance@state.sd.us
Telephone: (605) 773-3215
Bar # 5613
*Attorney for Plaintiff State of South Dakota*

/s/ Hamilton Millwee
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ Diamante Smith
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust
Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
*Attorney for Plaintiff State of Texas*

/s/ Marie W.L. Martin
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

/s/ Sarah L. J. Aceves
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

/s/ Douglas L. Davis
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

/s/ Caitlin M. Madden
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

16

_/s/ William T. Young_
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
_Attorney for the Plaintiff State of Wyoming_

**<u>Certificate of Compliance</u>**

     In accordance with Local Civil Rule 7.1(c), and Rule 8(c) of this Court's Individual Practices in Civil Cases, I certify that the word count of this memorandum of law is 3,496 words, which includes footnotes but excludes the caption, any index, table of contents, table of authorities, signature blocks, or any certificates. This certificate is made in reliance on the word count of the word-processing program used to prepare the document.


                                    *<u>/s/ Bonny Sweeney</u>*
                                    BONNY SWEENEY
                                    *Co-Lead Trial Counsel*

                                    *Attorney for Plaintiff United States of America*