# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.,* | |
| *Plaintiffs,* | Case No. 1:24-cv-03973 (AS)(SLC) |
| v. | **ORAL ARGUMENT REQUESTED** |
| LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER L.L.C., | **REDACTED** |
| *Defendants.* | |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE REPORTS, OPINIONS, AND TESTIMONY OF <u>PLAINTIFFS' EXPERT DR. SHANNON ANDERSON</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................2

    I.     PLAINTIFFS' OPPOSITION CONFIRMS THAT DR. ANDERSON LACKS THE REQUISITE EXPERTISE TO OFFER HER OPINIONS. .............2

    II.    PLAINTIFFS' OPPOSITION CONFIRMS THAT DR. ANDERSON'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE IRRELEVANT, UNHELPFUL, AND RISK UNFAIR PREJUDICE AND CONFUSION..................................................................................................6

        A.     Dr. Anderson's Economic and Monopoly Profits Opinions Are Inadmissible. ...............................................................................6

        B.     Dr. Anderson's Financial Reporting Opinions Are Inadmissible...............7

        C.     Dr. Anderson's Management View Opinion Is Inadmissible......................9

        D.     Dr. Anderson's Rebuttal Opinions Are Inadmissible. ...............................10

CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adesina v. Aladan Corporation*,
    438 F. Supp. 2d 329 (S.D.N.Y. 2006)........................................................................6

*Anderson News, L.L.C. v. Am. Media Inc.*,
    No. 1:09-cv-2227, 2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87
    (2d Cir. 2018).............................................................................................................9

*Atl. Specialty Ins. v. AE Outfitters Retail Co.*,
    970 F. Supp. 2d 278 (S.D.N.Y. 2013)........................................................................6

*City of New York v. FedEx Ground Package Sys., Inc.*
    No. 1:13-cv-9173, 2018 WL 4961455 (S.D.N.Y. Oct. 15, 2018)...............................8

*Ellis v. YMCA Camp Mohawk, Inc.*,
    615 F. App'x 697 (2d Cir. 2015) ...............................................................................3

*In re LIBOR-Based Fin. Instruments*,
    No. 1:11-MD-2262, 2025 WL 2733020 (S.D.N.Y. Sep. 25, 2025)..........................10

*In re Lyman Good Dietary Supplements Litig.*,
    No. 1:17-cv-8047, 2019 WL 5682880 (S.D.N.Y. Oct. 31, 2019)...............................6

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
    No. M21-88, 2008 WL 1971538 (S.D.N.Y. May 7, 2008)..........................................4

*In re Mirena IUD Products Liability Litigation*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016), 169 F. Supp. 3d ...........................................5

*Johnson & Johnson Vision Case, Inc. v. CIBA Vision Corporation*,
    No. 1:04-cv-7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006)...............................4

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).................................................................................................2

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016)........................................................................4

*McCullock v. H.B. Fuller Company*,
    61 F.3d 1038 (2d Cir. 1995)......................................................................................5

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)......................................................................................3

*Padilla v. Hunter Douglas Window Coverings, Inc.*,
  14 F. Supp. 3d 1127 (N.D. Ill. 2014) ........................................................................3

*Scentsational Techs., LLC v. Pepsi, Inc.*,
  No. 1:13-cv-8645, 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ......................................9, 11

*Song v. Turtil*,
  No. 7:21-cv-2269, 2022 WL 1239590 (S.D.N.Y. Apr. 27, 2022) ............................................3

*United States v. Bankman-Fried*,
  No. 1:22-cr-0673, 2023 WL 6162865 (S.D.N.Y. Sep. 21, 2023) ............................................9

*United States v. Gatto*,
  986 F.3d 104 (2d Cir. 2021) ........................................................................................7

*Washington v. Kellwood Company*,
  105 F. Supp. 3d 293 (S.D.N.Y. 2015) ..........................................................................4

*Wells Fargo Bank, N.A. v. U.S. Life Ins. Co.*,
  No. 1:22-cv-8606, 2025 WL 2220948 (S.D.N.Y. Aug. 4, 2025) ...........................................11

**Statutes & Rules**

Fed. R. Evid. 702 ................................................................................................ passim

## INTRODUCTION

The incontrovertible evidence is that Live Nation earned only modest profits over the period Plaintiffs allege it was a monopolist.  In a desperate attempt to respond to that fact, Plaintiffs proffer Dr. Anderson, who neither is qualified to, nor even purports to, address how those profits were calculated or how, if at all, they should be considered as a matter of economics.  In their opposition ("Opposition" or "Opp."), Plaintiffs do not meaningfully dispute that Dr. Anderson's opinions are outside her expertise and fail to address any relevant issue.  Instead, Plaintiffs' concessions confirm the real purpose of her testimony:  to prejudice and confuse the jury by inviting them to distrust the profitability figures in Live Nation's public financials and to infer that Live Nation's real profits exceed its reported profits.  Dr. Anderson's opinions are the paradigm of inadmissible expert testimony, and should be excluded in their entirety for the reasons stated herein and in Defendants' opening motion ("Motion" or "Mot.").[1]

*First*, Dr. Anderson admitted that she has no expertise in financial accounting, economic profits, or monopoly profits.  *See, e.g.*, Ex. 3 (Anderson Tr.) 82:14–15, 172:4–6, 304:13–15.[2] Nevertheless, her opinions purport to speak to the relationships between accounting, economic, and monopoly profits and to interpret Live Nation's publicly reported financial statements—subjects far outside the scope of Dr. Anderson's management accounting expertise.  Plaintiffs' response that Dr. Anderson has a "base level of knowledge" of financial accounting and economics, Opp. 12, is telling.  A base level of knowledge does not an expert make; Rule 702

---

[1] Citations and quotations are omitted unless otherwise stated.  Capitalized terms used but not defined herein are as defined in the Motion (ECF No. 710).

[2] Exhibits are to the Declaration of Nicole M. Peles in Support of the Motion (ECF No. 713).

requires specialized knowledge and expertise for a witness to present expert testimony to a jury. Dr. Anderson does not meet this standard.

*Second*, Dr. Anderson's opinions would not assist the jury in deciding any relevant issue. Dr. Anderson does not calculate Live Nation's economic or monopoly profits; indeed, she opines that no accounting metric is suitable for evaluating monopoly behavior. She casts vague aspersions on Live Nation's publicly reported financials without offering any opinion on how the jury should evaluate Live Nation's performance. Plaintiffs argue these opinions are relevant because they provide "insight" into the views of Live Nation management, but offer no response to the fact that they merely regurgitate documents and testimony. And Dr. Anderson's Rebuttal Opinions are nothing more than a repackaging of her inadmissible affirmative opinions. All of these opinions risk juror prejudice and confusion by improperly casting doubt on Live Nation's public financials, and Plaintiffs do not seriously contend otherwise.

The Court should exclude Dr. Anderson's opinions in their entirety.

## ARGUMENT

## I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT DR. ANDERSON LACKS THE REQUISITE EXPERTISE TO OFFER HER OPINIONS.

Dr. Anderson explicitly disclaims any expertise in financial accounting, accounting profits, economic profits, or monopoly profits. Her Economic and Monopoly Profits Opinions, Financial Accounting Opinions, and Rebuttal Opinions—all of which purport to opine on those subjects—should be excluded as outside the scope of her expertise. Mot. 8–13.

As an initial matter, Plaintiffs argue that any dispute about Dr. Anderson's qualifications concerns the weight of her opinions, not their admissibility. Opp. 14. That is wrong. Rule 702 imposes on trial courts a "gatekeeping obligation" to ensure the "reliability and relevancy of expert testimony" presented to a jury, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999),

2

given the "unique weight such evidence may have in a jury's deliberations", *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Whether an expert witness is qualified is a "threshold question" for the court, not a factor for the jury to evaluate when weighing an expert's opinions. *Song v. Turtil*, No. 7:21-cv-2269, 2022 WL 1239590, at *3 (S.D.N.Y. Apr. 27, 2022).

As another threshold matter, Plaintiffs argue that a "base level of knowledge" gleaned from school coursework is sufficient to qualify an expert under Rule 702. Opp. 12–14, 19, 21–22. That too is wrong. Rule 702 is clear that expert testimony requires "specialized", not base, knowledge. *See Ellis v. YMCA Camp Mohawk, Inc.*, 615 F. App'x 697, 699 (2d Cir. 2015) (excluding expert opinion based on "generalized familiarity" because a "broad qualification falls well short of the specialized knowledge that [Rule] 702 demands"). Dr. Anderson lacks that specialized expertise in financial accounting and economics.

*First*, Dr. Anderson admitted—repeatedly and under oath—that she is not a financial accounting expert. *See, e.g.*, Ex. 3 (Anderson Tr.) 82:14–15 ("I've not put myself forward as an expert in financial accounting"); *see also* Mot. 8–10. That should end the inquiry. *See Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127, 1132 (N.D. Ill. 2014) (finding expert who conceded lack of expertise during deposition unqualified).

Plaintiffs misleadingly collapse management accounting and financial accounting into one field of "accounting" to leverage Dr. Anderson's management accounting qualifications. Plaintiffs even describe Dr. Anderson's textbook as an "accounting textbook". Opp. 2. But her textbook—*Fundamentals of Cost Accounting*—is about cost accounting, a subfield of *management* accounting, Ex. 3 (Anderson Tr.) 74:1–10; it is not about financial accounting, nor some amorphous general field of accounting that Plaintiffs invented for this motion.

Dr. Anderson's own testimony is that management accounting and financial accounting are "distinct" fields.  Ex. 1 (Anderson Rpt.) ¶ 4.[3]

Plaintiffs argue that Dr. Anderson may nonetheless testify about financial accounting because financial and management accounting are "complementary", "involve[] a common skillset", and "are not completely divorced".  Opp. 7, 13.  That is not the standard.  "It is well established that even if a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016).  Plaintiffs' cases, Opp. 14, 19, do not say otherwise.  In *Washington v. Kellwood Company*, the court excluded in part an expert's testimony where he conceded he lacked expertise during his deposition—just as Dr. Anderson did here.  105 F. Supp. 3d 293, 310–11, 311 n.20 (S.D.N.Y. 2015).  *In re Methyl Tertiary Butyl Ether Products Liability Litigation* is inapposite because the court found that the expert's opinion was squarely within his uncontested area of expertise.  No. M21-88, 2008 WL 1971538, at *5–6 (S.D.N.Y. May 7, 2008).[4]

Dr. Anderson herself needed to consult a fresh-out-of-school CPA on financial accounting matters to offer her opinions.    Mot. 10.    Thus, contrary to Plaintiffs' litigation position, Dr. Anderson knows full well she is not qualified to opine on financial accounting.

---

[3] Plaintiffs note that some of the same metrics and data are used for both financial accounting and management accounting reports.  Opp. 13.  But that does not qualify Dr. Anderson to speak to how those metrics and data are used in financial accounting.

[4] *Johnson & Johnson Vision Case, Inc. v. CIBA Vision Corporation*, No. 1:04-cv-7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006), also does not help Plaintiffs.  There, the court refused to exclude an expert for lacking experience in a specific *industry*, not for lacking expertise in a "distinct" field.  *Id.* at *5–6.

*Second*, with respect to economic and monopoly profits, Plaintiffs do not dispute that Dr. Anderson has no expertise in economics and does not know how to determine economic profits. Dr. Anderson admitted this repeatedly. *See, e.g.*, Ex. 3 (Anderson Tr.) 159:2–3 ("I'm not holding myself out as an economics expert"), 304:13–16 ("I'm not an economist. . . . [O]pinions about economic profits, about monopoly profits [] should be offered by an economist."). Dr. Anderson's Economic and Monopoly Profits Opinions should be excluded because they are based on economics expertise she does not have. Mot. 10–11.

Plaintiffs nevertheless contend that Dr. Anderson should be permitted to offer her Economic and Monopoly Profits Opinions because the notion that economic and accounting profits differ is "well known" and "long recognized" in academic literature. Opp. 21. But Dr. Anderson cites only two academic articles in support of her position. *See* Ex. 1 (Anderson Rpt.) ¶ 57. And she concedes that those two articles constitute her *only* source of knowledge concerning what economic profits and monopoly profits may be and how they may relate to accounting profits; she has no "independent opinion or [] expertise" on those topics. Ex. 3 (Anderson Tr.) 169:8–170:11. Plaintiffs misplace reliance on *McCulloch v. H.B. Fuller Company*, 61 F.3d 1038 (2d Cir. 1995), and *In re Mirena IUD Products Liability Litigation*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016), to suggest that Dr. Anderson's use of those articles renders her testimony admissible. In *In re Mirena*, the court *excluded* an expert opinion formed from reviewing a study, a patent filing, and two articles because the expert lacked relevant expertise beyond those sources. 169 F. Supp. 3d at 443–44. In *McCulloch*, the court held the expert's opinion admissible only after determining that he was qualified and had "extensive practical experience". 61 F.3d at 1043. Here, Dr. Anderson admitted she has no independent knowledge or experience outside the two articles she cites, so her testimony must be excluded.

In Dr. Anderson's own words, "[I]f I'm confined to my expertise as a management accounting expert, I shouldn't be speaking about monopoly profits". Ex. 3 (Anderson Tr.) 172:4–6. Defendants could not have said it better.

## II. PLAINTIFFS' OPPOSITION CONFIRMS THAT DR. ANDERSON'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE IRRELEVANT, UNHELPFUL, AND RISK UNFAIR PREJUDICE AND CONFUSION.

### A. Dr. Anderson's Economic and Monopoly Profits Opinions Are Inadmissible.

Plaintiffs concede that they will offer Dr. Anderson's testimony to "explain[] that [Live Nation's] accounting metrics . . . do not measure its economic profits". Opp. 24; *see also* Ex. 1 (Anderson Rpt.) ¶ 13. But Dr. Anderson did not calculate Live Nation's economic profits or provide any method to determine whether Live Nation's economic profits are higher than, lower than, or equal to its accounting profits. Mot. 14–16. In fact, she admitted that she has "no idea or opinion about what the level of [Live Nation's] economic profits are, much less their relation to [Live Nation's] accounting profits". Ex. 3 (Anderson Tr.) 148:7–13.

The Economic and Monopoly Profits Opinions are not "tied to the facts of the case", *In re Lyman Good Dietary Supplements Litig.*, No. 1:17-cv-8047, 2019 WL 5682880, at *5 (S.D.N.Y. Oct. 31, 2019), and "not sufficiently grounded in reliable facts", *Atl. Specialty Ins. v. AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 285 (S.D.N.Y. 2013).[5] Dr. Anderson herself concedes that these opinions are divorced from the facts here. *See, e.g.*, Ex. 3 (Anderson Tr.) 193:25–194:2 ("I have formed no opinions about economic profits for Live Nation."). They must be excluded.

---

[5] Plaintiffs rely on *Adesina v. Aladan Corporation*, 438 F. Supp. 2d 329, 342 (S.D.N.Y. 2006), to argue that the Economic and Monopoly Profits Opinions need only be "pertinent", Opp. 23, but omit the portion of the same quote that expert opinions must "*be sufficiently tied to the facts of the case*", 438 F. Supp. 2d at 342.

Plaintiffs argue that Dr. Anderson's Economic and Monopoly Profits Opinions are relevant because Plaintiffs predict that Defendants will argue that Live Nation's accounting profit margins disprove the presence of monopoly profits. Opp. 22–23. But Mr. Meyer focused on Live Nation's *accounting* profits; he will not offer an opinion about the quantum or degree of profits one would expect from a monopolist. And Dr. Anderson herself emphasized that she cannot rebut any assertion that Live Nation's accounting profits refute the existence of monopoly profits. *See* Ex. 3 (Anderson Tr.) 174:2–11 ("Not knowing how it's calculated, I cannot speak to the usefulness or lack thereof of accounting information for [monopoly profits] calculations."). Dr. Anderson cannot tell jurors *anything* about whether or not Live Nation's accounting profits are indicative of its economic or monopoly profits.

The same goes for Dr. Anderson's opinion that Live Nation has unreported intangible assets, which Plaintiffs say Mr. Meyer should have included in his analysis. Opp. 24. Plaintiffs fail to mention that Dr. Anderson admitted that she could only "speculate" about any effect of the alleged intangible assets on Live Nation's accounting profits. Ex. 3 (Anderson Tr.) 219:12–14.

Dr. Anderson's opinions are also likely to "confus[e] the issues [and] mislead[] the jury" by encouraging them to question the accuracy of Live Nation's publicly reported financials and speculate as to the quantum of economic profits. *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021). Plaintiffs insist that Dr. Anderson will not question Live Nation's financial reporting or imply that it improperly hides the company's real profits, Opp. 24, but the very nature of her opinions invite jurors to do just that, with nothing to support such an inference. They should be excluded. Mot. 17.

### B.     Dr. Anderson's Financial Reporting Opinions Are Inadmissible.

Dr. Anderson claims that Live Nation's public financial reporting "obscure[s]" and "impair[s]" assessment of the company's profitability and that Live Nation's management

exercises discretion in attributing profits among reported segments. Ex. 1 (Anderson Rpt.) ¶¶ 14(a), 91. She also purports to show alternative measures of Live Nation's profitability. *Id.* ¶¶ 109–126. But these opinions amount to no more than speculation that Live Nation *could have* reported its financial results differently. Those opinions are irrelevant to the antitrust issues in this case, are improper expert testimony, and will prejudice the jury. Mot. 17–19.

Plaintiffs argue that Dr. Anderson's Financial Reporting Opinions are relevant because they provide insight into Live Nation's publicly reported information. Opp. 10–11, 16. But Dr. Anderson's criticisms and alternative presentations of profitability amount to nothing more than academic exercises illustrating the hypothetical possibility of different reported results. Dr. Anderson disclaims any implication that Live Nation's public financial reporting is improper or that her alternative presentations more accurately capture profits, are superior to Live Nation's reported financials, or would be GAAP-compliant. Ex. 3 (Anderson Tr.) 81:15–24, 127:9–128:3, 311:19–24. Thus, Dr. Anderson draws no conclusions as to any relevant issue and fails to "help answer the factual issues of this case". *City of New York v. FedEx Ground Package Sys., Inc.* No. 1:13-cv-9173, 2018 WL 4961455, at *6 (S.D.N.Y. Oct. 15, 2018) (granting motion to exclude expert testimony where expert's findings were "irrelevant to the issues in th[e] case").

Moreover, by calling into question Live Nation's reported profits without providing an opinion on what they should actually be, Dr. Anderson improperly substitutes her judgement of the credibility of Live Nation's financial reports for that of the jury and risks unfair prejudice. Plaintiffs offer no response other than to proclaim that such prejudice will not materialize. Opp. 16. But the language Dr. Anderson uses (and stood by at deposition)—that Live Nation's profitability is "obscure[d]" and "impair[ed]" by its public financials, and that Live Nation's

attribution of profits is "made up" by Live Nation management—is inflammatory and implies concealment, manipulation, and impropriety.

### C.    Dr. Anderson's Management View Opinion Is Inadmissible.

Dr. Anderson's Management View Opinion should be excluded because it merely aggregates what Live Nation's managers say and what Live Nation's internal documents supposedly show.  Mot. 19–21.  Because the Management View Opinion exists "solely for the purpose of constructing a factual narrative based upon record evidence", it should be excluded. *Anderson News, L.L.C. v. Am. Media Inc.*, No. 1:09-cv-2227, 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018); *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 1:13-cv-8645, 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018) (Rule 702 requires an expert to offer more than mere "narrat[ion] of the facts").  The jury can make these evaluations themselves based on the underlying materials and, if necessary, through testimony from Live Nation's executives.  Plaintiffs respond that the volume and complexity of Live Nation's internal reports would overwhelm the jury.  Opp. 10.  But Dr. Anderson's report undermines that argument.  In forming the Management View Opinion, she relied entirely on (1) ████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████; and (2) ████████████████████████████████████████████████. Ex. 1 (Anderson Rpt.) ¶¶ 112–13.  Reading Mr. Berchtold's testimony and noting where certain Live Nation documents reference AOI more often than AOI margin comes nowhere near meeting Rule 702.

Plaintiffs also argue that the Management View Opinion "provides insight into Live Nation's goals, priorities, and incentives".  Opp. 11.  But that "insight" comes solely from regurgitating the contents of documents and management's descriptions of its goals and incentives. That is the province of fact witness testimony.  *See United States v. Bankman-Fried*, No. 1:22-cr-

0673, 2023 WL 6162865, at *2–3 (S.D.N.Y. Sep. 21, 2023) (excluding expert testimony that was "more appropriate[]" for "fact witnesses" or constituted "mere narration" of facts). Moreover, whether management focuses on profit levels or margins for internal purposes is irrelevant to any issue in this case, Mot. 21, and Dr. Anderson admits as much, Ex. 3 (Anderson Tr.) 266:21–267:4 (admitting she cannot answer whether "a company's focus on scale as a goal. . . say[s] anything [] about the presence or source of monopoly profits").

Finally, Dr. Anderson's insinuation that internal metrics are more important than publicly reported metrics will confuse and prejudice the jury by inviting them to believe that management is intentionally withholding the real story. Mot. 21–22. Plaintiffs again fail to engage meaningfully with this issue, stating only that Dr. Anderson "clearly explained" that she is not suggesting impropriety. Opp. 11. But allowing Dr. Anderson to testify that management "does not focus" on GAAP operating margins, and instead relies on internal metrics like AOI, invites precisely the inference Plaintiffs say she disclaims: that Live Nation's publicly reported results are questionable, and that Live Nation management is intentionally concealing the metrics that matter.

### D.    Dr. Anderson's Rebuttal Opinions Are Inadmissible.

Dr. Anderson's Rebuttal Opinions should be excluded because they simply repackage her affirmative opinions, which are all inadmissible. Mot. 22–23. Recasting affirmative opinions into rebuttal opinions does not save them from exclusion, *see In re LIBOR-Based Fin. Instruments*, No. 1:11-MD-2262, 2025 WL 2733020, at *27 n.48 (S.D.N.Y. Sep. 25, 2025), and Plaintiffs' Opposition fails to contend with this overarching issue, Opp. 16–20.

As to the specific Rebuttal Opinions, Plaintiffs devote several pages trying to defend Dr. Anderson's critiques of Mr. Meyer's analyses, but fail to support their admissibility. Opp. 16–20.

*First*, as to Dr. Anderson's critique that Mr. Meyer included COVID-impacted years in his profits analysis, Opp. 16–18, Mr. Meyer updated his analysis to exclude those years (to the extent not already provided in his affirmative report). That moots this debate.[6] Regardless, Plaintiffs seem to agree that the sole thrust of Dr. Anderson's testimony on the subject is that Live Nation sometimes, for some purposes, excludes COVID years in its financial analyses. Opp. 16–17. And Plaintiffs' own description of this opinion makes clear that her analysis involves nothing more than reviewing Live Nation documents and noting that sometimes COVID years are excluded. *See id*. 17–18. Like the Management View Opinion, this opinion does not use or require any specialized expertise and thus is inappropriate expert testimony. *See Scentsational Techs.*, 2018 WL 1889763, at *4.

*Second*, as to Dr. Anderson's critiques regarding Mr. Meyer's exclusion of certain data from his comparator analysis and his analysis of the profitability of Live Nation owned-and-operated ("LNOO") amphitheaters,[7] Plaintiffs do not explain why expert testimony is necessary or appropriate to make the critique. *See* Opp. 19–20. The fact that an opinion is a criticism of another expert's approach does not make that opinion appropriate expert testimony; the opinion itself must independently satisfy Rule 702. *See Wells Fargo Bank, N.A. v. U.S. Life Ins. Co.*, No. 1:22-cv-8606, 2025 WL 2220948, at *26 (S.D.N.Y. Aug. 4, 2025) (explaining that rebuttal opinions must meet *Daubert*'s requirements). There is nothing about Plaintiffs' criticism about

---

[6] Even if the court credits Plaintiffs' prediction that Mr. Meyer will present calculations that include the COVID-19 years alongside calculations that exclude them, Opp. 17, Plaintiffs can cross-examine Mr. Meyer on the differences. Dr. Anderson's analysis adds nothing beyond what the jury can evaluate for themselves.

[7] Contrary to Plaintiffs' assertion, Opp. 20, Defendants' Motion explained why Dr. Anderson's critiques of Mr. Meyer's analysis of LNOO amphitheaters should be excluded—namely, because they are lay matters that do not require specialized expertise, Mot. 23–24.

which data were excluded that is the domain of expert testimony.  And the jury will not be left to "fend for themselves" in evaluating Mr. Meyer's analyses.  Opp. 19.  Plaintiffs can probe Mr. Meyer's reasons for excluding certain data on cross-examination.

## CONCLUSION

For the foregoing reasons, this Court should exclude Dr. Anderson's opinions in their entirety.

Dated: December 22, 2025

LATHAM & WATKINS LLP

CRAVATH, SWAINE & MOORE LLP

_____
Alfred C. Pfeiffer (admitted *pro hac vice*)
    *Co-Lead Trial Counsel*
David R. Marriott
    *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

_____
Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Lauren A. Moskowitz, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 3498 words.  In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated:    December 22, 2025
          New York, New York

                                            _____
                                                Lauren A. Moskowitz