PCILUNIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

UNITED STATES OF AMERICA, et
al.,

                Plaintiffs,

          v.                          24 Civ. 3973 (AS)

LIVE NATION ENTERTAINMENT,
INC., et al.,

                Defendants.           Conference (Remote)
-------------------------------x
                                      New York, N.Y.
                                      December 18, 2025
                                      3:45 p.m.

Before:

                    HON. ARUN SUBRAMANIAN,

                                      District Judge

                         APPEARANCES

UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
     Attorneys for Plaintiffs
BY:  DAVID DAHLQUIST
     BONNY E. SWEENEY
     JOHN THORNBURGH


OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL
ANTITRUST BUREAU
     Attorneys for Plaintiff State of New York
BY:  JONATHAN HATCH

CRAVATH SWAINE & MOORE LLP
     Attorneys for Defendants Live Nation, Ticketmaster
BY:  DAVID R. MARRIOTT
     LAUREN MOSKOWITZ
     -and-
LATHAM & WATKINS, LLP
     Attorneys for Defendants Live Nation, Ticketmaster
BY:  ALFRED PFEIFFER

PCILUNIC

(Proceedings were had which were not reported)

THE COURT:  We did not have a court reporter at the beginning of this conference, but the saving grace is I don't think we discussed anything that needed to be on the record.  I just wanted to let everyone know.

Second, your proposal seems fine.  I do have a question as to whether the volume of material is going to be, in your words, relatively manageable, but maybe you will surprise me.

But, Ms. Sweeney, what do you think about Mr. Marriott's proposal?

MS. SWEENEY:  Yes.  Thank you, your Honor.  Well, first I would like to say that this is the first that we have heard of this proposal.  We have had a number of meet-and-confers with the defendants over the last several weeks, including on confidentiality, including on interim scheduling, and Defendants have never raised this proposal with us.  And just listening to it for the first time, it seems quite problematic, your Honor, for a number of reasons.

One, the defendants have had the opportunity for months and months either to begin the process of meeting and conferring with these non-parties over highly confidential and confidential information, or of having Mr. Wall refrain from engaging in competitive decision-making.  They did neither.  Instead, the plaintiffs and defendants worked together to

PCILUNIC

propose to your Honor a procedure for bringing redactions pertaining to the Daubert motions and the summary judgment motions to the Court, and that schedule, which was agreed to and entered by the Court, provides that the non-parties whose information is cited in any of those documents has an opportunity on January 13 to raise those confidentiality issues with the Court and seek redactions.

Now, we also negotiated with the defendants interim deadlines because we are very mindful that both sides' submissions on all of these motions, just like the trial, contain vast amounts of competitive sensitive information, including by businesses that view Live Nation as their principal competitor.  So these are very sensitive documents. And, as your Honor knows from the appearances previously on several occasions by these non-parties, they are very concerned about that information being relayed to the business people in Live Nation, and they include Mr. Wall among those business people.

Now, as part of the summary judgment and Daubert redaction process, we agreed with the defendants that we would send letters out to them immediately -- or seven days after filing our papers letting them know precisely which documents and which testimony we cited in our papers that is at least preliminarily redacted, and then proposed a process for meeting and conferring, and then provided all those non-parties with a

PCILUNIC

deadline of January 6 to respond to those proposed redactions or removal of redactions.

And the defendants, I will say, they sent out their letters, their first batch of letters, on November 21, more than 40 non-parties whose information was cited in their papers. We are sending out our letters today. I think that's more than 50. And all of these non-parties have the expectation that they will have until January 6 -- this is our internal deadline before we raise it with the Court -- to respond to the confidential information that's cited in those papers.

Now, of course, the summary judgment and Daubert papers do not contain the whole universe of documents that Defendants might want to put on their witness list or testimony that they will want to elicit, but nonetheless, it's a good chunk of material, and we have now created with Defendants' consent and negotiation, an expectation by those non-parties that they are not going to have to evaluate a ton of material between tomorrow and the 19th -- excuse me, the 29th of December over the holidays, I might add, in order to raise these issues.

So I think, given all the time that the defendants had to think about this issue and all of the opportunities they had to meet and confer with the non-parties about their testimony and their documents, and the fact that they haven't done so,

for them now to bring this upon the plaintiffs, who, we didn't know about this proposal until just now, or upon these non-parties is just -- it's not fair to the non-parties, certainly, and we would object that we had no prior notice.

THE COURT:  All right.  But, Ms. Sweeney, just in theory, you are not opposed to the idea that Mr. Marriott could say to you and to the affected third parties, Look, there is this reasonably manageable set of documents within what has been designated as material that these two individuals are not able to access, we think that, having looked at them, there is, you know, grounds for -- you know, it's important information and it doesn't -- there is no competitively sensitive information that would really be problematic or that could be redacted out, and so we would like to convey that to these two individuals, and then if there was time -- you know, if you agreed on the timing and it was reasonable, then you are not, like -- just on theory, you are not opposed to that kind of process, right?  You are not saying that they have somehow waived any ability to give anything to these two folks even for purposes of trial, right?

MS. SWEENEY:  Oh, that's right, your Honor.  We agree that there should be a meet-and-confer process, and the designations should be narrowed.  But I think that what Mr. Marriott proposed is -- imposes too high a burden and it's simply not fair to the non-parties.

PCILUNIC

THE COURT:  OK.  So, Mr. Marriott, I think that everyone is on board in theory, and that's not saying that much because the devil is always in the details.  But would you be able to talk to Ms. Sweeney and just work out a schedule for this that may be, you know -- accounts for the holidays and the fact that everyone is doing about 50 other things right now, but -- which still gives you the ability to do the things that you were talking about, meaning, talk to the affected third parties, to the government, and then if there is a dispute, come to the Court with enough time for Mr. Wall and his colleague to be able to look at the -- you know, use the information, you know, sufficiently in advance of trial?  I mean, we are four months out at this point, effectively.  So, like, you've still got some time.

Does that make sense?

MR. MARRIOTT:  Well, your Honor, it does with this caveat -- and I am always happy to talk to Ms. Sweeney about this and any other issue.  So may I just briefly -- let me just respond, if I may, to some of what she said, and then tell you what the modification is that I would propose to that, if that's OK.

THE COURT:  Sure.

MR. MARRIOTT:  So it is true that in its detail we certainly didn't talk to the plaintiffs about this proposal. This is a proposal, as we have been trying to find a solution

PCILUNIC

to this problem, that we came up with only in the days, in the hours, frankly, leading up to this conference.

That said, your Honor, it is perfectly in line with what your Honor, I believe, proposed to the parties when we dealt with this issue sometime ago.  There is nothing new about this issue.  And in an order of July 29, 2024, your Honor said, quote, "If there comes a point when there is particular information and you feel that you need to make an in camera application about that, you can certainly make that application," closed quote.  And that's really all that we are proposing to do here.

It is true, as Ms. Sweeney says, that there is a process that is ongoing relating to redactions for summary judgment and Daubert, but that's, of course, not the same set of documents we are talking about.  And that's a process the point of which will be to release to the public now information.  What we are talking about is simply giving access to two lawyers, officers of the court, who are bound by the protective order.  So it's a different issue, your Honor.

I do believe there will be a significant narrowing here.  There were, as I understand it, about 1500 documents that were third-party documents that were used in depositions. I think some significant number of those -- well, a total deposition, the exhibits was 1500.  Some significant subset of those, your Honor, were not third-party documents.  They were

PCILUNIC

other party documents.  And I think when all is said and done, people are not going to stand on some of those designations.

So, perfectly happy to talk to Ms. Sweeney.  I would propose that we send the letter and get that process running. This is -- as to any given recipient, your Honor, we are talking about the transcript of their deposition and whatever documents were exhibits to those depositions, which the parties have looked at, which they know, which they understand, and there is no mystery in this.  They have looked at these and considered them before.

So, with that said, your Honor, absolutely we will talk to Ms. Sweeney and we will -- you know, we would propose to send our letter tomorrow and work out whatever schedule we can get for a hearing and to get this submitted.

The one thing I would say about the timing, your Honor, is, while it may be the case the trial does not begin until March 2, right, that's more like -- not too much more than, you know, three months from now, slightly over two months from now, and the process of identifying the materials that are going to be used at trial begins on January 6.  That is when the witness list is due.  And that's why I came up with January 5 as the date for the proposed hearing.

So, the decisions as to which we seek input from Mr. Wall and Ms. Tobias really are in the nearer term than, say, six or seven weeks from now where it won't be the same

PCILUNIC

thing.  They will effectively then be in a position of hearing things for the first time at the time of trial, which is a position we don't think is fair to them.

With that, your Honor, happy to try to come up with a schedule for the proposed hearing with Ms. Sweeney, and if we can't agree upon something, to come back to your Honor.  But we would be looking for something sooner rather than later because, again, I think as to any given third party, they already know this stuff, and there are not going to be that many documents.

What I think will happen is, your Honor, just take a hypothetical third party that's got a deposition transcript, and let's say they had 15 exhibits at the deposition.  I would be willing to bet that they would come back to us and it's only some relatively minor set of materials they designated that they think are confidential that they would be concerned about being shown to Mr. Wall or Ms. Tobias for most people.  They will say whatever they are going to say.  We will look at that. And if we decide, you know, that one doesn't necessarily present a critical issue for deciding who should be on our witness list or what exhibit we should offer at trial, then that wouldn't be one we would even raise with the Court.

We would identify the ones that really we thought mattered, and those would be the ones that we would be writing to your Honor about.  And I can't say for sure what that subset

PCILUNIC

will be, but I predict, your Honor, it is very few of the thirds parties, and it is a relatively modest set of information.

THE COURT:  OK.  Well, since you got this letter, like, finished, how many documents are you asking for?

MR. MARRIOTT:  Well, your Honor, it isn't -- I don't have it finished, but I know what it would say.  We would be asking the third parties to authorize us to use for pretrial purposes the exhibits to the deposition.  So we would just be saying whatever it was for a given party.  If there were 15 used, it would be 15.  If there were ten used, there would be ten.  So I don't have the exact count of what it is, your Honor, but it's probably in the neighborhood of 300 exhibits.

THE COURT:  OK.

MR. MARRIOTT:  That's a little bit --

THE COURT:  Just to make sure I understand, you are going to say, "Look, you had these depositions.  There are these exhibits.  Which ones do you object to our showing to these two individuals?"  And then they will get back to you with whatever it is.  And then you want to bring it to -- if there is a dispute, you bring it to the Court.

And what's the reason why that has to all be done by early January?

MR. MARRIOTT:  Yeah, because January 6 is the date on which the parties have agreed to exchange witness lists.  The

PCILUNIC

9th is the date by which he have agreed to exchange exhibits, and the 13th is the date by which we are doing deposition designations.  So we would like to be able to have conversations on these issues, like what document do we want to have that's responsive to what it is it looks like the government is going to put in.

We think we now have a much better sense of what the government's case is going to look like because we have sat in depositions and we have seen what they have marked.  So that set is narrow.  We are not talking millions anymore.  We are talking thousands, if that.  And I just think if -- it looks like there were 800 third-party exhibits of the 1500.  I have now been told about 800 third-party exhibits.  I just think when all is said and done, the number that they are going to say they really have an issue with is going to be some relatively small subset of that.

And so we want to have the input of these two client representatives, both lawyers, one expected, frankly, to be the corporate designee at trial in any event, to be able to have some input about what we put on the list and what documents we flag and what ones we want to collect a responsive document to before it's too late to do anything about it.

So, that's what drives the dates, your Honor.  It's a combination of the necessary deadlines pretrial and where we are today at the end of the process where things have narrowed.

PCILUNIC

THE COURT:  All right.  Go ahead and send your letter, and speak with Ms. Sweeney, and we can figure out the timing. I don't really see why these disclosures need to be made in advance of picking the witnesses.  You have got yourself, Ms. Moskowitz, Mr. Pfeiffer, and a ton of other very talented lawyers on your side who have been doing the case thus far for that step.

I might see -- I thought the real purpose of this was that sufficiently in advance of trial, especially if Mr. Wall is going to be a witness or a corporate designee, and would want to interface with counsel as to certain matters that he hasn't been able to -- that they have not been able to opine on, then you would want to have time for that.  But I am not so sure why that needs to be in advance of the witness disclosures and those initial deadlines that are coming up really soon. But, that being said, maybe this can all be done really quickly.  And maybe you are right that no one is going to have any objections to the disclosure of these 300-some-odd documents.  We will see.

MR. MARRIOTT:  I don't want to go so far -- I'm sorry, I didn't mean to cut you off.  I apologize.

THE COURT:  No.

MR. MARRIOTT:  I don't want to say no one is going to object.  I know enough here from what we have seen in the case that there will definitely be objections.  The question is how

extensive they will be.  I think in the end it will be relatively manageable.  That's the point I am making.

MS. SWEENEY:  Your Honor.

THE COURT:  Ms. Sweeney.

MS. SWEENEY:  Before we close this conversation, I just wanted to point out a couple of things.  I certainly -- there's no objection on our part to Defendants sending those letters whenever they like.  They could have done it months ago.  And I just want to point out that those exchanges, witness lists and exhibit lists, those dates Mr. Marriott was referring to, those are the internal -- the dates that we agreed upon among ourselves before the final exchanges, exhibit lists and witness lists, which will be in February.  So I am not understanding the rush that Mr. Marriott has described.  I think that there should be more time for the non-parties to respond.

THE COURT:  That's fair.  I don't see the reason for rush either.

So, with that said, we will be here.  We are on part one duty over the New Year's holiday, so if there is a dispute, you will get a quick response.

With that, any further issues to address from the plaintiffs' side?

MR. DAHLQUIST:  Your Honor, this is David -- go ahead.

MS. SWEENEY:  Not from me, your Honor.  But go ahead,

PCILUNIC

Mr. Dahlquist.

MR. DAHLQUIST:  Your Honor, David Dahlquist on behalf of the United States.  Returning to one issue that you spoke about earlier relating to the jury.  We would support a jury questionnaire going out, and we can certainly chat with Defendants on that.

One other element from your jury procedures -- selection procedure; that in most civil cases, you do not select alternates.  Is that your expectation with regard to this case or -- at least on behalf of Plaintiffs, we would make a request that we do choose alternates for this case.

THE COURT:  I think the federal rules say that there are no alternates.  Am I wrong about that?

MR. DAHLQUIST:  I think we are asking for a potential modification here due to the length of trial.  And we can certainly talk to Defendants and put this in a motion, but that certainly is a request I just wanted to float with you in advance.

THE COURT:  Mr. Marriott, do you have an initial reaction to that?

MR. MARRIOTT:  Well, only that the rule, I know, says otherwise.  And it's not something, frankly, we have even considered, for that reason, your Honor.  But, as always, happy to talk to Plaintiffs about that and anything else.

THE COURT:  I didn't know that I had that power to

PCILUNIC

override the Rules of Civil Procedure.

As with all things --

MR. DAHLQUIST:  I never want to question your power or authority, your Honor.

THE COURT:  I have to be really mindful of it.

You should talk about these things, and if there is a pathway to that and everyone wants that outcome, look, the last thing I want is to have to declare a mistrial because we lose more than -- jurors that are required by the rules and everything else.  But we can address that at a later juncture.

Anything from the defendants' side before we adjourn?

MR. MARRIOTT:  Nothing, your Honor, except I'm sorry to hear about your part one obligations at this time, but good luck.

THE COURT:  Thanks for that.  And I wish everyone here happy holidays, and we will see everyone here soon.  If there are any issues that come up in the meantime, please let us know.

With that, have a great weekend and a great holiday. With that, we are adjourned.

(Adjourned)