

DANIEL D. ADAMS
230 NORTH ELM STREET, SUITE 2000
GREENSBORO, NORTH CAROLINA 27401

T 336-271-3109
F 336-232-9109
DADAMS@BROOKSPIERCE.COM

January 16, 2026

**VIA ECF**

The Honorable Arun Subramanian, United States District Court Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

> Re:  *United States et al. v. Live Nation Entertainment, Inc. et al.*
> No. 1:24-cv-03973-AS

Dear Judge Subramanian:

We represent Hurricane Holdings, LLC ("HH"). HH is not a party to this matter. HH operates the Lenovo Center in Raleigh, North Carolina, a 20,000-seat arena owned by the City of Raleigh. HH also owns and operates the NHL Franchise, the Carolina Hurricanes.

Pursuant to the Court's November 5, 2025 Order, (DE 685), we write on HH's behalf in support of Plaintiffs' Motion to Seal Exhibits and Ancillary Papers (DE 849). HH is seeking limited redactions to a single document—an Amendment to a Licensed User Agreement between HH and Defendant Ticketmaster, LLC, bearing BATES HH_000203 to HH_0000225 (the "Agreement").

## I.    The Agreement Contains Highly Sensitive, Competitive Commercial Information.

The Agreement sets forth amended terms pursuant to which HH authorized Ticketmaster to act as HH's exclusive agent for the sale of remote tickets to attend attractions at the Lenovo Center, including Carolina Hurricanes games. The Agreement sets Ticketmaster's obligations for selling tickets for HH and the compensation it would receive, in the form convenience charges, processing fees, and the like. The Agreement includes critical terms governing the parties' economic relationship, including a signing bonus to be paid by Ticketmaster, an annual marketing allowance, specification of games and attractions included and excepted, pricing discounts for bulk sales, increased prices for playoff games, revenue shares for ticket resales, and more.

HH guards confidential, competitive information governing ticket sales for attractions at the Lenovo Center closely. Consequently, HH objected to the Government's subpoena *duces tecum* ("Subpoena"), which led to the Agreement being produced in this lawsuit, to the extent it called for production of proprietary information, trade secrets, analysis techniques or other confidential, research, or commercial information. Notwithstanding this objection, HH agreed to produce the Agreement pursuant to the Court's Amended Protective Order (DE 347), based on

Honorable Arun Subramanian
January 16, 2026
Page 2

HH's ability to designate the Agreement as "Confidential." HH also requested that the Government treat the Agreement as "FOIA Confidential" in accordance with 5 U.S.C. § 552(b)(4).

HH understands[1] that the Agreement was cited in Plaintiffs' Opposition to Defendants' Motion to Exclude the Reports, Opinions, and Testimony of Monetary Relief States' Damages Expert Dr. Rosa M. Abrantes-Metz (DE 743). Notwithstanding the fact that the Agreement is implicated solely with respect to an expert discovery dispute, and thus is far from the Court's core Article III functions, HH understands and appreciates the Court's instructions to be "reasonable and razor-sharp in terms of the information" it seeks to prevent from public disclosure. (*See* DE 817.) HH thus has proposed specific, limited redactions narrowly tailored to shield competitively sensitive information deserving of protection:

- Specific pricing, fee, and cost information;
- Agreement length and expiration date; and
- Specific percentages and definitions of triggering events for bonuses, extensions, and other Agreement terms.

**II.     HH's confidential commercial information, cited in an exhibit to an opposition to a *Daubert* motion, is protected under common law and the First Amendment.**

The Court's analysis of whether to unseal filed materials involves a three-step, common law right access inquiry: (1) whether the record is a "judicial document" to which the presumption of public access attaches; (2) the weight of the presumption of access to that document; and (3) balancing the factors that legitimately counsel against disclosure against the weight properly accorded the presumption of access. *Giuffre v. Maxwell*, 146 F.4th 165, 175 (2d Cir. 2025) (quoting *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 69–70 (2d Cir. 2023)).

"[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). A document is a "judicial document" if it is "relevant to the performance of the judicial function and useful in the judicial process . . . ." *Amodeo*, 44 F.3d at 145. Similarly, "[t]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) [hereinafter "*Amodeo II*"]). While summary judgment and trial documents enjoy a strong presumption of access, "documents that 'play only a negligible role in the performance of Article III duties'"—such as documents implicated in discovery disputes— "are accorded only a low presumption that 'amounts to little more than a prediction of public access absent a countervailing reason.'" *Brown v. Maxwell*, 929 F.3d 41, 49–50 (2d Cir. 2019) (quoting *Amodeo II*, 71 F.3d at 1050). When balancing competing considerations against the presumption of access, the reasons for sealing non-dispositive motions "'usually need not be as

---

[1] HH cannot see the sealed materials to which the Agreement is attached.

Honorable Arun Subramanian
January 16, 2026
Page 3

compelling as those required to seal summary judgment filings,' trial evidence, or pleadings." *Giuffre*, 146 F.4th at 178 (quoting *Brown*, 929 F.3d at 50).

"In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004)). This right applies, among other things, to *Daubert* motions. *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 4706199, at *2 (S.D.N.Y. Oct. 8, 2021).

However, the presumption of access can be "overcome by 'specific, on-the-record findings that sealing is necessary to preserve higher values . . . if the sealing order is narrowly tailored to achieve that aim.'" *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013) (quoting *Lugosch,* 435 F.3d at 124). Higher values that may justify sealing under this standard include "the privacy interests of innocent third parties," *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *6 (S.D.N.Y. Jan. 17, 2023) (citation omitted), and the "need to protect the confidentiality of confidential and proprietary business information[,]" *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500-GHW, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (citation omitted). Accordingly, documents that contain confidential "business data such as pricing information and negotiations may remain under seal even where the First Amendment is implicated." *In re Keurig*, 2023 WL 196134, at *6; *see also In re Digit. Music Antitrust Litig.*, 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) ("[T]he nature of the information at issue, which concerns internal pricing strategies and competitive pricing data, is sufficiently sensitive to warrant redaction."); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015).

Here, HH understands the Agreement is one of many exhibits to a response brief in opposition to a *Daubert* motion. There thus is a significant question whether the Agreement is a judicial document at all. But even assuming it is a judicial document, it plays "only a negligible role in the performance of [the Court's] Article III duties." *Brown*, 929 F.3d at 49–50. Against that low presumption is HH's strong interest in keeping its nonpublic, confidential, proprietary information out of the public record. HH's narrow redactions apply solely to specific deal terms that, if publicly released, would harm an innocent third party, Hurricanes Holdings, LLC, and would put HH at a great commercial disadvantage with ticketing vendors as to a core part of its business: Selling tickets to entertainment events.

The great harm that would befall HH overrides the relatively weak common law and First Amendment presumption of access that attaches to an exhibit to an opposition to a *Daubert* motion. Nonparty Hurricane Holdings, LLC respectfully urges this Court to grant Plaintiffs' Motion to Seal Exhibits and Ancillary Papers (DE 849) and accept HH's proposed redactions Libby,

Here's to the Agreement.

Honorable Arun Subramanian
January 16, 2026
Page 4

                                        Respectfully submitted,

                                        /s/ Daniel Adams
                                        Daniel D. Adams

CC: All Counsel of Record (via ECF)