SULLIVAN & CROMWELL LLP

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330
WWW.SULLCROM.COM

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

January 16, 2026

*Via ECF*

The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

> Re:    *United States et al.* v. *Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS; Letter Motion to Seal Non-Party BSE's Confidential Material

Dear Judge Subramanian:

I write on behalf of non-parties Brooklyn Events Center, LLC, Brooklyn Nets, LLC, and New York Liberty, LLC (together, "BSE"). Pursuant to Rules 11(B) and 11(C)(ii)-(iii) of this Court's Individual Practices in Civil Cases and the Court's November 5, 2025 order (ECF No. 685), BSE respectfully submits this letter motion seeking the Court's approval to seal certain confidential documents produced by BSE in the above-captioned action. The documents, deposition testimony, and in-text descriptions identified in Appendix A and Appendix B attached hereto were preliminarily filed under seal by Plaintiffs and Defendants in connection with the parties' summary judgment and *Daubert* filings. For the reasons explained below, BSE now requests that material identified in Appendix A be sealed or redacted, as indicated in Appendix A, and that the material identified in Appendix B no longer be designated as confidential. BSE's sealing request is narrowly tailored and overcomes the presumption in favor of public access. *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

### I.    Legal Standard

While there is a general presumption in favor of public access to judicial documents, documents may be sealed or redacted where "sealing is necessary to preserve higher values" and "the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. "Under this framework, a court must determine: (1) whether the document subject to a sealing request qualifies as a judicial document; (2) the weight of the presumption of public access attaching to that judicial document; and (3) if any countervailing factors or higher values outweigh the right of public access to that judicial

document." *Sec. & Exch. Comm'n* v. *Telegram Grp. Inc.*, 2020 WL 3264264, at *1 (S.D.N.Y. June 17, 2020) (citing *Lugosch*, 435 F.3d at 119-120).

A presumption of access may be outweighed by a party's interest in "protecting confidential business information" from disclosure that would subject it to "financial harm" or a "significant competitive advantage." *Standard Inv. Chartered, Inc.* v. *Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009); *see also U.S.* v. *Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts"). Accordingly, "Courts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard." *Kewazinga Corp.* v. *Microsoft Corp.*, 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021); *see also Skyline Steel, LLC* v. *PilePro, LLC*, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (sealing pricing and sales information as well as "emails revealing confidential negotiations"); *Louis Vuitton Malletier S.A.* v. *Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing redaction of "business information and strategies," which, if revealed, "may provide valuable insights into a company's current business practices"). Of particular relevance to BSE's requests here, documents containing "information revealing the terms of contracts or the content of such confidential negotiations are among those th[e] Court routinely recognizes as justifying protection from the public view when used in litigation." *Capri Sun GmbH* v. *Am. Bev. Corp.*, 2021 U.S. Dist. LEXIS 121094, at *4 (S.D.N.Y. June 4, 2021); *see also Rubik's Brand Ltd.* v. *Flambeau, Inc.*, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021) (protecting contractual terms because disclosure could "harm [plaintiff] and/or its business partners by disadvantaging them in negotiating future licensing agreements").

These countervailing factors are given even greater weight where, as here, a non-party's confidential information is at stake. *See, e.g.*, *Amodeo*, 71 F.3d at 1050 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."); *Dodona I, LLC* v. *Goldman, Sachs & Co.*, 119 F. Supp.3d 152, 156 (S.D.N.Y. 2015) (protecting third-party investment strategies, customer names, and pricing information); *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017) (protecting third-party internal pricing strategies and competitive data).

## II.    The Court Should Maintain Under Seal BSE's Confidential Business Information.

The documents and testimony in Appendix A contain BSE's confidential business information, the disclosure of which could harm BSE by providing its competitors and other third parties insight into its internal business strategies. BSE has identified three categories of confidential business information that it requests to remain under seal. The documents or testimony containing each type of information are identified in Appendix A.[1] In some cases, documents or testimony may fall into more than one category.

---

[1]    BSE is also requesting the redaction of the personal cell phone numbers of BSE

BSE's Programming Agreements with Live Nation.  The parties cite to BSE's current and recent programming agreements with Live Nation, which provide certain incentives to Live Nation to book and promote concerts, comedy events, and other entertainment events at Barclays Center, and sets forth additional terms with respect to such events, as well as documents that describe the terms of those agreements. *See, e.g.*, BSE-DOJ-00125098.  Public disclosure of these documents would harm BSE by enabling venues that compete with Barclays Center to book events to understand the confidential terms of BSE's relationship with Live Nation.  It would also give third parties, including content promoters, an unfair advantage in negotiations with BSE, as they could leverage their knowledge of BSE's agreements with Live Nation to their advantage.

BSE's Ticketing Services Agreements. The parties cite to BSE's ticketing agreements with Ticketmaster and SeatGeek and documents that describe the terms of those agreements.  *See, e.g.*, BSE-DOJ-00095447.  Other documents contain BSE's internal analyses of the offers it received from Ticketmaster, SeatGeek, and AXS during its request-for-proposal process, or reflect BSE's negotiation strategy with respect to its ticketing vendors.  *See, e.g.*, BSE-DOJ-00168169.  Public disclosure of this information would give ticketing vendors an unfair advantage in negotiations with BSE, as they would learn the terms to which BSE has recently agreed and BSE's negotiating strategy.

BSE Internal Business Strategy and Financial Performance.  The parties cite to documents that reflect BSE's plans and strategies for growing its events business and competing against other NYC area venues, *see, e.g.*, BSE-DOJ-00097475, potential partnership opportunities, *see, e.g.*, BSE-DOJ-00319994, candid evaluations of their partner relationships, *see, e.g.*, Transcript of the June 10, 2025 Deposition of Laurie Jacoby, pp. 113-120, and recent financial performance, *see, e.g.*, BSE-DOJ-00097475.  Disclosure of these documents to competing venues would harm Barclays Center, as well as consumers that benefit from competition among venues in the NYC-area.

Moreover, while materials provided in support of a summary judgment motion qualify as judicial documents, the weight of the presumption in favor of public access should be low with respect to these documents, as the precise terms of BSE's agreements with its event promotion and ticketing partners, and the internal business strategies of BSE, a third-party venue operator, should have little bearing, if any, on the Court's analysis of Defendants' motion for summary judgment. *See Graczyk* v. *Verizon Commc'ns, Inc.*, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (where information has "no bearing" on Court's resolution of motion the "presumption in favor of public access is low").

BSE respectfully requests that the documents identified above remain under seal.

---

employees and certain of their business partners, as indicated in Appendix A.  *See Fairstein* v. *Netflix, Inc.*, 2023 WL 6164293, at *3 (S.D.N.Y. Sept. 21, 2023) (recognizing a non-party's "privacy interest" in protecting personal contact information, especially where the personal contact information is unrelated to the issues in the case).

Respectfully submitted,


*/s/ Samantha F. Hynes*
Samantha Hynes (admitted *pro hac vice*)
Sullivan & Cromwell LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006-5215
T: (202) 956-7500
hyness@sullcrom.com

*Counsel for non-parties Brooklyn Events Center, LLC, Brooklyn Nets, LLC, and New York Liberty, LLC*

cc:     All Counsel of Record (via ECF)