

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

January 16, 2026

The Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl St., Room 15A
New York, New York 10007

Re: *United States et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-3973-AS

Dear Judge Subramanian:

Pursuant to Rule 11 of Your Honor's Individual Practices in Civil Cases, non-party Anschutz Entertainment Group, Inc. ("AEG") submits this letter motion seeking leave to redact or seal portions of the parties' summary judgment and *Daubert* briefing and their supporting exhibits. As noted previously, AEG is Defendants' primary competitor in both concert promotion and primary ticketing services. Dkt. No. 201-1. In response to the parties' discovery requests in this case, AEG has produced deposition testimony and hundreds of thousands of documents reflecting the company's most competitively sensitive materials, some of which the parties referenced in, cited, or appended to their summary judgment and *Daubert* briefing. AEG respectfully requests to redact or seal only a narrow subset of those materials, all of which it designated as "Highly Confidential" and "Confidential" under the Protective Order ("PO"), the disclosure of which is "likely to cause material and significant competitive or commercial harm." Dkt. No. 347 ¶ 2.1**. Appendix A** sets forth each of AEG's sealing requests and the supporting basis.

For the reasons set forth below, AEG's request for sealing and redaction of this material is narrowly tailored and overcomes the presumption in favor of public access. *See Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119-20 (2d Cir. 2006). AEG's sealing requests fall within the following categories:

- **Contracts with AEG's customers and documents or testimony reflecting contract terms and negotiations.** *See, e.g*., Dkt. Nos. 693-18, 693-19 & 747-26. These materials reflect "confidential contractual terms" and "information regarding prices" protected under the PO. PO ¶¶ 2(c), (f). For example, the parties cited AEG's ticketing services agreements, promotion agreements, and booking agreements. *See, e.g.,* Dkt. Nos. 692-3, 693-19 & 693-20. The parties also cite deposition testimony revealing AEG's confidential strategy in negotiations for current or recent contracts in business sectors where AEG directly competes with Defendants. *See, e.g*., Dkt. No. 696-5 at 70:7-79:25; Dkt. No. 695-11 at 36:11-40:4. Courts routinely find that the disclosure of these materials likely causes significant competitive harm to the producing party. *See Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021) ("Courts commonly find that documents that contain trade secrets, confidential research and development information,

---

1 AEG offered twice to meet and confer with the parties about any disagreement on AEG's sealing requests. *Rule* 11(C)(i). Neither party stated any opposition to AEG's sealing requests.

The Honorable Arun Subramanian                - 2 -

marketing plans, revenue information, pricing information, and the like satisfy the sealing standard.") (citation omitted); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156–57 (S.D.N.Y. 2015) (sealing customer names and pricing information).

- **Internal analysis of AEG's profits, cost, margin, and other financial information**. *See, e.g.*, Dkt. No. 695-11 at 177:6; Dkt. No. 760-13. These materials reflect "non-public information regarding prices, costs, or margins." PO ¶ 2(c). Courts also consistently hold disclosure of such material would likely result in competitive harm to the producing party. *See Kewazinga Corp.*, 2021 WL 1222122, at *3.

- **AEG's analysis of competition in ticketing and promotions, including Defendants' conduct and the strengths and vulnerabilities of AEG's products and services.** *See, e.g.*, Dkt. No. 696-5 at 213:7-218:24; Dkt. No. 696-10 at 83:11-15. These materials reflect AEG's evaluation of its competitive position in relation to its competitors and "evaluation of the strengths and vulnerabilities of product or service offerings." PO ¶ 2(e). Such competitive analysis includes AEG's information that demonstrates Defendants' anticompetitive conduct, which presents a material risk of Defendants' retaliation against AEG and its information sources. *See Heckman v. Live Nation Ent., Inc*., 2025 WL 1720178, at *5-6 (C.D. Cal. May 13, 2025) (denying Defendants' employees access to certain third-party information, in part, based on the allegations of Defendants' "history of threatening and retaliating against companies that do business with Defendants' competitors"), *adopted as final*, Dkt. No. 370 (May 15, 2025). Courts routinely seal such material to prevent competitive injury to the producing party. *See Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (sealing defendants' "internal analysis of the competitiveness of its practice groups"); *Playtex Prods. LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11-12 (S.D.N.Y. Mar. 29, 2016) (sealing the producing party's "competitive analyses").

- **Presentations or communications of AEG's business strategies, including investments and expansions.** *See, e.g.*, Dkt. No. 696-1 at 237:3-23; Dkt. No. 696-10 at 130:7-131:22. These materials reflect AEG's "financial, marketing, or strategic business planning information" and "plans for existing or proposed future acquisitions or expansions." PO ¶ 2(b). Courts commonly seal these materials to prevent competitive harm to the producing party. *Kewazinga Corp.,* 2021 WL 1222122, at *3.

- **AEG's trade secrets and current research and development.** *See, e.g*., Dkt. No. 619:10 at 38:6-12; Dkt. No. 696:6 at 53:10-54:25. These materials reflect AEG's "trade secrets, including . . . customer lists" and "research development." PO ¶ 2(b). These materials are quintessential types of documents that courts seal to protect the producing party's competitive interest. *Kewazinga Corp.,* 2021 WL 1222122, at *3.

- **Other third-party names and personal information**. These materials contain "sensitive personally identifiable information" and "any information of a personal or intimate nature" of third-parties, such as artists, artists' managers, artists' agents, venues, and promoters. PO ¶¶ 2(h), 3(d). As noted in Defendants' prior sealing request, "the public holds an outsized interest in the individuals at issue—including artists, artist managers, and artist agents—that is entirely disconnected from the case at hand, and where disclosure of their names and information would draw unwarranted and unnecessary attention." Dkt. No. 540 at 3 (citing *Richardson v. NBA,* 2025 U.S. Dist. LEXIS 44570, at *5 (S.D.N.Y. Mar. 3, 2025)). Moreover, third-party names and identifying information referenced in relation to Defendants' alleged conduct should be sealed to

The Honorable Arun Subramanian                - 3 -

protect the innocent third parties from the risk of Defendants' potential retaliation. *Heckman*, 2025 WL 1720178, at *5-6. This Court has previously granted sealing of this type of information in this case. Dkt. No. 549.

Sealing of the above categories of materials, set forth in detail in Appendix A, is warranted under the law of this Circuit. "The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (citations omitted). Courts first assess whether the documents at issue are "judicial documents" relevant to the performance of the judicial function and useful in the judicial process. *Lugosch*, 435 F.3d at 119. Second, "the court must determine 'the weight of the presumption'" of public access to the documents. *Stern*, 529 F. Supp. 2d at 420 (citing *Lugosch*, 435 F.3d at 119). Third, the "'court must balance competing considerations against'" the presumption of public access. *Id.* (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). The "privacy interests of innocent third parties," such as AEG, "are a venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1050-51 (citation modified).

Although the materials related to a summary judgment motion are considered "judicial documents," the materials AEG seeks to seal carry a weak presumption of public access that fails to outweigh the competitive harm to AEG in the event of their disclosure. AEG's status as a third-party in this case exacerbates the concern. The Court need not "dive into the minutiae" of AEG's confidential materials to "understand whether triable issues exist with respect to" Defendants' motion for summary judgment. *Mehta v. DLA Piper LLP*, 2025 WL 2771659, at *13 (S.D.N.Y. Sept. 29, 2025). For example, Defendants cite AEG's ticketing services agreements to show that other industry participants have exclusive agreements with certain venues. The specific terms of AEG's agreements, however, are irrelevant, yet the consequences of their disclosure would be devastating to AEG's business. *See Kewazinga Corp.,* 2021 WL 1222122, at *3. Similarly, Plaintiffs cite to AEG's confidential discussions with certain artists and venues to evidence Defendants' unlawful conduct, but the exact names of those artists and venues have "little bearing on whether the [] motion should be granted." *Red Hawk, LLC v. Colorforms Brand LLC*, 638 F. Supp. 3d 375, 385 (S.D.N.Y. 2022). Accordingly, the weight of the presumption of public access is low. *Mehta*, 2025 WL 2771659, at *13.

Any presumption of public access is also heavily outweighed by AEG's and other third-parties' privacy interests. As noted above, the materials related to AEG's sealing requests contain information related to its trade secrets, customers, costs, pricing, revenues, profit margins, research and development, marketing plans, business strategies, and investments. Disclosure of this information could adversely impact AEG's relationship with its current and prospective clients and give its competitors an unfair advantage. Courts routinely permit sealing in such circumstances. *Iacovacci v. Brevet Holdings*, LLC, 2022 WL 101907, at *2 (S.D.N.Y. Jan. 11, 2022) (collecting cases); *see also Kewazinga Corp.*, 2021 WL 1222122, at *3. The materials at issue also contain identifying information of artists, venues, promoters and other professionals, and sealing such identifying information is necessary to protect those third-parties' vital privacy interests and minimize the risk of potential retaliation by Defendants. Dkt. No. 549; *Heckman*, 2025 WL 1720178, at *5-6.

For the foregoing reasons, AEG respectfully requests that this Court allow the materials identified in Appendix A to remain under seal.

The Honorable Arun Subramanian                 - 4 -

Respectfully submitted,

*/s/ Justin W. Bernick*
Justin Bernick (admitted *pro hac vice*)
Molly Pallman (admitted *pro hac vice*)
555 Thirteenth St., NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
molly.pallman@hoganlovells.com

*/s/ Claude G. Szyfer*
Claude G. Szyfer
390 Madison Avenue
New York, New York 10017
Telephone:(212) 918-3000
Facsimile: (212) 918-3100
claude.szyfer@hoganlovells.com

*Attorneys for Anschutz Entertainment Group, Inc.*

Dated: January 16, 2026