quinn emanuel trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7164**

WRITER'S EMAIL ADDRESS
**georgephillips@quinnemanuel.com**

January 16, 2026

<u>Via CM/ECF</u>

The Honorable Arun Subramanian
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007-1312

Re: <u>*United States, et al. v. Live Nation Entm't, Inc.*</u>, **et al., No. 1:24-cv-3973 (AS)**

Dear Judge Subramanian:

I write on behalf of non-Party LA Clippers LLC (the "Clippers") pursuant to Rule 11(B)-(C)(ii) of the Court's Individual Practices in Civil Cases to request that the following exhibits filed in support of and in opposition to the Parties' summary-judgment and expert-exclusion motions (together, the "Exhibits") remain under seal and that the redacted portions of the briefing also remain under seal:

- Exhibits 32 (ECF No. 692-15), 44 (ECF No. 693-4), 86 (ECF 749-6), 93 (ECF No. 695-20); and 108 (ECF No. 694-3) of Defendants' motion for summary judgment and reply (ECF Nos. 688, 797, 799, 803);

- Exhibits 86 (ECF No. 749-6), 93 (ECF No. 695-20); and 108 (ECF No. 694-3) of Plaintiff's summary judgment opposition (ECF Nos. 755, 759, 763); and

- Exhibits 8 (ECF No. 722-8) and 18 (ECF No. 722-18) of Defendants' motion to exclude expert evidence (ECF No. 703, 704).

As explained below, the Exhibits discuss the Clippers' sensitive and confidential business decisions and/or disclose the identities and responsibilities of the Clippers' employees, and therefore should remain under seal.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DUBAI | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

**The Exhibits Contain Sensitive and Confidential Business Information**

***Exhibits 8, 18, 93, and 108***:  These Exhibits consist of Clippers' employees' deposition testimony, which the Clippers designated as "Highly Confidential" pursuant to the Amended Protective Order (ECF No. 347) (the "Protective Order").  The deposition excerpts discuss, among other sensitive topics:  (1) the Clippers' "primary objectives," goals, and requests for proposals to various ticketing vendors during the confidential selection of a ticketing partner for its venues; (2) the technologies used at the Clippers' venues and reasons behind its implementation; (3) the efficacy of current strategies at the Clippers' venues; (4) the names and job responsibilities of Clippers' employees and third-party partners; and (5) confidential conversations with third-party ticketing vendors.

***Exhibit 32***:  This Exhibit contains the Clippers' confidential Request For Proposal sent to potential ticketing vendors.  It discloses the Clippers' business strategies, objectives, goals, and requests.  It also contains confidential communications between the Clippers and Ticketmaster.

***Exhibit 44***:  This Exhibit is the Ticketing Agreement between the Clippers and Ticketmaster, which details advertising and insurance arrangements, "accounting procedures," tax allocations, indemnification agreements, "Charges and Fees" associated with each ticket, and contains a confidentiality clause preventing its disclosure to third-party competitors.

***Exhibit 86***:  This Exhibit is a confidential email between the Clippers and a third-party ticketing vendor discussing various non-public goals and objectives that the Clippers sought from such partners.

**The Exhibits Should Remain Under Seal**

The three-step framework set out in *Lugosch v. Pyramid Co. of Onondaga* governs the Court's consideration of a motion to seal.  435 F.3d 110, 119-20 (2d Cir. 2006).  *First*, the Court must determine whether the materials are "judicial documents," to which "a common law presumption of access" applies.  *Id.* at 119 (cleaned up).  *Second*, if the documents are "judicial documents," the court "must determine the weight of that presumption" by weighing "the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts."  *Id*.  *Third*, the Court must "balance competing considerations against" that presumption.  *Id.* at 120 (cleaned up).

"Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are sources of business information that might harm a litigant's competitive standing."  *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (cleaned up).  Courts accordingly recognize that sealing "specific business information and strategies, which, if revealed, may provide valuable insights into a company's current business practices that a competitor would seek to exploit," is an important countervailing interest that outweighs the presumption of public access.  *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015); *accord, e.g.*, *Locus Techs. v. Honeywell Int'l Inc.*, 2024 WL 5103334 at *2-3 (S.D.N.Y. Dec. 13, 2024); *SEC v. Telegram Grp. Inc.*, 2020 WL 3264264 at *5-6 (S.D.N.Y. June 17, 2020); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig*, 2023 WL 196134 at *3-4 (S.D.N.Y. Jan. 17, 2023) (collecting cases).

The Clippers have significant business interests in keeping the Exhibits confidential and sealed. The Clippers operate two well-known venues—the Intuit Dome and Kia Forum—in Los Angeles, California—the second largest entertainment market in the United States—and contend with other venues to maintain a competitive advantage in booking exclusive talent. Each Exhibit contains sensitive, confidential information related to the Clippers' business practices, strategies, and competitive standing. For example, Exhibit 32 outlines in detail the Clippers' "acceptance criteria" in selecting a ticketing partner for Intuit Dome, existing digital payment partnerships, business strategies and goals related to ticketing and fan experiences, and confidential communications between the Clippers and Ticketmaster. This internal business information fits within standard "business information and strategies" that provides "valuable insights . . . a competitor would seek to exploit" and supports sealing. *Louis Vuitton*, 97 F. Supp. 3d at 511.

Compelling reasons also support the sealing of deposition excerpts Exhibits 8 and 108. Not only do these exhibits discuss Exhibit 32, but they also detail the deponent's communications with non-party employees, the Clippers' internal processes for selecting ticketing partners, the technologies the Clippers utilize for their ticketing operations, and the deponent's understanding of the Clippers' "primary objectives" in ticketing. Precedent from courts in this Circuit supports the sealing of such testimony. *See Rowe v. Google LLC*, 2022 WL 4467628 at *2 (S.D.N.Y. Sept. 26, 2022) (granting motion to seal because documents disclosed "the identities of certain clients, individuals who are in contact with Defendant's employees and strategies for cultivating business could put it at a competitive advantage."). The Court should also seal Exhibit 86 for the same reasons: it consists of the Clippers' confidential business correspondence with a third-party competitor of Defendant Ticketmaster, such as the Clippers' reasons supporting its intent to keep Intuit Dome an "open venue," and is further discussed in Exhibits 8 and 108's deposition excerpts.

The deposition excerpts in Exhibit 93 also warrant sealing. Exhibit 93 discusses the current ticketing strategy used at the Intuit Dome and the Clippers' internal conversations regarding ticketing partners. Publicly disclosing internal deliberation about ticketing strategies would allow the Clippers' competitors an improper glimpse into its "specific business information and strategies" and prejudice the Clippers from future business dealings. *See Louis Vuitton*, 97 F. Supp. 3d at 511; *see also CT Espresso LLC v. Lavazza Premium Coffees Corp.*, 2022 WL 443644 at *3 (S.D.N.Y. Feb. 14, 2022) (granting motion to seal when disclosing agreement would allow competitors to "negotiat[e] more favorable provisions . . . which would competitively harm [defendant]—as well as its innocent, authorized resellers—because it would result in lower revenues for [defendant] and those resellers.").[*]

---

[*] The Clippers also seek to seal portions of Exhibit 93 that discuss the business operations of the deponent's third-party former employers. Although these excerpts do not discuss the Clippers' business operations, the Clippers seek to protect its employees from breaching potential confidentiality agreements with their former employers. The Court's Individual Practices in Civil Cases Rule 11(a) dictates such "employment history" is regularly redacted without Court approval. The Clippers are currently working with the Parties to provide the deponent's third-party former employers an opportunity to review the deposition excerpts and consider whether such information is confidential to their business operations. The Clippers remain open to de-designating these

Further, the entirety of Exhibit 44 contains "confidential and competitively sensitive" information, such as contractual terms detailing the Clippers and Ticketmaster's advertising and insurance arrangements, "accounting procedures," internal incident response strategies, and an outline of the "Charges and Fees" associated with each ticket sold. Exhibit 44 also contains a mutual confidentiality clause preventing its disclosure to competitors. The first page of Exhibit 44 is marked with a "CONFIDENTIAL" designation. Courts routinely seal confidential contracts just like Exhibit 44. *See SEC v. Ripple Labs, Inc,* 2023 WL 3477552 at *9 (S.D.N.Y. May 16, 2023) (granting third-party's motion to seal contract terms between third-party and defendant); *Dinosaur Fin. Grp. LLC*, 2025 WL 2977725 at *2.

Even if the Court determines that any Exhibit should not be sealed, there is a separate compelling reason to redact the Exhibits: protecting the privacy of non-party individuals. The "privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (cleaned up). Exhibits 8, 44, 86, 93, 108 each contain personal identifying information both for Clippers employees and unaffiliated third-party business partners, such as names, contact information, and employment roles. These individuals—who are "not parties to this case" and whose "identities are not relevant to the resolution of the motions"—have a recognized privacy interest in not having their contact listed on the public docket. *Al Thani v. Hanke*, 2021 WL 2789276, at *1 (S.D.N.Y. Jan. 15, 2021) (granting request to redact names on the grounds that "the privacy interests of . . . investors, who are not parties to this case and whose identities are not relevant to the resolution of the motions . . . outweigh the presumption of public access"). Exhibit 44 also contains private financial information such as the Clippers' bank account numbers, routing numbers, and wire numbers, which is routinely redacted. *See* Individual Practices In Civil Cases Rule 11(a).

In sum, publicly disclosing the Exhibits, which detail how the Clippers operate its venue business in the competitive Los Angeles market, places the Clippers at a competitive disadvantage. The Clippers, as a non-party in this litigation, should not risk losing its competitive advantages through its cooperation as a third-party in this lawsuit. Accordingly, the Clippers respectfully request that Exhibits 8, 18, 32, 44, 86, 93, and 108 remain under seal, or are alternatively redacted.

We are available should the Court have any questions.

Respectfully submitted,

George T. Phillips

*Counsel for Non-Party LA Clippers LLC*

cc: Counsel of Record (via CM/ECF)

---

portions of Exhibit 93 pending confirmation from the third-party former employers that the information disclosed was not confidential.