UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007



CHAMBERS OF
ARUN SUBRAMANIAN
UNITED STATES DISTRICT JUDGE

January 27, 2026

Re: *United States v. Live Nation*, 24 Civ. 3973

Dear Counsel,

At last week's hearing, we discussed whether *actual* price discrimination was necessary to assert a targeted customer market in this case. Defendants pointed to *Meta* as the basis for this requirement. But this issue has come up previously in the context of geographic markets. The Second Circuit addressed such a market in *United States v. Eastman Kodak Co.*, 63 F.3d 95, 106–07 (2d Cir. 1995). There, the Court rejected the FTC's effort to limit the market at issue to domestic customers, noting that it had failed to prove price discrimination against those customers. *Id* at 107 ("Having chosen to rebut Kodak's proposed market definition by relying on its theory of price discrimination, it was incumbent upon the government to produce probative evidence of systematic price discrimination, which it failed to do. In the absence of such proof, the district court properly rejected the government's theory.").

However, the Third Circuit in *FTC v. Hackensack Meridian Health Inc.*, 30 F.4th 160 (3d Cir. 2022) observed (as reflected in the quote above) that in *Eastman Kodak* the Second Circuit relied on the lack of proof of price discrimination only because that was the FTC's theory for a domestic-only market. "The government did not argue, and the Second Circuit did not hold, that price discrimination was the only basis on which to define a customer-based market." *Id*. at 168. Surveying the cases and literature, the *Hackensack* Court said "we are not willing to adopt a rigid requirement that price discrimination must be feasible in every customer-based geographic market. Instead, we hew to the fundamental antitrust principle that courts must consider the commercial realities of the industry involved when defining the relevant market." *Id*. at 169.

Separately, defendants argue that *actual* price discrimination, not just *the ability to* price discriminate as in a merger case, must be shown to assert a targeted customer market. But plaintiffs respond that this proposed requirement would be

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

inconsistent with the fact that identifying a monopoly under Section 2 does not require proof of *the exercise* of monopoly power. *See, e.g., Conwood Co. v. United States Tobacco Co.,* 290 F.3d 768, 783 n.2 (6th Cir. 2002) ("[T]he material consideration in determining whether a monopoly exists is not that prices are raised and that competition is excluded, but that power exists to raise prices or to exclude competition when it is desired to do so."); Areeda & Hovenkamp, *Antitrust Law*, ¶ 533d ("If the defendant *can* profit by charging pharmacies a price significantly over its cost, then the pharmacy sales are a relevant market and it does not matter one whit whether the broader grouping is or is not a relevant market as well.").

The parties are invited to address these authorities and provide their best additional ones in their Wednesday submissions. They may also supplement their arguments as to how they believe the applicable standard would map onto the facts of the venue-facing primary-ticketing market and the venue-facing concert-booking services market asserted in this case. The Court is most interested in evidence that *distinguishes major concert venues from stadiums and from large theaters* in terms of the ability to exclude competition or to engage in price discrimination. For example, do threats to withhold Live Nation content, which might be uniquely effective for major concert venues, fit the bill? Why or why not? For these purposes, the parties may include in their submission argument on these issues, limited to 5 pages.

Sincerely,

Arun Subramanian
