**MADISON SQUARE GARDEN ENTERTAINMENT**

**Marlo A. Pecora**
SVP/ASSOCIATE GENERAL COUNSEL
MADISON SQUARE GARDEN ENTERTAINMENT

February 9, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re:    *United States of America, et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-
       03973-AS

Dear Judge Subramanian:

I write on behalf of non-parties Madison Square Garden Entertainment Corp. and Sphere Entertainment Co. ("MSG") pursuant to the Court's so-ordered jointly proposed protocol for sealing and redaction of papers associated with the parties' summary judgment and *Daubert* motions, ECF 685, paragraph 11(c)(iii) of the Court's Individual Practices, and Plaintiffs' motion to redact supplemental summary judgment materials, ECF 996.[1]  Plaintiffs provided notice of MSG's materials that they relied on in their supplemental papers on February 2, 2026.  MSG responded to Plaintiffs with proposed redactions to the MSG materials that same day.

The Amended Protective Order, ECF 347 ("PO"), permits a producing party, including non-parties, to designate its materials that contain non-public, commercially sensitive information warranting protection from public disclosure.  *See* ECF 347 ¶¶ 2–4.  MSG seeks to redact, and classify as Confidential, a portion of a deposition excerpt:

1.   Excerpt of Josephine Vaccarello's July 31, 2025 Deposition Transcript (cited in Pls.' Appendix, ECF 977-1): Ms. Vaccarello is the Executive Vice President of Live at MSG. MSG seeks to redact narrowly tailored excerpts from her testimony discussing detailed and proprietary non-public costs, pricing, income, and other financial metrics, based in part on Ms. Vaccarello's review of a highly proprietary exhibit used in her deposition (and designated Highly Confidential by MSG). Ms. Vaccarello's testimony regarding these internal financial metrics would reveal confidential and competitively sensitive information "likely to cause material and significant competitive or commercial harm." ECF 347 ¶ 2(f); *see Ripple Labs, Inc.*, 2023 WL 3477552, at *6 (S.D.N.Y. May 16, 2023).  Likewise, non-public financial information that reflects "non-public pricing and cost information" and "current or future non-public information regarding prices, costs,

---

[1] Plaintiffs have already filed under seal on ECF, pursuant to paragraph 11(c)(iii), unredacted copies of each document at issue in its supplemental papers, with blue highlight reflecting non-party sealing requests, and pink highlight reflecting sealing requests by both the non-party and Defendants. *See* ECF 996 at 1.  Therefore, MSG has not also submitted its materials under seal, as the Court already possesses them through Plaintiffs' submission, but is happy to supplement this application with its materials if the Court prefers.

Madison Square Garden Entertainment Corp.

TWO PENNSYLVANIA PLAZA, NEW YORK, NY 10121-0091

TEL (212) 465-6334 marlo.pecora@msg.com

**Marlo A. Pecora**
SVP/ASSOCIATE GENERAL COUNSEL
MADISON SQUARE GARDEN ENTERTAINMENT

or margins" are protected under the PO, ECF 347 ¶ 2(c), (e), and would cause MSG competitive harm. *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015).

Courts have often recognized that privacy interests can justify sealing highly sensitive information about non-parties. *Ripple Labs, Inc.*, 2023 WL 3477552, at *7; *Dodona I*, 119 F. Supp. 3d at 156; *see also United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir. 1995) ("We have previously held that the privacy interests of innocent third-parties should weigh heavily in a court's balancing equation." (internal quotation marks and alterations omitted)). In addition, courts evaluate whether information remains commercially sensitive at the time of the sealing request, which renders sealing more appropriate. *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 387 (S.D.N.Y. 2019). Finally, if "testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo*, 71 F.3d at 1050.

Here, Plaintiffs cite Ms. Vaccarello's transcript for the unremarkable proposition that "Madison Square Garden Arena has different prices and profitability than the theaters that Madison Square Garden Entertainment Corp. operates, such as Radio City Music Hall." But the underlying testimony supporting this point is far more specific—it includes precise operating income metrics for the venues, as well as discussion of specific theater expenses related to Ticketmaster, derived from a highly proprietary and confidential document containing a larger picture of certain MSG financials. MSG seeks to keep under seal this granular-level financial information, which has "little bearing on whether the [] motion should be granted." *Id*. Moreover, disclosure of these types of commercially sensitive information could cause MSG real competitive harm if publicized. Indeed, MSG's privacy interests in the limited testimony it seeks to redact far outweigh the presumption of public access, as the materials include non-public financial information that is not directly relevant to the substance of the parties' dispute at issue. Courts in this district permit sealing in these and similar circumstances. *See, e.g., In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n. 1 (S.D.N.Y. 2017) (granting sealing applications for "confidential information relating to competitive pricing data and strategy").

We thank the Court for its consideration of this request.

Sincerely,

*/s/ Marlo A. Pecora*
Marlo A. Pecora

Madison Square Garden Entertainment Corp.

TWO PENNSYLVANIA PLAZA, NEW YORK, NY 10121-0091

TEL (212) 465-6334 marlo.pecora@msg.com