## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>LIVE NATION ENTERTAINMENT, INC., and<br>TICKETMASTER L.L.C.,<br>　　　　　　　　　　Defendants. | Case No. 1:24-cv-03973-AS |

## PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

MOTIONS IN LIMINE ....................................................................................... 1

**MOTION 1** Evidence and Arguments Related to the Markets Alleged in the DOJ's 2010 Merger Enforcement Action Against Live Nation and Ticketmaster Should Be Excluded ................................................................................................ 1

    A.   The Markets Alleged in 2010 Are Irrelevant and Not Probative ........................ 2

    i.   *Competitive Conditions Have Changed over 16 Years* ........................................ 2

    ii.   *Plaintiffs Can Plead Alternative Markets in Different Litigation* ........................ 3

    iii.   *Prosecutorial Discretion Permits Different Theories in Different Litigations* .... 4

    iv.   *Defendants' Use of the DOJ's 2010 Market Definition Would Confuse the Jury and Substantially Prejudice Plaintiffs* ................................................................. 4

**MOTION 2** Evidence Concerning the Enforcement of the DOJ's 2010 Decree and the 2020 Amended Decree, Including the Monitor Witness, Should be Excluded ................... 5

    A.   The Court Should Preclude Evidence or Argument About the Work of the Monitoring Trustee ...................................................................................... 6

**MOTION 3** Evidence or Argument That Defendants' Other Acquisitions or Other Conduct Were Not Challenged By Antitrust Enforcers Should be Excluded ........................... 8

    A.   Evidence that Other Acquisitions Were Not Challenged Should be Excluded.... 8

    B.   Evidence of a Ticketing Investigation During the 1990s Should be Excluded.. 11

**MOTION 4** The Fact That Non-Parties Made Statements to Enforcement Agencies Should Be Excluded ........................................................................................... 12

**MOTION 5** Lay Witnesses Should be Precluded From Testifying As to Whether Defendants' Profit Margins Are Consistent with Monopoly Power ........................... 13

**MOTION 6** Evidence or Argument Regarding *It's My Party, Inc. v. Live Nation* Should Be Excluded ........................................................................................... 14

**MOTION 7** Defendants Should Be Precluded from Referencing Treble Damages, Attorneys' Fees, or Civil Penalties, or Any Resulting Impact to their Business ....... 16

**CONCLUSION** ........................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008).................................................................................... 4

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ..................................................................... 14

*Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*,
   651 F.2d 122 (2d Cir. 1981) ..................................................................... 14

*Brown Shoe Co. v. United States*,
   370 U.S. 294 .............................................................................................. 3

*Campodonico v. Wal-Mart Stores East, LP*,
   No. 18-cv-8606, 2022 WL 622830 (S.D.N.Y. Mar. 2, 2022)...................... 7

*Carbon Black Antitrust Litig.*,
   No. 03-cv-10191, 2005 WL 2323184 (D. Mass. Sept. 8, 2005)................ 12

*City of Groton v. Connecticut Light & Power Co.*,
   662 F.2d 921 (2d Cir. 1981) ..................................................................... 10

*CVD, Inc. v. Raytheon Co.*,
   769 F.2d 842 (1st Cir. 1985)..................................................................... 17

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
   111 F.4th 337 (4th Cir. 2024) ................................................................... 10

*Eng v. Scully*,
   146 F.R.D. 74 (S.D.N.Y. 1993) ................................................................ 15

*Fed. Trade Comm'n v. Live Nation Ent., Inc. and Ticketmaster, LLC*,
   No. 2:25-cv-08884 (C.D. Cal.) ................................................................. 15

*FTC v. Procter & Gamble Co.*,
   386 U.S. 568 (1967).................................................................................. 10

*HBE Leasing Corp. v. Frank*,
   22 F.3d 41 (2d Cir. 1994) .................................................................... 16, 17

*Heckler v. Chaney*,
   470 U.S. 821 (1985)................................................................................ 4, 11

*High Fructose Corn Syrup Antitrust Litig.*,
   295 F.3d 651 (7th Cir. 2002) .................................................................... 11

*It's My Party v. Live Nation*,
   No. 09-cv-547 (D. Md.) ................................................................................. 15

*Jones v. Jasper Wyman & Son*,
   639 F. Supp. 3d 192 (D. Me. 2022) ............................................................... 16

*McCann v. Miller*,
   502 F. App'x 163 (3d Cir. 2012) ................................................................... 18

*Moore v. Sequeira*,
   No. 3:21-CV-00787, 2024 WL 1013301 (D. Conn. Mar. 8, 2024) ........................ 15

*Namenda Direct Purchaser Antitrust Litig.*,
   No. 15 CIV. 7488 (CM), 2019 WL 6242128 (S.D.N.Y. Aug. 2, 2019) ................. 16

*Noble v. McClatchy Newspapers*,
   533 F.2d 1081 (9th Cir. 1975) ...................................................................... 17

*Outley v. City of New York*,
   837 F.2d 587 (2d Cir. 1988) ......................................................................... 15

*Paolitto v. John Brown E & C, Inc.*,
   151 F.3d 60 (2d Cir. 1998) ........................................................................... 11

*Pollock & Riley, Inc. v. Pearl Brewing Co.*,
   498 F.2d 1240 (5th Cir. 1974) ...................................................................... 17

*Reilly v. Natwest Markets Grp. Inc.*,
   181 F.3d 253 (2d Cir. 1999) ......................................................................... 18

*Scoma v. City of New York*,
   No. 16-Civ-6693, 2021 WL 1784385 (E.D.N.Y. May 4, 2021) ......................... 15

*Simpson v. Pittsburgh Corning Corp.*,
   901 F.2d 277 (2d Cir.) ................................................................................. 18

*Smith v. Lightning Bolt Productions, Inc.*,
   861 F.2d 363 (2d Cir. 1988) ......................................................................... 18

*Steves and Sons, Inc. v. JELD-WEN, Inc.*,
   988 F.3d 690 (4th Cir. 2021). ............................................................. 9, 11, 12

*Telerate Sys., Inc. v. Caro*,
   689 F. Supp. 221 (S.D.N.Y. 1988) ............................................................... 14

*Ticketmaster Corp. v. Tickets.com*,
   No. 99-cv-7654 (C.D. Cal.) ........................................................................... 15

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
   No. 11-cv-2725, 2022 WL 874945 (S.D.N.Y. Mar. 24, 2022) ............................ 3

iii

*United States ex rel. Feldman v. van Gorp*,
  2010 WL 2911606 (S.D.N.Y. July 8, 2010) .................................................................. 10

*United States v. Am. Airlines Grp. Inc.*,
  675 F. Supp. 3d 65 (D. Mass. 2023) ........................................................................... 3

*United States v. Apple, Inc.*,
  No. 24-CV-4055, 2025 WL 1829127 (D.N.J. June 30, 2025) .................................... 3

*United States v. Candelaria-Silva*,
  166 F.3d 19 (1st Cir. 1999) ........................................................................................ 4

*United States v. Charles George Trucking, Inc.*,
  34 F.3d 1081 (1st Cir. 1994) ..................................................................................... 18

*United States v. Garcia*,
  413 F.3d 201 (2d Cir. 2005) ................................................................................. 13, 14

*United States v. Google*,
  Case No. 23-cv-103, ECF No. 1 (E.D. Va. Jan. 24, 2023) ....................................... 9

*United States v. Grinage*,
  390 F.3d 746 (2d Cir. 2004) ................................................................................. 13, 14

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ................................................................................................... 10

*United States v. Microsoft*,
  56 F.3d 1448 (D.C. Cir. 1995) ................................................................................... 4

*United States v. Rea*,
  958 F.2d 1206 (2d Cir. 1992) .................................................................................... 13

*United States v. Teva Pharms. USA, Inc.*,
  No. 13 CIV 3702, 2019 WL 13244252 (S.D.N.Y. July 1, 2019) ............................. 16

*Vasbinder v. Ambach*,
  926 F.2d 1333 (2d Cir. 1991) .................................................................................... 18

## Statutes

15 U.S.C.A. § 15 ............................................................................................................... 17

15 U.S.C. § 18 ........................................................................................................ 1, 2, 9, 10

## Rules

Fed. R. Evid. 401 .................................................................................................... passim

Fed. R. Evid. 402 ................................................................................... passim

Fed. R. Evid. 403 ................................................................................... passim

Fed. R. Evid. 404 ................................................................................ 1, 15, 16

Fed. R. Evid. 701 ................................................................................ 1, 13, 14

Fed. R. Evid. 702 ......................................................................................... 14

Fed. R. Evid. 801(c) ...................................................................................... 8

Fed. R. Evid. 802 ............................................................................... 1, 6, 8, 11

Fed. R. Evid. 805 .......................................................................................... 8

Plaintiffs respectfully submit these motions in limine to preclude the introduction of certain evidence, arguments, and testimony pursuant to Rules 401, 402, 403, 404, 701, and 802 of the Federal Rules of Evidence.

## MOTIONS IN LIMINE

### MOTION 1
**Evidence and Arguments Related to the Markets Alleged in the DOJ's 2010 Merger Enforcement Action Against Live Nation and Ticketmaster Should Be Excluded**

On February 10, 2009, Live Nation and Ticketmaster agreed to merge. The Department of Justice (the "DOJ") and several state plaintiffs filed suit in January 2010 to challenge the merger under Section 7 of the Clayton Act, 15 U.S.C. § 18, recognizing that it might substantially lessen competition for primary concert ticketing.[1] The Parties reached a settlement which permitted the proposed merger to proceed but required a remedy package that included structural and behavioral remedies.[2]

Plaintiffs do not seek to exclude the fact of the 2010 merger or the fact that a settlement permitted the transaction to proceed. However, Defendants should be prohibited from attempting to introduce the legal theories—including the proposed relevant markets—from the 2010 merger challenge because these theories are irrelevant, likely to confuse the issues, mislead the jury, and lead to trials-within-a-trial that waste time. As detailed below, such evidence should be excluded under Federal Rules of Evidence 401, 402, and 403.

---

[1] ECF 691-8, Defs. MSJ Ex. 8, Am. Compl. at 6 ¶ 6, *United States et al. v. Ticketmaster Ent., Inc., et al.*, No. 1:10-cv-00139, (D.D.C. Jan. 29, 2010) (hereinafter, "2010 Compl.").

[2] ECF 691-12, Defs. MSJ Ex. 12, Final Judgment, *United States et al. v. Ticketmaster Ent., Inc., et al.*, No. 1:10-cv-00139, (D.D.C. July 30, 2010), ECF No. 15.

### A.  The Markets Alleged in 2010 Are Irrelevant and Not Probative

Defendants have repeatedly sought to make hay out of the fact that the relevant markets alleged in *this* case are different than a relevant market alleged in the DOJ's 2010 complaint challenging the merger. *See* ECF 689, Defs. MSJ at 2, 16; ECF 690, Defs. 56.1 Statement at ¶ 11; Pls. MSJ Opp'n Ex. 52, ECF 752-12, Deposition of Dennis Carlton (Defs, Expert), Nov. 6, 2025, 90:7–24. The 2010 Complaint alleged a single relevant market: primary ticketing services to major concert venues in the United States. 2010 Compl. ¶ 35. And in a related Competitive Impact Statement, the DOJ identified some stadiums as a type of major concert venue for the purpose of the complaint filed pursuant to Section 7 of the Clayton Act. *See* ECF 691-9, Defs. MSJ Ex. 9.

The fact that the DOJ alleged a relevant market that included some stadiums, in a separate action based on a different statute over fifteen years ago—but is not doing so here—is irrelevant and prejudicial. In no way does it have "any tendency to make the existence of any fact [that is of consequence in determining this action] more or less probable." Fed. R. Evid. 401.

#### i.  Competitive Conditions Have Changed over 16 Years

Any relevance of the market alleged in 2010 would be premised on a static live entertainment and ticketing industry that does not reflect the reality of today. In the years after the merger, Defendants acquired competitors, consolidated market power in ticketing, promotions, and amphitheaters, and exercised their enhanced market power to threaten or retaliate against venues that do not use Ticketmaster and to coerce those venues into entering long-term exclusive ticketing contracts. In other words, the competitive conditions today are not analogous to those sixteen years ago, and some of the markets in this case are focused on the segment of venues where the interconnected harm among venues, promotions, and ticketing is felt most acutely. Permitting Defendants to elicit evidence that the DOJ identified some stadiums

as a "major concert venue" in 2010 would require a series of mini-trials to answer a series of

sideshow questions—like "Were there different competitive conditions for stadiums as compared

to other large venues in 2010?"; "Was that differential in competitive conditions similar to what

exists today?"; "Were stadiums insulated from threats of concert loss in 2010?"; and "Who were

the main suppliers of the relevant products for stadiums, and were there different suppliers for

other venue types, in 2010?" Going down this road would lead to confusion, waste the jurors'

time, and prejudice Plaintiffs.

> *ii.  Plaintiffs Can Plead Alternative Markets in Different Litigation*

As the Court recognized at the summary judgment hearing, plaintiffs in antitrust cases

can allege alternative markets or submarkets. Jan. 23, 2026 Hr'g Tr. 77:18-21; *see Brown Shoe

Co. v. United States*, 370 U.S. 294, 325 (1962) ("within [a] broad market, well-defined

submarkets may exist which, in themselves, constitute product markets for antitrust purposes");

*United States v. Apple, Inc.*, No. 24-CV-4055, 2025 WL 1829127, at *7 (D.N.J. June 30, 2025)

(recognizing product markets for both smartphones and "performance smartphones" and

collecting cases); *United States v. Am. Airlines Grp. Inc.*, 675 F. Supp. 3d 65, 118 (D. Mass.

2023) (declining to decide between alternative markets because "there may be multiple relevant

markets or sub-markets, any of which might appropriately be examined to assess the competitive

effects of a restraint"), *aff'd*, 121 F.4th 209 (1st Cir. 2024); *U.S. Airways, Inc. v. Sabre Holdings

Corp.*, No. 11-cv-2725, 2022 WL 874945, at *7-10 (S.D.N.Y. Mar. 24, 2022) (finding that a

reasonable jury could find that the defendant could have monopoly power in both a narrower

"Sabre-only product market" and broader market for "GDS services"). Thus, even assuming that

competitive conditions were the same in 2010 as today (which they are not), the fact that the

DOJ alleged an alternative market in 2010 has no probative value for the litigation today.

### iii. *Prosecutorial Discretion Permits Different Theories in Different Litigations*

Moreover, a law enforcement decision to allege an alternative market in a prior litigation does not support an inference that the market alleged in *this* litigation is invalid—or vice versa. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("an agency decision not to enforce often involves a complicated balancing of a number of factors"); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 89-90 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval"). For example, when bringing a law enforcement action, an agency assesses "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *Heckler*, 470 U.S. at 831. The DOJ's prosecutorial discretion lies not only in "bringing a case in the first place," but also in "narrow drafting." *United States v. Microsoft*, 56 F.3d 1448, 1459 (D.C. Cir. 1995) ("a settlement, particularly of a major case, will allow the Department of Justice to reallocate necessarily limited resources"). Thus, it would be improper for Defendants to ask the jury to draw inferences from the markets alleged. *United States v. Candelaria-Silva*, 166 F.3d 19, 35 (1st Cir. 1999) ("The introduction of evidence of a dismissal could well mislead the jury into thinking that a defendant was innocent of the dismissed charge when no such determination has been made.").

### iv. *Defendants' Use of the DOJ's 2010 Market Definition Would Confuse the Jury and Substantially Prejudice Plaintiffs*

Defendants' use of the DOJ's 2010 market definition in their summary judgment briefing also demonstrates how this information can be used to confuse the jury and result in mini-trials of issues that lack probative value. Defendants have argued that defining major concert venues today the same way that the DOJ defined them in 2010 would decrease Ticketmaster's primary

ticketing share "from a monopoly-like 86% to a mere 49% when stadiums are included." Defs.
MSJ at 1-2. However, Defendants omit any mention that the DOJ's 2010 market definition did
not include all stadiums—as Defendants suggest here—but only included stadiums that were
among the 500 venues that generated the highest concert revenues in 2008. ECF 775, Pls.
Corrected Resp. to Defs. 56.1 ¶¶ 8, 11. When Plaintiffs' expert conducted a similar analysis
based on 2023 ticketing data, he concluded that Ticketmaster's primary concert ticketing share
exceeded 80%—not the 49% claimed by Defendants. *Id.* This is just one example of the issues
with any attempt by Defendants to compare a 2010 market definition with the current markets of
today.

In sum, evidence of an alternative market alleged in the 2010 enforcement action is
neither relevant nor probative to the factual and legal issues to be decided in *this* case. Admission
of such evidence would prejudice Plaintiffs, confuse the issues, mislead the jury, and lead to
trials-within-a-trial that waste time. Accordingly, such statements should be excluded under
Rules 401, 402, and 403.

## MOTION 2
### Evidence Concerning the Enforcement of the DOJ's 2010 Decree and the 2020 Amended Decree, Including the Monitor Witness, Should be Excluded

This case is about conduct that has violated Sections 1 and 2 of the Sherman Act and
congruent and related state laws; however, Defendants intend to make this trial about the DOJ's
decision to approve its merger in 2010 and the related 2020 consent decree. Evidence related to
the enforcement of the 2010 and 2020 consent decrees, including Defendants' intent to call the
DOJ's Monitor as a trial witness, should be excluded.

In order to proceed with their proposed merger, Live Nation and Ticketmaster agreed to a consent decree, entered as a final judgment in the Clayton Act, Section 7 case on July 30, 2010 (the "2010 Decree").[3]

Subsequently, the United States and several states sued Live Nation and Ticketmaster for violating the Final Judgment, and the parties agreed to an Amended Final Judgment on January 28, 2020 (the "Amended Decree").[4] The Amended Decree also provided for the appointment of an independent monitoring trustee, who had the "power and authority to monitor Defendants' compliance" with the terms of the Amended Decree. ECF 752-20, at 30–33.

Evidence of the procedural history, such as the fact that there existed a 2010 Decree and an Amended Decree through 2025, as well as Defendants' obligations under those decrees are important and relevant to the current litigation.

However, Defendants seek to introduce irrelevant and prejudicial information related to these two decrees. In particular, Defendants plan to call the monitoring trustee as a witness and use the monitor's reports as evidence. As detailed below, such evidence should be excluded under Rules 401, 402, 403, and 802.

### A. The Court Should Preclude Evidence or Argument About the Work of the Monitoring Trustee

Defendants have listed the monitoring trustee on their witness list. They have also listed interim reports by the monitoring trustee on their exhibit list (e.g., DX-0320). The Court should preclude evidence or argument about the work of the monitoring trustee, appointed pursuant to

---

[3] ECF 691-12, Defs. MSJ Ex. 12, Final Judgment, *United States et al. v. Ticketmaster Ent., Inc., et al.*, No. 1:10-cv-00139 (D.D.C. July 30, 2010), ECF No. 15.

[4] ECF 752-20, Pls. MSJ Opp'n Ex. 60, Am. Final Judgment, *United States et al. v. Ticketmaster Ent., Inc., et al.*, No. 1:10-cv-00139 (D.D.C. July 30, 2010), ECF No. 29.

the Amended Decree, because the danger of such evidence or argument confusing or misleading the jury substantially outweighs any minimal probative value it might have.

The monitoring trustee was appointed to monitor Defendants' compliance with the terms of the Amended Decree, but this Court has already made clear that this case is not about compliance with the consent decree; it is not an effort to "carry out," "construe," "enforce," or "punish" violations of that decree. *See* ECF No. 294 at 2–3. The decree settled a claim arising under a different antitrust statute (the Clayton Act) and imposed legal duties that are "separate" from the duties at issue here. *Id*. at 3. Because "[t]his case doesn't run up against the decree," and "Defendants remain liable for violating the laws at issue here," regardless of whether the monitoring trustee found violations of the decree, *id*., evidence or argument about the work of the monitoring trustee is not a "fact . . . of consequence in determining the action." Fed. R. Evid. 401. In other words, any absence of decree violations (or any decision by Plaintiffs to forgo enforcing violations) has no "tendency" to make it "more or less probable" that Defendants are liable in this case. Fed. R. Evid. 401.

Even if evidence or argument about the work of the monitoring trustee were relevant, it risks confusing or misleading the jury into the incorrect inference that an absence of decree violations is somehow exculpatory of liability under the Sherman Act in this case. *See*, *e.g.*, *Campodonico v. Wal-Mart Stores East, LP*, No. 18-cv-8606, 2022 WL 622830, at *1 (S.D.N.Y. Mar. 2, 2022) (in case about defective bicycle, excluding evidence of no other claims and lawsuits about the relevant bicycles "because of the very real possibility that jurors could interpret this evidence as generalized proof of non-negligent behavior by Walmart without appropriate connection to the allegations and circumstances of this particular case"). Such confusion is especially likely because, as Defendants have emphasized, some of the retaliation

and conditioning conduct that Plaintiffs allege in support of their claims here would also violate the decree. *See* ECF No. 187 at 15. Even with careful instruction from the Court to the jury, that factual overlap with the conduct prohibited by the decree means that evidence or argument about the monitoring trustee's work would create a danger of confusion that would improperly skew the jury's view of the evidence.

Moreover, the written reports of the monitoring trustee, which Defendants have included on their exhibit list (DX-0320, DX-0328, DX-0347, DX-0365, DX-0448, DX-0531, DX-0641, DX-0734, DX-0780), should be excluded as inadmissible hearsay. *See* Fed. R. Evid. 802. The reports themselves are all out-of-court statements offered for their truth, *see* Fed. R. Evid. 801(c), and the reports present multiple layers of inadmissible hearsay because they contain statements made to the monitoring trustee by interviewees or other people who provided information to the monitor. *See* Fed. R. Evid. 805.

<u>**MOTION 3**</u>
**Evidence or Argument That Defendants' Other Acquisitions or Other Conduct Were Not Challenged By Antitrust Enforcers Should be Excluded**

**A.  Evidence that Other Acquisitions Were Not Challenged Should be Excluded**

Defendants' anticompetitive conduct in this case also includes acquisitions of companies that presented competitive threats to Defendants, including competing promoters, venues, and festivals. Defendants should be precluded from arguing that those acquisitions did not harm competition because the antitrust enforcement agencies did not challenge them at the time they were consummated.

Courts consistently hold that the decision of an antitrust enforcer not to pursue a merger challenge has no probative value as to the merger's legality. For example, in *Steves and Sons, Inc. v. JELD-WEN, Inc.*, which was a private challenge to a merger, "the district court forbade evidence that the Department had twice investigated the merger without challenging it." 988

F.3d 690, 713 (4th Cir. 2021). The Fourth Circuit affirmed, reasoning that "[t]he Department's decision not to pursue the matter isn't probative as to the merger's legality because many factors may motivate such a decision, including the Department's limited resources." *Id*. at 714 (citing cases). Accordingly, "a defendant may not use an enforcement authority's decision not to take action as a sword because inaction on the part of the government cannot be used to prove innocence," and evidence of the law enforcement's decision could have misled the jury. *Id*. (quotation omitted). This is also consistent with Congress' directive that the antitrust agencies' decision not to act "shall not bar any proceeding or any action with respect to such acquisition at any time under any other section of this Act or any other provision of law." 15 U.S.C. § 18a(i)(1)

The district court's decision in *United States v. Google* demonstrates why this Court should exclude evidence of agency investigations or lack of enforcement. That lawsuit, filed in 2023, was brought under the Sherman Act for anticompetitive conduct, including Google's acquisitions of two companies in 2008 and 2009. Case No. 23-cv-103, ECF No. 1 (E.D. Va. Jan. 24, 2023) ("*Google Ad Tech*") at 4, 6, 34. Both of those acquisitions were reviewed by a federal antitrust enforcement agency, and for both, the agency took no action and issued a statement explaining its decision. The court granted a motion in limine to exclude evidence of those historical law enforcement decisions and the accompanying statements. *Google Ad Tech*, ECF No. 1303 (ordering that "defendant Google LLC may not use evidence or argument about antitrust enforcers' review, comments, and decisions not to challenge Google's acquisitions of [the two companies]"). Thus, it is proper to exclude such evidence at the motion in limine stage. *Id.*; *Steves & Sons*, 988 F.3d at 713-14. That conclusion makes even more sense here considering that Defendants' acquisitions may have been too small to trigger the notification and waiting period requirements under the HSR Act, 15 U.S.C. § 18a.

Moreover, even if any of those mergers were reviewed, the investigating agency would have been tasked with evaluating a specific merger in isolation, under a different standard. The "core question" under Section 7 of the Clayton Act "is whether a merger may substantially lessen competition," which "necessarily requires a prediction of the merger's impact on competition, present and future." *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967); 15 U.S.C. § 18. In this case under Section 2 of the Sherman Act, the jury will consider Defendants' past conduct "as a whole," with the benefit of a retrospective record. *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354 (4th Cir. 2024), *cert. denied*, 2026 WL 79821 (Jan. 12, 2026); *United States v. Grinnell Corp.*, 384 U.S. 563, 576 (1966) (affirming monopolization finding under Section 2 of the Sherman Act because, among other conduct, earlier acquisitions by the defendant "perfected the monopoly power to exclude competitors and fix prices"); *accord City of Groton v. Connecticut Light & Power Co.*, 662 F.2d 921, 929 (2d Cir. 1981) ("The proper inquiry is whether, qualitatively, there is a synergistic effect."). Agency decisions not to challenge those mergers are not probative of any issues in this case and should be excluded to avoid wasting time and confusing the issues.

Finally, evidence of agency merger investigations or decisions would create a sideshow concerning, at a minimum, what enforcers knew and did not know during their investigations and what Live Nation represented to enforcers. The time and effort that would be wasted doing so would far outweigh any minimal value the evidence might have. *United States ex rel. Feldman v. van Gorp*, 2010 WL 2911606, at *3 (S.D.N.Y. July 8, 2010) (excluding under Rules 402 and 403 "evidence relating to the DOJ's decision not to intervene [in a qui tam suit]" because admitting such evidence would "draw the parties into 'a protracted and unproductive struggle over how the

10

evidence admitted at trial compared to the evidence considered by the agency'") (quoting

*Paolitto v. John Brown E & C, Inc.*, 151 F.3d 60, 65 (2d Cir. 1998)).

### B.  Evidence of a Ticketing Investigation During the 1990s Should be Excluded

Defendants' summary judgment memorandum—citing nothing more than an LA Times article—asserted that the DOJ "investigated exclusive contracting in the U.S. ticketing industry during the Clinton Administration without taking any action." Defs. MSJ at 5. As an initial matter, that article should be excluded as hearsay at trial. *See* Fed. R. Evid. 802. But more importantly, any related evidence or argument about a 1990s investigation should be excluded in its entirety under Rules 401 and 403.

Even if it is true that an investigation into exclusive ticketing was opened and closed more than 25 years ago, it is difficult to imagine how that fact could offer any probative value in this case. Government agencies can close investigations without taking legal action for numerous reasons, including prosecutorial discretion and allocation of resources. *Heckler*, 470 U.S. at 831; *Steves & Sons*, 988 F.3d at 714 ("[I]n general, a defendant may not use an enforcement authority's decision not to take action as a sword because inaction on the part of the government cannot be used to prove innocence" (quotation omitted)); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664 (7th Cir. 2002) (Posner, J.) (explaining that, for this reason, defendants could not use an agency's decision not to bring an enforcement action "to show that, because the Justice Department has not moved against the alleged . . . price-fixing conspiracy, there must not have been one").

There is no basis to infer from this article that the contracts purportedly at issue were competitive back then, and even if they were, there is no basis to extrapolate to any inference relevant to the issues in this case. And ticketing services are very different today given the proliferation of electronic ticketing and the technology that enables more open ticket distribution.

But even if the history of ticketing contracts is relevant at trial, evidence and argument

concerning this purported investigation is irrelevant under Rule 401 and improper under Rule

403. *In re Carbon Black Antitrust Litig.*, No. 03-cv-10191, 2005 WL 2323184, at *1 (D. Mass.

Sept. 8, 2005) (holding that companies defending against Sherman Act conspiracy claims "will

not be permitted to introduce evidence on the merits that the closing of the investigations [by

antitrust enforcers] is somehow evidence that no conspiracy exists").

## MOTION 4
### The Fact That Non-Parties Made Statements to Enforcement Agencies Should Be Excluded

The fact that non-party witnesses spoke with the enforcement agencies concerning Live

Nation or Ticketmaster's anticompetitive conduct should likewise be excluded under Federal

Rules of Evidence 401, 402, and 403.

Defendants have repeatedly tried to suggest that non-parties, for example, advocated for

this lawsuit and even that this lawsuit brought by forty-one federal and state enforcers was

somehow done so at the bidding of non-parties. *See, e.g.*, Defs. Mot. to Compel, ECF 586. Any

probative value of evidence as to what statements were made to law enforcement is substantially

outweighed by the prejudicial nature of such testimony. *See, e.g.*, *Steves & Sons*, 988 F.3d at

713–14 (affirming district court's decision to exclude evidence of the fact that certain statements

by a private party were made to antitrust enforcers during the investigation). Defendants can

easily ask non-party witnesses questions that get to the substance of those communications,

without eliciting that those communications were made to an enforcement agency. Allowing

such testimony and argument would also prejudice Plaintiffs because they cannot—and should

not have to—provide the full context of their enforcement decisions without revealing privileged

information.

### MOTION 5
### Lay Witnesses Should be Precluded From Testifying As to Whether
### Defendants' Profit Margins Are Consistent with Monopoly Power

The Court should exclude lay testimony about whether Defendants' profit margins are consistent with monopoly power because such opinion testimony does not satisfy the requirements of Rule 701. This issue is likely to arise at trial because Defendants' executives have tried to defend their actions based on a claim that "Live Nation does not fit the profile of a monopolist" because, among other things, "[i]t does not make anything near monopoly profits, nor charge monopoly prices." ECF No. 498 (Answer) at 2; *see also*, *e.g.*, CNBC, *Live Nation President Berchtold: We don't see enough profitability to sustain a monopoly as DOJ says* (May 3, 2024), https://www.cnbc.com/video/2024/05/23/live-nation-president-berchtold-we-dont-see-enough-profitability-to-sustain-a-monopoly-as-doj-says.html (citing "take rate" of Defendants' ticketing and promotions businesses as "simply not enough profitability to sustain any real monopoly"); Bloomberg Television, *Live Nation Will Prevail Over DOJ Suit, Rapino Says* (Oct. 9, 2024), https://www.youtube.com/watch?v=nWrKVW6y0RI ("We're a 2% margin business, so we must be the dumbest monopoly alive.").

Such testimony would be improper opinion testimony of a lay witness. Lay witnesses may offer opinion testimony only if it is (1) "rationally based on the witness's perception," (2) "helpful to clearly understanding the witness's testimony or determining a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. To be "helpful," lay opinion testimony must be confined to "help[ing] the jury gain an accurate reproduction of [an] event" that the witness perceived, *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005) (internal quotations omitted), and must not "tell [the jury] what inferences to draw from it," *United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004); *see also United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (lay opinion cannot "merely tell the jury what result

to reach"). Moreover, "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *Garcia*, 413 F.3d at 215. Thus, "[i]f the opinion rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id.* (internal quotations omitted).

Lay opinion that a given level of profit is inconsistent with monopoly power would not be "helpful" to the jury for two independent reasons. *See* Fed. R. Evid. 701(b). First, it would lead the jury astray because even if Live Nation's profits were not substantial (they are substantial), a lack of substantial profits does not preclude a finding of monopoly power. *See*, *e.g.*, *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 272–73 (2d Cir. 1979) ("It is not a defense to liability under [Sherman Act Section] 2 that monopoly power has not been used to charge more than a competitive price or extract greater than a reasonable profit."); *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 238 (S.D.N.Y. 1988) (accounting profitability metrics are "affected by accounting conventions" and insufficient on their own for reaching a monopoly power determination.). Second, such testimony would improperly tell jurors "what inferences to draw from" Defendants' profit margins, *Grinage*, 390 F.3d at 750, rather than helping jurors understand what the profit margins are.

Even if a lay opinion that certain profit margins are inconsistent with monopoly power were helpful (it would not be), it would be independently inadmissible because it would rest, at least in part, on specialized knowledge. *See* Fed. R. Evid. 701(c); *see also Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 128–29 (2d Cir. 1981).

<u>**MOTION 6**</u>
**Evidence or Argument Regarding *It's My Party, Inc. v. Live Nation*
Should Be Excluded**

The parties have agreed to not elicit testimony or argument on the outcome, underlying allegations, factual determinations, and legal opinions of *It's My Party v. Live Nation*, No. 09-cv-

547 (D. Md.) ("*IMP*"), *Ticketmaster Corp. v. Tickets.com*, No. 99-cv-7654 (C.D. Cal.), *Fed.*

*Trade Comm'n v. Live Nation Ent., Inc. and Ticketmaster, LLC*, No. 2:25-cv-08884 (C.D. Cal.),

or other private litigation.[5] However, Defendants still seek to reserve the right to introduce

evidence of both the existence and outcome of the *It's My Party v. Live Nation* lawsuit as

impeachment evidence of IMP's founder (whom Plaintiffs intend to call live at trial).[6]

Defendants should be precluded from doing so under Federal Rules of Evidence 404 and 403.

Using the *IMP* lawsuit—which was filed nearly twenty years ago—in the way that

Defendants propose would constitute inadmissible character evidence. *See Outley v. City of New*

*York*, 837 F.2d 587, 594 (2d Cir. 1988) (introducing evidence of prior lawsuits to show that one

"bears a grudge" and is "act[ing] consistently with that grudge" is "precisely the sort of use

prohibited by Rule 404(b), as going to character rather than bias"); *Moore v. Sequeira*, No. 3:21-

CV-00787, 2024 WL 1013301, at *5 (D. Conn. Mar. 8, 2024) (granting motion to exclude

previous lawsuit against same defendant because "using prior lawsuits to prove bias is

inadmissible character evidence"). Even if the "prior lawsuit may show some motive or intent,"

any "slight probative value is outweighed by the substantial danger of jury bias." *Scoma v. City*

*of New York*, No. 16-Civ-6693, 2021 WL 1784385, at *7 (E.D.N.Y. May 4, 2021) (internal

quotations omitted); *see also Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993) ("[Evidence of

witness's involvement in prior litigation] would potentially unfairly prejudice the jury against

[the witness] by painting him as a litigious character who lacks validity. Therefore, this evidence

---

[5] Although Plaintiffs agree not to elicit testimony or argument as to whether allegations were made by the FTC in its lawsuit, Plaintiffs reserve the ability to elicit testimony or argument as to *facts* that are relevant to this litigation, independent of whether those facts were alleged in the FTC's lawsuit.

[6] Defendants have also reserved the right to introduce evidence of the outcome of the *It's My Party* lawsuit "if Plaintiffs introduce evidence of the allegations in that case or any statements or testimony made by [IMP founder] in connection with that case." Plaintiffs do not intend to do so.

is inadmissible under a Rule 403 or a Rule 404(b) analysis."). "Even if not admitted to show the plaintiff's litigiousness, there remains a high risk of prejudice against [the witness] if the jury were to be told of this action." *Jones v. Jasper Wyman & Son*, 639 F. Supp. 3d 192, 200 (D. Me. 2022).

## MOTION 7
### Defendants Should Be Precluded from Referencing Treble Damages, Attorneys' Fees, or Civil Penalties, or Any Resulting Impact to their Business

The Court should exclude at trial any evidence of or reference to the existence of treble damages, attorneys' fees, or civil penalties. Second Circuit controlling authority has long proscribed informing juries of statutory treble damages or penalties provisions as a matter of law, for irrelevance, and for its propensity to mislead a jury. *See HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45–46 (2d Cir. 1994) (affirming district court's decision to exclude reference to treble damages and fee-shifting provisions under RICO). This Court has likewise excluded evidence or argument at trial concerning these provisions in antitrust and analogous contexts. *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2019 WL 6242128, at *12 (S.D.N.Y. Aug. 2, 2019) (granting a motion in limine to exclude mention of treble damages, attorneys' fees, or costs, with a narrow exception for specific relevance); *United States v. Teva Pharms. USA, Inc.*, No. 13 CIV. 3702, 2019 WL 13244252, at *16 (S.D.N.Y. July 1, 2019) (granting a motion in limine to exclude mention of treble damages or civil penalties in False Claims Act context given defendant agreement doing so would be "inappropriate").

Whether treble damages, attorneys' fees, or civil penalties are implicated is outside the jury's purview, and informing the jury of such provisions would infringe on the role of the Court. *See HBE*, 22 F.3d at 45 ("In that context [of antitrust law] as well, courts have uniformly concluded that mentioning treble damages and attorneys fees to the jury is improper."); *Pollock*

16

*& Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1243 (5th Cir. 1974), *cert. denied*, 420 U.S. 992 (1975) ("[I]t is not for the jury to determine the amount of a judgment. Its function is to compute the amount of damages. Congress's authorization in 15 U.S.C.A. § 15 to triple the award of damages is a matter of law to be applied by the district court without interference from the jury. . . ."). As such, the existence of treble damages, attorneys' fees, or civil penalties is entirely irrelevant to the jury and inadmissible under Fed. R. Evid. 401 and 402. *See Pollock*, 498 F.2d at 1243 ("The fact that the awarded amount will be tripled has no relevance in determining the amount a plaintiff was injured by the anti-trust violation."). Even if the existence of treble damages, fees, or civil penalties was relevant, referencing them "may tend to confuse or prejudice a jury into reducing its eventual award, thus frustrating Congress's goal of deterring improper conduct by assessing treble damages[.]" *HBE*, 22 F.3d at 45; *see also CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 860 (1st Cir. 1985) (noting that it is "generally not advisable to inform a jury of the treble damages or attorneys' fees provisions of the antitrust laws because of the danger that a jury may reduce a plaintiff's award to account for trebling"); *Pollock*, 498 F.2d 1240, 1243 (ruling that treble damages should not be mentioned in jury instructions because, in part, "[a] jury might take the revelation of the [antitrust] treble damage provision as an intimation from the Court to restrict the amount of damages."); *Noble v. McClatchy Newspapers*, 533 F.2d 1081, 1091 (9th Cir. 1975) (ruling that jury instructions with reference to treble damages were "an invitation to the jury to negate Congress' determination that actual damages should be trebled").

The Court should also exclude evidence or argument as to any impact a damages award would have on Defendants' business operations, as "normally [the defendant's ability to pay] is not admitted or desirable during the liability and compensatory damages phase of the case."

*Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991) (citing *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 373–74 (2d Cir. 1988), and *Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277, 283 (2d Cir.), *cert. dismissed,* 497 U.S. 1057 (1990)). The Second Circuit, among others, differentiates liability and the computation of compensatory damages, for which the potential consequences of a judgment are irrelevant, with punitive damages, which "are to be tailored to the defendant's ability to pay." *Id.*; *see also Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) (citations omitted) (noting that "[e]vidence of wealth. . . is not generally admissible in trials not involving punitive damages" and only approving admitting such evidence for impeachment purposes); *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1087 (1st Cir. 1994) ("As is true of any assessment of compensatory damages, the liable party's ability to pay should not influence the amount of the assessment."); *McCann v. Miller*, 502 F. App'x 163, 171 (3d Cir. 2012) ("While a defendant's net worth is relevant in assessing the amount of punitive damages, it should not bear on compensatory damages."). The amount of compensatory damages should be tied to the injuries sustained by the fans the Plaintiff States represent, and Defendants should not be allowed to improperly influence any such evaluation through predictions or threats based on a future loss of live entertainment.

Accordingly, the Court should grant Plaintiffs' motion to exclude any evidence or argument regarding treble damages, fees, or civil penalties at trial or any impact a damages award would have on Defendants' ongoing business operations.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motions in limine.

Dated: February 10, 2026

Respectfully submitted,


 */s/ Bonny Sweeney*
BONNY SWEENEY
*Co-Lead Trial Counsel*
David Dahlquist
*Co-Lead Trial Counsel*
Arianna Markel
Matthew Huppert
Andrew Kline
Andy Tan

United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Bonny.Sweeney@usdoj.gov
David.Dahlquist@usdoj.gov

*Attorneys for Plaintiff United States of America*

*/s/ Robert A. Bernheim*
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

*/s/ Amanda J. Wentz*
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
Fax: (501) 682-8118
Email: amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

*/s/ Brent Nakamura*
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

*/s/ Conor J. May*
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

*/s/ Victoria Maria Orton Field*
Victoria Maria Orton Field (admitted *pro hac vice)*
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: victoria.field@ct.gov
*Attorney for Plaintiff State of Connecticut*

*/s/ Elizabeth G. Arthur*
Elizabeth G. Arthur (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Elizabeth.arthur@dc.gov
*Attorney for Plaintiff District of Columbia*

*/s/ Lizabeth A. Brady*
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

*/s/ Richard S. Schultz*
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

*/s/ Jesse Moore*
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

*/s/ Noah Goerlitz*
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 281-5164
Email: noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

*/s/ Christopher Teters*
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

*/s/ Mario Guadamud*
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

*/s/ Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of
Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ Lee Morris
Lee Morris (admitted pro hac vice)
Special Assistant Attorney General
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-9011
Email: Lee.Morris@ago.ms.gov
Attorney for Plaintiff State of Mississippi

/s/ Justin C. McCully
Justin C. McCully (admitted pro hac vice)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
Attorney for Plaintiff State of Nebraska

/s/ Lucas J. Tucker
Lucas J. Tucker (admitted pro hac vice)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
Attorney for Plaintiff State of Nevada

/s/ Zachary Frish
Zachary A. Frish (admitted pro hac vice)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
Attorney for Plaintiff State of New Hampshire

/s/ Andrew F. Esoldi
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
Attorney for Plaintiff State of New Jersey

/s/ Evan Crocker
Evan Crocker (admitted pro hac vice)
Assistant Attorney General, Division Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
Attorney for Plaintiff State of New Mexico

/s/ Jonathan H. Hatch
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
Attorney for Plaintiff State of New York

/s/ Francisco Benzoni
Francisco Benzoni (admitted pro hac vice)
Special Deputy Attorney General
Brian Rabinovitz (admitted pro hac vice)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
Attorneys for Plaintiff State of North Carolina

*/s/ Sarah Mader*
Sarah Mader (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

*/s/ Cameron R. Capps*
Cameron R. Capps (admitted *pro hac vice*)
Deputy Attorney General
Consumer Protection
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-0858
Fax: (405) 522-0085
Email: Cameron.Capps@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted *pro hac vice*)
Assistant Deputy Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South Carolina*

*/s/ Bret Leigh Nance*
Bret Leigh Nance (admitted *pro hac vice*)
Assistant Attorney General
1302 E. Hwy 14, Suite 1
Pierre SD 57501-8501
Email: bretleigh.nance@state.sd.us
Telephone: (605) 773-3215
Bar # 5613
*Attorney for Plaintiff State of South Dakota*

*/s/ Hamilton Millwee*
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

*/s/ Diamante Smith*
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
*Attorney for Plaintiff State of Texas*

_/s/ Marie W.L. Martin_
Marie W.L. Martin (admitted _pro hac vice_)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
_Attorney for Plaintiff State of Utah_

_/s/ Sarah L. J. Aceves_
Sarah L. J. Aceves (admitted _pro hac vice_)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
_Attorney for Plaintiff State of Vermont_

_/s/ David C. Smith_
David C. Smith (admitted _pro hac vice_)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
_Attorney for Plaintiff Commonwealth of Virginia_

_/s/ Ashley A. Locke_
Ashley A. Locke (admitted _pro hac vice_)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
_Attorney for Plaintiff State of Washington_

_/s/ Douglas L. Davis_
Douglas L. Davis (admitted _pro hac vice_)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
_Attorney for Plaintiff State of West Virginia_

_/s/ Caitlin M. Madden_
Caitlin M. Madden (admitted _pro hac vice_)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
_Attorney for Plaintiff State of Wisconsin_

_/s/ William T. Young_
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
_Attorney for the Plaintiff State of Wyoming_

**<u>Certificate of Compliance</u>**

In accordance with Local Civil Rule 7.1(c), and Rule 8(c) of this Court's Individual Practices in Civil Cases, I certify that the word count of this memorandum of law is 5,766 words, which includes footnotes but excludes the caption, any index, table of contents, table of authorities, signature blocks, or any certificates. This certificate is made in reliance on the word count of the word-processing program used to prepare the document.

*/s/ Arianna Markel*
ARIANNA MARKEL
*Attorney for Plaintiff United States of America*