**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| *Plaintiffs,* | Case No. 1:24-cv-03973-AS |
| v. | **ORAL ARGUMENT REQUESTED** |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTIONS *IN LIMINE***

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    MIL #1: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT THAT AN INDIVIDUAL HEARD ABOUT SUPPOSED THREATS OR RETALIATION FROM SOMEONE ELSE........................................................................1

II.   MIL #2: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT ABOUT A "WIDESPREAD FEAR IN THE INDUSTRY" AND INDIRECT EVIDENCE ABOUT VENUE "FEARS" ...............................................................................5

III.  MIL #3: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT RELATING TO DR. HILL'S CONTENT-SHIFTING ANALYSES.................................7

IV.   MIL #4: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT RELATING TO THE CONSENT DECREES ................................................................10

V.    MIL #5: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT CONCERNING OLD CONDUCT.....................................................................................12

VI.   MIL #6: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT THAT TICKETMASTER KNOWINGLY SELLS PRIMARY TICKETS TO BROKERS........15

VII.  MIL #7: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT RELATING TO REMEDIES NOT AT ISSUE IN THE UPCOMING TRIAL ...............16

VIII. MIL #8: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING ALLEGED MONOPOLY POWER OUTSIDE PLAINTIFFS' RELEVANT MARKETS ...............................................................................................17

IX.   MIL #9: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING EX-US CONDUCT....................................................................................20

X.    MIL #11: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING EXECUTIVE COMPENSATION ............................................................22

XI.   MIL #12: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT EMPLOYING THE TERM "TICKETMASTER TAX"....................................................23

XII.  MIL #13: MOTION TO EXCLUDE LAY WITNESS EVIDENCE EMPLOYING THE TERMS "MONOPOLY" OR "MONOPOLY POWER" .........................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Key Corp. v. Cole Nat. Corp.*,
762 F.2d 1569 (11th Cir. 1985) ........................................................24

*Am. Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel*,
912 F.2d 563 (2d Cir. 1990)...........................................................12

*Amerisource Corp. v. RxUSA Int'l*,
2009 WL 235648 (E.D.N.Y. Jan. 30, 2009) ...........................................4

*AngioDynamics v. C.R. Bard*,
2022 WL 4333555 (N.D.N.Y. Sept. 19, 2022)...............................3, 4, 5, 6

*Argus v. Eastman Kodak*,
612 F. Supp. 904 (S.D.N.Y. 1985)....................................................16

*Babin v. Plaquemines Par.*,
2019 WL 5540245 (E.D. La. Oct. 25, 2019) .........................................15

*United States v. Worman*,
622 F.3d 969 (8th Cir. 2010) ...........................................................7

*Carey v. Int'l Bhd. of Elec. Workers Loc. 363 Pension Plan*,
201 F.3d 44 (2d Cir. 1999)...........................................................14

*Craftsmen Limousine v. Ford Motor Co.*,
363 F.3d 761 (8th Cir. 2004) ...........................................................8

*D.R. ex rel. Rodriguez v. Santos Bakery*,
675 F. Supp. 3d 355 (S.D.N.Y. 2023)...............................................2, 4

*Djangmah v. Falcione*,
2013 WL 6388364 (S.D.N.Y. Dec. 5, 2013) ...........................................3

*GeigTech E. Bay v. Lutron Elecs. Co.*,
2024 WL 68418 (S.D.N.Y. Jan. 5, 2024) .............................................17

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp.*,
2016 WL 10706086 (N.D. Ind. Oct. 28, 2016)........................................22

*Heerwagen v. Clear Channel Commc'ns*,
435 F.3d 219 (2d Cir. 2006)...........................................................20

*Hoffman v. Palmer*,
  129 F.2d 976 (2d Cir. 1942)...........................................................................1

*In re MarketXT Holdings, Corp.*,
  2011 WL 1422012 (Bankr. S.D.N.Y. Jan. 7, 2011)......................................7

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................6

*In re WorldCom Sec. Litig.*,
  2005 WL 578109 (S.D.N.Y. Mar. 4, 2005) ..................................................11

*Katsaros v. Cody*,
  744 F.2d 270 (2d Cir. 1984)..........................................................................17

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)......................................................................................13

*Koch v. Greenberg*,
  14 F. Supp. 3d 247 (S.D.N.Y. 2014).............................................................17

*L-3 Commc'ns Corp. v. OSI Sys.*,
  2006 WL 988143 (S.D.N.Y. Apr. 13, 2006).................................................22

*Lagudi v. Long Island R.R. Co.*,
  775 F. Supp. 73 (E.D.N.Y. 1991) .................................................................17

*Malarkey v. Texaco*,
  983 F.2d 1204 (2d Cir. 1993)........................................................................14

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers*,
  232 F. Supp. 3d 558 (S.D.N.Y. 2017)...........................................................24

*Midwestern Mach. Co. v. N.W. Airlines*,
  392 F.3d 265 (8th Cir. 2004) ........................................................................14

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005)............................................................................9

*Park West Radiology v. CareCore Nat.*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009)............................................................12

*Pearl River Union Free Sch. Dist. v. Duncan*,
  56 F. Supp. 3d 339 (S.D.N.Y. 2015)..............................................................12

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)............................................................................10

*Shatkin v. McDonnell Douglas Corp.*,
   565 F. Supp. 93 (S.D.N.Y. 1983)..........................................................................9

*Shoppin' Bag of Pueblo v. Dillon Cos.*,
   783 F.2d 159 (10th Cir. 1986) ...........................................................................19

*Simmons v. Reich*,
   2021 WL 5023354 (2d Cir. Oct. 29, 2021)........................................................13

*Sitts v. Dairy Farmers of Am.*,
   2020 WL 5233027 (D. Vt. Sept. 2, 2020)......................................................18, 19

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003).............................................................................................23

*State v. Deutsche Telekom AG*,
   419 F. Supp. 3d 783 (S.D.N.Y. 2019).................................................................21

*T. Harris Young & Assocs. v. Marquette Elecs.*,
   931 F.2d 816 (11th Cir. 1991) ..............................................................................4

*U.S. Info. Sys. v. Int'l Bhd. of Elec. Workers Loc. Union
   No. 3*, 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006) ............................................3

*United States v. Cardascia*,
   951 F.2d 474 (2d Cir. 1991)..............................................................................3, 4

*United States v. Connolly*,
   2018 WL 5023785 (S.D.N.Y. Oct. 1, 2018) ........................................................18

*United States v. Figueroa*,
   2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023) .........................................................5

*United States v. Graham*,
   2019 WL 2366724 (S.D.N.Y. May 31, 2019) ......................................................15

*United States v. Kail*,
   2021 WL 261135 (N.D. Cal. Jan. 26, 2021) ........................................................22

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007)..............................................................................6, 7

*United States v. Motovich*,
   2024 WL 3303723 (E.D.N.Y. July 2, 2024).........................................................24

*United States v. Patel*,
   2023 WL 2643815 (D. Conn. Mar. 27, 2023) ......................................................24

iv

*United States v. Quattrone,*
    441 F.3d 153 (2d Cir. 2006)...........................................................................19

*United States v. Socony-Vacuum Oil Co.,*
    310 U.S. 150 (1940)......................................................................................23

*United States v. Stahl,*
    616 F.2d 30 (2d Cir. 1980)............................................................................23

*United States v. Ticketmaster Ent., Inc.,*
    2010 WL 5699134 (D.D.C. July 30, 2010), amended, 2020 WL 1061445
    (D.D.C. Jan. 28, 2020) .................................................................................10

*United States v. Vigneau,*
    187 F.3d 70 (1st Cir. 1999).............................................................................5

*US Airways v. Sabre Holdings Corp.,*
    938 F.3d 43 (2d Cir. 2019)............................................................................13

*Veleron Holding, B.V. v. Morgan Stanley,*
    2015 WL 14072664 (S.D.N.Y. Oct. 20, 2015).............................................24

*Zenith Radio Corp. v. Hazeltine Res.,*
    401 U.S. 321 (1971)......................................................................................13

## STATUTES

15 U.S.C.
    § 15b........................................................................................................12
    § 18..........................................................................................................11

Clayton Act § 7 ................................................................................................11

## RULES

Fed. R. Evid. 401 ................................................................................... *passim*

Fed. R. Evid. 402 ................................................................................... *passim*

Fed. R. Evid. 403 ................................................................................... *passim*

Fed. R. Evid. 408 ...............................................................................10, 12

Fed. R. Evid. 408(a) ....................................................................................12

Fed. R. Evid. 602 ...................................................................................6, 18

Fed. R. Evid. 701 ...................................................................................6, 24

v

Fed. R. Evid. 802 ..................................................................................................6

Fed. R. Evid. 803(3)............................................................................................3

Fed. R. Evid. 803(6)..........................................................................................3, 4

## OTHER AUTHORITIES

Weinstein's Evidence Manual § 7.05(1)(e) ......................................................10

Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. ("Defendants") respectfully submit this combined memorandum of law in support of their motions *in limine*.

## I.    MIL #1: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT THAT AN INDIVIDUAL HEARD ABOUT SUPPOSED THREATS OR RETALIATION FROM SOMEONE ELSE

Plaintiffs allege that Defendants engaged in a 15-year campaign of "threatening venues that Live Nation will divert live music shows to other venues if they do not sign with Ticketmaster" so flagrant and widespread that "*every live concert venue knows* choosing another promoter or ticketer comes with a risk of … losing concerts, revenue, and fans."  Am. Compl. ¶¶6(d), 227 (emphasis added), ECF No. 257.  But after years of investigation and dozens of depositions of Plaintiff-chosen venues only three venue witnesses testified about a purported threat, and only one in the past five years.  Defs.' Mem. of Law in Supp. Mot. for Summ. J. at 3, ECF No. 689 ("Defs.' MSJ").  As far as venues are concerned, there was no threat campaign.

To fill this hole, Plaintiffs have pivoted to the self-serving testimony of rival ticketing companies.  In stark contrast to testimony from actual venues (the supposed direct recipients of Defendants' threats), Defendants' ticketing competitors are ready and willing to testify that they heard a venue say—or, just as often, that they heard someone say that *they* heard a venue say— that Defendants engaged in threats or retaliation.  These statements are rank hearsay, "dripping with motivations to misrepresent," *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942), to which no exception applies.  Furthermore, these statements are unduly prejudicial and calculated to mislead the jury.  They must therefore be excluded from trial.

Plaintiffs relied heavily on this kind of hearsay evidence in opposing summary judgment, demonstrating their likely trial strategy.  To bootstrap the virtually non-existent, anecdotal testimony from three venues into an allegedly widespread "course of conduct" affecting "every live concert venue," Plaintiffs rely on rival ticketers' hearsay claims that *other* venues said,

believed, or experienced regarding supposed threats or retaliation.[1]  *See, e.g.*, Pls.' COMF ¶68,

ECF No. 774 (citing to testimony from rival ticketing executives ███████████████████

███████████████████████████ about what they believe venues believe[2]); *id.* ¶69

(citing to competitor databases that recite what the competitor was supposedly told by third-party

venues[3]).

 A competitor's testimony about what a venue told them (or what the competitor heard from

another person about what a venue said) is elemental hearsay—"out-of-court statement[s]"

allegedly made by venues "offered for the truth of the matter asserted"—and must be excluded,

absent an exception.  *D.R. ex rel. Rodriguez v. Santos Bakery*, 675 F. Supp. 3d 355, 359 (S.D.N.Y.

2023).  Plaintiffs, as "the party seeking to introduce evidence normally barred by the rule against

hearsay[,] must prove … that the evidence meets the requirements of the particular hearsay

---

[1] Plaintiffs' experts use the same strategy.  For example, Dr. Hill regurgitates the hearsay testimony
of rival ticketing executives about what they claim that other (usually unspecified) venues "told
us," "indicated to us," and "explained to us" regarding "you know, the implicit or explicit threat
we've heard."  Ex. 1, Hill Rpt. (Excerpted) ¶¶363-66.

[2] Each of these ticketing competitors expressly testified that they did not, themselves, actually
witness any threats.  *See* Ex. 2, ██████ Tr. 269:15-272:25 ███████████████████████

███████████████████████████████████████████ ; Ex. 3, ██████ Tr. 81:7-11
███████████████████████████████████, 447:11-16; Ex.
4, ██████ Tr. 127:24-128:13 ██████████████████████████████████████████
███████████████████████████████████████████ Other rival ticketers who
claim to have heard about supposed threats or retaliation have made the same admission: Ex. 5,
██████ Tr. 162:4-16
██████████ ; Ex. 6, ██████ Tr. 302:4-20 ███████████████████████
███████████████████████████████████████████████████████
Ex. 7, ██████ Tr. 255:5-20 ████████████████████████████████████
███████████████████████████████████. All of the preceding witnesses appear
on Plaintiffs' preliminary "May Call" trial witness list.

[3] These "win-loss" databases appear on Plaintiffs' trial exhibit list as Ex. 8, PX-0024 (███); Ex.
9, PX-0027 (███); and Ex. 10, PX-0283 (██████)

exception or exceptions arguably at issue." *Djangmah v. Falcione*, 2013 WL 6388364, at *5 (S.D.N.Y. Dec. 5, 2013). Plaintiffs have articulated no such explanation, but their attempt to frame this as evidence of what "[o]ther ticketers understand that venues are afraid" of suggests that they may argue that it is admissible as "then-existing state of mind" under Federal Rule of Evidence ("FRE") 803(3). Alternatively, because Plaintiffs also rely on hearsay recorded in AXS and SeatGeek win-loss data, Pls.' COMF ¶69, Plaintiffs may argue that such records are admissible "records of a regularly conduct activity" under FRE 803(6). Neither exception is available.

In this district, "statements of a customer as to his reasons for not dealing with a supplier" are *not* admissible "as evidence of the facts recited as furnishing the motives." *See U.S. Info. Sys. v. Int'l Bhd. of Elec. Workers Loc. Union No*. 3, 2006 WL 2136249, at *8 (S.D.N.Y. Aug. 1, 2006). Courts therefore police FRE 803(3) carefully to "prevent the exception from swallowing the hearsay rule" by "allowing one's state of mind, proved by a hearsay statement, to provide an inference of the happening of an event that produced the state of mind"—precisely the impermissible inference Plaintiffs seek here. *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991). Plaintiffs would therefore need to first prove, via "independent, non-hearsay" evidence that *each* of the specific venues referenced in the hearsay testimony *actually was* the victim of threats or retaliation before the hearsay statements could be admitted as evidence of a venue's state of mind in choosing a ticketer. *See AngioDynamics  v. C.R. Bard*, 2022 WL 4333555, at *4 (N.D.N.Y. Sept. 19, 2022). Plaintiffs cannot do so—the venues themselves testified they were *not* concerned about losing Live Nation content when choosing a ticketer and were not aware of any supposed threats, *see* Defs.' Local Civ. R. 56.1 Stmt. ¶28, ECF No. 690 (citing testimony from at

3

least 25 venues)—and therefore the hearsay evidence cannot be admitted.[4]  *See AngioDynamics*, 2022 WL 4333555, at *4 (denying the introduction of hearsay statements where plaintiff had "not proffered independent, non-hearsay evidence to establish the fact of lost opportunities.").

To the extent Plaintiffs argue that they seek to introduce the statements only as proof that venues were concerned that the combined Live Nation and Ticketmaster would preference their own economic self-interest when negotiating contracts, then the Court must exclude the testimony as irrelevant under FREs 401 and 402.  Simply *being* a vertically integrated concert-promoter and ticketing company is not actionable.  *See T. Harris Young & Assocs. v. Marquette Elecs.*, 931 F.2d 816, 828 (11th Cir. 1991) ("Before a statement can be admitted … to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue.").

FRE 803(6)'s business record exception is similarly inapplicable.  The referenced "win-loss" records are drawn from databases in which AXS and SeatGeek sales personnel track their perception about why they won or lost venues' business.  *See* Ex. 11, Hill Reb. Rpt. (Excerpted) ¶321.  Accordingly, these records are nothing but hearsay-within-hearsay—out-of-court statements by salespeople relating a second level of out-of-court statements supposedly made by venues about why they did or did not choose AXS or SeatGeek.  Such "[h]earsay-within-hearsay … is only admissible if each part falls within an exception or exclusion to the hearsay rule." *Rodriguez*, 675 F. Supp. 3d at 359.  Even if Plaintiffs could lay an adequate foundation for

---

[4] Even if Plaintiffs could proffer such evidence, they would then need to demonstrate for each venue that (1) the alleged declarant is identifiable as a relevant decision-maker, such that their state of mind is actually relevant to the venue's decision not to purchase, and (2) that the statement was made contemporaneously with the decision.  *See Amerisource Corp. v. RxUSA Int'l*, 2009 WL 235648, at *2 (E.D.N.Y. Jan. 30, 2009) (excluding evidence when "the declarants in this case had no authority or involvement in the decision to decline RxUSA's business."); *Cardascia*, 951 F.2d at 488 ("To admit statements of one's state of mind with regard to conduct that occurred eight months earlier … would significantly erode the intended breadth of this hearsay exception.").  Plaintiffs cannot do so.

introduction of the records themselves under 803(6),[5] they could not establish a second exception to introduce the *content* of the records—*i.e.*, that certain venues told others they were threatened or feared retaliation—as evidence of the truth of the matters asserted. *See United States v. Vigneau*, 187 F.3d 70, 75 (1st Cir. 1999) ("[T]he business records exception does not embrace statements contained within a business record that were made by one who is *not* a part of the business."). Those statements—whether testified to directly by a rival ticketer or contained within a rival ticketer's "win-loss" records—are inadmissible hearsay.

Finally, even if Plaintiffs could establish an exception, the Court should still exclude this evidence under FRE 403 (and 703, from any expert testimony at trial) as it is both unduly prejudicial and calculated to mislead the jury. *See AngioDynamics*, 2022 WL 4333555, at *4 (court should consider the possibility of "self-serving testimony" and the "risk of insincerity in a potential customer's statement why products were not being ordered").

## II.    MIL #2: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT ABOUT A "WIDESPREAD FEAR IN THE INDUSTRY" AND INDIRECT EVIDENCE ABOUT VENUE "FEARS"

Plaintiffs also attempt to prove their claim of systematic threats through an even more amorphous theory: a generalized assertion that there is "widespread fear in the industry that if you were to [switch from Ticketmaster to SeatGeek], that Live Nation might retaliate against you."

---

[5] This is doubtful, since "[a]t bottom, the purpose of the business records exception 'is to ensure that documents were not created … in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question.'" *United States v. Figueroa*, 2023 WL 8373566, at *4 (S.D.N.Y. Dec. 4, 2023) (citation omitted). The efforts of rival ticketers to help Plaintiffs build their case against Defendants are long-standing and well-documented. *See, e.g.*, Defs.' Trial Ex., Ex. 12, DX-0715 (founder and CEO of ███████ stating in 2022 ███████ ; Ex. 13, ███ Tr. 127:16-131:6 (CEO of ███ owner of ███ testifying that ███████ ).

Pls.' COMF ¶67. Plaintiffs cite a single former venue executive's testimony for this point (*id.*; Pls.' Opp. to Defs.' MSJ at 7, ECF No. 771 ("Pls.' Opp."), as well as self-serving claims by rival ticketers that "venues are afraid they will lose Live Nation content if they switch away from Ticketmaster." Pls.' COMF ¶68. Testimony and evidence about "widespread fear" in the ticketing industry, what other venues are "afraid" of, and other similar evidence must be excluded for four independent reasons.

*First*, for the reasons discussed above, testimony about an industry "fear" or what other venues are "afraid of" that is based on what a witness supposedly heard from an out-of-court declarant is inadmissible hearsay under FRE 802 for which there is no exception. *Supra* Section I.

*Second*, testimony about *other* entities' states of mind—or worse, an entire industry's "widespread fear"—is speculative and lacks foundation under FRE 602. A witness may only testify about matters for which they have personal knowledge. Fed. R. Evid. 602. And while a witness may be able to testify about what *they themselves* "feared" (assuming such testimony is otherwise admissible), no witness has personal knowledge of what *others* in the industry "fear."

*Third*, "industry fear" testimony is improper lay opinion under FRE 701. Non-experts are limited to opinions that are "rationally based on the witness's perception" and "helpful to … determining a fact in issue." Fed. R. Evid. 701. Speculative opinions about the inner thoughts and beliefs of *other people* in an industry are not "rationally based" on perception, nor are they helpful in determining any fact in issue, and for those reasons, courts regularly exclude testimony regarding the states of mind of other individuals or corporations. *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007) (reversing a trial court that admitted lay opinion about another individuals' knowledge); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (excluding testimony about "the intent, motives or states of mind of corporations" because

they were "musings … that would not be admissible if given by any witness – lay or expert") (cleaned up) (citation omitted); *see also In re MarketXT Holdings, Corp.*, 2011 WL 1422012, at *6 (Bankr. S.D.N.Y. Jan. 7, 2011) (excluding testimony about the "state of the securities markets" as improper lay opinion).

*Fourth*, under FRE 403, the probative value of this industry speculation is substantially outweighed by the danger of unfair prejudice—particularly when offered as proof of what particular venues believed when negotiating ticketing agreements.  Indeed, Plaintiffs have no evidence connecting any generalized "fear" to *individual* venue negotiations or *individual* venue outcomes.  The Second Circuit has rejected similar testimony under FRE 403, and this Court should do the same.  *Kaplan*, 490 F.3d at 121-22 (excluding evidence of third parties' knowledge as evidence of defendants' knowledge, where there was no evidence connecting the third parties' knowledge to defendant); *c.f. United States v. Worman*, 622 F.3d 969, 975 (8th Cir. 2010) (finding abuse of discretion where district court failed to exclude testimony about "rumors" at a factory offered to prove a party's state of mind).

## III.    MIL #3: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT RELATING TO DR. HILL'S CONTENT-SHIFTING ANALYSES

Pursuant to Federal Rules of Evidence 401, 402 and 403, the Court should preclude all evidence and argument relating to Dr. Nicholas Hill's analysis purporting to show that Live Nation withholds content from "major concert venues" that do not use Ticketmaster.  His concert counts tell the jury nothing about intent or causation, or why a particular concert played one venue over another.  The counts do, however, invite a prejudicial inference the Plaintiffs cannot otherwise prove, and therefore should be excluded under FRE 403 as more prejudicial than probative, confusing on the issues, and misleading on the facts.

*First*, Dr. Hill never analyzed why a particular concert played at one venue over another. *See* Ex. 14, Hill Tr. 362:11-363:18.  He simply reports the number of Live Nation-promoted concert at certain venues at various points in time.  Dr. Hill offers no evidence or proof that Live Nation promoters made, or contributed to, any concert routing decisions based on ticketing provider.  Dr. Hill conceded that "specific shows may switch for a variety of reasons" aside from changes in ticketing.  *Id.* 363:11-12.  The evidentiary record is clear that artists and their teams choose which venues they will play—not Live Nation promoters—and artists select venues for many different reasons, *see* Ex. 14, Hill Tr. 113:22-114:7; Ex. 15, George Tr. 40:20-24, such as:

- Where an artist will make the most money.  *See, e.g.*, Ex. 16, ▮▮▮ Tr. 71:19-20 ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- A venue's popularity and ability to sell tickets.  *See, e.g.*, Ex. 17, ▮▮▮ Tr. 38:20-39:3.

- A venue's production capabilities.  *See, e.g.*, Ex. 13, ▮▮▮▮ Tr. 226:1-10.

Dr. Hill's failure to engage in any show-level analysis ignores the myriad reasons concerts play particular venues that have nothing to do with ticketing provider.

Dr. Hill had every opportunity to conduct such an analysis.  The record contains concrete, venue-specific explanations for changes in concert counts at these venues that Dr. Hill ignored. Taking just one example: Amerant Bank Arena in Sunrise, Florida, switched from Ticketmaster to SeatGeek on February 5, 2022.  There are several factual explanations apart from ticketing that explain why fewer Live Nation-promoted shows played Amerant post-Ticketmaster switch, including the "emergence" of competing venues.  *See, e.g.*, *Craftsmen Limousine v. Ford Motor Co.*, 363 F.3d 761, 777 (8th Cir. 2004) (holding expert testimony should not have been admitted because expert assumed harm was caused by the alleged conspiracy without analyzing other factors like the "emergence of two direct competitors").  For example, artists increasingly wanted

to play shows in Miami, at the Kaseya Center where the Miami Heat play, rather than outside of Fort Lauderdale at Amerant.  *See* Ex. 18, ███████ Tr. 128:8-129:3.  Second, the Hard Rock Casino in nearby Hollywood, Florida started offering artists massive guarantees to draw shows there.  *See id*. 138:1-15.

Dr. Hill's misleading concert count analysis is based on faulty assumptions that are inconsistent with the factual record and highly prejudicial to the Defendants.  Courts routinely exclude this type of improper, biased analysis where it would "seriously" mislead and confuse a jury.  *See, e.g.*, *Shatkin v. McDonnell Douglas Corp.*, 565 F. Supp. 93, 96 (S.D.N.Y. 1983).

*Second*, there is no basis to contend that the venues themselves are aware of, or agree with, what Dr. Hill is seeking to establish with their concert count data.  With the exception of Barclays, none of these venues is part of this lawsuit or supporting Plaintiffs.  In fact, Mr. Caldwell, President and CEO at Amerant Bank Arena, testified under oath that ██████████████████████████ ████████████████████████.  *See* Ex. 18, Caldwell Tr. 140:4-23.  Rather, he explained that ████████████████████████████████████████████████████████████████. *Id*.  Likewise, Christian Barney, President of Revenue and Commercial Strategy at Smith Entertainment Group (owners of the Utah Jazz and the Delta Center), testified under oath that ████ ████████████████████████████████████████████████. *See* Ex. 19, Barney Tr. 171:6-172:3; 172:18-173:12.  By ignoring the facts and litigation record, Dr. Hill's concert counts create a highly misleading inference that Live Nation withheld concerts from non-Ticketmaster venues when there is no evidence to support such a claim.  Plaintiffs should not be permitted to use Dr. Hill's concert counts to draw such unwarranted conclusions; expert testimony is particularly susceptible to confusing and misleading the jury "given the unique weight such evidence may have in a jury's deliberations."  *Nimely v. City of New York*, 414 F.3d 381, 397 (2d

Cir. 2005). Defendants respectfully request the exclusion of all evidence and argument relating to Dr. Hill's concert counts. *See, e.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 67-68 (2d Cir. 1997) (finding an expert's statistical analysis regarding employment discrimination lacks probative value because the expert "ma[de] no attempt to account for other possible causes").

## IV.    MIL #4: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT RELATING TO THE CONSENT DECREES

The Court should preclude Plaintiffs from offering evidence or argument concerning the 2010 Consent Decree (the "Decree") and 2020 Amended Consent Decree (the "Amended Decree," and together with the Decree, the "Decrees"). The Decree resolved an antitrust challenge to the Live Nation–Ticketmaster merger. The Amended Decree addressed alleged Decree violations based on six purported "threats" to venues using rival ticketers—Live Nation denied the allegations, the parties settled, and no court ever found any violation. Admitting the Decrees into evidence or allowing argument relating to them would have limited probative value and be highly prejudicial, FRE 403, and in any event, they are inadmissible because they constitute settlements and settlement discussions, FRE 408.

*First*, although the Decrees state that they were entered "without … constituting any evidence against or admission by any party,"[6] it is "almost unavoidable" that the jury will consider the Decrees "a concession on liability." *See* Weinstein's Evidence Manual § 7.05(1)(e). This is particularly true given the clear overlap between the allegations in this action and those underlying the Decrees. Furthermore, the fact that the Amended Decree arose from alleged Decree violations is likely to give jurors the misimpression that Plaintiffs have already established such violations, unfairly prejudicing Defendants. Fed. R. Evid. 403.

---

[6] *United States v. Ticketmaster Ent., Inc.*, 2010 WL 5699134, at *1 (D.D.C. July 30, 2010) (Final Judgment), amended, 2020 WL 1061445 (D.D.C. Jan. 28, 2020).

*Second*, reference to the Decrees would confuse the jury and waste time.  The Decrees resolved claims under Clayton Act Section 7, which prohibits mergers that "may" substantially lessen competition.  15 U.S.C. § 18.  The current Sherman Act case requires proof of actual anticompetitive conduct.  Allowing reference to the Decrees would necessitate explanation of the different legal standards and the distinct factual, legal, and practical issues of the prior settlements. Plaintiffs know this; they seek, through their Motion *in Limine* Nos. 1-3, to have their cake and eat it too by selectively preventing Defendants from addressing this context (*i.e.*, the merger; other investigations; the independent monitor).  Courts routinely exclude evidence of prior settlements precisely to avoid such confusion and time wasting.  *See, e.g.*, *In re WorldCom Sec. Litig.*, 2005 WL 578109, at *2 (S.D.N.Y. Mar. 4, 2005) (excluding evidence of prior settlements because "[t]he limited probative value of this evidence is substantially outweighed by the burden that the admission of evidence would place on [Defendant] to explain the circumstances at issue in these other lawsuits, by the waste of time that would accompany such explanations, and by the danger that admission of this evidence will create unfair prejudice against [Defendant].").

*Third*, the Decrees are irrelevant.  The Amended Complaint barely mentions the Decrees, and where it does, it asserts no fact relevant to the present case.  *E.g.*, Am. Compl. ¶¶30, 51.  In opposing Defendants' motion to transfer, Plaintiffs explicitly argued that their "current claims are separate and distinct from the Decree and the Clayton Act claim underlying it."  Pls.' Joint Mem. of Law in Opp. to Defs.' Mot. to Transfer Venue, ECF No. 225; *see also* Ex. 20, Pls.' Resp. to Interrog. No. 15 ("Plaintiffs are not seeking to enforce, construe, or modify the consent decree."); *see also* Op. and Order Regarding Mot. to Transfer at 3, ECF No. 294 ("Plaintiffs aren't trying to vindicate the decree's requirements. ... This case doesn't run up against the decree.").  They cannot now turn their back on those representations and use the Decrees to help establish Sherman Act

11

liability.  Moreover, even if any fact underlying the Decrees were minimally probative, the Decrees themselves should still be excluded under FRE 403 and Plaintiff should offer evidence of those facts instead of through the prejudicial Decrees.  *See Park West Radiology v. CareCore Nat.*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding evidence under FRE 403 as "unnecessary" where non-movant "will have ample opportunity at trial to present other evidence to the jury on the question").

*Fourth*, the Decrees are settlement documents, so Plaintiffs should be precluded from introducing them to imply liability.  Fed. R. Evid. 408(a).  "Rule 408 is based upon the policy of aiding the compromise and settlement of disputes."  *Am. Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel*, 912 F.2d 563, 580 (2d Cir. 1990).  Indeed, courts have recognized that parties often settle in order to manage economic or reputational risk, and that settlements "do[es] not necessarily constitute an explicit or implicit admission of liability."  *See Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 357 (S.D.N.Y. 2015).

## V.    MIL #5: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT CONCERNING OLD CONDUCT

The Court should preclude Plaintiffs from introducing evidence or argument concerning alleged exclusionary conduct that occurred before May 23, 2020 because (i) it is outside the four-year statute of limitations that applies to all State Plaintiffs seeking damages,[7] 15 U.S.C. § 15b, and thus is not relevant to any of those claims even as so-called "background" evidence and (ii) even if some limited amount of this old evidence were marginally relevant as "background" for the non-time barred claims, the substantial risk of jury confusion and prejudice to Defendants

---

[7] To date, no State Plaintiff has contended its claims are subject to anything other than a four-year statute of limitations, and all State Plaintiffs told this Court they "will rely primarily on the same evidence for proving all of their state and federal claims" and that the States' claims will require only "minimal additional work for the jury."  Pls.' Ltr. at 2, ECF No. 973.

substantially outweighs any minimal probative value.  Fed. R. Evid. 401, 402, 403.  The old, time-barred evidence that the Court should exclude includes (i) any alleged threats to, or retaliation against, any venues that occurred before May 23, 2020[8], (ii) any Ticketmaster ticketing contracts or Live Nation concert booking contracts that were entered into before, and concluded by[9], May 23, 2020, and (iii) acquisitions of, or joint ventures with, any promoters, ticketers, or venues before May 23, 2020[10].  Exclusion is proper for three related reasons.

*First*, this old evidence is irrelevant to any State's damages claims because conduct that occurs outside the limitations period cannot be the basis for damages.  *Zenith Radio Corp. v. Hazeltine Res.*, 401 U.S. 321, 338-39 (1971).  The States contend that each fan's claim accrues on the date it purchased a ticket and attended a show.  Pls.' Opp. to Defs.' Mot. to Exclude Dr. Abrantes-Metz at 16, ECF No. 743.  Even if that were true (it is not), no fan could claim damages from expired conduct outside the limitations period.  Plaintiffs must base their damages on conduct that *Ticketmaster* engaged in during the limitations period, *i.e.*, after May 23, 2020.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("[T]he commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."); *Simmons v. Reich*, 2021 WL 5023354, at *3 (2d Cir. Oct. 29, 2021) (limitations period does not restart when events are "derivative" or "direct consequences" of earlier wrongdoing); *US Airways v. Sabre Holdings Corp.*, 938 F.3d 43, 68-69 (2d Cir. 2019)

---

[8] Pls.' COMF ¶¶39-42 (citing alleged threats to venues in 2012, 2013, 2017, and 2018).

[9] The parties dispute whether a contract must have concluded before the start of the limitations period for a claim based on the contract to expire.  The Court does not need to resolve that here because Defendants are seeking more limited exclusion of contracts that concluded by May 23, 2020.  *E.g.*, Ex. 21, Abrantes-Metz Rpt. (Excerpted), Ex. H.2 (including contracts and amendments that ended by or before May 23, 2020).

[10] *See, e.g.*, Pls.' COMF ¶¶107-18 (citing Ex. 1, Hill Rpt. (Excerpted), Fig. 100 (listing pre-May 23, 2020 acquisitions).

("manifestation" of earlier act is not a new "overt act"); *cf. Midwestern Mach. Co. v. N.W. Airlines*, 392 F.3d 265, 271 (8th Cir. 2004) (statute of limitations runs from date of merger).  A court should exclude evidence outside the limitations period where, as here, it is not probative of the issues the jury is being asked to decide.  *Malarkey v. Texaco*, 983 F.2d 1204, 1211 (2d Cir. 1993) (exclusion of "background" evidence proper).

*Second*, even if Plaintiffs argue that some of this old conduct (*e.g.*, closer in time to May 2020) is marginally relevant as "background" for what allegedly happened during the limitations period, that would not justify admitting extremely old conduct dating back many years.  *Id.* (court properly excluded conduct outside the limitations period even if it supposedly provided "relevant background").  Exclusion, at minimum, is proper for conduct before May 2018 (two-years prior to the limitations period) because before that time any minimal probative value as "background" would be severely limited due to the age of the alleged events, leaving memories less clear and context fuzzier.  Courts consistently emphasize that the policies animating statutes of limitations include "avoidance of litigation involving lost evidence or distorted testimony of witnesses." *Carey v. Int'l Bhd. of Elec. Workers Loc. 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999).

*Third,* exclusion is proper even as to time-barred conduct closer in time to 2020, given the unique circumstances of this case.  The risk of juror confusion is uniquely exacerbated in this case because the United States contends it is not subject to any statute of limitations and thus intends to argue that all of the old conduct proves Defendants' liability.  That means the jury would need to be instructed that one Plaintiff *can* use old conduct to establish liability, but different Plaintiffs *cannot* use the *same evidence* to prove damages.  No reasonable juror could keep that straight and it would severely prejudice Defendants.  Thus, whatever limited probative value any of the time-barred evidence might have as "background" is outweighed by the very real danger of confusing

14

and misleading the jury, and unduly prejudicing Defendants. *See Babin v. Plaquemines Par.*, 2019 WL 5540245, at *3 (E.D. La. Oct. 25, 2019) (explaining it "is likely to cause jury confusion if jurors consider evidence of events that fall outside the applicable statute of limitations in determining whether Defendant violated" the law). Plaintiffs chose to pursue this case collectively; they, not Defendants, should bear the consequences of that choice.

## VI.    MIL #6: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT THAT TICKETMASTER KNOWINGLY SELLS PRIMARY TICKETS TO BROKERS

The Court should not permit Plaintiffs to offer evidence from Defendants' competitors— who lack personal knowledge of Ticketmaster's internal sales practices—to support their baseless assertions that Ticketmaster "███████████████████." *See* Ex. 2, Perez Tr. 266:18-25; *see also* Pls.' Trial Exs., Ex. 22, PX-0018, Ex. 23, PX-0028, Ex. 24, PX-0036, Ex. 25, PX-0046, Ex. 26, PX-0097. These statements constitute impermissible lay opinion testimony and their minimal probative value far outweighed by the risk of juror confusion.

Bryan Perez, CEO of AXS Group, purports that Ticketmaster "███████████████ ██████," Perez Tr. 266:18-25, based on inferences drawn from observing tickets listed on third-party resale platforms. But the mere appearance of tickets on resale marketplaces cannot establish where resellers actually acquired those tickets or under what circumstances. Lay witnesses' "opinions may not be based on speculation, intuition, rumors or matters remote from their experience." *United States v. Graham*, 2019 WL 2366724, at *8 (S.D.N.Y. May 31, 2019).

The same deficiencies plague multiple of Plaintiffs' trial exhibits, each of which reflects speculation about Ticketmaster by Mr. Perez or his colleagues at AEG. *See, e.g.*, Ex. 23, PX-0028 (Mr. Perez: "███████████████████████████████ ██████████████████████████████"); Ex. 25, PX-0046 (Mr. Marciano: ██████ ███████████████████████████████████████████); Ex.

24, PX-0036 (Mr. Marciano: Ticketmaster is "███████████" when it comes to preventing bot purchases); Ex. 22, PX-0018 (Mr. Mueller: Ticketmaster "███████████████" in addressing bot purchases); *see also* Ex. 26, PX-0097; *see Argus v. Eastman Kodak*, 612 F. Supp. 904, 923 (S.D.N.Y. 1985) ("It is the obligation of a Court to exclude, *in limine*, exhibits … which are based on speculation and guesswork, and are not sufficiently probative." (internal quotation marks and citations omitted)).

Even if the Court declines to exclude this evidence on the foregoing grounds, it should be excluded under FRE 403 because it threatens to confuse and mislead the jury. During a January 30, 2026 meet and confer regarding anticipated motions *in limine*, Plaintiffs relied on deposition testimony by Larry Plawsky, former Executive Vice President of Resale at Ticketmaster, to justify their presentation of such evidence. But Mr. Plawsky's testimony establishes precisely the *opposite* of what Plaintiffs suggest: he testified that brokers who hold significant sports team inventory acquire that inventory "directly from content, from the team"—not from Ticketmaster. Ex. 26, Plawsky Tr. 41:16-20. The Sports Distribution Program and similar contractual arrangements permit content holders, such as professional sports franchises, to allocate a portion of their own primary ticket inventory to distribution partners of their choosing. Permitting Plaintiffs to argue that "Ticketmaster sells to brokers" would fundamentally mischaracterize this relationship, misleading the jury into believing that Ticketmaster engages in conduct that is, in fact, the independent decision of content owners exercising their own distribution rights.

## VII.   MIL #7: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT RELATING TO REMEDIES NOT AT ISSUE IN THE UPCOMING TRIAL

The Court should preclude evidence or argument that Plaintiffs seek remedies not at issue in the upcoming trial, including but not limited to, civil penalties or divestiture of Ticketmaster. Plaintiffs' request for these remedies has no bearing on the jury's sole task: to determine liability

and damages.  *See, e.g.*, *GeigTech E. Bay v. Lutron Elecs. Co.*, 2024 WL 68418, at *6 (S.D.N.Y. Jan. 5, 2024) (evidence that "relates solely to an equitable [issue] that is triable by the court and does not overlap with an issue that gets tried to the jury" should not be presented to jury).  The Court already suggested that any evidence not "relevant to just liability" would be excluded from the liability phase.  ECF No. 543 at 10; *see, e.g.*, *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (affirming bifurcation of trial, with remedies evidence not relevant at liability phase).  And Plaintiffs themselves seek to preclude remedies evidence.  Because Plaintiffs' requested non-damages remedies are not relevant at the liability phase, any evidence or argument about the potential for such remedies should be excluded under FRE 402.

Moreover, the Court should exclude evidence or argument about Plaintiffs' requested non-damages remedies because it is unfairly prejudicial and would risk jury confusion.  Fed. R. Evid. 403.  Reference to these requested remedies would unfairly prejudice Defendants because it would taint the jury's perception of Defendants' liability.  Particularly where plaintiffs seek a remedy as serious as divestiture, "evidence relevant to the [remedies] issue could have a prejudicial impact upon the jury's liability determination."  *See Lagudi v. Long Island R.R. Co.*, 775 F. Supp. 73, 74 (E.D.N.Y. 1991); *see also Koch v. Greenberg*, 14 F. Supp. 3d 247, 266-67 (S.D.N.Y. 2014).  Moreover, at the liability phase, jurors may be confused about why the evidence is being introduced, and improperly take it into account when determining liability.

## VIII.  MIL #8: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING ALLEGED MONOPOLY POWER OUTSIDE PLAINTIFFS' RELEVANT MARKETS

The Court should preclude evidence and/or argument that Live Nation or Ticketmaster is (or could be) a monopolist outside of Plaintiffs' alleged relevant markets ("outside markets"), does (or could) possess or exercise monopoly power in the outside markets, or that the outside markets are (or could be) "tainted" by Defendants' alleged anticompetitive conduct.  Such evidence and

argument is inadmissible because it is irrelevant to the markets Plaintiffs plead here; purely speculative given that none of Plaintiffs' experts has independently analyzed the outside markets and there is no other witness who could permissibly sponsor such conjecture; and unduly prejudicial to Defendants and likely to mislead the jury.  Fed. R. Evid. 401, 402, 403, 602.

Plaintiffs limited five of their six relevant markets in this case to an artificial set of 257 arenas and amphitheaters.[11]  Plaintiffs deliberately excluded thousands of other arenas, other amphitheaters, stadiums, theaters, clubs, and other venues.  As the Court aptly noted: "[I]t's fair to say, if the plaintiffs could win their case including stadiums, then it would just be a different case."  Jan. 23, 2026 Hr'g Tr. 65:7-11.  The suggestion that Defendants may have monopolized other markets is irrelevant because that is not the case Plaintiffs ultimately brought.

The jury will decide whether the relevant markets Plaintiffs chose are improperly defined and unsupportable.  *See, e.g.*, Defs.' MSJ at 13-21; Defs.' Ltr. at 2-6, ECF No. 978.  Plaintiffs should not be permitted to insulate themselves from their own failure of proof by suggesting—without any support or analysis—that they lack indicators of monopoly power within their relevant markets because Defendants 'may have' monopolized the outside markets too.  *See United States v. Connolly*, 2018 WL 5023785, at *4 (S.D.N.Y. Oct. 1, 2018) (precluding testimony regarding a "hypothetical conclusion" and finding that "since there is virtually no probative value in testimony about what 'may' have happened (as opposed to what actually did happen), the balance falls heavily in favor of disallowing the testimony."); *Sitts v. Dairy Farmers of Am.*, 2020 WL 5233027, at *5 (D. Vt. Sept. 2, 2020) ("Statements made by [Defendants] outside of the geographic market

---

[11] Plaintiffs' sixth market is even narrower—limited to 87 amphitheaters only, otherwise subsumed by the set of 257.

at issue do not tend to prove that Defendants made similar threats in [the relevant market] in the absence of corroborating evidence.").

Courts routinely exclude evidence of alleged misconduct falling outside the bounds of plaintiffs' claims because it is not probative of any issue actually before the jury, is unduly prejudicial, and tends to mislead the jury. *See United States v. Quattrone*, 441 F.3d 153, 186-87 (2d Cir. 2006) (excluding as unfairly prejudicial the "inappropriate suggestion" that Defendant committed other violations "neither established nor charged"); *Sitts*, 2020 WL 5233027, at *5 (excluding "testimony which may 'inappropriately lead the jury to' find in favor of Plaintiffs 'on the basis of conduct not at issue in the trial.'"); *Shoppin' Bag of Pueblo v. Dillon Cos.*, 783 F.2d 159, 165 (10th Cir. 1986) (upholding exclusion of market shares outside alleged relevant markets as irrelevant). Plaintiffs should not be allowed to muddy the waters with prejudicial conjecture about Defendants' theoretical monopolistic behavior in the outside markets when Plaintiffs have neither pursued those claims nor analyzed those markets.

Indeed, Plaintiffs' experts confirmed the scope of their liability and damages analyses were limited to Plaintiffs' relevant markets. For example, when asked whether his reports provide any empirical evidence showing Ticketmaster's margins and take rates are higher inside Plaintiffs' relevant markets than outside (there is none), Dr. Hill responded: "I don't compare the major concert venue market. I don't define markets outside of those, and I don't compare margins in them," and subsequently confirmed: "I didn't analyze that question." Ex. 14, Hill Tr. 398:14-399:7; *see also id.* 58:14-24 (acknowledging he does not "offer any opinion about effects, beyond those in [his] major concert venue markets or major concert amp market"). Dr. Abrantes-Metz likewise confirmed she relied on Dr. Hill's relevant market opinions in full, did not opine as to liability at all, did not independently analyze whether Plaintiffs' relevant markets were reasonable,

and did not disclose any analysis of market shares in any outside markets.  Ex. 28, Abrantes-Metz Tr. 32:5-33:1, 39:13-40:13.  There is no other sponsoring witness for such evidence.

Plaintiffs have already tried to engage in improper speculation about Defendants' supposed monopolization of the outside markets.  At deposition, Dr. Abrantes-Metz suggested the outside markets could be "tainted" by Defendants' conduct, even though she conceded she did not study that question.  *Id.* 209:22-210:5, 217:12-218:4, 220:4-221:18.  For the reasons above, all such argument and evidence is impermissible and should be excluded.

## IX.    MIL #9: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING EX-US CONDUCT

The Court should exclude any evidence or argument about how primary ticketing works in various countries outside the United States, under FREs 401, 402, and 403.  Plaintiffs intend to introduce ex-US evidence to try to show that in a handful of other countries (although not all), it is more typical to have non-exclusive primary ticketing contracts than exclusive contracts.  But this evidence is irrelevant, would hopelessly confuse the jury and would unnecessarily prolong an already-bloated trial schedule with countless mini-trials about the different facts and laws that govern ticketing in each country.

First, this evidence is irrelevant.  Plaintiffs allege that the relevant geographic market for all of their proposed ticketing markets is the United States.  That means Plaintiffs contend—and will have to prove—that venues in the United States view primary ticketing options outside the United States as *distinct* from those inside the United States.  *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 228 (2d Cir. 2006) ("[t]he geographic market encompasses the geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition.").  Indeed, as discussed below, Plaintiffs' own witness confirms the marketplace realities and laws and regulations that govern ticketing in other

20

countries are vastly different from the United States.  Defendants do not dispute the United States

is an appropriate geographic boundary for any market, except for the fan-facing market where

Defendants contend the market is *smaller*, not larger than the United States.  In short, ex-US

evidence is not relevant to any issue the jury has to decide in this case.

Second, even if there were some marginal relevance, admitting ex-US evidence would

hopelessly confuse the jury in an already complex case, and would unduly delay an already lengthy

trial.  Plaintiffs' own fact witness on this topic (they have no expert) has already admitted that

there are myriad differences between the United States and foreign markets, including differences

in laws and regulations, approach to secondary ticketing, fan preferences and music tastes,

marketing practices, revenue capture, touring logistics and costs. *See* Ex. 13, █████ Tr. 164:24-

177:16.  Defendants would have to rebut the ex-US evidence for each foreign location.  It is already

difficult to imagine how any reasonable juror will be able to keep track of the different laws that

govern the eight different federal claims and numerous different state law claims at issue in this

case.  It is inconceivable that any reasonable juror could do all that *and* try to sort through the

nuances of different foreign laws.  In *State v. Deutsche Telekom AG,* 419 F. Supp. 3d 783, 788

(S.D.N.Y. 2019), the court excluded ex-US evidence in a *bench trial* because "numerous salient

factors, including market structure, consumer demographics, regulatory frameworks, and

infrastructure may differ significantly and likely yield only an apples-to-oranges comparison" and

thus "the limited probative value of such evidence would be outweighed by the undue delay that

would result from its consideration at trial."  That rationale is all the more compelling in this jury

trial.

## X.     MIL #11: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT REGARDING EXECUTIVE COMPENSATION

Plaintiffs should be excluded from introducing evidence or argument concerning Live Nation executives' compensation.  *See, e.g.*, Ex. 29, PX-0870 (2023 compensation committee meeting); Ex. 30, PX-0949 (2022 annual bonus and 2023 equity grant); Ex. 31, PX-0993 (LYV 2025 Schedule 14A); Ex. 32, Berchtold 30(b)(6) Tr. 27:12-32:24 (discussing CFO's compensation); Ex. 33, J. Smith Tr. 22:10-23:23, 28:10-20 (discussing prior Ticketmaster President's compensation); Ex. 34, Hansen Tr. 39:4-40:19 (discussing Chief Strategy Officer's compensation); Ex. 35, Roux Tr. 14:10-15:12 (discussing compensation of Live Nation's President of U.S. Concerts); Ex. 36, Zachary Tr. 25:22-26:13 (discussing compensation of Live Nation's Co-President of U.S. Concerts); Ex. 37, Meyer Tr. 304:20-307:2 (discussing CEO's compensation).

Executive compensation is entirely irrelevant in this case.  There is no nexus between Live Nation executives' compensation and Defendants' alleged anticompetitive conduct or its effects at issue in this case.  There is no claim in which intent or motive is an element for which executive compensation could even possibly be argued to be relevant.  Thus, evidence of executive compensation should be excluded.  Fed. R. Evid. 401, 402; *see also Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp.*, 2016 WL 10706086, at *2-3 (N.D. Ind. Oct. 28, 2016) (excluding evidence of personal wealth, compensation, and unrelated business interests of defendant's employees as irrelevant and unduly prejudicial); *L-3 Commc'ns Corp. v. OSI Sys.*, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (excluding evidence of executive's wealth and lifestyle as irrelevant and unduly prejudicial); *United States v. Kail*, 2021 WL 261135, at *9 (N.D. Cal. Jan. 26, 2021) (excluding evidence of compensation as irrelevant to alleged fraud).

Evidence of executive compensation would be unduly prejudicial.  Fed. R. Evid. 403.  Such evidence is almost certain to inflame the jury and bias it against the executives themselves, who are expected to testify, as well as against Defendants as a whole.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses.").  Given the absence of any probative value of this evidence, it is clear that inflaming the jury is precisely the reason for this evidence to be offered by Plaintiffs.  *See* Ex. 32, Berchtold 30(b)(6) Tr. 27:20-23 (eliciting that Berchtold was the highest paid CFO in the U.S. in 2023).  "[A] strategy that obviously include[s] a persistent appeal to class prejudice" is "improper and ha[s] no place in a court room."  *United States v. Stahl,* 616 F.2d 30, 32-33 (2d Cir. 1980) (reversing conviction where prosecutor's trial strategy persistently appealed to class prejudice); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) (admonishing, in an antitrust case, that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them.").

## XI.  MIL #12: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT EMPLOYING THE TERM "TICKETMASTER TAX"

Plaintiffs should be precluded from introducing evidence or argument employing the term "Ticketmaster Tax."  This epithet is unnecessary to prove any element of Plaintiffs' claims and would only inflame the jury rather than inform them.  Neutral descriptors such as "fees" sufficiently communicate the relevant economic principles without unfairly prejudicing Defendants.  The term "Ticketmaster Tax" should therefore be excluded as more prejudicial than probative.  Fed. R. Evid. 403.

Courts in this Circuit regularly distinguish between terms that are (1) gratuitously pejorative and unnecessary to proving claims or defenses, and (2) probative of issues the jury must

decide.  *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017).  The phrase "Ticketmaster Tax" falls squarely into the first category—it is a rhetorical flourish designed to inflame rather than a factual descriptor necessary to prove Plaintiffs' claims.  The word "tax" is highly charged and invites the jury to assume that Ticketmaster is in a power position to exact a tax and that everyone on the receiving end must pay it.  In other words, using that word assumes all of those predicates are true without Plaintiffs having to prove them. Further, the phrase "Ticketmaster Tax" may lead the jury to believe that Ticketmaster retains all fees on tickets, which Plaintiffs concede is not true.  *See, e.g.*, Am. Compl. ¶43.  Plaintiffs (and their witnesses) should be precluded from using that term.  *See, e.g.*, *United States v. Motovich*, 2024 WL 3303723, at *4 (E.D.N.Y. July 2, 2024) (excluding "Motovich Check-Cashing Business" because it "assume[d] the truth of allegations that the Government [was] required to prove," namely that defendant controlled the enterprise).

Courts in this District consistently have excluded terminology that, like "Ticketmaster Tax," is inflammatory and unnecessary where, as here, more neutral language is appropriate and available.  *See United States v. Patel*, 2023 WL 2643815, at *12 (D. Conn. Mar. 27, 2023); *Veleron Holding, B.V. v. Morgan Stanley*, 2015 WL 14072664, at *4 (S.D.N.Y. Oct. 20, 2015).

## XII.  MIL #13: MOTION TO EXCLUDE LAY WITNESS EVIDENCE EMPLOYING THE TERMS "MONOPOLY" OR "MONOPOLY POWER"

Plaintiffs should be precluded from eliciting testimony from, or introducing other evidence through, any lay witness (including non-party witnesses) stating that Defendants have monopoly power, are monopolists, or using any other version of the word "monopoly."  Such evidence constitutes improper lay opinion testimony under FRE 701.  *See, e.g.*, *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1579 (11th Cir. 1985) ("Construction of a relevant economic market or a

showing of monopoly power … cannot, however, be based upon lay opinion testimony.").  Such

evidence is also highly prejudicial and risks misleading the jury.  Fed. R. Evid. 403.




[*signatures on following page*]

Dated: February 10, 2026

Respectfully submitted,

LATHAM & WATKINS LLP                  CRAVATH, SWAINE & MOORE LLP

_____              _____
Alfred C. Pfeiffer (admitted *pro hac vice*)    Lauren A. Moskowitz
   *Co-Lead Trial Counsel*            Jesse M. Weiss
David R. Marriott                    Nicole M. Peles
   *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)    Two Manhattan West
Timothy L. O'Mara (admitted *pro hac vice*)    375 Ninth Avenue
Jennifer L. Giordano                 New York, NY 10001
Kelly S. Fayne (admitted *pro hac vice*)    (212) 474-1000
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)    lmoskowitz@cravath.com
                                     jweiss@cravath.com
505 Montgomery Street, Suite 2000    npeles@cravath.com
San Francisco, CA 94111
(415) 391-0600                       *Attorneys for Defendants Live Nation*
                                     *Entertainment, Inc. and Ticketmaster L.L.C.*
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

26

## CERTIFICATE OF COMPLIANCE

I, Alfred C. Pfeiffer, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 7,996 words.  In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated:    February 10, 2026
          San Francisco, California

                                                _____
                                                Alfred C. Pfeiffer

## RULE 6.4 CERTIFICATE OF COMPLIANCE

I, Alfred C. Pfeiffer, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 6.4 of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), that prior to filing the accompanying motions in limine, I and other of Defendants' counsel conferred, or attempted in good faith to confer, with Plaintiffs' counsel regarding the issues raised in the motion in an effort to resolve them without the Court's intervention.  Despite these efforts, the parties were unable to reach agreement on all issues, and the Court's resolution is therefore required.

Dated:     February 10, 2026
           San Francisco, California

_____
Alfred C. Pfeiffer