<u>VIA ECF</u>
The Honorable Arun Subramanian                                    February 16, 2026
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**   *United States et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS-SLC

Dear Judge Subramanian:

      Conspicuously absent from Defendants' letter motion to compel is that Defendants' own Trial Witness List contains **86 witnesses**, nearly 20 more than appear on Plaintiffs' Trial Witness List. *See* ECF No. 1031-4, 1031-3. Having failed to make a good faith effort to provide a realistic witness list, Defendants now seek to prejudice Plaintiffs' ability to present their own case. The court should not indulge Defendants' gamesmanship.

      The Court should deny Defendants' motion because Plaintiffs' witness list is an accurate list of witnesses that Plaintiffs intend to call at trial, Defendants seek relief inconsistent with their own witness list, and Defendants ignore the other witness disclosure provisions negotiated by the parties that will allow all sides to adequately prepare for trial.

## **Plaintiffs Have Complied with the Parties' Witness List Agreements**

      Plaintiffs first proposed a methodology and timeline for witness list disclosures to Defendants in October of last year. By November 2025, the parties had agreed to (i) a simultaneous exchange of "may call" witness lists on January 6, 2026, and (ii) that the parties would include their respective "will-call" witness lists in the joint proposed pretrial order to be filed in February 2026.

      As Defendants acknowledge, they did not raise the concept of a staggered witness list exchange until January 20, 2026, well after the parties had already agreed upon a framework for witness list exchanges in the lead up to trial. In an effort to address Defendants' concerns, Plaintiffs agreed to an additional narrowed simultaneous witness list exchange on February 5, 2026.

      As depicted in the chart below, Plaintiffs have both complied with the parties' agreements concerning witness list exchanges at every step and continuously put forward narrower and far more reasonable witness lists than those disclosed by Defendants. Defendants removed a mere *five* individuals from their list over the last six weeks, while Plaintiffs made changes to nearly a quarter of its list in a good faith effort to significantly narrow the number of witnesses called to testify at trial.

|  | **January 6 Witness List Exchange**[1] | **February 5 Witness List Exchange** | **February 12 Witness List Exchange** |
|---|---|---|---|
| **Plaintiffs** | Total Witnesses: 77<br>Live: 69<br>Designations: 8 | Total Witnesses: 70<br>Live: 54<br>Designations: 16 | Total Witnesses: 68<br>Live: 52<br>Designations: 16 |
| **Defendants** | Total Witnesses: 91<br>Live: 54<br>Designations: 37 | Total Witnesses: 87<br>Live: 50<br>Designations: 37 | Total Witnesses: 86<br>Live: 48<br>Designations: 38 |

**Defendants Seek Relief Inconsistent With Their Own Witness List**

That Defendants now ask the Court to order Plaintiffs to narrow their witness list when ***Defendants' witness list is more than 25% longer and less realistic*** ignores the age-old adage that people who live in glass houses should not throw stones.

Defendants seek to impose a double standard that is inconsistent with their own witness list. Defendants argue, for example, that Plaintiffs have made it "impossible" for Defendants "to predict what case Plaintiffs will present at trial, thus impeding Defendants' ability to develop their trial strategy and adequately prepare their defense." As an initial matter, the parties' voluminous summary judgment briefing, witness disclosures, motions *in limine*, deposition designations, and exhibit lists readily identify the evidence Plaintiffs plan to present at trial. But even more ironically, Defendants' argument applies with even greater force to Defendants' own witness list, which they have failed to reduce to fewer than 86 names. Defendants similarly claim that "simple arithmetic" shows that Plaintiffs cannot call all the individuals on Plaintiffs' list, but Defendants identify no mathematical formula that would allow them to call 86 witnesses in less time than it takes Plaintiffs to call 68.

Underlying Defendants' entire motion is the mistaken premise that the burden is on Plaintiffs, and Plaintiffs alone, to first narrow their witness list before Defendants are required to do the same. But that is not the schedule Defendants agreed to, and Defendants cite to no precedent, in this circuit or elsewhere, to support this misguided contention. The parties negotiated in good faith *simultaneous* witness list disclosures, for which Plaintiffs upheld their end of the bargain, and Plaintiffs complied with the Court's Individual Practices to identify the witnesses in the Joint Pretrial Order that Plaintiffs intend to call in their case in chief. Defendants assume that Plaintiffs are required to provide a final list from which they will not deviate, while Defendants should be free to list far more witnesses than they could ever call and pick and choose during trial. That isn't what the parties agreed to, nor is it consistent with the Court's Individual Practices.

Plaintiffs fully acknowledge that a small number of witnesses on their current list may ultimately not be called due to time and scheduling limitations. However, the same is necessarily

---

[1] Defendants take issue with Plaintiffs' disclosure of Ms. Burdick, but Plaintiffs disclosed a "1006 witness" on their January 6, 2026, witness list, and as indicated in ECF No. 1031-3, Ms. Burdick's testimony will be limited to providing necessary foundation and explanation of certain of Plaintiffs' proposed 1006 exhibits. Defendants' complaint rings particularly hollow given that they disclosed for the first time on February 13, 2026 that, in addition to their four experts, as many as 17 of Defendants' fact witnesses (including their CEO, CFO, and CSO) may "lay the foundation for 1006 exhibits based on company data." ECF No. 1031-4.

true of Defendants' even longer list. And it is also entirely consistent with the purpose of trial witness lists more broadly. "[I]t is elementary that litigants are not *required* to call every witness identified on their witness lists. The witness list simply provides notice to the court and to opposing counsel of the witnesses who *may* be presented at trial. Whether a litigant actually calls all, or any, of the witnesses on its witness list is purely a matter of trial strategy." *United States v. Bond*, 552 F.3d 1092, 1097 (9th Cir. 2009) (citation omitted). Defendants turn to *650 Fifth Ave.* for support, but in that case the plaintiff failed to timely disclose any witness list *at all*, which is clearly not analogous to the situation here. 2013 WL 12183225, at *1–2 (S.D.N.Y. June 5, 2013).[2]

### The Parties' Already Agreed to Additional Witness Disclosures

Defendants' motion also ignores additional witness disclosure provisions that will give Defendants further necessary information on trial witnesses.

As indicated in the joint pretrial order, Plaintiffs have agreed to disclose to Defendants (i) the "name and anticipated order of each witness they expect to call, including any adverse witness, no later than 10:00 a.m. ET" on February 25, 2026, (ii) at least two days in advance, the witnesses that Plaintiffs intend in good faith to call on a particular day, (iii), any witness that they plan to remove from their list, at least a day before the witness was expected to be called, and (iv) when Plaintiffs believe they have three business days remaining in their case in chief. ECF No. 1031 at ¶¶ 11, 12, 16, 17. These disclosure provisions give Defendants additional, and more than sufficient, clarity to prepare their case.

### Conclusion

Defendants' attempts to prejudice Plaintiffs' ability to prove their case should be rejected. Forcing Plaintiffs to arbitrarily reduce their witness list at this stage, while allowing Defendants to maintain an even larger list, would not only be facially inequitable, but would seriously hamper Plaintiffs' ability to present their case to the jury.

The Court should deny Defendants' motion for the reasons described above. In the alternative, Plaintiffs would be amenable to a compromise that would require both sides to simultaneously narrow their lists to 55 total witnesses.

---

[2] Defendants also rely on *United States v. Int'l Bus. Machines Corp.*, 79 F.R.D. 15 (S.D.N.Y. 1978), a case that lasted over a decade and involved hundreds of live and designation witnesses. At the time of the particular ruling at issue, IBM had not updated its witness list in over *three years*. *See id.* at 17. That is clearly distinguishable from the situation here.

Respectfully submitted,

*/s/ John R. Thornburgh II*

JOHN R. THORNBURGH II

Bonny Sweeney
   *Co-Lead Trial Counsel*
David Dahlquist
   *Co-Lead Trial Counsel*
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Email: John.Thornburgh@usdoj.gov
Email: Bonny.Sweeney@usdoj.gov
Email: David.Dahlquist@usdoj.gov
*Attorneys for Plaintiff United States of America*