**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| *Plaintiffs,* | Case No. 1:24-cv-03973-AS |
| v. | **ORAL ARGUMENT REQUESTED** |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO BIFURCATE TRIAL</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ....................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ...........................................................................................................................5

CONCLUSION.......................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Amato v. City of Saratoga Springs*,
  170 F.3d 311 (2d Cir.1999) ...................................................................................7, 8

*Appel v. Wolf*,
  No. 18-CV-814 TWR (BGS), 2023 WL 5955184 (S.D. Cal. Sept. 12, 2023) .........................8

*Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*,
  288 F.R.D. 335 (S.D.N.Y. 2013) ........................................................................5, 8, 9

*Guidi v. Inter-Cont'l Hotels Corp.*,
  No. 95 CIV. 9006 (LAP), 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003)...................................7

*Katsaros v. Cody*,
  744 F.2d 270 (2d Cir. 1984) ...................................................................................7

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997) .............................................................................................6

*MacDermid Printing Sols. v. Cortron*,
  833 F.3d 172 (2d Cir. 2016)................................................................................4, 5

*Midwestern Mach. Co. v. N.W. Airlines*,
  392 F.3d 265 (8th Cir. 2004) ...............................................................................6

*New York v. Facebook, Inc.*,
  549 F. Supp. 3d 6 (D.D.C. 2021) .........................................................................3

*New York v. Meta Platforms, Inc.*,
  66 F.4th 288 (D.C. Cir. 2023) ..............................................................................3

*Norwood v. Child. & Youth Servs., Inc.*,
  No. CV1007944GAFMANX, 2012 WL 12882757 (C.D. Cal. July 27, 2012) ...................8

*Simmons v. Reich*,
  2021 WL 5023354 (2d Cir. Oct. 29, 2021)..............................................................6

*United States v. Google LLC*,
  747 F. Supp. 3d 1 (D.D.C. 2024) .........................................................................5

*United States v. Google LLC*,
  803 F. Supp. 3d 18 (D.D.C. 2025) .......................................................................5

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) .............................................................................5

*US Airways v. Sabre Holdings Corp.*,
  938 F.3d 43 (2d Cir. 2019) ..................................................................................6

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
  401 U.S. 321 (1971) .............................................................................................5

## STATUTES

A.R.S. § 44-1410(A) ...................................................................................................3

15 U.S.C. § 15b ...........................................................................................................2

D.C. Code § 12-301 .....................................................................................................3

Ind. Code § 34-11-2-4(a)(3) ........................................................................................3

Iowa Code § 553.13 .....................................................................................................3

Miss. Code Ann. § 15-1-33 ..........................................................................................3

S.C. Code § 39-5-150 ...................................................................................................3

## RULES

Fed. R. Civ. P. 42(b) ...................................................................................................5

## INTRODUCTION

Defendants respectfully move to bifurcate the upcoming trial in this matter, so that only the Plaintiff States' claims are tried to the jury and not any of the Department of Justice's ("DOJ") claims. Pending before the Court are two disputes that, if not both resolved in Defendants' favor, require bifurcating trial of the States' claims from DOJ's claims to avoid prejudice to Defendants, minimize juror confusion, and enhance judicial efficiency. Because these two disputes have not yet been resolved and because trial is scheduled to begin on March 2, Defendants are filing this motion to bifurcate now so that the Court will have time to address it before trial begins.

First, under the applicable statutes of limitation, the States and DOJ are not allowed to use the same evidence to pursue their claims. This is already the subject of an *in limine* motion to preclude all Plaintiffs from introducing evidence or argument concerning alleged exclusionary conduct that occurred before May 23, 2020. ECF No. 1018 at 12-15. In the context of that motion, it has become clear that DOJ believes that neither the doctrine of laches nor any statute of limitations limits its ability to rely on evidence of events even ten or fifteen years ago. But the States' claims are subject to statutes of limitations, meaning that the States are materially limited in the evidence they can use to try to establish Defendants' liability and collect damages. In a single trial, however, evidence of time-barred events (for the States) would still be presented to the jury as part of DOJ's claims. If so, that would mean the jury would need to be instructed that one Plaintiff (DOJ) *can* use certain evidence to try to establish Defendants' liability, but different Plaintiffs (the States) *cannot* use the *same evidence* to prove their claims. No reasonable juror could keep that straight—particularly over the course of a four- or five-week trial—and it would allow the States to escape the applicable time-bars and severely prejudice Defendants.

1

Second, it has become apparent in the context of determining jury instructions that DOJ and the States may not be entitled to the same instructions with respect to the fundamental element of harm to competition. On the surface, all Plaintiffs are seeking to avail themselves of a lower burden of proof that courts in the D.C. Circuit have applied when the only relief sought is an injunction terminating allegedly unlawful behavior. But the States, of course, are seeking damages. Thus, even if it were proper to utilize this lower standard for DOJ's claims (it is not), that standard indisputably could not apply to the States' claims. So long as the States are seeking damages, the jury should only hear the instructions that justify damages—not two different sets of instructions that no jury could be expected to distinguish and apply correctly. The State claims should therefore be tried separately, and first.

If the Court denies Defendants' pending motion in limine or concludes that DOJ's equitable claims are subject to a lower causation standard than the States' claims, then the Court should bifurcate the trial so that the States try only their claims to the jury.[1]

## BACKGROUND

On February 10, 2026, Defendants moved *in limine* to preclude Plaintiffs from introducing evidence or argument concerning alleged exclusionary conduct that occurred before May 23, 2020. The basis for that motion is that the States' federal and state law claims are subject to statutes of limitations no longer than four years. For example, their Sherman Act claims are subject to the four-year limitation in 15 U.S.C. § 15b. And although the Court, not the jury, would determine

---

[1] If the Court denies this motion, Defendants believe the Court should execute on its proposal to stay the state law claims and try only the federal claims in the first instance. Even apart from the complexities associated with statutes of limitations, there are numerous other individualized issues the jury would have to decide for a variety of state law claims, as set forth in Defendants' proposed jury instructions and verdict form. *See* ECF No. 1031-10 (Defs.' Proposed Jury Instructions) at 129-161; ECF No. 1031-14 (Defs.' Proposed Verdict Form).

whether any State is entitled to any penalties, statutes of limitations also apply to the States' penalties claims,[2] some of which are even less than four years. *See, e.g.*, S.C. Code § 39-5-150 ("No action may be brought under this article more than three years after discovery of the unlawful conduct which is the subject of the suit."); D.C. Code § 12-301 (one-year statute of limitations for statutory penalty actions). Similarly, although the Court, not the jury, would determine whether any Plaintiff is entitled to equitable remedies, the States' remedies claims would be subject to laches, whereas DOJ's would not. *See New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 40 (D.D.C. 2021) ("the doctrine of laches therefore applies to parens patriae suits"); *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 301 (D.C. Cir. 2023) (applying laches to states' claims).

Ultimately all of this means the States can use a far more limited set of evidence to try to prove their claims than DOJ can. For example, the States cannot seek to establish Defendants' liability or responsibility for damages by relying on (i) any alleged threats to, or retaliation against, any venues that occurred before May 23, 2020, (ii) any Ticketmaster ticketing contracts or Live Nation concert booking contracts that were entered into before May 23, 2020, and (iii) acquisitions of, or joint ventures with, any promoters, ticketers, or venues before May 23, 2020. The States do not dispute that their claims are subject to statutes of limitations (and laches). *See* ECF No. 1031-9 (Pls.' Proposed Jury Instructions), Post-Instruction No. 38 at 160-161. However, DOJ does, and DOJ has made clear that it intends to rely on a wide variety of evidence that pre-dates May 23, 2020 to try to prove its claims against Defendants. This evidence includes: (i) alleged threats to venues in 2012, 2013, 2017, and 2018 (Pls.' COMF in Supp. of Opp. to MSJ (ECF No. 744) ("Pls.'

---

[2] *See, e.g.,* A.R.S. § 44-1410(A) (four-year statute of limitations for Arizona civil penalty actions); Iowa Code § 553.13 (four-year limit for Iowa penalty actions); Ind. Code § 34-11-2-4(a)(3) (two-year limit for Indiana penalty actions); Miss. Code Ann. § 15-1-33 (one-year limit for Mississippi penalty actions).

COMF") ¶¶39-42); (ii) purportedly exclusive ticketing and booking contracts entered into prior to May 23, 2020 (*see, e.g.*, ECF No. 695-1 (Abrantes-Metz Rpt.), Ex. H.2 (including contracts and amendments that ended by or before May 23, 2020)), and (iii) a variety of old acquisitions, including of AC Entertainment in 2016; CT Touring in 2016; United Concerts in 2017; Stateside Presents in 2017; Live Nation Urban in 2017; Emporium Presents in 2018; Red Mountain Entertainment in 2018; ScoreMore Holdings in 2018; Spaceland Productions in 2019; and Neste Event Marketing in 2019 (Pls.' COMF ¶¶107-18) (citing Hill Rpt., fig. 100).[3]

The immense risk of jury confusion and prejudice to Defendants from the different-evidence-for-different-Plaintiffs issue is compounded by Plaintiffs' position on what they must do to prove the necessary element of harm to competition. Specifically, Plaintiffs contend (i) they only need to prove that the alleged exclusionary conduct "was reasonably capable of contributing significantly to Defendants' continued monopoly power in any relevant market", and (ii) they do not need to prove the alleged exclusionary conduct caused any actual anticompetitive effects at all. *See* ECF No. 1031-9 (Pls.' Proposed Jury Instructions), Post-Instruction No. 16 at 83-88. As set forth in Defendants' summary judgment motion, that is not the law. Defs.' Mot. for Summ. J. (ECF No. 689) at 22-23; *MacDermid Printing Sols. v. Cortron*, 833 F.3d 172, 183 (2d Cir. 2016). And Plaintiffs never argued that it was during summary judgment proceedings. *See generally* Pls.' Opp. to Mot. for Summ. J. (ECF No. 755). Plaintiffs now cite D.C. Circuit cases discussing a

---

[3] For the reasons described in Defendants' motion *in limine*, the Court should preclude all Plaintiffs, including DOJ, from introducing this earlier evidence. The States should not get the benefit of juror confusion because they chose to co-mingle their claims with DOJ's claims. Moreover, DOJ is not entitled to a jury trial at all and could have chosen to try its claims to the Court separately but refused to do so. One consequence of DOJ's choice should be that it is subject to the same evidentiary restrictions as the States to avoid jury confusion and prejudice to Defendants. However, if the Court rules that DOJ may introduce and rely on stale conduct with the jury, then bifurcation is necessary for the reasons described herein.

more lenient standard that may apply when the government is seeking injunctive relief terminating the allegedly unlawful practice. *See* ECF No. 1031-9 (Pls.' Proposed Jury Instructions), Post-Instruction No. 16 at 85-86 (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001)); *see also United States v. Google LLC*, 747 F. Supp. 3d 1, 152-53 (D.D.C. 2024) (noting the standard discussed in *Microsoft* applies only "when a regulator is seeking only injunctive relief"). Here, of course, the States are also seeking damages and penalties, and they indisputably have to prove actual anticompetitive effects. *MacDermid Printing*, 833 F.3d at 183.[4] So even if there were some lower causation standard that applied when the government only seeks any injunction (there is not), that standard could never apply to the States' claims here.

## ARGUMENT

Unless the Court resolves the pending disputes in Defendants' favor, bifurcation is warranted. Federal Rule of Civil Procedure 42(b) allows a court to bifurcate the trial of certain issues or claims "[f]or convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). To determine whether bifurcation is appropriate, courts consider myriad non-exhaustive factors, including "whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013). If the Court does not resolve the two disputes outlined above in Defendants' favor, then each factor favors bifurcating the States' claims from DOJ's claims here.

---

[4] *Microsoft* and *Google* also make clear that divestiture, which Plaintiffs seeks here, cannot be predicated on the lower standard: there must be "'a clearer indication of a significant causal connection between the conduct [found unlawful] and . . . maintenance of the market power.'" *United States v. Google LLC*, 803 F. Supp. 3d 18, 69 (D.D.C. 2025) (quoting *Microsoft*, 253 F.3d at 106).

First, bifurcation is necessary to minimize prejudice to Defendants.  DOJ has made clear it intends to introduce and rely on evidence outside the four-year statute of limitations in attempting to prove its claims.  But that time-barred evidence legally cannot support the States' claims.  *See Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 338-39 (1971) (conduct occurring outside the limitations period cannot be the basis for damages); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("[T]he commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."); *Simmons v. Reich*, 2021 WL 5023354, at *3 (2d Cir. Oct. 29, 2021) (limitations period does not restart when events are "derivative" or "direct consequences" of earlier wrongdoing); *US Airways v. Sabre Holdings Corp.*, 938 F.3d 43, 68-69 (2d Cir. 2019) ("manifestation" of earlier act is not a new "overt act"); *cf. Midwestern Mach. Co. v. N.W. Airlines*, 392 F.3d 265, 271 (8th Cir. 2004) (statute of limitations runs from date of merger).  This means that, absent bifurcation, the jury will hear all of DOJ's evidence, be instructed to rely upon that evidence to decide Defendants' liability, and then later reverse course and be told to ignore all that evidence when evaluating the States' claims.  That is not reasonable.  No reasonable juror could keep all of that straight, particularly in a complex case like this that already has eight different federal claims across six different purported markets and 39 separate state law claims and is expected to last four or five weeks.  Unlike a bench trial, where the Court has ample experience distinguishing parties' claims and relevant evidence, a jury will certainly, even if unintentionally, comingle Plaintiffs' evidence.

Moreover, depending on how the Court resolves the parties' jury instruction disputes, DOJ's claims and the States' claims may be subject to different legal causation standards.  *See* ECF No. 1031-9 (Pls.' Proposed Jury Instructions), Post-Instruction No. 16 at 83-88.  It would substantially prejudice Defendants to allow the States to present their narrower case to the jury

alongside DOJ's broader scope, both to be assessed under DOJ's supposed lower burden of proof.[5] The combined effect of those two issues—*i.e.*, that there is a different set of evidence for different Plaintiffs, and even the common evidence may be subject to different legal standards—would hopelessly confuse the jury; there is no way they could reasonably keep all of that straight.  *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir.1999) (affirming bifurcation "where one party will be prejudiced by evidence presented against another party," including because evidence was "either inadmissible . . . or prejudicial to" other party); *Guidi v. Inter-Cont'l Hotels Corp.*, No. 95 CIV. 9006 (LAP), 2003 WL 1846864, at *2 (S.D.N.Y. Apr. 8, 2003) (bifurcating trial where jury would be biased from hearing certain evidence); *cf. Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) ("Bifurcation of the trial in the present case was reasonable because the two phases involved different types of evidence.").  It is significantly less prejudicial to bifurcate Plaintiffs' claims such that the States try their case to the jury alone, without the benefit of DOJ's broader scope of evidence or purportedly lower evidentiary burden.  And to be sure, bifurcation causes Plaintiffs no harm.  It is undisputed that DOJ alone is not entitled to a jury trial on its claims, and the States concede they are subject to statutes of limitations barring certain evidence that DOJ cites from supporting their claims.  *See* ECF No. 1031-9 (Pls.' Proposed Jury Instructions), Post-Instruction No. 38 at 160-161.  If anything, bifurcation could streamline DOJ's case, as discussed below.

Second, bifurcation will reduce the likelihood of juror confusion.  The trial will last four to five weeks and include dozens of witnesses and hundreds of exhibits.  It is nearly impossible to

---

[5] DOJ, which is not entitled to a jury trial, decided to bundle its claims with the States' claims so that DOJ could get a jury trial.  Having made that choice, DOJ either should have to meet the proper standard of proof for parties seeking monetary relief, and not some lower standard, or DOJ should have to sit on the sidelines while the States try their claims to the jury.

expect a jury to sit through that duration of trial and volume of evidence without confusing which evidence is applicable to which party.  The difficulty of that task is only exacerbated by the fact that DOJ's and the States' claims may be subject to different standards of proof.  This means that even if a jury could keep all the evidence straight, they may then have to be instructed on different causation standards for different Plaintiffs and thus evaluate that conglomeration of evidence differently for different parties.  And if all that were not enough, it would still unquestionably cloud the jury's ability to render an objective verdict on the States' claims with the additional evidence relevant to DOJ's claims in their minds.  Courts in this district have found bifurcation "will likely aid the jury's comprehension" in similar contexts.  *See, e.g.*, *Crown Cork*, 288 F.R.D. at 337 (bifurcating trial to eliminate jury confusion where litigation expected to "last six to eight weeks and will include 80 to 100 witnesses and hundreds, if not thousands, of documents"); *Appel v. Wolf*, No. 18-CV-814 TWR (BGS), 2023 WL 5955184, at *3 (S.D. Cal. Sept. 12, 2023) ("Although the type of evidence used . . . will likely overlap . . . , the distinctions between the 'burdens of proof' for each determination weigh in favor of bifurcation."); *Norwood v. Child. & Youth Servs., Inc.*, No. CV1007944GAFMANX, 2012 WL 12882757, at *3 (C.D. Cal. July 27, 2012) ("Distinctions between the evidence and burdens of proof . . . also weigh in favor of bifurcation.").

Finally, bifurcation could well serve the interests of judicial economy because it could eliminate or limit the need to try DOJ's claims. The Second Circuit has upheld bifurcation in similar contexts.  For example, in *Amato*, the Court affirmed the district court's order to bifurcate trial where "a trial against [one set of] defendants would prove unnecessary if the jury found no liability against [another set of defendants]." 170 F.3d at 316.  In such circumstances, "bifurcation would further the goal of efficiency."  *Id.*  And that was the case, the Court noted, even though

"the jury did actually find liability" and thus the potential efficiency to be gained did not play out. *Id.* This, combined with the fact that certain evidence was admissible only as to some parties led the Court to conclude there were "legitimate bases for bifurcating the proceedings." *Id.* This Court should reach the same conclusion here.

Bifurcation is appropriate even if it will not necessarily eliminate the need to litigate certain issues; it is enough if bifurcation *could* do so. *See, e.g.*, *id.* at 316 (bifurcation "appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue"); *Crown Cork*, 288 F.R.D. at 338 (finding bifurcation "serve[d] the interests of judicial economy" where "litigation of the primary issues of [party's] liability could eliminate the need to litigate" separate issues). That is the case here. If the Court bifurcates the States' case from DOJ's case and the jury finds Defendants liable on all claims, then all parties—including DOJ—could proceed directly to the remedies phase of trial. In other words, because DOJ's case is based on a broader scope of evidence and, at least potentially, at lower burden of proof, if the States prove their claims based on *less* evidence under a *higher* burden of proof, the jury's finding in favor of the States would amount to a liability finding for DOJ too. This means the parties could present a shorter trial with fewer parties, witnesses, and documents, using less judicial resources, and proceed to the remedy phase of trial quicker. Bifurcation is warranted in this scenario.

And if the jury finds that the States fail to prove liability on some or all claims, it is unclear whether DOJ would even pursue a second trial—having seen a swath of their same evidence fail before a jury. But even if it did, DOJ's trial would proceed as a bench trial before the same judge who oversaw the States' jury trial on the same claims. The parties thus could streamline the case presented and need not repeat the scope of evidence already introduced, thereby preserving party and judicial resources.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' request for bifurcation, and order that only the States' claims are tried to the jury in the case starting on March 2, 2026, and not any of DOJ's claims.

Dated: February 17, 2026

Respectfully submitted,

LATHAM & WATKINS LLP                    CRAVATH, SWAINE & MOORE LLP

_____                 _____
Alfred C. Pfeiffer (admitted *pro hac vice*)   Lauren A. Moskowitz
    *Co-Lead Trial Counsel*                  Jesse M. Weiss
David R. Marriott                            Nicole M. Peles
    *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)     Two Manhattan West
Timothy L. O'Mara (admitted *pro hac vice*)  375 Ninth Avenue
Jennifer L. Giordano                         New York, NY 10001
Kelly S. Fayne (admitted *pro hac vice*)     (212) 474-1000
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)   lmoskowitz@cravath.com
                                             jweiss@cravath.com
505 Montgomery Street, Suite 2000            npeles@cravath.com
San Francisco, CA 94111
(415) 391-0600                               *Attorneys for Defendants Live Nation*
                                             *Entertainment, Inc. and Ticketmaster L.L.C.*
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Alfred C. Pfeiffer, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 3,247 words.  In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated:    February 17, 2026
          San Francisco, California

                                          _____
                                          Alfred C. Pfeiffer