UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　*Plaintiffs,*<br><br>　　v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C.,<br><br>　　　　　　*Defendants.* | Case No. 1:24-cv-03973-AS<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO BIFURCATE TRIAL**

Plaintiffs' gambit is clear. By co-mingling all their claims together, DOJ hopes to get a jury trial that it is not entitled to and the States hope to get the benefit of a wide swath of evidence they are not entitled to, all while the jury is left hopelessly confused and Defendants have to suffer the prejudice. That is not the law and Plaintiffs' Opposition only further confirms that bifurcation is necessary. Indeed, Plaintiffs do not even seriously challenge the legal predicates of Defendants' motion and largely ignore Defendants' arguments.

*First*, Plaintiffs argue that bifurcation is inappropriate because DOJ's claims and the States' claims "overlap and are extensively intertwined." Pls.' Opp. (ECF No. 1052) ("Opp.") at 4. *But that is precisely the problem*. It is because the claims "overlap" and are "intertwined" that it would be impossible for a reasonable jury to keep straight which Plaintiffs can use which evidence and under which legal standard. Plaintiffs attempt to confuse the issue by citing *Perttu v. Richards*, 605 U.S. 460, 470-71 (2025), but that case has nothing to do with bifurcation. There, the question was whether one plaintiff with intertwined legal and equitable claims was still entitled to a jury trial—of course he is. But that does not answer the question here—whether two sets of plaintiffs, bringing two different sets of claims, are entitled to try both to a jury when one set of plaintiffs is entitled to a jury trial and one is not. *See* Opp. at 3-5, 11. The bifurcation Defendants seek is fully consistent with *Perttu* because it would protect the States' (the only plaintiffs with a right to a jury trial) Seventh Amendment rights by trying their claims first.

Plaintiffs counter that making DOJ go second would be contrary to 15 U.S.C. § 4. Opp. at 5. Not so. That statute simply directs district courts to "proceed, as soon as may be, to the hearing and determination" of "proceedings in equity" instituted by the United States. 15 U.S.C. § 4. It is an instruction to avoid unnecessary delays. For example, *United States v. Agri Stats, Inc.* cited Section 4 as a factor weighing against granting a discretionary stay of discovery pending

adjudication of a motion to dismiss. 2024 WL 3061570, at *5-6 (D. Minn. May 17, 2024). Section 4 is not a shield against bifurcation. Indeed, Plaintiffs have cited (and Defendants have found) no case discussing Section 4 in the context of bifurcation. Nor does it make sense to do so. Section 4's application is straightforward in a case like *Texas v. Penguin Group (USA), Inc.*, where four separate cases were filed against the same defendants, and the court prioritized the United States' case pursuant to Section 4. 2013 WL 1759567, at *2 (S.D.N.Y. Apr. 24, 2013). Here, DOJ chose to try its claims with the States. It cannot now assert that no matter the prejudice to Defendants of Plaintiffs' *choice* to proceed together despite the serious differences in the evidence they can use to prove their claims, Section 4 prohibits Defendants from seeking bifurcation. Interpreting Section 4 to categorically preclude bifurcation where the United States is one among many plaintiffs would promote gamesmanship and create a catch-22 for defendants—forcing them to face prejudice while plaintiffs who are individually not entitled to a jury trial or to the benefits of Section 4 take advantage of both simply because they co-mingle their claims in the same complaint. In any event, if Plaintiffs really want DOJ's claims to have priority, then the answer is simple. The States should do what they did in the *Penguin Group* case and waive their right to a jury trial and join DOJ's bench trial.

*Second*, Plaintiffs argue that "the fact that damages sought by some Plaintiffs are subject to a statute of limitations does not limit the evidence available to prove liability on those claims as compared to other claims." Opp. at 8. That is wrong in every way. To start, it is not just *some* States that have *some* claims subject to evidentiary limitations; *every* claim by *every* State in this case is subject to evidentiary restrictions that do not apply to DOJ. The States' federal and state law claims for damages are subject to statute of limitations; the States' state law claims for

2

penalties are subject to statute of limitations; and the States' equitable claims are subject to laches.[1] Mot. at 6-7. The States do not dispute any of this, nor could they.

Because of these limitations, the evidence the States can use to prove their claims is limited in ways that DOJ's isn't. The States are wrong that "antitrust plaintiffs seeking damages can rely on 'past conduct' to establish liability when such conduct 'had consequences lasting well into the damage period.'" Opp. at 8. *Zenith Radio* did not hold that plaintiffs can base their claims on time-barred conduct. 395 U.S. 100 (1969). It merely discussed what came to be known as the continuing violation doctrine, the limits of which the Supreme Court later clarified in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)—a case Defendants cited, but Plaintiffs ignore. *Klehr* set forth how the statute of limitations applies to antitrust claims. Specifically, "[a]ntitrust law provides that, in the case of a 'continuing violation,' say, a price–fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, 'each overt act that is part of the violation and that injures the plaintiff,' *e.g.*, each sale to the plaintiff, 'starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'" *Id.* at 189 (citations omitted). But *Klehr* also set out this important limitation of the "continuing violation" doctrine: "the commission of a separate new overt act generally does not permit the plaintiff to recover *for the injury caused by old overt acts outside the limitations period.*" *Id.* (emphasis added). That means the States cannot seek penalties or damages based on injuries

---

[1] The States do not dispute their equitable claims are subject to laches but suggest Defendants are somehow not entitled to assert that defense because Defendants did not move for summary judgment on it. But laches is a defense to the States' equitable claims, which are not ripe now because the Court bifurcated those claims. Laches has nothing to do with the issues the jury is to decide. The point is simply that the *evidence* the States can use for their equitable claims is different from the *evidence* DOJ can use because the States are subject to laches and DOJ is not. Defs.' Mot. to Bifurcate (ECF No. 1035) ("Mot.") at 3-4, 7.

"caused by old overt acts outside the limitations period," *i.e.,* before May 23, 2020. DOJ is not subject to this same limitation. Plaintiffs contest neither proposition in their brief, nor could they.

*Third*, Plaintiffs argue that Defendants' concerns about DOJ and the States being subject to different legal standards are overblown because—even though the States have a higher burden of proof to obtain penalties and damages as compared to equitable remedies—Plaintiffs contend that the States and DOJ are subject to the same standard to prove "liability" on the question of anticompetitive effects and that standard is whether the alleged anticompetitive conduct "reasonably appears capable of making a significant contribution to maintaining monopoly power." Opp. at 9-10. This Court's summary judgment decision appears to reject Plaintiffs' position so this may no longer be a concern animating bifurcation.[2] As the Court stated, in this Circuit it is a "requirement that anticompetitive conduct 'harm the competitive process and thereby harm consumers.'" ECF No. 1037 at 36 (citations omitted). As the Court also stated, even where a plaintiff attempts to make this showing "indirectly" it still must prove "'that the alleged conspirators had sufficient market power to cause an adverse effect, plus some other ground for believing that the ***challenged behavior has harmed competition***.'" *Id.* (emphasis added) (citation omitted) Thus, all Plaintiffs must prove that the alleged conduct actually "has harmed competition," not merely that it "reasonably appears capable of making a significant contribution to maintaining monopoly power."[3]

*Fourth*, Plaintiffs argue that Defendants' current motion is inconsistent with Defendants' prior position on the States' own previous bifurcation motion. Opp. at 4-5. Not true. The States

---

[2] If that is not true, then this remains an additional reason to bifurcate.

[3] Defendants maintain that Plaintiffs here cannot meet this standard without some showing of actual changed prices, output, or quality. As the Second Circuit recognized in *MacDermid Printing Sols. v. Cortron*, 833 F.3d 172, 183 (2d Cir. 2016), it has never affirmed an antitrust violation without such proof. There is nothing about this case that should make it the first.

4

previously asked this Court to bifurcate *their own claims* and allow them to try only the question of "liability," with the issues of impact and damages severed for a later proceeding. *See* ECF No. 528. Defendants opposed that proposed split of the States' own claims because impact (*i.e.*, injury or fact of damage) is an essential element of liability, so the jury could never decide the question of "liability" absent proof of impact. May 2, 2025 Hr'g Tr. at 16-18; *see also In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 82 (E.D.N.Y. 2000) ("*fact* of injury"—as distinguished from the "*extent* of injury (as reflected by the amount of damages)"—is "an element of plaintiffs' claim"). That position has nothing to do with the issues in this motion. Defendants seek to bifurcate the States' claims *from DOJ's claims*, not to bifurcate the States' own claims between liability and impact.

*Finally*, Plaintiffs argue that Defendants' motion is untimely. Opp. at 1. But this motion arises out of disputes between the parties that only ripened during the pre-trial process related to motions *in limine* and exchange of proposed jury instructions.[4] Far from being too late, if anything, this motion is arguably premature because bifurcation may not be necessary if the Court grants Defendants' pending *in limine* motion and rejects Plaintiffs improper proposed jury instructions.[5] Defendants filed early because of the impending trial date, so this issue could be resolved as soon as possible *if* the Court rules against Defendants on those two issues.

---

[4] Contrary to Plaintiffs' claim (Opp. at 1 n.1), Defendants notified Plaintiffs of their intention to file this motion on February 9, 2026, over a week before Defendants filed.

[5] Despite what they claim in their jury instructions and despite what they said to Defendants during the meet and confer process, Plaintiffs from California, Florida, Nebraska, South Carolina, and Vermont now say they will "refrain from presenting evidence *directed solely* at markets on which the Court granted summary judgment." Opp. at 7 (emphasis added). That does not solve the problem because it suggests they *do* intend to try to introduce some evidence related to the dismissed markets, which creates even more potential for confusion and prejudice.

The Court should grant Defendants' request for bifurcation.

*[signatures on following page]*

Dated: February 20, 2026

Respectfully submitted,

| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|

Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
David R. Marriott
   *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

## **CERTIFICATE OF COMPLIANCE**

I, Robin L. Gushman, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 1,830 words. In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated:   February 20, 2026
         San Francisco, California

*Robin L. Gushman*
Robin L. Gushman