**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>     *Plaintiffs,*<br><br>    v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br>and TICKETMASTER L.L.C.,<br><br>     *Defendants.* | Case No. 1:24-cv-03973-AS<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO CERTIFY INTERLOCUTORY APPEAL AND TO STAY**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.      CERTIFICATION FOR INTERLOCUTORY APPEAL IS WARRANTED....................2

      A.      This Court Should Certify The Targeted Customer Markets Issue ........................3

      B.      This Court Should Certify The Tied Product Market Issue....................................8

II.     STAY PENDING APPEAL IS WARRANTED ...............................................................13

CONCLUSION..........................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*,
　33 F.3d 194 (3d Cir. 1994)...........................................................................9

*Arizona v. Maricopa Cty. Med. Socy.*,
　457 U.S. 332 (1982)....................................................................................12

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
　441 U.S. 1 (1979)........................................................................................12

*Capitol Records, LLC v. Vimeo*,
　972 F. Supp. 2d 537 (S.D.N.Y. 2013)................................................... *passim*

*City of New York v. Group Health Inc.*,
　649 F.3d 151 (2d Cir. 2011)..........................................................................4

*Coniglio v. Highwood Servs., Inc.*,
　495 F.2d 1286 (2d Cir. 1974).......................................................................10

*Dupree v. Younger*,
　598 U.S. 729 (2023).......................................................................................3

*Ferring B.V. v. Allergan, Inc.*,
　343 F. Supp. 3d 284 (S.D.N.Y. 2018)..........................................................14

*FHFA v. UBS Ams., Inc.*,
　858 F. Supp. 2d 306 (S.D.N.Y. 2012)..................................................4, 5, 6, 9

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
　2015 WL 585641 (S.D.N.Y. Feb. 10, 2015)............................................4, 13, 14

*FTC v. Meta Platforms*,
　2025 WL 3458822 (D.D.C. Dec. 2, 2025)...................................................3, 5, 6

*FTC v. Sysco*,
　113 F. Supp. 3d 1 (D.D.C. 2015)....................................................................5

*FTC v. Whole Foods Mkt., Inc.*,
　548 F.3d 1028 (D.C. Cir. 2008) (opinion of Brown, J.) .........................................5

*Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*,
　880 F.2d 1514 (2d Cir. 1989)...................................................................10, 11

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
  547 U.S. 28 (2006).............................................................................................................11

*In re Dynex Capital, Inc. Sec. Litig.*,
  2006 WL 1517580 (S.D.N.Y. June 2, 2006) ...................................................................7

*In re Scotts EZ Seed Litig.*,
  2017 WL 6398627 (S.D.N.Y. Aug. 31, 2017).................................................................8

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)...........................................................................................11

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984).....................................................................................................11, 12

*Kaufman v. Time Warner*,
  836 F.3d 137 (2d Cir. 2016)..............................................................................................9

*McTigue v. Regal Cruises*,
  1998 WL 289153 (S.D.N.Y. June 3, 1998) ......................................................................7

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*,
  922 F.3d 713 (6th Cir. 2019) .........................................................................................12

*Microsoft Corp. v. United States*,
  Nos. 98-5399 (D.C. Cir. Aug. 14, 1998).........................................................................2

*Nam v. Permanent Mission of the Republic of Korea to the United Nations*,
  2023 WL 2456646 (S.D.N.Y. Mar. 10, 2023) .........................................................13, 14

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
  268 F. Supp. 3d 1071 (C.D. Cal. 2017) .........................................................................10

*Regeneron Pharmaceuticals, Inc. v. Novartis Pharma AG*,
  96 F.4th 327 (2d Cir. 2024) ..............................................................................................3

*Royal Canin U.S.A., Inc. v. Wullschleger*,
  604 U.S. 22 (2025)..........................................................................................................13

*SEC v. Coinbase, Inc.*,
  761 F. Supp. 3d 702 (S.D.N.Y. 2025).................................................................3, 4, 7, 13

*SEC v. Rio Tinto PLC*,
  2021 WL 1893165 (S.D.N.Y. May 11, 2021) ...................................................................7

*Sidibe v. Sutter Health*,
  4 F. Supp. 3d 1160 (N.D. Cal. 2013) ..............................................................................11

*United States v. American Express Co.*,
   838 F.3d 179 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 585
   U.S. 529 (2018) ................................................................................................7

*United States v. Eastman Kodak Co.*,
   63 F.3d 95 (2d Cir. 1995) ................................................................................6

*United States v. Int'l Bus. Machines Corp.*,
   163 F.3d 737 (2d Cir. 1998) ..........................................................................11

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) (en banc) ..................................................11, 12

## STATUTES

15 U.S.C. § 29(a) ................................................................................................2

28 U.S.C.
   § 1292(b) .............................................................................................. *passim*
   § 1367(c)(3) ...................................................................................................13

## OTHER AUTHORITIES

Areeda & Hovenkamp, Antitrust Law (2024)
   ¶ 1702 ............................................................................................................11
   ¶ 1722c ..........................................................................................................10

## INTRODUCTION

Defendants seek certification for interlocutory appeal of the Court's February 18, 2026 summary judgment order under 28 U.S.C. § 1292(b).  In that order, this Court decided two critical questions of law on which there is substantial ground for disagreement, and the resolution of each would dramatically change and substantially narrow the upcoming jury trial.  Specifically, the Court (i) explicitly held that Plaintiffs do not need evidence of actual price discrimination to prove their alleged targeted customer markets in this actual monopolization case, and (ii) implicitly held that Plaintiffs can proceed with a tying claim without a properly defined market for the tied product.  As this Court acknowledged, the only other court to decide the first question in an actual monopolization case has reached the opposite conclusion.  And the outcome on the second question conflicts with that of numerous other courts.  There is also a common, distinctly legal character to the two questions since in both cases the Plaintiffs' position is that evidence Defendants contend is mandatory is merely optional:  a plaintiff can prove price discrimination or tied market effects if it wants to, but if it can't, it can choose to do something else.

If either or both legal questions were decided the other way, the nature and scope of the upcoming trial would fundamentally change:  Of the three sets of claims this Court identified as proceeding to trial after summary judgment, the first two would be effectively eliminated.  The Court should not empanel a jury to try a complex, month-long case when that trial (at least as currently envisioned) may well prove wholly unnecessary.  Immediate review by the Second Circuit is the appropriate and efficient path forward.

If this Court certifies one or both questions for immediate appeal, it should stay additional proceedings pending resolution of that appeal.  Considerations of judicial economy and the public interest strongly favor pausing the proceedings to avoid wasting the resources of the parties, this Court, and jury members on a trial of claims that may well be deemed legally deficient on appeal.

## ARGUMENT

## I.    CERTIFICATION FOR INTERLOCUTORY APPEAL IS WARRANTED

An order may be certified for interlocutory appeal under 28 U.S.C. § 1292(b) where (1) it "involves a controlling question of law," (2) there is "substantial ground for difference of opinion" on the answer to that question, and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).[1]  All three requirements are met here, on both questions.  First, the question whether Plaintiffs must prove their alleged targeted customer markets with evidence of actual price discrimination in an actual monopolization case is a pure question of law; the only two courts to have decided this question have disagreed on the answer; and immediate Second Circuit review will eliminate the entire "second" set of claims, as defined by the Court, that would otherwise proceed to trial.  ECF No. 1037 at 1, 44.  Second, the question whether Plaintiffs must properly define a market for the tied product to proceed with a tying claim is likewise a pure question of law; this Court's decision conflicts with that of several other courts; and immediate review will eliminate the "first" set of claims identified by the Court.  *Id.* Collectively, that would dispose of all the federal and state antitrust claims—leaving only the standalone state law claims over which the Court need not exercise supplemental jurisdiction.

---

[1] 15 U.S.C. § 29(a) does not preclude certification under 28 U.S.C. § 1292(b).  That provision applies only when "the United States is *the* complainant and equitable relief is sought."  15 U.S.C. § 29(a) (emphasis added).  Here, the United States is *a* complainant, and Plaintiff States are seeking damages.  Under analogous circumstances, the United States recognized that Section 1292(b) certification might be available.  Opp'n of U.S. to Appellant Microsoft Corp.'s Mot. for Stay Pending Appeal at 4 n.4, *Microsoft Corp. v. United States*, Nos. 98-5399, -5400 (D.C. Cir. Aug. 14, 1998).  And even if Section 29(a) applies, it applies only to the United States—not to Plaintiff States.  Nothing prevents this Court from certifying an interlocutory appeal as to the Plaintiff States and then staying the United States' claims pending resolution of that appeal.

**A.    This Court Should Certify The Targeted Customer Markets Issue**

1.     To satisfy the first prong of Section 1292(b), "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records, LLC v. Vimeo*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013). The question must also be "controlling," meaning that its resolution "could significantly affect the conduct of the action." *SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 713 (S.D.N.Y. 2025). The targeted customer markets question easily satisfies both requirements.

*First*, what evidence is required to prove targeted customer markets is a "purely legal issue[]" that "can be resolved without reference to any disputed facts." *Dupree v. Younger*, 598 U.S. 729, 735 (2023). The disagreement on this issue rests entirely on competing views of the legal standard, not on any factual disagreements. Defendants' position is that "if a plaintiff alleging actual monopoly seeks to define a market by reference to a subset of buyers of a given product, 'then that market's borders must be shown by significant differences in price' paid by those buyers compared with others outside the target set." ECF No. 797 at 3 (quoting *FTC v. Meta Platforms*, 2025 WL 3458822, at *35 (D.D.C. Dec. 2, 2025)). If Defendants' position is correct, then no fact-finding is needed because it is undisputed that Plaintiffs have no evidence of actual price discrimination against "major concert venues" in their alleged primary ticketing markets. ECF No. 1000 at 65:13-66:3.

The Court disagreed with Defendants on the law, not the facts, and embraced a different legal standard. Relying on a footnote in *Regeneron Pharmaceuticals, Inc. v. Novartis Pharma AG*, 96 F.4th 327, 340 n.8 (2d Cir. 2024)—a case not involving targeted customer markets—the Court permitted Plaintiffs to define their markets through *Brown Shoe* factors and the HMT, and then allowed targeted customer markets to be proven based on whether Defendants *could potentially* raise prices to the targeted customers. ECF No. 1037 at 5-6, 16-20. The Second Circuit's review

3

of the Court's order and its resolution of this threshold legal issue would not need to consider the factual record beyond Plaintiffs' own concession that they lack the evidence Defendants contend is dispositive.

*Second*, the targeted customer markets question is "controlling" because it "go[es] directly to [Plaintiffs'] ability to maintain some or all of [their] claims." *FHFA v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012). At this point in the case, only three sets of claims remain: (1) claims based on the amphitheaters market, (2) claims based on the venue-facing primary ticketing markets, and (3) certain state claims. ECF No. 1037 at 1, 44. If Defendants are right about what is legally required to prove targeted customer markets, then Plaintiffs' alleged venue-facing primary ticketing markets will fail because Plaintiffs have zero evidence of actual price discrimination in those markets.

That will "significantly affect the conduct of the action." *Coinbase*, 761 F. Supp. 3d at 713. Without these markets, Plaintiffs' two Section 2 monopoly claims about the alleged primary ticketing and primary concert ticketing markets, as well as Plaintiffs' Section 1 exclusive dealing claim, fail as a matter of law. *See City of New York v. Group Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011) ("To state a claim under . . . §§ 1 or 2 of the Sherman Act . . . a plaintiff must allege a plausible relevant market in which competition will be impaired."). The absence of these markets would also eliminate Plaintiff States' damages claims, which are all predicated on alleged injuries faced by Plaintiff States' residents in the primary ticketing markets. Eliminating these claims from trial, and the damages claims in particular, would substantially reduce the already numerous issues in this case—"saving the parties and the public time and money." *FHFA*, 858 F. Supp. 2d at 338; *see Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10, 2015) (certifying order where "significant portions of th[e] lawsuit" would "have to be dismissed" if "the

Court's holding . . . [wa]s incorrect"). This is "precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure." *FHFA*, 858 F. Supp. 2d at 337.

2.    Substantial ground for difference of opinion exists when either the question is "particularly difficult and of first impression for the Second Circuit," or there is "conflicting authority on the issue." *Capitol Records*, 972 F. Supp. 2d at 551. Both are true here.

As this Court recognized, targeted customer markets present "[a] point of ambiguity in antitrust law," and the government's recent practice of defining product markets based on targeted customers is "'not free from controversy.'" ECF No. 1037 at 16-17 (quoting *FTC v. Sysco*, 113 F. Supp. 3d 1, 38-40 (D.D.C. 2015)). Only one circuit court has considered such product markets—in the context of a merger case—and it produced a splintered set of opinions in which just one judge endorsed the government's targeted customer market. *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1037 (D.C. Cir. 2008) (opinion of Brown, J.). Clearly, targeted customer product markets present "particularly difficult" questions of law. *Capitol Records*, 972 F. Supp. 2d at 551.

This case adds to the controversy surrounding targeted customer markets. To start, it applies the *Brown Shoe* factors in a novel context. These factors "use qualitative evidence as a proxy for substitutability." *Meta*, 2025 WL 3458822, at *19. But here, there is no question of substitutability: All agree on the product and the set of ticketing companies that compete in Plaintiffs' alleged markets, and all agree that the product and competitors are the same regardless of whether one focuses telescopically on Plaintiffs' limited set of "target customers" or more broadly on the full area of effective competition. That leaves the *Brown Shoe* factors with no analytical work to do.

The Court's decision also departs from the only on-point decision. As the Court recognized, this is only the second time the government has even attempted to assert targeted customer markets in an actual monopolization case. In the other case—*Meta*—the district court agreed with Defendants' view that a targeted customer market must be proven through "significant differences in price." *Meta*, 2025 WL 3458822, at *35. In holding otherwise, this Court disagreed with *Meta* and created a split of authority. *See FHFA*, 858 F. Supp. 2d at 340-41 (certifying order for interlocutory appeal where it conflicted with two other district court decisions).

Importantly, while the Second Circuit has not yet considered or decided what evidence is required to prove targeted customer *product* markets, it has addressed this issue in the context of targeted customer *geographic* markets. In *United States v. Eastman Kodak Co.*, the Second Circuit held that "probative evidence of systematic price discrimination" is required where the government's theory depends on a price discrimination market. 63 F.3d 95, 107 (2d Cir. 1995). "In the absence of such proof," the Court declined to accept the government's geographic market definition. *Id.* Plaintiffs' answer to this, which the Court accepted, is that a plaintiff is only required to prove price discrimination *if it tries to do so*. It can avoid the requirement *by not trying to meet it*. The Second Circuit may very well disagree with that reasoning.

In short, the splintered *Whole Foods* decision, *Meta*, and *Kodak* all demonstrate that there is substantial ground for difference of opinion with respect to targeted customer markets in general, and targeted customer product markets in particular. There is a pressing need for authoritative appellate guidance on this novel question before proceeding to a complex and lengthy trial.

3.     Certification of the targeted customer markets question would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "[I]n practice," this factor is "closely connected" to the first factor, *Capitol Records*, 972 F. Supp. 2d at 551, and also considers

the "institutional efficiency of both the district court and the appellate court," *SEC v. Rio Tinto PLC*, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021).  This factor is met if an immediate appeal "promises to advance the time for trial or to shorten the time required for trial."  *Capitol Records*, 972 F. Supp. 2d at 551.

Reversal by the Second Circuit on the targeted customer markets question would "substantially reduce the issues to be tried."  *Coinbase, Inc.*, 2025 WL 40782, at *12.  As explained, if Defendants' view is eventually upheld by the Second Circuit, then trial on (1) Plaintiffs' monopolization claim regarding the primary ticketing market, (2) Plaintiffs' monopolization claim regarding the primary concert ticketing market, (3) Plaintiffs' Section 1 exclusive dealing claim, and (4) Plaintiff States' damages claims would have been an immensely burdensome waste of time for the parties, this Court, and the jury.  Immediate appeal is thus appropriate because "a definitive answer" on the question presented "may save the Court and parties 'vast amounts of expense and time.'"  *Capitol Records*, 972 F. Supp. 2d at 554; *see In re Dynex Capital, Inc. Sec. Litig.*, 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006) (certifying order for interlocutory appeal where "substantial resources may be expended in vain both by the parties and this Court if [the Court's] initial conclusion proves incorrect"); *United States v. American Express Co.*, 838 F.3d 179 (2d Cir. 2016) (reversing trial result based on infirmities in plaintiffs' alleged product market), *aff'd sub nom. Ohio v. Am. Express Co.*, 585 U.S. 529 (2018).

At the very least, "immediate interlocutory appeal will 'remove a cloud of legal uncertainty' over these proceedings and may 'significantly affect the parties' bargaining position," which could "hasten the termination of this litigation through settlement."  *Rio Tinto*, 2021 WL 1893165, at *3.  That alone satisfies the third factor.  *See, e.g.*, *McTigue v. Regal Cruises*, 1998

WL 289153, at *1 (S.D.N.Y. June 3, 1998); *In re Scotts EZ Seed Litig.*, 2017 WL 6398627, at *2 (S.D.N.Y. Aug. 31, 2017).

### B.    This Court Should Certify The Tied Product Market Issue

The question whether Plaintiffs' tying claim can proceed even though this Court has determined that their alleged tied product market fails as a matter of law should likewise be certified for appeal.[2] This question presents a pure, controlling question of law on which there is substantial ground for difference of opinion, and its immediate resolution will eliminate Plaintiffs' tying claim and further narrow this dispute.

1.    As Plaintiffs' tying claim has evolved, it has become increasingly extreme.  The root of the problem is that Plaintiffs do not have any meaningful empirical evidence to prove adverse effects in the tied product market.  No promoters were excluded from any market, there is no evidence that rental rates are supracompetitive, and there is certainly no evidence that "dark nights" constitute a marketwide output restriction leading to supracompetitive pricing.  If the rule of reason applies to Plaintiffs' claim, which is Plaintiffs' best case, the claim should be dead on arrival.[3]  There is no dispute that a rule of reason tying claim requires a tied product market, and this Court has already deemed invalid the only tied product market Plaintiffs alleged here.  So, in successive steps, Plaintiffs have argued that the alleged tying (a) is per se unlawful and (b) therefore the tying arrangement is presumed to harm competition such that nothing more is required.  Both steps are needed to conclude that a properly defined tied product market is unnecessary.

---

[2] This certification request is contingent on resolution of the issues raised by pending letter briefs. Only if the Court ultimately disagrees with Defendants and determines that Plaintiffs' tying claim survives despite lacking a tied product market would certification be necessary.

[3] As the Court knows, Defendants do not believe their policy of not renting Live Nation amphitheaters to rival promoters is tying, but rather a lawful refusal to deal.

Deciding whether a tying claim requires a properly defined tied product market is a pure question of law that requires no factual analysis—either a tied product market is required, as Defendants contend, or it is not. This Court has already determined that the only tied product market alleged in this case, the promotion services at "major concert venues" market, is not a properly defined antitrust market. ECF No. 1037 at 12. So if Defendants are right that a tied product market is required, Plaintiffs' tying claim cannot proceed. This question thus is not only purely legal, it is "controlling." *FHFA*, 858 F. Supp. 2d at 337. Resolution will effectively eliminate the entire first category of claims identified by the Court as destined for trial. ECF No. 1037 at 1, 44.

2.    There is substantial ground for difference of opinion on whether a properly defined tied product market is required. Numerous courts across the country have held that a tying claim requires a properly defined tied product market. ECF No. 1048 (collecting cases); ECF No. 1051 (same). That is because the first element of any tying claim is the existence of a "tying product" and a "tied product," and each of those products "must be in a separate and distinct product market." *Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016); *Allen-Myland, Inc. v. Int'l Bus. Machines Corp.*, 33 F.3d 194, 200-01 (3d Cir. 1994) ("The first inquiry in any § 1 tying case . . . [involves] a finding that two separate product markets exist and a determination of precisely what the tying and tied product markets are."). Another element, "[o]f course," is "anticompetitive effects in the tied market," ECF No. 1037 at 32 (quoting *Kaufman*, 836 F.3d at 141)—a finding that could not be made without "the tied market." By not requiring Plaintiffs to identify a properly defined tied market (and having already held that the only tied market they alleged does *not* constitute a properly defined antitrust market), the Court's decision deviated from all of those cases. *See* ECF No. 1048; ECF No. 1051.

9

Plaintiffs now assert that their tying claim is per se such that they are not required to prove anticompetitive effects in a tied product market. ECF No. 1057 at 1. That is new. While Plaintiffs have previously embraced the per se label, their summary judgment opposition argued there *was* evidence of anticompetitive effects in the tied product market. *See* ECF No. 689 at 36; ECF No. 755 at 40-41. Plaintiffs' own proposed jury instructions accept that they need to prove anticompetitive effects in the tied product market. ECF No. 1031 at 104-05. And this is the theory the Court addressed in its summary judgment decision. ECF No. 1037 at 32-33. The problem now is that there is no viable tied market in which to analyze the effects of the "specific examples of diminished quality or output" that the Court (wrongly, in Defendants' view) credited. *Id.*

Nor does calling Plaintiffs' tying claim per se eliminate the substantial ground for difference of opinion. Numerous Second Circuit cases establish that the need to properly define a tied product market does not depend on whether the alleged tying claim is per se. *See, e.g.*, *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880 F.2d 1514, 1516-19 (2d Cir. 1989) (listing "anticompetitive effects in the tied market" as an element of per se tying claim); *Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1292-93 (2d Cir. 1974) (affirming summary judgment of per se tying claim when there was no proper definition of tied product market, or evidence of anticompetitive effects in it); Areeda & Hovenkamp, Antitrust Law (2024) ¶ 1722c (discussing Second Circuit requirement of proving anticompetitive effects in tied market for per se tying claims). So even presuming that Plaintiffs' tying claim qualifies for per se treatment, the Court's decision to let it proceed without a tied product market conflicts with binding Second Circuit caselaw, as well as cases from other courts. *See, e.g.*, *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1083-84 (C.D. Cal. 2017) (explaining that, in a case involving a per se tying claim, the "complaint must define the relevant market for both the tying product and the tied

product," listing additional cases and dismissing tying claim for failure to "adequately define the tied product market"); *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178-79 (N.D. Cal. 2013) ("[Per se] tying claims fail because the SAC does not plead facts showing any negative impact on competition in the tied markets. Part of the problem is that Plaintiffs have not defined the relevant markets sufficiently to make such a showing.").[4]

More fundamentally, Plaintiffs have no unqualified right to the per se rule. The Supreme Court in *Jefferson Parish Hosp. Dist. No. 2 v. Hyde* fundamentally changed tying law when it held that only "*certain* tying arrangements" pose such "an unacceptable risk of stifling competition" that they are unreasonable "per se." 466 U.S. 2, 9 (1984) (emphasis added); *see Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 36 (2006) (*Jefferson Parish* "reject[ed] the application of a per se rule that all tying arrangements constitute antitrust violations"). The per se rule now applies only when the practice at issue lacks procompetitive or efficiency justifications. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 94-95 (D.C. Cir. 2001) (en banc) (reversing application of per se tying rule where en banc court could not "comfortably say" that the alleged tie had "so little redeeming value and that there would be so very little loss to society from its ban"

---

[4] Plaintiffs write these cases off because some did not extensively analyze the tied product market. ECF No. 1057 at 2. But that does not change the fact that the Second Circuit expressly required this element for per se tying claims. *See, e.g.*, *Gonzalez*, 880 F.2d at 1516-17. Plaintiffs' suggestion that these cases are outliers is likewise unavailing. ECF No. 1057 at 2 n.1. As Areeda makes clear, some courts do not require a substantial showing of market foreclosure as part of the anticompetitive effects elements, but they still require some showing of anticompetitive effects in the tied market. Areeda ¶ 1702. Finally, Plaintiffs cite two Second Circuit cases which, they say, do not require a tied product market. ECF No. 1057 at 1-2. But neither analyzed the merits of any per se tying claim. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001) (considering class certification, not merits of antitrust claim); *United States v. Int'l Bus. Machines Corp.*, 163 F.3d 737, 738 (2d Cir. 1998) (considering termination of consent decree entered in 1956 and noting that analysis was unique to this posture). Plaintiffs' reliance on those cases demonstrates, at most, that there is substantial ground for difference of opinion the Second Circuit should resolve before empaneling a jury.

that its invocation was justified).  Whether per se analysis applies is a question of law for the court, *not* (as Plaintiffs seem to think) every plaintiff's option.  *See id.* at 89-95; *Arizona v. Maricopa Cty. Med. Socy.*, 457 U.S. 332, 351 (1982) (characterizing the per se rule as a "rule of law"); *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 727 (6th Cir. 2019) ("Whether challenged conduct belongs in the per se category is a question of law.").  And "it is only after considerable experience with certain business relationships that courts classify [tying arrangements] as per se violations."  *Microsoft*, 253 F.3d at 90 (quoting *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9 (1979)).

Plaintiffs' alleged tie is not one of those limited "types of [] arrangements [that] are deemed unreasonable as a matter of law."  *Jefferson Parish*, 466 U.S. at 9.  This is not a textbook tying case where a seller is saying to a buyer, "if you want X, you have to take Y."  Instead, the alleged tie arises in the context of a vertically integrated concert promoter and venue operator that has a policy of refusing to deal with its rivals.  Properly understood, this is not a tie at all—but a lawful refusal to deal.  *See supra* at n.3.  But even if the arrangement could be recharacterized as a tie on the basis that someone other than the rival should effectively be treated as the buyer of amphitheater access, Plaintiffs cannot flip the script entirely and treat Defendants' policy as something presumptively *unlawful*.  And Plaintiffs have identified "no close parallel in prior antitrust cases" to support this 180.  *Microsoft Corp.*, 253 F.3d at 84.  To the contrary, relieving Plaintiffs of the obligation to show any harm to competition would pose a real "risk[] of error [or] of deterring welfare-enhancing innovation."  *Id.* at 89-90.  Should this Court allow Plaintiffs' tying claim to proceed as a per se claim, its decision would be in serious tension with *Jefferson Parish*, *Illinois Tool*, and *Microsoft*.

3.      Finally, certification of the tied product market question would "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  If the Second Circuit determines that Plaintiffs must prove a tied product market to prevail on their tying claim, then there is no need to try that claim because this Court has already determined that the alleged tied product market fails.  Resolution of this issue, along with resolution of the question discussed above, would therefore effectively eliminate the need for a jury trial on any claim besides State claims that do not rise and fall with Plaintiffs' federal claims.[5]  Immediate appeal is needed to "save the Court and parties 'vast amounts of expense and time.'"  *Capitol Records*, 972 F. Supp. 2d at 554.

## II.    STAY PENDING APPEAL IS WARRANTED

If the Court certifies its order for an interlocutory appeal, it should also stay this case during the pendency of that appeal.  Whether to "enter a stay pending an interlocutory appeal is within the discretion of the district court."  *Nam v. Permanent Mission of the Republic of Korea to the United Nations*, 2023 WL 2456646, at *1 (S.D.N.Y. Mar. 10, 2023).  "[J]udicial economy strongly favors" a stay pending appeal of "legal question[s] at the core of" the case, which is exactly the circumstance here.  *Flo & Eddie*, 2015 WL 585641, at *4; *see Coinbase*, 2025 WL 40782, at *13 (issuing stay for "largely the same reasons" as the finding that "interlocutory appeal will materially advance the termination of the action").

The other factors besides judicial economy that courts consider in this context are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

---

[5] If all federal claims are eliminated from this case, this Court could and should then decline to exercise supplemental jurisdiction over the State claims.  28 U.S.C. § 1367(c)(3); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025).

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nam*, 2023 WL 2456646, at *1. Those factors likewise support a stay here.

First, for the reasons discussed above and in the summary judgment briefing, Defendants have made a strong showing of their position on the merits. Second, absent a stay, Defendants face the irreparable harm of a burdensome trial and the associated risk that the Second Circuit will eventually reverse and render pointless several weeks of the parties, jury members, and this Court's time. *See Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018) (finding this factor satisfied where continuation of trial "would drain parties' resources and the Court's"). Third, issuance of a stay will not harm Plaintiffs. If Plaintiffs prevail on appeal, they will "lose[] not a dime's worth of" monetary and other relief "by holding up until the legal issue is resolved." *Flo & Eddie*, 2015 WL 585641, at *4. Fourth, the public interest weighs in favor of a stay. "It would be a waste of resources—the parties', the Court's, and the public's—to proceed to a trial that turns out to be a nullity." *Ferring*, 343 F. Supp. 3d at 292.

## CONCLUSION

The Court should certify its February 18, 2026 summary judgment order for interlocutory appeal and stay proceedings in this matter pending resolution of the appeal.

Dated:  February 22, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

CRAVATH, SWAINE & MOORE LLP

_____

Andrew M. Gass (admitted *pro hac vice*)
Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
David R. Marriott
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

_____

Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Robin L. Gushman, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 4,749 words.  In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated:    February 22, 2026
         New York, New York

_____
Robin L. Gushman

16