# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C.,<br><br>*Defendants.* | Case No. 1:24-cv-03973-AS<br><br>**ORAL ARGUMENT REQUESTED** |

# MEMORANDUM OF LAW IN SUPPORT OF
# <u>DEFENDANTS' ADDITIONAL MOTIONS *IN LIMINE*</u>

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.  MIL #14: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT THAT
    LIVE NATION HAS HARMED COMPETITION BY OVERPAYING ARTISTS..........1

    A.  The Court Should Exclude Evidence and/or Argument That Live Nation
    Acted Anticompetitively by "Overpaying" Artists....................................................2

    B.  The Court Should Exclude Evidence and/or Argument That Live Nation's
    Supposed Overpayments to Artists Constitute Barriers to Entry............................4

II. MIL #15: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT
    SUGGESTING THAT LIVE NATION'S ACQUISITION OF SONGKICK
    ASSETS WAS ANTICOMPETITIVE OR UNLAWFUL ..................................................5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Arista Recs., Inc. v. Launch Media, Inc.*,
  2006 WL 2591086 (S.D.N.Y. Sep. 8, 2006)............................................................6

*Chisholm v. Sloan-Kettering*,
  2011 WL 2015526 (S.D.N.Y. May 13, 2011) .........................................................4

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
  2016 WL 3457178 (C.D. Cal. May 11, 2016) .........................................................5

*Crigger v. Fahnestock & Co.*,
  2005 WL 857368 (S.D.N.Y. Apr. 14, 2005)...........................................................6

*Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*,
  812 F.2d 786 (2d Cir. 1987)....................................................................................4

*LPD New York, LLC v. Adidas Am., Inc.*,
  2024 WL 4467187 (E.D.N.Y. Oct. 10, 2024)..........................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................2, 3

*Roberts v. Ground Handling, Inc.*,
  2007 WL 2753862 (S.D.N.Y. Sep. 20, 2007)..........................................................4

*U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Loc. Union No. 3, AFL-CIO*,
  2002 WL 91625 (S.D.N.Y. Jan. 23, 2002) .............................................................4

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001)..................................................................................5

*Valassis Communs., Inc. v. News Corp.*,
  2019 WL 802093 (S.D.N.Y. Feb. 21, 2019)............................................................3

*Virgin Atl. Airways Ltd. v. Brit. Airways PLC*,
  257 F.3d 256 (2d Cir. 2001)....................................................................................2

*Weyerhaeuser Company v. Ross-Simmons Hardwood Lumber Co.*,
  549 U.S. 312 (2007)............................................................................................2, 3

### RULES

Fed. R. Evid. 401 ...............................................................................................3, 5, 6

Fed. R. Evid. 402 ...........................................................................................................3, 5

Fed. R. Evid. 403 ...........................................................................................................5, 6

Fed. R. Evid. 408 .......................................................................................................5, 6, 7

## OTHER AUTHORITIES

Live Nation Entertainment, "Live Nation Acquires Songkick Assets; Companies
   Settle Litigation" (Jan. 12, 2018), *available at*
   https://www.prnewswire.com/news-releases/live-nation-acquires-songkick-
   assets-300582116.html..............................................................................................6

Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. ("Defendants") respectfully submit this memorandum of law in support of their additional motions *in limine*.[1]

## I.    MIL #14: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT THAT LIVE NATION HAS HARMED COMPETITION BY OVERPAYING ARTISTS

At the February 11, 2026 deposition of Live Nation's President and CEO, Michael Rapino, Plaintiffs' questions indicated they may intend to pursue an "overpaying" theory that was not alleged in the Complaint and could not plausibly be raised even though this has been a narrative that rival promoters have advanced for years. *See* Ex. 1, Rapino Tr. (Excerpted) 208:12–209:20; PX0376 (JX-3028).[2]  Plaintiffs attempted to elicit testimony that Live Nation uses money from its various business segments to fund large payments to artists in connection with concert promotion services. *See* Ex. 1 at 198:4–208:6, 208:12–209:20, 210:9–212:15; PX0985 (JX-3026); PX0990 (JX-3027); PX0376 (JX-3028); PX0369 (JX-3029).  Plaintiffs also probed the profit margins of Live Nation's various business segments and sought to elicit testimony that the profitability of those other business segments allows Live Nation to operate at a low-margin in its concert promotion segment, offering artists payments that surpass what Live Nation could expect to earn on a show. *See, e.g.*, Ex. 1 at 200:15–201:6, 209:4–212:15.

Defendants raised this with Plaintiffs on a February 12, 2026 meet-and-confer call, and again on a February 28, 2026 meet-and-confer call.  On the February 28 call, Plaintiffs claimed that they do not intend to argue that these payments are anticompetitive in their own right, but that they are supposedly relevant to showing barriers to entry and the ability of other companies to

---

[1] As described below, Defendants became aware that Plaintiffs intended to offer evidence and/or argument on the issues discussed in these motions after the February 10, 2026 deadline to file motions *in limine*.

[2] In accordance with the Court's February 9, 2026 Order, ECF No. 1011, Defendants will separately submit an accompanying declaration and exhibit to the Court via electronic transmission.

compete.  It is not entirely clear what Plaintiffs plan to do, but there is no valid theory that would allow Plaintiffs to offer evidence or argument that Live Nation's "overpaying" artists contributes in any way to proof of liability in this litigation.  Such evidence and/or argument should be precluded.

### A.    The Court Should Exclude Evidence and/or Argument That Live Nation Acted Anticompetitively by "Overpaying" Artists

Concert promoters are, among other things, "talent buyers" who bid for the opportunity to promote a tour by offering guarantees, splits, and other financial terms to artists.  In general, the more intense competition is, the more promoters need to bid to buy a tour.  Competition among Live Nation, AEG Presents, and other concert promoters is very intense, especially for the artists who play the larger venues at issue in this case.  The undisputed evidence shows that artists are making more money than ever, and that artists playing so-called "major concert venues" have not been underpaid or suffered harm in any other way as a result of Live Nation's supposed conduct. *See* Hill Rpt., Fig. 3 (ECF No. 693-32); Defs.' MSJ at 30–31 (ECF No. 689); Defs.' MSJ Reply at 12–13 (ECF No. 797).  Faced with this reality, Plaintiffs appear poised to pivot to a new theory that they have never before raised: that Live Nation is somehow harming competition by paying artists too much.

In almost all cases, price competition is procompetitive and lawful.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) ("[C]utting prices in order to increase business often is the very essence of competition."); *Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 257 F.3d 256, 269 (2d Cir. 2001) ("We must be mindful that low prices are a positive aspect of a competitive marketplace and are encouraged by the antitrust laws.").  The same principle applies when price competition means bidding up prices to secure a customer's business.  *See Weyerhaeuser Company v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320–21 (2007).

There is a limited exception to that rule where a competitor engages in "predatory pricing" or "predatory bidding." Predation, in either form, requires a plaintiff to allege and prove specific elements that are intended to create a clear separation between aggressive yet appropriate price competition and unlawful behavior: "(1) the prices complained of are below an appropriate measure of [the defendant's] costs and (2) the [defendant] had … a dangerous probability[] of recouping its investment in below-cost prices." *Valassis Communs., Inc. v. News Corp.*, 2019 WL 802093, at *5 (S.D.N.Y. Feb. 21, 2019) (internal quotations omitted). "Predatory pricing and predatory bidding claims are analytically similar, and are both governed by the price-cost test." *Id.*; *see also Weyerhaeuser*, 549 U.S. at 320–21.

Plaintiffs' questioning of Mr. Rapino suggests they intend to argue that Live Nation bids up the price for the rights to promote an artist's show or tour to levels that competitors cannot match, thereby excluding them from the market. But Plaintiffs have not pled or attempted to prove predatory bidding, nor could they. They have never developed any proof that even addresses, let alone satisfies, the price-cost test. And because there is no predation claim in this case, it would be highly prejudicial to allow Plaintiffs to introduce evidence or argument suggesting that Live Nation "overpays" artists to exclude competitors, or that paying high guarantees and revenue shares to artists would be in any way wrongful. Such evidence is irrelevant and inadmissible in relation to the pleaded claims. *See* Fed. R. Evid. 401, 402. Allowing such evidence would also create the risk of "mistaken inferences," which—in a seminal predatory pricing case—the Supreme Court has explained are "especially costly, because they chill the very conduct the antitrust laws are designed to protect." *Matsushita*, 475 U.S. at 594.

Courts routinely exclude evidence in support of new theories on the eve of trial. "To require [the] defendant to incur additional costs and to change its strategy on the eve of trial

because [the] plaintiff has concocted a new theory … is simply not fair and would, in a real sense, unduly prejudice [the] defendant." *Roberts v. Ground Handling, Inc.*, 2007 WL 2753862, at *5 (S.D.N.Y. Sep. 20, 2007); *see also LPD New York, LLC v. Adidas Am., Inc.*, 2024 WL 4467187, at *3 (E.D.N.Y. Oct. 10, 2024) ("[P]laintiffs have been prevented from asserting new theories of liability during or shortly before trial where doing so would require the parties to undertake further discovery and to either litigate a motion for summary judgment or proceed to trial on these claims[.]" (internal quotations omitted)); *Chisholm v. Sloan-Kettering*, 2011 WL 2015526, at *5 (S.D.N.Y. May 13, 2011) (granting the defendants' motion to exclude evidence and jury instructions relating to "a new theory of recovery [asserted] for the first time on the eve of trial").

Given their failure to plead and inability to prove predation, the Court should exclude all evidence and argument suggesting that Live Nation acted unlawfully by overpaying artists.

## B.    The Court Should Exclude Evidence and/or Argument That Live Nation's Supposed Overpayments to Artists Constitute Barriers to Entry

Plaintiffs have suggested they may also argue that Live Nation's artist payments serve as a barrier to entry or expansion for rivals who cannot match them.  Plaintiffs did not identify the alleged market in which these payments supposedly serve as barriers to entry, but it could only be the "promotion services to artists at major concert venues" market, in which Plaintiffs alleged that artists were the customers.  The Court found that Plaintiffs failed to define such a market and dismissed all claims based on it.  ECF No. 1037 at 7–12.  Any evidence of supposed barriers to entry—which are a means of assessing monopoly power in a properly defined market—are irrelevant given the Court's rejection of the alleged market in which they purportedly occurred. *See U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 2002 WL 91625, at *6 (S.D.N.Y. Jan. 23, 2002) ("Whether barriers to entry exist is a fact-intensive question that goes to whether defendants have power in a market…." (citing *Int'l Distrib. Ctrs., Inc. v.*

*Walsh Trucking Co.*, 812 F.2d 786, 792–93 (2d Cir. 1987))); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 82 (D.C. Cir. 2001) ("Whether there are significant barriers to entry cannot, of course, be answered absent an appropriate market definition; thus, plaintiffs' failure on that score alone is dispositive.").  And even if this evidence were marginally relevant, the substantial risk of jury confusion and prejudice to Defendants of introducing evidence of supposed entry barriers in a market that is no longer in the case substantially outweighs any minimal probative value.  Fed. R. Evid. 401, 402, 403.

The Court should exclude all evidence and argument suggesting that Live Nation's artist payments constitute a barrier to entry.

## II.   MIL #15: MOTION TO EXCLUDE EVIDENCE AND/OR ARGUMENT SUGGESTING THAT LIVE NATION'S ACQUISITION OF SONGKICK ASSETS WAS ANTICOMPETITIVE OR UNLAWFUL

Defendants respectfully move *in limine* to exclude any evidence or argument suggesting that Live Nation's 2018 acquisition of certain assets of Songkick—a small company originally known as CrowdSurge—was anticompetitive or unlawful.  Such evidence is irrelevant, highly prejudicial, and runs afoul of Rule 408's prohibition on the use of settlements to prove liability or wrongdoing.

Plaintiffs' exhibit list contains certain decade-old communications involving Live Nation executives discussing a potential acquisition of Songkick.  *See* PX0880 (2015 internal Live Nation email correspondence).  Songkick was a company involved in "artist presales."  It did not bid for ticketing contracts from venues.  Its business was to work with artists to try to get tickets for the shows they were playing, and sell those tickets directly to the public, notwithstanding the exclusive ticketing contracts that typically encompassed the tickets at issue.  *See Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2016 WL 3457178, at *1–2 (C.D. Cal. May 11, 2016).  Songkick and Live Nation wound up in significant litigation against each other starting in December 2015.  The case

eventually settled in 2018, and as part of that settlement, Live Nation acquired certain Songkick assets. *See, e.g.*, Live Nation Entertainment, "Live Nation Acquires Songkick Assets; Companies Settle Litigation" (Jan. 12, 2018), *available at* https://www.prnewswire.com/news-releases/live-nation-acquires-songkick-assets-300582116.html.

On a February 28, 2026 meet-and-confer call, Plaintiffs indicated that they intend to introduce evidence of the Songkick acquisition. It appears they will present evidence of Live Nation's 2015 Songkick-related discussions to suggest that Live Nation's acquisition of Songkick assets—three years later as part of the settlement of complex litigation—was anticompetitive. Defendants seek an order precluding such evidence and related argument. As an initial matter, evidence or argument related to Live Nation's acquisition of Songkick's assets is irrelevant under Rule 401 and prejudicial under Rule 403. *See Arista Recs., Inc. v. Launch Media, Inc.*, 2006 WL 2591086, at *1 (S.D.N.Y. Sep. 8, 2006) (excluding evidence of unrelated settlements and licensing arrangements under Rules 401 and 403). Allowing Plaintiffs to go down this path would result in a trial-within-a-trial about what was happening in that separate litigation, how it was resolved, and how the ultimate acquisition had nothing to do with the evidence from three years earlier that Plaintiffs now seek to rely on. That sideshow would substantially risk confusing and misleading the jury.

Moreover, introduction of the Songkick acquisition, or evidence or argument that said acquisition was anticompetitive or unlawful, violates Rule 408's prohibition on the use of settlements to demonstrate liability or wrongdoing. Fed. R. Evid. 408; *see also Crigger v. Fahnestock & Co.*, 2005 WL 857368, at *1 (S.D.N.Y. Apr. 14, 2005) ("Rule 408 excludes evidence of compromises or compromise negotiations tending to prove liability for, or invalidity of, a claim. This rule is applicable regardless of which party offers the evidence … [and] applies

6

with equal force whether the settlement involves the litigants or a litigant and a third party."). Plaintiffs apparently intend to argue that Live Nation's acquisition of Songkick's assets is part of an alleged pattern of anticompetitive behavior, and thus probative of liability in this proceeding. Use of the Songkick acquisition, which was procured as part of an unrelated settlement related to conduct not at issue here, is therefore precluded by Rule 408.

*[signatures on following page]*

Dated: March 2, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

_____

Alfred C. Pfeiffer (admitted *pro hac vice*)
    *Co-Lead Trial Counsel*
David R. Marriott
    *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

CRAVATH, SWAINE & MOORE LLP

_____

Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

8

## **CERTIFICATE OF COMPLIANCE**

I, Robin L. Gushman an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") and Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 2,040 words.  In making this calculation, I have relied on the word count of the word-processing program used to prepare the document.

Dated:    March 2, 2026
          New York, New York

                                            _Robin L. Gushman_
                                            Robin L. Gushman

## **RULE 6.4 CERTIFICATE OF COMPLIANCE**

I, Robin L. Gushman, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 6.4 of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), that prior to filing the accompanying motions in limine, I attempted in good faith to confer with Plaintiffs' counsel regarding the issues raised in the motion in an effort to resolve them without the Court's intervention.  Despite these efforts, the parties were unable to reach agreement on all issues, and the Court's resolution is therefore required.

Dated:    March 2, 2026
          New York, New York

_____
    Robin L. Gushman