UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>LIVE NATION ENTERTAINMENT, INC., and<br>TICKETMASTER L.L.C.,<br><br>  Defendants. | Case No. 1:24-cv-03973-AS |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' ADDITIONAL MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

I.   MIL #14: Defendants' Payments to Artists Are Relevant to a Fair Understanding of the
Concert Industry and Plaintiffs' Claims ................................................................................. 1

II.  MIL #15: Defendants' Acquisition of Songkick Is Relevant to Plaintiffs' Ticketing Claims . 3

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arista Recs., Inc. v. Launch Media, Inc.*,
2006 WL 2591086 (S.D.N.Y. Sept. 8, 2006) ........................................................................ 8

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
2016 WL 3457178 (C.D. Cal. May 11, 2016) ...................................................................... 8

*Duplan Corp. v. Deering Milliken, Inc.*,
594 F.2d (4th Cir.1979) ......................................................................................................... 5

*F.T.C. v. Actavis, Inc.*,
570 U.S. 136 (2013).............................................................................................................. 4

*Freedom Holdings, Inc. v. Spitzer*,
357 F.3d 205 (2d Cir. 2004) ................................................................................................. 5

*FTC v. Meta Platforms, Inc.*,
2024 WL 4772423 (D.D.C. Nov. 13, 2024).......................................................................... 7

*L.G. Balfour Co. v. FTC*,
442 F.2d 1 (7th Cir. 1971).................................................................................................... 6

*Standard Oil Co. v. United States*.
221 U.S. 1 (1911).................................................................................................................. 6

*U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Loc. Union No. 3, AFL-CIO*,
2002 WL 91625 (S.D.N.Y. Jan. 23, 2002) ........................................................................... 2

*United States v. duPont de Nemours & Co.*
353 U.S. 586 (1957).............................................................................................................. 7

*United States v. Grinnell Corp.*
384 U.S. 563 (1966).............................................................................................................. 6

*United States v. Microsoft Corp.*
253 F.3d 34 (D.C. Cir. 2001) ............................................................................................... 8

*United States v. Singer Mfg. Co.*
374 U.S. 174 (1963).............................................................................................................. 5

**Other Authorities**

Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ................................................................ 6

**Rules**

Fed. R. Evid. 401 ........................................................................................................................... 7

Fed. R. Evid 403 ........................................................................................................................... 7

Fed. R. Evid. 408 ........................................................................................................................... 5

Weeks after the deadline for such motions and one day into trial, Defendants filed two additional motions in limine seeking to exclude highly relevant, admissible evidence. *See* ECF No. 1104 ("Mot."). Defendants' motions mischaracterize the evidence at issue as well as the purpose for which Plaintiffs seek to admit it. Accordingly, the Court should reject both of Defendants' belated motions as untimely and unsupported.

## I.    MIL #14: Defendants' Payments to Artists Are Relevant to a Fair Understanding of the Concert Industry and Plaintiffs' Claims

As Plaintiffs made clear on prior meet and confers, Plaintiffs do not intend to argue Defendants engaged in anticompetitive conduct by "bid[ding] up the price for the rights to promote an artist's show or tour" or that such payments were "wrongful." Mot. at 3.[1] Accordingly, Defendants' motion to exclude argument related to a predation claim should be denied as moot.

To the extent Defendants' motion goes further and seeks to exclude all evidence or discussion of Defendants' payments to artists, it should be denied. Defendants contend that evidence of these payments is relevant only to an artist-facing promotions market that Plaintiffs are no longer pursuing. *See* Mot. at 4-5. But evidence and argument concerning the substantial guaranteed payments that promoters (including Live Nation) make to secure artists' tours remain relevant for several reasons.

*First*, such evidence is relevant to explaining to the jury the role of promoters in the live entertainment industry. The jury will hear about the important role played by concert promoters throughout the trial, and as the Court explained in its summary judgment ruling, one key function

---

[1] Defendants cite to the deposition of Michael Rapino to suggest Plaintiffs are pursuing a predatory pricing theory. But a fair reading of that deposition excerpt reveals that none of the questions asked about whether Defendants' payments to artists fell below any measure of costs. Mot., Ex. 1. Plaintiffs' questions instead related to the relative margins of Defendants' business segments. *Id.*

of promoters is to "absorb financial risk" by "pay[ing] artists large lump-sum payments in exchange for the rights to promote their shows." ECF No. 1037 at 2. The jury should be permitted to hear evidence of how Live Nation's promotions business makes these payments to secure artists, which it then books at major concert venues.[2]

*Second*, evidence of Live Nation's payments to artists is relevant to show the substantial barriers to entry in promotion services. As the Court explained, Plaintiffs have put forward evidence that the major concert venues relevant to Plaintiffs' ticketing claims can turn to only certain "specialized vendors," large promoters like Live Nation, for concerts. *See id.* at 23. In large part, this is because only companies like Live Nation can "shoulder greater risk" of promoting the types of shows that play at such venues. *Id.* Evidence of how Live Nation is able to secure these artists to then book at major concert venues is highly relevant to explain why there are few promoters major concert venues can turn to for concerts, and why Live Nation, as a dominant supplier of concerts to those venues, has been able to effectively condition access to content. *See id.* Defendants are correct that barriers to entry are relevant to "assessing monopoly power in a properly defined market." Mot. at 4. But that is not the *only* reason such evidence may be relevant. None of the cases cited by Defendants are to the contrary.[3]

*Third*, Live Nation's payments to artists are relevant to Plaintiffs' amphitheater monopolization claim, because Plaintiffs intend to put forward evidence that Live Nation directed employees not to increase guaranteed payments offered to artists looking for "True Amp Tours." *See* ECF No. 257 ¶ 116.

---

[2] In their opening statement, Defendants highlighted the upfront payments and guarantees they make to artists. 3/3 Tr. 133:10-19.

[3] For example, *US Information Systems, Inc.* has no bearing on this question. If anything, it holds the existence of barriers to entry do not turn on proper market definition, ruling that "[w]hether barriers to entry exist is a fact-intensive question that goes to whether defendants have power in a market rather than to what the market is. *U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 2002 WL 91625, at *6 (S.D.N.Y. Jan. 23, 2002) (discussing market power (not monopoly power) for a section 1 claim) (internal citations omitted).

*Finally*, Plaintiffs will put forward testimony and documents that show how Live Nation's businesses interrelate and operate, including how money flows across those businesses to strengthen Live Nation's position across the live entertainment industry. Such evidence is essential for the jury to understand Defendants' market power and conduct, including how that conduct has effects in multiple relevant markets. Relatedly, Defendants have already put forward the argument in their opening that Live Nation earns low operating margins, and that Live Nation's concert promotions profit margins, in particular, are modest. 3/3 Tr. 149:1-13. Plaintiffs should be permitted to put those margins in full context, including how they are calculated (in light of payments to artists) and how Live Nation is able to fund such payments through profits generated by other business segments.

## II.    MIL #15: Defendants' Acquisition of Songkick Is Relevant to Plaintiffs' Ticketing Claims

Defendants' acquisition of Songkick is not new to this case. In their Amended Complaint, Plaintiffs alleged Defendants maintained their monopoly power in part through acquisitions of competitors, including companies it viewed as "nascent" threats. *See, e.g.*, ECF No. 257 ¶¶ 6, 69, 117-137. Defendants "pursued a strategy of acquiring nascent threats and neutralizing rivals" by "acquiring promoters, amphitheaters, festivals, other venues, and even small ticketers, as well as entering into long-term exclusive booking contracts with many venues." *Id.* ¶ 117. Songkick was one of these "relatively small" competitors, *id.*, which was acquired as part of the settlement of Songkick's antitrust lawsuit against Defendants. *Id.* ¶ 108 (discussing "alternative ticket distribution methods" such as through fan clubs, and how Ticketmaster "acquir[ed] one such third-party provider of tickets to fan clubs in 2018" as part of an effort to "curtail artists' ability to use third-party providers for fan club sales—at the expense of artists' choice and their relationships with fans"); *see also id.* ¶ 177 (explaining Defendants' limitations on ticket sales to

3

artist fan clubs caused fan clubs to not "represent reasonably close substitutes for most fans today, although they could in the future but for Ticketmaster's anticompetitive conduct").[4]

Defendants' motion raises entirely new and different concerns than the ones Defendants raised on the parties' meet and confer. There, Defendants' purported concern was a related criminal investigation and subsequent proceedings, for which Defendants' former employees pled guilty.[5] Only shortly before filing their motion did Defendants, for the first time, contend that *all* evidence related to Defendants' acquisition of Songkick/Crowdsurge should be excluded. Defendants' belated motion in limine should be denied as untimely and improper.

On the merits, Defendants are also wrong. Defendants first attempt to sidestep antitrust liability simply because Defendants' acquisition occurred as part of a settlement of a private lawsuit. But that position finds no support in the caselaw. To be clear, Plaintiffs do not intend to rely upon Defendants' settlement of Songkick's antitrust claims to prove the different claims advanced by Plaintiffs here. Plaintiffs do not intend to even refer to a "settlement" with Songkick at any time during trial. Accordingly, there is no risk of "a trial-within-a-trial about what was happening in that separate litigation." Mot. at 6. Instead, Plaintiffs intend to offer evidence of the effect on competition of the Songkick acquisition, which does not turn on any aspect of the Songkick litigation.

In any event, the Supreme Court has made clear that defendants cannot inoculate an acquisition from antitrust scrutiny by carrying it out through a "settlement." *See F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 149 (2013) (holding that private litigation settlement could violate the antitrust laws). This Circuit has squarely rejected Defendants' argument that their Sherman Act

---

[4] In his report, Dr. Hill also discussed fan clubs, such as the ones ticketed by Songkick, as an alternative channel for primary ticket distribution. Hill Opening Rpt. ¶ 44-45, ECF No. 717-1.
[5] Plaintiffs do not intend to offer evidence related to this topic at trial.

violation is "immunized because the anticompetitive scheme is embodied in the settlement of a lawsuit." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 227 n.21 (2d Cir. 2004) ("Appellees have not argued that because the MSA is a settlement of a lawsuit, it somehow achieves an immunity not otherwise available. Of course, such an argument would be fruitless" because "Sherman Act violations are generally not immunized because the anticompetitive scheme is embodied in the settlement of a lawsuit.") (citing *United States v. Singer Mfg. Co.,* 374 U.S. 174 (1963) (holding that settlement agreements between the Singer Company and its Italian and Swiss competitors violated the Sherman Act)); *Duplan Corp. v. Deering Milliken, Inc.*, 594 F.2d 979, 981 (4th Cir.1979) (per curiam) (affirming district court's finding that settlement agreement "was the core of a scheme to stabilize and maintain production royalties . . . and to monopolize the United States market").

Moreover, Defendants' reading of FRE 408 is incorrect. FRE 408(a) is intended only to guard against the admission of settlement negotiations and terms to prove or disprove the validity or amount of a disputed claim. Plaintiffs are not seeking to use the settlement as an admission by Defendants of Songkick's allegations in that suit. In any event, the sole exhibit Defendants identify and seek to exclude, PX0880, is an email from February 2015, pre-dating the Songkick lawsuit by ten months. There is no indication on the face of the document that it has anything to do with subsequent litigation in December 2015. Instead, the document discusses an acquisition strategy designed to avoid Songkick "disrupt[ing] the ticketing market." PX0880.

Defendants also contend their "acquisition of Songkick's assets is irrelevant." Mot. at 6. Again, that is incorrect. Monopolists can be held liable for "unlawful and exclusionary practices" that include the "acquisitions" of competitors and potential competitors as a way of eliminating the "problem of competing" and "any possibility [that] an outbreak of competition [] might have

occurred" because such "acquisitions . . . perfect[] the monopoly power to exclude competitors."

*United States v. Grinnell Corp.*, 384 U.S. 563, 567-68, 571-72, 576 (1966) (affirming liability in

part based upon defendants' acquisition of over thirty competitors "[o]ver the years"; further

holding that such conduct "in building the empire" thus "presents no major problem" in meeting

Section 2's requirement of "willful acquisition or maintenance of [monopoly] power"); *see, e.g.*,

*Standard Oil Co. v. United States*, 221 U.S. 1, 31-32 (1911) (relying on evidence covering "a

period of nearly forty years," and affirming liability under the Sherman Act because defendants

had "purchased and obtained interests through stock ownership and otherwise," ultimately

"acquir[ing] substantially all but three or four of the thirty-five or forty oil refineries"); *cf. L.G.*

*Balfour Co. v. FTC*, 442 F.2d 1, 18, 23 (7th Cir. 1971) (defendant's acquisition of competitor

corporation was found to constitute monopolization under FTC Act); *United States v. duPont de*

*Nemours & Co.*, 353 U.S. 586, 598-99 (1957) (affirming liability for the anticompetitive use of a

series of acquisitions stretching back almost half a century prior to the enforcement action); *see*

*also* Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 701 ("§ 2 of the Sherman Act

independently encompasses concerns about a monopolist's acquisition of a potential competitor"

and it is "our recommendation that in the special case of a monopolist, the potential competition

bar should be lowered so as to make presumptively anticompetitive a monopolist's acquisition of

any firm that has the economic capabilities for entry and is a more-than-fanciful possible entrant"

(quoting *FTC v. Meta Platforms, Inc.*, 2024 WL 4772423 at *28 (D.D.C. Nov. 13, 2024))

(internal quotation marks omitted).

Defendants now suggest that Songkick, which Defendants previously touted as "one of

the world's largest concert discovery and artist ticketing platforms," is irrelevant.[6] They claim

---

[6] Live Nation Acquires Songkick Assets, https://www.prnewswire.com/news-releases/live-nation-acquires-songkick-assets-300582116.html (Jan. 12, 2018).

that because Songkick was "a company involved in 'artist presales'" and "did not bid for

ticketing contracts from venues," it did not operate in the same market as Defendants. Mot. at 5.

For support, Defendants misleadingly cite to a court opinion from its private litigation with

Songkick. But there, the court sided with Live Nation and Ticketmaster, rejecting Songkick's

narrower proposed market ("artist presale ticketing services"), and holding that Songkick

operated within a broader ticketing market not "separate from the type of general ticketing

services that Defendants engage in." *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2016 WL

3457178 at *2 n.2 (C.D. Cal. May 11, 2016). And even if Songkick operated only in an adjacent,

related ticketing market, anticompetitive conduct that had the effect of diminishing the

competitive threat posed by such a competitor would still be relevant to Plaintiffs' Section 2

ticketing claims. *Cf. United States v. Microsoft Corp.*, 253 F.3d 34, 54 (D.C. Cir. 2001)

("Nothing in § 2 of the Sherman Act limits its prohibition to actions taken against threats that are

already well-developed enough to serve as present substitutes.") (rejecting argument that

plaintiffs could not advance a Section 2 claim based on suppression of middleware technology

that was outside the monopolized market). Defendants cite a single case to support their

argument under FRE 401 and 403. Mot. at 6. But that one-page opinion contains no analysis and

involved defendants seeking to admit evidence of their own licensing arrangements with other

record companies that were part of settlements in the *very same* action. *Arista Recs., Inc. v.

Launch Media, Inc.*, 2006 WL 2591086, at *1 (S.D.N.Y. Sept. 8, 2006) (not elaborating on the

purpose for which such settlements were being offered).

For the reasons above, Plaintiffs respectfully request the Court deny Defendants' motion in limine as both untimely and unfounded.

/s/ Bonny Sweeney
BONNY SWEENEY
*Co-Lead Trial Counsel*
David Dahlquist
*Co-Lead Trial Counsel*
David M. Teslicko
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Email:Bonny.Sweeney@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Amanda J. Wentz
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
Fax: (501) 682-8118
Email:  amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

/s/ Brent K. Nakamura
Brent K. Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 9200-6
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

/s/ Victoria Maria Orton Field
Victoria Maria Orton Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: victoria.field@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Elizabeth G. Arthur
Elizabeth G. Arthur (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Elizabeth.arthur@dc.gov
*Attorney for Plaintiff District of Columbia*

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Jesse Moore
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

/s/ Noah Goerlitz
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 281-5164
Email: noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

/s/ Christopher Teters
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

/s/ Mario Guadamud
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

/s/ Schonette J. Walker
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

*/s/ Lee Morris*
Lee Morris (admitted pro hac vice)
Special Assistant Attorney General
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-9011
Email: Lee.Morris@ago.ms.gov
*Attorney for Plaintiff State of Mississippi*

*/s/ Justin C. McCully*
Justin C. McCully (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

*/s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

*/s/ Zachary Frish*
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

*/s/ Andrew F. Esoldi*
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

*/s/ Jonathan Hatch*
Jonathan Hatch
Assistant Attorney General
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Evan Crocker*
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General, Division Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

/s/ Francisco Benzoni
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

/s/ Sarah Mader
Sarah Mader (admitted *pro hac vice)*
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

/s/ Cameron R. Capps
Cameron R. Capps (admitted *pro hac vice*)
Deputy Attorney General
Consumer Protection
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma  73105
Telephone:  (405) 522-0858
Fax:  (405) 522-0085
Email: Cameron.Capps@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma*

/s/ Gina Ko
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

/s/ Joseph S. Betsko
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

/s/ Paul T.J. Meosky
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

12

/s/ *Jared Q. Libet*
Jared Q. Libet (admitted *pro hac vice*)
Assistant Deputy Attorney General
Office of the Attorney General of South
Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South
Carolina*

/s/ *Jacob R. Dempsey*
By: Jacob R. Dempsey (admitted *pro hac
vice*) Assistant Attorney General
1302 East Highway 1889, Suite 1
Pierre SD 57501-8501
Email: jacob.dempsey@state.sd.us
Telephone: (605) 773-3215
(SD Bar No. 5025)
*Attorney for Plaintiff State of South Dakota*

/s/ *Hamilton Millwee*
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ *Diamante Smith*
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust
Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
*Attorney for Plaintiff State of Texas*

/s/ *Marie W.L. Martin*
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

/s/ *Sarah L. J. Aceves*
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ *David C. Smith*
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

/s/ *Ashley A. Locke*
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

13

*/s/ Douglas L. Davis*
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

*/s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

*/s/ William T. Young*
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*

14

**<u>Certificate of Compliance</u>**


In accordance with Local Civil Rule 7.1(c), and Rule 8(c) of this Court's Individual Practices in Civil Cases, I certify that the word count of this memorandum of law is 2,309 words, which includes footnotes but excludes the caption, any index, table of contents, table of authorities, signature blocks, or any certificates. This certificate is made in reliance on the word count of the word-processing program used to prepare the document.


*/s/ David M. Teslicko*

*Attorney for Plaintiff United States of America*


15