```
                                                                  1
-------------------------------------------------




United States of America et al. v.
Live Nation Entertainment, Inc. et al


      BSE-DOJ-00412148

Certified Transcription of Audio Recording
dated April 12, 2021


------------------------------------------
```

```
Transcribed Stenographically

By:  Jaclyn Urzia, RPR, CRR

Job No. 2025-1005856
```

Ex. No
PX0992
1:24-cv-03973

2

MICHAEL RAPINO: You've decided not to do that?

JOHN ABBAMONDI: There is no formal right of refusal.

MICHAEL RAPINO: I know. You -- I said informal. Last --

JOHN ABBAMONDI: Yeah, I'm sorry, I misheard you.

MICHAEL RAPINO: You spit out those words --

JOHN ABBAMONDI: Yeah.

MICHAEL RAPINO: You do deserve it. So I guess we don't.

JOHN ABBAMONDI: You -- it's not a "deserve" or "not deserve."

You know, we felt that this is not strictly an economic issue for us or other -- it's a technology and branding issue for us as well.

On the economics, Michael, I think it would have been a bigger gap than we would have been able to close. It's an eight-figure gap.

MICHAEL RAPINO: Don't worry about my -- so, no, the answer is no,

we didn't get that.

So anyways, I've got to move on. I don't have time for this. So you do all this another year, so you'll have to figure that out with our guys.

JOHN ABBAMONDI: Our term of the contract ends as we discussed. It ends this fall?

MICHAEL RAPINO: Coming up this fall.

JOHN ABBAMONDI: This fall? This year, calendar '21?

JOE BERCHTOLD: Michael, the debate is over last year whether or not we got the -- whether or not, per the terms of the contract, we got the assets that we were supposed to get. We don't think we did, and they think they did, based on the definition of the word "events," which we took to mean ticketed events, and they took to mean events, whether or not they're ticketed. Right, John?

JOHN ABBAMONDI: Well, I think there's -- so there's two -- I mean, I

don't want this to go sideways, guys. It's a difficult call enough. But we have two agreements with you guys, a sponsorship agreement, and a ticketing agreement.

On the sponsorship agreement, there's no question that our ability to provide sponsorship assets was impaired. We've made good on that. We've offered money back. We've offered alternative assets. We're -- there's no question that we have obligations to you there.

The question on the ticketing --

(Simultaneous crosstalk.)

JOHN ABBAMONDI: The question on the ticketing side -- I'm sorry.

JOE BERCHTOLD: It's about $1.2 million.

JOHN ABBAMONDI: Yeah. The question on the tick -- I'd have to check our notes, Joe.

SPEAKER 4: So that is consistent with my understanding as well. In that, you know, roughly 1.2

realm.

    JOHN ABBAMONDI: The question on the ticketing side is, there's language in the contract that says if a certain number of games are not played, that the contract extends at the same -- the ticketing contract extends at the same terms for an additional year.

    We don't believe that that clause has been triggered.

    MICHAEL RAPINO: In COVID, you don't fucking believe it's been triggered? Really? Every other team in the entire United States has figured out that has happened, but you don't think, with COVID, without one ticketed event, that was triggered.

    JOHN ABBAMONDI: Well, it's not true. It's just not true what you're saying, Michael.

    MICHAEL RAPINO: Ticketed event.

    JOHN ABBAMONDI: We've had ticketed events.

    MICHAEL RAPINO: You're

6

saying -- you think '20 was a typical year that would constitute a contract year?

  JOHN ABBAMONDI:  I'm just relying on the plain language of the agreement, Michael.

  MICHAEL RAPINO:  You -- I'm asking you, you think '20 was a standard year, that was a typical year, what a contract would have been negotiated for?

  JOHN ABBAMONDI:  There's no question that -- there's no question that this is not a standard year -- excuse me -- there's no question that this is not a standard year.

  The question is, under what conditions does our contract automatically extend for another year?  Those -- those conditions are very clearly laid out in very plain language, and we don't think it's controversial, but if you --

  JOE BERCHTOLD:  Well, our guys disagree, right?  Our guys think that

it's --

    MICHAEL RAPINO:  We do.

    JOHN ABBAMONDI:  Well, Joe, I thought we had a call and you said to me that you did agree, that you were dropping that line of inquiry?

    MICHAEL RAPINO:  As part of renewal -- as part of renewal that was the deal.

    JOE BERCHTOLD:  Yes.

    JOHN ABBAMONDI:  I see.

    MICHAEL RAPINO:  -- said that to you too -- I said that to you, too, John.  I just said, of course we're going to play long together; we'll pay you up front, we'll forget about -- we'll retro this back.  I said all those things.

    JOHN ABBAMONDI:  Yeah.

    MICHAEL RAPINO:  Assuming we were going to continue as partners, then we were going to do a whole bunch of things.

    JOHN ABBAMONDI:  Well, we are continuing as partners on the Live

Nation side.  You know, I want us to have a good working relationship.

    MICHAEL RAPINO:  We don't -- we don't have a partnership on the Live Nation side.  We put shows in your venue, like every other venue.

    JOHN ABBAMONDI:  We do have a partnership.  We have a long-term agreement.

    MICHAEL RAPINO:  It's not a five-year contract like our ticketing deal.

    JOHN ABBAMONDI:  It's a multi-year agreement.

    MICHAEL RAPINO:  But it doesn't deliver us -- it doesn't deliver us what we need.  I've told you that.  I've told you, we've got a new venue in town, and the economics have changed in the marketplace.

    So what I've told you from day one was, it was, you know, going to be a tough time to deliver tickets or concerts with a new competitor in town, regardless of ticketing.

        Anyways, John, I'm going to go. I'm disappointed. I don't think you were ever going to renew with us. I think you've been set to do a SeatGeek deal, and I thought we deserved more than this.

        But anyways, I appreciate your time.

        JOHN ABBAMONDI: All right. Thank you, Michael.

        * * *

        REPORTER CERTIFICATE

        I, JACLYN URZIA, do hereby certify:

        That said audio transcription is a true record as reported by me, a disinterested person.

        I further certify that I am not interested in the outcome of said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.

        IN WITNESS WHEREOF, I have hereunto set my hand this 9th day of January, 2026.

*Jaclyn Urzia*
_____
JACLYN URZIA, RPR, CRR