**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, et al.,

                         Plaintiffs,

      v.

LIVE NATION ENTERTAINMENT, INC., and
TICKETMASTER L.L.C.,

                         Defendants.

Case No. 1:24-cv-03973-AS

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION TO EXCLUDE TRIAL EXHIBITS**

## TABLE OF CONTENTS

I.    Legal Standard ................................................................................................ 2

II.   The Exhibits Are Relevant to Plaintiffs' Claims. .............................................. 3

III.  The Exhibits' Relevance Is Not Substantially Outweighed by Unfair Prejudice ............... 7

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Costantino v. David M. Herzog, M.D., P.C.*,
   203 F.3d 164 (2d Cir. 2000) ................................................................... 2, 8

*Krause v. Kelahan*,
   161 F.4th 66 (2d Cir. 2025) ...................................................................... 3

*Morales v. New York State Dep't of Lab., Div. of Emp. Servs.*,
   530 F. App'x 13 (2d Cir. 2013) ............................................................... 7

*N. Am. Soccer League LLC v. U.S. Soccer Fed'n, Inc.*,
   2024 WL 2959967 (E.D.N.Y. June 12, 2024) ......................................... 7

*United States v. Coppola*,
   671 F.3d 220 (2d Cir. 2012) ..................................................................... 3

*United States v. El-Mezain*,
   664 F.3d 467 (5th Cir. 2011) .................................................................... 2

*United States v. Figueroa*,
   618 F.2d 934 (2d Cir. 1980) ..................................................................... 9

*United States v. Gonzalez*,
   110 F.3d 936 (2d Cir. 1997) ..................................................................... 2

*United States v. Google LLC*,
   747 F. Supp. 3d 1 (D.D.C. 2024) ............................................................ 7

*United States v. Google LLC*,
   778 F. Supp. 3d 797 (E.D. Va. 2025) ...................................................... 7

*United States v. Herron*,
   2014 WL 1871909 (E.D.N.Y. May 8, 2014) ........................................... 9

*United States v. Johnson*,
   469 F. Supp. 3d 193 (S.D.N.Y. 2019) ..................................................... 9

*United States v. Orsini*,
   2026 WL 183698 (S.D.N.Y. Jan. 23, 2026) ........................................... 2

*United States v. Powell*,
   2025 WL 3022475 (2d Cir. Oct. 29, 2025) ........................................... 10

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ..................................................................... 8

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948)...................................................................................................... 7

*Watkins v. N.Y. City Transit Auth.*,
   2020 WL 1888839 (S.D.N.Y. Apr. 16, 2020)........................................................... 7

**Rules**

Fed. R. Evid. 401 ............................................................................................................. 2

Fed. R. Evid. 403 ...................................................................................................... 2, 3, 8

In their opening statement, Defendants presented a polished narrative that they invest in their amphitheaters "so fans have a choice of [g]oing someplace where they can actually enjoy the concert.  So artists have a choice to go to a place that is a really great place to play."[1]  Now, they seek to exclude candid, internal messages in which the individual who is currently Head of Ticketing for these amphitheaters calls fans "████████" explains that he "████████" them, and brags that Live Nation is "████████████████████████"[2]

These statements refer to the fees that Live Nation charges for "ancillary services"—a key driver of profitability for Live Nation's amphitheaters.  The individual who made the statements did so when he was a regional Director of Ticketing with responsibility for a large, in-market amphitheater in Florida.  Defendants' brief fails to mention this individual has since been promoted and now serves as Head of Ticketing for Venue Nation, with responsibilities relating to all of Live Nation's venues.[3]

Live Nation's excessive prices for ancillary services are directly relevant to Plaintiffs' claims.  Ancillaries are a significant way that Live Nation monetizes its monopoly position in the amphitheater market.  As the testimony in this case has already demonstrated, artists care about "fan satisfaction" at their shows.  They do not want to play venues where their fans are "████████"  But if artists wish to play large amphitheaters in the United States, they often have no choice:  Live Nation is able to impose excessive prices that degrade the fan experience without fear of artists switching to another amphitheater because, in most cases, no alternative exists.

Accordingly, the Court should deny the motion.

---

[1] Trial Tr. at 143:16-19 (Defs. Opening Statement).
[2] Ex. 1 (PX0720) at -631-632; Ex. 2 (PX0719) at -266.  Defendants also seek to exclude Ex. 3 (PX0706), Ex. 4 (PX0718), Ex. 5 (PX0721), and Ex. 6 (PX0722), which contain similar statements.
[3] Pollstar, 2026 Ticketing Star: Ben Baker, https://news.pollstar.com/2026/01/23/2026-ticketing-star-ben-baker/ ("As head of ticketing for Venue Nation, Ben Baker oversees box office operations for Live Nation-managed venues across the U.S. It's a big undertaking, with more than 150 venues under the company's purview[.]").

## I.     Legal Standard

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Relevant evidence "need only tend to prove the government's case," such as "evidence that adds context and dimension to the government's proof of the charges." *United States v. Orsini*, 2026 WL 183698, at *8 (S.D.N.Y. Jan. 23, 2026) (quoting *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997)).

Federal Rule of Evidence 403 permits the Court discretion to "exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" (emphasis added).  While "any proof highly probative of guilt is prejudicial to the interests of that defendant," this kind of prejudice alone does not justify exclusion under Rule 403.  *Orsini*, 2026 WL 183698, at *9.  Rather, evidence is *unfairly* prejudicial only if it "involves some adverse effect beyond tending to prove a fact or issue that justifies [its] admission." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174–75 (2d Cir. 2000); *see also United States v. El-Mezain*, 664 F.3d 467, 508 (5th Cir. 2011), *as revised* (Dec. 27, 2011) ("The scope of Rule 403 is narrow.  Because virtually all evidence is prejudicial, the danger of unfair prejudice must *substantially* outweigh the probative value of the evidence to warrant exclusion.").

District courts have broad discretion to interpret and apply Rule 403 to the specific evidence of a case.  *Krause v. Kelahan*, 161 F.4th 66, 87 (2d Cir. 2025) ("When assessing claims of relevance and undue prejudice, our review 'is highly deferential in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against

2

its potential for unfair prejudice.'") (quoting *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012)).

## II.    The Exhibits Are Relevant to Plaintiffs' Claims.

Live Nation seeks to exclude six chains of internal messages sent between Live Nation employees Ben Baker and Jeff Weinhold on the workplace collaboration tool known as Slack.[4] As of 2022 (when most of the messages were sent), Mr. Baker was a regional Director of Ticketing for venues including Live Nation's MidFlorida Credit Union Amphitheatre (a major concert venue). Mr. Weinhold was also a regional Director of Ticketing for venues including Jiffy Lube Live (another major concert venue). Mr. Baker is now Head of Ticketing for Venue Nation (the component of Live Nation responsible for operating its amphitheaters), and Mr. Weinhold is a Senior Director of Ticketing for Live Nation's Capital Region.[5]

The private messages between Mr. Baker and Mr. Weinhold provide a candid, contemporaneous look into how they view the prices that Live Nation charges fans for ancillary services at their respective venues. In one instance, they discuss Live Nation's price for access to the VIP area for a show at the MidFlorida Credit Union Amphitheatre. Mr. Baker comments that the prices for such access are "███████████" that "███████████████" and that "██ ███████████████████" before laughing.[6] In another instance, they discuss Live Nation's prices for upgraded parking at their respective venues. Mr. Baker shares Live

---

[4] Defendants produced these message chains in the format in which they are attached to this brief. Each message appears twice (with the second copy of each message crossed out); the messages include strings of alphanumeric characters; and the time stamps are in UTC. On February 20, Plaintiffs requested that Defendants reproduce these chains in a more legible format. Defendants did not reproduce the chains for two weeks. On March 6, Defendants finally reproduced the chains but did so in a format that omits relevant portions of the documents. Plaintiffs have reiterated their request for Defendants to produce corrected versions of these chains.

[5] Pollstar, 2026 Ticketing Star: Ben Baker, https://news.pollstar.com/2026/01/23/2026-ticketing-star-ben-baker/ ("As head of ticketing for Venue Nation, Ben Baker oversees box office operations for Live Nation-managed venues across the U.S. It's a big undertaking, with more than 150 venues under the company's purview[.]"; Pollstar, 2025 Ticketing Star Awards: Jeff Weinhold, https://news.pollstar.com/2025/01/17/2025-ticketing-star-awards-jeff-weinhold/.

[6] Ex. 1 at -631.

Nation's revenue from this product in each of the last three years and remarks, "

████████" "██████████"[7] Elsewhere, Mr. Baker says he "██████" fans on "████████"[8]

These documents are highly relevant to Plaintiffs' claims for at least two reasons.

*First*, ancillary services are a significant way that Defendants monetize their monopoly in the amphitheater market. Ancillaries include facilities fees that Live Nation imposes on fans as part of the ticket price, portions of service fees that Live Nation imposes on fans in addition to the ticket price, and Live Nation's sale of "onsite" services, such as upgraded parking and access to the VIP lounge. These charges add up. Live Nation's latest annual report explains that "[o]ur ancillary revenue spending at our United States amphitheater shows was over $45 per fan for the year, with onsite spend growing by 6%."[9] Live Nation CEO Michael Rapino has cited "onsite" ancillary sales a "high margin business" enabled by Live Nation's scale.[10]

Defendants argue these services are irrelevant because they "are not primary concert tickets, are sold separately from tickets, and are not part of the ticketing services markets at issue in this trial." Mot. at 1. This completely misses the point. The fact that Live Nation uses the

---

[7] Ex. 2 at -266.
[8] Ex. 2 at -270.
[9] Live Nation Entertainment, Inc., Form 10-K for the Fiscal Year Ended December 31, 2025, *available at* https://investors.livenationentertainment.com/sec-filings/annual-reports/content/0001335258-26-000009/0001335258-26-000009.pdf; *see also* Live Nation Entertainment Third Quarter 2025 Results, https://newsroom.livenation.com/news/live-nation-entertainment-third-quarter-2025-results/ ("Fan spending onsite remains strong with continued growth across our amphitheaters up 8%," "Continued growth in onsite spending at amphitheaters driven by fan segmentation and product innovation," "Onsite spend per fan at Jones Beach grew by more than $5, up 35%").
[10] Ex. 7, Transcript of Michael Rapino CNBC Interview with David Faber, Nov. 14, 2018 (PX0985) at 10 ("We've always looked at that as our competitive advantage; scale our content, and it feeds our three high margin businesses. Sponsorship, 70 percent margin business; ticketing, a 20-plus margin business, and on-site, which is a 20-plus margin business.").

high-margin ancillary business to monetize the amphitheater monopoly at issue in this case is sufficient on its own to demonstrate relevance.[11]

     *Second*, Live Nation is able to degrade the fan experience by charging excessive prices for ancillary services without fear of artists switching away, which demonstrates its monopoly power in the amphitheater market. Two witnesses in this case have already testified about the importance of fan satisfaction to artists when it comes to venue selection. Mr. Hurwitz of It's My Party ("IMP"), which operates the Merriweather Post Pavilion, explained that IMP competes by "creat[ing] venues that people want to go to and the bands want to play at." Trial Tr. at 657:20-22 (Hurwitz). Asked whether "fan satisfaction at Merriweather affect[s his] ability to attract artists to play the amphitheater," Mr. Hurwitz explained "that's one of the big reasons they want to play [Merriweather.]" *Id.* at 661:15-18 (Hurwitz). Likewise, Marc Geiger of Gate 52, which operates the Zoo Amphitheater in Oklahoma City, agreed that "the fan experience at an amphitheater impact[s] whether artists want to play there." *Id.* at 499:14-19 (Geiger).

     Defendants claim that "[s]ales of a limited number of ancillary upgrades to fans at a price those fans are willing to pay for preferential treatment says nothing about poor fan experience." Mot. at 3. This ignores the content of the exhibits at issue. In the exhibits, Mr. Baker explicitly states that Live Nation is "████████" and "████████████" of fans.[12] There is no credible argument that this "says nothing" about the fan experience.

---

[11] That fans directly pay Defendants for these services does not render them irrelevant to Plaintiffs' amphitheater claims. For many of the same reasons the Court held in its summary judgment order that fan-paid ticketing fees remain relevant to Plaintiffs' venue-facing ticketing claims, so too are fan-paid ancillary fees relevant to Plaintiffs' artist-facing amphitheater claims. *See* ECF No. 1037 at 42-43.

[12] PX0719 at -270; PX0720 at -631.

Moreover, Defendants have opened the door to evidence regarding the fan experience at Live Nation's amphitheaters by claiming in opening statements that Live Nation has *improved* the fan experience there. They told the jury:

> It's pretty great, and from 2022 to 2025, Live Nation has made significant contributions to these amphitheaters. It has built them up. It has invested in them, and it has improved them, and it has made them better so fans have a choice of doing someplace where they can actually enjoy the concert. So artists have a choice to go to a place that is a really great place to play. That's what you are going to hear about these amphitheaters. They are not all perfect. You know, there's some of them that have taken time to develop and invest in. But that's the mission, that's the objective, and that's what the evidence is going to show what we do.[13]

Having taken the position that the evidence will show Live Nation has *improved* the fan experience, Defendants cannot now credibly claim that evidence Live Nation has *degraded* this experience is inadmissible.

While Mr. Baker may well rescind his statements on the stand, the jury is entitled to hear Mr. Baker's unvarnished views, as expressed in the ordinary course of business. Courts often "give 'greater weight to the contemporaneous statements contained in the company's internal records, than [to] later trial testimony in which [its] employees declined to ratify those statements.'" *United States v. Google LLC*, 778 F. Supp. 3d 797, 868 (E.D. Va. 2025) (alterations in original) (quoting *United States v. Google LLC*, 747 F. Supp. 3d 1, 77 n.2 (D.D.C. 2024) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395–400 (1948)). The jury should do so here.

None of the cases cited by Defendants support their claim that the evidence at issue is irrelevant. In *N. Am. Soccer League LLC v. U.S. Soccer Fed'n, Inc.*, plaintiffs failed to sufficiently articulate a specific purpose for the excluded evidence that in fact remained at issue

---

[13] Trial Tr. at 143:13-23 (Defs. Opening Statement).

in the case. 2024 WL 2959967, at *16 (E.D.N.Y. June 12, 2024) (explaining plaintiffs cited only to precedent that concerned rebutting procompetitive justifications, which were not at issue in the case).  In *Morales v. New York State Dep't of Lab., Div. of Emp. Servs.*, the court recognized plaintiffs could introduce evidence of allegedly discriminatory acts even after discrimination claims have been dismissed, because they remain relevant to a viable retaliation claim. 530 F. App'x 13, 15 (2d Cir. 2013) (excluding only evidence concerning a time period no longer at issue in the case); *see also Watkins v. N.Y. City Transit Auth.*, 2020 WL 1888839, at *9 (S.D.N.Y. Apr. 16, 2020) (finding plaintiff lacked factual basis for purportedly excluded evidence and that it was legally irrelevant to remaining hostile work environment claim).

### III.    The Exhibits' Relevance Is Not Substantially Outweighed by Unfair Prejudice.

In their motion, Defendants argue these exhibits should be excluded because "the dangers of unfair prejudice and jury confusion far outweigh" their relevance.  Mot. at 3.  While the texts certainly are prejudicial to Defendants—as virtually all of Plaintiffs' evidence is—they are not unfairly prejudicial, and certainly not to the extent that any such prejudice substantially outweighs their probative value.

Evidence should be excluded under Rule 403 as unfairly prejudicial only if it "involves some adverse effect beyond tending to prove a fact or issue that justifies [its] admission." *Costantino*, 203 F.3d at 174–75, 186 ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*.").  In *United States v. Quattrone*, upon which Defendants rely, the Second Circuit explained that unfair prejudice justifying exclusion "does not arise out of the rationale that justified its admission into evidence," but rather "the prejudice must be unfair in the sense that it [is] . . . on the basis of conduct not at issue in the trial." 441 F.3d 153, 186 (2d Cir. 2006) ("All evidence introduced

against a defendant, if material to an issue in the case, tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence.  Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).  That is not the case here.  As discussed above, the messages in these exhibits relate squarely to topics "at issue in the trial," and Defendants have not identified some other, irrelevant issue raised by the exhibits that may confuse the jury.

The only other case relied upon by Defendants, *United States v. Johnson*, is inapposite. That case involved the exclusion of a "rap video"—not at issue here—where the government had "not demonstrated that the lyrics contain any direct references to the [gang at issue] or to gang activity" and where "the lyrics appear to have little to no probative value." 469 F. Supp. 3d 193, 222 (S.D.N.Y. 2019) (citing *United States v. Herron*, 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014), which recognized courts have been especially cautious to admit rap videos and lyrics with a tenuous connection to the defendant or issues in the case).

Unlike the rap video at issue in *Johnson*, the exhibits at issue here relate directly to the facts at issue in the case.  The mere fact that the exhibits contain charged or emotional language does not justify exclusion.  Rather, they provide important context and insight to the jury of how Defendants in fact operate their businesses, potentially contrary to the testimony the witness may provide in the courtroom.  *See United States v. Powell*, 2025 WL 3022475, at *3 (2d Cir. Oct. 29, 2025) ("[E]motional context can validly influence a jury's reasoning because a statement that has been offered in a moment of excitement – without the opportunity to reflect on the consequences of one's exclamation – may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom" (cleaned up)).

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion.

*/s/ Bonny Sweeney*
BONNY SWEENEY
*Co-Lead Trial Counsel*
David Dahlquist
*Co-Lead Trial Counsel*
John Thornburgh
David M. Teslicko
Matthew Jones
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Email:Bonny.Sweeney@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Amanda J. Wentz
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
Fax: (501) 682-8118
Email:  amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

/s/ Brent K. Nakamura
Brent K. Nakamura (admitted *pro hac vice*)
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street, Suite 9200-6
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

/s/ Victoria Maria Orton Field
Victoria Maria Orton Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: victoria.field@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Elizabeth G. Arthur
Elizabeth G. Arthur (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Elizabeth.arthur@dc.gov
*Attorney for Plaintiff District of Columbia*

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

10

/s/ Jesse Moore
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

/s/ Noah Goerlitz
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 281-5164
Email: noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

/s/ Christopher Teters
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

/s/ Mario Guadamud
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

/s/ Schonette J. Walker
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

11

*/s/ Lee Morris*
Lee Morris (admitted pro hac vice)
Special Assistant Attorney General
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-9011
Email: Lee.Morris@ago.ms.gov
*Attorney for Plaintiff State of Mississippi*

*/s/ Justin C. McCully*
Justin C. McCully (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

*/s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

*/s/ Zachary Frish*
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New
Hampshire*

*/s/ Andrew F. Esoldi*
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

*/s/ Jonathan Hatch*
Jonathan Hatch
Assistant Attorney General
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Evan Crocker*
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General, Division
Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

/s/ Francisco Benzoni
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*


/s/ Sarah Mader
Sarah Mader (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*


/s/ Cameron R. Capps
Cameron R. Capps (admitted *pro hac vice*)
Deputy Attorney General
Consumer Protection
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma  73105
Telephone:  (405) 522-0858
Fax:  (405) 522-0085
Email: Cameron.Capps@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma*


/s/ Gina Ko
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*


/s/ Joseph S. Betsko
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*


/s/ Paul T.J. Meosky
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

/s/ Jared Q. Libet
Jared Q. Libet (admitted *pro hac vice*)
Assistant Deputy Attorney General
Office of the Attorney General of South
Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South
Carolina*

/s/ Jacob R. Dempsey
By: Jacob R. Dempsey (admitted *pro hac
vice*) Assistant Attorney General
1302 East Highway 1889, Suite 1
Pierre SD 57501-8501
Email: jacob.dempsey@state.sd.us
Telephone: (605) 773-3215
(SD Bar No. 5025)
*Attorney for Plaintiff State of South Dakota*

/s/ Hamilton Millwee
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ Diamante Smith
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust
Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
*Attorney for Plaintiff State of Texas*

/s/ Marie W.L. Martin
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

/s/ Sarah L. J. Aceves
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

*/s/ Douglas L. Davis*
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

*/s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

*/s/ William T. Young*
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*

## **Certificate of Compliance**

In accordance with Local Civil Rule 7.1(c), and Rule 8(c) of this Court's Individual Practices in Civil Cases, I certify that the word count of this memorandum of law is 2,309 words, which includes footnotes but excludes the caption, any index, table of contents, table of authorities, signature blocks, or any certificates. This certificate is made in reliance on the word count of the word-processing program used to prepare the document.


*/s/ David M. Teslicko*

*Attorney for Plaintiff United States of America*

16