UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA et al.,

*Plaintiffs*,

v.

LIVE NATION ENTERTAINMENT, INC.,
and TICKETMASTER L.L.C.,

*Defendants*.

Civil No. 1:24-cv-3973-AS

---

**PROCEEDING PLAINTIFF STATES' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MISTRIAL AND LIMITED STAY OF PROCEEDINGS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................ 2

ARGUMENT ................................................................................................... 4

    I.    The prejudicial impact of the United States' sudden disappearance from trial is incurable and warrants a mistrial. ................................................................ 4

        A.    The United States' disappearance at this stage of trial will prejudice the Proceeding Plaintiff States by leading the jury to conclude their claims lack merit ................................. 6

        B.    The prejudice to the Proceeding Plaintiff States is incurable by instruction. ................. 8

        C.    The Court shouldn't reward Defendants' gamesmanship ............................................. 10

    II.    The Court should stay all proceedings to allow the Plaintiff States to fully prepare to assume the lead role at trial and explore settlement ................................................. 13

        A.    The Proceeding Plaintiff States will be severely prejudiced in the absence of a stay .. 13

        B.    A stay will not prejudice Defendants, and the Proceeding Plaintiff States will act to minimize any impact on the Court and the public ................................................. 16

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aetna Cas. & Sur. Co., v. Gosdin*
   803 F.2d 1153 (11th Cir.1986) ...............................................................6

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*
   474 F. Supp. 2d 474 (S.D.N.Y. 2007)....................................................13

*Bruton v. United States*
   391 U.S. 123 (1968)..................................................................................5

*Citron v. Aro Corp.*
   377 F.2d 750 (3d Cir. 1967)......................................................................7

*Globefill Inc. v. Elements Spirits, Inc.*
   640 F. App'x 682 (9th Cir. 2016) .............................................................5

*Illinois v. Somerville*
   410 U.S. 458 (1973)..................................................................................5

*In re Fosamax Prods. Liab. Litig*
   742 F. Supp. 2d 460 (S.D.N.Y. 2010)......................................................9

*Johnson v. Elk Lake School District*
   283 F.3d 138 (3d Cir. 2002)......................................................................5

*Kappel v. Comfort*
   914 F. Supp. 1056 (S.D.N.Y. 1996)........................................................13

*Kotteakos v. United States*
   328 U.S. 750 (1946)..................................................................................6

*LaSala v. Needham & Co.*
   399 F. Supp. 2d 421 (S.D.N.Y. 2005).....................................................16

*MacArthur v. Bank of New York*
   524 F. Supp. 1205 (S.D.N.Y. 1981).....................................................5, 7

*Orion Prop. Grp., LLC v. Hjelle*
   2020 WL 224573 (E.D.N.Y. Jan. 15, 2020) ..........................................16

*Opper v. United States*
    348 U.S. 84 (1954)........................................................................................5

*Palin v. New York Times Co.*
    113 F.4th 245 (2d Cir. 2024) .........................................................................9

*Rankine v. Levi Strauss & Co.*
    674 F. Supp. 3d 57 (S.D.N.Y. 2023)............................................................13

*Renico v. Lett*
    559 U.S. 766 (2010)........................................................................................5

*Trovan, Ltd v. Pfizer, Inc.*
    2000 WL 709149 (C.D. Cal. May 24, 2000) ..............................................6

*United States v. Certain Lands in Town of Highlands*
    47 F. Supp. 934 (S.D.N.Y. 1942) ...............................................................10

*United States v. Colombo*
    909 F.2d 711 (2d Cir. 1990)...........................................................................5

*United States v. Figueroa*
    618 F.2d 934 (2d Cir. 1980)...........................................................................5

*United States v. Google, LLC*
    747 F.Supp.3d 1 (D.D.C 2024)...................................................................10

*United States v. Hewlett Packard Enterprise Co.*
    No. 5:25-cv-00951-PCP, ECF No. 337 (N.D. Cal. Dec. 12, 2025) ........11

*Volmar Distributors v. New York Post Co.*
    152 F.R.D. 36 (S.D.N.Y. 1993) ...................................................................13

*Waldorf v. Shuta*
    3 F.3d 705 (3rd Cir. 1993) .................................................................4, 7, 10

**Federal Statutes**

15 U.S.C.
    § 16................................................................................................ *passim*
    § 2805...................................................................................................6

**Rules**

Fed. R. Civ. P. 61 .............................................................................................................................6

## PRELIMINARY STATEMENT

On March 8, 2026 the United States and Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. informed the Court of a proposed settlement. The Court and Plaintiff States were unaware of *any* substantive settlement discussions until *after* a jury was empaneled in this case on March 2, 2026, despite the fact that Defendants shortly thereafter informed the Court and the Plaintiff States that they believed a settlement was imminent. Up to that point, the Plaintiff States had been focused on preparing for trial, in close collaboration with their co-Plaintiff partners at the United States Department of Justice ("DOJ"), which had assumed the lead role in trial preparation. Having been kept in the dark and excluded materially from settlement discussions, the Plaintiff States were only notified of the near-final terms of the settlement at 4 P.M. on March 5, with one day to determine whether to accept or reject them.

The Proceeding Plaintiff States[1] will be severely prejudiced if trial proceeds on the current schedule. After deliberately keeping the terms of any settlement from the Plaintiff States, the United States and Defendants presented the terms of a final settlement to the Court on March 9, 2026, three days into the presentation of evidence. The Proceeding Plaintiff States have had no opportunity to obtain and reallocate the resources necessary to try the case on their own or to meaningfully discuss the settlement with Defendants and attempt to negotiate the terms. Moreover, despite the primary role that DOJ has played before the jury, the United States (and several additional individual Plaintiff States) will now vanish from the trial. The jury will very

---

[1] As of the date of this filing, the following Plaintiff States have indicated they intend to settle their claims on the same terms as the United States: Arkansas, Iowa, Mississippi, Nebraska, Oklahoma, South Carolina, and South Dakota. The following Plaintiff States do not intend to join the proposed settlement on its current terms and intend to pursue their claims in this litigation: Arizona, California, Colorado, the District of Columbia, Illinois, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Utah, Vermont, Virginia, Washington, and Wyoming (the "Proceeding Plaintiff States"). The remaining states have not yet taken a position on whether they intend to join the proposed settlement.

likely (and incorrectly) infer from the United States' sudden disappearance that Defendants' antitrust violations have been cured or resolved, or that Proceeding Plaintiff States' claims lack merit, and therefore that Proceeding Plaintiff States are wasting the jury's time. Due to the substantial prejudice caused by this settlement and DOJ's abrupt exit after taking the lead role up to and during the first week of trial, a mistrial is warranted.

      The Proceeding Plaintiff States take no pleasure in making this motion. Courthouse staff have worked tirelessly to prepare for these proceedings, the Court has likely set aside other matters deserving of its attention, and jurors have taken time out of their lives to perform their civic duty. But requiring the Proceeding Plaintiff States to proceed under these circumstances will severely prejudice the States and their millions of residents who could secure better injunctive relief, and in many instances recover damages, were the Proceeding Plaintiff States able to properly prepare to try this case alone without the cloud of the United States' mid-trial departure. Because of the insurmountable prejudice that would be caused by continuing this trial before the existing jury, the Proceeding Plaintiff States respectfully ask the Court to grant their motion for a mistrial and stay proceedings with respect to all Proceeding Plaintiff States' claims until 15 days after the resolution of the Tunney Act proceedings, or, in the alternative, for 60 days.

## BACKGROUND

      Despite participating in this case since its inception, Plaintiff States were first made aware of settlement discussions between Defendants and the United States on January 29, 2026, when DOJ officials notified Plaintiff States that settlement proposals had been exchanged. 3.8.2026 Declaration of Elinor Hoffmann ("Hoffmann Decl.") ¶ 3. The next morning, counsel for New York and California advised Live Nation that they were aware Live Nation had exchanged proposals with DOJ officials. *Id.* ¶ 4. Plaintiff States' counsel strongly suggested that if Live

Nation wanted comprehensive resolution of this litigation, Plaintiff States must be included in any settlement discussions.  On February 1, 2026, several counsel for the Plaintiff States spoke with DOJ officials and delivered the same message. *Id.* ¶ 5.

Plaintiff States received no further information about any proposed settlement and did not receive a response from either party through the month of February. *Id.* ¶ 6.

On February 17, 2026, Defendants moved to bifurcate the trial, proposing that Plaintiff States' claims be tried before those of the United States, purportedly to limit the introduction of evidence from outside the statute of limitations and to use Defendants' preferred legal standard for proving harm to competition. *See* ECF No. 1034. Their briefing contained no indication that any settlement with the United States was possible, let alone on the imminent horizon. The next day, the Court issued its summary judgment opinion and order holding that among other things, Plaintiff States' claims would be tried with those of the United States. ECF No. 1037 at 44. On February 27, 2026, the Court denied Defendants' motion to bifurcate. ECF No. 1094 at 7–8.

On the morning of March 2, after repeated requests by the States, Omeed Assefi (the Assistant Attorney General for the DOJ Antitrust Division) and two of his deputies met with counsel for four of the Plaintiff States. Hoffmann Decl. ¶ 7. None of the three DOJ officials indicated that a settlement between the United States and Defendants was close. *Id.* To the contrary, they expressed strong interest in hearing the Plaintiff States' ideas for settlement terms. They further stated that they would schedule a meeting on March 4 to discuss, but did not reveal the details of the terms they were already discussing with Defendants. *Id.*

Jury selection began that same day, on March 2, 2026, with counsel for the United States serving as Plaintiffs' sole representative during voir dire. Ultimately, twelve prospective jurors were impaneled, sworn in as a jury, and given preliminary instructions. 3.2.2026 9AM Trial Tr. at

146:13–174:20; 3.2.2026 3PM Trial Tr. at 3:1–23:6. Until that time, the Plaintiff States were not aware of any significant progress in settlement talks between Defendants and the United States. The next day, the parties proceeded with their opening statements, with DOJ speaking for approximately three quarters of the Plaintiffs' allotted time, explaining the liability case that the United States shares with the Plaintiff States. 3.3.2026 9:18AM Trial Tr. at 87:4–114:10. Only at approximately 3:30 P.M. on March 3 did Defendants provide counsel for the Plaintiff States with proposed settlement terms—and only in hard copy to the five attorneys who were physically at the office of Defendants' settlement counsel. Hoffmann Decl. ¶ 8. DOJ attorneys began presenting evidence to the jury on March 4, and since then have been the only Plaintiffs' counsel with a speaking role at trial.

At 4:07 P.M. on March 5, DOJ officials emailed the Plaintiff States a revised term sheet, giving the Plaintiff States a deadline to indicate if they intended to join a settlement on those terms by 5 P.M. on March 6. Hoffmann Decl. ¶ 9. When the Court adjourned on March 6, DOJ attorneys were in the middle of its direct examination of a witness.

At 7:47 P.M. on March 8, the United States and Defendants informed the Court they had agreed on final settlement terms and that the United States would not be going forward with the trial.

## ARGUMENT

I.   **THE PREJUDICIAL IMPACT OF THE UNITED STATES' SUDDEN DISAPPEARANCE FROM TRIAL IS INCURABLE AND WARRANTS A MISTRIAL.**

"It is fundamental that every litigant who is entitled to trial by jury is entitled to an impartial jury, free to the furthest extent practicable from extraneous influences that may subvert the fact-finding process." *Waldorf v. Shuta*, 3 F.3d 705, 709 (3rd Cir. 1993). The United States' Settlement and sudden disappearance at trial makes it impossible for Proceeding Plaintiff States

to have a fair and impartial trial with the jury that has been seated.  As courts in this district have held, changing counsel in the middle of trial can be ground for a mistrial. *MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1206–08 (S.D.N.Y. 1981). Further, when "there is an overwhelming probability that the jury will be unable to follow the court's instructions[,]" as a result of an extraneous event, a mistrial is appropriate. *See United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (cleaned up). "The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge[.]" *See Renico v. Lett*, 559 U.S. 766, 775 (2010) (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1973)).

Here, the Court cannot effectively instruct the jury to disregard the abrupt departure of the United States and settling Plaintiff States from this case in light of the lead trial role that DOJ has played in the case and the likely inference that the jury will draw that the legal violations by Defendants have been resolved. While courts rely on "the ability of the jury to follow instructions," *Johnson v. Elk Lake School District*, 283 F.3d 138, 148 (3d Cir. 2002) (quoting *Opper v. United States*, 348 U.S. 84, 95 (1954)), the utility of instructions are not "invariably accepted." *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir. 1980). A limiting instruction is not sufficient to protect the litigant's right to a fair trial in the presence of an extraneous event or error that permeates the case or is likely to stay in the jury's mind for the balance of trial. *See Bruton v. United States*, 391 U.S. 123, 129 (1968)) (noting that jury instructions can sometimes be "intrinsically ineffective" because certain extraneous matters cannot be "wiped from the brains of the jurors"); *Globefill Inc. v. Elements Spirits, Inc.*, 640 F. App'x 682, 684 (9th Cir. 2016) (holding that error that "sufficiently permeated the entire proceeding because it undermined [appellant's] credibility" was prejudicial and warranted a new trial) (cleaned up). In such circumstances, were a trial to continue, there is no "fair assurance" that the jury will not be

"substantially swayed by the error." *Aetna Cas. & Sur. Co., v. Gosdin*, 803 F.2d 1153, 1159 (11th Cir.1986) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)); *see, also*, *Trovan, Ltd v. Pfizer, Inc.*, 2000 WL 709149, at \*33 (C.D. Cal. May 24, 2000) ("Certainly, no one is entitled to a perfect trial. However, everyone is entitled to a fair one.").

Here, the United States' exit from the case (along with at least seven Plaintiff States) after presenting itself as the lead plaintiff to the jurors will very likely cause the jury to conclude that the antitrust violations of Defendants have been resolved, that the Proceeding Plaintiff States' claims lack merit, or that they are otherwise not worthwhile. This prejudice is not curable by instruction. Forcing the Proceeding Plaintiff States to continue with the trial will place them at a material disadvantage that can only be remedied with a mistrial. The Proceeding Plaintiff States ask for the case to be set for a new trial after the conclusion of proceedings under the Tunney Act, 15 U.S.C. § 16, or, in the alternative, after a stay of 60 days. *See* Fed. R. Civ. P. 61 (allowing for a new trial when "justice requires" and when "substantial rights" are affected); Wright & Miller, 11 Fed. Prac. & Prod. Civ. § 2805 (3d ed.) ("[T]he court has the power and duty to order a new trial whenever, in its judgment, this action is required to prevent injustice.").

A.    **The United States' disappearance at this stage of trial will prejudice the Proceeding Plaintiff States by leading the jury to conclude their claims lack merit**

The United States' disappearance at this stage of trial is highly prejudicial to the Proceeding Plaintiff States because jurors are very likely to improperly conflate the United States' exit with a rejection of the merits of the case. In the short time the case has been before the jury, DOJ attorneys have taken the lead role on behalf of the United States; their presence before the jury has been pervasive. In its opening statement, DOJ told the jury that it was bringing this case on behalf of the United States of America, alongside its 39 partner States and the District of Columbia. 3.3.2026 Trial Tr. at 88:3–5. The seal and insignia of the United States

6

government appeared throughout the opening demonstratives presented to the jury. The jurors have watched DOJ attorneys examine every witness presented to date. Seeing the United States vanish from the courtroom will likely lead the jury to incorrectly infer that (1) Plaintiffs' case is weak and the United States believed it was unlikely to win at trial or (2) the United States reached a settlement with the Defendants that cured the anticompetitive conduct at the core of the case, and the Proceeding Plaintiff States are wasting the jury's time by continuing with their claims. Either way, any inferences flowing from the United States' absence will likely interfere with the jury's ability to make a fair and impartial determination and "subvert the fact-finding process." *Waldorf v. Shuta*, 3 F.3d 705, 709 (3rd Cir. 1993).

Finally, the timing of the United States' settlement requires a mistrial. The United States settled the case in middle of direct examination of a key witness from Ticketmaster's closest competitor (the competitor the Plaintiff States' damages expert relied on as a benchmark). Changing lead counsel mid-trial, let alone in the middle of a direct examination, would be highly prejudicial to the Proceeding Plaintiffs' liability and damages cases. *See MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1206–08 (S.D.N.Y. 1981) (ordering a mistrial following disqualification of defendant's trial counsel, both due to the practicality of defendant having to find new counsel and re-prepare for trial, and because "the jury would conceivably speculate to the prejudice of either party as to the reason counsel had been changed after two days of testimony"). Declaring a mistrial will enable a new, untainted jury to be empaneled and provide the Proceeding Plaintiff States with the time required to marshal the resources to assume the lead role at trial. Therefore, a new trial is warranted. *Citron v. Aro Corp.*, 377 F.2d 750, 753 (3d Cir. 1967) (holding that when trial is conducted in a manner "which in its ultimate effect [is]

distinctly favorable to the defendant and decidedly unfavorable to the plaintiff" a new trial is required).

### B.    The prejudice to the Proceeding Plaintiff States is incurable by instruction.

No limiting instruction can "put the genie back in the bottle" and cure the substantial prejudice to the Proceeding Plaintiff States as a result of the sudden exit of the United States from this case.

DOJ attorneys conducted voir dire, presented the opening statement for the liability case that they shared with the Plaintiff States, and conducted direct examinations of seven witnesses. DOJ's presence before the jury carried substantial weight. Its sudden departure will have a lasting adverse impression in the minds of jurors on the merits of the claims being pursued by the Proceeding Plaintiff States that will endure through any limiting instruction.

With all evidence to date having been put on by DOJ, the jury cannot be expected to ignore the fact that the United States is no longer present in courtroom and DOJ attorneys will no longer be presenting witnesses and arguments to them. The absence of the United States as the lead plaintiff will loom over and taint the remainder of the proceedings. Throughout the presentation of evidence, attorney arguments, and closing statements, the absence of the lead Plaintiff will be highly conspicuous to the jury and send a signal that the case being pursued by the Proceeding Plaintiff States is a waste of the jury's time.

In fact, the fourth day of trial concluded mid-way through DOJ staff's direct examination of a key witness. Because the examination has not been completed, the Proceeding Plaintiff States cannot contact the witness or tell him about the situation. Were this motion for mistrial to be denied, the direct examination of this key witness thus would have to continue with different counsel for the Proceeding Plaintiff States—whom the witness has never even met—picking up the questioning midstream without explanation. This scenario is certain to create further

speculation and confusion and prejudice to the Proceeding Plaintiff States. This fundamental change in the presentation of the case cannot be fixed by an instruction by the Court, as a strong admonishment not to speculate about the absence of DOJ staff would only shine a spotlight on the sudden vacancy left by the elephant that vanished from courtroom. Therefore, instructing the jury to set aside the United States' absence cannot cure the prejudice. *Cf. Palin v. New York Times Co.*, 113 F.4th 245, 279 (2d Cir. 2024) ("[A]an average jury's verdict would be affected if several jurors knew that the judge had already ruled for one of the parties on the very claims that the jurors were charged with deciding.").

The United States' departure from this case during trial is also incurable because it has created an inescapable tension and an implication that co-Plaintiffs are pursuing materially divergent positions—i.e., whether to try this case or settle it. The United States and the Plaintiff States presented to the jury as a cohesive team. Indeed, the theory of trying the Plaintiff States' claims with the United States' claims rests on the substantial overlap between them; the jury has been told as much. *See, e.g.*, 3.3.2026 9:18AM Trial Tr. at 115:5–116:12.  Now the DOJ and the other settling States will appear to have abandoned their partners, exerting an outside influence that would otherwise not be permissible.  *See Palin,* 113 F.4th at 278 (the jury's receipt of "push" notifications tainted the case because "[j]ustice demands that jurors decide the case solely on the evidence before them, without any outside influence" (cleaned up)); *cf. In re Fosamax Prods. Liab. Litig,* 742 F. Supp. 2d 460, 479 n.10 (S.D.N.Y. 2010) (describing warnings to counsel that "the jury should not be made aware of the fact that [p]laintiff's claim is but one of hundreds comprising this multidistrict litigation" because "the jury has no business knowing whether there's an MDL [and] the fact there are a lot of other cases brought could very understandably inure to the detriment of the defendant" (cleaned up)).

Had the United States' and the Plaintiff States' cases not originally been presented to the jury together, extraneous evidence regarding the existence (or non-existence) of other plaintiffs' claims against or settlement with the same party, likely would be excluded. *See Waldorf*, 3 F.3d at 711–12 (the effect of exposure to disposition of another case "may be substantial even though it is not perceived by the juror himself" and "a juror's good faith may not be sufficient to counter this effect" regardless of the juror's assurances otherwise) (collecting cases); *see also United States v. Certain Lands in Town of Highlands,* 47 F. Supp. 934, 939 (S.D.N.Y. 1942) ("[r]eferences to other verdicts are repugnant to the idea that each verdict shall be founded upon the evidence adduced at trial which produces the verdict."). The case should not proceed with a jury that will necessarily become aware that the overlapping claims from the United States, as well as the claims of the settling Plaintiff States, have either been abandoned or settled.

## C.    The Court shouldn't reward Defendants' gamesmanship

A mistrial is also warranted because the timing of Defendants' settlement suggests that it may have been engineered and timed to inflict maximum prejudice on the Proceeding Plaintiff States' ability to continue with the litigation. The DOJ has played the lead role in litigating and preparing this case for trial, including housing all of the relevant documents, subpoenaing witnesses and meeting with most of them to prepare them for their examinations, preparing witness outlines, selecting and marking exhibits, negotiating confidentiality designations, and presenting witnesses at trial. This is hardly unusual; the DOJ usually takes the lead role in joint federal-state antitrust prosecutions, because that approach minimizes the financial burdens on the public and recognizes the more limited resources available to the various Plaintiff States. [2]

---

[2] In *United States v. Google, LLC*, 747 F.Supp.3d 1 (D.D.C 2024), the United States served as lead counsel with the support of dozens of States through all phases of litigation, including preparation for and during trial.

Until after jury selection on March 2, 2026, the Plaintiff States had no reason to believe that the United States would disrupt the trial and joint prosecution framework by abandoning its lead role. But the Defendants (and the United States) hid the settlement from the Plaintiff States. Had the Plaintiff States known that substantive settlement discussions were proceeding in earnest, or that any substantive discussions had begun with the United States prior to trial, the Plaintiff States would have reallocated resources, made efforts to obtain copies of DOJ's database and work product and incurred the cost of loading them onto an independent system, worked on approvals to increase the size of their trial teams, and lined up the logistical and political support necessary to lead a trial of this magnitude and complexity without the backing of the United States. To make matters more complicated, counsel for Proceeding Plaintiff States cannot communicate candidly with DOJ attorneys because upon information and belief, front-line staff are not kept abreast of settlement talks between DOJ officials and Defendants.

Immediately after learning of a preliminary exchange of proposals between the United States and Defendants, the States began working assiduously to undertake these efforts, including by adding additional personnel and retaining outside counsel. But the Proceeding Plaintiff States must deal with practical realities like reallocation of funds and personnel subject to budgetary and other constraints, and commitments to other projects. This will disrupt the Proceeding Plaintiff States' presentation of evidence, likely prolong the time the jury is required to serve, and substantially prejudice the Proceeding Plaintiff States (and the public whom they represent).

There is another immediate problem. Given the overlap in their claims and to preserve public resources, the United States and the Plaintiff States proceeded with a single expert supporting liability on all claims, both federal and state, as well as a single expert on accounting

issues. [3] At present, the Proceeding Plaintiff States have not yet been able to determine if they will be aligned or adverse to the United States at future proceedings before this Court required by the Tunney Act, 15 U.S.C. § 16, or if the United States will request that any of the existing experts testify at those proceedings. If the United States and the Proceeding Plaintiff States are adverse, the Proceeding Plaintiff States' may now not be able to call these joint experts at trial. How this critical issue will be resolved remains uncertain.

Put differently, the United States is not handing off a baton to finish a race; it is leaving a project halfway through construction, while taking the lead crew members, supplies, and designs with it.

Whether deliberate or not, the secrecy and timing of Defendants' settlement with the United States maximizes their advantages at trial while severely undercutting the Proceeding Plaintiff States' ability to present their case. Defendants should not be rewarded for their secrecy and obfuscation—denying the mistrial motion would place the Proceeding Plaintiff States in an even worse position than they would have been in if the Court had granted Defendants' last-minute motion for bifurcation, *see* ECF No. 1098 at 7–8 (rejecting Defendants' motion for bifurcation), and would do exactly what the Court declined to do when it refused to stay the Plaintiff States' claims only a few weeks ago, *see* ECF No. 1037 at 44 (declining to impose a trial schedule that would "simply reward Live Nation" improperly for its trial gamesmanship).

---

[3] Specifically, Dr. Nicholas D. Hill and Dr. Shannon W. Anderson. *Cf.* Joint Case Mgmt. Order, *United States v. Hewlett Packard Enterprise Co*., No. 5:25-cv-00951-PCP, ECF No. 337 (N.D. Cal. Dec. 12, 2025) (DOJ and Defendants taking adverse positions to intervenor Plaintiff States in Tunney Act proceedings).

II.   THE COURT SHOULD STAY ALL PROCEEDINGS TO ALLOW THE PLAINTIFF
      STATES TO FULLY PREPARE TO ASSUME THE LEAD ROLE AT TRIAL AND
      EXPLORE SETTLEMENT

Because a new trial is the appropriate result here, Proceeding Plaintiff States respectfully

request the Court to stay this litigation until 15 days following completion of Tunney Act

proceedings (at which time the Proceeding Plaintiff States would submit a proposed schedule for

a prompt retrial of this action), or, in the alternative, for 60 days.

In deciding a motion to stay, courts in this Circuit generally consider five factors:

(1) the private interests of the plaintiffs in proceeding expeditiously with the civil
litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private
interests of and burden on the defendants; (3) the interests of the courts; (4) the
interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (citing *Volmar Distributors v. New

York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)); *see also Rankine v. Levi Strauss & Co.*, 674

F. Supp. 3d 57, 68 (S.D.N.Y. 2023) (quoting the same language). "These factors are to be

balanced, with the principal objective being the avoidance of unfair prejudice." *Am. Steamship

Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 482

(S.D.N.Y. 2007), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599

F.3d 102 (2d Cir. 2010). Each of these factors supports granting the requested stay.

A.   **The Proceeding Plaintiff States will be severely prejudiced in the absence of a
     stay**

Staying the case until after Tunney Act proceedings conclude or in the alternative, for 60

days is necessary to avoid prejudice to the Proceeding Plaintiff States and protect the public

interest, including the interests of the Proceeding Plaintiff States' residence.

First, as discussed above, an immediate retrial would severely prejudice the Proceeding

Plaintiff States because either or both of the jointly utilized experts may be unavailable to testify

for the Proceeding Plaintiff States. If the United States and Proceeding Plaintiff States are

adverse or if the United States requires the existing experts to testify at the Tunney Act proceedings, it may impair the Proceeding Plaintiff States' ability to call either of the two jointly utilized experts at trial, may potentially introduce conflict or scope of testimony issues depending on the nature of the Tunney Act proceedings, [4] and would potentially require the Proceeding Plaintiff States to retain new expert witnesses who may or may not be able to adopt the relevant parts of the current expert reports.  A stay is necessary to determine whether the Proceeding Plaintiff States may proceed with their existing experts or need to hire new ones and whether the United States will object to the use of formerly-shared expert witnesses at trial.

Second, as also discussed above, the Proceeding Plaintiff States require a stay to marshal the necessary resources to assume the lead role at a trial and effectively present their claims. The Proceeding Plaintiff States will need time to assemble additional attorneys, support staff, and other trial resources t replace those from DOJ staff, including time-consuming technical and logistical tasks. The Proceeding Plaintiff States have just engaged outside counsel to supplement the State attorneys and staff working on the case. Outside counsel will need to learn critical parts of the voluminous record before they can make a meaningful contribution and to help lead the trial. Denying the Proceeding Plaintiff States a stay would leave them inadequately prepared and understaffed for all the reasons discussed above, and do a disservice to the jury, this Court and the public interest.

In the absence of a stay, the Proceeding Plaintiff States will also be unfairly prejudiced by a lack of reasonable opportunity to try to negotiate a resolution of their own claims. The Proceeding Plaintiff States were not privy to any communications or exchanges of information

---

[4] For example, one or both experts may be called in support of the settlement reached by DOJ and Defendants, even if the Proceeding State Plaintiffs believe the settlement is inadequate and does not meaningfully address the concerns that one or both experts would raise in their testimony in this case without the settlement at issue.

between the United States and Defendants concerning the terms of a potential settlement prior to March 3, 2026. Defendants and the United States had numerous opportunities to involve the Plaintiff States in these settlement conversations, but chose not to do so. When the Plaintiff States learned of settlement negotiations via media coverage, they repeatedly contacted both the DOJ and Defendants to request information about any proposed settlement terms. Both parties declined and the Plaintiff States remained wholly in the dark until the afternoon of March 3, 2026. Had Defendants chosen to meaningfully engage the Proceeding Plaintiff States in settlement negotiations, the Proceeding Plaintiff States could have tried to negotiate a settlement that would be adequate to address their competitive concerns. The decision to continue with the case or settle with Defendants is not a simple thumbs or thumbs down vote. It requires that each State be able to understand the implications of the proposed settlement for competition—and for its residents—including what consumer claims may be waived for future private litigants. It also requires that the Proceeding Plaintiff States have an opportunity to try to negotiate not just the terms of the injunctive relief in any settlement, but also the damages and penalty claims they have asserted.

Finally, because Defendants have chosen to settle with the United States after the presentation of evidence has begun, they should bear the consequences of those actions. One of those consequences is that, upon the "render[ing]" of a "decree" entered into between Defendants and the United States, if the Court approves it, the Proceeding Plaintiff States may be able to use as "prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." 15 U.S.C. § 16(a). Any other result would unfairly reward Defendants for their litigation gamesmanship and frustrate

Congress's intent. Until the settlement consent decree is finalized, the scope of any preclusive effect will be uncertain.

Further, if the final consent decree is rejected by the Court, it may be necessary for the United States and settling Plaintiff States to restart this litigation. This is yet another reason to grant the requested stay. In the interests of efficiency, the Court should resolve the Tunney Act proceedings—and therefore determine the scope and effect of any prima facie evidence or estoppel—before setting a new trial date.

### B.    A stay will not prejudice Defendants, and the Proceeding Plaintiff States will act to minimize any impact on the Court and the public

Defendants will not suffer any prejudice from a stay. They have settled with the United States and certain individual States, and any delay in resolution of the Proceeding Plaintiff States' claims is entirely of their own making. *See LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005) (declining to evaluate prejudice to the interests of the moving party).

Nor will a limited stay unduly impact the Court's interest in administering justice and moving cases through its calendar; the Proceeding Plaintiff States propose to diligently review the settlement and prepare for trial either 15 days after the resolution of the Tunney Act proceedings, or within 60 days.

A stay through 15 days after the resolution of the Tunney Act proceedings, or at least 60 days, would cure the prejudice that presently threatens the Proceeding Plaintiff States. *See Orion Prop. Grp., LLC v. Hjelle*, 2020 WL 224573, at *5 (E.D.N.Y. Jan. 15, 2020) (granting a 90-day stay pending a proposed national class action settlement in another jurisdiction). If the requested stay is granted, the Proceeding Plaintiff States will submit a proposal to the Court for a revised pretrial schedule for prompt retrial of this action, to the extent one is necessary.

# CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff States' motion for a mistrial and stay the proceedings until 15 days after the conclusion of Tunney Act proceedings, or, in the alternative, for 60 days.

Dated: March 9, 2026
New York, New York

*/s/ Jonathan H. Hatch*
Jonathan H. Hatch
Pratik Agarwal
Assistant Attorneys General
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8262
Email: Jonathan.Hatch@ag.ny.gov
Email: Pratik.Agarwal@ag.ny.gov
*Attorneys for Plaintiff State of New York*

17

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Brent Nakamura
Brent Nakamura (admitted *pro hac vice*)
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

/s/ Nicole Demers
Nicole Demers (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: nicole.demers@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Adam Gitlin
Adam Gitlin (admitted *pro hac vice*)
Chief, Antitrust and Nonprofit Enforcement
Section
Office of the Attorney General for the District of
Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: adam.gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

/s/ Richard S. Schultz
Richard S. Schultz (Admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Christopher Teters
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Kansas Office of Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

/s Schonette J. Walker
Schonette J. Walker (Admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

18

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

*/s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

*/s/ Zachary A. Frish*
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

*/s/ Andrew F. Esoldi*
Andrew F. Esoldi  (admitted *pro hac vice*)
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

*/s/ Evan Crocker*
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Division
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
Telephone: (505) 490-8793
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

/s/ Sarah Mader
Sarah Mader (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

/s/ Gina Ko
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

/s/ Joseph S. Betsko
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of
Pennsylvania*

/s/ Paul T.J. Meosky
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

/s/ Hamilton Millwee
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ Marie W.L. Martin
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

/s/ Sarah L. J. Aceves
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

20

*/s/ Laura E. McFarlane* _____
Laura E. McFarlane (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us
*Attorney for Plaintiff State of Wisconsin*

*/s/ William T. Young* _____
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7841
Email: william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*