# TICKETFLY

# TICKETFLY SERVICES AGREEMENT

This Ticketfly Services Agreement ("Agreement") is entered into between I.M.P. Inc., a Maryland corporation, and its affiliates and sister companies, including but not limited to the entities set forth on Exhibit B hereto, (altogether "Partner"),and Ticketfly, LLC ("Ticketfly") a Delaware limited liability company, as of January 20, 2017 ("Effective Date"). Partner and Ticketfly are referred to individually as a "Party" and collectively as "Parties." Capitalized terms not otherwise defined herein shall be as defined in the Terms and Conditions attached hereto as Exhibit A and which are hereby incorporated into this Agreement (the "Terms"). This Agreement supersedes all prior agreements between the Parties pertaining to the subject matter hereof.

**1. TERM.** The initial term of this Agreement will be seven (7) years beginning on the Effective Date (the "Initial Term"). Partner will begin to list tickets for sale on the Ticketfly System as soon as practicable.

**2. TICKETFLY SERVICES.** During the Term, Ticketfly agrees to provide to Partner ticketing services (including, but not limited to, online ticket sales, Box Office sales and call center sales), access to and use of the Ticketfly System, website development tools, and the Hardware set forth herein, all as described herein (including but not limited to granting Partner access to the Ticketfly System) (collectively, the "Services") on the terms and conditions as described in this Agreement at all venues Partner owns or operates or shall otherwise request.

**3. EXCLUSIVITY.** During the Term, Ticketfly will act as Partner's sole and exclusive provider of Ticket Sales, as defined in this Agreement, for any Venues, currently existing or to be opened, which Partner owns and/or operates and any and all Events for which Partner controls the ticketing. A list of Partner's currently existing Venues is attached as Exhibit C. In the event that **the current stockholders' ownership of Partner or the current stockholders' ownership of each of the Venues or Affiliates listed on Exhibit C** or decreases but remains 50% or more at any point during the Term, Partner agrees that this Agreement will remain in full force and effect and that Partner shall continue to use Ticketfly's ticketing service exclusively as set forth in this Agreement. Notwithstanding anything above-stated to the contrary, should Partner or its affiliates lose the right to control the ticketing at a venue, that venue shall be excluded from this Agreement.

**4. ALLOCATIONS.** Partner will allocate one hundred percent (100%) of the manifested, sellable capacity of the Venue (excluding Season tickets, VIP sections, VIP boxes and other seats or sections that may be sold in-house) for each Event for public advance sale on the Ticketfly System. ████████ ████

**5. Ticketfly Compensation.** Ticketfly shall be compensated for the services provided under this Agreement through its retention of a portion of the Service Fees, as specified in Section 6. Without limiting the generality of the foregoing provision, Partner shall not be required to pay Ticketfly for the following Services:

    5.1    Ticket Stock: as needed at no charge, shipping additional
    5.2    Ticket Printers: as needed at no charge shipping additional
    5.3    Handheld Scanners: as needed at no charge, shipping additional
    5.4    Email Blasts: included at no charge

## 6. SERVICE FEES.

    6.1    The Ticket Fee for each Ticket sold online, by telephone or at remote sales outlets, if any, is set forth in the tables in Schedule 1. Ticket Fees will not apply to tickets sold at Partner Venue Box Offices.

    6.2



    6.3    Ticketfly will offer to deliver Tickets to Buyers via U.S. Mail, UPS (or similar carrier) or electronic means (e.g. mobile barcode delivery or print at home). Ticketfly's standard charges, if any, for these delivery options shall apply and will be billed to Buyer and Ticketfly will retain all such proceeds as follows:



    6.4    Ticketfly will provide Partner the following:

LEGAL\29135435\1

No. 1:24-cv-03973-AS
Defs' Trial Exhibit
**DX-0119**



Email Template Bonus: If so desired, Ticketfly will provide an email template designed to interact with Ticketfly's email platform. If the Agreement is not renewed at the end of the Term by Partner, Ticketfly will no longer allow Partner access to the Ticketfly platform.

**7.  PROMOTION OF THE TICKETFLY SERVICES.**  For all websites designed by Ticketfly and/or that use Ticketfly's website development tools, Partner agrees to display a credit in the footer of the homepage and on all other pages of the website that will link to a new window directed to the Ticketfly homepage, which shall read "Ticketfly Powered" or similar. Partner agrees to include the then-current Ticketfly logo and URL in all online and offline advertising related to its promotion of the Events.

**8.  CONFIDENTIALITY.**  Except to enforce its rights thereunder, Partner will keep confidential the terms of this Agreement (including but not limited to the provisions of Section 6 above), as well as adhere to the confidentiality provisions set out in the Terms.

**9. SETTLEMENT.**  Ticketfly shall collect all proceeds from Ticket Sales, deposit them in an account maintained by Ticketfly and remit the portion of such proceeds due to Partner less the amounts to which Ticketfly is entitled pursuant to this Agreement. Ticketfly will pay Partner each Wednesday by ACH transfer any funds Partner is due under this Agreement for tickets sold through the Sunday at 11:59pm (time zone relative to Partner) immediately preceding such Wednesday. If Partner has any outstanding invoices, Ticketfly shall be authorized to deduct such amounts from settlement payments.

10.**AUDIT RIGHTS**.  Within twenty (20) business days following Partner's request, Ticketfly shall make available to Partner (and any auditors, accountants or other professionals Partner shall engage) at its principal business office for audit, review, examination, extracting and/or copying, all books and records, including, but not limited to, electronic records, relating to all Ticket Sales and all remittances to Partner that are necessary for calculating such remittances. Partner shall bear the expense of all such audits, reviews or examinations unless material discrepancies are disclosed thereby, in which event Ticketfly shall reimburse Partner for the costs of such audit, review, examination, extracting and/or copying, in addition to all other liability of Ticketfly to Partner resulting from such audit, review, examination, extracting or copying.

In witness whereof, each party to this Agreement has caused it to be executed, effective as of the Effective Date set forth above:

**PARTNER:** _I.M.P. Inc._____

Legal Name of Entity: _I.M.P. Inc._____

Signature: _____

Name: _Donna Westmoreland_____

Title: _C.O.O._____

Date: _1/24/17_____

**TICKETFLY, LLC**

DocuSigned by:

Signature: _Susan Thomakos_____
      D04832A45DFF40B...

Name: _Susan Thomakos_____

Title: _Asst. Secretary_____

Date: _1/24/2017_____

CONFIDENTIAL / [INITIALS]                    2
LEGAL\29135435\1

**TICKETFLY**

**TERMS AND CONDITIONS**
**EXHIBIT A**

The following Terms and Conditions are hereby incorporated into the Ticketfly Services Agreement.

**1. Definitions.**

1.1    **Box Office:** A physical location where a Partner accesses the Ticketfly System for the sale or management of Tickets.

1.2    **Content:** Any remarks, ideas, graphics, photographs, data, text, audio, video or other information posted to the Ticketfly System by Partner or its affiliates.

1.3    **Buyer:** A person who purchases Tickets for an Event listed for sale in the Ticketfly System.

1.4    **Event(s):** Any live or recorded entertainment feature, music concert, sporting event, or cultural attraction or other sponsored, promoted or hosted by Partner for which attendance or passage is limited or restricted through the sale of Tickets.

1.5    **Hardware**: All of the computer hardware listed in Section 5 of the Ticketfly Services Agreement or otherwise supplied by Ticketfly to Partner at any time during the term of the Agreement.

1.6    **Online Schedule:** Database of Partner's Events maintained on the Ticketfly System.

1.7    **Settlement:** Periodic payments by Ticketfly to Partner of those amounts due to Partner under the terms of the Agreement.

1.8    **Software:** All the computer software, including all upgrades, new releases, new versions and modifications thereto during the term of the Agreement, which Partner shall have access to in connection with the sale of Tickets through the Ticketfly System.

1.9    **Ticket:** A printed, electronic or other type of evidence of the right to occupy space at or to enter or attend an Event, even if not evidenced by any physical manifestation of such right, such as a physical ticket, paperless ticket, smart card or electronic bar code.

1.10    **Ticket Face Price:** The price of a Ticket, which shall include all applicable local, state and federal taxes and shall exclude Ticket Fees. The Ticket Face Price is remitted back to Partner, less any applicable amounts owed to Ticketfly.

1.11    **Ticket Fees:** Any amount charged to a Buyer in excess of the advertised Ticket Face Price for the right to purchase Tickets through the Ticketfly System.

1.12    **Ticket Sale(s):** Any sale of Tickets conducted in any manner, from a microprocessor-based device or otherwise, including but not limited to computers, fixed line or cellular telephones, kiosks, ATMs, televisions, dumb terminals and personal digital assistants, with or without the intervention of a human sales agent.

1.13    **Ticketfly System:** All Ticketfly proprietary technology, including but not limited to software, and all Ticketfly operated or licensed services that have or will be established by Ticketfly for the purpose of marketing, selling, delivering, printing, or otherwise making Tickets available for sale. The Ticketfly System includes, but is not limited to, the password-protected, world wide web application, which can be accessed over the Internet by a Partner in order to perform operations related to online ticket sales, Box Office sales, call center sales, marketing tools, website operations, as well as any future modifications to the application and any additions to the application, such as other technologies developed, owned or licensed by Ticketfly in the future relating to providing its Services.

1.14    **Venue:** Any venue or location of any nature whatsoever, indoors or outdoors, whether now existing or existing at any time during the term hereof, at which Partner promotes, schedules or presents an Event in respect of which Partner has authority to sell Tickets.

1.15    **Will-Call:** Tickets to be picked up or rights of admission, which have been purchased by Buyer, to be claimed at the Venue Box Office or point of entry.

**2. Partner Responsibilities.** Partner will make all reasonable efforts to become well versed in operating the Ticketfly System and Partner agrees to the following:

2.1    Partner shall be solely responsible for operating the Software and for maintaining all aspects of its account and Event listings, including but not limited to, maintaining its Online Schedule, creating Event listings, proofing and amending any Event

CONFIDENTIAL / [INITIALS]                                        3
  LEGAL\29135435\1

listings created or any Online Schedule updated by Ticketfly, inputting Ticket Face Prices, terminating sales for Canceled Events (as defined below) and retrieving Will-Call lists for all scheduled Events on sale through the Ticketfly System. Partner agrees to be solely responsible for any and all errors made with regard to inputting Event listing information and maintaining its own Online Schedule and account.

2.2     Partner shall follow all guidelines and instructions on the Ticketfly System or as otherwise provided by Ticketfly relating to Event data entry.

2.3     Partner is responsible for its own Internet access. Ticketfly bears no responsibility for the cost of such Internet access, service interruptions or functionality impairment caused by corporate firewalls, defects, or other problems or obstacles in a third party's software.

2.4     Partner shall retrieve all account information from its online account via the Internet and shall telephone Ticketfly for accessible account information only if extenuating circumstances exist, such as an Internet service interruption or outage.

2.5     Partner shall make sure that all Partner and Venue data is accurate and up-to-date at all times and shall make Ticketfly aware of any changes in a timely manner.

2.6     Partner agrees to adhere to all local, state and federal laws regarding the use of copyrighted material and other intellectual property, including all Content that Partner and its affiliates upload into the Ticketfly System. Partner also agrees to adhere to all laws regarding email and mobile marketing, including but not limited to the most current version of the Federal Communications Commission's CAN-SPAM Act. The self-service features afforded to Partner notwithstanding, Ticketfly retains the right to review all Content and listings of Events entered into the Ticketfly System and to remove any Content that does not comply with these Terms and Conditions.

2.7     Partner will not charge a higher Ticket Face Price through Ticketfly than Partner charges for Tickets sold for the same Event via any other purchase mode or location.

2.8     Partner agrees that Ticketfly's call center shall be advertised for the sole purpose of purchasing Tickets to Partner's Events. Partner shall in no way advertise Ticketfly or Ticketfly's telephone number(s) as a source of general Event information.

2.9     In the event that Ticketfly provides equipment to Partner, Partner agrees to (1) use the equipment solely for the purposes related to the Ticketfly Services as anticipated by the Agreement, (2) maintain the equipment in good condition and notify Ticketfly immediately if the equipment is lost, stolen or becomes damaged, (3) return equipment immediately upon termination of the Agreement and (4) reimburse Ticketfly immediately in the event of damage or loss of the equipment.  Partner agrees that in the event of termination of the Agreement, Ticketfly may withhold any final settlement payments until the equipment is returned to Ticketfly in good working order.

2.10    In the event that Ticketfly provides Partner with Ticketfly Employees, Partner understands that Ticketfly Employees will solely assist Partner in setting up box office and/or ticket scanning equipment. Ticketfly Employees will not run errands, sell Tickets, scan Tickets, or distribute Will-Call Tickets. ▮▮▮

**3. Purchaser Data/Opt-Outs.** Each of Partner and Ticketfly has rights in the personally identifiable information with respect to persons who actually purchased tickets to Partner's Events through Ticketfly ("Purchaser Data"), subject to the terms hereof. Ticketfly retains rights in data that is collected by Ticketfly outside of transactions under this Agreement, regardless of whether such data is redundant of Purchaser Data. Partner agrees to use the Purchaser Data only in compliance with all applicable laws and administrative rulings and in accordance with Ticketfly's Privacy Policies and Partner's own posted privacy policies. Ticketfly also requires that Partner include in any email communications that Partner may make based on the Purchaser Data a mechanism to provide the recipient with the right to opt-out from receiving further communications from Partner and that Partner honor such opt-out preferences. Ticketfly shall limit access to Purchaser Data to those employees with a need to access this information and shall instruct those employees that this information is proprietary to Partner and must be maintained in strict confidence.  Ticketfly shall not disclose Purchaser Data to any third-party and shall take commercially reasonable measures to prevent other users of the Ticketfly system from accessing Partner's Purchasing Data and otherwise keep this information confidential.  Ticketfly shall provide Partner with notice in writing of any subpoena or other process requiring production of Purchaser Data as soon as possible after service of any such process.

**4. Intellectual Property.**

4.1     Partner Content: Any Content posted on the Ticketfly System by Partner shall remain such Partner's sole and exclusive property, and Partner shall be solely responsible for its Content and the consequences of posting or publishing it. When Partner posts Content on the Ticketfly System, Partner agrees to grant Ticketfly a worldwide, limited, non-transferable, non-exclusive license to use such Content owned by Partner in connection with its provision of the Services to Partner during the Term (and all media services affiliated with the Services) solely for the purposes of operating, maintaining, marketing, evaluating and improving

the Services provided to Partner during the Term.   By posting Content to the Ticketfly System, Partner hereby represents and warrants that it has the right to post that Content and to grant the foregoing rights to Ticketfly. Artist content such as photographs and biographies posted by Partner to the Ticketfly System will be accessible and usable by all users of the Ticketfly System as part of Ticketfly's Artist Database. Partner represents and warrants that it has the right to use and distribute any Content that it posts to the Ticketfly System.

4.2     Ticketfly System:  Ticketfly owns or validly licenses all proprietary rights in and to the Ticketfly System, including patent, copyright, trade secret, trademark, and other proprietary rights, including but not limited to the ticketing software, and any corrections, bug fixes, enhancements, updates or other modifications, including custom modifications, whether made by Ticketfly or any other party (collectively, "Ticketfly's Proprietary Rights"). Partner agrees that it will not take, or permit any other person or entity to take, any action that would jeopardize or otherwise be contrary to Ticketfly's Proprietary Rights, including but not limited to disassembling, cloning, decompiling, altering or reverse engineering the Ticketfly System.

4.3     Brands:  Except as otherwise provided, each Party owns all proprietary rights in their respective brands, including without limitation trademark rights. Each Party agrees that, except as otherwise expressly permitted in the Agreement, it will not take any action that would infringe, dilute or conflict with the other Party's ownership rights in its brands. Each Party grants the other Party the non-exclusive right to use the other's logos, trademarks and other branding for the purposes of promoting the services enumerated in the Agreement. Neither Party shall use any content it creates that contains the other party's trademarks, logos or brands without first confirming that the depictions of these trademarks, logos or brands is accurate and acceptable, and shall never use the other Party's trademarks, logos or brands in a negative manner or in a manner that is likely to damage the goodwill associated therewith. To the extent of Partner's right to do so, Partner hereby grants to Ticketfly the right, in Ticketfly's reasonable discretion, to advertise its Events and the availability of Tickets and, in connection therewith, to use the name and logo of Partner, the Event, the Venue and all other information respecting the Event. Ticketfly, in its reasonable discretion, may promote and advertise on its own behalf, or on behalf of Partner.

4.4     DMCA Notice:  Ticketfly respects the intellectual property of others. It may, in appropriate circumstances and at its discretion, disable and/or terminate the accounts of users of Partner who repeatedly infringe others' rights. If a Partner believes that its work has been copied in a way that constitutes copyright infringement, or that its intellectual property rights have been otherwise violated, Partner will provide the following information to the Company's copyright agent:

- an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;
- a description of the copyrighted work or other intellectual property that Partner claims has been infringed;
- a description of where the material that Partner claims is infringing is located on the Ticketfly System;
- Partner's address, telephone number, and email address;
- a statement by Partner that Partner has a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law;
- a statement by Partner, made under penalty of perjury, that the above information in Partner's notice is accurate and that Partner is the copyright or intellectual property owner or are authorized to act on the copyright or intellectual property owner's behalf.
- The Company's agent for notice of claims of copyright or other intellectual property infringement can be reached as follows:

By mail:
Copyright Agent
Ticketfly, LLC
111 Townsend Street
San Francisco, CA 94107
By email: legal@ticketfly.com

## 5. Refunds.

5.1     Cancelled Events: If any Event for which Ticketfly sold Tickets is cancelled, postponed, modified (e.g., substitute acts) for any reason (each, a "Cancelled Event"), or Ticketfly receives a high volume of complaints for a particular event, Ticketfly may withhold from the Account Balance the amount of the total ticket sales for the Cancelled Event for no more than forty-five days (45) from the cancellation, postponement, modification or the receipt of complaints for distribution by Ticketfly to Ticket purchasers entitled to refunds. For purposes of the Agreement, the term "Account Balance" shall mean the amount of funds held at any time by Ticketfly on account of Ticket Sales for all Events, less the amount of Ticket Sales proceeds which Ticketfly is entitled to retain hereunder. If at any time, the Account Balance is not sufficient to pay for anticipated refunds or Chargebacks (as defined below), Partner shall deliver the amount of such deficiency ("Deficiency Amount") to Ticketfly no later than twenty-four (24) hours after notice by Ticketfly to Partner. Ticketfly shall have the right to offset any Deficiency Amount against any amounts held by Ticketfly on behalf of Partner. Partner authorizes Ticketfly to refund the Ticket Face Price and Ticket Fees at the original point of purchase.

5.2     Chargebacks: Partner shall be responsible for any Chargebacks Ticketfly receives from its merchant bank in connection with the Events. Ticketfly reserves the right to hold the Account Balance due, deduct Chargebacks from Settlements or to bill Partner for up to twelve (12) months after the occurrence of an Event. For purposes of the Agreement, "Chargebacks" shall mean

CONFIDENTIAL / [INITIALS]                                5
LEGAL\29135435\1

the amounts that the merchant bank is charged back by a cardholder or a card issuer under the card organization's rules (e.g. cardholder dispute, fraud, declined transaction, returned Tickets for Cancelled Events, etc.).

Ticketfly will notify Partner if Ticketfly will hold any Settlement amounts as a chargeback reserve at the time the respective Event is created in the Ticketfly System and tickets are available for sale.

5.3     Insolvency; Security for Repayment: Partner shall provide immediate written notice to Ticketfly in the event it files any voluntary or involuntary petition under the bankruptcy or insolvency laws or upon any appointment of a receiver for all or any portion of Partner's business or the assignment of all or substantially all of the assets of Partner for the benefit of creditors. The Parties agree that the Agreement constitutes a financial accommodation by Ticketfly to Partner as such term is utilized in 11 U.S.C. § 365.

5.4     Buyer Complaints; Layaway Orders: In the event Ticketfly receives a demand for a refund for Event (other than a Cancelled Event) from a Buyer (a "Refund Request"), Ticketfly shall notify Partner and, if Partner approves the Refund Request, Ticketfly shall be authorized to retain the face value of the ticket and Ticket Fees subject to the complaint(s) from the Settlement for such Event until the complaints are resolved. If Partner does not approve the Refund Request, then Ticketfly may refer such complaints to Partner. In the event Partner offers a layaway payment plan to a Buyer, if the Buyer should not complete making the required payments, Partner will refund amounts paid up to such point in time.

5.5     Other: Partner may authorize Ticketfly to grant refunds for any other reason. Ticketfly may effectuate such a refund and in such event Ticketfly may deduct the amounts of such refunds from Settlement.

**6. Taxes.** Partner is responsible for all taxes, including any city, county, state or federal income, sales or use taxes related to the Ticketfly Services, but not including, as relates to income of a party, that portion of Ticket Fees retained by Ticketfly. Partner is solely responsible for including all applicable taxes in the Ticket Face Price and for remitting appropriate taxes to the proper tax authorities.

**7. Representations and Warranties.**

7.1     Each Party represents, warrants and covenants to the other that:

(a) It is duly organized and in good standing under the laws of its state of organization and has the requisite power to enter into and perform the Agreement;

(b) The Agreement has been duly authorized, executed and delivered by it and constitutes a valid, legal and binding agreement, enforceable in accordance with its terms;

(c) The entering into and performance of the Agreement will not violate any judgment, order, law, regulation or agreement applicable to such Party or any provision of such Party's charter or bylaws, or violate the rights of any third party, or result in any breach of, or constitute a default under, any other agreement to which they are a party, including, without limitation, any agreement of Partner's for the sale or other disposition of Tickets for an Event; and

(d) The individual executing the Agreement, and whose signature appears below is empowered to execute the Agreement.

7.2     Ticketfly represents, warrants and covenants to Partner that:

(a) Ticketfly has sufficient rights to use and license the Ticketfly System and all elements thereof as contemplated herein;

(b) The operation of the Ticketfly System will be undertaken in a manner reasonably adequate for the performance of Ticketfly's obligations under the Agreement. Neither occasional short-term interruptions of service, which are not unreasonable under comparable industry standards, nor interruptions of service resulting from events or circumstances beyond Ticketfly's reasonable control, shall be cause for any liability or claim against Ticketfly hereunder, nor shall any such occasion render Ticketfly in default under the Agreement;

(c) UNLESS EXPRESSLY SET FORTH HEREIN, TICKETFLY MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER, INCLUDING WITHOUT LIMITATION ADVERTISING AND OTHER SERVICES, AND EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, SYSTEM INTEGRATION AND/OR AVAILABILITY. THE SERVICES PROVIDED HEREUNDER ARE PROVIDED "AS IS". TICKETFLY DOES NOT WARRANT THE RESULTS OF USE OF THE TICKETFLY SYSTEM, AND PARTNER ASSUMES ALL RISK AND RESPONSIBILITY WITH RESPECT THERETO;

(d) PARTNERS SHOULD NOTE THAT IN USING THE TICKETFLY SYSTEM, PARTNER INFORMATION WILL TRAVEL THROUGH THIRD PARTY INFRASTRUCTURES WHICH ARE NOT UNDER TICKETFLY'S CONTROL. TICKETFLY MAKES NO WARRANTY WITH RESPECT TO THE SECURITY OF SUCH THIRD PARTY INFRASTRUCTURES.

7.3.    Partner represents, warrants and covenants to Ticketfly that:

(a) Partner is an agent of each Venue at which any of its Events are held and is duly authorized in such capacity to execute and deliver the Agreement for ticketing services and/or software licensing and to schedule and present Events at the Venue;

(b) Partner is free to enter into and perform the Agreement, and is under no disability, restriction or prohibition, whether contractual or otherwise, with respect to its right to execute the Agreement and perform its obligations under the Agreement;

(c) There is no existing exclusive agreement or understanding between Partner, and/or the Venue or the Venue's owner or operators and any third party respecting the sale of Tickets for any Event held at the Venue that would invalidate or contradict with the Agreement; and

(d) The number of Tickets put on sale for each Event does not and will not exceed legal, fire, or other restrictions of the Venue or of governmental agencies or laws. Partner is solely responsible for maintaining ticket allocations within legal limits and Ticketfly will not be responsible in any way for the over-selling of an Event. Partner will reimburse Ticketfly for all expenses related to the over-selling of an Event and Ticketfly will be entitled to deduct such amounts from Partner's Settlement.

## 8. Limitation of Liability.

(A) EXCEPT FOR A BREACH OF CONFIDENTIALITY, IN FULFILLMENT OF INDEMNIFICATION OBLIGATIONS, IN THE EVENT OF MISAPPROPRIATION OR MISUSE OF THE OTHER PARTY'S INTELLECTUAL PROPERTY, OR IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD),, NEITHER PARTY SHALL BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES WHATSOEVER, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, AND THE LIKE, ARISING OUT OF THE AGREEMENT OR ANY CONFIDENTIAL INFORMATION, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.
(b) TICKETFLY SHALL NOT BE LIABLE TO PARTNER FOR THE PRINTING AND SALE OF COUNTERFEIT TICKETS.
(c) EXCEPT FOR A BREACH OF CONFIDENTIALITY, IN FULFILLMENT OF INDEMNIFICATION OBLIGATIONS, IN THE EVENT OF MISAPPROPRIATION OR MISUSE OF THE OTHER PARTY'S INTELLECTUAL PROPERTY, OR IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD), NEITHER PARTY'S AGGREGATE LIABILITY ARISING UNDER OR WITH RESPECT TO THE AGREEMENT OR THE SUBJECT MATTER HEREOF SHALL EXCEED THE TOTAL TICKET FEES EARNED BY TICKETFLY UNDER THE AGREEMENT.

## 9.  Indemnity and Insurance.

9.1    Partner shall indemnify Ticketfly and its successors, assigns, officers, directors, employees and agents ("Ticketfly's Indemnitees") against and hold harmless and defend from, any and all claims, damages, actions, losses, liabilities, costs and expenses, foreseen or unforeseen, of any kind, including attorney fees ("Damages"), imposed on, incurred by, or asserted against Ticketfly's Indemnitees occurring as a result of, or in connection with, a) any Event of Default (as defined below) under the Agreement by Partner; b) any Event held or scheduled to be held at the Venue, including but not limited to physical damage or personal harm incurred in connection therewith; c) any cancellation of an Event by Partner, d) Partner's failure to allocate a sufficient number of Tickets for an Event, e) Partner's misuse of the Ticketfly System    f) Partner's use of any Buyer's profile information or communication with any Buyer, or g) inaccurate Event information on the Ticketfly system, including but not limited to Event availability, or any oversale of an Event, to the extent that the information giving rise to the inaccuracy or oversale was input into the Ticketfly System by or at the direction of Partner, except to the extent that any such claim under subsections a) through h) relates to Ticketfly's gross negligence or willful misconduct with respect thereto.

9.2    Ticketfly shall indemnify Partner and its successors, assigns, officers, directors, employees and agents ("Partner's Indemnitees") against and hold harmless and defend from, any and all Damages, imposed on, incurred by, or asserted against Partner's Indemnitees occurring as a result of, or in connection with, a) any Event of Default (as defined below) under the Agreement by Ticketfly;  b) any alleged patent, trademark or copyright infringement asserted against Partner's Indemnitees with respect to Partner's authorized use of the Ticketfly System,; (c) any claims arising out of any inaccurate information on the Ticketfly system as to Event availability or any oversale of an Event, solely to the extent that such oversale or inaccurate information is the fault of Ticketfly or arises from a defect in the Ticketfly System, and/or (c) any Damages arising from Ticketfly's gross negligence or from a material breach of Ticketfly's obligations under this Agreement, except to the extent any such claim under subsections (a), (b), or (c) relates to Partner's gross negligence or willful misconduct.

Confidential                                                                                        IMP_SUB-0005995

**DX-0119.0007**

9.3 Ticketfly shall be named as additional insured or additional loss payee, as appropriate, on all liability and property insurance of Partner and such policies shall contain such additional endorsements as may be reasonably required by Ticketfly.

**10. Confidentiality.** The Parties hereby acknowledge that, in the course of exercising their respective rights or carrying out their respective duties described in this Agreement, either may come into possession of certain confidential information about the other in which the other has a proprietary interest. The Parties hereby agree that such confidential information, which shall include the terms of this Agreement, shall be maintained by the Parties on a confidential basis and shall not be disclosed to any third party without the prior written consent of each other party, except as required by law or a court order of competent jurisdiction.

**11. Severability.** If one or more provisions of the Agreement are held by a court of law to be invalid or unenforceable, such provisions or portions thereof shall be severed herefrom. The balance of the Agreement shall remain intact in accordance with its terms.

**12. Termination; Survival.**

12.1 The Agreement may be terminated by either Party in the event of any material default in or material breach of the terms and conditions of the Agreement by the other Party, after the other Party has received written notice of default and thirty (30) business days (or ten (10) business days, in the case of a monetary default) to cure such default (each such occurrence, after the expiration of such cure period, shall be an "Event of Default"); or the filing of any voluntary or involuntary petition against the other Party under the bankruptcy or insolvency laws of any applicable jurisdiction, which petition is not dismissed within sixty (60) days of filing, or upon any appointment of a receiver for all or any portion of the other Party's business, or any assignment of all or substantially all of the assets of such other Party for the benefit of creditors.

12.2 The Agreement may be terminated by Ticketfly in the event any act by Partner infringes on or threatens to cause any infringement of any Ticketfly (or Ticketfly licensor) intellectual property or other property right, including without limitation, any copyright, license right or trade secret right, and Partner fails to refrain from so acting within ten (10) business days' written notice from Ticketfly.

12.3 Partner may terminate the Agreement in its sole and absolute discretion by providing written notice of termination to Ticketfly in the event that, (i) at any point during the Term of this Agreement, Andrew Dreskin is no longer employed by Ticketfly or Pandora Media, Inc. ("Pandora"), (ii) Ticketfly is no longer a part of Pandora or any successors, (iii) there is an acquisition of Pandora or any merger or other change of control of Pandora, (iv) Pandora, through Ticketfly, is no longer in the business of live events ticketing, or (v) Partner is obligated, against its will, by Ticketfly or Pandora, to participate in the business of secondary ticketing. In the event of termination under this Section 12.3, Partner agrees that Partner will repay to Ticketfly all RSA Payments made to Partner but not yet recouped by Ticketfly as of the date of termination.

12.4 Upon the effective date of any termination or expiration of the Agreement, Sections 4, 7, 8, 9, 11 and 16 of this Exhibit and Section 8 of the Agreement shall remain in full force and effect; each Party shall immediately cease the use of the other Party's intellectual property; and each Party shall return, or at the other Party's request, destroy all copies of confidential information, and all other property belonging to and/or received from the other Party.

**13. Relationship of the Parties.** Each Party is an independent contractor and not an agent or partner of, or joint-venturer with, the other Party for any purpose other than as set forth in the Agreement. Neither Party by virtue of the Agreement shall have any right, power, or authority to act or create any obligation, express or implied, on behalf of the other Party.

**14. Notices.** Any notices required to be given under the Agreement must be sent to each Party, in writing, at the address set forth immediately below the signature line hereto or at such address as may be provided by each Party in writing from time to time, by certified or registered mail, return receipt requested or by an overnight courier. Notices will be deemed effective the day following sending if sent by overnight courier or five days after sending if sent by certified or registered mail.

**15. Binding Agreement.** The terms, conditions, provisions and undertakings of the Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective successors and permitted assigns; provided, however, that the Agreement shall not be binding until executed by each of the Parties.

**16. Amendments/Entire Agreement.** The Agreement shall not be changed, modified or amended in any respect without the mutual written consent of both Partner and Ticketfly. The Agreement contains the entire understanding between the Parties and supersedes all prior negotiations, representations, understandings or agreements.

**17. Applicable Law, Jurisdiction and Attorney's Fees.** The Agreement shall be interpreted and governed by the laws of the State of Delaware, without reference to conflict of laws principles. Each of the Parties agrees that any claim arising out of this Agreement may be pursued only in the state courts and the United States federal courts located in the State of Delaware . Each such Party hereby consents thereto, and hereby waives any right it may have to object to venue to the extent that any proceeding is conducted in accordance with the foregoing provision. The prevailing party for any such action shall be entitled to recover the reasonable and necessary attorneys' fees incurred in the action.

CONFIDENTIAL / [INITIALS]    8
LEGAL\29135435\1

**DX-0119.0008**

DocuSign Envelope ID: 4687C4D8-5728-4C6B-AC93-FEB2467C5C05

**18. Assignment.** The Agreement may not be assigned by either Party without the prior written consent of the other Party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, and subject to Section 12.3 above, either Party may assign the Agreement to an affiliate or to a successor-in-interest in connection with a merger, reorganization, consolidation or sale of relevant business assets. Any assignment other than an assignment in accordance with the foregoing sentences will be null and void. In the event of assignment pursuant to this section, this Agreement will be binding on the assignee as if the assignee were Partner.

**19. Legal Review.** Each of the Parties has had the opportunity to have its legal counsel review the Agreement on its behalf. If an ambiguity or question of intent arises with respect to any provision of the Agreement, the Agreement will be construed as if drafted jointly by the Parties. The Parties expressly agree that the construction and interpretation of the Agreement shall not be strictly construed against the drafter.

**20. Force Majeure.** The act of any party required by the Agreement to be done within a specified time shall be subject to excusable delays. The term "excusable delays" shall be deemed to mean any delays caused by or due to fire, the elements of nature, casualties, terrorist events, strikes, walkouts or other labor troubles, shortages of equipment or material or any cause, whether similar or dissimilar to the foregoing, beyond the control of the party so delayed, which effects the performance of such party; provided, however, in no circumstance shall the monetary inability of Ticketfly or Partner to perform any covenant, agreement or other obligation contained in the Agreement be construed to be an event of force majeure. Provided, further, in the event of any such delay affecting the entire Ticketfly system continuing for thirty (30) consecutive days, either party shall have the right to terminate the Agreement upon five (5) days written notice to the other party, and any amounts owing to any party hereunder shall become due and paid in full, whether or not then due and payable, with such notice.



CONFIDENTIAL / [INITIALS]
LEGAL\29135435\1

Confidential

IMP_SUB-0005997

**DX-0119.0009**



**MEMBER INFORMATION**

| | |
|---|---|
| **Legal Name:** | SEE EXHIBIT B ATTACHED |
| **DBA:** | |
| **Mailing Street Address:** | |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Website:** | |
| **Main Office Telephone:** | |
| **Main Office Fax:** | |
| **Business Owners:** (Greater than 5%) | |

### Primary Contact (Ticketing & Promoter Tool)

| | |
|---|---|
| **Full Name:** | SEE EXHIBIT B ATTACHED |
| **Direct Line:** | |
| **Cell Phone:** | |
| **Email:** | |

### Primary Contact (Marketing & Website)

| | |
|---|---|
| **Full Name:** | SEE EXHIBIT B ATTACHED |
| **Direct Line:** | |
| **Cell Phone:** | |
| **Email:** | |

Ticketfly, LLC.  |  www.ticketfly.com

# TICKETFLY

**A**

**Venue Name:** SEE EXHIBIT C ATTACHED

**Mailing Address:**

**Capacity:**

**Reserved Seating:** GA Only

**Projected Annual Advance Sales (Approximate):**

---

**B**

**Venue Name:** SEE EXHIBIT C ATTACHED

**Mailing Address:**

**Capacity:**

**Reserved Seating:**

**Projected Annual Advance Sales (Approximate):**

---

**C**

**Venue Name:** SEE EXHIBIT C ATTACHED

**Mailing Address:**

**Capacity:**

**Reserved Seating:**

**Projected Annual Advance Sales (Approximate):**

---

**D**

**Venue Name:** SEE EXHIBIT C ATTACHED

**Mailing Address:**

**Capacity:**

**Reserved Seating:**

**Projected Annual Advance Sales (Approximate):**

---

**E**

**Venue Name:** SEE EXHIBIT C ATTACHED

**Mailing Address:**

**Capacity:**

**Reserved Seating:**

**Projected Annual Advance Sales (Approximate):**

Ticketfly, LLC. | www.ticketfly.com

# TICKETFLY

**CLIENT ACH FORM**
(For Direct Deposit Purposes)

| | |
|---|---|
| **Bank Name:** | SEE EXHIBIT D ATTACHED |
| **Routing Number:** | |
| **Account Number:** | |
| **Name on Account:** | |
| **Bank Address:** | |
| **Bank Phone #:** | |

| | |
|---|---|
| **Business Account:** | **Personal Account:** |

| | |
|---|---|
| **Checking Account:** | **Savings Account:** |

Confidential

Schedule 1



**DX-0119.0013**

Schedule 1



Confidential

IMP_SUB-0006002

**DX-0119.0014**



Schedule 1



**DX-0119.0016**

Schedule 1



**DX-0119.0017**

IMP_SUB-0006006

**DX-0119.0018**



**MEMBER INFORMATION
EXHIBIT B**

| | |
|---|---|
| **Legal Name:** | I.M.P. Inc. |
| **Mailing Street Address:** | 6112 Lenox Road |
| **City:** | Bethesda |
| **State:** | MD |
| **Zip:** | 20817 |
| **Website:** | 930.com |
| **Main Office Telephone:** | ▮▮▮▮▮▮ |
| **Main Office Fax:** | N/A |
| **Business Owners:** (Greater than 5%) | ▮▮▮▮▮▮ |
| **Affiliates** | Sledge, Inc. (9:30 Club) I.M.A., Inc. (Merriweather Post Pavilion) I.M.T., LLC (Lincoln Theatre) It's My Venue, LLC (Wharf Hall) It's My U Street, LLC (9:30 Presents at U Street Music Hall) |

**DX-0119.0019**

**Primary Contact (Ticketing)**

| | |
|---|---|
| **Full Name:** | Dante Piccone (I.M.P., I.M.A., I.M.V.) |
| **Direct Line:** | ███████ |
| **Cell Phone:** | ███████ |
| **Email:** | ███████ |
| **Full Name:** | Christine Gilroy (Sledge, I.M.T., I.M.U.) |
| **Direct Line:** | ███████ |
| **Cell Phone:** | ███████ |
| **Email:** | ███████ |

**Primary Contact (Marketing & Website)**

| | |
|---|---|
| **Full Name:** | Dustin Sugar-Moore |
| **Direct Line:** | ███████ |
| **Cell Phone:** | ███████ |
| **Email:** | ███████ |

**Financial Contact (Accounting)**

| | |
|---|---|
| **Full Name:** | Christopher Miller |
| **Direct Line:** | ███████ |
| **Cell Phone:** | ███████ |
| **Email:** | ███████ |

IMP_SUB-0006008

**DX-0119.0020**

# TICKETFLY

**LIST OF VENUES & EVENTS**
**EXHIBIT C**

**A**

| | |
|---|---|
| **Venue Name:** | 9:30 Club (Sledge, Inc.) |
| **Venue Address:** | 815 V Street NW, Washington, DC 20001 |
| **Capacity:** 1,200 | |
| **Reserved Seating:** N/A | |
| **Website:** | 930.com |

**B**

| | |
|---|---|
| **Venue Name:** | Merriweather Post Pavilion (I.M.A.) |
| **Venue Address:** | 10475 Little Patuxent Parkway, Columbia, MD 21044 |
| **Capacity:** 15,000 | |
| **Reserved Seating** 4,432-4,915 | |
| **Website:** | merriweathermusic.com |

**C**

| | |
|---|---|
| **Venue Name:** | Lincoln Theatre (It's My Theatre, LLC) |
| **Venue Address:** | 1215 U Street NW, Washington, DC 20009 |
| **Capacity:** 1,225 | |
| **Reserved Seating** 1,225 | |
| **Website:** | thelincolndc.com |

**D**

| | |
|---|---|
| **Venue Name:** | U Street Music Hall (I.M.U., LLC) |
| **Venue Address:** | 1115 U Street NW, Washington, DC 20009 |
| **Capacity:** 500 | |
| **Reserved Seating** N/A | |
| **Website:** | 930.com |

**E**

| | |
|---|---|
| **Venue Name:** | Wharf Hall (It's My Venue, LLC) |
| **Venue Address:** | 901 Wharf St SW, Washington, DC 20024 |
| **Capacity:** 6,000 | |
| **Reserved Seating** | |
| **Website:** | theanthemmusic.com |

Confidential

IMP_SUB-0006009

**DX-0119.0021**

# TICKETFLY



**DX-0119.0022**



**CLIENT ACH FORM**
**(For Direct Deposit Purposes)**
**EXHIBIT D**



IMP_SUB-0006011

**DX-0119.0023**



**CLIENT ACH FORM**
**(For Direct Deposit Purposes)**
**EXHIBIT D**



IMP_SUB-0006012

**DX-0119.0024**





# TICKETFLY

**CLIENT ACH FORM**
**(For Direct Deposit Purposes)**
**EXHIBIT D**



**DX-0119.0026**



## COMPANY OR INDIVIDUAL CREDIT
## VERIFICATION FORM



IMP_SUB-0006015

**DX-0119.0027**