**EVENT AGREEMENT-PART I**

THIS **EVENT AGREEMENT–PART I** (the "Event Agreement") is entered into on this _____ day of July 2023, by and between It's My Amphitheater, Inc. d/b/a Merriweather Post Pavilion ("LICENSOR") (collectively, "LICENSOR"), and the LICENSEE/AEG whose name is set forth below. This Event Agreement, together with the STANDARD TERMS-PART II ("TERMS"), Addendums A and B attached hereto, constitutes the agreement between LICENSOR and LICENSEE relating to the license of Merriweather Post Pavilion for the Event described below. In consideration of the foregoing, LICENSOR and LICENSEE hereby agree as follows:

1. The name, address, phone, fax and e-mail of the person or organization using/renting the Premises (the "LICENSEE") is:

Name: AEG Presents Productions, LLC ("LICENSEE")

Address: 425 W 11th Street, Suite 400, Los Angeles, CA 90015

Phone: [REDACTED] (Lauzier) [REDACTED] (Bell)
E Mail: clauzier@aegpresents.com, cbell@aegpresents.com
Contact Person: Frederick Cody Lauzier, Chaviante Bell

2. The event to be held by LICENSEE and LICENSOR (the "Event") is: Illenium, an AEG Presents Event between Licensee and Licensor. LICENSEE shall contract with Artists, handle deposits and settlements.

3. The dates and times of the Event are as follows:

Date: To occur July 15, 2023 or such other mutually approved dates.

Times: 430p gates/6p show (11pm strict curfew)

4. As required by the TERMS attached hereto in Addendum A , the LICENSEE shall obtain insurance to cover its activities in the Premises during the Event (including load-in, load-out, set-up and take-down days) and provide proof of insurance in the amounts contained in the Insurance Requirements section of Addendum A (Insurance Information Sheet) incorporated herein by reference and made a part hereof. The language set forth in the "Additional Insured Parties For Certificate of Insurance" section of the Insurance Information Sheet shall be used to describe the additional insureds under the commercial general liability and comprehensive automobile policy to be obtained by LICENSEE.

5. If LICENSEE intends to use outside contractors for the Event, any such contractor shall maintain the same insurance coverages set forth above and shall name the same additional insureds as set forth above.

6. The TERMS attached hereto are hereby incorporated herein by this reference and are made a part hereof.

7. This Event Agreement shall be construed and enforced under the laws of the State of Maryland.

No. 1:24-cv-03973-AS
Defs' Trial Exhibit
**DX-0865**



DocuSign Envelope ID: 349E76D4-E969-4CB0-A45E-6C33A774C34E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 2 of 14

2

Confidential IMP_SUB-0005134

DX-0865.0002

DocuSign Envelope ID: 349B76D4-F969-4080-A45E-6C33A7743C4E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 3 of 14

3

Confidential IMP_SUB-0005135

DX-0865.0003

DocuSign Envelope ID: 349B76DA-E969-43E0-A25E-0C33A7143C4E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 4 of 14

4

Confidential IMP_SUB-0005136

DX-0865.0004

DocuSign Envelope ID: 349B76D4-E969-40E0-A45E-6633A7743C4E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 5 of 14

5

Confidential IMP_SUB-0005137

DX-0865.0005





DocuSign Envelope ID: 349B7604-E969-4930-A25E-6B33A7143C4F Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 6 of 14

6

Confidential IMP_SUB-0005138

DX-0865.0006



DocuSign Envelope ID: 349B76DA-E969-49D0-A25F-5B33A7143C4E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 7 of 14

7

Confidential IMP_SUB-0005139

DX-0865.0007



DocuSign Envelope ID: 349B76DA-E969-49E0-A25E-6B33A7D43C4E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 8 of 14

8

[redacted]

Confidential IMP_SUB-0005140

DX-0865.0008

DocuSign Envelope ID: 349B76D4-E969-4950-A35E-C833A7143C4E Case 1:24-cv-03973-AS Document 1173-2 Filed 03/09/26 Page 9 of 14

9

[redacted]

Confidential IMP_SUB-0005141

DX-0865.0009

STANDARD TERMS
**PART II**

THESE STANDARD TERMS –PART II ("TERMS") are a part of the agreement between LICENSOR and the LICENSEE, whose name is set forth on the Event Agreement –Part I (the "Event Agreement"), to which these TERMS are attached. The Event Agreement and these TERMS together constitute the agreement ("Agreement") between LICENSOR and LICENSEE relating to the Event described in the Event Agreement. In consideration of the foregoing and the covenants and agreements contained herein, LICENSOR and LICENSEE agree as follows:

**1. License.**

LICENSOR hereby grants to LICENSEE a license to use Merriweather Post Pavilion (the "Premises") for the Event in accordance with the provisions hereof.

**2. Food and Beverage Sales.**

(a) Any sale or distribution of food or beverage products (including catering, except that LICENSOR agrees that LICENSEE may retain a 3rd party vendor if Licensee sponsor has a private hosting event) in connection with the Event shall remain under sole control of LICENSOR. LICENSEE shall not have any control over the sale or distribution of food or beverage products in or around the Premises at any time, including during the Event. LICENSEE shall not have or assert any right to share in the revenues or receipts from such food and/or beverage concessions, and all such revenues and receipts shall be retained by LICENSOR. Notwithstanding the foregoing, Artist may travel with a tour caterer and shall pay no fee for such right with the understanding tour caterer to be self-contained and provide meals at no cost to Licensor for local union and all day event staff providing adequate clean-up.

**3. Insurance.**

(a) Prior to the commencement of the Event, LICENSEE will provide LICENSOR with a certificate or certificates of insurance evidencing that LICENSEE has caused to be written: Commercial General Liability (including contractual liability and products/completed operations liability) and comprehensive automobile bodily injury and property damaged coverage with limits of at least those designated in Addendum A. Said policies shall specify as additional insureds those entities and persons so designated in Addendum A. Such Policy shall contain a provision that it may not be canceled or non-renewed unless at least ten (10) days notice thereof has been provided to LICENSOR. In the event that LICENSEE does not furnish LICENSOR with the certificate or certificates specified in this Section 3(a), LICENSOR may procure such insurance and obtain reimbursement therefore from LICENSEE or withhold the cost from funds belonging to LICENSEE.

(b) LICENSEE shall and does hereby agree to indemnify and hold each party included as LICENSOR, their respective partners, shareholders, directors, officers, employees and agents, and the additional insureds referred to in Addendum A, harmless from and against any loss, damage, cost or expense arising out of or in any way related to the performance by LICENSEE of its duties or obligations under this Agreement or arising out of or in any way related to LICENSEE's, employees', directors', officers', artists' or personal guests' intentional and or negligent acts or omissions in the Premises for the Event. The insurance coverage limits set forth in Section 3(a) above in no way limit the liability of LICENSEE under this Section 3(b). Notwithstanding anything to the contrary, this indemnity shall not extend to any claim to the extent such arises out of any negligent act or omission, or any misconduct of LICENSOR, its agents, representatives, employees and/or any of the other Licensor Parties (as defined in Addendum A ).

(c) LICENSOR shall and does hereby agree to indemnify and hold LICENSEE, and its respective partners, shareholders, directors, officers, employees and agents,

harmless from and against any loss, damage, cost or expense arising out of or in any way related to performance by LICENSOR of its duties or obligations under this Agreement or arising out of or in any way related to the intentional and/or negligent acts or omissions in the Premises of any of the LICENSOR PARTIES, or their employees', directors', agents, representatives or officers'. Notwithstanding anything to the contrary, this indemnity shall not extend to any claim to the extent such arises out of any negligent act or omission, or any misconduct of LICENSEE, its agents, representatives, or employees. In no event shall LICENSOR or LICENSEE be liable for any damages resulting from a force majeure or act of God, which could not reasonably have been foreseen and provided for.

(d) LICENSEE shall also provide applicable workers compensation insurance as required by applicable state law.

4. **Permits.**

LICENSEE agrees to furnish, at its sole cost and expense, all governmental and regulatory permits and other licenses and permits which are required by LICENSEE for the Event, except LICENSOR will file for obtaining Event concert permit

**5. Compliance with Laws.**

(a) LICENSEE shall, at its expense, comply with the requirements of all federal, state, local or municipal laws, orders and regulations and with any lawful direction of public officers which shall impose any duty upon LICENSEE with respect to its use and occupancy of the Premises. In connection with its activities related to the Event, each party agrees to materially comply with all applicable federal, state, and local laws, regulations, and government mandates (including but not limited to those regarding COVID-19), and each of the parties shall take appropriate steps to ensure that its activities and use of the Premises does not negatively impact the safety and welfare of the other party's employees. In addition, until such time as the parties agree to discontinue any such measures, the parties shall each use reasonable measures to implement procedures and protocols to help reduce the spread of COVID-19 at the Merriweather Post Pavilion. Artist's unavailability or inability to perform due to such mandates and/or the measures implemented under this provision shall constitute a Force Majeure event

(b) LICENSEE shall, at its expense, comply with all rules, orders, regulations or requirements of the fire department and LICENSOR's insurance carrier, and shall not do or knowingly permit anything to be done in or about the Premises or bring or keep anything therein except as permitted by such organizations and agencies or any other authority having jurisdiction. LICENSEE agrees not to bring into the Premises any material, substance, equipment or object which is likely to cause damage to the Premises, endanger the life of, or cause bodily injury to, any person in the Premises or which is likely to cause a hazard, and to use best efforts to cause LICENSEE's employees, agents, contractors, performers, exhibitors and artists to comply with such restrictions. Any decorating and decorating material shall be subject to the prior approval of LICENSOR and, if necessary in LICENSOR's sole judgment, the approval of the fire department, and unless so approved, may be prevented or removed by LICENSOR. All decorations and other combustible materials must be flame proofed and LICENSEE shall deliver on request to LICENSOR a flame proofing certificate in the form specified or required by and satisfactory to the appropriate governmental agencies.

6. **Alterations.**

LICENSEE shall not mar, paint, drill into or in any way damage or deface any part of the Premises. LICENSEE shall not make any alterations or improvements in or to the Premises or any part thereof without the prior written consent of LICENSOR, in its sole discretion. If LICENSOR consents to any such alterations or improvements, promptly after the termination of the Event, LICENSEE shall, at its expense, restore the Premises to its condition prior to such alteration. LICENSEE shall be responsible for any costs to repair or replace property at the Premises which is damaged or lost during the Event caused by the negligence or willful

misconduct of the Licensee, ordinary wear and tear excepted, unless caused by the negligence or willful misconduct of the LICENSOR PARTIES.

7. **Ejection.**

LICENSOR has the reasonable right to refuse admission to any undesirable person, or cause any undesirable person to be reasonably and safely removed from the Premises for any reason whatsoever. Any employees, agents, artisans, workmen or performers employed by LICENSEE may be refused entrance to or ejected from the Premises by LICENSOR for uncured noncompliance with any material provision of the Agreement or for reasonably objectionable or improper conduct. No collections, whether for charity or otherwise, shall be made or attempted in the Premises by or with the permission of LICENSEE without the prior written consent of LICENSOR, in its sole discretion. Notwithstanding, no such restriction shall apply to any charitable foundation fee or contribution included in the Event ticket price.

8. **Rules and Regulations.**

LICENSEE shall abide, and shall use best efforts to cause its agents, employees, contractors, licensees, artists, and personal guests to abide, by such reasonable rules and regulations and security procedures as may from time to time be adopted by LICENSOR and provided to LICENSEE or of which LICENSEE is otherwise aware for the use, occupancy and operation of the Premises. Except with respect to security directly engaged by Licensee and/or the Artist, Licensor shall be responsible for preparing and implementing a security plan to protect all persons within the Premises and Licensor owned areas adjacent thereto (e.g., parking lots, plaza areas, etc.), and Licensor shall hire, direct, supervise and assume responsibility for all security personnel. Licensor agrees and acknowledges that at no time and under no circumstance shall Licensee be liable or responsible for the activities and/or actions of the parties providing such security service.

9. **Personal Property; Risk of Loss.**

Unless due to the negligence or willful misconduct of any Licensor Party, LICENSOR shall not be responsible, and LICENSEE waives any right it may have against LICENSOR and its employees and agents, for any loss or damage to personal property placed, used or stored in or about the Premises by LICENSEE, its agents, contractors, employees, guests or invitees. LICENSEE agrees that all of its property or property of others brought or permitted by it in LICENSOR shall be at the risk of LICENSEE, except to the extent loss, theft or damage to property is caused by the negligence or willful misconduct of the LICENSOR. Promptly after the termination of the Event, LICENSEE shall remove from the Premises all property belonging to LICENSEE or persons associated with LICENSEE in the presentation of the Event. If LICENSEE fails to remove such property, except for reasons caused by a Force Majeure or LICENSOR'S default, LICENSOR shall have the right to cause the removal thereof, at LICENSEE's sole risk, cost and expense. LICENSOR shall have no responsibility or liability for losses by LICENSEE, its employees, agents, contractors, guests and invitees, which are occasioned by theft or disappearance of or damage to equipment or other articles of personal property from LICENSOR, unless due to negligence or willful misconduct of the Licensor Parties.

10  **No Representation by LICENSOR.**

The Premises are licensed to LICENSEE in an "as-is" condition based upon the condition of the Premises on the date of this Agreement. Neither LICENSOR, nor any of its employees or agents have made any representations or promises to LICENSEE with respect to the Premises. Licensor shall have the continuing obligation and responsibility to keep and maintain the Premises in good order and repair, ordinary wear and tear excepted. Licensor represents and warrants that the Premises is in material compliance with all applicable laws concerning accessibility, environmental conditions, health and safety, sanitation, and structural condition and design, and based on the foregoing, Licensee accepts the Premises on an "as-is" basis. Licensee acknowledges and agrees that it has satisfied itself that the Premises is suitable for Licensee's

use and that except for the representation and warranty made above, Licensee is not relying upon any statement or representation by Licensor concerning such suitability.

11. **Access To Facilities.**

LICENSOR and its partners and their officers, employees, agents, concessionaires, and their concessionaires' officers, employees and agents, shall at all times during the Event have free access to the Premises, except LICENSOR warrants and agrees that any such access shall not disrupt the Event.

12. **Conduct by Participants. – SEE INDEMNITY AND ALTERATIONS PROVISIONS**

13. **Severability.**

The invalidity or illegality of any part of the Agreement shall not affect the validity or enforceability of any other part of the Agreement and this Agreement shall be construed as if such invalid or illegal parts were omitted.

14. Force Majeure. The failure of any party hereto to comply with the terms and conditions hereof because of a "Force Majeure Occurrence" shall not be deemed a breach of this Agreement. A "Force Majeure Occurrence" shall be defined to include, without limitation, Act of God, strike, labor disputes, war, fire, earthquake, acts of public enemies, acts of terrorism, epidemic (including but not limited to COVID-19), action of federal, state or local governmental authorities (including but not limited to quarantine regulations, forced closures or prohibition of live music events, mass gatherings or other regulations precluding the Event) or an event or reason beyond the reasonable control of a party. In the event of a cancellation of the Event due to a Force Majeure Occurrence, the following shall apply. If the Force Majeure Occurrence prevents either party from performing its obligations hereunder, then the parties agree to reschedule the Event to the first permissible and mutually agreeable date. In the event that the parties are unable to agree on such a date and produce the Event within one (1) year from cancellation then the parties agree that the cancelled Event shall be deemed to have fulfilled initial event for the purposes of the LOI. Licensee's obligations are subject to the Premises having full sellable capacity for the Event. If government restrictions, including those related to the COVID-19 pandemic, reduce the sellable capacity of the Event and/or have a material adverse impact on admission procedures to the Merriweather Post Pavilion, and/or adversely impact Event or Premises operations, then the parties shall meet and confer in good faith to discuss whether to proceed, reschedule, or cancel the Event. If the parties cannot mutually agree, then the government restrictions shall constitute a Force Majeure occurrence and the Event shall be cancelled.
Mutually agreed upon signage regarding COVID-19 shall be placed at each entrance to the Premises, advising that people with symptoms or exposure to COVID-19 should not enter and cautioning that there is an inherent risk of exposure to COVID-19. In addition, if the primary ticketing company for the Event is a company other than Ticketmaster , then the Licensor shall cause the primary ticketing company to include customary waivers and releases related to COVID-19 as part of the ticket sales and transfer process. Regardless of any other language in this Agreement, neither Licensee nor Licensor shall indemnify the other against any COVID related claims.

**15. No Partnership.**

The parties hereto are acting as independent contractors, and the Agreement shall not create a partnership between them.

**16. Non-Discrimination.**

LICENSEE shall(i) not discriminate on the basis of race, color, religion, sex, national origin, age or disability in the sale, lease, rental, use or occupancy of the Premises or any part thereof, (ii) not execute any agreement, lease, conveyance or other instrument whereby the Premises or any part thereof is restricted on the basis of race, color, religion, sex or national origin and (iii) comply with all applicable laws prohibiting discrimination by reason of race, color religion, sex or national origin.

**17. Whole Agreement.**

The Event Agreement (as amended by LICENSEE), attachments referenced therein (as amended by LICENSEE) and these TERMS(as amended by LICENSEE) together constitute the entire agreement between LICENSOR and LICENSEE with respect to the matters provided for herein and supersedes any written agreement or oral understanding previously made or entered into by LICENSOR and LICENSEE relating to the presentation of the Event in the Premises. No statements, assurances descriptions, or promises made or given to LICENSEE by any person shall be binding upon LICENSOR unless expressly contained in this Agreement and/or the Event Agreement, as executed by LICENSEE.

-End-