UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., <br><br> *Defendants.* | Case No. 1:24-cv-03973-(AS) |

**DEFENDANTS' RESPONSE TO PROCEEDING PLAINTIFF STATES' MOTION FOR MISTRIAL AND STAY OF CURRENT PROCEEDINGS**

**PRELIMINARY STATEMENT**

At this point, Live Nation's primary objective is to resolve Proceeding Plaintiffs' outstanding claims without the need for further trial. Proceeding Plaintiffs' motion for mistrial and stay is, by its own terms, in part a request for additional time for a "reasonable opportunity to try to negotiate a resolution of their own claims." ECF No. 1167 ("Mot.") at 14. While Live Nation does not see this situation as meeting normal criteria for a mistrial, after spending the day meeting and conferring with Proceeding Plaintiffs, Live Nation is pleased to represent that the parties have reached the following pragmatic solution to the challenges currently confronting the parties and the Court. Subject to Court approval, Proceeding Plaintiffs and Live Nation have stipulated: To allow time to (ideally) work out remaining differences with Proceeding Plaintiffs, Live Nation drops its objection to their motion for mistrial and stay, provided (a) the Court orders Live Nation and Proceeding Plaintiffs to a mandatory settlement conference or mediation, to take place within 30 days; and (b) in the event not all the Proceeding Plaintiffs' claims are resolved, the parties proceed to a scheduling conference for a new trial at the Court's convenience within 30 days of the conclusion of the Tunney Act proceeding addressing the settlement between Live Nation and the United States.

**BACKGROUND**

Live Nation has been engaging with the federal and state governments in good faith in hopes of resolving this matter for years—indeed, Live Nation held multiple meetings and calls with the Department of Justice ("DOJ") and Plaintiff State representatives and leadership to discuss potential solutions long before the case was ever filed. After the 2024 election, when new leadership was installed at the DOJ, Live Nation made repeated efforts to initiate settlement discussions, but it was not until October 6, 2025, that Live Nation's representatives were afforded a meeting to discuss the potential for a settlement. A little over two weeks later, on October 22,

Live Nation's corporate representative, Mr. Wall, sent the DOJ a proposal for settlement which contemplated that after initial negotiations between Live Nation and the DOJ, the DOJ would engage with the States. The DOJ chose not to respond with a counterproposal until January 29, 2026.

By Plaintiff States' account, representatives from New York and California reached out to Live Nation (Mr. Wall) shortly thereafter, indicating that they "were open to considering a settlement that would address [their] competitive concerns." ECF No. 1167-1, ¶ 4. Mr. Wall said that Live Nation likewise wanted to discuss settlement with Plaintiff States.

Discussions between Live Nation and the DOJ picked up their pace in mid-February. The weekend before trial, Live Nation believed it and the United States were close enough to a deal that it recommended to the DOJ that the parties inform the Court about the status of negotiations first thing Monday, March 2, before jury selection. Live Nation was unable to obtain the DOJ's permission to do so. Jury selection proceeded, and trial began.

## ARGUMENT

Live Nation understands Proceeding Plaintiffs' position to be that they are effectively unable to prosecute this case with a gap in proceedings short enough to retain the current jury. Irrespective of whether that is where they should be, that is evidently where they are. And irrespective of whether that position or anything else they have raised would otherwise be grounds for a mistrial, Live Nation agrees that the parties' overarching goal should simply be to resolve their disputes if possible. That goal, Live Nation believes, is best served not by seeking some incremental leverage by trying to hold Proceeding Plaintiffs' feet to the fire, but by charting a course that allows the parties ample time to discuss and hash out remaining differences, through an orderly and non-chaotic process.

Accordingly, to allow Proceeding Plaintiffs and Live Nation additional time to explore settlement, the parties have stipulated as follows: Live Nation drops its objection to Proceeding Plaintiffs' motion for a mistrial, provided (a) the Court orders Live Nation and Proceeding Plaintiffs to a mandatory settlement conference or mediation, to take place within 30 days; and (b) in the event not all the Proceeding Plaintiffs' claims are resolved, the parties proceed to a scheduling conference for a new trial at the Court's convenience within 30 days of the conclusion of the Tunney Act proceeding. Live Nation believes that such a procedure will grant the parties the best chance of resolving this matter and thereby hopefully obviate the need for further court proceedings and a jury trial.

"Federal courts have wide powers to require parties to consider settlement in good faith." *Aguinda v. Texaco, Inc.*, 1994 WL 716025, at *2 (S.D.N.Y. Dec. 17, 1994). Indeed, "fostering settlement is an important Article III function of the federal district courts," and "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly." *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998). As part of district courts' "'inherent power … to manage their own affairs,'" courts "may compel the parties, including corporate representatives, to attend a settlement conference." *Id.* (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962)); *Bulkmatic Transp. Co. v. Pappas*, 2002 WL 975625, at *2 (S.D.N.Y. May 9, 2002) ("[I]t is well established that a court can require parties to appear for a settlement conference."). Such a conference is particularly warranted "in complex cases involving multiple claims and parties." *In re Atlantic Pipe Corp.*, 304 F.3d 135, 145 (1st Cir. 2002). And it may be ordered at any time. *See, e.g., CEATS, Inc. v. Continental Airlines, Inc.*, 755 F.3d 1356, 1358 (Fed. Cir. 2014) ("During the 8-day jury trial, the parties conducted further mediation sessions.");

3

*FDIC v. White*, 76 F. Supp. 2d 736, 736 (N.D. Tex. 1999) ("Following a five-day trial, the jury returned a verdict in favor of the FDIC and against the Whites. The Court then ordered the case to mediation."); *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1333 (11th Cir. 2016) ("After hearing oral argument, we ordered the parties to take part in a second mediation.").

A court-ordered settlement conference is warranted here. As explained above, Live Nation has sought to resolve this matter with the United States and Plaintiff States for years. Following the settlement with the United States, several Plaintiff States have indicated their agreement to settle on the same terms. Live Nation believes a resolution with the remaining Plaintiff States is within reach if the parties are given additional time to engage in good-faith negotiations—which ultimately may enable the parties "to avoid the uncertainty, expense and delay inherent in a trial." *Glens Falls*, 160 F.3d at 856.

In the event that the court-ordered settlement conference does not result in settlement of all Proceeding Plaintiffs' claims, Live Nation respectfully requests that the Court grant Proceeding Plaintiffs' request to stay this litigation until 30 days after completion of the Tunney Act proceedings.[1] *See* Mot. at 13-16. While Live Nation is prepared to resume its defense of this case whenever convenient for the Court, Live Nation believes that a stay would have the dual benefit of allowing additional time for negotiations while also permitting any remaining Proceeding Plaintiffs the time they believe they need to prepare to litigate their case.

---

[1] Proceeding Plaintiffs propose 15 days, Mot. at 16, but Live Nation submits that 30 days would provide an additional window for negotiations informed by the resolution of the Tunney Act proceedings.

4

## CONCLUSION

Live Nation respectfully foregoes opposition to Proceeding Plaintiffs' motion, in order to invite the orders described herein.

Dated: March 9, 2026

Respectfully submitted,

| | |
|---|---|
| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |

| | |
|---|---|
| Alfred C. Pfeiffer (admitted *pro hac vice*)<br>   *Co-Lead Trial Counsel*<br>David R. Marriott<br>   *Co-Lead Trial Counsel*<br>Timothy L. O'Mara (admitted *pro hac vice*)<br>Jennifer L. Giordano<br>Kelly S. Fayne (admitted *pro hac vice*)<br>Andrew M. Gass (admitted *pro hac vice*)<br>Lindsey S. Champlin (admitted *pro hac vice*)<br>Robin L. Gushman (admitted *pro hac vice*)<br><br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>(415) 391-0600<br><br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br><br>555 11th Street, NW, Suite 1000<br>Washington, D.C. 20004<br>(202) 637-2200<br><br>Al.Pfeiffer@lw.com<br>David.Marriott@lw.com<br>Tim.O'Mara@lw.com<br>Jennifer.Giordano@lw.com<br>Andrew.Gass@lw.com<br>Kelly.Fayne@lw.com<br>Lindsey.Champlin@lw.com<br>Robin.Gushman@lw.com<br><br>*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* | Lauren A. Moskowitz<br>Jesse M. Weiss<br>Nicole M. Peles<br><br>Two Manhattan West<br>375 Ninth Avenue<br>New York, NY 10001<br>(212) 474-1000<br><br>lmoskowitz@cravath.com<br>jweiss@cravath.com<br>npeles@cravath.com<br><br>*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* |

**CERTIFICATE OF COMPLIANCE**

I, Alfred C. Pfeiffer, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Response was prepared using Microsoft Word, and contains 1,279 words. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated:   March 9, 2026

New York, New York

Alfred C. Pfeiffer