# Inner City Press

March 9, 2026

By ECF

Hon. Arun Subramanian, United States District Judge
Southern District of New York, 500 Pearl Street, New York, NY 10007

Re: **Reply in Support of Press Application to Unseal, including in light of belatedly disclosed proposed settlement, in US, et al. v. Live Nation Entertainment, Inc. et al., 24-cv-3973 (AS)**

Dear Judge Subramanian:

Inner City Press has been covering the above captioned case, like many others, since the Complaint was filed in May 2024, and respectfully submits this reply to Live Nation's opposition (Dkt. 1175) to its motion to unseal (Dkt. 1165).

Live Nation's opposition raises one legal argument and is silent on the most important one. Neither the argument it makes nor the one it ignores supports denial of Inner City Press's motion.

## I. Live Nation's 'Not a Judicial Document' Argument Is Circular in the Context of Settlement

Live Nation argues that the exhibits Inner City Press seeks to unseal are not 'judicial documents' under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), because they were never admitted into evidence at trial. The exhibits, Live Nation says, were merely 'prepared' or 'staged' for potential use — and potential evidence is not judicial evidence.

This argument appears to have a fatal flaw in the current context: the reason these exhibits were never admitted is that Live Nation is seeking to this case, as evidence by the March 5 term sheet first disclosed earlier today.

The exhibits were prepared for witnesses — including CEO Michael Rapino and Tixr CEO Robert Davari — who have not yet testified precisely due to the proposed settlement. Live Nation should not be allowed to suppress documents by settling, and then cite the settlement as the legal basis for keeping those documents sealed. That is not a principle the Second Circuit endorsed in *SEC v.*

Inner City Press: In-house SDNY: Room 480, 500 Pearl Street, NY NY 10007
E-mail: Matthew.Lee@innercitypress.com - Tel: 718-716-3540
Regular Mail: Box 130222, Chinatown Station, New York, NY 10013

*TheStreet.com*, 273 F.3d 222 (2d Cir. 2001). (See also *Maxwell*, 929 F.3d 41 (2d Cir. 2019). Those cases addressed documents that were incidental to judicial proceedings — discovery materials and protective order submissions — not exhibits staged for imminent use in a live antitrust trial before a jury.

The exhibits at issue here were not exchanged in discovery and left on a shelf. They were selected by trial counsel, submitted to the Court's Chambers with proposed redactions, and designated for use with specific witnesses in an ongoing jury trial. That is not 'potential evidence akin to documents exchanged during discovery,' Dkt. 1175 at 2 — that is trial preparation at its most concrete, in a case whose trial was already underway. The judicial function these documents served was the Court's evaluation of sealing requests in connection with live trial testimony. That is precisely the kind of judicial function that *Lugosch'*s presumption is designed to reach.

**II. The Circularity Problem Requires a Remedy**

If Live Nation's argument were accepted, it could establish a troubling precedent: a defendant in a major antitrust trial could submit exhibits for sealing treatment, settle the case before those exhibits are used, and then argue that because the exhibits were never admitted, the public has no right to see them. The more consequential the case and the more a defendant wishes to avoid public scrutiny of the evidence against it, the more incentive it would have to settle quickly — and the more completely the public record would be suppressed.

That should not be the law. The Second Circuit in *Lugosch* grounded the public's right of access in the First Amendment, not merely in the technical question of whether a document bears an evidence sticker. The value of access to 'those monitoring the federal courts,' 435 F.3d at 119, is at its highest in a case of this magnitude — a Sherman Act trial involving a company that the government accused of monopolizing the live entertainment industry for millions of Americans. A settlement that leaves that record sealed is not a vindication of legitimate confidentiality interests. It is their weaponization.

### III. Live Nation Does Not Address the Tunney Act

Inner City Press's motion argued that if the parties present a consent decree for the Court's approval under the Tunney Act, 15 U.S.C. § 16, the Court must independently assess whether the proposed decree is in the public interest — and that assessment cannot be conducted on a sealed record. Dkt. 1165 at 4.

Live Nation's opposition appears silent on this point. That silence is telling. The Tunney Act's public interest review is an independent judicial function that exists precisely to protect the public when the government settles an antitrust case. It requires the Court to consider the competitive impact of the proposed decree and whether its terms are adequate. The Court cannot best perform that function, including with input, if the evidence underlying the government's case — the documents that show what Live Nation actually did and what the government was prepared to prove — remains sealed.

Live Nation's own filing acknowledges that the Court's March 6 procedures are intended to 'protect the public's right of access' to documents 'admitted at trial.' Dkt. 1175 at 2. But if there is no more trial — if these documents are never admitted because the case settles — those procedures become a dead letter. The Tunney Act fills that gap, and Live Nation offers no answer to it.

### IV. Conclusion

Inner City Press respectfully requests that the Court grant its motion to unseal, and docket as part of any Tunney Act proceeding, so that the public record of this case is not extinguished by the very settlement that forecloses the trial at which those exhibits would have been seen.

Respectfully submitted,

/s/ Matthew Russell Lee Inner City Press / Fair Finance Watch

cc: All counsel via ECF