UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C.,<br><br>*Defendants.* | Case No. 1:24-cv-03973-(AS)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE DR. ROSA M. ABRANTES-METZ'S DAMAGES OPINION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

LEGAL STANDARD.............................................................................................................4

ARGUMENT .........................................................................................................................5

I.     Because The Court Dismissed The Fan-Facing Product Market And The Nationwide Geographic Market, Any Damages Opinions Premised On Those Markets Should Be Excluded..................................................................................5

CONCLUSION.......................................................................................................................8

<mark>

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bustamante v. KIND, LLC*,
   100 F.4th 419 (2d Cir. 2024) ...........................................................................................5

*Clayton v. Katz*,
   2015 WL 1500248 (S.D.N.Y. Mar. 31, 2015) ................................................................5

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
   817 F.3d 46 (2d Cir. 2016) ......................................................................................1, 5, 6

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993) ........................................................................................................5

*Hughes v. Tobacco Inst., Inc.*,
   278 F.3d 417 (5th Cir. 2001) ..........................................................................................5

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016) ...........................................................................................5

*In re AMR Corp.*,
   527 B.R. 874 (Bankr. S.D.N.Y. 2015) ............................................................................6

*In re Refco Inc. Sec. Litig.*,
   2012 WL 7007795 (S.D.N.Y. Nov. 29, 2012) ............................................................5, 7

*Rodriguez v. Village of Port Chester*,
   535 F. Supp. 3d 202 (S.D.N.Y. 2021) .............................................................................5

## RULES

Fed. R. Civ. P. 26 ...................................................................................................................5, 8

Fed. R. Evid. 401 ....................................................................................................................2, 5

Fed. R. Evid. 402 ....................................................................................................................2, 5

Fed. R. Evid. 702 ................................................................................................................2, 4, 5

**INTRODUCTION**

Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. respectfully move to exclude the damages opinions of Dr. Rosa M. Abrantes-Metz.

As the Court knows, it is Defendants' position that Dr. Abrantes-Metz's damages opinions are inadmissible due to multiple flaws. The damages model cannot tell what ticket purchases are within the various Monetary Relief States' limitations period; it cannot tell to which Monetary Relief States claimed ticket purchases belong; and it cannot tell which claims were made by "natural persons" on whose behalf the States may even seek damages. But now there is a problem of an entirely different magnitude. Dr. Abrantes-Metz only assessed damages in a single relevant market—the *fan-facing* primary ticketing market—and the Court has rejected that market. It is therefore impossible for Dr. Abrantes-Metz to testify and for Plaintiffs to claim that this damages study measures harm in any relevant market that remains in this case.

One cannot overstate how fundamental this is in an antitrust system governed by the rule that harm to competition and damages from restraining competition must be assessed in relation to a relevant market. *See Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016). Dr. Abrantes-Metz readily agreed: "Obviously, if I was going to start damages calculations, I needed to have a market to start calculating damages from." Abrantes-Metz Tr. 73:10-15, ECF No. 722-3. There is no authority that we know of holding that a damages study prepared in relation to one allegedly relevant market can be used as evidence of damages in another market, let alone a market the expert knew about but chose not to study.

Here, Dr. Abrantes-Metz chose to study and measure harm in a single market, Dr. Hill's proposed *fan-facing* market for the provision of primary concert ticketing to fans at major concert venues ("MCVs"). Abrantes-Metz Tr. 27:21-28:9; 31:23-32:4. She assumed that both the product

1

and geographic dimensions of that market would be established at trial. The Court, however, rejected that fan-facing product market and the nationwide geographic market that Dr. Abrantes-Metz's model presupposes. ECF No. 1037 at 26-30. Because Dr. Abrantes-Metz's opinions are inextricably premised on those rejected market definitions, they do not fit the States' surviving case and are irrelevant and inadmissible under Rule 702 and *Daubert*, and under Federal Rules of Evidence 401 and 402.

The States never disclosed a damages model for any *venue-facing* markets; they made a conscious choice to cabin their expert's damages analysis to just one of six markets they were alleging. They cannot now "repurpose" a model designed to measure consumer overcharges in a nationwide fan-facing market into a model for venue-facing markets and the local market dynamics the Court determined are at play here. The Court should exclude Dr. Abrantes-Metz's damages opinions.

## BACKGROUND

The States' liability expert, Dr. Nicholas Hill, claimed to define six separate relevant antitrust markets: "(1) the market for the provision of promotion services to artists at major concert venues []; (2) the market for the provision of concert booking services to major concert venues []; (3) the market for the provision of primary concert ticketing to major concert venues []; (4) the market for the provision of primary ticketing to major concert venues []; (5) the market for the provision of primary concert ticketing to fans at major concert venues []; and (6) the market for the use of major concert amphitheaters by artists []." Abrantes-Metz Rpt. ¶ 31, ECF No. 722-1.

Twenty-five Monetary Relief States retained Dr. Abrantes-Metz to quantify "monetary overcharges, including claims for damages, restitution, and disgorgement, in the primary ticketing market." Abrantes-Metz Rpt. ¶ 20. Dr. Abrantes-Metz did not conduct her own analysis of the

bounds of any relevant markets; she fully relied on Dr. Hill's market definitions. Abrantes-Metz Tr. 32:5-10 ("I rely on Dr. Hill's market definition."). She also "assume[d] antitrust liability" based on Dr. Hill's defined markets. Abrantes-Metz Rpt. ¶ 21.

Dr. Abrantes-Metz's damages model has two components: an estimation step and a two-part application step. The estimation step consists of regression analyses comparing Ticketmaster's and AXS's "retained amounts" at MCVs using nationwide event-level data from 2018 to 2024 (excluding 2020). Abrantes-Metz Rpt. ¶ 217. In simple terms, the estimation step claims Ticketmaster charges venues too much.

She then conducts a pass-through analysis in the alleged fan-facing ticketing market to estimate a range of how much of the alleged Ticketmaster overcharge to venues is "passed-through" to fans, ultimately converting that to per-ticket "overcharges." Abrantes-Metz Rpt. ¶¶ 97, 132, 211. She multiplies the claimed per-ticket overcharge by counts of fee-bearing tickets and totals damages only within the 25 Monetary Relief States. *Id.* ¶ 212.

Dr. Abrantes-Metz's pass-through analysis is explicitly grounded in the economic principles of "tax incidence theory," which attempts to predict how much of a tax is absorbed by parties at different points in a distribution chain and by the final consumer. Abrantes-Metz Rpt. ¶¶ 77 *et seq*. She goes to great lengths explaining the importance of demand elasticities in estimating pass-through rates. *Id*. ¶¶ 79-82. She correctly asserts that "**Economic Incidence Depends on the Elasticities of Demand and Supply.**" *Id.* at 45 (heading). And therefore, of necessity, she studies and opines on the elasticity of demand *for concert tickets*—the product sold in the fan-facing market that the Court rejected. *Id.* ¶¶ 134-140. Notably, this analysis assumes a nationwide geographic market. There is no mention whatsoever of demand elasticities in local markets.

This all makes sense in relation to the alleged market Dr. Abrantes-Metz studied: the national, fan-facing market. She was clear that she only "calculated damages for the primary concert ticketing for major MCVs for fans, which is one of [Dr. Hill's] six markets." Abrantes-Metz Tr. 27:7-10. Defendants focused on this limitation during Dr. Abrantes-Metz's deposition, exploring whether her damages calculations applies to a broader set of markets:

> Q. Okay. If you -- if you turn to Paragraph 31 of your opening report, where you describe [Dr. Hill's] relevant markets -- **I just want to make sure we're all clear on this**. Do you see that in Paragraph 31 you list, 1 through 6, the relevant markets that Dr. Hill identified?
>
> A. Yes.
>
> Q. Okay. So is -- **are you saying that your damages relates solely to Market Number 5 [the fan-facing market], as you've identified it**?
>
> A. **That's correct**.
>
> Q. Okay. You haven't disclosed any estimation of damages for any of the other markets that Dr. Hill identifies, have you?
>
> A. That's correct. I -- Market 3 is also relevant to my analysis, but **I have not estimated damages for it**.

Abrantes-Metz Tr. 27:11-28:9 (emphasis added). There is no dispute: Dr. Abrantes-Metz did not disclose any estimation of damages for any market but the alleged fan-facing market. *Id.*[1]

## LEGAL STANDARD

Expert testimony must be relevant and reliable to be admissible. Under Rule 702 and *Daubert*, courts assess whether the expert uses reliable principles and methods, applies them reliably to the facts, and whether the testimony "fits" the issues to be tried. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993). Testimony that does not fit

---

[1] Dr. Abrantes-Metz reviewed her deposition transcript, provided *over 30 corrections and changes*, and then signed and certified the transcript. She did not change any of the aforementioned testimony.

4

the surviving theory of liability or addresses dismissed claims is inadmissible. *See In re Refco Inc.*, 2012 WL 7007795, at *4 ("To the extent the experts here are opining about the merits of dismissed claims, they fail the *Daubert* 'fit' requirement for the simple reason that those merits have already been determined and are no longer relevant to the proceedings."). Expert opinions are also inadmissible under *Daubert* and Rules 401 and 402 if they are not relevant to the remaining claims. *See Bustamante v. KIND, LLC*, 100 F.4th 419, 430 (2d Cir. 2024). Separately, Rule 26 requires a complete disclosure of the expert's opinions and bases; parties cannot cure an incomplete report through post-hoc reconfiguration once discovery closes. *See* Fed. R. Civ. P. 26; *Rodriguez v. Village of Port Chester*, 535 F. Supp. 3d 202, 211 (S.D.N.Y. 2021) ("[I]t is well-settled ... that an expert's deposition testimony cannot cure a party's failure to include opinions in their expert's report under Rule 26." (citing *Clayton v. Katz*, 2015 WL 1500248, at *5 (S.D.N.Y. Mar. 31, 2015)).

**ARGUMENT**

**I.    BECAUSE THE COURT DISMISSED THE FAN-FACING PRODUCT MARKET AND THE NATIONWIDE GEOGRAPHIC MARKET, ANY DAMAGES OPINIONS PREMISED ON THOSE MARKETS SHOULD BE EXCLUDED**

Dr. Abrantes-Metz's opinions should be excluded because they are premised upon a product market (fans) and a geographic market (nationwide) that the Court has dismissed from the case. They thus fail *Daubert*'s "fit" requirement and are irrelevant under Rules 401 and 402.

Defining a relevant market is a threshold step in assessing antitrust harm and damages. *See Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016). Without a market there is no market power, causation, or injury. *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016) ("Parties whose injuries ... are experienced in another market do not suffer antitrust injury.") (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 423 (5th Cir. 2001)). Where a proposed market fails as a matter of law, damages claims that depend on that market fail

5

with it. *See Concord Assocs.*, 817 F.3d at 53 (finding no damages because "without a definition of [the] market there is no way to measure the defendant's ability to lessen or destroy competition"); *In re AMR Corp.*, 527 B.R. 874, 883 (Bankr. S.D.N.Y. 2015) (finding that without a relevant market definition, "it is impossible to ... identify any damages flowing from antitrust violation").

On February 18, 2026, the Court entered partial summary judgment for Defendants. The Court explained that "[t]he government hasn't proposed any alternative markets, so summary judgment is warranted *on claims stemming from any proposed market that isn't well-defined*." ECF No. 1037 at 6 (emphasis added). One of those ill-defined markets was "the government's proposed nationwide fan-facing MCV-only ticketing market." *Id.* at 30.

The Court's ruling rejected both the product and geographic dimensions of that proposed market. *First*, the Court rejected the fan-facing product market, holding that the government failed to establish a cognizable market for the provision of primary concert ticketing to fans at MCVs. ECF No. 1037 at 26-29. *Second*, the Court rejected the nationwide geographic market, explaining that the relevant geographic market must account for actual competitive conditions and cannot simply be defined as "nationwide" without supporting evidence. *Id.* at 29-30. The Court explained that "[a] product market cannot be national only by virtue of the selling company operating nationally if customers for the product don't typically shop outside of their locales." *Id.* at 30.

In Defendants' view, this is dispositive. There is no possible basis for permitting an expert to present a damages study when her conclusions rest on an analysis of demand elasticities, supply elasticities and other characteristics of a proposed *but rejected* relevant market.

In the brief colloquy that occurred when Defendants previewed this motion, the States' counsel suggested that it did not matter that Dr. Abrantes-Metz studied an invalid market because

6

her conclusions could still be correct. The argument was that since the harm originates in the venue-facing market, determining what gets passed-on to consumers does not require there to be a legally cognizable fan-facing market. That is a fundamental denial of what tax incidence theory holds. As Dr. Abrantes-Metz herself explains, the pass-through rate (or "incidence") depends on a proper economic analysis of both stages of the market. Abrantes-Metz Rpt. ¶¶ 85, 133. She addresses both stages. But her "downstream" analysis assumes a national, fan-facing ticketing market and demand and supply elasticities that do not vary by locale. If nothing else, the Court's rejection of the national geographic market ensures the elasticities she used cannot be right.

The Monetary Relief States' choice to build a model only around what is now a defunct fan-facing market cannot be undone at this late stage of the litigation. Nor can this fundamental error be cured. Plaintiffs will object if Defendants attempt to cross-examine Dr. Abrantes-Metz about the Court's summary judgment order, confront her with her sworn testimony that she analyzed a market the Court later rejected, or show that she has since shifted the market to which her analysis applies.

By basing her analysis on an invalid market definition, Dr. Abrantes-Metz's damages model also has a massive, disqualifying "fit" problem rendering it inadmissible under *Daubert*. *See In re Refco Inc. Sec. Litig.*, 2012 WL 7007795, at *4 ("To the extent the experts here are opining about the merits of dismissed claims, they fail the *Daubert* 'fit' requirement for the simple reason that those merits have already been determined and are no longer relevant to the proceedings."). If there is any authority for allowing an expert analysis in an antitrust case to be based on a study of an invalid market, we are unaware of it.

The States' attempted retrofit also creates a highly prejudicial procedural problem because what it suggests, if implicitly, is that Dr. Abrantes-Metz should be permitted to shift her damages

7

opinions to a previously undisclosed basis. This not only runs counter to Rule 26's requirement that an expert report include "a complete statement of all opinions" to be offered and "the basis and reasons for them," Rule 26(a)(2)(B); it also deprives Defendants of any real ability to defend against the shift. We will not even be able to bring this significant, last-minute shift (and necessary repudiation of her sworn testimony) to light, because it stems from the Court's rejection of the fan-facing market at summary judgment. It gives Dr. Abrantes-Metz and the States a free pass. As with Dr. Abrantes-Metz's other dispositive errors, this one is a problem of her and the States' own choosing: the States had every opportunity to proffer a damages model tied to the venue-facing primary ticketing market, or to a regional geographic market, or to any other surviving or coherent market theory; indeed, they could have chosen to analyze damages in all six of Dr. Hill's markets. They chose not to do so.

## CONCLUSION

Damages and any expert opinions purporting to assess them must be causally tied to a properly defined, surviving relevant market and must fit the remaining theory of liability. Dr. Abrantes-Metz's proffered damages model does not and cannot meet that requirement. Her estimation step relies on nationwide Ticketmaster and AXS data, presupposing a nationwide geographic market the Court has rejected. Her application step calculates harm to fans through the "retained amount" metric, presupposing a fan-facing product market the Court has also rejected. The Court should exclude Dr. Abrantes-Metz's damages calculations in their entirety.

Dated: March 11, 2026

Respectfully submitted,

| LATHAM & WATKINS LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|

_____

Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
David R. Marriott
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Andrew M. Gass (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

_____

Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

**CERTIFICATE OF COMPLIANCE**

I, Alfred C. Pfeiffer, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 2,425 words. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated:   March 11, 2026

New York, New York

_____
Alfred C. Pfeiffer