## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *et al.*,

            *Plaintiffs,*

      v.

LIVE NATION ENTERTAINMENT, INC.,
and TICKETMASTER L.L.C.,

            *Defendants*.

Case No. 1:24-cv-03973-(AS)

**ORAL ARGUMENT REQUESTED**

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE DR. ROSA M. ABRANTES-METZ'S DAMAGES OPINION</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.      The Motion Is Procedurally Improper and Should Be Denied on That Basis Alone ................................................................................................ 2

    II.     Defendants' Motion Mischaracterizes Dr. Abrantes-Metz's Opinions and Applicable Law ........................................................................................ 4

          A.      Defendants' Motion Rests on a Fundamental Misunderstanding of Dr. Abrantes-Metz's Role as a Damages Expert, Whose Damages Analysis Does Not Depend on Any Particular Relevant Market Definition ................................................................................ 4

          B.      Defendants Mischaracterize Dr. Abrantes-Metz's Report, Which Traces the Impact of Damages from the Relevant Venue-Facing Markets the Court Upheld ............................................................... 5

          C.      *McCready* Does Not Require a Separate Fan-Facing Relevant Market, and Dr. Abrantes-Metz's Damages Methodology Properly Applies Standard Tax-Incidence Principles ................................ 7

          D.      Defendants' Cited Authorities Are Inapposite or, When Properly Read, Support the Admissibility of Dr. Abrantes-Metz's Damages Model ........................................................................................... 7

    III.    Defendants Cannot Carry Their Burden Under *Daubert* Because Their Own Experts Did No Work Showing That Plaintiffs' Damages Depend on the Existence of a Fan-Facing Relevant Market .................................... 8

    IV.    Mid-Trial Exclusion Would Cause Severe and Unwarranted Prejudice to Plaintiffs ................................................................................................... 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred v. Caterpillar, Inc.*,
  262 F.3d 1083 (10th Cir. 2001) ...................................................................3

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016)........................................................................8

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)......................................................................8, 9

*Anwar v. Fairfield Greenwich Ltd.*,
  164 F. Supp. 3d 558 (S.D.N.Y. 2016).............................................................2

*Blue Shield v. McCready*,
  457 U.S. 465 (1982)...............................................................................2, 7

*Borawick v. Shay*,
  68 F.3d 597 (2d Cir. 1995)........................................................................10

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
  817 F.3d 46 (2d Cir. 2016).........................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).......................................................................... *passim*

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  791 F.2d 1356 (9th Cir. 1986) ....................................................................6

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
  2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)...................................................4

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F.4th 466 (9th Cir. 2021) ......................................................................6

*Oracle Int'l Corp. v. Rimini St., Inc.*,
  2022 WL 16575007 (D. Nev. Nov. 1, 2022) ....................................................4

*Reazin v. Blue Cross & Blue Shield of Kan., Inc.*,
  899 F.2d 951 (10th Cir. 1990) ....................................................................2

*In re Refco Inc. Sec. Litig.*,
  2012 WL 7007795 (S.D.N.Y. Nov. 29, 2012) ...................................................7

*Sabal Trail Transmission, LLC v. 0589 Acres of Land*,
    2018 WL 3655556 (M.D. Fla. Aug. 2, 2018) ........................................................................4

*Univac Dental Co. v. Dentsply Int'l, Inc.*,
    2010 WL 1816745 (M.D. Pa. Apr. 27, 2010) ......................................................................4

**Other Authorities**

Fed. R. Evid. 702 ......................................................................................................... *passim*

## INTRODUCTION

Defendants' renewed motion (ECF Nos. 1191, 1192) seeks to exclude Dr. Rosa M. Abrantes-Metz's damages opinions on a single new theory: that the Court's partial summary judgment order rejecting a nationwide fan-facing market renders her entire damages analysis irrelevant. But the Court denied Defendants' original *Daubert* motion to exclude Dr. Abrantes-Metz's opinions *after* it issued its summary judgment ruling, confirming that the Court itself does not view its market-definition holding as requiring their exclusion.

This renewed motion should be denied for three independent reasons. As an initial matter, Defendants' motion is procedurally improper, including an untimely attempt to relitigate issues that belong in summary judgment, and should be rejected on that independent basis alone. Indeed, Defendants' argument that Dr. Abrantes-Metz's opinions no longer "fit" the case depends on factual premises and characterizations of her report that were available long before summary judgment, which the Court has already rejected in denying Defendants' earlier *Daubert* challenge.

Second, Dr. Abrantes-Metz is acting as a damages expert—not a liability expert—and her analysis does not turn on any particular market definition. Her report, like all damages expert reports, assumes antitrust liability. Based on that assumption, it constructs a damages model which is focused on the facts in the record and the anticompetitive conduct being challenged. In this case, the report focuses on primary ticketing for major concert venues and quantifies overcharges that Defendants impose, which are ultimately extracted from fans, based on anticompetitive conduct and pricing in the relevant venue-facing primary ticketing market that survived summary judgment. Her model does not depend on the existence of a separate fan-facing relevant market. Nor does antitrust law require damages to be incurred by plaintiffs in the relevant market in which the defendants commit their anticompetitive acts in situations where an overcharge impacts plaintiffs in a downstream market.

1

Under *Blue Shield v. McCready* and its progeny, plaintiffs may recover where their injury is "inextricably intertwined" with the alleged violation, including under a model akin to tax incidence. 457 U.S. 465, 472 (1982); *see Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 962–63 (10th Cir. 1990). The *McCready* framework, under which the Court recognized Plaintiffs' damages theory, produces the same damages calculation whether the relevant market is defined as venue-facing or fan-facing.

Third, Defendants' own experts never opined on the distinction they now claim is dispositive. They conducted no work suggesting that demand elasticities or tax incidence dynamics would differ in any material way between venue-facing and fan-facing characterizations of the same transactions. Defendants thus fail to carry their *Daubert* burden of showing that the damages analysis of Dr. Abrantes-Metz does not "fit" the facts of this case.

For each of these reasons, the Court should deny Defendants' renewed motion.

## ARGUMENT

### I.    The Motion Is Procedurally Improper and Should Be Denied on That Basis Alone

Defendants' renewed motion is procedurally improper and should be denied at the threshold because it is, in substance, an untimely motion for reconsideration of rulings the Court has already made. Reconsideration requires an intervening change in law, new evidence, or clear error—none of which Defendants identify. *Anwar v. Fairfield Greenwich Ltd.*, 164 F. Supp. 3d 558, 560 (S.D.N.Y. 2016) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

This is Defendants' third attempt to exclude the damages testimony of Dr. Abrantes-Metz. They first moved to exclude her in November 2025 (ECF Nos. 703, 704), and the Court denied that motion after issuing its summary-judgment ruling—confirming that its market-definition decision did not provide any basis for exclusion (ECF No. 1094 at 8). They pressed a second effort

in post-summary-judgment proceedings, including in reconsideration letters and at oral argument. None of those efforts were successful with the Court. Defendants now try a third time, without any new law, evidence, or changed circumstances. Defendants' motion should thus again be denied.

Moreover, the timing of the motion independently warrants denial. The Court's Individual Rules required any *Daubert* motion to be filed by the dispositive-motion deadline, and courts routinely reject belated efforts to revisit expert admissibility mid-trial. *See* ECF No. 1079 at 4; *see also, e.g., Alfred v. Caterpillar, Inc.,* 262 F.3d 1083, 1087 (10th Cir. 2001) ("Counsel should not 'sandbag' *Daubert* concerns until the close of an opponent's case, thereby placing opposing counsel and the trial court at a severe disadvantage," as "*Daubert* generally contemplates a 'gatekeeping' function, not a 'gotcha' junction."). Defendants neither raised this argument promptly after the Court's February 18 summary judgment opinion (ECF No. 1037)—and they were hardly shy in follow-up letters trying to expand the scope of its impact (*see generally* ECF No. 1094 (rejecting both))—nor sought leave to file a new, mid-trial *Daubert* or summary judgment motion. *See* Individual Practices in Civil Cases for the Hon. Arun Subramanian § 8(J) (requiring *Daubert* and Rule 702 motions to "be made by the deadline for dispositive motions" and "not be treated as motions in limine").[1]

Finally, the motion is improper because it seeks to relitigate what amounts to a dispositive summary judgment motion against Plaintiffs' damages claims under the guise of Rule 702. *See id.* § 8(I)(ii) ("Parties may not file more than one motion for summary judgment absent prior Court

---

[1] Plaintiffs of course acknowledge that the Court's *Daubert* order allows Defendants to renew their motion to exclude Dr. Abrantes-Metz's opinions under certain limited circumstances, not present here. Specifically, the Court noted that "given the disputes between the parties on the nature of the contracts at issue and mechanics of ticket sales, it may become clear during trial that certain of the positions taken by the state plaintiffs on this motion aren't borne out by the facts presented at trial." ECF No. 1094 at 13. That is not the basis of Defendants' current motion nor has Dr. Abrantes-Metz yet testified at trial.

approval."). Courts routinely reject attempts "to masquerade a request for summary judgment under the guise of a *Daubert* motion." *Sabal Trail Transmission, LLC v. 0589 Acres of Land*, 2018 WL 3655556, at *7 (M.D. Fla. Aug. 2, 2018); *see also Oracle Int'l Corp. v. Rimini St., Inc.*, 2022 WL 16575007, at *6 (D. Nev. Nov. 1, 2022). That is precisely what Defendants seek here: a mid-trial ruling that the Court's rejection of a proposed fan-facing relevant market eliminates all of Plaintiffs' damages claims.

II. **Defendants' Motion Mischaracterizes Dr. Abrantes-Metz's Opinions and Applicable Law**

A. **Defendants' Motion Rests on a Fundamental Misunderstanding of Dr. Abrantes-Metz's Role as a Damages Expert, Whose Damages Analysis Does Not Depend on Any Particular Relevant Market Definition**

Dr. Abrantes-Metz is serving as a damages expert, not a liability expert. In this role, she was "instructed to calculate monetary recoveries *consistent with the relevant markets that Dr. Hill identified*, and antitrust harms to consumers from Defendants' anticompetitive exclusive primary ticketing arrangements, including through the tying of venue access to the selection of Ticketmaster as the primary ticketer." Abrantes-Metz Rep. ¶ 21, ECF No. 722-1 (emphasis added). It is entirely appropriate—indeed, standard practice—for a damages expert to rely on the liability findings and relevant market definitions advanced by other experts and to assume liability in quantifying harm. *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) (recognizing that a damages expert "is entitled to assume liability for purposes of calculating damages"); *Univac Dental Co. v. Dentsply Int'l, Inc.*, 2010 WL 1816745, at *3 (M.D. Pa. Apr. 27, 2010) ("[I]t is perfectly acceptable for an expert to calculate an estimated amount of damages without regard to causation or any other elements of liability."). That is exactly what Dr. Abrantes-Metz did here. Defendants' renewed motion conflates these distinct roles: arguing that Dr. Abrantes-Metz's damages analysis should be

tied to a relevant market definition which only has bearing on antitrust liability issues—not the measurement of damages.

Consistent with her assignment as a damages expert, Dr. Abrantes-Metz identified her work as estimating damages caused by Defendants' anticompetitive conduct in a multiple of Dr. Hill's defined relevant markets, including the venue-facing primary ticketing markets that the Court sustained. *Id.* ¶¶ 31–36. Dr. Abrantes-Metz's damages analysis estimates damages to ticket-buying fans based upon the injury caused by Defendants' anticompetitive conduct—including the exclusive agreements and conditioning practices identified by Dr. Hill—and does not change whether the relevant market for liability purposes is defined to be venue-facing or fan-facing. Dr. Abrantes-Metz assumed liability for that conduct and quantified its effects; she did not opine, and was not required to opine, on a relevant market definition. *Id.* ¶¶ 21, 31.

## B. Defendants Mischaracterize Dr. Abrantes-Metz's Report, Which Traces the Impact of Damages from the Relevant Venue-Facing Markets the Court Upheld

Defendants' argument mischaracterizes Dr. Abrantes-Metz's damages model. Her report makes clear that she analyzed the impact of, and injury caused by, Defendants' anticompetitive conduct in the primary ticketing markets centered on major concert venues ("MCVs") that the Court upheld. Through her tax incidence analysis, Dr. Abrantes-Metz shows that the higher fees charged by Ticketmaster, due to the anticompetitive conduct against the venues, fall on both venues and fans. *Id.* ¶¶ 89, 97, 99, 132–33, 145, 211.

Defendants' assertion that her damages model is based on the establishment of a relevant fan-facing market ignores both the contents of her report and the structure of her damages model. Most fundamentally, the estimation step of Dr. Abrantes-Metz's damages model measures the harm caused by Defendants' anticompetitive conduct at the venue level. She compares the retained amounts Ticketmaster charges venues to those charged by AXS for the same services at

MCVs. *Id*. ¶ 217. That comparison takes place entirely in the venue-facing market: it measures the supracompetitive overcharge amounts retained from ticket sales as a result of Defendants' venue-facing exclusive arrangements and conditioning practices. This is the venue-facing relevant market in which antitrust liability is being assumed.

Dr. Abrantes-Metz then turns to an assessment of how this harm would be incurred by ticket-buying fans by explaining that Ticketmaster's contracts often impose charges on the MCVs that "resemble taxes in their economic effect," and venues will thus respond by shifting some of those anticompetitive overcharge amounts to fans through ticketing fees. *Id*. ¶ 95. Measuring the overcharge in the market where the restraint operates—the venue-facing markets sustained by the Court—is the standard starting point for antitrust damages analysis. *See, e.g.*, *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,* 20 F.4th 466, 477 (9th Cir. 2021); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986). But it is not the endpoint. The next step of the damages analysis, which does not depend on any relevant market definition, is to assess whether that overcharge was incurred downstream.

To assess and measure the impact on fans, Dr. Abrantes-Metz applies standard tax-incidence principles to determine what portion of Defendant's anticompetitive overcharge to venues is ultimately borne by consumers and which portion is borne by the venues. *See* Abrantes-Metz Tr. 151:8–23, ECF No. 722-3. This well-established two-step framework—first measuring the overcharge in the market where the restraint operates, then estimating how the overcharge is incurred downstream—does not depend on defining any relevant market for the downstream transactions in which fans purchase tickets. The assumed antitrust violation takes place in the venue-facing relevant markets, but the measurement of the damages to fans does not require that any fan-facing relevant market be defined.

### C. *McCready* Does Not Require a Separate Fan-Facing Relevant Market, and Dr. Abrantes-Metz's Damages Methodology Properly Applies Standard Tax-Incidence Principles

The Court's summary-judgment ruling left intact Plaintiffs' claims in the venue-facing primary ticketing markets and recognized evidence that Defendants' exclusive agreements and conditioning conduct harmed competition in those relevant markets. ECF No. 1037 at 24–26. That ruling supplies the predicate for damages: once liability in a venue-facing relevant market is established, the remaining question is by whom the resulting anticompetitive harm is borne— which may include damages incurred by other victims.

Antitrust law does not require that downstream damages be measured within a separately defined consumer-facing relevant market. Once Plaintiffs establish that Defendants' conduct caused anticompetitive harm in a relevant venue-facing market that resulted in supracompetitive ticketing costs, the assessment of how that overcharge was incurred by consumers does not require that a fan-facing relevant market also be defined. Courts recognize recovery under the federal antitrust laws where downstream injury flows from the restraint and is "inextricably intertwined" with it, even if the plaintiff does not participate in the restrained market itself. *McCready*, 457 U.S. at 484.

### D. Defendants' Cited Authorities Are Inapposite or, When Properly Read, Support the Admissibility of Dr. Abrantes-Metz's Damages Model

Defendants rely heavily on *In re Refco Inc. Securities Litigation*, 2012 WL 7007795 (S.D.N.Y. Nov. 29, 2012), for the proposition that expert opinions premised on dismissed claims should be excluded. *See* ECF No. 1192 at 5, 7. But *Refco* addressed a different situation: experts there opined directly on the "merits of dismissed claims," rendering their testimony irrelevant once those claims were gone. 2012 WL 7007795, at *4. That is not the situation here. The antitrust claims for which Dr. Abrantes-Metz assumes liability and measures damages are the claims which

the Court sustained on summary judgment in the relevant venue-facing markets. She then assesses and measures the anticompetitive overcharge caused by those sustained claims and constructs a model which estimates how that overcharge is borne by both venues and ticket-buying fans. Dr. Abrantes-Metz's damages opinions thus fit the surviving claims. *Refco* does not suggest that an otherwise reliable damages methodology measuring the harm caused by a claim in a relevant market that has survived summary judgment becomes inadmissible merely because the Court rejected other relevant market definitions that could have alternatively supported the damages analysis.

Defendants' reliance on *Concord Associates, L.P. v. Entertainment Properties Trust*, 817 F.3d 46, 53 (2d Cir. 2016), and *In re Aluminum Warehousing Antitrust Litigation*, 833 F.3d 151 (2d Cir. 2016), fares no better. *See* ECF No. 1192 at 1, 5–6. Those decisions recognize that antitrust injury must be found in a properly defined relevant market—which here, takes place in the relevant venue-facing markets that survived summary judgment. The Court has already recognized a viable venue-facing ticketing market (and the inapplicability of the *Aluminum Warehousing* litigation to this case), and Dr. Abrantes-Metz's model measures the economic effects of Defendants' conduct in that market. Her downstream analysis then quantifies how that anticompetitive overcharge is felt by ticket-buying fans. Abrantes-Metz Rep. ¶¶ 89, 95, 97, 99, 132–33, 145, 211.

### III. Defendants Cannot Carry Their Burden Under *Daubert* Because Their Own Experts Did No Work Showing That Plaintiffs' Damages Depend on the Existence of a Fan-Facing Relevant Market

Under Rule 702, the movant bears the burden of demonstrating that challenged expert testimony is unreliable or unhelpful. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (proponent must show admissibility, but movant must identify specific reliability flaws). Defendants make no such showing here. They point to no evidence suggesting that demand

elasticities, or resulting damages, would differ depending on whether a fan-facing relevant market is defined. Nor did their experts perform any analysis indicating that Dr. Abrantes-Metz's methodology would yield different results depending on whether a fan-facing relevant market was in existence. That failure is dispositive: a *Daubert* movant who offers no evidence that the challenged methodology would produce different results cannot meet its burden. *See Amorgianos*, 303 F.3d at 267 ("[A] slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible").

Defendants' own experts underscore the point. Dr. Carlton used the same event-level data and venue-centered framework employed by Dr. Abrantes-Metz. Carlton Rep. at 3–5, 34, ECF No. 743-1. While Dr. Carlton cursorily argued that there is no fan-facing market (*id.* at 78–79), he never questioned whether a proper analysis of damages to consumers from Defendants' conduct turned on its existence, and provided no analysis on elasticities of demand in a fan-facing market or comparisons with the venue-facing market, let alone suggested that the allocation of the economic effects of Defendants' conduct would shift based on the labeling or classification of the downstream transaction. Dr. Budish likewise relied on the same combined event-level primary-ticketing dataset without raising the issue of a fan-facing relevant market. Budish Rep. at 41, ECF No. 791-2. Their silence on the need for a fan-facing relevant market to support Plaintiffs' damages analysis confirms that Defendants' argument is contrived, without substance, and unsupported by any expert analysis.

## IV.    Mid-Trial Exclusion Would Cause Severe and Unwarranted Prejudice to Plaintiffs

The reason this Court's Rules require *Daubert* motions to be filed at the same time as dispositive motions is to prevent the severe prejudice from a mid-trial exclusion of critical expert testimony when it is too late for the party to prove its case through other means. Here, excluding Dr. Abrantes-Metz would make it impossible for the remaining Monetary Relief States to pursue

their damages claims even though the prior *Daubert* motion against her testimony was rejected. Exclusion now would effectively eliminate their damages case—an extreme remedy inconsistent with the strong presumption in favor of expert admissibility. *See Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995).

By contrast, Defendants will not be unfairly prejudiced by the admission of this testimony. They will remain free to cross-examine Dr. Abrantes-Metz on her methodology and assumptions and to present any criticisms they have of her work to the jury. The *Daubert* standard requires reliability and relevance. The Court previously found that the work of Dr. Abrantes-Metz satisfied this standard when it rejected Defendants' prior *Daubert* motion. Any new criticisms of her methodology or assumptions should only go the weight, not the admissibility, of her testimony. *Daubert*, 509 U.S. at 596.

## CONCLUSION

Defendants' renewed *Daubert* motion is substantively meritless, procedurally improper, and would cause severe prejudice mid-trial. The Court already denied Defendants' original *Daubert* motion against Dr. Abrantes-Metz after issuing its summary-judgment ruling. There is no proper basis presented for it to reconsider that decision now.

Dated: March 16, 2026            Respectfully submitted,

By:    */s/ Jeffrey L. Kessler*
         Jeffrey L. Kessler
         Eva W. Cole
         Johanna Rae Hudgens
         **WINSTON & STRAWN LLP**
         200 Park Avenue
         New York, NY 10166
         Tel: (212) 294-6700
         Fax: (212) 294-4700
         jkessler@winston.com
         ewcole@winston.com
         jhudgens@winston.com

         Jeanifer E. Parsigian (*pro hac vice*)
         **WINSTON & STRAWN LLP**
         101 California Street, 21st Floor
         San Francisco, CA 94111
         Tel: (415) 591-1000
         Fax: (415) 591-1400
         jparsigian@winston.com

         Joshua Hafenbrack (*pro hac vice*)
         **WINSTON & STRAWN LLP**
         1901 L Street NW
         Washington, DC 20036
         Tel: (202) 282-5000
         Fax: (202) 282-5100
         jhafenbrack@winston.com

         *Counsel for Plaintiff State of New York*

| */s/ Robert A. Bernheim* | */s/ Brent Nakamura* |
|---|---|
| Robert A. Bernheim (admitted *pro hac vice*) | Brent Nakamura (admitted *pro hac vice*) |
| Office of the Arizona Attorney General | Supervising Deputy Attorney General |
| Consumer Protection & Advocacy Section | Office of the Attorney General |
| 2005 N. Central Avenue | California Department of Justice |
| Phoenix, AZ 85004 | 300 South Spring Street |
| Telephone: (602) 542-3725 | Los Angeles, CA 90013 |
| Fax: (602) 542-4377 | Telephone: (213) 269-6000 |
| Email: Robert.Bernheim@azag.gov | Email: Brent.Nakamura@doj.ca.gov |
| *Attorney for Plaintiff State of Arizona* | *Attorney for Plaintiff State of California* |

*/s/ Conor J. May*
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

*/s/ Nicole Demers*
Nicole Demers (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: Nicole.Demers@ct.gov
*Attorney for Plaintiff State of Connecticut*

*/s/ Elizabeth G. Arthur*
Elizabeth G. Arthur (admitted *pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General for the District
of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Elizabeth.arthur@dc.gov
*Attorney for Plaintiff District of Columbia*

*/s/ Lizabeth A. Brady*
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

*/s/ Richard S. Schultz*
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

*/s/ Jesse Moore*
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

*/s/ Christopher Teters*
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

*/s/ Mario Guadamud*
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

/s/ Schonette J. Walker
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of
Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ Justin C. McCully
Justin C. McCully (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

/s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ Zachary Frish
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

*/s/ Andrew F. Esoldi*
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

*/s/ Evan Crocker*
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General, Division Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

*/s/ Jonathan H. Hatch*
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

*/s/ Sarah Mader*
Sarah Mader (admitted *pro hac vice)*
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Economic Justice Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of
Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

/s/ Jared Q. Libet
Jared Q. Libet (admitted *pro hac vice*)
Assistant Deputy Attorney General
Office of the Attorney General of South
Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South Carolina*

/s/ Hamilton Millwee
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

/s/ Diamante Smith
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
diamante.smith@oag.texas.gov
*Attorney for Plaintiff State of Texas*

/s/ Marie W.L. Martin
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

/s/ Sarah L. J. Aceves
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

/s/ Caitlin M. Madden
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

_/s/ William T. Young_
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
_Attorney for the Plaintiff State of Wyoming_

**<u>CERTIFICATE OF COMPLIANCE</u>**

I, Jeffrey L. Kessler, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Rule 8(C) of Judge Arun Subramanian's Individual Practices in Civil Cases ("Individual Rules"), that the foregoing Memorandum of Law was prepared using Microsoft Word, and contains 3,032 words. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: March 16, 2026                    */s/ Jeffrey L. Kessler*
                                          Jeffrey L. Kessler