| | |
|---|---|
| **From:** | Peter Stern <stern@brooklynnets.com> |
| **Sent:** | Fri, 5 Aug 2022 16:40:55 -0400 (EDT) |
| **To:** | Jack Groetzinger <jack@seatgeek.com>; Danielle du Toit<ddutoit@seatgeek.com>; Adam Lichstein <alichstein@seatgeek.com> |
| **Cc:** | Sam Zussman <szussman@bseglobal.net>; Jeff Gewirtz<jgewirtz@bseglobal.net>; Paul Kavanaugh <pkavanaugh@bseglobal.net> |
| **Subject:** | Barclays Center | SeatGeek |
| **Attachments:** | SG BSE Term Sheet.vF.08.05.22.docx;SG Breach Notice.vF.08.05.22..pdf |

Hi Jack, Danielle,

I hope this note finds you well.

As follow-up, please find attached a term sheet to frame discussion of a revised Ticketing Partnership Deal.  We have also included a letter from our General Counsel regarding our Agreement.

We look forward to discussing with you further.

many thanks!  best, Stern

No. 1:24-cv-03973-AS

Defs' Trial Exhibit

**DX-0645**

HIGHLY CONFIDENTIAL

SG-CID-00008219

**DX-0645.0001**

*August 5, 2022*

## BSE Global – SeatGeek Term Sheet

*Other than the subject matter set forth herein, the remaining provisions of the existing SeatGeek-BSE Ticketing Service Agreement shall remain unchanged.*

| No. | Subject Matter | Treatment |
|-----|----------------|-----------|
| 1. | Exclusivity | • SeatGeek will retain its ticketing service exclusivity for Brooklyn Nets and New York Liberty home games at Barclays Center.<br>• For all other Barclays Center events, while SeatGeek will be granted the marketing designation as BSE's "preferred" ticketing platform, BSE may choose any ticketing platform(s).<br>• For all Barclays Center events, SeatGeek will be used for suites and unmanifested seats for the particular event. |
| 2. | SeatGeek Performance Improvements and Platform Modifications | • BSE and SeatGeek counsel will evaluate in good faith modifications in an Amended Ticketing Service Sales Agreement, which will address the issues BSE raised regarding certain SeatGeek performance shortfalls. |
| 3. | Fees for Secondary Ticket Sales | • BSE will not receive any fees for tickets resold as secondary tickets on SeatGeek if SeatGeek is not the primary ticketing platform for the event. |
| 4. | Marketing | Applicable to the first 12-months of the Amended Agreement:<br><br>• Reduce by ▮▮ SeatGeek's current ▮▮▮▮ per year required spend to drive ticket sales via performance marketing channels.<br>• Reduce by ▮▮ SeatGeek's current ▮▮▮▮ per year requirement in media value through SeatGeek's creator network.<br>• Reduce by ▮▮ SeatGeek's current ▮▮▮▮ impressions requirement.<br><br>For each 12-month period following the initial 12-month period, the above SeatGeek spends and impression requirements will be adjusted annually *pro rata* based on the percentage of Arena events ticketed using SeatGeek (compared to the total number of Arena ticketed events) in the immediately-prior 12-month period (the "Annual Pro Rata Adjustment") |
| 5. | Product Credit | For the initial 12-month period of the Amended Agreement, reduce by ▮▮ SeatGeek's current ▮▮▮▮ per year product credit requirement; each 12-month period thereafter will be subject to the Annual Pro Rata Adjustment in respect of this product credit. |

HIGHLY CONFIDENTIAL

**DX-0645.0002**



*VIA OVERNIGHT DELIVERY AND ELECTRONIC MAIL*

August 5, 2022

Jeffrey B. Gewirtz
Chief Legal Officer

SeatGeek, Inc.
902 Broadway, Floor 10
New York, New York 10010
Attention: Adam Lichstein, Esq.

RE:    **Notice of Breach of *Exclusive Ticket Sales Services Agreement***

Dear Adam:

Reference is hereby made to that certain *Exclusive Ticket Sales Services Agreement* among SeatGeek, Inc. ("SeatGeek"), on the one hand, and Brooklyn Events Center, LLC ("BEC"), New York Liberty, LLC ("NYL"), Brooklyn Nets eSports, LLC ("eSports"), and Brooklyn Nets, LLC ("BN", and collectively with BEC, NYL, and eSports, the "BSE Parties"), on the other hand, dated as of June 23, 2021 (the "Agreement"). All capitalized terms used herein but not defined herein shall retain the meanings ascribed to such terms in the Agreement.

Pursuant to and in accordance with **Section 15.1.1.** of the Agreement, the BSE Parties hereby notify SeatGeek of SeatGeek's failure to comply with **Section 13.2(x)** of the Agreement, **Section 11.10.1.** of the Agreement, and **Section 5** of the Agreement.

As you are aware, **Section 13.2(x)** of the Agreement provides:

> *SeatGeek represents, warrants and covenants that: . . . (x) it shall use its reasonable efforts, skills, knowledge and sound and professional practices in accordance with generally accepted industry standards in performing all services under this Agreement, and all services performed by SeatGeek hereunder (including the SeatGeek Services) shall be performed in a competent and workmanlike manner in accordance with industry standards . . .*

On numerous occasions since the commencement of the Term of the Agreement, SeatGeek has failed to comply with the foregoing **Section 13.2(x)** of the Agreement, including, without limitation, with respect to each of the following:

1.  The SeatGeek Platform requires BEC to price *Prime* Tickets on behalf of Event promoters, and does not allow Event promoters to themselves price *Prime* Tickets. This results in unnecessary delays. Industry practice is for Event promoters themselves to price and release this type of Ticket inventory instantaneously, which is what Event promoters expect and want. In addition, contrary

168 39TH STREET, 7TH FLOOR, BROOKLYN, NEW YORK 11232

HIGHLY CONFIDENTIAL

SG-CID-00008221

DX-0645.0003

SeatGeek, Inc.
Notice of Breach
August 5, 2022
Page 2

to industry practice, the SeatGeek Platform does not allow *Prime* Tickets to be priced to the seat level in an efficient way, which decreases pricing flexibility for Event promoters.

2.  SeatGeek has failed to competently execute Event on-sales. For illustrative purposes only and without limitation, SeatGeek has failed to effectively move potential Event Ticket buyers from the SeatGeek Platform Ticket-buying "waiting room" to the purchase page, for some Events moving too slowly and thus decreasing Ticket sales.

3.  The SeatGeek Platform cannot accept payments from Brooklyn Nets season ticket holders upon signing-up for NETS Playoff Ticket "strip" Sales. As a result, for the 2022 NBA playoffs, BN had to process such payments itself, manually.

4.  Tickets with special entitlements, such as Venue *Crown Club* access, which display on the SeatGeek Platform with such special entitlements when sold as a primary Ticket on the SeatGeek Platform, cannot be listed with such special entitlements when resold on the SeatGeek Platform.

5.  SeatGeek has failed to include in its Event configuration reports provided to the BSE Parties global service charges and credit card fees, which would enable the BSE Parties to double-check that such charges and fees are properly programmed. As a result, the BSE Parties currently have no way to confirm such charges and fees are set properly without scouring the rules.

6.  When a Purchaser resells his or her Ticket on the SeatGeek Platform, such Purchaser can elect to have the resale proceeds applied as a credit to such Purchaser's SeatGeek account. If such Purchaser chooses this option, the BSE Parties see the credit in *Unify*, but there is no reference to the Tickets that were resold. This is problematic because the BSE Parties have different bank accounts for BEC, BN, and NYL. SeatGeek currently makes assumptions as to which Brooklyn Party bank account to deposit these funds based on the time of year. For example, in June, SeatGeek deposited all payouts into NYL's bank account because the Brooklyn Nets were no longer playing. This caused an issue when, for example, a Purchaser resold a non-New York Liberty Event Ticket, and SeatGeek deposited the funds into NYL's bank account. This is also problematic when the BSE Parties need to apply the credit to another Event or refund it. The BSE Parties need to know which Tickets were resold for the BSE Parties to properly transfer money between BEC, BN, and NYL bank accounts if, for example, a Purchaser wants to use a payout from a Brooklyn Nets Event for a non-Brooklyn Nets Event. SeatGeek also defaults refunds from payouts to be deducted from BEC's bank account, so if the funds were deposited into a different BSE Party account, this is also problematic.

7.  The SeatGeek Platform shows that the BSE Parties have issued refunds requested by the BSE Parties, even when SeatGeek actually has not issued such refunds because there are insufficient funds in the BSE Parties' account. If SeatGeek cannot issue the requested refunds, SeatGeek should proactively notify the BSE Parties that the refunds did not go through due to insufficient funds.

8.  SeatGeek has failed to require online purchasers Brooklyn Nets and New York Liberty ticket subscriptions to input a telephone number.

In addition, SeatGeek is in breach of **Section 11.10.1.** of the Agreement. **Section 11.10.1.** of the Agreement provides that:

HIGHLY CONFIDENTIAL

SG-CID-00008222

**DX-0645.0004**

SeatGeek, Inc.
Notice of Breach
August 5, 2022
Page 3

> *The BSE Parties and SeatGeek shall each own, and be entitled to exercise, all rights as permitted by applicable Laws (including Privacy Laws, including as provided in the Data Protection Terms), without any duty of accounting, to the Customer Data.*

SeatGeek nevertheless has failed to provide the BSE Parties with requested Customer Data for known customers of the BSE Parties who place Ticket plans or individual Event Tickets in their SeatGeek Platform "shopping cart", but who do not "check out," This is also contrary to industry practice.

Further, SeatGeek is in breach of **Section 5** of the Agreement. **Section 5** of the Agreement requires SeatGeek to provide those certain Marketing Services described in **Appendix E** of the Agreement, which provides as follows:

> ***Driving Ticket Sales:*** *SeatGeek will guarantee a minimum value of* ████████████ in Contract Year 1 with a ██████ for each subsequent Contract Year to be used for the purpose of driving Ticket Sales via performance marketing channels (e.g., SEM, paid social, programmatic).*

Contrary to this provision, SeatGeek has allocated certain marketing value towards such guaranteed minimum value threshold that has been used to market events other than Venue Events (e.g., events at other, competing venues), and has even marketed such other, competing events more prominently than Venue Events.

For the avoidance of doubt, the foregoing is not intended to be an exhaustive list of all of SeatGeek's breaches of the Agreement to date, and the BSE Parties reserve the right to add to and modify the SeatGeek breaches set forth herein.

Pursuant to **Section 15.1.1.** of the Agreement, the BSE Parties hereby demand that SeatGeek correct each and every one of the foregoing breaches of the Agreement. Also pursuant to **Section 15.1.1.** of the Agreement, in the event that any such breach by SeatGeek continues for thirty (30) days from the date first set forth above, such uncured breach(es) shall constitute a SeatGeek Default under **Section 15.1.1.** of the Agreement, and the BSE Parties will have the remedies set forth in **Section 15.1.2.** of the Agreement.

This letter is not intended and may not be construed as a full and complete statement of the BSE Parties' rights or remedies, none of which are waived and all of which are expressly reserved.

Very truly yours,

Jeffrey B. Gewirtz
Chief Legal Officer

cc:   Sam Zussman *(via email to szussman@bseglobal.net)*
Jack Groetzinger *(via email to jack@seatgeek.com)*
Richard C. Pepperman II *(via email to peppermanr@sullcrom.com)*

HIGHLY CONFIDENTIAL