| From: | Jeff Gewirtz <jgewirtz@bseglobal.net> |
|-------|---------------------------------------|
| Sent: | Thu, 1 Sep 2022 13:39:09 -0400 (EDT) |
| To: | "Adam Lichstein (alichstein@seatgeek.com)" <alichstein@seatgeek.com> |
| Cc: | "Mr. Jack Groetzinger" <jack@seatgeek.com>; Sam Zussman<szussman@bseglobal.net>; "Richard C. Pepperman II (PEPPERMANR@sullcrom.com)"<peppermanr@sullcrom.com> |
| Subject: | BSE Letter to SeatGeek |
| Attachments: | BSE Reply to SG Aug 26 Ltr.(JBG Executed).09.01.22.pdf |

Adam,

Please see the attached.

Best,

Jeff

**JEFFREY B. GEWIRTZ**
Executive Vice President, Business Affairs
Chief Legal Officer

**BSE Global**
168 39th Street, 7th Floor
Brooklyn, New York 11232
phone 718.942.9544
████████████

jgewirtz@bseglobal.net

bseglobal.net

**CONFIDENTIALITY NOTICE**
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

No. 1:24-cv-03973-AS
Defs' Trial Exhibit
**DX-0671**

HIGHLY CONFIDENTIAL

SG-CID-00008266

DX-0671.0001



*VIA OVERNIGHT DELIVERY AND ELECTRONIC MAIL*

September 1, 2022

**Jeffrey B. Gewirtz**
**Chief Legal Officer**

SeatGeek, Inc.
902 Broadway, Floor 10
New York, New York 10010
Attention: Adam Lichstein, Esq.

> RE:     **SeatGeek's Response to Notice of Breach of the *Exclusive Ticket***
>          ***Sales Services Agreement***

Dear Adam:

I write in response to your letter to BSE Global dated August 26, 2022 that responds to the BSE Parties' August 5, 2022 Notice of Breach (the "Notice of Breach") of the *Exclusive Ticket Sales Services Agreement* among SeatGeek, Inc. ("SeatGeek"), on the one hand, and Brooklyn Events Center, LLC ("BEC"), New York Liberty, LLC ("NYL"), Brooklyn Nets eSports, LLC ("eSports"), and Brooklyn Nets, LLC ("BN," and collectively with BEC, NYL, and eSports, the "BSE Parties"), on the other hand, dated as of June 23, 2021 (the "Agreement"). All capitalized terms used herein but not defined herein shall retain the meanings ascribed to those terms in the Agreement and the Notice of Breach.

At the outset, I must say that we are disappointed in the substance of your response to the Notice of Breach. Having received your response, it is now clear that SeatGeek has failed to comply with **Section 13.2(x)** of the Agreement in multiple material respects. Your response also makes clear that SeatGeek either has not or cannot cure its failure to comply within the time periods prescribed by **Section 15.1.1** of the Agreement. SeatGeek also may not have complied with Section 5 of the Agreement. We require additional information to make a final determination on that issue.

Given the importance of the issues raised in the Notice of Breach to the BSE Parties' businesses, we ask that you send us any reply to this letter by Friday, September 9, 2022. Please be advised, however, that our request for any reply by that date is not an agreement to extend any of the time periods set forth in **Section 15.1.1** of the Agreement and thus is without prejudice to the BSE Parties' right to enforce the contractual cure periods in **Section 15.1.1**. Based on your response, the BSE Parties would be entitled under the Agreement to issue a notice of termination pursuant to **Section 15.1.2(iv)** of the Agreement as early as Wednesday, September 7, 2022.

The BSE Parties' responses below correspond to the numbered paragraphs in the Notice of Breach.

1. SeatGeek's Prime inventory management tools have underperformed relative to similar technologies used by other New York City venues for the same Events. Although you say that SeatGeek is "using great diligence and care to upgrade the Prime product offering," Prime has not

168 39ᵀᴴ STREET, 7ᵀᴴ FLOOR, BROOKLYN, NEW YORK 11232

HIGHLY CONFIDENTIAL                                                         SG-CID-00008267

**DX-0671.0002**

SeatGeek, Inc.
September 1, 2022
Page 2

improved yet, and it remains below generally accepted industry standards. Your letter further states that SeatGeek has "a plan to make the product changes and enhancements desired with a beta release target date of October of this year," but that timing does not comply with the cure periods set forth in **Section 15.1.1** of the Agreement. Assuming that SeatGeek has already begun to take reasonable steps to cure this failure to comply with **Section 13.2(x)** of the Agreement, SeatGeek must effectuate its proposed cure by October 4, 2022. A "beta release" at some undefined point in October is not an adequate cure of this material breach.

2.  You state that "it has been SeatGeek's practice to commence the queue exit rate" from its waiting room for ticket purchasers "at 300 purchasers per minute." Assuming the accuracy of that representation, that queue exit rate does not comply with generally accepted industry standards. Contrary to your claim that SeatGeek's "queue exit rate far exceeds that" of competitors, our understanding is that the industry standard is to commence queue exit rate for on-sales at up to 500 purchasers per minute. Your letter acknowledges that SeatGeek complied with that industry standard only once—for the Bruce Springsteen on-sale—and it did so only after we insisted. We understand that the Springsteen on-sale was an exception and that SeatGeek does not intend to continue at this rate for future on-sales. This constitutes a material breach of the Agreement. Indeed, we strongly disagree with your assertion that queue exit rate has no effect on ticket sales. Notably, your letter does not state that SeatGeek intends to cure this failure to comply with **Section 13.2(x)** of the Agreement.

3.  We discussed SeatGeek's deficient performance during the 2022 NBA playoffs with SeatGeek on May 4, 2022—nearly four months ago. Since then, we have received no reports from SeatGeek on its progress in addressing this serious problem. Your letter does not dispute the existence of the problem—to the contrary, you acknowledge that "BSE staff had to take additional time" to compensate for SeatGeek's shortcoming. Your letter also does not give any indication at all of what SeatGeek intends to do to fix the problem. You instead simply state that SeatGeek is "committed to completing [its undefined] work in time for playoff enrollment in March 2023." Having raised the issue nearly four months ago and having received no report of progress, we have no confidence that SeatGeek will fix this problem in a way that complies with generally accepted industry standards before we want to offer Nets season ticket holders the option of purchasing 2023 playoff tickets. More significantly, your letter does not state that SeatGeek has taken any steps, much less reasonable steps, to cure this failure to comply with **Section 13.2(x)** of the Agreement within the 30-day period provided by **Section 15.1.1** of the Agreement.

4.  Back on January 11, 2022, we submitted a high-priority request via the SeatGeek product support platform to list special entitlements when tickets are resold on the SeatGeek platform. Your letter acknowledges this product-enhancement request, which we submitted to bring SeatGeek's service into compliance with generally accepted industry standards. Although nearly eight months have passed since we made this request, your letter states that SeatGeek is still "evaluating the best way to satisfy the request" and is "currently assessing the scope of the work" required to address this deficiency. Your promise "to provide a timeframe" at some undefined point in the future of when SeatGeek may be able to bring its service into compliance with industry standards does not comply with the cure period set forth in **Section 15.1.1** of the Agreement. Indeed, your letter does not identify any steps that SeatGeek has taken thus far to cure this failure to comply with **Section 13.2(x)** of the Agreement.

5.  We asked SeatGeek to include service charges and credit card fees in its Event configuration reports back on January 18, 2022—over seven months ago. Although you state that "[a] report that will allow the BSE Parties to view the service charges and credit card fees has already been included in

HIGHLY CONFIDENTIAL

SG-CID-00008268

**DX-0671.0003**

SeatGeek, Inc.
September 1, 2022
Page 3

[SeatGeek's] plans" and that you "will further prioritize this work," your letter does not say that SeatGeek has even started this work, which is shocking given that we raised this important issue back in January. The generally accepted industry standard is to provide this information in reports, and **Section 13.2(x)** of the Agreement requires SeatGeek to adhere to that standard. The information about fees—which are adjusted and added often—should not be hidden in the rules. Your statement that SeatGeek "expect[s]" to provide the required reports beginning sometime "in the first half of 2023" does not comply with the cure period in **Section 15.1.1** of the Agreement. In addition, SeatGeek's apparent failure even to begin work on a cure does not comply with its obligation under **Section 15.1.1** of the Agreement to take reasonable steps to cure a failure to comply within 30 days of the Notice of Breach.

6.  SeatGeek has not solved for the issue identified in the Notice of Breach when the BSE Parties need to apply a credit to another Event or refund it. This failure to comply with the generally accepted industry standard thus remains outstanding. Your assurance that SeatGeek "is developing a long-term solution" to the issues identified in the Notice of Breach is not a timely cure under **Section 15.1.1** of the Agreement.

7.  Your letter acknowledges that the parties have been discussing the need to ensure that sufficient funds are available to payout refunds since the end of May 2022. You state that SeatGeek's "finance team is now running an internal report of failed refunds," but the BSE Parties have never seen this report. Nor has there been consistent communication from SeatGeek on the balance available in the BSE Parties' different accounts. More fundamentally, SeatGeek's running of an internal report and its efforts to "notify the BSE Parties in the event of any refund failure" are not an adequate cure of this material breach: the refunds should not go through in the first instance if there are insufficient funds in the relevant account to cover them. Relatedly, SeatGeek continues to pull funds from different accounts in order to make refunds. This happened, for example, in June 2022 when SeatGeek drew funds from the BEC account to cover Nets refunds even after the BSE Parties remitted additional funds to SeatGeek to prevent this from happening. None of this complies with generally accepted industry standards and thus constitutes a breach of **Section 13.2(x)** of the Agreement. Once again, your assurance that SeatGeek "will continue to work with the BSE Parties to fine tune this process" is not a timely cure under **Section 15.1.1** of the Agreement.

8.  Your letter admits that SeatGeek recently "discovered that phone numbers are missing from some online subscription purchasers' CRM records in SRO." Although you state that SeatGeek's "team is investigating the issue," the commencement of an investigation is not an adequate cure of this breach under **Section 15.1.1** of the Agreement.

9.  We have confirmed that SeatGeek is now providing the requested abandoned cart data, and we look forward to receiving automated reports on this information that you reference in your letter.

10. Your letter provides very detailed information about SeatGeek's marketing expenditures during the first year of the Agreement. This is the first time that we have received this important information. During our weekly status calls with SeatGeek about marketing, SeatGeek never provided this information, despite our requests. To validate these numbers, we need to know how they were calculated. Please provide us with the backup information for the very precise numbers set forth in your letter.

HIGHLY CONFIDENTIAL

SG-CID-00008269

**DX-0671.0004**

SeatGeek, Inc.
September 1, 2022
Page 4

As we stated in the Notice of Breach, the foregoing ten items are not intended to be an exhaustive list of all of SeatGeek's breaches of the Agreement to date, and the BSE Parties reserve the right to add to and modify the SeatGeek breaches set forth in the Notice of Breach.

As we also stated in the Notice of Breach, pursuant to **Section 15.1.1.** of the Agreement, in the event that a breach by SeatGeek identified in the Notice of Breach continues for 30 days from August 5, 2022, the date of the Notice of Breach, such uncured breach(es) shall constitute a SeatGeek Default under **Section 15.1.1.** of the Agreement. Insofar as SeatGeek has taken reasonable steps to cure the identified breaches within that 30-day period, but the breaches are of a type or character that is not reasonably susceptible to cure within 30 days, SeatGeek is entitled to additional time as may be reasonably necessary to effectuate its cure, but in all events, the cure must be effectuated within 60 days of the Notice of Breach. In the event of uncured breaches—and your letter makes clear that there are many—the BSE Parties have the remedies set forth in **Section 15.1.2.** of the Agreement, including the right to terminate the Agreement upon at least 30 days' written notice. As I stated above, the BSE Parties believe that they would be entitled under the Agreement to issue a notice of termination pursuant to **Section 15.1.2(iv)** of the Agreement as early as Wednesday, September 7, 2022.

Very truly yours,

Jeffrey B. Gewirtz
Chief Legal Officer

cc:     Sam Zussman *(via email to szussman@bseglobal.net)*
        Jack Groetzinger *(via email to jack@seatgeek.com)*
        Richard C. Pepperman II *(via email to peppermanr@sullcrom.com)*

HIGHLY CONFIDENTIAL

SG-CID-00008270

**DX-0671.0005**