| From: | Jeff Gewirtz <jgewirtz@bseglobal.net> |
|---|---|
| Sent: | Tue, 13 Sep 2022 16:18:17 -0400 (EDT) |
| To: | "Adam Lichstein (alichstein@seatgeek.com)" <alichstein@seatgeek.com> |
| Cc: | "Mr. Jack Groetzinger" <jack@seatgeek.com>; Sam Zussman<szussman@bseglobal.net>; "Richard C. Pepperman II (PEPPERMANR@sullcrom.com)"<peppermanr@sullcrom.com> |
| Subject: | BSE Response to SG Letter of September 7 |
| Attachments: | BSE Reply to SG Sept 7 Letter(JG Executed).09.13.22..pdf |

Adam,

Attached please find our response to your letter to me of Sept 7.

Best,

Jeff

**JEFFREY B. GEWIRTZ**
Executive Vice President, Business Affairs
Chief Legal Officer

**BSE Global**
168 39th Street, 7th Floor
Brooklyn, New York 11232
phone 718.942.9544
mobile ▮▮▮▮▮▮▮
jgewirtz@bseglobal.net

bseglobal.net

**CONFIDENTIALITY NOTICE**
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

No. 1:24-cv-03973-AS
Defs' Trial Exhibit

**DX-0678**

HIGHLY CONFIDENTIAL

SG-CID-00008319

DX-0678.0001



*VIA OVERNIGHT DELIVERY AND ELECTRONIC MAIL*

September 13, 2022

Jeffrey B. Gewirtz
Chief Legal Officer

SeatGeek, Inc.
902 Broadway, Floor 10
New York, New York 10010
Attention: Adam Lichstein, Esq.

> **RE:**   **SeatGeek's September 7, 2022 Letter re. Notice of Breach of the**
> ***Exclusive Ticket Sales Services Agreement***

Dear Adam:

I write in response to your letter to BSE Global dated September 7, 2022 regarding the BSE Parties' August 5, 2022 Notice of Breach (the "Notice of Breach") of the *Exclusive Ticket Sales Services Agreement* among SeatGeek, Inc. ("SeatGeek"), on the one hand, and Brooklyn Events Center, LLC ("BEC"), New York Liberty, LLC ("NYL"), Brooklyn Nets eSports, LLC ("eSports"), and Brooklyn Nets, LLC ("BN," and collectively with BEC, NYL, and eSports, the "BSE Parties"), on the other hand, dated as of June 23, 2021 (the "Agreement"). All capitalized terms used herein but not defined herein shall retain the meanings ascribed to those terms in the Agreement and the Notice of Breach.

We likewise hope that our respective business teams can resolve our dispute by promptly agreeing on the terms of an amendment to the Agreement. To that end, Peter Stern sent Danielle du Toit on September 8, 2022 a proposed First Amendment to the Agreement. Hopefully our respective business teams can come to an agreement on these terms soon, thus obviating any further correspondence on what we believe are breaches of the Agreement by SeatGeek.

While those discussions are ongoing, I am sending you this brief response to your September 7 letter. My goal is not to prolong unnecessarily our back and forth but rather to make clear our position on some of the issues raised in your letter. As a threshold matter, we do not agree with your apparent reading of the Agreement. **Section 15.1.1** of the Agreement states that "SeatGeek's failure to perform or comply with any material term or condition of this Agreement" constitutes a default by SeatGeek if such failure of performance or compliance continues for a period of 30 days and is not cured within the specified period after receipt of notice from the BSE Parties. The representation in **Section 13.2(x)** of the Agreement on which we rely is unquestionably a "material term" of the Agreement. Thus, any failure by SeatGeek to comply with that representation for a period of 30 days is a default by SeatGeek if that failure to comply is not cured within the required period after the BSE Parties' August 5, 2022 Notice of Breach. Contrary to the Agreement's plain language, SeatGeek instead appears to be taking the position that its failure to comply with the representation in **Section 13.2(x)** of the Agreement is not an event of default if that non-compliance relates to an issue that SeatGeek does not consider material. Once that misreading of the Agreement is corrected, much of the response in your September 7 letter falls away.

168 39ᵀᴴ STREET, 7ᵀᴴ FLOOR, BROOKLYN, NEW YORK 11232

HIGHLY CONFIDENTIAL

SG-CID-00008320

**DX-0678.0002**

SeatGeek, Inc.
September 13, 2022
Page 2

I nevertheless feel compelled to respond briefly to some of the statements in the numbered paragraphs of your September 7 letter to ensure that our position is clear.

1. Your letter does not dispute that SeatGeek's Prime inventory management tools have underperformed relative to similar technologies used by other New York City venues for the same Events. SeatGeek's release of a new "beta version" of its Prime inventory management tools at some undefined point "next month" is not a timely cure of this failure to comply with the representation in **Section 13.2(x)** of the Agreement.

2. Your letter does not dispute that the industry standard is to commence queue exit rate for on-sales at 500 purchasers per minute. You instead state that "SeatGeek has applied the queue exit rate of 500 purchasers per minute for all Event on-sales as of August 31, 2022." We have no basis to verify that statement because there has been only one small on-sale since August 31 for which our concern about queue exit rate was not applicable. Without any experience, we cannot be confident that the SeatGeek system can accommodate commencing queue exit rate for on-sales at 500 purchasers per minute.

3. You state that "SeatGeek will complete this work in time for the playoff enrollment in March 2023." Once again, however, your September 7 letter gives no indication of what SeatGeek intends to do to fix this problem, which caused massive confusion for Nets season ticket holders for the 2022 NBA playoffs. Your letter also ignores that we may want to offer Nets season ticket holders the option of purchasing 2023 playoff tickets before March 2023. In any event, your September 7 letter does not state that SeatGeek intends to cure this failure to comply with the representation in **Section 13.2(x)** of the Agreement within the period provided by **Section 15.1.1** of the Agreement.

4. Your assertion that "other prominent ticketing service providers" are unable to list special entitlements for the resale of tickets in the secondary market is incorrect, and your statement that SeatGeek is "working to honor the [BSE Parties'] product enhancement request" is not a timely cure of SeatGeek's failure to comply with the representation in **Section 13.2(x)** of the Agreement.

5. Similarly, your statement that SeatGeek "is working to provide a ... timeline for the production of this report" is not a timely cure of SeatGeek's failure to comply with the representation in **Section 13.2(x)** of the Agreement.

6. You state that "SeatGeek has resolved this matter" by beginning to provide "a transaction level breakdown of account credit payouts on the weekly BSE Settlement Report that allows the BSE Parties to deposit the credits to the appropriate account." To my knowledge, we have not yet seen the "transaction level breakdown" you reference in your letter. More fundamentally, the BSE Parties should not be required to comb through the weekly BSE Settlement Report to find this information. This inefficient and temporary solution to this problem does not comply with industry standards, and your assurance that SeatGeek "continue[s] to work on a better way to deliver this information" is not a timely cure of SeatGeek's failure to comply with the representation in **Section 13.2(x)** of the Agreement.

7. Although you "disagree that there has not been any consistent communication on this matter," SeatGeek has not proactively communicated with the BSE Parties on this important issue or provided us with regular status reports. Your letter also does not dispute that SeatGeek continues to pull funds from different accounts in order to make refunds. That practice fails to comply with

HIGHLY CONFIDENTIAL

SG-CID-00008321

DX-0678.0003

SeatGeek, Inc.
September 13, 2022
Page 3

industry standards and thus constitutes a failure to comply with the representation **Section 13.2(x)** of the Agreement, which has not been cured in a timely manner.

8. Your letter states that SeatGeek "will provide the BSE Parties with phone numbers that SeatGeek has stored for the users linked to these CRM records by September 23, 2002 through secure file transfer … and share a monthly update of this data until SeatGeek is able to resolve the issue." At the outset, your August 26, 2022 letter stated that SeatGeek would "provide an update on [its] investigation by August 31, 2022." I do not believe that we received the promised update. We also do not understand how SeatGeek is supposedly obtaining the phone numbers that it says it will provide to the BSE Parties by September 23, 2022. In addition, I must stress that "a monthly update" is not timely enough and does not comply with industry standards. We need to contact Nets season ticket holders more quickly than that, and we need to know that we have the correct telephone number.

As we previously stated, the list of items raised in our letters is not intended to be an exhaustive list of all of SeatGeek's breaches of the Agreement to date, and the BSE Parties reserve the right to add to and modify the SeatGeek breaches set forth in the Notice of Breach.

In closing, like you, we sincerely hope to move beyond this debate and reach a prompt agreement on an amendment to the Agreement. We hope that the discussions between our respective business teams produce such an agreement in short order that puts us on a productive path forward.

Very truly yours,

Jeffrey B. Gewirtz
Chief Legal Officer

cc:    Sam Zussman *(via email to szussman@bseglobal.net)*
       Jack Groetzinger *(via email to jack@seatgeek.com)*
       Richard C. Pepperman II *(via email to peppermanr@sullcrom.com)*

HIGHLY CONFIDENTIAL

SG-CID-00008322

**DX-0678.0004**