DX-1393(1)

Bates: SG-CID-00000047 – SG-CID-00000067

SeatGeek and Adirondack Thunder Ticketing Contract



## EXCLUSIVE TICKET SALES SERVICES AGREEMENT

This Exclusive Ticket Sales Services Agreement (the "Agreement"), effective as of November 13, 2020 (the "Effective Date"), is entered into by and between SeatGeek, Inc. ("SeatGeek") and Adirondack Civic Center Coalition, Inc. ("Coalition"). This Agreement consists of this Exclusive Ticket Sales Services Agreement, Exhibit A – Compensation, Exhibit B – Sponsorship Deal Terms, and any other Exhibits attached hereto, all of which are incorporated herein by this reference.

## RECITALS

WHEREAS, Coalition operates the venue currently known as "Cool Insuring Arena" ("Venue"), a sports and entertainment facility in Glens Falls, New York where the Adirondack Thunder ("Thunder"), a professional ice hockey team in ECHL Inc. ("ECHL"), plays its Home Games;

WHEREAS, SeatGeek offers on its own behalf and on behalf of third parties the SeatGeek Platform, comprising a proprietary search, sales and distribution platform for Tickets to Events, in both the primary and secondary Ticketing markets, including associated SaaS services and Software;

WHEREAS, Coalition and SeatGeek desire to enter into an agreement whereby Coalition: (1) grants to SeatGeek certain Rights in connection with the Thunder and the Venue, including certain exclusive Rights in accordance with the terms and conditions of this Agreement; and (3) engages SeatGeek as its exclusive ticketing service provider; and

WHEREAS, Coalition and SeatGeek desire to enter into this Agreement to mutually promote the success of SeatGeek, Thunder and Venue.

NOW, THEREFORE, in consideration of the mutual promises set forth herein and for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1.   **Definitions.** As used in this Ticketing Agreement, the following terms shall have the respective meanings indicated below:

   i.   "Commercial Category" shall mean the advertising, promotion, offering, facilitation, sale or other distribution of tickets to events, including ticketing systems (primary and secondary) and applicable Services.

   ii.   "Competitor" shall mean any third party that is engaged in a material respect in the business of the sale, resale or issuance of tickets.

   iii.   "Event" means a (i) Home Game, (ii) another game played by the Thunder at the Venue for which Coalition controls the ticketing and (iii) any concert, sporting, entertainment, cultural or other act or event of any kind or nature whatsoever for which a Ticket is required for entry and that is scheduled to be held, presented or experienced at the Venue or at another venue owned by Coalition, in each case, other than Excluded Events.

   iv.   "Excluded Event" means any third-party sanctioned, promoted, or operated act or event at the Venue if the operator of such third-party act or event has an exclusive ticketing partner other than SeatGeek; provided, however, Coalition shall use commercially reasonable efforts to attempt to obtain ticketing rights for any act or event at the Venue prior to designating such act or event an Excluded Event.

   v.   "Facility" shall mean, the Venue, as applicable, and any parking lots owned, controlled, leased, licensed, or otherwise occupied or used by or on behalf of Coalition or the Thunder and/or used for any Events.

   vi.   "Facility Box Office" shall mean the Ticket sales location(s) located in, around or at the Facility.

   vii.   "Game Ticket" shall mean admission to Home Games.

HIGHLY CONFIDENTIAL

*Confidential*

viii.    "Games" shall mean ECHL pre-season and regular season and ECHL playoff games played by Thunder.

ix.    "Home Games" shall mean Games played by the Thunder at the Venue.

x.    "Rights" shall mean all sponsorship rights and benefits granted to SeatGeek pursuant to this Agreement.

xi.    "Sale," "Sell" and any derivations thereof in this Agreement shall include any distribution of Tickets (whether for consideration or for no consideration), by any means or method (including, without limitation, on the Internet or by auction), and shall include resales.

xii.    "SeatGeek Platform" means the Software, SeatGeek Digital Platforms, related procedures, and repair and maintenance services established and maintained by SeatGeek and its affiliates for the purpose of selling, distributing, auditing and/or controlling the sale of Tickets for Events.

xiii.    "Sellable Capacity" means the admission capacity of the Facility for any particular Event.

xiv.    "Services" shall mean the services provided by SeatGeek to Coalition in accordance with this Agreement.

xv.    "Software" means SeatGeek's Ticketing system software and any other deliverables furnished by SeatGeek and/or for SeatGeek Platform access (including, but not limited to, APIs and SDKs) provided to Coalition or any third party by SeatGeek during the Term.

xvi.    "Ticket" means a printed, electronic or, to the extent then-supported by SeatGeek, other type of evidence of the right, option or opportunity to occupy space at or to enter or attend an Event, even if not evidenced by any physical manifestation of such right (e.g., an electronic image displayed on mobile device).

xvii.    "Ticket Receipts" means the amount of the Total Retail Price of a Ticket sold hereunder.

xviii.    "Total Retail Price" means the total price charged at checkout to include all fees, taxes, and shipping. For the avoidance of doubt, the "Total Retail Price" shall reflect the full amount that a consumer pays for a Ticket (i.e., the amount displayed on a consumer's credit card statement).

## 2. Term.

A.    Initial Term. The initial term of this Agreement shall begin on the Effective Date and, unless terminated as set forth herein, shall continue for a period ending on June 30, 2028 ("Term"). For the avoidance of doubt, this Agreement will be effective and binding as of the Effective Date, but the sale of Tickets commences as of July 1, 2021.



HIGHLY CONFIDENTIAL

SG-CID-00000048

**DX-1393.0004**

*Confidential*

3. **Sponsorship Rights**.

A.    Grant of Rights.  Coalition hereby grants to SeatGeek for the Term of this Agreement, and SeatGeek hereby accepts, the non-exclusive (except as otherwise set forth herein), non-transferable (except as otherwise set forth herein), non-sublicenseable (except as otherwise set forth herein) and limited right to exploit the Rights set forth in this Agreement in connection with the activation of its rights under this Agreement.  Except as otherwise set forth herein, Coalition shall not cause or permit:  (x) any third party to activate in SeatGeek's Commercial Category; (y) any Competitor to use any Thunder marks or other Intellectual Property, and/or to use and/or activate any rights in respect of any Thunder- and/or Facility-related advertising, promotional or sponsorship inventory; and/or (z) any third party to provide any services reasonably similar to or competitive with the Services provided by SeatGeek under this Agreement.

B.    Designations.  SeatGeek shall have the right to describe itself using the designations set forth in Exhibit B, and any additional designations mutually agreed upon in writing (collectively, the "Designations").

C.    Sponsorship Rights and Fees.  SeatGeek shall receive the sponsorship rights, benefits, considerations and assets set forth in Exhibit B to this Agreement ("Sponsorship Rights").  In consideration of receiving the Sponsorship Rights, SeatGeek shall pay the sponsorship fee, per Sponsorship Year ("Sponsorship Fee") as set forth in Exhibit B.

D.    Advertising and Media Assets.  Coalition shall not, nor shall Coalition cause or permit any third party to, advertise or promote, in, on or with respect to any Coalition-controlled and/or Facility- or Facility-related physical, electronic, print, television or any other advertising or media inventory, any Competitor (including, without limitation, any Distribution Partner).

4. **Exclusivity; Distribution Partners**.

A.    Grant of Exclusive Rights.  Except as specifically set forth herein, Coalition hereby grants to SeatGeek, and SeatGeek accepts from Coalition, the right during the Term of this Agreement, to be the exclusive seller (i.e., exclusive as to third parties, as well as to Coalition and any affiliate) of all Tickets for the Sellable Capacity for every Event, via any and all means and methods, including via the internet, apps, social media, bots, by telephone, computer, IVR, outlets, television, clubs, VIP packages, presales, upsells, or by any other means of distribution, whether existing now or at any time in the future.  Without limiting the foregoing, except as specifically set forth herein with regard to Distribution Partners and Excluded Events, Coalition shall not, directly or indirectly, cause or permit any third party to use any Thunder or Facility Intellectual Property in connection with the Sale of Tickets to Events.  Coalition shall ensure that the entire Sellable Capacity for every Event shall be made available for distribution on the SeatGeek Platform.  For the avoidance of doubt, nothing in this Agreement shall be construed as limiting the rights of ECHL to use the Thunder Intellectual Property, including the right to use the Thunder logo on tickets for games that are not Home Games.

B.    Designations.  SeatGeek shall be the sole and exclusive "official ticket sales platform," in both primary and secondary Ticket sales markets, of Thunder and Venue, and SeatGeek may use such designation, as well as the additional designations set forth on Exhibit B.  Any and all media and press releases regarding the relationship contemplated herein shall be mutually agreed upon by the parties and shall use the such designation(s) when referencing SeatGeek.  The parties agree that each Distribution Partner may be required to display reasonably prominently a SeatGeek mark in connection with such Distribution Partner's sale of Tickets to Events, in a manner to be mutually agreed upon by SeatGeek and Coalition (e.g., "Powered by SeatGeek").  Subject to the terms of this Agreement, Thunder grants to SeatGeek, and ECHL acknowledges Thunder's right to make such grant, a sublicense to use Thunder Intellectual Property in order to use the official designation(s) and refer to its relationship with Thunder and the Venue as set forth herein, in any and all media and platforms, whether now known or hereafter developed, both during the Term and thereafter (for historical purposes).

C.    Distribution Partners.  SeatGeek acknowledges and agrees that certain third-party distribution partners, mutually agreed upon by the parties in writing, such agreement not to be unreasonably withheld ("Distribution Partners"), shall be permitted (a) to Sell Tickets to Events and (b) to use Thunder intellectual property in connection with such Sales, but only for the purposes of identifying themselves as "an official distribution partner" or "an official preferred partner" of Thunder ("Permitted Designation"); provided, however, that the Sale or other distribution of Tickets for Events by Distribution Partners shall be subject to (1) at SeatGeek's election, SeatGeek serving as the merchant of record or SeatGeek's receipt of the corresponding compensation set forth on Exhibit A for such transactions, (2) the use by any such Distribution Partner of the SeatGeek Platform as provided for herein, including any bar code

3

SG-CID-00000049

**DX-1393.0005**

requirements instituted by SeatGeek, (3) the use by any such Distribution Partners of the "powered by SeatGeek" designation, or other approved designation set forth herein, in connection with such Sales, (4) the requirement that any such Distribution Partner must comply with generally applicable terms and conditions for the Sale of Tickets for Events, including minimum prices for Tickets for Events, with which Coalition requires SeatGeek to comply and (5) the requirement that, except in connection with the Permitted Designation, Coalition shall not cause or permit any Distribution Partner to use any Thunder Intellectual Property or use any other designation to refer to its Sales of Tickets to Events. SeatGeek will authenticate Tickets (i.e., re-issue barcodes) on all Tickets Sales made by or on behalf of Distribution Partners. In furtherance of this third-party distribution, SeatGeek (x) will broadcast relevant Thunder Ticket inventory to Distribution Partners, (y) will impose no restriction on Distribution Partner transaction volume for Thunder or other third party events, and (z) will make available and require usage of barcode reissue API (e.g., in connection with resale or transfers) to Distribution Partners. In addition, Coalition may pursue commercial agreements with Distribution Partners as reasonably approved by SeatGeek.

D.    API Requirements.  SeatGeek shall make available its then-standard application programming interface, SDK or other digital interfaces (collectively, "APIs") to enable Distribution Partners' and Additional API Licensees' (defined below) permitted use of the SeatGeek Platform hereunder.  Coalition shall cause each such Distribution Partner and Additional API Licensee, on a royalty-free basis: (a) to use such APIs (and not any other mechanism) to connect to the SeatGeek Platform; (b) to grant to SeatGeek the necessary rights and to provide to SeatGeek the assistance reasonably necessary in order to operate and maintain such APIs; and (c) to use such API access, including, without limitation, any and all reporting or other data or materials resulting therefrom, solely for the benefit of Coalition's internal business operations and for no other purpose whatsoever (provided, however, unless otherwise agreed by SeatGeek and a Distribution Partner, Coalition shall not use such access, reporting, data, materials or other information to promote the sale of Tickets to single Events). SeatGeek shall grant to such Distribution Partners and Additional API Licensee the right to use such APIs on a royalty-free basis; provided, however, that such Distribution Partners and Additional API Licensees shall be required (x) to execute and comply with SeatGeek's then-current form API license agreement in connection with such use and (y) to maintain, at each such Distribution Partner's and Additional API Licensee's sole expense, whatever insurance coverage, hardware, software, systems, connectivity, networks and other information technology assets that may be required in order to use such API.  (The requirements set forth in clauses (a), (b), (c), (x) and (y) of this Section 4.D shall be referred to herein as the "API Requirements.")

E.    Sales by Coalition.  Coalition retains the right, in each case using the SeatGeek Platform: (a) to engage in primary sales of single Tickets from the Facility Box Office to persons physically present at the Facility Box Office; (b) to engage in primary sales of season/contract Tickets; and (c) to engage in group primary Sales of Tickets. Notwithstanding anything herein to the contrary, Coalition shall not, nor shall Coalition cause or permit any third party to, directly or indirectly, make Tickets available via any method (including via consignment) without the prior written consent of SeatGeek in each instance.

F.    Access to On-Sale and Pre-Sale Tickets.  Notwithstanding anything herein to the contrary, Coalition will cause SeatGeek to have the exclusive right (i.e., exclusive as to third parties, as well as to Coalition) to sell Tickets from the Sellable Capacity to any particular Event or series of Events at least seventy-two (72) hours prior to the time (e.g., the pre-sale date or on-sale) that any Distribution Partner has the right to sell Tickets to any such Event or Events.

G.    SeatGeek Advertisements.  Coalition hereby grants to SeatGeek the right, in SeatGeek's sole discretion, to advertise, in any media determined by SeatGeek, including via SeatGeek Digital Platforms, Events and the availability of Tickets and, in connection therewith, a sublicense to use the Thunder Intellectual Property and all other information respecting the Events.

H.    Coalition Advertisements.  Coalition shall advertise and promote on Coalition Digital Platforms (but not, for the avoidance of doubt, on Digital Platforms of Competitors or Distribution Partners) the availability of Tickets for Events, the SeatGeek Platforms and the Events; provided, however, that Coalition shall cause such advertisements and promotions to display prominently SeatGeek's name, logos and, if the advertisement or promotion relates to the availability of Tickets, the applicable SeatGeek Platform location.  Coalition shall cause the Club's Digital Platforms to deep link to specified locations within the SeatGeek Platform where ticket purchasers can begin the process of purchasing Tickets to Events.

I.    VenueOS Service. SeatGeek, in partnership with VenueNext, shall provide an ordering service ("VenueOS Service") as set forth in Exhibit C, pursuant to which SeatGeek shall provide online food, beverage and merchandise ordering capabilities for Events with additional options to add Venue and/or Thunder-related experiential offers.

4

SG-CID-00000050

J.    Third Party Events. SeatGeek shall provide support for third party events ("3PE") as set forth in Exhibit D.

5.

6.    **Compensation**.

A.    SeatGeek Charges and Fees. SeatGeek shall be entitled to assess and receive charges and fees in the amounts set forth on Exhibit A. The parties shall settle amounts (i.e., remit amounts due to the other) within 30 days from the end of the last day of each month (or more frequently as agreed upon by the parties). SeatGeek shall remit fees in accordance with the terms herein, and Coalition shall remit fees to SeatGeek by ACH or wire transfer (at SeatGeek's discretion and direction). In the event applicable law prohibits the assessment of any such fees, SeatGeek and Coalition shall agree on alternative means for compensating SeatGeek for its services in amounts reasonably comparable to those set forth in this Agreement, and as permitted by applicable law.

B.    Financial Information. Coalition acknowledges and agrees that the respective charges and fees to be retained by each of Coalition and SeatGeek hereunder are based, in part, on information provided by Coalition to SeatGeek as of or prior to the Effective Date regarding historical and projected Events, including, without limitation, historical and projected ticket prices and ticket sales for such Events ("Event Statements"). Coalition represents, warrants and covenants that all such Event Statements (a) with respect to Events occurring prior to the Effective Date, are true, correct and complete and (b) with respect to Events projected to occur following the Effective Date ("Future Event(s)"), represent Coalition's best, reasonable and good faith projections. In the event of the occurrence (or non-occurrence) of any fact or circumstance that leads Coalition reasonably to determine that the Event Statements overstate the actual number of Future Events that Coalition reasonably expects to occur during the Term (or the projected ticket prices or ticket sales therefor) (x) Coalition shall notify SeatGeek immediately in writing of such determination and (y) the parties shall discuss in good faith an appropriate remedy therefor, which remedy may include a mutually agreed upon written modification to the economic terms set forth herein for the benefit of SeatGeek; provided, however, that, in the event that the parties fail to agree on such a modification within a reasonable period of time, SeatGeek shall have the right to terminate this Agreement without liability upon written notice, in which event Coalition shall refund to SeatGeek a prorated amount of any amounts advanced or pre-paid to Coalition by SeatGeek hereunder.



HIGHLY CONFIDENTIAL

SG-CID-00000051

*Confidential*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the Effective Date.

| SEATGEEK, INC. | ADIRONDACK CIVIC CENTER COALITION, INC. |
|---|---|
| 902 BROADWAY, FLOOR 10 | 136 GLEN STREET, SUITE THREE |
| NEW YORK, NY 10010 | GLENS FALLS, NY 12801 |

By: *Danielle du Toit*

Name: Danielle du Toit

Title: President, SeatGeek Enterprise

Date: 11/13/2020

By: JEFF MEAD

Name: JEFF MEAD

Title: General Manger

Date: 11/16/2020

ECHL INC.

By: *Ryan Crelin*

Name: Ryan Crelin

Title: Commissioner

Date: 11/13/2020

16

HIGHLY CONFIDENTIAL

SG-CID-00000062

**DX-1393.0018**

DocuSign Envelope ID: 5061E744-44D0-3Q73-8769-S6D2AB09B009

*Confidential*

## EXHIBIT A

## COMPENSATION

### I. Primary Ticketing Fee

SeatGeek shall set and retain the following fees with respect to Online Tickets for single Events (including "Packs" for single Events such as "Family Four-Packs"):

- Thunder Events: ▮▮▮▮▮▮▮▮ per Ticket with SeatGeek having the option to set a minimum fee of ▮ per Ticket
- High school Events: ▮▮▮▮▮▮▮ per Ticket with SeatGeek having the option to set a minimum fee of ▮ per Ticket
- Other Events: ▮▮▮▮▮▮▮▮ per Ticket with SeatGeek having the option to set a minimum fee of ▮▮▮ per Ticket

Coalition shall have the right to set and retain any additional fees applied to Tickets sold through the SeatGeek Platform at Coalition's sole discretion (including service, facility and order fees). For the avoidance of doubt, SeatGeek shall not collect any fee for a sale at the Facility Box Office.

### II. Secondary Ticketing Fee

SeatGeek will set ▮▮▮▮▮▮▮▮ at its sole discretion ("Secondary Fee Revenue").

For all online secondary sales of Tickets to Events at the Venue for which SeatGeek is the primary ticketing platform, SeatGeek shall remit to Coalition ▮▮▮▮▮▮▮▮▮▮ of net Secondary Fee Revenue actually received by ▮▮▮▮▮▮▮▮▮▮ In the event SeatGeek is required to refund any Secondary Fee Revenue, Coalition agrees to refund to SeatGeek such Secondary Fee Revenue following SeatGeek providing reasonable documentation of the basis for such refund.

Purchasers of Tickets for Thunder Events will have the right to post Tickets for resale without restriction.

Promoters for third party Events at the Venue will have the ability to "turn off" resale at their sole discretion. If they choose to activate resale, SeatGeek will set the Secondary Fee Revenue at its sole discretion and shall remit Coalition ▮▮▮▮▮▮▮▮▮▮ of ▮ Secondary Fee Revenue actually received by SeatGeek ▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮ In the event SeatGeek is required to refund any Secondary Fee Revenue, Coalition agrees to refund to SeatGeek such Secondary Fee Revenue following SeatGeek providing reasonable documentation of the basis for such refund.

17

HIGHLY CONFIDENTIAL

SG-CID-00000063

**DX-1393.0019**