DX-1393(38)

Bates: SG-CID-00000984 – SG-CID-00001021

SeatGeek and Houston Dynamo Sponsorship Contract

*Confidential* EXECUTION COPY

## SPONSORSHIP AGREEMENT

This Sponsorship Agreement dated as of August 3, 2020 (the "Effective Date") (including the Ticketing Agreement and all other exhibits hereof, this "Agreement" or "Sponsorship Agreement") is entered into by and between Dynamo Soccer LLC ("Club Operator"), Dynamo Stadium LLC ("StadCo" and together with Club Operator, "Licensor"), and SeatGeek, Inc. ("Sponsor" or "SeatGeek").

## R E C I T A L S

**WHEREAS,** Club Operator operates Houston Dynamo ("Club"), a soccer club in MLS;

**WHEREAS**, StadCo operates the venue known as "BBVA Stadium" ("Stadium"), a sports and entertainment facility in Houston, Texas where Club plays its Home Games;

**WHEREAS,** MLS has appointed Club Operator to serve as its exclusive agent with authority to license local commercial affiliations, including the right to license the use of the Club Marks and Player Likenesses in conjunction with such local commercial affiliations, all subject to MLS approval;

**WHEREAS,** Sponsor has entered into that certain Official Sponsor Agreement with SUM, effective as of November 17, 2016 ("Official Sponsor Agreement");

**WHEREAS,** Licensor and Sponsor desire to enter into an agreement whereby Licensor: (1) grants to Sponsor certain Rights in connection with the Club, the Stadium, Games and (if applicable) Local Game Distributions; (2) grants to Sponsor certain exclusive rights to use the Licensor Marks and/or Player Likenesses in Sponsor's Commercial Category in connection with the advertising and promotion of certain of Sponsor's Products/Services/Retail Operations in accordance with the terms and conditions of this Agreement; and (3) engages Sponsor as its exclusive ticketing service provider pursuant to the Ticketing Agreement; and

**WHEREAS,** Licensor and Sponsor desire to enter into this Agreement to mutually promote the success of Sponsor, Club, Stadium and MLS.

**NOW, THEREFORE,** in consideration of the mutual promises set forth herein and for good and valuable consideration, the receipt of which is hereby acknowledged, Licensor and Sponsor agree as follows:

1. **DEFINITIONS.** Capitalized terms used herein shall have the following definitions set forth in this Section 1. Other capitalized terms used, but not defined, in this Agreement shall have the meanings set forth in the Ticketing Agreement:

"Advertising Materials" shall mean any and all (i) general promotional, advertising, packaging, collateral or other display materials, (ii) media, (iii) promotions, (iv) advertising and promotional concepts (including, but not limited to, slogans, campaigns or programs), or (v) any other creative, content or product created or prepared by or on behalf of Sponsor or any authorized third-party that displays any of the Club Marks and is used in connection with Sponsor's Products/Services/Retail Operations, including in or around any Facility or in furtherance of any Pass-Through Rights. Without limiting the generality of the foregoing, such materials may include, without limitation, television, radio, print, outdoor, industrial and point-of-sale materials as well as any materials used in connection with the Digital Platforms.

"Affiliate" shall mean an entity or person that, directly, or indirectly, through one or more intermediaries controls, is controlled by, or is under common control with a party now known or hereafter in the future during the Term.

"Agreement" shall have the meaning set forth in the Preamble hereof.

"Announcements" shall have the meaning set forth in Section 6.C. of this Agreement.

"Appearances" shall have the meaning set forth in Section 6.G. of this Agreement.

"Applicable Laws" shall mean all laws, regulations, and governmental rules and standards applicable to a party's obligations, actions or inactions under this Agreement or the Ticketing Agreement.

"Applicable Privacy Laws" shall mean Applicable Laws of the United States of America governing the protection and privacy of data relating to this Agreement, including, without limitation, Purchaser Data.

"Campeones Cup" shall mean the annual match played between the preceding calendar year's MLS Cup winner and the current calendar year's Liga MX Campeon de Campeones Cup winner.

"Claim" or "Claims" shall have the meaning set forth in Section 8.A. of this Agreement.

"Club" shall mean Houston Dynamo, a professional soccer club in MLS.

"Club Marks" shall mean the official trade names, symbols, and mascot (whether registered or not), if any, of Club, as may be developed by, or on behalf of, Club, and/or other trademarks or copyrights owned and/or used by MLS and Licensor, but specifically excluding the MLS Marks and the eMLS Marks.

"Commercial Sponsors" shall mean all MLS sponsors, MLS suppliers, Licensor sponsors, Licensor suppliers or other entities granted a license to use the MLS

HIGHLY CONFIDENTIAL

SG-CID-00000984

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first written above.

**DYNAMO SOCCER LLC**

By: _John W. Walker_ 59C63ED67F2C4BA...

Name: John Walker

Title: PRESIDENT

Date: 8/3/2020

**DYNAMO STADIUM LLC**

By: _John W. Walker_ 59C63ED67F2C4BA...

Name: John Walker

Title: PRESIDENT

Date: 8/3/2020

**SEATGEEK, INC.**

By: _Danielle du Toit_ E9F200BAEDD549D...

Name: Danielle du Toit

Title: President, SeatGeek Enterprise

Date: 8/3/2020

PURSUANT TO SECTION 10.D OF THIS AGREEMENT

Approved by:

**MAJOR LEAGUE SOCCER L.L.C.**

By: _Carter Ladd_ 367E9D5393C14DC...

Name: Carter Ladd

Title: SVP

Date: 8/14/2020

17

HIGHLY CONFIDENTIAL

SG-CID-00001000

**DX-1393.1015**

## SCHEDULE I

### EXCLUSIVE TICKET SALES SERVICES AGREEMENT

This Exclusive Ticket Sales Services Agreement ("Ticketing Agreement"), effective as of the date of the Sponsorship Agreement ("Effective Date"), is entered into by and between SeatGeek, Inc. ("SeatGeek"), Dynamo Soccer LLC ("Club Operator"), Dynamo Stadium LLC ("StadCo" and together with Dynamo Soccer, "Dynamo"). This Ticketing Agreement consists of this Exclusive Ticket Sales Services Agreement, Exhibit A – Compensation, Exhibit B – Service Level Agreement, and any other Exhibits attached hereto, all of which are incorporated herein by this reference. Capitalized terms used, but not defined, in this Ticketing Agreement shall have the meanings set forth in the Sponsorship Agreement ("Sponsorship Agreement") to which this Ticketing Agreement is attached as Schedule 1.

### RECITALS

WHEREAS, SeatGeek offers on its own behalf and on behalf of third parties the SeatGeek Platform, comprising a proprietary search, sales and distribution platform for Tickets to Events, in both the primary and secondary Ticketing markets, including associated SaaS services and Software; and

WHEREAS, Dynamo seeks to retain SeatGeek, on an exclusive basis as set forth herein, to provide Ticketing Services for Events;

NOW, THEREFORE, the parties hereto hereby agree as follows:

### AGREEMENT

1. Definitions. As used in this Ticketing Agreement, the following terms shall have the respective meanings indicated below:

    i.    "Event," and "Excluded Event" shall have the respective meanings set forth in the Sponsorship Agreement.

    ii.    "Sale," "Sell" and any derivations thereof in this Ticketing Agreement shall include any distribution of Tickets (whether for consideration or for no consideration), by any means or method (including, without limitation, on the Internet or by auction), and shall include resales.

    iii.    "Sellable Capacity" means the admission capacity of the Facility for any particular Event (excluding, for the avoidance of doubt, Tickets distributed in the manner contemplated by Section 2(v).

    iv.    "Software" means SeatGeek's Ticketing system software and any other deliverables furnished by SeatGeek and/or for SeatGeek Platform access (including, but not limited to, APIs and SDKs) provided to Dynamo or any third party by SeatGeek during the Term.

    v.    "Term," means the Effective Date through December 31, 2025 except as otherwise set forth herein. For the avoidance of doubt, this Ticketing Agreement will be effective and binding as of the Effective Date, but the sale of tickets commences in connection with ticket sales for the Club's 2021 season or such earlier date as mutually agreed by the parties.

    vi.    "Ticket" means a printed, electronic or, to the extent then-supported by SeatGeek, other type of evidence of the right, option or opportunity to occupy space at or to enter or attend an Event, even if not evidenced by any physical manifestation of such right (e.g., an electronic image displayed on mobile device).

    vii.    "Ticket Receipts" means the amount of the Total Retail Price of a Ticket sold hereunder.

    viii.    "Total Retail Price" means the total price charged at checkout to include all fees, taxes, and shipping. For the avoidance of doubt, the "Total Retail Price" shall reflect the full amount that a consumer pays for a Ticket (i.e., the amount displayed on a consumer's credit card statement).

2.    Exclusivity; Distribution Partners.

    i.    Grant of Exclusive Rights. Except as specifically set forth herein, Dynamo hereby grants to SeatGeek, and SeatGeek accepts from Dynamo, the right during the Term of this Ticketing Agreement, to be the exclusive seller (i.e., exclusive as to third parties, as well as to Dynamo and any Affiliate) of all Tickets for the Sellable Capacity for every Event, via any and all means and methods, including via the internet, apps, social media, bots, by telephone, computer, IVR, outlets, television, clubs, VIP packages, presales, upsells, or by any other means of distribution, whether existing now or at any time in the future. Without limiting the foregoing, except as specifically set forth herein with regard to Distribution Partners and Excluded Events, Dynamo shall not, directly or indirectly, cause or permit any third party to use any Dynamo, Club or Facility intellectual property in connection with the Sale of Tickets to Events. Dynamo shall ensure that the entire Sellable Capacity for every Event shall be made available for distribution on the SeatGeek Platform. Notwithstanding the foregoing, Dynamo may sell tickets directly to Eventellect or another "super broker" partner during the Term provided

23

SG-CID-00001006

**DX-1393.1021**

*Confidential*

that (i) the quantity and nature of such sales are reasonably consistent with Dynamo's prior year sales to Eventellect, and (ii) Dynamo requires that if Eventellect or another "super broker" partner lists such tickets for resale on any ticket marketplace, Eventellect or such "super broker" partner must also list such tickets for resale on the SeatGeek marketplace at prices equal to or better than the prices listed on such other ticket marketplaces.

ii.        Distribution Partners.  SeatGeek acknowledges and agrees that certain third-party distribution partners, mutually agreed upon by the parties in writing, such agreement not to be unreasonably withheld ("Distribution Partners"), shall be permitted (a) to Sell Tickets to Events and (b) to use Dynamo intellectual property in connection with such Sales, but only for the purposes of identifying themselves as "an official distribution partner" or "an official preferred partner" of Club ("Permitted Designation"); provided, however, that the Sale or other distribution of Tickets for Events by Distribution Partners shall be subject to (1) at SeatGeek's election, SeatGeek serving as the merchant of record or SeatGeek's receipt of the corresponding compensation set forth on Exhibit A for such transactions, (2) the use by any such Distribution Partner of the SeatGeek Platform as provided for herein, including any bar code requirements instituted by SeatGeek, (3) the use by any such Distribution Partners of the "powered by SeatGeek" designation, or other approved designation set forth herein, in connection with such Sales, (4) the requirement that any such Distribution Partner must comply with generally applicable terms and conditions for the Sale of Tickets for Events, including minimum prices for Tickets for Events, with which Dynamo requires SeatGeek to comply and (5) the requirement that, except in connection with the Permitted Designation, Dynamo shall not cause or permit any Distribution Partner to use any Dynamo intellectual property or use any other designation to refer to its Sales of Tickets to Events. SeatGeek will authenticate Tickets (i.e., re-issue barcodes) on all Tickets Sales made by or on behalf of Distribution Partners.  The parties agree that each Distribution Partner may be required by SeatGeek to display reasonably prominently a SeatGeek mark in connection with such Distribution Partner's Sale of Tickets to Events, in a manner to be reasonably and mutually agreed upon by SeatGeek and Dynamo (e.g., "Powered by SeatGeek"). In furtherance of this third-party distribution, SeatGeek (x) will broadcast relevant Club Ticket inventory to Distribution Partners, (y) will impose no restriction on Distribution Partner transaction volume for Dynamo or other third party events, and (z) will make available and require usage of barcode reissue API (e.g., in connection with resale or transfers) to Distribution Partners. In addition, Dynamo may pursue commercial agreements with Distribution Partners as reasonably approved by SeatGeek.

iii.        API Requirements.  SeatGeek shall make available its then-standard application programming interface, SDK or other digital interfaces (collectively, "APIs") to enable Distribution Partners' and Additional API Licensees' (defined below) permitted use of the SeatGeek Platform hereunder.  Dynamo shall cause each such Distribution Partner and Additional API Licensee, on a royalty-free basis: (a) to use such APIs (and not any other mechanism) to connect to the SeatGeek Platform; (b) to grant to SeatGeek the necessary rights and to provide to SeatGeek the assistance reasonably necessary in order to operate and maintain such APIs; and (c) to use such API access, including, without limitation, any and all reporting or other data or materials resulting therefrom, solely for the benefit of Dynamo's internal business operations and for no other purpose whatsoever (provided, however, unless otherwise agreed by SeatGeek and a Distribution Partner, Dynamo shall not use such access, reporting, data, materials or other information to promote the sale of Tickets to single Events). SeatGeek shall grant to such Distribution Partners and Additional API Licensee the right to use such APIs on a royalty-free basis; provided, however, that such Distribution Partners and Additional API Licensees shall be required (x) to execute and comply with SeatGeek's then-current form API license agreement in connection with such use and (y) to maintain, at each such Distribution Partner's and Additional API Licensee's sole expense, whatever insurance coverage, hardware, software, systems, connectivity, networks and other information technology assets that may be required in order to use such API.  (The requirements set forth in clauses (a), (b), (c), (x) and (y) of this Section 2(iii) shall be referred to herein as the "API Requirements.")

iv.        Sales by Dynamo.  Dynamo retains the right, in each case using the SeatGeek Platform: (a) to engage in primary sales of single Tickets from the Facility Box Office to persons physically present at the Facility Box Office; (b) to engage in primary sales of season/contract Tickets; and (c) to engage in group primary Sales of Tickets.  Notwithstanding anything herein to the contrary, Dynamo shall not, nor shall Dynamo cause or permit any third party to, directly or indirectly, make Tickets available via any method without the prior written consent of SeatGeek in each instance.  Notwithstanding the foregoing, Dynamo may consign up to ten percent (10%) of Tickets for any Event without the prior written consent of SeatGeek  provided that (i) Dynamo will offer SeatGeek in good faith comparable terms and conditions for consignment that it offers to any third party, and (ii) if any person or entity lists such consignment tickets for resale on any ticket marketplace, Dynamo will require that such person or entity must also list such consignment tickets for resale on the SeatGeek marketplace at prices equal to or better than the prices listed on such other ticket marketplaces.  Notwithstanding anything to the contrary contained in this Agreement, the limitation on consignment described herein shall not apply with respect to international soccer games played at the Stadium provided that the quantity of consigned Tickets shall be reasonably consistent with Dynamo's consignment of Tickets for similar international soccer games prior to the Term.

v.        Complimentary Seats.  Dynamo shall not, nor shall Dynamo cause or permit any third party to, distribute or provide, directly or indirectly, for any individual Game more than the number of Tickets permitted to be distributed under the League's Team Complimentary Ticket Policy (the "Complimentary Ticket Cap"), provided, however, that in no event will the Complimentary Ticket Cap for any year exceed twenty-five hundred (2500) Tickets per Game without SeatGeek's prior written consent.  The League will provide SeatGeek with written notice of changes to the Complimentary Ticket Cap.  In the event Dynamo distributes Tickets in excess of the Complimentary Ticket Cap, then Dynamo will compensate SeatGeek for the complimentary seats over the Complimentary Ticket Cap as set forth in this Section 2(v) (provided, however, that, for the avoidance of doubt, Dynamo shall not cause or permit any Competitor to

24

SG-CID-00001007

**DX-1393.1022**

distribute any such complimentary Tickets). In the event that the complimentary Tickets for any such Game exceed the Complimentary Ticket Cap, for every incremental complimentary Ticket, Dynamo shall owe to SeatGeek the amounts set forth in the fee schedule in Exhibit A, applied to a price equal to the last sold price of a corresponding seat for a similar Game, as determined by SeatGeek. SeatGeek will consider in good faith exceptions to the terms of this Section 2(v) requested by Dynamo (e.g., for non-profit Events), provided, that Dynamo identifies such Events at least thirty (30) days in advance.

vi.  No Third-Party Systems or Services. Except for Distribution Partners and Additional API Licensees (to the limited extent expressly permitted by Section 2(iii), above) and with respect to Excluded Events (to the limited extent expressly permitted by the Sponsorship Agreement), Dynamo shall not, directly or indirectly, use, sponsor, promote, advertise, authorize or permit the use of any Competitor products and services in SeatGeek's Commercial Category.

vii.  Access to On-Sale and Pre-Sale Tickets. Notwithstanding anything herein to the contrary, Dynamo will cause SeatGeek to have the exclusive right (i.e., exclusive as to third parties, as well as to Dynamo) to sell Tickets from the Sellable Capacity to any particular Event or series of Events at least seventy-two (72) hours prior to the time (e.g., the pre-sale date or on-sale) that any Distribution Partner has the right to sell Tickets to any such Event or Events.

3.  Marketing and Analytics Support. As between the parties, Dynamo shall have sole responsibility for outbound marketing and promotion of sales of Tickets for Events, including, without limitation, employing and/or retaining all ticket sales representatives and personnel (for the avoidance of doubt, such individuals shall use the SeatGeek Platform in order to effect such sales as set forth herein). Notwithstanding the foregoing, SeatGeek shall facilitate such efforts at its sole discretion, at no additional cost to Dynamo, to effect the following, the non-public and any proprietary aspects of which shall be considered SeatGeek Confidential Information and may not be used by Dynamo for any purpose other than for advertising and promoting the sale of Tickets to Events hereunder:

i.  Performance Marketing. SeatGeek will work with Dynamo to (a) coordinate bidding in order to maximize search engine results, (b) optimize search engine marketing and (c) improve other performance marketing initiatives.

███████████████████████████████████████████

iii.  Call Center. SeatGeek will provide reasonable call center services for the sale of individual Tickets for all Events occurring at the Stadium, including (a) providing a dedicated "888" number and (b) offering such call center services Monday – Saturday from 9:00am – 9:00pm (local time for the Stadium) and Sunday from 10:00am – 6:00pm (local time for the Stadium), and such other times as mutually agreed by the parties as it relates to the time of an Event.

iv.  Database Marketing. SeatGeek will provide reasonable database marketing support to promote Events (e.g., e-mail, push notification, in-app promotions).

v.  Dedicated Partner Marketing Manager. SeatGeek will provide a staff member charged with making SeatGeek marketing and business intelligence tools available to Dynamo.

vi.  Analytics and Reporting. Access to the standard modules of SeatGeek's analytics and reporting portal, Amplify.

4.  Setup/Conversion/Training Support. Dynamo shall have sole responsibility for using the SeatGeek Platform in accordance with the terms of this Agreement. SeatGeek will provide commercially reasonable onsite and remote implementation (including data conversion, initial event and manifest builds, system configuration and setup of reporting), training for selected Dynamo staff and ongoing support for Dynamo. SeatGeek shall train Dynamo personnel reasonably necessary for the initial staffing of the Facility Box Office and for initial use of the SeatGeek Platform hereunder. SeatGeek shall provide training to Dynamo personnel to the extent such training is necessary as a consequence of changes initiated by SeatGeek or changes in SeatGeek's method of operation. To the extent of any change in sales personnel by Dynamo, Dynamo agrees to absorb all of the expenses (including any and all reasonable travel expenses) thereof. Dynamo acknowledges and agrees that any person hours of professional services requested by Dynamo over and above the commitments described herein, if actually provided by SeatGeek, shall be provided at SeatGeek's then-current standard rate(s). SeatGeek shall invoice Dynamo for any such hours of services provided and Dynamo shall pay such amounts within thirty (30) days of the date of invoice.

5.  Compensation.

i.  SeatGeek Charges and Fees. SeatGeek shall be entitled to assess and receive charges and fees in the amounts set forth on Exhibit A. The parties shall settle amounts (i.e., remit amounts due to the other) within 30 days from the end of the

25

**DX-1393.1023**

*Confidential*

IN WITNESS WHEREOF, SeatGeek and Dynamo have caused this Agreement to be duly executed as of the Effective Date.

SEATGEEK, INC.
902 BROADWAY, FLOOR 10
NEW YORK, NY 10010

By:_____

Name: Danielle du Toit

Title: President, SeatGeek Enterprise

Date: 8/3/2020


DYNAMO SOCCER LLC
2200 TEXAS AVE.
HOUSTON, TX 77003

By:_____

Name: John Walker

Title: PRESIDENT

Date: 8/3/2020


DYNAMO STADIUM LLC
2200 TEXAS AVE.
HOUSTON, TX 77003

By:_____

Name: John Walker

Title: PRESIDENT

Date: 8/3/2020

33

SG-CID-00001016

**DX-1393.1031**

*Confidential*

## EXHIBIT A

## COMPENSATION

### I. Event Primary Sales

In contract year 1, SeatGeek will add and retain the fees set forth below for each individual online primary Ticket to an Event ("Primary Ticket Fees"):

| | | Houston Dynamo | Third Party Events |
| --- | --- | --- | --- |
| Low | High | Fan-Facing Fee | Fan-Facing Fee |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ |

34

HIGHLY CONFIDENTIAL

SG-CID-00001017

**DX-1393.1032**

*Confidential*

|  |  |  |  |
|---|---|---|---|
| ███ | ███ | ███ | ███ |
| ███ | ███ | ███ | ███ |

SeatGeek will remit to Dynamo ███████████ of the Primary Ticket Fees associated with all individual online primary Ticket sales to Events.

In each contract year, SeatGeek will remit to Dynamo ██████████ of the Primary Ticket Fees associated with any ████ online primary Ticket sales to Club Events equal to or greater than ████.

In each subsequent contract year, Dynamo will set the Primary Ticket Fees provided that the updated Primary Ticket Fees shall not be █████ the prior year's Primary Ticket Fees. For purposes of clarification, the Primary Ticket Fees may be adjusted multiple times throughout any contract year, provided that in the aggregate the updated Primary Tickets Fees shall not be █████ the prior year's Primary Ticket Fees.

In addition, Dynamo shall have the right to add an additional order fee and shall retain ████████ █████ of such additional fee.

SeatGeek will add any applicable tax and processing costs to the Ticket purchase price.

## II.   Event Secondary Sales

In connection with non-Seller Direct inventory (e,g.. season ticket holders), SeatGeek's data science team will establish the buyer fees, which shall not be █████ █████████████ of the base ticket price unless mutually agreed by the Parties, which approval shall not be unreasonably withheld. The seller fees for non-Seller Direct inventory will be ███

In connection with Seller Direct inventory (i.e., professional ticket resellers), SeatGeek will set █████████ ████ at its sole discretion.

With respect to all secondary sales to Events on the SeatGeek Platform for which SeatGeek is the primary ticketing system:

- SeatGeek will remit to Dynamo ████████ of SeatGeek secondary fee revenue ████ ███████████████ ) for Club Events;
- SeatGeek will remit to Dynamo ████████ of SeatGeek secondary fee revenue (████ ███████████████ ) for all non-Club Events at the Stadium; and

  In the event Dynamo makes tickets available to a broker partner, Dynamo will contractually require that SeatGeek receive preferred inventory considerations (the same or better inventory quantity, locations, and prices) when such brokers post the tickets for resale.

Notwithstanding anything to the contrary contained herein, in the event SeatGeek is required to refund any secondary fee revenue, Dynamo agrees to refund to SeatGeek such secondary fee revenue provided that SeatGeek provides reasonable evidence of the basis for such refund.

## III. Secondary Ticket Sales Guarantee

In each contract year in which Club plays a full MLS season, the total annual amount paid to Dynamo related to secondary sales for Events shall not be ███████████████████████

## IV. Display of Inventory on SeatGeek Platforms

HIGHLY CONFIDENTIAL

SG-CID-00001018

**DX-1393.1033**

*Confidential*

1) For all traffic to Club and third-party event pages originating from Dynamo channels (e.g., Club website), SeatGeek will provide the option to display only primary inventory upon landing, with a toggle available to display resale inventory.
2) For all direct traffic to Club and third-party event pages or traffic originating from SeatGeek marketing, SeatGeek will display primary and resale inventory co-mingled.

36

HIGHLY CONFIDENTIAL

SG-CID-00001019

**DX-1393.1034**

Case 1:24-cv-03973-AS    Document 1246-20    Filed 03/17/26    Page 39 of 39