DX-1393(79)

Bates: SG-CID-00002078 – SG-CID-00002096

SeatGeek and Washington Commanders Ticketing Contract



## Ticketing and Sponsorship Binding Letter of Intent

This Binding Letter of Intent (this "LOI"), effective as of August 8, 2022 (the "Effective Date") by and between SeatGeek, Inc. ("SeatGeek"), on the one hand and WFI Stadium Inc. ("WFI Stadium") and Pro-Football, Inc. d/b/a Washington Commanders ("Pro-Football" or "Team") (WFI Stadium and Pro-Football, together, "Companies)", on the other hand (each a "Party" and SeatGeek and Companies together the "Parties") sets forth certain key terms, including exclusivity terms, of an agreement between the Parties as detailed below and as may be superseded by a separate definitive agreement entered into by the Parties hereafter that will include a sponsorship agreement (the "Sponsorship Agreement") and a ticketing agreement (the "Ticketing Agreement") (the Sponsorship Agreement and Ticketing Agreement together, the "Definitive Agreement"). The Parties agree to work diligently and in good faith to negotiate and execute the Definitive Agreement promptly following the execution of this LOI; provided, however, that if the Parties do not enter into a separate definitive agreement, then this LOI shall constitute the Definitive Agreement and shall continue to be deemed final and binding upon the Parties. For the avoidance of doubt, this LOI includes Appendix A – Fees, which is incorporated herein by this reference.

In consideration of the rights and obligations of the Parties hereunder, and other good and valuable consideration, the receipt and sufficiency of which being hereby acknowledged by the Parties, the Parties hereby agree as follows:

| SeatGeek Services | SeatGeek shall provide each of the following services to the Companies (the "SeatGeek Services"): <br><br> • Ticketing platform, including mobile and web applications, for the primary sale of tickets (the "Primary Platform"); <br><br> • Secondary marketplace platform, including mobile and web applications, for the secondary sale and exchange of tickets (together with the Primary Platform, the "SeatGeek Platform"), which is provided for non-Team Events and, to the extent permitted by League Rules, for Team Events; <br><br> • Verification and fulfillment services; <br><br> • Integration, testing, and training; <br><br> • Marketing services; <br><br> • Hosting, maintenance, and support; and <br><br> • Periodic updates and enhancements, including updates and adoption of latest ticketing and visitor management systems. <br><br> In consideration for SeatGeek providing the SeatGeek Services, SeatGeek shall receive the ticketing fees set forth in Appendix A. All SeatGeek Services shall be provided by SeatGeek to Companies consistent with or exceeding professional and industry standards. |
|---|---|
| Term | The Term of this LOI is binding as of the Effective Date and expires on March 31, 2027, subject to SeatGeek remaining an approved ticketing partner of the League; provided that Companies shall have the option to extend |

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002078

**DX-1393.2017**

| | |
|---|---|
| | this LOI and/or the Definitive Agreement on their same terms through March 31, 2028 if the Washington Commanders will play their home games at FedExField for the 2027-28 NFL season. Each year of the Term from April 1 to March 31 shall be referred to as a "Contract Year". Notwithstanding anything to the contrary in this LOI, other than SeatGeek's obligation to pay the Signing Bonus and each Party's respective obligations with respect to implementation, none of the marketing or sponsorship rights or the payment obligations pursuant to this LOI shall commence until the Start Date. |
| **Signing Bonus** | SeatGeek shall pay to the Companies a signing bonus of ███████ ██████ █████████ (the "Signing Bonus") payable as a one-time payment within thirty (30) days following the earlier of the execution of the Definitive Agreement and December 31, 2022.<br><br>If this LOI or the Definitive Agreement are terminated prior to the end of the Term for any reason other than for cause by Companies or a bankruptcy or insolvency event of SeatGeek (as such concepts are further detailed/defined in the Definitive Agreement), Companies shall return to SeatGeek within thirty (30) days of the termination date a pro rata portion of the Signing Bonus calculated as follows: the number of months remaining in the Term divided by 48 multiplied by ██████. |
| **Sponsorship Exclusivity** | Commencing as of the Start Date (defined below) SeatGeek shall be an official sponsor of the Companies for the remainder of the Term, including:<br><br>Exclusive (subject to the terms below) sponsor for (1) the Team and Team Events; and (2) non-Team events at the stadium currently known as FedExField (the "Stadium") within the Sponsorship Category.<br><br>"Start Date" shall mean April 1, 2023, unless otherwise mutually agreed in writing by the Parties.<br><br>During the Term following the Start Date, except as required by League Rules, the Companies shall not license the right to use the Team marks (as further defined in the Definitive Agreement) to any persons or entities whose primary business (*i.e.*, the majority of such person's or entity's business) consists of products and/or services within the Sponsorship Category. For the avoidance of doubt and notwithstanding anything to the contrary in this LOI or the Definitive Agreement, the Companies are not prohibited by this LOI or the Definitive Agreement from providing sponsorship, advertising, or promotional benefits to persons or |

2

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002079

**DX-1393.2018**

| | |
|---|---|
| | • Name, logo and/or link inclusion in all marketing materials promoting the Entitlement Asset<br>• Mutually agreed upon fan engagement platform with details to be further discussed by the Parties<br>• Build out costs to be further discussed by the Parties<br><br>Asset package directionally in line with pillar/founding level partnership<br><br>Should NFL League Rules impact SeatGeek's ability to activate the foregoing marquee asset, the Parties agree to discuss a mutually agreed upon replacement asset of similar value. |
| **Marketing Rights** | The Parties shall work in good faith to mutually agree upon customary marketing rights with respect to assets controlled by the Companies, which may include radio, TV, digital, charitable, in-venue, social media, and out-of-home assets. The Parties will agree on the "official" label for all primary and secondary inventory (*e.g.*, Official Team Tickets; Team-Verified Tickets); provided the Parties will work together in accordance with League Rules to ensure compliance for Team Events, as well as ensuring the benefits contemplated herein to SeatGeek.<br><br>These official ticketing marketing rights are separate and apart from the sponsorship rights set forth above and such rights should not be granted to any third party other than SeatGeek or as required by NFL Rules. |
| **Exclusive Primary Ticketing Partner** | SeatGeek acknowledges that the Team has a pre-existing relationship with Ticketmaster for secondary ticketing services (and otherwise is a participant in the League-wide Ticketmaster agreement for resale services) for Team Events.<br><br>Except as specifically set forth herein, following the Start Date, SeatGeek shall be the exclusive third-party seller of all primary tickets for all Events (defined below) scheduled to take place during the Term at the Stadium via any and all means and methods, including via the internet, apps, social media, bots, by telephone, computer, IVR, outlets, television, clubs, VIP packages, presales, upsells, or by any other means of distribution, whether existing now or at any time in the future. Companies shall ensure a baseline volume of Team Event tickets are made available over the course of the season for online primary sale via the SeatGeek |

4

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002081

**DX-1393.2020**

| | Platform for each pre-season and regular season home game. The baseline volume will be at least seven thousand (7,000) tickets per home game in Contract Year 1, and for subsequent Contract Years may be lower than seven thousand (7,000) tickets per preseason and regular season home game, as determined by Companies, taking into consideration (a) Companies' and the League's ticket sales strategy; and (b) whether Companies' season ticket holder base has increased; provided that the baseline ticket volume shall not be reduced due to an increased allocation of such tickets to third parties such as brokers. In addition, and for the avoidance of doubt, every Event shall be made available for distribution on the SeatGeek Platform (other than, for the avoidance of doubt, Excluded Events).<br><br>For purposes of this LOI, "Events" means each concert, sporting, entertainment, or other act or event of any kind or nature whatsoever to be held at the Stadium, including, but not limited to, all of Team's home games ("Team Events") but excluding (i) Non-Team events with a capacity of less than ten thousand (10,000) people, (ii) the following events, if the event operators exclusively use a ticketing provider other than SeatGeek for the applicable event and require Companies to use such ticketing provider in order to hold the event: College Bowl Games, Pro Bowls, Super Bowl or other NFL-controlled events, NCAA Championships, national or international soccer games, national political conventions, U.S. Olympic events, and award shows, and (iii) any other event in which the rightsholder exclusively uses a ticketing provider other than SeatGeek, and Companies, despite good faith and commercially reasonable efforts, cannot secure such event without using an alternative ticketing provider; provided that in the event there are more than two such events under (iii) in any Contract Year, any further exceptions are subject to SeatGeek's consent, not to be unreasonably withheld, conditioned, or delayed ((i) - (iii), collectively, "Excluded Events").<br><br>Following the Effective Date, in the event that Companies obtain ticketing services rights with respect to any events at additional venues not contemplated herein, Companies shall provide SeatGeek with an exclusive negotiating window to provide ticketing services therefor by providing written notice to SeatGeek of no less than thirty (30) days prior to the commencement of the sale of tickets to any such additional events.<br><br>The Ticketing Agreement shall be negotiated in good faith and contain commercially reasonable terms and conditions substantially in the form of SeatGeek's |
|---|---|

5

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002082

**DX-1393.2021**

| | |
|---|---|
| | ticketing services agreements with other League member clubs and consistent with the terms of this LOI. |
| | Notwithstanding anything to the contrary contained in this LOI, Companies shall be permitted to continue working with their current ticketing service provider in connection with Events that already are on sale as of the Effective Date or Events scheduled to go on sale prior to the Start Date (the "Existing Events"). If the current ticketing service provider is no longer providing services for the Existing Events for any reason, SeatGeek agrees to take over the continued sale and fulfillment of the Existing Events; provided that SeatGeek will not be obligated to commence the provision of such services for the Existing Events on less than forty-five (45) days' prior written notice by Companies. For the avoidance of doubt and for illustrative purposes, if Companies goes on sale on January 1, 2023, for a concert that is scheduled for summer 2023, Companies' existing ticketing provider may continue to provide services for such Existing Event and such activities to promote and sell such Existing Event, including use of Team and Stadium marks in connection with such Existing Event, shall not be a violation of this LOI and/or the Definitive Agreement. |
| **Investment** | In addition to the Signing Bonus, in consideration for the sponsorship and annual ticketing rights and benefits set forth in this LOI and/or the Definitive Agreement, SeatGeek shall pay ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to the Companies (the "Investment") to be payable in quarterly installments (April 1, July 1, October 1, January 1) during each Contract Year beginning on April 1, 2023 as follows: |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| | The Investment shall be allocated during each Contract Year of the Term as follows: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ connection with sponsorship assets (the "Sponsorship Fee"); (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in connection with Team Event ticketing inventory (i.e., Team ticketing inventory with a face value in the aggregate of ▮▮▮▮▮) (the "Inventory Fee"); (3) ▮▮▮▮▮▮▮▮▮▮ for receipt of an Executive Suite at the Stadium to be used for all Washington Commanders preseason and regular season home games and all other Events, which may be listed for resale by SeatGeek in |

6

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002083

**DX-1393.2022**

IN WITNESS WHEREOF, an authorized representative of each of the Parties has caused this LOI to be duly executed on the dates specified below.

Accepted and agreed by:

| **WFI STADIUM INC.** | **PRO-FOOTBALL, INC.** |
|---|---|
| DocuSigned by:<br>*Ryan Moreland*<br>By: ————————————<br>——BCD1B8E7A5B14C6...<br>Name: Ryan Moreland<br>Title:   Chief Partnership Officer<br>Date: 8/6/2022 | DocuSigned by:<br>*Ryan Moreland*<br>By: ————————————<br>——BCD1B8E7A5B14C6...<br>Name: Ryan Moreland<br>Title:   Chief Partnership Officer<br>Date: 8/6/2022 |
| **SEATGEEK, INC.**<br><br>DocuSigned by:<br>*Jack Groetzinger*<br>By: ————————————<br>——B0B579CF36C24FA...<br>Name: Jack Groetzinger<br>Title:   Chief Executive Officer<br>Date: 8/6/2022 | |

**APPROVED BY:**

**NATIONAL FOOTBALL LEAGUE**

By: ————————————————————

Date:

17

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002094

**DX-1393.2033**

## APPENDIX A

### Fees

The Parties shall add, collect, retain, and share the fees as set forth herein.

**Primary Ticketing**

For all online sales of individual Event primary tickets via the SeatGeek Platform, SeatGeek will charge and retain the Primary Ticket Fees, the Online Order Fee, and the Multi-Event Fee (collectively, the "Fees") consistent with this Appendix A:

"Primary Ticket Fees": a fee of ███████████████████ on all Events.

"Online Order Fee": an online order fee of up to ████████████ (subject to adjustment in accordance with standard industry rates as mutually agreed by the Parties).

"Multi-Event Fee": a fee of up to ████████ for online multi-Event transactions processed by SeatGeek.

Unless otherwise approved by Companies in writing, SeatGeek shall not add or apply any fees or charges other than the Fees set forth above, any applicable credit card processing fees, and any applicable taxes (*i.e.*, there will be no additional delivery or processing charges). SeatGeek shall not raise any of the Fees set forth in this Appendix A without the prior written consent of Companies, which consent may be granted or withheld in Companies' sole discretion.

Companies may add additional fees, including facility fees and local taxes, for a particular Event in their sole discretion (a "Companies Event Fee"), which, if added, will be added to the ticket receipts for the tickets to such Event, and SeatGeek shall remit such Companies Event Fee to Companies in accordance with the terms of this LOI and the Definitive Agreement. Notwithstanding anything to the contrary herein, Companies, in its sole discretion, may set and retain additional primary ticket fees on Events above the Primary Ticket Fees retained by SeatGeek.

**Secondary Ticketing**

In connection with the sale of secondary tickets via the SeatGeek Platform, SeatGeek will set ██████████████ ████ at its sole discretion; provided that such fees ████████████████████████████████ ████████████████████████.

SeatGeek shall provide Companies with a transaction-level breakdown of all secondary ticket fees. Such reports will be provided to Companies on a monthly basis or as otherwise mutually agreed by the Parties.

**Refunds**

All refunds of primary tickets shall be determined by Companies in accordance with Companies' then-current refund policy. ████████████████████████████████████████████████████████████████

18

*Confidential and proprietary*

HIGHLY CONFIDENTIAL

SG-CID-00002095

**DX-1393.2034**