DX-1394(5)

Bates: AEG-CID-0000807833 – AEG-CID-0000807850

AXS and The Bowery Presents, LLC Ticketing Services Agreement

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB



## TICKETING SERVICES AGREEMENT

### THE BOWERY PRESENTS

This Ticketing Services Agreement (the "Agreement") is entered into between Outbox AXS, LLC, a Delaware limited liability company ("AXS") and The Bowery Presents, LLC, a New York limited liability company ("Client") as of August 1, 2016, with reference to the following facts:

WHEREAS, AXS, through itself and its affiliated companies owns and operates proprietary, web-based electronic ticketing systems and applications and systems for the original sale, issuance, resale and/or transfer of tickets to entertainment and sporting events and other rights associated with such events; collects and analyzes consumer data; and conducts consumer marketing activities and other services in support of the foregoing (collectively, the "System"); and

WHEREAS, Client desires to utilize the System in connection with ticketing operations for events scheduled or presented by Client at venues that it owns or operates including the venues described in Section 1(b) hereof (the "Events") and to engage AXS as its agent for providing ticketing services to the public and other services, on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the foregoing and the mutual promises set forth herein and for other good and valuable consideration, the parties hereto agree as follows:

1.    **Term; Exclusive Rights**.

(a)    Term.  The term of this Agreement will start on August 1, 2016 (the "Effective Date"), and shall continue for five (5) years thereafter, i.e. until July 31, 2021.  Notwithstanding the foregoing, Client shall have the right to terminate the term and this Agreement exercisable by written notice to AXS, the effective date of which shall be one hundred twenty (120) days after the date of such notice (to provide for a reasonable transition period), provided however that amounts previously paid to Client for signing bonus or advertising allowance under Section 2 hereof shall be returned to AXS on a pro-rata basis, if:

(i)    The Membership Interest Purchase Agreement dated as of June 10, 2016 by and among AXS' affiliate, AEG Live, LLC ("AEG"), James Glancy, John Moore, The Moore Family 2012 Irrevocable Trust and TBP Holdco, LLC (the "MIPA") is terminated prior to its Closing (as defined in the MIPA) on or after September 30, 2016 pursuant to Section 7.1(b) of MIPA; or

(ii)    AXS is no longer the primary market ticketing solution for AEG.

(b)    Exclusive Rights. During the Term, AXS shall serve as Client's sole and exclusive provider of ticketing software sales and services for the Venues (as defined below). Client grants AXS the sole and exclusive right to sell all tickets (other than the Excluded Tickets as defined in Paragraph (c) below) via any means (now known or to be discovered) in

1

Highly Confidential                                                          AEG-CID-0000807833

**DX-1394.0140**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

connection with Client's Event(s) at the Venues. The initial Venues covered by this Agreement are: (i) Music Hall of Williamsburg, (ii) Terminal 5, (iii) Rough Trade, (iv) the Sinclair, (v) the Royale, (vi) Great Scott, (vii) Brooklyn Steel; and (viii) any other open venues (i.e. venues not already covered by an exclusive ticketing services agreement with another provider) where Client promotes an event, including co-promoted events where Client has the rights to select the ticketing provider for such event (each, an "Open Venue"). The foregoing Venues, the Open Venues and the New Venues (as defined below) may collectively be referred to herein as the "Venues". Any new venues which Client hereafter operates or acquires the rights to sell tickets for during the Term hereof (for example, a venue that Client co-promotes for and has not previously controlled the ticketing rights for, but later enters into an agreement which permits Client to control the ticket sales rights for) (each, a "New Venue"), shall automatically be deemed "Venues" for purposes of this Agreement, and AXS shall sell tickets for such Venues under the terms of this Agreement.

For the sake of clarity, the parties acknowledge that the following locations are currently under contract with other ticketing providers, and shall not be considered "Venues" under this Agreement, until such time that such contracts have terminated or expired and Client has acquired control of the ticket sales rights for such venues: Thompson's Point; Port City Music Hall; State Theatre; Saturn; Union Transfer; and Boot and Saddle (the "Excluded Venues"). At such time that any such Excluded Venue's prior ticketing agreement is terminated or expires, and Client obtains the right to control ticket sales for such venue, then such Excluded Venue shall thereafter become a "New Venue" and AXS shall sell tickets for such New Venue under the terms of this Agreement.

In connection with the sale, resale or issuance of tickets, Client will not endorse, promote or authorize the use of any third party Internet site, ticketing company, or software system. Furthermore, each party will use its reasonable best efforts to not sell tickets to any person or entity that such party believes will re-sell tickets to Client's Event(s).

(c)    Sales by Client; Excluded Tickets. Subject to the terms of this Section 1, Client retains the right to sell the following "Excluded Tickets": (i) single Tickets from Venue box offices to persons physically present at such box offices; (ii) season/contract Tickets (e.g. specifically designated Tickets sold directly by Client on an annual or season basis across all Events or across a category of Events, including mini-plans) (iii) group sales of Tickets (e.g. sales by Client to a group of at least fifteen (15) tickets for use by members to attend as a group); and (iv) to provide a reasonable number of house seats for any Event, for band holds to provide to the Event's promoter, performers, managers or agents; and (v) distribution through legitimate authorized fan clubs; provided, however, that such "reasonable number" of house seats shall not exceed 8% of the sellable capacity of an Event unless the parties mutually determine otherwise in advance, and provided further that sales or distribution by Client of tickets under this Section (c) shall be otherwise not materially exceed past practices unless mutually agreed.

(d)    Distribution Partners. Client shall have the right to approve AXS' use of any third party distribution partners for Client's Events (e.g., so-called "secondary market" participants), both as to the extent and the identity of any such partners.

2.    **Financial Incentives and Marketing Assets**.

(a)    Signing Bonus: AXS will provide Client with a signing bonus in an aggregate amount of ▮▮▮▮▮▮ Dollars ($▮▮▮▮▮▮) (i.e. $▮▮▮▮▮▮ per each year of the five (5) years in the initial Term, payable in advance, but refundable on a pro-rata basis in the event that

2

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807834

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

Client exercises its early termination right subject to Section 1 (a) above), payable in three installments, as follows:  $██████ to be paid within ten (10) business days following Client's request at any time following full execution of this Agreement and Closing of the MIPA; $██████ to be paid by January 30, 2017, and the remaining ██████ to be paid on January 15, 2018. Notwithstanding the above, in the event the Agreement is terminated prior to the end of the five (5) year Term for any reason or Client does not present Events for a period of nine (9) consecutive months or more, Client shall return to the AXS the unamortized portion of the Signing Bonus.  For example, if the Agreement were terminated at the end of three (3) years, Client would return the sum of ██████ Dollars ($██████) to AXS.

       (b)     Increase to Signing Bonus for New Venues:  After the full execution of this Agreement, AXS will also become Client's ticketing partner for each New Venue that is on-boarded during the Term of this Agreement.  AXS will pay Client an additional one-time signing bonus in the amount of $████ per ticket for sales via AXS channels with respect to such New Venue.  AXS shall calculate the amount of this additional signing bonus annually, and shall remit payment of same to Client within thirty days after each anniversary of the Effective Date.  The service charge schedule for each New Venue shall be mutually agreed upon, but shall in no event be no less than the current service charges at a comparable existing Venue.

       (c)     Annual Marketing Allowance:  AXS will provide Client with a marketing allowance in the amount of $█████ per each year of the Term to be used for any AXS-related marketing program or promotion.  The allowance will be used as a credit to offset any future costs from AXS marketing initiatives.

       (d)     Website Development and Hosting:  Carbonhouse (an AXS affiliate) will develop and host the following websites on Client's behalf throughout the Term (each, an "AXS Hosted Site"):

1.     www.bowerypresents.com
2.     www.musichallofwilliamsburg.com
3.     www.terminal5ync.com
4.     www.roughtradenyc.com
5.     www.boweryboston.com (includes the Sinclair)

In the event that a New Venue is added to this Agreement which the parties mutually determine that Carbonhouse should develop and host a website for (taking into account factors such as sellable capacity of the venue, expected ticket sales volume, and similar factors), such website shall become an AXS Hosted Site. In some cases, multiple Venues' tickets may be available on a single Client website (such as bowerypresents.com and boweryboston.com) and therefore the parties shall mutually agree which New Venues shall be deemed eligible to receive a separate new AXS Hosted Site for purposes of this Agreement, or whether it will be added to a pre-existing AXS Hosted Site.

While Client shall maintain responsibility for and control of the content on the AXS Hosted Sites, responsibility for the website development and hosting of the AXS Hosted Sites will be transitioned to AXS as soon as reasonably practicable, and shall be integrated and supported by AXS.  AXS shall pay the development and hosting costs of the AXS Hosted Sites, and shall not pass on the costs thereof to Client. Each AXS Hosted Site will be built by Carbonhouse within fifteen (15) to eighteen (18) weeks after AXS receives final approval from Client.

The costs of such services will not be charged to or borne by Client.

3

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807835

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

(e)    Email Solution: AXS will provide Client with AXS Advantage, AXS's proprietary integrated CRM and Email tool, with separate accounts for the New York and Boston databases, pursuant to the terms of a separate Addendum to this Agreement with respect to AXS Advantage, at no cost to Client.

(f)    Marketing Assets: AXS will provide at least one featured inclusion each month in one AXS email campaign in each of the New York & Boston markets, with the featured event to be chosen by Client.

(g)    Ticket Stock & Envelopes: AXS will provide Client with ticket stock and ticket envelopes, free of charge, and AXS shall have the right to retain any income from advertising on such ticket stock or envelopes. In the event Client desires to purchase its own ticket stock and ticket envelopes, Client shall have the right to sell advertising on such items and retain any income therefrom. In no event will either party agree to advertising on Client's ticket stock or envelopes that advertises any person or entity that re-sells tickets, without the other party's prior consent.

(h)    Convenience Charges and Processing Fees. Client shall determine the face value of Tickets and the amounts of other related fees, including convenience charges, processing fees, facility fees, admission fees, parking fees and other similar fees, and Client shall inform AXS of the details of all such fees. Client shall promptly provide AXS with any and all other relevant facts and information required for the sale of Tickets in a timely fashion and reasonable notice of any changes in such prices and fees. AXS shall be entitled to receive the AXS fees in the amounts set forth pursuant to this Agreement and in Exhibit A attached hereto. All other amounts will be retained by Client.

3.    **License to Client**.

(a)    During the Term, AXS will provide the Hardware listed in Exhibit A or otherwise provided by AXS in the future pursuant to Exhibit A. AXS hereby grants to Client a non-exclusive, non-transferable, royalty free license to use the Hardware and the Software, and/or other products described herein throughout the Term.

(b)    The term "Software" shall mean the current version of AXS's proprietary software and related applications and documentation for the sale and management of tickets, including any computer application, program, or code consisting of a series of instructions or statements (including data), executable or otherwise usable on computers and located on equipment owned and/or operated by AXS which may be provided, accessed, and utilized by Client for the sale and management of tickets, and any enhancements, upgrades, new releases, new versions and modifications thereto during the Term (other than any software products which are determined, in AXS's sole discretion, to be successor products or extensions to existing products rather than updates to existing products). This Agreement does not apply to human readable source code, and in no event shall AXS be obligated to provide source code for any Software. In addition, Client shall receive updates to the Software that other Clients with comparable venues receive from AXS in comparable market areas, on at least as favorable terms, taking into account the overall economics including factors such as ticket sales volume, revenues, and fees.

(c)    The term "Hardware" shall mean computer, telecommunications, printing, and other equipment provided by AXS to Client, including but not limited to, the Hardware described in Exhibit B attached hereto.

4

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807836

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

(d)    Except as otherwise provided herein, Client shall be responsible for providing the resources necessary to properly use the items licensed to Client hereunder, and shall also be solely responsible for installing and integrating the same with Client's other software, systems and equipment.

4.    **Installation and Training**.  AXS will install the Hardware and Software, and provide initial training as well as additional training when new features or changes to the Software are rolled out, in connection with the use of same.  This training may be conducted via remote means (telephone, videoconference, or internet) as the parties may agree in good faith. AXS will also provide services to assist Client with the relevant aspects of Client's ticket sales; such services may include, if applicable, assisting with ticket show builds, ticket counts and settlements of ticket proceeds with Client.

5.    **Maintenance, Support and Upgrades**.

(a)    Included Support.  AXS shall provide technical support with respect to the provided Products on an as-needed basis during its standard support hours.  Off-Hours support to Client is also available 7 days per week via phone, and via email at support@axs.com.  AXS shall also provide Client with a designated Account Manager, who may be contacted for support issues.  AXS also provides certain technical support via a "self-service solution" web page.

(b)    Maintenance and Upgrades.  AXS can at its reasonable, good faith discretion perform maintenance and updates to the platform or Hardware, which may result in temporary unavailability.  AXS will use its best efforts to provide advance notice thereof to Client. AXS agrees to use commercially reasonable efforts to make the System available to Client at all times during the Term of this Agreement except for planned downtime, which shall be planned in order to minimize negative impact, and circumstances beyond AXS's control such as natural disaster or act of god.   In the event of unplanned downtime or outage of the Products, AXS shall provide appropriate notice thereof to Client and consumers and agrees to use all reasonable efforts to respond immediately.

(c)    New Products.  In the event that Client desires to access additional features or functionality of a product covered in this Agreement where such additional features were not activated at the time of this Agreement, Client and AXS will mutually agree upon adjustments to the corresponding financial terms to activate said functionality which shall be set forth in a written amendment to this Agreement.  In the event that Client desires a ticketing feature or functionality that other ticketing software and systems providers provide to clients but that AXS does not then offer, Client shall notify AXS thereof, and the parties shall mutually determine a good faith solution, such as AXS agreeing to permit Client to obtain such feature from a third party, AXS developing such feature for Client, or other mutually agreeable solution.

6.    **Accounting Procedures and Settlement**.

(a)    Weekly Payments.  AXS shall collect all proceeds from the sale of tickets to Client's Event(s) and deposit all such proceeds into an account maintained by AXS. AXS shall make payments to Client weekly via ACH on Thursdays with respect to Client's Events which occurred during the preceding Monday through Sunday, for all gross proceeds from ticket sales and taxes collected on behalf of Client in accordance with this Agreement, less all authorized AXS fees and credit card processing fees due to AXS and any other applicable charges authorized in the Agreement.

5

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807837

DX-1394.0144

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

AXS shall remit such proceeds to Client's account at:

| Bank Name | JP Morgan Chase |
|---|---|
| Bank Address | 109 Delancey Street |
| Account Number | Redacted - PII |
| Routing Number | █████████ |

\*\* Client shall provide AXS with other information reasonably requested by AXS in order to remit such payments.

   (b)    Reports.  AXS will provide Client with online access to reports summarizing all applicable account activity.

   (c)    Credit Card Processing.  In addition to the Ticket Fees set forth in Exhibit A, AXS shall also retain a credit card processing fee on all credit card sales processed through an AXS merchant account, as follows, at Client's election:  (i) in the amount of ██%, provided that AXS shall be responsible for chargebacks; or (ii) in the amount of ██%, provided that AXS absorbs the first $██████ per year of the Term in chargebacks, in either case subject to Client's cooperation as described below.  Client initially elects option (ii) above.  The credit card processing fee will be built into all ticket prices to cover all associated credit card expenses, including processing, gateway fees, charge backs or any other fee associated with the merchant account or processing of credit card payments, and shall be subject to increase to account for increases to the interbank rates, which increases shall not exceed the actual amount of any such interbank rate increase. All gross monies processed will be subject to the credit card processing fee, whether the item has a service charge / delivery fee or not.  Client will cooperate with AXS and its merchant bank in any efforts to reverse chargebacks and Client shall comply with chargeback and fraud prevention control procedures.

   (d)    Refunds / Charge Backs:

      (i)    Cancelled Events:  If Client's Event (or ticket sales for any such Client Event) is cancelled, postponed, rescheduled, suspended, or otherwise substantially modified by Client or as a result of Client's willful and wrongful or grossly negligent actions and/or failure to act (each considered a "Cancelled Event" for purposes of this Agreement), it is expressly understood and agreed that settlement shall be delayed, and, therefore, any monies otherwise due to Client shall be held by AXS to cover the costs and fees associated with refunds and related charge backs.  To the extent that AXS has advanced monies to Client, Client shall refund such monies within five (5) days following written demand by AXS.  Further, AXS shall be authorized to and may, in AXS's sole discretion, issue an appropriate refund and deduct the amounts of such refund(s) and related charge backs from the amount due and payable to Client.  In the event insufficient funds are retained by and/or tendered to AXS to cover the refund and related fees, after first offsetting against amounts owed to Client hereunder; provided that if AXS has a reasonable expectation that such amounts will not be offset within two (2) months, AXS shall have the right, but not the obligation, refer all such refund requests to Client, in which case Client shall assume all responsibility (financial and otherwise) for properly handling said demands.

      (ii)    Refund Demands (Non-Cancelled Events) or Other Chargebacks:  Excluding legitimate purchaser requests which are routinely honored (and which, therefore, may be made by AXS), AXS shall promptly refer any demand for a refund for a Client Event that is NOT a Cancelled Event or NOT otherwise governed by Section 6(b)(i) directly to Client.  Client

6

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential                                        AEG-CID-0000807838

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

thereupon agrees to assume all responsibility (financial and otherwise) for properly evaluating and handling any said demand(s) and related charge backs.  Upon written authorization AXS shall grant an appropriate refund and shall deduct the amount of such refund (and related fees) from the amount due and payable to Client. AXS shall have NO obligation to make any such refunds unless AXS has retained and/or is provided with sufficient funds to make such refunds.

(iii)    Other:  Client may authorize (in writing) AXS to grant refunds for any other reason, at Client's sole discretion, and in such event AXS shall deduct the amounts of such refunds and related charge backs from the amount due and payable to Client.  If the amount due and payable to Client is insufficient to cover the refunds or an Event has been completed, Client shall immediately provide AXS with sufficient funds to make such refunds. AXS shall have NO obligation to make any such refunds unless AXS has retained and/or is provided with sufficient fund to make such refunds.

(iv)    No Effect on AXS's Compensation:  No refund, regardless of the reason therefore, shall affect the compensation earned by AXS on the initial sale of tickets prior to the refund.   For example, AXS shall be entitled to Ticket Fees on all tickets sold prior to cancellation, postponement, rescheduling, suspension, or modification of the Event and/or the Cancelled Event and/or the decision to grant refunds.

(e)    Audit Right.  At all times during the Term of this Agreement (i) Client shall have the right at its own expense to audit Ticket sales for Events and the collection of other income to assure compliance with the terms of this Agreement; and (ii) AXS shall have the right at its own expense to audit Ticket sales for Events made by Client to ensure compliance with this Agreement. AXS shall also have the right to audit Client's categorization of Excluded Tickets. Any audits performed under this Subsection (e), shall be limited to one per year, unless otherwise specifically agreed, and such audits should be performed at dates and times so as to ensure the least interference with the business operations of the parties involved therein.  In the event that the audit reveals an error in excess of five percent (5%) or more, then the party in error shall pay the costs of such audit.

7.    **Sales, Use and Other Transaction-Based Tax ("Sales Tax") Responsibility.**

(a)    If the sales revenues are subject to sales tax in Client's jurisdiction:
(i)    AXS shall collect the applicable sales tax as a part of each ticket or other item's price sold by AXS via the System and will designate same and remit such amount to Client in trust for the benefit of the applicable state revenue department; and,
(ii)    Upon receipt of the funds described herein (which shall include applicable sales tax), Client represents and warrants that it shall timely remit such sales tax to the applicable taxing authority without commingling or otherwise using such funds.

(b)    If Client is responsible for remitting sales tax from revenues to the applicable state revenue department, AXS shall have the right to obtain, reasonably promptly following its written request to Client,
(i)    copies of any and all sales tax returns and/or other related documents evidencing such remission of sales tax by Client to the applicable state revenue department; and,
(ii)    written assurances from Client that Client received advice that it had complied with its legal obligations with regard to the payment and reporting of such sales taxes to the applicable state revenue department.

7

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential                                                                                 AEG-CID-0000807839

**DX-1394.0146**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

(c)    Client stipulates, acknowledges and agrees that AXS is relying on Client to ensure that AXS has all the relevant information to ensure that sales subject to state or local sales taxes are sold in accordance with the law.  To the extent that sales taxes are remitted to the applicable state revenue department by Client, Client acknowledges that AXS is materially relying upon its representations regarding such sales taxes and Client's compliance therewith in entering into and performing this Agreement.

(d)    In addition to any other indemnities in this Agreement, Client hereby agrees to indemnify and hold AXS harmless from the payment of any sales, use, or other transaction-based taxes, penalties, attorney's fees, or interest on the transactions contemplated by this Agreement or reasonably related to any default or alleged default in compliance, by Client or AXS, with such sales, use or other transaction-based tax laws.   In addition to any other indemnities in this Agreement, AXS hereby agrees to indemnify and hold Client harmless from any incorrect calculation of taxes or failure to remit as required by this Agreement or applicable law. This section shall survive the Term or termination of this Agreement for any reason, subject to the terms of the indemnification provisions below.

(e)    AXS will pay any taxes where required by law, and will provide all documentation thereof.

8.    **Assumption of Risk by Client**.

(a)    Client acknowledges and agrees that, despite AXS's best efforts, circumstances beyond AXS's control may cause disruption in the services provided by AXS.

(b)    Client therefore acknowledges and agrees that AXS will not be liable to Client for the following:

(i)    the printing and sale of counterfeit tickets, provided that Client has used reasonable, approved security measures;

(ii)    service interruptions or functionality impairments, including, without limitation, those caused by "firewalls", defects or other problems caused by third-party hardware or software, unless the same is not repaired within a reasonable amount of time;

(iii)    criminal or negligent act of any third party, unless such third party was engaged by AXS;

(iv)    any Force Majeure condition (including, but not limited to, fire, accident, acts of God, severe weather conditions, power outages, telecommunication interruption, strikes or labor disputes, war or other violence, or any law, order, proclamation, regulation, ordinance, demand or requirement of any governmental agency; see Section 20); and/or

(v)    any other circumstance that, despite AXS's best efforts, prevents, restricts, or otherwise interferes with AXS's ability to perform under the terms of this Services Agreement.

9.    **Client's Responsibilities**.

(a)    Client shall materially comply with all material duties and obligations imposed by this Agreement.

8

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential                                                                          AEG-CID-0000807840

**DX-1394.0147**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

(b)  Other than provision of initial training and technical support as set forth herein, Client will be solely responsible for operation of the Software and for creating and maintaining all aspects of its account (e.g., submitting and updating details and information related to Client's Event(s)).

(c)  Client shall always be responsible for monitoring and assuring that all information posted by Client and/or AXS (including its assigns or designees) in connection with Client's Event(s) and/or AXS's services (such as, by way of example, ticket price, sales dates, and Event details) is accurate and up-to-date.  Any changes (other than to correct errors made by AXS which shall be corrected by AXS as soon as possible) required to be made by AXS shall be made as soon as practicable following written request by Client.  Client acknowledges that AXS (and its assigns and/or designees) shall be entitled to rely on information posted by and/or approved by Client.

(d)  Subject to AXS' obligation to provide the Hardware and Software, Client shall provide all resources and facilities necessary to receive and utilize the services provided by AXS, including but not limited to (i) all box office management and ticket seller staff; and (ii) scanning staff to scan tickets of patrons entering the Venue.

(e)  Client shall be solely responsible for maintaining ticket allocations within legal limits and AXS shall not be responsible in any way for the over-selling of an Event, excluding any errors caused by AXS.

(f)  Client shall act within industry standards and shall notify AXS of any irregular patterns of purchases (or other events that would indicate criminal or negligent acts by a third party) of which Client becomes aware.  Similarly, AXS shall notify Client of any such events of which AXS becomes aware.

(g)  Client shall maintain all hardware components for the System located at the Venues in an environment that materially conforms to AXS' reasonable specifications and Client hereby assumes and will bear the entire risk of loss to any such hardware components located at the Venues or otherwise in the care or custody of Client, except to the extent such loss or damages arises out of AXS's negligence or willful misconduct.  If any loss to any such hardware occurs while in the care or custody of Client (ordinary wear and tear excepted), Client will, at its expense and election, either (i) place such hardware in good repair, condition and working order to AXS 's reasonable satisfaction within thirty (30) days after such loss or damage, (ii) replace such hardware with new hardware satisfactory to AXS within thirty (30) days after such loss or damage or (iii) pay AXS in cash the full replacement cost of such hardware and AXS promptly will install replacement hardware.  Client will pay AXS on a "time and materials" basis at its then-current best rates provided to clients for any configuration or other effort associated with the replacement of any hardware.  Upon the expiration or termination of this Agreement, Client promptly will return to AXS all hardware supplied by AXS at its expense in good repair, condition and working order, ordinary wear and tear excepted.  Client will keep all such AXS hardware free and clear of all liens, levies and encumbrances.  Client shall not permanently remove or destroy any proprietary markings or any legends relating to restrictions on use of the System and/or Hardware.

(h)  As between the parties, Client shall be responsible for all cash collecting and handling responsibilities, including, but not limited to, security, armored car service (at Client's discretion), on-site safe deposits, banking deposits, and any other on-site financial matters.

9

Highly Confidential

AEG-CID-0000807841

DX-1394.0148

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

10.    **Data**.  Client will retain rights in any demographic, identifying or other statistical information AXS receives or obtains, so long as the purchaser has consented to the collection and use of such information; AXS shall request such consent from purchasers on Client's behalf.  Client acknowledges and agrees, however, that AXS will have the perpetual, worldwide right to use such information for any lawful purpose deemed appropriate by AXS (such as, for example, using such information for marketing and/or analytical purposes), provided that such use of information shall not include any identification of Client or personally identifiable information in connection with the use therewith.  Further, Client and AXS agree to use such information in compliance with all applicable laws and in accordance with applicable privacy policies.  AXS shall share information with Client about new developments in data or privacy matters which AXS shares generally with its other clients.  AXS will not sell any such Client-specific (or personally identifiable information relating to Client's customers) information to third parties without the Client's consent (e.g. AXS may share aggregations of data that do not specifically identify Client, such as the number of club ticket purchasers in the New York area).

11.    **Compliance with Laws**.  Each party will comply with all laws, rules and regulations ("Laws") applicable to such party in any country in which they do business under this Agreement, including but not limited to such Laws as they may relate to collection, use or storage of data.  Client shall be solely responsible for compliance with all Laws with respect to Client's Events.

12.    **Intellectual Property; Protection of Hardware and Software**.

(a)    Ownership of IP.  AXS owns all proprietary rights in and to the AXS.com platform, ticketing system, Software, and the "AXS" brand (or "Outbox" or "Veritix" brand, as applicable) including patent, copyright, trademark, service mark, trade secret, and other proprietary rights ("AXS IP").  Client agrees that, other than as provided for herein, it will not use or otherwise exploit (or permit any other person or entity under Client's control to use or otherwise exploit) AXS IP and/or AXS proprietary rights in and to its ticketing System and/or Software without prior written consent of AXS.  Client further agrees that it will not take, or permit any other person or entity under Client's control to take, any action that would jeopardize or otherwise be contrary to AXS's rights, including, but not limited to, disassembling, cloning, decompiling, altering, or reverse engineering the same. Client agrees not to take any action inconsistent with the intellectual property rights in and/or to the Software of AXS. Client shall not resell the Software, services or any components thereof.  Client owns all proprietary rights in and to its brands, including patent, copyright, trademark, service mark, trade secret, and other proprietary rights ("Client IP"). AXS agrees that, other than as provided for herein, it will not use or otherwise exploit (or permit any other person or entity under AXS's control to use or otherwise exploit) Client IP and/or Client proprietary rights in and to its Client IP without prior written consent of Client.  AXS further agrees that it will not take, or permit any other person or entity under AXS' control to take, any action that would jeopardize or otherwise be contrary to Client's rights. AXS agrees not to take any action inconsistent with the intellectual property rights of Client.

(b)    Use of Marks.  Client hereby grants AXS (and its designees) a non-exclusive license to use the trademarks and trade names of Client (including any such rights related to the Event(s) referenced herein), in connection with AXS's provision of the services and in connection with the marketing by AXS of its services to third parties, provided that Client may withhold its consent for the use thereof in its sole discretion, and provided further that Client shall have the right to request amendments to or updates of its trademarks and tradenames used by AXS under this Agreement.

10

Highly Confidential    AEG-CID-0000807842

**DX-1394.0149**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

     (c)    <u>Ownership of Hardware and Software</u>. The Software and/or Hardware is, and shall remain, the property of AXS and Client shall have no rights or interests therein except the right to use the Software and/or Hardware as set forth herein. The Client hereby acknowledges that AXS is and shall at all times remain the sole owner of the Hardware, the Software and all modifications, enhancements and changes thereto, regardless of any direct or indirect contribution that may have been made by the Client or any of its agents or representatives, which, as the case may be, is hereby assigned and transferred, in full ownership and with no additional consideration as that contained herein, to AXS.

     (d)    <u>Restrictions on Use</u>. Client is authorized to use the Software and/or Hardware only for its own internal operation and only for ticketing of Client Events in accordance with the terms and conditions of this Agreement.

     (e)    <u>No Removal of Markings</u>. Client shall not permanently remove or destroy any proprietary markings or any legends relating to restrictions on use of the Software and/or Hardware.

     (f)    <u>No Modifications</u>. Neither Client nor any third party employed by Client shall copy, enhance or modify the Software, develop software derivative of or interfacing with the Software, merge the Software with other software, or create software that emulates or performs substantially the same functions as the Software without the prior written consent of AXS. Client may not attempt to decompile any part of the Software nor may it attempt to reverse engineer, reverse assemble, or create any similar software using the Software or any knowledge acquired from AXS or the Software and its operation, or knowingly allow anyone else to do so.

     (g)    <u>Trade Secrets</u>. The Client understands and agrees that the Software and System constitutes the valuable property and trade secret of Company, embodying substantial creative efforts which are secret, confidential, and not generally known by the public, and which secure to AXS a competitive advantage. The Client agrees during the term of this Agreement and the license granted hereunder, and thereafter, to hold the Software including any copies thereof and any documentation related thereto, in strict confidence and to not permit any person or entity to obtain access to it except as required for the Client's exercise of the license rights granted hereunder, subject to applicable law. The parties understand that all the material provided or produced under this Agreement may be subject to any applicable open records laws. In the event of a request to the Client for disclosure of such information, the Client shall advise AXS of such request in order to give AXS the opportunity to object to the disclosure of any of its documents that it marked as proprietary or confidential material. In the event of the filing of a lawsuit to compel such disclosure, the Client will tender all such material to the court for judicial determination of the issue of disclosure and AXS agrees to intervene in such lawsuit to protect and assert its claims of privilege against disclosure of such material or waive the same.

AXS and the Client understand and agree that the pricing, sales and other financial information related to this Agreement constitute the valuable property and trade secrets of the applicable party, which are secret, confidential, and not generally known by the public, and which secure to the applicable party, a competitive advantage. Each party therefore agrees during the Term of this Agreement, and thereafter, to hold such information in strict confidence and to not permit any person or entity to obtain access to it except as required for the performing its obligations hereunder, or except as required by applicable law.

11

Highly Confidential      AEG-CID-0000807843

**DX-1394.0150**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

(h)     End-user Licenses. AXS hereby grants Client the number of end-user licenses reasonably necessary in order to provide Client with use of the Products in accordance with the terms and conditions hereof.  Such licenses will have a term that shall be the same as the Term of this Agreement and any renewal or extension thereof.

13.     **Indemnity**.

(a)     Client hereby agrees to defend, indemnify and hold harmless AXS or its directors, officers, shareholders, employees, agents, attorneys, representatives or any third party engaged by AXS hereunder (collectively, "AXS Indemnitees") from and against all third party claims, actions, demands, costs, expenses, lawsuits and liabilities of any kind, including reasonable outside attorney's fees, imposed on, incurred by, AXS as a result of  (I) any Client Event held or scheduled to be held, including, but not limited to, physical damage, personal harm, or death incurred in connection therewith; (II) any cancellation, postponement, rescheduling, suspension, or modification of an Event by Client except for any claims arising from breach by AXS; (III) Client's failure to allocate a sufficient number of tickets for an Event; (IV) any use of the System by Client in connection with a Client Event, except to the extent of AXS's gross negligence or willful misconduct;; (V) Client's impermissible or illegal use of any purchaser data; or (VI) Client's gross negligence or willful misconduct.

(b)     AXS hereby agrees to defend, indemnify and hold harmless Client (including its successors, assigns, directors, officers, shareholders, employees, agents, attorneys and representatives) from and against all third party claims, actions, demands, costs, expenses, lawsuits and liabilities of any kind, including reasonable outside attorney's fees, imposed on, incurred by, or asserted against Client as a result of, or in connection with any infringement of Client's intellectual property rights, breach by AXS of this Agreement, the operation of the System or AXS's gross negligence or willful misconduct.

(c)     This section shall survive the Term or termination of this Agreement for any reason.

14.     **Limitation of Liability**. In no event shall either party be liable to the other (except with respect to fees due AXS hereunder) pursuant to this Agreement for any amounts representing loss of profits, loss of data, loss of business, or indirect, consequential, or punitive damages.  Each party's liability in contract, tort, strict liability or otherwise for direct damages arising from this Agreement shall be limited to the amount of fees and charges collected by AXS, as provided for under this Agreement, for the six (6) month period immediately preceding the date any such damages occurred.

15.     **Governing Law; Venue**. This Agreement shall be construed in accordance with and governed by the laws of the state of New York, without regard to the principles of conflicts of law. AXS and Client acknowledge and agree that this Agreement shall not be deemed to have been prepared by, or drafted by, any particular party hereto, and that the normal rule of construction (to the effect that any ambiguities are to be resolved against the drafting party) shall not be employed in the interpretation of this Agreement.  Other than any claim for equitable or injunctive relief, all other claims, disputes and other matters in question between the parties arising out of or relating to this Agreement shall be decided by binding arbitration before one mutually agreed upon neutral arbitrator in New York, New York in accordance with the Comprehensive Commercial Arbitration Rules of JAMS then in effect.  The determination and award of the arbitrator shall be based upon application of existing substantive statutes and case law, interpretation in accordance with applicable contract law of this Agreement and the

12

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807844

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

evidence presented by the parties to the arbitrators. Each party shall bear its own costs in connection therewith, and the arbitrator shall be empowered to award, costs and reasonable attorneys' fees to the prevailing party.

### 16. __Non-Disclosure Covenants.__

(a)    AXS and Client acknowledge that, in carrying out the terms of this Agreement, each party may be required to utilize, and/or may otherwise gain access to, one another's Confidential Information. AXS and Client hereby agree that it is in the best business interests of both Parties to insist on the strict confidentiality of any Confidential Information. In recognition thereof and except as otherwise provided in this Agreement:

(i)    AXS and Client hereby covenant and agree not to disclose to anyone any Confidential Information of the other party, or directly or indirectly, individually, or through a corporation or other person utilize Confidential Information of the other party for its own benefit, or for the benefit of third parties.

(ii)    AXS and Client shall exercise reasonable efforts to ensure the continued confidentiality of all Confidential Information known by, disclosed or made available to each other, excluding any disclosure required by applicable law or subpoena or similar order.

(b)    "Confidential Information" as that term is used in this Agreement, shall include any material or information pertaining to or containing knowledge or information of any type whatsoever of a confidential nature relating to the actual or anticipated business of AXS or Client, including, without limitation, AXS IP, all types of trade secrets, pricing information, employee lists, vendor lists, marketing plans, management organization information, business plans, and/or financial records, which is of tangible or intangible value to either Party and is not public information or is not otherwise generally known or available. This Agreement and the terms and conditions hereof shall also be considered Confidential Information. Confidential Information shall NOT include information which: (i) at the time of disclosure to the receiving party is in the public domain through no wrongful act or omission of the disclosing party; (ii) as shown by written records, is already known by the receiving party; (iii) is revealed to the receiving party by a third party who the receiving party has no reason to believe does not thereby breach any obligation of confidentiality and who discloses such information in good faith; or (iv) is independently developed by the receiving party without breach of this Agreement, as demonstrated by documentation or other evidence.

### 17. __Representations and Warranties.__

(a)    Each of AXS and Client represent, warrant, and covenant to the other that: (i) it has the right and power to enter into this Agreement, to grant the rights hereunder, and to perform all terms hereof; (ii) it is duly organized and in good standing under the laws of its state of organization; (iii) the entering into and performance of this Agreement will not violate any judgment, order, law, contract, regulation, or agreement applicable to such party or violate the rights of any third party, or result in any breach of, or constitute a default under, any other agreement to which it is a party; (iv) the individual executing this Agreement, and whose signature appears below is duly authorized to execute this Agreement; and (v) it has been advised of its right to seek legal counsel of its own choosing in connection with the negotiation and execution of this Agreement.

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential                                    AEG-CID-0000807845

**DX-1394.0152**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

(b)     Client represents and warrants that it has the exclusive right to sell tickets as the owner (or owner's designee) of Client's Event(s), and to grant AXS the exclusive right to sell tickets in connection with Client's Event(s) as provided in Section 1.

(c)     Unless expressly set forth herein, AXS makes no warranty, express or implied, with respect to any matter, including without limitation, advertising and other services, and expressly disclaims the implied warranties or conditions of non-infringement, merchantability, and fitness for any particular purpose.  AXS does not warrant the results of use of its ticketing System, and Client assumes all risk and responsibility with respect thereto.

(d)     Unless expressly set forth herein, Client makes no warranty, express or implied, with respect to any matter, including without limitation, advertising and other services, and expressly disclaims the implied warranties or conditions of non-infringement, merchantability, and fitness for any particular purpose.

18.     **Miscellaneous**.

(a)     Waiver.  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

(b)     Entire Agreement; Amendments.   This Agreement (including any Exhibits attached hereto and any other documentation incorporated herein) constitutes the entire agreement between the parties as to the subject matter of this Agreement, and may be amended only by a written agreement executed by the parties at the time of the modification.

(c)     Severability.  If any term, provision or condition contained in this Agreement shall, to any extent, be ruled invalid or unenforceable by a court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby, and each and every other term, provision and condition of this Agreement shall be enforceable to the fullest extent permitted by law.

(d)     Notice Required for Breach.  Neither party shall be deemed to be in breach of any obligations under this Agreement unless and until that party is notified by the other party, in writing, in detail of the alleged breach and that party fails to cure that alleged breach within thirty (30) days after receipt of the written notice. All notices hereunder shall be delivered to the parties with copy as follows:

If notice to AXS:
Outbox AXS, LLC
425 W. 11th Street
Los Angeles, CA 90015
Attn: Bryan Perez & Victoria von Szeliski

If notice to Client:
The Bowery Presents
156 Ludlow Street, #5
New York, NY 10002
Attn:  Jim Glancy & John Moore

14

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807846

DX-1394.0153

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

With copy to:
Carroll, Guido & Groffman, LLP
5 Columbus Circle/1790 Broadway 20th Floor
New York, NY 10019
Attn: Elliot J. Groffman, Esq.

19. **Electronic Signature; Counterparts**. This Agreement, and any other documents requiring a signature hereunder, may be executed via fax, email, or other electronic means, and in one or more counterparts, each of which will constitute an original.

20. **Force Majeure**. The parties to this Agreement will be excused from the performance of this Agreement in whole or in part by reason of any of the following causes, to the extent provided herein: (a) when a Client Event is prevented by operation of law; or (b) if a Client Event does not take place because of the occurrence of a Force Majeure event that prevents the performance under this Agreement by AXS or Client of a material obligation under this Agreement, Client agrees that each party shall be due any and all reasonable costs and expenses, including amounts provided for in this Agreement, which have been incurred up to the time further performance is excused.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**OUTBOX AXS, LLC,**
a Delaware limited liability company

By: _____

Name: Bryan Perez

Title: President & CEO

**THE BOWERY PRESENTS, LLC**
a New York limited liability company

By: _____
    9DFF7A3CFA5C41F...

Name:   Jim Glancy

Title:   partner

     65F8AFB038F541F...
John Moore

Co-founder / partner

15

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential              AEG-CID-0000807847

**DX-1394.0154**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

## EXHIBIT A

## AXS FEES

1.    **Convenience Fees, Processing Charges, and Mail Fees.**  As stated in Section 2 of the Agreement, Client is entitled to determine the amount of the convenience fees, processing charges and mail fees, provided however that such fees shall in all cases be in minimum amounts in order to ensure that AXS retains the amounts set forth herein.

AXS shall be entitled to receive and retain the following AXS fees from convenience, processing, and mail fees for the Venues as follows:

**NEW YORK VENUES**
**(Music Hall Of Williamsburg, Terminal 5, Brooklyn Steel, Rough Trade, and Open Venues In New York)**

| CONVENIENCE FEES (per Ticket) | | | |
|---|---|---|---|
| Ticket Face Value | Convenience Fee Base | Convenience Fees to AXS* (in year 1) | Convenience Fees to Client (in year 1) |
| $0.01 - $12.00 | $3.00 | $▮ | $▮ |
| $12.01 - $15.00 | $4.00 | $▮ | $▮ |
| $15.01 – 19.99 | $4.50 | $▮ | $▮ |
| $20.00 - $29.99 | $5.75 | $▮ | $▮ |
| $30.00 - $39.99 | $7.00 | $▮ | $▮ |
| $40.00 & Above | $8.75 | $▮ | $▮ |

*The convenience fee to AXS shall be automatically increased by $▮ per ticket in Contract Year 3 & Contract Year 5.

| PER ORDER FEES PAID BY CUSTOMER |
|---|
| **Processing Fee** |
| For Music Hall of Williamsburg and Rough Trade $▮/order shall be retained by AXS |
| For Terminal 5, Brooklyn Steel and other Open Venues $▮/order shall be retained by AXS |
| **Print @ Home & Digital (Mobile) Ticket Delivery** |
| NO CHARGE |
| **Mail Fee (Tickets Mailed via US Mail Only)** |
| $▮/order shall be retained by AXS |

16

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807848

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

**BOSTON VENUES**
**(Royale, Sinclair, Great Scott, and Open Venues In Boston)**

**CONVENIENCE FEES (Per Ticket)**

| Ticket Face Value | Convenience Fee Base | Convenience Fees to AXS* (in year 1) | Convenience Fees to Client (in year 1) |
|---|---|---|---|
| $0.01 - $12.00 | $3.00 | $ ▮ | $ ▮ |
| $12.01 - $15.00 | $4.00 | $ ▮ | $ ▮ |
| $15.01 – 19.99 | $4.50 | $ ▮ | $ ▮ |
| $20.00 - $29.99 | $5.75 | $ ▮ | $ ▮ |
| $30.00 - $39.99 | $7.00 | $ ▮ | $ ▮ |
| $40.00 & Above | $8.75 | $ ▮ | $ ▮ |

*The convenience fee to AXS shall be automatically increased by $ ▮ per ticket in Contract Year 3 & Contract Year 5.

**PER ORDER FEES PAID BY CUSTOMER**

| **Processing Fee** |
|---|
| For Sinclair and Great Scott $ ▮ /order shall be retained by AXS<br>For Royale and other Open Venues $ ▮ /order shall be retained by AXS |
| **Print @ Home & Digital (Mobile) Ticket Delivery** |
| NO CHARGE |
| **Mail Fee (Tickets Mailed via US Mail Only)** |
| $ ▮ /order shall be retained by AXS |

Client will have the right to charge customers amounts in excess of the fee amounts listed in this Section 1 above, and Client shall be entitled to retain 100% of any such excess, provided that AXS receives the AXS fees described herein. When New Venues are added to this Agreement, the parties shall mutually determine the Convenience Fees payable to AXS, provided such fees are in the minimum amounts above.

2.    **Telephone Sales Add-On Fee**. In addition, for all Tickets purchased through AXS' telephone sales, ▮ ($ ▮ ) per Ticket shall be added to the per-Ticket convenience charge paid by consumers for each Ticket sold by telephone sales, which shall be retained by AXS.

3.    **Credit Card Fee and Chargeback Costs**. Credit card fees and chargeback responsibilities are set forth in Section 6 of the Agreement.

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential                                                        AEG-CID-0000807849

**DX-1394.0156**

DocuSign Envelope ID: CF336175-0820-42AD-935F-4ED8DB18DBBB

## EXHIBIT B

## HARDWARE SCHEDULE

1.    **Hardware**.  Throughout the Term, AXS will provide Client with the Hardware listed below, at no cost to Client.  Such initial Hardware shall be for Client to utilize at is Venues in New York City, Boston and the Music Hall in Williamsburg.  AXS will also update and support all of the latest equipment necessary to automate ticketing and access control operations for all of the Venues at no cost to Client.

| Quantity | Description | Price Per Unit | Value |
|---|---|---|---|
| 9 | Box Office Set Ups (computer, keyboard, thin client) | $ ▮ | $ ▮ |
| 10 | Boca printers | $ ▮ | $1 ▮ |
| 6 | Report Printer | $ ▮ | $ ▮ |
| 5 | Switch | $ ▮ | $ ▮ |
| 19 | Scanner & Chargers | $ ▮ | $ ▮ |
| 6 | Access Manager Server | $ ▮ | $ ▮ |
| 7 | Access Points for Access Manager | $ ▮ | $ ▮ |
| 7 | Router | $ ▮ | $ ▮ |
| 7 | Modem | $ ▮ | $ ▮ |
| 7 | UPS | $ ▮ | $ ▮ |
| 8 | VPN Certificates | $ ▮ | $ ▮ |
| | **Total Hardware Value** | | $ ▮ |

The parties acknowledge that the Hardware requirements above is a previous list, and therefore the specific items listed above may be exchanged for other desired Hardware as mutually determined, provided the total Value of the Hardware shall be at least that listed above.

2.    **Data Lines and Connectivity**.  The IT department of AXS' affiliate, AEG Live, will provide all data lines and connectivity, at no cost to Client, for Client to operate the System at the following Venues/locations:  Terminal 5, Rough Trade, Music Hall of Williamsburg, Royale, the Sinclair, Brooklyn Steel, and Client's Ludlow office location.

4.    **New Venues; Additional Items**.  When a New Venue is added to this Agreement, AXS will provide additional Hardware to Client in quantities appropriate for the applicable venue, as mutually determined, and shall provide installation and training for such New Venues in accordance with the Agreement, at no cost to Client.  Any additional Software and/or Hardware requirements not explicitly listed above will be the responsibility of the Client.

18

Bowery Presents -w- AXS -- 08092016 EXECUTION

Highly Confidential

AEG-CID-0000807850

**DX-1394.0157**