# Inner City Press

March 18, 2026

By ECF

Hon. Arun Subramanian, United States District Judge
Southern District of New York, 500 Pearl Street, New York, NY 10007

**Re: Inner City Press Application Opposing Sealing of PX0079 (BSE/Ticketmaster Agreement Used with Witness Rapino) in US, et al.. v. Live Nation Entertainment, Inc. et al., 24-cv-3973 (AS)**

Dear Judge Subramanian:

Inner City Press has been covering the above captioned case, like many others, since the Complaint was filed in May 2024.

On March 4 Inner City Press moved to unseal documents, a request partially granted on March 5 (Dkt 1117) and on March 6 after the Court heard press arguments before the jury entered. See also Dkt 1165, 1176 and 1175 ("Defendants' Letter in Opposition to Inner City Press Motion").

This responds to and opposes the motion filed an hour ago by non-parties Brooklyn Events Center, LLC, Brooklyn Nets, LLC, and New York Liberty, LLC (collectively, "BSE") (ECF No. 1247), seeking to redact the fees, percentages, and amounts from PX0079 — BSE's July 2016 amendment to its Licensed User Agreement with Ticketmaster.

For the reasons set forth below, the Court should deny BSE's motion to seal. The specific financial terms in PX0079 — what Ticketmaster charged a major New York arena operator under a venue agreement — are directly relevant to the core theory of harm in this antitrust trial. They carry the highest presumption of public access under Second Circuit law, and BSE's proffered competitive harm justification is insufficient to overcome that presumption.

## I. PX0079 CARRIES THE HIGHEST PRESUMPTION OF PUBLIC ACCESS UNDER LUGOSCH

The Second Circuit has established a three-part framework for determining the weight of the public's right to access judicial documents. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). Documents that are "relevant

Inner City Press: In-house SDNY: Room 480, 500 Pearl Street, NY NY 10007
E-mail: Matthew.Lee@innercitypress.com - Tel: 718-716-3540
Regular Mail: Box 130222, Chinatown Station, New York, NY 10013

to the performance of the judicial function and useful in the judicial process" qualify as judicial documents presumptively available to the public. Id. at 119.

PX0079 is not a discovery document held in reserve. It is a trial exhibit that Defendants have represented they intend to use during the examination of Michael Rapino, the Chief Executive Officer of Live Nation Entertainment — the lead defendant in this case. The document has thus been woven directly into the adjudicative process at its most public moment: live testimony before the jury. Under Lugosch, the presumption of access attaching to PX0079 is at its apex.

## II. BSE'S OWN FILING UNDERMINES ITS SEALING MOTION

BSE's motion contains a critical concession that defeats its own request. In seeking to minimize the presumption of access, BSE argues that "the precise percentages, fees, and amounts within BSE's agreements with Ticketmaster should have little bearing, if any, on the parties' legal dispute." ECF No. 1247 at 3 (citing SOHC, Inc. v. Zentis Sweet Ovations Holding LLC, 2014 WL 5643683, at *5 (S.D.N.Y. Nov. 4, 2014)).

This argument cannot be reconciled with the fact that Defendants have selected PX0079 as a trial exhibit for use with the chief executive of the defendant company. If the specific financial terms of the BSE-Ticketmaster agreement truly had "little bearing" on the dispute, there would be no occasion to introduce the document during Mr. Rapino's testimony. Defendants' decision to use this document with this witness is itself evidence that the terms are relevant — and relevance to the adjudication strengthens, not weakens, the presumption of public access.

## III. THE FINANCIAL TERMS IN PX0079 ARE CENTRAL TO THE PUBLIC INTEREST IN THIS TRIAL

This is a federal antitrust trial in which now nearly three dozen state attorneys general allege that Live Nation and Ticketmaster have maintained an illegal monopoly over the live entertainment industry. A central element of the monopoly theory is that Ticketmaster has used its dominant market position to extract supra-competitive fees from venues — fees that are then passed on to artists and fans. The specific percentages and amounts Ticketmaster charged major venue operators, including BSE's Barclays Center, are among the most concrete and comprehensible evidence of that theory available to the jury and to the public.

The public's interest in this case is not abstract. Millions of fans purchase tickets to events at Barclays Center and venues like it. The financial terms of Ticketmaster's venue agreements directly affect the fees those fans pay. Sealing the core financial terms of PX0079 would deprive the public of the precise information most relevant to understanding what this monopoly trial is about. That is the opposite of the transparency that Article III courts exist to provide.

## IV. BSE'S COMPETITIVE HARM JUSTIFICATION IS INSUFFICIENT

BSE argues that disclosure of the 2016 amendment's financial terms would give "ticketing vendors an unfair advantage in negotiations with BSE" and reveal "the terms of BSE's relationship with its ticketing partner" to competing venues. ECF No. 1247 at 3. This argument fails for several reasons.

First, the agreement in question is no longer in effect. BSE acknowledges this. A contract that expired years ago has diminished competitive sensitivity, particularly when the industry conditions surrounding it — Ticketmaster's market dominance — are themselves the subject of a full federal antitrust trial. Whatever negotiating leverage BSE fears from disclosure is speculative and attenuated.

Second, the argument that competitors would learn BSE's "terms" from a 2016 Ticketmaster amendment proves too much. By this logic, every venue's every Ticketmaster contract would be sealed in perpetuity — insulating from public view precisely the evidence most needed to evaluate the antitrust claims in this case. That result is incompatible with the public right of access recognized in Lugosch.

Third, BSE is an extraordinarily well-resourced non-party. Brooklyn Events Center, the Brooklyn Nets, and the New York Liberty are not a startup or small business whose financial runway could be imperiled by disclosure, as in Jump Platforms' filing yesterday. BSE's competitive position in the market for major arena events will not be meaningfully harmed by public knowledge of fees it paid under a 2016 contract with Ticketmaster.

Fourth, the fact that Live Nation does not oppose BSE's redactions does not resolve the public interest inquiry. The defendant's consent to confidentiality arrangements does not extinguish the public's right to access judicial documents. See Lugosch, 435 F.3d at 120 (public's right of access is not waived by parties' agreement).

**V.** THE PUBLIC INTEREST IN THIS TRIAL REQUIRES ACCESS

This Court has already unsealed materials in this case over sealing requests, recognizing the heightened public interest in a federal antitrust trial concerning the live entertainment industry. See ECF Nos. 1117, 1132. The same principles apply here. The public's right to monitor this proceeding — including the specific financial terms of Ticketmaster's venue contracts that are placed before the jury — is at the core of what open courts are for.

Inner City Press respectfully requests that the Court deny BSE's motion to seal the fees, percentages, and amounts in PX0079, and order that the unredacted exhibit be placed on the public docket consistent with its use at trial.

Respectfully submitted,

/s/

Matthew Russell Lee
Inner City Press

cc: All counsel via ECF

4