# EXHIBIT PX0712 A

| | |
|---|---|
| **From:** | Mark Campana [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=10ad61a3ab264ee1b2ea1dfebdd8f179-Campana, Ma] |
| on behalf of | Mark Campana [markcampana@livenation.com] |
| **Sent:** | 10/6/2017 12:28:12 AM |
| **To:** | Michael Rapino [michael@livenation.com]; Joe Berchtold [joeberchtold@livenation.com]; Bob Roux [bobroux@livenation.com] |
| **Subject:** | FW: Ticketmaster Agreement |
| **Attachments:** | image002.jpg; ATT00001.htm; image003.jpg; ATT00002.htm; Sscanner17100518100.pdf; ATT00003.htm; image002.jpg; ATT00004.htm; image003.jpg; ATT00005.htm |

This is the signed TM contract for the new venue in Minny. Step one completed. I believe we will have the venue on an exclusive basis shortly. He would not have signed the TM deal if he was not going with us it the way I see it.

mc



Mark Campana| Co President North America Concerts
☎::312 540 2106
✆:: MarkCampana@livenation.com
✉:: Suite 1400, 111 East Wacker Ave, Chicago IL, 60601
www.Livenation.com

**From:** Jason Wright
**Sent:** Thursday, October 05, 2017 7:24 PM
**To:** Mark Campana <MarkCampana@LiveNation.com>
**Subject:** Fwd: Ticketmaster Agreement

Sent from my iPhone

Begin forwarded message:

**From:** "Ned Abdul" <ned@swervo.com>
**To:** "Geoff Carns" <geoff.carns@ticketmaster.com>
**Cc:** "Jason Wright" <JasonWright@LiveNation.com>
**Subject: RE: Ticketmaster Agreement**

Geoff,

This looks fine.

Attached is my executed version.  Please have countersigned and send back to me.

Thanks for your work on this.

Ned Abdul

**Ex. No**
**PX0712**
1:24-cv-03973

LNE-LIT24-000571989

Swervo Development Corporation
510 First Avenue North, Suite 600
Minneapolis, MN  55403

Cell
Office    612-332-8323 x602
Fax       612-332-0262
Email     ned@swervo.com

CONFIDENTIAL

LNE-LIT24-000571990

---

**From:** Geoff Carns [mailto:geoff.carns@ticketmaster.com]
**Sent:** Thursday, October 05, 2017 1:13 PM
**To:** Ned Abdul <ned@swervo.com>
**Cc:** Jason Wright <JasonWright@LiveNation.com>
**Subject:** Ticketmaster Agreement

Ned – Attached is an updated User Agreement for your review. We accepted all the changes in the redline you sent this past Monday, except for the change to TM+ on Exhibit B, based on your conversation with Jason. Once you have had a chance to review, let me know if you have any additional questions.

I appreciate your efforts to get this agreement done and we look forward to working with you and your team to sell some tickets.

g

---

**From:** Ned Abdul <ned@swervo.com>
**Date:** Monday, October 2, 2017 at 3:02 PM
**To:** Geoff Carns <geoff.carns@ticketmaster.com>, Jason Wright <JasonWright@LiveNation.com>
**Subject:** RE: Updated Agreement

Hi Geoff/Jason,

The majority of your changes look good. I have added a few clarifications and revisions as well. Please review and let me know if you have any questions.

We really need to get this wrapped up and executed this week it possible.

Thank you,

Ned Abdul

Swervo Development Corporation

510 First Avenue North, Suite 600

Minneapolis, MN 55403

Office 612-332-8333 x602

Fax 612-332-0262

Email ned@swervo.com

LNE-LIT24-000571992

**From:** Geoff Carns [mailto:geoff.carns@ticketmaster.com]
**Sent:** Friday, September 29, 2017 6:56 PM
**To:** Jason Wright <JasonWright@LiveNation.com>; Ned Abdul <ned@swervo.com>
**Subject:** Updated Agreement

Jason / Ned – Thanks for the call/discussion earlier today. Per our conversation, attached is an updated User Agreement for review. Changes from the previous draft include:

**Section 3(b) Inside Charges** – Annual increase was reduced to $0.02.

**Section 3(c) Payment Processing Fees** – Deleted reference to credit card fees at Outlets.

**Section 6 (b) Cancelled Attractions; Refunds** – Deleted reference to Ticketmaster having the right to retain inside fee on cancelled shows.

**Section 13 Definition of "Attraction"** – Amended definition of Attraction to exclude private events.

Once you have had a chance to review, reach out with any questions.

---

**From:** Jason Wright <JasonWright@LiveNation.com>
**Date:** Friday, September 29, 2017 at 11:52 AM
**To:** Ned Abdul <ned@swervo.com>, Geoff Carns <geoff.carns@ticketmaster.com>
**Subject:** 2:30 cst call in info

Hi gents

Let's use the dial in info below for our 2:30 cst call

Talk to you shortly

███████████

Passcode ██████████

Sent from my iPhone

LNE-LIT24-000571994



## USER AGREEMENT

THIS USER AGREEMENT ("Agreement") is made and entered into as of October 6, 2017 ("Effective Date"), by and between Ticketmaster L.L.C., a Virginia limited liability company ("Ticketmaster"), and Armory Hospitality, LLC, a Minnesota limited liability company ("Principal"). This Agreement consists of this User Agreement, Exhibit A, Hardware, and any other Exhibits attached hereto which are incorporated herein by this reference. The meanings of all capitalized terms used in this Agreement are set forth in Section 13 hereof. In consideration of the mutual promises and covenants set forth herein, the parties hereby agree as follows:

1.    **TERM**. The initial term of this Agreement shall begin on the Effective Date and shall continue for ten (10) year(s) thereafter (the "Term"), and shall be automatically renewed for successive three (3) year terms following the initial Term, unless either party hereto notifies the other party in writing, not less than ninety (90) nor more than one hundred eighty (180) days prior to the end of the initial Term or the then current renewal period, of its intention not to renew this Agreement.

2.    **TICKET SALES RIGHTS: EXCLUSIVITY**.
    (a)    Grant of Rights:  Principal hereby grants to Ticketmaster, and Ticketmaster accepts from Principal, the right during the Term of this Agreement, to be the exclusive seller, as Principal's agent, of all Tickets for the Sellable Capacity for every Attraction via any and all means and methods, including on the Internet, by telephone, computer, IVR, outlets, television, clubs, auctions, VIP packages, presales, upsells, or by any other means of distribution, whether existing now or at any time in the future. Principal shall ensure that the entire Sellable Capacity for every Attraction shall be made available for distribution on the TM System.
    (b)    Sales by Principal:  Notwithstanding the above, but subject to the terms of Section 2(c) below, Principal retains the right to: (i) sell single Tickets from the Facility Box Office to persons physically present at the Facility Box Office; (ii) sell Season/Contract Tickets; (iii) conduct Group Sales of Tickets; and (iv) provide a reasonable number of House Seats for any Attraction.
    (c)    No Third Party Systems or Services:  Principal shall not directly or indirectly use, sponsor, promote, advertise, authorize or permit the use of any third party that promotes, engages in or facilitates the sale, resale or issuance of tickets.
    (d)    No Minimum Sales:  It is agreed and understood that neither Ticketmaster nor Principal guarantees or will guarantee that any minimum or fixed number of Tickets will be sold through the TM System for any Attraction.
    (e)    Acknowledgement by Principal:  Principal acknowledges that Ticketmaster acts as the agent of certain third parties that may be a direct or indirect competitor of Principal. Principal also acknowledges that Ticketmaster has entered and may in the future (including during the Term of this Agreement) enter into new business relationships with other third parties, including those in the entertainment and sports industry, such as performers who perform at the Facility, for a variety of services. Principal further acknowledges that any such sales or services or solicitations to provide such sales or services as contemplated under this subsection do not compete with Principal or conflict with this Agreement or Ticketmaster's rights, duties or obligations under this Agreement.

3.    **CHARGES AND FEES.** Principal authorizes Ticketmaster, in its sole discretion, to collect the Face Value from each Ticket purchaser and deduct the applicable Inside Charges from the settlements paid to Principal pursuant to Section 6 of this Agreement. In the event applicable law prohibits the assessment of such fees against consumers, Ticketmaster and Principal shall agree on alternative means for compensating Ticketmaster for its services in amounts reasonably comparable to those set forth in this Agreement, and as permitted by applicable law.

    (a)    Convenience Charge (Per Ticket):  The per Ticket convenience charges shall be determined and (subject to the terms set forth herein) retained by Principal during the Term of this Agreement; provided however, in the event any per Ticket fee in any single transaction is less than the applicable Inside Charge due Ticketmaster as set forth in subsection (b) following, Ticketmaster reserves the right to invoice Principal for the amount of such Inside Charge, or to setoff such amount against any funds held by Ticketmaster on account of Principal.
    (b)    Inside Charges:

| Type of Ticket | Per Ticket Inside Charge | Per Order Inside Charge |
|---|---|---|
| For Tickets sold via the Facility Box Office | ███ per Ticket | ███ per order |
| For all Tickets sold via Internet Sales, Telephone Sales and Outlet sales | ███ per Ticket | ███ per order |
| Additional Human Assistance Fee for all Tickets sold via Telephone Sales | ███ per Ticket | ███ per order |

The per Ticket Inside Charges shall be subject to automatic increase on the first day of the second year and on the first day of each year thereafter during the Term in the amount of ███ of the previous year's per Ticket Inside Charge.

*Execution copy 10/6/17*                    1

(c)      Payment Processing Fees: With respect to Tickets purchased with credit cards, debit cards, gift cards or any other methods of payment, the payment authorization and processing fees ("Payment Processing Fees") shall be passed on to Principal at an amount equal to ▓▓ of the Face Value of all Tickets (plus any fees added to the Face Value) sold via Telephone Sales and Internet Sales, which percentage rate shall be deducted by Ticketmaster from the Ticket sales proceeds, or, at Principal's option, upon notice to Ticketmaster, the convenience charge may be adjusted to include such Payment Processing Fees; provided, that the convenience charge will be rounded up to the nearest ▓▓ The Payment Processing Fees set forth above are subject to automatic increase due to increases in interbank rates imposed on Ticketmaster.

(d)      Mail Fee. Ticketmaster shall be entitled to assess and receive a fee in the amount of ▓▓ per order against purchasers of Tickets using the U.S. mail method of delivery (the "Mail Fee"). Principal may elect to increase the Mail Fee by an additional amount not to exceed the then current base amount retained by Ticketmaster, and Principal shall retain the entirety of such additional amount for each Mail Fee received (and not refunded) by Ticketmaster, less applicable taxes or credit card fees (calculated at the same rate for credit card transactions as set forth in the Agreement) on such additional amount.

(e)      Set-Up Fee: Upon execution of this Agreement, Principal shall pay Ticketmaster a non-refundable set-up fee of ▓▓ for Ticketmaster's costs related to programming the Attractions into the TM System.

(f)      TM+:      Ticketmaster shall enable its proprietary, integrated primary and secondary market ticket inventory platform and technology on the TM.com Website, which platform and technology shall enable consumers searching for Tickets to an Attraction to simultaneously view Tickets available for initial sale directly by Principal pursuant to this Agreement, in addition to Tickets available for resale from other consumers (collectively, "TM+"), in accordance with the terms and conditions set forth on Exhibit B attached hereto.

**4.      INSTALLATION AND SET-UP.**
(a)      Attraction Set-Up:    In order to effectively utilize Ticketmaster's distribution technologies, within a reasonable time before (but in no event less than the time period described below) the scheduled on-sale date of Tickets for each Attraction (the "On-Sale Date"), Principal shall furnish Ticketmaster with all necessary information with respect to the Attraction, including, without limitation, seating layout of the Facility, Ticket structure, discounts permissible, Attraction Taxes, Ticket header information, logos, entry information, vision and hearing information, wheelchair and other accessible seating information and such other information as is necessary for the proper sale of Tickets (collectively, the "Set-Up Information"). The parties intend that all accessible seating Tickets that are available for sale to persons desiring accessible seating shall be made available for sale on the TM System and such accessible seating Tickets shall not be released into the general pool of Tickets that are available for sale until forty-eight (48) hours before an Attraction.  Principal must provide the Set-Up Information to Ticketmaster at least five (5) business days prior to the On-Sale Date for new Attractions that do not utilize seating charts then existing in the TM System, and at least three (3) business days prior to the On-Sale Date for new Attractions that utilize seating charts then existing in the TM System. Ticketmaster shall have no responsibility and Principal shall indemnify and hold Ticketmaster harmless from and against any and all liabilities, claims, expenses (including court costs and reasonable attorneys' fees) and causes of action resulting from the inaccuracy of any Set-Up Information furnished by Principal pursuant hereto.

(b)      Will-Call Services:  Principal shall notify Ticketmaster of Principal's will-call capabilities and will-call Facility Box Office hours. Principal shall verify the identity of each person picking up Tickets at will-call via a valid photo identification (government issued) and the credit card used in the Ticket sales transaction. Principal shall not release Tickets to any customer whose identity has not been so verified.

(c)      Ticket Stock. Principal shall be responsible for the security of Ticket stock in its possession, and the risk of loss of Ticket stock shall shift to Principal upon the delivery thereof to Principal or Principal's authorized representative, agent or employee.

**5.      ADVERTISING.**
(a)      Principal is responsible for all advertising, marketing and promotion of the Attraction(s). In all advertising or promotional material which Principal creates, causes to be produced, controls or recommends relating to any Attraction, Principal shall include the Ticketmaster name, logos, and the applicable TM.com Website address. The failure to prominently include the Ticketmaster name, logos, and the applicable TM.com Website address in any advertising or promotion of an Attraction, without Ticketmaster's prior written approval, shall constitute a material breach of this Agreement.

(b)      Principal hereby grants to Ticketmaster the right, in Ticketmaster's sole discretion, to advertise, in any medium determined by Ticketmaster, including on the TM.com Website or affiliated websites, Attractions and the availability of Tickets at the Facility Box Office, at all Outlets, and by Internet Sales and Telephone Sales and, in connection therewith, to use the name and logo of Principal, the Attraction, the Facility and all other information respecting the Attraction.

**6.      ACCOUNTING PROCEDURES.**
(a)      Payments by Ticketmaster: Principal hereby authorizes Ticketmaster and the financial institution indicated below ("Bank") to deposit all settlement funds payable to Principal hereunder in the account listed below ("Principal's Account"):

*Execution copy 10/6/17*                                    2

CONFIDENTIAL                                                                    LNE-LIT24-000571996