| From: | Karen Klein [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=ED2798A6EA79431995F2B515F0657D04-KAREN.KLEIN] |
|---|---|
| Sent: | 8/13/2019 5:59:27 PM |
| To: | steburns@stubhub.com |
| CC: | David Marcus [david.marcus@ticketmaster.com] |
| Subject: | Ticketmaster's exclusive rights |
| Attachments: | TM Exclusive Rights.pdf |

Importance:    High

Ms. Burns,

In response to Mr. Poirier's August 7 email to David Marcus of Ticketmaster, please see our attached response.

Regards,

Karen Klein

Karen Klein
EVP & General Counsel



Office: 310.360.3097 x43097
Mobile: █████████

Ticketmaster | A proud division of Live Nation Entertainment
We're hiring!  Check out our **openings** and join our Talent Network.

   

HIGHLY CONFIDENTIAL

**Ex. No**

**PX0752**

1:24-cv-03973

LNE-LIT24-001186671

# ticketmaster

**Karen Klein**
Executive Vice President and General Counsel

office: 310.360.3097 ext. 43097
karen.klein@ticketmaster.com

August 13, 2019

Ms. Stephanie Burns
General Counsel
StubHub
199 Fremont Street, 4th Floor
San Francisco, California 94105

<u>VIA EMAIL</u>

Dear Ms. Burns,

I am following up on a conversation between David Marcus, Head of Music at Ticketmaster, and Jeff Poirier of StubHub in which David made clear that StubHub directly approaching artists on direct-to-secondary deals would interfere with Ticketmaster's exclusive rights. Subsequently Mr. Poirier expressed surprise that Ticketmaster would assert its contractually negotiated rights and indicated I should reach out directly to you. Accordingly, I am writing to clear up StubHub's apparent confusion.

As the live entertainment industry has developed in the United States, venues own the rights, in the first instance, to issue and sell tickets for the events that they host. They usually choose to sell those tickets through ticketing service providers, which they frequently select through competitive bidding. When a venue selects a ticketing partner, the terms of their agreement are memorialized in a written contract, which in nearly all cases grants the ticketing service provider exclusive rights to sell tickets for the entire "sellable capacity" of events hosted by the venue, subject only to certain limited carve-outs that are unlikely to have any application to StubHub. These agreements also expressly prohibit the use of any third-party ticketing service other than Ticketmaster for selling any of the venue's tickets. StubHub can readily determine whether one or more venues an artist will play is serviced by Ticketmaster, and it should presume that in all such cases Ticketmaster holds exclusive ticketing rights. StubHub must therefore conduct its affairs so as not to interfere with Ticketmaster's rights.

Mr. Rapino said and Live Nation believes that as a company it should work to empower artists to control ticket distribution strategies on their tours. He did not say that Live Nation should do so without regard to the rights of others in the live music ecosystem, including venues and Ticketmaster. In fact, Ticketmaster has a long history of defending its exclusive rights, which Mr. Rapino and the Live Nation management team fully supports. You will no doubt recall that when StubHub sued Ticketmaster over its exclusive rights agreement with the Golden State Warriors, the company vigorously defended the lawsuit. Ticketmaster will defend its rights again should StubHub's proposals to artists improperly interfere with our exclusive rights.

If you wish to discuss this matter further, you may contact me at the above-listed number.

Regards,

Karen Klein
Executive Vice President and General Counsel

**HIGHLY CONFIDENTIAL**