March 30, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**    *United States et al. v. Live Nation Entertainment, Inc. et al.*; **1:24-cv-03973-AS**

Dear Judge Subramanian:

We represent Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. (together, "Defendants") in the above-referenced matter. We write to request the sealing in full of the Declaration of Kelly Fayne and Exhibits 1 through 7 appended thereto (the "Data Description Letters"). Specifically, Defendants seek to seal seven confidential letters, spanning from May 2023 through June 2025, from Defendants' counsel to the U.S. Department of Justice providing granular descriptions of Live Nation's internal data systems, data fields, dataset contents, the interrelationships among those datasets, and how Live Nation uses or does not use specific data in the ordinary course of business.

The Supreme Court has long held that "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Rather, "[t]he Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (citations omitted). Courts first assess whether the documents at issue are "judicial documents" relevant to the performance of the judicial function and useful in the judicial process. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Second, "the court must determine 'the weight of the presumption'" of public access to the documents. *Stern*, 529 F. Supp. 2d at 420 (citing *Lugosch*, 435 F.3d at 119). Third, the "'court must balance competing considerations against'" the presumption of public access. *Id.* (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

Competing interests that outweigh access include "the privacy interests of those resisting disclosure," *Lugosch*, 435 F.3d at 120, including the protection of competitively sensitive business information, *see, e.g., Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154-55 (S.D.N.Y. 2015); *Nielson Consumer LLC v. Circana Grp., L.P.*, 2024 WL 990073, at *2 (S.D.N.Y. Mar. 6, 2024) (relevant countervailing interests include preserving "higher values," which "include . . . the protection of competitively sensitive business information").[1] "[C]ourts have refused to permit their files to serve as reservoirs . . . of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598 (internal citations omitted).

---

[1] *Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019) (same weight of presumption of access to evidence introduced at trial as evidence connected to a summary judgment motion).

The public's interest in accessing the information below does not overcome the strong argument in favor of its protection.

The Data Description Letters are confidential correspondence from Defendants' counsel to the Department of Justice, each of which was marked "CONFIDENTIAL" or "SUBJECT TO CONFIDENTIALITY STATUTES" at the time of transmission, and each of which expressly states that Live Nation "customarily and actually treats the information contained in this letter as private." The letters were provided solely to assist Plaintiffs in reviewing Live Nation's data productions. Defendants seek to seal these letters in full because they are permeated, from beginning to end, with competitively sensitive proprietary information that cannot be meaningfully redacted without rendering the documents unintelligible. The Data Description Letters reveal the following categories of competitively sensitive information:

- **Trade secrets, confidential research and development information.** The Data Description Letters contain detailed descriptions of, and references to, Ticketmaster's internal technology infrastructure—the core of Ticketmaster's competitive offering as a technology platform—including its research and development strategy and the architectural design of its systems. The letters identify, at a granular level, dozens of specific internal databases and datafiles (e.g., LNE-LIT24-DAT-000018-000220 and beyond), describe the universe of transactions each dataset covers, and explain what information each database contains. *See, e.g.*, Exs. 2, 3, 5 (identifying dozens of specific datafiles and describing their contents and scope). The letters further describe the specific internal systems that generate, warehouse, and maintain this data, and explain how data flows between these systems, including how data is recorded, warehoused, reconciled, and reported. *See, e.g.*, Ex. 4 (SAP BPC system); Ex. 6 (Host, Front Gate, Teradata/Databricks, and ROME); Ex. 7 (primary and secondary ticketing systems). Ticketmaster has, at all times, treated this information as closely guarded and highly confidential. Disclosure would inflict serious and irreparable competitive harm: competitors armed with knowledge of Ticketmaster's proprietary systems, strategies, and development plans would gain an inappropriate advantage that they could exploit to replicate Ticketmaster's technology and undermine its ability to compete for customers. "Courts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard." *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021) (internal citation omitted); *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 263–64 (S.D.N.Y. 2008) (recognizing that database schemas constitutes commercially sensitive information warranting protection from disclosure).

- **Dataset interrelationships and linking methodology.** The letters also provide detailed, step-by-step instructions on how to join or map specific datasets to one another using particular fields. For example, the letters explain how to map event-level data to resale royalty data, *see* Ex. 2; how to join datasets, *see* Ex. 2; how to link customer identifiers across ticketing systems, *see* Ex. 4; and how to connect transaction-level, ticket-level, and order-level data across more than a dozen interrelated tables, *see* Ex. 3. *See also* Ex. 1 (summarizing prior correspondence on

linking files); *see* Ex. 5 (field relationships across datasets); *see* Ex. 6 (identifying comparable values between Specification 16 and 17 datasets); *see* Ex. 7 (merging primary and secondary ticketing datasets). These instructions effectively provide a roadmap of the company's data architecture and reveal not just what data exists, but precisely how it fits together and is used by Live Nation. Public disclosure of this information would provide competitors an understanding of the specific technology platforms Live Nation and Ticketmaster use and enable competitors to replicate Ticketmaster's proprietary infrastructure. *See Locus Techs. v. Honeywell Int'l Inc.*, 2024 WL 5103334, at *9 (S.D.N.Y. Dec. 13, 2024) (granting motion to seal exhibits containing proprietary data and flow process diagrams related to software functionality where public disclosure could enable competitors to exploit the depicted processes); *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 802–03 (2d Cir. 2023) (affirming jury finding that a "Data Dictionary" revealing the proprietary "data structure" at the heart of a software platform constituted a protectable trade secret, where testimony established the tool was kept confidential and its copying by a competitor "would be damaging").

The letters are being filed as exhibits appended to a motion to strike pursuant to Rule 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 578 (1993), and the relevant portions of the letters are described in adequate detail or quoted directly in the brief at issue, which Defendants do not seek to seal. The remaining, granular descriptions of Live Nation's data across these exhibits are not necessary for the public's understanding of the motion to which they are appended.

The information is not of "value . . . to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119. Accordingly, Defendants respectfully request that the Court seal the Exhibits in full.

*[signatures on following page]*

Dated:  March 30, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

_____

Alfred C. Pfeiffer (admitted *pro hac vice*)
  *Co-Lead Trial Counsel*
David R. Marriott
  *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

cc: All counsel of record (via ECF)

CRAVATH, SWAINE & MOORE LLP

_____

Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

4