March 31, 2026

**<u>VIA ECF</u>**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:**    *United States et al. v. Live Nation Entertainment, Inc. et al.*; **1:24-cv-03973-AS**

Dear Judge Subramanian:

Following up on the oral motion made in Court today, and in advance of the hearing tomorrow, Defendants submit this letter outlining the bases of their motion for judgment as a matter of law on all remaining claims, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.[1] Defendants are happy to discuss these issues with the Court at tomorrow's hearing, and/or submit further briefing.  Defendants reserve all rights to move for judgment as a matter of law again at the close of all the evidence.[2]

*First*, Defendants are moving for judgment as a matter of law on **all claims that rely on Plaintiffs' alleged primary ticketing services and primary concert ticketing services to "major concert venues" markets** (First Claim for Relief and Second Claim for Relief).

- Plaintiffs failed to prove that either of these is a relevant market as the law requires.

    - The evidence does not permit any reasonable jury to find that these are relevant antitrust markets, and without these markets, Plaintiffs' primary ticketing monopolization claim and their exclusive dealing claim fail.

    - First, there is no basis in the record for the "concert" limitation on the "primary concert ticketing services to major concert venues" market.  The record shows without dispute that ticketing contracts are for all the ticketing needs of the venues,

---

[1] Defendants refer the Court to, and incorporate by reference, the legal arguments in support of Defendants' proposed jury instructions, submitted to the Court on March 24, 2026.

[2] *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 138 (2000) ("During the trial, the District Court twice denied oral motions by respondent for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, and the case went to the jury."); *Hernandez v. Keane*, 341 F.3d 137, 143 (2d Cir. 2003) ("At the conclusion of plaintiff's case, and again at the close of evidence, defendants moved pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law."); *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988*, 811 F. Supp. 84, 86 (E.D.N.Y. 1992) ("At the close of plaintiffs' case and again at the close of all the evidence, defendant Alert moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.").

be that sports, concerts, family shows, or whatever else plays there. The only purpose the "concert" limitation serves is to inflate Ticketmaster's share.

- o Second, there is no basis in the record for limiting the markets to the 257 so-called "major concert venues."

   - Plaintiffs presented no evidence that these venues have ever been actually discriminated against in any way, so on Defendants' reading of *FTC v. Meta Platforms, Inc.*, 811 F. Supp. 3d 67 (D.D.C. 2025), and *United States v. Eastman Kodak Co.*, 63 F.3d 95 (2d Cir. 1995), that is dispositive.

   - Even if that is not dispositive, we are still left with a record without an HMT analysis or satisfaction of the *Brown Shoe* factors, because (a) there is no evidence that this grouping is the product of any preexisting industry recognition; (b) everyone agrees that Ticketmaster, SeatGeek and AXS compete across a broad group of stadiums, arenas, and amphitheaters; (c) the core ticketing technologies and services sold to all stadiums, arenas, and amphitheaters are the same; and (d) Plaintiffs presented no evidence that these venues have ever been actually discriminated against in any way. Those facts together do not permit a reasonable jury to find a relevant market limited to these 257 venues.

- Plaintiffs failed to prove monopoly power.

   - o At summary judgment, because Defendants just raised market definition, the Court held that monopoly power might exist in a targeted customer market even if it has not been exercised.

   - o Now, regardless of market definition, the evidence does not permit any reasonable jury to find that Ticketmaster had power over price, control over output, the ability to exclude competition, or any other indicia of monopoly power.

      - Plaintiffs presented no evidence of power over price. Dr. Hill had all the data to analyze that, yet reported no opinions about it and admitted he had no such evidence. Record evidence shows that Ticketmaster's share of ticketing contract revenues has been decreasing.

      - There is no evidence of reduced provision of ticketing services, of fewer tickets being sold, or of fewer events taking place by virtue of anything that Ticketmaster has done.

      - Ticketmaster has not been able to exclude competition. It clearly has more competitors and faces more competitive pressure than it did 15 years ago. But more importantly, it now faces effective competitors for every bidding opportunity to serve large venues.

2

- - There is no evidence that Ticketmaster has reduced quality or, more importantly, held onto its market share despite reducing quality (as in *United States v. Google*, 778 F. Supp. 3d 797, 834 (E.D. Va. 2025)).

  - Moreover, Plaintiffs adduced no evidence from which a reasonable jury could conclude that in the but-for world prices would have been lower, output higher, or quality better.

- Plaintiffs failed to prove anticompetitive effects.

  - Regardless of the conduct theory, Plaintiffs were required to prove at the threshold that Ticketmaster's conduct harmed consumers—here, the "major concert venue" venue customers—which in the Second Circuit has only been done with evidence of changed prices, output or quality. *MacDermid Printing Sols. v. Cortron*, 833 F.3d 172, 183 (2d Cir. 2016).

  - The evidence does not permit any reasonable jury to find that venues have faced higher prices, worse quality, or lower output as a result of Ticketmaster's alleged conduct. Again:

    - Plaintiffs presented no evidence of increases in price. Dr. Hill had all the data to analyze that, yet reported no opinions about it and admitted he had no such evidence. Record evidence shows that Ticketmaster's share of ticketing contract revenues has been decreasing.

    - Plaintiffs presented no evidence of reduced output, whether by Ticketmaster or across the industry.

    - Plaintiffs presented no evidence of reduced quality. The anecdotal attacks on Ticketmaster quality do not show the reduction of quality required under the law.

  - Nor is there any other evidence that the challenged behavior has harmed competition.

  - Moreover, Plaintiffs adduced no evidence from which a reasonable jury could conclude that in the but-for world prices would have been lower, output higher, or quality better.

- Plaintiffs failed to prove exclusionary conduct: threats, retaliation, and conditioning.

  - The threats and retaliation theory Plaintiffs pleaded has not been proven in any way that would constitute actionable anticompetitive conduct.

    - Under any conceivable legal standard, the few isolated instances of supposed threats and retaliation would plainly be insufficient to show a substantial restraint on competition in any market. The bulk of the evidence Plaintiffs adduced on this issue was hearsay that cannot be used to prove

the truth of the matter asserted and/or was outside the relevant limitations period. While foreclosure is not strictly a quantitative test, there comes a point where the paucity of what a plaintiff has proven cannot support an inference that the practice "substantially forecloses" competition, particularly given the 15-year period at issue in this case and the many thousands of venue negotiations that took place during that period.

o The "conditioning" theory that has become apparent over the course of this trial fails as a matter of law.

- There is no evidence that Live Nation truly conditions Live Nation-promoted concerts on a venue's use of Ticketmaster. Rather, the evidence shows that Live Nation does thousands of shows in venues that do not use Ticketmaster.

- What Dr. Hill described as "conditioning" appears to be no more than a modest and legally insufficient self-preferencing claim.

- Plaintiffs are arguing that venues that do not choose Ticketmaster get a few less Live Nation-promoted concerts per year than those that do. Even assuming this is true, it would not be unlawful for Live Nation promoters to favor Ticketmaster to the extent that Plaintiffs' evidence shows. *See United States v. Google LLC*, 687 F. Supp. 3d 48, 83 (D.D.C. 2023) (granting summary judgment on claim that Google favored its own specialized websites over those of rivals); *Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 304 (5th Cir. 1984) (affirming summary judgment against plaintiffs on claims based on Coke bottler refusing to allow Pepsi products in vending machines it serviced; "Without anything more, these practices are not barred by the antitrust laws."). The Sherman Act contains no general prohibitions on self-preferencing by a vertically-integrated firm.

- There is also no evidence that the modest effect Plaintiffs claim is not explained by legitimate business concerns. The record shows that artists and promoters generally, including AEG artists and promoters, often prefer venues that Ticketmaster tickets. It also shows that artist teams may route shows to venues for demographic or other reasons.

o In any event, the threats/retaliation/conditioning theory is not actionable without a showing of market power in the market for the product used as the basis of the alleged threats—here, concerts. Plaintiffs have not proven that.

- Plaintiffs failed to prove exclusionary conduct: exclusive dealing.

o First, it is undisputed that venues prefer and want exclusive contracts. There is no evidence that any venue was forced into an exclusive contract when it preferred a non-exclusive contract. This has been so for many years. *See Virgin Atl. Airways Ltd. v. Brit. Airways PLC,* 257 F.3d 256, 269 (2d Cir. 2001) (finding that business

practices which have persisted for years without precluding rivals' market participation are presumptively legal).

o Second, there is undisputed evidence that exclusive contracting is preferred by venues for efficiency reasons and to obtain the highest value for their ticketing rights. There is no basis in this record for a reasonable jury to find that the practice persists solely or mainly for its alleged benefits in preserving Ticketmaster's market position. In that setting, plaintiffs challenging exclusive dealing are required to prove that anticompetitive effects outweigh benefits, which Plaintiffs here have not attempted to do. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959 (10th Cir. 2022) ("Thus, to present a triable issue of monopolization where the exclusive deals were entered into for a corresponding procompetitive benefit—here, lower prices—the plaintiff must 'prove that the . . . effect of the exclusion will be to raise prices above (and therefore reduce output below) the competitive level, or otherwise injure competition; [plaintiff] must show in other words that the anticompetitive effects (if any) of the exclusion outweigh any benefits to competition from it.'").

o Third, there is no evidence from which a jury could reasonably conclude that exclusive contracting has resulted in Ticketmaster charging venues supracompetitive prices. The evidence in the record is that Ticketmaster's share of ticketing contract revenues has been decreasing. Nothing that Dr. Abrantes-Metz testified to could provide a basis for a reasonable jury to conclude otherwise.

- Plaintiffs failed to prove exclusionary conduct: Oak View Group ("OVG") ticketing deal.

  o The testimony about the OVG agreement was limited and proved nothing anticompetitive. A venue management company was paid to advocate for Ticketmaster but was not required even to recommend Ticketmaster when there was a better offer from others. Indeed, after the OVG contract was entered, OVG venues entered ticketing contracts with AXS. There is no antitrust theory that makes the agreement between OVG and Ticketmaster unlawful.

  o The claim Plaintiffs' complaint pleaded about OVG more broadly strongarming venues into using Ticketmaster was nowhere to be found at trial.

- As an additional argument with respect to Plaintiffs' Section 1 exclusive dealing claim, Plaintiffs failed to prove that any exclusive agreement, judged on its own and not aggregated together with other challenged agreements, caused substantial harm to competition. *See* Authority in Defendants' Proposed Jury Post-Instruction No. 17.

*Second*, Defendants are moving for judgment as a matter of law on **all claims that rely on Plaintiffs' alleged "large amphitheaters" market** (Third Claim for Relief and Fourth Claim for Relief).

- Plaintiffs failed to prove a relevant market.

  o The evidence does not permit a reasonable jury to find that this alleged market—defined as amphitheaters with a capacity of 8,000 or more and that hosted 10 or more concerts in at least one year from 2017 to 2024—is a relevant antitrust market, and without this market, Plaintiffs' tying claim and amphitheater monopolization claim fail.

  o The evidence has shown that artists (the alleged consumers in this market) routinely substitute arenas and other venues for large amphitheaters, which is *prima facie* evidence of a broader market. And yet Plaintiffs have no HMT analysis supporting their narrower market, nor any other proof that artists would not switch to other venues if Live Nation increased the price of its amphitheaters.

  o There is no evidence from which a reasonable jury could conclude that the *Brown Shoe* factors are satisfied with respect to the market as Plaintiffs have specifically defined it.

  o The evidence that some parts of Live Nation's *portfolio* of large amphitheaters is required for "amp tours" does not, as a matter of law, support Plaintiffs' market definition. Plaintiffs did not allege any kind of portfolio market based on a seller's ability to compete with "a geographically dispersed footprint," as in *FTC v. Sysco*, 113 F. Supp. 3d 1 (D.D.C. 2015).

- Plaintiffs failed to prove their tying claim.

  o The evidence has made clear that this claim challenges nothing but Live Nation's lawful policy of refusing to deal with its promoter competitors. There is no evidence that an artist, an agent, or a manager ever sought to rent a venue directly, let alone was presented with a tying arrangement when they did. Nor have Plaintiffs adduced any evidence from which a reasonable jury could conclude that when promoters rent venues, they are doing so as the legal agents of artists.

  o There is no evidence from which a reasonable jury could conclude that Live Nation ties access to its amphitheaters to promoting a broader tour. To the contrary, the only artist testimony in the case (from Ben Lovett) proved that this did not happen.

  o There is no basis in the record to find that any alleged tying implied by Live Nation's policy of refusing to deal with its promoter competitors would be illegal *per se*, meaning, *inter alia*, (a) illegal in the absence of proof of substantial foreclosure in a proven relevant market for the tied product and (b) irrespective of legitimate business justifications.

- o Plaintiffs have failed to prove, as required in the Second Circuit, that the alleged tying caused substantial foreclosure or anticompetitive effects in a proven relevant market for the tied product.

- Plaintiffs failed to prove their amphitheater monopolization claim.

    - o "[A] Section 2 claim requires not mere growth by acquisition, but the willful maintenance or acquisition of monopoly power[.]" Summ. J. Opinion (ECF No. 1037) at 33.

    - o The scant evidence Plaintiffs presented about Live Nation's acquisition of "control" over large amphitheaters does not allow a reasonable jury to find monopolization.

    - o First, Dr. Hill testified that Live Nation achieved the alleged 70% share in large amphitheaters in 2018, outside the 4-year limitations period. Under *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 301 (D.C. Cir. 2023), any action challenging that set of acquisitions is time-barred and/or subject to laches.

    - o For 10 of the 16 amphitheaters allegedly "acquired," Live Nation only acquired booking rights, *i.e.*, it was hired by the venue owner to take over the booking function. No evidence was put into the record that could justify counting those as comparable to owning a venue or operating it under a long-term lease.

    - o Another venue was allegedly "acquired" simply because Live Nation entered into an operating agreement with the venue owner. No evidence was put into the record that could justify counting that as comparable to owning a venue or operating it under a long term lease.

    - o The remaining four venues were purchased or leased, but Plaintiffs offered no evidence about the effects of those acquisitions on competition.

        - ▪ Moreover, of these four venues, only two (Hayden Homes Amphitheater and Bank NH Pavilion) were purchased or leased within the limitations period. The other two fall far outside that period (Ameris Bank Amphitheater in 2016 and Utah First Credit Union Amphitheater in 2017). Plaintiffs cannot use non-limitations-period conduct to support this claim. *See Meta*, 66 F.4th at 295-301 (dismissing States' 2020 case premised on 2012 and 2014 acquisitions of Instagram and WhatsApp based on laches, and noting that forced divestiture now would have "severe consequences" given the integration of those platforms into Meta). And Plaintiffs have put on little to no evidence specific to the only amphitheater acquisitions that count (Hayden Homes and Bank NH).

    - o Plaintiffs completely failed to prove harm to artists (the alleged customer in Plaintiffs' market) from these acquisitions. The evidence has shown that artists actually make <u>more</u> money at amphitheaters than at other venues, because the amphitheaters' ancillary revenues allow the artists to demand more of the door. But

that aside, there was no effort by Plaintiffs to prove that the acquisitions allowed Live Nation to raise prices, reduce output, or reduce quality.

o None of the evidence Plaintiffs adduced about the price of parking or lawn chairs has any connection to the number of amphitheaters that Live Nation owns, operates, or controls. It is irrelevant to Plaintiffs' amphitheater monopolization claim.

*Third*, Defendants are moving for judgment as a matter of law on **all state-law claims**.

- The state-law claims brought under state statutes that are congruent with the Sherman Act fail for the same reasons noted above.

- The state-law claims brought under other state statutes fail because Plaintiffs have adduced no evidence of harm to competition in any particular state.

*Fourth*, Defendants are moving for judgment as a matter of law on **damages** for the reasons stated in Defendants' motion to strike Dr. Abrantes-Metz's testimony, filed on March 30, 2026 (ECF Nos. 1347, 1348). Moreover, Plaintiffs are unable to disaggregate the effects of indisputably lawful and allegedly unlawful conduct.

*[signatures on following page]*

Respectfully submitted,

LATHAM & WATKINS LLP

CRAVATH, SWAINE & MOORE LLP

_____

Andrew M. Gass (admitted *pro hac vice*)
Alfred C. Pfeiffer (admitted *pro hac vice*)
   *Co-Lead Trial Counsel*
David R. Marriott
   *Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

cc:    All Counsel of Record (via ECF)

_____

Lauren A. Moskowitz
Jesse M. Weiss
Nicole M. Peles

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com
jweiss@cravath.com
npeles@cravath.com

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*