**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br>and TICKETMASTER L.L.C.,<br><br>    *Defendants.* | Case No. 1:24-cv-03973-AS<br><br>**ORAL ARGUMENT REQUESTED** |

**DECLARATION OF KELLY FAYNE IN SUPPORT OF**
**DEFENDANTS' MOTION TO STRIKE THE TESTIMONY OF DR. ABRANTES-METZ**

I, Kelly Fayne, am a partner at the law firm of Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, San Francisco, CA 94111, and counsel for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. ("Defendants") in the above-captioned matter. I am a member in good standing of the Bar of the State of California and am admitted to practice before this Court *pro hac vice*. I respectfully submit this declaration in support of Defendants' Motion to Strike the Testimony of Dr. Abrantes-Metz. The information contained in this declaration is based upon my personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

1. I directed and supervised the process of responding to Plaintiffs' data requests throughout discovery in this case. I also directed and supervised the extensive data production process during the investigations that preceded this lawsuit.

2. While correspondence during the investigation phase was directly with the Department of Justice, Live Nation executed confidentiality waivers with the investigating states and responded to the states' subpoenas that requested complete copies of everything submitted to

the DOJ.  On this basis, my understanding is that the Plaintiff States have access to the full record of data production and related correspondence from the investigations and discovery.

3.      As a result of supervising the data production processes since November 2022, I am generally familiar with both Live Nation's data systems and Plaintiffs' specific requests for data from those systems in this matter.

4.      As of May 22, 2025, Live Nation estimated that Plaintiffs had propounded over 600 data-related questions in discovery alone.  **Ex. 1, at 1**.

5.      I do not recall any occasion on which I or anyone on my team informed Plaintiffs that Live Nation calculates or maintains data for something called "Retained Amounts" that approximates what Dr. Abrantes-Metz calls "Retained Amounts."

6.      Over the past several days, I have again reviewed the voluminous correspondence with Plaintiffs about Live Nation's data productions and have not been able to locate such a representation that Live Nation calculates or maintains data for something called "Retained Amounts" that approximates what Dr. Abrantes-Metz calls "Retained Amounts."

7.      As the attached correspondence reflects, Live Nation produced data to Plaintiffs during both the investigation and discovery as it is maintained in the ordinary course—including at very low levels of disaggregation (e.g., ticket level) as Plaintiffs requested.

8.      Based upon the questions propounded, it was understood that Plaintiffs might use the data to support their economic arguments in ways contrary to how Live Nation uses the data in the ordinary course.  Live Nation consistently explained that such alternative uses were inconsistent with how the data are maintained or used in the ordinary course.

9.      Dr. Abrantes-Metz referred to a letter from me to Plaintiffs dated June 27, 2025, cited in her footnote 333.  That letter responded to data questions from Plaintiffs about Live

2

Nation's data, including a request to interpret the data in what appeared to be an attempt by Plaintiffs to use the data contrary to how it was maintained or used in the ordinary course. In that question, DOJ asked us to explain how to align ticketing data with a formula they defined: "Please explain how to identify the total outside fees (i.e., fees charged in addition to the ticket face value), total inside fees and total face-value charged to the fan and whether a field or combination of fields identifies the amount of each type of fee retained by Ticketmaster." **Ex. 2, at 5**.

10.    In response to DOJ's question in the June 27 letter, we explicitly stated that "LNE-LIT24-DAT-000078 does not contain a field, nor a combination of fields, that identifies the amount retained by Ticketmaster within each fee type." The letter also notes that "not all payments Ticketmaster makes to its partners are captured in this dataset, such as payments to credit card companies and fixed royalty payments to its venue clients." **Ex. 2, at 5**. While the letter provides factual information about the data itself and factually responds to questions related to Plaintiffs' calculations, subject to the noted limitations, it does not endorse such a calculation or imply that Live Nation uses it in the ordinary course.

11.    On many other occasions, we explained to Plaintiffs that the concept of a per-ticket retained amount as described by Dr. Abrantes-Metz is inconsistent with how Live Nation maintains data in the ordinary course, and with how Live Nation accounts for upfront payments when considering what it "keeps" from ticket sales. Examples include the following:

- In a **June 18, 2025** letter, we responded to questions from Plaintiffs about data, including regarding file LNE-LIT24-DAT-000078. One question asked was "To the extent not answered in our specific questions about -78, -80, -89, -93, and -94 below, please explain (i) the extent to which the universe of events and transactions included in these datasets differ and how to generate for each event the total number of tickets

3

sold, the total face value paid by consumers, the total fees paid by consumers across each dataset, the total amount of revenue Ticketmaster retains (if applicable), separately by distribution channel and product type, for all Countries listed in RFP."  We responded: "Live Nation objects to this question to the extent it calls for a calculation Live Nation does not make in the ordinary course, is unduly burdensome, and requires expert judgment calls."  **Ex. 3, at 8**.

- On **April 18, 2025**, Plaintiffs had asked: "Please explain how to calculate the total amount of fees that Ticketmaster keeps for each event?"  We responded: "Live Nation objects to this question to the extent it calls for a calculation Live Nation does not make in the ordinary course."  Plaintiffs also asked: "Please explain how to calculate the total (non-facility) fees for each event?"  We gave the same response.  **Ex. 4, at 3**.

- On **March 11, 2025**, in a letter regarding an earlier version of file LNE-LIT24-DAT-000078, Plaintiffs asked: "Please explain how to find the total amount fees levied on the consumer for an event?"  We responded: "Live Nation is unaware of the financial information contained in this table being used in the ordinary course."  **Ex. 5, at 6**.

- On **December 15, 2023**, during the investigation phase, Plaintiffs had asked: "Please explain whether there is a way to tell from the data included in LNE-000148678 and LNE22-000148679 what portion of revenue and fees is kept by Ticketmaster."  Both files relate to venue client-level ticketing profit and loss data.  We responded: "The portion of fee revenue that Ticketmaster retains after royalties paid to clients may generally be determined by subtracting the sum of 'TotVarRoyalties - Total Variable Royalties' field and the 'TotFixedRoyalties - Total Fixed Royalties' field from the 'TotalCnP – Total Convenience and Processing' field."  In other words, my response

4

indicated that calculating the fee revenue Ticketmaster keeps requires first subtracting Total Fixed Royalties, which includes amortized upfront payments made to the venue. **Ex. 6, at 2**.

- On **May 10, 2023**, during the investigation phase, Plaintiffs had asked:

  o "We would like to know, for each event in Exhibits 17.a, the total amount of each type of primary ticket fees collected by Ticketmaster that is retained by Ticketmaster.  Please supplement Exhibit 17.a with the following additional columns for each event:

    i.   a column for each category of primary ticket fees that shows the net amount of primary ticket fees kept by Ticketmaster, i.e., Ticketmaster's revenues from primary ticket fees that is not passed onto promoters or venues; and

    ii.  a column showing the total net amount of all primary ticket fees retained by Ticketmaster."

  o Our response was: "Ticketmaster does not track information about the net amount of primary ticket fees kept by Ticketmaster at the event level in the ordinary course." **Ex. 7, at 2**.

12.    Attached hereto as **Exhibit 1** is a true and correct copy of the Letter from Kelly S. Fayne to Jennifer Roualet, dated May 22, 2025, Re: Plaintiffs' Requests for Production for Data in United States, et al. v. Live Nation, et al. (1:24-cv-3973).

13.    Attached hereto as **Exhibit 2** is a true and correct copy of the Letter from Kelly S. Fayne to Jennifer Roualet, dated June 27, 2025, Re: Plaintiffs' Requests for Production for Data in United States, et al. v. Live Nation, et al. (1:24-cv-3973).

5

14.    Attached hereto as **Exhibit 3** is a true and correct copy of the Letter from Kelly S. Fayne to Jennifer Roualet, dated June 18, 2025, Re: Plaintiffs' Requests for Production for Data in United States, et al. v. Live Nation, et al. (1:24-cv-3973).

15.    Attached hereto as **Exhibit 4** is a true and correct copy of the Letter from Kelly S. Fayne to Jennifer Roualet, dated April 18, 2025, Re: Plaintiffs' Requests for Production for Data in United States, et al. v. Live Nation, et al. (1:24-cv-3973).

16.    Attached hereto as **Exhibit 5** is a true and correct copy of the Letter from Kelly S. Fayne to Jennifer Roualet, dated March 11, 2025, Re: Plaintiffs' Requests for Production for Data in United States, et al. v. Live Nation, et al. (1:24-cv-3973).

17.    Attached hereto as **Exhibit 6** is a true and correct copy of the Letter from Kelly S. Fayne to Robert Vance, dated December 15, 2023, Re: CID No. 31186 to Live Nation Entertainment ("LNE").

18.    Attached hereto as **Exhibit 7** is a true and correct copy of the Letter from Kelly S. Fayne to Robert Vance, dated May 10, 2023, Re: CID No. 31186 to Live Nation Entertainment ("Live Nation").

I declare under penalty of perjury that the foregoing is true and correct.

\*    \*    \*

Executed on March 30, 2026 in New York, New York.

Respectfully submitted,

Kelly Fayne