# EXHIBIT 1

505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

May 22, 2025

**CONFIDENTIAL**
**VIA EMAIL**

Jennifer Roualet
U.S. Department of Justice
Antitrust Division
Liberty Square Building
450 5th Street, N.W.
Washington, DC 20530

Re:     Plaintiffs' Requests for Production for Data in *United States, et al. v. Live Nation, et al.* (1:24-cv-3973)

Jennie,

On behalf of Live Nation Entertainment, Inc. and Ticketmaster L.L.C. (together, "Live Nation"), we write in response to your May 20, 2025 letter regarding Plaintiffs' Requests for Production for Data.

As we have consistently articulated and demonstrated throughout this litigation and preceding investigations, Live Nation is willing to provide Plaintiffs with information they are entitled to under applicable law.  Live Nation has far exceeded its obligations to provide further information to Plaintiffs regarding its data productions.  Without obligation and entirely in the spirit of good faith cooperation, Live Nation provided detailed cover letters accompanying each production of datafiles.  These cover letters disclose the source of the data, explain their responsiveness, and discuss their relationship with prior productions.  In addition, Live Nation offered to answer reasonable questions concerning its data productions by providing field definitions and describing each datafile's scope and parameters.[1]  Live Nation also met and conferred with Plaintiffs on May 7 to align on a process to address legitimate questions about produced data.

But Plaintiffs were quick to abuse that cooperative spirit.  Since November 2024, Plaintiffs have flooded Live Nation with ***over 600 questions*** concerning its data productions.[2]  Live Nation

---

[1] *See* Live Nation's December 5, 2024 Letter to Plaintiffs (agreeing to answer certain of Plaintiffs' questions about Live Nation's data productions to the extent such questions are "reasonable," within a time period adjusted to the "volume and nature of the questions").

[2] *See* Plaintiffs' Letters to Live Nation dated November 27, January 21, March 25, May 1, and May 20.

May 22, 2025
Page 2

LATHAM&WATKINS LLP

has devoted immense resources towards answering hundreds of these questions, including in letters dated December 30, January 15, February 28, March 11, and April 18.  These letters explained — in painstaking detail — field names, codes, abbreviations, methods of data collection, scope, parameters, and how to link files together.  As explained in prior correspondence, Plaintiffs' endless and often unclear questions have well exceeded any construction of the word "reasonable."[3]  Your May 20 letter does nothing to alter that.  Instead, you raise concerns about Plaintiffs' management of their discovery requests and data review process, then attempt to shift responsibility for that to Live Nation.  Live Nation declines to accept that additional burden.

Plaintiffs have no basis in the Federal Rules of Civil Procedure to demand more than Live Nation has already provided.  Under Federal Rule of Civil Procedure 34(a)(1)(A), Live Nation is merely required to translate its data productions "into a reasonably usable form."  Plaintiffs' questions demand information that far exceed what Live Nation is responsible for.  Of Plaintiffs' over 600 questions, many are tantamount to demanding that Live Nation's attorneys, economists, and employees generate Plaintiffs' advocacy materials.[4]  Others serve as requests for production in disguise, embedding demands for new data or documents that were not served using formal processes — as were Plaintiffs' five sets of requests for production.[5]  Moreover, Plaintiffs' habit of posing questions that Live Nation has already squarely addressed in prior letters suggests both a lack of diligence and a troubling disregard for the burden Live Nation bears to provide these responses.[6]

---

[3] Plaintiffs also continue to set arbitrary deadlines for Live Nation to respond that fail to account for the sheer volume of questions asked.  *See* Plaintiffs' May 20, 2025 Letter to Live Nation ("Defendants will provide answers to all [67] questions within 12 business days").

[4] *See, e.g.*, Plaintiffs' March 25, 2025 Letter to Live Nation, at 3, 8 ("***Please explain how to calculate*** the total amount the consumer paid . . . .  ***Please explain how to calculate*** the total amount a consumer paid for a single ticket); Plaintiffs' January 21, 2025 Letter to Live Nation, at 4–5 ("***Please explain*** . . . ***how to calculate*** the total amount of fees that Ticketmaster keeps for each event . . . ***How to calculate*** the total (non-facility) fees for each event . . . ***How to calculate*** the total facilities fees for each event . . . ***How to calculate*** the number of tickets sold for each product type").

[5] *See* Plaintiffs' March 25, 2025 Letter to Live Nation, at 4 (requesting that Live Nation create a datapoint that does not exist in the ordinary course, and is not responsive to any served request for production, "that shows the name of each promoter, venue, or customer that purchased the Platinum pricing service for each event").

[6] *Compare* Live Nation's December 30, 2024 Letter to Plaintiffs, at 13 ("The 'ticketing' field reports the source of the data.  This field is incomplete and should not be used.") *with* Plaintiffs' March 25, 2025 Letter to Live Nation, at 4 ("Please provide a description of the following fields: (i) ticketing").

**LATHAM&WATKINS** LLP

## Live Nation's Data Question Proposal

Live Nation has well exceeded what it is obligated to provide Plaintiffs. But in continuance of its ongoing attempt to resolve data-related disputes amicably, Live Nation will agree to the following:

- Live Nation will respond, in writing, to the 53 questions in Exhibit A of Plaintiffs' May 20 letter. Live Nation will work diligently to begin providing responses to Plaintiffs within 15 business days of Plaintiffs' acceptance of this proposal. Live Nation will make reasonable efforts to respond to all 53 questions with either answers or objections by June 27, 2025.

- Live Nation will respond, in writing, to the 14 questions in Exhibit B of Plaintiffs' May 20 letter. Live Nation will work diligently to begin providing responses to Plaintiffs within 15 business days of Plaintiffs' acceptance of this proposal. Live Nation will make reasonable efforts to respond to all 14 questions with either answers or objections by June 27, 2025. Should the Parties agree that written responses to any of those questions are insufficient, Live Nation would be willing to discuss alternatives.

- Live Nation reserves the right to object to any question that calls for information that exceeds or differs from its obligations under applicable law.

- These 67 data questions compose the final questions that Live Nation will respond to concerning its data productions, outside of formal discovery processes governed by the Federal Rules of Civil Procedure and Evidence. Live Nation has no obligation to respond to any question raised by Plaintiffs in letters other than Plaintiffs' May 20, 2025 letter to Live Nation.

Please confirm your agreement with this proposal in writing.

Sincerely,

*/s/ Kelly S. Fayne*

Kelly S. Fayne
of LATHAM & WATKINS LLP