# Arnold & Porter

**C. Scott Lent**
+1 212.836.8220 Direct
Scott.Lent@arnoldporter.com

April 1, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re:     *United States, et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-03973-AS; Letter Motion to Seal Non-Party the Utah Jazz's Confidential Material

Dear Judge Subramanian,

I write on behalf of SEG Basketball, LLC (the "Utah Jazz" or the "Jazz"). Pursuant to Rule 11(B)-(C)(i) of the Court's Individual Practices in Civil Cases, the Court's November 5, 2025 Order (ECF No. 685), and the Court's March 6, 2026 ruling in open court ("March 6 Ruling"), the Jazz respectfully submit this letter motion seeking the Court's approval to redact certain limited confidential information produced by the Jazz in the above-captioned action.

Counsel for Defendants notified the Jazz that they intend to show portions of the deposition testimony of Christian Barney, the Utah Jazz's President of Revenue and Commercial Strategy, at trial on Friday, April 3, 2026. The portions of the testimony that Defendants intend to show include a discussion of select pages from DX-1003 (SeatGeek presentation and cover email), DX-1400 (Arena Consulting Services Agreement between the Jazz and Live Nation), and JX-1792 (Multi-Event Incentive Agreement between the Jazz and Live Nation). Although the Jazz do not seek to seal or redact any portion of the 122 pages of Mr. Barney's testimony designated by the Parties, the Jazz write today to seek limited and narrowly-tailored redactions to DX-1003, DX-1400, and JX-1792. For DX-1003, a 42-page document containing highly commercially sensitive information, the Jazz have limited their review to only the specific pages discussed with Mr. Barney during his

**Arnold&Porter**

April 1, 2026
Page 2

deposition, as the Jazz understand that only those pages will be shown publicly. Accordingly, the Jazz have redacted all remaining pages of DX-1003 that the Parties do not intend to rely on at trial.

We have discussed with counsel for Defendants, and we understand that they support the Jazz's proposed redactions to JX-1792 and DX-1400, and they do not oppose the Jazz's redactions to DX-1003. The Jazz's sealing request is narrowly tailored and overcomes the presumption in favor of public access.

## I.    Legal Standard

Courts consider a request to seal under the three-step framework articulated in *Lugosch v. Pyramid Co. of Onondaga.* 435 F.3d 110, 119-20 (2d Cir. 2006). Under that framework, courts must first determine whether "the documents at issue are indeed judicial documents." *Id.* at 119. If so, the court then "must determine the weight of that presumption." *Id.* Third, the court must "balance competing considerations against" that presumption. *Id.* at 120 (internal citations and quotations omitted).

Notwithstanding the presumption of access associated with documents introduced at trial, documents may be kept under seal if "countervailing factors" exist that warrant sealing. *Id.* at 124. These countervailing factors include the "possibility of competitive harm to an enterprise if confidential business information is disclosed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.* (*"Keurig"*), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (upholding district court finding that a business's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access"); *Rowe v. Google LLC*, 2022 WL 4467628, at *2 (S.D.N.Y. Sept. 26, 2022) ("Preventing competitive harm is a countervailing interest that can override the public right of access."); *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts"). Accordingly, "Courts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard." *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021).

Of particular relevance here, documents containing "information revealing the terms of contracts or the content of such confidential negotiations are among those th[e] Court routinely recognizes as justifying protection from the public view when used in litigation." *Capri Sun GmbH v. Am. Bev. Corp.*, 2021 U.S. Dist. LEXIS 121094, at *4

**Arnold&Porter**

April 1, 2026
Page 3

(S.D.N.Y. June 4, 2021); *see also Rubik's Brand Ltd. v. Flambeau, Inc.*, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021) (protecting contractual terms because disclosure could "harm [plaintiff] and/or its business partners by disadvantaging them in negotiating future licensing agreements").

Additionally, the competitively sensitive nature of these materials is even more acute given the Jazz's status as an innocent non-party in this action. *Keurig*, 2023 WL 196134, at *6 ("Higher values that may justify sealing . . . include 'the privacy interests of innocent third parties.'") (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Indeed, the Second Circuit has recognized that the privacy interests of innocent third parties "should weigh heavily in a court's balancing equation." *Olson v. Major League Baseball*, 29 F.4th 59, 91 (2d Cir. 2022) (quoting *In re Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990)). Thus, courts regularly protect third-party pricing information, investment strategies, and competitive data from public disclosure. *See, e.g.*, *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (protecting third-party investment strategies, customer names, and pricing information); *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017) (protecting third-party internal pricing strategies and competitive data).

### II.      The Court Should Redact the Jazz's Confidential Business Information

Both DX-1400 and JX1792 are contracts effective as of January 1, 2024. The Jazz respectfully request only the narrow redactions of negotiated and agreed-to pricing information within these contracts. The disclosure of this information would give other ticketing vendors an unfair advantage in negotiations with the Jazz. The Jazz's redactions are consistent with the redactions applied to similar agreements in this case and the Court's prior Orders regarding third-party confidentiality. *See, e.g.*, ECF No. 1246; ECF No. 1368. Further, the harm that would result from the disclosure of the material that the Jazz seek to redact is precisely the type of countervailing factor that warrants sealing despite the presumption of access associated with documents introduced at trial. *In re the Ex Parte Application of the Upper Brook Cos. for an Order Directing Discovery In Aid of a Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 2023 WL 172003, at *6 (S.D.N.Y. Jan. 12, 2023) ("A presumption of access may be outweighed by a party's interest in 'protecting confidential business information' from disclosure that would subject it to 'financial harm' or a 'significant competitive advantage.'").

With respect to DX-1003, the Jazz have applied limited redactions to commercially sensitive discussions between the Jazz and SeatGeek, Inc. regarding the Jazz's ticketing pricing strategy (e.g., other venues that the Jazz monitor for pricing). The disclosure of this highly confidential information could harm the Jazz's future business dealings with both

**Arnold&Porter**

April 1, 2026
Page 4

other ticketing providers and the Jazz's competitors. Additionally, the Jazz have limited their review of DX-1003 to only the specific pages that are discussed during Mr. Barney's deposition. The Jazz have therefore redacted entirely the pages of DX-1003 that were not discussed during Mr. Barney's deposition and will not be shown at trial. The public does not have a legitimate interest in reviewing the pages of DX-1003 that neither Party intends to rely on, or even discuss, at trial. This position is also consistent with the positions taken by other third parties in this litigation and approved by the Court. *See, e.g.*, ECF No. 1262; ECF No. 1269. Last, the Jazz have also proposed redactions to certain personally identifiable information and/or sensitive personal information, including individual email addresses and phone numbers, which do not require a motion to seal pursuant to the Court's March 8, 2026 order approving the presumptive redaction of such information. *See* ECF No. 1138; ECF No. 1137.

For these reasons, the Jazz respectfully request that the Court grant the Jazz's limited redaction requests to DX-1003, DX-1400, and JX-1792. Pursuant to the Court's March 6 Ruling, the Jazz will submit "red box" redactions by email to Chambers.

Respectfully Submitted,

*/s/ C. Scott Lent*
C. Scott Lent
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th St.
New York, NY 10019
Tel: (212) 836-8220
Fax: (212) 836-8689
scott.lent@arnoldporter.com

*Counsel for non-party SEG Basketball, LLC*

cc:    All Counsel of Record (via ECF)