# Exhibit 2

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
OFFICE OF THE ATTORNEY GENERAL

ATTORNEY GENERAL
BRIAN L. SCHWALB



Public Advocacy Division
Antitrust and Nonprofit Enforcement Section

March 26, 2026

*Via E-Mail*

The Honorable Arun Subramanian
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Courtroom 15A
New York, NY 10007

Re: *United States et al. v. Live Nation, Inc., et al.*, No. 1:24-cv-3973-AS

Dear Judge Subramanian,

State Plaintiffs respectfully submit this letter in response to the Court's request for briefing regarding impeachment evidence for the cross examination of Mr. Mueller. State Plaintiffs would be severely prejudiced if they were prohibited from using this evidence and asking questions related to the circumstances of Mr. Mueller's departure from AEG. This evidence goes squarely to his bias against his former employer and the credibility of his testimony on a key issue in the case. Defendants no doubt want to paint Mr. Mueller as a knowledgeable witness to speak to the comparability of AEG and AXS with Live Nation and Ticketmaster. State Plaintiffs must be able to explore reasons Mr. Mueller might have animus toward his former employer that would undermine his testimony.

**Background**

With respect to the circumstances pursuant to which State Plaintiffs obtained the information regarding Mr. Mueller's exit from AEG, they are as follows. As described on the call with the Court, Mr. Gitlin encountered counsel, Mr. Bernick, for AEG outside the courtroom during the trial proceedings on Monday, March 23, 2026. He indicated to Mr. Bernick that he expected to cross-examine Mr. Mueller and asked if Mr. Mueller had any information that could be relevant to cross examination. At approximately 8:45 pm on Monday night, Mr. Bernick called Mr. Gitlin and stated that he had information related to the circumstances of departure from AEG that would be probative of bias. On Tuesday, March 24, at 4:12 pm, Mr. Gitlin received an email from Mr. Bernick ████████████████████████████████████████████████████████████
████████████████████████████████████████████

On the following evening, March 25, Ms. Giordano approached Mr. Gitlin to ask whether State Plaintiffs were planning to go into the details of Mr. Mueller's departure from AEG. Mr. Gitlin told Ms. Giordano that he understood that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████. Mr. Gitlin said he intended to examine Mr. Mueller on this subject to establish bias. Mr. Gitlin stated that Plaintiffs intended ██████████████████████████████████████████████ ████████████████████████. Mr. Gitlin and Ms. Giordano agreed to discuss further the next morning. To be clear, at no point did Plaintiffs contact Mr. Mueller, nor use the information in an effort to influence Mr. Mueller's willingness to testify. Rather, it was Defendants' counsel who contacted Plaintiffs' counsel to inquire whether Plaintiffs intended to use the information — confirming that Defendants were aware of the issue and assessing its implications                                    for                                    their                                    witness.

On Thursday morning, March 26, at 8 a.m., Mr. Gitlin showed Ms. Giordano a paper copy of the ███████████████ and Ms. Giordano raised the possibility of an agreement to limit the examination. Mr. Gitlin tentatively agreed to consider limiting the key bias examination inquiry to the following questions: "Isn't it true that you signed an agreement stating you would not be terminated for cause if you met certain conditions? You would instead be permitted to resign?" In subsequent calls that afternoon, Mr. Gitlin and Ms. Giordano continued to discuss the wording of questions and the fact that if Mr. Mueller disagreed, or on direct examination raised questions of the veracity of other witnesses, that would clearly open the door to further impeachment.

After co-counsel discussions immediately following adjournment of court for the day, State Plaintiffs concluded that so limiting the questioning would not sufficiently address the bias issues before the jury, and Mr. Gitlin informed Ms. Giordano that we could no longer agree to those terms at 5:45 p.m.

**Legal Argument**

The Supreme Court has made clear that evidence of bias is a core form of impeachment: "[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984). Here, the jury will be asked to evaluate testimony from a witness who now works for Defendants and is expected to criticize the quality of the product of his former employer, a direct competitor. Evidence bearing on Mr. Mueller's relationship with AEG/AXS is highly probative of his bias and credibility. Preventing Plaintiffs from exploring this issue would create a misleading impression of neutrality and materially impair the jury's ability to evaluate the reliability of the testimony.

While Plaintiffs understand the Court's directive regarding trial procedure, they acted in good faith based on the belief that they were not required to disclose documents that are solely to be used for impeachment purposes. Unlike in the criminal context, Rule 26(a)(1)(A) exempts from mandatory disclosure evidence that a party intends to use "solely for impeachment," and Rule 26(a)(3) similarly requires pretrial disclosure only of evidence a party "may present at trial other than solely for impeachment." Courts have acted in accord. Because "Rule 26's disclosure requirement does not apply to evidence offered 'solely for impeachment," Fed. R. Civ. P. 26(a)(3)(A)," the fact that

2

evidence was not produced before trial "would pose no bar to a party" using that evidence "for impeachment purposes." *Lomascolo v. Otto Oldsmobile-Cadillac, Inc.*, 253 F. Supp. 2d 354, 358, 361 (NDNY 2003) (permitting party to use two undisclosed documents solely for impeachment purposes).

For example, in *United States v. Victor Teicher & Co.*, the court squarely rejected the argument that impeachment material must be disclosed in advance of trial, explaining that "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." 726 F. Supp. 1424, 1443 (S.D.N.Y. 1989) (citing *United States v. Nixon*, 418 U.S. 683, 701 (1974)). *United States v. Victor Teicher & Co., L.P.*, 726 F. Supp. 1424 (S.D.N.Y. 1989). Indeed, this principle extends even to calling an undisclosed rebuttal witness. *Weiping Liu v. Indium Corp. of Am.*, 2019 WL 6310977, at *4 (N.D.N.Y. Nov. 25, 2019) (permitting party to call rebuttal witness, solely for impeachment purposes, that was not disclosed as a witness before trial); *Ling-Rong Chen v. City of Syracuse*, 385 F. App'x 41, 42 (2d Cir. 2010) (permitting testimony of undisclosed rebuttal witness "who testified only for the purpose of impeaching Chen's testimony").

That principle is reinforced by long-standing authority in this District holding that a party who elects to call a witness must accept that the witness's credibility may be tested through appropriate impeachment, even if the impeachment material was not previously produced in discovery. *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) ("[A]ttacking a witness' credibility with evidence of bias is the quintessentially appropriate topic for cross-examination") (cleaned up) (quoting *Bachenski v. Malnati*, 11 F.3d 1371, 1375 (7th Cir. 1993); *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986) ("[W]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *Douglas v. Owens*, 50 F.3d 1226 (3d Cir. 1995) ("While cross-examination in the criminal context assumes a heightened importance because of the constitutional implications inherent in confronting one's accuser pursuant to the Sixth Amendment, similar concerns—the jury must have sufficient information to make a discriminating appraisal of the witness's motives and bias—are implicated in a civil trial context as well.").

Further, Defendants' argument that Plaintiffs should be prevented from using this evidence because Mr. Mueller does not want to testify and be subject to cross examination on his bias turns the adversarial process on its head. Mr. Mueller should not be allowed to take the stand and provide a scripted version of events while Plaintiffs are impeded from challenging motives on cross examination.

Plaintiffs therefore respectfully submit that they should be permitted to use the information for appropriate impeachment purposes, subject to any reasonable limitations the Court may impose.

Respectfully submitted,

*/s/ Adam Gitlin*
Adam Gitlin