**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br>and TICKETMASTER L.L.C.,<br><br>    *Defendants.* | Case No. 1:24-cv-03973-AS |

**DECLARATION OF JENNIFER L. GIORDANO IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SANCTIONS**

I, Jennifer L. Giordano, am a partner at the law firm of Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004, and counsel for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. ("Defendants") in the above-captioned matter. I am a member in good standing of the Bar of the State of New York. I respectfully submit this declaration in support of Defendants' Motion for Sanctions. The information contained in this declaration is based upon my personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

1.      I had multiple conversations with Plaintiffs' counsel (Adam Gitlin) about whether Plaintiffs intended to question a Live Nation witness (the "Witness") about his departure from Anschutz Entertainment Group, Inc. ("AEG") in the days leading up to the Witness's testimony (which was originally scheduled for March 26, 2026).

2.      In the course of those conversations, Mr. Gitlin disclosed that Plaintiffs had received information from AEG about the circumstances of the Witness's departure as well as a letter, signed by AEG, which Plaintiffs intended to use to impeach the Witness during his

testimony if he did not agree to testify that AEG had terminated him for "misconduct."  Mr. Gitlin stated that AEG had recently provided this information to Plaintiffs, voluntarily, and that it was not something that had been produced in discovery in this case.  At that time, Live Nation did not have a copy of any such letter and Mr. Gitlin refused to send a copy.

3.      On the morning of March 26, 2026—the day the Witness was originally expected to testify—I met with Mr. Gitlin to discuss whether the parties could reach an agreement regarding the scope of the testimony Plaintiffs would elicit.  At that time, Mr. Gitlin showed me a copy of the letter but did not allow me to retain a copy.

4.      We ultimately reached an agreement on a specific question that the Witness could accurately answer, that Plaintiffs would not ask any other questions, and that Plaintiffs would not attempt to use the letter in Court.  Mr. Gitlin confirmed the agreement orally outside the courtroom and again by email that morning.  A true and correct copy of Mr. Gitlin's email is attached hereto as **Exhibit 1**.  For scheduling reasons, the Witness did not testify that day and was scheduled to testify the following day (March 27).  On the afternoon of March 26, Mr. Gitlin again re-confirmed the parties' agreement in a telephone call.

5.      On the evening of March 26, Mr. Gitlin sent me an email stating that, "On further consideration, and review of what I provided this morning, Plaintiffs' position is that these issues are fair game for cross regarding bias."  A true and correct copy of Mr. Gitlin's email is attached hereto as **Exhibit 2**.  I then immediately spoke with Mr. Gitlin, who confirmed that AEG had voluntarily provided him the letter, as well as additional details regarding the alleged circumstances of the Witness's departure, because AEG was helping Plaintiffs prepare to cross-examine the Witness.  I asked Mr. Gitlin for an explanation as to why an agreement that had been

confirmed in writing and re-confirmed just a few hours prior, was suddenly being withdrawn. His answer was that "other people" had encouraged him to abandon the agreement.

6.     Live Nation's counsel then emailed the Court to request a conference to discuss the issue that evening, and ten minutes later, Mr. Gitlin finally provided me with a copy of the letter he had shown me outside the courtroom that morning.

7.     The Court held a conference that night, and ordered Plaintiffs to provide Defendants with the full set of materials that AEG had provided to Plaintiffs. I received those materials from Mr. Gitlin after the conference with the Court. The contents of that package contained significantly more material than the single letter Mr. Gitlin had provided to me earlier that evening. On the conference call with the Court, the Court also ordered Plaintiffs to send to the Court (*ex parte*) the correspondence between AEG and Plaintiffs on this issue. Finally, the Court ordered the parties to meet and confer on these issues before submitting letters with their positions that evening.

8.     When I spoke with Mr. Gitlin on the Court-ordered meet and confer, he confirmed that AEG produced the information and documents about the Witness voluntarily and not pursuant to any subpoena or other formal litigation process. Also present on the call were counsel for Defendants Nicole Peles and additional counsel for Plaintiffs.

9.     The Witness testified on March 27, 2026.

10.     After the Witness completed his testimony, I read the email correspondence between AEG and Plaintiffs, which the Court had ordered Plaintiffs to produce. A true and correct copy of that email has been publicly filed on the docket. ECF No. 1375-1 at 5.

I declare under penalty of perjury that the foregoing is true and correct.

*     *     *

Executed on April 2, 2026 in Washington, D.C.

Respectfully submitted,

Jennifer L. Giordano