**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>　　　　　　*Plaintiffs,*<br><br>　　v.<br><br>LIVE NATION ENTERTAINMENT, INC.<br>and TICKETMASTER L.L.C.,<br><br>　　　　　　*Defendants.* | Case No.: 1:24-cv-03973(AS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

   I.    Plaintiffs Acted Appropriately And Should Not Be Sanctioned For Any Actions Of A Third Party ........................................................................................................................ 4

      A.   Plaintiffs acted in good faith in seeking to cross-examine the witness on a key issue of bias. ............................................................................................................................ 4

      B.   AEG's conduct should not be imputed to Plaintiffs.......................................... 8

   II.   The Sanctions Sought Here Would Not Cure Any Prejudice And Would Exceed The Bounds Of The Court's Inherent Sanctioning Authority ............................................. 9

      A.   Defendants suffered no harm because Plaintiffs examined the witness pursuant to the parties' agreement. ............................................................................................... 9

      B.   Defendants' sanctions request is unwarranted, violates the Federal Rules and exceeds the bounds of this Court's inherent sanctioning authority. ...................................11

CONCLUSION..................................................................................................................... 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...............................................................................................3, 11

*Great Am. Ins. Co. v. Horab*,
    309 F.2d 262 (8th Cir. 1962) .............................................................................8, 12

*Hansford v. Solano Cnty. Dep't of Health & Hum. Servs.*,
    No. 2:08-CV-02232-MCE, 2011 WL 3208151 (E.D. Cal. July 28, 2011)................................9

*Harris v. SCA Rest. Corp.*,
    2014 WL 996249 (E.D.N.Y. Mar. 14, 2014)...........................................................6

*Hershberger v. Ethicon Endo-Surgery, Inc.*,
    2012 WL 1113955 (S.D. W. Va. Mar. 30, 2012) ..............................................3, 11

*Hill v. NCAA*,
    7 Cal. 4th 1 (1994) ...........................................................................................9

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
    991 F.3d 361 (2d Cir. 2021)...............................................................................3

*Ling-Rong Chen v. City of Syracuse*,
    385 F. App'x 41 (2d Cir. 2010) ........................................................................5

*Lomascolo v. Otto Oldsmobile-Cadillac, Inc.*,
    253 F. Supp. 2d 354 (N.D.N.Y. 2003)................................................................5

*In re Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003)................................................................................7

*Ramsey v. Broy*,
    2010 WL 1251199 (S.D. Ill. Mar. 24, 2010) ....................................................6

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994)..................................................................................3

*Riley v. City of New York*,
    No. 10-CV-2513, 2015 WL 541346 (E.D.N.Y. Feb. 10, 2015) ....................6, 8, 12

*Riley v. Marriott Int'l, Inc.*,
    No. 12-CV-6242P, 2014 WL 4794657 (W.D.N.Y. Sept. 25, 2014).............3, 11, 12

*Rossbach v. Montefiore Med. Ctr.*,
   81 F.4th 124 (2d Cir. 2023) ...................................................................................2, 7

*United States v. Int'l Bus. Machines Corp.*,
   66 F.R.D. 215 (S.D.N.Y. 1974) .....................................................................................7

*United States v. Seltzer*,
   227 F.3d 36 (2d Cir. 2000)...........................................................................................2

*United States v. Victor Teicher & Co.*,
   726 F. Supp. 1424 (S.D.N.Y. 1998)..............................................................................5

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
   564 F.3d 110 (2d Cir. 2009)......................................................................................2, 3

*Yukos Cap. S.A.R.L. v. Feldman*,
   977 F.3d 216 (2d Cir. 2020)..........................................................................................3

**INTRODUCTION**

The Court should deny Defendants' Motion for Sanctions in its entirety. Defendants have seized upon a mid-trial evidentiary dispute to seek sweeping, prejudicial relief to which they are not entitled and for which there is no legal basis. Defendants' motion is built on conjecture, not fact; on indignation, not law. The actual facts show that Plaintiffs acted in good faith, within the bounds of the Federal Rules, that Defendants suffered no cognizable prejudice, and that the extraordinary sanctions Defendants seek are both unwarranted and improper.

***First***, Defendants accuse Plaintiffs of the extremely serious charge of "witness tampering" because Plaintiffs sought to question a witness about his bias against a former employer whose product he took the stand to criticize. But Defendants' theory that Plaintiffs planned to "deter" or "influence" witness testimony is false. It cannot be squared with the undisputed fact that it was *Defendants* who approached *Plaintiffs* about the circumstances of the witness's departure from AEG, not the other way around, and Plaintiffs did not do anything other than properly seek information about witness bias from a third party. Defendants' initial complaint to this Court was that Plaintiffs improperly *failed to disclose* this information. Now, they have reversed course, and argue that Plaintiffs wanted to disclose the information to deter the witness from testifying when, in fact, Plaintiffs had no such intention.

Further, and as is clear from their motion, Defendants' real complaint is with AEG's conduct in disclosing the material, not Plaintiffs in receiving it. Defendants cannot impute AEG's conduct to Plaintiffs to justify their overreach in requesting sanctions against Plaintiffs—not AEG. But, as the Court has already noted, Plaintiffs were entitled to bring out the witness's bias using the circumstances of his departure, and there was nothing wrong with asking third party AEG for anything that might be helpful. Whether AEG breached any employment agreement or California law has not been adjudicated, but regardless, Plaintiffs cannot be held responsible for any claimed

1

breach as there is no evidence to suggest that Plaintiffs had any reason to believe that AEG was violating any legal obligation in providing the information to Plaintiffs. Whatever the providence of *AEG's* conduct, there is no basis for Defendants to seek sanctions against *Plaintiffs*.

***Second***, the sanctions Defendants seek are inappropriate and draconian.  Defendants were not at all prejudiced by Plaintiffs' use of the information received: The witness did testify, was subject to limited cross-examination on the topic of his departure from AEG that Defendants themselves agreed to, and no other information contained in the documents, nor the documents themselves, were revealed to the jury. Any theoretical prejudice they might have suffered was avoided when the Court instructed Plaintiffs to provide the information they had received to Defendants and held Plaintiffs to a narrow use of the materials on cross-examination.  This was all resolved prior to the witness testifying.

The lack of prejudice here makes the requested sanctions Defendants seek all the more outrageous.  The sanctions they request involve admitting hearsay documents for their truth, reversing the Court's evidentiary rulings, and instructing the jury to accept as fact that Plaintiffs engaged in witness tampering.  These outcomes are flatly incompatible with the Federal Rules and far exceed any remedial purpose.

Defendants have not met any of the prerequisites required for the Court to grant their motion, and the sanctions they seek are untethered to any reasonable view of what has transpired in this case.  The motion should be denied.

## LEGAL STANDARD

A court may impose sanctions under its inherent authority only upon "an explicit finding of bad faith." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *United States v. Seltzer*, 227 F.3d 36, 41–442 (2d Cir. 2000)); *see also Wolters Kluwer Fin. Servs., Inc. v.*

*Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("Imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith.."). "A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings," *id.*, and must be proved by "clear and convincing evidence," *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). Mere negligence or even recklessness is insufficient. *Rossbach*, 81 F.4th at 141.

If Defendants meet their burden, a court must exercise "restraint and discretion" to ensure that any sanction is proportionate to the misconduct and designed to cure the resulting prejudice to the party. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (citing *Chambers* as "recognizing that the severity of the sanction must match the seriousness of the misconduct"); *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994) ("[A] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified.").

Further, a court's inherent authority does not permit it to admit otherwise inadmissible evidence—including hearsay—as a sanction. *See Hershberger v. Ethicon Endo-Surgery, Inc.*, 2012 WL 1113955, at *5 (S.D. W. Va. Mar. 30, 2012). And an adverse inference instruction is a particularly severe sanction that should be "reserved for egregious conduct or for situations in which the loss of relevant evidence has so prejudiced the moving party that . . . an adverse inference is necessary to restore the moving party to its pre-loss position." *Riley v. Marriott Int'l, Inc.*, 2014 WL 4794657, at *7 (W.D.N.Y. Sept. 25, 2014) (collecting cases).

3

## ARGUMENT

**I.    Plaintiffs Acted Appropriately And Should Not Be Sanctioned For Any Actions Of A Third Party**

**A.    Plaintiffs acted in good faith in seeking to cross-examine the witness on a key issue of bias.**

Defendants accuse Plaintiffs of acting in "bad faith" in order to "intimidate" the witness and to "deter or influence" the witness's testimony. Mem. 13. These are serious allegations that are completely unjustified and contrary to the facts. Defendants' desperation to win this case is not an adequate excuse for their making such outrageous allegations without any basis to do so. None of Plaintiffs' conduct, including their decision not to provide Defendants with the information they planned to use as the basis for certain cross-examination, suggests that Plaintiffs acted wrongfully or intended to do anything other than to cross the witness on the relevant question of his bias on the main topic of his testimony.

First, and fundamentally, the facts surrounding why the dispute arose with the witness's cross examination are incompatible with Defendants' false claim that Plaintiffs attempted to tamper with the witness or his testimony. When Defendants first raised the issue of the witness's cross-examination with the Court on March 26, their chief complaint was that Plaintiffs refused to disclose documents to Defendants that they intended to use on cross-examination. *See* March 26, 2026, Ltr. From A. Pfeiffer at 3-4. That is because Plaintiffs had planned to use the documents in good faith only for impeachment if the witness denied the circumstances of his departure, which would support a bias claim. Neither the Federal Rules nor the Pretrial Order required that such impeachment documents be disclosed in advance. Had Defendants' counsel not approached Plaintiffs to ask whether they would be asking questions about the circumstances of his departure, an obvious subject for cross-examination, the witness would have testified and Plaintiffs would have proceeded to cross-examine him without any possible claim that Plaintiffs were seeking to

4

use the information to deter the witness from testifying. Defendants anticipated that Plaintiffs would ask questions on this topic and contacted Mr. Gitlin to discuss it. These facts flatly contradict any claim that Plaintiffs were trying to use the information disclosed by AEG to try to prevent a witness from testifying, or to somehow otherwise influence his testimony.[1]

As the Court noted, there is nothing inherently improper about AEG, a competitor of Defendant with an interest in the outcome of the litigation, providing Plaintiffs with information helpful to Plaintiffs' case in response to a hallway conversation. Trial Tr. 3706:18–3707:6. Despite Defendants' wild accusations to the contrary (Mem. 8), there is no evidence that Plaintiffs had any reason to believe that AEG would provide information that it was under any legal obligation not to disclose. Indeed, Plaintiffs agreed to maintain confidentiality of the information and to notify AEG before any public disclosure. Plaintiffs never intended to show the documents publicly and thus had not reached out to AEG (or to Defendants) to discuss confidentiality.

Contrary to Defendants' argument, (Mem. 10, 12-13), Plaintiffs did not circumvent any disclosure requirement. As Plaintiffs have previously stated in our March 26 submission, in civil cases, Rule 26(a)(1)(A) exempts from mandatory disclosure evidence that a party intends to use "solely for impeachment," and Rule 26(a)(3) similarly requires pretrial disclosure only of evidence a party "may present at trial other than solely for impeachment."[2] Nor did the stipulated Joint

---

[1] Defendants' argument that "Plaintiffs threatened to use the information AEG provided them . . . with the Witness unless the Witness agreed to testify that he was terminated for "misconduct,'" Mem. 1, completely misrepresents the conversation between the parties. As the Court knows, the parties attempted to negotiate the proper scope of cross-examination. Plaintiffs sought to avoid what could be perceived as prejudicial use of the "sensitive personal information" (Mem. , and thus offered to refer to it merely as misconduct, but reserved the right to further impeach the witness depending on his answer.

[2] *See* March 26, 2026, Ltr. From A. Gitlin, Dkt No. 1375-2, at 2-3 (citing *Lomascolo v. Otto Oldsmobile-Cadillac, Inc.*, 253 F. Supp. 2d 354, 358, 361 (N.D.N.Y. 2003) (permitting party to use two undisclosed documents solely for impeachment purposes)); *United States v. Victor Teicher & Co.*, 726 F. Supp. 1424, 1443 (S.D.N.Y. 1998); *Ling-Rong Chen v. City of Syracuse*, 385 F. App'x

Pretrial Order contain any requirement for disclosure of documents solely for purposes of impeachment. JPTO, Dkt. 1031, ¶ 42 ("Exhibits to be used solely for impeachment purposes need not be included in the parties' lists of trial exhibits."). And Defendants' citations to the Professional Rules of Conduct (Mem. 10, 12) do not create an obligation to produce information that the law, the Court, and the parties' stipulations do not otherwise require. *See* N.Y. State Bar Association Rule 3.4(a)(1) (dealing with evidence that the lawyer "has a legal obligation to reveal or produce"); D.C. Rules of Professional Conduct 3.4(a), (f) (dealing with obstruction of evidence and requests to other persons to "refrain" from providing evidence). Indeed, Defendants and Plaintiffs alike have been using documents for impeachment throughout the trial without any prior disclosure to the other side.

Defendants for the first time rely on language in an ESI Order, (Mem. 10), which governed fact discovery that ended on June 27, 2025. *See* ESI Order, Dkt. 249. That Order encompasses formal discovery requests via subpoena or other means, it does not encompass responses to an informal request at trial for information. *Id.* ¶ 1(a). Nevertheless, that ESI Order requires production to the other side within 3 business days, (*id.* ¶ 6 (p)), which is ultimately what occurred. Plaintiffs' counsel received the information from AEG on March 24, 2026, and Defendants received the materials on March 26, 2026. *See* March 26, 2026, Ltr. From A. Gitlin, Dkt No. 1375-2, at 2-3.[3]

---

41, 42 (2d Cir. 2010) (permitting testimony of undisclosed rebuttal witness "who testified only for the purpose of impeaching Chen's testimony.")).

[3] Defendants' counsel contacted Mr. Gitlin the evening of March 25, 2026 to ask if Plaintiffs planned to go into the details of the witness's departure from AEG, at which point Plaintiffs disclosed the termination notice and separation agreement with the company, and the following morning showed Defendants' counsel a paper copy of the termination notice. On March 26, 2026, Defendants contacted the Court with the dispute over the proper cross examination, at which point the Court instructed the Plaintiffs provide the documents to Defendants, which they did.

None of these actions come close to being improper, let alone to falling under the type of "extremely serious misconduct" that warrants sanctions.  Mem. 17 (quoting *Harris v. SCA Rest. Corp.*, 2014 WL 996249, at \*4 (E.D.N.Y. Mar. 14, 2014)).  Unlike in the cases Defendants cite, there is no claim that Plaintiffs have attempted bribery (*see Ramsey v. Broy*, 2010 WL 1251199, at \*4 (S.D. Ill. Mar. 24, 2010)), nor solicitation of completely fabricated testimony (*id.*; *Riley v. City of New York*, No. 10-CV-2513, 2015 WL 541346 (E.D.N.Y. Feb. 10, 2015)). They do not employ the witness and have not threatened to end his employment if he came forward with the truth of their wrongdoing. *Harris*, 2014 WL 996249, at \*4.  Instead, Plaintiffs presented truthful evidence that a witness the *Defendants* called to testify as to the comparative quality of AEG and AXS with Live Nation and Ticketmaster may be "biased by personal motives." *United States v. Int'l Bus. Machines Corp.,* 66 F.R.D. 215, 218–19 (S.D.N.Y. 1974) (noting "the nature and the extent of a witness's motives and his interest in the outcome of the case bear importantly upon an evaluation of the witness' objectivity, his bias, and the weight to be accorded his testimony"). This is proper and relevant cross-examination, as the Court noted on the March 26, 2026, conference with the parties.

Plaintiffs' purpose was not to intimidate or even embarrass; it was to expose the witness's potential bias to the jury.  A witness's reluctance to testify because he would be subject to cross-examination is not witness intimidation; it is fundamental to the adversarial process. And Plaintiffs did not take any actions to try to deter the witness from testifying. To the contrary, had Defendants not raised the issue, Plaintiffs' intent was to use the information for impeachment at trial without any prior disclosure.

Plaintiffs did not contact the witness, did not threaten anyone, did not solicit false testimony, and did not bribe anyone.  Plaintiffs were acting pursuant to the Federal Rules, the

JPTO, and ultimately the Court's orders, and there is no basis on which to find they acted in bad faith. *Rossbach*, 81 F.4th at 141.[4]

### B.    AEG's conduct should not be imputed to Plaintiffs.

Defendants go to great lengths to attribute AEG's allegedly improper conduct in violating an obligation not to disclose to Plaintiffs, but there is no basis to support that accusation. Defendants' complaints of misconduct implicate AEG, not Plaintiffs. *E.g.*, Mem. 8 ("AEG had no lawful basis . . ."); *id* at. 11 (AEG "disclose[d], outside discovery, . . . materials . . . which they expressly stated might dissuade the Witness from testifying."); *see generally* Mem. 8-12.  Plaintiffs did not "hatch a plan" with AEG to dissuade the witness from testifying, and the Court did not "correctly note" that any such plan existed. Mem. 12.

Even accepting Defendants' characterization of AEG's conduct as being improper (which we understand AEG strong denies), Defendants seek to sanction *Plaintiffs* for purported actions taken by a non-party—a result for which Defendants cite no authority.  Sanctioning Plaintiffs for the actions of a third party over which they have no control would be against the case law finding that an agency relationship or conspiracy is necessary for imposing sanctions on a party.  *Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 123 (2d Cir. 2017) (reversing sanctions for late production of documents because "the fault for that may well lie with the plaintiff's prior counsel— not with [current counsel or] the plaintiff itself"); *accord Riley*, 2015 WL 541346, at *9 (requiring "evidence suggesting [p]laintiff's involvement in wrongdoing" before plaintiff  can be held

---

[4] Defendants argue only "bad faith" and extreme witness misconduct as a basis to impose sanctions. Mem. 13.  They therefore concede that there is no evidence that Plaintiffs' counsel has "negligently or recklessly failed to perform his responsibilities as an officer of the court," and do not seek sanctions on that basis. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003). Nevertheless, Plaintiffs did not fail to perform their responsibilities as officers of the court, for the same reasons stated above.

responsible for fiancée "fraudulently induc[ing]" witness to sign [an] eyewitness statement");

*Great Am. Ins. Co. v. Horab*, 309 F.2d 262, 264 (8th Cir. 1962) (Evidence that a litigant *or agent*

attempted to influence or suppress a witness is receivable as an admission or indication that the

litigant's case is weak, unfounded, false, or fraudulent).  Plaintiffs' alleged "involvement in the

wrongdoing" is non-existent here.

Moreover, this Court has not found that AEG acted in bad faith, and no other court has

adjudicated the issues under California law that Defendants' raise in their Motion for Sanctions.[5]

Mem. 8-9 (accusing AEG of breaking California law).  But in all events, AEG, not Plaintiffs, is

the party to respond to those allegations.  And, whatever AEG's motivations may have been, those

motivations were neither shared by nor acted upon by Plaintiffs.  There is no basis in law or fact

for imputing any allegedly wrongful conduct or motives by AEG to Plaintiffs, and no basis for the

Court to impose any sanctions against Plaintiffs for any allegedly wrongful conduct engaged in by

AEG.

## II.     The Sanctions Sought Here Would Not Cure Any Prejudice And Would Exceed The Bounds Of The Court's Inherent Sanctioning Authority

### A.     Defendants suffered no harm because Plaintiffs examined the witness

---

[5] Defendants do not point to any legal standing to bring any claims under California law on behalf of the witness, and any adjudication of that issue would have to take place in separate proceeding from this litigation.  In any event, California Constitution's privacy right is not absolute. It is subject to a balancing test that weighs the privacy interest against "competing or countervailing" interests, and it is not violated "if the invasion is justified by a competing interest." *Hill v. NCAA*, 7 Cal. 4th 1, 37-38 (1994). One such "compelling public interest" for the State of California, which Defendants also accuse of wrongdoing (Mem. 9), would be "the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings." *Hansford v. Solano Cnty. Dep't of Health & Hum. Servs.*, No. 8-CV-02232, 2011 WL 3208151, at *2 (E.D. Cal. July 28, 2011) (citation modified).

**pursuant to the parties' agreement.**

There is no harm to Defendants from Plaintiffs' use of information regarding the circumstances of the witness's departure from AEG because, as Defendants must concede, they had agreed to the limited cross-examination that Plaintiffs engaged in on this issue. Mem. 1-2, 6; Giordano Decl. ¶ 4.

The Court enforced that agreement.  The Court ruled that Plaintiffs would be held to the agreement they made with Defendants—that Plaintiffs could ask a specific question that the witness could accurately answer, that Plaintiffs would not ask any other questions regarding the witness's departure, and that Plaintiffs would not attempt to use the materials received from AEG in court.  Trial Tr. 3039:22-3041:6. That is exactly what happened.

Pursuant to the Court's order, the witness testified, and Plaintiffs adhered to the agreement as ordered by the Court. The witness answered only limited, narrow cross-examination questions on the topic of his departure.  Trial Tr. 3079:10-22.  Defendants lodged no objection during the witness's testimony to any of the questions Plaintiffs asked on that issue.  *Id.*  Defendants do not credibly point to any evidence or testimony that they believe would have come in, or would have come in differently, if not for Plaintiffs' alleged actions. Mem. 15; *see* page 12, *infra*.

Defendants instead claim that Plaintiffs "attempted to hide through their malfeasance." Mem. 15.  But Defendants do not offer any facts supporting such an accusation with respect to those documents, and simultaneously concede that the real reason they are seeking admission of these documents is because Defendants want the jury to read them rather than rely on testimony alone.  To the extent that Defendants argue that they "did not have the opportunity to question AEG's witnesses (Mr. Marciano and Mr. Perez) about the extent of their alignment with Plaintiffs' interests (Mem. 15), AEG's "interest in assisting Plaintiffs in this case" was clear "from the beginning," and Defendants had every opportunity to cross Mr. Marciano and Mr. Perez on these

10

issues. Trial Tr. 3706:22-25, 3705:1-6 (the Court and AEG counsel confirming that AEG had made its interests "clear"). There is thus no harm to cure.

**B.      Defendants' sanctions request is unwarranted, violates the Federal Rules and exceeds the bounds of this Court's inherent sanctioning authority.**

There is no factual basis to sanction Plaintiffs.  But even if there were, Defendants' requested sanctions are not only disproportionate to the alleged wrong but completely untethered from what transpired and any minimal harm they could have conceivably suffered.

Defendants are seeking draconian sanctions that are meant to tip the balance of the case in their favor. They seek to: (1) admit into evidence, for the truth of the matter asserted, certain AEG documents relating to the quality of AXS as compared to Ticketmaster—documents they did not admit at trial; (2) instruct the jury that other documents previously admitted for a limited purpose can now be considered for their truth, thereby reversing sound decisions regarding hearsay; and (3) request that the Court not only endorse their conspiracy theory about Plaintiffs "coordinating" with AEG to "improperly attempt to dissuade a witness from testifying or influence his testimony," but instruct the jury as though it were established fact. Mem. 15.  None of these sanctions are proportionate or designed to cure a harm identified by Defendants, making them wholly inappropriate. *See Chambers*, 501 U.S. at 43.

Defendants seek sanctions pursuant to the court's inherent powers to "police the conduct of attorneys as officers of the court" and request sanctions, seemingly, for "abuse of the judicial process." Mem. 13.  But that authority does not permit the type of sanctions sought here.

Crucially, a court's inherent authority does not permit it to circumvent the Federal Rules of Evidence. *Hershberger*, 2012 WL 1113955, at *5 ("[E]ven if [the defendant] did improperly delay in disclosing evidence . . . admitting otherwise inadmissible evidence, as a sanction or otherwise, is improper.").  Admitting evidence "for the truth of the matter asserted" that "that have not yet

11

been offered in evidence" and that are plainly hearsay (Mem. 14) would be an abuse of the court's discretion. Likewise, reversing numerous prior rulings on already-admitted hearsay documents that were admitted for a limited purpose would be improper.

Similarly, an instruction that directs the jury to accept contested factual assertions as true, rather than permitting the jury to draw its own inferences, exceeds the bounds of the court's inherent authority. There is no "egregious conduct" nor any showing that the "loss of relevant evidence has so prejudiced the moving party [such] that . . . an adverse inference is necessary to restore the moving party to its pre-loss position." *Riley*, 2014 WL 4794657, at \*7 (collecting cases).

Most importantly, Defendants' requested instruction would be plainly false. There has been no nefarious "close coordination" between Plaintiffs and any alleged wrongdoing of AEG. In the absence of such evidence, instructing that "the jury may find that AEG and Plaintiffs feared that if all the facts concerning AXS quality came to light it would indicate that AXS was never of comparable quality to Ticketmaster" would be wildly inappropriate and highly prejudicial to Plaintiffs. Mem. 16. This request, which would taint the entire trial, has no support in the facts or the law.

The cases Defendants cite do not say otherwise, as each case's sanction was tied directly to the misconduct found by the court. In *Horab*, the court found no abuse of discretion in *excluding* the evidence of witness interference because the witness "did appear in response to the subpoena" despite the alleged interference—just as the witness appeared and testified here. *Id.* at 265. In *Riley*, the court permitted an adverse inference only after making an affirmative finding that the plaintiff had "corruptly persuaded" a witness to provide *false* testimony, resulting in fabricated eyewitness statements. 2015 WL 541346, at \*12.

12

In sum, Defendants provide no basis for sanctions against Plaintiffs at all, much less the overreaching sanctions that they seek here. Instead, this sanctions motion is just the latest iteration of Defendants' endless litigation gamesmanship as they desperately seek to avoid a decision on the merits by the jury.  This Court should summarily deny their request.

## CONCLUSION

For all of the reasons expressed above, the Court should deny Defendants' motion for sanctions.

Dated April 5, 2026

Respectfully Submitted,

/s/ Jeffrey L. Kessler

Jeffrey L. Kessler
Eva W. Cole
Johanna Rae Hudgens
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
ewcole@winston.com
jhudgens@winston.com

Jeanifer E. Parsigian (*pro hac vice*)
**WINSTON & STRAWN LLP**
101 California Street, 21st Floor
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com

Joshua Hafenbrack (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com

*Counsel for Plaintiff State of New York*

13

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Brent Nakamura
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

/s/ Nicole Demers
Victoria Maria Orton Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: nicole.demers@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Adam Gitlin
Adam Gitlin (admitted *pro hac vice*)
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Jesse Moore
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

/s/ Christopher Teters
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division

14

Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

/s/ *Mario Guadamud*
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

/s/ *Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ *Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ *LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division

Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ *Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ *Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ *Zachary Frish*
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

/s/ *Andrew F. Esoldi*
Andrew F. Esoldi
Deputy Attorney General
Division of Law

15

Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

*/s/ Evan Crocker*
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General, Division
Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

*/s/ Jonathan H. Hatch*
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North
Carolina*

*/s/ Sarah Mader*
Sarah Mader (admitted *pro hac vice)*
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy
Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of
Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

16

/s/ Jared Q. Libet
Jared Q. Libet (admitted pro hac vice)
Assistant Deputy Attorney General
Office of the Attorney General of South
Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
Attorney for Plaintiff State of South
Carolina


/s/ Hamilton Millwee
Hamilton Millwee (admitted pro hac vice)
Assistant Attorney General
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
Attorney for Plaintiff State of Tennessee


/s/ Diamante Smith
Diamante Smith (admitted pro hac vice)
Assistant Attorney General, Antitrust
Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
Attorney for Plaintiff State of Texas


/s/ Marie W.L. Martin
Marie W.L. Martin (admitted pro hac vice)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
Attorney for Plaintiff State of Utah

/s/ Sarah L. J. Aceves
Sarah L. J. Aceves (admitted pro hac vice)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
Attorney for Plaintiff State of Vermont


/s/ David C. Smith
David C. Smith (admitted pro hac vice)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
Attorney for Plaintiff Commonwealth of
Virginia


/s/ Ashley A. Locke
Ashley A. Locke (admitted pro hac vice)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
Attorney for Plaintiff State of Washington


/s/ Douglas L. Davis
Douglas L. Davis (admitted pro hac vice)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
Attorney for Plaintiff State of West Virginia

17

*/s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

*/s/ William T. Young*
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*

18

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)**

I hereby certify that the foregoing Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' Motion to Strike the Testimony of Dr. Rosa M. Abrantes-Metz complies with the wordcount limitation in Local Civil Rule 7.1(c). According to the word processing software used to prepare this document, the memorandum contains 4,110 words, excluding the parts of the documents exempted by Local Civil Rule 7.1(c).

Dated: April 5, 2026

*/s/ Jeffrey L. Kessler*

Jeffrey L. Kessler