## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br>and TICKETMASTER L.L.C,<br><br>    *Defendants.* | Case No. 1:24-cv-03973-AS |

## NON-PARTY ANSCHUTZ ENTERTAINMENT GROUP, INC.'S RESPONSE TO
## <u>DEFENDANTS' MOTION FOR SANCTIONS</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 9

    I.      Neither AEG Nor Plaintiffs Had an Obligation to Disclose to Defendants Documents That Would Be Used Solely for Impeachment. ................................. 10

    II.    AEG's Disclosure of Documents to Plaintiffs Did Not Violate California Law.................................................................................................................... 12

    III.   AEG's Disclosure of Documents to Plaintiffs Did Not Violate Mr. Mueller's Separation Agreement. ............................................................................. 14

    IV.   AEG's Disclosure of Documents to Plaintiffs Did Not Violate the Rules of Professional Conduct. ................................................................................. 15

    V.    AEG's Disclosure of Documents to Plaintiffs Did Not Violate the Federal Witness Tampering Statute. .................................................................. 18

    VI.   Defendants' Baseless Attacks on AEG Counsel are Improper............................. 19

CONCLUSION................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bauer v. Hill*,
No. 822-cv-868, 2023 WL 6373857 (C.D. Cal. Aug. 4, 2023) ...............................................18

*Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*,
253 F.R.D. 521 (C.D. Cal. 2008) ...........................................................................................15

*Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*,
389 F.3d 1339 (11th Cir. 2004) ..............................................................................................11

*Bender v. Williamsport Area Sch. Dist.*,
4475 U.S. 534 (1986) ...............................................................................................................13

*Bolin v. Davis*,
No. 1:17-cv-985, 2018 WL 2010435 (E.D. Cal. Apr. 30, 2018) ............................................12

*California v. Green*,
399 U.S. 149 (1970) ....................................................................................................................1

*Chambers v. NASCO, Inc..*,
501 U.S. 32 (1991) ...................................................................................................................19

*Classic Soft Trim, Inc. v. Albert*,
No. 618-cv-1237, 2020 WL 13824059 (M.D. Fla. Dec. 2, 2020) ...........................................11

*Ehrich v. Binghamton City Sch. Dist.*,
210 F.R.D. 17 (N.D.N.Y. 2002) ..............................................................................................13

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) .................................................................................................................20

*Goro v. Flowers Foods, Inc.*,
334 F.R.D. 275 (S.D. Cal. 2018) .............................................................................................13

*Hanna v. Plumer*,
380 U.S. 460 (1965) .................................................................................................................12

*Holland-Hewitt v. Allstate Life Ins. Co.*,
343 F.R.D. 154 (E.D. Cal. 2022) ............................................................................................12

*Jones v. United States*,
263 A.3d 445 (D.C. 2021) .......................................................................................................11

*Khoday v. Symantec Corp.*,
   No. 11-cv-180, 2013 WL 12140487 (D. Minn. Oct. 8, 2013)..................................................14

*Estate of Lopez v. City of San Diego*,
   No. 13-cv-2240, 2014 WL 12675268 (S.D. Cal. Aug. 25, 2014)............................................12

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*,
   No. 3:18-cv-07689, 2022 WL 1687156 (N.D. Cal. May 26, 2022).........................................15

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986)..................................................................................................19

*Peng v. Nw. Mut. Life Ins. Co.*,
   No. 17-cv-1760, 2017 WL 3007030 (N.D. Cal. July 14, 2017) ..............................................14

*Pennhurst State Sch. & Hosp. v. Halderman*,
   466 U.S. 89 (1984)...................................................................................................................13

*Rodgers v. Cassin*,
   No. 2:24-cv-6111, 2024 WL 4329086 (C.D. Cal. Aug. 26, 2024) ..........................................12

*Seneca v. New Hope Borough*,
   No. CIV.A. 01-2307, 2002 WL 321663 (E.D. Pa. Feb. 27, 2002) ..........................................12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010).................................................................................................................12

*Sharma v. City of Redding*,
   No. 2:17-cv-487, 2017 WL 2972263 (E.D. Cal. July 12, 2017)..............................................12

*Shvartser v. Lekser*,
   270 F. Supp. 3d 96 (D.D.C. 2017) ..........................................................................................15

*United States et al. v. Ticketmaster Ent. Inc. et al.*,
   1:10-cv-00139 (D.D.C. Jan. 8, 2020).........................................................................................3

*United States v. Abel*,
   469 U.S. 45 (1984)...................................................................................................................10

*United States v. Morissett*,
   49 F. App'x 334 (2d Cir. 2002) ...............................................................................................19

*United States v. Robinson*,
   530 F.2d 1076 (D.C. Cir. 1976)...............................................................................................10

*United States v. Vitagliano*,
   86 F. App'x 470 (2d Cir. 2004) ...............................................................................................19

iii

*United States v. White*,
   10-cr-516, 2011 WL 2207566 (S.D.N.Y. May 31, 2011).........................................................18

*In re Zyprexa Products Liab. Litig.*,
   254 F.R.D. 50 (E.D.N.Y. 2008).............................................................................................13

**Statutes**

18 U.S.C. § 1512(b) .....................................................................................................................18

18 U.S.C. § 1512(e) .................................................................................................................2, 19

California Code of Civil Procedure Section 1985.6 ....................................................................12

**Other Authorities**

Federal Rule of Civil Procedure 26 ...............................................................................2, 9, 11, 16

Federal Rules of Evidence Rule 607.......................................................................................2, 9, 10

Roy D. Simon Jr., *Simon's N.Y. Rules of Pro. Conduct Annotated* § 4.4:2 (2024
   ed.) ......................................................................................................................................16

N.Y. Rules of Prof. Conduct Rule 3.1 ........................................................................................20

N.Y. Rules of Prof. Conduct Rule 3.4 .....................................................................................16, 17

N.Y. Rules of Prof. Conduct Rule 4.4 .....................................................................................16, 17

U.S. Const. amend. XI .................................................................................................................13

**INTRODUCTION**

Anschutz Entertainment Group, Inc. ("AEG") is neither a party to this case nor a target of Plaintiffs' requested sanctions and therefore is not in a position to address the particular sanctions Defendants seek against Plaintiffs. However, AEG writes separately to address counsel for Defendants' flagrant misrepresentations to the Court about both the facts and law regarding AEG's conduct. While Defendants feign surprise at AEG's "alignment with Plaintiffs," Memorandum of Law in Support of Motion for Sanctions ("Mot."), Dkt. No. 1378 at 15, Defendants admit they have known—*for 16 years*—that AEG has had serious concerns about Live Nation's and Ticketmaster's unlawful conduct that has blocked AEG from both ticketing venues and promoting shows in amphitheaters. Mot. at 4.

The purpose of the trial pending before the Court is to provide the jury with the information necessary to evaluate the effects of Live Nation's conduct on competition and consumers. Parties test the truthfulness of testimony about those effects through cross-examination and impeachment of witnesses. *California v. Green*, 399 U.S. 149, 158 (1970) (Cross-examination is the "greatest legal engine ever invented for the discovery of truth.") (citation and quotation marks omitted). Defendants have successfully prevented the jury from hearing complete information regarding Mr. Mueller's departure from AEG that would appropriately frame their view of the truth of his testimony. But Defendants' motion now goes even further and seeks to inject *abject falsehood* into the record that would taint the jury's conclusions in this matter, namely, an instruction from the Court that Plaintiffs "improperly attempted to dissuade" Mr. Mueller from testifying. Mot. at 4. That assertion—and the repeated (and baseless) assertion that AEG's counsel *lied to the Court*— are not only false, but breaches of Defense counsel's own ethical obligations. Defendants' egregious misrepresentations to the Court do not end there.

*First*, neither AEG nor Plaintiffs had any obligation to produce the documents in question to Defendants. Mot. at 12. Under Rule 607 of the Federal Rules of Evidence, a party may impeach a witness and "attack the witness's credibility," and under Rule 26(a)(3)(A) of the Federal Rules of Civil Procedure, the party has no obligation to disclose such evidence used "solely for impeachment." Live Nation's counsel could have (but never did) ask AEG for the documents, and their failure to do so does not make AEG's production of the documents to Plaintiffs (or Plaintiffs' use of the documents for impeachment) inappropriate.

*Second*, Defendants' reliance on the California Code of Civil Procedure and the California Constitution is doubly wrong. Neither applies in this federal court nor prohibits the disclosure of the documents regarding Mr. Mueller's departure to the Plaintiffs.

*Third*, the confidentiality provision in Mr. Mueller's separation agreement applies only to the agreement—not the other documents produced—and expressly contemplates disclosure "as necessary to fulfill standard or legally required corporate reporting or disclosure requirements . . . to the extent necessary to enforce the Agreement . . . or as otherwise required by law," with no requirement that a subpoena specifically issue for the documents.

*Fourth*, the Rules of Professional Conduct do not prohibit the disclosure (or any other conduct) here because, among other reasons, its clear purpose was impeachment, expressly allowed under the Federal Rules, and AEG obtained the evidence lawfully.

*Fifth*, the notion that a non-party producing documents used *solely* for impeachment at the request of a law enforcement agency to ensure that Mr. Mueller testifies truthfully violates the federal witness tampering statute is both absurd and reckless; the statute expressly *excludes* conduct the aim of which is to "encourage, induce, or cause the other person to testify truthfully." 18 U.S.C. § 1512(e).

2

***

At bottom, it is not "tampering" with a witness to impeach them with documents provided by a non-party. Juries must determine credibility and must have the tools necessary to make that assessment. The irony here is profound. The Court has heard witness after witness explain how Live Nation uses the threat of retaliation to entrench its Ticketmaster monopoly. Yet AEG has withstood these threats of retaliation, and its executives have testified openly about Defendants' conduct. Defendants' counsel apparently believes it is "preposterous" that AEG would not sink to Live Nation's level of threats and retaliation. Mot. at 3. Defendants' disbelief that AEG intended only to ensure that Mr. Mueller did not lie on the stand is a telling admission of how low Live Nation is willing to stoop. The Court should reject Defendants' effort to falsely accuse and intimidate AEG and its counsel, and its effort to inject falsehoods into a jury trial under the guise of a remedy or sanction.

## BACKGROUND

There is one issue on which counsel for AEG and Defendants agree: the timeline of events is important context for this motion. An accurate timeline utterly disproves that either AEG or Plaintiffs "improperly attempted to dissuade" Mr. Mueller from testifying.

AEG's history of responding to government information requests regarding Defendants' anticompetitive conduct is almost as long as Defendants' history of engaging in it. Defendants entered into a consent decree with the United States in 2010. Dkt. No. 257 ¶ 65. They violated it. Dkt. No. 201-1 at Ex. E (Pls. Mot. To Modify Final J. & Enter Am. Final J. *United States et al. v. Ticketmaster Ent. Inc. et al.*, 1:10-cv-00139 (D.D.C. Jan. 8, 2020)). As a result, the consent decree was extended an additional five years. Dkt. No. 257 ¶ 66. Defendants apparently violated it again. *Id*. at ¶ 67. This lawsuit ensued, in which Plaintiffs allege that, among other things, Live Nation protected its Ticketmaster monopoly by threatening venues and retaliating against them by

3

withholding concert content if they use rival ticketing companies. Ample evidence supporting these allegations has been presented at trial.

Before Plaintiffs filed this case, AEG produced hundreds of thousands of documents and gigabytes of data to the Antitrust Division and State Attorneys General in response to Civil Investigative Demands. Bernick Decl. ¶ 1. In multiple calls and meetings, AEG employees answered questions from the Antitrust Division and State Attorneys General regarding the ticketing and promotions businesses, as well as the effect of Live Nation's and Ticketmaster's conduct on the ability of AEG and AXS to compete. *Id*. AEG also submitted written advocacy that is part of the discovery record in this case, including a September 19, 2023, white paper explaining Live Nation's unlawful conduct. *Id*.; DX-0899.

After Plaintiffs filed this case, AEG produced over 200,000 additional documents and more data in response to subpoenas from both Plaintiffs and Defendants. Bernick Decl. ¶ 2. Mr. Mueller left AEG and began working at Live Nation before the close of fact discovery, *Id.* ¶ 3, but neither Plaintiffs nor Defendants specifically requested documents related to his departure at that time. Several AEG employees were deposed, and AEG also continued to respond to requests for information from Plaintiffs' counsel. *Id.* ¶ 2.

While Defendants never requested documents related to Mr. Mueller, they did seek his testimony. *Id.* ¶ 4. Although Mr. Mueller had a non-disclosure agreement ("NDA") with AEG that prohibited him from sharing confidential information with Live Nation, counsel for AEG and Live Nation worked cooperatively to proceed with a formal deposition so that all parties could ensure that no information was disclosed inappropriately. *Id.* ¶ 3-4. Collier Kelley, a Trial Attorney at the Antitrust Division, deposed Mr. Mueller on July 23, 2025. *Id.* ¶¶ 3-4. Before that deposition, Mr. Kelley asked counsel for AEG about the circumstances of Mr. Mueller's departure from AEG. *Id*.

He did not question Mr. Mueller regarding those circumstances at the deposition because of the favorable testimony he obtained from Mr. Mueller regarding documents discussing quality problems with Ticketmaster, *id.*, including regarding the below documents:

- PX0017 – Mueller discusses issues with ticket sales in Ticketmaster venues, and outlines AEG's attempts to be reimbursed for the shortfall.

- PX0036 – Mueller tells a Ticketmaster employee they "smelled of it," requests "Less [sic] hoops, more legitimacy in the transaction. That's what we're shooting for here;" and observes that "with the money TM makes on the TM plus resale, it puts the company in a conflicted position of why you'd want to slow down the Bots anyway. That's not a jab, that's a real problem."

- PX0200 –Mr. Mueller petitioned the City of Irvine to reject a pattern of "limited broad scale programming from Ticketmaster/Live Nation, the same uninspired concerts they run through their chain of amphitheaters across the country. It's a fantastic tool for Ticketmaster/Live Nation to generate the exorbitant ticket fees and big sponsor dollars that power their company . . . but maybe it's not good for music fans or the people of Irvine."

- PX1284 – Mueller observes the Ticketmaster/Live Nation bundling in real time, stating "Got the official word they are going LN for the booking, my guess is they will go with TM as a result."

- PX1285 – Mueller suggests that AEG "should get a letter from TM acknowledging they fucked this up."

- PX1286 – Mueller states "I doubt the customers like AXS any less than TM."

After discovery closed, AEG cooperated with counsel for the Plaintiffs regarding preparation of AEG's witnesses, with meetings in February and March, none of which concerned or discussed Mr. Mueller. *Id.* ¶ 5.

On March 23, 2026, Adam Gitlin, counsel for the District of Columbia, emailed AEG's counsel seeking a phone call about Mr. Mueller. *Id.* ¶ 6. He asked about the circumstances of Mr. Mueller's departure from AEG, which AEG's counsel briefly explained. *Id*. Mr. Gitlin said that Plaintiffs expected a favorable cross-examination of Mr. Mueller regarding Ticketmaster's quality, consistent with Mr. Mueller's deposition testimony. *Id*. Mr. Gitlin also asked counsel for AEG to

provide additional information about Mr. Mueller's departure because it could be important to the jury's evaluation of Mr. Mueller's credibility. *Id.* The following day, Mr. Gitlin again spoke with counsel for AEG at the courthouse. *Id.* ¶ 7. Counsel for AEG said that the circumstances of Mr. Mueller's departure were sufficiently sensitive that public disclosure of the information could potentially result in Mr. Mueller seeking to avoid testifying. Accordingly, AEG's counsel insisted that any information provided be treated as confidential. *Id.* Mr. Gitlin reiterated that Plaintiffs had no intention of publicly disclosing the information and wanted to move forward with their planned cross-examination. *Id.* Later that afternoon, AEG provided certain documents regarding Mr. Mueller's departure from the company to Mr. Gitlin, *id.* ¶ 8, along with a cover note that said, in relevant part:

> Attached are the materials Plaintiffs requested regarding Rick Mueller. Below is some context:
>
> [REDACTED]
>
> Please let us know your thoughts on how to use this, particularly if you believe there is any possibility of these documents (or the name of the subordinate) becoming public—we would want an opportunity to be heard on that issue. We think there is a good chance he would try to avoid testifying if he knew this would come up. We also think he is likely to admit the circumstances of his departure, even if he downplays them. Happy to chat if helpful:

Dkt. No. 1375-1. Counsel for Defendants repeatedly quote the fourth sentence in bold and underline, ignoring all of the context for the sentence, and arguing that it somehow shows that AEG sought to "dissuade" Mr. Mueller from testifying. Mot. 1-3. It says the opposite. Counsel for AEG: (1) asked Mr. Gitlin how he intended to use the documents; (2) re-emphasized that the documents should remain confidential; and (3) warned Mr. Gitlin that failure to treat the documents as confidential risked Mr. Mueller seeking to avoid testifying. This last point bears particular emphasis. While Defendants argue that it is "absurd" to suggest that Mr. Mueller might have

6

favorable testimony for Plaintiffs, Mot. at 11, the record is replete with evidence that he believed Ticketmaster had poor quality, as discussed above. Mr. Gitlin—like Mr. Kelley before him—had twice emphasized the value in cross-examining Mr. Mueller on this evidence. Bernick Decl. ¶ 8. The email cautioned Mr. Gitlin that public disclosure of the information risked Mr. Mueller potentially seeking to avoid testifying—precisely what Plaintiffs did not want.

Mr. Gitlin and AEG's counsel spoke again that evening. *Id.* ¶ 9. In response to the questions in the email, Mr. Gitlin explained that, at most, he would use one document—one AEG created and not even arguably subject to any confidentiality obligation—for impeachment, but only if Mr. Mueller misrepresented the circumstances of his departure. *Id*. Mr. Gitlin added that the documents AEG produced on March 23 would be kept confidential and not made public. *Id*. On March 25, Mr. Gitlin asked whether AEG objected to his sharing of the one document he intended to use for impeachment with Defendants' counsel. *Id.* ¶ 11. AEG did not object. *Id*.

After that March 25 communication with Mr. Gitlin, AEG has little knowledge of what happened between counsel for Plaintiffs and Defendants. Defendants' own motion is telling, however. Defendants' counsel apparently met with Mr. Mueller ahead of his planned testimony on March 26, and, critically, admit that Mr. Mueller "seemed concerned about questions that might come up regarding his departure from AEG." Mot. at 5. No one at AEG communicated with Mr. Mueller and AEG is not aware of any communication between Plaintiffs' counsel and Mr. Mueller. Bernick Decl. ¶ 15. It is, therefore, impossible that AEG or Plaintiffs used the prospect of questioning Mr. Mueller about his departure from AEG to "dissuade" him from testifying, *Id*. ¶ 14, particularly since Mr. Mueller was independently aware that questioning may occur, aware of the documents regarding his departure, and still committed to testifying. Moreover, *Defendants'* counsel asked Plaintiffs' counsel about Mr. Mueller's departure from AEG—not the other way

7

around—and counsel for Plaintiffs apparently *refused to disclose* the very information that Defendants claim Plaintiffs intended to use to discourage Mr. Mueller from testifying. Mot. at 5. Defendants' contention, therefore, makes no sense.

If AEG or Plaintiffs had some scheme to keep Mr. Mueller from testifying, either would have communicated with him about the information that might be disclosed unless he refused to testify. But that never happened, and Defendants, who bear the burden on the point, offer no evidence that it did. Furthermore, the information was *never* disclosed publicly. The record is clear that AEG asked Plaintiffs not to disclose it. Dkt. No. 1375-1. Although AEG had no knowledge then of any "agreement" between and the parties' counsel regarding Mr. Mueller's questioning, the record is equally clear that both parties were working together to *facilitate* the testimony—not *prevent* it—and that AEG had nothing to do with Plaintiffs supposedly abandoning the agreement. Mot. at 6. Moreover, even by Defendants' retelling, Plaintiffs thereafter still sought to *impeach* Mr. Mueller with the evidence—not use the evidence to prevent him from testifying. *Id*.

AEG did not attend the conference with the Court the evening of March 26 or receive the *in camera* letters the parties exchanged thereafter. Counsel for AEG informed the Court late that evening that he could not attend the hearing in New York the next morning at 8:00 AM because he was in Washington, DC, but would be happy to address any questions from the Court remotely at any time. AEG did not receive a response. AEG understands that the Court decided at the March 27 hearing that Plaintiffs could not use the documents provided by AEG to impeach Mr. Mueller. Mr. Mueller testified later that day and was not asked about the documents. In other words, Mr. Mueller testified, Plaintiffs used none of the documents, and the jurors ultimately did not hear information about Mr. Mueller's departure from AEG that could have affected their views of his

credibility. This outcome significantly limited Plaintiffs' ability to use impeachment evidence expressly allowed by Rule 607 and Rule 26(a)(3)(A).

Non-party Inner City Press moved for disclosure of the *in camera* letters the Court received on March 26. Bernick Decl. ¶ 14. Defendants and Mr. Mueller replied on March 30 seeking continued sealing of the letters and making baseless claims that AEG's disclosure of the documents to Plaintiffs was somehow an illegal or an attempt to "dissuade" Mr. Mueller from testifying. *Id*. AEG responded on March 31. *Id*. The Court held a hearing on April 1 and asked counsel for AEG why he should not be sanctioned, even though no Party at the hearing sought sanctions against AEG or its counsel. On April 2, Defendants filed the instant motion seeking sanctions against Plaintiffs.

## ARGUMENT

AEG is neither a party to this case nor a target of Plaintiffs' requested sanctions and therefore is not in a position to address the particular sanctions Defendants seek against Plaintiffs. However, because AEG and its counsel are mentioned repeatedly in Defendants' motion, AEG submits this memorandum to correct the factual and legal mischaracterizations in Defendants' motion. The facts are clear: neither AEG nor Plaintiffs took any "affirmative steps" to prevent or even discourage Mr. Mueller from testifying. Mot. at 5. On the law, neither AEG nor Plaintiffs had an obligation to produce documents used solely for impeachment to Defendants, and AEG's disclosure of the documents about Mr. Mueller's departure does not violate California law, the terms of Mr. Mueller's separation agreement, any Rule of Professional Conduct, or the federal witness tampering statute. Each issue is discussed in turn.

**I.      Neither AEG Nor Plaintiffs Had an Obligation to Disclose to Defendants Documents That Would Be Used Solely for Impeachment.**

Defendants' motion rests on two flawed contentions: (1) Plaintiffs had no right to obtain or use the documents at issue; and (2) AEG had no right to provide them. Both are divorced from reality and give the back of the hand to the critical role of impeachment in the truth-finding function of a trial jury. Even more troubling is Defendants' attempt to secure sanctions that give the jury *false* information when Defendants *already succeeded* in shielding the jury from information that would have assisted them in evaluating the veracity of Mr. Mueller's testimony by their agreement with Plaintiffs. The Court should reject Defendants' effort to distort the record based on the incorrect legal position that documents used solely for impeachment were unlawfully obtained or should have been disclosed.

There is no question that Mr. Mueller may be impeached with evidence relating to his departure from AEG. That evidence speaks to his credibility as a witness. Under Rule 607 of the Federal Rules of Evidence, "[a]ny party, including the party that called the witness, may attack the witness's credibility." One way to achieve this is through proof of bias, which "is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984); *see also United States v. Robinson*, 530 F.2d 1076, 1079 (D.C. Cir. 1976) ("The dominant principle is that evidence showing the emotional partiality of a witness is always significant in assessing credibility, for the trier must be sufficiently informed of the underlying relationships, circumstances and influences operating on the witness so that, in light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction.") (citation and quotation marks omitted). The bar for use of such

impeachment evidence is "fairly lenient" and "low." *Jones v. United States*, 263 A.3d 445, 455 (D.C. 2021) (citation and quotation marks omitted).

Nor is there any requirement that the evidence used to impeach Mr. Mueller be disclosed to Defendants. Under Rule 26(a)(3)(A) of the Federal Rules of Civil Procedure, information used "solely for impeachment," including documents and exhibits, need not be included in pretrial disclosures. Indeed, the lack of disclosure is the *point.* "Rule 26(a)(3) exempts evidence used solely for impeachment because pretrial disclosure would significantly diminish its impeachment value." *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004); *see also Classic Soft Trim, Inc. v. Albert*, No. 618-cv-1237, 2020 WL 13824059, at *3 (M.D. Fla. Dec. 2, 2020) (declining to sanction Plaintiffs for failing to disclose a recording before counsel used it to impeach testimony). In fact, whether impeachment evidence even exists may not be determinable in many cases before the witness testifies.

Defendants' argument makes even less sense when applied to AEG. As a non-party, AEG has no such disclosure obligations under Rule 26. Defendants never requested the documents from AEG at any point in time—even though Mr. Mueller was aware of them—and AEG would have produced them if asked. Moreover, Defendants argument is internally inconsistent. On the one hand, Defendants argue that it was improper for AEG not to disclose the documents to Defendants and Mr. Mueller. Mot. at 10. On the other, they claim disclosure was improper because it might dissuade Mr. Mueller from testifying. *Id*. This heads-I-win-tails-you-lose approach exposes Defendants' motion as opportunism. Indeed, had AEG disclosed the documents to Defendants, they likely would now be claiming AEG did so to make Mr. Mueller aware of their potential use to dissuade him from testifying. AEG provided the documents to Plaintiffs at their request with the

11

understanding that the documents would be kept confidential and used only for impeachment. There is no rule against that.

## II.    AEG's Disclosure of Documents to Plaintiffs Did Not Violate California Law.

As a threshold matter, Defendants' motion appears to abandon earlier claims that AEG somehow violated the California Code of Civil Procedure in providing the relevant documents to Plaintiffs, and for good reason. As AEG explained to this Court previously, Section 1985.6 of the California Code of Civil Procedure is a procedural rule that governs subpoenas for employment records in California state court—it does not create substantive law in federal court in New York. *Estate of Lopez v. City of San Diego*, No. 13-cv-2240, 2014 WL 12675268, at *2 (S.D. Cal. Aug. 25, 2014) ("The California Code of Civil Procedure governs procedure in state court and is not applicable to this action in federal court.") (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).[1]

Moreover, whatever rights Mr. Mueller may have under the California Constitution do not insulate documents related to his departure from AEG from discovery in federal court. To begin, third parties, not Mr. Mueller, created or obtained many of the documents that AEG produced. Mr. Mueller has no plausible privacy interest in those documents. Regardless, the California Constitution's right to privacy is treated as a privilege in the discovery context. *Holland-Hewitt v.*

---

[1]    *See also Rodgers v. Cassin*, No. 2:24-cv-6111, 2024 WL 4329086, at *1 (C.D. Cal. Aug. 26, 2024) ("Because this case is now in federal court, California Code of Civil Procedure . . . does not apply."); *Bolin v. Davis*, No. 1:17-cv-985, 2018 WL 2010435, at *1 (E.D. Cal. Apr. 30, 2018) ("[This case] is in federal court, not state court, and the California Code of Civil Procedure does not apply in federal court."); *Sharma v. City of Redding*, No. 2:17-cv-487, 2017 WL 2972263, at *2 n.5 (E.D. Cal. July 12, 2017) ("The California Code of Civil Procedure applies only to California state courts, it cannot give power to federal courts."). Like other state procedural rules, it is categorically inapplicable in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 407 (2010) (The Federal Rules of Civil Procedure "automatically appl[y] in all civil actions and proceedings in the United States district courts.") (emphasis omitted) (citation and quotation marks omitted); *see also, e.g., Seneca v. New Hope Borough,* No. CIV.A. 01-2307, 2002 WL 321663, at *1 n.1 (E.D. Pa. Feb. 27, 2002) (state procedural rule "inapplicable to federal court litigation predicated on federal question jurisdiction.").

*Allstate Life Ins. Co.*, 343 F.R.D. 154, 175 (E.D. Cal. 2022). "It is axiomatic that state privilege laws do not govern in federal question cases." *In re Zyprexa Products Liab. Litig.*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008). This is true "even where a federal question case contains pendent state law claims." *Id.*; *see also Ehrich v. Binghamton City Sch. Dist.,* 210 F.R.D. 17, 21 (N.D.N.Y. 2002) ("[W]hen a complaint asserts a federal question and is accompanied by pendent state claims, the federal law of privilege applies."). This is a federal question case, brought under federal antitrust laws in addition to the laws of the State Plaintiffs. Compl. ¶¶ 200-03. Accordingly, Mr. Mueller may not assert a California privilege over information shared in New York federal court.

Even if the California Constitution's right to privacy applied—and it does not—that right is "not an absolute right, but a right subject to invasion depending on the circumstances." *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 287 (S.D. Cal. 2018).[2] Courts use a four-part framework to evaluate the scope of the privacy right: "First, the claimant must have a 'legally protected privacy interest,' . . . ; second, the claimant must have a 'reasonable expectation of privacy' . . . ; third, the invasion of privacy must be 'serious'; and fourth, the privacy interest must outweigh the countervailing interests, such as discovery rights." *Id*. The right is personal and belongs to Mr. Mueller if it exists. It is not clear how Defendants meet any of the asserted prongs of the test or even how they have Article III standing to raise the issue in the first instance. *See Bender v. Williamsport Area Sch. Dist.*, 4475 U.S. 534, 544 (1986). Even if Mr. Mueller were a party and

---

[2] There is serious doubt that this Court has subject matter jurisdiction to enter any sanction against Plaintiffs because the Eleventh Amendment bars a federal court from entering relief against a State on the basis of state law. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 466 U.S. 89 (1984) The Eleventh Amendment argument is Defendants' to make, but AEG notes it because it goes to the Court's subject matter jurisdiction. *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

able to assert rights in this case, he could not satisfy any of the four prongs. Most notably, "the public's interest in being able to assess [Mr. Mueller's] credibility . . . and ascertaining the truth in legal proceedings," *Khoday v. Symantec Corp.*, No. 11-cv-180, 2013 WL 12140487, at *4 (D. Minn. Oct. 8, 2013), outweighs any putative privacy interest Mr. Mueller might have. *See also Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-1760, 2017 WL 3007030, at *3 (N.D. Cal. July 14, 2017) ("The right to privacy [under the California Constitution] may be abridged to accommodate a compelling public interest, such as the historically important state interest in facilitating the ascertainment of truth in connection with legal proceedings.") (citation and quotation marks omitted).

### III. AEG's Disclosure of Documents to Plaintiffs Did Not Violate Mr. Mueller's Separation Agreement.

Defendants claim that AEG should not have disclosed documents related to Mr. Mueller's departure from AEG because his separation agreement contained a confidentiality provision. To be clear, the issue before the Court is not whether has been a breach of contract between AEG and Mr. Mueller but whether there has been an improper attempt to influence witness testimony by AEG's counsel or plaintiffs' counsel—which, as explained herein, there was not. Even so, Defendants are wrong that Mr. Mueller's separation agreement precluded disclosure.

*First*, Defendants are not a party to the separation agreement and have no standing to enforce any confidentiality obligation therein. It makes no sense to impose sanctions for a supposed breach of contract when the party seeking sanctions has no rights under that contract. As discussed below, Mr. Mueller has no right to a remedy for the disclosure of the separation agreement to Plaintiffs, but, even if he did, that would not justify *Defendants'* request for sanctions.

*Second*, the separation agreement's confidentiality provision relates *only* to the separation agreement and its negotiation. *See* Separation Agreement ¶ 7(a). There are no confidentiality

14

obligations with respect to *any* of the other materials disclosed to Plaintiffs, which other persons—not Mr. Mueller—created or provided to AEG.

*Third*, even if Defendants did have standing to challenge a violation of the terms of Mr. Mueller's separation agreement, AEG's disclosure of the documents in response to a request from a senior state enforcement official speaking for numerous State Attorneys General in a law enforcement action—with assurances that confidentiality will be maintained—is consistent with the provisions of the separation agreement permitting disclosure "as necessary to fulfill standard or legally required corporate reporting or disclosure requirements . . . or as otherwise required by law." *See* Separation Agreement ¶ 7(a).[3] Defendants even claim that the documents are "of a kind that no law-abiding company ever just hands over to others." Mot. at 7. That statement cannot be taken seriously. While Live Nation might routinely refuse to cooperate with law enforcement agencies, most law-abiding businesses—like AEG—accommodate legitimate requests for information from the government, particularly when proper confidentiality safeguards are in place.

*Fourth*, disclosure is also expressly permitted where, as here, it may be necessary to enforce the agreement's requirement that Mr. Mueller provide truthful and accurate testimony and refrain from making false statements about the Company. Separation Agreement ¶ 7(a)-(c).

## IV.    AEG's Disclosure of Documents to Plaintiffs Did Not Violate the Rules of Professional Conduct.

Defendants cite three ethical rules, none of which have any bearing on AEG's disclosure

---

[3]    Moreover, had Defendants requested this material in the course of discovery, its confidentiality provision would not have protected the document from disclosure. *See Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017); *see also Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18-cv-07689, 2022 WL 1687156, at *2 (N.D. Cal. May 26, 2022) (finding that "[c]ourts in this district and others have recognized that an NDA cannot be used to shield information from discovery" and holding that the witness must appear for deposition despite a non-disclosure agreement); *Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) (finding that an agreement to keep a settlement agreement confidential does not shield it from discovery where relevant to a lawsuit's claims).

of the documents related to Mr. Mueller's departure.

*First*, Defendants' reliance on Rule 3.4(a)(1)[4] fails because AEG is a non-party and therefore not subject to the disclosure obligations imposed on parties by Federal Rule of Civil Procedure 26(a). Rule 3.4(a)(1) is aimed at the suppression or concealment of evidence that a lawyer or client has "*a legal obligation to reveal or produce*." N.Y. R. Prof. Cond. 3.4(a)(1) (emphasis added). Although the motion cites Rule 26(a) of the Federal Rules of Civil Procedure, neither AEG nor its counsel had any legal obligation to produce the materials at issue to the Defendants under the Federal Rules. Moreover, AEG's counsel did not obstruct access to evidence; he provided documents to a governmental Plaintiff upon a proper and lawful request. Bernick Decl. ¶ 7-8. Rule 3.4 contemplates the necessity of evidence "to establishing a claim or defense," and seeks to prevent actions that would thwart that purpose. Rules 3.4(a)(1) cmt. [1]. Even accepting *arguendo* the obligation Defendants seek to foist on AEG, Rule 26(a) expressly excludes from that obligation material that a party would use "solely for impeachment." Accordingly, Rule 3.4(a)(1) is not implicated, much less violated.

*Second*, Defendants' reliance on Rule 4.4 is equally misplaced. Rule 4.4 prohibits a lawyer from using means having "no substantial purpose other than to embarrass or harm a third person." *Id.*, Rules 4.4(a). "A substantial purpose is a genuine purpose—a purpose calculated to advance the legitimate interests of the lawyer's client, not merely to harm or embarrass a third person." Roy D. Simon Jr., *Simon's N.Y. Rules of Pro. Conduct Annotated* § 4.4:2 (2024 ed.). The rule targets

---

[4]     Although Defendants cite both the D.C. Rules of Professional Conduct and the New York Rules of Professional Conduct, only the New York Rules apply to this proceeding. *See* N.Y. Rules of Pro. Conduct ("Rules") 8.5(b)(1) ("For conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise").

abusive or harassing tactics, not legitimate conduct undertaken for a proper litigation purpose. Rules 4.4 cmt. [1]. Here, the production of documents to a governmental entity in response to a request serves a substantial and legitimate purpose. Both Plaintiffs and AEG also had a substantial and legitimate purpose in ensuring that the jury could properly evaluate the veracity of Mr. Mueller's testimony. AEG's counsel did not act to harass, burden, or embarrass any person. Moreover, it is clear from his cover email that AEG's counsel was concerned about ensuring the confidentiality of the documents being produced and that any information would only be used if necessary for impeachment at trial. Dkt. No. 1375-1. Contrary to Rule 4.4 cited by Plaintiffs— which relates to conduct that has no purpose other than to harm a third person—AEG's counsel was seeking to ensure that the confidentiality rights of the parties to the separation agreement were respected.

*Third*, Defendants' reference to Rule 3.4(f) is inapposite. That rule prohibits a lawyer from requesting that a person, other than a client, refrain from voluntarily providing relevant information to another party. Rules 3.4(f). The rule is designed to prevent interference with the free flow of information and to safeguard access to evidence. *Id.* cmt. [2]. The conduct here is the inverse of what the rule prohibits: AEG's counsel did not request that any witness withhold information— indeed, he did not speak to Mr. Mueller at all. Instead, he facilitated disclosure of documents to a party in the litigation. While Defendants argue that AEG's counsel's disclosure of documents was an attempt to deter Mr. Mueller from testifying, the documents were not shared with Defendants until the Court compelled Plaintiffs to do so. Defendants also admit that they—not Plaintiffs— raised the issue of whether Mr. Mueller would be asked about his departure from AEG. Absent the inquiry by Defendants' counsel, Mr. Mueller would not have even known whether Plaintiffs intended to ask about it. Mr. Mueller and his counsel *already knew* he might be asked about his

17

departure and yet he was undeterred from testifying. It therefore makes no sense that AEG's provision of documents to Plaintiffs—and Plaintiffs' confirmation to Defendants that they would ask about Mr. Mueller's departure—reflected an attempt to deter him from testifying.

***Finally***, Defendants' Motion improperly seeks to fashion a trial remedy—namely a jury instruction—based on citations to the rules of Professional Conduct. That is improper. The ethics rules are not intended to serve as a procedural or evidentiary tool or otherwise confer rights on an adversary to enforce within the context of a civil proceeding. *See* Rules Scope [12] ("the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons."); *accord* ABA Model Rules of Professional Conduct, Scope [20] (same).

## V.    AEG's Disclosure of Documents to Plaintiffs Did Not Violate the Federal Witness Tampering Statute.

Defendants make a frivolous argument that AEG's disclosure of documents related to Mr. Mueller's departure from AEG violated the federal witness tampering statute. Dkt. No. 1378 at 12. Accusing counsel for a non-party of committing a *felony*—because he provided documents in response to a request from a law enforcement agency—is reckless and irresponsible. Section 1512(b) prohibits individuals from *intimidating*, *threatening*, or *corruptly persuading* someone, with the intent to "influence, delay, or prevent [their] testimony." 18 U.S.C. § 1512(b) (emphasis added). Based on the facts here, Defendants' accusation is ludicrous. Violations of the statute involve outrageous conduct. *See, e.g.*, *Bauer v. Hill*, No. 822-cv-868, 2023 WL 6373857, at \*5-\*7 (C.D. Cal. Aug. 4, 2023) (Defendant "threatened to 'burn' [witness] 'to the fucking ground,'" including by "disclosing personal information about [witnesses]'s alleged drug abuse and recruiting others to 'testify against [witnesses] character'"); *United States v. White*, 10-cr-516, 2011 WL 2207566, at \*3 (S.D.N.Y. May 31, 2011) (Defendant "corruptly persuaded" a veteran to pose as the company owner so that the company could continue to receive government contracts);

*United States v. Vitagliano*, 86 F. App'x 470, at *1 (2d Cir. 2004) (Defendant sent e-mail "threatening to have his lawyer use personal, intimate information to 'destroy' the woman's reputation" if she did not recant statement); *United States v. Morissett*, 49 F. App'x 334 (2d Cir. 2002) (Defendant had witness corroborate a false alibi.).

In stark contrast, AEG's counsel never communicated with *anyone* about the documents related to Mr. Mueller's departure other than Mr. Gitlin and his client. And AEG's counsel even cautioned—twice—against public disclosure of the documents out of *concern* that such disclosure could lead Mr. Mueller to try not to testify. Moreover, "it is an affirmative defense . . . that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully"—the exact situation at issue here. *See* 18 U.S.C. § 1512(e). Counsel for Defendants have zero basis to even allude to witness tampering and should know better. Such tactics are unbecoming for capable counsel such as those representing Defendants and set a new low, even for Live Nation. The Court should reject them categorically. Providing a law enforcement agency with information necessary to test the veracity of the testimony of a witness for the Defendant in a major antitrust enforcement action is the norm, it is not a felony.

## VI.     Defendants' Baseless Attacks on AEG Counsel are Improper.

While Federal courts can impose sanctions under the Court's inherent powers, they may only do so with appropriate restraint and typically upon a finding of subjective bad faith. *Chambers v. NASCO, Inc..,* 501 U.S. 32, 44-46, 50 (1991); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). The Court elaborated that due process requires an opportunity to be heard before sanctions are imposed. *Chambers*, 501 U.S. at 50. "Bad faith" is defined as a party acting "vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (citations omitted). Importantly, sanctions imposed pursuant to a court's inherent authority must be compensatory as opposed to

19

punitive—they can make a wronged party whole but cannot impose additional penalties. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). There is no evidence that counsel for AEG or the Plaintiffs acted in bad faith other than the wild and inappropriate speculation in the Motion. To the extent AEG's or its counsel's conduct is relevant to the determination of sanctions—again, the Motion does not seek sanctions against AEG or its counsel—the record does not come close to supporting a finding that AEG or its counsel acted with the requisite bad faith.

Nevertheless, the Motion takes direct aim at both AEG and its counsel and is riddled with false and incendiary claims about AEG's counsel's conduct and alleged motives. The Court should not ignore the hypocrisy of Defendants' motion, which simultaneously accuses another lawyer of unprofessional conduct while basing those accusations on wild speculation and unreasonable inferences, which itself constitutes improper, unprofessional conduct. *See, e.g.*, Rules 3.1(a) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."); *Id*. 1.3 cmt. [1] ("[a] lawyer should not use offensive tactics or fail to treat all persons involved in the legal process with courtesy and respect.").

## CONCLUSION

For the foregoing reasons, non-party AEG respectfully requests that the Court reject Defendants' flagrant misrepresentations to the Court about both the facts and law regarding AEG's conduct.

Dated April 6, 2026

HOGAN LOVELLS US LLP

*/s/ Justin W. Bernick*
Justin Bernick (admitted *pro hac vice*)
Molly Pallman (admitted *pro hac vice*)
555 Thirteenth St., NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
molly.pallman@hoganlovells.com

*/s/ Claude G. Szyfer*
Claude G. Szyfer
390 Madison Avenue
New York, New York 10017
Telephone:(212) 918-3000
Facsimile: (212) 918-3100
claude.szyfer@hoganlovells.com

*Attorneys for Anschutz Entertainment Group, Inc.*

21

## Certificate of Compliance

I, Justin W. Bernick, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Court for the Southern and Eastern Districts of New York and Rule 8(c) of Judge Arun Subramanian's Individual Practices in Civil Cases that the foregoing Response to Defendants' Motion for Sanctions was prepared using Microsoft Word and contains 6,678 words. In making this calculation, I have relied on Microsoft Word's word count.

Dated: April 6, 2026

/s/ Justin W. Bernick
Justin W. Bernick

22