# Demonstrative Exhibits for the Testimony of

# Prof. Dennis Carlton

**United States et al. v. Live Nation Entertainment, Inc. and Ticketmaster L.L.C.**

**No. 1:24-cv-03973**

United States District Court for the Southern District of New York
Honorable Arun Subramanian
April 6, 2026

DDX-0022.1

# Background

- **A.B. in Applied Mathematics, Harvard University (1972)**

- **M.S. in Operations Research, Massachusetts Institute of Technology (1974)**

- **Ph.D. in Economics, Massachusetts Institute of Technology (1975)**

- **Deputy Assistant Attorney General for Economic Analysis, Department of Justice (2006-2008)**

- **Professor at the University of Chicago (1976-present, emeritus as of 2022)**

  - Department of Economics:  Assistant Professor (1976-1979); Associate Professor (1979).

  - Law School:  Professor of Economics (1980-1984).

  - Booth School of Business:  Professor of Economics (1984-2008); Katherine Dusak Miller Professor of Economics (2008-2011); David McDaniel Keller Professor of Economics (2011-2022).

- **Senior Managing Director, Compass Lexecon (2008-present)**

- **Expert before state, federal, and international courts and regulatory agencies for private firms and U.S. and Canada antitrust authorities**

## Assignment

**Evaluate Dr. Hill's opinion that Live Nation and Ticketmaster have harmed competition in his alleged ticketing markets**

**Evaluate Dr. Abrantes-Metz's analysis of damages to fans**

# Summary of Opinions

1. There is an absence of empirical evidence of harm to competition in Dr. Hill's primary concert ticketing market

2. Dr. Hill's claim that Ticketmaster's alleged threats to withhold content has harmed competition is flawed

3. Dr. Hill's claim that Ticketmaster's use of multi-year, exclusive contracts has harmed competition is flawed

4. High market shares do not necessarily indicate significant market power that harms consumers

5. Ticketmaster's efficiency is a likely source of its continued success in primary ticketing

6. There is no basis to conclude that fans have been damaged by an abuse of monopoly power

# Opinion 1

**There is an absence of empirical evidence of harm to competition in Dr. Hill's primary concert ticketing market**

- If Ticketmaster were engaged in anticompetitive conduct, there should be evidence of elevated fees or margins

- Ticketmaster's profit margins and take rates are not higher inside of Dr. Hill's relevant market than outside

- Dr. Hill's analysis confirms my findings

# Empirical Analysis of Alleged Harm to Competition

## If there were harm to competition …

Ticketmaster's **margin** would be higher **inside** the relevant market than **outside** it



**NO**

The data do not show this

Ticketmaster's **take rate** would be higher **inside** the relevant market than **outside** it



**NO**

The data do not show this

# Ticketmaster Does Not Have Higher Margins Inside Dr. Hill's Concert Ticketing Market



**Ticketmaster's Average Concert Gross Margin**
*2017 – 2023, excluding 2020*

# Ticketmaster Does Not Have Higher Take Rates Inside Dr. Hill's Concert Ticketing Market

**Ticketmaster's
Average Take Rate**
*2017 – 2023, excluding 2020*



6.4%

Outside

5.3%

Inside

*Carlton Report ¶ 98; Carlton Sur-Rebuttal Report Figure 4 (update to Carlton Report Figure 3).*

DDX-0022.8

# Ticketmaster Does Not Have Higher Margins or Take Rates Inside Dr. Hill's Concert Ticketing Market

**Table 7: Regression Analysis of Ticketmaster's Margins and Take Rates Inside and Outside of Dr. Hill's Primary Concert Ticketing Market, 2017 – 2023**
(Carlton Expert Report, Table 2)

| | Ticketmaster Concert Gross Margin (%) | Ticketmaster Concert Take Rate (% of GTV) |
|---|---|---|
| Hill MCV Flag | -2.853*** | -2.008*** |
| | (0.892) | (0.540) |
| Log Venue Capacity | -1.346*** | -0.901*** |
| | (0.463) | (0.222) |
| Venue Observations | 1178 | 1179 |
| Venue-Year Observations | 5079 | 5136 |
| Venue Type FE | Yes | Yes |
| Year FE | Yes | Yes |

Notes:
[1] Concert Gross Margin (%) is defined by Dr. Hill as: (Total Revenue - Total Costs) / (Total Revenue - Total Royalties). Excludes Gross Margins less than 0% or more than 100%.
[2] Concert Take Rate (%) is defined as: Net Ticketing Revenue / Gross Transaction Value. Excludes Take Rates less than 0% or more than 100%.
[3] Regression data is at the venue-year level for only concerts. Standard errors are robust and clustered at the venue-level.
[4] * indicates significance levels. * = p < 0.10; ** = p < 0.05; *** = p < 0.01.
[5] Includes data from 2017-2023, excluding 2020.

Sources: (October 9, 2025) Event-level combined primary ticketing data; tmprofitloss_venues_translated.dta (Dr. Hill's venue crosswalk); LNE-LIT24-DAT-000051-57 (2017-2023 client-by-venue P&Ls).

# Dr. Hill's Analysis Confirms My Findings



**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q:** Let me put it this way: You didn't present any evidence that the supposedly vulnerable 257 venues at issue in your markets paid more for ticketing services than for other venues, correct?

**Dr. Hill:** That those venues paid more than other venues? Correct.

**Q:** Correct, you didn't do that analysis, correct?

**Dr. Hill:** Well, I did it in response to Dr. Carlton, but it didn't show that they were paying more.

**Q:** Right, exactly. It didn't show they were paying more, correct?

**Dr. Hill:** Correct.

**Q:** And you also didn't find that Ticketmaster's margins and take rates were higher in a statistically significant way inside your alleged MCV market than outside that market, correct, Dr. Hill?

**Dr. Hill:** That's correct.

# Opinion 2

**Dr. Hill's claim that Ticketmaster's alleged threats to withhold content have harmed competition is flawed**

- Ticketmaster's profit margins and take rates are not higher at venues that rely more on Live Nation-promoted content

- Dr. Hill fails to demonstrate that the alleged withholding was material enough to harm competition

- Dr. Hill's empirical analysis of Live Nation's alleged withholding ignores procompetitive reasons why Live Nation may prefer Ticketmaster

# Empirical Analysis of Alleged Harm to Competition

## If there were harm to competition …

Ticketmaster's **margin** would be higher at venues that are more reliant on **Live Nation-promoted content**



**NO**

The data do not show this

Ticketmaster's **take rate** would be higher at venues that are more reliant on **Live Nation-promoted content**

**NO**

The data do not show this

# Ticketmaster's Margins and Take Rates Are Not Positively Correlated with a Venue's Reliance on Live Nation-Promoted Content



*Carlton Report ¶ 102; Carlton Sur-Rebuttal Report Table 8 (update to Carlton Report Table 3). Slope of line corresponds to the regression coefficient of -0.77.*    DDX-0022.13

# Dr. Hill Confirms My Findings



**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q:** Just so it's perfectly clear, you found no statistically significant relationship between margins or take rate and a venue's reliance on Live Nation-promoted content, correct?

**Dr. Hill:** Correct.

# Opinion 3

**Dr. Hill's claim that Ticketmaster's use of multi-year, exclusive contracts has harmed competition is flawed**

- Multi-year, exclusive contracts benefit venues

- Multi-year, exclusive contracts are preferred by venues and are overwhelmingly used in the industry

- Multi-year, exclusive contracts do not eliminate competition

- Ticketers can gain scale in ticketing outside of Dr. Hill's defined market

# Multi-year, Exclusive Contracts Benefit Venues



Offer Upfront Payments and a *Guaranteed* Revenue Stream



Facilitate Operational *Efficiency*



*Encourage* Relationship-Specific Investments



*Reduce* Transaction Costs

# Ticketers Can Gain Scale Outside Dr. Hill's Defined Market

**Plaintiffs' Primary Concert Ticketing Market Is a Small Share of Total Ticketing (2024)**



Primary Concert Tickets Sold <u>Inside</u> Plaintiffs' Market

63M 14%

386M 86%

Primary Tickets Sold <u>Outside</u> Plaintiffs' Market

# Opinion 4

**High market shares do not necessarily indicate significant market power that harms consumers**

- Market definition and the calculation of market shares are only a crude first step in assessing the existence of market power

- Changes to the boundaries of a market can lead to very different shares

- Dr. Hill's barriers to entry can result from procompetitive conduct

# High Shares Can Reflect Superior Quality



**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q:** All right. So looking at market shares is valuable to understanding market power, but it's not the end of the inquiry as to whether one has market power, right?

**Dr. Hill:** I think that's generally fair.

**Q:** It's also fair, is it not, that high market shares don't necessarily indicate significant market power that can harm consumers?

**Dr. Hill:** Yes, that can be true.

**Q:** So a firm can obtain a high market share without engaging in any anticompetitive conduct, right?

**Dr. Hill:** Sure.

**Q:** A firm that offers a higher quality product, for example, or a better quality adjusted price can get more sales than a rival, true?

**Dr. Hill:** That can be true.

# Changes to the Boundaries of a Market Can Lead to Very Different Shares



*Hill Rebuttal Report Figure 45 (update to Carlton Report ¶ 129 & n.195); Carlton Sur-Rebuttal Report ¶ 82.*   DDX-0022.21

# Dr. Hill's Barriers to Entry Can Result From Procompetitive Conduct

| 1 | **Significant fixed costs** |
|---|---|

| 2 | **Substantial switching costs** |
|---|---|

| 3 | **Importance of track record** |
|---|---|

# Opinion 5

**Ticketmaster's efficiency is a likely source of its continued success in primary ticketing**

- Ticketmaster has higher quality than AXS along dimensions that would affect the profitability of artists, promoters, and venues

- Dr. Abrantes-Metz's criticisms of my analysis of ticket sales are faulty

# Ticketmaster's Superior Efficiency



# Dr. Abrantes-Metz's Criticisms of My Analysis of Ticket Sales Are Faulty

| 1 | Statistical tests reject that either of Dr. Abrantes-Metz's alternative fixed effects specifications should be used |
|---|---|
| 2 | Removing one unusual, influential venue from the data reverses the results of Dr. Abrantes-Metz's sell-through analysis |
| 3 | Dr. Abrantes-Metz did not do a regression analysis for her sell-through analysis |

*Carlton Sur-Rebuttal Report § IV.B, ¶¶ 46-52.*

DDX-0022.25

# Dr. Abrantes-Metz's Finding of Higher Average AXS Sell-Through Rate Is Driven by a Single Venue







# Dr. Abrantes-Metz's Finding of Higher Average AXS Sell-Through Rate Is Driven by a Single Venue

## *Dr. Abrantes-Metz's Version*

### AXS Has Higher Sell-Through Rate for More Overlapping Artists



## *When Red Rocks Amphitheatre Is Excluded*

### Ticketmaster Has Higher Sell-Through Rate for More Overlapping Artists



*Carlton Sur-Rebuttal Report ¶¶ 49, 51; PDX006.21.*

DDX-0022.27

# Opinion 6

**There is no basis to conclude that fans have been damaged by an abuse of monopoly power**

- Any analysis comparing Ticketmaster and AXS must take quality and other differences into account

- Dr. Abrantes-Metz's claim of elevated retained fees for Ticketmaster vanishes once one accounts for the empirical evidence of Ticketmaster's efficiency, which precludes a finding of damages to fans

# Dr. Abrantes-Metz's Damages Analysis

**Assume Ticketmaster and AXS are of comparable quality**

**STEP 1:  Estimate increase (if any) in amount Ticketmaster retains for ticketing services compared to AXS**

**STEP 2:  If Ticketmaster retains more than AXS, estimate pass-through of that increase to fans**

# Accounting for Ticketmaster's Efficiency Precludes a Finding of Damages to Fans

**Ticketmaster's Retained Fees Per Ticket Compared to AXS**



# Summary of Opinions

1. There is an absence of empirical evidence of harm to competition in Dr. Hill's primary concert ticketing market

2. Dr. Hill's claim that Ticketmaster's alleged threats to withhold content has harmed competition is flawed

3. Dr. Hill's claim that Ticketmaster's use of multi-year, exclusive contracts has harmed competition is flawed

4. High market shares do not necessarily indicate significant market power that harms consumers

5. Ticketmaster's efficiency is a likely source of its continued success in primary ticketing

6. There is no basis to conclude that fans have been damaged by an abuse of monopoly power

*Carlton Report §§ III.C, III.D, ¶¶ 14, 30, 113, 116, 120.*

DDX-0022.31

# No Evidence of Harm to Competition

## If there were harm to competition …

Ticketmaster's margin would be higher inside the relevant market than outside it

Ticketmaster's take rate would be higher inside the relevant market than outside it

Ticketmaster's margin would be higher at venues that are more reliant on Live Nation content

Ticketmaster's take rate would be higher at venues that are more reliant on Live Nation content