

NORTH AMERICA    SOUTH AMERICA    EUROPE

200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

**JEFFREY L. KESSLER**
Partner
(212) 294-4698
jkessler@winston.com

April 8, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:      ***United States et al. v. Live Nation Entertainment, Inc. et al.; 1:24-cv-03973-AS***

Dear Judge Subramanian:

Plaintiffs submit this response to Defendants' letter motion to strike certain of Dr. Hill's testimony and respectfully request that the Court deny this motion in its entirety for three separate reasons.

First, this motion to strike is untimely as the underlying objections have been waived. Under Federal Rule of Evidence 103, and well-established Second Circuit precedent, a party must timely object or move to strike to preserve an evidentiary challenge, and the failure to do so results in forfeiture and waiver. Here, Defendants did not merely fail to object—they affirmatively agreed, through a weeks-long negotiation process following this Court's *Daubert* ruling, that Dr. Hill could testify as an expert about his win-loss analysis. Then, they failed to raise any hearsay objection during Dr. Hill's direct examination, redirect, or at any other point during trial, despite knowing precisely how to raise such objections, as evidenced by the hearsay objection and limiting instruction they obtained during Mr. Perez's testimony the very next day. This forfeiture is absolute and requires the rejection of Defendants' motion.

Second, even if Defendants could pursue this untimely and waived objection, it would fail on the merits. Dr. Hill's expert opinions, based in part on his review of the win-loss data, were proper expert testimony under Rules 702 and 703.  He was properly permitted to explain to the jury that his analysis of this data was one component of a multifaceted empirical analysis that he undertook to support his opinions, including regression analysis, robustness checks, and market-wide examination of competitive dynamics, precisely the type of expert analysis contemplated by the Federal Rules. The fact that the underlying win-loss data itself contained inadmissible hearsay was of no moment because an expert is permitted to rely on inadmissible evidence in formulating his admissible opinions.  Indeed, Dr. Carlton presented his own opinions based on this same win-loss data in his own expert reports, demonstrating that Defendants themselves understood that an expert could properly rely upon and present such data to support his opinions under Rule 702. Carlton Rep. ¶¶ 71–76.

**WINSTON
&STRAWN**
LLP

Third, granting Defendants' motion to strike at this late stage of the trial—less than 24 hours before the close of evidence less than 48 hours before closing, and nearly two weeks after Plaintiffs closed their case—would deprive Plaintiffs of evidence on which they relied in structuring their case and which they can no longer supplement.  Had Defendants timely raised this objection, and had it been sustained, Plaintiffs would have had the opportunity to call witnesses to provide a foundation to admit the win-loss data or otherwise recall Dr. Hill.  By waiting until the eleventh hour to raise this issue, Defendants are once again engaging in the very litigation gamesmanship that the Federal Rules will not condone.

Defendants have told the Court that they have believed for some time that Dr. Hill's testimony was an improper expert opinion and an attempt to inject hearsay before the jury. But they made the strategic decision not to object to his testimony until the eve of closing argument. The Court should not countenance these tactics.  Trial Tr. 77:8–16.

## I.    Defendants' Motion Is Untimely And Their Objections Have Been Forfeited And Waived

Federal Rule of Evidence 103 requires that a party timely object or move to strike to preserve an evidentiary challenge. Fed. R. Evid. 103(a)(1) ("A party may claim error in a ruling to admit evidence only if the error affects a substantial right of the party and … a party, on the record, *timely objects or moves to strike* and states the specific ground.") (emphasis added).

Under *United States v. Olano*, forfeiture is the "failure to make the timely assertion of a right," while waiver is the "intentional relinquishment or abandonment of a known right." 507 U.S. 725, 733 (1993).  Consistent with Rule 103, the Second Circuit routinely holds that evidentiary objections are waived where a party fails to object when the evidence is introduced. *See United States v. Yu-Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995) (party must object contemporaneously to preserve claim of error). Even where a party previously raised the issue in a motion in limine, the objection must be renewed when the evidence is actually introduced. *See United States v. Ojeda*, 412 F. App'x 410, 412 (2d Cir. 2011) (defendant's "failure to object to admission of such evidence at trial … waived defendant's objection").

Here, Defendants have: (1) agreed to the admissibility of Dr. Hill's expert opinion under Rule 702; and (2) forfeited and waived any objection to his testimony expressing this opinion at trial by sitting on their hands without raising any objection when the testimony was presented.

### A. Defendants Agreed That Dr. Hill's Opinion Was Admissible Expert Testimony.

With respect to whether Dr. Hill's opinions are admissible under Rule 702 (Mot. 7-8, Section B), Defendants did not just forfeit or waive their arguments to exclude—*they affirmatively agreed that Dr. Hill could testify as an expert about these issues*.

Dr. Hill disclosed his reliance on the win-loss data, which provided further support for his opinions alongside other record evidence of content-withholding threats, in his rebuttal report at paragraphs 315 to 321. The Court ruled on the *Daubert* motions on February 18, 2026, and gave

further instructions addressing the expert testimony during a February 19, 2026 hearing. Feb. 19, 2026 Hr'g Tr. 61:14–19. In response to the Court's *Daubert* order and guidance from February 19, 2026, the parties agreed to provide a highlighted draft of the reports which would identify which opinions were admissible and which opinions were excluded.

Defendants engaged with Plaintiffs in a weeks-long, painstaking negotiation of what opinions in Dr. Hill's reports would be permitted following the Court's orders. After negotiations first broke down, Defendants submitted a version of the report that contained disputes over what would be excluded based on the Court's orders, and the Plaintiffs later submitted a revised highlighted report that contained the parties' *stipulated agreement* about which opinions Dr. Hill was permitted to present at trial under the Court's Orders. Email from J. Hudgens to Hon. Arun Subramanian (Mar. 19, 2026) (attaching reports reflecting parties' agreement). Significantly, Defendants agreed that Dr. Hill's opinion, supported in part by the win-loss data, was not excluded by the Court's Orders and could be presented at trial. And Defendants reached this agreement after the Court's February 19 Order discussing the line between proper expert testimony and merely "regurgitating" evidence. Mot. 7. Defendants may not repudiate that agreement now.

### B. Defendants Forfeited and Waived Any Objection to Dr. Hill's Trial Testimony.

Defendants had every opportunity to raise a hearsay or other objection to the testimony of Dr. Hill that they now seek to exclude, but declined to do so at every turn. They did not object when Dr. Hill testified on direct examination that he relied upon the AXS and SeatGeek win-loss records as data maintained in the ordinary course of business in which sales personnel recorded opportunities and their contemporaneous assessments of why opportunities were lost. Trial Tr. 2117:22–2118:23. They did not object when Dr. Hill reiterated this testimony on redirect. Trial Tr. 2284:17–2285:17. They did not probe the issue—including by exploring any disagreements they had with how Dr. Hill interpreted the data—on cross-examination. And they did not object to the following day when Dr. Abrantes-Metz referenced the same win-loss data during her testimony. Trial Tr. 2467:9–20, 2469:2–2470:23, 2533:8–14. At no point during any of this trial testimony did Defendants object, move to strike, request a limiting instruction, or otherwise ask the Court to address any admissibility concern.

Defendants contend that they preserved their objection by challenging the demonstrative slide (PDX005.43) before Dr. Hill testified. That argument fails. An objection to a demonstrative does not preserve every conceivable evidentiary objection, and certainly does not excuse Defendants' subsequent decision not to object to any part of the testimony that followed. The Court overruled Defendants' objection to the demonstrative itself, ruling that "the disputes about the underlying data and what the data shows go to weight rather than admissibility" and that "to the extent that the data is based on hearsay, the hearsay is not actually being presented to the jury, there is no Rule 703 issue." Trial Tr. 2061:21–25. After that ruling, Defendants were required to renew their objection when Dr. Hill actually testified about the data if they believed it was being presented in a way to improperly present hearsay to the jury. They did not. Trial Tr. 4449:4–9.

Defendants' further argument—that their motion is timely because Plaintiffs' intent to use Dr. Hill's win-loss testimony "for the truth of the matter asserted" only "manifested itself in the



last week"—is wrong as a matter of fact and as a matter of law. As a factual matter, Defendants identified the alleged hearsay issue before Dr. Hill testified, arguing that the win-loss percentages "included impermissible hearsay being offered for the truth of the matter." Parties Joint Submission of Outstanding Disputes for March 22, 2026, at 3–4.[1]  As a matter of law, Defendants' decision not to raise the objection again during Dr. Hill's testimony was an unequivocal waiver and forfeiture of the argument. *See United States v. Ojeda*, 412 F. App'x 410, 412 (2d Cir. 2011) (defendant's "failure to object to admission of such evidence at trial … waived defendant's objection").

Indeed, in court on April 7, 2026, Defendants *admitted* that they believed Dr. Hill's testimony was improper at the time it was made but chose not to raise this issue either through a timely objection, motion to strike, or cross examination.  Trial Tr. 4450:2–8.  Having made this strategic decision to do nothing, Defendants cannot reverse course now.  This is especially true since Defendants demonstrated that they understood the proper timing for raising admissibility objections of this type when, on the day after Dr. Hill's testimony, during Mr. Perez's testimony, they raised a hearsay objection and obtained a limiting instruction. Trial Tr. 2610:21–2611:3. Defendants knew precisely how to raise a similar hearsay objection to the testimony of Dr. Hill. They simply chose not to do so for their own strategic reasons.

Nor can Defendants claim surprise as to how the testimony was used.  As a legal matter, Rule 103 does not permit a party to reserve an evidentiary objection until after the opposing party rests in order to see how the testimony fits into the broader case. A party must object when the testimony is offered so the Court can rule and the proponent can address any deficiency in real time. *See Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir.1991).  The Court's own motion in limine ruling anticipated this obligation, directing the parties to "raise this as it comes up." ECF No. 1079 at 3.

Even if Defendants' failure to object is characterized as a forfeiture rather than waiver, the result is the same. At a minimum, Defendants forfeited any hearsay objection by failing to object contemporaneously. The demanding standard for making an exception to such a forfeiture  is not remotely satisfied where, as here, Dr. Hill applied a standard economic methodology under Rule 702 by analyzing structured business records reflecting competitive outcomes across numerous transactions, and where the Court has already ruled that any dispute regarding the win-loss data goes to weight rather than admissibility.

---

[1] The issue was also raised during Dr. Hill's deposition. *See, e.g.*, Hill Dep. Tr. 311:7-15 ("And I would have to review the report to see if, in that specific instance, what they said. But I would tell you, look I've looked at the win-loss data. I've looked at the switching. I've looked at the empirical evidence. There's just a lot of evidence here of content switching, if you don't take Ticketmaster."); 391:1-18 (examining Dr. Hill regarding his use of SeatGeek's win-loss data).



**II.     Dr. Hill's Use Of AXS And SeatGeek Ordinary-Course Win-Loss Data Was Properly Relied Upon And Described To The Jury In Dr. Hill's Testimony As One Of The Bases For His Expert Opinions**

Dr. Hill's testimony regarding the AXS and SeatGeek win-loss data was proper expert testimony under Rules 702 and 703, not the mere "regurgitation" of inadmissible hearsay that Defendants now claim. Mot. 7.

There is no question that "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). As the Court itself stated during the February 19, 2026 hearing, "[w]hile Rule 703 permits the admission of an expert's opinion even if it is based on otherwise inadmissible hearsay . . . the facts [and] data themselves can be disclosed to the jury only if their probative value in helping the jury to evaluate the opinion substantially outweighs their prejudicial effect." Feb. 19. 2026 Hr'g Tr. 62:22–63:3. Where an expert relies upon hearsay as one of the bases for an admissible opinion, it may be described to the jury.  If there are challenges to how the expert has interpreted or presented the underlying data, the proper forum for challenge is cross-examination—not a post-testimony motion to strike. *See* 29 Wright & Miller, Fed. Prac. & Proc. Evid. § 6274 (2d ed. 2025).

Dr. Hill did precisely what the Court's Daubert ruling permitted him to do: he "saw evidence that X or Y occurred, describing what it was, and explain[ed] how it supports [his] opinion." February 19, 2026 Hr'g Tr. 61:24–62:2. Dr. Hill's  presentation of his analysis of win-loss data in support of his opinion regarding content withholding was just one of numerous inquiries he performed that supported his expert opinion, including an empirical analysis of the Barclays Center, Trial Tr. 2111:11–2112:5, other arenas, *id.* 2112:6–19, and other data, *id.* 2113:4–24. He also analyzed data regarding NBA and NFL arenas from 2017 to 2024 and analyzed data which showed that venues that switched away from Ticketmaster received fewer Live Nation shows. Trial Tr. 2115–2116. It was based on all of his data analyses, including the win-loss data, that Dr. Hill reached his opinion that "the competition is not just who is the best ticketing software, but the loss of concert revenue also comes in it. And that reduces competition and limits the ability of rival ticketers to put competitive pressure on Ticketmaster."  Trial Tr. 2117:18–21. It was entirely proper, under the Federal Rules, for Dr. Hill to present the results of his analysis of the win-loss data so that the jury could evaluate whether it was in fact supportive of his opinions. *See* Trial Tr. 2284:17–2285:17.

Where an expert relies upon hearsay, as well as multiple other sources of information to support his expert opinions, he may present that information to the jury as one of the bases for his opinion.  *See, e.g.*, *In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. 1223, 1245 (E.D.N.Y.1985). "[C]omparing figures," as occurred here, requires that it "be expressed to the jury for the comparison to be meaningful." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 638 F. Supp. 3d 227, 254 (E.D.N.Y. 2022). The proper forum for Defendants to challenge Dr. Hill's interpretation or representation of the data was cross

WINSTON
& STRAWN
LLP

examination. *Id.* (citing *United States v. Cantoni*, No. 18-CR-562, 2019 WL 1441128, at *3 (E.D.N.Y. Apr. 1, 2019)). Indeed, Defendants demonstrated their own belief that reliance upon was the win-loss data was proper, as Dr. Carlton presented his own analysis of this same data in his expert report: Carlton reviewing this data to offer the opinion that "[o]rdinary course evidence from ticketers' win-loss data indicates that many venues have little to no concern about losing access to Live Nation content if they contract with a non-Ticketmaster ticketer." Carlton Rep. ¶ 71; *id.* ¶¶ 73–76.

Defendants' caselaw does not support a different result. Those cases involved experts functioning as conduits for testimonial hearsay narratives concerning disputed historical facts or subjective intent—a fundamentally different situation from the one presented here. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) (historian expert speculating on motivations of other witnesses without any expertise); *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003) (seventy pages of transcript where investigating case agent also serving as expert relied on conversations with non-testifying witnesses). Likewise, this is not a case where Dr. Hill is merely replicating results provided by other parties (*Golden Unicorn Enterprises, Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 379 (S.D.N.Y. 2023)), or performing simple arithmetic on numbers that would be in evidence (*FPP, LLC v. Xaxis US, LLC*, No. 14 CV 6172, 2017 WL 11456572 (S.D.N.Y. Feb. 13, 2017)), or merely repeats "highly specific" and simple facts (*United States v. Mejia*, 545 F.3d 179, 195 (2d Cir. 2008)).[2]

Dr. Hill did far more than simple arithmetic or mere repetition of hearsay. Dr. Hill analyzed the win-loss data as one component of a multifaceted empirical analysis that included regression analysis of concert switching, robustness checks, and market-wide examination of competitive dynamics. The win-loss data was simply one of the multitude of bases for Dr. Hill's opinion and he was properly permitted to describe his analysis to the jury. If Defendants had concerns that his testimony was crossing the line into a mere recitation of hearsay, or otherwise was unreliable, they were required to raise a timely objection, a timely motion to strike, or address the issue on cross-examination. They chose not to do any of these, once again for their own strategic reasons.

It is also important to recognize that Dr. Hill's analysis of the win-loss data was in response to the analysis of this data by Dr. Carlton. The fact that Dr. Carlton did not testify about his analysis at trial (apparently because Defendants decided to file this belated motion to strike Dr. Hill's testimony) was a tactical decision by Defendants. That decision cannot change the fact that

---

[2] Contrary to Defendants' assessment, Mot.. 6 n.1, the underlying AXS and Seat Geek win/loss data *would* have been admissible. The statements to SeatGeek or AXS would be admitted for the effect on the listener, *see* Fed. R. Evid. 801(c), and courts routinely admit win/loss data as business records. *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 214 (D.D.C.), *aff'd*, 855 F.3d 345 (D.C. Cir. 2017); *United States v. Bazaarvoice, Inc.*, No. 13-CV-00133, 2014 WL 203966, at *54 (N.D. Cal. Jan. 8, 2014). This is true "even though they are the records of a business entity other than one of the parties, and even though the foundation for their receipt is laid by a witness who is not an employee of the entity that owns and prepared them." *Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987).

**WINSTON & STRAWN**
LLP

Defendants themselves believed the use of such data was proper for an expert—until they decided it was not. Defendants cannot disclose their own expert opinion based on win-loss data and then claim that Plaintiffs' expert opinion, using the same data, is somehow not admissible. Mot. 7-8.

Nor did Defendants preserve this admissibility issue by filing a prior Daubert motion. Admissibility at trial is a separate issue which requires that a new contemporaneous objection. *See, e.g.*, Fed. R. Evid. 702, ("Admissibility entails a threshold inquiry over whether a certain piece of evidence ought to be admitted at trial."); *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1132 (2d Cir. 1995) (differentiating between "admissibility" at the *Daubert* threshold and use of testimony at trial); *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 141 (S.D.N.Y. 2003) (trier of fact is tasked with considering the weight of admitted testimony).

**III. Granting Defendants' Motion, Less Than 24 Hours Before The Close of Evidence and Nearly Two Weeks After Plaintiffs' Closed Their Case, Would Cause Incurable Prejudice to Plaintiffs**

Even if Defendants' objections had been preserved and had substantive merit, which they do not, the Court must deny the motion to strike because granting it at this late stage of trial would inflict incurable prejudice on Plaintiffs, which have already rested their case.

Defendants themselves argue that "The Window To Cure Dr. Hill's Reliance on Hearsay Closed with Plaintiffs' Case" (Mot. 9). Yet, Defendants did not inform Plaintiffs (or the Court) until the morning that Dr. Carlton testified—after Plaintiffs completed their case—that they intended to move to strike Dr. Hill's testimony for presenting hearsay, which could have been cured had the objection been timely raised on direct, Trial Tr. 2117:22–2118:23, or redirect, *id.* 2284:17–2285:17. The Court should not tolerate this litigation gamesmanship.

Had Defendants objected when Dr. Hill testified, Plaintiffs could have addressed the asserted concern immediately—including by eliciting additional foundation testimony, clarifying Dr. Hill's economic methodology, or presenting additional evidence concerning the nature and reliability of the win-loss data. Trial Tr. 3986:17–3987:10. Now, it is too late, so granting Defendants' motion would cause severe prejudice to Plaintiffs' case.

Because Defendants sat on their objection, Plaintiffs cannot reopen their case to call additional witnesses or lay additional foundation for the win-loss data. They cannot recall Dr. Hill to provide further testimony contextualizing the data. The prejudice would therefore be incurable and severe. Defendants' delay alone is thus a basis for denying the motion to prevent the prejudice that Defendants have been lying in wait to inflict. *Cf. Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296–98 (2d Cir. 2006) (late exclusion improper where it would cause prejudice and leave no meaningful opportunity to cure); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961–63 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir. 1988) (reversing late evidentiary exclusion that unfairly deprived the opposing party of a chance to respond)).



The contemporaneous-objection rule exists for precisely this reason: to prevent the kind of gamesmanship that Defendants now attempt. *Puckett v. United States*, 556 U.S. 129, 134 (2009) ("[T]he contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor"). Permitting Defendants to wait until Plaintiffs rested their case—and then to seek to strike evidence that was introduced without objection—would undermine Rule 103's purpose and produce exactly the prejudice the rule is designed to prevent. For this reason, too, the motion to strike must be denied.[3]

---

[3] Defendants also argue that Plaintiffs should not be permitted to present Dr. Hill's analysis of the win-loss data during closing arguments for the truth of the hearsay. But this is not an open issue. As Plaintiffs stated to the Court, they do not intend to suggest that the jury treat the win-loss data as being offered for its truth. Dr. Hill's analysis of this data will instead only be presented as one of the bases for his opinions, which are admissible under Rules 702 and 703. Trial Tr. 4445:2-11.

WINSTON
&STRAWN
LLP

Dated: April 8, 2026

Respectfully Submitted,

/s/ Jeffrey L. Kessler

Jeffrey L. Kessler
Eva W. Cole
Johanna Rae Hudgens
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
ewcole@winston.com
jhudgens@winston.com

Jeanifer E. Parsigian (*pro hac vice*)
**WINSTON & STRAWN LLP**
101 California Street, 21st Floor
San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jparsigian@winston.com

Joshua Hafenbrack (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
jhafenbrack@winston.com

*Counsel for Plaintiff State of New York*



200 Park Avenue
New York, NY 10166-4193
+1 212-294-6700
+1 212-294-4700

NORTH AMERICA    SOUTH AMERICA    EUROPE

*/s/ Robert A. Bernheim*
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

*/s/ Brent Nakamura*
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

*/s/ Conor J. May*
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

*/s/ Nicole Demers*
Victoria Maria Orton Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: nicole.demers@ct.gov
*Attorney for Plaintiff State of Connecticut*

WINSTON
&STRAWN
LLP

/s/ Adam Gitlin
Adam Gitlin (admitted *pro hac vice*)
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

/s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Jesse Moore
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

/s/ Christopher Teters
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor



Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

*/s/ Mario Guadamud*
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

*/s/ Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

WINSTON
&STRAWN
LLP

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

*/s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

*/s/ Zachary Frish*
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

*/s/ Andrew F. Esoldi*
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

*/s/ Evan Crocker*
Evan Crocker (admitted *pro hac vice*)

Assistant Attorney General, Division Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

*/s/ Jonathan H. Hatch*
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

*/s/ Sarah Mader*
Sarah Mader (admitted *pro hac vice)*
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)



Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted pro hac vice)
Assistant Deputy Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
Attorney for Plaintiff State of South Carolina

*/s/ Hamilton Millwee*
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207

WINSTON
& STRAWN
LLP

Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

*/s/ Diamante Smith*
Diamante Smith (admitted pro hac vice)
Assistant Attorney General, Antitrust Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
*Attorney for Plaintiff State of Texas*

*/s/ Marie W.L. Martin*
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

*/s/ Sarah L. J. Aceves*
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

*/s/ David C. Smith*
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588

Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

*/s/ Ashley A. Locke*
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188