**VIA ECF**                                                                April 10, 2026

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

Re: *United States, et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-03973

Dear Judge Subramanian:

Non-party SeatGeek, Inc. ("SeatGeek"), through the undersigned counsel, writes pursuant to Rule 11(C) of the Court's Individual Practices in Civil Cases, and in support of Defendants' April 7, 2026 letter motion (ECF No. 1393) to seal or redact certain portions of their April 7, 2026 Letter-Motion to Strike Certain Hill Testimony Regarding Win/Loss Data (ECF No. 1397), hereinafter "Defendants' Letter") and exhibits thereto, which were designated Highly Confidential or Confidential by SeatGeek pursuant to the Amended Protective Order (ECF No. 347).

A court's consideration of a request to seal is governed by the three-step framework articulated by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). Courts must first determine "that the documents at issue are indeed judicial documents," to which "a common law presumption of access attaches." *Id.* at 119 (internal citations and quotations omitted). Second, if the documents are judicial documents, the court then "must determine the weight of that presumption." *Id.* Third, the court must "balance competing considerations against" that presumption. *Id.* at 120 (internal citations and quotations omitted). One such competing consideration is the protection of confidential business information. *See, e.g, Valassis Communications, Inc. v. News Corporation,* 2020 WL 2190708, at *4 (S.D.N.Y. May 5, 2020) ("protecting the confidentiality of sensitive business information is a legitimate basis for rebutting the public's presumption of access to judicial documents").

As to the first step, SeatGeek does not dispute that the documents at issue here are judicial documents.

As to the second step, the presumption of public access to SeatGeek's confidential information submitted in support of a mid-trial evidentiary motion is akin to that submitted with a motion *in limine,* which is "lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment." *Brown v. Maxwell,* 929 F.3d 41, 50 (2d Cir. 2019). The limited information SeatGeek seeks to seal was not presented at trial and is therefore "ancillary to the court's core role in adjudicating a case." *Id.*

As to the third step, the low presumption of public access to these documents is outweighed by SeatGeek's significant interest in keeping its competitively sensitive business information under seal. *See W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.,* 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022) ("courts will commonly grant a company's request for sealing of proprietary business information, such as internal analyses, business strategies, or customer negotiations when disclosure of that information could provide competitors with an unearned advantage") (internal

citations and quotations omitted); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are sources of business information that might harm a litigant's competitive standing") (internal citations and quotations omitted).  Moreover, SeatGeek's status as a non-party weighs in favor of maintaining these documents under seal.  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.") (internal citations omitted).

The information SeatGeek seeks to seal or redact consists solely of SeatGeek's "win-loss report" and excerpts therefrom.  This report is an internal, detailed analysis of SeatGeek's efforts to win primary ticketing business from venues over a period of five years, including SeatGeek's candid, internal assessment of the reasons it was unsuccessful in obtaining ticketing contracts with particular venues.  This assessment includes feedback provided by venues to SeatGeek sales personnel about positive and negative aspects of individual SeatGeek offers, information identified by SeatGeek sales personnel as important for future negotiations with the venue, the reasons SeatGeek believes it won or lost the business, and other specific aspects of SeatGeek's proposal recorded for the purpose of informing SeatGeek's future efforts to obtain business.  In short, the win-loss report, if publicly disclosed, would be a roadmap for SeatGeek's competitors as they prepare future proposals to the venues identified, as it would allow competitors to tailor each of their own venue proposals to the venue's prior feedback to SeatGeek.

Specifically, SeatGeek requests that the following information filed provisionally under seal remain sealed or redacted on the public docket:

- Defendants' Letter, page 5, second bullet.  This passage reveals SeatGeek's internal assessment of the reasons it did not win a contract with a particular venue, as indicated in the win-loss report.  If publicly disclosed, it would provide SeatGeek's competitors with a competitive advantage vis-à-vis SeatGeek in future negotiations with that venue.

- Exhibit 3 to Defendants' Letter (PX0283, SG-CID-00017798), in its entirety.  This exhibit is the full win-loss report discussed above.

- Exhibit 5 to Defendants' Letter (ECF No. 1397-2), page 8, redacted passage immediately preceding the reference to "PX-0283, line 91."  This passage reveals SeatGeek's internal assessment of the reasons it did not win a contract with a particular venue, as indicated in the win-loss report.  If publicly disclosed, it would provide SeatGeek's competitors with a competitive advantage vis-à-vis SeatGeek in future negotiations with that venue.

This information falls squarely within the rubric of "proprietary business information, such as . . . customer negotiations" that courts commonly seal where, as here, "disclosure of that information could provide competitors with an unearned advantage."  *See W.J. Deutsch & Sons,* 2022 WL 890184, at *2 (internal quotations omitted).  Accordingly, SeatGeek respectfully requests that Exhibit 3 to Defendants' Letter remain sealed in its entirety, and that the provisional redactions to page 5 of Defendants' Letter and page 8 of Exhibit 5 thereto remain under seal.

Respectfully submitted,

COHEN & GRESSER LLP

/s/ Ronald F. Wick
Melissa H. Maxman (admitted *pro hac vice*)
Ronald F. Wick (admitted *pro hac vice*)
Derek Jackson
2001 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C.  20006

William E. Kalema
800 Third Avenue
New York, New York 10022

mmaxman@cohengresser.com
rwick@cohengresser.com
djackson@cohengresser.com
wkalema@cohengresser.com

Attorneys for Non-Party SeatGeek, Inc.

3