

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

April 10, 2026

The Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl St., Room 15A
New York, New York 10007

Re: *United States et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-3973-AS

Dear Judge Subramanian:

Pursuant to Rule 11 of Your Honor's Individual Practices in Civil Cases, non-party Anschutz Entertainment Group, Inc. ("AEG") submits this letter motion to respectfully request to seal exhibits PX0024 and PX0027 attached to Defendants' April 7, 2026 Letter Motion to Strike Certain Hill Testimony Regarding Win/Loss Data, Dkt. No. 1397, (hereinafter "Defendants' Letter Motion"), which were designated as "Highly Confidential" under the Protective Order. Dkt. No. 347. AEG met and conferred with Defendants and they do not oppose the sealing of this material. For the reasons set forth below, AEG's request for sealing is narrowly tailored and overcomes the presumption in favor of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).

It is well established that "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). "The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public." *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (citations omitted). Courts first assess whether the documents at issue are "judicial documents . . . 'relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Second, "the court must determine 'the weight of the presumption'" of public access to the documents. *Stern*, 529 F. Supp. 2d at 420 (quoting *Lugosch*, 435 F.3d at 119). Third, the "'court must balance competing considerations against'" the presumption of public access. *Id.* (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). Third party privacy interests "are a venerable common law exception to the presumption of access." *Amodeo II*, 71 F.3d at 1050–51 (citation modified).

Although documents AEG requests to seal are judicial documents, the presumption of public access to exhibits submitted in support of a mid-trial evidentiary motion are akin to that which applies to a *motion in limine*, which is "lower than the presumption applied to material introduced at trial". *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). However, even if the exhibits referenced were akin to trial exhibits and carried a strong presumption of public access, AEG's narrowly tailored sealing request would nevertheless overcome that presumption. *Lugosch*, 435 F.3d at 119. Specifically, the information that AEG seeks to seal consists exclusively of AXS's win-loss data contained in PX0024 and PX0027. These reports include the following categories of sensitive information: (1) a list of the venues from which AXS has attempted to win business spanning a four-year period; (2) detailed information regarding the financial offer terms made to actual and potential venue clients and internal revenue projections from specific contracts; (3) a listing of AXS's actual or perceived competitors for specific venue clients; (4) detailed contemporaneous impressions of AXS's relative strengths and

1

The Honorable Arun Subramanian             - 2 -

weaknesses vis-à-vis its competitors; (5) AXS's internal strategy for competing for and winning specific venue clients; and (6) AXS employees' contemporaneous impressions of the reasons for either succeeding or failure to succeed in winning new ticketing business or securing renewals from venue clients.

These documents are precisely the kind of competitive analyses and proprietary business information that qualify for sealing under the law of this Circuit. *See W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022) (internal quotations omitted) (noting that courts commonly seal "proprietary business information, such as . . . customer negotiations" where "disclosure . . . could provide competitors with an unearned advantage"); *see also Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (sealing defendants' "internal analysis of the competitiveness of its practice groups"); *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11-12 (S.D.N.Y. Mar. 29, 2016) (sealing the producing party's "competitive analyses"). Further, the disclosure of such documents to the public—which includes AXS's competitors and customers—would reveal AXS's competitive strategies in seeking to win or maintain ticketing contracts, gifting an "advantage" to [AXS's] competitors and causing "harm [to AXS's] businesses." *Lexington Furniture Indus., Inc. v. Lexington Co.*, 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021) (sealing sales information and customer lists). Courts routinely seal such internal analyses and projections because the disclosure would cause competitive harm to the moving party. *See Stegmann v. Wolin*, 2021 WL 1838219, at *2 (E.D.N.Y. May 7, 2021) ("disclosure of the company's internal analysis of its own competitive standing in the market would give competitors an unfair advantage").

Moreover, to the extent these exhibits contain win-loss entries dating from more than four years ago, courts routinely seal competitively sensitive business information, even those from more than four years ago, because the disclosure of such terms can harm the company's competitive advantage in future business dealings. See *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021) ("Courts commonly find . . . pricing information, and the like satisfy the sealing standard." (citation omitted)); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit.").

Finally, AEG does not seek to seal the relevant portions of AXS's win-loss data cited in Defendants' Letter Motion itself. The remaining detailed win-loss data contained in the attached exhibits that AXS seeks to seal are not necessary for the public's understanding of the motion to which they are attached and, if disclosed, would cause extensive harm to AXS's competitive standing for the reasons described above. This information is not of "value . . . to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119.

For the foregoing reasons, AEG respectfully requests that this Court grant AEG's motion to seal AXS's win-loss data contained in the exhibits appended to Defendants' Letter Motion.

The Honorable Arun Subramanian          - 3 -

Respectfully submitted,

*/s/ Justin W. Bernick*
Justin Bernick (admitted *pro hac vice*)
Molly Pallman (admitted *pro hac vice*)
555 Thirteenth St., NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
molly.pallman@hoganlovells.com

*/s/ Claude G. Szyfer*
Claude G. Szyfer
390 Madison Avenue New York, New York 10017
Telephone:(212) 918-3000
Facsimile: (212) 918-3100
claude.szyfer@hoganlovells.com

*Attorneys for Anschutz Entertainment Group, Inc.*

Dated: April 10, 2026