# EXHIBIT 8

---

**From:**        Sinkler, Chinita M. (ATR) <Chinita.Sinkler@usdoj.gov>
**Sent:**        Thursday, February 26, 2026 4:27 PM
**To:**          SubramanianNYSDChambers@nysd.uscourts.gov; Dahlquist, David (ATR); Sweeney, Bonny (ATR); Thornburgh, John (ATR); Markel, Arianna (ATR); Strong, Curtis (ATR); Teslicko, David (ATR); adam.gitlin@dc.gov; Pfeiffer, Al (Bay Area); Marriott, David (NY); Gass, Andrew (Bay Area); O'Mara, Tim (Bay Area); Giordano, Jennifer (DC); Champlin, Lindsey (DC); Fayne, Kelly (Bay Area); Gushman, Robin (Bay Area); Lauren Moskowitz; Jesse Weiss; Nicole Peles; rreiland@cravath.com
**Subject:**     United States et. al  v. Live Nation et. al  24cv3973 - Proposed Voir Dire and Day 1 Script
**Attachments:** 20. US v LN Voir Dire DRAFT (Plaintiff Edits).docx; 24cv3973 Day 1 Script DRAFT.Plaintiffs Edits.2.26.26.docx

Dear Judge Subramanian,

 In response to the Court's Feb. 25, 2026, Order please see attached Plaintiffs' proposed edits to the Court's proposed (1) voir dire and (2) preliminary jury instructions (Day 1 Script).

Thanks,

**Chinita M. Sinkler**
Trial Attorney
United States Department of Justice|Antitrust Division
chinita.sinkler@usdoj.gov
Office phone: (202) 598-8073
Mobile phone: (202) 677-1531

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA et al.,

     *Plaintiffs*,

     v.

LIVE NATION ENTERTAINMENT, INC., and
TICKETMASTER L.L.C.,

     *Defendants*.

Civil No. 1:24–cv–3973-AS

---

**QUESTIONS FOR JURORS**

Please indicate if your answer to any of the following questions is "**yes**" by circling the number of that question.  If your answer to a question is "no," you do not need to do anything.  **Do not write your name or make any other marks on the questionnaire**; the only marks you should make are circles around the questions for which the answer is "yes."  If, when asked about a "yes" answer, you prefer not to elaborate in open court, please say so and we will talk at the bench.

1.     Do you have any changes to make from your questionnaire answers from last week?

2.     Do you have any ideas or prejudices that would prevent or hinder you from following my instructions as to the law?

3.     Do you have any doubt that you will be able to apply the law as I explain it even if you disagree with it?

4.     Do you have any religious, ethical, or personal beliefs that would prevent you from passing judgment on another person or entity or awarding damages to a person or entity?

5.     Do you have any personal knowledge of the claims in this case as I have described them?

6.     Do you have any opinions regarding this case based on my description that would impair your ability to serve as a fair and impartial juror in this case?

7.     The lawyers, law firms, and government agencies involved in this case are: the U.S. Department of Justice Antitrust Division, and the Attorneys General of the States of Arizona, Arkansas, California, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico,

1

New York, North Carolina, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming, the Commonwealths of Massachusetts, Pennsylvania, and Virginia, and the District of Columbia. Do you or someone close to you, such as spouse, child, parent, or sibling, know any of the attorneys, law firms, or government agencies I have just named?

8. Have you or someone close to you had any business dealings with, or been employed by, any of these attorneys, law firms, or government agencies?

9. Have you or someone close to you ever been employed by Live Nation or Ticketmaster?

10. Have you or someone close to you ever had a business relationship with Live Nation or Ticketmaster, other than purchasing a ticket through Ticketmaster or attending an event promoted or hosted by Live Nation?

11. Have you had any experience purchasing a ticket using Ticketmaster that would affect your ability to be a fair and impartial juror in this case?

12. Have you had any experience attending an event promoted or hosted by Live Nation that would affect your ability to be a fair and impartial juror in this case?

13. Do you own stock in Live Nation or Ticketmaster, other than through a mutual fund or other diversified investment?

14. Have you or someone close to you been employed by the federal government, or by a law enforcement or regulatory agency?

15. Have you or someone close to you had any experience, good or bad, with the federal government or state government that might affect your ability to be a fair and impartial juror in this case?

16. Have you or someone close to you ever had any experience, good or bad, with Live Nation or Ticketmaster that might affect your ability to be a fair and impartial juror in this case?

17. Do you have any opinions, positive or negative, about Live Nation or Ticketmaster that might affect your ability to be a fair and impartial juror in this case?

18. Do you have any strong opinions, positive or negative, toward large corporations in general?

19. Do you have any strong opinions, positive or negative, about the federal government or state government that might affect your ability to be a fair and

2

impartial juror in this case?

20.  Do you have any education, training, or work experience in any of the following: the live entertainment industry; economics; statistics; accounting, finance or banking; marketing or sales; promotions or ticket sales; media or communications; computers or software; law or the courts?

21.  Have you ever been employed in the live entertainment industry?

22.  Have you had any experience with ticketing websites or apps (such as Ticketmaster, AXS, SeatGeek, Etix, etc.) that would affect your ability to be a fair and impartial juror in this case?

23.  Have you or someone close to you ever been involved in a lawsuit or claim, or been a witness in a lawsuit or claim?

24.  The potential witnesses in this case  are:
John Abbamondi
Dr. Rosa Abrantes-Metz
Brad Alberts
Carlos Alvarez
Dr. Shannon W. Anderson
Benjamin Baker
Callie Brennan
Matthew Caldwell
Mark Campana
Oliver Chi
Joe Choti
Robert Davari
Russell Doussan
Darryl Eaton
Michael Evans
Marc Geiger
Chris Granger
Jack Groetzinger
Grant Hall
George Hanna
Matthew Hansen
Mitch Helgerson
Dr. Nicholas D. Hill
Seth Hurwitz
Jeff Ianello
Laurie Jacoby
Lori Kelly
Edward Khoury
Greg Klippert

3

Amy Latimer
Anthony Lazzaro
Christian Lewis
Colin Lewis
Ben Lovett
Clay Luter
Jay Marciano
David Marcus
Walter McDonald
Louis Messina
Cristopher Miller
Pat Nagle
Marla Ostroff
Bryan Perez
Larry Plawsky
Michael Rapino
Bob Roux
Jared Smith
Doug Thornton
Ben Weeden
Jason Wright
Caroline Burdick
Do you personally know any of the potential witnesses I have just named?

25. Have you ever had an experience with the legal system that might affect your ability to be a fair and impartial juror in this case?

26. Is there anything, such as poor vision, difficulty hearing, or difficulty understanding spoken or written English, that would make it difficult for you to serve on this jury?

27. Is there anything else, including something you have remembered in connection with one of the earlier questions on your questionnaire, that you think you would like to tell me in connection with your service as a juror in this case?

4

### QUESTIONS FOR INDIVIDUAL JURORS

1. State your name, and county of residence.  If you have lived in a different county at some point in the last five years, please state the other counties you have resided in during that time.

2. State your age.

3. What is the highest level of education you completed?

4. Do you have any educational or professional degrees?  If so what are they?

5. If you had a major in college, what was it?

6. Where are you employed?

7. If you have been at this job for less than five years, where else have you been employed over the last five years?

8. If you are not employed or are retired, what was your last job?

9. Who are the members of your household and for whom do they work?

10. What newspapers or magazines do you read on a regular basis, or podcasts you listen to?

11. What books do you read?

12. What television shows do you watch?

13. Where do you get your news?

14. What social media do you use?

15. What organizations or clubs do you belong to, if any?

16. What do you do in your spare time?

17. Have you ever served as a juror?  If so, was it a trial jury or a grand jury?  When did you serve?

18. If a trial jury, did you reach a verdict? **(Do not tell us what the verdict was.)**

19. Is there anything in your personal history or life experience, whether I've specifically asked about it or not, that would affect your ability to reach a fair and impartial verdict in this case?

5

## United States v. Live Nation Day 1 Script

## Upon Jury Venire Entering Courtroom (Counsel and Judge to Stand)

First off, good morning, everybody. Thank you all for being here. My name is Arun Subramanian. I'm a United States district judge. I am going to be presiding over the trial that is going to begin in this courtroom here today.

The case today is a civil trial, which is called *United States et al., v. Live Nation Entertainment, Inc. and Ticketmaster L.LC.* The "et al." in the name means that there are more parties who are on the same side as the United States, which we'll discuss in a moment. We are about to begin the process of selecting the jurors who will hear and decide this case.

Now, as all of you entered the courtroom, all of you should have received a questionnaire and a writing utensil. What I would ask that you do right now is not to look at that yet. Please don't read the questions

1

yet. Don't write anything on the questionnaire. I would like to give you some preliminary instructions first about what we are going to be doing. After that, we'll go through the questionnaire question by question.

So what I want to do is ask you all to listen carefully. Let me know if any of you have any difficulty hearing or understanding anything that I am saying during the course of this morning. Just raise your hand, and I will be happy to speak up if it would be helpful to you.

Now, before we get started with our work here this morning, I just want to take a moment to thank all of you for your presence here today. Jury trials, as all of you know, are part of the bedrock of America's democracy. Jurors, people like all of you, and not judges, decide the outcome of criminal cases and civil cases in our country. This right to a trial is so important that it is enshrined in our Constitution.

I and my staff have tried to think through each of the aspects of your service here as jurors. Please let us know or let me know through

2

my deputy, Mr. Hernandez, if there's anything else that we can do to make your jury service more comfortable.

Now, I recognize, I know that some of you are inconvenienced by this service. But jury service, as I said earlier, is one of the highest most important duties of a citizen of the United States. I, like my fellow judges and the parties here, are all very grateful for your service. Our system of justice depends on you.

Let me tell you a little bit about the trial. The trial itself is expected to last up to 6 weeks. I promise that we will do our best to meet that schedule, but as with all things in life, there's always a chance that it might take a little extra time, or a little less time, depending on things coming up during trial.

After the trial ends, the jurors who we select today will have to deliberate, which will add some additional time. Given all of that, it's possible that the trial may not conclude until the week after trial ends.

Now, in a few moments, if you have an extraordinary personal hardship that prevents you from serving in this case, you will have the

3

opportunity to bring it to my attention. I emphasize the word "extraordinary" because I know that jury service can be something of a hardship for you. You have jobs or other places that you would rather be. Unfortunately it would just be too hard for us to seat a jury if everybody was excused on that basis. So a hardship must be extraordinary for you to be excused. Let me thank you again for your willingness to serve.

As we are beginning this process, let me tell you a little bit about how our days are going to be structured during the trial so that you know that information. Today, we'll be going to 5 pm. In future days, we will try to end by 3 p.m. to allow you time to take care of other things in your life in the afternoon and evening, and will go no later than 4 p.m.

We will want to begin on time every morning, so I am going to ask the selected jurors to arrive in our jury room no later than 8:45 a.m. each morning. If you are all here on time, then we can start our testimony early. Today, we will take a one-hour break for lunch. In future days, we will take one half-hour break from 11:30 to noon.

4

Because the lunch break is short, I am going to provide you with what we call light refreshments, meaning bagels and coffee and the like. And I'm probably going to encourage the jurors who we select to bring a bag lunch or sandwich so that you don't have to leave the building for the remaining trial days, given the shorter break. That way we can keep the lunch break short so that you can leave earlier. Because we will be able to take a short lunch break, we will be able to do that without adding extra time to the trial schedule.

So, prospective jurors, our goal in selecting the jury now, as I am sure that all of you know, is to make sure that we have a jury of citizens who will decide this case both fairly and impartially. The jury that we select must decide the case based solely on the evidence that is presented in court during the course of the trial. Therefore, we want to seat a jury that does not have any bias or prejudice in favor of or against either side in the case.

In order for us to do that, I am going to ask certain questions of you, questions about your personal background, your family, some of

5

your beliefs about certain matters, how you are employed and so forth. Please understand that as we begin this process that my questioning is not intended to pry into your lives without purpose. Rather my questioning is designed to make sure that we select fair and impartial jurors who can listen to the evidence with an open mind and decide this case based only on the sworn testimony that is given in this courtroom, whatever exhibits may be received by the court into evidence and other facts that I tell you to accept, and my instructions as to the law. It is that which is our goal at this point.

Now, from your answers to my questions, I will be able to determine whether or not you should be excused for cause. That basically means for a good reason. Your answers will also allow the lawyers to exercise their judgment with respect to their use of what are called peremptory challenges. Peremptory challenges give each side the opportunity to excuse a certain number of jurors without giving any reason for doing so. So if you're excused, please don't consider that to be a reflection on any of you personally. Our system of justice requires

jurors who are not only totally impartial, but also who lack even the appearance of being partial or biased.

If you are excused from serving as a juror in this case, you will have done your full duty by your presence and your readiness to serve if chosen. From a practical perspective, if you're excused from service in this trial, you will collect your card and other things from the room and you will be sent back down to the jury room, and the good folks in the jury room will give you further instructions.

Now, because I am going to be asking you a number of questions, what I would like to do is to ask all of you to stand to take an oath. Mr. Hernandez will administer the oath. By taking this oath, you are promising that you will respond truthfully and completely to my questions.

Thank you.

(Panel sworn)

Thank you very much. You can be seated. Under the oath which you have just taken, you are obligated to give truthful and complete

7

answers to my questions. Although the questions may cover many areas, it is your duty to honestly and conscientiously answer each of them. False or misleading answers may result in the seating of a juror who might otherwise have been discharged by Court -- that is me -- for cause or stricken by the exercise of a party's exercise of a peremptory challenge. That could result in a miscarriage of justice.

It is your solemn duty to serve as a fair and impartial juror if you are able to do so. But it's equally your solemn duty not to serve if for any reason you cannot be fair and impartial. Accordingly, it is your duty, which you should not feel the slightest hesitation or awkwardness about performing, to disclose any fact or belief that might prevent you from serving as a fair and impartial juror in this case. Now, even though what you say, what the lawyers say and what I say in this courtroom is not evidence, it is very important that each of you not say anything here in open court about the parties in this case or about any other matter that might affect the open-mindedness and fairness of the other prospective jurors. So if there is something that you want to disclose to me that you

8

think might affect or influence the other jurors, please just let me know, and we can discuss it out of earshot of the entire group.

Similarly if any of my questions call for personal information that you would rather not discuss in front of everybody here in the courtroom, please just let me know, and we can discuss it out of earshot. If you want to sound like a lawyer, you can say, "Your Honor, may I approach the bench?" and you can come forward, and we can talk about the issue up here at the bench. The most important thing is that you should let me know if there's something that you would like to talk about, and if you would like to talk about it without having everyone in the courtroom hearing.

Now, some of you may have heard of the concept of alternate jurors. You should all know that there are no alternate jurors in civil cases in federal court. So all of the jurors who we select today will participate in the deliberations and decisions with respect to this case. Before we turn to the selection of the jurors, I would like to explain just

9

a few basic rules of law that are going to be guiding all of us during the course of the trial.

The function of the jury is going to be to decide questions of fact. Those of you who are selected as jurors will be the only judges of the facts. Nothing that I say, nothing that the lawyers say or do may in any way intrude on your role as the exclusive fact-finders based only on the evidence that is presented here in the courtroom.

When it comes to the law, however, as distinguished from the facts, you must take your instructions from the Court. That is from me. And you are going to be bound by my instructions. You may not substitute your own ideas about what the law is or what you think the law should be. At the conclusion of the case your job will be to reach a verdict based only on the evidence presented in the case and my instructions on the law, which I will provide to you in more detail at the end of the evidence. Before I proceed, I would like to give you a short overview of the case just so that you have some idea about what it is about.

10

Keep in mind that, as I said earlier, what I say here is not evidence, and also I am not providing you all of the details of the case. Those of you who are selected as jurors will hear all of the evidence during the trial.

As I said earlier, this is a civil action. The party who brings a lawsuit is called the plaintiff. There are many plaintiffs in this case. One is the United States. The other plaintiffs include 39 states and the District of Columbia. These states are:

- Arizona

- Arkansas

- California

- Colorado

- Connecticut

- Florida

- Illinois

- Indiana

- Iowa

11

- Kansas

- Maryland

- Massachusetts

- Michigan

- Minnesota

- Mississippi

- Nebraska

- Nevada

- New Hampshire

- New Jersey

- New Mexico

- New York

- North Carolina

- Ohio

- Oklahoma

- Oregon

- Pennsylvania

- Rhode Island

- South Carolina

- South Dakota

- Tennessee

- Texas

- Virginia

- Washington

- West Virginia

- Wisconsin

- Wyoming

- Louisiana

- Utah

- Vermont

When I say "plaintiffs" I'm talking about the United States, these states, and the District of Columbia. When I am referring only to the individual states and the District of Columbia together, I may use the term "Plaintiff States." Plaintiffs have sued the defendants, Live Nation

13

Entertainment, Inc. and its subsidiary company Ticketmaster L.L.C.

When I say "defendants," I'm talking about both Live Nation and

Ticketmaster.

This case involves claims by the United States and Plaintiff States

that Defendants have illegally monopolized or otherwise unlawfully

impeded competition in various markets related to music and comedy

shows in the live entertainment industry. Plaintiffs allege that

Defendants' conduct has harmed competition in each of these markets,

and thereby harmed artists, venues, and ticket-buying fans.

Defendants have denied these allegations on multiple grounds.

For those of you who end up being on the jury, I will give more

detailed instructions on the law and the case later on.

Now, I am going to ask Mr. Hernandez to call 20 of you. As your

names are randomly called, please move to the seat in the jury box that

will be indicated for you by Mr. Hernandez. The rest of you can just

remain where you are for a moment. Thank you.

**[KH to Fill box with 20 jurors.]**

14

In a moment I'm going to go through the questionnaire with all of you, but first, listen carefully as I explain to you how we're going to proceed here. I'm going to ask Juror No. 1 each of the questions on the form other than the questions on the last page, under the heading, Questions for Individual Jurors, which we'll get to later. As I go through each question, all of you should follow along on the questionnaire. If your answer to any of the questions is yes, please use your writing utensil to just circle the number of the question. Do not write your name or make any other marks on the questionnaire. The only marks that you should be making are circles on the questions for which your answer is yes.

Now, when I finish reading through all of the questions with Juror No. 1, I'm going to ask Juror No. 2 simply if he/she had any yes answers to any of the questions. After Juror No. 2, I'll do the same thing for Juror No. 3. I'll ask him/her if he/she had any yes answers to any of the questions and so on.

15

After Juror No. 1, however, I will not read any of the questions aloud. That's why it's very important that all of you listen along as I read the questions to Juror No. 1. And as I read each question, you circle the number of the question if your answer to that question is yes.

Now, for those of you who are not seated in the jury box, you should be doing exactly the same thing; that is, you should be reading along as I read to Juror No. 1, and you should circle any of the questions for which your answer is yes. That's because it's possible that the jurors in the jury box may be excused, and if they are, you may be called upon to take their place. If that happens, what I'll do is immediately after you've been seated is I will ask you if you had any yes answers to any of the questions. So it's very important that you listen carefully and that you circle those questions for which your answer is yes as we go along.

So with that, please turn to your questionnaires.

**[Judge to work through questionnaires with jurors until 20 jurors remain without any for cause challenges.  Attorneys then to**

16

**be given 5 minutes for simultaneous peremptory challenges (3), and then take lowest number <mark>12</mark> jurors. Swear in jury.]**

**[For any break provide following instruction to jurors.]**

*So what I'm going to do is just provide a couple of brief instructions to everybody in the room. First off, feel free to chat, but don't talk at all about the case or the people or issues or places involved in it. Second, don't talk or communicate with anybody else about the case by any means including on your internet, app or whatever it may be. Also, please don't do any research into the case or the people or issues involved in it.*

*I'm also ordering that the parties and their lawyers not talk to you. If during this short break or otherwise, they don't talk to you, they don't chit chat or otherwise be social, please don't hold it against them. It's not because they are being rude. It's because they are taking my order not to talk to you about the case.*

**[After jury sworn in]**

17

First, welcome back members of the jury. We are about to begin trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you understand what will be presented to you and how you should conduct yourself during the trial.

To begin with, all of you are here to decide this case according to the law and the evidence. You are to perform this task with complete fairness and impartiality and without bias or prejudice or sympathy for or against the plaintiffs or the defendants.

During the course of this case, you may hear a number of terms that you haven't heard before. Let me just briefly explain some of the most common for you. This is a civil lawsuit, which we sometimes refer to as a civil action. In a civil lawsuit, such as this one, the party who sues is called a plaintiff; the person that's being sued is called a defendant.

In this action, the Plaintiffs are the United States, 39 individual States, and the District of Columbia. The parties being sued are called the Defendants. In this action, the Defendants are Live Nation

18

Entertainment, Inc. and Ticketmaster L.L.C. Live Nation is the parent company of Ticketmaster, its wholly-owned subsidiary.

I am sometimes going to call the people counsel. "Counsel" is just another way of saying "lawyer" or "attorney." I will sometimes refer to myself as "the Court."

Now I would like to explain the jobs that you and I are going to perform during the course of the trial. I will decide which rules of law apply to the case. I am going to do that by making legal rulings outside or during the presentation of evidence, such as ruling on objections, and also, as you have heard, in giving you the final instructions regarding the law that you should apply after all of the evidence has been admitted and all of the arguments have been completed.

In order for me to do my job, I may have to interrupt the proceedings from time to time in order to confirm with the attorneys about the rules of law that apply here. As I mentioned earlier, sometimes we will talk here, as I did with some of you, at the bench outside of your hearing. Some of these conferences may take more time than others

19

however. If they do, I may excuse you from the courtroom. I am going to try my best to avoid that kind of interruption as much as possible. I will ask you now that you please try to be patient with the process. Please understand that these conferences are necessary to ensure the fairness of the trial and oftentimes they have the effect of actually helping the case move along faster.

Now, members of the jury, while I decide the law that applies to this case, it's you, ladies and gentlemen of the jury, who are the triers of fact. You must pay close attention to all of the evidence that's presented, and you must base your decision solely on the evidence in this case and my instructions regarding the law. As I say, you should make the decision based on the evidence.

As I've mentioned a few times, this is a civil case. The United States and the Plaintiff States are the parties who brought this lawsuit. Live Nation and Ticketmaster are the parties against which the lawsuit was filed. The Plaintiffs have the burden of proving their case by what is called the preponderance of the evidence. That means the Plaintiffs

20

have to prove to you, in light of all the evidence, that what they claim is more likely true than not true. To say it differently: if you were to put the evidence favorable to Plaintiffs and the evidence favorable to the Defendants on opposite sides of the scales, the Plaintiffs would have to make the scales tip to their side. If Plaintiffs fail to meet this burden, the verdict must be for Defendants. If you find after considering all the evidence that a claim or fact is more likely true than not true, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you should, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Defendants will have the burden of proving the elements of their defenses by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on Defendants' affirmative defenses. An

21

affirmative defense is proven if you find, after considering all evidence in the case, that Defendants have succeeded in proving that the required facts are more likely true than not true.

You may have heard the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

You may then ask, what, then, is evidence? Evidence consists only of the testimony of witnesses, documents, and other things that may be admitted into evidence, or any facts that the parties agree on or stipulate to or that I may instruct you to find.

Now, some of you probably have heard the terms "circumstantial evidence" and "direct evidence." So let me just say a couple of words about each of those things now. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The word "infer" or the expression "to

22

draw an inference" means to find that a fact exists from proof of another fact. An inference is only to be drawn if it is logical and reasonable to do so, not by speculation or guesswork.

In deciding whether to draw an inference, you must look at and consider all of the facts that you have seen and heard in light of reason, common sense, and your experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide. Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.

Let me just give you an example to help you think about the difference between direct and circumstantial evidence. So assume that when you came into the courthouse this morning the sun was shining, and it was a nice day outdoors.

Also assume that, as they are, the courtroom blinds were drawn and you could not look outside. Assume further that as you're sitting here somebody walks into the courtroom with an umbrella that was dripping wet, and then a few minutes later somebody else walks into the

courtroom with a raincoat that was also dripping wet. Now, because you could not look outside the courtroom and could not see whether it was raining, you would have no direct evidence of that fact. But on the combination of the facts that I've asked you to assume about the wet umbrella and the wet raincoat, it would be reasonable and logical for you to conclude that it was raining outside. That is all that there is to circumstantial evidence.

You infer on the basis of your reason, your experience, and your common sense from one established fact the existence or the nonexistence of some other fact. I am going to give you more instructions on all of this at the end of the case, but for now just keep in mind that you are to consider all of the evidence given at this trial.

The evidence may include any facts that the parties agree, or stipulate to, as well as facts that the Court may instruct you to find. Before the trial of this case, the parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof. The stipulated facts have been provided in your

24

binders. Since the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.

Similarly, facts that I instruct you to find are facts of which I have taken what's called judicial notice. Judicial notice is another legal term of art.

If I've taken judicial notice of a fact, it means that I've already determined that certain facts are true and that therefore those facts do not need to be established at trial. If I've taken judicial notice of a fact, you must take that fact as true for purposes of your verdict.

Now, I have just given you an overview of things that are evidence, but certain things are not evidence and must not be considered by you as evidence. The following is a list of things that are not evidence: First, statements and questions by the lawyers are not evidence. Also, statements that I may make or any questions that I may ask of a witness are not evidence. And arguments by the parties are also not evidence.

25

Second, objections to questions are not evidence. Lawyers may have an obligation to make an objection when they believe that the evidence that is being presented is improper under the rules of evidence. You should not be influenced by the fact of an objection or by my ruling on the objection. If the objection is sustained, if I think it has a legal basis, I'll say that. I'll say, "sustained." Sometimes, instead of saying the word "sustained," I will simply ask the lawyer to rephrase the question. You should treat such an instruction as the same as if I had expressly stated that the objection was sustained. If I do sustain an objection or if I ask counsel to rephrase her question, you should ignore the question and any answer that may have been given. If I overrule the objection, you should treat the answer just like any other.

If I instruct you that some piece of evidence is accepted for a limited purpose only, you must follow that instruction.

Third, testimony that I have excluded or that I may ask you to disregard is not evidence and must not be considered. Frequently, I'll do

26

that by asking that a portion of a witness's testimony be stricken. When I do that, I'm excluding that evidence and you are to disregard it.

Fourth, anything that you may have seen or heard outside of the courtroom is not evidence and must be disregarded. You are to decide the case based solely on the evidence that's presented here in the courtroom.

Members of the jury, in deciding the facts of this case, you will have to decide on the credibility of the witnesses, that is, how truthful or believable you think they are. You may believe everything that a witness says, part of it, or none of it. There's no formula to evaluate evidence. For now, just suffice it to say that you bring into this courtroom all of the experience and background of your lives.

Don't leave your common sense outside of the courtroom. The same kind of tests that each of you use in your everyday dealings are exactly the tests that you should apply in deciding how much weight, if any, to give to the evidence in this case. For example, in considering the testimony of any witness, you may take into account the witness's

27

opportunity and ability to see or hear or know the things that the witness testified about, the quality of the witness's memory, the witness's appearance and manner while testifying, any bias or prejudice the witness may have, other evidence that may have contradicted the witness's testimony and the reasonableness of the witness's testimony in light of all of the evidence.

The weight of the evidence does not necessarily depend on the number of witnesses who testify. The law does not require you to accept all of the evidence admitted at trial. In determining what evidence you wish to accept, you must make your own evaluation of the testimony from each of the witnesses and the exhibits that I will receive into evidence.

It is essential, however, that you keep an open mind until you have heard all of the evidence in the case. That's because a case can only be presented step by step, witness by witness. And as I am sure all of you know from experience, you can have one person give his or her version of an event, and it sounds very impressive or even very compelling, and

28

yet upon hearing another person's version of the same event or in this context maybe even the same person being cross-examined about the same event, things may seem very different. In other words, there may be another side to any witness's story.

So the thing that I would ask is that you use your common sense and your good judgment to evaluate each witness's testimony based on all of the circumstances. Again, I can't emphasize too strongly how important it is that you keep an open mind until the trial is over. You should not reach any conclusions until all of the evidence is before you.

To help you follow the evidence, I will now give you a summary of the positions of the parties. This is an antitrust case brought by the United States, 39 individual States, and the District of Columbia, who, as I've said are the Plaintiffs, against Live Nation Entertainment, Inc. and its wholly-owned subsidiary Ticketmaster L.L.C., who are the Defendants.

Plaintiffs allege that Defendants have violated the Sherman Act, which is a federal antitrust law. The purpose of the Sherman Act is to

29

preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality of goods and services, and the greatest material progress. Plaintiffs allege that Defendants unlawfully monopolized markets related to music and comedy shows in the live entertainment industry, in violation of the Sherman Act. The Plaintiffs allege that:

1. Defendants monopolized the market for primary concert ticketing services to "major concert venues," which are arenas or large amphitheaters, with a capacity of 8,000 or more, that hosted ten or more concerts in at least one year between 2017 and 2024.

2. Defendants monopolized the market for primary ticketing services to major concert venues; and that

3. Defendants monopolized the market for the use of large amphitheaters, which are amphitheaters with a capacity of

30

8,000 or more that hosted 10 or more concerts in at least one year from 2017 to 2024.

Plaintiffs allege that Defendants' conduct has harmed competition in each of these markets, and thereby harmed artists, venues, and ticket-buying fans. Defendants deny that any of these markets is a proper antitrust market under the law, and they deny that they have engaged in any conduct that has harmed competition, artists, venues or fans in any market.

Plaintiffs have also alleged two other kinds of claims under the Sherman Act: That

1. Defendants engaged in unlawful exclusive dealing by entering into exclusive primary ticketing contracts with major concert venues that foreclosed competition by other ticketing companies; and

2. Defendants unlawfully tied artists' use of Live Nation's promotion services to the use of large amphitheaters.

31

The State Plaintiffs have alleged state antitrust claims that mirror the claims I've just identified for you, as well as certain non-antitrust state-law claims regarding the same conduct. I will define those laws for you in greater detail after the evidence has been presented to you. Once again, it is important to note that Defendants deny that they engaged in any unlawful conduct under any of these state laws.

Finally, if you find that Ticketmaster violated the law in the primary ticketing market for major concert venues, you will then need to decide whether any damages should be awarded to the Plaintiff States as compensation for that conduct. Defendants again deny that they engaged in any unlawful conduct, or that the Plaintiff States' request for damages is supported by the evidence. There are no remedies other than damages to the Plaintiff States that you, the Jury, will be asked to decide in this case.

I am going to give you, as I said earlier, more detailed instructions about the law at the close of the evidence. Those instructions will be the

32

controlling statement of the law in this case and would guide your deliberations.

Finally, let me remind you about certain rules and principles governing your conduct as jurors in this case.

I apologize. Some of this will repeat things that you have already heard me say a number of times. But, first, you must not talk with each other about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide your verdict.

The reason for this requirement is, as you have heard, that you must not reach any conclusion about the claims or defenses until all of the evidence is in. As I said, keep an open mind until you start your deliberations at the end of the case.

Second, do not communicate with anyone else about this case or with anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. I will tell you when you have been

33

discharged as jurors. When I say that you cannot talk about the case with anyone else, that includes members of your family and your friends.

When I say no communicating about the case, I mean no communicating in any way, whether in writing, through e-mail, text message, blog, social media, apps, whatever that may be, Facebook, X, Instagram, TikTok, Snapchat. Whatever it is, don't communicate about the case.

Please remember that these restrictions are about all kinds of communications, even those that aren't directed at a particular person or group. So a communication like a blog post or a Facebook post or a tweet can be shared to an ever-expanding circle of people, and that could have an unexpected impact on the trial.

For example, a post that you may make to your social media account might be viewable by a witness who is not supposed to know what has happened in the courtroom before he or she has testified. It might be viewable by somebody else in the public who is interested in the case. For these reasons, you must inform me immediately if you

learn about or share any information about the case outside of the courtroom, even if it's by accident, or if you discover that another juror has done so.

So you can tell your family and friends and coworkers that you are a juror in a civil case. But don't tell them anything else about it until you have been discharged by me. If you like, you can tell them that Judge Subramanian has ordered you not to discuss the case. That's because I am ordering you not to discuss the case.

Third, don't let anyone else talk to you about the case or anyone else that has anything do with it. If any person should attempt to communicate with any of you about the case at any time throughout the trial, whether that's inside or outside of the courthouse, you must immediately report that to my Deputy and no one else. When I say no one else, that means other members of the jury as well. Please let my Deputy know, and we will handle it.

To minimize the possibility of any improper communications of any type, I am going to ask that you go straight to the jury room that Mr.

35

Hernandez has already shown you when you get here in the morning. I am going to ask that you remain in the jury room to the extent that you reasonably can throughout the course of the trial day.

You should use the bathrooms in the jury room rather than the bathrooms on this or any other floor. You are not supposed to use the cafeteria. Given that our morning and afternoon breaks are going to be short, it's probably just best that you remain in the jury room, if you can. That way we can move along faster because we won't have to track any one of you down so we can start up the testimony as promptly as we can.

Fourth, don't conduct any independent research about the case or the matters or legal issues or individuals or entities involved in the case. Don't visit any place that may be mentioned.

Don't listen to or watch any news reports about the case should there be any.

Just as you should not look at your e-mail or any other electronic media, don't look at hard traditional media either. So don't look at reference materials, television news, entertainment programs. Don't

search the internet or any electronic resource for information about the case.

All of this is because, as I've told you already, your decision in this case must be made solely on the basis of the evidence that's presented in this courtroom along with the instructions of the law that I'm going to provide to you. All that you need to know is going to be presented to you in this courtroom by the counsel who represent each of the parties.

Please inform me immediately if you learn of another juror's violation of any of these instructions. Also, it's possible that somebody that you may know may come into the courtroom. It's unlikely, but it's a public space. If somebody that you should happen to know should come into the courtroom, again, please just let my Deputy know so that we can deal with it.

Finally, I am going to ask Mr. Hernandez to give each of you a notebook and a pen. We are doing this because I allow jurors to take notes. If you do take notes, please begin writing on the second page of each of these pads. On the first page just put your juror number. So,

Juror No. 1, you would just write 1 in a circle or however you want to designate it, but put your juror number on the first page of the pad so we can make sure that only you will be making and reviewing the notes that are made in that pad. If you do take notes, do so only in these pads. Do not take the notes home with you. You can leave them at the end of every day in the jury room and during the lunch breaks.

Now, we are giving you all notebooks, but you do not need to take notes. Notes are just an aid to your own recollection. You do not need to take them. Remember, too, that if you use any notes, they are for your use only and they are only to be used as an aid for each of your memories. It is your memory that controls.

The other thing that I would suggest is that if you decide to take notes, don't get so caught up in writing down notes that you don't focus on the testimony or other evidence that's being presented. Now, once you are in your deliberations, if there is a disagreement between one juror's notes and another juror's notes or between one juror's notes and another juror's memory, you can always ask for the court reporter to

38

read back the transcript or for us to send back a portion of the transcript, because it's the official court transcript that controls and not any particular juror's notes.

Now, during the course of the trial, exhibits are going to be received into evidence. They will be marked by an exhibit number. If there is an exhibit that you are particularly interested in seeing, please write it down in your notes.

At the end of the trial as you begin your deliberations, if there is an exhibit that you would like to review, we can provide it to you in the jury room. So thank you again for all of your patience. We are now going to begin the trial. Again, we are going to begin each day after today no later than 9:00.

Please be on time. If any of you are late even by a couple of minutes, we have to wait. That is because we can't start until all of you are here. If we lose ten or even more minutes every day, we won't be able to get the trial done on the schedule that I've told you at the outset. So please come on time. I would like to tell you how the trial is going to

39

be conducted and explain what we will be doing. Again, I will give you more detailed instructions, and those instructions will control when I give you those instructions at the end of the trial.

But for now let me just tell you the order of the trial. The first step in the trial will be opening statements. First, Plaintiffs' counsel will make their opening statements. The opening statement is simply an outline to help you understand the evidence as it is presented. The opening statement, remember, is not evidence. Its purpose is only to help you understand what the evidence will be and what the Plaintiffs will try to prove. Then counsel for Defendants will make an opening statement. The purpose of that will be the same.

After the opening statements, Plaintiffs will present evidence in support of their claims and Defendants' lawyers may cross-examine the witnesses. At the conclusion of Plaintiffs' case, Defendants may introduce evidence and Plaintiffs' lawyers may cross-examine the witnesses. Defendants are not required to introduce any evidence or to

40

call any witnesses to defend against Plaintiffs' claims.  If Defendants introduce evidence, Plaintiffs may then present rebuttal evidence.

Following the closing arguments, I will instruct you on the law. Then you will retire to deliberate on your verdict, which must be a unanimous verdict, and must be based on the evidence presented at trial. Your deliberations would take place in secret. You will not have to explain your verdict to anyone.

So, again, thank you very much for all of your attention. I have described for you my plan for every day after today.  We will take an appropriate break. For now I ask that you pay attention to the parties as they begin their opening statements.

Counsel for Plaintiffs, you may begin.

41