# EXHIBIT 16

| | |
|---|---|
| **From:** | Iannuzzi, Melissa <Miannuzzi@winston.com> |
| **Sent:** | Tuesday, March 24, 2026 12:16 AM |
| **To:** | SubramanianNYSDChambers@nysd.uscourts.gov |
| **Cc:** | LiveNationTeam; livenationtrialstates@ag.ny.gov; #C-M US V LIVE NATION LITIGATION - FULL - LW TEAM; ln_lit_csm@cravath.com |
| **Subject:** | RE: U.S. v. Live Nation - Ex. 1282 and Third Party Motions |
| **Attachments:** | US v LN Plaintiffs Ps Proposed Verdict Form - Ds Redlines - 3.23.26.docx |

Judge Subramanian,

Please see attached for the parties' redlined verdict form.



**MELISSA IANNUZZI**
SHE/HER/HERS
ASSOCIATE ATTORNEY

**T** +1 (202) 282-5151
miannuzzi@winston.com

*Admitted to practice in Illinois*
*Not admitted to practice in District of Columbia. Application pending to the D.C. Bar.*
*Currently practicing law in the District of Columbia under the supervision of principals*
*of the firm who are members in good standing of the D.C. Bar.*

**From:** Iannuzzi, Melissa
**Sent:** Tuesday, March 24, 2026 12:03 AM
**To:** SubramanianNYSDChambers@nysd.uscourts.gov
**Cc:** LiveNationTeam <LiveNationTeam@winston.com>; livenationtrialstates@ag.ny.gov; usvlivenationlitigationfull.lwteam@lw.com; ln_lit_csm@cravath.com
**Subject:** RE: U.S. v. Live Nation - Ex. 1282 and Third Party Motions

Judge Subramanian,

Please see attached for both parties' jury instructions and verdict forms.

Best,

Melissa



**MELISSA IANNUZZI**
SHE/HER/HERS
ASSOCIATE ATTORNEY

**T** +1 (202) 282-5151
miannuzzi@winston.com

*Admitted to practice in Illinois*
*Not admitted to practice in District of Columbia. Application pending to the D.C. Bar.*
*Currently practicing law in the District of Columbia under the supervision of principals*
*of the firm who are members in good standing of the D.C. Bar.*

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | |
| Plaintiffs, | Case No. 1:24-cv-03973-AS |
| v. | |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., | |
| Defendants. | |

**PLAINTIFFS'**

UNITED STATES OF AMERICA et al.,

*Plaintiffs*,

v.          Civil No. 1:24–cv–3973-AS

LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C.,

*Defendants*.

**DEFENDANTS' PROPOSED VERDICT FORM**

## VERDICT FORM

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout.*

**PART I.  Monopolization Claims in Plaintiffs' Proposed Relevant Markets (Sherman Act Section 2)[1]**

**Part I: Section 2 Monopolization Claim Against Ticketmaster For Alleged Market Of Primary Ticketing Services To The Venues Plaintiffs Refer To As "Major Concert Venues"**

1.      Have Plaintiffs proven, by a preponderance of the evidence, that primary ticketing services to the venues Plaintiffs refer to as "major concert venues" is a properly-defined antitrust market?
Yes _____        No _____
*If you answered "Yes," proceed to Question 2.*
*If you answered "No," proceed to Question 5.*

2.      Have Plaintiffs proven, by a preponderance of the evidence, that Ticketmaster has monopoly power in that alleged market?
Yes _____        No _____
*If you answered "Yes," proceed to Question 3.*
*If you answered "No," proceed to Question 5.*

3.      Have Plaintiffs proven, by a preponderance of the evidence, that ~~Defendants have~~ Ticketmaster willfully acquired or maintained monopoly power ~~through~~ in that alleged market by engaging in anticompetitive conduct, as opposed to having superior products or business skills?
Yes _____        No _____
*If you answered "Yes," proceed to Question 4.*
*If you answered "No," proceed to Question 5.*

4.      Have Plaintiffs proven, by a preponderance of the evidence, that Ticketmaster's alleged anticompetitive conduct harmed competition and caused anticompetitive effects in that alleged market?
Yes _____        No _____
*Proceed to Question 5.*

---

[1] *US Airways, Inc. v. Sabre Holdings Corp.*, Verdict Form, 1:11-cv-02725-LGS; ECF No. 1208 (S.D.N.Y. May 19, 2022).

1

**Part II: Section 2 Monopolization Claim Against Ticketmaster For Alleged Market Of Primary *Concert* Ticketing Services To The Venues Plaintiffs Refer To As "Major Concert Venues"**

5.      Have Plaintiffs proven, by a preponderance of the evidence, that primary *concert* ticketing services to the venues Plaintiffs refer to as "major concert venues" is a properly-defined antitrust market?

Yes _____     No _____

*If you answered "Yes," proceed to Question 6.*
*If you answered "No," proceed to Question 9.*

6.      Have Plaintiffs proven, by a preponderance of the evidence, that Ticketmaster has monopoly power in that alleged market?

Yes _____     No _____

*If you answered "Yes," proceed to Question 7.*
*If you answered "No," proceed to Question 9.*

7.      Have Plaintiffs proven, by a preponderance of the evidence, that Ticketmaster willfully acquired or maintained monopoly power in that alleged market by engaging in anticompetitive conduct, as opposed to having superior products or business skills?

Yes _____     No _____

*If you answered "Yes," proceed to Question 8.*
*If you answered "No," proceed to Question 9.*

8.      Have Plaintiffs proven, by a preponderance of the evidence, that Ticketmaster's alleged anticompetitive conduct harmed competition and caused anticompetitive effects in that alleged market?

Yes _____     No _____

*Proceed to Question 9.*

**Part III: Section 2 Monopolization Claim Against Live Nation For Alleged Market Of Use Of Venues Plaintiffs Refer To As "Large Amphitheaters" By Artists**

9.      Have Plaintiffs proven, by a preponderance of the evidence, that use of venues Plaintiffs refer to as "large amphitheaters" by artists is a properly-defined antitrust market?

Yes _____     No _____

*If you answered "Yes," proceed to Question 10.*
*If you answered "No," proceed to Question 13.*

10.      Have Plaintiffs proven, by a preponderance of the evidence, that Live Nation has monopoly power in that alleged market?

Yes _____     No _____

*If you answered "Yes," proceed to Question 11.*
*If you answered "No," proceed to Question 13.*

2

11.　Have Plaintiffs proven, by a preponderance of the evidence, that Live Nation willfully acquired or maintained monopoly power in that alleged market by engaging in anticompetitive conduct as opposed to having superior products or business skills?

Yes_____　　No_____

*If you answered "Yes," proceed to Question 12.*
*If you answered "No," proceed to Question 13.*

12.　Have Plaintiffs proven, by a preponderance of the evidence, that Live Nation's alleged anticompetitive conduct harmed competition and caused anticompetitive effects in that alleged market?

Yes_____　　No_____

*Proceed to Question 13.*

**Part IV: Section 1 Exclusive Dealing Claim Against Ticketmaster**

*If you answered "Yes" to Questions 1 and/or 5, proceed to Question 13.*
*If you answered "No" to Questions 1 and 5, proceed to Question 20.*

13.　Have Plaintiffs proven, by a preponderance of the evidence, that there are one or more contracts between one of the venues Plaintiffs refer to as "major concert venues" and Ticketmaster that substantially foreclose venues from buying primary ticketing services from competing primary ticketing companies?

Yes_____　No_____

*If you answered "Yes," proceed to Question 14.*
*If you answered "No," proceed to Question 20.*

14.　Have Plaintiffs ~~in the following proposed relevant~~proven, by a preponderance of the evidence, that Ticketmaster has substantial market power in any of these alleged markets? ~~(Answer for each~~

(a) primary ticketing services　　　　Yes _____　No ____
(b) primary concert ticketing services　　Yes _____　No ____

*If you answered "Yes," as to any **of the** ~~3 proposed relevant~~two alleged markets~~)~~, proceed to Question 15.*
*If you answered "No" to both alleged markets, proceed to Question 20.*

15.　Have Plaintiffs proven, by a preponderance of the evidence, that Ticketmaster used its alleged substantial market power to coerce one or more venues into an exclusive contract when the venue wanted a non-exclusive contract?

Yes_____　No_____

*If you answered "Yes," proceed to Question 16.*
*If you answered "No," proceed to Question 20.*

16.　If you answered "Yes" to Question 15 above, identify each contract you found that Plaintiffs proved, by a preponderance of the evidence, a venue did not sign voluntarily, but only because of alleged coercion by Ticketmaster:

3

*Proceed to Question 17.*

17.    For any contract you found in response to Question 16, have Plaintiffs proven, by a preponderance of the evidence, that the individual exclusive contract, judged on its own, substantially foreclosed competition in at least one of the two alleged ticketing markets?
Yes                     No
*If you answered "Yes," proceed to Question 18.*
*If you answered "No," proceed to Question 20.*

18.    If you answered "Yes" to Question 17 above, identify each contract you found that, when judged on its own, substantially foreclosed competition in at least one of the two alleged ticketing markets:

*Proceed to Question 19.*

19.    For each separate exclusive contract you identified in Question 18 above, have Plaintiffs proven, by a preponderance of the evidence, that foreclosure of competition from that one exclusive contract, judged on its own, caused anticompetitive effects in at least one of the two alleged ticketing markets?
Yes                     No
*Proceed to Question 20.*

**Part V: Section 1 Tying Claim Against Live Nation**

20.    Have Plaintiffs proven, by a preponderance of the evidence, that artists are the customers who rent amphitheaters, and not promoters?
Yes                     No
*If you answered "Yes," proceed to Question 21.*
*If you answered "No," proceed to Question 26.*

21.    Have Plaintiffs proven, by a preponderance of the evidence, that the use by artists of the venues Plaintiffs refer to as "large amphitheaters," and promotion services to all touring artists, are separate and distinct products in properly-defined antitrust markets?
Yes                     No
*If you answered "Yes," proceed to Question 22.*
*If you answered "No," proceed to Question 26.*

22.    Have Plaintiffs proven, by a preponderance of the evidence, that Live Nation conditioned artists' use of the venues Plaintiffs refer to as "large amphitheaters" on artists also purchasing Live Nation's promotion services?
Yes                     No
*If you answered "Yes," proceed to Question 23.*
*If you answered "No," proceed to Question 26.*

4

23.    Have Plaintiffs proven, by a preponderance of the evidence, that Live Nation has sufficient market power with respect to the use by artists of the venues Plaintiffs refer to as "large amphitheaters" to enable Live Nation to restrain competition as to promotion services to all touring artists?

Yes _____    No _____

*If you answered "Yes," proceed to Question 24.*
*If you answered "No," proceed to Question 26.*

24.    Have Plaintiffs proven, by a preponderance of the evidence, that the alleged tying arrangement caused anticompetitive effects in the market for promotion services to all touring artists?

Yes _____    No _____

*If you answered "Yes," proceed to Question 25.*
*If you answered "No," proceed to Question 26.*

25.    Have Plaintiffs proven, by a preponderance of the evidence, that the alleged tying arrangement involved a not insubstantial volume of interstate commerce in promotion services to all touring artists?

Yes _____    No _____

*Proceed to Question 26.*

**Part VI: Congruent State Law Claims**

26.    Has each of the following Plaintiff States proven, by a preponderance of the evidence, that Ticketmaster engaged in unlawful conduct that harmed competition in its State?

| State | YESYes | NONo |
|---|---|---|
| 1. Primary Concert Ticketing: (*Primary Concert Ticketing Services to major concert venues*)Colorado | | |
| 2. Primary Ticketing: (*Primary Ticketing Services to major concert venues*)Connecticut | | |
| 3. Amphitheaters: (*Use of Large Amphitheaters by Artists*)District of Columbia | | |
| Florida | | |
| Louisiana | | |
| Maryland | | |
| Michigan | | |
| Minnesota | | |

5

| | | |
|---|---|---|
| Nevada | | |
| New Hamshire | | |
| New Mexico | | |
| North Carolina | | |
| Ohio | | |
| Rhode Island | | |
| Texas | | |
| Utah | | |
| Virginia | | |
| Washington | | |
| West Virginia | | |

*Please proceed*Proceed to **PART II (Exclusive Dealing Claim), regardless**Question 27.

27.      Has each of *how you answered* the *questions*following Plaintiff States proven, by a preponderance of the evidence, that Live Nation engaged in *Part I.*unlawful conduct that harmed competition in its State?

| | Yes | No | YES | NO |
|---|---|---|---|---|
| **State** | | | | |
| Colorado | | | | |
| Connecticut | | | | |
| District of Columbia | | | | |
| Florida | | | | |
| Louisiana | | | | |
| Maryland | | | | |
| Michigan | | | | |
| Minnesota | | | | |
| Nevada | | | | |
| New Hamshire | | | | |
| New Mexico | | | | |
| North Carolina | | | | |

6

Formatted: Font: 12 pt
Formatted: List Paragraph
Formatted: Font: 12 pt, Bold
Formatted: Font: 12 pt, Not Italic
Formatted: Font: 12 pt, Not Italic
Formatted: List Paragraph, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0" + Indent at:  0"
Formatted: Font: 12 pt, Not Italic
Formatted: Font: 12 pt, Not Italic
Deleted Cells
Deleted Cells
Formatted: Font: 12 pt, Bold, Not Italic
Formatted: Font: 12 pt, Bold, Not Italic
Formatted Table
Formatted: Font: 12 pt, Not Italic
Formatted: Font: 12 pt
Formatted: List Paragraph
Formatted: Centered

| Ohio | | |
|---|---|---|
| Rhode Island | | |
| Texas | | |
| Utah | | |
| Virginia | | |
| Washington | | |
| West Virginia | | |

**PART II. Exclusive Dealing Claim**

1. Have Plaintiffs proven, by a preponderance of the evidence, that Defendants' long-term exclusive primary ticketing contracts with major concert venues substantially foreclosed competition in a relevant market for primary concert ticketing services to major concert venues?

Yes _____    No _____

*Proceed to Question 28.*

**Part VII: Damages**

*If you answered "Yes, "" to Question 1 under Section all Questions in Part I, Part II, or Part IV, proceed to Question 2. 28. If you answered "No," not, proceed instead to Section III (Tying). Question 31.*

2. Have Plaintiffs Has each of the following Plaintiff States proven, by a preponderance of the evidence, that Defendants' exclusive primary ticketing contracts with venues are an unreasonable restraint of trade that has adverse effects on competition?

Yes _____    No _____

its specific

*Please proceed to PART III. (Tying Claim), regardless of how you answered the questions in Part II.*

**PART III. Tying Claim (Sherman Act Section 1)²**

Have Plaintiffs proven, by a preponderance of the evidence, that Defendants unlawfully tied their artist promotion services to the use of large amphitheaters by artists?

---

² *Epic Games, Inc. v. Google LLC et al.*, Verdict Form, 3:20cv5671, ECF No. 606 (N.D. Cal. Dec. 11, 2023).

7

Yes _____ No _____

~~Please~~ *proceed to **PART IV.** (*State ***Law Claims), regardless of how you answered the questions in Part III.***

**PART IV. State Law Claims**

~~1.~~28.   Have Plaintiffs proven, by a preponderance of the evidence, that Defendants ~~engaged in unlawful~~residents were harmed by paying higher ticket fees as a result of Ticketmaster's anticompetitive conduct ~~that harmed competition nationwide, including in these Plaintiff States~~?

| State | Yes | No |
|---|---|---|
| Arizona | | |
| Colorado | | |
| Connecticut | | |
| District of Columbia | | |
| Florida | | |
| Illinois | | |
| Indiana | | |
| ~~Kansas~~ | | |
| ~~Louisiana~~ | | |
| ~~Maryland~~ | | |
| Michigan | | |
| Minnesota | | |
| Nevada | | |
| New ~~Hampshire~~Hamshire | | |
| New Jersey | | |
| ~~New Mexico~~ | | |
| New York | | |
| North Carolina | | |
| ~~Ohio~~Pennsylvania | | |
| Rhode Island | | |
| South Carolina | | |
| ~~Texas~~ | | |
| Utah | | |
| ~~Vermont~~ | | |

8

| Virginia | | |
|---|---|---|
| Washington | | |
| West Virginia | | |
| Wisconsin | | |

*If you answered "Yes" for any Plaintiff State, proceed to Question 29 only for such State(s).*
*If you answered "No" for all Plaintiff States, proceed to Question 31.*

29.     Has each of the following Plaintiff States proven, by a preponderance of the evidence, that the alleged higher ticket fees its specific State residents paid were caused by Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020 as opposed to alleged anticompetitive conduct that occurred before May 23, 2020?

| State | Yes | No |
|---|---|---|
| Arizona | | |
| Colorado | | |
| Connecticut | | |
| District of Columbia | | |
| Florida | | |
| Illinois | | |
| Indiana | | |
| Michigan | | |
| Minnesota | | |
| Nevada | | |
| New Hamshire | | |
| New Jersey | | |
| New York | | |
| North Carolina | | |
| Pennsylvania | | |
| Rhode Island | | |
| South Carolina | | |
| Utah | | |
| Washington | | |
| West Virginia | | |
| Wisconsin | | |

*If you answered "Yes" for any Plaintiff State, proceed to Question 30 only for such State(s).*
*If you answered "No" for all Plaintiff States, proceed to Question 31.*

9

30.    Please state the amount (if any) that each Plaintiff State proved, by a preponderance of the evidence, that residents in its specific State were overcharged per ticket for primary concert tickets to events at the venues Plaintiffs call "major concert venues" because of Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020.  You may not calculate any overcharge based on any alleged anticompetitive conduct that occurred before May 23, 2020.

| State | |
|---|---|
| Arizona | $ |
| Colorado | $ |
| Connecticut | $ |
| District of Columbia | $ |
| Indiana | $ |
| Michigan | $ |
| Minnesota | $ |
| Nevada | $ |
| New Hamshire | $ |
| New Jersey | $ |
| North Carolina | $ |
| Pennsylvania | $ |
| Rhode Island | $ |
| Utah | $ |
| Washington | $ |
| West Virginia | $ |
| Wisconsin | $ |

*Proceed to Question 31.*

**Part VIII: Other State Law Claims And Damages**

**California Unfair Competition Law – Unlawful Prong**

~~Have Plaintiffs~~
31.    Has California proven, by a preponderance of the evidence, that ~~Defendants~~Ticketmaster engaged in ~~an illegal~~unlawful conduct that harmed competition in its State?
Yes _____              No _____
*If you answered "Yes," proceed to Question 32.*
*If you answered "No," proceed to Question 33.*

~~2.~~32.    Has California proven, by a preponderance of the evidence, that Ticketmaster engaged in an unlawful business act or practice that occurred within California ~~and harmed individuals in California or that~~, emanated from California ~~and~~, or harmed ~~individuals in~~ California residents in violation of the California Unfair Competition Law?

Yes _____            No _____
*Proceed to Question 33.*

10

Has California

33.    ~~Have Plaintiffs~~ proven, by a preponderance of the evidence, that ~~Defendants~~Live Nation engaged in unlawful conduct that harmed competition in its State?

Yes _____    No _____

*If you answered "Yes," proceed to Question 34.*
*If you answered "No," proceed to Question 35.*

~~3.~~34.    Has California proven, by a preponderance of the evidence, that Live Nation engaged in an ~~illegal~~unlawful business act or practice that occurred within California, emanated from California ~~and~~, or harmed ~~individuals outside of~~ California residents in violation of the California Unfair Competition Law~~.~~?

Yes _____    No _____

*Proceed to Question 35.*

**California Unfair Competition Law – Unfair Prong**

~~Have Plaintiffs~~

*Answer Question 35 only if you answered "Yes," to Question 31. If you answered "No" to Question 31, proceed to Question 36.*

~~4.~~35.    Has California proven, by a preponderance of the evidence, that ~~Defendants have~~Ticketmaster engaged in ~~a~~an unfair business act or practice that occurred within California ~~that harmed individuals in California or that~~ emanated from California ~~and~~, or harmed ~~individuals in~~ California ~~and that same act or practice is unfair~~ residents in violation of the California Unfair Competition Law?

~~Yes _____    No _____~~

~~Have Plaintiffs~~Yes _____    No _____

*Proceed to Question 36.*

*Answer Question 36 only if you answered "Yes," to Question 33. If you answered "No" to Question 33, proceed to Question 37.*

~~5.~~36.    Has California proven, by a preponderance of the evidence, that ~~Defendants have~~Live Nation engaged in ~~a~~an unfair business act or practice that ~~emanates~~occurred within California, emanated from California ~~and~~, or harmed ~~individuals outside of~~ California ~~and that same act or practice is unfair~~residents in violation of the California Unfair Competition Law?

Yes _____    No _____

*Proceed to Question 37.*

~~Yes _____    No _____~~

11

**<u>Florida Trade Practices Act</u>**

~~*If you answered "Yes" for*~~

Has Florida ~~*for Question 1 in this Section (State Law Claims) answer Question 6. Otherwise, proceed to Question 7.*~~

37.    ~~Have Plaintiffs~~ proven, by a preponderance of the evidence, that ~~Defendants have~~Ticketmaster engaged in unlawful conduct that harmed competition in its State?
Yes _____    No _____
*If you answered "Yes," proceed to Question 38.*
*If you answered "No," proceed to Question 39.*

~~6.~~38.   Has Florida proven, by a preponderance of the evidence, that Ticketmaster engaged in an unfair method of competition in violation of the Florida Deceptive and Unfair Trade Practices Act?

Yes _____    No _____
*Proceed to Question 39.*

39.    Has Florida proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct that harmed competition in its State?
Yes _____    No _____
*If you answered "Yes," proceed to Question 40.*
*If you answered "No," proceed to Question 41.*

40.    Has Florida proven, by a preponderance of the evidence, that Live Nation engaged in an unfair method of competition in violation of the Florida Deceptive and Unfair Trade Practices Act?
Yes _____    No _____
*Proceed to Question 41.*

*If you answered "Yes" to all Questions in Part I, Part II, or Part IV, answer Question 41.  If not, proceed to Question 44.*

41.    Has Florida proven, by a preponderance of the evidence, that its specific State residents were harmed by paying higher ticket fees as a result of Ticketmaster's anticompetitive conduct?
Yes _____    No _____
*If you answered "Yes," proceed to Question 42.*
*If you answered "No," proceed to Question 44.*

42.    Has Florida proven, by a preponderance of the evidence, that the alleged higher ticket fees its specific State residents paid were caused by Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020 as opposed to alleged anticompetitive conduct that occurred before May 23, 2020?
Yes _____    No _____
*If you answered "Yes," proceed to Question 43.*
*If you answered "No," proceed to Question 44.*

12

43.    Please state the amount (if any) that Florida proved, by a preponderance of the evidence, that residents in its specific State were overcharged per ticket for primary concert tickets to events at the venues Plaintiffs call "major concert venues" because of Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020.  You may not calculate any overcharge based on any alleged anticompetitive conduct that occurred before May 23, 2020. $_____

*Proceed to Question 44.*

**Illinois Antitrust Act**
*If you answered "Yes" to Question 1 OR Question 2 in Section I (Monopolization Claims), AND answered "Yes" for*
Has Illinois *for Question 1 in this Section (State Law Claims) answer Question 7. Otherwise, proceed to Question 8.*

7.44.    Have Plaintiffs proven, by a preponderance of the evidence, that Defendants have established, maintained, used or attempted to acquire monopoly power over primary concert ticketing for the purpose of excludingTicketmaster engaged in unlawful conduct that harmed competition or controlling, fixing, or maintaining prices for: primary concert ticketing services to major concert venues or primary ticketing services to major concert venues in violation of the Illinois Antirust Actin its State?

Yes _____    No _____

*If you answered "Yes",*" proceed to Question 3 in Section I (Monopolization Claims), AND45.
*If you* answered "Yes" for Illinois for Question 1 in this Section (State Law Claims) answer Question 8. Otherwise,No," proceed to Question 9.46.

8.45.    Have Plaintiffs Has Illinois proven, by a preponderance of the evidence, that Defendants have: unreasonably restrained trade or commerce through anticompetitiveTicketmaster engaged in unlawful conduct involving the use of a contract, combination or conspiracy involving the use of large amphitheaters by artists; or established, maintained, used or attempted to acquire monopoly power over the use of large amphitheaters by artists for the purpose of excluding competition or controlling, fixing, or maintaining prices for the use of large amphitheaters, in in violation of the Illinois AntirustAntitrust Act?
Yes _____    No _____

*Proceed to Question 46.*

13

| Formatted: Font: 12 pt |
| Formatted: Indent: Left:  0", Space After:  0 pt, Line spacing:  single |
| Formatted: Font: 12 pt, Not Italic |
| Formatted: Font: 12 pt |
| Formatted: List Paragraph, Indent: Left:  0" |
| Formatted: Font: 12 pt, Bold, Not Italic, Underline |
| Formatted: Space After:  0 pt, Don't keep with next, Don't keep lines together |
| Formatted: Font: 12 pt, Not Bold, Not Italic |
| Formatted: List Paragraph, Indent: Left:  0" |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt, Not Bold, Not Italic |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt, Not Bold, Not Italic |
| Formatted: List Paragraph, Indent: First line:  0" |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: List Paragraph, Indent: Left:  0" |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Indent: First line:  0" |
| Formatted: Centered |

46.     Has Illinois proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct that harmed competition in its State?

Yes_____          No_____

~~Kansas Restraint~~ *of Trade Act*

*If you answered "Yes~~"~~," proceed to Question ~~1, Question 2, OR Question 3 in Section I (Monopolization Claims), AND~~47.*

*If you* answered ~~"Yes" for Kansas for Question 1 in this Section (~~No,~~"State Law Claims) answer Question 9. Otherwise,~~ proceed to Question ~~10.~~48.*

~~Have Plaintiffs~~

47.     Has Illinois proven, by a preponderance of the evidence, that ~~Defendants have maintained monopoly power through~~ Live Nation engaged in unlawful conduct in violation of the Illinois Antitrust Act?

Yes_____          No_____

*Proceed to Question 48.*

*If you answered "Yes" to all Questions in Part I, Part II, or Part IV, answer Question 48.  If not, proceed to Question 51.*

48.     Has Illinois proven, by a preponderance of the evidence, that its specific State residents were harmed by paying higher ticket fees as a result of Ticketmaster's anticompetitive conduct?

Yes_____          No_____

*If you answered "Yes," proceed to Question 49.*
*If you answered "No," proceed to Question 51.*

49.     Has Illinois proven, by a preponderance of the evidence, that the alleged higher ticket fees its specific State residents paid were caused by Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020 as opposed to alleged anticompetitive conduct that occurred before May 23, 2020

Yes_____          No_____

*If you answered "Yes," proceed to Question 50.*
*If you answered "No," proceed to Question 51.*

50.     Please state the amount (if any) that Illinois proved, by a preponderance of the evidence, that residents in its specific State were overcharged per ticket for primary concert tickets to events at the venues Plaintiffs call "major concert venues" because of Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020.  You may not calculate any overcharge based on any alleged anticompetitive conduct that occurred before May 23, 2020.

$_____

*Proceed to Question 51.*

**Indiana Antitrust Act**

51.     Has Indiana proven, by a preponderance of the evidence, that Ticketmaster engaged in unlawful conduct after July 1, 2023 that harmed competition in its State?

14

Yes _____ No _____
*If you answered "Yes," proceed to Question 52.*
*If you answered "No," proceed to Question 53.*

52.    Has Indiana proven, by a preponderance of the evidence, that Ticketmaster engaged in unlawful conduct after July 1, 2023 in violation of the Indiana Antitrust Act?
Yes _____ No _____
*Proceed to Question 53.*

53.    Has Indiana proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct after July 1, 2023 that harmed competition in its State?
Yes _____ No _____
*If you answered "Yes," proceed to Question 54.*
*If you answered "No," proceed to Question 55.*

54.    Has Indiana proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct after July 1, 2023 in violation of the Indiana Antitrust Act?
Yes _____ No _____
*Proceed to Question 55.*

**Kansas Restraint** jointly or in concert with another party,**Of Trade Act**

55.    Has Kansas proven, by a preponderance of the evidence, that Ticketmaster engaged in unlawful conduct that harmed competition in its State?
Yes _____ No _____
*If you answered "Yes," proceed to Question 56.*
*If you answered "No," proceed to Question 57.*

9.56.    Has Kansas proven, by a preponderance of the evidence, that Ticketmaster engaged in unlawful conduct in violation of the Kansas Restraint ofOf Trade Act?

Yes _____ No _____
*Proceed to Question 57.*

57.    Has Kansas proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct that harmed competition in its State?
Yes _____ No _____
*If you answered "Yes," proceed to Question 58.*
*If you answered "No," proceed to Question 59.*

58.    Has Kansas proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct in violation of the Kansas Restraint Of Trade Act?
Yes _____ No _____
*Proceed to Question 59.*
Yes _____ No _____

15

**New York – Donnelly Act**

*If you answered "Yes" to Question 1, Question 2 OR Question 3 in Section I (Monopolization Claims), AND answered "Yes" for*

Has New York *for Question 1 in this Section (State Law Claims) answer Question 10. Otherwise, proceed to Question 11.*

59.    ~~Have Plaintiffs~~ proven, by a preponderance of the evidence, that ~~Defendants have~~ Ticketmaster engaged in unlawful conduct that harmed competition in its State?

Yes                    No

*If you answered "Yes," proceed to Question 60.*
*If you answered "No," proceed to Question 61.*

60.    Has New York proven, by a preponderance of the evidence, that Ticketmaster maintained monopoly power through anticompetitive conduct involving the use of contracts, agreements, arrangements, or combinations, in violation of New York's Donnelly Act?

Yes                    No

*Proceed to Question 61.*

61.    Has New York proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct that harmed competition in its State?

Yes                    No

*If you answered "Yes," proceed to Question 62.*
*If you answered "No," proceed to Question 63.*

~~10.~~ 62. Has New York proven, by a preponderance of the evidence, that Live Nation maintained monopoly power through anticompetitive conduct involving the use of contracts, agreements, arrangements, or combinations, in violation of New York's Donnelly Act?

Yes                    No

*South Carolina Unfair Trade Practices Act*

*Proceed to Question 63.*

*If you answered "Yes"* ~~*for South Carolina for Question 1*~~ *to all Questions in* ~~*this Section (State Law Claims)*~~ *Part I, Part II, or Part IV, answer Question* ~~*11. Otherwise*~~ *63. If not, proceed to Question* ~~*12.*~~ *66.*

~~Have Plaintiffs~~

63.    Has New York proven, by a preponderance of the evidence, that ~~Defendants have~~ its specific State residents were harmed by paying higher ticket fees as a result of Ticketmaster's anticompetitive conduct?

Yes                    No

*If you answered "Yes," proceed to Question 64.*
*If you answered "No," proceed to Question 66.*

16

64. Has New York proven, by a preponderance of the evidence, that the alleged higher ticket fees its specific State residents paid were caused by Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020 as opposed to alleged anticompetitive conduct that occurred before May 23, 2020

Yes_____ No_____

*If you answered "Yes," proceed to Question 65.*
*If you answered "No," proceed to Question 66.*

65. Please state the amount (if any) that New York proved, by a preponderance of the evidence, that residents in its specific State were overcharged per ticket for primary concert tickets to events at the venues Plaintiffs call "major concert venues" because of Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020. You may not calculate any overcharge based on any alleged anticompetitive conduct that occurred before May 23, 2020.

$_____

*Proceed to Question 66.*

**South Carolina Unfair Trade Practices Act**

66. Has South Carolina proven, by a preponderance of the evidence, that Ticketmaster engaged in unlawful conduct that harmed competition in its State?

Yes_____ No_____

*If you answered "Yes," proceed to Question 67.*
*If you answered "No," proceed to Question 68.*

~~11.~~67. Has South Carolina proven, by a preponderance of the evidence, that Ticketmaster engaged in an unfair method of competition in violation of the South Carolina Unfair Trade Practices Act?

Yes _____ No_____
*Proceed to Question 68.*

68. Has South Carolina proven, by a preponderance of the evidence, that Live Nation engaged in unlawful conduct that harmed competition in its State?

Yes_____ No_____

*If you answered "Yes," proceed to Question 69.*
*If you answered "No," proceed to Question 70.*

69. Has South Carolina proven, by a preponderance of the evidence, that Live Nation engaged in an unfair method of competition in violation of the South Carolina Trade Practices Act?

Yes_____ No_____

*Proceed to Question 70.*

*If you answered "Yes" to all Questions in Part I, Part II, or Part IV, answer Question 70. If not, proceed to Question 73.*

17

70.   Has South Carolina proven, by a preponderance of the evidence, that its specific State residents were harmed by paying higher ticket fees as a result of Ticketmaster's anticompetitive conduct?

Yes _____   No _____

*If you answered "Yes," proceed to Question 71.*
*If you answered "No," proceed to Question 73.*

71.   Has South Carolina proven, by a preponderance of the evidence, that the alleged higher ticket fees its specific State residents paid were caused by Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020 as opposed to alleged anticompetitive conduct that occurred before May 23, 2020

Yes _____   No _____

*If you answered "Yes," proceed to Question 72.*
*If you answered "No," proceed to Question 73.*

72.   Please state the amount (if any) that South Carolina proved, by a preponderance of the evidence, that residents in its specific State were overcharged per ticket for primary concert tickets to events at the venues Plaintiffs call "major concert venues" because of Ticketmaster's alleged anticompetitive conduct that occurred after May 23, 2020.  You may not calculate any overcharge based on any alleged anticompetitive conduct that occurred before May 23, 2020.

$_____

*Proceed to Question 73.*

**Tennessee Trade Practices Act**

~~12.~~73.  ~~Have Plaintiffs~~Has Tennessee proven, by a preponderance of the evidence, that ~~Defendants~~Ticketmaster engaged in unlawful conduct after April 23, 2024 that harmed competition in ~~Tennessee~~its State?

Yes _____   No _____

*If you answered "Yes~~" for Question 12 in this Section (State Law Claims) answer Question 13. Otherwise,~~"* proceed to Question ~~14~~74.
*If you answered "No," proceed to Question 75.*

Has Tennessee
~~13.~~74.  ~~Have Plaintiffs~~ proven, by a preponderance of the evidence, that ~~Defendants have~~Ticketmaster engaged in unlawful conduct after April 23, 2024 in violation of the Tennessee Trade Practices Act?

Yes _____   No _____

*Vermont Consumer Protection Act*

18

*If you answered "Yes" for Vermont for Question 1 in this Section (State Law Claims) answer Question 14. Otherwise, proceed to Question 15.*

Have Plaintiffs*Proceed to Question 75.*

14.75. Has Tennessee proven, by a preponderance of the evidence, that Defendants haveLive Nation engaged in an unfair or deceptive method ofunlawful conduct after April 23, 2024 that harmed competition in violation of the Vermont Consumer Protection Actits State?

Yes _____     No _____

*Damages for Ticketing*

*If you answered "Yes" to Question 1 OR Question 2 in Section I (Monopolization Claims), OR Question 2 in Section II (Exclusive Dealing Claim),," proceed to Question 1576.*
*Otherwise, proceed to "California Unfair Competition Law — Monetary Recovery."If you answered "No," your form is complete.*

Has Tennessee
15.Have the Plaintiff States claiming monetary damages proven, by a preponderance of the evidence, that their residents overpaid for primary concert tickets as a result of Defendants' anticompetitive conduct?

Yes _____     No _____

76. _____

Please state the average per-ticket overcharge that resident purchasers of primary concert tickets paid as a result of Defendants' anticompetitiveLive Nation engaged in unlawful conduct. after April 23, 2024 in violation of the Tennessee Trade Practices Act?

$_____

*California Unfair Competition Law — Monetary Recovery*
16.*If you answered "Yes" to Questions* 2 or 4 in this Section ("State Law Claims"), please state whether the average per-ticket overcharge, if any, you found in response to Question 16 of this Section applies to purchases made by

19

~~individuals in California of primary concert tickets for live concert events at major concert venues in California.~~

Yes _____        No_____

~~17. If you answered "Yes" to Questions 3 or 5 in this Section ("State Law Claims"), please state whether the average per-ticket overcharge, if any, you found in response to Question 16 of this Section applies to purchases made by individuals outside of California of primary concert tickets for live concert events at major concert venues that took place outside of California.~~

~~Yes _____        No_____~~

Your deliberations are now complete. Sign this verdict form and notify the clerk that your deliberations are complete.

DATED:_____

FOREPERSON SIGNATURE:_____

**Plaintiffs' Position**: Plaintiffs and Defendants are both proposing a general verdict form pursuant to Fed. R. Civ. P. 49(b). Plaintiffs have proposed a straightforward verdict form, based on the cited authorities, in an effort to present claims in clear terms jurors will understand. Defendants' proposed verdict form is extremely long, repetitive, and complicated, likely leading to confusion by the jury. Defendants' proposed verdict form also purposefully renames allegations made by Plaintiffs, misstates the elements of claims, and mischaracterizes others. In addition, Plaintiffs propose that the jury finds a single per-ticket overcharge amount for all damages states. This is consistent with this Court's guidance at the pre-trial conference, in which Your Honor suggested that the question the jury be asked is "what are the per ticket damages, if any, that you found." 2/27/2026 Hr'g Tr. 167:2-3. Defendants, by contrast, seek to require the jury to find a separate per-ticket overcharge for each of the damages states. This is not only burdensome, but is also likely to confuse the jurors because it does not conform to the evidence presented in this case—Plaintiffs only present a single, nationwide overcharge calculation.

**Defendants' Authority:** *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 5:19-cv-4312, ECF No. 485 (N.D. Cal. Aug. 1, 2024); *Pacific Surf Designs, Inc. v. WhiteWater West Industries, Ltd.*, No. 3:20-cv-1464, ECF No. 313 (S.D. Cal. Aug. 28, 2023).

**Defendants' Argument**:  Defendants object to Plaintiffs' proposed verdict form, which fails to enumerate each claim's elements that Plaintiffs must satisfy.  It is commonplace in antitrust cases, to enumerate claims' elements.  *See, e.g.*, *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 5:19-cv-4312, ECF No. 485 (N.D. Cal. Aug. 1, 2024); *Pacific Surf Designs, Inc. v. WhiteWater*

20

*West Industries, Ltd.*, No. 3:20-cv-1464, ECF No. 313 (S.D. Cal. Aug. 28, 2023); *Deutscher Tennis Bund v. ATP Tour Inc.*, No. 1:07-cv-178, ECF No. 195 (D. Del. Aug. 5, 2008). And courts have long recognized that doing so facilitates "review, uniformity, and possibly postverdict judgments as a matter of law," *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997), as well as "the process of appellate review," *United States v. Poehlman*, 217 F.3d 692, 698 n.7 (9th Cir. 2000); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 285 (2d Cir. 1998) ("We are somewhat hampered in our review of the district court's decision because of the generality of the instructions given to the jury and the lack of specificity in the verdict it returned."). Plaintiffs' form elides the numerous complex inquiries jurors must make in this case on each claim, and that obfuscation is compounded by their proposed jury instructions, which do not even set out market definition and anticompetitive effects as elements of monopolization. Together with their jury instructions, Plaintiffs' verdict form creates a situation where jurors might miss the market definition and anticompetitive effects inquiries entirely, thus severely prejudicing Defendants.

Defendants also object to Plaintiffs' proposed verdict form because it does not require the jury to separately determine Live Nation's and Ticketmaster's liability. As Defendants explained in their jury instruction argument on this issue, a parent corporation and its subsidiary are legally distinct entities and cannot be held liable for the acts of each other absent narrow circumstances neither present nor alleged here. *See* Defendants' Proposed Jury Instructions, Defendants' Argument on Post-Instruction No. 2 (The Parties); *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).

21

| Page 8: [1] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [2] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [3] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [4] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [5] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [6] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [7] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [8] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [9] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [10] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [11] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [12] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [13] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

| Page 8: [14] Formatted | Author |
|---|---|

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

**Page 8: [15] Formatted**            **Author**

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

**Page 8: [16] Formatted**            **Author**

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

**Page 8: [17] Formatted**            **Author**

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

**Page 8: [18] Formatted**            **Author**

Left, Indent: Left:  0", First line:  0", Space After:  0 pt, Line spacing:  single

**Page 1: [19] Formatted**            **Author**

Centered

**Page 11: [20] Formatted**            **Author**

List Paragraph, Indent: First line:  0"

**Page 11: [21] Formatted**            **Author**

Font: 12 pt

**Page 11: [22] Formatted**            **Author**

List Paragraph

**Page 11: [23] Formatted**            **Author**

Font: 12 pt

**Page 11: [24] Formatted**            **Author**

Font: 12 pt

**Page 11: [25] Formatted**            **Author**

Font: 12 pt

**Page 11: [26] Formatted**            **Author**

Font: 12 pt

**Page 11: [27] Formatted**            **Author**

Font: 12 pt

**Page 11: [28] Formatted**            **Author**

Font: 12 pt

**Page 11: [29] Formatted**                    **Author**

Font: 12 pt

**Page 11: [30] Formatted**                    **Author**

Font: 12 pt

**Page 11: [31] Formatted**                    **Author**

Indent: First line:  0"

**Page 11: [32] Formatted**                    **Author**

Font: 12 pt

**Page 11: [33] Formatted**                    **Author**

Indent: First line:  0"

**Page 11: [34] Formatted**                    **Author**

Font: 12 pt, Bold, Not Italic, Underline

**Page 11: [35] Formatted**                    **Author**

Space After:  0 pt

**Page 11: [36] Formatted**                    **Author**

Font: 12 pt

**Page 11: [37] Formatted**                    **Author**

Font: 12 pt

**Page 11: [38] Formatted**                    **Author**

Font: 12 pt

**Page 11: [39] Formatted**                    **Author**

Font: 12 pt

**Page 11: [40] Formatted**                    **Author**

Font: 12 pt

**Page 11: [41] Formatted**                    **Author**

Font: 12 pt

**Page 11: [42] Formatted**                    **Author**

Font: 12 pt

**Page 11: [43] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [44] Formatted**　　　　　　　　　　**Author**

Font: 12 pt, Not Bold, Not Italic

**Page 11: [45] Formatted**　　　　　　　　　　**Author**

Indent: First line:  0", Keep with next

**Page 11: [46] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [47] Formatted**　　　　　　　　　　**Author**

Indent: First line:  0"

**Page 11: [48] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [49] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [50] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [51] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [52] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [53] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [54] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [55] Formatted**　　　　　　　　　　**Author**

Font: 12 pt

**Page 11: [56] Formatted**　　　　　　　　　　**Author**

Indent: First line:  0"