# EXHIBIT 20

| | |
|---|---|
| **From:** | Gushman, Robin (Bay Area) |
| **Sent:** | Wednesday, April 8, 2026 6:05 PM |
| **To:** | Subramanian NYSD Chambers |
| **Cc:** | #C-M US V LIVE NATION LITIGATION - FULL - LW TEAM; LN Lit CSM; LiveNationTrialStates@ag.ny.gov; LiveNationTeam |
| **Subject:** | United States v. Live Nation 24-cv-3973 - Tying Claim |

Dear Judge Subramanian,

Defendants write to follow up on the colloquy in court this afternoon regarding the "unremitting policy" issue and the parties' discussion of the operative legal doctrine. The Court asked, essentially, for any additional authority relevant to the question whether an "unremitting policy" of selling two products together could satisfy the doctrinal requirement to show "coercion" in a tying claim.

First, it is important to be precise about what *Hill* holds. *Hill* concerned an admitted tying arrangement in the form of a policy that to join a valuable buying club one needed to buy a vacuum cleaner from the defendant. There was no other way to join the buying club. Thus, the foundation of the opinion was, "There is an admitted tie between two clearly separate products." *Hill v. A-T-O, Inc.*, 535 F.2d 1349, 1355 (2d Cir. 1976). With that established, the court turned to whether there was evidence of coercion. The "unremitting policy" language is in that part of the opinion, as part of a longer statement: "[H]ere defendants admit to a policy of never offering the FBP buying plan membership separately from the sale of the Compact cleaner. An unremitting policy of tie-in, if accompanied by sufficient market power in the tying product to appreciably restrain competition in the market for the tied product constitutes the requisite coercion...." The holding (or more precisely, one of two alternative holdings on the coercion issue in the case) is therefore that when tying is undisputed and general—an "unremitting policy"—it provides its own evidence of coercion. That, moreover, was important in *Hill* because it was a class action and most courts at the time would deny class certification in tying cases based on the need to prove coercion individually. *See* W. Perry Brandt, *Tying Arrangements and the Individual Coercion Doctrine*, 30 Vand. L. Rev. 755, 774 (1977) (discussing Hill as an example of a "more modern view" which "appears to presume the requisite coercion on a class-wide basis from evidence of a concerted policy to impose tying arrangements").

The problem we are addressing in this case, and why *Hill* is inapposite, is that the only "unremitting policy" at issue is the Live Nation policy of refusing to deal *with rivals,* which is not a tying arrangement in itself. Up to the time of trial, Plaintiffs were crystal clear that the tying arrangement they sought to prove and were attacking was something more than just that policy. That was the principal argument they made at the motion to dismiss hearing, where the Court raised this issue directly. Plaintiffs did so both to avoid a *Trinko* problem and to try to fit this case under *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 446 (7th Cir. 2020)*,* where in light of evidence that Comcast had made "demands (or threats)" to Viamedia's ad-buying customers "that they either use it for their advertising services [the tied product] or face exclusion from the Interconnects [the tying product] if they stayed with Viamedia," *id*. at 446, the court permitted an unlawful refusal to deal to provide evidence of coercion. Plaintiffs' argument at trial has been different. They are now saying that the Live Nation policy *proves the tie* in the first instance because of its effects, i.e., artists would need to use Live Nation as a promoter for a show at a Live Nation amphitheater. They have not offered any evidence of separate conditional dealing.

1

In that context, instructing the jury about the effects of an "unremitting policy" is error because the policy they will associate this with is the unchallenged Live Nation policy of refusing to deal with rivals. That does not map to *Hill* or any other case. The error is exacerbated by the Court's decision not to advise the jury more directly that the refusal to deal with rivals would not be illegal in itself; indeed, it is not even challenged.

*Hill* is also a pre-*Jefferson Parish* case. As discussed in court, later cases reflect a substantially greater emphasis on distinct proof of coercion. One relevant passage is from the post-*Jefferson Parish* opinion by Judge Easterbrook in *Will v. Comprehensive Acct. Corp.*, 776 F.2d 665, 669 (7th Cir. 1985), which reads as follows:

> Section 1 of the Sherman Act prohibits any "contract, combination ..., or conspiracy, in restraint of trade...." ... Establishing the necessary combination in a tying case requires exceeding subtlety, because the substantive theory of tying law depends on coercion to take two products as a package. The joint sale of two products is a "tie" only if the seller exploits its control of the tying product "to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984). See also *Jack Walters & Sons Corp. v. Morton Building, Inc.,* 737 F.2d 698, 703–05 (7th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). A tie within the meaning of antitrust depends on showing that the buyer did *not* want to take both products from the same vendor. "[T]here is nothing inherently anticompetitive about packaged sales. Only if [buyers] are forced to purchase [the tied] services as a result of the [seller's] market power would the arrangement have anticompetitive consequences." *Hyde, supra,* 104 S.Ct. at 1565. If the buyer wants both products together—as, for example, the buyer of an automobile wants both chassis and engine together, even though they could be sold separately—there is no forcing, and so there is no tie-in.

This is a sound statement of law. And it is irreconcilable with the suggestion that, for example, Live Nation's policy of not renting its amphitheaters to rivals suggests that Mr. Capshaw was coerced even where he explicitly testified that he was *not* coerced to take Live Nation as a promoter for his artists if he wanted them to play in Live Nation amphitheaters. Nor can it fill in the gaping hole in the record about how others may have been coerced. To the extent that *Hill* suggests otherwise, it is not good law.

Sincerely,

Counsel for Defendants

**Robin L. Gushman**

**LATHAM & WATKINS** LLP
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.646.7830