The Court is in receipt of this letter.

Arun Subramanian, U.S.D.J.
Dated: April 15, 2026

## United States Senate
### WASHINGTON, DC 20510

April 14, 2026

The Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

*United States et al v. Live Nation Entertainment, Inc. and Ticketmaster, 24-cv-3973*

Dear Judge Subramanian:

Fans, artists, and independent venues have suffered for too long under Live Nation-Ticketmaster's monopoly control of live events. Fans looking to buy tickets to their favorite shows and concerts often face long online queues and technical problems along with high prices and fees. Artists find themselves pressured to sign up with Live Nation's promotion business to ensure they can play the hundreds of popular venues owned or controlled by Live Nation or ticketed by Ticketmaster. Live Nation leverages its control of artist promotions to pressure the venues it doesn't own or operate into using Ticketmaster for online ticketing for fear of missing out on popular shows. These multiple monopolies leave the industry vulnerable to Live Nation-Ticketmaster's anticompetitive actions that cement its position as the gatekeeper for live events and box out competitors. The recent settlement between Live Nation-Ticketmaster and the Justice Department fails to address these fundamental issues and stops far short of prying open this industry to new competition, innovation, and choice for consumers. That is why we write to urge the Court to use its authority under the *Tunney Act* to closely scrutinize this settlement—including the concerning facts surrounding its submission.[1]

Mere behavioral safeguards like those in the proposed settlement are insufficient to remedy Live Nation-Ticketmaster's monopoly power and—standing alone—are not in the public interest. That is precisely why the Justice Department and a bipartisan coalition of 40 state attorneys general specifically demanded that Live Nation divest Ticketmaster when filing this lawsuit.[2] The Justice Department had already tried to rein in Live Nation's anticompetitive conduct through behavioral remedies, like those in the proposed settlement, for years prior to filing this lawsuit. As the court knows, Live Nation was allowed to acquire Ticketmaster in 2010 only after agreeing to a consent decree with numerous behavioral requirements aimed at preventing Live Nation from abusing its multiple monopolies. Nine years after entering that decree, the Justice Department found that Live Nation had "repeatedly and over the course of several years engaged

---

1 On March 17, 2026, nine United States Senators, including some of the undersigned introduced the *Antitrust Accountability and Transparency Act* to strengthen the court's ability to review antitrust settlements and reject those that fail to protect consumers. Current law, however, requires this court to review and reject any antitrust settlement that does not promote the public interest.

2 United States et al. v. Live Nation Entertainment, Inc. & Ticketmaster LLC, Complaint, No. 1:24-cv-03973 (S.D.N.Y., 2024), https://www.justice.gov/atr/media/1353101/dl.

in conduct that . . . violated the Final Judgment."[3] In response, the Justice Department sought to clarify and strengthen the remedies in the consent decree and extended its rules governing Live Nation's conduct for another five and a half years.[4] But as the evidence and testimony presented to this court by the non-settling State Attorneys General makes clear, the revised consent decree failed to stop Live Nation from leveraging its monopoly position. That is why this lawsuit—from the very beginning—recognized that the only way to pry open competition in the live event ticketing industry is to undo Live Nation-Ticketmaster's multiple monopolies across the industry and fundamentally change the economic incentives that drive its anticompetitive conduct.

This court has already recognized many of these dynamics. In its opinion denying Live Nation-Ticketmaster's motion for summary judgment on multiple counts, the court found there is credible evidence that Ticketmaster controls more than 70 percent of all major concert venues with exclusive ticketing contracts,[5] that Live Nation controls 80 percent of the "major concert amphitheaters" market,[6] and that Live Nation is the dominant promoter with between 55 and 63 percent of the market between promoters and major concert venues.[7] None of the remedies in the proposed settlement undo Live Nation's dominant positions in these markets or alter its incentives to continue to use its dominance—as it has under previous consent decrees—to suppress competition and increase costs for fans.

The very terms of the settlement cast doubt on whether the agreement was entered with the intention to protect the public interest from Live Nation's monopoly. For example, the term sheet filed with this court contains a section labeled "divestiture of venues" in which Live Nation purportedly commits to divest "ownership and/or control" of 13 venues (out of 394 globally).[8] But Live Nation's own press release announcing the settlement describes the settlement differently, stating the commitment is to divest only "its 13 *exclusive booking agreements* with amphitheaters nationwide."[9] It is not clear what deals will replace those exclusive booking agreements or why surrendering an "exclusive booking agreement" is any different than the other limitations in the settlement on exclusive contracts between Ticketmaster and venues. Similarly, the settlement's attempt to convince the states to join the settlement by creating a $280 million "settlement fund" for their state law claims was clearly insufficient to protect the public interest given the vast majority of states rejected the terms of the settlement and continued to litigate the case.[10] And while other terms—such as the promise to implement a standardized

---

3  U.S. Dep't of Justice, "Justice Department Will Move to Significantly Modify and Extend Consent Decree with Live Nation/Ticketmaster," December 19, 2019, https://www.justice.gov/archives/opa/pr/justice-department-will-move-significantly-modify-and-extend-consent-decree-live.

4 *Id.*

5 *U.S. et al v. Live Nation Entertainment, Inc. and Ticketmaster*, (S.D.N.Y., 2026), pp 36, https://www.nysd.uscourts.gov/sites/default/files/2026-02/24cv3973%20Opinion%20%26%20Order.pdf.

6 *Id.* at 37.

7 *Id.* at 24.

8 Term Sheet for Resolution of United States et al. V. Live Nation Entertainment Inc., No. 1171, *U.S. et al v. Live Nation Entertainment, Inc. and Ticketmaster,* No. 24-cv-3973 (S.D.N.Y. March 9, 2026) ("Term Sheet").

9 Live Nation Newsroom, "Live Nation Entertainment Reaches Settlement With U.S. Department of Justice," March 9, 2026 https://newsroom.livenation.com/statements/live-nation-entertainment-reaches-settlement-with-u-s-department-of-justice/.

10 Term Sheet at 4-5.

application programming interface ("API") to allow rival ticketers to access Ticketmaster's platform and provisions to "loosen exclusivity provisions" for contracts with more than four years remaining may help address some of the challenges facing the industry, they do nothing to alter the underlying incentives Live Nation has to game the system and leverage its monopoly power.

The facts surrounding the settlement also point toward a deal made in response to political pressure rather than the public interest. This settlement appears to be part of a larger pattern of Justice Department officials reportedly overruling antitrust enforcers for political reasons. In June 2025, reports indicate that the Justice Department settled its case to block Hewlett Packard Enterprise's proposed acquisition of Juniper Networks despite reservations by the Assistant Attorney General for Antitrust, Gail Slater, who warned the deal did not remedy the alleged antitrust concerns.[11] The settlement allegedly resulted in the firing of Slater's top aides, Principal Deputy Assistant Attorney General Roger Alford and Deputy Assistant Attorney William Rinner, both of whom objected to the settlement. After his firing, Mr. Alford specifically warned that "Live Nation and Ticketmaster have paid a bevy of cozy MAGA friends to roam the halls of the [Antitrust Division] in defense of their monopoly abuses."[12] He later testified that Live Nation lobbyist Mike Davis had told Ms. Slater: "If you don't approve [the Hewlett Packard Enterprises] settlement, I will destroy you. I will destroy your job at the DOJ."[13] Davis later admitted in sworn testimony that he recommended Ms. Slater's firing to "anyone who would listen," including former Attorney General Pam Bondi.[14] Slater was ousted from her position on February 12.[15]

Less than a month after Ms. Slater's ousting, the Justice Department settled the case against Live Nation. As this court is aware, the Justice Department lawyers trying the case were not involved in the settlement discussions and were not even aware of its existence prior to its filing. The state attorneys general were also kept in the dark. That the settlement was hashed out without input from the lawyers trying the case demonstrates this was not a settlement struck in response to perceived litigation risk or to protect the public from harms resulting from alleged anticompetitive behavior. In fact, reporting from the Wall Street Journal indicates that the deal

---

11 Dana Mattioli, Rebecca Ballhaus & Josh Dawsey, *The Threats and Bare-Knuckle Tactics of MAGA's Top Antitrust Fixer*, Wall St. J. (Mar. 20, 2026), https://www.wsj.com/us-news/law/lobbyists-antitrust-trump-davis-f6a02e04.

12 Tech Policy Institute Aspen Forum, "The Rule of Law Versus the Rule of Lobbyists," Roger Alford, August 18, 2025, https://assets.bwbx.io/documents/users/iqjWHBFdfxIU/rqWZHzWNbqZc/v0.

13 The Hewlett Packard Enterprises settlement is now being reviewed under the Tunney Act by the United States District Court for the Northern District of California. Four United States Senators, including some of the undersigned, filed a comment on that settlement: https://www.warren.senate.gov/imo/media/doc/letter_from_senator_warren_to_judge_pitts_on_hpe-juniper_merger_and_tunney_act.pdf.

14 Dana Mattioli, Rebecca Ballhaus & Josh Dawsey, *The Threats and Bare-Knuckle Tactics of MAGA's Top Antitrust Fixer*, Wall St. J. (Mar. 20, 2026), https://www.wsj.com/us-news/law/lobbyists-antitrust-trump-davis-f6a02e04.

15 It has also been reported that Ms. Slater was overruled by Justice Department leadership when she sought to seek more information regarding a merger of two real estate brokerage firms, Compass and Anywhere Real Estate. Dave Michaels & Nicole Friedman, *Real-Estate Brokerages Avoided Merger Investigation After Justice Department Rift*, Wall St. J. (Jan. 9, 2026), https://www.wsj.com/us-news/law/real-estate-brokerages-avoided-merger-investigation-after-justice-department-rift-e846c797.

was largely struck in response to political pressure from the highest levels. Reports indicate that President Trump was even involved in efforts to settle the case and that the terms of the settlement were negotiated at the White House.[16] No one representing the interests of consumers, fans, artists, or venues was present.

These facts and allegations suggest that a thorough examination by the court under the *Tunney Act* to determine whether the deal was genuinely made in the public's interest is merited. Congress enacted the antitrust laws to protect against increased prices, reduced opportunity, and stifled innovation that occurs when dominant firms abuse their market position. The proposed settlement terms, negotiated under suspicious circumstances, do not include the kinds of remedies that consumers and small businesses deserve. We urge the court to apply its authority under the *Tunney Act* to undertake an independent examination into whether this consent decree is in the public interest—including through taking the testimony of any officials or experts who may have relevant knowledge and requiring that the parties submit a complete description of communications concerning the settlement—and to reject the settlement if it is not in the public interest.

Sincerely,

Amy Klobuchar
United States Senator

Elizabeth Warren
United States Senator

Cory A. Booker
United States Senator

Richard Blumenthal
United States Senator

Mazie K. Hirono
United States Senator

Peter Welch
United States Senator

---

16 Dana Mattioli, Rebecca Ballhaus & Josh Dawsey, *The Threats and Bare-Knuckle Tactics of MAGA's Top Antitrust Fixer*, Wall St. J. (Mar. 20, 2026), https://www.wsj.com/us-news/law/lobbyists-antitrust-trump-davis-f6a02e04.