# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br>and TICKETMASTER L.L.C,<br><br>*Defendants.* | Case No. 1:24-cv-03973-AS |

**<u>DECLARATION OF TED FIKRE</u>**

I, Ted Fikre, declare and state under oath and under penalty of perjury that:

1.      I am Vice Chairman and Chief Legal and Development Officer for non-party Anschutz Entertainment Group, Inc. ("AEG"). I have held this position at all times relevant to the matters described in this declaration. In my role, I am responsible for overseeing all legal and development functions for AEG and its subsidiaries and affiliates. I respectfully submit this declaration in support of AEG's Response to the Court's Order to Show Cause (Dkt. No. 1401).

2.      I submit this declaration solely in my capacity as an executive officer of AEG. Although I also serve as AEG's Chief Legal Officer, I am not submitting this declaration in my capacity as counsel to the Company, and nothing in this declaration is intended to or does describe, disclose, reveal, summarize, or otherwise address the substance of any communication that is subject to the attorney-client privilege or the work product doctrine, any legal advice that I provided to or received on behalf of AEG or any of its parent, subsidiary, or affiliated entities, any communication between me and outside counsel for AEG or any of its parent, subsidiary, or affiliated entities, or any mental impressions, conclusions, opinions, or legal theories of counsel.

The factual matters set forth below are based upon my personal knowledge as a corporate executive and my review of AEG's business records maintained in the ordinary course of its business, and if called upon as a witness, I could and would testify competently thereto. By submitting this declaration, AEG and its parent, subsidiary, and affiliated entities do not waive, and expressly reserve, any and all applicable privileges, protections, and immunities, including, but not limited to, the attorney-client privilege and the work product doctrine.

3.      As Vice Chairman, I am responsible for, and routinely involved in, significant corporate decisions affecting AEG and its subsidiaries and affiliates. Throughout the investigation by the United States Department of Justice and the State Attorneys General that preceded the filing of this action, and throughout this litigation, I have had personal knowledge of AEG's cooperation with Plaintiffs in the above-captioned matter. That cooperation has included both the voluntary and compelled production of hundreds of thousands of AEG documents and the provision of witnesses for interviews and depositions. AEG has viewed this litigation as important to its business and has treated the matter as one warranting engagement at the most senior levels of the company.

4.      I have personal knowledge of the circumstances surrounding AEG's decision in March 2026 to provide to Plaintiffs' counsel certain employment records and documents concerning Rick Mueller's separation of employment from AEG Presents (the "Mueller employment materials"). In my capacity as Vice Chairman, I am knowledgeable about the decision to provide the Mueller employment materials, the circumstances under which it was made, and the purposes for which, and reasons why, AEG provided the Mueller employment materials to Plaintiffs' counsel. I have personal knowledge of AEG's intent in providing those materials, and I am authorized to, and do, speak to AEG's intent on behalf of the Company on this subject.

2

5.      AEG's decision to provide the Mueller employment materials to Plaintiffs' counsel was not made, in any way, with the intention of interfering with Mr. Mueller's participation as a witness in this case. At no time did AEG intend, by providing the Mueller employment materials to Plaintiffs' counsel, to discourage Mr. Mueller from appearing as a witness, to cause Mr. Mueller to alter or withhold any truthful testimony he would otherwise give, or to threaten, intimidate, or retaliate against Mr. Mueller in connection with his truthful testimony.

6.      In March of 2026, neither I nor any other authorized representative of AEG communicated with Mr. Mueller or Defendants' counsel about his participation as a trial witness, his trial testimony, or the Mueller employment materials that were provided to Plaintiffs' counsel.

7.      AEG did not take any step to suggest to Mr. Mueller that he should decline to testify.

8.      AEG provided the Mueller employment materials to Plaintiffs' counsel for two reasons: (1) to ensure that Mr. Mueller would testify truthfully and could be impeached if he testified untruthfully or omitted material information about his departure from AEG and (2) to continue AEG's long history of being responsive to the government's request for cooperation in this matter.

9.      At the time AEG provided the Mueller employment materials to Plaintiffs' counsel, AEG believed that (1) the sole intended use of the material by Plaintiffs' counsel was to present such material to Mr. Mueller during his testimony for the purpose of impeachment if and only if Mr. Mueller was untruthful when testifying about the circumstances of his departure from AEG, (2) the Plaintiffs did not have to disclose the material to Defendants or produce it in discovery because the material would only be used for impeachment purposes, and (3) any further use or disclosure of the materials beyond the limited use for impeachment would not be made without AEG being made aware in advance and given an opportunity to respond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 18th day of April 2026, in Indian Wells, California.

DocuSigned by:

*TED FIKRE*

1BEF92F31D4E4C7...

Ted Fikre

4