

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

March 27, 2026

SECOND SUBMISSION 4-23-26

Hon. Arun Subramanian
US District Court, SDNY
500 Pearl Street Courtroom 23B
New York, NY 10007

cc: (1) Hon. Owen Kendler US Dept. of Justice Antitrust Division
(2) US Court of Appeals for the Federal Circuit - Case No. 25-1954
(3) DCD Case No. 25cv3257 (LLA)(JMC)
(4) SDNY Pro Se Unit Attn: Mr. Burcato
(5) Hon. Brenda Sannes, Chief Judge NYND
(7) Hon. Laura Taylor Swain, Administrative Judge NYSD
(8) Hon. Debra Ann Livingston, Chief Judge Second Circuit
(9) Hon. Congresswoman Bonnie Watson Coleman, Mercer County, NJ
Hon. Amy Klobuchar, US Senator, D MN, Senate Judiciary Committee
Hon. Mike Lee, US Senator, R UT, Senate Judiciary Committee

**RE:  _US v. Live Nation Entertainment, Inc._, 24cv3973
(AS)(SDNY)Motion to Intervene Rule 24 (Reconsideration) and
Order To Show Cause - Docket Nos. 638, 1313, 1363, 1367**

Dear Judge Subramanian:

LIVE-Fi® Technology Holdings' (LFTH) is assignee of standard
essential US patents disclosing apparatuses and methods for concert
ticketing management and sports betting invented by Amy Weissbrod

1

Gurvey (Gurvey US Patent Nos. 11403566, D647910S, 7603321). Gurvey is California counsel to LFTH (LIVE-Fi and Gurvey are Petitioners herein and have a motion pending for reconsideration granting intervention as of right under Rule 24 after the court denied the motion based on the Government's opposition papers. The Government is no longer a party to this lawsuit. Petitioners' full disclosure is made on pp. 5 et seq., infra.

LIVE-Fi® was granted interested nonparty status by the court on August 22, 2025 (Docket #638)  In the same order, Gurvey was granted *pro hac vice* status to appear as LFTH's California counsel. Petitioner is not admitted to practice law in NYS since she voluntarily resigned from the Third Dept. in 1998 when Petitioner was in medical school. Petitioner never paid bar dues after 1998 and never requested reinstatement. Petitioner has other US patents pending disclosing methods for differential diagnosis of cancer and clinical trials.

LIVE-Fi® properly moved to intervene as of right under decisions of the Second Circuit. *Hamilton Reserve Bank v. Sri Lanka,* 24-cv-1459 (2d Cir. 2025) Petitioners' reconsideration motion under Rule 59(e) and 60(b) has not yet been adjudicated. Ministerial errors of the court are respectfully challenged. Now LIVE-Fi® moves for reconsideration based on new evidence and contended errors of the court. All issues before the court arise out the same core of operative facts. *Ibid.*

**Additional Facts in Support of Reconsideration to Intervene under rule 24  NYS Claims Upheld — April 15, 2026 Verdict**

On April 15, 2026, the jury found violations of NY's Donnelly Act (General Business Law §340). Specifically, New York was one of nine states the jury made individual state law findings (along with CA, FL, IL, IN, KS, SC, TN, and VT).

2

The NYS-specific findings were:

| NYS Claim | Basis | Jury Finding |
|---|---|---|
| Monopolization of primary ticketing | GBL §340(1) — monopoly established/maintained in business conducted in this state | **FOUND** |
| Tying amphitheaters to promotion services | GBL §340(1) — competition restrained | **FOUND** |
| Consumer overcharge | $1.72/ticket across all NYS-purchased tickets at major concert venues | **FOUND — treble damages under §340(5)** |

<u>NYS's Claims Overlap with LIVE-Fi®'s Motion for Reconsideration</u>

Reconsideration should be granted in the interests of justice and judicial economy because LIVE-Fi®'s intervention as a party adds value to the States' judgment without diluting their recovery.

What the States currently have is a $1.72/ticket jury verdict applicable across 22 states + D.C., with trebling under both Clayton §4 and state statutes.  Defendant Live Nation Entertainment (LNE) estimates single damages under $150M before trebling (so ~$450M+ is the potential treble damage recovery).

What the States don't have:

(a) Any theory addressing the *data-monetization* dimension of the monopoly;

(b) Expertise on what a competitive non-ticketing market would look like post-remedy;

(c) and the fact that the court overlooked the consent decree's competitive impact statement (CIS) p.8 data-withholding provision as a remedial anchor; and '

(d) by contumaciously defying the CIS, defendant LNE is also willfully infringing LIVE-Fi® patents.

What LIVE-Fi®'s intervention brings to the lawsuit:

| LIVE-Fi Contribution | Benefit to States |
| --- | --- |
| Data-withholding theory validates broader harm narrative | Strengthens divestiture argument — shows monopoly extends beyond ticketing into data markets |
| CIS p.8 provision was overlooked as a remedial anchor | Gives Judge Subramanian textual basis for data-access remedies beyond what states originally sought |
| Patented overlay technology as proof-of-concept | Demonstrates that competitive non-ticketing market is viable, not speculative |
| Consent decree §IX.B violation evidence | Shows LNE's Media & Sponsorship subsidiary ($845M AOI) is ongoing violation — adds urgency to remedy |
| Tunney Act commenter status from 2010 | Establishes 16-year history of engagement — reinforces timeliness and good faith |

## The "Overlay" proposed by defendant LNE to the Dept. of Justice also proposed an infringement of LIVE-Fi®'s patents

The overlay is a data-authentication layer that sits *on top of* LNE's existing ticketing infrastructure. It does not replace Ticketmaster — it enables additional non-ticketing revenue streams using the data that Ticketmaster's ticketing system generates that are not shared with artists.

The sequence:

1. Fan buys ticket through Ticketmaster → transaction generates identity, preference, location, and purchase-history data
2. Overlay authenticates and structures this data (This is LIVE-Fi® patented process) already being infringed;
3. Authenticated data becomes available to authorized third-parties which enable separate non-ticketing business;
4. Those businesses use it for targeted advertising (e.g., a sponsor reaches verified attendees of specific concerts), sponsorship optimization, and fan engagement analytics.
5. There are other claims in LIVE-Fi patents that use authenticated ticketing data to enable content interactions, transmissions and promotions, and rebroadcasts of concerts.

The Government's 2010 competitive impact statement and consent decree both endorsed this concept — non-ticketing businesses were meant to "latch on" to the consent decree framework and build competitive services.

Instead defendant LNE built a subsidiary - Live Nation Media & Sponsorship - to do this exclusively, a company that internally generated $845M in adjusted operating income in 2025 while withholding the underlying data from every potential competitor and not accounting for that revenue.

This is the core §IX.B violation the SDNY antitrust proceedings have yet to address.

Adding LIVE-Fi® to this lawsuit as a intervening party prevents future willful infringement litigation against defendant LNE's venture partners and taking litigation against the 32 US states.

## DISCLOSURE

Updated litigation summary:

On March 13, 2026, SDNY Attorney Services clerks in SDNY Room 250 (Ms. Aquino and Vanessa) told Petitioner that a SDNY insider Julie Allsman unilaterally deleted the Court's order #638 from the 24cv3973 docket and identified Allsman as the perpetrator. Allsman was also identified as the individual who deleted Petitioner's previous patent infringement complaint against defendant LNE and its intellectual property counsel Cowan Liebowitz & Latman from another SDNY docket (06cv1202) in or about 2013 without notice, hearing or due process law. In addition, the clerks identified Allsman as the individual who unilaterally deleted Gurvey's California counsel's roster listing from the SDNY roster in 2013. That listing was a vested commission that could not be removed without due process of law. *In re*

*Gouiran*, 58 F. 3d 54 (2d Cir 1995); *Marbury v. Madison*, 5 US 137 (1803); *Bradley v. Fisher*, 80 US (13 Wall.) 335 (1871).  No notice or due process was ever afforded.

On or about the same day, March 13, 2026 the Court accepted *ex parte* documents from Allsman without service on Petitioner requiring immediate vacatur of all subsequent orders of the court. Docket #1313. An order to show cause returnable March 23, 2026 to vacate orders has still not been adjudicated. Docket #s 1363, 1367. Allsman was since reported to the US Dept. of Justice for *ex parte* obstruction of justice.

Allsman unilateral docket deletions demonstrate insider acts in furtherance of an ongoing conspiratorial enterprise with SDNY defendant LNE and its defense attorneys to prevent LFTH from affirming its concert ticketing management patents and sports betting patents in the market. Defendant LNE previous attorneys at Hinshaw & Culbertson in Case No. 06cv1202 were key members of the conspiracy dually serving as concealed NYS staff attorneys at the First Dept. without disclosing conflicts of interest. Hinshaw & Culbertson attorney J. Richard Supple was found to have inserted unserved documents into concealed NYS archived files in or about 2011 in an order of the First Dept. entered April 21, 2016. However, the First Dept. held that Petitioner would continue to be denied access to the state files.

In July, 2025, NYS Office of Court Administration (OCA) insider Shawn Kerby was identified as another member of the conspiracy having written ex parte letters to the Federal Circuit not to hear Petitioner's arising under patent appeals to orders of the SDNY induced by Allsman's ex parte fraud, defamation and obstruction of justice.

Petitioner was given first access to the First Dept. "ordered concealed" archives on August 26, 2025.  The documents discovered including those inserted by LNE's counsel Supple were confirmed

forgeries. They affixed the signature of a dead 2002 former First Dept. attorney grievance committee (AGC) counsel Paul Curran who died of cancer in 2007. Curran's signature was photocopied in 2011 onto pre-2000 NYS photocopied letterhead to conceal the names of the all court administrative conspirators working for defendant LNE.

The circulated forged documents were copied by NYND judge Ann Nardacci in January 2025 in NYND Case No. 24cv211. They are now the subject of a motion to disqualify the judge. The complaint in that lawsuit sought prospective injunctive relief against NYS agencies – the Port Authority of NY and NJ, the NYS Thruway, and the NYS Gaming Commission, who are all continuing to use the patents without permission. Ex parte Young, 209 US 123 (1908). Chief Judge Brenda Sannes is now adjudicating these motions. 24cv211 (BS) Docket #s 85, 101, 106,108, 110.

Additional acts by Allsman and Kerby were circulating fraudulent postings to the DC District Court judge Loren Alikhan in October 2025 as proven by an order.  In Case No. 25cv3257 Judge Alikhan dismissed Petitioner's complaint seeking to enforce the terms of the 2010 merger of defendant Live Nation and Ticketmaster by *sua sponte* finding that "*Petitioner is not admitted to any bar*".  This is a pure fabrication copied from Allsman's and Kerby's ex parte acts in furtherance of the conspiracy. Petitioner is in excellent standing in California and should still be listed on the SDNY roster. A motion to vacate Judge Alikhan's orders has been pending since January 2026 before another judge, Jia M. Cobb, after Judge Alikhan recused herself without a formal motion on the docket.

In 2025 it was also discovered that in 2018 OCA's Kerby wrote ex parte letters to the Federal Circuit not to hear Petitioners' arising under patent appeals to SDNY unconstitutional orders refusing to hear Petitioners' claims for patent infringement against defendant LNE and

its counsel for contributory infringement.  The Federal Circuit transferred three arising under patent appeals, 18-2076, 20-1620 and 23-134, to the 2d Circuit that had no jurisdiction to hear patent appeals and never heard them on the merits. Petitioners never got a hearing on infringement of their patents or on unfair competition against defendant LNE for 13 years.

The April 15, 2026 jury verdict found a monopoly in restraint of trade, proving obstruction of justice during the previous lawsuit.

The State of NY has waived Eleventh Amendment immunity from damages for acts of tortious interference, unjust enrichment and misappropriation of property by its officers under Sections 8-10 of the Court of Claims Act. OCA's Kerby has actual and apparent authority to bind the State. There is no dispute that Kerby tortiously interfered with Petitioners' arising under patent appeals before the Federal Circuit. The Federal Circuit never served Petitioners with Kerby's *ex parte* proffers. All orders are void as a matter of US Supreme Court precedents. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 Ex parte Communications.

Since 2025, the NY Court of Claims continued to return Petitioners' damage claims for Kerby's acts of tortious interference with her patent appeals. The State of NY and its officers have no legal right, party status, power or jurisdiction to tortiously interfere with Petitioners' arising under patent appeals against <u>private</u> companies.

The State of NY has in fact perpetrated a "taking" of Petitioner's patents as such term is defined by the US Supreme Court.  *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank* 527 US 627 (1999). This matter could be cleared up by adding LIVE-Fi® as a party to the antitrust lawsuit.

8

Updated docket entries #s 1363 and 1367 prove further *ex parte* obstruction of justice by Allsman whose job it was to discipline Supple and LNE's other attorneys at Baker Botts who lied to the court that defendants has no contacts with NYS.

**WHEREFORE**, LIVE-Fi®'s motion for reconsideration must be granted in the interests of justice and judicial economy. The opposition papers of the Government in opposition to the motion for intervention are moot and cannot have any further force and effect. In addition, the order to show cause seeking reversal of the court's order denying Petitioner her continuing right to appear as counsel for LIVE-Fi® must be immediately vacated. A full investigation against Allsman must be commenced by the Court.

Dated:  April 23, 2026
Princeton NJ

/amyweissbrodgurvey/

_____

AMY R. WEISSBROD GURVEY
California Counsel
LIVE-Fi® Technology Holdings

SERVICE ECF NYSD

9