# EXHIBIT 7

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 17, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0335 | Relevance, Prejudice, Hearsay, Limited Purpose | Relevance: This 15-year-old document is irrelevant for four reasons:<br><br>(1) Given the substantial transformation the ticketing and concert promotion industries have undergone over the last 15 years, this document is irrelevant to current market conditions.  SeatGeek was not a primary ticketing company at this time; AXS had been a primary ticketing company for less than one year at this time; and Barclays was not even open for business, and would not be open for business for another year after this email.<br><br>(2) As this Court noted in its Order on Plaintiffs' MIL #1, a market definition from "**16 years ago is of limited, if any, relevance in this case**" because "**the market may have shifted in the decade and a half since**." Dkt. 1079 ("Order on the MILs") at 1 (emphasis added)<br><br>(3) Similarly, this document is stale and reflects a competitive landscape and live entertainment industry that bear little resemblance to today's marketplace circumstances.<br><br>(4) State Plaintiffs are subject to at least a four-year statute of limitations.  Following the federal government's settlement, this document is no longer within—and over 10 years removed from— the | **Relevance and Prejudice:** The exhibit shows an example of the consistent and systematic LNA practice of withholding content to force a venue client to contract with TM as the primary ("they need us a heck of a lot more than we need them" and "other options in the market"). The Barclays/TM relationship is still in place today. So, although the conduct here was pre-2020, it relates strongly to LN/TM's monopoly as it stands today.<br><br>Therefore, the fact that these initial convos happened pre-2020 does not diminish the probative value of the party admissions in the document showing that Live Nation pursued a strategy to withhold content in order to force arenas to sign with TM.<br><br>Also, this is directly relevant to the element we need to prove in our case that Defendants were leveraging promotion to get ticketing.<br><br>**Hearsay:** These are all LNTM employees – party admissions. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | limitations period governing the remaining state claims.<br><br>To the extent Plaintiffs argue that the discussion in 2011 was the beginning of Ticketmaster's relationship with the venue in question, and that said relationship continues to this day, the ticketing contract at issue has long since expired (well before the beginning if the limitations period) and Plaintiffs are not allowed to recover for injuries caused by discrete acts that were completed prior to the limitations period.  The acts alleged in the 2011 document (e.g., someone delivering a certain message to Brett Yormark) were completed well before the limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997).<br><br>Prejudice:<br><br>(1) This document is not necessary to Plaintiffs' claims and its probative value is limited. There are thousands of documents on both the Plaintiffs' and Defendants' Exhibit Lists that are far closer in time to trial and that more accurately reflect Live Nation's current and more recent and relevant past conduct.<br><br>This document is prejudicial and will require Defendants to provide the jury with sufficient background and context to evaluate the 2011 ticketing and promotions landscapes, which are outside of the four-year statute of limitations. In particular, jurors would have no way to understand how dramatically the competitive and industry landscapes have evolved without exploration of historical marketplace conditions.  For example, the references to (i) Tim Leiweke working at AEG, where he has not worked for many years, (ii) Barclays, which was not even an operating building at this time, and (iii) to a ticketing | |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | landscape--which did not include SeatGeek and only a nascent AXS—that bears no resemblance to the current environment, would confuse the jury. Explaining this necessary historical context would in turn effectively devolve the proceedings into a separate mini-trial on stale, collateral issues, which is misleading. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, No. 91 CIV. 4544 (MGC), 2000 WL 987276, at *1 (S.D.N.Y. July 17, 2000) ("To permit a mini-trial on the truthfulness of these statements would turn the trial into a three-ring circus and seriously distract the jury from the real issues"); *Park W. Radiology v. CareCore Nat. LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008).<br><br>Hearsay / Limited Purpose – This has multiple levels of hearsay, given that Gahagan relayed the content of his discussion with "Charlie" (who is not a Live Nation employee), who in turn relayed thoughts from Yormark (who is not a Live Nation employee). During the parties' meet and confer, Plaintiffs represented that they are offering the hearsay portions of this document to show the full "context" of Evan's response to Gahagan— but the need for "context" on another statement (which is only admissible as a party admission), does not make it admissible. Indeed, under Plaintiffs' theory, all hearsay statements become automatically admissible for context if there is a party admission anywhere in an email chain. *U.S. Football League v. Nat'l Football league,* 842 F. 2d 1335, 1375-76 (2d Cir. 1988) ("The doctrine of completeness, Fed. R. Evid. 106, does not compel the admission of otherwise inadmissible hearsay evidence.") | |

3

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0389 | Relevance, Hearsay, Limited Purpose | Relevance: This 2017 document is irrelevant to any issue in this case and Plaintiffs know it is irrelevant to this case because they have Mr. Evans' deposition testimony about this document from 2019, which we have attached for the Court's review.  M. Evans Dep. Tr. (2019) 120:14-124:12 (explaining that SAP Center was only getting one of two Justin Timberlake show dates because the other date was being played in Oakland at the Oracle Arena).  Plaintiffs have no good faith basis to contend that it relates to ticketing or Ticketmaster.  During the parties' meet and confer, Plaintiffs said they believe that this document relates to Ticketmaster's control over arenas.  But nowhere is Ticketmaster even mentioned in this document.  Nor is there a Ticketmaster employee copied on or referenced anywhere in this document.  Plaintiffs are merely speculating that the SAP Center only receiving 1 show was somehow related to Ticketmaster.  But Mr. Evans had his own relationship with the venue.<br><br>Hearsay / Limited Purpose: Steve Kirsner is not a Live Nation employee.  Plaintiffs' represented that this document would be offered for the "context" of Wampold's and Schwartzkopf's conversations with Alberts.  However, as stated above, the need for "context" does not make an otherwise inadmissible statement admissible. *U.S. Football League v. Nat'l Football league,* 842 F. 2d 1335, 1375-76 (2d Cir. 1988) ("The doctrine of completeness, Fed. R. Evid. 106, does not compel the admission of otherwise inadmissible hearsay evidence.") | **Relevance:** The exhibit shows an example of the consistent and systematic LNA practice of withholding content to force a venue client to contract with TM as the primary ("easy not to play at all"). The SAP/TM arrangement is still in place today. So, although the conduct here was pre-2020, it relates strongly to LN/TM's monopoly as it stands today.<br><br>Therefore, the fact that these initial convos happened pre-2020 does not diminish the probative value of the party admissions in the document showing that Live Nation pursued a strategy to withhold content in order to force arenas to sign with TM.<br><br>Also, this is directly relevant to the element we need to prove in our case that Defendants were leveraging promotion to get ticketing.<br><br>**Hearsay:** Evans' statement is party admission. The recounted statements Kirsner are not offered for the truth of the matter asserted; they are offered to show the content of what Evans is responding to. They are merely the predicates to understand the party statements. |
| PX0392 | Hearsay, Limited Purpose, Relevance | Hearsay: There are several hearsay statements from Brad Alberts as purportedly recounted by Kurt Schwartzkopf in this email that warrant redactions.  Plaintiffs initially included both Alberts and Schwartzkopf on their witness list but subsequently removed both of them.  They now seek to introduce his otherwise inadmissible hearsay testimony | **Relevance:** The exhibit shows an example of the consistent and systematic LNA practice of withholding content to force a venue client to contract with TM as the primary ("go silent on it for a few days"). The HEB/TM arrangement is still in place today. So, although the conduct here was pre-2020, it relates strongly to LN/TM's monopoly as it stands today. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | through Mike Evans, who did not even hear any of the purported statements from Mr. Alberts.<br><br>(1) For starters, Kurt Schwartzkopf's email at 11:08am on 6/10/17 is merely a summary of his conversation with Brad, which constitutes hearsay within hearsay. Schwartzkopf is not testifying, and while his statements may be admitted as an admission by a party opponent, statements made by Alberts, who is a third party, are hearsay.  Specifically, Schwartzkopf's statement, "I spoke to him also.  He really thinks someone else can deliver AND that he will continue to get LN shows that he already gets (he referenced 4 per yr) – even went as far to say – if it doesn't work we will come begging you to come back," must be redacted.<br><br>(2) Later, Geoff Carns replied to Schwartzkopf, stating: "Where is Brad getting the impression that LN will continue to want to bring content if TM isn't in venue?" Carns' reference to Brad's impression is rooted in hearsay testimony and is itself inadmissible.<br><br>There is no exception to the hearsay rule that would permit the admission of any of this hearsay. | Therefore, the fact that these initial convos happened pre-2020 does not diminish the probative value of the party admissions in the document that Live Nation pursued a strategy to withhold content in order to force arenas to sign with TM.<br><br>Also, this is directly relevant to the element we need to prove in our case that Defendants were leveraging promotion to get ticketing.<br><br>**Hearsay:** Defendant employee statements are party admissions. Any recounted HEB statements are here for context not the truth. |
| PX0412 | Hearsay, Limited Purpose | Hearsay: The first three sentences of this email are clear hearsay.  All three sentences are Mr. Schwartzkopf recounting a conversation he had with Jim Goddard, who is not an employee of either defendant.  Attempt to smuggle in this hearsay through Mr. Evans is particularly inappropriate because he is not the one who even purportedly had the conversation with Mr. Goddard.<br><br>Plaintiffs admit that the first two sentences are hearsay, but contend the third sentence is not because they believe Mr. | **Hearsay:** Defendant employee statements are party admissions. Any recounted SAP statements are here for context not the truth.<br><br>**Foundation:** Mike Evans is on this email. He also established knowledge of the doc in his 2019 dep. (pp. 106-107) |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | Schwartzkopf may be offering his opinion of that conversation, rather than purporting to recount it.  Plaintiffs have no basis for this contention, as the face of the email indicates otherwise.  Even if proper interpretation of the third sentence were ambiguous (it is not), Mr. Evans could never lay the foundation to show that it is what Plaintiffs believe it to be because he is merely a recipient of the email.  Plaintiffs had listed Mr. Schwartzkopf as a witness in this case, but dropped him from their witness list. Plaintiffs cannot lay the proper foundation for the third sentence with Mr. Evans to establish that sentence is an exception to the hearsay rule as a party admission.  And without being able to lay that foundation the first three sentences in the email should be redacted:<br><br>"Talked to Jim Goddard last night - sounds like Flav has officially taken over the ticketing renewal process and Jim is simply along for the ride. He was def frustrated and concerned over the direction it is headed. The biggest issue seems to be that John Tortora (COO and more of a hockey guy than anything) doesn't really understand the arena side at all or exactly how many options we have in the northern cal market." | |