# EXHIBIT 8

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 18, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0595 | Relevance, Prejudice, Hearsay, Limited Purpose | **Relevance and Prejudice:** PX0595 is entirely irrelevant and highly prejudicial. It relates to Plaintiffs' allegation that "Live Nation threatened commercial retaliation against private equity firm Silver Lake, unless one of its portfolio companies, TEG, stopped competing with Live Nation for artist promotion contracts in the United States." Am. Compl. ¶¶ 81-87. This allegation is relevant only to Plaintiffs' claim that Defendants monopolized a market for concert promotion services, which the Court dismissed from the case. *See* ECF No. 1037; Am. Compl. ¶ 259 (alleging that Live Nation maintained its monopoly in the concert promotion market by "[d]eterring entry and expansion by rivals by threatening potential rivals and their investors"). To the extent there is any marginal probative value to this document (which there is not), it would be highly prejudicial and confusing to the jury to admit it. Courts within the 2nd circuit routinely preclude testimony or evidence of dismissed claims during a jury trial. *Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758 (KAM)(LB), 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) ("The previously dismissed claims, and evidence thereof, are not of consequence in determining the action and therefore will be excluded."); *Alexander v. Lewis*, No. 3:20-cv-370 (VAB), 2024 WL 4008204 at *4 (D. Conn. Aug. 30, 2024) ("Where as here, claims have been dismissed on summary judgment, courts generally preclude testimony or evidence regarding such dismissed claims during a jury trial."); *Morales v. N.Y. Dep't of Labor*, No. 06-CV-899 (MAD), 2012 WL 2571292, at *4 (N.D.N.Y. July 3, 2012) (finding "that any testimony or evidence about plaintiff's previously dismissed | **Relevance and Prejudice:** PX595 is a December 17, 2021, document – within the limitations period – that is squarely relevant to Defendants' anticompetitive conduct and intent. Mr. Rapino discusses attempts to exclude a potential promoter entrant in Los Angeles and implicitly threatens that there will be ramifications for the party financing such potential competition. In an email entitled "Clearing the air!," Mr. Rapino wrote: "what I fail to understand is why Stephen Evans continues to invest in a business that competes with LN/OVG," calling the potential new entrant in Los Angeles a "direct competitor to LN in its markets."<br><br>This document is relevant to showing Live Nation's anticompetitive intent and conduct within the limitations period; its self-perceived market power to block competition; and to showing harm to competition among promoters (tying claim). Further, the reference to "LN/OVG" is relevant to establishing the anti-competitive agreement between Live Nation and OVG – which was formed during the limitations period – and that OVG was Live Nation's agent.<br><br>**Hearsay:** The bottom email from Randy Phillips is not offered for its truth, but rather to show how Mr. Rapino responded and as context so that the jury can understand the party admissions. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | discrimination claim is excluded" as irrelevant); *Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 (FPS), 2011 WL 6187078, at *7 (S.D.N.Y. Dec. 5, 2011) ("Any testimony and/or evidence relating to the plaintiff's previously dismissed disability discrimination claim is wholly irrelevant to any issue in contention in her current retaliatory discharge claim, and thus ... is hereby precluded from introduction at trial pursuant to Federal Rules of Evidence 401 and 402."). Plaintiffs contend that PX0595 is relevant to proving that Live Nation engages in "threatening and coercive conduct" and that it shows a "pattern and practice" of the "velvet hammer" approach. PX0595 has nothing to do with PX0451 (the document relating to the Red Mountain Entertainment acquisition in which the words "velvet hammer" were used). Plaintiffs' ruse is clear—as with the many decades-old documents they have put before the jury over the course of their case, Plaintiffs are attempting to shoehorn evidence into the trial record that has nothing to do with their actual claims, simply by saying that it shows a "pattern and practice" of "threats." That is improper. PX0595 does not demonstrate any wrongdoing or bad act, but even if it did, Plaintiffs are not permitted "to create an 'aura of guilt' or to imply new wrongdoing from past wrongdoing." *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986). Prior bad acts in the antitrust context "have no logical tendency to show an intent to act against a compet[itor]." *Id.* In affirming the decision on appeal, the Second Circuit noted that "Judge Leisure correctly found that this testimony was not admissible 'habit' evidence under Fed.R.Evid. 406, because testimony as to three or four episodes over a 20–year period was hardly sufficient to conclude that a pattern of behavior exists with respect to the conduct at issue here." *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1373 (2d Cir. 1988) (citation omitted). | |

2

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | **Hearsay / Limited Purpose:** The email in this chain from Randy Phillips is hearsay, as it is an out-of-court statement that Plaintiffs intend to admit for the truth of the matter asserted.  It also contains multiple instances of hearsay within hearsay, as Mr. Phillips is relaying information he heard from other individuals.  None of these individuals are testifying at trial, and their statements should not be admitted. | |
| PX0339 | Relevance, Prejudice, Hearsay, Limited Purpose | | |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | ███████████████ | █████████████████ |
| | | ████████████████████ | ██████████████████ |
| | | █████████████████ | ████████████ |
| | | █████████████████ | |
| | | ███████████████ | ███████████████████ |
| | | ██████████████████ | ███████████████████ |
| | | ████████████████ | █████████████████ |
| | | ██████████████████ | ██████████████████ |
| | | █████████████████ | ████████████████████ |
| | | ████████████████ | ███████████████████ |
| | | ███████████████████████ | ██████████████ |
| | | █████████████████████ | |
| | | ██████ | |
| | | ████████████████ | |
| | | ███████████████ | |
| | | ███████████████ | |
| | | ████████████████ | |
| | | ███████████████ | |
| | | ████████████████ | |
| | | ██████ | |
| PX0386 | Relevance, Prejudice, Hearsay, Limited Purpose | ██████████████ | ████████████████████ |
| | | █████████████████ | ███████████████████ |
| | | ████████████████ | ███████████████████ |
| | | ████████████████ | ██████████████████ |
| | | ████████████████ | ██████████████████ |
| | | ██████████████ | ███████████████████ |
| | | ██████████████████████ | ████████████████ |
| | | █████████████████ | ████████████████████ |
| | | ██████████████ | ███████████████████ |
| | | █████████████████ | ████████████████████ |
| | | ████████████████ | ███████████████ |
| | | ████████████████ | |
| | | ███████████████ | |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0415 | Relevance, Prejudice | **Relevance and Prejudice:** The Court "provisionally sustained" Defendants' objection to PX0415 on the basis that Plaintiffs did not demonstrate how the document is relevant to events in the limitations period. During the examination of Mr. Roux, the Court admitted into evidence just a portion of the email chain for the limited purpose of impeachment. Plaintiffs now seek admission of the full email chain through Mr. Rapino. For the same reasons Defendants previously articulated, PX0415 is irrelevant to any events within the limitations period, and the remaining portions of the document should be excluded.<br><br>Prior argument that was sustained: As the Court has explained, pre-limitations period (here, pre-May 2020) evidence "might be relevant to the defendant's liability, even if the evidence might not itself fit within the relevant limitations period." ECF No. 1094 at 7 (order on Defendants' motion to bifurcate); see also ECF No. 1079 at 5 (order on Defendants' motion in limine No. 5). But the evidence still must be "relevant to events during the period." *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001). PX0415 is an internal Live Nation email from January 2016—four years before the limitations period—about potential business dealings with Red Mountain Entertainment, a promotion company based in Alabama. Plaintiffs contend that this document is probative of evidence during the limitations period, pointing to the supposed intent behind Live Nation's acquisition of Red Mountain Entertainment, but they cannot identify any event during the limitations period that this document is relevant to. This email from 2016 was two years before Live Nation even acquired Red Mountain in 2018, and that acquisition itself was two years before the limitations period. And even if there were some marginal probative value to the document, it would be severely limited due to the age of the alleged conduct and the risk of confusing the jury. | **Relevance and Prejudice:** PX415 was partially admitted in Mr. Roux's examination. This document should now come in its entirety. PX415 concerns the promoter Red Mountain, which had exclusive booking arrangements at three large amphitheaters in Alabama and Mississippi. In the bottom email (already admitted), after prompting from Mr. Rapino, Mr. Roux said that Live Nation would develop an "active plan to mitigate further expansion" by Red Mountain and explained: "Can't get complacent and let small guys encroach from the edges." Mr. Rapino then directed Mr. Roux to pursue acquiring Red Mountain – citing them as a "very impressive" new competitor – even though Alabama and Mississippi were considered "shitty" markets within Live Nation. As Mr. Rapino said, "A company like this should be on our radar" for "bus dev," meaning acquisition.<br><br>This document is relevant for multiple reasons. *First*, Live Nation executives Mr. Roux and Mr. Campana testified that Live Nation acquired Red Mountain for reasons unrelated to the "encroaching" competitive threat they posed. Mr. Rapino's response squarely refutes this narrative that Defendants have presented to the jury. Moreover, Mr. Roux testified that Live Nation acquired Red Mountain to gain a presence in the Alabama and Mississippi markets – which Mr. Rapino's email describing them as being perceived as "shitty markets" within Live Nation contradicts. *Second*, PX415 is independently relevant because it shows Live Nation's pattern and practice of coercive conduct – using the "Velvet Hammer" to frustrate and acquire or neutralize any competitive threat, no matter how small, which has continued during the limitations period. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | Plaintiffs now contend that this document should be admitted in full because the Red Mountain Entertainment acquisition is now at issue in the case. But it was Plaintiffs who put that acquisition at issue—not Defendants—whose elicited testimony was purely in response to Plaintiffs' examination. Plaintiffs should not be able to circumvent a relevance ruling by putting something at issue that Defendants did not bring into the case on their own. | |
| PX0993 | MIL (redact) | **Motion in Limine:** After hearing argument on the *motion in limine,* the Court stated at the pre-trial conference that information related to executive compensation could come in for the limited purpose of explaining that Live Nation "executives were not only receiving compensation tied to profitability targets, but also that they achieved those targets." Pre-Trial Conf. Tr. 102:13-16. The Court further stated that "the compensation information *does not come in for bias or motive*", explicitly cautioning Plaintiffs against "getting into the amounts." *Id.* at 101:24-25. The Court further stated that it did not understand "why the bias or motive is anything different than the bias or motive of any executive working for a company. They make lots of money, and so they want to do what's best for the company."<br><br>On March 18, 2026, the Court revisited its ruling, now stating that Plaintiffs would be allowed to reference the percentage of Mr. Rapino's compensation that is tied to Live Nation's profitability, and could do so in order to "explore the issue of potential bias by establishing that the outcome of the litigation would have an impact on the witness and his compensation, right? Just in general terms without looking at the actual numbers." Trial Tr. 1581:17-20. | **Relevance:** The remaining dispute over PX993 is whether Plaintiff States can use the statements from Live Nation's 2025 proxy statement showing that Mr. Rapino owns 4.5 million shares of Live Nation stock – making him the largest individual shareholder in the company (page 25). The Court has previously indicated that Plaintiff States can question Mr. Rapino (with proper foundation) on the portion of his compensation that is determined based on discretionary bonuses tied to Live Nation's profitability and resolution of this litigation. That evidence is classic cross examination regarding Mr. Rapino's bias as a witness, as Mr. Rapino has a huge financial stake in the outcome of this trial. His stock shares are relevant for the same reason. Plaintiff States are not seeking to introduce evidence of the overall amount of Mr. Rapino's compensation or income, consistent with the Court's motion in limine ruling. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | Emboldened by having thus obtained some leeway regarding the extent to which they can explore Mr. Rapino's bias, Plaintiffs now seek to expand the scope of permissible questioning even further by presenting to the jury additional information regarding the *actual number* of shares of stock owned by Mr. Rapino. Specifically, Plaintiffs have declined Defendants' request that they redact information regarding the amount and type of Live Nation stock owned by Mr. Rapino. Plaintiffs claim that because the page in question (page 25) does not contain dollar amounts, they are allowed to introduce the information regarding Mr. Rapino's stock ownership, and to do so in order to show Mr. Rapino's bias. Allowing Plaintiffs to introduce this information would be inconsistent with the Court's prior ruling and would allow in evidence the Court previously held to be inadmissible.<br><br>While Plaintiffs are correct that no dollar amount is included on these pages, the value of Mr. Rapino's stock ownership is easy enough to extrapolate—all that is required is to take the number of shares, and multiply by the current value of Live Nation stock. Additionally, as stated above, the Court has already ruled that **"the compensation information does not come in for bias or motive."** Pre-Trial Conf. Tr. 101:24-25. Allowing information regarding a form of Mr. Rapino's compensation (namely his stock ownership) to come in, *when Plaintiffs have explicitly stated they want to use it for a purpose the court previously stated was improper*, would render the Court's prior ruling meaningless. | |
| PX1160 | Hearsay, Limited Purpose | ██████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████<br>██████████████████<br>████████████████████<br>████████████████████ | ████████████████████████<br>████████████████████████<br>████████████████████████<br>██████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████ |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | ██████████████████████████████████████ ████████████████ ████████████ ███████ ████████████ ███████████ ████████████ ████████████ ████████████ █████████████ █████████████ ██████████ | ████████████████████ ███████████████ ███████ |
| PX1078 | Untimely Disclosure | **Untimely Disclosure:** Plaintiffs disclosed this document at 4:59pm on March 18, *eight hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and an hour and half after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits. Plaintiffs are in violation of the JPTO. Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes. | **Untimely:** This document was added based on events in Court on March 18. This is a long-term contract between Oak View and Ticketmaster. There is no prejudice to Defendants for an "untimely" disclosure. The process is meant for the parties to exchange objections, not prepare witnesses. |
| PX0076 | Untimely Disclosure, Hearsay, Limited Purpose | **Untimely Disclosure:** Plaintiffs disclosed this document at 5:27 pm on March 18, more than *eight hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and two hours after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits. Plaintiffs are in violation of the JPTO. Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes. | **Hearsay:** The statements by Mr. Rapino are party admissions. The statements by the Oak View Group are party admissions because OVG was acting as Live Nation's agent under 801(d)(2)(D).<br><br>**Untimely:** This document was added based on events in Court on March 18. There is no prejudice to Defendants for an "untimely" disclosure. The process is meant for the parties to exchange objections, not prepare witnesses. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | **Hearsay / Limited Purpose:** The statements by Tim Leiweke in PX0076 are hearsay. It's clear that Plaintiffs intend to offer them for the truth of the matter asserted, particularly the statements, "Let's kill them together" and "We are going to take most of their music." There is no hearsay exception that applies.<br><br>Plaintiffs' contention that Mr. Leiweke's statements are admissible as party admissions on an agency theory is unsupported. There is no basis to conclude that OVG is or was Live Nation's agent as a matter of law. It is separately worth pointing out that this document pre-dates the OVG-Ticketmaster ticketing agreement. To the extent the Court is inclined to engage in an agency analysis, Defendants request the opportunity for full briefing on the issue. | |
| PX0330 | Untimely Disclosure, Relevance, Prejudice, Hearsay, Limited Purpose | ██████████████████████████ ████████████████████ ██████████████████ ████████████████████ ██████████████████████ ████████████████████ ████████████████████ ██████████████████ ████████ ████████████████ ████████████████████ ████████████████ ████████████████████████ ████████████████████████ ████████████████ ████████████████████████ ██████████ | ██████████████████████ ████████████████████████ ██████████████████ ████████████████████ ████████████████████████ ████████████████████████ ██████████████████████████ ██████████████████████ ██████████████████████████ ██████████████████ ████████████████████ ██████████████████ ██████████████████████████ ████████████████████ ██████████████████████████ ██████████████████████████ ████████████████ |

10

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | ███████████████ | |
| | | ████████████████ | █████████████████████ |
| | | ██████████████ | █████████████████ |
| | | ██████████████ | ██████████████████ |
| | | █████████████ | ████████████████████ |
| | | ██████████████ | ███████████████████ |
| | | ██████████████ | ████████████████████ |
| | | █████████████ | ████████████████████ |
| | | █████████████ | ██████████ |
| | | █████████████ | |
| | | ███████████████ | ████████████████████ |
| | | ███ | ██████████████████ |
| | | | █████████████████ |
| | | █████████████ | |
| | | ██████████████ | |
| | | ██████████████ | |
| | | ████████████ | |
| | | ██████████████ | |
| | | █████████████ | |
| | | █████████████ | |
| | | ██████████████ | |
| | | █████████████ | |
| | | █████████████ | |
| | | █████████████ | |
| PX1145 | Untimely Disclosure | **Untimely Disclosure:** Plaintiffs disclosed this document at 6:07 pm on March 18, *nine hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and two hours after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits. Plaintiffs are in violation of the JPTO. Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes. | **Untimely:** This is a standard business planning document. There is no prejudice to Defendants for an "untimely" disclosure. The process is meant for the parties to exchange objections, not prepare witnesses. |

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DX1538 | Hearsay | ██████████████████████ | ██████████████████████ |

12