# EXHIBIT 10

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 22, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0965 | Improper Admission, Prejudice, Relevance | | |

1

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ ████████████████████████████ █ | ████████████████████████ ███████████████████████ . ████████████████████ █ █████████████████████████ █████████████████████████████ ████████████████████████████ . |
| | | ██████████████████ █████████████████ ██████████████████ ████████████████ ██████████████████ ████ ██ | |
| | | █████████████████████ ██████████████████ ███████████████████ ██████████████████ ███████████████████ ███████████████████ ██████████████████ ███████████████ ██████████████████ █████████████████ ██████████████████ ██████████████████████ ███████████████████ ████████████████████ ██████████████ | |
| | | ██████████████████ █████████████████ █████████████████ ███████████████████ ████████████████████ █████████████████ | |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | ███████████████████████<br>████████████████████<br>██████████████████<br>███████████████████<br>████████████████████<br>████████████████████<br>███████████████ | |
| PDX-005 | P, R, I, F, undisclosed opinion | PDX005.32: The use of data on this slide is misleading. The way the data are presented makes it seem like Ticketmaster has far more long-term, exclusive contracts than other ticketers. However, the percentages in the graph are based on counting up the venues that have been 100% ticketed by each ticketer for the entire time period of 2017 to 2024, which biases Ticketmaster's share upward and does not allow for newer entrants like SeatGeek (which is why SeatGeek is missing from the chart). It also has nothing to do with whether these venues have exclusive ticketing contracts as the title of the slide suggests.  It assumes – both over and under inclusively – that a venue 100% ticketed by one ticketer for the 2007-2024 period is the same as having an exclusive contract without evaluating actual contracts.<br><br>PDX005.43: The use of the phrase "due to" in this slide implies that there is causation between concerns regarding content withholding and AXS and SeatGeek loss of share in primary ticketing.  While the underlying win-loss data attribute the loss to a reason, Dr. Hill has not verified that the actual cause of the lost contract was withholding concerns, rather the win-loss data just reflects the input of whomever filled out the win-loss data form.  In addition to being misleading, this impermissible hearsay is being offered for the truth of the matter asserted (that the contract loss was due to content withholding).  Dr. Carlton's discussion of the same data is an issue for the court's | Slide 32:<br>**Prejudice/Relevance:** Ticketmaster's share of 92% and the other three ticketers are correctly portrayed. Defendants can cross Dr. Hill on his analysis.<br><br>**Incomplete:** If Defendants are objecting to the intersection of the claims "Long-term" and "Exclusive", this is the set of venues that used only one exclusive ticketer for 100% of concert events during the entire time period 2017-2024.  To the extent Defendants argue Dr. Hill's analysis is incomplete, they can cross him on that analysis.<br><br>Slide 43:<br>**Prejudice/Relevance:** There is no prejudice to based on the phrase "due to."  It is also relevant.  Dr. Carlton initially introduces this line of analysis: "Ordinary-course evidence from ticketers' win-loss data indicates that many venues have little to no concern about losing access to Live Nation content if they contract with a non-Ticketmaster ticketer" (Carlton Report, ¶ 71).<br><br>Dr. Carlton also uses "due to" language to describe this analysis: "Ticketmaster's win-loss data… None of the opportunities were reportedly won **due to** content guarantees or Live Nation affiliation" (Carlton Report, ¶ 77). |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | consideration when he testifies and does not permit Dr. Hill to offer otherwise inadmissible evidence.<br><br>PDX005.71: The title of this slide is misleading and the content on the slide does not support what the title says it shows.  The graph shows the rate LN-promoted concerts occur at LN amphitheaters occur, which is set up in comparison to the rate that LN-promoted concerts occur at other amphitheaters.  This chart shows nothing about LN excluding third-party promoters, as represented.  The contrast of 92% vs. 20% is, while unrelated to the heading, striking and likely to prejudice the jury into misperceiving that Dr. Hill has offered some estimate of the rate of exclusion,.<br><br>PDX005.73: This slide could only be used to allow Dr. Hill to act as a human highlighter. Dr. Hill appears to be offering no expert analysis of this document, merely serving as the conduit to put it in front of the jury. This is improper for expert testimony. It is not proper under Rule 702 for an expert's opinion to merely "summarize record evidence" and lend their "expert credentials to" the party's "interpretation of that evidence." Additionally, the use of the document on this slide is incomplete without also including Bob Roux's testimony about this document from this trial.<br><br>PDX005.75: This slide implies that Dr. Hill has analyzed competitive effects and reached conclusions that, e.g., prices have gone up and quality has decreased as a result of the Defendants' conduct.  But the cited sections of his reports on this slide reflect that he has not more than a supposition that such effects could obtain. This slide is thus beyond the scope of Dr. Hill's report.<br><br>PDX005.76: This slide could only be used to allow Dr. Hill to act as a human highlighter. Dr. Hill appears to be offering | Slide 71:<br>**Prejudice/Relevance:** "Excludes" is not a legal conclusion, but based on Dr. Hill's review of the evidence in this case.<br><br>The slide shows a very small share of concerts at Live Nation amphitheaters were promoted by non-Live Nation promoters. The title is consistent with Live Nation's own testimony.<br><br>Slide 73:<br>**Prejudice/Relevance:** This document was admitted into evidence and cited in Dr. Hill's report. It provides the foundation for his analysis on the subsequent slide.<br><br>Slide 75:<br>**Prejudice/Relevance:**<br><br>**Undisclosed Opinion:** The <u>cites on the slide provide sufficient support for the opinions indicated:</u><br>¶ 379: "**Major concert amphitheaters compete with one another directly on both financial and non-financial terms to attract artists. Amphitheaters compete to put forward more attractive financial and nonfinancial terms to artists because if they do not do so, they may lose artists to competing amphitheaters.** Live Nation's control of many major concert amphitheaters **degrades the incentives of amphitheaters that it controls to engage in this type of competition because artists have limited ability to switch to competing amphitheaters**… Live Nation's actions have therefore reduced competition in the market for major concert amphitheaters. This reduction in competition **has harmed artists because it has reduced** |

4

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | no expert analysis of this document, merely serving as the conduit to put it in front of the jury. This is improper for expert testimony. It is not proper under Rule 702 for an expert's opinion to merely "summarize record evidence" and lend their "expert credentials to" the party's "interpretation of that evidence." Additionally, the use of the document on this slide is incomplete without also including Colin Lewis' testimony about this document from this trial.<br><br>PDX005.78: This slide is misleading for numerous reasons. First, AT&T was not "found to be monopolized" because this case settled. Second, the markets listed for each of these companies are not the markets that were analyzed in the relevant antitrust cases. This slide is inviting mini trials on whether there was monopolization in each of these markets, which is irrelevant to Dr. Hill's report and to this case generally.<br><br>██████████████<br>███████████████<br>██████████████<br>███████████████<br>██████████████<br>███████████████<br>████████ | **competition by major concert amphitheaters to attract their shows**."<br><br>¶ 392: "This reduction in competition **harms rival promoters since their ability to compete is reduced.** This reduction in competition **also harms artists**, who are **deprived of the benefits of competition for promotion services** at major concert amphitheaters"<br>¶¶ 128-129: "Enhanced market power often directly harms customers. For example, **if a monopolist's conduct allows it to charge higher prices** (without a corresponding increase in product quality) or to worsen quality (without a corresponding decrease in price), then **that conduct will directly harm customers**. Enhanced market power can also indirectly harm customers. For example, **customers may be indirectly harmed if the monopolist's behavior prevents rivals from entering or expanding, as this will mean that customers have fewer alternatives to the monopolist. As such, conduct that removes or impedes customer choice by inducing exit, discouraging entry or expansion, or reducing rivals' competitiveness is likely to harm customers.** Additionally, conduct (e.g., exclusive contracting) that seeks to prevent customers from purchasing additional products or services from rivals beyond those purchased from the monopolist may also harm customers."<br><br>Slide 76:<br>**Prejudice/Relevance:** "Reduces artist choices" is not misleading when the quoted document says "they don't have options to play other amps."<br><br>**Foundation:** This document was admitted into evidence and cited in Dr. Hill's report. It is consistent with economic principles Dr. Hill describes on the previous slide. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | Slide 78:<br><br>**Prejudice/Relevance:** Defendants brought up this argument in their opening statement. Marriott opened the door for these supposedly "irrelevant and prejudicial" analyses:<br><br>Trial Tr. 172:8-19 (Defendants' Opening): "What is the evidence going to show here? So when you think about harm to competition, think about some of the things they themselves mentioned. What about quality, what about price, what about choice, what about output, how many concerts are actually happening. We're going to show you that there are more concerts than ever. There is more competition than ever. There are more tickets sold than ever. The quality is better than ever. There are more artists than ever. Artists are being paid more than ever. They are our customers, and the venues, our other customers in our other market, they're doing better. So more concerts, better concerts, everybody on these financial metrics are doing better."<br><br>Defendants also solicited testimony from Rapino on this issue:<br><br>Trial Tr. 1909:21-24: "Q. So just directionally, what is the effect of the flywheel as you understand it? Does it result in more concerts or fewer concerts? A. More concerts."<br><br>Moreover, the opinions were disclosed in Hill Rebuttal Report ¶¶ 422, 428-431:<br><br>¶ 422: "Put simply, even a monopolist will increase its output if demand for its product increases. For example, consider a monopolized market with increasing demand. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | Output will increase over time in such a market, but this does not mean that the market is not monopolized." <br><br> ¶ 428: "Historical evidence from other markets that have been monopolized further demonstrates the flaws in the claims of Live Nation's experts. For example, in 1909, the Standard Oil company was found to have monopolized the market for the production of crude oil in the United States. Figure 66 shows that the field production of crude oil in the United States increased dramatically in the years prior to the litigation over Standard Oil's conduct, which is consistent with increased demand for oil in those years." <br><br> ¶ 429: "Similarly, in 1982, AT&T reached a settlement with the Department of Justice over claims that AT&T had monopolized the market for intercity telecommunications in the United States.[[fn. 723: In its Final Judgement approving the settlement, the Court stated, 'The evidence that was produced during the AT&T trial indicates that, at least with respect to several of the government's claims, this charge [of monopolization] may be well taken.'…]] Figure 67 shows that the number of long-distance telephone calls increased significantly in the years prior to AT&T's settlement with the government, which is consistent with increased demand for intercity telecommunications in those years." <br><br> ¶ 430: "Likewise, in 2000, Microsoft was found to have monopolized the worldwide market for the licensing of Intel-compatible personal computer operating systems. Figure 68 indicates that the number of worldwide shipments of personal computers increased substantially in the years prior to the litigation over Microsoft's conduct, which is consistent with increased demand for personal computers and associated operating systems in those years." |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | ¶ 431: A similar trend is evident for Google, which in 2024 was found to have monopolized the market for general search services in the United States. Figure 69 shows steady increases in monthly general search engine query volume, consistent with increased demand for general search services throughout the period leading up to the court's finding. [[fn. 726: The Court stated that 'restricted output is simply a form of direct proof. Its absence is not fatal, as indirect evidence suffices to establish monopoly power.']] |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | ████████████████████████ ███████████████████████ ██████████████████████████ ███████████████████████ ██████████████████████ ██████████████████████████ ███████████████████████ ████████████████████ ████████████████████████ ██████████████████████████ ██████████████████████ ████████████████████████ ████████████████████████ ████████████████████ ████████████████████████ ██████████████████████████ ███████████████████ ██████████████████████████ ████████████████████████ ████████████████████ ███████████████████████████ ███████████████████████████ ████████████████████████ ████████████████████ ██████████████████████ ████████████████████████ ████ ████████████████████████ ████████████████████ ████████████████████ ████████████████████ █████████████████████████ █████████████████████████ ███████████████ |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | ██████████████████████████ ████████████████████ <br><br> ███████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ █████████████████████ ███████████████████████████ █████████████████████████ █████████████████████████ ████████ |

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DDX-15 | F, R, P | ████████████████ <br> ██████████████████ <br> ██████████████████████ <br> ███████████████████████ <br> ███████████████████████ <br> █████████████████████████ <br> ██████████████████████ <br> ██████████████████ <br> █████████████████████████ <br> ███████████████████████████ <br> █████████████████ <br> █████████████████ | ██████████████████████████ <br> ██████████████████████████ <br> ██████████████████████████ <br> ███████████████████████ <br> ██████████████████████████ <br> ██████████████████████████ <br> ████████████████████████ <br><br> ██████████████████████████ <br> ██████████████████████████ <br> ██████████████████████████ <br> ██████████████████████████ <br> ██████████████████████████ |

