# EXHIBIT 11

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Abrantes-Metz – Status of Outstanding Disputes for March 23, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PDX006.05 | P | **Misleading, prejudicial, confuses the issues:** The phrase "The Excess Retained Fees Charged by Ticketmaster" is misleading. The $2.30 figure represents a "retained amount," not "excess fees." Dr. Abrantes-Metz should be required to use her own terminology from her report. *See* Abrantes-Metz Expert Report ¶ 110 (using the term "retained amount"). Note that the same "excess retained fee" terminology additionally appears on slides 7, 30, 32, 33, 36, 37.<br><br>The statement "Fans pay most of the excess fees charged by Ticketmaster" in Part II ignores Dr. Abrantes-Metz's own mechanism of harm, which posits that *venues* potentially try to recoup, in part, the calculated "retained amount" overcharge by increasing fees to fans. Thus, even under Dr. Abrantes-Metz's own theory, Ticketmaster is not directly increasing fees to fans.<br><br>The phrase "As a result of the conduct at issue" is misleading because Dr. Abrantes-Metz has not conducted analyses to establish causation, and should not be allowed to testify as to causation. | **Confuses the Issues/ Misleading/ Prejudice:** This slide contains an accurate summary of Dr. Abrantes-Metz's opinions offered in this case. This is the core of Dr. Abrantes-Metz's report and features prominently throughout both her opening and rebuttal report. Abrantes-Metz Opening Report, ¶¶ 37, 62, 110, 181, 211, Figures 2 & 33; Abrantes-Metz Rebuttal Report, Attachment 1: Figures 2 & 33. Plaintiffs made edits to this slide in an attempt to address Defendants' concerns regarding certain language being misleading, prejudicial, or confusing the issues. As submitted, there is no basis for Defendants' objections. |

| PDX006.11 | Undisclosed opinion, P |  |

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | |

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PDX006.15 | R, P | **Irrelevant:**<br>The Brennan testimony is irrelevant because the fan-facing market has been dismissed by the Court.<br><br>**Misleading, prejudicial:**<br>The slide is misleading as to the applicable time period. Both of the testimony presented on the slide compare AXS and Ticketmaster as of today, but the time period for Dr. Abrantes-Metz's analysis was 2017-2024. | **Irrelevant/ Misleading/ Prejudicial**: Reflects the personal knowledge and experience of a fan that uses TM and AXS's products, and CEO of TM's most significant ticketing competitor. Both are relevant where Defendants have put AXS's quality at issue in this litigation, and Mr. Marciano's testimony about comparability as of now is relevant to show continued comparability between the services offered by AXS and TM, as he testifies that he has held that AXS and TM are comparable as of 2021 and after COVI. Testimony is complete with question and answer excerpted in the slide where appropriate.<br><br>This testimony, which was given at trial and after the disclosure of Dr. Abrantes-Metz's reports, is consistent with the cited portions of her report. Abrantes-Metz Opening Report (Aug. 15, 2025), ¶¶ 111-113; Abrantes-Metz Rebuttal Report (Oct. 9, 2025), ¶¶ 22-27 and 42-43. |

4

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PDX006.18 | P, undisclosed opinion | **Argumentative, misleading, confuses the issues, undisclosed opinion:**<br><br><br><br>The second box, which states "There is no reliable evidence that TM sells more tickets …" is argumentative.  It is the jury's role to determine what constitutes "reliable evidence."  An expert witness should not make that determination.<br><br>Dr. Abrantes-Metz cites only one source for the opinions on this slide, which is Abrantes-Metz Rebuttal Report Figure 4, which shows only the percentage of tickets sold through a web platform.  The slide, however, contains a discussion of the meaning of the information in the table and a justification of the table's probative value, which are opinions not contained even in the section where the table is contained. | **Argumentative**: As noted below, this analysis is directly taken from Dr. Abrantes-Metz's rebuttal report, including the results of Figure 4 of that report. It is her opinion and to the extent Defendants want to challenge this opinion as described on this slide, it must be through cross-examination, not exclusion.<br><br>**Misleading/Confuses the Issues**: This is directly taken from Dr. Abrantes-Metz's report and she will explain through testimony how her analysis works. The proper means of addressing this argument is via cross-examination, not exclusion.<br><br>**Undisclosed Opinion**: This is fully disclosed in Dr. Abrantes-Metz's rebuttal report. This includes the phrase "There is no reliable statistical evidence that Ticketmaster sells more tickets." Abrantes-Metz Rebuttal Report ¶ 71(a). Figure 4 of Dr. Abrantes-Metz's rebuttal report is her analysis of the quantity of tickets sold. She "direct[ly] tests the quality argument Defendants' experts through regarding ticketing platforms driving of sales, including quantity, through Figure 4. Abrantes-Metz Rebuttal Report ¶ 65. |

| PDX006.22 | Outside scope of Phase 1, undisclosed opinion | **Outside scope of Phase 1:** Dr. Abrantes-Metz should not be permitted to state that what is displayed on this slide represents the "average calculated from over 237 million tickets sold by Ticketmaster," as the Court has excluded testimony regarding total tickets and total damages. Opinion and Order at 11, Dkt. 1094 ("The jury could be presented with the per-ticket damages that are at the heart of Abrantes-Metz-model, with the number of tickets . . . to be addressed post-trial."); Trial Tr. 457:12-458:7 (the parties have agreed that "Dr. Abrantes-Metz will not testify about the specific number of tickets sold in any given state or the total damages to be awarded.").<br><br>**Undisclosed opinion:** The figure of "237 million tickets" also does not appear in Dr. Abrantes-Metz's backup materials or at the listed citations.<br><br>Dr. Abrantes-Metz cites only Abrantes-Metz Rebuttal Report ¶¶76-78 and Figure 8 as support for the pie chart on this slide. The pie chart is not reflected in these slides and any derivation of the pie chart from the underlying, far more complex histogram analysis requires so much additional analysis that it cannot be proper expert disclosure.  The pie chart appears to be derived from taking the average sell through rate of the distributed sell through rates displayed, but the basis for displaying an average and not the full distribution is not disclosed.<br><br>In addition, Paragraph 76 cites only Dr. Carlton's work (not discussed on the slide), and Paragraph 77 notes only that Dr. Abrantes-Metz "graphically look[s] at difference in sell-through rate for AXS and Ticketmaster at MCV venues," which she defines as "the number of web tickets (sold through AXS or Ticketmaster platforms) divided by the total venue capacity." She goes on to observe that "AXS ticketed events have significantly higher web sell-through rates than Ticketmaster" but does not provide either of the numbers reported in the pie | **Outside Scope of Phase 1:** Abrantes-Metz Opening Report (Aug. 15, 2025), ¶¶ 60-65, 72, and 110, footnotes 138, 173, and 177, and Figures 6-8<br><br>Abrantes-Metz Rebuttal Report (Oct. 9, 2025), Attachment 1: Figures 6-8<br><br>This slide does not calculate damages or consumer harm. It simply describes how Ticketmaster structures and allocates ticket prices based on its own data. **That context is directly relevant to market power and competitive effects, which are squarely within Phase 1.** |
| --- | --- | --- | --- |

6

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | chart. The pie chart also does not align with the definitions or analysis descriptions disclosed. | |

| PDX006.30 | Undisclosed opinion, P | **Undisclosed opinion, misleading, prejudicial:**<br>The cited paragraphs are not related to the content of this slide.<br><br>The 30% and 70% framing on the bar chart does not appear in Dr. Abrantes-Metz's report, and the exhibit falsely implies that this breakdown extends to all tickets, rather than just the average hypothetical ticket depicted.<br><br>Slide 30 contains – without explanation – multiple separate analyses sandwiched together for the first time on this slide, with additional brand-new analysis piled on top.  The slide purports to show an average retained amount of $2.30 (which is a regression analysis-derived in figure 21); and a $5.28 derived only by subtracting the $2.30 (from the regression) from $7.58 (from figure 21).  $7.58 does not come from the same regression analysis.  In fact, it does not come from a regression analysis at all.  The regression and the non-regression results are then placed together as if parts of the same analysis and further stitched together with the 30% and 70% displayed on the right-hand side that are brand new numbers.  None of the cited paragraphs or figures contain the analyses assembled here in connection with one another.<br><br>Abrantes-Metz Opening Report ¶ 125: "The results of this analysis are presented in Figure 21. Observations are weighted by the number of tickets sold, which gives larger events relatively more importance in estimating the coefficients.235 As shown in the Figure 21, the coefficient on the *Ticketmaster* variable is 2.3, which indicates that Ticketmaster retains $2.30 per ticket more than AXS, all else equal. This coefficient estimate is statistically significant at any reasonable confidence level, indicating that the probability of obtaining such a result under the null hypothesis that Ticketmaster's retained amount is equal to AXS's retained amount is sufficiently small."<br><br>Abrantes-Metz Opening Report Figure 19:  Arithmetically calculated Average Ticketmaster and AXS Retained Amounts | **Undisclosed Opinion/ Misleading/ Prejudicial:**<br>This was disclosed in Dr. Abrantes-Metz's report. The figure is just a graphical representation of Dr. Abrantes-Metz's disclosed calculations and amounts, which will assist the juror by illustrating the "excess retained fees." *See* Abrantes-Metz Opening Report, ¶¶ 125 and Figures 19 and 21; Abrantes-Metz Rebuttal Report, Attachment 1: Figures 19 and 21. There is nothing misleading or prejudicial about this graphical representation.<br><br>This is subject to the Parties' agreement regarding overcharge and is a straightforward way of showing the jury in which states an overcharge occurred. It is a simple derivation from Abrantes-Metz Opening report Figures 35-37 and paragraph 76 |

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | for Concert Events at MCVs showing a $7.58 total retained amount per ticket.<br><br>Abrantes-Metz Opening Report Figure 21:  regression results showing an estimated $2.30 associated with Ticketmaster.<br><br>Abrantes-Metz Rebuttal Report Attachment 1: Figure 19:  An updated versions figure 19 from her Opening Report using the updated October 9 data<br><br>Abrantes-Metz Rebuttal Report Attachment 1: Figure 21: An updated versions Figure 21 from her Opening Report using the updated October 9 data<br><br>In addition, the title "Ticketmaster Average Excess Retained Fees" misstates what Dr. Abrantes-Metz actually calculated which is some combination of an estimated retained amount associated with Ticketmaster in a regression and an arithmetically calculated retained amount generally associated with AXS and TM overall.  Similarly, the grey box denoting a "Ticketmaster Average Retained Amont" is misleading because it is only an estimated retained amount associated with Ticketmaster. | |

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PDX006.37 | P, R | | |

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PDX006.38 & PDX006.39 | Undisclosed opinion, P, R |  | |

| Slide Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PDX006.40 | P | **Misleading:**<br>The phrase "Direct comparison of Ticketmaster and AXS's fees" is misleading.  At a minimum, the slide should clarify that these are comparisons of "average fees" rather than regression output.  More importantly, the $3.19 calculation has not been Dr. Abrantes-Metz's position to date and does not accurately represent her report. | Abrantes-Metz Opening Report (Aug. 15, 2025), Figures 29; 33; Abrantes-Metz Rebuttal Report (Oct. 9, 2025), Attachment 1 - Figures 29; 33<br><br>**Not misleading.** It is not misleading because the slide explicitly distinguishes between the $3.19 direct fee difference (Figure 29) and the smaller $1.56–$1.72 damages estimate (Figure 33) and does not equate the two. The comparison is used only to show that the damages estimate is conservative relative to the observed fee gap, not to claim that $3.19 is the overcharge.**(Title/bullets accurately distinguish between two different measures disclosed in the report. Comparison shows that the damages estimate is lower than the observed fee gap, supporting the conclusion that the estimate is conservative).** |
| PDX006.48 | P | **Argumentative, misleading:**<br>The title is argumentative. | **Argumentative/ Misleading/ False:** Defendants' objections were to a lack of specificity as to which of Defendants' experts' analyses Dr. Abrantes-Metz was responding in Figure 17 of her Rebuttal Report.<br><br>The title now specifically identifies the source of the original model as Dr. Carlton. Defendants did not object to the content of the slide.<br><br>Whether the slide is false or misleading is a matter for cross-examination as it was properly disclosed by Dr. Abrantes-Metz and it is her opinion. |