# EXHIBIT 13

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 25, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0886 (Al-joulani) | Relevance, Hearsay, Limited Purpose | **Relevance:** This document is irrelevant because it relates to CMCU Amphitheater, which is not a major concert venue. It is a 5,000-capacity amphitheater, and therefore, does not fall within any of the venues in Plaintiffs' alleged markets.  Plaintiffs should not be permitted to introduce evidence related to alleged conduct at a venue outside of Plaintiffs' chosen markets.<br><br>**Hearsay:** The bottom email in this chain contains a double hearsay, in that it quotes a text from a third party promoter, and since the email is not relevant, that hearsay should not be admitted. | **Relevance:** This document reflects an instance where Live Nation has used its ownership of an amphitheater to get inside knowledge about a promoter's tour that they otherwise would not have access too. Additionally, it provides evidence of Live Nation's choice to prohibit artists promoted by third parties from playing their venues broadly—including at large amps. Even though this amphitheater is a boutique amphitheater rather than a large amphitheater, it is relevant to the method by which Live Nation can wield its market power in amps and harm both artists and promoters.<br><br>**Hearsay/Limited Purpose:** This thread is not hearsay, it is a party-opponent statement.  Live Nation objects to the email from Grant Lyman of Live Nation saying "he just texted me: 'Hey dude - looking at Carolina options for a couple things. Would you be open to discussing use of CMCU Amp?  I'd only ask on full tour deals of course.'"  The first layer of hearsay (Mr. Lyman's email) is admissible as a party-opponent statement.  There is no second layer of hearsay because Mr. McDonald's text is being offered for his *request* to use the CMCU amp— that request is not an assertion at all.  Any residual assertions are used as context for the party-opponent statement that Plaintiffs are seeking to admit: "see what he has so we can get the intel.  And then we'll say no later." *See Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d, 398, 420 (S.D.N.Y. 2011) (where a statement is deemed admissible as an admission by a party opponent, under Rule 801(d)(2), the surrounding |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | | statements providing essential context may also be considered). |
| JX-144 ███ | Hearsay | ██████████████████████<br>████████████████████████<br>██████████████████████<br>████████████████████████<br>█████████████████████<br>████████████████████████<br>████████████████████████<br>███████████ | |

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DDX-16.1 ▇▇▇ | 701/702, Foundation | | |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | | ████████████████████ |

4

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | | |

5

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
|  |  |  | ██████████████████████ |
|  |  |  | ██████████████████████ |
|  |  |  | ████████████████████ |
|  |  |  | ██████████████████████ |
|  |  |  | ███████████████████████ |
|  |  |  | ███████████████████████ |
|  |  |  | ███████████████████████ |
|  |  |  | █████████████████████ |
|  |  |  | ██████████ |
|  |  |  | ██████████████████████ |
|  |  |  | █████████████████████ |
|  |  |  | ███████████████████ |
|  |  |  | █████████████████████ |
|  |  |  | █████████████████████ |
|  |  |  | ███████████ |

**Plaintiffs' Objections to Defendants' Designations**

| Witness (Last, First) | Page:Line Range | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|---|
| ███████████ | 52:8–52:18 | H; LP | | |

**Defendants' Objections to Plaintiffs' Counter-Designations**

| Witness (Last, First) | Page:Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| ████████████ | 50:14-50:20, 50:23-51:2, 51:5-17, 51:18-52:7, 52:19-22 | H | ████████ | ████████ |
| ████████████ | 84:3–84:13 | H | ████████ | ████████ |

8

| Witness (Last, First) | Page:Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| | | | | ████████████<br>████████████<br>████████<br>████████████<br>███████████<br>████████████<br>████████<br>████████████<br>██████████<br>████████████<br>████████████<br>██████████<br>████████████<br>██████████<br>████████████<br>████████████<br>███ |
| Caldwell, Matthew | 88:14–89:16, 89:20–90:1, 90:13–90:13 | SCOPE | This ostensible counter-designation relates to a contractual dispute pertaining to COVID, which the witness testifies was resolved by Ticketmaster acceding to the Panthers' position. (Caldwell Tr. 179:15-24.) That testimony has nothing to do with any testimony affirmatively designated by Defendants, which relates to the arena's ticketing RFP process, its experiences with SG, a SeatGeek make good clause, and the witness's view that Live Nation has not retaliated against the arena. | PLAINTIFF RESPONSE: These counter-designations concern a dispute that Ticketmaster raised after Mr. Caldwell informed them that the Panthers would be switching ticketers to SeatGeek. This issue falls squarely within the realm of Defendants' designations concerning the transition from Ticketmaster to SeatGeek, challenges with ticketers, the Panthers' relationship with Live Nation, and consequences of switching ticketers (e.g., 133:24- |

9

| Witness (Last, First) | Page:Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| | | | Defendants understand that Plaintiffs' argument is that the COVID contractual dispute suggests some form of retaliation, but that is simply Plaintiffs' own unsupported speculation; the witness himself characterizes the dispute as simply a contractual dispute under unusual conditions (COVID), (Caldwell Tr. 178:16-179:7), and elsewhere says he does not believe there has ever been any retaliation by Live Nation against the arena for choosing SeatGeek. (Caldwell Tr. 146:1-21). | 134:1, 147:17-148:16, 150:17-21). Furthermore, Mr. Caldwell's testimony about switching ticketers runs parallel to John Abbamondi's: after notifying Ticketmaster that the venue would be switching to SeatGeek, they received letters from Ticketmaster's legal counsel disputing the venue's interpretation of the end date of the ticketing contract (Caldwell Dep., 89:22-90:9; Trial Tr. 262:17-264:4). |

10