# EXHIBIT 15

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 30, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0917 (Weeden) | Relevance |  | |

1

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | ████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ | |
| PX1129 (Weeden) | Prejudice | **Prejudice:** This is potentially confusing to the jury, as the text chain provides minimal context for Weeden and See's discussion.  It is unclear which "exclusive content provider" Weeden is referring to, and there are references to concepts such as "sliding scales" and "Lob P&Ls" that the jury will not understand.<br><br>Furthermore, this text relates solely to the internal allocation of funds between Live Nation's Talent business and Venue Nation.  However, the jury could potentially read it in a way that makes it seem as though Weeden and See are saying they think Live Nation venues should be open to other promoters, including AEG.  In actuality, Weeden and See are complaining that "incentives are not a line" and that the venue portion of the business is "an after thought."  In order to minimize | This conversation between Venue Nation executives about Live Nation's exclusive relationship with promoters and the financial consequences of those exclusive relationships are probative of a central issue in this case.<br><br>Defendants did not timely object to this exhibit following the pretrial order procedures and failed to identify with any specificity why it was prejudicial other than to say that the chain generally would be confusing to the jury. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | the risk that the jury will be misled and will confuse the issues, this document should be excluded. | |

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DX-0437 (Jacoby) | Hearsay | **Hearsay**: This email and attachment are a third-party out of court statement with no possible purpose for admission other than for its truth.<br><br>The business record exception does not apply. "A party seeking to introduce an email made by an employee about a business matter under the hearsay exception under Rule 803(6) must show that the employer imposed a business duty to make and maintain such a record." *United States v. Figueroa*, No. 7:23-CR-161 (MAD), 2023 WL 8373566, at *3 (S.D.N.Y. Dec. 4, 2023). The Court made this clear in the first week of trial (Trial Tr. 731:13-732:5).<br><br>The email is blank and the attachment contains rough, undated personal notes, not a business record. The notes are not the same as the business presentation itself and are not final speaker notes. Even if she regularly makes notes about such presentations, in the absence of a business duty to make such notes, they do not fall under this exception. Further, it is not established when the notes were prepared. In fact, in her deposition, Ms. Jacoby refers generally to "whenever this [document] was created" (Jacoby Depo Tr. 247:23-24) rather than the date of the email. | **Hearsay (Business Record):** This document should be admitted under the business record exception to hearsay. Here, a BSE employee, Laurie Jacoby, is sending another BSE employee a presentation outline. This is within the scope of the business records exception because it is a record of the outline of said presentation – a presentation given in the regular course of business at BSE. Adequate foundation will be laid before Defendants offer this document into evidence. *See, e.g.*, Trial Tr. 2650:4-23 (admitting as business record an email containing analysis prepared in the ordinary course by someone with personal knowledge of the type of analysis contained in the document). The Court has already permitted similar documents related to the assessments of the business and evaluation of ticketers as is reflected in the section titled "Challenges of SeatGeek." Indeed, a presentation prepared by Mr. Abbamondi for Mr. Tsai was admitted into evidence on the same basis, where Mr. Abbamondi confirmed that the presentation was created in the course of a regularly conducted activity of Barclays' business, made contemporaneously with that business, prepared by his staff and personally reviewed by him, and that it was a regular practice of Barclays to make these types of presentations as part of how the company communicated internally. *See* Trial Tr. 272:3-273:23. |
| DX-0447 ▮▮▮ | Hearsay | ▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮ |





| | | | |
|---|---|---|---|
| DX-0456 ▪ | Hearsay | | |
| DX-0465 ▪ | Hearsay, Relevance | | |

6



| DX-0473 | Hearsay | **See** DX-0447 |



| | | | |
|---|---|---|---|
| | | | ██████████████ |
| DX-0476 ████ | Hearsay | **See** DX-0447 ████████ See DX-0447 | ████████████ |
| DX-0608 ████ | Hearsay | **See** DX-0447 ████████ | ████████████ |

9

| | | | | |
|---|---|---|---|---|
| | | | ████████████████████████████ | |
| DX-0625 (Jacoby) | Hearsay | | While these exhibits have been admitted (Trial Tr. 730:5-9), they were offered for a non-hearsay purpose, effect on the listener, that does not apply for this witness. The Court set clear boundaries for permissible inferences and questioning (limiting instruction at 899:6-14; sidebar discussion at 904:7-907:2).<br><br>**Hearsay:** These exhibits do not meet the requirements of the business record exception and contain instances of anonymous embedded hearsay about "word on the street" and "perception issues." There is no evidence that "the employer imposed a business duty to make and maintain such a record." (Trial Tr. 731:18-22). Ms. Jacoby's email expresses displeasure and expectations to a business partner but is not a habitually kept record of BSE business. In addition, questions have been raised as to the truthfulness of the documents (e.g., Trial Tr. 911:12-912:9) that call into question the reliability of the exhibit, even if it were otherwise a business record.<br>While these exhibits have been admitted (Trial Tr. 730:5-9), they were offered for a non-hearsay purpose, effect on the listener, that does not apply for this witness. The Court set clear boundaries for permissible inferences and questioning (limiting instruction at 899:6-14; sidebar discussion at 904:7-907:2). | **Hearsay (Business Record):** This document has already been admitted into evidence for a limited purpose. On March 6, 2026, the Court referred to this document and stated "as to Defendants' Exhibit 625…these are communications from a contracting partner listing issues or asserting that there has been nonperformance under the parties' agreement. These would appear to be qualifying business records under Rule 803(6)." Trial Tr. 730:5-9.<br><br>Later, when counsel for Defendants attempted to admit DX-0625, the Court did not admit the document under 803(6), stating that "[a]s to 803(6), you have to ask the predicate questions, which you've not asked" and so DX-0625 was admitted on other grounds. Trial Tr. 885:3-12.<br><br>Plaintiffs now object to this document, claiming that it is not a business record. However, the court made clear that it *does* view this document as a business record, and that if proper foundation is laid through the "predicate questions," *id.*, it will be admitted as such.<br><br>Defendants intend to ask the predicate questions, and therefore, assuming Defendants are able to lay the proper foundation, Defendants should be able to utilize this document as a business record during their direct examination of Ms. Jacoby. |
| DX-0633 (Jacoby) | Hearsay | | **Hearsay:** Defendants assert that a text consisting of "Please let me know if Feb 15th is needed. Thx" | **Hearsay:** This exhibit was already admitted during Mr. Groetzinger's cross examination. Trial Tr. 897:9-14. |

and emails regarding whether a venue is "open" on a given date are verbal acts outside the category of hearsay. Verbal acts must in themselves "affect[]the legal rights of the parties or [create] a circumstance bearing on conduct affecting their rights." Advisory Committee Notes to Rule 801(c). To qualify, the statement must be "an operative fact which gives rise to legal consequences." *U.S. v. DiMaria*, 727 F. 2d. 265 (2d. Cir. 1984). "It is not enough to simply characterize a statement as an offer." *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001). At the time that these messages were sent, Ms. Jacoby did not even know what act was at issue (Jacoby Dep. 67:22-68:1, 69:24-70:10). These texts and emails make no commitments, are not contracts, and have no legal significance.

However, the Court gave the following limiting instructions: "What you're seeing and what you are hearing about are certain statements made by BSE and Barclays to SeatGeek. You are not to consider these statements for their truth, meaning whether these concerns were accurate or inaccurate. The only thing that's relevant is the communication of these things to SeatGeek, and whatever impact it may have had on SeatGeek's actions or what their understanding was. So please only consider it for that reason." *Id.* 899:6-14.

Defendants now move to admit this document in full, without the limiting instruction, under the business record exception to hearsay. In fact, the Court already ruled that these are admissible business records. *Id.* 730:5-9 ("As to Defendants' Exhibit 625, 633, 645, 671, and 678, these are communications from a contracting partner listing issues or asserting that there has been nonperformance under the parties' agreement. These would appear to be qualifying business records under Rule 803(6).")

**Foundation:** Ms. Jacoby laid the foundation for an identical version of this document (the only difference being it was produced by BSE rather than SeatGeek) during her deposition, and will do so again at trial. Jacoby Dep. Tr. 392:24-398:20 (Ms. Jacoby testifying that she was involved in putting together this document chronicling the issues that BSE had experienced with SeatGeek, that this list of issues was compiled at or around the time that Barclays was experiencing these issues with SeatGeek, that she had knowledge of these issues and contributed where it impacted her department, and that the list of issues was created and maintained in the ordinary course of business at Barclays).

| | | | |
|---|---|---|---|
| PX0121 ▮ | Hearsay, Relevance | ▮ | ▮ |

11





13