# EXHIBIT 16

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for April 2, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0775 | Prejudice, Relevance | **Relevance and Prejudice:** Plaintiffs have stated that they intend to use PX0775 to try and demonstrate a relationship between Live Nation owned and operated venues and high ticketing fees, by using the percentages in the chart in this email. There are multiple issues with this.<br><br>First, PX0775 reflects internal preparation for a single client call regarding CMAC—a specific venue—and cannot be tied to any overarching corporate fee-setting policy or practice as Plaintiffs contend.  Indeed, there is nothing in this email about a policy, let alone a policy that would apply to the Major Convert Venues, that would support such a contention. Permitting Plaintiffs to argue that such a policy can be deciphered from comparing data from three venues in one year (data from an unknown source unknown) would be misleading and improper.<br><br>Second, PX0775 relies on 2019 historical actuals—including ticket volumes, face values, and fee data —for CMAC and comparable Live Nation-owned and operated venues such as Darien Lake Amphitheater and St. Joseph's Health Amphitheater at Lakeview.  Garcia's email explicitly identifies the data as "2019 data for the 2LN and CMAC," confirming that the underlying financials predate the statute of limitations period.  To the extent Plaintiffs seek to use PX0775 to establish that Ticketmaster's fees were excessive during the relevant statute of limitations period, the exhibit's reliance on 2019 data renders it insufficiently probative of conditions during the limitations period.  Plaintiffs cannot simply assume that 2019 fee levels persisted unchanged into | The emails depicted in PX0775 were sent between December 3, 2021 and December 9, 2021, well into the statute of limitations period and plainly relevant to the contemporaneous exchange. In the chain of emails, Ms. Johnson asks members of the Ticketmaster team for data on comparable venues to share on an upcoming call. In an email dated December 8, 2021, Ticketmaster employee Leonardo Garcia sends Ms. Johnson data from 2019 that Mr. Garcia seems to believe is responsive to Ms. Johnson's request. Ms. Johnson then sends back data that the team did for a different venue, ASM. It is not clear whether the data in Ms. Johnson's email is from 2019, 2021, or some other time. Lastly, Mr. Garcia responds with another table presented in the format Ms. Johnson asked for.<br><br>The data contained in this email chain were clearly relevant to Ticketmaster employees in 2021 because they planned to use it for a presentation to a venue-client in 2021. It is therefore relevant and is not prejudicial. |

|  |  | the relevant timeframe without independent evidence establishing that fact.  Such assumptions are speculative and prejudicial to Defendants. |  |

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DDX-21 | Prejudice, Improper 107 | DDX-21.1 and 21.2 are improper 107 demonstratives for several reasons.<br><br>First, Defendants have not disclosed the specific data sources used to create these charts. While Defendants orally represented at 8:10 P.M. on April 2 that these charts relate to all venue types ticketed by Ticketmaster, Defendants have not disclosed the specific data used to calculate the numbers included in the charts, the specific formulas used to determine the "take rate" on DDX-21.1, or which fixed payments are or are not included in DDX-21.2.<br><br>The Court has already explained that the basis for figures in a 107 demonstrative must be disclosed to the opposing party. Specifically, the Court excluded DDX 1.24 (a series of bar charts purporting to show that venues, artists, and promoters all do better with Ticketmaster) for two reasons. Tr. Trans. at 75. One of the reasons was that "without furnishing the basis for [the] figures, [Defendants] deprived [their] adversary of having any opportunity to object even under Rule 107 because they have no ability to figure out if [the chart] is accurate or where [Defendants] are getting this information." 2026.03.03 Tr. Trans. at 75. This belated and incomplete disclosure prejudices Plaintiffs' ability to analyze the data and adequately cross-examine the witness presenting the related testimony<br><br>Second, DDX-21.1 and 21.2 are also improper 107 demonstratives because they do not help the jury | Plaintiffs have conceded that Ms. Johnson could testify to the exact figures that are depicted in this demonstrative. If that is correct, there is nothing to prevent Ms. Johnson from drawing the lines depicted in DDX-21 on a poster or piece of paper that could be shown to the jury. DDX-21 is thus an entirely proper Rule 107 demonstrative to spare the jury the time associated with having to undergo that exercise on the stand. There is no basis to exclude these demonstratives. Plaintiffs have raised several arguments, each of which is not supported:<br><br>**Relevance/Prejudice:** Plaintiffs' argument that this data is not relevant or is somehow prejudicial because it is not limited to major concert venues is not credible. The market definition here is disputed and evidence concerning non-MCVs—including testimony from Mr. Hansen about Ticketmaster's overall take rates (which was elicited with no objection)—has already been adduced in this case.<br><br>Nor is there any reasonable suggestion that the data is somehow misleading. The titles= of the Take Rate table makes clear that the data includes all segments and Plaintiffs will have Ms. Johnson on the stand to ask her what is/is not included in the figures, their source, how she performed the calculations, etc. Nor is there any other prejudice. Defendants informed Plaintiffs' counsel that the source of the data was Ms. Johnson's personal knowledge based on calculations she herself performed using Ticketmaster's financial reporting data. And again, those topics can be explored on cross examination. |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | understand evidence or argument, as required by Rule 107. Defendants have confirmed that the data includes venues such as clubs, theaters, and stadiums, which are not in the proposed markets and which Defendants have sought to exclude in other contexts. Further, the descriptions of the demonstratives fail to fully describe the venue types at issue. Overall, this presents a misleading impression to the jury about Defendants' behavior in the markets at issue and will likely confuse the jury by mixing data from irrelevant venues with relevant ones. | **Improper 107:** As part of her responsibilities at Ticketmaster, Ms. Johnson routinely prepares and reviews deal summaries and financial models, which include information such as Take Rates and fixed payments to venues. She also works regularly with Ticketmaster's financial reporting data. The data reflected in DDX-21—Ticketmaster's Take Rate and its fixed per-ticket payments to venues— are the very types of information Ms. Johnson encounters and works with in her ordinary course of business. A lay witness is permitted to testify based on personal knowledge and experience gained through her employment, and DDX-21 simply organizes data that Ms. Johnson is already competent to discuss. No specialized methodology, independent analysis, or expert judgment was required to compile the trends depicted in DDX-21; they are a straightforward aggregation of business data that falls well within the personal knowledge of a Live Nation employee in Ms. Johnson's role. |

**Plaintiffs' Objections to Defendants' Designations**

| Witness (Last, First) | Page:Line Range | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|---|
| ▉ | 83:12-86:3, 89:18-90:9 | F, H | ▉ | ▉ |

| Witness (Last, First) | Page:Line Range | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|---|
| | | | ██████████ | |
| ██████ | 91:5-92:2 | H | ██████████ | ██████████ |

6

**Defendants' Objections to Plaintiffs' Designations**

| Witness (Last, First) | Page: Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| ████ | 22:5-7; 22:22-23:18; 30:10-16; 32:12-25; 35:21-36:8; 42:5-25; 44:3-7; 45:6-46:2; 56:9-57:7; 58:14-19; 197:18-24; 198:3-8; 199:24-200:11 | SCOPE | ███████████ | ███████████ |

7

| Witness (Last, First) | Page: Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| | | | ███████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ █████████████████ █████████████ ██████████ ████████ ███████████████ █████████████████████ ████████████████████ █████████████████████ ███████████ ████████████████████ ████████████████████ ██████████████████ █████████ | ██████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████ ███████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ █████████████████ |

| Witness (Last, First) | Page: Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| | | | █████████████ | ████████████ |

9

| Witness (Last, First) | Page: Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| ███ | 23:2-18 | F | ████ | ████ |

| Witness (Last, First) | Page: Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| | | | | ███████████ |
| ███ | 36:6-8 | L, V | ████████████ | ████████████ |
| ███ | 45:6-17 | F, H | ████████████ | ████████████ |

11