# EXHIBIT 18

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for April 6, 2026**

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DX-0475 | Hearsay | | |



1

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
| --- | --- | --- | --- |
|  |  |  | ██████████████████ |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
|  |  |  | ███████████████████████████████████████████ |
| DDX-23.12 | Undisclosed Opinion, Prejudice | **Undisclosed Opinion:** Slide DDX-23.12 purports to show Gavin Adcock concerts between some unidentified start date around June 2025 and another unidentified end date in approximately August 2025, listing only the venue type and no other information for each concert. The supposed source of this information is paragraph 139 of Dr. Yurukoglu's report. The entirety of the discussion of Mr. Adcock in either of Dr. Yurukoglu's reports is the following sentence:<br><br>"As an illustrative example, in 2025, AEG-promoted country music artist Gavin Adcock has played in a number of amphitheaters and arenas, and has also played at multiple festivals, including Rock the Country (multiple stops), Two Step Inn, Rock the South, Hoofbeat Country Fest, Country Thunder Wisconsin, Tailgate N' Tallboys (multiple stops), WE Fest, CMA Fest, and Railbird Fest." (Yurukoglu Rep. ¶ 139.)<br><br>That sentence has a footnote providing the sources for this information, which are two websites, one called "Gavin Adcock Concert History" and the other "Gavin Adcock Tour Dates." (*Id.* ¶ 139 n.182.) There is no discussion of Mr. Adcock's venue preferences, touring preferences, concerts at stadiums or clubs, or any further discussion of Mr. Adcock at all in either of Dr. Yurukoglu's reports. | **Undisclosed Opinion/Prejudice:** In ¶ 139 of his initial report, Professor Yurukoglu specifically writes: "As an illustrative example, in 2025, AEG promoted country music artist Gavin Adcock has played in a number of amphitheaters and arenas, and has also played at multiple festivals, including Rock the Country (multiple stops), Two Step Inn, Rock the South, Hoofbeat Country Fest, Country Thunder Wisconsin, Tailgate N' Tallboys (multiple stops), WE Fest, CMA Fest, and Railbird Fest."  In footnote 182 (in ¶ 139), Professor Yurukoglu includes two hyperlinks that provide a list of Mr. Adcock's concert history, including the dates and the venues at which Mr. Adcock performed in 2025. Defendants' slide simply provides a snapshot of that information, between June-August 2025, and presents it in a graphical representation.<br><br>Plaintiffs object, claiming that they are unable to confirm that each square corresponds to a particular date.  However, the information is plainly available via the links provided in footnote 182.  Nevertheless, in an effort to work cooperatively with Plaintiffs, Defendants offered to provide Plaintiffs with a chart of the specific events, including the venue name and date, that correspond to each stop shown in this slide.  Plaintiffs, however, maintained that they would object anyways.<br><br>In determining whether to exclude a demonstrative, courts need only "carefully weigh whether the exhibits are unduly prejudicial because the jury will interpret |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | Defendants assert that because the footnote references websites with Mr. Adcock's tour history, this is a sufficient disclosure to permit Dr. Yurukoglu to use this new graphic with his testimony. But that kind of disclosure is plainly insufficient. If that was enough, any information contained on a website cited in a footnote, regardless of whether that information is actually in the expert's report, would somehow become part of the disclosure. That is plainly incompatible with the Court's instruction to the parties that on direct examination of an expert, the examining party should have ready "the paragraph or paragraphs in the expert's opening or rebuttal report that discloses the substance of expert's testimony." (Email from Court to Parties, Mar. 22, 2026.)<br><br>But that inadequate disclosure is also not even the end of the chain of events that leads to this demonstrative. Defendants explained during the initial meet and confer that to arrive at the information displayed on the slide, Plaintiffs would need to visit the websites cited in the footnotes, compile the list of Mr. Adcock's concerts for themselves, and then cross-reference the list of tour dates against the venue data that has been produced in this case. But even going through all of those steps would not appear to resolve all of the issues with this demonstrative. For instance, even just looking at the beginning of June 2025 where the slide's tracking of Mr. Adcock apparently begins, there are concerts listed on June 1, June 4, and June 7 in the "Gavin Adcock Concert History," but not in the "Gavin Adcock Tour Dates." Dr. Yurukoglu's report does not offer any guidance as to which of these sources is correct, or the source of the information on this slide. During the initial meet and confer regarding this slide, Defendants offered to provide Plaintiffs with a list of the tour dates if Plaintiffs were | them as real-life recreations of substantive evidence that they must accept as true." *Rodriguez v. Village of Port Chester,* 535 F. Supp. 3d 202, 219 (S.D.N.Y 2021). Here, there is no risk of the jury interpreting this demonstrative as such: they will recognize that it is simply meant to represent the order and type of venues played by Mr. Adcock during specific months of his 2025 tour. Should the court believe, however, that the jury is likely to misinterpret this slide, "the Court can readily alleviate such concerns through a limiting instruction explaining that the demonstrative exhibit is not substantive evidence." *Id.* |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | "unable" to retrieve the information for themselves. But that is precisely the point. Had the information be properly disclosed in Dr. Yurukoglu's report, there would be no need for either party to retrieve any information from two apparently incongruous sources, and then go through the list matching venue types based on other information produced in the case. That is work that Dr. Yurukoglu could have done in his report, but did not.<br><br>Defendants also sought to have Plaintiffs correct their demonstrative for them. When Plaintiffs objected to the seemingly arbitrary start and stop dates, Defendants demanded that Plaintiffs identify an acceptable time period. But that is not Plaintiffs' burden and, again, is work that Dr. Yurukoglu should have included in his report if he wanted to present this demonstrative to the jury.<br><br>**Misleading:** Beyond Dr. Yurukoglu's failure to disclose the content of this slide, the slide also risks misleading the jury. As discussed above, the start and end dates were apparently selected arbitrarily, and Defendants did not explain the reasons for those dates during the meet and confer (instead seeking to have Plaintiffs select new dates for them). Dr. Yurukoglu refers only to "2025" generally, (Yurukoglu Rep. ¶ 139), and the footnote sources show Mr. Adcock's first 2025 show on January 11 and his last one on December 11. There is no analysis suggesting this selected sample is at all representative. Nor is there any methodology explained for instances of inconsistent concert dates as discussed above. Springing this kind of after-the-fact analysis on an opposing party is the antithesis of a proper disclosure, and without a sufficient description of this slide as part of Dr. Yurukoglu's Rule 26 disclosure, the information in this | |

5

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | slide cannot be properly vetted—particularly since the specific venues are not even listed on the slide. Even with the limited time in which Plaintiffs had to review this information it appears there are accuracy concerns as described above, and so allowing this slide risks misleading the jury. | |
| DDX-23.27 | Prejudice | **Misleading:** This slide purports to show a positive correlation between the artist's share of the settlement pot and the artist's share of shows in "large amps" for Live Nation-promoted artists, and then another positive correlation between total artist pay and the artist's share of shows in "large amps" for Live Nation-promoted artists. It lists in large green numbers "+22%" for "Artist Share of Settlement Pot" and "+8%" for "Total Artist Pay." The problem is that neither of these results are statistically significant, meaning those results are not statistically different from zero. Publishing these percentages to the jury, right alongside a statistically significant finding, risks misleading the jury into believing that these are meaningful results. They are not. In his initial report, Dr. Yurukoglu identified the initial version of these results as statistically insignificant as a method for supposedly undermining one of Dr. Hill's analyses because they did *not* show a relationship between the variables. (Yurukoglu Rep. ¶ 284; *see also* Yurukoglu Rebuttal Rep. Fig. 10.) But that is not how these results are being presented on this slide, and their current presentation presents a substantial risk of misleading the jury.

During the parties' initial meet and confer, Defendants asked whether either of Plaintiffs' experts demonstratives included statistically insignificant results. Plaintiffs invited Defendants to identify any such results in either of Plaintiffs' experts' demonstratives, which Defendants did not do. Plaintiffs then reviewed their own | **Prejudice:** Plaintiffs do not object to these slides as undisclosed opinions, because they are not.

Plaintiffs claim that two of the measures shown on this slide—the +22% and +8%—are prejudicial because they do not meet the same level of statistical significance as the first row that shows that artists' share of ticketing revenue is 18% higher for Live Nation-promoted artists who perform a greater share of shows in large amphitheaters.

However, there is nothing misleading or otherwise prejudicial about this slide. Defendants have clearly noted on the slide which results are statistically significant at the 99% level, and which are not, via the inclusion of an asterisk next to the 18% number, and a note stating "*statistically significant at the 99% confidence level." The jury will be able to fairly infer from this that the other two figures, which do not have an asterisk next to them, are not statistically significant. Plaintiffs are free to cross examine Professor Yurukoglu on which of the measures are statistically significant and which are not—which Defendants have clearly disclosed. This slide is neither misleading nor prejudicial, and is fully supported by Figure 10 in Dr. Yurukoglu's Sur-rebuttal report. There is no basis to exclude this slide. |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | experts' demonstratives and did not identify any statistically insignificant results that were presented to the jury (other than in response to questions on cross-examination). Plaintiffs then informed Defendants via email that they had not identified any statistically insignificant results in their own expert demonstratives and again asked that Defendants point them to any examples that may have been inadvertently overlooked. Defendants again identified no such examples. Plaintiffs made the request a third time on the lead counsel meet and confer, and again Defendants provided no examples. Accordingly, to the extent Defendants argue that any such presentation of statistically insignificant results by Plaintiffs' experts is a reason to permit them to mislead the jury with Dr. Yurukoglu's statistically insignificant results, that argument is mistaken. | |