**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, et al.,
    Plaintiffs,
    -v-
LIVE NATION ENTERTAINMENT, INC.,
and TICKETMASTER L.L.C.,
    Defendants.

**Case No. 1:24-cv-03973 (AS)**
**Hon. Arun Subramanian**
**United States District Judge**

### MOTION FOR LEAVE TO FILE AMICUS CURIAE SUBMISSION

Victoria Cortez, Founder of the Live Events Standards Council (**LESC**), respectfully moves this Court for leave to file the attached Amicus Curiae submission pursuant to the Court's inherent authority to accept public interest submissions in complex antitrust remedies proceedings.

The LESC is an independent, non-industry-funded standards body operating in the live events market. The LESC functions analogously to Underwriters Laboratories (UL) or NSF International—organizations that certify products through rigorous, arm's-length audits with no financial stake in the outcome of their testing. The LESC's "Front Row Certified" seal certifies that a ticketing platform meets an independently verified standard of fairness—regardless of who owns it.

Movant is not a party to this action, has no financial interest in the Defendants or the Plaintiffs, and receives no funding from any participant in the live events industry. Movant seeks only to provide the Court with an independent, technically grounded perspective on the conduct standards and monitoring mechanisms that would constitute effective and enforceable relief in the public interest, following the April 15, 2026 jury verdict finding the Defendants liable for illegal monopolization.

The attached submission addresses five specific areas within the Court's remedies authority: (1) all-in price transparency; (2) audited bot-mitigation standards; (3) artist autonomy over inventory; (4) non-exclusive interoperability protections for independent venues; and (5) face-value resale limits. These are offered as technical benchmarks—not advocacy for any party—to assist the Court in fashioning durable, independently verifiable conduct remedies.

For the foregoing reasons, Movant respectfully requests that the Court grant leave to file the attached submission for the record.


Respectfully submitted,

*Victoria Cortez*

**Victoria Cortez**
Founder, Live Events Standards Council
liveeventscouncil.org
2066 N Capitol Ave Unit #8155
San Jose, CA 95132
(510) 883-3128
victoria@liveeventscouncil.org

Date: April 30, 2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | **Case No. 1:24-cv-03973 (AS)** |
| Plaintiffs, | **PUBLIC-INTEREST SUBMISSION** |
| -v- | **REGARDING PROPOSED REMEDIES** |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., | **AND CONDUCT STANDARDS** |
| Defendants. | |

Honorable Judge Arun Subramanian

United States District Court, SDNY

500 Pearl Street, Courtroom 15A

New York, NY 10007

**RE:** Public Interest Submission of the Live Events Standards Council (LESC) — Remedies Phase

Dear Judge Subramanian:

The Live Events Standards Council (LESC) submits this letter as an independent, non-industry-funded standards body operating in the live events market. The LESC functions analogously to Underwriters Laboratories (UL) or NSF International— organizations that certify electrical equipment, water filters, and consumer products through rigorous, arm's-length audits, with no financial stake in the outcome of their testing. Just as UL certification tells a consumer that a light bulb or power strip meets a verified safety standard regardless of the manufacturer, the LESC's "Front Row Certified" seal tells a fan, artist, or venue that a ticketing platform meets an independently verified standard of fairness—regardless of who owns it.

The Court's review of the proposed federal consent decree under the Tunney Act, 15 U.S.C. § 16, provides the appropriate mechanism to consider whether such market-based conduct standards are necessary to serve the public interest. We submit that they are, and that the proposed DOJ settlement—like a product that has failed its safety audit—does not meet the bar.

Following the April 15, 2026 jury verdict finding the Defendants liable for illegal monopolization, the Court now faces the critical task of fashioning relief that restores

genuine competition. The LESC offers the following observations to assist the Court in ensuring that any conduct-based remedies are enforceable and technically sound.

## 1. Documented Demand for Conduct Standards

Structural divestiture alone may not address the underlying conduct-based market failures identified during trial. The live events industry currently lacks the equivalent of a UL listing or NSF certification—there is no independent, audited standard that fans, venues, or artists can point to as proof that a platform is operating fairly. As of April 25, 2026, 152 verified stakeholders—including fans and independent venue operators—have formally petitioned for exactly such a standardized conduct framework. Supporting documentation of petition signatories is available upon the Court's request. This data signals that the market is actively seeking the "accountability layer" that the prior federal settlement failed to provide.

## 2. The "Front Row Certified" Framework as a Benchmark

In the same way UL's certification standards define what makes an electrical product safe for consumers—and give regulators a concrete benchmark to reference in enforcement—the LESC's "Front Row Certified" standard defines what makes a ticketing platform fair for fans, artists, and venues. We urge the Court to consider these five pillars as benchmarks for any Court-ordered conduct remedies:

- **All-In Pricing:** Mandating full-price transparency at first-click to eliminate deceptive fee structures, which trial evidence showed reached up to 44% above face value.
- **Audited Bot Mitigation:** Requiring independent third-party technical audits of bot-prevention efficacy—the live events equivalent of a safety stress test—addressing the documented 2021 rejection of effective identity-verification technology.
- **Artist Autonomy:** Ensuring artists retain full control over ticket inventory, presale lists, and pricing tiers, independent of platform leverage.
- **Non-Exclusive Interoperability:** Protecting independent venues from financial retaliation when utilizing competing ticketing platforms, a practice corroborated by trial testimony regarding "veiled threats" against venues.
- **Face-Value Resale Limits:** Capping resale prices to eliminate platform-enabled scalping tools that generate secondary market revenue for the Defendants at consumers' expense.

## 3. Independence and Monitoring: The "Independence Lock"

UL and NSF maintain their credibility precisely because they have no financial stake in the outcome of their certifications—the manufacturer cannot pay for a passing grade. The LESC is structured on the same principle: zero revenue derived from the platforms it certifies, no board seats held by industry participants, and full public disclosure of audit results. This "Independence Lock" is the structural safeguard that

the 2010 consent decree lacked. That decree was extended in 2020 after documented violations—proof that behavioral remedies without truly independent monitoring are routinely circumvented. The LESC's affiliated investigative desk, Dismal Freedom Press (DFP), has developed a real-time compliance monitoring model that could serve as a template for any independent monitor appointed by the Court.

**Conclusion**

A product that fails its UL safety test is not allowed on shelves—regardless of how large the manufacturer is. The proposed federal settlement, measured against the conduct standards the market requires, fails that test. We respectfully request that the Court scrutinize the proposed remedies under the Tunney Act to ensure they do not merely open a door to a newly competitive but equally unaccountable market. The jury verdict establishes proven harm; the Court has full authority to order structural separation as the most effective remedy and to incorporate independent, audited conduct standards—on the UL/NSF model—as the enforceable benchmark for what a fair market looks like going forward.

Respectfully submitted,

**Victoria Cortez**
Founder, Live Events Standards Council
liveeventscouncil.org
2066 N Capitol Ave Unit #8155
San Jose, CA 95132
(510) 883-3128
victoria@liveeventscouncil.org
Date: April 27, 2026

*Note: Petition documentation supporting the 152 verified stakeholder signatures referenced in Section 1 is available upon request.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 1:24-cv-03973 (AS)

# AFFIDAVIT OF SERVICE

I, Victoria Cortez, Founder of the Live Events Standards Council, hereby certify under penalty of perjury that on April 27, 2026, I caused a true and correct copy of the foregoing Public-Interest Submission Regarding Proposed Remedies and Conduct Standards to be served upon the following parties via electronic mail:

1. **Counsel for Live Nation Entertainment, Inc. and Ticketmaster L.L.C.:**

   Latham & Watkins LLP Email: Lindsey.Champlin@lw.com; Robin.Gushman@lw.com

2. **Lead Counsel for the State Plaintiffs:**

   Office of the Attorney General for the District of Columbia Email: Adam.Gitlin@dc.gov; Cole.Niggeman@dc.gov

Service was made by emailing a PDF copy of the above-referenced submission to counsel of record for each party. I am not a party to this action and am over 18 years of age.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 27, 2026.

_____

**Victoria Cortez**
Founder, Live Events Standards Council
liveeventscouncil.org
2066 N Capitol Ave Unit #8155
San Jose, CA 95132
(510) 883-3128
victoria@liveeventscouncil.org