# DDX-24

# Part 1 of 2



*U.S. et al. v. Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

# Live Nation & Ticketmaster Closing Argument

*April 9, 2026*

DDX-24.1

# Live Nation and Ticketmaster




**Bob Roux**


**Mark Campana**


**Colin Lewis**


**Jenny Johnson**


**Clay Luter**


**Michael Rapino**


**Mike Evans**


**Mark Yovich**


**David Marcus**


**Omar Al-joulani**


**Matt Hansen**


**Ben Weeden**


**Ben Baker**

DDX-24.2

# Third Party Witnesses





**Ben Lovett**
*Mumford & Sons*



**Michael Marion**
*Simmons Bank Arena*



**George Hanna**
*Intuit Dome*



**Laurie Jacoby**
*BSE Global*



**Robert Henson**
*SevenVenues*



**Jim Van Stone**
*Monumental Sports*



**Beth Paul**
*City of Greenville*



**Valerie Barone**
*City of Concord*



**John Marchant**
*City of Mountain View*



**Marney Smith**
*Hayden Homes Amphitheater*



**Dave Brown**
*Center Operating Company*



**Allen Johnson**
*City of Orlando*



**Todd Glickman**
*Comcast Spectacor*



**Matthew Caldwell**
*Florida Panthers*



**Coran Capshaw**
*Red Light Management*



**Brandon Briggs**
*Inter Miami*



**Adel Nur**
*Drake's Manager*

DDX-24.3

# Experts in Economics





## Eric Budish

Paul G. McDermott Professor
of Economics and Entrepreneurship

### UNIVERSITY OF CHICAGO

- Leading researcher in market design
- Published in leading journals:
  – American Economic Review
  – Quarterly Journal of Economics
  – Journal of Political Economy
  – Review of Economic Studies



## Ali Yurukoglu

Jonathan B. Lovelace Professor
of Economics

### STANFORD UNIVERSITY

- Associate Editor of Econometrica and Journal of Industrial Economics
- 2019 Best Paper Award: Association of Competition Economics



## Dennis Carlton

David McDaniel Keller Professor
of Economics Emeritus

### UNIVERSITY OF CHICAGO

- Former Deputy Assistant Attorney General for Economic Analysis at the U.S. Department of Justice
- Published more than 100 articles and two books, including one of the leading textbooks in industrial organization








DDX-24.5

# Procompetitive Benefits of Live Nation's Vertical Integration





## When Live Nation Promotes:

- All-in Ticket Prices are *lower*

  *Trial Tr. 4341:22-4342:10 (Yurukoglu)*

- *More* tickets are sold

  *Trial Tr. 4345:12-23 (Yurukoglu)*

## When Live Nation Promotes in a Live Nation Venue:

- All-in Ticket Prices are *even lower*

  *Trial Tr. 4342:21-4343:11 (Yurukoglu)*

- *Even more* tickets are sold

  *Trial Tr. 4345:24-4346:9 (Yurukoglu)*

DDX-24.6

# Artist Managers Agree that Ticketmaster is the Best





**Adel Nur**
*Drake's Manager*

**Q.** You wouldn't consider switching from Ticketmaster?

**A. In my experience and in 15 years of doing this, of all the ticketing companies . . . the company that I feel who does ticketing the best is Ticketmaster. . . when it comes to service and when it comes to selling that many tickets . . . I think Ticketmaster does it the best.**

*Nur Dep. Tr. 99:12–100:01*

# Venues Agree that Ticketmaster is the Best





**Marney Smith**
*Hayden Homes Amphitheater*

**Q.** Do you have a view on the amphitheater's relationship with Ticketmaster?

**A. Yes. They have been, in my experience, by far the best ticketing company to work with.**

*Smith Dep. Tr. 36:23-37:3*

**\* \* \***

**Q.** Do you have a view . . . on the quality and effectiveness of [Ticketmaster's] products and services [utilized by the amphitheater]?

**A. They're excellent . . . They're reliable, they're consistent.**

*Smith Dep. Tr. 37:16-20*

# Burden of Proof





"**Plaintiffs must prove every essential element** of each of their claims against each Defendant by a preponderance of the evidence."

"**If Plaintiffs should fail** to establish any essential element of one of their claims by a preponderance of the evidence against any Defendant, **you should find for each such Defendant** as to that claim."

Post-Instruction No. 11

DDX-24.9

# Failure of Proof



**Made Up Markets**

**No Monopoly Power**

**Competitive Conduct**

**No Harm to Competition**

**No Damages Claimed**

# Failure of Proof



## Ticketing

- Made Up Markets
- No Monopoly Power
- Competitive Conduct
- No Harm to Competition
- No Damages

## Amphitheaters

- Made Up Markets
- No Monopoly Power
- Competitive Conduct
- No Harm to Competition
- No Damages Claimed

DDX-24.11

# Failure of Proof



## Ticketing

- Made Up Markets
- No Monopoly Power
- Competitive Conduct
- No Harm to Competition
- No Damages

## Amphitheaters

- Made Up Markets
- No Monopoly Power
- Competitive Conduct
- No Harm to Competition
- No Damages Claimed

# Jury Instruction





"In general, however, to prove monopolization for each separate market, **Plaintiffs must show** by a preponderance of the evidence that the alleged market **is a valid antitrust market**…"

Post-Instruction No. 15

DDX-24.13

# Why Market Definition Matters



**If Ticketmaster were a monopolist, Plaintiffs would be saying this:**



**Ticketmaster monopolizes primary ticketing to large venues**

**But instead, they are saying this:**



**Ticketmaster monopolizes primary concert ticketing to ~~large venues~~ amphitheaters and arenas with a capacity of over 8,000 that hosted 10+ concerts in at least one year from 2017–2024, which we'll call "Major Concert Venues"**

DDX-24.14

# What Dr. Hill's Primary Concert Ticketing Market Omits



- Ticketers compete for the whole pie

- Plaintiffs' definition is based on a narrow slice

- Plaintiffs exclude sports and thousands of venues

**Primary Concert Tickets Sold Inside Plaintiffs' Market**

63M 14%

386M 86%

**Primary Tickets Sold Outside Plaintiffs' Market**

# No Basis to Exclude Sports



| **Venue RFPs seek a combined ticketing proposal** | **Ticketers compete for sports _and_ concert ticketing** | **Venues generally use one ticketing company for sports and concerts** |
|---|---|---|
| **Q.** Well, do you understand that in some RFPs, the venues ask ticketers to bid on concerts and sports opportunities together as one package?<br><br>**A. Sure.** | **Q.** When a ticketer is trying to win business at Madison Square Garden, they are trying to win the business of the Knicks and the Rangers, right, as well as concerts, correct?<br><br>**A. I think they are trying to win the business of the venue if they can.** | **Q.** And the ticketing companies, though, when they compete, they compete almost always for the combination of sports and concert ticketing, correct?<br><br>**A. I haven't studied how often a venue splits. I'm aware that they do, but I think it's fair to say, in general, venues use one ticketing package for both.** |
| *Trial Tr. 2177:1-4 (Hill)* | *Trial Tr. 2187:7-11 (Hill)* | *Trial Tr. 2186:15-20 (Hill)* |

DDX-24.16

# No Basis to Exclude Sports



## Sports and Concert Ticketing Use the Same Core Ticketing Systems



**David Marcus**
*Ticketmaster*

**Q.** And does the venue use the same ticketing system for both sports and concerts?

**A. Yes.**

*Trial Tr. 2921:5-7 (Marcus)*



**Bryan Perez**
*AXS*

**Q.** I want to talk a little bit now about AXS's products. Based on your experience, how would you describe AXS's technology, ticketing technology?

**A. Well, what's interesting about our technology is that we have -- not to get too technical, but we have one code base that does the ticketing for all different venue types, so everything from a small, general admission club to a major NBA or NHL arena and really everything in between**. **And so that means it's got a variety of feature sets that are available to it.**

*Trial Tr. 2318:22-2319:6 (Perez)*



**Jack Groetzinger**
*SeatGeek*

**Q.** You have venues -- you have stadium clients, right?

**A. Yes.**

**Q.** You have arena clients, right?  The fundamental core technology you provide to both is the same, true?

**A. They are using the same foundational product.  There's** many different ways that a venue client would use the product versus an arena client.

*Trial Tr. 822:2-9 (Groetzinger)*

# No Basis to Exclude Sports



## Ticketing Contracts Commonly Cover Both Sports and Concerts

> "Attraction" means a concert, sporting, entertainment or other act or event of any kind or nature whatsoever to be held at the Facility.

 **The only Ticketmaster contracts in the record that don't have sports and concerts on the same ticketing contract don't host sports events at all.**

# Having it Both Ways



# Dr. Hill's Concert Ticketing Market Excludes Sports.

# Whereas His Broader Ticketing Market Includes Sports.

DDX-24.19

# According to Dr. Hill . . .



## Considerations in Defining Markets



**Reasonable substitutes**

What products do customers view as being close substitutes?



**Peculiar characteristics**

What sets the product apart from other products?



**Distinct or targeted customers**

Are there customers with unique needs who are vulnerable?



**Industry recognition**

Do industry participants and the public recognize these products are distinct?

Hill Report, ¶¶ 88 (fn. 171-172), 90, 103-104 (citing 2023 Merger Guidelines)

PDX005.8

# No Evidence of Targeting



## Plaintiffs' Ticketing Markets Depend on the Theory That Their 257 Venues Are Vulnerable To Targeting



**But Dr. Hill Presented No Evidence Of Targeting:**

**Q.** You didn't present any evidence that the supposedly vulnerable 257 venues at issue in your markets paid more for ticketing services than for other venues, correct?

**A. That those venues paid more than other venues? Correct.**

*Trial Tr. 2182:5-9 (Hill)*

DDX-24.21

# No Evidence of Targeting



## Plaintiffs' Ticketing Markets Depend on the Theory That Their 257 Venues Are Vulnerable To Targeting



**Prof. Carlton showed there is NO evidence of targeting:**

**Q.** All right. What does your analysis of gross margin in this case demonstrate?

**A. My analysis was focused on demonstrating that the gross margin in Dr. Hill's preferred market for Ticketmaster is not higher in his market than outside the market. So in the market where everybody is -- where people are most vulnerable, according to Dr. Hill, the anticompetitive harm, compared to outside the market, where presumably they are less vulnerable or not vulnerable at all, the margins are not higher in Dr. Hill's market. They are not. And that means the implication of his claim is false. There's no empirical validation of the implication of his claim.**

*Trial Tr. 4148:25-4149:11 (Carlton)*

**DDX-24.22**

# Made Up Market



## No Document Defines the Market Like Plaintiffs



**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** It's true, is it not, that you haven't seen a single document, anywhere in the millions of pages that you've had access to, that defines the relevant market to consist of the 257 venues that you call major concert venues, correct?

**A. That's fair.**

*Trial Tr. 2168:3-7 (Hill)*

DDX-24.23

# Made Up Markets



## No Fact Witness Adopted Plaintiffs' Market Definitions



### Jay Marciano
*AEG*

**Q.** Has AEG defined major concert venues to include venues with a capacity in excess of 5,000?

**A. Yes.**

*Trial Tr. 1146:12-15 (Marciano)*

\* \* \*

**Q.** AEG has represented unequivocally that the most representative types of major concert venues are stadiums and arenas and amphitheaters, correct?

**A. Correct.**

*Trial Tr. 1147:9-12 (Marciano)*



### Bryan Perez
*AXS*

**Q.** And, in your view, any venue north of about 5,000 seats where major concert tours play would be a major concert venue, right?

**A. Correct.**

**Q.** And your definition of a major concert venue includes some arenas and some stadiums, right?

**A. Yes.**

*Trial Tr. 2397:13-19 (Perez)*



### Christian Lewis
*Paciolan*

**Q.** Have you heard the term "major concert venue"?

**A. Yes.**

**Q.** And is that a term Paciolan uses in the ordinary course of business?

**A. No.**

*Lewis Dep. Tr. 43:15-20*

DDX-24.24

# Dr. Hill's Market Definition Has Never Been Used Before











DDX-24.25

# Gerrymandered Boundaries



## Plaintiffs Exclude Most of the Industry

| Venue Type | Number of Venues | Included Venues | Excluded Venues |
|---|---|---|---|
| Amphitheater | 378 | 87 | 291 |
| Arena | 690 | 170 | 520 |
| Club | 453 | 0 | 453 |
| Stadium | 788 | 0 | 788 |
| Theater | 870 | 0 | 870 |
| Other | 16,848 | 0 | 16,848 |
| Totals | 20,027 | 257 | 19,770 |

**Plaintiffs count:**

- **Less than 1.3%** of all venues

- **Only 13.8%** of Amps, Arenas, and Stadiums

- **Only about 12%** of tickets sold

*Trial Tr. 2151:1-2153:1, 2196:11-2197:5 (Hill)*

# Gerrymandered Boundaries



## Plaintiffs Claim the Market Consists of "Major Concert Venues" – But They Omit Some of the Most Iconic Major Concert Venues

        

        

      

       

       

# No Peculiar Characteristics



## Nothing Sets the 257 Apart, Even Per Dr. Hill's Testimony

### They have capacity similar to excluded venues

**Q.** So fair to say, Dr. Hill, that your markets, as you define them, these 257 venues, they include venues that have capacity in — that have capacity essentially identical to venues that you exclude that are in essentially the same geographies, correct?

**A. Yes. Although, again, the market has other characteristics.**

*Trial Tr. 2157:6-12 (Hill)*

### They exclude venues that host more concerts

**Q.** In fact, though, Dr. Hill, you exclude from your markets — so not in those 257 — venues that host a lot more concerts than the venues that you actually include in your market; isn't that true?

**A. Yes. Small clubs would have many more shows than larger venues.**

*Trial Tr. 2158:15-20 (Hill)*

### They host artists that play other venues

**Q.** So you understand that from time to time when artists tour, they will play at a venue that you include in your [257], and then the next night, they will play in a venue that you exclude from your [257]?

**A. That can happen, sure.**

*Trial Tr. 2170:19-23 (Hill)*

# No Peculiar Characteristics



## Nothing Sets the 257 Apart, Even Per Dr. Hill's Testimony

| **They exclude venues that are covered by the same contracts as included venues** | **They exclude venues that use the same systems as included venues** | **They are not serviced by a unique set of promoters** | **They are not pursued by a unique set of ticketers** |
|---|---|---|---|
| **Q.** So it's fair to say, then, is it not, that there are venues inside and outside of your collection of 257 that are covered by exactly the same contract terms, right?<br><br>**A. Yeah, that seems fair for these venues.** | **Q.** At Ticketmaster, concert tickets are sold using the same system for all arenas and stadiums and amphitheaters, correct?<br><br>**A. Correct. I understand it all to be based on Host.**<br><br>**Q.** And the same is true, is it not, for SeatGeek and for AXS, right?<br><br>**A. I believe that to be true.** | **Q.** You haven't identified any promoter who offers promotion services only at your 257 venues, correct?<br><br>**A. I think that's fair.**<br><br>**Q.** And you haven't identified any promoter who offers promotion services only to the artists who play at stadiums, right?<br><br>**A. Yeah.** | **Q.** You, in fact, have seen evidence that ticketers are competing for the business of venues outside the markets as you define them, correct?<br><br>**A. Correct.**<br><br>**Q.** And there are, in fact, sir, no ticketing companies that only cater to the amps and the arenas that hosted ten or more concerts in at least one year from 2017 to 2024, correct?<br><br>**A. Correct.** |
| *Trial Tr. 2179:3-6 (Hill)* | *Trial Tr. 2175:12-17 (Hill)* | *Trial Tr. 2172:18-25 (Hill)* | *Trial Tr. 2154:23-2155:5 (Hill)* |

DDX-24.29

# Failure of Proof



## Ticketing

- Made Up Markets
- **No Monopoly Power**
- Competitive Conduct
- No Harm to Competition
- No Damages

## Amphitheaters

- Made Up Markets
- No Monopoly Power
- Competitive Conduct
- No Harm to Competition
- No Damages Claimed

# Jury Instruction





"To prove a monopolization claim, Plaintiffs must prove that the relevant Defendant has monopoly power in a relevant antitrust market. Monopoly power is the **power to control prices, restrict output, or exclude competition** in a relevant antitrust market."

"If you find that a Defendant does not have monopoly power in a relevant market, then **you must find for that Defendant** and against Plaintiffs on the monopolization claim as to that relevant market."

**Post-Instruction Nos. 21, 23**

DDX-24.31

# No Power to Control Price





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** But it's also true, is it not, that you don't offer, and have not offered, any evidence of MCVs, as you define them, being charged monopoly prices, correct?

**A. Correct.**

*Trial Tr. 2183:25–2184:3 (Hill)*

DDX-24.32

# Prices Are Down



## Ticketmaster Take Rate for Primary Tickets, All Segments

Chart of Ticketmaster take rate by year:
- 2013: ~5.6%
- 2014: ~5.4%
- 2015: ~5.3%
- 2016: ~4.9%
- 2017: ~4.4%
- 2018: ~4.3%
- 2019: ~4.3%
- 2021: ~4.0%
- 2022: ~3.9%
- 2023: ~3.4%
- 2024: ~3.3%
- 2025: ~2.7%

*Trial Tr. 3863:22-3867:7 (Johnson); DDX-21.1*    **DDX-24.33**

# No Power to Restrict Output





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** Now, you don't discuss anywhere in your reports, and didn't present here, the effect of the alleged anticompetitive behavior on output at MCVs, correct?

**A. Are we talking about ticketing?**

**Q.** Yes, sir.

**A. That's fair.**

*Trial Tr. 2274:10-15 (Hill)*

DDX-24.34

# Output Has Increased



# No Power to Exclude Competitors





"The live event ticketing industry is subject to intense competitive dynamics"

# More Competition Than Ever



"Entry of new competitors or expansion of existing competitors may be evidence that a defendant lacks monopoly power"

**Post-Instruction No. 23**














# Misplaced Reliance on Shares





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

- A market share calculation is only as good as the market definition

- High market shares **don't necessarily indicate** significant market power that can harm customers

- A firm can obtain a high market share **without engaging in anticompetitive conduct**

*Trial Tr. 2194:2-18 (Hill)*



**Dennis Carlton**
*Professor of Economics*

- Market share is a **crude first step**

- High market shares **do not necessarily indicate** significant market power that can harm customers

- High shares can be a **reflection of superior performance**

*Trial Tr. 4031:8-4033:5 (Carlton)*

DDX-24.38

# Misplaced Reliance on Shares



Primary concert ticketing at Dr. Hill's MCVs

**86%**

Primary ticketing at top 500 venues by concert revenue in 2023

**56%**

Primary ticketing at venues with 8,000 capacity and at least 1 concert

**48%**

Primary ticketing at Dr. Hill's MCVs and stadiums

**40%**

Primary ticketing at venues with a top 500 concert by tickets sold in 2023

**39%**

# The Law – Share Insufficient





"...market share is not the equivalent of monopoly power..."

"In evaluating whether the relevant Defendant's market share supports a finding of monopoly power, **you should also consider other aspects of the relevant market**..."

Post-Instruction No. 23

DDX-24.40

# No Monopoly Profits



## Ticketmaster's take rate is <u>lower</u> than its rivals



### 4–5%

*Trial Tr. 3356:21-3357:3 (Hansen);*
*Trial Tr. 3185:6-22 (Budish)*

**axs**

### 5%

*Trial Tr. 1202:2-6 (Marciano)*



### 14%

*Trial Tr. 814:11-13 (Groetzinger)*

## Ticketmaster's take rate has <u>declined</u> in last 10 years



**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** You would agree with me that Ticketmaster's take rate has declined in the last ten years, correct?

**A. I believe it has, but I don't recall the exact numbers.**

*Trial Tr. 2276:23-25 (Hill)*

DDX-24.41

# Continuous Innovation



      

**2009**
Interactive Seat Map

**2013**
TM+

**2015**
- Face Value Exchange
- Market-Leading Reporting

**2017**
- Virtual Venue
- Verified Fan
- TM1

**2019**
SafeTix

**2021**
TM1 Evolution

**2023**
Ignite

**2011**
Distributed Commerce

**2014**
Consolidated New Platform

**2016**
New Mobile SDK

**2018**
- SmartQueue
- New Account Manager

**2020**
Smart Event & Pandemic Tools

**2022**
Donation Tools in Account Manager

**2024**
- Artist Sign-Up
- SafeTix 2.0

      

# High Quality Products and Services





**Marney Smith**
*Hayden Homes Amphitheater*



**Jim Van Stone**
*Monumental Sports & Entertainment*

**Q.** Do you have a view on the amphitheater's relationship with Ticketmaster?

**A. Yes.**

**Q.** What's your view?

**A. They have been, in my experience, by far the best ticketing company to work with.**

*Smith Dep. Tr. 36:23-37:3*

**Q.** And how would you characterize your relationship with the folks at Ticketmaster today?

**A. I think overall we have an incredible partnership in terms of, you know, them being our ticketing services provider. . . . And throughout my time in the partnership that we've had with Ticketmaster, it's been nothing but best in class.**

*Trial Tr. 3284:23-3285:12 9 (Van Stone)*

**DDX-24.43**

# Superior Performance



## Venues, Artists, and Promoters All Do Better with Ticketmaster

**axs**  **ticketmaster**

- 12.0% More Tickets Sold
- 14.8% Higher Venue Take
- 14.4% Higher Artist/Promoter Take
- 15.4% Higher Gross Concert Revenues

0%    5%    10%    15%    20%

# Failure of Proof



| Ticketing | Amphitheaters |
|---|---|
| Made Up Markets | Made Up Markets |
| No Monopoly Power | No Monopoly Power |
| **Competitive Conduct** | Competitive Conduct |
| No Harm to Competition | No Harm to Competition |
| No Damages | No Damages Claimed |

# Jury Instruction





"Plaintiffs must prove by a preponderance of the evidence that [] the Defendant willfully acquired or maintained monopoly power in that relevant market through exclusionary conduct…"

"If you find that a Defendant **did not willfully acquire or maintain monopoly power through exclusionary conduct in a relevant market, or that this conduct did not have a substantial anticompetitive effect in the market, then you must find for that Defendant and against Plaintiffs** on the monopolization claim as to that market."

Post-Instruction No. 24

DDX-24.46

# Failure of Proof – Ticketing



**Made Up Markets**

**No Monopoly Power**

**Competitive Conduct**

| **1** | **Ticketing Exclusives** |
|---|---|
| **2** | **No Threats or Retaliation** |

**No Harm to Competition**

**No Damages**

DDX-24.47



# Exclusive Dealing

# Jury Instruction





"Plaintiffs must prove:

(i) significant market power by the Defendant, here Ticketmaster;

(ii) substantial foreclosure of the market, that is, whether the exclusive dealing barred a substantial number of competitors or severely restricted the market's ambit;

(iii) contracts of sufficient duration to prevent meaningful competition by rivals; and

(iv) anticompetitive effects in the relevant market in light of any procompetitive effects.

You may also consider

(v) whether exclusive contracts result from coercive behavior;

(vi) the ability of customers to terminate the agreements; and

(vii) the use of exclusive dealing by competitors of the defendant."

**Post-Instruction No. 25**

DDX-24.49

# Widely Used – U.S. Standard









*Trial Tr. 2220:1-22 (Hill)*

DDX-24.50

# Widely Used – U.S. Standard





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** Let me ask it this way. Exclusive ticketing has been the standard in the United States for decades, right?

**A. Yes. One of the witnesses at least testified to that.**

*Trial Tr. 2221:23-25 (Hill)*

\* \* \*

**Q.** You know, in any event, that the demand for exclusives in this country is well over 90 percent, correct?

**A. Based on the study of -- in the major concert venues, I think that's probably fair.**

*Trial Tr. 2223:21-24 (Hill)*



**Jay Marciano**
*AEG*

**Q.** And, in fact, in the United States, most ticketing contracts are exclusive, you would agree with that right?

**A. That is correct.**

*Trial Tr. 1172:2-4 (Marciano)*

\* \* \*

**Q.** And most venues have, in fact, preferred to stick with an exclusive ticketing contract with just one ticketing company, right?

**A. That's been the response so far.**

*Trial Tr. 1172:21-24 (Marciano)*

# Requested by Venues





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

Q. Can you think of any instance, Dr. Hill, in which a venue that wanted a nonexclusive was denied the right to get a nonexclusive?

A. **I don't know how to evaluate that, but I'm not aware of one.**

*Trial Tr. 2222:20-24 (Hill)*



**Todd Glickman**
*Comcast Spectacor*

Q. Do you prefer having an exclusive ticketer for Flyers games and concerts at the Wells Fargo Center?

A. **That is -- you know, that is standard expectation in the industry. So yes, we would prefer for ease of usage for our customers, for our promoters.**

*Glickman Dep. Tr. 50:17-51:3*

\* \* \*

Q. From your perspective, why is exclusivity standard expectation?

A. **...having the one ticketer provider, one exclusive provider is--is critical for us...**

*Glickman Dep. Tr. 131:23-132:19*



**Dave Brown**
*Center Operating Company*

Q. So is it the American Airlines Center's choice to have an exclusive relationship with its primary ticketer?

A. **Yes.**

*Brown Dep. Tr. 57:13-16*

**DDX-24.52**

# Venues Prefer Exclusivity



**Jim Van Stone**



**Michael Marion**





**Robert Henson**



**Allen Johnson**



**Seth Hurwitz**



**Dave Brown**





**Elizabeth Paul**



**Marney Smith**



**Todd Glickman**

*Brown Dep. Tr. 56:19-22; Glickman Dep. Tr. 50:17-51:3; Henson Dep. Tr. 50:13-25; Marion Dep. Tr. 69:24-70:16; Paul Dep. Tr. 49:6-50:4; Johnson Dep. Tr. 55:13-57:9; Smith Dep. Tr. 72:10-73:6; Trial Tr. 705:5-11 (Hurwitz); Trial Tr. 3277:10-18 (Van Stone)*

DDX-24.53



# No Venue Has Testified That They Wanted a Non-Exclusive Ticketing Contract and Could Not Get One

*Brown Dep. Tr. 57:13-16; Glickman Dep. Tr. 50:17-51:3; Henson Dep. Tr. 50:13-25; Marion Dep. Tr. 69:24-70:16; Paul Dep. Tr. 49:6-50:4; Johnson Dep. Tr. 55:13-57:9; Smith Dep. Tr. 72:10-73:6; Trial Tr. 705:5-11 (Hurwitz); Trial Tr. 3277:10-18 (Van Stone)*

DDX-24.54

# Benefits Venues and Fans





**Elizabeth Paul**
*Bon Secours
Wellness Arena*

**Q.** ...do you have a view as to whether it is better for -- better or worse for the arena to have an exclusive ticketing partner or to have multiple ticketing partners?

**A. The benefit...[is] they have one system to manage and build shows on so there's consistency. … if there was not an exclusive ticketing partner, it would create confusion in the marketplace and amongst the workforce … an exclusive arrangement is a benefit to the arena, in my opinion.**

*Paul Dep. Tr. 49:6-50:4*



**Michael Marion**
*Simmons Bank Arena*

**Q.** And what is your view?

**A. Any box office would be very impaired … it would affect their efficiency … it would be a detriment to the building and our operation if the box office had to learn more than one.**

*Marion Dep. Tr. 71:16-72:05*



**Robert Henson**
*SevenVenues*

**Q.** Do you have a view as to whether it would be more efficient from an operations perspective to have more than one ticketer serve as a venue's ticketing partner?

**A. There's -- it serves no purpose whatsoever operationally. It's a nightmare.**

*Henson Dep. Tr. 51:23-52:6*

\* \* \*

**Q.** Has the City ever considered using more than one primary ticketer for its venues?

**A. No. It causes confusion in the marketplace.**

*Henson Dep. Tr. 50:13-17*

# Benefits Venues and Fans





**Seth Hurwitz**
*I.M.P.*

Q. And you believe that having more than one primary ticketing company at one venue, at a single venue, **could be confusing to the public**, right?

A. Yes.

*Trial Tr. 705:8-11 (Hurwitz)*



**Marney Smith**
*Hayden Homes Amphitheater*

Q. Would Hayden Homes prefer to have multiple ticketers ticket events at the amphitheater?

A. **No.**

Q. Why is that?

A. **It's extremely confusing for the end user . . . [W]e want to make sure that the customer experience is as seamless and easy as possible; and in my experience, that is having a single ticketing company and the single best I've worked with has been Ticketmaster.**

*Smith Dep. Tr. 72:10-73:6*



**Matthew Caldwell**
*Florida Panthers*

Q. [H]ow did the Panthers assess the proposal to be locked into an exclusive ticketing arrangement for **ten years** at the War Memorial and Amerant?

A. **[T]hat is more of a byproduct of the negotiation with SeatGeek and their interests and investing in us and willing to do both venues.  So . . . they wanted a long-term deal; we wanted a lot of money per year, and that's where we landed.**

*Caldwell Dep. Tr. 165:21-166:6*

# Supported by Expert Testimony





**Dennis Carlton**
*Professor of Economics*

## Multi-year, exclusive contracts:

- Allow ticketers to make an **upfront payment that can improve the venue** and lead to more fans

- Relationship between ticketer and venue over time **allows for operational efficiencies and reduction of transaction costs**

- Easier for the venue and easier for the fans

- **Preferred** by venues

- Widespread **outside** Dr. Hill's market and among other ticketers

*Trial Tr. 4024:1-4025:9, 4025:18-4026:11 (Carlton)*

# Supported by Expert Testimony



## Even Dr. Hill Acknowledges That Long-Term Exclusives Can Be Beneficial

**Q.** And, in fact, multiyear exclusive contracts may be valuable to venues because they give them a predictable revenue stream and some financial stability, correct?

**A. They may be.**

*Trial Tr. 2227:22-25 (Hill)*

\* \* \*

**Q.** And compared to working, Dr. Hill, with multiple ticketing platforms simultaneously, working with a single platform can reduce complexity and training costs and technical issues, true?

**A. It can in some cases.**

*Trial Tr. 2230:11-15 (Hill)*

\* \* \*

**Q.** Multiyear contracts can reduce the costs associated with researching potential ticketing partners and evaluating bids and negotiating contract details, right?

**A. That's fair.**

*Trial Tr. 2231:23-2232:2 (Hill)*

\* \* \*

**Q.** You didn't separately analyze whether having a single primary ticketer is better for fans, right?

**A. That's fair.**

*Trial Tr. 2230:19-21 (Hill)*

DDX-24.58

# Involve Intense Competition



## Ticketmaster's Rivals Compete By Offering Long-Term Exclusives



**Edward Khoury**
*Jump Platforms*

**Q.** Jump proposes and enters into primary ticketing contracts that have multiple years and are exclusive, right?

**A. Yes, but--**

*Trial Tr. 1642:20-22 (Khoury)*



**Jay Marciano**
*AEG*

**Q.** And, in fact, in the United States, most ticketing contracts are exclusive, you would agree with that, right?

**A. That is correct.**

*Trial Tr. 1172:2-4 (Marciano)*



**Jack Groetzinger**
*SeatGeek*

**Q.** So SeatGeek, in fact, proposes, does it not, Mr. Groetzinger and enters into primary ticketing contracts that are multiyear and that are exclusive, right?

**A. We have to, yeah.**

*Trial Tr. 822:25-823:3 (Groetzinger)*

DDX-24.59

# Involve Intense Competition





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** Now, Dr. Hill, exclusive contracts, they may arise as a way to sharpen competition, is that fair?

**A. In some settings they can.**

**Q.** And exclusive contracts can sharpen competition by, for example, rewarding the winner of the competition with an exclusive right to ticket, correct?

**A. They may.**

**Q.** And two manufacturers competing for an exclusive contract with a retailer may lead to a more competitive outcome than if those manufacturers competed on price alone with no exclusive, correct?

**A. It could.**

*Trial Tr. 2224:14-25 (Hill)*

\* \* \*

**Q.** You saw evidence in this case, Dr. Hill, of competition among ticketers to bid on different ticketing contracts, correct?

**A. Correct.**

*Trial Tr. 2225:4-7 (Hill)*

\* \* \*

**Q.** Now, ticketing companies can compete to offer long-term exclusive contracts; you don't disagree with that, right?

**A. Correct.**

*Trial Tr. 2232:21-23 (Hill)*

# Involve Intense Competition





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** You didn't do an analysis of the bidding that goes on between ticketing companies to get the exclusive right to bid at any stadium, correct?

**A. Correct.**

*Trial Tr. 2226:8-11 (Hill)*

\* \* \*

**Q.** You didn't study the competition between ticketers to become the exclusive ticketer at any given venue, correct?

**A. That's fair.**

*Trial Tr. 2227:13-16 (Hill)*

\* \* \*

**Q.** And you have not analyzed in this case whether bidding on long-term exclusives results in bigger payments to venues, correct?

**A. That's fair.**

*Trial Tr. 2232:24-2233:2 (Hill)*

DDX-24.61

# Doesn't Eliminate Competition





**Dennis Carlton**
*Professor of Economics*

"Before the contract is signed, **firms compete -- can compete to sign that exclusive contract**.  And, in fact, customers know that if they offer a multiyear contract to a supplier . . . [t]hey are going to get a better deal than if they say, well, I'll only be your customer for one day.  All the suppliers know that. . . . that creates the competition and **that can heighten competition rather than eliminate it**."

"So the notion that exclusive contracts eliminate competition or must eliminate competition, **that's wrong**.  That's the wrong way to think about it."

*Trial Tr. 4026:25-4027:13 (Carlton)*

# Competition in Primary Ticketing





**Jenny Johnson**
*Ticketmaster*

**Q.** And who today, just focusing on today, who are you seeing as Ticketmaster's competitors for primary ticketing?

**A. There's a long list. The ones that come to mind, AXS, SeatGeek, Fever, SI Tickets, Jump tickets, Paciolan. We even have Eventim, which is one of the largest ticketing companies outside of the U.S., are now looking at entering the U.S. market. So there's many competitors in our space.**

*Trial Tr. 3787:21-3788:2 (J. Johnson)*

\* \* \*

**Q.** And does the competition factor into how the venues have the negotiating power you referred to?

**A. Yeah, absolutely. They have many choices on where to go so they can use us or one of our many other competitors that we listed.**

*Trial Tr. 3793:20-24 (J. Johnson)*

\* \* \*

**Q.** And have you been seeing that, where venues are sort of playing the rivals off of each other in the negotiations?

**A. Definitely.**

*Trial Tr. 3794:8-10 (J. Johnson)*

DDX-24.63

# Competition in Primary Ticketing





**Jenny Johnson**
*Ticketmaster*

**Q.** Based on your role and what you see in reviewing the large deals that you see, have you developed an understanding of where the negotiating power sits between Ticketmaster and the venue?

**A. It's with the venue.**

**Q.** And why do you say that?

**A. Well, based on the deals I see coming across our desk, almost all of them are worse than the existing deals, so our economics get worse every time we renew a client . . .**

*Trial Tr. 3793:5-13 (J. Johnson)*

| | 2018 / 19A (Current Deal) | Projected Avg | Proposal with early renewal impact |
|---|---|---|---|
| **TM Retain (GM)** | **$1.06M** | **$0.66M** | **$0.48M** |
| *% of Total Economics* | *29%* | *17%* | *12%* |
| *$/ticket* | *$4.11* | *$2.70* | *$1.96* |



*DX-0404*

# US System Not on Trial



- European model has not been adopted in the US.

  *Trial Tr. 1186:9-12 (Marciano)*

- In the US, tickets to live entertainment events are generally considered to be licenses issued by the venue to the fan.

  *Trial Tr. 1187:12-18 (Marciano)*

- In the US, the property rights to tickets belong to the venues, not the artist or promoter.

  *Trial Tr. 1188:7-11 (Marciano)*

|  | Exclusive | Mixed Allocation/Exclusivity | Allocation |
|---|---|---|---|
| **Venue** | US, Australia, New Zealand, Sweden, Norway, Finland | Belgium | No Market |
| **Mixed Control** | Denmark, Canada | No Market | Czech Republic, United Kingdom, France *API* |
| **Promoter** | Netherlands, Ireland, Turkey | Germany, Austria, Switzerland, Italy, Spain, Greece | Poland |

*DDX-18.21; Trial Tr. 2792:12-2795:15 (Yovich)*

DDX-24.65

# Ticketmaster-OVG Ticketing Agreement





**Chris Granger**
*Oak View Group*

**Q.** [Y]ou think Ticketmaster is the best, right?

**A. I do.**

*Trial Tr. 2662:7-10 (Granger)*

\* \* \*

**Q.** And you mentioned that there were a handful of [OVG-managed venues] where someone picked a ticketer at the end of the day that wasn't Ticketmaster, correct?

**A. Correct.**

**Q.** But they did that after you advocated with that venue to pick Ticketmaster in the first place, correct?

**A. Yes, but that's OK. They can pick who they want.**

*Trial Tr. 2665:24-2666:5 (Granger)*

DDX-24.66



# No Threats or Retaliation

# Jury Instruction





"The mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. Similarly, the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of prior history or luck, is not unlawful. **A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws**."

"Conduct is exclusionary only if its competitive harm outweighs its competitive benefits. In making this determination, your focus should be on the effect of the conduct, not on the intent behind it."

Post-Instruction No. 24

DDX-24.68



# Venues Were Not Threatened

# What Venues Say





47:07  Q.  Did anyone ever -- from Live
47:08  Nation or Ticketmaster or otherwise ever

DDX-24.70

# What Venues Say





**Allen Johnson**
*City of Orlando*



**Michael Marion**
*Simmons Bank Arena*



**Robert Henson**
*SevenVenues*

**Q.** Did anyone ever -- from Live Nation or Ticketmaster or otherwise ever threaten you that if you moved away from Ticketmaster, you would not get Live Nation concerts?

**A. No, sir.**

**Q.** In your decades of experience in the industry, would you say that it is industry knowledge that Live Nation is less likely to bring concerts to buildings that are not ticketed by Ticketmaster?

**A. No. I would not say that.**

**Q.** In your experience, has Live Nation ever threatened to withhold concerts from the City of Norfolk's venues if the City didn't choose Ticketmaster as its ticketing provider?

**A. No.**

*A. Johnson Dep. Tr. 47:7-12*

*Marion Dep. Tr. 114:15-20*

*Henson Dep. Tr. 32:8-13*

DDX-24.71

# What Venues Say





**Dave Brown**
*American Airlines Center*

**Q.** In connection with any of the extensions we discussed for the American Airlines Center, did anyone at Ticketmaster or Live Nation communicate any threats to you or anyone at the American Airlines Center as far as you're aware relating to the American Airlines Center's choice of its primary ticketer?

**A. No.**

*Brown Dep. Tr. 31:16-24*



**Seth Hurwitz**
*I.M.P.*

**Q.** And certainly no one from Ticketmaster or Live Nation ever threatened you in any way to try to get you to enter into a ticketing agreement with Ticketmaster?

**A. No, they didn't.**

*Trial Tr. 710:6-9 (Hurwitz)*

DDX-24.72

# What Venues Say





**Matthew Caldwell**
*Florida Panthers*

**Q.** Has your Live Nation team that you deal with ever implicitly or expressly threatened to steer concerts away from you based on your choice of a primary ticketer?

**A. No, no.**

**Q.** Has your Live Nation team ever retaliated against the Panthers for choosing SeatGeek over Ticketmaster?

**A. Not that I'm aware of.**

*Caldwell Dep. Tr. 150:10-21*



**Brandon Briggs**
*Inter Miami CF*

**Q.** To your knowledge, at any point did Ticketmaster or Live Nation say to anyone at Inter Miami that Live Nation would retaliate against Inter Miami if Inter Miami did not select Ticketmaster as a ticketing partner?

**A. Not to my knowledge.**

*Briggs Dep. Tr. 29:05-29:11*

DDX-24.73

# What Artist Teams Say





**Coran Capshaw**
*Red Light Management*

**Q.** So Mr. Capshaw, one of the allegations here that we're dealing with is that Live Nation has retaliated against venues who choose another  ticketing company by routing shows around those venues.  I just want to get your perspective.  In your role and experience in the industry, have you ever gotten any pressure from Live Nation to put a band in some other venue to settle a score?

**A. No. No.**

**Q.** Has Live Nation ever suggested that you play one venue over another because Ticketmaster tickets one of the buildings?

**A. No.**

*Trial Tr. 4239:13-23 (Capshaw)*



# Plaintiffs' Allegations of Threats

# Conversations at the Wild





## Mitch Helgerson
*Chief Revenue Officer,
The Minnesota Wild*



## The Minnesota
Wild Team

**Q.** What was Mr. Schwartzkopf's response?

**A. By the end of the meeting, Mr. Schwartzkopf did let us know that if we chose a different ticketing partner than Ticketmaster, Live Nation could move all of their shows to the competitive venue across the river in Minneapolis Target Center.**

*Trial Tr. 397:21-398:1 (Helgerson)*

**Q.** But members of your team were saying, if we go with SeatGeek, promoters might have a problem and might not send shows to us, didn't they?

**A. I did receive that feedback, yes.**

**Q.** And so Mr. Schwartzkopf saying if you go with SeatGeek, you might not get shows from promoters, that's the same concern, right?

**A. It's the same concern.**    *Trial Tr. 448:18-25 (Helgerson)*

## For Plaintiffs This Is:

### A THREAT

## The Minnesota Team:

### HAD THE SAME CONCERN

DDX-24.76

# City of Irvine – Alleged Threats





**Oliver Chi**
*City of Irvine*

- **The discussion was not about ticketing**
  - The subject was Live Nation developing and operating a new amp for the City
  - The City wanted to build a smaller amp that it would self-manage

  *Trial Tr. 615:3-616:8 (Chi); PX0202*

- **Live Nation pointed out that City's alternative plan for a smaller self-managed amp could result in fewer shows**
  - That's because Live Nation is better at operating amps – not a threat

  *Trial Tr. 551:15-552:6 (Chi)*

- **Admitted no credible threat**

  **Q.** Isn't it true that you did not view the Live Nation telling you that they would route shows around your venue as a credible threat?

  **A. I didn't believe that -- I believed that if we built the right venue, you are correct, that Live Nation would still book shows into our venue.**

  *Trial Tr. 627:25-628:5 (Chi)*

DDX-24.77

# Barclays – Alleged Threats



From Patti Kim to John Abbamondi

Hi john! I think [a meeting with Michael] Rapino [is] back on. Monday. Apparently SeatGeek are telling MSG [Madison Square Garden] and others that they have a contract deal with you guys already?? Anyways should think about bigger relationship with LN [Live Nation] not just who is writing a bigger sponsorship check😊.

From John Abbamondi to Patti Kim

We are meeting on it now

All kidding aside we love our LN relationship



## Never followed up with Kim about it

*Trial Testimony 370:5-6 (Abbamondi)*

PX0654

**DDX-24.78**

# Barclays – Alleged Threats





**John Abbamondi**
*BSE*

**Michael Rapino**
*Live Nation*

**Joe Berchtold**
*Live Nation*

**1** **Opportunity To Match**

**2** **Covid Extension**

**3** **UBS Raised by Abbamondi**

*PX0922*

# Double Standard





## Jay Marciano
*Chairperson, AEG Live*





## Michael Rapino
*CEO, Live Nation*



**Q.** And you communicated to Mr. Abbamondi at Barclays that AEG might direct more shows to UBS instead of Barclays because the financial incentive was greater, correct?

**A.** I probably did that.

*Trial Tr. 1216:11-14 (Marciano)*

"[W]e've got a new venue in town, and the economics have changed in the marketplace. So what I've told you from day one was, it was, you know, going to be a tough time to deliver tickets or concerts with a new competitor in town, regardless of ticketing."

*PX0992*

### For Plaintiffs This Is:



### For Plaintiffs This Is:

## A THREAT

DDX-24.80

# What Dr. Hill Is Not Saying





**Dr. Nicholas Hill**
*Plaintiffs' Expert*

**Q.** So you have not evaluated, in any event, Dr. Hill, whether or not threats were specifically made at any venue, correct? That's not part of your assignment here, right?

**A. That's fair.**

*Trial Tr. 2249:23-2250:1 (Hill)*

\* \* \*

**Q.** To be clear, Dr. Hill, you're not personally taking a position as to whether there were or were not any threats, correct?

**A. Correct.**

**Q.** And you haven't heard any venue witness testify about threats in 2022, 2023, 2024, 2025, or 2026, correct?

**A. That's fair.**

*Trial Tr. 2245:1-7 (Hill)*

DDX-24.81