Q57LLivC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,
*et al.*,

                    Plaintiffs,

           v.                          24 CV 3973 (AS)

LIVE NATION ENTERTAINMENT,
INC., *et al.*,

                                       Conference

                    Defendants.

------------------------------x
                                       New York, N.Y.
                                       May 7, 2026
                                       11:00 a.m.
Before:
                    HON. ARUN SUBRAMANIAN,

                                       District Judge
                         APPEARANCES


UNITED STATES DEPARTMENT OF JUSTICE
      Attorneys for Plaintiff United States of America
BY:  ANDREW KLINE
      DAVID TESLICKO

WINSTON & STRAWN LLP
      Attorneys for Plaintiffs
BY:  JEANIFER PARSIGIAN

NEW YORK STATE ATTORNEY GENERAL
      Attorneys for Plaintiff State of New York
BY:  ELINOR HOFFMANN
      JONATHAN HENRY HATCH

OFFICE OF THE ATTORNEY GENERAL - DISTRICT OF COLUMBIA
      Attorneys for Plaintiff District of Columbia
BY:  ADAM GITLIN

LATHAM & WATKINS LLP
      Attorneys for Defendants
BY:  ANDREW GASS
      ROBIN L. GUSHMAN

Q57LLivC

APPEARANCES (Continued)

SULLIVAN & CROMWELL LLP
        Settlement Counsel for Defendants
BY:   JAMES McDONALD

Also Present:   Dan Wall, Live Nation

Q57LLivC

THE COURT:  All right.  Welcome back everybody.  Let's have appearances, starting with the plaintiffs.

MR. HATCH:  Good afternoon, your Honor.  Jonathan Hatch for the State of New York and the Plaintiff States.

MS. PARSIGIAN:  Good morning, your Honor.  Jeanifer Parsigian for the State of New York and the Plaintiff States.

I have to report Mr. Kessler's regrets for not being here.  He's had an additional medical procedure following up on what happened during the trial, and he wanted me to convey his apologies.  He is anxious to resume his duties and expects to soon.

THE COURT:  All right.  Very good.  We wish him a speedy return.

MS. PARSIGIAN:  Thank you.

MR. GITLIN:  Good morning, your Honor.  Adam Gitlin for the District of Columbia and Plaintiff States.

MS. HOFFMANN:  Good morning, your Honor.  Elinor Hoffmann for the State of New York and Plaintiff States.

THE COURT:  Good morning.  Sorry about the microphone.  It's even worse in this courtroom.

MR. KLINE:  Good morning, your Honor.  Andrew Kline for the United States.

MR. TESLICKO:  Good morning, your Honor.  David Teslicko for the United States.

THE COURT:  And for the defendants.

Q57LLivC

MR. GASS:  Good morning, your Honor.  Andy Gass for the defendants.  And I have similar apologies from Mr. Marriott and Mr. Pfeiffer who can't be here, respectively due to family medical issues and an insurmountable travel challenge.

THE COURT:  Very good.  Not very good that they are not here.

MS. GUSHMAN:  Good morning, your Honor.  Robin Gushman for Defendants.

MR. WALL:  Good morning, your Honor.  Dan Wall from Live Nation.

MR. MCDONALD:  Your Honor, James McDonald for the defendants.

THE COURT:  Very good.  So, let's run through these issues.  First of all, thank you, everyone, for being here in person.  A lot of what we are going to be talking about is scheduling, but it's just easier to do it with everybody here.  So, I do understand the transportation challenges for everybody to assemble like this, and I appreciate it.  It makes it much easier on the Court.

First as to the schedule for Rule 50 and Rule 59 briefing, we have covered and approved the schedule proposed by the parties.  We will set a hearing for July 30, 2026 at 11:00 a.m.  Same thing.  If that poses a difficulty for either side.  Just let me know, and with this much lead time we can certainly reschedule that if there is a need to.

Q57LLivC

And just for context, that puts the timing of -- the anticipated timing -- just so I am not constraining myself -- for a decision on those motions on the outside into July or August.  So, when we are thinking about it, that's when we would be thinking about a decision if we had a hearing on July 30.

Next, moving to the Tunney Act, the United States proposes that it have everything finalized and out for notice and comment, which would, Mr. Kline, I think, based on the letter, put the ready-for-decision date around mid September. Is that right?

MR. KLINE:  Yes, that's right, your Honor.

THE COURT:  OK.  So then if we are thinking about that and the general timing, we are thinking September, October, generally speaking.  Could be later, but that's what we would be thinking about, right?

MR. KLINE:  Yes, that's right.  We endeavor to move quickly, but there are some things outside of our control as well.

THE COURT:  All right.  Very good.

So then we have the remedies proceeding.  So the first question I have for the plaintiffs is, there is a reference in the letter to fact discovery relating to the remedies proceeding.  So, what are you talking about?

MR. HATCH:  Yes, your Honor.  So we would anticipate,

Q57LLivC

in support of our proposed remedies, taking discovery to establish mainly what is supporting our anticipated expert opinions about proposed remedies, whether it's divestiture, whether it is behavioral relief, everything else.

Certainly, we need to update some data that was taken during fact discovery for the liability phase.  And we also think some testimony is appropriate in exploring what -- potential remedies.  For example, in -- the term sheet that we understand is going to lead to a proposed final judgment, there are references to an API that would be run by Ticketmaster but would allow other ticketers to interface with various venues' ticketing systems.  That's an example we would want to understand what's contemplated because, although we don't believe we are limited in any way by what remedies the Department of Justice and those six states have agreed to with Defendants, we want to understand how it operates in proposing remedies to the Court for ongoing conduct.

THE COURT:  Meaning that, accepting the Defendants' submission that the settlement with the United States is a baseline, you would want to understand what that baseline is with some greater detail?

MR. HATCH:  Baseline or, I would put it, it's out there and it's conduct the parties are intending to engage in, we at least need to understand how that would impact any proposed remedies we are going to pursue.  Yes, your Honor.

Q57LLivC

THE COURT:  All right.  But you are not anticipating fact discovery of the kind and degree that we had during the liability phase of this case?  It's something that's far more limited, fair?

MR. HATCH:  It certainly is more limited both, I think, in the amount and in the topics we pursue.  Yes, your Honor.

THE COURT:  All right.  As to the Tunney Act, Mr. Gass, are you speaking on behalf of the defendants?

MR. GASS:  I will, your Honor.

THE COURT:  All right.  In the letter, it says, once approved, the final judgment between Defendants and the Department of Justice will establish a binding baseline of equitable relief.  I am just trying to understand what that means.  So, let's say that there is a term -- let's say we have the remedies phase, and then as part of that there is an order that has some terms that are conflicting with the settlement between the United States and Live Nation.  What do we do with that conflict?

MR. GASS:  I think the point, your Honor, is that in order to sensibly and lawfully craft a remedy here, one needs to take account of the competitive conditions at the time the order is entered.  We know that from the Google search case, among others.  So, in order to be able to craft a remedy, the Court needs to know, are we actually going to be in the world

Q57LLivC

contemplated by the settlement between the United States and Defendants or not.

Now, we think it's a pretty likely outcome that the Court will look at the Tunney Act proceeding and say, of course, this is in the public interest; let's move on. The point, though, is the Court would then need to say, OK, this is going to be how the defendants are going to be comporting themselves going forward, how the industry is going to look going forward. In light of that, what's an appropriate remedy for the claims that have --

THE COURT: I get that. I am saying -- OK. So, one term from the term sheet that I recall is that there is a monitor, and that monitor is the same monitor who oversaw the consent decrees. So, let's just say that as part of the remedies phase, I say, well, I like the idea of a monitor, but it should be someone different. I can do that, right?

MR. GASS: Sure.

THE COURT: OK. So terms can conflict between the remedies order and the settlement between United States, even if I have approved it, right?

MR. GASS: I agree with that.

THE COURT: All right. That's just what I wanted to figure out.

All right. Now, moving to the defendants' proposed schedule in terms of the remedies phase. And you might have it

Q57LLivC

in front of you.  It's on the next-to-the-last page.  So, you had proposed a framework of the relief that the plaintiffs would be seeking, and then there is a period of fact discovery, and then there is opening expert reports.  And I largely agree with the sequential nature of the proceeding.  I think that makes sense, given that Plaintiffs have the burden here.

My question for you is, why do you need the proposed framework?  Because I take it that what the plaintiffs are saying is that they need this fact discovery and they need their experts to look at things so they can say what the framework should be, and because of the sequential nature of what you have proposed, they would be able to do that in their opening expert reports.

Like, what I am envisioning is that the framework would be in their expert reports, with whatever expert they have, saying that, here is the proposed framework, and this is justified and meets the standard for the following reasons, based on the discovery and everything else that's come here.  It's a slight tweak.  It's just -- it seems, perhaps, of not really great use to have the plaintiff say, here is what we are going to seek, before they have gone to discovery and then sought the advice of their experts to figure out what the remedy -- it might change, things like that.

MR. GASS:  Let me first make sure I understand what the Court is contemplating here.  So, the idea would be, after

Q57LLivC

the Tunney Act proceeding has been completed, then we embark on a phase of fact discovery.  And the question is --

THE COURT:  I didn't say that.  Just taking the briefing schedule that you have proposed, which is different than -- or the discovery and briefing schedule with respect to remedies that you have proposed, which is different -- even if you just forget about the timing and the sequencing, just in terms of the schedule, you have proposed something different than the plaintiffs that has the plaintiffs going first --

MR. GASS:  Yes.

THE COURT:  -- and Defendants responding to it, which I agree with, OK.  I am just saying that, why do you need the initial framework being proposed?  Is that necessary?  I am just trying to understand that.

MR. GASS:  I believe it is, your Honor, because the idea is, we need to know what we are taking discovery into. They should establish a baseline:  Here are the things we are looking to pursue.  That doesn't mean that they can never change, they could never say, We learned in discovery something different and now we are going to modify it to some degree.  Of course, that would be permissible.  The idea is to have a chart --

THE COURT:  Some idea.

MR. GASS:  Exactly.  I will just add, your Honor, I think one of the critical pieces here is that, irrespective of

Q57LLivC

the sequencing between -- and I know this is not the question your Honor posed -- but irrespective of the sequencing between the remedies phase and the Tunney Act, one clear thing, in our view, that's critical is that any of that discovery into remedies has to follow the Court's resolution of the post-trial motions.  It doesn't make any sense to do that before the -- we can get to that later.

THE COURT:  Right.  And so going back to the proposed framework, you are saying, look, they can change it; we just need some idea of what they are asking for?

MR. GASS:  Correct.

THE COURT:  OK.  And so, Mr. Hatch, what's wrong with that?  You can probably give them that proposed framework right now.

MR. HATCH:  In a sense, your Honor, they have the framework in that the complaint talks about our proposed remedies in some detail.  I don't think it's going to be surprising, the potential remedies we are seeking here.  And I think the Court was correct when it said part of the reason we want to take the discovery and consult with our experts and have expert opinions proffered is so we know what's appropriate and realistic.

Our proposal had us laying out the framework afterwards just because after opening expert reports, whether it's according to our sequence or that proposed by the

Q57LLivC

defendants, it's possible that as a result of the conflicting expert opinions, assuming all the experts don't agree, that we are going to shift some things a little bit.  So at a certain point, we need to lay out a request to the Court.  Our thinking was we would do that in the briefing that follows discovery and say, Here is the target.  Here is what we want.

So, we think there is enough of a framework in the existing complaint, which is why we laid it out that way.  But I think we all agree whatever -- whether it's the complaint or whether it's something else, it may shift a little bit over the course of discovery, which is appropriate.

THE COURT:  OK.  So, I think it's no prejudice to the plaintiffs to tell the defendants in advance, like, here is what we are looking for, and then you can put in all the caveats that you put into, like, RFP responses and everything else, like, Reserving all rights, and, We are going to change it, We might change it, everything like that.  But they just want to know before you get into discovery what it is you are contemplating.

MR. HATCH:  We can do that, your Honor.  At a certain point, perhaps caveats swallow the proposal, but we will try to avoid that.

THE COURT:  Try to avoid that.

And, Mr. Gass, one other question on your proposal, which is, you have no briefing, but you do have a schedule for

Q57LLivC

proposed final judgments, and my assumption is that that's the briefing.

MR. GASS: Correct.

THE COURT: OK. All right. So now covering -- just going back to the beginning, Rule 50, 59, I agree that should come first, and we are going to fast track getting a decision on those. So, my hope is that we would have a decision, at the latest, by July or August, OK.

As to the Tunney Act, United States should move forward, and the hope there is that we would have a hearing and resolution of that in September or October of this year.

Now, as to the remedies proceeding. So, if we use the defendants' framework, which we have now kind of resolved we are going to use the defendants' framework, on that understanding, just count up the days. That's close to 300 days. So even if we started right now, we are talking about a remedies hearing, like, not even the resolution, but just the remedies hearing, in February of next year, which is a long time. And so the question is, why wouldn't we get started with that process now?

And so, as I understand the defendants' position, they are saying, well, first of all, don't we need a resolution on the Rule 50 and 59 motions? And that's fair in terms of the discovery burden. It's not -- I guess I am not seeing why it matters for what you had proposed in the remedies phase

because, let's say you win on everything, OK. Well, then there is nothing to do in the remedies phase. So you had the burden of some discovery, but that's it. It's over. And let's say you win on the amphitheater market. OK. Well, then it's very easy to understand what your position would be in the remedies phase on the amphitheater market. Same thing goes for the ticketing market. Let's say you win there. Very easy to understand what your position is going to be.

And, generally speaking, it seems to me that it would be pretty -- I mean, I am not holding you to anything, but isn't it kind of obvious, like, what you are going to say in the remedies proceeding because you have the settlement with the United States? And you are going to say, well, one, we should win, and you don't need a remedy here because we are not doing anything wrong. But even if we were doing something wrong, you know, then the proper remedy is the one that we took all this time to negotiate with the United States on, and that actually meets all of the, kind of, requirements here, and you don't need anything else.

And so that is why I am thinking, like, why do we need to sequence this in a way that, instead of February 2027, we would be thinking about something more like February 2028 or even later?

So, Mr. Gass. And I am happy to explain --

MR. GASS: I think I missed that last part. But let

Q57LLivC

me give the Court an example of the kind of consideration that we think makes it imperative to wait for the Court's ruling on the 50 and 59 motions before we start the remedies litigation, right.

So, take exclusivity, for example.  So, there are -- we certainly hope that the Court will rule that the exclusive contracts are perfectly lawful.  I am not 100 percent confident that that is how the Court is going to go.  And there are a number of different bases on which the Court could ultimately sustain the verdict.

THE COURT:  And just to stop you there, just so we are on the same page.  Let's say I agree with you.  That means the ticketing market is gone, right?  What other -- how else would the plaintiff sustain their claim?

MR. GASS:  Right.  But imagine that the Court says, No, I have a theory by which that claim survives, and particularly -- bear with me here.  I know the Court will remember this.  But the theory that in this hypothesis the Court embraces is, even though the evidence shows that the venues want exclusivity, I think the contracts that result are too long.  And so it's the duration of the contracts that makes the conduct unlawful.

So, in that circumstance, everyone's theory of what the remedies should be and what the discovery should be that warrants interrogation of the remedy would be framed by what

Q57LLivC

the Court said was unlawful about the contracts.  And we can't know ex ante what the Court is going to do on an issue like that.  So the idea is, at the very least, we should wait until that July/August time frame to embark on the discovery phase that's contemplated in both sides' proposals here.  As long as we are in July/August, I would submit it kind of makes sense to wait until September/October, and just get through the Tunney Act.  But that's less critical than just having the Court's sense of what the substantive legal rulings are.

And I will just kind of note, your Honor, that we are, to some degree, in uncharted territory here because we haven't been able to find an example of a remedies phase that comes after a jury verdict, because almost all of the time in cases like this it's a bench trial.  With that said, if you look at sort of what goes on in all the other analogous cases, what you see is, of course, you know, the remedies phase doesn't start until after there's been a definitive resolution of liability with the Court's explanation of what it is that was unlawful about the conduct, because you need that to sensibly do remedies.

THE COURT:  All right.  And what's the plaintiffs' response?

MR. HATCH:  So, a couple responses, your Honor.  First of all, we think we have the jury verdict.  And I won't belabor the point, but obviously we oppose any post-trial motions.  We

Q57LLivC

think the evidence is going to substantially support every part of the jury verdict. It's also very common to take discovery, especially fact discovery, while motions to dismiss claims are pending. That's not unusual.

We also think the problem is that Defendants' proposal ignores the fact that there may be discovery related to the Tunney Act proceeding, the efficiencies that can come from taking both. I don't know specifically what or if the States are going to take, but other parties made applications for fact discovery, and the Tunney Act proceeding could then be coordinated. And we don't want to be in a position of having to do things twice. We don't think the defendants should be in the position of doing things twice. At least for fact discovery, we think it makes sense to proceed now, and then we will get the Court's ruling.

We did propose that expert reports would go after. I think for shaping expert opinions, maybe that's more critical. But we certainly think it makes sense to use the available time now to take appropriate fact discovery from the remedies phase, and then if certain discovery becomes unnecessary as a result of the Court's rulings afterwards, that happens all the time in litigation.

THE COURT: All right. But what's your response to Mr. Gass's point that there may be ways in which the resolution of the motions affect the issues that would be, kind of, at the

Q57LLivC

fore during the remedies phase, and that's a reason why fact discovery should come later?

MR. HATCH:  I am not sure that fact discovery breaks down that cleanly.  I am willing to concede that expert opinions may depend more on that, which is why we proposed it the way we did.  But I think generally, fact discovery about what they propose doing in the proposed final judgment, and also options that we might propose for our own remedies, generally the factual background is going to be important to a broad range of those.

And again, I will go back.  There is always a risk in ordinary litigation for fact discovery that as a result of a motion to dismiss that's pending or a motion for summary judgment, certain claims are going to be dismissed but, you know, the parties move forward and do that.  And, again, we are focused on fact discovery here, so we think it's appropriate that we move ahead.  And we also want to avoid doing this in February 2028 or later, especially -- the Tunney Act proceeding may be quick and efficient here.  It may be that other parties have comments or seek to intervene, and maybe that as a result, the Department of Justice and Defendants seek to revise aspects of the proposed final judgment, which would trigger another common period.  That certainly happens.  We just don't know. And while we can all hope that the Tunney Act proceeding moves forward swiftly and efficiently, we just don't know what's

Q57LLivC

going to happen.  We think pausing this indefinitely could result in the loss of even more time.

THE COURT:  All right.  So, generally speaking -- so, Mr. Gass, I hear what you are saying about the potential for what happens as a result of the decisions to affect how discovery would proceed.  I am a little skeptical that it really will, because I think that regardless -- again, you might win, OK, in which case, it's over.  At that point, the prejudice to you and your clients would have been having to endure further discovery when the case is going to end.  I totally get that, and I want to think about that.  But other than that, even if there is some, kind of, nuanced ruling that would affect, kind of, the nature of the violation, I still think that types of remedies the plaintiffs would seek would largely be the same.

You are trying to speak, so maybe I will let you respond.

MR. GASS:  Yeah.  So, on that point -- and then there is a, sort of, related point on the timing of all of this.  So, I think we resolved earlier, or came close to resolving the way that this is going to start is that the States are going to give us a framework for what their proposed remedy is.  And how in the world can they do that before they have the benefit of the Court's ruling on the post-trial motions?

And, again, whether the issue is exclusivity or one of

Q57LLivC

the other relatively subtle issues, how could they possibly sensibly propose a remedy without the benefit of the Court's reasoning about what about the conduct justifies the jury verdict?

THE COURT:  I think that, like, we had motions for summary judgment and we had the jury verdict, and so I think -- I am not sure that the plaintiffs' proposal is going to shift if they prevail on the motions as to both asserted markets. Right?

MR. GASS:  Again, this isn't the only example, but just to use the one that we discussed previously, imagine that they come out of the gate swinging and saying, you know, our proposed remedy, among others, is that Ticketmaster is to be enjoined from entering exclusive contracts with venues, period, full stop, irrespective of the duration.  Then we do a bunch of discovery about the feasibility of that and how would it even work if the venues are the ones who want it.

And then in August we get a ruling from the Court that says, well, it's not exclusivity vel non that is the problem; it's, sort of, something about it.  It was, you know, the venues were coerced to choose Ticketmaster, or it's the duration of the contract, or something.  Now the States have to go back and completely revisit -- I would imagine they would have no choice but to revisit what is the legal solution for the problem that the Court will ultimately have identified.  We

have now done, whatever it is, 45, 60 days worth of discovery without the benefit of the whole point of fronting the proposed framework, which is, you know what you are --

THE COURT:  I am not seeing that because it's not a legal remedy; it's an equitable remedy, and it focuses on the practicalities of the situation.  And to give an example, your clients struck a deal with the United States that has various parameters before any of this was finally resolved, and so you certainly could do that.

And to the extent that the plaintiffs were not seeking divestiture, right, and were seeking a remedy that was along the lines of what you are talking about in terms of limits on exclusivity, I think they would do that regardless of what -- the nature of the ruling, on the view that they would prevail on all these markets because, again, if you win on any of these markets, then that part of the proposed relief is out of the case, right.  So if you win the amphitheater market and the plaintiffs says you should divest all of the amphitheaters, well, guess what.  That's gone.  And then if you win on the exclusivity, that part of it is gone.

So I don't know that there is a huge issue in terms of the substance, but I do think -- and I think this is the stronger argument -- is that having to do this discovery while the motions are pending is a potential issue.  And I think your best point is, look, we are talking about a few months here,

Q57LLivC

and so, why doesn't it make sense to put this off?  And for that -- for me to really understand what we are talking about here, what may make sense is to have the plaintiffs provide their framework and the discovery that they would seek, and let everyone know what it is they are seeking.  Then I can figure out the schedule from that point moving forward.

So we have come 90 percent of the way, all right.  We know what we are going to do, and the only outstanding question is when the discovery will actually take off.  Now, the plaintiffs have not told the Court, and you don't know, what exactly they are seeking in discovery.

And so, Mr. Hatch, why doesn't it make sense for the plaintiffs to put in a filing as to, right now, what you anticipate the remedies are that you would seek in the remedies phase and what the discovery would be as to either the remedies phase or the Tunney Act proceeding?  And then if I see that, and if it's not that much, right, then it may be that it makes sense to move forward with that.  If it's a lot, then Mr. Gass's point is, I think, well taken that it might make sense to fast track the post-trial motions, and then at that point perhaps start fact discovery after the resolution of those motions.

Is there anything wrong with that approach?

MR. HATCH:  I don't think there is anything wrong with that approach.  We will obviously consult among the States to

Q57LLivC

make sure -- obviously, the defendants deserve to hear our unified position on what the proposed remedies are and what the discovery is going to be.  So I don't think we will file that tomorrow, but we can promptly file the proposed remedies and what discovery we think is related.

THE COURT:  All right.  How much time do you need?

MS. PARSIGIAN:  Your Honor, we hope to have a unified proposal -- I will just caveat that -- from all the States but don't want to discount the possibility that we may not.  If we could have 14 days to resolve that, we think that would be sufficient.

THE COURT:  That's fine.  So 14 days we will have the proposal and the proposal as to discovery, and then we will put in a schedule that will govern all these issues.

And, Mr. Gass, I hear what you are saying in terms of -- I am going to think about it because I want to think about ways in which the substance of the proposed remedies would be modified, even if not eliminated, based on the nature of the rulings.  And I have, because of the way that I forced you to brief the Rule 58 motion, I have the back and forth in one single document, so I think that would be helpful for me to understand that.

MR. GASS:  Invited, your Honor, not forced.

Just on the idea of the, sort of -- if the Court would prefer, we can certainly compress some of the outer steps of

Q57LLivC

the process.  If you think it's too long, some of the responsive expert reports, or whatever, we can make up some time in that way.

THE COURT:  I don't think you really can.  I am looking at the schedule, and it's pretty brisk.  Because the opening expert report, especially if the plaintiffs are seeking divestiture, or something of that nature, I assume is going to be pretty hefty.  So to have to respond in less than 60 days, that seems pretty -- seems like a big ask.  So I don't know that you can really compress those.  But then again, I don't know what the plaintiffs are asking for.  Neither do you, right?

MR. GASS:  That's fine.  Even the discovery period itself.  You know, the point is, we can commit to move expeditiously through whatever it is.

THE COURT:  All right.  So this is very helpful. Thank you.

MR. HATCH:  I was just going to say, I have certain minor comments.  If we were moving in a world in which we are going to use a version of the defendants' schedule, I have a few minor comments, at the Court's convenience.

Number one is, we had put in our response.  I agree, as a practical matter, if we were going to do four rounds of expert reports, the spacing here probably is about right.  They had opening expert reports due seven days after the conclusion

Q57LLivC

of fact discovery.  That strikes us as fairly aggressive.  We had actually asked for 45 days in our letter so we have time to fully assimilate whatever fact discovery happens and build into the expert reports which, again, as the Court noted, depending on the remedy, may be somewhat extensive.

THE COURT:  Thirty days.

MR. HATCH:  We can make that work, your Honor.

THE COURT:  OK.

MR. HATCH:  And again, as the Court is aware, we had proposed simultaneous exchange of expert reports according to a different schedule, but we will, of course, be guided by the Court.

THE COURT:  I don't think simultaneous is going to work.  I think your opening expert report is going to say, here is what we asked for and here is why it makes sense, and the defendants need a chance to respond to that.

MR. HATCH:  Fine.  Fair enough, your Honor.

THE COURT:  Mr. Kline.

MR. KLINE:  I just wanted to clarify with respect to the Tunney Act schedule.  I think I heard your Honor reference the plaintiffs indicating what discovery they would seek under the Tunney Act.  As your Honor is thinking about the schedule, the Tunney Act, like, there is a process for the Court to see the public record that's generated through comments, and then decide what additional information the Court needs.  To the

Q57LLivC

extent the States or anyone else is going to be seeking some sort of additional discovery beyond that, we think it's not ripe and it will not be ripe in the near term, in terms of whether to brief -- what they might look for and when and whether that's appropriate or not.

So, we can certainly file an opposition if they are going to be seeking discovery under that process, but I wasn't entirely sure if you were -- if your Honor was envisioning making a ruling on actually allowing some type of discovery at this phase.

THE COURT:  You see me shaking my head.  The answer is no.  And I had the same question as to what kind of discovery would be authorized in this posture under Section 16(f), and I think what you are telling me, which I think is right, is that after the notice-and-comment period, the statute broadly, I think, envisions that courts can take the steps they need to in order to meet the requirements of the statute, but there is not the authorization of a non-discovery in the way the plaintiffs might be contemplating, and that is not my understanding of how the statute operates, which I think is what you are saying. But I do want to see what it is the plaintiffs have envisioned in terms of discovery, and then we can address it if we need to at that point.

And I think the real suggestion, by the way, from the States is that the discovery that they would take as to the

Q57LLivC

remedies phase might be relevant to the Tunney Act proceeding because the type of discovery that Mr. Hatch was talking about is sort of understanding what the settlement means, like, those types of issues.  So I think he is just saying that if we took discovery on the remedies phase, it might actually be relevant to the Court's understanding of what the settlement means in real terms in the Tunney Act proceeding.  Is that fair?

MR. HATCH:  That's right, your Honor.  I can give two examples right now.  One, as I mentioned, the API.  That's relevant to the remedies we are seeking, but it is also going to go to the proposed final judgment to some extent.  It's dual function.  Similarly, if we were to take discovery on what the meaning of abrogating exclusive booking in certain amphitheaters is proposed in the term sheet we have seen, right, that's going to have a dual function too.

THE COURT:  Yeah.  And I imagine Mr. Kline's response would be, well, that's the kind of thing that will be fleshed out in the context of the notice-and-comment proceeding and everything else.  Right?  Not to put words in your mouth.

MR. KLINE:  I think that's right, your Honor.  The United States, we have our process under the Tunney Act.  The litigating states will have their process.  And to the extent they get discovery that's relevant to both that's, sort of, not our primary concern here under the Tunney Act, we will generate a record through the competitive impact statement, the public

Q57LLivC

comment process, the response to comments, and all of that, and that's the foundational record for the Tunney Act.  Then your Honor will have the materials and have 16(f) to consider as well.

THE COURT:  Good.  So you understand.  We are on the same page, as I understand the United States' point, as to discovery related to the Tunney Act proceeding and the unavailability of that kind of relief from the United States' perspective.  So I am certainly not going to endorse a letter saying you can take discovery under the Tunney Act without hearing from the United States first.

MR. KLINE:  Thank you, your Honor.

THE COURT:  Very good.  So, the last issue I think has to do with requiring, I think the way I said it was, someone involved in settlement discussions to be here.  And so I see Ms. Hoffman.  I see Mr. McDonald here.  So, thank you for coming.

Whoever the spokesperson is, without telling me any of the substance, is there anything happening?

And, by the way, I am asking this for a real purpose related to the parties' letter, which is, we are going to have this Tunney Act proceeding, and then at some point I am going to have to approve the State settlements under Section 15(c).  And without knowing what it is that you may have been discussing in terms of any settlement with the States, if it

has to do with some kind of modification or some kind of forward-looking relief, then the question comes to mind whether that would implicate either the Tunney Act proceeding or the 15(c) approval stage.

So that's why I am thinking about it, because if there was any possibility of any kind of settlement in the near term or in the next month or two, then I am thinking about how to make things more efficient, and that's the only reason why I am asking.

So with that, anybody wish to speak?  Ms. Hoffman.

MS. HOFFMANN:  Yes, your Honor.  So, your Honor, as far as the States are concerned -- and this is the collective view of the settlement committee, which includes a number of States, some of whom are here -- right now we are entirely laser focused on the remedies proceeding.  There are no ongoing settlement discussions.  And while we would always, of course, welcome a reasonable proposal and consider one, we are just focused on remedies right now.

THE COURT:  OK.  And if you were to get from the defendants, you know, an offer you couldn't refuse, you would certainly respond to that, right?

MS. HOFFMANN:  We would.

THE COURT:  Let me ask it this way:  If the -- and this is what -- I tell people this in every single case, so I am literally telling you what I tell people in every case.

Q57LLivC

It's my job to try to just foster a resolution.

If you were to get a renewed good faith proposal from the defendants that was mindful of the verdict in this case, but also mindful of all the other risks and uncertainties in the case, would you prevail on your cohorts and the settlement committee and everyone else to come back with your own good faith response?  That is whatever you want it to be.  And again, I have no idea what anyone has proposed or responded to.

But I am saying, if they make a renewed proposal, would you prevail on people to say, we will respond with something in good faith -- again, understanding the risks and uncertainties that Mr. Gass and everyone has mentioned in terms of post-trial motions and everything else -- just to see if there is some chance for settlement?  Is that something you would be able to do?

MS. HOFFMANN:  Yes, your Honor, but the position that we are in now was not the position -- is not the same as the position we were on --

THE COURT:  That's where I started.  I said, if you get a good faith proposal, however the defendants see it -- they may see it different from you, OK.  But mindful of the current circumstances, and if they give you a proposal that's mindful of the current circumstances, then you are not going to say, well, we disagree with that, and hang up the phone?  You will, based on your understanding of the current circumstances,

respond with something in good faith, just to see if there is something to be discussed?  And there may be nothing to be discussed after that, but at least so -- because I am going to talk to Mr. McDonald next -- and just so if I am asking him to do something, he knows he is going to get something in response.  That's the only reason I am asking you this.

MS. HOFFMANN:  Your Honor, I will not say never or absolutely not, but --

THE COURT:  You said yes first.

MS. HOFFMANN:  We do believe, though, that any settlement discussion now would be premature and not very productive.

THE COURT:  You will do it -- if they give you something, you will respond, fair?  It can be whatever you want.

MS. HOFFMANN:  We may respond with "No."  I mean, I think that from the States' perspective, we would like to have remedies discovery, because what we learned during the last go-around with settlement is that we need to know a lot more about the market and the industry and Live Nation before we can really assess whether any remedy short of divestiture would be effective.  And we don't know enough, and we don't have the same kind of time pressure we had there.  We are not in the same position, so I can't say that we won't respond with some proposal, but I think the more likely response is that this is

Q57LLivC

premature.

THE COURT:  All right.  Thank you, Ms. Hoffman.

Mr. McDonald, I am not going to ask you to put yourself out there and your clients out there by making a proposal if Ms. Hoffman is saying -- and, you know, I think being candid -- that you might not get a response.

So, is there anything else that you would like to add at this point?

MR. MCDONALD:  I don't think so, your Honor.  As the Court knows, we have been -- we have been working tirelessly on trying to get a resolution here.  We were able to achieve a resolution with the Department of Justice.  We worked very hard through the trial to try to achieve a resolution with the States.  We continue to be open and willing to have discussions, but I think the indication that we received from the States is similar to the one that Ms. Hoffman provided the Court today, which is that from their perspective, discussions would be premature at this point.

I do think that as these things progress, things change, it may well be that there are different points in time that are relevant to bring the parties to the table, including, for example, after the Court decides the pending motions.  And so we remain open and willing to have discussions with the States at anytime, at anyplace, but I think hearing what Ms. Hoffman said today is consistent with what we have been

Q57LLivC

hearing over the past several days, which is that from the States' perspective, it may be premature.

THE COURT:  OK.  Understood.  And if you need any further assistance along these lines, you can let me know or you can let Judge Netburn know.  All right.

MS. HOFFMANN:  Your Honor, I want to say that we greatly appreciate your Honor's assistance and Judge Netburn's assistance.

THE COURT:  Of course.  We are here to help.

With that, Mr. Hatch, anything else before we adjourn for today?

MR. HATCH:  Nothing from Plaintiffs, your Honor.

THE COURT:  All right.  Mr. Gass, anything from the defendants?

MR. GASS:  No, your Honor.

THE COURT:  All right.  So, next steps.  In 14 days -- first of all, we will have an order coming out of this hearing with some of the things that I think were agreed upon.  Then in 14 days we will get a submission from the plaintiffs indicating their framework of the remedies and their proposal as to fact discovery.  After that, we will put in an actual schedule for everything in this case and so we will be ready to go with everything else.  And we have -- the next time I will, I think, be seeing you will be July 30, 2026 at 11:00 a.m.

If there is anything else, you know where to find us.

Q57LLivC

With that, thank you so much for coming in.  I really appreciate it.  Thank you, Ms. Hoffman and Mr. McDonald as well.

(Adjourned)