

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

May 24, 2026

Hon. Arun Subramanian
US District Court, SDNY
500 Pearl Street Courtroom 23B
New York, NY 10007

cc: Pro Se Office
Attn: Mr. Bercato

cc: (1) Hon. Owen Kendler US Dept. of Justice Antitrust Division
(2) US Court of Appeals for the Federal Circuit - Case No. 25-1954
(3) DCD Case No. 25cv3257 (LLA)(JMC)
(4) SDNY Pro Se Unit Attn: Mr. Burcato
(5) Hon. Brenda Sannes, Chief Judge NYND
(7) Hon. Laura Taylor Swain, Administrative Judge NYSD
(8) Hon. Debra Ann Livingston, Chief Judge Second Circuit
(9) Hon. Congresswoman Bonnie Watson Coleman, Mercer County, NJ
Hon. Amy Klobuchar, US Senator, D MN, Senate Judiciary Committee
Hon. Mike Lee, US Senator, R UT, Senate Judiciary Committee

**RE:  *US v. Live Nation Entertainment, Inc.*, 24cv3973**
**Petitioner Amy Weissbrod-Gurvey's Motion to Intervene as of**
**Right under Rule 24 as a Party Plaintiff**

1

May 24, 2026

Dear Judge Subramanian:

This letter argues unanimous US Supreme Court Sherman and Clayton Act antitrust precedents in support of Petitioner's Amy Weissbrod-Gurvey's petition in chief to intervene as of right as a party plaintiff in her own name. Petitioner is not admitted to practice law in New York and only in California. Petitioner declares to the truth of the following statements and as to those statements made upon information and belief, Petitioner believes them to be true based on the files maintained by the US District Court Southern District of NY, the State of NY, the Northern District of New York, the NY Court of Claims, and the US Court of Appeals for the Federal Circuit.

Petitioner is the sole named US patentee of standard essential patents assigned to [other] petitioner LIVE-Fi® Technology Holdings (LFTH) and the registered copyright owner of parallel hardware and ticketing overlay source codes. In violation of the Consent Decree and Competitive Impact Statement signed by defendants Live Nation Entertainment (LNE) and Ticketmaster in 2010, defendants deceitfully offered to the Government and the state plaintiffs herein - and behind the court's back on or about March 28, 2026 – Petitioner's intellectual property as a settlement offer.  Eight states and the Government accepted the offer and the court so ordered withdrawal of these parties from the lawsuit.

Petitioner is also a direct purchaser of event tickets through defendant Ticketmaster's website. Yet defendants LNE and Ticketmaster falsely argue that Petitioner and users similarly situated are not their customers, that Petitioner is not a "direct purchaser" and that defendant Ticketmaster's only customers are venues that license its long term ticketing platform***. These allegations defy the US Supreme Court decision in Apple Inc. v. Pepper*, 139 S. Ct. 1527 (2019).** Defendants must be broken up by this court.

In addition, Petitioner is precluded from getting access to the deeper pages of defendant Ticketmaster's website site to order and get additional promotions and benefit related to the ticketed event unless a Term Of Use (TOU) is signed with Ticketmaster releasing all rights to confidential and personal data. If the TOU is not signed, no tickets can be purchased. This demonstrates defendants' contract of adhesion unlawfully tying the right to buy an event ticket with an unfettered right monopolize non-ticketing businesses. In 2010, defendants were so ordered not to withhold ticketing data from companies seeking to conduct non-ticketing businesses and by such acts and requiring execution of a TOU, defendants are also monopolizing the non-ticketing businesses and not sharing the surplus revenues with artists. In the current market, defendants' sell confidential customer data to targeted advertisers.

Petitioner and LFTH own the issued US patents and copyrighted source codes to provide the necessary ticketing overlay platforms to enable non-ticketing businesses. 2010 WL 975408, pp. 8 line 10 (DCD January 25, 2010). Defendants made an express warranty that withholding of ticket data would not occur.

In addition, Petitioner was previously granted *pro hac vice status* to appear as California counsel for interested nonparty LFTH on August 22, 2025 (#638). [1] On March 16, 2026, Petitioner filed an order to show cause seeking that the court vacate a "suspicious" *sua sponte* follow-up order unilaterally revoking without notice, hearing or due process of law Petitioner's *pro hac vice* status to appear for LFTH. The order was entered also on March 16, 2026 immediately after the judge presiding in a separate NYSD infringement lawsuit 24cv2930, Hon. Paul Engelmayer, erroneously found that "*Petitioner had never been granted*

---

[1] NOTE: Petitioner LFTH subsequently moved to be granted intervention as of right under Rule 24, the motion was denied and LFTH's reconsideration motion remains pending since November 2025.

*pro hac vice status by this court"*. Judge Engelmayer order is obviously wrong and spurred investigation.

Results came on March 13, 2026 from two clerks in NYSD Attorney Services Room 250. The officers identified court insider Julie Allsman as the individual unilaterally deleting docket entries in Petitioner's previous patent infringement lawsuit against defendant LNE since at least 2012 without notice, hearing or due process of law and that the Allsman's unlawful docket deletions continued into 2026 demonstrating acts in furtherance of an elaborate LNE-orchestrated conspiracy. Now Petitioner moves to appear as a *pro se* party litigant. [2]

## UPDATED LITIGATION FACTS

On or about March 28, 2026 defendant LNE deceitfully attempted *ex parte* to pass off to a new member of plaintiff US Dept. of Justice, Petitioner's ticketing overlay patents and copyright source codes as its own idea and invention. See Docket #s 1483, 1491. Defendant LNE's motives were abhorrent and in bad faith seeking to again prevent constitutionally mandated hearings based on defendant's ongoing Clayton Act violations, RICO violations, willful patent infringement, unfair competition, all warranting treble damages and punitive damages.

---

[2] In good conscience, the Court should appoint another attorney for Petitioner. Petitioner's previous NYSD attorney Squitieri & Fearon was granted unilateral withdrawal by former judge Barbara S. Jones in 06cv1202 in 2011 without notice, hearing or due process of law and without any legal justification. This left Petitioner as a pro se litigant in 2012 to litigate her willful and contributory infringement claims against defendant LNE and its IP attorneys at Cowan Liebowitz & Latman. In 2013, it was discovered that Petitioner's infringement complaint and Rule 60(b) motion papers against defendant LNE docketed and date stamped on April 22, 2010 had "mysteriously" disappeared from the NYSD docket. On March 13, 2026, court insider Julie Allsman was identified as the federal officer who deleted the infringement complaint, engaging in Bivins constitutional violations as a federal officer.

However, defendant LNE was again successful in its fraudulent plan. Eight of the 39 plaintiff states ultimately approved the secret offer. The court then granted both the Government and these eight states unilateral withdrawal from this lawsuit, in essence authorizing further infringements of Petitioner and LFTH's standard essential ticketing overlay patents and copyrighted software codes while defendant LFTH was not yet made a party or otherwise granted reconsideration of its intervention motion. See Docket #s 1483, 1491.

There is no dispute from the docketed March 16, 2026 *sua sponte* order that the court engaged in *ex parte* communications with Allsman, a non-party, that resulted in the order. Neither LFTH nor Petitioner, LFTH's pro hac vice counsel on March 13, 2026, was given any opportunity to participate in this ex parte session or respond in violation of due process of law. The court's consideration of *ex parte* proffers from a non-party is proscribed by the US Supreme Court and demonstrates extrajudicial bias.

Allsman's motive in contacting the court was to shield herself from liability and prevent further investigation into her long-standing membership role in defendant LNE's conspiracy. Upon belief Allsman joined in or about 2012. On March 13, 2026 Attorney Services clerks identified Allsman as the perpetrator of unilateral docket entry deletions in three NYSD lawsuits 06cv1202, 24cv2930 and this docket 24cv3973. All three lawsuits involve Petitioner's US ticketing management, overlay and sports betting patents and infected the records.

Allsman started her crimes by communicating with defendant LNE's former attorneys in 06cv1202 - J. Richard Supple and Steven Schortgen of Baker Botts. Supple himself was dually serving as a concealed First Dept. attorney disciplinary of counsel.  The conspiracy extended to former judge Barbara Jones as discovered by motions found in her chambers by Deborah Holmes (a former 2d Circuit attorney) and then to Magistrate Henry Pitman in 2013 to prevent patent breach of fiduciary

5

duty and contributory infringement discovery and infringement hearings from being convened. 462 Fed. Appx. 26 (2d Cir. 2012)

Judge Jones mysteriously left the case and the court after Petitioner's infringement complaint had been deleted unilaterally from the docket by Allsman. The deleted complaint was found in the SDNY microfiche files.  Then Magistrate began presiding in 2012 without a supervising judge and without the parties' consent.  No discovery or infringement hearings were allowed by the NYSD since 2013.  The next assigned judge Lorna Schofield followed suit in violation of Fourteenth Amendment of the United States Constitution. No infringement hearings were allowed even after anticipated delayed patents stated in the operative pleading issued from the USPTO through August 2022 (during the lawsuit). *Anza Technology v. Mushkin*, 934 F.3d 1349 (Fed Cir. 2019) An amended complaint was owed under the liberal pleading rules of the 2d Circuit and never granted. *Metzler Investments Gmbh v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir. 2020); citing *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2ed Cir. 2011).

It was later confirmed in 2025 that Allsman also conspired with a NYS Office of Court Administration (OCA) insider, Shawn Kerby, who was caught writing to the Federal Circuit since 2018 not to hear Petitioner's arising under patent appeals to orders of Judge Schofield denying infringement hearings. Judge Schofield also unlawfully ordered that Petitioners pay $10,000 into the NYSD cashier for a special patent master who was never hired. It took three years to get the money refunded. The NYSD pro se senior lawyer in 2016, Robyn Tarnofsky, was a NYS Legal Assistance Group court lawyer, when the State of NY had interests in sync with defendant LNE. More than five NYS agencies including the Port Authority of NY and NJ, local area airport concessions, the NYS Gaming Commission and the NYS Thruway (Interstate toll booths and congestion pricing systems) are using Petitioners' patents and copyrighted software technology without permission.

6

The Federal Circuit transferred three arising under appeals [18-2076, 20-1620, 23-134] to the 2d Circuit that had no jurisdiction to hear appeals and never heard the appeals on the merits. Supremacy Clause Art. VI, Cl. 2. The State of NY has waived Eleventh Amendment immunity from damages for acts by its officers of tortious interference, unjust enrichment and misappropriation of property under Section 8-10 of the Court of Claims Act. But the Court of Claims has since returned as undocketed three of Petitioners' duly filed claims for damages against the State, obliterating all Petitioner's remedies in law and equity. It is now alleged before the Federal Circuit in Case No. 25-1954 that the State of NY has committed a "taking" of Petitioners' patents and copyrights and determination is sought in an order to show cause and mandamus petition. *Florida Prepaid Post Education Expense Board v. College Savings Bank*, 527 US 627 (1999)

There is no dispute from numerous exhibits in Petitioners' 06cv1202 lawsuit and first appeal 09-2185;10-4111- all filed before discovery of Allsman's docket deletion crimes - that defendant LNE has been using Petitioner's patents and copyrighted source codes without permission since 2005, the year that defendant LN was spun off from Clear Channel Entertainment.

Allsman's unilateral deletion of Petitioner's infringement complaint docketed and date stamped on April 22, 2010 has continued into 2026. Allsman deleted docketed entries in 24cv2930 and contacted this court ex parte without party status. The court's *sua sponte* order entered March 16, 2026 revoking Petitioner's pro hac vice status to appear for petitioner LFTH must therefore be immediately vacated. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 *Ex parte Communications*.  See Docket Nos. 1363, 1367, 1483, 1491. However, that motion has nothing to do with the current petition for Petitioner to be granted intervention as a matter of right in her own name.

Please note that in addition to what is iterated above and again "very mysteriously", former Judge Barbara Jones allegedly granted the

7

unilateral withdrawal of Petitioner's previous attorney, Squitieri & Fearon, in September 2010. In 2009, Judge Jones granted defendant LNE's fraudulent Rule 12(b) motion papers that defendant "*had no NY contacts" and could not be forced to answer for infringement of Petitioner's patents in NY*.  Defendants' Rule 12(b) moving papers and exhibits were filed by defense attorneys J. Richard Supple who was a concealed First Dept. attorney grievance committee counsel, and Steven Schortgen of Baker Botts. It is not surprising from his concealed NYS post that Supple got entry to insert forged documents into NYS files. This was found by the First Dept. in an order entered April 21, 2016. Fraudulent affidavits sworn to under oath were appended to defendant's moving papers that defendant LNE had no NY contacts before this court authored by defendant LNE's employees Richard Munieri and Hamlet Newsom. Defendant LNE's former president Stephen Prendergast, helming the Instant Live Concerts, LLC division (now defunct), wrote supporting papers entered on that docket. These fraudulent moving papers constitute actionable tortious interference, and demonstrate continuing acts of unfair competition, and perjury and RICO conspiracy. Directly contra, LNE admitted in 2009 in the merger proceedings before the DC District Court that since 2005, it owned concert venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom and was importing a ticketing system from CTS Eventim of Germany to service these venues since 2007 to compete with Ticketmaster before the merger.

In 2012, after Allsman became a conspiracy member [exact date unknown], she deleted Petitioner's infringement complaint and Rule 60(b) fraud motion from the 06cv1202 docket, engaged in *ex parte* communications with Supple and former Magistrate Pitman and then continued deletions from the case dockets in three lawsuits. The result was that Petitioner got no discovery or hearings on her issued US patents or copyright infringement claims against defendant LNE for 13 years.

In an order entered April 21, 2016, the Appellate Division First Dept. found that Supple entered unserved documents since 2011 into "ordered

concealed" state files. On August 26, 2025 when Petitioner was granted first access to the state archives, the inserted documents were confirmed as forgeries. They affixed the photocopied signature of a dead First Dept. counsel Paul Curran who left the state in 2002 and died of cancer in 2007. Curran's signature had been superimposed onto pre-2000 state letterhead to conceal the names of the participating court officers.  See, 24cv211 (NYND) Docket #s 85, 101, 106, 108, 110. The files were "ordered concealed" by the First Dept. in the same 2016 order identifying Supple as the perpetrator of crimes that were required to be produced in 2011. NY's Judiciary Law Part 1240.6d, 1240.7, 1240.8 All state orders based on these insertions were found nonfinal by the NY Court of Appeals. Ergo, there was never any final judgment that could be collaterally applied by members of this court.

This brief now argues that in light of defendant LNE's additional acts in furtherance of its elaborate conspiratorial enterprise and engaging in deceitful unfair competition behind the court's back in contumacious violation of the Consent Decree and Competitive Impact Judgment, the court's only duty now is to break up defendants Live Nation and Ticketmaster and allow Petitioner party status to participate in continuing hearings before this court.  [3]

## MEMORANDUM OF LAW

It is argued that in January 2010, the merger of defendant Live Nation and Ticketmaster should never have been "so ordered" by the DC District Court and the court's judgment was clear abuse of discretion.

---

[3] Previously in 2013 Allsman engaged in *ex parte* communications with former Magistrate Henry Pitman and defendant LNE former defense attorney J. Richard Supple in Docket No. 06cv1202. For 13 since 2013, Petitioners were denied infringement hearings in violation of the Fourteenth Amendment. Moreover, the first judge Barbara S. Jones granted unilateral withdrawal to petitioner's attorney Squitieri & Fearon in 2011 and Petitioner was never notified.

This because under prevailing antitrust decisions of the US Supreme Court, a monopoly in restraint of trade was all along **intended** by defendants. Moreover, Petitioner is a direct purchaser as such term is defined in US Supreme Court prevailing orders.

Petitioner's opposition to the merger was solicited by plaintiff DOJ itself in 2010 and posted on its Media and Entertainment webpage as "E" in March 2010. The opposition remains posted. This demonstrates that DOJ attorneys opposed the merger even with the court's adoption of strict conditions that defendants contumaciously breached and never complied with from Day 1.

Section 1 of the Sherman Act, 15 USC §2 prohibits actions or conspiracies that monopolize trade or commerce. The Sherman Act is enforceable through civil actions that may be brought by the U.S. Department of Justice, **private parties [Emphasis supplied]**, or state attorneys general, who may seek both damages and injunctive relief. To provide further support for the Sherman Act, Congress passed the Clayton Act, which provides greater specificity as to the types of proscribed antitrust behaviors and also allows for private remedies and treble damages.

In 1911, in *Standard Oil Co. v. United States*, 221 US 1, 78, (1911), the U.S. Supreme Court found that John D. Rockefeller's company, Standard Oil, attempted to control every aspect of the oil business from production to shipping to sales, and was therefore able to engage in price fixing and restrain trade. The Court found that Standard Oil retained "substantial power" over the petroleum market, which was sufficient to amount to a Sherman Act violation. However, the Court did not explicitly state what it meant by "*substantial power*". However, it did determine that the language of the Sherman Act could not be taken literally because every contract, to some extent, is a restraint on trade. Thus, since the early 1900s, the Sherman Act has been interpreted based on concerns about unreasonable restraints on trade. This rule is

frequently referred to as the "rule of reason".[4]

In the 1940s, the five major studios—Paramount Pictures, Loew's, RKO, Warner Brothers, and Twentieth Century-Fox—dominated the film industry through a vertical scheme by not only producing motion pictures, but also owning subsidiaries that distributed and exhibited the films. In 1948, in *United States v. Paramount Pictures, Inc.*, 334 US 141, the US Supreme Court examined this vertical corporate structure that studios used to control the film industry from production to exhibition and found that the practice of granting licenses only to the studios' theaters was an exclusionary practice that stifled competition and violated the Sherman Act The Court found that the studios had a monopoly because they had not only the ability and power to avoid competition, but also <u>the intention to do so</u>.

---

[4] A vertical monopoly occurs when a company dominates an entire supply chain, whereas a horizontal monopoly occurs when a company eliminates competition in its own sector. When determining whether a company is engaged in vertical integration, courts examine: (1) the company's "purpose or intent" at the time it was formed, and (2) the ability or power of the company to pursue this intent and abuse its power. Another factor to be considered, is the degree to which a vertical monopoly exerts leverage on the market within its specific industry. By contrast, horizontal price-fixing occurs when competitors who are on the same market structure level agree to fix or otherwise stabilize prices charged to customers or paid to suppliers.

In 2018, 70 years later, in *Ohio v. American Express*, 138 S. Ct. 2274, 2284 (2018) the U.S. Supreme Court explained the test for determining illegal monopolies under the "rule of reason". The Court noted there were two ways a restraint on trade could be unreasonable – first by being unreasonable per se or by applying the fact-specific test for the "rule of reason". The Court held that only horizontal restraints on trade could be unreasonable per se. However, demonstrating a departure from the standard applied in *Paramount Pictures*, the Court noted that when there is vertical restraint, "a three-step, burden-shifting framework applies" requiring an analysis of whether the restraints are procompetitive or anticompetitive to the applicable market. This alternative framework for vertical restraints has had a chilling effect on small antitrust plaintiffs because it has substantially increased the cost of litigation.

However, another issue or contended barrier for antitrust plaintiffs is standing to sue under the "*direct purchaser*" rule. The rule prohibits parties that are more than one step removed from monopolies from asserting a claim against the monopoly.

In 1968, in *Hanover Shoe, Inc. v. United Shoe Machinery Corp*., 392 US 481, 494 there was a major breakthrough in favor of plaintiffs. **The Supreme Court held that a defendant's liability could not be limited or reduced if a plaintiff purchased a product directly from the monopolist or defendant**. However, later, in 1977, in *Illinois Brick Co. v. Illinois*, 430 US 720, 744  the Supreme Court entered a seemingly contradictory decision that plaintiffs could not state a claim against a monopoly if there was a "middleman" who passed on the additional costs to the plaintiff. The two cases seem to be in alleged conflict.

In vertical integration cases, and in cases where there are modern technology platforms, the existence of a middleman may be difficult to ascertain. Since *Illinois Brick*, however, courts have consistently extended liability to defendants who rely on the passing-on defense and

12

have granted judgments in favor of plaintiffs who were one or more steps removed from the defendant. **This differential is on target with the instant fact pattern because defendant Ticketmaster allows customers to purchase ticketing directly on its webpage.**

In *Hanover Shoe*, the Supreme Court rejected the defendant's passing-on defense and held it could not be used by accused monopolists to circumvent liability. The Court reasoned that allowing a passing-on defense would negatively impact each affected party's ability to recover the amount of damages, which would essentially distribute the monopolies' liability throughout the entire supply chain and therefore leave smaller and smaller amounts for those injured to recover. The Court reasoned that eventually consumers adversely affected would have little to no ability to recover and bringing a suit would be almost impossible. Additionally, the Court addressed the difficult practice of determining the amount of damages to allot to each party throughout the chain of consumers. Consequently, the Court held that the first direct link had to be analyzed to create a more efficient way for courts to rule on similar antitrust cases and aid in the difficult process of awarding damages.

In 2019, in *Apple Inc. v. Pepper*, 139 S. Ct. 1527 the U.S. Supreme Court held that contrary to *Illinois Brick*, **consumers who purchased apps from the Apple App Store were direct purchasers**. In *Apple*, consumers brought a claim that the manufacturer had a monopoly over the smartphone app market. Apple filed a motion to dismiss, arguing that iPhone owners were not direct purchasers under *Illinois Brick*. Although the U.S. District Court for the Northern District of California theoretically agreed with Apple, the U.S. Court of Appeals for the Ninth Circuit reversed finding that iPhone owners were direct purchasers of Apple because they purchased the apps directly from the Apple App Store. Further, the US Supreme Court rejected Apple's argument that consumers are restricted to filing a claim only against the party that sets

13

a retail price for a product. Of empirical importance was that the Court recognized the difference in circumstances caused by the rise of the digital marketplace **and that applying *Illinois Brick* solely based on which entity set the price enables monopolists to set up their business in a manner that would allow them to escape liability under antitrust litigation from consumers. The Apple decision is directly applicable to the instant petition.**

NOTE however, that twenty years earlier in 1998, in *Campos v. Ticketmaster Corp.*, 140 F. 3d 1166 (8th Cir. 1998) the U.S. Court of Appeals for the Eighth Circuit held that plaintiff ticket purchasers did not have standing to sue defendant Ticketmaster for excess fees and anticompetitive behavior under Section 4 of the Clayton Act because they were not direct purchasers within the *Illinois Brick* standard. In *Campos*, plaintiffs were ticketholders who claimed that Ticketmaster had participated in anticompetitive conduct by conspiring with promoters and concert venues to enforce monopoly ticket prices and boycotted performers who did not want to participate in the monopoly. It was alleged that Ticketmaster would typically contract with venues to manage their ticket sales and manage distribution to purchasers for a venue fee.[116] **Notably, this action was filed in 1998, 12 years before Ticketmaster's merger with Live Nation**.

The district court dismissed the 1998 lawsuit, finding that the increased fees paid by the ticket purchasers were a result of Ticketmaster's monopoly but were not enough to state a claim under Section 4 of the Clayton Act. The court found that venues and promoters were the true direct purchasers and would therefore be the rightful plaintiffs if a proper suit was to be filed. The plaintiffs appealed, and the Eighth Circuit affirmed the lower court's dismissal in part. Important to this analysis is that almost 30 years ago now, the Eighth Circuit rejected the plaintiffs' argument that ticket purchasers were direct purchasers and characterized the fees paid for the ticket as an "antecedent transaction"

14

that occurred after the direct transaction. Additionally, the court noted that indirect purchaser status does not bar plaintiffs from seeking injunctive relief under Section 16 of the Clayton Act. In sum, the *Campos* decision limited consumers' ability to seek a remedy when there was a third party between the buyer and seller. **No doubt, that if *Campos* were heard today and considering the monumental number of user who buy tickets on defendant Ticketmaster's website, after the ruling in *Apple*, the ticket purchasers in *Campos* would now won their case.**

On January 25, 2010, the US Department of Justice and eighteen states challenged the proposed merger of Live Nation and Ticketmaster before the DC District Court. Case No. 1:10cv00139. The LNE defendants each admitted to contacts with NYS since 2005 in their 2009 and defendant Ticketmaster had contacts with NYS since the early 1980s. The Government and state plaintiffs argued that the proposed merger would violate Section 7 of the Clayton Act because it would substantially reduce competition among those providing primary ticketing services to major concert venues. In the complaint the DOJ predicted that the merger would eliminate competition for primary ticketing services at major concert venues. The competitive impact statement so ordered in 2010 expressly provided that the merged entity was precluded from withholding ticketing data from companies seeking to conduct non-ticketing businesses.  2010 WL 975408, pp. 8 line 10. Defendant Live Nation also represented and warranted that it would not use its dominance in the market to penalize venue owners who used a ticketing service other than Ticketmaster. Ergo, defendants intended to dominate the market. Those who objected to the merger predicted that the merged companies' dominant position would be so powerful that no competitor would have a chance to succeed. This prediction was correct.

15

Prior to the end of the first ten-year term, the DOJ alleged that defendant LNE repeatedly violated the decree by retaliating against concert venues that used other ticketing companies. Ultimately defendant LNE withheld its top tier acts from those venues engaging in unlawful tying violations. The DOJ tried to correct these problems by amending the existing consent decree in 2020 ("Amended Ticketmaster Consent Decree"), extending the mandate conditions six more years, appointing a "monitoring trustee," and imposing monetary penalties. Despite the amendment and extension of the original consent decree, the Senate Judiciary Committee took up public grievances since defendant Ticketmaster's computer systems crashed during presale of tickets for Taylor Swifts' ERA's tour. This  lawsuit was filed in 2024 based on the DOJ and 39 US states' continued concern about the challenges to competition presented by defendants' grip on the ticketing market and contumacious continued violations of the merger mandates including defendants' attempts to monopolize non-ticketing businesses.   This court rejected the plaintiffs' motion to transfer this lawsuit to the DC District Court and Petitioner is entitled to law of the case application. **CONCLUSION**: Petitioner and other of defendant LNE's users similarly situated are direct purchasers of tickets under the prevailing law of the US Supreme Court. Based on continued contumacious defiance of the merger mandates and Petitioner's constitutional rights guaranteed by the Fourteenth Amendment, Petitioner Amy Weissbrod-Gurvey must be granted intervention as of right in her own name. Petitioner moves to appear for herself and for defendant Ticketmaster users similarly situated. See, *Anderson v. State of NY and First Dept. Disciplinary Committee*, 614 F. Supp. 2d 404 (SDNY 2009)(Headnotes 15,16) (Scheindlin, J.).
**/amyweissbrodgurvey/** AMY R. WEISSBROD-GURVEY
Petitioner

16