# EXHIBIT 15

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 18, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0595 | Relevance, Prejudice, Hearsay, Limited Purpose | **Relevance and Prejudice:** PX0595 is entirely irrelevant and highly prejudicial.  It relates to Plaintiffs' allegation that "Live Nation threatened commercial retaliation against private equity firm Silver Lake, unless one of its portfolio companies, TEG, stopped competing with Live Nation for artist promotion contracts in the United States."  Am. Compl. ¶¶ 81-87.  This allegation is relevant only to Plaintiffs' claim that Defendants monopolized a market for concert promotion services, which the Court dismissed from the case.  *See* ECF No. 1037; Am. Compl. ¶ 259 (alleging that Live Nation maintained its monopoly in the concert promotion market by "[d]eterring entry and expansion by rivals by threatening potential rivals and their investors").  To the extent there is any marginal probative value to this document (which there is not), it would be highly prejudicial and confusing to the jury to admit it.  Courts within the 2nd circuit routinely preclude testimony or evidence of dismissed claims during a jury trial.  *Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758 (KAM)(LB), 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) ("The previously dismissed claims, and evidence thereof, are not of consequence in determining the action and therefore will be excluded."); *Alexander v. Lewis*, No. 3:20-cv-370 (VAB), 2024 WL 4008204 at *4 (D. Conn. Aug. 30, 2024) ("Where as here, claims have been dismissed on summary judgment, courts generally preclude testimony or evidence regarding such dismissed claims during a jury trial."); *Morales v. N.Y. Dep't of Labor*, No. 06-CV-899 (MAD), 2012 WL 2571292, at *4 (N.D.N.Y. July 3, 2012) (finding "that any testimony or evidence about plaintiff's previously dismissed | **Relevance and Prejudice:** PX595 is a December 17, 2021, document – within the limitations period – that is squarely relevant to Defendants' anticompetitive conduct and intent. Mr. Rapino discusses attempts to exclude a potential promoter entrant in Los Angeles and implicitly threatens that there will be ramifications for the party financing such potential competition.  In an email entitled "Clearing the air!," Mr. Rapino wrote: "what I fail to understand is why Stephen Evans continues to invest in a business that competes with LN/OVG," calling the potential new entrant in Los Angeles ▮▮▮▮▮▮ ▮▮▮▮▮▮<br><br>This document is relevant to showing Live Nation's anticompetitive intent and conduct within the limitations period; its self-perceived market power to block competition; and to showing harm to competition among promoters (tying claim).  Further, the reference to "LN/OVG" is relevant to establishing the anti-competitive agreement between Live Nation and OVG – which was formed during the limitations period – and that OVG was Live Nation's agent.<br><br>**Hearsay:** The bottom email from Randy Phillips is not offered for its truth, but rather to show how Mr. Rapino responded and as context so that the jury can understand the party admissions. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | discrimination claim is excluded" as irrelevant); *Hamza v. Saks Fifth Ave., Inc.*, No. 07 CIV. 5974 (FPS), 2011 WL 6187078, at \*7 (S.D.N.Y. Dec. 5, 2011) ("Any testimony and/or evidence relating to the plaintiff's previously dismissed disability discrimination claim is wholly irrelevant to any issue in contention in her current retaliatory discharge claim, and thus ... is hereby precluded from introduction at trial pursuant to Federal Rules of Evidence 401 and 402.")<br><br>Plaintiffs contend that PX0595 is relevant to proving that Live Nation engages in "threatening and coercive conduct" and that it shows a "pattern and practice" of the "velvet hammer" approach.  PX0595 has nothing to do with PX0451 (the document relating to the Red Mountain Entertainment acquisition in which the words "velvet hammer" were used). Plaintiffs' ruse is clear—as with the many decades-old documents they have put before the jury over the course of their case, Plaintiffs are attempting to shoehorn evidence into the trial record that has nothing to do with their actual claims, simply by saying that it shows a "pattern and practice" of "threats."  That is improper.  PX0595 does not demonstrate any wrongdoing or bad act, but even if it did, Plaintiffs are not permitted "to create an 'aura of guilt' or to imply new wrongdoing from past wrongdoing."  *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986).  Prior bad acts in the antitrust context "have no logical tendency to show an intent to act against a compet[itor]."  *Id.*  In affirming the decision on appeal, the Second Circuit noted that "Judge Leisure correctly found that this testimony was not admissible 'habit' evidence under Fed.R.Evid. 406, because testimony as to three or four episodes over a 20–year period was hardly sufficient to conclude that a pattern of behavior exists with respect to the conduct at issue here."  *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1373 (2d Cir. 1988) (citation omitted). | |

2

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | **Hearsay / Limited Purpose:** The email in this chain from Randy Phillips is hearsay, as it is an out-of-court statement that Plaintiffs intend to admit for the truth of the matter asserted.  It also contains multiple instances of hearsay within hearsay, as Mr. Phillips is relaying information he heard from other individuals.  None of these individuals are testifying at trial, and their statements should not be admitted. | |
| PX0339 | Relevance, Prejudice, Hearsay, Limited Purpose | **Relevance and Prejudice:** While evidence from before the limitations period (here, pre-May 2020) "might be relevant to the defendant's liability, even if the evidence might not itself fit within the relevant limitations period," ECF No. 1094 at 7 (order on Defendants' motion to bifurcate); *see also* ECF No. 1079 at 5 (order on Defendants' motion *in limine* No. 5), the evidence still must be "relevant to events during the period." *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001).  PX0339 is an internal Live Nation email chain from 2015—five years before the limitations period—about a specific Adele presale at that point in time. This document relates to artist fan clubs, which have not been at issue in this trial to date and are only tangentially relevant to Plaintiffs' claims.  There is no artist who has testified or will testify that they wanted to use artist fan clubs, let alone been excluded from using fan clubs.  This was a ticketing methodology used years ago, and it hasn't been meaningfully used in the industry within the statute of limitations period.  That is why Plaintiffs are relying on a document from 2015 to attempt to prove their case.<br><br>Plaintiffs contend that this document is probative of Live Nation's conduct during the limitations period, asserting that it shows enforcement of Ticketmaster's "exclusive dealing practices" and that Ticketmaster removed "fan club options" from the market to the detriment of fans.  To the extent they are asserting that this evidence shows harm to fans, that is | **Relevance and Prejudice:** PX 339 is a document showing Live Nation CEO Michael Rapino exercising Live Nation's monopoly power in the primary ticketing markets to enforce Live Nation's exclusive dealing requirements and exclude rival ticketers.  Specifically, the document shows Mr. Rapino rejecting superstar artist Adele's request to allocate a percentage of tickets to sell directly to fans, which Live Nation (Zeeshan Zaidi) viewed as an attempt to "test TM's exclusive relationships."  Mr. Rapino rejected Adele's request and directed executives that "TM [is] not giving away [Adele] tickets to another ticketing company even if 'made whole'" on the lost revenue.<br><br>PX335 is relevant on multiple grounds.  *First*, PX339 shows how Mr. Rapino has enforced Ticketmaster's exclusive dealing restrictions—which remain in place today and are at the heart of this case.  *Second*, PX339 is relevant to rebutting testimony put in by Live Nation witnesses (including Bob Roux) that artists have bargaining leverage over Ticketmaster.  The document described Adele as "the hottest artist in the world right now," yet Ticketmaster enforced its exclusive dealing requirements to block her attempt to sell primary presale tickets through a rival ticketer.  *Finally*, PX339 is relevant because it illustrates pro-consumer "fan clubs" that used to exist in the marketplace. Live Nation eliminated those |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | irrelevant and improper, because the Court dismissed Plaintiffs' alleged fan-facing ticketing market. *See* ECF No. 1037.  Moreover, they cannot identify any event during the limitations period that this document relates to.  This is yet another example of Plaintiffs' improper "pattern and practice" theory.  Finally, even if there were some marginal probative value to the document, it would be severely limited due to the age of the alleged conduct and the risk of confusing the jury. *Cf. Carey v. Int'l Bhd. of Elec. Workers Loc. 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) (policies animating statutes of limitation include "avoidance of litigation involving lost evidence or distorted testimony of witnesses"). <br><br> **Hearsay / Limited Purpose**: The myriad comments about what Kirk said or will do (e.g., "Kirk suggested," "Kirk understands that," "Kirk has requested," "Kirk told me today," "Kirk is going to") are hearsay.  Kirk is not a Live Nation / Ticketmaster employee, and there is no hearsay exception that would allow his statements to be admitted into evidence. | fan clubs during the COVID pandemic, which was an exercise of market power and an anticompetitive act within the limitations period. <br><br> **Hearsay:** Every participant in this email thread is a Live Nation or Ticketmaster employee, and so the statements are all party admissions.  Any non-party statements imbedded in the email are not being offered for the truth of the matter asserted, but rather to show how Live Nation responded and as context so that the jury can understand the party admissions. |
| PX0386 | Relevance, Prejudice, Hearsay, Limited Purpose | **Relevance and Prejudice:** PX0386 is irrelevant and prejudicial for the same reasons as PX0339.  While evidence from before the limitations period (here, pre-May 2020) "might be relevant to the defendant's liability, even if the evidence might not itself fit within the limitations period," ECF No. 1094 at 7 (order on Defendants' motion to bifurcate); *see also* ECF No. 1079 at 5 (order on Defendants' motion *in limine* No. 5), the evidence still must be "relevant to events during the period." *See Fitzgerald*, 251 F.3d at 365.  PX0386 is from 2015—five years before the limitations period—and relates to a specific Paul McCartney onsale at that point in time.  This document also relates to artist fan clubs, which have not been at issue in this trial to date and are only tangentially relevant to Plaintiffs' claims. | **Relevance and Prejudice:** As with PX339, PX386 shows Mr. Rapino's enforcement of Ticketmaster's exclusive dealing and elimination of competitive choice. This document discusses Paul McCartney's request to sell presale tickets directly to fans, even though he didn't operate a "qualifying fan club" at the time in 2015. Mr. Rapino responded that these are "Ticketmaster venues and typically the answer is no – we are exclusive and can't allocate to other competitors."  Mr. Rapino then gave Mr. McCartney a one-time exception to this policy on the condition that, going "forward," he "plays ball" and operates exclusively through Ticketmaster. |

4

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | There is no artist who has testified or will testify that they wanted to use artist fan clubs, let alone been excluded from using fan clubs.  This was a ticketing methodology used years ago, and it hasn't been meaningfully used in the industry within the statute of limitations period.  That is why Plaintiffs are relying on another document from 2015 to attempt to prove their case.<br><br>Plaintiffs contend that this document is probative of Live Nation's conduct during the limitations period, asserting that it shows enforcement of Ticketmaster's "exclusive dealing practices" and that Ticketmaster removed "fan club options" from the market to the detriment of fans.  To the extent they are asserting that this evidence shows harm to fans, that is irrelevant and improper, because the Court dismissed Plaintiffs' alleged fan-facing ticketing market.  *See* ECF No. 1037.  Moreover, they cannot identify any event during the limitations period that this document relates to.  This is yet another example of Plaintiffs' improper "pattern and practice" theory.  Finally, even if there were some marginal probative value to the document, it would be severely limited due to the age of the alleged conduct and the risk of confusing the jury.  *Cf. Carey*, 201 F.3d at 47 (policies animating statutes of limitation include "avoidance of litigation involving lost evidence or distorted testimony of witnesses").<br><br>**Hearsay / Limited Purpose**: Scott Rodger's email is hearsay and contains hearsay within hearsay.  Rodger is not a Live Nation / Ticketmaster employee, and he is relaying what Barrie Marshall (who is also not a Live Nation/Ticketmaster employee) said and wanted.  There is no hearsay exception that would allow both Rodger's and Marshall's statements into evidence. | As with PX339, PX386 is relevant evidence of Mr. Rapino's enforcement of Ticketmaster's exclusive dealing (which still exists today) and pattern of actions to exclude competitors. This document also shows the existence of fan club allocations, which was a competitive choice available to fans that Ticketmaster subsequently eliminated during the limitations period.<br><br>**Hearsay:** Plaintiff States intend to use PX386 for its party admissions by Mr. Rapino and others.  Any non-party statements imbedded in the email are not being offered for the truth of the matter asserted, but rather to show how Live Nation responded and as context so that the jury can understand the party admissions. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0415 | Relevance, Prejudice | **Relevance and Prejudice:** The Court "provisionally sustained" Defendants' objection to PX0415 on the basis that Plaintiffs did not demonstrate how the document is relevant to events in the limitations period. During the examination of Mr. Roux, the Court admitted into evidence just a portion of the email chain for the limited purpose of impeachment. Plaintiffs now seek admission of the full email chain through Mr. Rapino. For the same reasons Defendants previously articulated, PX0415 is irrelevant to any events within the limitations period, and the remaining portions of the document should be excluded.<br><br>Prior argument that was sustained: As the Court has explained, pre-limitations period (here, pre-May 2020) evidence "might be relevant to the defendant's liability, even if the evidence might not itself fit within the relevant limitations period." ECF No. 1094 at 7 (order on Defendants' motion to bifurcate); see also ECF No. 1079 at 5 (order on Defendants' motion in limine No. 5). But the evidence still must be "relevant to events during the period." *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001). PX0415 is an internal Live Nation email from January 2016—four years before the limitations period—about potential business dealings with Red Mountain Entertainment, a promotion company based in Alabama. Plaintiffs contend that this document is probative of evidence during the limitations period, pointing to the supposed intent behind Live Nation's acquisition of Red Mountain Entertainment, but they cannot identify any event during the limitations period that this document is relevant to. This email from 2016 was two years before Live Nation even acquired Red Mountain in 2018, and that acquisition itself was two years before the limitations period. And even if there were some marginal probative value to the document, it would be severely limited due to the age of the alleged conduct and the risk of confusing the jury. | **Relevance and Prejudice:** PX415 was partially admitted in Mr. Roux's examination. This document should now come in its entirety. PX415 concerns the promoter Red Mountain, which had exclusive booking arrangements at three large amphitheaters in Alabama and Mississippi. In the bottom email (already admitted), after prompting from Mr. Rapino, Mr. Roux said that Live Nation would develop an "active plan to mitigate further expansion" by Red Mountain and explained: "Can't get complacent and let small guys encroach from the edges." ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇<br><br>This document is relevant for multiple reasons. ***First***, Live Nation executives Mr. Roux and Mr. Campana testified that Live Nation acquired Red Mountain for reasons unrelated to the "encroaching" competitive threat they posed. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br><br>Moreover, Mr. Roux testified that Live Nation acquired Red Mountain to gain a presence in the Alabama and Mississippi markets ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ***Second***, PX415 is independently relevant because it shows Live Nation's pattern and practice of coercive conduct – using the "Velvet Hammer" to frustrate and acquire or neutralize any competitive threat, no matter how small, which has continued during the limitations period. |

6

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | Plaintiffs now contend that this document should be admitted in full because the Red Mountain Entertainment acquisition is now at issue in the case. But it was Plaintiffs who put that acquisition at issue—not Defendants—whose elicited testimony was purely in response to Plaintiffs' examination. Plaintiffs should not be able to circumvent a relevance ruling by putting something at issue that Defendants did not bring into the case on their own. | |
| PX0993 | MIL (redact) | **Motion in Limine:** After hearing argument on the *motion in limine,* the Court stated at the pre-trial conference that information related to executive compensation could come in for the limited purpose of explaining that Live Nation "executives were not only receiving compensation tied to profitability targets, but also that they achieved those targets." Pre-Trial Conf. Tr. 102:13-16. The Court further stated that "the compensation information ***does not come in for bias or motive***", explicitly cautioning Plaintiffs against "getting into the amounts." *Id.* at 101:24-25. The Court further stated that it did not understand "why the bias or motive is anything different than the bias or motive of any executive working for a company. They make lots of money, and so they want to do what's best for the company."<br><br>On March 18, 2026, the Court revisited its ruling, now stating that Plaintiffs would be allowed to reference the percentage of Mr. Rapino's compensation that is tied to Live Nation's profitability, and could do so in order to "explore the issue of potential bias by establishing that the outcome of the litigation would have an impact on the witness and his compensation, right? Just in general terms without looking at the actual numbers." Trial Tr. 1581:17-20. | **Relevance:** The remaining dispute over PX993 is whether Plaintiff States can use the statements from Live Nation's 2025 proxy statement showing that Mr. Rapino ████████ ████████████████████████ ██████████████████████ (page 25). The Court has previously indicated that Plaintiff States can question Mr. Rapino (with proper foundation) on the portion of his compensation that is determined based on discretionary bonuses tied to Live Nation's profitability and resolution of this litigation. That evidence is classic cross examination regarding Mr. Rapino's bias as a witness, as Mr. Rapino has a huge financial stake in the outcome of this trial. His stock shares are relevant for the same reason. Plaintiff States are not seeking to introduce evidence of the overall amount of Mr. Rapino's compensation or income, consistent with the Court's motion in limine ruling. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | Emboldened by having thus obtained some leeway regarding the extent to which they can explore Mr. Rapino's bias, Plaintiffs now seek to expand the scope of permissible questioning even further by presenting to the jury additional information regarding the *actual number* of shares of stock owned by Mr. Rapino.  Specifically, Plaintiffs have declined Defendants' request that they redact information regarding the amount and type of Live Nation stock owned by Mr. Rapino.  Plaintiffs claim that because the page in question (page 25) does not contain dollar amounts, they are allowed to introduce the information regarding Mr. Rapino's stock ownership, and to do so in order to show Mr. Rapino's bias. Allowing Plaintiffs to introduce this information would be inconsistent with the Court's prior ruling and would allow in evidence the Court previously held to be inadmissible.<br><br>While Plaintiffs are correct that no dollar amount is included on these pages, the value of Mr. Rapino's stock ownership is easy enough to extrapolate—all that is required is to take the number of shares, and multiply by the current value of Live Nation stock.  Additionally, as stated above, the Court has already ruled that **"the compensation information does not come in for bias or motive."**  Pre-Trial Conf. Tr. 101:24-25.  Allowing information regarding a form of Mr. Rapino's compensation (namely his stock ownership) to come in, *when Plaintiffs have explicitly stated they want to use it for a purpose the court previously stated was improper*, would render the Court's prior ruling meaningless. | |
| PX1160 | Hearsay, Limited Purpose | **Hearsay / Limited Purpose**:  The statements by Tim Leiweke in PX1160 are hearsay.  Plaintiffs contend that these statements are not hearsay because they are verbal acts.  But Mr. Leiweke's statements are not verbal acts.  He is not conveying an offer, or describing terms of an actual contract.  *See U.S. v. DiMaria*, 727 F. 2d. 265 (2d. Cir. 1984) ("the 'verbal act' doctrine applies only when 'the utterance is an operative fact which gives rise to legal | **Hearsay:** The bottom email from Mr. Rapino is a party admission.  The top email from Tim Leiweke at OVG is admissible on multiple grounds.  ***First***, Mr. Leiweke's statement is admissible as a party admission because OVG was Live Nation's agent under Rule 801(d)(2)(D). ***Second***, the statement is admissible as a verbal act, because the email discusses an agreement that the parties subsequently formalized.  Indeed, Live Nation just this |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | consequences.'"); Advisory Committee Notes to Rule 801(c) (verbal acts are only those statements that themselves "affect[]the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.")<br><br>Plaintiffs' contention that Mr. Leiweke's statements are admissible as party admissions on an agency theory is unsupported. There is no basis to conclude that OVG is or was Live Nation's agent as a matter of law. It is separately worth pointing out that this document pre-dates the OVG-Ticketmaster ticketing agreement. To the extent the Court is inclined to engage in an agency analysis, Defendants request the opportunity for full briefing on the issue. | week admitted third-party statements as a verbal act in an exhibit proposing and discussing contract terms (DX1114). |
| PX1078 | Untimely Disclosure | **Untimely Disclosure:** Plaintiffs disclosed this document at 4:59pm on March 18, *eight hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and an hour and half after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits. Plaintiffs are in violation of the JPTO. Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes. | **Untimely:** This document was added based on events in Court on March 18. This is a long-term contract between Oak View and Ticketmaster. There is no prejudice to Defendants for an "untimely" disclosure. The process is meant for the parties to exchange objections, not prepare witnesses. |
| PX0076 | Untimely Disclosure, Hearsay, Limited Purpose | **Untimely Disclosure:** Plaintiffs disclosed this document at 5:27 pm on March 18, more than *eight hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and two hours after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits. Plaintiffs are in violation of the JPTO. Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes. | **Hearsay:** The statements by Mr. Rapino are party admissions. The statements by the Oak View Group are party admissions because OVG was acting as Live Nation's agent under 801(d)(2)(D).<br><br>**Untimely:** This document was added based on events in Court on March 18. There is no prejudice to Defendants for an "untimely" disclosure. The process is meant for the parties to exchange objections, not prepare witnesses. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | **Hearsay / Limited Purpose:** The statements by Tim Leiweke in PX0076 are hearsay.  It's clear that Plaintiffs intend to offer them for the truth of the matter asserted, particularly the statements, ▇▇▇▇▇▇▇▇▇▇ and "We are going to take most of their music."  There is no hearsay exception that applies.  Plaintiffs' contention that Mr. Leiweke's statements are admissible as party admissions on an agency theory is unsupported.  There is no basis to conclude that OVG is or was Live Nation's agent as a matter of law.  It is separately worth pointing out that this document pre-dates the OVG-Ticketmaster ticketing agreement.  To the extent the Court is inclined to engage in an agency analysis, Defendants request the opportunity for full briefing on the issue. | |
| PX0330 | Untimely Disclosure, Relevance, Prejudice, Hearsay, Limited Purpose | **Untimely Disclosure:** Plaintiffs disclosed this document at 5:27 pm on March 18, more than *eight hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and two hours after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits.  Plaintiffs are in violation of the JPTO.  Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes.  **Relevance and Prejudice:** PX0330 is irrelevant and prejudicial.  While evidence from before the limitations period (here, pre-May 2020) "might be relevant to the defendant's liability, even if the evidence might not itself fit within the limitations period," ECF No. 1094 at 7 (order on Defendants' motion to bifurcate); *see also* ECF No. 1079 at 5 (order on Defendants' motion *in limine* No. 5), the evidence still must be "relevant to events during the period." *See Fitzgerald*, 251 F.3d at 365.  PX03330 is from 2014— | **Relevance:** PX330 is an email discussion between Mr. Rapino and Mr. Roux.  Mr. Roux relays an offer by the Staples Arena (now the Crypto.com Arena) in Los Angeles under which Staples would have used Ticketmaster for Live Nation shows—but retained the right to use another ticketer for non-Live Nation shows.  In response, Mr. Rapino rejected this proposal, explaining he is "not splitting ticketing and stating that precedent." As the CEO explained, "we can't split ticketing – then they will be running to other venues saying hey we let LN ticket LN shows, let us ticket AXS for AEG shows."  PX330 is relevant to show Live Nation's exclusive ticketing practices, which remain in effect today and are at the heart of this case. This document also shows the anticompetitive purpose and intent behind these continuing exclusionary practices, as Mr. Rapino's party admissions illustrate how Ticketmaster's exclusive dealin is intended to—and does—frustrate any attempt of venues to choose a rival ticketing service. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | six years before the limitations period—and relates to a specific instance relating to a conversation that supposedly happened at that point in time.  Plaintiffs cannot identify any event during the limitations period that this document relates to.  This is yet another example of Plaintiffs' improper "pattern and practice" theory.  Finally, even if there were some marginal probative value to the document, it would be severely limited due to the age of the alleged conduct and the risk of confusing the jury. *Cf. Carey*, 201 F.3d at 47 (policies animating statutes of limitation include "avoidance of litigation involving lost evidence or distorted testimony of witnesses").<br><br>**Hearsay / Limited Purpose:** PX0330 includes hearsay – in particular, the supposed statements from Lee Zeidman in Mr. Roux's email.  These statements do not constitute verbal acts because this is not an actual offer.  Simply discussing a potential contract is not an offer. *See U.S. v. DiMaria*, 727 F.2d. 265 (2d. Cir. 1984) ("the 'verbal act' doctrine applies only when 'the utterance is an operative fact which gives rise to legal consequences.'"); Advisory Committee Notes to Rule 801(c) (verbal acts are only those statements that themselves "affect[]the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.") | **Hearsay:** The statements by Mr. Roux and Mr. Rapino are party admissions.  The third party statements referenced in Mr. Roux's email are not being offered for their truth, but rather for the effect on listener – as shown by Mr. Rapino's response and directions to Mr. Roux in response to the third-party statements, in the top email on the string – and as context so that the jury can understand the party admissions.<br><br>**Untimely:** There is no prejudice to Defendants for an "untimely" disclosure.  The process is meant for the parties to exchange objections, not prepare witnesses. |
| PX1145 | Untimely Disclosure | **Untimely Disclosure:** Plaintiffs disclosed this document at 6:07 pm on March 18, *nine hours* past the parties' agreed-upon deadline to identify documents to be used with Mr. Rapino, and two hours after the parties' meet and confer call to discuss the parties' objections to disclosed exhibits.  Plaintiffs are in violation of the JPTO.  Plaintiffs should be precluded from using the document on this basis alone, particularly given the Court's instructions at today's pre-trial hearing regarding timely submission of exhibit objection disputes. | **Untimely:** This is a standard business planning document.  There is no prejudice to Defendants for an "untimely" disclosure.  The process is meant for the parties to exchange objections, not prepare witnesses. |

11

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DX1538 | Hearsay | **Hearsay:** DX1538 is inadmissible hearsay.  This document contains three text messages, two of which come from the rapper "Future."  The substance of DX1538 consists entirely of hearsay from Future discussing his decision to use Ticketmaster.  Mr. Rapino's seven-word responding text has no substance and merely thanks Future for his comments. There is no plausible use or relevancy for DX1538, except for offering Future's hearsay statements for their truth. | **Not Hearsay:** Defendants are offering this exhibit for a non-hearsay purpose, to show the effect on the listener (Mr. Rapino).  Mr. Rapino will testify that he is involved both in the process of selling Ticketmaster to venues and in concert promotion to artists.  In order to play both roles, he must have and does have a perspective on artists' views of competing ticketing systems.  He will testify that this text message helped establish his state of mind with respect to artist preferences regarding different ticketing systems. |