# EXHIBIT 16

*United States et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS

**Parties' Joint Submission of Outstanding Disputes for March 24, 2026**

**Defendants' Objections to Plaintiffs' Exhibits**

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX0250 (Granger) | H, LP | **Hearsay and Limited Purpose:** This document contains inadmissible hearsay. Doug Higgons notes that he wanted to ███████ ███████████ and ███████████████████ ███████████████ Plaintiffs seek to admit this testimony to establish that the comparison in the attached excel is an ████████ ██████ comparison. This is hearsay, without an exception, that would only be offered for the truth of the matter. These emails are nothing but an internal email "among employees, rather than emails where there's evidence that 'the employer imposed a business duty to make and maintain such a record." *See* Trial Tr. 731:8-14; *Aghaeepour v. North Leasing Systems Inc.*, 2024 WL 2700564 (S.D.N.Y. May 24, 2024); *United States v. Figueroa*, 2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023). | **Hearsay/Limited Purpose:** The cover email merely describes the analysis in the attached document, which is a business record. It was made in the ordinary course of business by Oak View Group and compares the Ticketmaster agreement with its previous agreement. The cover email of PX250 should be treated on the same basis as DX583. |
| PX0644 (Yovich, Marcus) | Hearsay, Limited Purpose | **Hearsay / Limited Purpose.** This document, like the documents to which the Court sustained objections on March 6, 2026 (PX0019, PX0028, PX0034, PX0046, and PX0315) contain nothing but "internal emails among employees, rather than emails where there's evidence that 'the employer imposed a business duty to make and maintain such a record." *See* Trial Tr. 731:8-14; *Aghaeepour v. North Leasing Systems Inc.*, 2024 WL 2700564 (S.D.N.Y. May 24, 2024); *United States v. Figueroa*, 2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023). The message chain begins with Rapino discussing what Irving Azoff (a third party) said regarding platinum | **Hearsay/Limited Purpose:** All of these are party-opponent statements. Mr. Rapino's initial email recounting his impression of Mr. Azoff's concerns regarding fees is essential to establishing the predicate facts of the later emails. This document concerns Ticketmaster's pricing practices in the primary ticketing markets at issue in this case, including their actions to raise prices and increase the fees that Ticketmaster keeps over the objections of artists. |

1

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | tickets.  This is hearsay without an exception – and there was plainly no business duty to create such email.  The remainder of the email chain indicates that this was a one-off discussion regarding the fees charged and the "issues at play," -1723357, and Azoff's thoughts regarding the amount of money made by Ticketmaster. -1723356.  While Plaintiffs may believe that these statements are necessary to understand the context of the rest of the email, these statements are in fact not necessary context, particularly the line "Danger, will robinson…Hopefully this stays contained to Harry. Irving thinks we make too much money…"Id. This document should be excluded.<br><br>Alternatively, the documents should be redacted to exclude statements that are nothing more than rank hearsay. | |
| PX0783 (Yovich) | Hearsay, Limited Purpose | **Hearsay / Limited Purpose:** The slides with bates numbers ending in -350 and –351 contain "feedback" from third parties, including fans, venues, and clients. This is hearsay, without an exception, that would only be offered for the truth of the matter.  While Plaintiffs may claim that this document will only be used to show Ticketmaster's awareness of these issues, it is clear that Plaintiffs intent is "simply to elicit hearsay statements for the truth of the matter asserted without trying to connect it to anything else."  Trial Tr. 2388:22-25.  As the Court ruled during Mr. Perez's testimony on March 24, 2026, this is impermissible, and therefore this document should be excluded. | **Hearsay/Limited Purpose:** This Ticketmaster presentation discusses feedback from tech executives on TM's product.  This feedback is not used for the truth of the matter asserted, but rather will be used to probe the effect it had on Mr. Yovich and Ticketmaster's response to such feedback. On the issue of surveys from tech executives, it is also highly relevant  in showing that Live Nation executives had knowledge that their reputation for quality in the market was dubious and struggling to improve, which puts them in a comparable category to AXS, a proposition they have strongly disputed. Questioning will also establish that these issues dated back for many years because LN still uses the same outdated tech. . |
| PX0800 (Yovich) | Relevance, Hearsay, Limited | **Relevance / Prejudice** - The "Tech Exec" slide deck (-495-520) appears to discuss how TM makes executive decisions across departments, which is not relevant to any issue in the case. *See e.g.*-500 (listing five "key themes" from | **Relevance/Prejudice:** This email and presentation concern a "Tech Exec Offsite" where tech executives discussed their impressions of Ticketmaster's products |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | Purpose, Prejudice | Tech Exec interviews "Resourcing, Strategic Impact, Prioritization, Planning, Organization"; -502 Pain Points comparing responses from Tech Exec v. Non-Tech Execs; -514 through -518 exploring "What is required to define a product and have it approved" and "Alternative Team Structures"). This is a slide exploring Ticketmaster "pain points" in an attempt to improve the product at a granular level. The feedback contained in these slides are not tied to the issues of this case. Without additional context, the jury may misunderstand the content of the slides.<br><br>**Hearsay / Limited Purpose** – there are anonymous statements included in the "Tech Exec" slide deck without any ability to verify the declarants. *See* -497, -503, -506, -509, -512, -515. There are also anonymous statements in the "client pain points" slides (-538-539) with no ability to verify the declarant. The statements contained in these slides are hearsay without an exception, that would only be offered for the truth of the matter asserted. | and quality. This email is highly relevant to Plaintiffs' argument that fans experience a decrease in quality as a result of Live Nation's monopoly. Defendants have repeatedly argued that Ticketmaster's innovation has allowed it to succeed in the market, and these emails directly rebut such an argument. Defendants' prejudice objection also fails under Rule 403. The exhibit is a document created by Defendants in the ordinary course of their business and is neither inflammatory nor misleading. On the issue of surveys from tech executives, it is also highly relevant in showing that Live Nation executives had knowledge that their reputation for quality in the market was dubious and struggling to improve, which puts them in a comparable category to AXS, a proposition they have strongly disputed. Questioning will also establish that these issues dated back for many years because LN still uses the same outdated tech. |
| PX0869 (Yovich) | Relevance, Prejudice | **Relevance / Prejudicial.** The top email from Mr. Alvarez to Mr. Yovich, which is critical of certain employees at the Company, is not relevant to any issue in this case. Plaintiffs claim this email is relevant to the "culture" of Ticketmaster, but there is nothing here to tie the supposed "culture" being conveyed with any relevant issue in the case. Moreover, the document includes strong and potentially offensive language that will likely cause prejudice against Defendants. Even when an email exchange is "clearly relevant" to the issues of the case, portions of the emails may be appropriately redacted if they "do not speak to [the] issue, but instead contain prejudicial material, including commentary that could lead a juror to view [individuals on the emails] as cynical or heartless." *See Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 287-88 | **Relevance/Prejudice:** This email thread concerns Ticketmaster's technical issues during a Tennessee Titans on-sale. This email is highly relevant to Plaintiffs' argument that fans experience a decrease in quality as a result of Live Nation's monopoly. Moreover, Defendants have repeatedly argued that Ticketmaster's innovation has allowed it to succeed in the market, and these emails directly rebut such an argument. Mr. Alvarez, Ticketmaster's CTO, also discusses the impediments to implementing fixes to the issues plaguing Ticketmaster, recognizing the company's "tribal mentality" and describing it as "so toxic." These statements directly rebut Defendants' arguments that their market power are a result of their innovation and product quality, rather than anticompetitive conduct, as Plaintiffs allege. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | (S.D.N.Y. 2015) (denying defendants' motion to exclude evidence and argument about the relevant email exchanges but ordering the "the emails at issue to be redacted in accordance with plaintiffs' pretrial submissions). On the email chain in PX0869, Carlos Alvarez mentions "[s]o much tribal knowledge" and says that someone ███████████████ Additionally, some of the discussions in this email are derogatory to employees of the company, claiming that they are the "old guard," have a "hero mentality," are "so toxic," and have left it in "a cluster." This potentially offensive language and derogatory comments about other employees are not relevant to the case and will merely lead the jury to view Alvarez, and Defendants in a negative light. Therefore, this document should be excluded.<br><br>Redacting the individual employee names at issue – which Plaintiffs have already agreed to do – does not solve the broader relevant and prejudice issues with Mr. Alvarez's 7:56 p.m. email. | |
| PX1106 (Marcus) | Hearsay, Limited Purpose, Prejudice | **Hearsay/Limited Purpose:** D. Marcus quotes Irving Azoffan out of court declarant, as saying ██████████ and ████████████████████ Marcus later writes that Azoff is "complaining about us making money he's not losing."  Such statements are hearsay.<br><br>**Prejudice:** Moreover, some of the language in this document is inflammatory, like "boil the frog" which may illicit a strong negative reaction from the jury for reasons unrelated to this litigation.  The reference to ███████████ is also highly prejudicial. It implies something nefarious or problematic, and is a statement made by a non-Ticketmaster email that risks inflaming the jury. The quotes from Azoff mischaracterize how | **Hearsay/Limited Purpose:** PX1106 consists of internal communications among senior Ticketmaster and Live Nation executives, including Mark Yovich, discussing Ticketmaster's strategy for its Platinum pricing model and its response to criticism regarding fees charged under the model. The statements are non-hearsay admissions of a party opponent under Rule 801(d)(2)(A) and (D). They were made by Defendants' executives and agents during the existence of the employment relationship and concerning matters squarely within the scope of their authority, including business strategy and fee pricing. Defendants' argument that the statements attributed to Mr. Azoff in Mr. Marcus's 10:43am email are non-admissible hearsay fails as well. Plaintiffs do not intend to use Mr. Azoff's statements for the truth of |

4

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | TM charges fees for its Platinum tool and will likely confuse the jury. | the matter asserted, but rather to establish the predicate facts and provide context for the party admissions.<br><br>**Prejudice:** Defendants' Rule 403 objection fails. The document consists of Ticketmaster employees' discussions and reactions to apparent complaints about the company's fee-pricing strategy. In addition to being highly probative of Plaintiffs' claims, including to demonstrate the effects of Defendants' monopoly power and anticompetitive conduct, there is nothing inflammatory within the document other than Ticketmaster's own fee-pricing model. |
| PX1159 (Yovich) | Prejudice | Prejudice: Without more context, Marla Ostroff's email could be confusing and prejudicial: "Joe might want to mention their not selling LN events through SG." Plaintiffs claim this shows a clear content threat to Barclays on the part of Live Nation.  But this documents is from July 2021, after Barclays has chosen SeatGeek as its primary ticketer.  It is therefore misleading to suggest to the jury that this email relates to any kind of threat. | **Prejudice:** These emails directly relate to Live Nation and Ticket Master's negotiations with the Barclays Center, which has been a central issue in the case. Aside from being highly relevant to Plaintiffs' conditioning claims, this document contains no inflammatory, or otherwise unduly prejudicial, material. |

5

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| PX1270 (Yovich) | Relevance, Hearsay, Limited Purpose, Prejudice | Hearsay / Limited Purpose:  This document contains hearsay. Most of this document is a recap of commentary from someone named Troy, who is unidentified and not included on any of the emails in this thread.  Within this commentary, Troy mentions discussions with "many brokers," which is also inadmissible as none of these brokers included on these emails.<br><br>Relevance/Prejudice:  This document is focused on secondary ticketing, which is not relevant to the live issues in this case.  Plaintiffs do not dispute this. Instead they claim that this document is relevant because Defendants have equated all brokers with scalpers and therefore it is relevant to show that Ticketmaster is being "hypocritical" in touting its "anti-bot" tools (as an aspect of Ticketmaster's quality) while at the same time working with brokers as part of its secondary ticketing business.  Nothing in Mr. Rapino's testimony or Dr. Budish's report supports such a monumental leap.<br><br>Plaintiffs' arguments show exactly why this document is irrelevant and highly prejudicial. Plaintiffs are attempting to smear Defendants by suggesting that Ticketmaster actively works with scalpers and other bad actors in the industry. But this document supports no such suggestion—all it shows is that Ticketmaster attended a conference for ticket brokers as part of the ordinary course of its secondary ticketing business. Plaintiffs are conflating two distinct issues: whether Ticketmaster's anti-scalping tools make it a higher-quality primary ticketing product (relevant) and whether Ticketmaster's secondary business works with brokers in the ordinary course (not relevant). Allowing Plaintiffs to mislead the jury into suggesting | Relevance: Defendants introduced the issue of brokers and scalpers in their opening, and then did it again in the Rapino testimony, where he said the terms were interchangeable, and then raised the same point today in the questioning of Mr. Perez. Defendants elicited testimony from Mr. Rapino that Ticketmaster is opposed to the growth of ticket brokers.  These emails between Mr. Yovich and Mr. Rapino directly rebut this point. Defendants also intend to call Dr. Budish whose opinions focus on Ticketmaster's purported efforts to stop resales in the secondary market.<br><br>Hearsay/Limited Purpose: All statements are from Ticketmaster employees, which are party admissions. |

| Exhibit Number | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|
| | | that such innocuous conduct is equivalent to Ticketmaster condoning "bots" and "scalpers" and other bad actors would be highly prejudicial, misleading, and confusing. | |

**Plaintiffs' Objections to Defendants' Exhibits**

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| DX-1045 (Granger) | Hearsay | **Hearsay:** This email contains hearsay, describing proposals/requests for proposals for ticketing solutions outside of TM, without the referenced proposals attached. | **Not Hearsay:** Defendants are offering this exhibit for a non-hearsay purpose. Defendants will elicit testimony from Mr. Granger on his own messages and messages that he received regarding OVG360 venues' RFP process.<br><br>**Effect on the Listener:** This document will be used to prove the effect on the listener rather than the truth of the matter asserted.  The document is being offered to prove that Granger was aware that both Paciolan and Ticketmaster submitted proposals for the XL Center, not to prove that the proposals were in fact submitted.  These emails should be admitted to show their effect on the listener, not to prove the truth of the matter asserted. *See United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *13-14 (E.D.N.Y. July 23, 2025) (granting party's "motion to admit [] business emails [written by Lenders while they considered, evaluated and discussed borrowers' (including the defendant's) fraudulent PPP loan applications]  into evidence to the extent that the [party] relies on them to show their effect on the listener or provide context for the emails—not to prove the truth of the matter asserted in the emails.")<br><br>**Business Records Exception:** This document should be admitted under the business record exception to hearsay.  Here, OVG employees are sending information on and discussing their requests for ticketing proposals from various ticketing companies for the XL Center. An employee notes that SeatGeek ultimately declined to provide a proposal.  This is within the scope of the business |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | | records exception because it is a record of these ticketing proposals created by OVG employees within a year of those proposals being submitted. |
| DX-1430 (Granger) | Hearsay | **Hearsay:** This email contains hearsay, describing proposals/requests for proposals for ticketing solutions outside of TM, without the referenced proposals attached. | **Business Records Exception**: This document is a business record.  The OVG employees are sending and discussing ticketing proposal information for a particular venue.  Starting from the bottom-most email, it includes detailed analysis of choosing a ticketing service provider among AXS, Paciolan and Ticketmaster, including an analysis of each proposal and a recommendation.  The following emails are all directly related and discussing the ticketing proposals, including sending several new proposals and updated analyses.  As the CEO of OVG, Mr. Granger can testify that it is within the scope of the employees' business duty to make and maintain such a record.<br><br>With respect to the statement made by Geoff Carns in the top email, it's offered for a non-hearsay purpose to show the **effect on the listener**—it shows Mr. Granger's awareness of what Mr. Carns stated, which would have affected how Mr. Granger handles venues that switch away from Ticketmaster going forward.  It's also a **present sense impression** because Mr. Rentmeester says he "just spoke to Carns at TM." |
| DX-0583 | Hearsay | **Hearsay:** This email contains hearsay, describing proposals/requests for proposals for ticketing solutions outside of TM, without the referenced proposals attached. | **Business Records Exception:** This email and the attachment fall into the FRE 803(6) **business records exception** to the hearsay rule. The email is a record of an "opinion" provided by Mike Scanlon. This email provides an analysis and recommendation regarding which Request for a Ticketing Proposal this venue should accept. It was created in the |

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | | ordinary course of business to provide guidance to the venue.<br><br>**Effect on the Listener:** Defendants are offering this exhibit to show the effect on the listener, not to prove the truth of the matter asserted. Mike Scanlon's first-in-time email provides an analysis of ticketer RFP responses at the Ford Wyoming Center comparing Paciolan to Ticketmaster. These emails should be admitted to show their **effect on the listener**, not to prove the truth of the matter asserted. *See United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *13-14 (E.D.N.Y. July 23, 2025) (granting party's "motion to admit [] business emails [written by Lenders while they considered, evaluated and discussed borrowers' (including the defendant's) fraudulent PPP loan applications] into evidence to the extent that the [party] relies on them to show their effect on the listener or provide context for the emails—not to prove the truth of the matter asserted in the emails.") |
| DX-1506 (Marcus) | Hearsay | **Hearsay:** This text exchange between Mr. Marcus and Mr. Messina is plainly hearsay.  Mr. Messina's texts cannot be offered for anything but the truth of the matter asserted | This text chain is not being admitted for the truth of the matter.  A core part of Mr. Marcus's (EVP, Head of Music, Ticketmaster) job is making decisions about product features that serve the interests of promoters.  He routinely seeks out and is provided feedback (both solicited and unsolicited) about Ticketmaster's products and promoters use of Ticketmaster products, specifically on the dimension of whether and/or how the Ticketmaster product is or is not appealing to promoters to choose those venues, and competitive with or superior to alternative ticketing systems.   That feedback forms a "mental model" is core to Mr. Marcus's role at Ticketmaster—which is largely a promoter- and artist-facing role. Mr. Marcus will testify that Mr. |

10

| Exhibit Number | Plaintiffs' Objections | Bases for Objections | Defendants' Responses |
|---|---|---|---|
| | | | Messina's second message (at 2:11) contributed to the formation and development of that "mental model," serving as an important sanity-check on his beliefs regarding his decisions on investments in the product and future investment decisions as well. Plaintiffs put this at issue by arguing that venues choose Ticketmaster because of content concerns, as opposed to other reasons, including that promoters like or prefer the Ticketmaster product to other ticketing products, and may not select venues who don't use that product.   The entire text chain is also admissible as context for Mr. Messina's text.  The chain is also admissible to show Mr. Marcus's response to it to being told that Denver Stadium was getting close to a deal with Seatgeek, and not the truth of whether or not they were doing so. |

**Defendants' Objections to Plaintiffs' Counter-Designations**

A.    Defendants' Objections to Plaintiffs' Counter-Designations

| Witness (Last, First) | Page:Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| Brown, Dave | 70:20–71:19 | SCOPE | Defendants' designated testimony from Mr. Brown is solely relating to ticketing and his reasons for choosing Ticketmaster as the primary ticketer of the American Airlines arena.  Of note, he testifies unequivocally that his reasons for choosing Ticketmaster relate entirely to the quality of Ticketmaster's platform and offering (*e.g.* 27:13-29:25), and nothing to do with content threats.  (*See, e.g.*, 31:6-24). Plaintiffs' ostensible counter-designations relate to Live Nation promoted concerts at the arena and a hypothetical question as to what would happen to the arena if, hypothetically, Live Nation stopped bringing shows to the arena.  That ostensible counter-designation has nothing to do with the ticketing-related affirmative designations and therefore is not properly within the scope of Defendants' affirmative designations. | When Defendants are offering a venue witness to discuss his firm's relationship with Ticketmaster and views of the company, they open the door to Plaintiffs establishing the basic facts of the witness's relationship with the combined company and dependence on Live Nation content.

In this deposition, the witness is further asked whether the decision to extend Ticketmaster's contract was the result of threats or retaliation by Live Nation (31:6-32:11). Regardless of a given witness's answer to these questions, the extent and importance of the venue's relationship with Live Nation provides key context to this questioning. |

12

| Witness (Last, First) | Page:Line Range | Defendants' Objections | Bases for Objections | Plaintiffs' Responses |
|---|---|---|---|---|
| Brown, Dave | 83:21–84:2 | SCOPE | As noted above, Defendants' affirmative designations relate only to ticketing.  Plaintiffs' ostensible counter-designation relates to long-term booking agreements and thus is outside the scope of Defendants' affirmative designations. | When Defendants are offering a venue witness to discuss his firm's relationship with Ticketmaster and views of the company, they open the door to Plaintiffs establishing the basic facts of the witness's relationship with the combined company and dependence on Live Nation content.<br><br>In this deposition, the witness is further asked whether the decision to extend Ticketmaster's contract was the result of threats or retaliation by Live Nation (31:6-32:11). Regardless of a given witness's answer to these questions, the extent and importance of the venue's relationship with Live Nation provides key context to this questioning. |

| Marion, Michael | 87:22–89:3, 89:8–89:13, 90:20–91:12 | SCOPE | Defendants' designated testimony from Mr. Marion is solely relating to ticketing and his reasons for choosing Ticketmaster as the primary ticketer of the Simmons Bank Arena.  Of note, he testifies unequivocally that his reasons for choosing Ticketmaster relate entirely to the quality of Ticketmaster's platform and offering (*see e.g.* 22:11-25:8), and nothing to do with content concerts.  (*see, e.g.*, 114:15-25). Plaintiffs' ostensible counter-designations relate entirely to Live Nation's co-promotion agreement, not ticketing, and so are outside the scope of Defendants' affirmative designations.  That Mr. Marion testified that he has no content concerns in relation to choosing Ticketmaster does not open the door to unrelated testimony regarding co-promotion agreements with Live Nation. Defendants note that they have counter-counter designated certain testimony relating to promotions, which designations would fall away if Plaintiffs' ostensible counter-designations are withdrawn or excluded. | When Defendants are offering a venue witness to discuss his firm's relationship with Ticketmaster and views of the company, they open the door to Plaintiffs establishing the basic facts of the witness's relationship with the combined company and dependence on Live Nation content.<br><br>In this deposition, the witness testifying to the venue's relationship to Ticketmaster is also involved in booking shows for the venue. (15:9-12). Defendants designated testimony about the venue's success bringing shows to the arena (15:13-19), including shows from Live Nation (16:6-9). These designations provide context for the venue's relationship with the combined companies, making the objected-to testimony important additional context. |

15