# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

New York
Brussels
Hong Kong
Houston
London
Los Angeles
San Francisco
Tokyo
Toronto
Wilmington

2001 K Street, NW
Washington, DC 20006-1047
+1 202 223 7300

**Benjamin Klein**
**Direct Dial:** +1 202 223 7317
**Email:** bklein@paulweiss.com

June 12, 2026

**VIA ECF AND EMAIL**

The Honorable Arun Subramanian
United States District Court Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007

> Re: *US et al.* v. *Live Nation et al.*, No. 1:24-cv-03973 (AS) – Letter Motion
> Regarding the Sealing/Redaction of JX-144

Dear Judge Subramanian:

Pursuant to Rule 11 of Your Honor's Individual Practices in Civil Cases and the procedures ordered for this action, we write on behalf of our clients, the Florida Panthers Hockey Club, Ltd. and Arena Operating Company, Ltd. (collectively, "FPHC/AOC"), who are non-parties to the above-captioned case, to respectfully request that this Court seal/redact JX-144, which Plaintiffs recently advised may be subject to disclosure despite not having been admitted into evidence at the trial. We understand that Defendants filed their joint submissions regarding evidentiary issues on April 29, 2026 (ECF Nos. 1474, 1478 *et seq*.) and requested in that letter filing that unadmitted exhibits – including JX-144, which was previously filed under seal by Defendants at ECF Nos. 1475, 1478 Ex. 32 – be sealed in full. We further understand that the Court denied without prejudice that request on May 6, 2026 (ECF No. 1488), and the Parties have since advised third parties like the FPHC/AOC to address any sealing/redaction requests by filing motions regarding their respective records and information.

FPHC/AOC previously requested that this Court seal/redact JX-144 in its letter motion filed on March 26, 2026 (ECF No. 1333), and we provided the Court with a "red box" version of JX-144 reflecting our redaction requests the same day.[1]  For the reasons set forth below, FPHC/AOC renew their request that JX-144 be sealed/redacted.  Counsel for

---

[1] FPHC/AOC will resend the Court via email the same "red box" markup reflecting the proposed redactions.

FPHC/AOC have conferred with both the Plaintiffs and Defendants regarding this matter and they do not oppose our request.

While there is a general presumption in favor of public access to judicial documents, records may be sealed or redacted where "necessary to preserve higher values" and "the sealing order is narrowly tailored to achieve that aim." *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). "Under this framework, a court must determine: (1) whether the document subject to a sealing request qualifies as a judicial document; (2) the weight of the presumption of public access attaching to that judicial document; and (3) if any countervailing factors or higher values outweigh the right of public access to that judicial document." *Sec. & Exch. Comm'n* v. *Telegram Grp. Inc.*, 2020 WL 3264264, at *1 (S.D.N.Y. June 17, 2020) (citation omitted).

A presumption of access may be outweighed by a party's interest in "protecting confidential business information" from disclosure that would subject it to "financial harm" or a "significant competitive advantage." *Standard Inv. Chartered, Inc.* v. *Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009). Accordingly, "[c]ourts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard." *Kewazinga Corp.* v. *Microsoft Corp.*, 2021 WL 1222122, at *3 (S.D.N.Y. Mar. 31, 2021). Documents that reveal the terms of contracts or content of confidential negotiations are among the types of files that courts routinely recognize as justifying protection from the public view when used in litigation. *See, e.g., Capri Sun GmbH* v. *Am. Bev. Corp.*, 2021 U.S. Dist. LEXIS 121094, at *4 (S.D.N.Y. June 4, 2021); *see also Rubik's Brand Ltd.* v. *Flambeau, Inc.*, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021).

These countervailing factors are given even greater weight where, as here, the confidential information of a *non-party* is at stake. *See, e.g.*, *United States* v. *Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."); *Dodona I, LLC* v. *Goldman, Sachs & Co.*, 119 F. Supp.3d 152, 156 (S.D.N.Y. 2015) (protecting third-party investment strategies, customer names, and pricing information).

JX-144 was produced by FPHC/AOC in response to a subpoena by Plaintiffs and has been stamped and treated from that moment forward as "Highly Confidential" in accordance with this Court's Amended Protective Order (ECF No. 347) because it contains competitively sensitive, non-public business information. JX-144 consists of an internal company email transmitting a term sheet for an ongoing ticketing and sponsorship contract. It contains "confidential contractual terms" and "proposed contractual terms," and reflects "trade secrets," "current or future non-public financial, marketing, or strategic business planning information," "internal deliberations about negotiating positions," and "current or future non-public information regarding prices, costs, or margins." (ECF No. 347, at ¶ 2). More

specifically, JX-144 involves the following categories of "Highly Confidential" information as set forth in the Amended Protective Order:

- **Trade secrets, including non-public, commercially sensitive customer lists (¶ 2(a)).** JX-144 sets forth FPHC/AOC's proprietary ticketing fee structure as well as revenue-sharing arrangements.  These terms constitute proprietary, competitively sensitive information that, if disclosed, would reveal the economics of FPHC/AOC's ticketing operations.
- **Current or future non-public financial, marketing, or strategic business planning information (¶ 2(b)).** JX-144 discloses specific annual sponsorship fees, performance bonuses, and other financial arrangements which, taken together, reveal the financial architecture of its ticketing arrangements.
- **Confidential contractual terms, proposed contractual terms, or negotiating positions, including internal deliberations about negotiating positions (¶ 2(f)).** As its title suggests, JX-144 includes a comprehensive term sheet reflecting the terms for FPHC/AOC's exclusive ticketing partnership, and the cover email reflects internal deliberations about certain provisions in that term sheet.
- **Current or future non-public information regarding prices, costs, or margins (¶ 2(c)).** JX-144 contains details about FPHC/AOC's fee structures and pricing arrangements, all of which constitute non-public cost and pricing information.
- **Information relating to plans for existing or proposed future expansions (¶ 2(d))**. JX-144 also contains information about FPHC/AOC's future planning and arrangements, including information that is non-public.

Additionally, the term sheet itself includes a contractual confidentiality clause, providing that "[t]he terms of this Term Sheet are confidential and subject to the Mutual Non-Disclosure Agreement between the Parties."  The parties thus expressly agreed, at arms' length, that the commercial terms of their arrangement would remain non-public — an agreement that predates this litigation and that public disclosure would override.

If JX-144 was made public, it could result in substantial harm to FPHC/AOC, including revealing "proprietary analysis and provid[ing] competitors with an unearned advantage." *Telegram Grp.*, 2020 WL 3264264, at *3. Specifically, disclosure would reveal the precise fee structures, revenue-share percentages, and financial thresholds at which FPHC/AOC has contracted — information that could be exploited by others and undercut FPHC/AOC's negotiating position in future deals.  Courts may shield such documents from disclosure to avert potential harm from the release of sensitive business information and to protect from the disclosure of information that may harm a business's ability to compete in the future. *See, e.g., Bergen Brunswig Corp.* v. *Ivax Corp.*, 1998 WL 113976, at *3 (S.D.N.Y. Mar. 12, 1998) (collecting cases).

For these reasons, FPHC/AOC respectfully requests that the Court grant its sealing/redaction request.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                    4

Respectfully Submitted,

/s/ *Benjamin Klein*

Benjamin Klein

*Admitted pro hac vice*