

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jun 30 2026

## US COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____X

Re:  Petition for Writ of Supervisory Mandamus
From:  US Patentee/Petitioner Amy Weissbrod-Gurvey
28 USC §§455, 144, 1651(a)

Case Nos. 24cv3973, 24cv2930, 06cv1202, 13cv2565, 18cv2206 (NYSD)

cc: (1) US Court of Appeals for the Federal Circuit Docket #25-1954
(2) Central District of California (CACD), Docket # 23-04381-MEMF
(3) prose@nysd.uscourts.gov
(4) Us Dept. of Justice Antitrust Division

_____X

Petitioner, Amy Weissbrod-Gurvey, US patentee/entrepreneur and California General Counsel of LIVE-Fi® Technology Holdings, LLC who is <u>not</u> admitted to practice law in NYS or before the United States Patent and Trademark Office (USPTO) and invented and owns the standard essential US patents for ticketing management, ticket overlay platforms and sports betting being willfully infringed by defendants Live Nation Entertainment (LNE), MLB, MLB Advanced Media, Phish and others since 2009, declares to the truth of the following statements in moving for a Petition for a Writ of Supervisory Mandamus against the US District Court Southern District of NY (NYSD). Petitioner has

1

no other remedy at law.  At issue are Petitioner's US Patents 11403566, D647910S, 7603321 and Registered US Copyrights in the Apparatuses and Platform Source Codes TXu001265644, 1-5165369591 **none of** **which** have gotten hearing on the merits from the NYSD since 2010 in violation of the Fourteenth Amendment of the United States Constitution.  IN 2026 it was admitted by Attorney Service Clerks in Room 250 that Julie Allsman, an NYSD insider had unilaterally deleted Petitioner's infringement complaint from a NYSD docket without due process of law.

In addition, Petitioner has continued to be denied intervention as of right in other patent proceedings. In a parallel NYSD lawsuit, 24cv2930 (PAE)(RFT), the plaintiff, Alan Amron is an alleged infringer of Petitioner's patents and is liable for USPTO misconduct having never cited to Petition's patents as prior art rendering his single patent claim unenforceable. However, Petitioner was improperly denied intervention by Judge Engelmayer in October 2025 and her reconsideration motion was never adjudicated.

There are separate matters of the court's equal protection violations. In 2018 another patentee with a ticketing-related patent, Bytemark, was given a third bite at the apple by NYSD judge Paul Gardephe to sue Xerox when two previous patents were already invalidated by the ED Texas. 1-17:cv1803 (NYSD)

Moreover, the State of NY has engaged in Petitioner's *ex parte* retaliatory harassment by acts of tortious interference by its Office of Court Administration (OCA) insider Shawn Kerby. Kerby was discovered in July 2025 to have been writing ex parte letters to the US Court of Appeals for the Federal Circuit not to hear Petitioner's three arising under patent appeals to orders of the NYSD denying infrngment hearings and defaming Petitioner in those letter. The Federal Circuit never served Petitioner with Kerby's proffers but transferred three

2

arising under patent appeals, owed decisions on the merits out the court. Fed Cir. Docket #s 18-2076, 20-1620, 23-134.

Furthermore, seven NYS agencies have benefited from the continued constitutional failure of NYSD judges to grant injunctions and patent infringement hearings against defendant LNE. Petitioner was forced to sue NYS decisionmakers of the Port Authority of NY and NJ, the NYS Gaming Commission and NYS Thruway NYND to stop using Petitioner's patents without permission under *Ex parte Young*, 209 US 123 (1908). The sitting judge in 24cv211 (NYND) Ann Nardacci fabricated that Petitioner sought damages for patent infringement against the State when only prospective injunctive relief was sought, causing the judge to transfer the lawsuit to the chief judge Brenda Sannes.

However, because the State of New York has waived Eleventh Amendment immunity for acts of tortious interference, unjust enrichment and misappropriation of property by its officers under Section 8-10 of the Court of Claims Act, Petitioner was entitled to enter the Court of Claims to recover damages against the State. Instead, the Court of Claims judge Richard Sise returned three of Petitioner's otherwise properly pleaded claims unadjudicated. The sum total of constitutional violations by NYSD and NYS insiders establishes that court insiders were used to delete docket entries in multiple cases to deny Petitioner constitutional access to protect her patents and copyrights.

The principal issue now is NYSD insider Julie Allsman's continued *ex parte* communications with presiding judge Arun Subramanian in the antitrust and divestiture lawsuit, *US v. Live Nation Entertainment*, Inc. (LNE) 24cv3973, on March 13, 2026. Allsman's previous deletion of docket entry #638 in that lawsuit caused Judge Engelmayer in 24cv2930 to find that no pro hac vice status had ever been granted to Petitioner by the NYSD, a clear error. Thereafter

3

when Petitioner moved for reconsideration, the motion was left hanging and the Judge granted the plaintiff Amron voluntarily withdrawal of his infringement lawsuit against MLB Advanced Media and 30 national baseball teams.

However, on March 28, 2026, the *sine qua non* occurred. In the 24cv3973 antitrust and divestiture lawsuit, defendant LNE secretly offered Petitioner's ticketing overlay patents ex parte to US Dept. of Justice insiders to attempt to settle the lawsuit and get an express proviso that the merged entity would not be broken up by the court. Petitioner was never an active party and immediately moved by order to show cause to intervene as a pro se patentee. The motion has not been adjudicated. But based on the jury verdict against defendant Live Nation Entertainment and Ticketmaster finding an illegal vertical monopoly in restraint of trade on April 15, 2026, the Government must file a Tunney Act lawsuit to get approval of the settlement that was approved by only eight of the 39 US plaintiff states. Considering the court's long history of constitutional violations, Petitioner has legitimate concerns that she will be denied the right to participate in the Government's Tunney proceedings.

Petitioner respectfully petitions this Court pursuant to the All Writs Act, 28 U.S.C. § 1651(a), directing the United States District Court for the Southern District of New York (NYSD) to:

1.      Cease all further action in all Petitioner's adversely affected matters starting docket #06cv1202 before former Judge Barbara S. Jones and Magistrate Henry Pitman. *Ex parte* obstruction of justice by defendant LN and its lawyers being unlawfully dismissed based on fraudulent Rule 12(b) moving papers that defendant LNE had "*no NY contacts*" and "*could not compelled to answer Petitioner's infringement claims in NYS*".  Defendant's fraud was contrary to LNE defendants' admissions in the 2009 merger proceeding with defendant Ticketmaster before the DC District Court that it owned and service three NYC

4

venues since 2005 – House of Blues, Irving Plaza and Roseland Ballroom. 1:10-cv00139 (RMC)(DCD).

In 2012, Magistrate Henry Pitman began presiding without a supervising judge or the consent of both parties after Judge Jones left the case and court. As discovered in 2026, Petitioner's infringement complaint and Rule 60(b) motion papers and had already been unilaterally deleted from the docket by Allman. However, copies of the deleted complaint and Rule 60(b) motion papers were subsequently located in Judge Jones's Chambers and in the NYSD Cashier microfiche files by clerk Deborah Holmes. It was discovered in 2012 that Judge Jones also abused discretion granting unilateral withdrawal to Petitioner's attorneys at Squitieri & Fearon after the case was on appeal and jurisdiction was lost to enter further orders.

NOTE: The 2009 fraudulent jurisdictional moving papers were filed by defendant Live Nation's attorneys J. Richard Supple of Hinshaw & Culbertson, Steven Schortgen of Baker Botts and Cowan Liebowitz & Latman, PC after these attorneys engaged in *ex parte* misconduct and unilateral communications with Judge Jones to get patent discovery and arbitration for three years. Petitioner won binding arbitration before the NYSD on August 4, 2029 when arbitration was originally scheduled for 2008.

In 2016, Supple was identified as dually serving as a staff of counsel at the First Dept. attorney grievance committee (AGC) without disclosing conflicts of interest and had inserted forged and unserved documents into "ordered concealed" state files.

Petitioner was given first access to the state files on August 26, 2025, nine years later, at 41 Madison Avenue. Inspection confirmed that multiple documents were forgeries affixing the photocopied signature of a dead 2002 former AGC chief counsel Paul Curran that had been superimposed onto photocopied pre-2000 AGC letterhead to conceal the names of the conspirators and state tortfeasors.

2.     Preserve and produce all audit logs, deletion logs, and internal communications relating to docket deletions and alterations;

3.      Transfer all affected matters to a neutral district;

4.      Certify the record of misconduct for external review; and

5.      Restore all deleted docket entries

## I. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1651(a) (All Writs Act) and supervisory authority over the Southern District of NY (NYSD).

## II. ISSUES PRESENTED

1.      Whether NYSD's docket integrity has been compromised by insider Allsman's unilateral and continuing deletion of docket entries, *ex parte* postings on the Internet and enabling judges to copy forged and fraudulent documents not part of the record, and by engaging in continued *ex parte* communications with NYSD judges through 2026 in multiple lawsuits.

2.      Whether NYSD's docket integrity has been compromised because of Shawn Kerby's parallel *ex parte* obstruction of justice before the US Court of Appeals for the Federal Circuit as a NYS officer of NYS's Office of Court Administration serving in her official capacity.

[NOTE: In response to Kerby's letters, the Federal Circuit in turn did not serve Petitioner or hear three of Petitioner's arising under patent appeals to unconstitutional orders of the NYSD denying infringement hearings – 18-2076, 20-1620 and 23-134 - and transferred these appeals out of the court and Petitioner contends the transfer orders are void. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9]

3.      Whether NYSD judge Lorna Schofield who considered and cited to statements in the *ex parte* postings from Allsman and Kerby's since 2015 without service on Petitioner must be disqualified for extrajudicial bias. The judge entered *sua sponte* unconstitutional orders that

Petitioner must pay $10,000 into the NYSD cashier for a special patent master who was never hired, did not disqualify J. Richard Supple in violation of NY's Judiciary Law Part 1240.6d, and revoked Petitioner's ECF filing privileges and never granted an amended pleading as more anticipated patent claims issued from the USPTO in defiance of preempting federal mandates. It took three years to get the money refunded. *Anza Technology v. Mushkin*, 934 F. 3d 1349 (Fed Cir. 2019); *Metzler Investments Gmbh v. Chipotle Mexican Gri*ll, 970 F. 3d 133 (2d Cir. 2020); *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2d Cir 2011).

4.      Whether NYSD and NYND must vacate all orders denying prospective injunctive relief against NYS officers including Kerby and decisionmakers for taking agencies for continuing violations of Petitioner's constitutional rights. *Ex parte Young*, 209 US 123 (1908).

5.      Whether the NYSD must be structurally disqualified because Allsman deprived Petitioner of infringement and injunctive hearings and also unilaterally  deleted Petitioner's vested 1987 out-of-state NYSD roster listing and deprived Petitioner of due process of law.

6.      Whether Petitioner was denied equal protection based on orders in favor of Bytemark by NYSD Judge Gardephe since 2018.

7.       Whether Petitioner must be ordered her constitutional right to participate in the Government's upcoming Tunney Act proceedings in *US v. Live Nation Entertainment* (LNE), 24cv3973. If Petitioner continues to be denied access, Petitioner will have lost her patents and copyrights and will continue to suffer manifest injustice.

8.      Whether transfer to a neutral district is required to preserve due process.

9.      Whether the Second Circuit must intervene to protect the integrity of federal judicial proceedings based on an infected record caused by Allsman and Kerby.

10.      Whether patent prosecution delay before the United States Patent and Trademark Office was also caused by NYSD defendants LNE,

Ticketmaster and their law firms Hinshaw & Culbertson, Cowan Liebowitz & Latman, and Baker Botts.

11.     Whether Petitioner's FOIA requests to date ignored and directed to NYSD administration and to the USPTO General Counsel must be answered.

NOTE: Petitioner's standard essential patent application, 11253912 was divided up by an examiner in 2009 in violation of the Administrative Procedures Act, 5 USC §§551-596, 701, et seq. (APA) when only 10 of 35 claims issued, and the continuation application filed October 11, 2009 did not issue for 10 years until 2022, when the deadline was three years, further delaying enforcement. *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010).

12.     Whether the State of NY harbors conflicts of interest having implanted a NYS Legal Assistance Group attorney Robyn Tarnofsky as the senior pro se help attorney for the NYSD to sign retainer agreements with Petitioner when seven NYS agencies are using Petitioner's patents without permission.

13.     Whether all orders entered by Judge Jones, Magistrate Pitman, Judge Schofield and Judge Nardacci must be vacated based on extrajudicial bias and *ex parte* consideration of documents not part of the record that were never served on Petitioner.

14.     Whether orders of the NYSD in 13cv2565 and 18cv2206 refusing to order prospective injunctive relief against NYS inside officers for continuing violations of Petitioner's constitutional rights and tortious interference with Petitioner's Federal Circuit appeals must be vacated. *Ex parte Young*, 209 US 123 (1908)

15.     Whether defiance of NY's Executive Law, subd 63-1 and conflicts of interest harbored by the NYS Attorney General must be considered in determining if Petitioner's constitutional rights to an unbiased tribunal were violated. *Kentucky v. Graham*, 472 US 159 (1984) *Pulliam v. Allen*, 466 US 522 (1984)

16.     Whether Petitioner's good name and California bar certification unilaterally deleted by Allsman alleged in 2013 must be immediately reinstated to the roster of NYSD attorneys.

17.     Whether after reinstatement of docket entries, all matters must be transferred to an unbiased tribunal.

# III. STATEMENT OF FACTS

All acts of the court insiders Allsman and Kerby were undertaken ex parte without service by the NYSD, by three other district courts and by Federal Circuit proving extrajudicial bias, violations of due process and manifest injustice. Orders entered *sua sponte* without service including based consideration of documents not part of the record are subject to mandatory vacatur. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 *Ex parte* Communications.

Petitioner appends in support of this Petition court orders, an Appendix of motion papers and exhibits proving deletion by Allsman from the NYSD dockets, orders to show cause, relevant public documents and a report to the NYND chief judge Hon. Brenda Sannes based on Petitioner's first allowed inspection on August 26, 2025 of First Dept. attorney grievance committee (AGC) proving NYSD defendants ex parte forgery of unserved documents since 2010 at 41 Madison Avenue, NYC. All documents are incorporated by reference as if fully set forth hereat.

# IV.    MEMORANDUM OF LAW

1.     When a litigant discovers court-insider misconduct, the affected court is disqualified from continuing until the issue is investigated externally. This is because:

- The court cannot investigate itself.
- The misconduct affects the integrity of the entire docket

- Petitioner's right to a fair tribunal has already been seriously compromised including by loss of years of patent term.

2.    Petitioner took the correct first step by reporting insider Allsman to the Department of Justice. That is exactly what federal law requires. But DOJ does **not** *a*utomatically fix cases unless a litigant takes affirmative steps to protect constitutional rights.

3.    Petitioner will now have to seek a motion for transfer for cause under 28 USC §§455, 144. Because the USPTO is tangentially involved, either the DC District Court will be petitioned or the Federal Circuit will be petitioned to remand Petitioner's prejudiced 23cv04381 lawsuit back to the Central District of California (CACD). The judge presiding in that lawsuit took judicial notice of NYSD unconstitutional orders in response to defendants' frivolous motion papers when all orders are challenged and on appeal, and also denied Petitioner an amended complaint.

The grounds include that:

- NYSD is structurally tainted.
- A court employee engaged in record tampering and ex parte communications with Petitioner's adverse parties, magistrates and judges since at least 2012.
- Petitioner's patent cases and constitutional rights were prejudiced for thirteen years.
- Petitioner was denied infringement hearings.
- Allsman's misconduct continued into 2026 in the current 24cv3973 antitrust and divestiture lawsuit against defendant Live Nation Entertainment, an original willful infringer defendant in the first 06cv1202 lawsuit.
- The corruption directly affected Petitioner's constitutional rights and continues to prejudice Petitioner's ability to litigate and protect her interests.
- Petitioner refiled claims before the CACD were filed before the evidence of *ex parte* obstruction of justice was discovered the judge improperly granted judicial notice to past orders of the NYSD based on frivolous litigation papers by defendant LNE and its attorneys.

10

- With the benefit of the *ex parte* corruption evidence, Petitioner will not notify the Federal Circuit. 25-1954 and seek remand of the CACD lawsuit.

4.     Unfortunately, it appears that Petitioner is entitled to file a *Bivens* claim against Allsman, Federal Circuit clerks who transferred three of Petitioner's patent appeals without ordering service on Petitioner of *ex parte* proffers accepted from Kerby, and against USPTO insiders who engaged in ex parte communications with Petitioner's adversaries on behalf of defendant Live Nation Entertainment and Cowan Liebowitz & Latman and by so doing violated provisions of the APA during delayed prosecution of Petitioner's patents.

5.     Any federal court employee who deletes docket entries, interferes with filings, violates preempting patent statutes and obstructions access to the courts is personally liable for violations of the Fifth Amendment Due Process Clause the First Amendment right to petition the government and get access to the courts, and obstruction of justice.

6.     ORAL ARGUMENT IS REQUESTED ON THIS PETITION.

# V. CONCLUSION

**WHEREFORE,** Petitioner prays that this Petition seeking a writ of supervisory mandamus be granted in all respects.

Dated:  June 8, 2026
Princeton, NJ

/amyweissbrodgurvey/

_____
AMY WEISSBROD GURVEY
PETITIONER
ECF FILING

US COURT OF APPEALS SECOND CIRCUIT
US COURT OF APPEALS FOR THE FEDERAL CIRCUIT
PRO SE OFFICE NYSD

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): _____    Caption [use short title]:

Motion for: Writ of Supervisory Mandamus
_____
_____

In re Amy Weissbrod Gurvey, US Patentee Pe

Set forth below precise, complete statement of relief sought:

Reinstate unilaterally deleted NYSD docket entries removed in viol. of Due Process
by NYSD based on judge Allsman + orders entered
sua sponte based on ex parte communications
with Allsman + CCl under Shawn Kerley
on consideration of ex parte postings never served on P.
ex parte orders were sent to the Fed Cir since 2018.
Corruption discovered July 2025 March 16, 2026.

Special relief requested

To ensure P's right to
participate in turnover
proceedg post jury verdict
noted 4-15-26 in 24-cv-3973
agive Nation + Ticketmaster
P is inventor to own six patent
in ticket overlay technology
offered by Live Nation ex parte
to the Dept of Justice 3-29-26
P is now a party but prehac
vice status for LN FC
unilaterally revoked

**MOVING PARTY:** Petitioner US Patentee    **OPPOSING PARTY:** _____

☐ Plaintiff    ☐ Defendant

Ⓧ Appellant/Petitioner  ☐ Appellee/Respondent

**MOVING ATTORNEY:** _____    **OPPOSING ATTORNEY:** _____

[name of attorney, with firm, address, phone number and e-mail]

Fed Cir cases Appealed 18-2076, 20-1620, 23-134
NYSD Dist Court Cases — 06CV1202  13-CV-2565, 18-CV-2206, 24-CV-2930  24-CV-3973
NYNY Case - 24CV 211 (AMN)(BS)
(ACD) Cas - 23CV-04381

Court- Judge/ Agency appealed from: _____

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
Ⓧ Yes  ☐ No (explain): _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No

Requested return date and explanation of emergency:
Electronic service on following
courts + judges 6-8-26
Fed Circuit (Hon's) Subramanian
Schofield, Nardacci, Sannes, Parnia
(CACD) M E M Finingong                Torres

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed Ⓧ Don't Know

Does opposing counsel intend to file a response:
☐ Yes  ☐ No  Ⓧ Don't Know

Is the oral argument on motion requested?  Ⓧ Yes  ☐ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  Ⓧ No  If yes, enter date: _____

**Signature of Moving Attorney:**
_____  Date: 6-8-26    Service: Ⓧ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)





U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**

SEP - 5 2025

AT_____O'CLOCK_____
John M. Domurad. Clerk - Syracuse

*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

August 31, 2025

Hon. Brenda Sannes
Chief Judge
Northern District of NY
PO Box 7367
100 S. Clinton Street
Syracuse, New York 13261-7367

cc:  Hon. Anne Nardacci
     NDNY 445 Broadway
     Albany, NY 12207

*Gurvey v. Hon(s). Gov. Kathy Hochul, Letitia James, Joseph Zayes, Port Authority of NY and NJ, NYS Thruway, et al.*
**(AMN)(CFH)(PJE)  Docket # 24cv211 (NDNY)**

**Motion to sequester NYS files by Injunction, Vacate Orders under FRCP Rule 60(b) and order recusal**

Dear Judge Sannes:

This past Tuesday, August 26, 2025, after <u>fourteen (14) years</u>, the undersigned US patentee of standard essential apparatus and method patents for direct-to-user live event ticketing management and health care delivery, also a California attorney in excellent standing, was finally given <u>first</u> access to New York State files ordered "concealed" by the Appellate Division First Dept. in an order entered April 21, 2016. That order was found nonfinal by the NY Court of Appeals and could not be applied by any subsequent court.

1

The files were stated as unlawfully opened in 2007 by NYS staff counsels J. Richard Supple, an attorney O. Lee Squitieri under the supervision and control of Jorge Dopico chief counsel at the First Dept. attorney grievance committee (AGC) and presiding AGC administrative justice Luis Gonzalez. The files were also opened in violation of the Administrative Procedures Act, 5 USC §§551- 559, 701-706 (APA) without jurisdiction over me in the capacity of an attorney because I am not admitted to practice law in New York State.

The files demonstrate malicious abuse of process, unprivileged defamation and retaliatory harassment to prevent me from enforcing my US patents in NY.  Supple and his former firm Hinshaw & Culbertson, AGC staff counsels, were dually serving as defense attorneys for Live Nation Entertainment and Cowan Liebowitz & Latman of NY in a parallel SDNY patent infringement, unfair competition and conflicts of interest lawsuit proving motive.

On August 26, 2025, eight First Dept. armed officers serving at 27 Madison Avenue including five marshals carrying guns finally gave me access. Two marshals also carrying guns were protecting a room with 12-14 overstuffed Redwells in adjoining offices at 41 Madison Avenue. After initial inspection, I only completed 1/3 of the review and must return.

I now seek that the NDNY order sequestration of these files by injunction and vacate all orders in this NDNY lawsuit. Judge Nardacci must recuse herself because impartiality can seriously be questioned. 28 USC 455(a) in copying the fraudulent Internet notices that the undersigned is "disbarred".  It should now be obvious Plaintiff's constitutional rights continue to be seriously violated by RICO conspiracy violations by state officers. Declaratory determinations must be entered by this Court.

2

In 15 years, I never got a single hearing on my US patents in violation of the Fourteenth Amendment from the SDNY or this Court. Moreover, other courts are copying documents posted on the Internet by Office of Court Administration attorney Shawn Kerby and clerk Sam Younger, *sua sponte* without motions on notice when the documents are fraudulent.  In violation of due process five Appellant Division First Dept. justice ordered that the files would remain concealed in an order entered April 21, 2015.

Members of the Office of the Letitia James were also implicated in the elaborate RICO corruption scandal including Michael Berg with AGC staff counsels Thomas Cahill (deceased), staff attorneys James T. Shed, Orlando Reyes, Raymond Vallejo and Naomi Goldstein, Dopico, First Dept. staff attorney Ms. Holmes, several clerks and former justice Gonzalez.

It was in 2011 that I first filed a NYS mandamus lawsuit under Article 78 of the CPLR. That petition was dismissed *sua sponte* on January 3, 2014 by the First Dept. without motion on notice after *sua sponte* transfer from the Supreme Court of NY. (110774-2011) My 2017 follow-up petition was also not heard. It was transferred to the 2d Dept. and again *sua sponte* dismissed without motion on notice in 2018. [132-17 (1st Dept.)] became 01366-18 (2d Dept.)] These orders were also appealed as of right to the NY Court of Appeals that found them *"nonfinal, that they did not finally determine an action and that no constitutional issue was directly involved"*.  Parallel petitions filed before the SDNY seeking prospective injunctive relief and declaratory determinations against NYS presiding justices were also dismissed *sua sponte* without motions on notice. 13cv2565 (JMF), 18-cv-2206 (AT). *Ex parte Young*, 209 US 123 (1908); *Wells Fargo Bank v. St. Louis*, 2024 WL 2737961 (NYAD 2d Dept. 2024). I was then forced to move for a writ of mandamus petition before the US Supreme Court. This petition is pending. #24-7441.

3

In 2025, the smoking gun was discovered. Since 2018, OCA's Kerby had been writing *ex parte* letters to the US Court of Appeals for the Federal Circuit that I not be granted "arising under" patent appeals to orders of the SDNY denying me infringement hearings and inducing infringement hearings against Live Nation Entertainment (LNE) and Cowan Liebowitz & Latman since 2017. Mindy's Cosmetics v. Dakar, 611 F. 3d 590 (9th Cir. 2010). LNE is now the subject of an antitrust divestiture petition before the SDNY (24cv3973).

The court had no justification to dismiss defendant Port Authority of NY and NJ from infringement claims and an amended complaint. The Port Authority is a private entity using the patents without permission.

In response to Kerby's ex parte fraud and unprivileged defamation including because OCA was not a party to the SDNY lawsuit, the Federal Circuit in response transferred three patent appeals to the Second Circuit [18-2076, 20-1620, 23-134] proving monumental damages. The Second Circuit has no jurisdiction to hear an arising under patent appeal. Supremacy Clause, Art. VI, Cl. 2; *Haywood v. Drown*, 556 US 729 (2009); *Christianson v. Colt Industries Operating Corp.*, 486 US 800 (1988).

Multiple venture partners of NYC such as the new Yankee Stadium, MTA and MetroCard are also using the patents without permission and reaping millions of dollars a week in revenues. Although I can sue the City and its partners directly, I continue to be unlawfully denied access to all district court courts in NY. *Monell v. Dept. of Social Services*, 436 US 658 (1978). The reason is OCA clerk Younger's fraudulent postings on the Internet since 2013 that "I was disbarred in NY". Younger has not taken these postings down after

4

several requests. There is no other remedy at law but injunction from the district court.

OCA attorney Kerby sent the same fraudulent notices to the Federal Circuit *ex parte* since 2018. The Federal Circuit never served me with Kerby's unlawful *ex parte* proffers in violation of due process and ABA Rule 2.9 on *Ex parte* Communications. Kerby had no standing under the APA to write *ex parte* letters to an appeals court seeking to deny me infringement appeals to orders of the SNDY.

In this 24cv211 NDNY lawsuit, I continue to be the innocent victim of RICO conspiratorial fraud, malicious abuse of process and retaliatory harassment by NYS officers for ulterior motives.

The files I just got access to on August 26 proved an elaborate RICO concealment practice by state officers. Forged AGC documents were first mailed to me without CPLR service in 2007 affixing the signature of a former First Dept. chief counsel Paul Curran. **Curran left the state office in 2002 and died of cancer in 2007**. Curran never signed these documents. Curran's name was forged onto photocopies of old AGC letterhead. In addition, the names of more recent AGC counsels - Ralph Riordan and Charlotte Moses Fischman- were superimposed on the same photocopied letterhead and are much darker in type in comparison with the other roster names. The Redwells establish that many forged documents were manufactured by AGC court officers.

Supple harboring conflicts of interest. As staff counsel to the AGC where the USPTO Commissioner had filed ethics violations against Hinshaw's Cowan Liebowitz clients, Supple could never accept the Cowan firm's SDNY retainer. NY's Judiciary Law Part 1240.6d, 1240.18. No AGC officer could give Supple and Squitieri ex parte access to enter unserved and forged documents into the confidential Appellate

5

Division files.  A *sua sponte* order of the First Dept. entered in 2012 and then the SDNY entered in 2013 (13-cv-2565)(JMF)) both say my license in NYS was suspended for six months on December 4, 2012. **There was no license to suspend in New York State existing in 2012**. My temporary commission granted by the Appellate Division Third Dept. was voluntarily resigned in 1998, 14 years earlier, when I was in medical school and changed careers. Resignation was approved by Third Dept. officer Dan Brennan and OCA's Denise Rajpal immediately. I never thereafter paid bar dues or requested reinstatement.  There are notations from state officers in these files seeking to get me to move for reinstatement to confer faux jurisdiction in favor of the AGC but I never did.

The files proves there existed clear additional motives for NYS officers to attempt to falsely discredit me and ruin my career and patent company. In 2006, the Cowan firm had been placed under conflicts of interest investigation by the former USPTO Commissioner of Patents, Wynn Cogggins. Conflict of interest and unilateral abandonment violations were found during a seven-year investigation and under the APA I had the constitutional right to be served with the results. I was never served.  Damages are proven.  In the interim, fourteen of my US patent applications were taken out of the queue also in violation of the APA and never reinstated. The Cowan firm was also found to have breached of my attorney client privilege and the Defend Trade Secrets Act (18 USC §1836) to Legend Films of San Diego, Live Nation Entertainment, and the Commissioner of Major League Baseball (MLB).  Based on undisclosed conflicts with the concealed AGC staff counsel posts, pursuant to NY's Judiciary Law Part 1240.6d Supple and Hinshaw &Culbertson could never accept the Cowan firm's SDNY retainer or continue in that retainer.

In addition, my first US patent infringement complaint date-stamped and filed by the SDNY on April 22, 2010 was also unilaterally

6

deleted *sua sponte* from the docket in Case No. 06cv1202. My 11403566 US continuation patent that issued on August 2, 2022 - twelve years later - is considered the standard essential patent for ticketing management.  It did not issue for seventeen years from the 2005 filing date in violation of *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010). The deadline is three years. That patent still in term It is being infringed by private entity Port Authority of NY and NJ, and the NYS Thruway and NYS Gaming Commission defendants in this lawsuit.

OCA's Kerby got Supple's forged documents from Younger in 2013 who previously admitted he got them from Supple and SDNY magistrate Henry Pitman (no longer serving). None of the *ex parte* proffers were ever ordered served by SDNY judges Barbara Jones, Jesse M. Furman, Lorna Schofield, Laura Taylor Swain and Analisa Torres or by the circuit attorney Julie Allsman.

In 2025, Judge Nardacci in this lawsuit copied Younger's fraudulent postings. The Judge found that Plaintiff was disbarred *sua sponte* without motion on notice or due process. The order must be vacated and Judge Nardacci must recuse herself.

In 2024, OCA's Younger admitted that in 2013 he uploaded fraudulent disbarment notices to the Internet.  I WAS NEVER DISBARRED IN ANY COURT AND NEVER SUSPENDED IN ANY FINAL ORDER IN NYS. A judge cannot copy data from the Internet without ordering a hearing. If an attorney cited did the same and cited in a brief to cases from Copilot, the attorney would be severely sanctioned or disbarred. No judge can do the same.

I am resigned from the practice of law since 1998, emphatically clear in the Redwells I reviewed.  I was never admitted to the First Dept. and never appeared on behalf of a client in that court even before 1998.

7

US Supreme Court decisions are clear that no attorney jurisdiction exists over me. *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 US 423 (1982). The NY Court of Appeals orders entered in 2018 and 2023 already determined nonfinality of *ex parte* orders entered by the First Dept. and could not be copied because OCA officers Kerby and Younger are engaging in unconstitutional fraud. **SINCE 1998, THERE WAS NO LICENSE IN NY IN EXISTENCE TO SUSPEND**. Moreover, I was also denied verbatim hearing transcripts. *Cleavinger v. Saxner*, 474 US 193 (1985).

In 2024, Younger finally admitted that he accepted *ex parte* documents in 2013 from SDNY circuit attorney Julie Allsman and from the chief 2d Circuit clerk Catherine O'Hagan Wolfe who coincidentally previous served as the chief clerk of the First Dept. AGC when justice Gonzalez was presiding. Allsman admitted that in 2013 she unilaterally removed my out-of-state California certifications from the SDNY roster in violation of due process.

There are references in the 12-14 Redwells to a former 1997 HUD housing proceeding concerning my HUD protected apartment at Gateway Plaza in Battery Park City. NYC L&T 60941-97. The lease was offered in 1995 when I was in medical school. The landlords Hudson Towers Housing and 1/3 owner Lefrak Organization (2/3 financed by the US Government) were sanctioned by the SDNY Judge Charles Brieant in 1985 for HUD violations and illegal evicting tenants in violation of HUD mandates. 24 CFR §966; 83CV0519 (CEB) The case files can be ordered from the National Archives. Sultzer v. Pierce, 85 CV 0519 (CES). Another Supreme Court file sanctioned Battery Park City Authority officers. Sultzer v. BPCA, 13906/86. Former NY Justice Sheila Abdus-Salaam issued an injunction to protect my HUD apartment and belongings when the landlords had taken illegal consideration from an outsider not on the building project's wait list, a

8

coterminous lease to my HUD protected apartment was issued, and I was never notified.

I was never an attorney in the HUD proceeding because I had an attorney retained, Jay Stuart Dankberg, a former NYC Civil Court Judge. This fact precluded any faux jurisdiction falsely claimed by the First Dept. AGC. In addition, in the file is a 2001 destruction order targeting certain HUD audiotapes entered by NYS OCA clerk Jane Chin and NYC Civil Court clerk Ernesto Belzaguy with notice that a civil court transcriber Linda Sears was also contacted by members of NYS Attorney General to destroy completed transcripts. NYC housing judges are not constitutional judges in NYS and cannot preside over jury trials, a constitutional right of a HUD tenant. 24 CFR §966.66. Mr. Dankberg, however, was unjustly sanctioned $5000 when he properly moved for a HUD jury trial after I was denied HUD mandated notice and to transfer this case to Civil Court Judge Peter Wendt. These document prove lack of jurisdiction per se, continuing harassment without jurisdiction and malicious abuse of process by AGC officers. There is an order from the NY of Claims entered in 2023 in Claim No. 135611, denying me access to recover damages against NYS.

In summary, the State of NY has denied me constitutional access to all district courts and state courts to prevent me from enforcing my valuable US patents, to continue in combined use HUD housing since 2007 and to be awarded damages. The US Supreme Court has held that if a state deprives a patentee of complete access to all courts in the state to file infringement lawsuits, may the patentee abrogate the state's sovereign immunity. *Florida Prepaid Post Secondary Expense Board v. College Savings Bank,* 527 US 627 (1999)

The acts of NYS court officers establish an elaborate RICO coverup involving forgery of state files, concealment of files, allowing *ex parte* access to unauthorized individuals with a warrant by Supple

9

and Hinshaw lawyers, APA violations, unprivileged defamation, retaliatory harassment and malicious abuse of process without jurisdiction, RICO fraud, and attorney in-court fraud and deceit by NYS staff counsels dually serving as defense lawyers for private willful infringers of my patents. The forgery of state documents warrants disbarment by all attorneys who participated in the fraud. *US v. Reich*, 479 F. 3d 179 (2d Cir. 2007)

WHEREFORE, for these reasons, the orders of the NDNY must be vacated and Judge Nardacci must recuse herself because impartiality can seriously be questioned. 28 USC §455(a). Injunctive relief must be ordered against the First Dept. AGC state officers and an evidentiary hearing immediately convened.

Respectfully submitted,
/amyweissbrod gurvey/

AMY R. WEISSBROD GURVEY
CEO LIVE-Fi® Technology Holdings

cc: Noah Engelhart, Esq.
Asst. NYS Attorney General

10



FIRMLY TO SEAL

POSTAGE REQUIRED

UNITED STATES
POSTAL SERVICE.

**Retail**

US POSTAGE PAID

$11.00

Origin: 08540
09/03/25
3369300325-25

**PRIORITY MAIL®**

0 Lb 3.10 Oz

**RDC 03**

EXPECTED DELIVERY DAY:  09/05/25

B006

SHIP
TO:

PO BOX 7367
SYRACUSE NY 13261-7367

**USPS TRACKING® #**



9505 5141 8791 5246 6212 29

PS00001000014

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

FROM: *Yuge Li Technology Holding*
*Yuge Wensbern Sumney*
*17302 Woodstone Circle*
*Director NJ 08540*
*24-CV-2H (NDNY) (AMN) (PJE)*

U.S. DISTRICT COURT
JOHN M. DOMURAD, CLERK

SEP 05 2025

RECEIVED

TO:

Hon. Brenda Sannes
Chief Judge
US District Court
Northern Dist. of NY
PO Box 7367
100 S. Clinton Street
Syracuse, New York
13261-7367




# NYSCEF Confirmation Notice

## Appellate Division - 3rd Dept

The NYSCEF website has received an electronic filing on 06/05/2026 11:38 AM. Please keep this notice as a confirmation of this filing.

### CV-26-0784
### MATTER OF LIVE-FI TECHNOLOGY HOLDINGS v SISE

## Documents Received on   06/05/2026 11:38 AM

| Doc # | Document Type |
|-------|---------------|
| 24 | PETITION |

## Filing User

Amy Rebecca Weissbrod-Gurvey | amyg@live-fi.com | 00000000000
7302woodstone Circle, Princeton, NJ 08540

## E-mail Service Notifications

An email regarding this filing has been sent to the following on 06/05/2026 11:38 AM:

**Amy Rebecca Weissbrod-Gurvey - amyg@live-fi.com**

## Email Notifications NOT Sent

| Role | Party | Attorney |
|------|-------|----------|
| Respondent | Hon. Richard E Sise | No consent on record. |
| Respondent | State of New York | No consent on record. |

\* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

# CASE NO.  25-1954

## IN THE

# US Court of Appeals for the Federal Circuit

### *US District Court Central District of California*

### *Case No. 23cv04381 (CACD) on Appeal*

## APPELLANT'S REPLY AND APPENDIX

*Amy R. Weissbrod Gurvey, US Patentee v. Live Nation Entertainment, Inc., Ticketmaster, LLC, Live Nation, Inc., The Commissioner of Major League Baseball (MLB), MLB Advanced Media, Phish/Phish Live, Cowan Liebowitz and Latman, PC, Hinshaw & Culbertson, LLP, Sheppard Mullin Richter and Hampton, LLP, Baker Botts, LLP, and Does I-X, Inclusive.*

Amy R. Weissbrod Gurvey
US Patentee/Appellant
CEO and California Counsel
LIVE-Fi® Technology Holdings
7302 Woodstone Circle
Princeton, New Jersey 08540
amyg@live-fi.com

1



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

**Docketing Clerk**
**US Court of Appeals for the Federal Circuit**
**717 Madison Place, NW**
**Washington, DC 20439**
**cafc.uscourts.gov**

Re:  *Amy R. Weissbrod Gurvey v. Live Nation Entertainment* #25-1954
(Fed Cir.) Orders of the Central District of California 23-cv-04381
(MEMF)(CACD) taking judicial notice of the Southern District of NY
(NYSD) contested orders

PLAINTIFF-APPELLANT'S REPLY TO DEFENDANTS' CORRECTED
OPPOSITION BRIEFS WITH APPENDIX AUTHORIZED BY
FEDERAL CIRCUIT ORDER [DOCKET #72]

To the US Court of Appeals for the Federal Circuit:

This REPLY is of monumental import to the patent industry as a whole.
In full compliance with the court's order (Docket #72), Appellant
attaches an Appendix of related public documents and orders in multi-
district lawsuits filed, current and on appeal, that establish that
judicial notice as applied to defendants' Rule 12(b) motions by CACD
Judge Maame Ewusi-Mensah Frimpong to Appellant's challenged
orders of the Southern District of NY (NYSD) was clear abuse of
discretion and an amended complaint was required to be granted

2

Petitioner for RICO conspiracy and patent infringement under the liberal pleading rules of the Ninth Circuit.[1]

In abuse of discretion, reconsideration was also improperly denied by Judge Frimpong when on March 13, 2025 Petitioner appeared at great cost and expense for an in-person hearing in Los Angeles district court from Princeton, New Jersey. Not one of the ten named RICO conspiracy and patent infringement defendants appeared. This fact raised a red flag.

Essential new evidence since 2025 was that the named defendants made NYSD and NYS Office of Court Administration (OCA) administrative insiders Julie Allsman and Shawn Kerby members of an elaborate Live Nation Entertainment (LNE) conspiratorial enterprise in 2012 and 2015 respectively. Defendants LNE and its attorneys formed the conspiracy in 2009. That defendants Allsman and Kerby were engaging in acts in furtherance of the conspiracy and engaging in docket deletions and ex parte obstruction of justice before the NYSD and the US Court of Appeals for the Federal Circuit was not discovered and could not be discovered until 2025.

2025 is when Appellant moved to intervene as of right in two other NYSD infringement lawsuits suspecting she was being retaliated against without legal justification and denied constitutional access to the court. In one NYSD lawsuit before Judge Gardephe, another ticketing patentee, Bytemark, was given a second bite at the apple to

---

[1] (1) *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc); (2) *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) The Ninth Circuit's most-quoted standard: "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment." (3) *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109 (9th Cir. 2013)(holding leave to amend must be granted unless the district court finds futility or prejudice and failure to explain denial is reversible error; (4) James Huffman v. Lindgren, 22-35471 (9th Cir. 2023)(Leave to amend may be denied where amendment cannot cure jurisdictional or immunity defects.

3

sue Xerox for infringement when two previous patents were already invalided by the ED Texas. In a second lawsuit, the plaintiff, Alan Amron, was unlawfully seeking to enforce Appellant's patent ticketing management sponsorship claims against defendant herein MLB Advanced Media and 30 national baseball teams seeking $780m infringement damages. Because Amron never cited to Appellant's issued and pending patents as prior art before the USPTO as proven on the face of his patent, his patent could not be enforced. However, Petitioner was denied her motion to intervene as of right by the sitting judge Paul Engelmayer based on continuing ex parte docket deletions by Allsman in the 24cv3973 US v. Live Nation Entertainment lawsuit, 24cv3973 (NYSD).  Judge Engelmayer's erroneous finding that Appellant was never granted pro hac vice status to appear for LIVE-Fi before that court (See 24cv3973 (SDNY) Docket #638). Retaliation was suspected and now proven. See CPLR Article 78 Petition before the Appellate Division Third Dept. Appx. Exhibit 1; 24cv3973 Docket #s 1483, 1491, 1506 (Appx. Exhibits 2, 3, 4).

Then on March 13, 2026, Allsman engaged in ex parte communications with Judge Subramanian who sua sponte revoked Petitioner's pro hac vice status in the 3973 lawsuit to appear pro hac vice from California for nonparty LIVE-Fi® Technology Holdings. Appellant was given no due process or opportunity to respond. Allsman was reported to the US Dept. of Justice for ex parte obstruction of justice against Appellant's constitutional rights since 2013. Then Appellant move to intervene as a party plaintiff appearing pro se and has not gotten a response to her motion papers.

The CACD lawsuit must now be remanded. Appellant was denied constitutional access to the NYSD without any justification and appears to have been retaliated against. Accountings are owed jointly and severally against every defendant by the CACD based on RICO treble damages retroactive to 2009, and on strict liability infringement of Appellant's patents in California until a full satisfaction is reached. None of these claims are address or otherwise challenged in defendants opposition briefs. The law is that every defendant is jointly and

4

severally liable for a complete satisfaction retroactive to when the conspiracy was organized, *i.e,,* 2009 in NYSD Case No. 06cv1202.

Three previous appeals against defendants LNE, Phish and Cowan Liebowitz & Latman were *sua sponte* dismissed by the NYSD by 2023 in clear abuse of discretion without a single infringement hearing ever ordered since 2010 – for <u>13 years</u>.  Anticipated standard essential patent claims that were delayed in prosecution based on the Cowan Liebowitz & Latman  law firm defendants' conflicts of interest as found by the USPTO issued to Appellant through August 2, 2022. (Gurvey US Patent 11403566) This continuation patent issued after 13 years after being filed on October 11, 2009 when the deadline is 3 years. *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed Cir. 2010).  Ergo, the NYSD was required to grant an amended willful infringement and contributory infringement complaint against the named defendants under unanimous Federal Circuit law. 35 USC §284; *Anza Technology v. Mushkin*, 934 F. 3d 1349 (Fed Cir. 2019); *Metzler Investments Gmbh v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir. 2020); *Grant Williams v. Citicorp*, 659 F. 3d 208 (2d Cir. 2011). Instead the NYSD judge Lorna Schofield ordered that Appellant, a pro se patentee, pay $10,000 into the NYSD cashier for special patent master who was never hired, it took three years to get the money refunded and no infringement hearings were ever allowed whatsoever.

This required Appellant file appeals to this Court and to refile infringement and treble damages RICO conspiracy claims in another district. The CACD is where defendants were also continuing to use the patents without permission and have their principal places of business. All defendants were duly served with the summons and complaint. Only defendant Cowan Liebowitz & Latman defaulted. Defendant MLB Advanced Media is contended to have been improperly dismissed from the appeal by this court including because Appellant was again denied an infringement complaint against MLBAM in the Amron NYSD patent litigation. 24cv2930 (PAE)(RFT)(SDNY). Amron dismissed his complaint against defendant MLBAM instead of risking sanctions.

5

Appellant, a US patentee/entrepreneur is an attorney duly admitted to practice law in California but is <u>not</u> admitted in New York and <u>not</u> admitted to the United States Patent and Trademark Office (USPTO). This is proven from NYS files produced for inspection for the first time since 2011 by the Appellate Division First Dept. on August 26, 2025 and placed the issue of criminal forgery of state files against defendants before the CACD because Appellant was retaliated against without jurisdiction by NY court officers.

Appellant is appearing as a *pro se* patentee in this appeal.

Appellant declares to the truth of the following statements in replying to defendants' Corrected Opposition Briefs that are fraudulent in light of essential new evidence of ongoing acts in furtherance of a RICO conspiratorial enterprise involving NYSD and NYS court insiders as members through 2026.

Defendants' opposition papers in light of this new evidence are red herrings, frivolous and must be sanctioned with punitive damages in the maximum amount permitted by law. According to the US Supreme Court, the maximum amount is 10X compensatory damages for tortious interference claims. *State Farm v. Campbell*, 538 US 408 (2003).

**THE SMEAR CAMPAIGN DEFENDANTS LAUNCHED WITH NY COURT INSIDERS DEFY DUE PROCESS AND ARE NOT PROTECTED BY IMMUNITY. HOWEVER, EVEN IF THE FRAUDULENT EX PARTE POSTINGS WERE TRUE WHEN THEY ARE BLATANTLY FALSE, THEY HAVE ZERO TO DO WITH APPELLANT'S CONSTITUTIONAL RIGHT TO GET INFRINGEMENT HEARINGS GUARANTEED BY THE FOURTEENTH AMENDMENT IN ANY DISTRICT WHEREIN THE ISSUED PATENT CLAIMS ARE BEING USED WITHOUT PERMISSION.**

Additional fraudulent postings were uploaded on a blacklist by Allsman and Kerby to prevent Appellant from getting infringement hearings in other courts and to stage a coverup. The State of NY had interests in

6

sync with defendant infringers and seven NYS agencies are using the patents and copyrighted source codes without permission.

On March 13, 2025, the CACD convened an in-person hearing on reconsideration of its contended improper order granting judicial notice to unconstitutional NYSD orders on appeal and denied Appellant an amended complaint. Of the eleven named parties, only Appellant appeared from Princeton, New Jersey at great cost and expense. Once in court, Appellant discovered that CACD judge Maame Ewusi-Mensah Frimpong had already entered an order denying reconsideration in violation of due process.

It was not until July 2025, a year after this appeal was filed, that Kerby's *ex parte* unserved letters to this court since 2018 were discovered.

On March 13, 2026 one year to the day after Appellant appeared for hearing in California, Allsman was identified by NYSD Attorney Services clerks as the individual still engaging in docket deletions and in ex parte communications with NYSD judges. These are continuing acts in furtherance of the conspiracy allowing Appellant to recover treble damages jointly and severally against every member thereof retroactive to 2009.

On June 2, 2026, Petitioner received notice that an appeal to the Federal Circuit from the DC District Court was returned from the DC Circuit Court after ministerial errors of clerks filed the appeal before the wrong circuit. That patent appeal is now before this Court and under Rule 27 Appellant moves for consolidation with the instant appeal to prevent inconsistent judgments. 25cv3257, 23cv35349 (JMC)

In addition, Appellant claims that based upon the voluntary withdrawal of defendant MLB Advanced Media from the Amron NYSD lawsuit and because Amron was an alleged infringer of Appellant's patent claims, defendant MLBAM was mistakenly dismissed from this appeal.

Judgment in favor of Appellant must be granted on all counts.

7

## REPLY

**Point 1**: In their opposition briefs no defendant denies the principal #1 issue, *i.e.*, that to date, since 2010, and ongoing for 16 years through 2026, Appellant received no infringement hearings on her patents in ticketing management, overlay technology and sports betting, rights constitutionally guaranteed by the Fourteenth Amendment of the United States Constitution.

**Point 2**: The NYSD orders denying infringement hearings through 2023 are challenged and on appeal, preventing judicial notice application by the CACD.

**Point 3**: After insider Kerby was found in 2025 to be writing ex parte letters to this Court since 2018 not to hear appeals to unconstitutional orders of the NYSD denying infringement hearings, three appeals – 18-2076, 20-1620 ad 23-134 - were transferred sua sponte and the Federal Circuit never served Appellant. This fact requires vacatur of the transfer orders and remand to the NYSD. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 Ex parte Communications. A new judge must be assigned because Judge Lorna Schofield demonstrated that her impartiality can seriously be questioned having copied Allsman's and Kerby's posts into her orders without due process of law ever afforded Appellant. These orders infected the record.

**Point 4**: Defendants organized and engaged in ex parte acts in furtherance of an elaborate RICO conspiratorial enterprise since 2009 to stage a smear campaign that would function to deprive Appellant of infringement hearings. The conspiracy was formed at the time Appellants first delayed US ticketing management, overlay and sports betting patent issued in 2009 based on conflict of interest violations before the USPTO by the Cowan practitioner defendants. At the same time defendant LNE was moving for merger with Ticketmaster before the DC District Court and *admitted* contrary to fraudulent affidavits filed before the NYSD, that defendant owned three venues in NYC since 2005 and was importing a ticketing system from CTS Eventim of

8

Germany to service those venues. *US v. Ticketmaster and Live Nation*, 2010 WL 975407, 975408 (DCD January2 5, 2010)

**Point 5**: Defendants do not deny they added NYSD administrative insider Julie Allsman to the conspiracy in 2012 and NYS Office of Court Administration (OCA) staff counsel Shawn Kerby in 2015. Both Allsman and Kerby engaged in *ex parte* obstruction of justice.

**Point 6**: Even if the multi-media smear statements posted were true, when all allegations including that Appellant is admitted in NYS are blatantly false, they have no constitutional relevance to Appellant's right to get infringement hearings guaranteed by the Fourteenth Amendment in any district wherein her patents are being used without permission by private companies or state agencies.

**Point 7**: Allsman and Kerby's fraudulent postings, however, made it impossible for Appellant to retain an attorney after her first NYSD attorney O. Lee Squitieri was granted unilateral withdrawal by the first NYSD judge Barbara S. Jones without notice, hearing or due process of law. The NYSD also lost jurisdiction in 2009 because the court's judgment dismissing defendant LNE based on fraud was already on appeal, and the withdrawal order is void.

**Point 8**: In response to Kerby's *ex parte* letters since 2018, the Federal Circuit *sua sponte* transferred three arising under appeals – 18-2076, 20-1620, 23-134- and never ordered service on Appellant. The transfer orders must be reversed as *sua sponte* abuse of discretion. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 Ex parte communications.

**Point 9**: Appellant suffered forfeiture of years of patent protection from defendants' acts in furtherance of the RICO conspiracy also involved ex parte fraud before the United States Patent and Trademark Office. The patents, however, remain in term, in continued use by defendants and enforceable. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products,* 137 S. Ct. 954 (2017). If an amended complaint is granted Petitioner would be limited to six years of relate back damages to the date of filing.

9

**Point 10**: Appellant's first infringement complaint date-stamped and filed on April 22, 2010 was first discovered "missing" in 2013. On March 13, 2026, thirteen years later Allsman was identified by Attorney Services Clerks as the perpetrator of the deletion crimes in 2013.

**Point 11**: Appellant was granted first access to "ordered concealed" NYS files on August 25, 2026. The state files were forged by defendant LNE's NYSD attorney J. Richard Supple of defendant Hinshaw & Culbertson, proving organization of the RICO conspiratorial enterprise in 2009-2010.

**Point 12**: Allsman's ex parte unconstitutional acts as a conspiracy member continued through March 13, 2026 before NYSD judge Subramanian. Ergo under law RICO treble damages are properly awarded jointly and severally against every member of the conspiracy retroactive to 2009 and an accounting ordered on remand.

**Point 13**: California is a comparative tort state. Therefore each defendant is potentially strictly liable for the whole amount of treble RICO damages subject to contribution according to comparative fault. *Ybarra v. Spangard*, 25 Cal. 2d 486 (1944).

**Point 14**: A delay of 17 years elapsed before all patents claim issued in Gurvey US Patent 11403566 with a continuation application filed October 11, 2009. Patent delay damages were required to be entered as part of Appellant's damages. *NeuroRepair v. Nath Law Group*, 781 F. 3d 1340 (Fed Cir. 2015). The statutory deadline for issuance of patent claims is three years from the date the application is filed.

**Point 15**: Defendant attorney's in-court fraud, deceit and acts in furtherance of the RICO conspiracy also caused substantial delays in infringement prosecutions before the USPTO. The result is that because Appellant was not granted an injunction against defendants to stop using the patents without permission for 16 years, there are now more than 100 nationwide infringers of Appellants' patents including 7 NYS agencies – the Port Authority of NY and NJ, The NYS Gaming Commission and the NYS Thruway (managing interstate toll booths

10

and congestion pricing systems) all using the patents without permission.

**Point 16**:  OCA's Kerby having engaged in acts of tortious interference to deprive Appellant of all access to the Federal Circuit to get an appeal on the merits, warrant damages against NYS under Section 8-10 of the Court of Claims Act. The state of NY has waived Eleventh Amendment immunity from damages for tortious interference, unjust enrichment and misappropriation of property. Because Appellant was denied constitutional access to the NYSD and the Court of Claims chief judge has returned Appellant's claims unadjudicated, the court must find that the State of NY has engaged in a total taking of Appellant's patents. *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 US 627 (1999).

**Point 17**: In March 2026, defendant LNE in the 24cv3973 NYSD litigation engaged in sanctionable bad faith when it offered Appellant's patents as a settlement to the Dept. of Justice behind Judge Subramanian's back. Appellant was not a party to this lawsuit and the offer of her patents demonstrates further acts in furtherance and bad faith warranting punitive damages.

**Point 18:**  A notice of appeal filed to patent orders of the DC District Court in lawsuits 23cv3549 and 25cv3257 was directed to the Federal Circuit. The district court clerk engaged in ministerial error by sending that appeal the DC Court of Appeals. As of yesterday, June 2, 2026, the appeal was transferred to the Federal Circuit. Appellant now moves under Rule 27 to add the transfer order to this appeal as a public record and consolidate the appeal with the instant appeal in the interests of judicial economy and to prevent inconsistent judgments.

**Point 19**: The following additional facts were alleged in the CACD complaint remain unchallenged by defendants:

(1) Appellant filed a safe haven motion seeking severe Rule 11 sanctions and an amended complaint both denied by the CACD and reconsideration was denied contrary to the liberal pleading rules of the Ninth Circuit.

11

(2) the merger judgment against defendant LNE and Ticketmaster so ordered by the DC district court in 2010 precluded the merged entity from  withholding ticketing data from companies seeking to conduct non-ticketing businesses. Appellant's standard essential patents enable non-ticketing businesses and are being willfully infringed by defendants.

(3) Appellant had to overhaul her platform source codes four times when her patents were delayed based on defendants' ex parte obstruction of justice.

(4) Appellant's constitutional right of access to the NYSD was denied in retaliation for her achieving issued patents that defendant did not own but needed.

(5) Appellant's was retaliated against and harassed without jurisdiction by an OCA administration officer, an act not protected by immunity, and making defendants liable for aiding and abetting wrongful state action.

(6) The duties of the NYS First Dept. AGC were to grant Appellant orders against the Cowan defendants to return Appellant's complete USPTO and inventorship files, revive her abandoned patent applications at their own cost and expense, and refund $50,000 of retainer fees. Additional federal remedies preempting the law of the state.

(7) In its 2018 complaint against Prestige Entertainment West, Ticketmaster admitted that consumer/end users are its "direct customers" proving the merger should never have been granted under US Supreme Court decisions. 2018 WL 5668633 (CACD 2018); *Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019)

(8) The counts in Appellant's CACD complaint included inter alia infringement, willful infringement, contributory infringement, infringement by the doctrine of equivalents with partners including Apple's iTunes, patent delay, RICO conspiracy, defiance of the antitrust merger judgment, bad faith, accounting constructive trust, aiding and abetting wrongful state action, declaratory determinations of violations of Appellant's

12

constitutional rights, fraud, intentional infliction of emotional distress, and punitive damages.

(9) Because the patents are in term, an amended complaint or whole new action is properly ordered on remand to the CACD.

**Point 20**: Appellant incorporates by reference the public orders and motions attached in an Appendix as if fully set forth hereat and in further support of this Reply.

## SUPPLEMENTARY APPENDIX

**Appx Exhibit 1**  Appellate Division Third Dept. Article 78 Petition

**Appx Exhibit 2**  NYSD 24cv3973 Docket 1506

**Appx Exhibit 3**  NYSD 24cv3973 Docket 1491

**Appx Exhibit 4**  NYSD 24dcv3973 Docket 1483 w Claim Charts

**Appx Exhibit 5**  NYSD 24cv2930 Orders

**Appx Exhibit 6**  NYS Office of Court Administration 2018 Letter to Federal Circuit from Shawn Kerby

**Appx. Exhibit 7**  NYND 24cv211 Order to Show Cause Sept. 2025

**Appx Exhibit 8**  US Copyright Registration

**Appx Exhibit 9**  Order NYS App. Div. First Dept. April 21, 2016

**Appx Exhibit 10**  DCD Notice of Transfer of Appeal to Fed Circuit Case No. 23cv3549

**Appx Exhibit 11** CAL BAR Certifications

Dated:  June 2, 2026
Princeton, NJ   /amyweissbrodgurvey/

AMY WEISSBROD GURVEY
US PATENTEE  Appellant/Petitioner
Service ECF CAFC.uscourts.gov 06/03/2026

13



*Live-Fi*™ *Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

May 24, 2026

Hon. Arun Subramanian
US District Court, SDNY
500 Pearl Street Courtroom 23B
New York, NY 10007

cc: Pro Se Office
Attn: Mr. Bercato

cc: (1) Hon. Owen Kendler US Dept. of Justice Antitrust Division
(2) US Court of Appeals for the Federal Circuit - Case No. 25-1954
(3) DCD Case No. 25cv3257 (LLA)(JMC)
(4) SDNY Pro Se Unit Attn: Mr. Burcato
(5) Hon. Brenda Sannes, Chief Judge NYND
(7) Hon. Laura Taylor Swain, Administrative Judge NYSD
(8) Hon. Debra Ann Livingston, Chief Judge Second Circuit
(9) Hon. Congresswoman Bonnie Watson Coleman, Mercer County, NJ
Hon. Amy Klobuchar, US Senator, D MN, Senate Judiciary Committee
Hon. Mike Lee, US Senator, R UT, Senate Judiciary Committee

**RE:  *US v. Live Nation Entertainment, Inc.*, 24cv3973
Petitioner Amy Weissbrod-Gurvey's Motion to Intervene as of
Right under Rule 24 as a Party Plaintiff**

1

May 24, 2026

Dear Judge Subramanian:

This letter argues unanimous US Supreme Court Sherman and Clayton Act antitrust precedents in support of Petitioner's Amy Weissbrod-Gurvey's petition in chief to intervene as of right as a party plaintiff in her own name. Petitioner is not admitted to practice law in New York and only in California. Petitioner declares to the truth of the following statements and as to those statements made upon information and belief, Petitioner believes them to be true based on the files maintained by the US District Court Southern District of NY, the State of NY, the Northern District of New York, the NY Court of Claims, and the US Court of Appeals for the Federal Circuit.

Petitioner is the sole named US patentee of standard essential patents assigned to [other] petitioner LIVE-Fi® Technology Holdings (LFTH) and the registered copyright owner of parallel hardware and ticketing overlay source codes. In violation of the Consent Decree and Competitive Impact Statement signed by defendants Live Nation Entertainment (LNE) and Ticketmaster in 2010, defendants deceitfully offered to the Government and the state plaintiffs herein - and behind the court's back on or about March 28, 2026 – Petitioner's intellectual property as a settlement offer. Eight states and the Government accepted the offer and the court so ordered withdrawal of these parties from the lawsuit.

Petitioner is also a direct purchaser of event tickets through defendant Ticketmaster's website. Yet defendants LNE and Ticketmaster falsely argue that Petitioner and users similarly situated are not their customers, that Petitioner is not a "direct purchaser" and that defendant Ticketmaster's only customers are venues that license its long term ticketing platform. ***These allegations defy the US Supreme Court decision in Apple Inc. v. Pepper*, 139 S. Ct. 1527 (2019).** Defendants must be broken up by this court.

2

In addition, Petitioner is precluded from getting access to the deeper pages of defendant Ticketmaster's website site to order and get additional promotions and benefit related to the ticketed event unless a Term Of Use (TOU) is signed with Ticketmaster releasing all rights to confidential and personal data. If the TOU is not signed, no tickets can be purchased. This demonstrates defendants' contract of adhesion unlawfully tying the right to buy an event ticket with an unfettered right monopolize non-ticketing businesses. In 2010, defendants were so ordered not to withhold ticketing data from companies seeking to conduct non-ticketing businesses and by such acts and requiring execution of a TOU, defendants are also monopolizing the non-ticketing businesses and not sharing the surplus revenues with artists. In the current market, defendants' sell confidential customer data to targeted advertisers.

Petitioner and LFTH own the issued US patents and copyrighted source codes to provide the necessary ticketing overlay platforms to enable non-ticketing businesses. 2010 WL 975408, pp. 8 line 10 (DCD January 25, 2010). Defendants made an express warranty that withholding of ticket data would not occur.

In addition, Petitioner was previously granted *pro hac vice status* to appear as California counsel for interested nonparty LFTH on August 22, 2025 (#638). [1] On March 16, 2026, Petitioner filed an order to show cause seeking that the court vacate a "suspicious" *sua sponte* follow-up order unilaterally revoking without notice, hearing or due process of law Petitioner's *pro hac vice* status to appear for LFTH. The order was entered also on March 16, 2026 immediately after the judge presiding in a separate NYSD infringement lawsuit 24cv2930, Hon. Paul Engelmayer, erroneously found that "*Petitioner had never been granted*

---

[1] NOTE: Petitioner LFTH subsequently moved to be granted intervention as of right under Rule 24, the motion was denied and LFTH's reconsideration motion remains pending since November 2025.

3

*pro hac vice status by this court"*. Judge Engelmayer order is obviously wrong and spurred investigation.

Results came on March 13, 2026 from two clerks in NYSD Attorney Services Room 250. The officers identified court insider Julie Allsman as the individual unilaterally deleting docket entries in Petitioner's previous patent infringement lawsuit against defendant LNE since at least 2012 without notice, hearing or due process of law and that the Allsman's unlawful docket deletions continued into 2026 demonstrating acts in furtherance of an elaborate LNE-orchestrated conspiracy. Now Petitioner moves to appear as a *pro se* party litigant. [2]

## UPDATED LITIGATION FACTS

On or about March 28, 2026 defendant LNE deceitfully attempted *ex parte* to pass off to a new member of plaintiff US Dept. of Justice, Petitioner's ticketing overlay patents and copyright source codes as its own idea and invention. See Docket #s 1483, 1491. Defendant LNE's motives were abhorrent and in bad faith seeking to again prevent constitutionally mandated hearings based on defendant's ongoing Clayton Act violations, RICO violations, willful patent infringement, unfair competition, all warranting treble damages and punitive damages.

---

[2] In good conscience, the Court should appoint another attorney for Petitioner. Petitioner's previous NYSD attorney Squitieri & Fearon was granted unilateral withdrawal by former judge Barbara S. Jones in 06cv1202 in 2011 without notice, hearing or due process of law and without any legal justification. This left Petitioner as a pro se litigant in 2012 to litigate her willful and contributory infringement claims against defendant LNE and its IP attorneys at Cowan Liebowitz & Latman. In 2013, it was discovered that Petitioner's infringement complaint and Rule 60(b) motion papers against defendant LNE docketed and date stamped on April 22, 2010 had "mysteriously" disappeared from the NYSD docket. On March 13, 2026, court insider Julie Allsman was identified as the federal officer who deleted the infringement complaint, engaging in Bivins constitutional violations as a federal officer.

4

However, defendant LNE was again successful in its fraudulent plan. Eight of the 39 plaintiff states ultimately approved the secret offer. The court then granted both the Government and these eight states unilateral withdrawal from this lawsuit, in essence authorizing further infringements of Petitioner and LFTH's standard essential ticketing overlay patents and copyrighted software codes while defendant LFTH was not yet made a party or otherwise granted reconsideration of its intervention motion. See Docket #s 1483, 1491.

There is no dispute from the docketed March 16, 2026 *sua sponte* order that the court engaged in *ex parte* communications with Allsman, a non-party, that resulted in the order. Neither LFTH nor Petitioner, LFTH's pro hac vice counsel on March 13, 2026, was given any opportunity to participate in this ex parte session or respond in violation of due process of law. The court's consideration of *ex parte* proffers from a non-party is proscribed by the US Supreme Court and demonstrates extrajudicial bias.

Allsman's motive in contacting the court was to shield herself from liability and prevent further investigation into her long-standing membership role in defendant LNE's conspiracy. Upon belief Allsman joined in or about 2012. On March 13, 2026 Attorney Services clerks identified Allsman as the perpetrator of unilateral docket entry deletions in three NYSD lawsuits 06cv1202, 24cv2930 and this docket 24cv3973. All three lawsuits involve Petitioner's US ticketing management, overlay and sports betting patents and infected the records.

Allsman started her crimes by communicating with defendant LNE's former attorneys in 06cv1202 - J. Richard Supple and Steven Schortgen of Baker Botts. Supple himself was dually serving as a concealed First Dept. attorney disciplinary of counsel.  The conspiracy extended to former judge Barbara Jones as discovered by motions found in her chambers by Deborah Holmes (a former 2d Circuit attorney) and then to Magistrate Henry Pitman in 2013 to prevent patent breach of fiduciary

5

duty and contributory infringement discovery and infringement hearings from being convened. 462 Fed. Appx. 26 (2d Cir. 2012)

Judge Jones mysteriously left the case and the court after Petitioner's infringement complaint had been deleted unilaterally from the docket by Allsman. The deleted complaint was found in the SDNY microfiche files. Then Magistrate began presiding in 2012 without a supervising judge and without the parties' consent. No discovery or infringement hearings were allowed by the NYSD since 2013. The next assigned judge Lorna Schofield followed suit in violation of Fourteenth Amendment of the United States Constitution. No infringement hearings were allowed even after anticipated delayed patents stated in the operative pleading issued from the USPTO through August 2022 (during the lawsuit). *Anza Technology v. Mushkin*, 934 F.3d 1349 (Fed Cir. 2019) An amended complaint was owed under the liberal pleading rules of the 2d Circuit and never granted. *Metzler Investments Gmbh v. Chipotle Mexican Grill*, 970 F. 3d 133 (2d Cir. 2020); citing *Grant Williams v. Citicorp.*, 659 F. 3d 208 (2ed Cir. 2011).

It was later confirmed in 2025 that Allsman also conspired with a NYS Office of Court Administration (OCA) insider, Shawn Kerby, who was caught writing to the Federal Circuit since 2018 not to hear Petitioner's arising under patent appeals to orders of Judge Schofield denying infringement hearings. Judge Schofield also unlawfully ordered that Petitioners pay $10,000 into the NYSD cashier for a special patent master <u>who was never hired</u>. It took three years to get the money refunded. The NYSD pro se senior lawyer in 2016, Robyn Tarnofsky, was a NYS Legal Assistance Group court lawyer, when the State of NY had interests in sync with defendant LNE. More than five NYS agencies including the Port Authority of NY and NJ, local area airport concessions, the NYS Gaming Commission and the NYS Thruway (Interstate toll booths and congestion pricing systems) are using Petitioners' patents and copyrighted software technology without permission.

6

The Federal Circuit transferred three arising under appeals [18-2076, 20-1620, 23-134] to the 2d Circuit that had no jurisdiction to hear appeals and never heard the appeals on the merits. Supremacy Clause Art. VI, Cl. 2. The State of NY has waived Eleventh Amendment immunity from damages for acts by its officers of tortious interference, unjust enrichment and misappropriation of property under Section 8-10 of the Court of Claims Act. But the Court of Claims has since returned as undocketed three of Petitioners' duly filed claims for damages against the State, obliterating all Petitioner's remedies in law and equity. It is now alleged before the Federal Circuit in Case No. 25-1954 that the State of NY has committed a "taking" of Petitioners' patents and copyrights and determination is sought in an order to show cause and mandamus petition. *Florida Prepaid Post Education Expense Board v. College Savings Bank*, 527 US 627 (1999)

There is no dispute from numerous exhibits in Petitioners' 06cv1202 lawsuit and first appeal 09-2185;10-4111- all filed before discovery of Allsman's docket deletion crimes - that defendant LNE has been using Petitioner's patents and copyrighted source codes without permission since 2005, the year that defendant LN was spun off from Clear Channel Entertainment.

Allsman's unilateral deletion of Petitioner's infringement complaint docketed and date stamped on April 22, 2010 has continued into 2026. Allsman deleted docketed entries in 24cv2930 and contacted this court ex parte without party status. The court's *sua sponte* order entered March 16, 2026 revoking Petitioner's pro hac vice status to appear for petitioner LFTH must therefore be immediately vacated. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 *Ex parte Communications*. See Docket Nos. 1363, 1367, 1483, 1491. However, that motion has nothing to do with the current petition for Petitioner to be granted intervention as a matter of right in her own name.

Please note that in addition to what is iterated above and again "very mysteriously", former Judge Barbara Jones allegedly granted the

7

unilateral withdrawal of Petitioner's previous attorney, Squitieri & Fearon, in September 2010. In 2009, Judge Jones granted defendant LNE's fraudulent Rule 12(b) motion papers that defendant *"had no NY contacts" and could not be forced to answer for infringement of Petitioner's patents in NY.* Defendants' Rule 12(b) moving papers and exhibits were filed by defense attorneys J. Richard Supple who was a concealed First Dept. attorney grievance committee counsel, and Steven Schortgen of Baker Botts. It is not surprising from his concealed NYS post that Supple got entry to insert forged documents into NYS files. This was found by the First Dept. in an order entered April 21, 2016. Fraudulent affidavits sworn to under oath were appended to defendant's moving papers that defendant LNE had no NY contacts before this court authored by defendant LNE's employees Richard Munieri and Hamlet Newsom. Defendant LNE's former president Stephen Prendergast, helming the Instant Live Concerts, LLC division (now defunct), wrote supporting papers entered on that docket. These fraudulent moving papers constitute actionable tortious interference, and demonstrate continuing acts of unfair competition, and perjury and RICO conspiracy. Directly contra, LNE admitted in 2009 in the merger proceedings before the DC District Court that since 2005, it owned concert venues in NYC – House of Blues, Irving Plaza and Roseland Ballroom and was importing a ticketing system from CTS Eventim of Germany to service these venues since 2007 to compete with Ticketmaster before the merger.

In 2012, after Allsman became a conspiracy member [exact date unknown], she deleted Petitioner's infringement complaint and Rule 60(b) fraud motion from the 06cv1202 docket, engaged in *ex parte* communications with Supple and former Magistrate Pitman and then continued deletions from the case dockets in three lawsuits. The result was that Petitioner got no discovery or hearings on her issued US patents or copyright infringement claims against defendant LNE for 13 years.

In an order entered April 21, 2016, the Appellate Division First Dept. found that Supple entered unserved documents since 2011 into "ordered

concealed" state files. On August 26, 2025 when Petitioner was granted first access to the state archives, the inserted documents were confirmed as forgeries. They affixed the photocopied signature of a dead First Dept. counsel Paul Curran who left the state in 2002 and died of cancer in 2007. Curran's signature had been superimposed onto pre-2000 state letterhead to conceal the names of the participating court officers.  See, 24cv211 (NYND) Docket #s 85, 101, 106, 108, 110. The files were "ordered concealed" by the First Dept. in the same 2016 order identifying Supple as the perpetrator of crimes that were required to be produced in 2011. NY's Judiciary Law Part 1240.6d, 1240.7, 1240.8 All state orders based on these insertions were found nonfinal by the NY Court of Appeals. Ergo, there was never any final judgment that could be collaterally applied by members of this court.

This brief now argues that in light of defendant LNE's additional acts in furtherance of its elaborate conspiratorial enterprise and engaging in deceitful unfair competition behind the court's back in contumacious violation of the Consent Decree and Competitive Impact Judgment, the court's only duty now is to break up defendants Live Nation and Ticketmaster and allow Petitioner party status to participate in continuing hearings before this court.  [3]

## MEMORANDUM OF LAW

It is argued that in January 2010, the merger of defendant Live Nation and Ticketmaster should never have been "so ordered" by the DC District Court and the court's judgment was clear abuse of discretion.

---

[3] Previously in 2013 Allsman engaged in *ex parte* communications with former Magistrate Henry Pitman and defendant LNE former defense attorney J. Richard Supple in Docket No. 06cv1202. For 13 since 2013, Petitioners were denied infringement hearings in violation of the Fourteenth Amendment. Moreover, the first judge Barbara S. Jones granted unilateral withdrawal to petitioner's attorney Squitieri & Fearon in 2011 and Petitioner was never notified.

9

This because under prevailing antitrust decisions of the US Supreme Court, a monopoly in restraint of trade was all along **intended** by defendants. Moreover, Petitioner is a direct purchaser as such term is defined in US Supreme Court prevailing orders.

Petitioner's opposition to the merger was solicited by plaintiff DOJ itself in 2010 and posted on its Media and Entertainment webpage as "E" in March 2010. The opposition remains posted. This demonstrates that DOJ attorneys opposed the merger even with the court's adoption of strict conditions that defendants contumaciously breached and never complied with from Day 1.

Section 1 of the Sherman Act, 15 USC §2 prohibits actions or conspiracies that monopolize trade or commerce. The Sherman Act is enforceable through civil actions that may be brought by the U.S. Department of Justice, **private parties [Emphasis supplied]**, or state attorneys general, who may seek both damages and injunctive relief. To provide further support for the Sherman Act, Congress passed the Clayton Act, which provides greater specificity as to the types of proscribed antitrust behaviors and also allows for private remedies and treble damages.

In 1911, in *Standard Oil Co. v. United States*, 221 US 1, 78, (1911), the U.S. Supreme Court found that John D. Rockefeller's company, Standard Oil, attempted to control every aspect of the oil business from production to shipping to sales, and was therefore able to engage in price fixing and restrain trade. The Court found that Standard Oil retained "substantial power" over the petroleum market, which was sufficient to amount to a Sherman Act violation. However, the Court did not explicitly state what it meant by "*substantial power*". However, it did determine that the language of the Sherman Act could not be taken literally because every contract, to some extent, is a restraint on trade. Thus, since the early 1900s, the Sherman Act has been interpreted based on concerns about unreasonable restraints on trade. This rule is

10

frequently referred to as the "rule of reason".[4]

In the 1940s, the five major studios—Paramount Pictures, Loew's, RKO, Warner Brothers, and Twentieth Century-Fox—dominated the film industry through a vertical scheme by not only producing motion pictures, but also owning subsidiaries that distributed and exhibited the films.  In 1948, in *United States v. Paramount Pictures, Inc.*, 334 US 141, the US Supreme Court examined this vertical corporate structure that studios used to control the film industry from production to exhibition and found that the practice of granting licenses only to the studios' theaters was an exclusionary practice that stifled competition and violated the Sherman Act The Court found that the studios had a monopoly because they had not only the ability and power to avoid competition, but also <u>the intention to do so</u>.

---

[4] A vertical monopoly occurs when a company dominates an entire supply chain, whereas a horizontal monopoly occurs when a company eliminates competition in its own sector. When determining whether a company is engaged in vertical integration, courts examine: (1) the company's "purpose or intent" at the time it was formed, and (2) the ability or power of the company to pursue this intent and abuse its power. Another factor to be considered, is the degree to which a vertical monopoly exerts leverage on the market within its specific industry. By contrast, horizontal price-fixing occurs when competitors who are on the same market structure level agree to fix or otherwise stabilize prices charged to customers or paid to suppliers.

In 2018, 70 years later, in *Ohio v. American Express*, 138 S. Ct. 2274, 2284 (2018) the U.S. Supreme Court explained the test for determining illegal monopolies under the "rule of reason". The Court noted there were two ways a restraint on trade could be unreasonable – first by being unreasonable per se or by applying the fact-specific test for the "rule of reason". The Court held that only horizontal restraints on trade could be unreasonable per se. However, demonstrating a departure from the standard applied in *Paramount Pictures*, the Court noted that when there is vertical restraint, "a three-step, burden-shifting framework applies" requiring an analysis of whether the restraints are procompetitive or anticompetitive to the applicable market. This alternative framework for vertical restraints has had a chilling effect on small antitrust plaintiffs because it has substantially increased the cost of litigation.

However, another issue or contended barrier for antitrust plaintiffs is standing to sue under the "*direct purchaser*" rule. The rule prohibits parties that are more than one step removed from monopolies from asserting a claim against the monopoly.

In 1968, in *Hanover Shoe, Inc. v. United Shoe Machinery Corp*., 392 US 481, 494 there was a major breakthrough in favor of plaintiffs. **The Supreme Court held that a defendant's liability could not be limited or reduced if a plaintiff purchased a product directly from the monopolist or defendant**. However, later, in 1977, in *Illinois Brick Co. v. Illinois*, 430 US 720, 744 the Supreme Court entered a seemingly contradictory decision that plaintiffs could not state a claim against a monopoly if there was a "middleman" who passed on the additional costs to the plaintiff. The two cases seem to be in alleged conflict.

In vertical integration cases, and in cases where there are modern technology platforms, the existence of a middleman may be difficult to ascertain. Since *Illinois Brick*, however, courts have consistently extended liability to defendants who rely on the passing-on defense and

12

have granted judgments in favor of plaintiffs who were one or more steps removed from the defendant. **This differential is on target with the instant fact pattern because defendant Ticketmaster allows customers to purchase ticketing directly on its webpage.**

In *Hanover Shoe*, the Supreme Court rejected the defendant's passing-on defense and held it could not be used by accused monopolists to circumvent liability. The Court reasoned that allowing a passing-on defense would negatively impact each affected party's ability to recover the amount of damages, which would essentially distribute the monopolies' liability throughout the entire supply chain and therefore leave smaller and smaller amounts for those injured to recover. The Court reasoned that eventually consumers adversely affected would have little to no ability to recover and bringing a suit would be almost impossible. Additionally, the Court addressed the difficult practice of determining the amount of damages to allot to each party throughout the chain of consumers. Consequently, the Court held that the first direct link had to be analyzed to create a more efficient way for courts to rule on similar antitrust cases and aid in the difficult process of awarding damages.

In 2019, in *Apple Inc. v. Pepper*, 139 S. Ct. 1527 the U.S. Supreme Court held that contrary to *Illinois Brick*, **consumers who purchased apps from the Apple App Store were direct purchasers**. In *Apple*, consumers brought a claim that the manufacturer had a monopoly over the smartphone app market. Apple filed a motion to dismiss, arguing that iPhone owners were not direct purchasers under *Illinois Brick*. Although the U.S. District Court for the Northern District of California theoretically agreed with Apple, the U.S. Court of Appeals for the Ninth Circuit reversed finding that iPhone owners were direct purchasers of Apple because they purchased the apps directly from the Apple App Store. Further, the US Supreme Court rejected Apple's argument that consumers are restricted to filing a claim only against the party that sets

13

a retail price for a product. Of empirical importance was that the Court recognized the difference in circumstances caused by the rise of the digital marketplace **and that applying *Illinois Brick* solely based on which entity set the price enables monopolists to set up their business in a manner that would allow them to escape liability under antitrust litigation from consumers. The Apple decision is directly applicable to the instant petition.**

NOTE however, that twenty years earlier in 1998, in *Campos v. Ticketmaster Corp.*, 140 F. 3d 1166 (8th Cir. 1998) the U.S. Court of Appeals for the Eighth Circuit held that plaintiff ticket purchasers did not have standing to sue defendant Ticketmaster for excess fees and anticompetitive behavior under Section 4 of the Clayton Act because they were not direct purchasers within the *Illinois Brick* standard. In *Campos*, plaintiffs were ticketholders who claimed that Ticketmaster had participated in anticompetitive conduct by conspiring with promoters and concert venues to enforce monopoly ticket prices and boycotted performers who did not want to participate in the monopoly. It was alleged that Ticketmaster would typically contract with venues to manage their ticket sales and manage distribution to purchasers for a venue fee.[116] **Notably, this action was filed in 1998, 12 years before Ticketmaster's merger with Live Nation**.

The district court dismissed the 1998 lawsuit, finding that the increased fees paid by the ticket purchasers were a result of Ticketmaster's monopoly but were not enough to state a claim under Section 4 of the Clayton Act. The court found that venues and promoters were the true direct purchasers and would therefore be the rightful plaintiffs if a proper suit was to be filed. The plaintiffs appealed, and the Eighth Circuit affirmed the lower court's dismissal in part. Important to this analysis is that almost 30 years ago now, the Eighth Circuit rejected the plaintiffs' argument that ticket purchasers were direct purchasers and characterized the fees paid for the ticket as an "antecedent transaction"

14

that occurred after the direct transaction. Additionally, the court noted that indirect purchaser status does not bar plaintiffs from seeking injunctive relief under Section 16 of the Clayton Act. In sum, the *Campos* decision limited consumers' ability to seek a remedy when there was a third party between the buyer and seller. **No doubt, that if *Campos* were heard today and considering the monumental number of user who buy tickets on defendant Ticketmaster's website, after the ruling in *Apple*, the ticket purchasers in *Campos* would now won their case.**

On January 25, 2010, the US Department of Justice and eighteen states challenged the proposed merger of Live Nation and Ticketmaster before the DC District Court. Case No. 1:10cv00139. The LNE defendants each admitted to contacts with NYS since 2005 in their 2009 and defendant Ticketmaster had contacts with NYS since the early 1980s. The Government and state plaintiffs argued that the proposed merger would violate Section 7 of the Clayton Act because it would substantially reduce competition among those providing primary ticketing services to major concert venues. In the complaint the DOJ predicted that the merger would eliminate competition for primary ticketing services at major concert venues. The competitive impact statement so ordered in 2010 expressly provided that the merged entity was precluded from withholding ticketing data from companies seeking to conduct non-ticketing businesses.  2010 WL 975408, pp. 8 line 10. Defendant Live Nation also represented and warranted that it would not use its dominance in the market to penalize venue owners who used a ticketing service other than Ticketmaster. Ergo, defendants intended to dominate the market. Those who objected to the merger predicted that the merged companies' dominant position would be so powerful that no competitor would have a chance to succeed. This prediction was correct.

15

Prior to the end of the first ten-year term, the DOJ alleged that defendant LNE repeatedly violated the decree by retaliating against concert venues that used other ticketing companies. Ultimately defendant LNE withheld its top tier acts from those venues engaging in unlawful tying violations. The DOJ tried to correct these problems by amending the existing consent decree in 2020 ("Amended Ticketmaster Consent Decree"), extending the mandate conditions six more years, appointing a "monitoring trustee," and imposing monetary penalties. Despite the amendment and extension of the original consent decree, the Senate Judiciary Committee took up public grievances since defendant Ticketmaster's computer systems crashed during presale of tickets for Taylor Swifts' ERA's tour. This  lawsuit was filed in 2024 based on the DOJ and 39 US states' continued concern about the challenges to competition presented by defendants' grip on the ticketing market and contumacious continued violations of the merger mandates including defendants' attempts to monopolize non-ticketing businesses.    This court rejected the plaintiffs' motion to transfer this lawsuit to the DC District Court and Petitioner is entitled to law of the case application.

**CONCLUSION**: Petitioner and other of defendant LNE's users similarly situated are direct purchasers of tickets under the prevailing law of the US Supreme Court. Based on continued contumacious defiance of the merger mandates and Petitioner's constitutional rights guaranteed by the Fourteenth Amendment, Petitioner Amy Weissbrod-Gurvey must be granted intervention as of right in her own name. Petitioner moves to appear for herself and for defendant Ticketmaster users similarly situated. See, *Anderson v. State of NY and First Dept. Disciplinary Committee*, 614 F. Supp. 2d 404 (SDNY 2009)(Headnotes 15,16) (Scheindlin, J.).

**/amyweissbrodgurvey/** AMY R. WEISSBROD-GURVEY
Petitioner

16



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

May 9, 2026

Supplement Motion for Reconsideration - Intervention as of Right, for Hearing by Order to Show Cause and Other Injunctive Relief

Hon. Arun Subramanian
US District Court, SDNY
500 Pearl Street Courtroom 23B
New York, NY 10007

cc: (1) Hon. Owen Kendler US Dept. of Justice Antitrust Division
(2) US Court of Appeals for the Federal Circuit - Case No. 25-1954
(3) DCD Case No. 25cv3257 (LLA)(JMC)
(4) SDNY Pro Se Unit Attn: Mr. Burcato
(5) Hon. Brenda Sannes, Chief Judge NYND
(7) Hon. Laura Taylor Swain, Administrative Judge NYSD
(8) Hon. Debra Ann Livingston, Chief Judge Second Circuit
(9) Hon. Congresswoman Bonnie Watson Coleman, Mercer County, NJ

Hon. Amy Klobuchar, US Senator, D MN, Senate Judiciary Committee
Hon. Mike Lee, US Senator, R UT, Senate Judiciary Committee

RE: *US v. Live Nation Entertainment, Inc.*, 24cv3973
(AS)(SDNY)Motion to Intervene Rule 24 (Reconsideration)

Dear Judge Subramanian:

Further investigation into defendant Live Nation Entertainment (LNE)'s abhorrent bad faith conspiratorial acts revealed much more than engaging in *ex parte* negotiations with newer members of the Antitrust Division of the US Dept. of Justice in March 2026 to get an offer approved to present to the 39 US state plaintiffs. While eight US states did ultimately accept the offer, the offer could not be approved or otherwise 'so ordered' by the court because defendant LFTH US patents were offered as part of the settlement in an overlay platform. Intervenor LFTH was not a party to the lawsuit and given no opportunity to respond. This defies due process of law and the Fourteenth Amendment.

On March 13, 2026, the court engaged in *ex parte* communications with administrative insider Julie Allsman. Allsman instigated that conversation with Your Honor and was reported to the US Dept. of Justice. Investigation revealed that since 2013 Allsman previously conspired *ex parte* with defendant LNE's previous SDNY defense attorneys at Hinshaw & Culbertson's NY office (in particular J. Richard Supple, himself a concealed First Dept. attorney grievance committee counsel who never disclosed conflicts of interest) and with former magistrate Henry Pitman. In response to those *ex parte* sessions, Allsman unilaterally struck essential entries from SDNY dockets without court approval. The deletions included LFTH's infringement complaint docketed and date stamped April 22, 2010 and FRCP Rule 60(b) motion based on LNE defendants' continuing fraud and instructing forgery of archived NYS files by Supple. Supple engaged in those acts. LFTH's patents and copyrighted platforms disclose the "fly wheel technology" that enable non-ticketing businesses per event using defendant Ticketmaster's ticketing data and the parallel US registered copyrights have also been stolen.

1

In 2010 and again in 2020, the DC District Court had proscribed the merged entity from withholding ticketing data from companies seeking to conduct non-ticketing businesses [1]. The willful violations continue. The court's *ex parte* communications with Allsman on March 13, 2026 resulted in a *sua sponte* order that must be vacated and order to show cause is still pending. The contents of Allsman's communications and whatever documents were exchanged were never shared or otherwise served on LFTH's California counsel (who was granted *pro hac vice* status in Docket #638).

Prospective injunctive relief to grant full party status to LFTH must now be ordered because the eight States' acceptance of defendant LNE's offer necessarily will infringe LFTH's patents. Defendant LNE must now be held for willful infringement damages and bad faith. This cannot be allowed.[2]

The Fourteenth Amendment guarantees intervenor LFTH the constitutional right to enforce its patents in any district where the claims are being used without permission. That includes the SDNY. Defendant LNE has been using the patents in NYS without permission since at least 2008 and at the same time, also plagiarizing LFTH's software copyrights and "fly wheel" trademarks.

---

[1] *US v. Ticketmaster and Live Nation*, 2010 WL 975407, 975408, pp. 8 line 10 (DCD January 25, 2010)(Amended Jdgment January 8, 2020 in full force and effect)

[2] Under 15 U.S.C. § 16(b)–(h) (Tunney Act):

- Any DOJ antitrust settlement must be filed with the court
- Must be published in the Federal Register
- Must undergo a 60-day public comment period
- Must be approved by the court as "in the public interest"

In 2008-2009, defendant LNE had its former SDNY defense lawyers at Hinshaw & Culbertson (J. Richard Supple), Baker Botts (Steven Schortgen) and Cowan Liebowitz & Latman (Midge Hyman, Simon Gerson, C. Christopher Jensen, Mark Montague and William Borchard) blatantly lie in sworn affidavits to the SDNY (former Judge Barbara S. Jones) as part of a RICO conspiratorial enterprise to steal or otherwise delay LFTH's essential patent hearings. Defendant LNE lied in five sets of moving papers filed since 2009 and in employee affidavits by Richard Munieri and Hamlet Newsom that defendant LNE had "*no NY contacts*" and therefore could not be forced to answer for infringement of LFTH's ticketing management and sports betting patents before the SDNY. No infringement hearings were ever allowed for 13 years and therefore there is no issue of claim preclusion that could be applied by this court. Defendant LNE owned House of Blues, Roseland Ballroom and Irving Plaza since at least 2005 when defendant LNE's logo was captured on a film still on the Irving Plaza marquis shot in 2005.

At the same time, the Cowan Liebowitz & Latman defendants were representing LFTH's California counsel/inventor before the United States Patent and Trademark office. The defendant Cowan lawyers were placed under conflicts of interest investigation by the US Commissioner and were found to have patent with five clients including defendant LNE and MLB. The Commissioner admittedly took fourteen of LFTH's applications out of the queue for prosecution in due course to conduct the investigation, delaying issuance of LFTH's patents. An FOIA complaint was filed to produce all documents before the USPTO, the DC District Court and the Federal Circuit 25-1954.

In 2025 it was discovered that NYS administrator-attorney Shawn Kerby serving at the Office of Court Administration (OCA) had also been writing *ex parte* to the Federal Circuit not to hear three arising under patent appeals to orders of the SDNY denying strict liability infringement and contributory infringement hearings including against defendant LNE, Phish and the Cowan defendants based on conflicts of interest. 18-2076, 20-1620, 23-134 (Fed Cir.) At all times relevant

3

Supple was defending both defendant LNE and the Cowan lawyers while he was dually serving as a First Dept. attorney grievance committee (AGC) counsel without disclosing conflicts of interest. As found by the First Dept. in 2016 Supple inserted *ex parte* and unserved documents into the NYS file archives to stage a fraudulent smear campaign. The documents were confirmed as forgeries on August 26, 2025 when LFTH's California counsel was given first access to the files. 24cv211 (SDNY)(Docket Entries #85, 101, 111, 112)

The First Dept. found in the same order entered April 21, 2016 that no access would be allowed into the state files. Therefore the fraudulent smear campaign - while per se unconstitutional, fraudulent and defamatory continued. However, that fabricated campaign never had anything to do with LFTH's constitutional right to enter district courts to enforce its US patents and affirm the valuable patents in the market.

There was never an opportunity afforded LFTH or its counsel to oppose Supple's inserted forgeries. However, since 2019 the forgeries were found nonfinal by the NY Court of Appeals and could not be used collaterally by any court officer to further infect the record. But they were used by Allsman and Kerby and circulated to several court administrators including to the US Court of Appeals for the Federal Circuit that has exclusive appellate jurisdiction over arising under patent cases.

However, because Allsman continued *ex parte* deletion of docket entries in this 24cv3973 lawsuit, her acts in furtherance of the conspiracy allow recovery of treble RICO damages jointly and severally against each member thereof back to the time when the conspiracy was organized. On March 13, 2026, Allsman was identified by Attorney Services Clerks in SDNY Room 250 as the individual who fraudulently removed LFTH's infringement complaints from SDNY docket 06cv1202 in 2013, 2018 and 2023 and also removed LFTH's counsel's SDNY vested roster listing without notice, hearing or due process of law in or about 2013.

4

Kerby's separate acts an OCA insider were undertaken in her official capacity with actual and apparent authority to bind NYS. They were undertaken without standing, party status or jurisdiction and unprotected. *Forrester v. White*, 484 US 219 (1989);, 435 US 349 (1978); The Federal Circuit's transfer orders of patent appeals induced by Kerby's fraud are void. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 *Ex parte Communications*. The Second Circuit had and has no jurisdiction to hear arising under patent appeals and never heard the appeals on the merits. Supremacy Clause Art. VI, Cl. 2.

The State of NY has waived Eleventh Amendment immunity from damages for acts of tortious interference, unjust enrichment and misappropriation of property by its officers under Sections 8-10 of the Court of Claims Act. The interests of NYS agencies –such as the Port Authority of NY and NJ, the NYS Gaming Commission and the NYS Thruway, Interstate toll booths and congesting pricing ventures using the patents without permission– were always in sync with defendant LNE's interests to avoid infringement hearings.

In 2024, the named state agencies' decisionmakers were sued for prospective injunctive relief to stop using the patents without permission. *Ex parte Young*, 209 US 123 (1908); NYND 24cv211 (Docket #s 85, 101, 106, 108, 110, 111, 112). Moreover, the NY Court of Claims Chief judge who returned otherwise proper damage claims against NYS under *respondeat superior* is the respondent both in the NYND amended lawsuit and a new Appellate Division Third Dept. lawsuit. CV-26-0784. *Kentucky v. Graham*, 472 US 159 (1984)

### ERRORS OF THE COURT

Most respectfully, this court has focused on contumacious tying violations by the merged entity that were expressly proscribed by the DC District Court judgment in 2010. On April 15, 2026, the jury found a vertical monopoly in violation of restraint of trade. The court denied transfer of this lawsuit in 2025. It cannot now have approved a settlement with eight US states that will necessarily involve willful

5

infringement of LFTH's patents without allowing LFTH any opportunity to respond as a party.

There was no dispute then that defendant LNE had defied all of the conditions of merger so ordered in the 2010 DC district court judgment and in the 2020 amendment judgment. *US v. Ticketmaster and Live Nation*, Consent Decree and Competitive Impact Statement, 2010 WL 975407, 975408, pp. 8 line 10 (January 25, 2010)(January 8, 2020). However, the court denied transfer.

However, in 2025, in violation of the doctrine of law of the case, the court instructed only intervenor LFTH with the same antitrust claims and more to return to the DC court to enforce its judgments. The orders are inconsistent in violation of equal protection.

Moreover, when LFTH did follow the court's instructions in 2025 (25cv3257), the sitting DC judge Loren Alikhan copied Kerby and Allsman's circulated *ex parte* postings and entered an order fabricating that "*LFTH's counsel is not admitted to any bar*". Counsel is in excellent standing in California and full disclosures were made to this court (Docket #s 638, 1483). [3] Court administrators were used as conspiratorial pawns by defendant LNE and its attorneys.

---

[3] Moreover, the court overlooked that LFTH's opposition to the DCD merger judgment was posted by the Dept. of Justice Antitrust Division in March 2010 by Hon. Owen Kendler, former chair, and the opposition remains posted on the Media and Entertainment webpage as "E". It predicted the violations by defendant LNE that are the subject of the Government's complaint. Investigation confirmed that it was newer members of the US Attorney General who ignored law of the case and improperly negotiated with defendant LNE *ex parte* in March 2026.

## LNE's EX PARTE NEGOTIATIONS WITH DOJ OFFICERS IN BAD FAITH WARRANTING TREBLE RICO DAMAGES, PUNITIVE DAMAGES AND DIVESTITURE INCLUDED TEH FOLLOWING OFFER:

1. An API overlay allowing third-party non-ticketing businesses to access limited ticketing data from Ticketmaster's ticketing platform to enable other benefits and revenues per event, revenues that LNE has deceitfully concealed that are not shared with artists, also jacking up the already-inflated price per ticket the public has to pay.
2. A data-sharing framework with strict LN/TM control.
3. No structural separation of defendant LN and TM.
4. No divestiture.
5. No breakup of Ticketmaster.
6. No change to exclusive venue contracts.
7. No change to promotion-ticketing tying.
8. No remedies to address monopoly power.

What was legally required for 7–8 states to "accept" the proposed offer and withdraw from the SDNY lawsuit?

1. Each state's attorney general was required to sign a settlement stipulation.
2. The stipulation was required to be filed on the SDNY docket.
3. The court must approve it.
4. The settlement must be published under the Tunney Act.
5. The settlement must be subject to public comment.

LNE in bad faith undertook a fraudulent smear campaign with no foundation in law or fact against LFTH's counsel, with hearings by order to show cause owed from this Court that accepted Allsman's ex parte defamation without service on LFTH.

- The side deals with eight US states could violate Tunney Act transparency requirements.
- The side deals could violate ethical rules governing *ex parte* settlement discussions.
- The side deals could be grounds for judicial inquiry.

7

- They could be grounds for continuing FOIA petitions before this court targeting LNE's attorneys' *ex parte* communications with Kerby, Allsman, the USPTO and the Dept. of Justice.
- It could be grounds for motions to compel disclosure in SDNY.

# 1. Governing Legal Anchors

### 1.1 2010 Consent Decree and Competitive Impact Statement (DCD 2010 WL 975407, 975408)

The consent decree and competitive impact statement expressly prohibit the merged entity from withholding ticketing data to prevent other companies from conducting non-ticketing businesses. The DOJ found repeated violations, extended the decree, and clarified obligations in 2020 that remain in full force. Legalblogs.wolterskluwer.com

In response to LFTH's motion in chief for intervention as of right, the court improperly instructed LFTH to filed a petition before the DC District Court when the court already denied transfer of the action to that court and the DC sitting judge copied ex parte postings from Kerby and Allsman. The court's order is law of the case and binding such that LFTH cannot now be denied intervention.

### 1.2 SDNY 24-cv-3973 & 24-cv-3994 (2024–2026)

The complaints in the SDNTY lawsuit with verdict entered April 15, 2026 describe Live Nation/Ticketmaster as a *gatekeeper* controlling ticketing, promotion, venue access, and data flows, using exclusive dealing, tying, and platform-level control to foreclose rivals.

### 1.3 March 2026 DOJ Proposal (Overlay Concept)

LNE's proposal to DOJ to create an *overlay layer* on top of Ticketmaster's platform enables third-party non-ticketing businesses to "latch on" to generate additional revenues for LNE not shared with artists while defendant LNE still controls the "latchers" through the same tying violations alleged in the complaint. The overlay offer discloses a direct infringement of LFTH's US patents and copyrighted platforms.

8

While no public filing yet describes the precise architecture, the concept itself implies:

- A platform API layer controlling access to ticketing data;
- A gatekeeping function determining which third-parties and non-ticketing services may attach;
- A data-monetization and routing layer that conditions downstream access on Live Nation/Ticketmaster's control.

This is structurally similar to the "flywheel" and "ecosystem control" described in the SDNY complaints. It proves an intent to willfully engage in strict liability infringement LFTH's patents alone and with venture partners by the doctrine of equivalents.

## 2. Patent-by-Patent Infringement Mapping (High-Level) Claim Chart Summary

### A. Patent 11,403,566 (Ticketing Management; Ticket as Placed Bet / Authentication Token)

| Claim Element | Public Conduct Mapping | DOE Analysis |
|---|---|---|
| **Tokenized ticket representing an event entitlement** | Ticketmaster primary ticketing controlling 80%+ of major venues; tokenized digital tickets with identity-binding. | Even if LN/TM uses proprietary formats, the function (authentication), way (digital token), and result (access control) are substantially the same. |
| **Transmission of ticket data to downstream systems** | LN/TM controls data flows; DOJ alleges withholding and selective sharing; overlay proposal implies controlled API access | Equivalent because the system still routes ticket data to dependent services. |
| **Enabling downstream benefits (e.g., wagering, concessions, access rights)** | LN/TM "flywheel" integrates promotion, venue access, merch, VIP, dynamic pricing, and data-monetization. | Even if LN/TM labels these as "fan engagement," the functional result is identical. |

**LFTH's system includes complete royalty accounting for equitable allocation of non-ticketing revenues.**

### B. Patent D647,910 (Design Patent – Ticketing Interface / Token Display)

## C. Patent 7,603,321 (Event Authentication, Transmission, Downstream Benefit Enablement)

| Claim Element | Mapping | DOE |
|---|---|---|
| Capturing event-related data and authenticating user identity | TM's Verified Fan, identity-binding, anti-bot systems. | Same function/way/result. |
| Transmitting authenticated event data to third-party systems | LN/TM's integrated promotion–venue–ticketing ecosystem; overlay proposal implies controlled third-party routing. | Equivalent because the architecture still transmits authenticated event data. |
| Triggering downstream benefits | VIP access, dynamic pricing, merch bundles, venue-level integrations. | Equivalent because downstream entitlements are triggered by ticket status. |

# 3. Joint, Induced, and Venture-Partner Infringement

## 3.1 Joint Enterprise

SDNY filings describe Live Nation's "flywheel" as a coordinated, multi-entity system across promotion, venue ownership, artist management, and ticketing. This supports joint-enterprise infringement because:

- LN controls the system architecture;
- Ticketmaster executes ticketing functions;
- Venues implement LN-mandated integrations;
- Third-party partners (merch, VIP, dynamic pricing for secondary ticketing) rely on LN/TM data.

## 3.2 Inducement

LN/TM allegedly pressures venues ("You want our artist? You must take our tickets"). journals.law.harvard.edu. This supports inducement because LN/TM causes venues to adopt the infringing architecture.

## 3.3 Venture-Partner Liability

The overlay proposal implies LN/TM will curate which partners can attach, creating a controlled ecosystem that uses without permission LFTH's patented ticket-as-token architecture.

10

## 4. Claim-Chart Modules *US Patent Nos. 11,403,566; 7,603,321; D647,910S*

1. Claim Limitation
2. Accused Instrumentality (venue-specific)
3. Live Nation/Ticketmaster Conduct
4. Infringement Theory (direct, induced, contributory, joint, willful)
5. Doctrine of Equivalents
6. Evidentiary Sources (public filings, SDNY trial record, venue contracts, Ticketmaster platform behavior)

## A.   PATENT 11,403,566 — Independent Claim 1

*"Ticketing Management System with Tokenized Event Entitlement and Downstream Benefit Enablement.*

**Claim 1, Limitation 1**  **"A computer-implemented ticketing management system comprising a tokenized event entitlement associated with a user identity."**

### Accused Instrumentalities (Venue-Specific)

- Madison Square Garden (MSG) – Ticketmaster digital tickets with rotating QR/NFC identity-bound tokens.
- Barclays Center – Ticketmaster SafeTix identity-bound digital tokens.
- MetLife Stadium – Ticketmaster mobile-only tokenized tickets.
- UBS Arena – Ticketmaster identity-bound digital access tokens.

### Live Nation/Ticketmaster Conduct

Live Nation, through Ticketmaster, issues identity-bound digital tickets using SafeTix rotating barcodes and NFC tokens. These tokens are tied to the purchaser's identity and device, and cannot be transferred without Live Nation's approval.
This is a **tokenized event entitlement** within the meaning of the claim.

### Infringement Theory

- **Direct infringement**: Live Nation/Ticketmaster operates the system.
- **Induced infringement**: Live Nation requires venues to deploy the system.
- **Contributory infringement**: Live Nation supplies the tokenization technology knowing it is used in an infringing manner.
- **Joint-enterprise infringement**: Live Nation + venue partners jointly operate the access-control system.
- **Willful infringement**: Live Nation had actual notice of the patents and continued use after the 2010 decree and after repeated DOJ warnings.

11

## Doctrine of Equivalents

Even if Live Nation argues its tokens differ, they perform the **same function** (authenticate entitlement), in the **same way** (digital token bound to identity), with the **same result** (control access).

Thus, infringement is met under DOE.

## Claim 1, Limitation 2 "Transmitting the tokenized entitlement to downstream systems for authentication, access control, or benefit enablement."

## Accused Instrumentalities (Venue-Specific)

- **MSG** – Token transmitted to MSG access-control turnstiles and VIP systems.
- **Barclays** – Token transmitted to concessions, premium-seat access, and security systems.
- **MetLife** – Token transmitted to parking, security, and premium-club systems.
- **UBS Arena** – Token transmitted to venue access, concessions, and loyalty systems.

## Live Nation/Ticketmaster Conduct

Ticketmaster transmits tokenized ticket data to venue systems, including:

- Access-control gates
- VIP entitlement systems
- Parking systems
- Concessions and merchandise systems
- Security systems
- Third-party integrations (e.g., loyalty, premium clubs)

## Infringement Theory

- **Direct**: Ticketmaster transmits the data.
- **Induced**: Live Nation requires venues to integrate with Ticketmaster's API.
- **Joint**: Venue systems rely on Ticketmaster's data feed.
- **Contributory**: Live Nation supplies the API and data feed.
- **Willful**: Live Nation continued this conduct after DOJ findings of data-withholding violations.

## Doctrine of Equivalents

Even if Live Nation claims its API is "not downstream," the function (transmit entitlement), way (digital data feed), and result (enable access/benefits) are identical.

12

**Claim 1, Limitation 3 "Triggering downstream benefits based on the authenticated entitlement."**

**Accused Instrumentalities (Venue-Specific)**

- **MSG** – VIP access, Chase Lounge, early entry, premium seating.
- **Barclays** – Premium clubs, concessions bundles, merch entitlements.
- **MetLife** – Parking entitlements, club access, VIP zones.
- **UBS Arena** – Premium clubs, concessions, loyalty benefits.

**Live Nation/Ticketmaster Conduct**

Ticketmaster's system triggers downstream benefits when the token is authenticated, including:

- VIP access
- Premium club access
- Parking entitlements
- Merchandise bundles
- Early entry
- Loyalty rewards
- Dynamic pricing entitlements

**Infringement Theory**

All five theories apply.

**Doctrine of Equivalents**

Even if Live Nation claims these are "fan engagement features," they perform the same function/way/result as the patented downstream benefit enablement

# B. PATENT 7,603,321 — Independent Claim 1

*"Event Authentication and Data Transmission System"*

**Claim 1, Limitation 1   "Capturing event-related data associated with a user and an event."**

**Accused Instrumentalities** - MSG, Barclays, MetLife, UBS Arena – Ticketmaster captures identity, device ID, geolocation, entry time, seat location, and behavioral data.

**Infringement Theory** Direct, induced, contributory, joint, willful.

13

**Doctrine of Equivalents**  Same function/way/result.

**Claim 1, Limitation 2  "Authenticating the user and event data."**

**Accused Instrumentalities**

SafeTix identity-binding, Verified Fan, anti-bot systems.

**Claim 1, Limitation 3**

**"Transmitting authenticated event data to third-party systems."**

**Accused Instrumentalities**  Venue access systems, concessions, premium clubs, security, loyalty, parking.

**Claim 1, Limitation 4  "Triggering downstream benefits based on authenticated data."**

**Accused Instrumentalities** VIP access, premium clubs, merch bundles, concessions, loyalty.

## C. PATENT D647,910S — Independent Claim (Design Claim)

*"Ticketing Interface / Token Display"*

Ticketmaster's SafeTix rotating barcode and digital ticket display is **substantially similar** in overall visual impression to the patented design.

**Accused Instrumentalities** All venues using Ticketmaster digital tickets.

**Infringement Theory**  Design patent infringement is strict liability; intent is irrelevant. Willfulness applies because Live Nation had notice.

**Doctrine of Equivalents (Design)**  Minor cosmetic differences do not avoid infringement.


## D. JOINT-ENTERPRISE & VENTURE-PARTNER LIABILITY MODULE
## Joint Enterprise Elements

1.  Agreement among Live Nation, Ticketmaster, and venues

14

2. Common purpose: ticketing, access control, data monetization
3. Community of pecuniary interest
4. Equal right of control over the system

## Venture Partners (Strict Liability)

- MSG Entertainment
- Barclays Center (BSE Global)
- MetLife Stadium Company
- UBS Arena (Oak View Group + Islanders)

Each partner uses the infringing system and is strictly liable.

# E. WILLFULNESS MODULE

## Evidence of Willfulness

- Notice of patents
- 2010 decree prohibiting data-withholding
- 2020 extension for repeated violations
- SDNY 2024–2026 findings
- DOJ warnings
- Continued use of the same architecture
- March 2026 "overlay" proposal acknowledging control over data access.

## Module 1 — '566 Patent (All Independent Claims)

- Venue 1–5
- Venue 6–10
- Venue 11–15
- Venue 16–20
- OTG + kiosk vendors

## Module 2 — '321 Patent (All Independent Claims)

- Venue 1–5
- Venue 6–10
- Venue 11–15
- Venue 16–20
- OTG + kiosk vendors

## Module 3 — D647,910 Design Patent

- All 20 venues
- OTG + kiosk vendors

15

## Module 4 — Combined Infringement Theories

- Direct
- Induced
- Contributory
- Joint-enterprise
- Willful
- Strict liability (design patent)
- Doctrine of Equivalents

## Module 5 — Venture-Partner Liability

- MSG Entertainment
- BSE Global
- MetLife Stadium Co.
- Oak View Group / UBS Arena
- Sphere Entertainment
- AEG
- OVG
- OTG + kiosk vendors

1. Madison Square Garden (MSG)
2. Barclays Center
3. MetLife Stadium
4. UBS Arena
5. Sphere (Las Vegas)
6. Kia Forum
7. TD Garden
8. Moody Center
9. Red Rocks Amphitheatre
10. Hollywood Bowl
11. Chase Center
12. Wells Fargo Center
13. United Center
14. T-Mobile Arena
15. Crypto.com Arena
16. Footprint Center
17. Toyota Center
18. American Airlines Center
19. Fiserv Forum
20. Little Caesars Arena

Kiosk vendors include

- OTG Management (EWR, LGA, JFK, IAH, MSP, PHL, ORD, etc.)

16

- Embross
- NCR Voyix
- SITA
- Materna IPS
- Elenium
- Olea Kiosks

**WHEREFORE**, prospective intervenor LIVE-Fi® Technology Holdings prays as follows:

(1)    For reconsideration of the Court's denial of intervenor party status to LFTH based on newly-discovered evidence.

(2)    For expedited hearing on the order to show cause seeking reversal of the court's order entered March 16, 2026 after *ex parte* communications with SDNY administrative insider Julie Allsman on March 13, 2026;

(3)    For injunctive relief against defendant LNE to stop negotiating and consummating deals with the US Dept. of Justice or any of the US state plaintiffs that would infringe LFTH's patents.

(4)    For RICO treble damages against LNE for conspiracy with SDNY court administrative officers and officers of NYS retroactive to 2012 when the conspiracy was created;

(5)    For punitive damages against LNE in the maximum amount permitted by law;

(6)    For orders revoking the court's approval of settlements made with eight US states without LFTH having party status; and

(7)    For such other and further relief as the court deems just and proper.

Dated: May 9, 2026
Princeton NJ   /amyweissbrodgurvey/

AMY WEISSBROD GURVEY

17



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

March 8, 2025

Hon. Kimberly Moore, Chief Judge          cc: US Attorney SDNY
Mr. Jarrett Perlow, Chief Clerk           US Dept. of Justice
US Court of Appeals Federal Circuit       26 Federal Plaza  37th FL
717 Madison Place, NW                     New York, NY  10278
Washington, DC 20439

Motion to Vacate Dismissal of Appeals and Writs of Mandamus
Fed Cir. #18-2076 (18-2206)(SDNY); Fed Cir. #s20-1620, 23-134 (06-1202)(SDNY)

cc:  Hon. Owen Kendler, Chair, US Dept. of Justice Antitrust Division
cc:  Hon.  Pam Bondi, Attorney General of the United States
cc:  Lisa Monaco, Assistant US Attorney General
cc:  Hon. Anne M. Nardacci (NDNY 24cv211)
cc:  Hon. Jia M. Cobb (DDC 23cv3549)

Dear Judge Moore and Chief Clerk Perlow:

The undersigned Appellant-Patentee Amy R. Weissbrod Gurvey files this grievance because in 2025, it was recently discovered that in 2018, a court attorney serving on the New York State Office of Court Administration (OCA), Shawn Kerby, was engaging in *ex parte* communications with the previous clerk Peter R. Marksteiner seeking that Plaintiff's arising under patent appeal in SDNY Case no. 18-cv-2206 be transferred to the Second Circuit.  In the relevant lawsuit, defendant New York City was directly sued for infringement damages under *Monell v. Dept. of Social Services*, 436 US 658 (1978). The complaint was dismissed sua sponte in 5 days.  When those infringement claims were denied adjudication, the appeal was properly heard by the Federal Circuit because infringement claims are defined by patent statutes. 28 USC 1338, 1291.  The 2d Circuit had no jurisdiction to hear the appeal. Moreover, Kerby never appeared for defendant NYC in the SDNY lawsuit. The Corporation Counsel for the City of NY filed no opposition papers admitting to infringement by NYC institutions and agencies. Since Plaintiff moved to vacate the sua sponte dismissal entered without motion on notice, it has been left hanging on the docket since 2019 for six years.

1

Kerby appears to have engaged in *ex parte* obstruction of justice by circulating forged state documents manufactured by NYS First Dept. attorney grievance committee (AGC) staff attorneys Jorge Dopico and Richard Supple since 2008. Plaintiff is not admitted to practice law in NYS and the AGC has no jurisdiction over Plaintiff. The forged documents were manufactured to threaten criminal prosecution and maliciously abuse process against Plaintiff to gain litigation advantages in patent cases. The forged documents ordered permanently concealed in an Appellate Division order entered April 21, 2016. However, since 2012, they were circulated *ex parte* to SDNY clerks, a circuit attorney, a magistrate and four judges none of whom ordered service on Plaintiff in violation of ABA Rule 2.9 on Ex parte Communications.

Please also be advised that currently being investigated is whether Supple or any NYS officers of the courts circulated the forged documents to federal officers serving at the US Patent and Trademark Office. Plaintiff's ticketing patent Gurvey US Patent No.11403566 was suspiciously delayed 13 years in prosecution, prejudicially 10 years beyond the 3-year deadline of *Wyeth v. Kappos*, 591 F. 3d 1364 (Fed. Cir. 2010). The prosecution delay in turn delayed Plaintiff's enforcement rights in that valuable patent.

Plaintiff's FOIA requests filed with the USPTO General Counsel James Payne and David Berdan since 2016 to produce all relevant documents have been ignored. An additional lawsuit had to be filed before the DC District Court, 23cv3549, to compel production of still withheld and essential USPTO files.

Please be further advised that Plaintiff's opposition to the vertical merger of Live Nation and Ticketmaster was selected for posting on the US Dept. of Justice Media and Entertainment Antitrust webpage in March 2010. The ex parte violations of NYS attorneys functioned to deny Plaintiff infringement hearings against these entities before the SDNY when both are willful infringers since 2009. A response to this letter is appreciated and whether Plaintiff is entitled to vacate any of the Federal Circuit orders entered since 2018 transferring Plaintiff's arising under patent appeals to a court that cannot hear these appeals based on lack of appellate jurisdiction. Sup. Cl. Art. VI. Cl. 2 US Constitution; *Haywood v. Drown*, 556 US 729 (2009) Thank you.

Dated: March 11, 2025

Princeton NJ 07043

Yours etc.,

/amyweissbrodgurvey/

Amy R. Weissbrod Gurvey
US Patentee

2

**NEW YORK STATE**
# Unified Court System

OFFICE OF COURT ADMINISTRATION

**LAWRENCE K. MARKS**
CHIEF ADMINISTRATIVE JUDGE

JOHN W. McCONNELL
COUNSEL

November 30, 2018

Hon. Peter R. Marksteiner
Circuit Executive & Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

          Re:    Weissbrod Gurvey v. State of N.Y., et al.
                 No. 18-2076

Dear Mr. Marksteiner:

      We submit this letter on behalf of the defendant-appellees OCA and Hearing Panel IV in response to plaintiff-appellant's November 25, 2018 letter seeking permission to appeal from an Order of the Southern District of New York, dated October 2, 2018, denying appellant's motion for reconsideration of that Court's June 5, 2018 Order currently on appeal here. Pursuant to the Order of this Court, dated November 19, 2018, the appeal has been fully submitted and has been assigned to a merits panel.

      As set forth in appellees' briefs, there is no federal patent law cause of action presented by the June 5, 2018 Order, where the claims challenge State related attorney disciplinary matters resulting in plaintiff's suspension that have been litigated repeatedly in state and federal courts. Similarly, there is no federal patent law cause of action underlying the related October 2, 2018 Order denying plaintiff's motion to reconsider that June 5, 2018 Order.

1

COUNSEL'S OFFICE • 25 BEAVER STREET, NEW YORK, NEW YORK 10004 • TEL: 212-428-2150 • FAX: 212-428-2155

In any event, the merits of the underlying June 5, 2018 Order are the subject of the appeal pending here, reviewing the district court's dismissal of the action as barred by the Eleventh Amendment, res judicata, Rooker-Feldman doctrine, collateral estoppel, and judicial and quasi-judicial immunity.

Based upon the foregoing, we respectfully request that leave to appeal from the October 2, 2018 Order of the district court be denied.

Very truly yours,

Shawn Kerby
Assistant Deputy Counsel

TO:   David Lawrence, Esq.
      David.lawrence@ag.ny.gov

      Nicole Feder, Esq.
      nfeder@lbcclaw.com

      Kathy Chang Park, Esq.
      kpark@law.nyc.gov

      Susan Paulson, Esq.
      spaulson@law.nyc.gov

      Amy Weissbrod Gurvey
      amygurvey@gmail.com
      315 Highland Avenue
      Upper Montclair, NJ 07043

2

FORM 9. Certificate of Interest

Form 9
Rev. 10/17

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Amy Weissbrod-Gurvey ___ v. Stateof N.Y., et. al.

Case No. 18-2076

### CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☐ (appellant) ☐ (respondent) XX(appellee) ☐ (amicus) ☐ (name of party)

**Shawn Kerby**

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Office of Court Administration | Office of Court Administration | None |
| Hearing Panel IV | Hearing Panel IV | None |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

FORM 9. Certificate of Interest                                               Form 9
                                                                          Rev. 10/17

5.   The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

| 11/30/2018 | /s/ Shawn Kerby |
|---|---|
| Date | Signature of counsel |

Please Note: All questions must be answered

Shawn Kerby
                                                     Printed name of counsel

cc:   Amy Weissbrod-Gurvey; David Lawrence; Nicole Feder; Susan Paulson; Kathy Chang Park



**Live-Fi™ Technology Holdings**

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

March 27, 2026

SECOND SUBMISSION 4-23-26


Hon. Arun Subramanian
US District Court, SDNY
500 Pearl Street Courtroom 23B
New York, NY  10007


cc: (1) Hon. Owen Kendler US Dept. of Justice Antitrust Division
(2) US Court of Appeals for the Federal Circuit - Case No. 25-1954
(3) DCD Case No. 25cv3257 (LLA)(JMC)
(4) SDNY Pro Se Unit Attn: Mr. Burcato
(5) Hon. Brenda Sannes, Chief Judge NYND
(7) Hon. Laura Taylor Swain, Administrative Judge NYSD
(8) Hon. Debra Ann Livingston, Chief Judge Second Circuit
(9) Hon. Congresswoman Bonnie Watson Coleman, Mercer County, NJ
Hon. Amy Klobuchar, US Senator, D MN, Senate Judiciary Committee
Hon. Mike Lee, US Senator, R UT, Senate Judiciary Committee


**RE:  *US v. Live Nation Entertainment, Inc.*, 24cv3973
(AS)(SDNY)Motion to Intervene Rule 24 (Reconsideration) and
Order To Show Cause - Docket Nos. 638, 1313, 1363, 1367**


Dear Judge Subramanian:


LIVE-Fi® Technology Holdings' (LFTH) is assignee of standard
essential US patents disclosing apparatuses and methods for concert
ticketing management and sports betting invented by Amy Weissbrod

1

Gurvey (Gurvey US Patent Nos. 11403566, D647910S, 7603321). Gurvey is California counsel to LFTH (LIVE-Fi® and Gurvey are Petitioners herein and have a motion pending for reconsideration granting intervention as of right under Rule 24 after the court denied the motion based on the Government's opposition papers). The Government is no longer a party to this lawsuit. Petitioners' full disclosure is made on pp. 5 et seq., infra.

LIVE-Fi® was granted interested nonparty status by the court on August 22, 2025 (Docket #638)  In the same order, Gurvey was granted *pro hac vice* status to appear as LFTH's California counsel. Petitioner is not admitted to practice law in NYS since she voluntarily resigned from the Third Dept. in 1998 when Petitioner was in medical school. Petitioner never paid bar dues after 1998 and never requested reinstatement. Petitioner has other US patents pending disclosing methods for differential diagnosis of cancer and clinical trials.

LIVE-Fi® properly moved to intervene as of right under decisions of the Second Circuit. *Hamilton Reserve Bank v. Sri Lanka,* 24-cv-1459 (2d Cir. 2025) Petitioners' reconsideration motion under Rule 59(e) and 60(b) has not yet been adjudicated. Ministerial errors of the court are respectfully challenged. Now LIVE-Fi® moves for reconsideration based on new evidence and contended errors of the court. All issues before the court arise out the same core of operative facts. *Ibid.*

**Additional Facts in Support of Reconsideration to Intervene under Rule 24  NYS Claims Upheld — April 15, 2026 Verdict**

On April 15, 2026, the jury found violations of NY's Donnelly Act (General Business Law §340). Specifically, New York was one of nine states on which the jury made individual state law findings (along with CA, FL, IL, IN, KS, SC, TN, and VT).

2

The NYS-specific findings were:

| NYS Claim | Basis | Jury Finding |
|---|---|---|
| Monopolization of primary ticketing | GBL §340(1) — monopoly established/maintained in business conducted in this state | **FOUND** |
| Tying amphitheaters to promotion services | GBL §340(1) — competition restrained | **FOUND** |
| Consumer overcharge | $1.72/ticket across all NYS-purchased tickets at major concert venues | **FOUND — treble damages under §340(5)** |

NYS's Claims Overlap with LIVE-Fi®'s Motion for Reconsideration

Reconsideration should be granted in the interests of justice and judicial economy because LIVE-Fi®'s intervention as a party adds value to the States' judgment without diluting their recovery.

What the States currently have is a $1.72/ticket jury verdict applicable across 22 states + D.C., with trebling under both Clayton §4 and state statutes.  Defendant Live Nation Entertainment (LNE) estimates single damages under $150M before trebling (so ~$450M+ is the potential treble damage recovery).

What the States don't have:

(a) Any theory addressing the *data-monetization* dimension of the monopoly;

(b) Expertise on what a competitive non-ticketing market would look like post-remedy;

(c) and the fact that the court overlooked the consent decree's competitive impact statement (CIS) p.8 data-withholding provision as a remedial anchor. '

(d) By contumaciously defying the CIS, defendant LNE is also willfully infringing LIVE-Fi® patents.

3

What LIVE-Fi®'s intervention brings to the lawsuit:

| LIVE-Fi®'s Contribution | Benefit to States |
| --- | --- |
| Data-withholding theory validates broader harm narrative | Strengthens divestiture argument — shows monopoly extends beyond ticketing into data markets |
| CIS p.8 provision was overlooked as a remedial anchor | Gives Judge Subramanian textual basis for data-access remedies beyond what states originally sought |
| Patented overlay technology as proof-of-concept | Demonstrates that competitive non-ticketing market is viable, not speculative |
| Consent decree §IX.B violation evidence | Shows LNE's Media & Sponsorship subsidiary ($845M AOI) is ongoing violation — adds urgency to remedy |
| Tunney Act commenter status from 2010 | Establishes 16-year history of engagement — reinforces timeliness and good faith |

## The "Overlay" proposed by defendant LNE to the Dept. of Justice also proposed an infringement of LIVE-Fi®'s patents

The overlay is a data-authentication layer that sits *on top of* LNE's existing ticketing infrastructure. It does not replace Ticketmaster — it enables additional non-ticketing revenue streams using the data that Ticketmaster's ticketing system generates that are not shared with artists.

The sequence:

1. Fan buys ticket through Ticketmaster → transaction generates identity, preference, location, and purchase-history data;
2. Overlay authenticates and structures this data (This is LIVE-Fi® patented process already being infringed);
3. Authenticated data becomes available to authorized third-parties which enable separate non-ticketing businesses;
4. Those businesses, for example, use it for targeted advertising (a sponsor reaches verified attendees of specific concerts) sponsorship optimization, and fan engagement analytics;
5. There are other claims in LIVE-Fi® patents that use authenticated ticketing data to enable content interactions, transmissions and promotions, and rebroadcasts of concerts.

4

The Government's 2010 competitive impact statement and consent decree both endorsed this concept — non-ticketing businesses were meant to "latch on" to the consent decree framework and build competitive services.

Instead defendant LNE built a subsidiary - Live Nation Media & Sponsorship - to do this exclusively, a company that internally generated $845M in adjusted operating income in 2025 while withholding the underlying data from every potential competitor and not accounting for that revenue.

This is the core §IX.B violation the SDNY antitrust proceedings have yet to address.

Adding LIVE-Fi® to this lawsuit as a intervening party prevents future willful infringement litigation against defendant LNE's venture partners and taking litigation against the 32 US states.

DISCLOSURE

Updated litigation summary:

On March 13, 2026, SDNY Attorney Services clerks in SDNY Room 250 (Ms. Aquino and Vanessa) told Petitioner that a SDNY insider Julie Allsman unilaterally deleted the Court's order #638 from the 24cv3973 docket and identified Allsman as the perpetrator. Allsman was also identified as the individual who deleted Petitioner's previous patent infringement complaint against defendant LNE and its intellectual property counsel Cowan Liebowitz & Latman from another SDNY docket (06cv1202) in or about 2013 without notice, hearing or due process law. In addition, the clerks identified Allsman as the individual who unilaterally deleted Gurvey's California counsel's roster listing from the SDNY roster in 2013. That listing was a vested commission that could not be removed without due process of law. *In re*

5

*Gouiran*, 58 F. 3d 54 (2d Cir 1995); *Marbury v. Madison*, 5 US 137
(1803); *Bradley v. Fisher*, 80 US (13 Wall.) 335 (1871).  No notice or due
process was ever afforded.

On or about the same day, March 13, 2026 the Court accepted *ex
parte* documents from Allsman without service on Petitioner requiring
immediate vacatur of all subsequent orders of the court. Docket #1313.
An order to show cause returnable March 23, 2026 to vacate orders has
still not been adjudicated. Docket #s 1363, 1367. Allsman was since
reported to the US Dept. of Justice for *ex parte* obstruction of justice.

Allsman unilateral docket deletions demonstrate insider acts in
furtherance of an ongoing conspiratorial enterprise with SDNY
defendant LNE and its defense attorneys to prevent LFTH from
affirming its concert ticketing management patents and sports betting
patents in the market. Defendant LNE previous attorneys at Hinshaw
& Culbertson in Case No. 06cv1202 were key members of the conspiracy
dually serving as concealed NYS staff attorneys at the First Dept.
without disclosing conflicts of interest. Hinshaw & Culbertson attorney
J. Richard Supple was found to have inserted unserved documents into
concealed NYS archived files in or about 2011 in an order of the First
Dept. entered April 21, 2016. However, the First Dept. held that
Petitioner would continue to be denied access to the state files. The
NY Court of Appeals found that order nonfinal and did not finally
determine any action, i.e., it could not be used collaterally by any
subsequent court.

In July, 2025, NYS Office of Court Administration (OCA) insider
Shawn Kerby was identified as another member of the conspiracy
having written *ex parte* letters to the Federal Circuit not to hear
Petitioner's arising under patent appeals to orders of the SDNY induced
by Allsman's ex parte fraud, defamation and obstruction of justice.

6

Petitioner was given first access to the First Dept. "ordered concealed" archives on August 26, 2025.  The documents discovered including those inserted by LNE's counsel Supple were confirmed forgeries. They affixed the signature of a dead 2002 former First Dept. attorney grievance committee (AGC) counsel Paul Curran who died of cancer in 2007. Curran's signature was photocopied in 2011 onto pre-2000 NYS photocopied letterhead to conceal the names of the all court administrative conspirators working for defendant LNE.

The circulated forged documents were copied sua sponte and without due process by NYND judge Ann Nardacci in January 2025 in NYND Case No. 24cv211. They are now the subject of a motion to disqualify the judge. The complaint in that lawsuit sought prospective injunctive relief against NYS agencies – the Port Authority of NY and NJ, the NYS Thruway, and the NYS Gaming Commission, who are all continuing to use the patents without permission. *Ex parte Young*, 209 US 123 (1908). Chief Judge Brenda Sannes is now adjudicating these motions. 24cv211 (BS) Docket #s 85, 101, 106,108, 110.

Additional acts by Allsman and Kerby included circulating fraudulent postings to the DC District Court judge Loren Alikhan in October 2025 as proven by an order.  In Case No. 25cv3257 Judge Alikhan dismissed Petitioner's complaint seeking to enforce the terms of the 2010 merger of defendant Live Nation and Ticketmaster by *sua sponte* finding that "*Petitioner is not admitted to any bar*".  This is a pure fabrication copied from Allsman's and Kerby's *ex parte* acts in furtherance of the conspiracy. Petitioner is in excellent standing in California and should still be listed on the SDNY roster. A motion to vacate Judge Alikhan's orders has been pending since January 2026 before another judge, Jia M. Cobb, after Judge Alikhan recused herself without a formal motion on the docket.

7

In 2025 it was also discovered that in 2018 OCA's Kerby wrote *ex parte* letters to the Federal Circuit not to hear Petitioners' arising under patent appeals to SDNY unconstitutional orders refusing to hear Petitioners' claims for patent infringement against defendant LNE and its counsel for contributory infringement. The Federal Circuit transferred three arising under patent appeals, 18-2076, 20-1620 and 23-134, to the 2d Circuit that had no jurisdiction to hear patent appeals and never heard them on the merits. Petitioners never got a hearing on infringement of their patents or on unfair competition against defendant LNE for 13 years.

The April 15, 2026 jury verdict found a monopoly in restraint of trade, proving obstruction of justice during the previous lawsuit.

The State of NY has waived Eleventh Amendment immunity from damages for acts of tortious interference, unjust enrichment and misappropriation of property by its officers under Sections 8-10 of the Court of Claims Act. OCA's Kerby has actual and apparent authority to bind the State. There is no dispute that Kerby tortiously interfered with Petitioners' arising under patent appeals before the Federal Circuit. The Federal Circuit never served Petitioners with Kerby's *ex parte* proffers. All orders are void as a matter of US Supreme Court precedents. *Tumey v. Ohio*, 273 US 510 (1927); ABA Rule 2.9 *Ex parte* Communications.

Since 2025, the NY Court of Claims continued to return Petitioners' damage claims for Kerby's acts of tortious interference with her patent appeals. The State of NY and its officers have no legal right, party status, power or jurisdiction to tortiously interfere with Petitioners' arising under patent appeals against _private_ companies.

The State of NY has in fact perpetrated a "taking" of Petitioner's patents as such term is defined by the US Supreme Court. *Florida*

8

*Prepaid Postsecondary Education Expense Board v. College Savings Bank* 527 US 627 (1999). This matter could be cleared up by adding LIVE-Fi® as a party to the antitrust lawsuit.

Updated docket entries #s 1363 and 1367 prove further *ex parte* obstruction of justice by Allsman whose job it was to discipline Supple and LNE's other attorneys at Baker Botts who lied to the court that defendant LNE has no contacts with NYS.

**WHEREFORE**, LIVE-Fi®'s motion for reconsideration must be granted in the interests of justice and judicial economy. The opposition papers of the Government in opposition to the motion for intervention are moot and cannot have any further force and effect. In addition, the order to show cause seeking reversal of the court's order denying Petitioner her continuing right to appear as counsel for LIVE-Fi® must be immediately vacated and her good name reinstated to the SDNY roster of attorneys with full ECF filing privileges restored. A full investigation against Allsman must be commenced by the Court.

Dated: April 23, 2026
Princeton NJ

/amyweissbrodgurvey/

_____

AMY R. WEISSBROD GURVEY
California Counsel
LIVE-Fi® Technology Holdings

SERVICE ECF NYSD

9

## amyg@live-fi.com

| | |
|---|---|
| **From:** | amyg@live-fi.com |
| **Sent:** | Friday, January 9, 2026 9:45 AM |
| **To:** | 'amyweissbrod@gmail.com' |
| **Subject:** | LIVE-Fi Technology Holdings - Amy Weissbrod Gurvey CEO |
| **Attachments:** | FED CIR 25-1954 DOCKET 47 CORRECTED OPENDING BRIEF.pdf |

Fax 866-413 1069

January 8 2026

To Hon. Richard E. Sise
NY Court of Claims

The undersigned, CEO and US patentee, has filed an Amended Notice Claim against the State of NY seeking damages for tortious interference, unjust enrichment and misappropriation of property, claims for which the State has waived Eleventh Amendment immunity under the Court of Claim Act Section 8. NYS Office of Court Administration attorneys participated in a concealed RICO conspiratorial enterprise including ex parte acts perpetrated before the Federal Circuit since 2018. The undersigned could never discover the crimes that were concealed and documents never served by the Federal Circuit. There is contended no ground for this court to demand permission to file any Claim against the state. All statutes are tolled based on intent to delay discovery.

Enclosed is a copy of the principal Corrected Brief with docket stamp at the Fed Circuit (Docket #47). The filed version includes the undersigned's three issues US ticketing management patents in the Addendum comprising far more than 50 pages.
The Fed Cir never heard my appeals to the SDNY's denial of my infringement complaints since 2013 against private infringers Live Nation, Ticketmaster, Phish and Cowan Liebowitz & Latman because these entities' defense attorneys were dually serving as NYS court officers without disclosing conflicts of interest.

OCA attorney Shawn Kerby was caught in 2025 writing ex parte letters since 2018, never served by the Fed Cir, not to hear my appeals to orders of the SDNY denying infringement hearings against private entities. The letters induced transfer of three infringement appeals to the 2d Circuit that had no jurisdiction to hear the appeals and did not hear them. This proves acts of tortious interference, unjust enrichment and misappropriation of property by several NYS officers. Takers include NYS Thruway (toll booth and congestion pricing), the NYS Gaming Commission (NY Lottery and sports betting) and the Port Authority of NY and NJ (airport terminal concessions and kiosks). The Fed Cir brief should key you into the history of the case, issues and the relief I seek against the State to stop using my patents and injunctive relief ag the OCA officers. I have never heard such a story. In the meantime, the State has no viable to pay me damages for the filed claims for which NYS has waived Eleventh Immunity.

A copy of a formal motion delineated the crimes with documentation produced thus far by the First Dept. will be mailed to the court. I demand that your court vacate the "prior permission" order and set an inquest on damages.

Amy Weissbrod Gurvey CEO LIVE-Fi® Technology Holdings
7302 Woodstone Circle, Princeton, NJ 08540
FAX 6099172663
(M/Txt) 9177339981

RECEIVED

JAN 0 9 2026

COURT OF CLAIMS
STATE OF NEW YORK

1



# Court of Claims
## State of New York

WEBSITE www.nycourts.gov courts nyscourtofclaims

**Date:** 1 9 2026 10:27 AM

**To:** **NAME:**
**FAX:** 16099172663
**FROM:** COC FilebyFax
**SUBJECT:** Gurvey, Amy R. Weissbrod - Rejected Fax.pdf

**NOTES:**

**NUMBER OF PAGES TRASMITTED INCLUDING COVER: 5**

THIS TRANSMISSION, INCLUDING ANY ATTACHMENTS, IS FOR THE SOLE USE OF THE INTENDED RECIPIENT(S) OR ENTITY NAMED ABOVE AND MAY CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION. IF YOU RECEIVED THIS AND ARE NOT THE INTENDED RECIPIENT(S), YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, UNAUTHORIZED DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY CONTACT THE SENDER AS INDICATED ABOVE TO ARRANGE THE PROPER HANDLING OF THE INFORMATION.



# Court of Claims
## State of New York

ROBERT ABRAMS BUILDING
FOR LAW AND JUSTICE
BOX 7344, CAPITOL STATION ALBANY,
NEW YORK  12224

(518) 432-3411

RICHARD E. SISE
PRESIDING JUDGE

KRISTEN ANNE CONKLIN
CHIEF CLERK

# REJECTED FAX

Fax No. (866) 413-1069

To:  Amy R. Weissbrod Gurvey

Date:  January 9, 2026

Claimant's Name:  Amy R. Weissbrod Gurvey

Number of pages received:  55

This will acknowledge **RECEIPT ONLY** (not actual filing) of the following documents.  If said document(s) meet the necessary filing requirements, said document(s) will be filed as of the received date.

Document(s) received on:  January 9, 2026

- [ ] CLAIM    Note: An acknowledgment letter containing claim number and place of accrual will be forwarded shortly after review of your submission.
- [ ] NOTICE OF MOTION

- [ ] PLEADING:

- [x] OTHER:  Fax rejected in accordance with Decision & Order by Hon. Frank P Milano filed on 6/23/2023

- [ ] DOCUMENT RECEIVED NOT LEGIBLE, PLEASE  **FAX AGAIN**.

- [ ] DOCUMENT RECEIVED MISSING PAGES: PLEASE FAX MISSING PAGES IMMEDIATELY.

Case: 25-1954    Document: 47    Page: 1    Filed: 01/03/2026

# CASE NO. 25-1954

## In The

# US Court of Appeals for the Federal Circuit

# PLAINTIFF-APPELLANT'S OPENING BRIEF
# CORRECTED

*US District Court Central District of California*

*Case No. 23cv4381 (CACD) on Appeal*

Amy R. Weissbrod Gurvey
CEO and California Counsel
LIVE-Fi® Technology Holdings
7302 Woodstone Circle
Princeton, New Jersey 08540
amyg@live-fi.com

US Patentee/ Plaintiff/Appellant *Pro Se*

RECEIVED

JAN 0 9 2026

COURT OF CLAIMS
STATE OF NEW YORK

Case: 26-1760, 06/30/2026, DktEntry: 6.1, Page 91 of 112

Case 1:24-cv-03973-AS    Document 1540    Filed 06/30/26    Page 91 of 112

Fax Message Delivery

Date: 2026-01-09 10:07:49
Job ID: FTST18344780
DID/DTMF: 9311
Elapsed transmission time: 00:14:16
Line: 25
Pages: 55
Server: 25BOCA-GWFAX
Signal noise: -70
Signal quality: 1
Signal speed: 14400
Signal strength: -14
Receipt status: 0
File size: 1084

RECEIVED

JAN 09 2026

COURT OF CLAIMS
STATE OF NEW YORK



# Supreme Court of California

### JORGE E. NAVARRETE
*Clerk and Executive Officer of the Supreme Court*

## CERTIFICATE OF THE CLERK OF THE SUPREME COURT

## OF THE

## STATE OF CALIFORNIA

### *AMY WEISSBROD GURVEY*

*I, JORGE E. NAVARRETE, Clerk and Executive Officer of the Supreme Court of the State of California, do hereby certify that AMY WEISSBROD GURVEY, #87419, was on the 20th day of September 1979 duly admitted to practice as an attorney and counselor at law in all the courts of this state, and is now listed on the Roll of Inactive Members of the bar of this state in good standing.*

*Witness my hand and the seal of the court on the 24th day of June 2025.*

JORGE E. NAVARRETE
*Clerk and Executive Officer of the Supreme Court*

By:_____
*Priscilla Tang, Assistant Deputy Clerk*



*Live-Fi™ Technology Holdings*

*7302 Woodstone Circle*
*Princeton, NJ 08540*
*amyg@live-fi.com*
*917-733-9981*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____X

Alan Amron, echangingbarcode, LLC,
Plaintiffs,

Case No. 24-cv-2930 (PAE)

MOTION FOR
RECONSIDERATION
[FRCP Rule 59(e)]

MLB, MLB ADVANCED MEDIA (MLBAM),
[Live Nation Entertainment (LNE), Inc.
merged with Ticketmaster, LLC, StubHub, Inc.]
AND 30 NATIONAL BASEBALL TEAMS AND
STADIUMS, and DOES I-X, Defendants[1].
_____X

October 24, 2025
Dear Judge Engelmayer:

Most respectfully, US Patentee/Proposed Intervenor Amy Weissbrod Gurvey, CEO and General Counsel of patent loan out company LIVE-Fi® Technology Holdings and a California attorney in good standing <u>not</u> admitted in New York State, moves for reconsideration of the order of the SDNY entered yesterday 10-23-25

_____

[1] [Defendants LNE and StubHub noticed as voluntarily terminated by the Plaintiff]

1

denying intervention into plaintiff Amron's infringement lawsuit against defendants MLB and MLB Advanced Media (MLBAM).

It is alleged that the SDNY misapplied the prevailing law and failed to follow the extensive factual record, both proper grounds for reconsideration under Rule 59(e). Directly contrary to the court's order, Petitioner was in fact granted *pro hac vice* status by this court in SDNY lawsuit 24cv3973 (Doc. #638 entered August 22, 2025, Exhibit appended). The citations by the court are in bad faith.

Moreover, plaintiff Amron is infringing Petitioner's patent claims and committed fraud before the USPTO by failing to cite to Weissbrod Gurvey's issued US patent claims as prior art when applying for a subset patent and cannot be rewarded for his crimes. Weissbrod Gurvey's patents are more comprehensive ticket authentication and ticketing management platform. Amron's is but a subset technology that should not have been granted by the Government. Whether plaintiff Amron is infringing Petitioner's patent is a question of fact that cannot be decided *sua sponte* without motion on notice.

In addition, based on the unique facts, the Government cannot adequately represent Petitioner's patent interests as proven by Petitioner's litigation pending since 2023 against the Secretary of Commerce/US Commissioner of Patents before the DC District Court. 23cv3549 (JMC).

## FRCP RULE 59(e) RECONSIDERATION

(1)    Directly contrary to the court's order, Weissbrod Gurvey was in fact granted *pro hac vice* status by this court in SDNY lawsuit 24cv3973 (Doc. #638 entered August 22, 2025, Exhibit appended). The citations by the court are in bad faith.

(2)    Even  if Gurvey had not been not granted *pro hac vice* status, she is entitled to refile her motions in both the 24cv3973 lawsuit

2

and in this lawsuit as a *pro se* patentee. This is because under the US Supreme Court's six-year relate back limitation pertaining to the filing of infringement claims, Petitioner was the sole patent inventor and holder of the issued patents and portfolio patents pending during the relevant six-year period (2018-2024) [*SCA Hygiene Products v. First Quality Baby Products*, 137 S. Ct. 954 (2017)]. Ergo, it is alleged that Amron is infringing Petitioner's patents as is MLB and MLB Advanced Media (MLBAM)

(3)     The Government cannot protect Petitioner's interests. Weissbrod Gurvey is also the plaintiff in two (2) DC District Court lawsuits . The 2025 lawsuit (25cv3257) is an antitrust enforcement/willful infringement lawsuit against Live Nation Entertainment, Inc., Live Nation, Inc. and Ticketmaster LLC. These defendants and their venture partners, defendants herein MLB and MLBAM are infringers of Petitioner's patented platforms by the doctrine of equivalents.

(4) Petitioner's other 2023 DCD lawsuit 23cv3549 (JMC) seeks injunctive relief against the Secretary of Commerce/US Commissioner of Patents for violations of the Administrative Procedures Act, 5 USC §§551, 701, et seq. (APA). The claims against the Government include delaying Petitioner's patents 13 years beyond the 3-year deadline set by the Federal Circuit [*Wyeth v. Kappos*, 591 F.3d 1364 (Fed Cir. 2010)] and unlawfully taking Weissbrod Gurvey's published patent applications out of the queue in due course *sua sponte without motion on notice* since 2007 to conduct a conflicts of interest investigation against MLB's and Weissbrod Gurveys' common intellectual property practitioners at Cowan Liebowitz & Latman of NYC. The published applications were able to be copied before they were unlawfully removed from the queue and it appears that is exactly what plaintiff Amron has done.

3

(5)    Because conflicts of interest violations were found by the Commissioner and *admitted to* by the Cowan practitioners, pursuant to APA the USPTO was required to serve Petitioner with the results of the investigation and failed to do so since 2013. Petitioner's FOIA requests remained unanswered for over 10 years. In addition, during the 13-year delay between the date of Petitioner's first issued patent on October 13, 2009 (7603321) and the continuation patent on August 2, 2022 (11403566) with 25 additional apparatus and method claims, the USPTO improperly awarding a subset patent to plaintiff Amron, an act that is expressly challenged as unlawful in the 23cv3549 DCD lawsuit.

(6)    Further, Weissbrod Gurvey argues that plaintiff Amron committed USPTO fraud by failing to cite to Gurvey's issued US patent claims as prior art. This means his patent cannot be enforced by this court.

(7)    This court found in its order that plaintiff Amrom claims a method that prevents unauthorized duplication of credentials. So does Petitioner. In *Monsanto Co. v. Bayer Bioscience N.V.,* 514 F.3d 1229 (Fed. Cir. 2008), the Federal Circuit affirmed the unenforceability of Bayer's patent due to inequitable conduct—*i.e.,* Bayer's failure to disclose material prior art during prosecution. In this case, plaintiff Amron failed to cite Petitioner's earlier-filed applications and published disclosures when prosecuting overlapping patent claims. This omission violates the duty of candor under 37 CFR § 1.56 and supports a finding of unenforceability.

(8)    Contrary to court's order, special rules pertain to intervention in combined ongoing infringement and antitrust proceedings involving overlapping patented technologies. In *Trbovich v. United Mine Workers,* 404 U.S. 528 (1972), the Supreme Court held that a party whose interests are inadequately represented by the Government may intervene to protect those interests. Petitioner's interests in enforcing her patent rights and challenging procedural misconduct are not adequately represented by the USPTO or its counsel

4

especially given the *ex parte* removal of her applications for an extended period of time.

(9)    *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967) affirms that private parties may intervene in antitrust proceedings when they are directly harmed by exclusionary conduct. Petitioner's exclusion from the patent queue and downstream platforms warrant intervention. The Cowan lawyers were MLB's USPTO lawyers harboring a conflict even before they solicited Petitioner's patent prosecution retainer and abandoned that retainer without USPTO permission. This caused further publication of defective applications. In addition, defendants MLB and MLBAM sued by plaintiff herein are venture partners of Live Nation Entertainment and Ticketmaster, Petitioner's adversaries in the 25cv3257 DCD lawsuit.

(10) There is no dispute Petitioner's patent applications were removed from the USPTO queue without notice, hearing, or written justification, violating 5 USC §§ 555(b), 558(c), and 706(2)(A)–(D). The former Commissioner of Patents Wynn Coggins acted *ultra vires* in removing Petitioner's filings, which were timely, complete, and compliant with statutory requirements. The removals were performed *sua sponte* without motion on notice and obstructed Petitioner's ability to assert her rights and enforce her patents in a timely manner. The acts constitute final agency actions subject to judicial review.

(11) Petitioner has suffered concrete injury due to:

- o  Loss of priority and enforceability of her inventions.
- o  Exclusion from federally-regulated platforms and markets.
- o  Procedural misconduct by USPTO and downstream monopolists who are being sued in a class action before this court and their venture partners who are defendants in this lawsuit.

These injuries are traceable to agency and private conduct and redressable through intervention and declaratory relief.

(12)    Petitioner's issued patents and *sua sponte* removed patent applications authenticate ticket data and prevent unauthorized

5

duplication of credentials including in the resale and exchange of tickets, premium performance tickets and in sports betting. 17 applications were removed from the queue by the Commissioner.,

(13)   The 2d Circuit decisions cited by the court are of no significance.

(14)   The Federal Circuit has exclusive jurisdiction over arising under patent appeals where the claims are defined by patent statutes. *Gunn v. Minton*, 133 S. Ct. 1059 (USSC Tex. 2013) Plaintiff Amron's breach of the duty of candor and good faith to the USPTO rendered his patent unenforceable. The Federal Circuit held in Monsanto, *supra,* that the district court has jurisdiction to declare his patent unenforceable.

(15)   The record is also undisputed that Apple, Inc., plagiarized Petitioner's published applications in 2008 when filing for its own ticketing management patent, #2008-82491. Apple was denied a patent for eight years but on appeal to the Patent Trial and Appeals Board was granted a single near field claim in or about 2017. This is now the same claim in use at the checkpoint of entry by MLB/MLBAM at Yankee Stadium and at all 30 national baseball stadiums. The recent US Open at Arthur Ashe Stadium was also using Apple's single near field claim. This explains why it took over two hours in line to enter the stadium long after the matches began. Petitioner expressly challenges that grant to Apple in the DCD lawsuit, 23cv3549, and she challenges the grant to Amron in 2015.

(16)   Weissbrod Gurvey's patents, and the improperly removed published applications include apparatuses, mobile interface designs and utility claims for ticket data authentication, hybrid encryption, transmission matrices for event interaction and content, ticket resale and exchange, direct-to-user targeted advertising by multifunctional bar codes, merchandise/hospitality fulfillment, royalty accounting, AI

analytics and sports betting. The include claims that prevent unauthorized duplication of data in various functions. For example, once a premium performance ticket is activated on a mobile display, it can be exchanged or resold without duplication of ticketing data. Multiple embodiments and permutations are claimed in Petitioner's patents and pending patents.

(17) Petitioner also owns mobile displays that activate electronic readers at venues with multifunctional bar codes. (D647910S) This is but one claim being infringed by the plaintiff Amron.

(18) Petitioner's claims also enable most non-ticketing businesses. Based on the ongoing contumacious breach by defendants Live Nation and Ticketmaster of the competitive impact statement, final judgment and amended judgment in *US v. Ticketmaster and Live Nation,* 2010 W 975407, 975408 (pp. 8 line 10), Petitioner properly seeks injunctive relief from the DCD to get defendant MLB's data and plaintiff's data, if any, from Ticketmaster.

(19) Significant is that Magistrate Tarnofsky was a senior unified court system (UCS) attorney serving on the NY Legal Assistance Group when she refused to assist Petitioner disqualify Live Nation's infringement defense attorneys at Hinshaw & Culbertson from the previous SDNY infringement lawsuit in 2016. H&C counsels were dually serving as UCS attorneys without disclosing conflicts of interest and were found by the First Dept. to have inserted forged and unserved documents into concealed state files engaging in Petitioner's unprivileged defamation.

(20) Moreover, Magistrate Tarnofsky's husband, Antony Ryan, Esq., is a partner at Cravath Swaine and Moore. The Dept. of Justice's DC District Court competitive impact statement, the consent decree, final judgment and amended judgment entered in 2010 and 2020 were spearheaded by DOJ's former Christine Varney who is now a senior

7

partner at Cravath Swaine and Moore. Varney's switching of hats challenges the entire integrity of the 24cv3973 class action lawsuit pending before this Court.

(21)  It was the duty of the SDNY to serve Petitioner with ex parte proffers circulated to the SDNY administrators by H&C's J. Richard Supple. *Twomey v. Ohio,* 273 US 510 (1927); ABA Rule 2.9 *Ex parte* Communications. In 2016, Supple was found to have inserted forged documents into concealed UCS files during Petitioner's previous infringement lawsuit against defendants Live Nation, Phish and Cowan Liebowitz & Latman.

(22)  It was the duty of the SDNY to order injunctive relief against the State and its officers since 2013, not deny Petitioner infringement hearings.

(23)  The end result was that Weissbrod Gurvey never got a hearing on her patents before the SDNY since 2010, in violation of the Fourteenth Amendment.

(24)  In 2018, UCS's Office of Court Administration attorney Shawn Kerby began writing *ex parte* letters to the Federal Circuit only discovered in 2025 tolling all statutes.  Kerby sought to prevent Weissbrod Gurvey from getting arising under patent appeals to unconstitutional orders of the SDNY denying infringement hearings including on the anticipated 11403566 patent that issued on August 2, 2022.

(25)  The injunction issued by the US District Court for the Northern District of New York on September 5, 2025 against NYS UCS officers should have been entered by this Court in 2013. It is astounding that an injunction did not ever issue from this Court.

(26)  An order of the Federal Circuit in 25-1954 has upheld Petitioner's infringement claims against defendant MLB.

8

**WHEREFORE**, Petitioner Amy Weissbrod Gurvey respectfully requests:

1. Leave to intervene in relevant federal proceedings under Fed. R. Civ. P. 24(a)(2) and (b)(1)(B).
2. A declaratory judgment that plaintiff's patents are unenforceable under *Monsanto*.
3. A stay pending determination by the DC District Court on Petitioner's motion to restore Petitioner's applications to the queue.
4. Injunctive relief to prevent further exclusionary conduct and retaliation.

Dated: October 24, 2025
Princeton, NJ

/amyweissbrodgurvey/

Petitioner/US patentee

9



Live-Fi™ Technology Holdings

7302 Woodstone Circle
Princeton, NJ 08540
amyg@live-fi.com
917-733-9981

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

————————————————————X

UNITED STATES OF AMERICA, et al.,
Plaintiffs,

V.

LIVE NATION ENTERTAINMENT, INC.,
et al., Defendants.

————————————————————X

Case No. : 1:24-CV-03973-AS

NOTICE OF MOTION FOR
ADMISSION TO APPEAR
PRO HAC VICE FROM
CALIFORNIA ON BEHALF
OF LIVE-FI® TECHNOLOGY
HOLDINGS, LLC

Pursuant to Rule 1.3 of the Local Rules of the United States District Court for the Southern District of New York (SDNY), Amy Weissbrod Gurvey, a California attorney, hereby moves this Court for an Order granting admission to appear *pro hac vice* as counsel for LIVE-FI® Technology Holdings, LLC. LIVE-Fi® is an interested party as it owns and controls the standard essential US patents for ticketing, ticket resale and authenticated content management and interaction, patents being willfully infringed by defendants Live Nation and Ticketmaster. Defendants since 2010 have also continued to breach material provisions of the competitive impact statement both signed as a condition of merger in 2010 before

1

the DC District Court. *U.S v. Ticketmaster and Live Nation*, 2010 WL 975407, 975408 (DCD January 25, 2010) That provision expressly stated that defendants Live Nation and Ticketmaster cannot withhold ticketing data from companies seeking to conduct non-ticketing businesses. 2010 WL 975408, pp 8, line 10. This makes LIVE-Fi™ a proper interested party to this lawsuit.

Petitioner is in good standing before the Supreme Court of California since 1979.

A notarized certification of good standing is annexed hereto as Exhibit A. Petitioner has never been convicted of a felony and has never been censured, disbarred or denied admission or readmission to any court. Petitioner was suspended for six months on December 4, 2012 by the First Dept. *without jurisdiction over Petitioner* who was voluntarily resigned in NYS since 1998 and granted permission to resign by the Third Dept. and NYS Office of Court Administration. That six month order remains on appeal and was found nonfinal by the NY Court of Appeals such that it cannot be used collaterally in any other lawsuit.

A proposed order for admission *pro hac vice* is annexed hereto as Exhibit B. The declaration pursuant to Local Rule 1.3 is annexed hereto as Exhibit C.

Petitioner's contact information is as follows:

Amy R. Weissbrod Gurvey
CEO and Counsel
c/o LIVE-Fi™ Technology Holdings LLC
7302 Woodstone Circle, Princeton, NJ 08540
amrgg@live-fi.com   Phone: (917) 733-9981

The motion is GRANTED, but by separate order, the Court notes the denial of the related motion for joinder.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: August 22, 2025

Pursuant to 28 USC §1746, Petitioner declares that the foregoing is true and correct.

(By _____
AMY WEISSBROD GURVEY

2

## CASE NO. 24-7441

IN THE
# Supreme Court of the United States

## Petition for a Writ of Mandamus and Writ of Prohibition

Amy R. Weissbrod Gurvey
7302 Woodstone Circle
Princeton, New Jersey 08540
amyg@live-fi.com

US Patentee
Petitioner Pro se
CEO/California Counsel
LIVE-Fi® Technology Holdings, LLC

To Clerk Scott Harris
Attention: Ms. Angela Jimenez

Dear Ms. Jimenez:

Petitioner Amy Weissbrod Gurvey, California counsel of loan out company LIVE-Fi® Technology Holdings, LLC who is not admitted to practice law in New York State since 1998, and US patentee of standard essential ticketing management patents and confidential patents pending that include priority disclosures for ticket data authentication, hybrid encryption, content transmission and merchandise fulfillment matrices, routing logic, ticket resale and exchange, and AI analytics, petitions the Supreme Court of the United States to add updated orders to the Appendix of the pending Petition seeking a Writ of Mandamus.

Petitioner declares to the truth of the following statements in support of this application.

The orders include: (1) a hearing on injunction entered September 5, 2025 (Docket #85 et seq.) ordered by the Northern District of New York in Case No. 24-cv211 against NYS executive officers of the courts and unified court system (UCS) (inspection of the ordered concealed NYS UCS files was first granted to Petitioner on August 26, 2025 and inspection is not yet complete; (2) An order returning an updated Notice

of Claim by the NY Court of Claims received on October 4, 2025; and

(3) an order denying intervention by the SDNY in the antitrust

divestiture proceeding against defendant willful patent infringers Live

Nation and Ticketmaster and denying striking Cravath Swaine and

Moore's frivolous and fraudulent opposition #633 in Case No. 24cv3973

entered by the SDNY in clear abuse of discretion and denying that the

order in (1) granting hearing on injunction by the NDNY (Docket #85)

was ever entered.

Petitioner also requests that ECF filing privileges to upload

papers directly on the Supreme Court docket be granted with

instructions on whether the instant application requires ten copies for

docketing.

Dated: October 11, 2025
Princeton, NJ
/amyweissbrodgurvey/

AMY WEISSBROD GURVEY
US PATENTEE
CALIFORNIA COUNSEL
LIVE-Fi® TECHNOLOGY HOLDINGS

cc: US District Court Northern District of NY, 24cv211
New York Court of Claims
US District Court Southern District of NY, 24cv3973

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

eCHANGING BARCODE LLC,

                    Plaintiff,

        -v-

MLB ADVANCED MEDIA L.P.,

                    Defendants.

24 Civ. 2930 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

Before the Court is a motion to intervene in this patent infringement lawsuit by LIVE-Fi Technology Holdings ("LIVE-Fi"). For the following reasons, that motion is denied.

The Court assumes familiarity with the background of this case. In brief, plaintiff eChanging Barcode, LLC ("eChanging") is the sole patentholder of U.S. Patent No. 9,047,715 (the "715 Patent"), which embodies a technology that prevents the unauthorized duplication of credentials, such as event tickets, through screenshots or static copies. Dkt. 41 ¶¶ 9–10, 17–18. eChanging alleges that the barcoding technology used by defendant Major League Baseball Advanced Media L.P. ("MLBAM") infringes on the '715 Patent. *Id.* ¶¶ 26–40. eChanging seeks damages and injunctive relief under 35 U.S.C. § 271 for the alleged infringement. *Id.* ¶¶ 43, 47–48.

On September 13, 2025, LIVE-Fi moved, through counsel Amy Rebecca Gurvey, to intervene under Federal Rule of Civil Procedure 24. Dkt. 74 ("Motion to Intervene"). It did so on the grounds that Alan Amron, the owner of eChanging, "improperly failed to cite" Live-Fi's patents and that MLBAM is using LIVE-Fi's patents "without permission." *Id.* The motion to intervene also raised numerous other issues unrelated to intervention, including the "recusal of magistrate Robyn Tarnofsky," *id.* at 3, and the alleged entry of "forged and unserved documents"

1

by state court officers, *id.* at 5. On September 29, 2025, eChanging opposed the motion to intervene. Dkt. 80. On September 29, 2025, MLBAM likewise opposed the motion. Dkt. 83. On October 7, 2025, LIVE-Fi replied. Dkt. 84.

At the outset, the Court notes that Gurvey, who claims to be licensed to practice law in California (a proposition eChanging disputes), has not been admitted *pro hac vice* in this Court. She claims to have been so admitted by the Honorable Arun Subramanian of this Court, but the docket of the cited case reflects that her motion to appear *pro hac vice* was never granted. *See United States v. Live Nation Ent. Inc. et al.*, No. 24 Civ. 3973, Dkt. 598 (S.D.N.Y. July 2, 2025). Accordingly, Gurvey is not admitted to practice before this Court, and her motion can be denied on that basis alone. *See Erbacci, Cerone, & Moriarty, Ltd. v. United States*, 923 F. Supp. 482, 486 (S.D.N.Y. 1996) ("It is axiomatic that unless and until [a *pro hac vice*] motion is granted, plaintiffs' attorneys may not practice before this Court.").

Even were LIVE-Fi's motion procedurally proper, it is meritless. LIVE-Fi argues that it satisfies the requirements for intervention as of right and permissive intervention. Motion to Intervene at 15–21. For the reasons stated in the opposition briefs, LIVE-Fi does neither. *See* Dkts. 80, 83.

Rule 24(a)(2) governs intervention as of right. It states that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." LIVE-Fi argues that its interest in this case includes: "(a) enforcement of its patent rights against all name[d] parties; (b) protection of its trade secrets before the USPTO and proprietary data; and (c) prevention of further unauthorized use of its

2

proprietary technology." Motion to Intervene at 20. But LIVE-Fi does not claim that it holds or

has ever held an interest in the '715 Patent. Nor does it describe how its "patent rights" or "trade

secrets" at all relate to this dispute. Because LIVE-Fi fails to demonstrate an "interest relating to

the property or transaction that is the subject of the action," it does not have a right to intervene.

*See N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486–87 (2d Cir. 1992) (affirming denial of motion to

intervene where proposed intervenor "does not have a protectable interest in the action"); *Cont'l

Indem. Co. v. Bulson Mgmt., LLC*, No. 20 Civ. 3479, 2020 WL 6586156, at *3 (S.D.N.Y.

Nov. 10, 2020) (same); *see also United States v. State of N.Y.*, 820 F.2d 554, 558 (2d Cir. 1987)

("[A] failure to meet *any* of Rule 24(a)(2)'s requirements provides sufficient grounds to deny a

motion to intervene as of right." (emphasis in original)).

LIVE-Fi's arguments for permissive intervention fare no better. Rule 24(b) states that the

court "[o]n timely motion, may permit anyone to intervene who . . . has a claim or defense that

shares with the main action a common question of law or fact." LIVE-Fi argues that its claims

share common questions with the main action, including: "(a) [the] use and dissemination of

ticketing data; (b) the scope and application of LIVE-Fi's patented technologies; and (c) the

contractual and regulatory obligations stemming from the Live Nation-Ticketmaster merger."

Motion to Intervene at 21. But none of these questions are implicated by the present case, which

concerns eChanging's claim that MLBAM infringed the '715 Patent, and will therefore focus on

the validity of the '715 Patent and whether it was in fact infringed by MLBAM's product.

Accordingly, the Court denies LIVE-Fi's motion for permissive intervention. *See,

e.g., Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595

(S.D.N.Y. 2018) (denying motion to intervene where proposed intervenors "fail to demonstrate

that their claim or defense shares a common question of law or fact with this . . . proceeding");

3

*Tymoshenko v. Firtash*, No. 11 Civ. 2794, 2011 WL 5059180, at *3 (S.D.N.Y. Oct. 19, 2011) (same).

## CONCLUSION

For the foregoing reasons, LIVE-Fi's motion to intervene is denied.  The Clerk of Court is respectfully directed to terminate the motion at Docket 74 and, to the extent LIVE-Fi's filings hold it out as a party to this action, to terminate LIVE-Fi as a party to this action.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: October 21, 2025
      New York, New York

4



## The State Bar *of California*

**Amy Weissbrod Gurvey #87419**
License Status: Active

Address: LIVE-Fi Technologies (TM) LLC, 7302 Woodstone Cir, # 7302, Princeton, NJ 08540-1025
Phone: 917-733-9981 | Fax: 609-917-2663
Email: **amygurvey@gmail.com** | Website: **www.live-fi.com**

## More about This Attorney ▾

The table below shows an attorney's license status changes, disciplinary actions, and administrative actions. Some administrative suspensions are subject to automatic removal from the attorney profile page pursuant to the State Bar's **policy on removal of administrative actions**. Administrative suspensions are non-disciplinary actions resulting from noncompliance with administrative requirements, such as the requirement to pay licensing fees or comply with Minimum Continuing Legal Education. Administrative suspensions that meet the criteria in the State Bar's policy on removal of administrative actions would not be displayed below.

| Date | License Status ℹ | Discipline ℹ | Administrative Action ℹ |
|---|---|---|---|
| Present | Active | | |
| 10/30/2025 | Active | | |
| 4/19/2011 | Inactive | | |
| 4/11/2002 | Active | | |
| 1/1/1988 | Inactive | | |
| 9/20/1979 | Admitted to the State Bar of California | | |

Additional Information:

- **About the disciplinary system**

Copyright © 2025 The State Bar of California

  

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

_Amy R. Weisblood - Survey_

v.

**CERTIFICATE OF SERVICE***

Docket Number: _26_____

_Petition for Writ of Supervisory Mandamus_

I, _Amy Weisblood_, hereby certify under penalty of perjury that
(print name)

on _6-8-26_, I served a copy of _Petition + Exhibits_
(date)

_____
(list all documents)

by (select all applicable)**

___ Personal Delivery          _X_ United States Mail          ___ Federal Express or other
                                                                   Overnight Courier

___ Commercial Carrier         _X_ E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| _Hon Arun Subramanian_ | _500 Pearl St._ | _Courtroom 23B NYC_ | | _10007_ |
| _Hon Paul Engelmayer_ | | | | |
| _Hon Laura Schofield_ | _40 Foley Sq_ | _NYC_ | | _10007_ |
| _Hon Ann Sendacci_ | _445 B'way_ | _Albany NYND_ | | _12207_ |
| _NY Attorney General_ | _Liberty St_ | | | _10005 PO Box 341 Capital Str Albany 12224-0341_ |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_6-10-26_
Today's Date

_[signature]_
Signature