July 24, 2026

**<u>VIA ECF</u>**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

**Re:**  *United States et al.* **v.** *Live Nation Entertainment, Inc., et al.***; 1:24-cv-03973-AS**

Dear Judge Subramanian,

On July 16, 2026, a portion of the remaining Plaintiffs, which refer to themselves as the "Requesting States,"[1] filed a letter motion (the "Motion") seeking broad discovery under the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) (the "Tunney Act").  (Mot. at 1.) The Requesting States seek discovery that goes beyond what is required for the public interest review of the proposed final judgment (the "Proposed Final Judgment") that the Court undertakes pursuant to the Tunney Act.  The Motion further asks the Court to "authorize discovery" in some generic manner without outlining a concrete proposal.  For the reasons that follow, the Court should deny the States' Motion and decline to authorize Tunney Act discovery of the type contemplated by the Requesting States.

**The Motion's Proposed Discovery Far Exceeds the "Public Interest" Inquiry Under the Tunney Act.**

The Tunney Act calls upon the Court to determine whether the Proposed Final Judgment is "in the public interest."  15 U.S.C. § 16(e).  That inquiry is a "narrow" one, *Massachusetts* v. *Microsoft Corp.*, 373 F.3d 1199, 1236 (D.C. Cir. 2004), as "[t]he court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is 'within the reaches of the public interest.'"  *United States* v. *Bechtel*, 648 F.2d 660, 666 (9th Cir. 1981) (citation omitted).

In practice, Tunney Act discovery is exceptionally rare.  The discovery mechanisms in subsection (f) exist to assist the Court in "making its determination under subsection (e)" of whether the "judgment is in the public interest."  15 U.S.C. § 16(f).  On the limited occasions in which courts have allowed it, they have directed that it "be focused" on "whether entry of the proposed final judgment is in the public interest as that term is used in the Tunney Act."  *United States* v. *Hewlett Packard Enter. Co.*, 826 F. Supp. 3d 1175, 1180 (N.D. Cal. 2025); *see also id.* at 1182 ("[T]he Court's Tunney Act review focuses primarily on the proposed judgment's competitive effect, including whether the proposed judgment adequately addresses the concerns

---

[1]    The States of Arizona, California, Colorado, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Virginia, Washington, West Virginia, Wisconsin, and the District of Columbia jointly submitted the Motion.

about lessening of competition that gave rise to the United States's lawsuit."). Courts have declined to authorize discovery when it is not "necessary to evaluate the adequacy of the proposed relief." *See United States* v. *Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 544 (S.D.N.Y. 1996).

The Court is uniquely well-suited here to apply the public interest standard without any discovery because it has tried the underlying claims. Typically, Tunney Act review comes before trial, such that courts can only base their public interest analysis on the complaint, Competitive Impact Statement, public comments, and proposed decree. But, after a six-week jury trial with the non-settling Plaintiff States and its consideration of post-trial motions, this Court is already well-equipped to evaluate how the Proposed Final Judgment furthers the public interest. The Court understands the strengths and weaknesses of the underlying claims, and the litigation risk eliminated by settlement. *See United States* v. *Microsoft Corp.*, 56 F.3d 1448, 1460-61 & n.8 (D.C. Cir. 1995) (noting that "[r]emedies which appear less than vigorous may well reflect an underlying weakness in the government's case"); *United States* v. *Microsoft Corp.*, 231 F. Supp. 2d 144, 174 (D.D.C. 2002) ("The risks inherent in litigation are likely to be reflected in some portion of the proposed decree, and these risks are appropriately weighed by the government, rather than the Court, in the first instance."). It also understands numerous foundational facts relevant to the evaluation of the settlement. And it is ideally situated to understand the logical connection between the underlying claims and the remedies achieved by the Proposed Final Judgment. This is all in addition to the Competitive Impact Statement filed by the Department of Justice (the "Department"), public comments, and other information generated through the procedures mandated by Section 16(b) of the Tunney Act.

The Requesting States of course also have access to the trial record, since they participated in the trial. And their concern that "certain aspects of the Settlement . . . are not fully explained in the [Proposed Final Judgment]," (Mot. at 1), rings hollow in light of their own lengthy discussions of the Department's settlement during their settlement discussions with Live Nation—which resulted in six of the states joining it.

Nevertheless, the Motion requests discovery of a scope that would be without precedent under the Tunney Act. Despite acknowledging that Tunney Act discovery should be tailored to the public interest inquiry, (Mot. at 1), the Requesting States seek discovery into every element of the Proposed Final Judgment, including all settlement communications about each and every term, actual or contemplated, argued or compromised. The Motion's requested discovery is so vague and undefined that the Court has no way of knowing whether it will serve the public interest inquiry. Although the Motion lists several topics for discovery, the Requesting States make no commitment to confine themselves to those topics, and the Requesting States made clear in meet-and-confer discussions that some unidentified group of them intends to pursue discovery with no connection to the merits of the settlement. The Requesting States also explained during the meet-and-confer process that they intend to proceed with multiple forms of discovery to parties and nonparties, modeled on full-scale merits discovery. This exceeds the scope of Tunney Act discovery that any court has ever allowed. *See, e.g.*, Hr'g Tr. 11:6-8, *United States* v. *Hewlett Packard Enter. Co.*, No. 5:25-cv-00951 (N.D. Cal. Mar. 6, 2026), ECF No. 412 (third-party discovery is "presumptively disproportionate").

Indeed, the Requesting States all but acknowledge their intention to exceed the bounds of relevance. First, the Requesting States admit that they seek to use Tunney Act discovery to inform

"the remedies the Requesting States ultimately seek." (Mot. at 2.)  The remedies phase, however, has no bearing on the Court's public interest analysis under the Tunney Act, and it would be an improper use of Tunney Act discovery to jump-start the remedies phase.  *Cf. Alex. Brown & Sons, Inc.*, 169 F.R.D. at 542 (denying Tunney Act discovery to intervenors who sought to use it in separate litigation).  Second, some unnamed group of the Requesting States intends to pursue discovery regarding their "concerns about the process that produced the Settlement," (Mot. at 2), but the very case they cite concludes that "concerns about the process that led to the parties' settlement . . . fall largely outside the scope of the Tunney Act." *Hewlett Packard*, 826 F. Supp. 3d at 1180-81; *see also id.* at 1182 ("[D]iscovery requests that are targeted solely at the Department of Justice's internal decision-making process and that lack any connection to the adequacy of the proposed final judgment would likely be improper.").  Generalized concerns about "the lack of transparency about the settlement negotiations," (Mot. at 2), are unrelated to the adequacy of the Proposed Final Judgment, and beyond the scope of proper Tunney Act discovery under even its broadest construction.

In effect the Requesting States seek a blank-check authorization from the Court for full merits-like discovery under the Tunney Act, a radical and unjustified departure from the targeted discovery other courts have permitted under a few circumstances.  The Court should decline to authorize any discovery unless and until the Requesting States offer a specific discovery plan that will advance the Court's public interest inquiry in a concrete manner.

\*       \*       \*

*[signatures on following page]*

Respectfully submitted,

LATHAM & WATKINS LLP

*David R. Marriott*

_____
David R. Marriott
*Co-Lead Trial Counsel*
Alfred C. Pfeiffer (admitted *pro hac vice*)
*Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

SULLIVAN & CROMWELL LLP

*/s/ Adam S. Paris*
_____
Adam S. Paris
1888 Century Park East
Los Angeles, CA 90067
Telephone: (310) 712-6600
Fax: (310) 712-8800
Email: parisa@sullcrom.com

Kyle W. Mach (admitted *pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
Telephone: (650) 461-5600
Fax: (650) 461-5700
Email: machk@sullcrom.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

cc:      All counsel of record (via ECF)

4