UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007



CHAMBERS OF
ARUN SUBRAMANIAN
UNITED STATES DISTRICT JUDGE

July 30, 2026

Dear Counsel:

In view of the hearing on Live Nation's post-trial motions, scheduled for July 31, 2026, the parties should be prepared to address the following questions. To the extent the parties cite evidence in the trial record, they should be prepared to display the evidence using the courtroom's AV system.

**Questions for Plaintiffs:**

1. On any of the issues raised by defendants' motions, is there any material additional evidence that you wish to direct the Court's attention to, other than what is cited in your briefs?

2. On the Large-Amphitheaters market definition, what evidence is in the trial record concerning "what the artist would do if the cost of performing in an amphitheater began to rise?" *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 683 (4th Cir. 2016).

3. On tying, would you agree that *Cumulus Media v. Nielsen*, 2026 WL 2014972 (2d Cir. 2026), which did not differentiate per se from rule-of-reason claims, undermines the states' arguments concerning a different test for per se tying claims?

4. On the tying claim, was there evidence in the trial record that artists did not want Live Nation's promotion services? Do you have an example of a case where a tying claim was sustained despite the absence of evidence that customers did not want the tied product?

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

5.  On the tying claim, if anticompetitive effects must be shown in the *tied* market, what is the evidence in the trial record? How does the states' dark-days evidence relate to the promotions market (number of promoters and their capacity to take on new artists)?

6.  On the monopolization claim relating to Large Amphitheaters, please be prepared to display the evidence (testimony or admitted exhibits) of the acquisitions and their terms that occurred during the limitations period.

7.  Was there evidence of anticompetitive effects from these specific acquisitions? What was it? If none, what is your best case for why such evidence is unnecessary?

8.  The Areeda & Hovenkamp treatise suggests that acquisitions may be generally presumed to be anticompetitive. *See* ¶ 701. Is there similar authority concerning exclusive booking agreements?

9.  On the "hoarding" amphitheaters theory, what is your best legal authority that supports this as a theory of anticompetitive conduct with anticompetitive effects?

10. On the monopolization claim relating to Large Amphitheaters, can you confirm that your claim is one of monopoly maintenance? What is your best authority that the conduct in the trial record here that occurred during the limitations period would suffice to establish the claim?

11. What is your best trial evidence that MCVs' ticketing needs are so distinct that an antitrust market for ticketing should be defined around them, and only them? Even if they are similar in size and dependent on concerts, why does that make a difference in terms of the kind of *ticketing* services they receive?

**Questions for Defendants:**

1.  Focusing specifically on PX 422 and PX 893 as well as Tr. 1272:6–9, why doesn't that evidence support inelastic demand among artists for Large Amphitheaters specifically?

2.  You argue on the states' Large Amphitheaters monopolization claim that it is barred by the statute of limitations and laches because the actionable conduct occurred prior to the limitations period and so anything during the limitations period was merely the "inertial consequence" of that conduct. What is your best case applying that principle despite evidence of acquisitions or other conduct ("hoarding" venues) during the limitations period in the record? Is there any Second Circuit case applying your "inertial consequences" argument?

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

3.  Take a look at Judge Boasberg's opinion in *FTC v. Meta*, 775 F. Supp. 3d 16, 53-58 (D.D.C. 2024). Why doesn't this undercut defendants' argument that to show anticompetitive effects, a plaintiff in a Section 2 case must show higher prices, lower output, or reduced quality?

4.  What's your response to authorities like *Grinnell*, *Meta*, and Areeda/Hovenkamp ¶ 701a, which appear to suggest that an acquisition by a monopolist is presumptively anticompetitive conduct? Do you have any authority other than *Corsearch v. Thomson & Thomson*, 792 F. Supp. 305 (S.D.N.Y. 1992)?

5.  On tying, what's your response to footnote 5 in *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001), which appears to say that a plaintiff can bring a claim either on a per se theory or on a rule of reason theory, but that on a per se theory no showing of anticompetitive effects is needed?

6.  On tying, does *Cumulus Media v. Nielsen*, 2026 WL 2014972 (2d Cir. 2026) support the states' argument that coercion can be established through conditioning, *id.* at *11, and that anticompetitive effects may be established through proof of harm to competitors or creating barriers to entry, *id.* at *12?

7.  Why is the evidentiary record on the MCV market definition worse than a case like *FTC v. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27 (D.D.C. 2018), and what's your best case that the evidence here was insufficient (other than *Meta*'s language concerning the proof needed for targeted customer markets)?

8.  It seems like you are arguing that in the absence of a monopoly leveraging theory, evidence of threats and conditioning were irrelevant in this case. Is that true even though coercion is a factor under *ZF Meritor*?

9.  What is your response to the argument made in the economists' amicus brief pertaining to Dr. Abrantes-Metz? Why aren't they correct that the upfront payments here would be classified as fixed costs, even if based on predictions about future ticket sales, and would not affect the marginal price venues charge fans, in the way a per-ticket payment might?

**Questions for Both Parties:**

1.  Is there any dispute that if a claim is time-barred based on the four-year limitations period, then laches would apply to bar any claim for equitable relief?

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

2. Focusing on the Large Amphitheater market, what is your best example of a case where a similar set of facts, either in terms of quality or thrust, either was or wasn't sufficient to give rise to a viable antitrust market?

3. Is there any similar concept of retroactive misjoinder (criminal) in the context of a Rule 59 new trial motion? What is the best case you can find addressing this issue?

Sincerely,

Arun Subramanian
United States District Judge
Southern District of New York

4