**PHIL WEISER**
Attorney General

**NATALIE HANLON LEH**
Chief Deputy Attorney General

**SHANNON STEVENSON**
Solicitor General

**TANJA WHEELER**
Associate Chief Deputy Attorney General

**STATE OF COLORADO**
**DEPARTMENT OF LAW**

**RALPH L. CARR**
**COLORADO JUDICIAL CENTER**
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

**Consumer Protection Section**

September 24, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re: *United States et al. v. Live Nation Entertainment, Inc. et al.*; 1:24-cv-03973-AS**

Dear Judge Subramanian:

The Requesting States respectfully request that pursuant to 15 U.S.C. § 16(f), the Court order Defendants to produce materials responsive to Requests for Production ("RFPs") 2, 3, 7, 9–13, and 17, and provide complete answers to Interrogatories ("ROGs") 12 and 17, served by the Requesting States on August 6, 2026.[1] The parties exchanged written correspondence on August 28, September 2, September 16–18, and September 23–24, and conferred via videoconference on August 20, September 9, and September 17, collectively for over two hours.

## I. Discovery sought is supported by the Tunney Act (RFP Nos. 1–3; ROG Nos. 2–6)

Defendants contend that, with respect to these requests, "discovery into how Live Nation arrived at different elements of the proposed remedy, rather than how the proposed remedy is expected to work," is beyond the Tunney Act. Ex. C (Defs.' 8.28.2026 Ltr.) at 5; *see also id.* at 6.[2] This is unsupported by the Tunney Act as charted by Congress and recognized by the judiciary, and the public record. Defendants should be required to comply with RFPs 2 and 3.

First, the Tunney Act tasks courts with independently determining whether DOJ settlements are in the public interest. *See* 15 U.S.C. §16(e). The Act directs courts to broadly consider, *inter alia*, "the anticipated effects of alternative remedies actually considered . . . and any other competitive considerations bearing upon the adequacy of such judgment." 15 U.S.C. § 16(e)(1)(A). Congress passed the Tunney Act to address the DOJ's history of succumbing to pressure from antitrust violators wielding undue influence. *United States v. Am. Cyanamid Co.*, 719 F.2d 558, 565 n.7 (2d Cir. 1983). [3] Thus, discovery can explicitly "encompass evidence

[1] The Requesting States' RFPs are attached as **Exhibit A**, and the ROGs are attached as **Exhibit B**.

[2] Defendants' and the Requesting States' correspondence on these issues are attached as **Exhibits C – F.**

[3] *See* 119 Cong. Rec. 24598 (1973) (Sen. Tunney discussing specific examples of improper settlements).

relating to . . . the decision-making process that led to the proposed settlement 'to the extent that process bears upon the adequacy of the proposed judgment.'" *U.S. v. Hewlett Packard Enter. Co., et al.*, No. 25-CV-00951-PCP, 2026 WL 2349970, at *6 (N.D. Cal. Aug. 12, 2026) (hereinafter "HPE") (quoting *HPE*, 826 F. Supp. 3d 1175, 1181 (N.D. Cal 2025)).

Second, the settlement process is relevant because the United States asks the Court to "defer to 'the government's predictions about the efficacy of its remedies.'" ECF No. 1568 at 3 (internal citation omitted). But deference is "based on a presumption that its decision was reached through a considered and fair evaluation of the relevant factors." *HPE*, 826 F. Supp. 3d at1181 n.3. The public record calls into question whether the United States consulted subject matter experts, considered relevant facts, and gave competition considerations priority over political factors.[4] Targeted discovery is probative of whether the terms were "reached through a considered and fair evaluation of the relevant factors," and of their efficacy. *Id.*

RFP 2 seeks communications with the United States concerning the settlement. Defendants have agreed to produce communications from only three Live Nation officers and from only part of the negotiations period identified in Defendants' disclosure of contacts with the United States. Ex. E (Defs.' 9.16.2026 Ltr.) at 1–3; ECF No. 1534 at 2. These limits are unjustified. This request seeks information from a targeted group of individuals and a circumscribed period. Live Nation should search the full custodial files, including personal devices and non-email messaging apps, of all those who were involved in discussions regarding the PFJ, from the full negotiations period, and produce all responsive communications.[5]

RFP 3 seeks materials presented to Live Nation's Board of Directors concerning the settlement. Defendants have agreed to produce such materials but, as with communications with the United States, they will produce materials from only part of the negotiations period. Ex. E at 1; ECF No. 1534 at 2. This request seeks a clearly defined and limited set of information, which is necessary to understand how Live Nation will interpret and implement the PFJ, and the PFJ's likely effects. Defendants should produce these materials from the full negotiations period.

## II. Information concerning the selection of large amphitheaters is necessary to evaluate the PFJ's impact on competition (RFP Nos. 7, 17; ROG No. 12)

To remedy harm to competition in the Large Amphitheater market, the PFJ would require Live Nation to give up exclusive booking rights at thirteen amphitheaters. PFJ § V.A. RFP 7 and Interrogatory 12 seek evidence about how these venues were selected, including the criteria used, whether alternative slates were considered, and the expected impact. RFP 17 seeks updated information about the financial performance of all Live Nation amphitheaters within the market.

There is no basis in the record to conclude that requiring Live Nation to give up exclusive booking at these thirteen amphitheaters—as opposed to more or different amphitheaters—would be sufficient to restore competition. The Court needs to understand their selection from among the dozens that Live Nation owns, leases, operates, or exclusively books. That Live Nation

---

[4] *See, e..g,* Rebecca Ballhaus et al., *The Trump Intervention That Got the DOJ Off Live Nation's Back*, Wall Street Journal (Aug. 24, 2026). *Available at* https://www.wsj.com/business/media/trump-live-nation-antitrust-doj-f82b2c55?mod=hp_lead_pos7.

[5] At a minimum, the list of custodians should include the individuals listed in Defendants' disclosures as "substantively participat[ing]" in communications with the United States. ECF No. 1534 at 2.

owns/leases none of the thirteen suggests they may have been chosen based on the ease of quickly reaching settlement or modifying their existing contracts rather than any meaningful analysis of the impact of those modifications on competition. And the evidence in the trial record suggesting that Live Nation maintained control over unprofitable amphitheaters to maintain a monopoly makes the financial performance of these venues relative to others particularly salient.

## III. Information concerning the implementation of the PFJ is necessary to evaluate its potential effectiveness (RFP Nos. 9–12)

RFPs No. 9–12 request all documents concerning the implementation of certain PFJ provisions, including guidance for employees and monitoring compliance. Defendants proposed to produce final versions of written policies instead. Ex. E at 1–2. But Defendants subsequently confirmed that these materials are still being drafted, and were unable or unwilling to state when they could be produced, or to propose reasonable alternatives. Ex. F (Parties' Email Corresp.) at 2–3. To the extent that the implementation of these provisions is not captured in final policies that can be produced to the Requesting States, Live Nation should be compelled to produce all other responsive documents.

## IV. Information concerning selection of the monitor is necessary to determine if the PFJ will be effective (RFP No. 13; ROG No. 17)

RFP 13 and ROG 17 seek limited information about the selection of the monitor, including communications regarding potential candidates, assessments of the prior monitor's performance, and descriptions of how and why the decision was made.

The PFJ appoints the same monitor that oversaw the failed 2020 consent decree, PFJ § XI.A, and gives the monitor substantial responsibility and discretion, yet very little guidance. *See, e.g.,* PFJ §§ IV.E, IV.I.1, V.F, VI.C. Even if these provisions were more specific, behavioral injunctive terms can be difficult to enforce. *See, e.g., NCAA v. Alston,* 594 U.S. 69, 102 (2021) (cautioning against remedies that require "continuing supervision of a highly detailed decree"). The United States concedes prior consent decrees with Live Nation did not prevent them from engaging in anticompetitive conduct. Conf. Tr. 9:16–25 (June 27, 2024); Conf. Tr. 72:20–73:1 (Jan. 23, 2026). Information about the motivation for and likely efficacy of reappointing the same monitor from the failed consent decree—with broad discretion and little guidance—is necessary to evaluate the impact of the monitor, and thus the PFJ overall, on competition in all relevant markets.

## V. This information is not available from other sources

Defendants argue that questions regarding the PFJ should be "resolved by reference to the Competitive Impact Statement, the public comments and the United States' responses, Defendants' filing under 15 U.S.C. § 16(g) (ECF No. 1534), the trial record, [and] the discovery Live Nation is offering" to produce. Ex. C at 2.

None of these are substitutes for the targeted discovery requested here. The trial record is not an effective substitute  because the trial and its preceding discovery were explicitly focused on liability. Indeed, bifurcation was premised in significant part on the efficiency of delaying remedies discovery until after a liability verdict. *See* Conf. Tr. 11:17–22, 21:23–22:3 (May 2, 2025); ECF No. 528 at 3–4. None of the trial testimony related to the specific remedies here. The Competitive Impact Statement is silent on how venues were selected, if alternative venues were

considered, the decision to reappoint the monitor, or if other enforcement frameworks were considered.[6] Defendants' § 16(g) disclosures are also unhelpful, disclosing only the names of those involved in settlement discussions and their general communication methods, thus not addressing these issues. ECF No. 1534 at 2–3. Finally, the public comment process cannot be expected to provide insights into these requests, as the sources of public information available to inform comments do not address how these decisions were reached. Nor are such sources sufficient, or sufficiently reliable, to inform the Court's public-interest determination.

* * *

The Requesting States respectfully request that the Court order full compliance with RFPs 2, 3, 7, 9–13, and 17 and ROGs 12 and 17.

Respectfully submitted,

By: */s/ Conor J. May*

Conor J. May (admitted *pro hac vice*)
Aric Smith (admitted *pro hac vice*)
Assistant Attorneys General, Antitrust Unit
Colorado Department of Law
1300 Broadway, 9th Floor
Denver, CO 80203
(720) 508-6199
conor.may@coag.gov
aric.smith@coag.gov

*Attorneys for the Plaintiff State of Colorado*

*/s/ Robert A. Bernheim*
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

*/s/ Brent Nakamura*
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

*/s/ Rose Levine*
Rose Levine (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030

[6] The Tunney Act explicitly requires this information be disclosed and included in the Court's evaluation, making discovery appropriate here. 15 U.S.C. 16(e)(1)(A); *HPE*, 2026 WL 2349970, at *14–15.

Email: rose.levine@ct.gov
*Attorney for Plaintiff State of Connecticut*

*/s/ Adam Gitlin*
Adam Gitlin (admitted *pro hac vice*)
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

*/s/ Richard S. Schultz*
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

*/s/ Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

*/s/ Lucas J. Tucker*
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

*/s/ Jonathan H. Hatch*
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted pro hac vice)
Assistant Deputy Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South Carolina*

*/s/ David C. Smith*
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

*/s/ Ashley A. Locke*
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

*/s/ Douglas L. Davis*
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O Box 1789
Charleston, WV 25326

Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

*/s/ Caitlin M. Madden*
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*