# EXHIBIT A

**Requesting States' Letter Motion To Compel Discovery**

**Sep. 24, 2026**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC.<br><br>and<br><br>TICKETMASTER L.L.C.<br><br>*Defendants*. | Case No. 1:24-cv-03973 (AS)(SLC) |

**REQUESTING STATES' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER L.L.C.**

Plaintiff States of Arizona, California, Colorado, Connecticut, Illinois, Maryland, Michigan, Minnesota, Nevada, New York, North Carolina, Oregon, Rhode Island, South Carolina, Washington, Wisconsin, and West Virginia, the Commonwealths of Massachusetts, Pennsylvania, and Virginia, and the District of Columbia, acting by and through their respective Attorneys General (collectively, "Requesting States"), hereby serve these Requests for Production of Documents on Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. (collectively "Defendants"). [1] Please deliver the requested Documents and materials in

---

[1] Plaintiff States of Arizona, California, Colorado, Connecticut, Illinois, Maryland, Michigan, New York, North Carolina, Wisconsin, and Washington, the Commonwealths of Massachusetts and Virginia, and the District of Columbia join in serving all foregoing requests. Plaintiff States of Minnesota, Nevada, Oregon, Rhode Island, South Carolina, and West Virginia, and the Commonwealth of Pennsylvania, join in serving Requests for Production 4–17.

loadable, executable files to the offices of the Washington State Office of the Attorney General, 800 Fifth Ave. Ste 2000, Seattle, WA 98104-3188, care of Tracy Jacoby.

## DEFINITIONS

1. The term "**Amended Complaint**" refers to the Second Amended Complaint in this action (Dkt. 257) filed on August 30, 2024.

2. The terms "**and**" and "**or"** have both conjunctive and disjunctive meanings as necessary to bring within the scope of this request anything that might otherwise be outside its scope. The terms "**each**," "**any**," and "**all**" mean "each and every." The singular form of a noun or pronoun Includes its plural form, and vice versa; and the present tense of any word Includes the past tense, and vice versa.

3. The term "**Communication**" means any message, conversation, discussion, letter, email, memorandum, meeting, note, text message, or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall Include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing. This Includes, but is not limited to, emails, SMS and MMS messages, internal chat software such as Jabber, Slack (direct messages and channels), Signal, Telegram, and WhatsApp.

4. In accordance with Local Civil Rule 26.3(c)(5), the terms "**Company**," "**You**," and "**Live Nation**" are abbreviated names or pronouns referring to Live Nation Entertainment, Inc., and their officers, directors, employees, current and former board members, partners, counsel, lobbyists, advisors, representatives or other Persons that You have at any point authorized to act on Your behalf or participate in negotiations or discussions Concerning the Settlement or any other potential resolution of a claim or potential claim brought in the Amended Complaint, corporate parents, subsidiaries, Including Ticketmaster, L.L.C., or affiliates.

5. The term "**Concerning**"" means in whole or in part addressing, analyzing, constituting, containing, describing, discussing, identifying, mentioning, reflecting, referring to, dealing with, pertaining to, reporting on, stating, or in any way logically or factually connected with the Litigation.

6. The term "**Document**" shall be given the broadest meaning pursuant to Federal Rule of Civil Procedure 34, and Includes all written, printed or Electronically Stored Information of whatever nature, however and wherever created, produced or stored, manually, mechanically, electronically or otherwise, Including without limitation, information stored on social media accounts like Twitter or Facebook and Documents contained in Collaborative Work Environments and other Document databases. "Document" Includes all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, chats, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, Including transcripts or summaries generated by an AI Tool, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, Communications and input to an AI Tool in all forms and media (Including prompts, queries, instructions and data), Communications and output from an AI Tool in all forms and media, press releases, contracts, agreements, notices and summaries. Any non-identical version of a Document constitutes a separate Document within this definition, Including without limitation, drafts or copies bearing any notation, edit, comment, track changes, marginalia, underscoring,

highlighting, marking, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents. In the case of Documents containing a non-publicly accessible link, all non-publicly accessible underlying linked Documents must also be preserved.

7. "**Electronically Stored Information**" or "**ESI**" refers to any information, Document, or data found on a computer or other device capable of storing electronic data, where such data is capable of being manipulated as an entry. "Electronically stored information" also Includes all non-public information that can be accessed using any hyperlink that appears in any document submitted in response to this request, if the information that can be accessed using the hyperlink is in Your possession, custody, or control. Devices capable of storing Electronically Stored Information Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and any other forms of online or offline storage, whether on or off Company premises.

8. The terms "**Including**" or "**Includes**" means including, but not limited to.

9. The term "**Investigation**" means Plaintiffs' pre-Complaint investigation into Defendants' conduct in this Litigation.

10. The term "**Live Nation Amphitheater**" means any amphitheater where Live Entertainment Events are held that the Company owns, leases, operates, or otherwise has a contractual right to exercise control over the booking, rental, or performance of or for Live Entertainment Events.

11. The term "**Live Entertainment Event**" means any musical concert, family show, comedy show, theatric performance, sporting event, or other type of live performance.

12. The term "**Litigation**" means this action, *State of New York et al. v. Live Nation Entertainment, Inc. et al.*, No. 1:24-cv-03973, and *United States et al v. Live Nation, Inc. et al.*, No. 1:24-cv-03973, in the United States District Court for the Southern District of New York.

13. The term "**Major Concert Venue**" means arenas or amphitheaters that host, on average, ten or more concerts in a single calendar year, and which have a seating capacity of at least 8,000.

14. The term "**Person**" means any natural person, proprietorship, corporation, company, partnership, trust, joint venture, group, association, organization, government entity, legal entity, or other entity.

15. The term "**Relevant Market**" means the markets found by the jury in this Litigation to constitute relevant antitrust markets.

16. The term "**Settlement**" means any agreement between a Plaintiff in this action and Live Nation to resolve the claim brought in this action. The term "Settlement" Includes the Proposed Final Judgment filed in this Litigation (Dkt. No. 1523-2). Any reference to a numbered section refers to the corresponding section of the Proposed Final Judgment.

17. The term "**Settling Plaintiffs**" means any Plaintiff in this action that is party to a Settlement, Including the United States and the States of Arkansas, Iowa, Mississippi, Nebraska, Oklahoma, and South Dakota, Including any past or present employee or officer thereof.

**INSTRUCTIONS**

1. Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period from January 1, 2025, to Present.

2. These requests are continuing in nature, and Your duty to supplement Your production in response to these requests pursuant to Federal Rule of Civil Procedure 26(e) is

ongoing. Requesting States specifically reserve the right to seek supplementary responses and additional supplementary production of Documents before trial.

3. In addition to the specific instructions set forth below, these requests incorporate the instructions set forth in Federal Rules of Civil Procedure 26 and 34, the Local Civil Rules, and the CMO.

4. Each request shall apply to Documents or materials in the Company's possession, custody, or control, regardless of whether such Documents or materials are possessed by the Company or the Company's present or former, domestic or foreign parents, subsidiaries, divisions, subdivisions, or affiliates; the Company's predecessor or successor entities; or by any of the Company's employees, agents, representatives, officers, directors, consultants, lobbyists, or any other Person acting or purporting to act on the Company's behalf, Including, unless privileged and such privilege has not been waived, the Company's attorneys, and regardless of where such Documents are located.

5. If You contend that any responsive Document is not within the Company's possession, custody, or control, You must (a) state that contention, and (b) identify the precise location of the Document, Including the name of the Person or entity that possesses or controls it, and, if known, that Person's address, role, and relationship to the Company. If any responsive Document previously existed but no longer exists, You must also describe the circumstances of its loss or destruction and identify all Persons with knowledge of its contents.

6. In producing Documents, the Company must produce a legible copy of each Document requested together with all non-identical copies and drafts of that Document. All metadata of electronic Documents must also be produced, in accordance with the Federal Rules, Local Civil Rules, and, when entered, the governing ESI Order for this Litigation. Provide

instructions and all other materials necessary to use or interpret Your data compilations, such as a data dictionary, with Your production.

7. If any portion of any Document is responsive to any request, a legible version of the entire Document must be produced, together with all non-identical copies, versions, and drafts of that Document, Including all attachments and enclosures. You must retain all of the original Documents for inspection or copying throughout the pendency of the Litigation, any appeal(s), and any related proceedings.

8. Any responsive Document that has been altered, Including by the addition of marginal notes, handwritten notes, underlining, date stamps, received stamps, or endorsed or filed stamps, and any draft, revision, modification, or other version of a responsive Document, is a responsive Document in its own right and must be produced.

9. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Documents must be produced either: (a) as they are kept in the usual course of business (in which case, they must be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural Person in whose possession they were found or the server or central file in which they were found); or (b) identified as responsive to a specific request enumerated in these requests, with such specific requests identified.

10. Subject to any protocols Concerning Electronically Stored Information agreed to by the Parties or ordered by the Court, Electronically Stored Information and hard copy Documents must be produced in the form of production agreed to with Plaintiffs in relation to the Investigation. Do not alter the format from that used during the Investigation without first discussing it with Requesting States.

11. All physical Documents must be produced in the file folder, envelope, or other container in which the Documents are kept or maintained. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks. Documents attached to each other should not be separated.

12. If identical copies of a Document are in the possession, custody, or control of more than one natural Person or other Document custodian, a copy of that Document must be produced from each such natural Person or other Document custodian.

13. The fact that a Document is in the possession of Plaintiff States, or is produced by another Person, does not relieve the Company of the obligation to produce all of the Company's copies of the same Document, even if the Company's copies are identical in all respects to a Document produced or held by another Person.

14. If any Document is withheld based on an objection to any request, all Documents responsive to that request but not subject to the objection must be produced.

15. To the extent the Company contends that responsive Documents in the Company's possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to this request must identify the specific provisions of the protective order or agreement on which the Company is relying and the efforts that the Company has and will undertake to provide notice and obtain consents.

16. Other than redactions of information withheld under a claim of privilege or other legal protection, Documents are to be produced in full. If any requested Document cannot be produced in full, or if the Company withholds production of any Document or portion of any

Document responsive to the requests based upon any privilege or other legal protection, produce it to the extent possible.

17. If the Company is unable to produce a Document that is responsive to a request not due to a claim of privilege or other legal protection, describe the Document, state why it cannot be produced, and, if applicable, state the whereabouts of such Document when it was last in Your possession.

18. Subject to any protocols Concerning privileged Documents applicable to this Litigation, and consistent with Local Civil Rule 26.2, where a claim of privilege or other protection from discovery is asserted in objecting to a request or sub-part thereof, and any Document is withheld (in whole or in part) on the basis of such assertion, the Company shall provide a log ("Privilege Log") in Microsoft Excel format that identifies, where available:

a. the nature of each privilege or protection from discovery that is being claimed;

b. the type of each Document;

c. the length of each Document (in pages);

d. the date of each Document;

e. the author of each Document;

f. the addressees and recipients of each Document (Including copy recipients and blind copy recipients);

g. a description of each Document containing sufficient information to identify the general subject matter of the Document and to enable Requesting States to assess the applicability of the privilege or protection claimed;

h. the identity of and any production Bates number assigned to any attachment(s), enclosure(s), cover letter(s), or cover email(s) of each Document, Including the

information outlined in subsections (a) through (f) above for each such attachment, enclosure, cover letter, or cover email; and

i. attachments, enclosures, cover letters, and cover emails shall be entered separately on the Privilege Log. The Privilege Log shall Include the full name, title, and employer of each author, addressee, and recipient, denoting each attorney with the letters "ESQ.," except that identification of the name and the Company affiliation for each non-Defendant Person shall be sufficient identification. Submit all non-privileged portions of any responsive Document (Including nonprivileged or redactable attachments, enclosures, cover letters, and cover emails) for which a claim of privilege is asserted, noting where redactions to the Documents have been made. When responsive, privileged Documents attached to responsive, non-privileged Documents are withheld from production, insert a placeholder to indicate a Document has been withheld from that family.

19. Any Documents the Company produces must be produced in accordance with the terms of the Amended Protective Order (Dkt. No. 347).

20. In producing videos, for any video publicly available on the Company's website, or published by the Company on any other website (Including YouTube), You may in the alternative submit written permission for Requesting States to download, preserve, and use any such video through the pendency of this Litigation. Should You choose this alternative, in the event Requesting States are unable to download and preserve any such video, You agree to produce a copy of it upon written request.

21. Any reference to a Person that is a business entity and is not otherwise defined Includes: that Person's predecessors (Including any pre-existing Person that at any time became

part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person, directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

**REQUESTS FOR PRODUCTION**

1. All Documents Concerning engagement agreements, contracts, and scope of work Documents between You and the following Persons or their firms: (i) Kellyanne Conway, KAConsulting, LLC, or others employed by KAConsulting, LLC; (ii) William Levi, Sidley Austin LLP, or others employed by Sidley Austin LLP; (iii) Michael Davis, MRDLaw, or others employed by MDR Law; (iv) David Warrington or the Office of the White House Counsel; and (iv) Ariel Emmanuel, WME Group, Endeavor Talent Agency, or others employed by WME Group or Endeavor Talent Agency.

2. All Documents between You and any Settling Plaintiff Concerning the Settlement or any other potential resolution of a claim or potential claim brought, or could have been brought, in the Amended Complaint in this action, Including negotiations Concerning the Settlement or resolution. This request Includes, without limitation, all Communications identified or referenced in the Defendants' Description of Communications and Certification of Compliance Pursuant to 12 U.S.C. § 16(g) that You filed in this action (Dkt. 1534), Including but not limited to any counterproposal provided by the United States in January 2026. Your response should also Include Communications between You and any Settling Plaintiff.

3. All Documents and data, Including without limitation, all agendas, minutes, meeting materials, recordings and/or transcripts, provided to Your executive officers or Boards of Directors Concerning (1) the Settlement; (2) any other potential resolution of a claim or potential claim brought in the Amended Complaint, or (3) the engagement, work, or outcome obtained by any Person identified in Request 1.

4. All Documents and data Concerning the analysis, design, development, functionality, feasibility, schedule, performance metrics, criteria, justification, and expected competitive impact of the "open distribution and ticket authentication system" and open ticketing provisions described in Section IV of the Settlement, Including, without limitation, all Documents and data Concerning: (1) control or maintenance of back-end functions when venues allocate ticket inventory to third-party marketplaces, and any plans Concerning that control or maintenance; (2) the determination of whether any ticketer or third party marketplace is an "Eligible Primary Ticketing Services Provider"; (3) the calculation, imposition, or determination of any pass-through costs associated with the "Ticketmaster Back-End"; and (4) any limits, conditions, or percentage caps governing ticket allocations or open distribution under Section IV of the Settlement.

5. Documents and data sufficient to explain how the following functions are performed by the back-end distribution and ticket authentication system currently used by Ticketmaster, Including the number and identity of employees responsible for maintaining the system:

a. Population of the system with venue, event, and ticket data;

b. Ticket validation, transfer, and secure rendering;

c. Data collection and storage, Including the data storage capacity and utilization within the current system;

d. Integration with third party distributors or ticketing partners, Including any ability for the system to integrate or interface with the back-end distribution and ticket authentication systems of any other primary ticketing providers.

6. All Documents and data, Including without limitation analyses, assessments, modeling, forecasts, presentations, or reports, evaluating or discussing Your understanding of the functionality or characteristics of back-end ticket distribution and authentication systems used by other primary ticketers in the United States.

7. All Documents and data Concerning the selection of the "Divestiture Venues" listed in Section V.A of the Settlement, Including without limitation the criteria used for this selection, the justification for the use of these criteria, and the expected impact of Section V(a) of the Settlement.

8. All Documents Concerning the determination of whether an agreement constitutes a Preferred Booking Agreement, as used in Section V.B of the Settlement.

9. All Documents Concerning Nondiscriminatory Calendar Procedures referenced in Section V.C of the Settlement, Including but not limited to guidance to Your employees on how to implement any such procedures and any consequences or discipline for violation of those procedures.

10. All Documents Concerning the Anti-Conditioning, Anti-Retaliation, Anti-Content Steering, and similar provisions referenced in Section VI of the Settlement, Including but not limited to guidance to Your employees on how to implement any such provisions, how the

provisions' implementation may be monitored, and any consequences or discipline for violation of those provisions.

11. All Documents Concerning the Firewalls referenced in Section VII of the Settlement, Including but not limited to any guidance to Firewall Employees.

12. All Documents Concerning the Artist Transparency provisions referenced in Section IX of the Settlement, Including but not limited to guidance for Your employees on how to implement any such provisions and any consequences or discipline for violation of those provisions.

13. All Documents Concerning the selection of the individual Monitor described in Section XI of the Settlement.

14. All Documents Concerning the circumstances under which Defendants would be considered to control event booking at any Divestiture Venue, as that term is used in Section XV of the Settlement.

15. All Documents and data Including without limitation analyses, assessments, modeling, forecasts, presentations, or reports evaluating or discussing the expected competitive impact, adequacy, clarity, enforceability, feasibility, or anticipated effects of any provision included in the Settlement, Including without limitation all Documents and data addressing:

a. How these provisions sufficiently resolve the claims addressed in the Settlement, Including the anticipated effects of the provisions Concerning open distribution and ticket authentication, open ticketing, exclusivity exceptions, partial non-exclusive allocations, amphitheater ticketing provisions, and anti-retaliation/anti-conditioning/anti-content-steering obligations; and

b. Any effects the Settlement could have on competition in the Relevant Markets, Including without limitation market concentration, barriers to entry, marketplace dynamics, or rival ticketers or promoters.

16. All Documents and data, Including without limitation, analyses, assessments, drafts, models, proposals, presentations, or Communications Concerning any alternative remedies that were considered, proposed, evaluated, modeled, or discussed in connection with resolving the claims addressed by the Settlement. This request Includes without limitation:

a. All Documents Concerning expected competitive impact, adequacy, clarity, enforceability, feasibility, risks, or implementation challenges associated with the proposed resolution or any other potential resolution of a claim or potential claim brought in the Amended Complaint in this action (Dkt. 257).

b. All Documents Concerning effects that the proposed resolution or any other potential resolution of a claim or potential claim brought in the Amended Complaint could have on competition, concentration, barriers to entry, marketplace dynamics, rival ticketers or promoters, or the competitive conditions of any of the Relevant Markets; and

c. All Documents Concerning consideration of any alternative to part or all of the Settlement, Including whether to accept, reject, propose to modify, or not pursue such alternative(s).

17. For the time periods: (i) January 1, 2021 through December 31, 2025, and (ii) January 1, 2026 through December 31, 2026, each database or dataset Including crosswalks or other supplemental data previously provided in response to Specification 2 pursuant to Civil Investigative Demand No. 31186 issued on October 11, 2022, or in response to Plaintiffs'

Request for Production 65(c) issued on August 7, 2024 Concerning the Company's overall and financial reporting segment profit and loss statements and profit and loss statements for each Live Nation Amphitheater that is a Major Concert Venue.

Dated: August 6, 2026

By: */s/ Aric J. Smith*
Aric J. Smith (admitted *pro hac vice*)
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Aric.Smith@coag.gov
Email: Conor.May@coag.gov
*Attorneys for Plaintiff State of Colorado*

*/s/ Robert A. Bernheim*
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

*/s/ Brent Nakamura*
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

*/s/ Rose Levine*
Rose Levine (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: rose.levine@ct.gov
*Attorney for Plaintiff State of Connecticut*

*/s/ Adam Gitlin*
Adam Gitlin (admitted *pro hac vice*)

Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Schonette J. Walker
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ Jonathan H. Hatch
Jonathan H. Hatch
Assistant Attorney General

Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted pro hac vice)
Assistant Deputy Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
Attorney for Plaintiff State of South Carolina

*/s/ David C. Smith*
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us

*Attorney for Plaintiff Commonwealth of Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

/s/ Douglas L. Davis
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

/s/ Caitlin M. Madden
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*