# EXHIBIT B

**Requesting States' Letter Motion To Compel Discovery**

**Sep. 24, 2026**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES, *et al.*,<br>*Plaintiffs*,<br>v.<br>LIVE NATION ENTERTAINMENT, INC.<br>and<br>TICKETMASTER L.L.C.<br>*Defendants.* | Case No. 1:24-cv-03973 (AS)(SLC) |

**REQUESTING STATES' FIRST SET OF INTERROGATORIES TO DEFENDANTS LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER L.L.C.**

Plaintiff States of Arizona, California, Colorado, Connecticut, Illinois, Maryland, Michigan, Minnesota, Nevada, New York, North Carolina, Oregon, Rhode Island, South Carolina, Washington, Wisconsin, and West Virginia, the Commonwealths of Massachusetts, Pennsylvania, and Virginia, and the District of Columbia, acting by and through their respective Attorneys General (collectively, "Requesting States"), hereby serve these Interrogatories on Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C. (collectively "Defendants").[1] Please deliver responses and any requested Documents or materials in loadable,

[1] Plaintiff States of Arizona, California, Colorado, Connecticut, Illinois, Maryland, Michigan, New York, North Carolina, Wisconsin, and Washington, the Commonwealths of Massachusetts and Virginia, and the District of Columbia join in serving all foregoing interrogatories. Plaintiff States of Minnesota, Nevada, Oregon, Rhode Island, South Carolina, and West Virginia, and the Commonwealth of Pennsylvania, join in serving Interrogatories 4 – 17.

executable files to the offices of the Washington State Office of the Attorney General, 800 Fifth Ave. Ste 2000, Seattle, WA 98104-3188, care of Tracy Jacoby.

## DEFINITIONS

1. The term "**Amended Complaint**" refers to the Second Amended Complaint in this action (Dkt. 257) filed on August 30, 2024.

2. The terms "**and**" and "**or**" have both conjunctive and disjunctive meanings as necessary to bring within the scope of this request anything that might otherwise be outside its scope. The terms "**each**," "**any**," and "**all**" mean "each and every." The singular form of a noun or pronoun Includes its plural form, and vice versa; and the present tense of any word Includes the past tense, and vice versa.

3. The term "**Artist**" refers to a musician, band, comedian, or any other type of entertainer who may performs at a Live Entertainment Event.

4. In accordance with Local Civil Rule 26.3(c)(5), the terms "**Company**," "**You**," and "**Live Nation**" are abbreviated names or pronouns referring to Live Nation Entertainment, Inc., and their officers, directors, employees, current and former board members, partners, counsel, lobbyists, advisors, representatives or other Persons that You have at any point authorized to act on Your behalf or participate in negotiations or discussions concerning the Settlement or any other potential resolution of a claim or potential claim brought in the Amended Complaint, corporate parents, subsidiaries, Including Ticketmaster, L.L.C., or affiliates.

5. The term "**Communication**" means any message, conversation, discussion, letter, email, memorandum, meeting, note, text message, or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall Include any Document that abstracts, digests, transcribes, records or reflects any of the

foregoing. This Includes, but is not limited to, emails, SMS and MMS messages, internal chat software such as Jabber, Slack (direct messages and channels), Signal, Telegram, and WhatsApp.

6. The term "C**oncerning**" means in whole or in part addressing, analyzing, constituting, containing, describing, discussing, identifying, mentioning, reflecting, referring to, dealing with, pertaining to, reporting on, stating, or in any way logically or factually connected with the matter.

7. The term "**Document**" shall be given the broadest meaning pursuant to Federal Rule of Civil Procedure 34, and Includes all written, printed or Electronically Stored Information of whatever nature, however and wherever created, produced or stored, manually, mechanically, electronically or otherwise, Including without limitation, information stored on social media accounts like Twitter or Facebook and Documents contained in Collaborative Work Environments and other Document databases. "Document" Includes all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, chats, text messages, Blackberry or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, Including transcripts or summaries generated by an AI Tool, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, Communications and input to an AI Tool in all forms and media (Including prompts, queries, instructions and data), Communications and output from an AI Tool in all forms and media, press releases, contracts, agreements, notices and summaries. Any non-identical version of a

Document constitutes a separate Document within this definition, Including without limitation, drafts or copies bearing any notation, edit, comment, track changes, marginalia, underscoring, highlighting, marking, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents. In the case of Documents containing a non-publicly accessible link, all non-publicly accessible underlying linked Documents must also be preserved.

8. "**Electronically Stored Information**" or "**ESI**" refers to any information, Document, or data found on a computer or other device capable of storing electronic data, where such data is capable of being manipulated as an entry. "Electronically Stored Information" also Includes all non-public information that can be accessed using any hyperlink that appears in any Document submitted in response to this request, if the information that can be accessed using the hyperlink is in Your possession, custody, or control. Devices capable of storing Electronically Stored Information Include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and any other forms of online or offline storage, whether on or off Company premises.

9. The terms "**Including**" or "**Includes**" means Including, but not limited to.

10. The term "**Litigation**" means this action, *State of New York et al. v. Live Nation Entertainment, Inc. et al.*, No. 1:24-cv-03973, and *United States et al v. Live Nation, Inc. et al.*, No. 1:24-cv-03973, in the United States District Court for the Southern District of New York.

11. The term "**Live Entertainment Event**" means any musical concert, family show, comedy show, theatric performance, sporting event, or other type of live performance.

12. The term "**Open Distribution**" means the ability of a content rights holder to distribute tickets to a third party other than through one exclusive primary ticketer, Including, for example, consolidators, brokers, consigners, or other ticketing marketplaces.

13. The term "**Person**" means any natural person, proprietorship, corporation, company, partnership, trust, joint venture, group, association, organization, government entity, legal entity, or other entity.

14. The term "**Primary Ticketing Services**" means the provision of services to a Venue for the initial (or primary) sale or distribution of tickets for Live Entertainment Events, underlying technology, and related business support functions.

15. The term "**Relevant Marke**t" means the markets found by the jury in this Litigation to constitute relevant antitrust markets.

16. The term "**Settlement**" means any agreement between a Plaintiff in this action and Live Nation to resolve the claim brought in this action. The term "Settlement" Includes the Proposed Final Judgment filed in this action (Dkt. No. 1523-2). Any reference to a numbered section refers to the corresponding section of the Proposed Final Judgment.

17. The term "**Venue**" means any club, theater, arena, amphitheater, festival site, stadium, or other permanent or temporary structure or location where a Live Entertainment Event is held.

**INSTRUCTIONS**

1. In addition to the specific instructions set forth below, these interrogatories incorporate the instructions set forth in Federal Rules of Civil Procedure 26 and 33, the Local Civil Rules, and the CMO.

2. Unless otherwise specified, these interrogatories seek responsive information during the period from January 1, 2015, to the present.

3. These interrogatories are continuing in nature, and your duty to supplement your responses to these interrogatories pursuant to Federal Rule of Civil Procedure 26(e) is ongoing. Plaintiffs specifically reserve the right to seek supplementary responses before trial.

4. These interrogatories require you to furnish all information as is available from the Defendants themselves or from sources under their control, Including but not limited to information from parents, subsidiaries, agents, or representatives (Including attorneys).

5. If you object to any portion of the interrogatory, answer all remaining portions of the interrogatory to which you do not object.

6. If you withhold responsive information because of a claim of privilege or any other legal protection, respond to the extent possible and provide a description that will enable Plaintiffs to assess the claim.

7. The use of a verb in any tense Includes the past, present, and future.

8. The use of the singular form of any word Includes the plural and vice versa.

**INTERROGATORIES**

1. Describe in detail all steps You have taken to preserve Documents in accordance with the Court's Order of August 28, 2024 (Dkt. No. 249), Including but not limited to all steps You have taken to preserve Communications via SMS and MMS messages, internal chat software such as Jabber, Slack (direct messages and channels), Signal, Telegram, and WhatsApp, the identities of all Persons who received any notice to preserve any Communications, and the dates on which Communications Concerning such notice occurred.

2. Identify all Persons Including without limitation Your counsel, lobbyists, advisors, representatives or other Persons that You have at any point authorized to act on Your behalf or participate in negotiations or discussions Concerning the Settlement or any other potential resolution of a claim or potential claim brought in the Amended Complaint, Including their name, employer and title, phone number, address, email, and role in such negotiations or discussions.

3. Identify and describe all Communications between You (Including without limitation Your counsel, lobbyists, advisors, representatives, consultants, agents, directors, officers, employees, or any other Persons authorized to act on Your behalf or participate in negotiations or discussions) and any officer or employee of the United States (Including DOJ, the Antitrust Division, the Office of the Attorney General, the Office of the Deputy Attorney General, the President, the White House, and the Office of the White House Counsel) Concerning the negotiation, discussion, development, revision, execution, finalization, or disclosure of any proposed Settlement, Term Sheet, or Proposed Final Judgment in this matter. For each such Communication, Your response should state:

a. The date of the Communication;
b. The medium (specifically indicating whether it was an in-person meeting, videoconference, telephone call, or written Communication);
c. All participants/attendees (Including name, title, employer, and role in the Communication);
d. All Settlement-related subjects discussed;
e. Documents exchanged; and
f. Commitments made.

4. For each remedy in the Settlement, state Your interpretation of:

a. The scope of Your obligation;

b. Its intended effect(s) on competitive conditions in the Relevant Markets;

c. Factors that could affect whether the remedy has the effect(s) you identified in response to (b) above;

d. Whether Your obligation is clear or ambiguous;

e. How compliance with Your obligation will be assured; and

f. How your compliance would sufficiently resolve the claims alleged in Amended Complaint.

5. Identify and describe in detail the process, criteria, personnel, and decision-making steps involved in designing, evaluating, or approving the "open distribution and ticket authentication system" described in the Settlement. Your response should Include the name and position of each Person who contributed to the design, evaluation, or approval of the "open distribution and ticket authentication system," and the nature of their contribution. Your response should also Include the rationale for:

a. Ticketmaster's continued control of back-end functions;

b. The limits or conditions imposed on Open Distribution;

c. Determinations of "Eligible" providers Including without limitation the requirement that Eligible Primary Ticketing Services Providers be an "established ongoing" primary-ticketing businesses; and

d. Cost pass-through provisions.

6. Explain how any ticketer or third party marketplace, Including any new entrant, would qualify as an Eligible Provider under Section IV. With respect to new entrants, describe

the findings, risks, feasibility, and impacts identified, and state whether You conducted any analysis, modeling, simulation, or feasibility testing of such entry. Describe the results of any analysis, modeling, simulation or feasibility testing that was conducted, and when it was initiated.

7. Identify and describe any and all uses of data by Ticketmaster that will be permitted under the Settlement as being "in connection with the performance of services by Ticketmaster Back-End."

8. Identify the factors or considerations that influenced the selection of 20% as the portion of fee-bearing tickets that Venues must be permitted to sell or distribute through Eligible Primary Ticketing Service Providers in Section IV of the Settlement.

9. Identify and describe the back-end distribution and ticket authentication systems currently used by Ticketmaster. Your response should Include explanations of the following, and any differences between how these operations are performed in the current system and how they will be performed in the "open distribution and ticket authentication system" proposed in Section IV of the Settlement:

a. How the system is populated with venue, event, and ticket data;

b. How ticket validation, transfer, and secure rendering are performed;

c. How third party distributors interface with the current Ticketmaster system, Including any criteria or requirements they must meet in order to interface with the system;

d. How data collected through the system is currently stored;

e. The frequency of transactions on the current system.

10. Identify and describe the resources required to build and maintain the back-end distribution and ticket authentication systems currently used by Ticketmaster, Including without

limitation the staff required to maintain and operate the system, the amount of time required to build the system, and the capital expenditures to develop, maintain, and operate the system.

11. Identify and describe each request You have received for third party integration or interoperability with Ticketmaster's current ticketing software for purposes of providing Primary Ticketing Services, and Your response to any such requests, Including any functionality or features developed in response to such requests.

12. Identify and describe in detail the process, criteria, personnel, and decision-making steps involved in selecting the 13 Divestiture Venues in section V of the Settlement. Explain why each Venue was selected, how divestiture of booking/control rights is expected to remedy anticompetitive effects, and whether alternative Venue sets or stronger forms of divestiture were considered.

13. Describe any changes in Your relationship with any Divestiture Venue in the Settlement since December 31, 2024, Including without limitation any change in whether You owned, operated, or had a preferred booking agreement with each Divestiture Venue, and the date of any such change.

14. Explain how the Nondiscriminatory Calendar Procedures were developed, what competitive problems they are expected to address, and how their effectiveness will be monitored. Identify Persons consulted in crafting these procedures and the Persons who will monitor the effectiveness of the procedures.

15. Explain how the Anti-Conditioning, Anti-Retaliation, Anti-Content Steering, and similar provisions were developed, what competitive problems they are expected to address, and how their effectiveness will be monitored. Identify all Persons consulted in crafting these provisions and the Persons who will monitor the effectiveness of the provisions.

16. Explain how the Artist Transparency provisions were developed, what competitive problems they are expected to address, and how their effectiveness will be monitored. Identify Persons consulted in crafting these provisions and the Persons who will monitor the effectiveness of the provisions.

17. Identify and describe in detail the process, criteria, personnel, and decision-making steps involved in the decision to reappoint the monitor used in prior consent decrees (2010, 2020). Describe all reasons for the reappointment and all assessments made regarding the monitor's past effectiveness or limitations.

Dated: August 6, 2026

By: /s/ Aric J. Smith
Aric J. Smith (admitted *pro hac vice*)
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Aric.Smith@coag.gov
Email: Conor.May@coag.gov
*Attorneys for Plaintiff State of Colorado*

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Brent Nakamura
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

*/s/ Rose Levine*
Rose Levine (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: rose.levine@ct.gov
*Attorney for Plaintiff State of Connecticut*

*/s/ Adam Gitlin*
Adam Gitlin (admitted *pro hac vice*)
Chief, Antitrust and Nonprofit Enforcement Section
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

*/s/ Richard S. Schultz*
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

*/s/ Schonette J. Walker*
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

*/s/ Katherine W. Krems*
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

*/s/ LeAnn D. Scott*
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

*/s/ Zach Biesanz*
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

*/s/ Lucas J. Tucker*

Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

*/s/ Jonathan H. Hatch*
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

*/s/ Francisco Benzoni*
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

*/s/ Gina Ko*
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted pro hac vice)
Assistant Deputy Attorney General
Office of the Attorney General of South Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov

Attorney for Plaintiff State of South Carolina

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

/s/ Douglas L. Davis
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

/s/ Caitlin M. Madden
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*