# EXHIBIT C

**Requesting States' Letter Motion To Compel Discovery**

**Sep. 24, 2026**

SULLIVAN & CROMWELL LLP

TELEPHONE: 1-310-712-6600
FACSIMILE: 1-310-712-8800
WWW.SULLCROM.COM

1888 Century Park East
Los Angeles, California 90067-1725

NEW YORK • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

August 28, 2026

Via E-mail

Re: *United States and Plaintiff States* v. *Live Nation Entertainment, Inc.*

Counsel,

We write regarding the Requesting States' proposed first set of requests for production ("RFPs") and interrogatories ("Interrogatories"), dated August 6, 2026 (together, the "Requests"). Defendants have reviewed the Requests carefully and, as explained below, are prepared to provide substantial information about the operation, enforceability, or potential competitive effects of the Proposed Final Judgment ("PFJ"), as outlined in the manner set forth in this letter.

## I. General Objections

*First*, the Court directed the Requesting States to prepare "narrow and targeted requests for information" concerning the United States' settlement with Defendants. It cautioned that requests for Tunney discovery "are cognizable within reasonable bounds." Order, ECF 1578 (Aug. 4, 2026). Yet the Requests, by their terms, seek all documents and data concerning "the expected competitive impact, adequacy, clarity, enforceability, feasibility, or anticipated effects of any provision included in the Settlement"; "all agendas, minutes, meeting materials, recordings and/or transcripts, provided" to Live Nation's executives and board members; Live Nation's engagements with outside advisors and consultants; communications concerning Defendants' separate settlements with States to which the Tunney Act does not apply; a detailed account of Live Nation's document-preservation efforts; historical financial datasets extending beyond the venues subject to the divestiture provisions, including data for a period that has not yet closed; and a continuing obligation to supplement through the remedies trial. RFPs 2, 3, 15, 17; Interrogatory 1; Definition 16. These Requests far exceed the proper inquiry that the Tunney Act contemplates, and the "reasonable bounds" described in the Court's August 4 Order.

*Second*, many Requests are not necessary, let alone helpful, to evaluate the operation, enforceability, or potential competitive effects of the PFJ—the questions that bear on whether the PFJ falls "within the reaches of the public interest." *United States* v. *Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995). The Court has before it the full record of a five-week trial in

which the Requesting States participated as plaintiffs, and for which they took more than a year of pretrial discovery. The Court also has the PFJ, the Competitive Impact Statement, the public comments and the United States' response to those comments. These materials constitute the foundational record for Tunney Act review.

*Third*, Live Nation is prepared to answer the Requesting States' operational questions in order to avoid Court intervention. While reserving all rights and objections with respect to the Requests in the event of a dispute requiring Court intervention, we offer the following proposal, which includes targeted written narrative responses, a knowledgeable witness on defined topics and, where appropriate and subject to agreement on appropriate scope, targeted documents sufficient to show current or final facts regarding implementation of the settlement.

## II. Requests Relating to the Settlement Process

Certain of the Requests—RFPs 1, 2, 3, 7, and 16, and Interrogatories 1, 2, 3, 5, 12, 14, 15, 16, and 17—seek discovery into the process that produced the PFJ. This is generally outside the scope of the Tunney Act. *Microsoft Corp.*, 56 F.3d at 1459 ("[T]he district court is not empowered to review the actions or behavior of the Department of Justice; the court is only authorized to review the decree itself."). The Requesting States rely on *United States* v. *Hewlett Packard Enterprise Co.*, 826 F. Supp. 3d 1175 (N.D. Cal. 2025), to argue that certain discovery related to the settlement process "may shed further light on the apparent inadequacy of the PFJ" or aid in the determination of whether "the United States is entitled to any deference as part of the Court's public interest analysis." Letter, ECF 1558, at 2-3 (July 16, 2026). But that decision arose in materially different circumstances. There, the parties settled before any trial and the intervening state attorneys general had not been co-plaintiffs and had no discovery record of their own. Here, by contrast, the Requesting States litigated as plaintiffs through more than a year of pretrial discovery and a full trial on the merits.

More to the point, even in *Hewlett Packard*, the court rejected a free-ranging inquiry into the settlement process that the Requesting States urge here. The court permitted process discovery only "primarily to the extent that process bears upon the adequacy of the proposed judgment," and held that requests "targeted solely at the Department of Justice's internal decision-making process" without a connection to adequacy "would likely be improper." *Hewlett Packard Enterprise Co.*, 826 F. Supp. 3d at 1180-82. The court further held that broader concerns about lobbying or political influence "fall largely outside the scope of the Tunney Act," *id.* at 1181, and cannot justify rejecting a decree absent a connection to its "adequacy or competitive effect," *United States* v. *Hewlett Packard Enterprise Co.*, 2026 WL 2349970, at *16 (N.D. Cal. Aug. 12, 2026).

The Requesting States do not explain how the terms on which Live Nation retained an advisor, the materials its board reviewed, or the identity of each person who participated in a negotiation bears upon whether the PFJ adequately addresses the conduct at issue in the Complaint. If the Requesting States believe particular process-related information bears on the adequacy of a portion of the PFJ, we ask that they identify the specific provision, and the asserted deficiency, and explain why it cannot be resolved by reference to the Competitive Impact Statement, the public comments and the United States' responses, Defendants' filing under 15 U.S.C. § 16(g) (ECF 1534), the trial record, or the discovery Live Nation is offering below. In the meet and confer

process, Requesting States have advanced the theory that such discovery is appropriate because they "don't know what [they] don't know." This is simply inconsistent with the Court's order and with the scope of the relevant inquiry under the Tunney Act.

***Preservation of Documents (Interrogatory 1).*** The States' First Interrogatory seeks a detailed account of every step Live Nation and Ticketmaster have taken to preserve documents since August 2024. The States do not explain how our preservation practices bear on the adequacy or competitive effect of the PFJ, or could otherwise aid the Court's public-interest determination. Live Nation will not respond to Interrogatory 1.

***Advisor engagements and board materials (RFPs 1 and 3).*** These Requests seek the commercial terms on which Live Nation retained counsel, consultants, and other advisors, and the materials its executives and directors reviewed concerning a potential resolution. Neither category speaks to how the PFJ will operate or whether it will restore competition. Much of what these Requests seek would also be privileged or work product, and any production would require a privilege review disproportionate to a proceeding in which the operative record is already before the Court. Live Nation will not produce documents responsive to RFPs 1 and 3.

***Communications with the settling States (RFP 2).*** The Tunney Act governs the Court's review of the *United States*' proposed consent judgment. The agreements Defendants reached with Arkansas, Iowa, Mississippi, Nebraska, Oklahoma, and South Dakota are separate settlements not subject to any Tunney Act process. Similarly, a defendant's 16(g) disclosure obligation runs to communications with officers or employees of "the United States," which "plainly denotes only the Executive Branch" of the federal government. *Massachusetts* v. *Microsoft Corp.*, 373 F.3d 1199, 1250 (D.C. Cir. 2004). The States' Requests, and any corresponding definitions, should be limited to the proposed settlement with the United States. Live Nation will not produce documents responsive to RFP 2.

***Negotiation participants and communications (Interrogatories 2 and 3).*** Live Nation has identified communications with officers and employees of the United States concerning the PFJ in its filing under 15 U.S.C. § 16(g) (ECF 1534), which is much more comprehensive than is typical. Contact details for, and communications with, Live Nation's advisors do not bear on the adequacy of the PFJ, and appear to be designed to generate a list of potential third-party discovery targets, an objective that the Court appropriately treated as "presumptively disproportionate" in the HPE matter. Hr'g Tr., *United States* v. *Hewlett Packard Enter. Co.*, No. 5:25-cv-00951, Dkt. No. 412 at 11:6-8 (N.D. Cal. Mar. 6, 2026). Live Nation will not respond to Interrogatories 2 and 3.

## III. Requests Generally Relating to the Proposed Final Judgment

***Competitive effects and operation of the judgment (RFP 15).*** RFP 15 seeks by its terms every "analys[i]s, assessment[], modeling, forecast[], presentation[], or report[]" evaluating the "competitive impact, adequacy, clarity, enforceability, feasibility, or anticipated effects" of any provision of the settlement. RFP 15 seeks information about Live Nation's internal evaluation of the settlement, rather than information about how the remedies are expected to function. The Request is untethered to any particular PFJ provision and also overlaps substantially with the provision-specific Requests addressed below. To the extent the RFP seeks to discover generally

how the PFJ is expected to work in practice, a witness can answer that question more directly than a document production. Live Nation is therefore willing to offer a witness to address, as to identified provisions of the PFJ: (i) the steps Defendants will take to implement the provision; (ii) how the provision will operate once implemented; (iii) the timeline for implementation; and (iv) how compliance will be monitored and reported. Live Nation is also prepared to produce a narrative response addressing these matters. We invite further meet and confer with the Requesting States to find a mutually acceptable scope for this deposition and narrative response.

***Alternative remedies and interpretation of the judgment (RFP 16 and Interrogatory 4).*** RFP 16 seeks all documents concerning any alternative remedy "considered, proposed, evaluated, modeled, or discussed," including whether to "accept, reject, propose to modify, or not pursue" each alternative. While that request may capture operational and compliance information, it would also capture legal opinions and confidential materials and attorney work product prepared for purposes of settlement. Under the Tunney Act, the Competitive Impact Statement must describe and evaluate "alternatives to such proposal **actually considered by the United States**," 15 U.S.C. § 16(b)(6) (emphasis added). The United States has provided that description. By contrast, the Tunney Act does not authorize general discovery into "alternative remedies" considered by Live Nation, or anyone else. A Live Nation witness can testify about the logic of the PFJ, including alternatives considered and discussed with the United States, without revealing privileged discussions or work product, and Live Nation is willing to meet and confer on the scope of that deposition.

Similarly, Interrogatory 4 asks Defendants to state, for every remedy, the scope of its obligations, the intended competitive effects, whether the obligation is "clear or ambiguous," and how its compliance "would sufficiently resolve the claims alleged in [the] Amended Complaint." Such contention-style questions are improper and should be withdrawn. To the extent the Requesting States seek to understand what the PFJ's provisions require of Defendants in practice, the proposed witness to be offered will address that subject and Live Nation can prepare a narrative response.

## IV. Requests Relating to Ticketing and Open Distribution

Live Nation is prepared to offer a witness to testify about the functionality and feasibility of the contemplated open distribution and ticketing systems, as described below.

***Open distribution and ticket authentication system (RFP 4 and Interrogatories 5-8).*** RFP 4 is much broader than is necessary to inform the Court's determination of whether this component of the PFJ serves the public interest. Interrogatories 5-8, while addressing relevant subject matter at least in part, nevertheless are also overly broad in scope (for example, Interrogatory 8 requests information on the process that resulted in components of Section IV). Live Nation will offer a witness familiar with the operation of Section IV to address its provisions and pertinent subjects sought by these Requests, such as functionality, eligibility and data collection and usage.

***Current back-end distribution and ticket authentication systems (RFP 5 and Interrogatories 9-10).*** The comprehensive production of technical documentation and other competitively sensitive information extends beyond what could reasonably be considered relevant

to determining the adequacy of the PFJ. A production of that scope further would invite a *de novo* reassessment of a remedy the United States has evaluated, which is beyond the Tunney Act's public interest inquiry. Live Nation is instead prepared to produce narrative responses regarding the current operation of Ticketmaster's distribution and ticketing systems, their preparedness for open distribution, and the technical feasibility of interoperability, and will prepare a witness to address these systems.

***Assessment of competitors' systems (RFP 6).*** RFP 6 seeks competitive analyses unrelated to the public interest determination the Court is required to undertake. It seeks broad swathes of documents and data reflecting competitive assessments, which would be an unprecedented request in the realm of Tunney Act discovery. Live Nation will not produce documents responsive to this request.

## V. Requests Relating to Divestiture Venues

***Selection of the Divestiture Venues (RFP 7 and Interrogatory 12).*** These Requests seek the criteria, personnel, and decision-making steps involved in selecting the thirteen venues to be divested, and the justification for the criteria used. General discovery into how Live Nation arrived at different elements of the proposed remedy, rather than how the proposed remedy is expected to work, is outside the realm of Tunney Act discovery other than as to the matters previously discussed. As we discussed during our telephonic conference, the United States' Competitive Impact Statement is the statutorily provided source of information concerning the rationale for the remedy sought. Live Nation will not produce documents responsive to RFP 7, nor respond to Interrogatory 12.

***Operation of the divestiture provisions (RFPs 8 and 14; Interrogatory 13).*** These Requests address pertinent subject matter, but are overbroad. Live Nation is willing to prepare a narrative describing Live Nation's current ownership, operations, and booking rights at each of the thirteen venues.

## VI. Requests Relating to Calendar Procedures, Firewall, Anti-Steering, Artist Transparency, and Monitor Provisions

***Documents concerning the provisions (RFPs 9-12).*** A production of the breadth these Requests contemplate is not necessary to understand how the provisions will operate or be enforced. As noted, Live Nation is prepared to offer a witness and narrative responses to address how these provisions are expected to operate, how compliance will be implemented and monitored, and the consequences of noncompliance. To the extent the Requesting States seek the operative requirements themselves, we can produce the final, non-privileged policies issued to implement an identified provision.

***Development and monitoring of the provisions (Interrogatories 14-16).*** The development history of a provision and the personnel involved go to how the remedy was negotiated, not how it will function. The remaining subjects—what competitive problems the provisions are expected to address and how their effectiveness will be monitored—are addressed by the witness offered.

***Monitor (RFP 13 and Interrogatory 17).*** These requests improperly target the process by which monitors were selected under the PFJ and in the past, rather than the operation or efficacy of Section XI of the PFJ. The PFJ and Competitive Impact Statement describe Defendants' obligations to the Monitor, the Monitor's powers and access, and the manner in which the monitoring provisions will operate. Live Nation therefore will not produce documents responsive to RFP 13, nor will it respond to Interrogatory 17. Should the Requesting States have particular questions on the operation of Section XI that are not addressed by the terms of the PFJ or the Competitive Impact Statement, a targeted written narrative can address Live Nation's obligations to the Monitor, the Monitor's powers and access, and the operation of the monitoring provisions.

**VII. Requests Relating to Financials**

***Financial datasets and amphitheater financials (RFP 17).*** RFP 17 identifies no provision of the PFJ to which the requested financial information relates. It seeks profit-and-loss data "for each Live Nation Amphitheater that is a Major Concert Venue," extending beyond the thirteen venues subject to the divestiture provisions, and for a period that has not yet closed. Live Nation therefore will not produce documents responsive to this request. If the Requesting States believe particular financial information bears on a specific provision of the PFJ, Defendants ask that they identify the provision and the information sought.

* * *

The proposed discovery outlined above should allow the parties to resolve the Requesting States' requests without Court intervention. Defendants remain willing to meet and confer again to discuss these items. Finally, we note that any agreed-upon discovery would be subject further to agreed parameters governing scope, timing, cutoff dates, and applicable privilege protection. These proposals are offered to facilitate the resolution of the Requesting States' proposed Tunney Act discovery; Defendants otherwise reserve all rights and objections.

*[signatures on following page]*

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ David Marriott*
David R. Marriott
*Co-Lead Trial Counsel*
Alfred C. Pfeiffer (admitted *pro hac vice*)
*Co-Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

**SULLIVAN & CROMWELL LLP**

*/s/ Adam S. Paris*
Adam S. Paris
1888 Century Park East
Los Angeles, CA 90067
Telephone: (310) 712-6600
Fax: (310) 712-8800
Email: parisa@sullcrom.com

Kyle W. Mach (admitted *pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
Telephone: (650) 461-5600
Fax: (650) 461-5700
Email: machk@sullcrom.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*