# EXHIBIT D

**Requesting States' Letter Motion To Compel Discovery**

**Sep. 24, 2026**

**PHIL WEISER**
Attorney General

**NATALIE HANLON LEH**
Chief Deputy Attorney General

**SHANNON STEVENSON**
Solicitor General

**STATE OF COLORADO**
**DEPARTMENT OF LAW**

**RALPH L. CARR**
**COLORADO JUDICIAL CENTER**
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

**Consumer Protection Section**

September 2, 2026

**VIA EMAIL**

Adam Paris, Esq.
Sullivan & Cromwell LLP
1888 Century Park East
Los Angeles, CA 90067-1725
parisa@sullcrom.com

**Re: *United States et al. v. Live Nation Entm't et al.*, No. 1:24-cv-03973-AS (S.D.N.Y) – Tunney Act Discovery**

Dear Adam,

We write in response to Defendants' August 28, 2026 letter, following the parties' August 20, 2026 meet and confer, regarding the Requesting States' First Set of Requests for Production of Documents ("RFPs") and First Set of Interrogatories ("Interrogatories") about issues related to the Proposed Final Judgment between the United States and Defendants. We believe that the Requesting States and Defendants may be able to reach agreement on some of these requests, but the proposal in Defendants' August 28 letter is not adequate to meet Defendants' obligations. Below, we outline certain proposals to try to reach an agreement where possible. We request a prompt second meet and confer to finalize the parties' positions on these requests.

## GENERAL OBJECTIONS

At the outset, we address Defendants' purported general objections. First, Defendants note that the Court has ordered that the Requesting States' requests be within "reasonable bounds." 8.28.2026 Ltr. at 1. The Requesting States' requests *are* within reasonable bounds, specifically targeted to (i) whether the provisions in the Proposed Final Judgment will be effective and (ii) alternatives considered by the United States. These are issues explicitly contemplated by the Tunney Act. *See* 15 U.S.C. § 16(e)(1). Defendants have not articulated any particular burdens associated with any particular requests.

Second, Defendants appear to view the trial record, the Proposed Final Judgment, and the United States' Competitive Impact Statement (as well as public comments and responses) as sufficient to allow the Court to conduct a full review of the Proposed Final Judgment. 8.28.2026 Ltr. at 1–2. They are not. As Defendants know, the trial (and pretrial discovery) was focused on issues concerning liability, and did not address the Proposed Final Judgment at all (which did not exist until after the trial had commenced). And the Requesting States' requests are targeted at issues that are unaddressed in the Proposed Final Judgment and the Competitive Impact Statement. Public comments, while also important, similarly cannot address issues that turn on nonpublic policies or practices by Defendants.

Third, Defendants' position that requests related to the settlement process are "generally outside the scope of the Tunney Act" is not valid . 8.28.2026 Ltr. at 2. Contrary to Defendants' position that *United States v. Hewlett Packard Enterprise Co.* arose in "materially different circumstances," the similarities between *Hewlett Packard* and this matter are striking. In both, political actors outside of the Department of Justice were involved in negotiating the settlement. In both, some of the same individuals were retained by defendants to negotiate a settlement with the United States. In both, it appears that the Department of Justice's standard procedures for resolving cases may have been abandoned. And in both, there is reason to question whether the United States has fully disclosed all alternatives considered. These factors' influence on the content of the Proposed Final Judgment (and its ability to increase competition in the relevant markets) are appropriate matters for discovery. *See United States v. Hewlett Packard Enter. Co.*, No. 25-cv-00951-PCF, 2026 WL 2349970, at *15 (N.D. Cal. Aug. 12, 2026) (finding that lack of disclosure "limited the public's ability to evaluate the settlement's merit and the process that resulted in the settlement," resulting in potential prejudice cured only by States' intervention and discovery).[1] The fact that the Requesting States were co-plaintiffs here is of no moment; as noted above, the trial did not focus on the Proposed Final Judgment (or any remedies), and the Requesting States were not even made aware of the contents of the Proposed Final Judgment before it was announced.

[1] *See also id.* at *16 ("A district court reviewing a proposed settlement is not limited to the harms articulated in the complaint. While the reviewing court should focus primarily on the relevant market alleged in the United States's complaint … the Act also "suggests that a court may, and perhaps should, look beyond the strict relationship between complaint and remedy in evaluating the public interest … .") (citations omitted); *United States v. Hewlett Packard Enterprise Co.*, 826 F. Supp. 3d 1175, 1182 (N.D. Cal. 2025) ("To the extent the states seek discovery regarding communications between the United States and defendants, those communications are also reasonably likely to bear upon the adequacy of the proposed judgment. … They may, for example, reveal the parties' contemporaneous positions regarding the judgment's effect on competition within the relevant market and otherwise. If the communications reveal that the parties did not believe the judgment would address the underlying reduction in competition or that the judgment was entered for reasons entirely unrelated to the merits, that would provide some evidence as to the judgment's inadequacy.")

## SPECIFIC REQUESTS

We note that Defendants do not identify any specific burdens associated with any of the requests. Nonetheless, in the interests of resolution, and without prejudice to our ability to seek any relevant discovery, we address the specific objections raised by Defendants below.

### RFPs No. 1 & 3 (Advisor engagements and board materials)

RFP No. 1 calls for the details of Defendants' retention of agents with roles in connection with the settlement. As noted above, communications between the United States and Defendants are relevant to understanding the adequacy of the Proposed Final Judgment and its competitive effects; these documents are necessary to understand the authority and role of individuals involved in those communications.

RFP No. 3 calls for board presentations materials. These materials are likely limited in number; capable of targeted collection; and are likely to contain the substance of the terms presented to the United States, relevant alternative proposals, and Defendants' evaluation of the competitive impact of the Proposed Final Judgment. And as parties to the Proposed Final Judgment, Defendants, like DOJ, are reasonably likely to have information about whether it will actually improve competition in the market.

As a potential compromise, and without conceding the validity of Defendants' objections, if Defendants agree to provide a full response to RFP No. 3, the Requesting States will withdraw RFP No. 1.

### RFP No. 2 (Communications regarding negotiation of the Proposed Final Judgment)

Based on Defendants' letter, we understand Defendants' specific objection to RFP No. 2 is to providing communications with other States. 8.28.2026 Ltr. at 3. These communications are relevant, in part because the Proposed Final Judgment includes relief for State signatories, including relief to which the United States alone would not be entitled. For the sake of a broader compromise, however, the Requesting States are willing to limit this request to communications with the United States only. Please confirm that Defendants will produce all responsive documents involving communications with the United States.

### RFPs No. 4–6 and Interrogatories Nos. 5–10 (Open distribution and ticket authentication systems / back-end systems)

These RFPs and interrogatories are focused on the provisions of the Proposed Final Judgment related to the proposed open distribution of a certain percentage of tickets in some contracts between Ticketmaster and Major Concert Venues. As Defendants note, the information about the open distribution and ticket authentication systems is "relevant subject matter." 8.28.2026 Ltr. at 4. Similarly, although Defendants argue that the

Requesting States' requests about back-end distribution are overbroad, these requests are equally targeted at a provision of the Proposed Final Judgment. Given that this distribution system (including the proposed back-end) is one of the key terms of the Proposed Final Judgment related to the ticketing market, the Requesting States disagree that RFPs No. 4 & 5 are overly broad, and relevant responsive documents should be produced. Similarly, the Requesting States disagree that RFP No. 6 is unrelated to the Court's determination; this request appropriately bears on whether the Proposed Final Judgment's requirement that Ticketmaster control all back-end systems is reasonably necessary. The Requesting States are willing to discuss the most efficient way to collect a targeted set of documents responsive to each request for production and review. To the extent no responsive documents exist, Defendants should provide a written representation to that effect. In the interest of compromise, the Requesting States are also willing to consider withdrawing RFP No. 6, if sufficient information responsive to RFPs No. 4–5 can be produced.

The Requesting States also disagree that these Interrogatories are overly broad but are willing to consider the production of a witness in lieu of written responses. We request that Defendants provide further detail about the witness or witnesses they would produce.

**RFP Nos. 7 & 17 and Interrogatory No. 12 (Selection of Divestiture Venues / financial information regarding Large Amphitheaters)**

RFP No. 7 and Interrogatory No. 12 seek further information about how the 13 identified "Divestiture Venues" were selected for inclusion in the Proposed Final Judgment (as opposed to other Large Amphitheaters). This is relevant to understanding whether the cancellation of exclusive booking arrangements with these specific venues is likely to restore competition in the nationwide market for Large Amphitheaters. Although Defendants point to the United States's Competitive Impact Statement as the "statutorily provided source of information" on this issue (8.28.2026 Ltr. at 5), it provides no meaningful detail, necessitating further discovery. The Requesting States intend to proceed with these requests, subject to appropriate guidance from the Court if necessary.

RFP No. 17 is similarly designed to evaluate the likely effectiveness of the proposed cancellation of the booking arrangements on the nationwide market for Large Amphitheaters by determining the financial performance of the selected Divestiture Venues compared to other in-market amphitheaters. If Defendants have a proposal for a more limited production of financial information regarding the Large Amphitheaters than called for by the RFP, the Requesting States are willing to consider it.

**RFP Nos. 8 & 14 and Interrogatory No. 13 (Operation of the divestiture provisions)**

As Defendants note, these address "pertinent subject matter." 8.28.2026 Ltr. at 5. The Requesting States are willing to accept a written narrative in lieu of responses to these requests, subject to their ability to pursue further testimony from an appropriate witness.

**RFP Nos. 9–12 and Interrogatories Nos. 14–16 (Documents concerning other provisions of the Proposed Final Judgment)**

For RFP Nos. 9–12, the Requesting States understand that Defendants are proposing to produce the "final, non-privileged polices issued to implement" each of the provisions addressed in these RFPs, as well as to provide testimony from one or more witnesses and written narratives regarding each request. Please confirm that a final policy related to each request exists and that Defendants are willing to produce it. If so, this proposal is acceptable in principle to the Requesting States, subject to review of the policy/policies.

Interrogatories Nos. 14–16 concern the development of the same subjects. The personnel involved—including any individuals with experience in the relevant markets—matters, because whether the PFJ can reasonably be expected to improve competition will be a function of how informed its drafters were. In the interests of compromise, the Requesting States are willing to limit these interrogatories to a list of personnel involved in developing the policies. Please let us know if this proposal is acceptable to Defendants.

**RFP No. 13 and Interrogatory No. 7 (Selection of the Monitor)**

The performance of the Monitor is critical to whether the Proposed Final Judgment is likely to improve competitive conditions in the relevant markets. Documents and information about the past performance of the Monitor and the considerations leading to the proposed reappointment of the Monitor, including the selection process, are relevant to this determination. The Requesting States intend to proceed with these requests, subject to appropriate guidance from the Court if necessary.

**RFP No. 15 (Competitive effects and operation of the judgment)**

Defendants appear to object to this request on two grounds—that it relates to "Live Nation's internal evaluation of the settlement, rather than information about how the remedies are expected to function," and that the request is overly broad. 8.28.2026 Ltr. at 3–4.

With regard to the first ground, these materials are relevant. Defendants, as parties to the Proposed Final Judgment who were involved in negotiating and crafting its terms, are the best positioned to understand whether and how Defendants expect its provisions to increase competition in the relevant markets. And the fact that some of the materials requested may

also be responsive to other requests is no basis to object to production in response to this request; in some cases the same material may satisfy both.

With regards to any associated burden, the Requesting States are willing to meet and confer to learn about any such burden and discuss how aspects of these requests may be satisfied through witness testimony and a narrative response. To the extent there are discrete sets of documents that can be produced, Defendants should be prepared to discuss an appropriate targeted production prior to such testimony.

**RFP No. 16 and Interrogatory No. 4 (Alternative remedies and interpretation of the judgment)**

The Requesting States are willing to consider a written narrative response and production of a witness or witnesses in lieu of other responses to these requests, and request information about the witness or witnesses Defendants would intend to produce.

**Interrogatory No. 1 (Preservation of documents)**

Interrogatory No. 1 calls for information about steps Defendants undertook to ensure documents related to the Proposed Final Judgment (including ephemeral communications) were preserved. To the extent these communications were related to the Proposed Final Judgment, they are relevant and should have been preserved. But in the interests of compromise, the Requesting States are willing to hold this interrogatory in abeyance until further notice. The Requesting States reserve all rights to pursue this interrogatory further if it appears that there is any reason to believe Defendants failed to preserve relevant documents.

**Interrogatories Nos. 2 & 3 (Negotiation participants and communications)**

Interrogatories Nos. 2 & 3 seek details regarding communications between Defendants and the United States. As noted above, these communications are relevant, as they are reasonably likely to bear on the adequacy of the Proposed Final Judgment. *See Hewlett Packard Enter. Co.*, 826 F. Supp. 3d at 1182. The United States has already disclosed that a number of these communications did not occur in writing (*see* ECF No. 1534 at 3), making further written disclosures all the more important. The Requesting States intend to proceed with these requests, subject to appropriate guidance from the Court if necessary.

**Interrogatory No. 11**

It appears that Defendants have not addressed Interrogatory No. 11 in their August 28, 2026 letter. Please confirm that Defendants intend to respond to this Interrogatory.

* * *

As noted above, the above proposals are made in an attempt to reach agreement without the necessity of guidance from the Court. Further, any agreements reached here are without prejudice to the ability of any Requesting State (or any other Plaintiff State) to seek discovery related to remedies sought by the States in this proceeding.

Please let us know promptly when you are available for a further meet and confer, during which Defendants should be prepared to address the issues outlined above, including details about any proposals Defendants are willing to make to resolve disputed issues. The Requesting States are available on Thursday, Sep. 2 and Friday Sep. 3, or any time after 12:30pm Eastern Time on Tuesday, Sep. 8.

By: *<u>/s/ Conor J. May</u>*

Conor J. May (admitted *pro hac vice*)
Aric Smith (admitted *pro hac vice*)
Assistant Attorneys General, Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
(720) 508-6199
conor.may@coag.gov
aric.smith@coag.gov

*Attorneys for the Plaintiff State of Colorado*