October 1, 2026

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

**Re: *United States et al.* v. *Live Nation Entertainment, Inc., et al.*; 1:24-cv-03973-AS**

Dear Judge Subramanian,

We write in opposition to the Requesting States' motion to compel discovery (the "Motion"). On July 16, 2026, the Requesting States filed a letter motion seeking leave to take broad discovery, from both parties and non-parties, under the Tunney Act. On August 4, 2026, the Court denied this request and instructed the Requesting States to send "narrow and targeted requests for information" to Live Nation for consideration. Two days later, and ignoring the Court's admonition to "make sure their requests are narrow and targeted," the Requesting States sent 17 Requests for Production ("RFPs") and 17 Interrogatories ("Rogs")—many with numerous discrete subparts—seeking full merits-like discovery. Live Nation carefully considered the draft discovery and ultimately proposed a comprehensive discovery package: settlement communications between Live Nation and the U.S. and settlement-related board materials; written narratives describing the negotiation and terms of the PFJ; and testimony from a 30(b)(6) witness and a technical witness. The Requesting States largely accepted Live Nation's discovery proposal.

The disputes that remain concern discovery that goes far beyond a properly scoped Tunney Act proceeding, not a refusal by Live Nation to provide information about the PFJ. Under the Tunney Act, the Court is tasked with a "narrow" public-interest inquiry. *Massachusetts* v. *Microsoft Corp.*, 373 F.3d 1199, 1236 (D.C. Cir. 2004). While one court outside of the Second Circuit has allowed certain discovery into the settlement process, it did so only "to the extent that process bears upon the adequacy of the proposed judgment." *United States* v. *Hewlett Packard Enter. Co.*, 826 F. Supp. 3d 1175, 1181 (N.D. Cal. 2025). What's more, each remaining disputed request seeks information beyond the Court's August 4 Order. Accordingly, and for the reasons that follow, the Court should deny the Motion. The discovery Live Nation has agreed to produce will more than adequately provide both the Requesting States and the Court with the information required to satisfy the Tunney Act inquiry. If the Court wishes to revisit this determination after seeing Live Nation's proposed Tunney discovery, then it may, of course, do so.

## I. Live Nation's Proposed Production Provides Robust Settlement Communications.

In response to RFP 2,[1] and despite the rarity of settlement-process discovery under the Tunney Act, Live Nation agreed to produce all non-privileged written communications exchanged

[1] The header for Section I of the Motion also mentions RFP 1 and Rogs 2-6, but they do not appear in the body of the Motion or the closing request for relief. Live Nation assumes they were added in error.

from July 1, 2025 through June 12, 2026 between Live Nation's lead settlement negotiators and the U.S. related to the Proposed Final Judgment ("PFJ"), except for non-substantive scheduling communications. This discovery is expected to provide a detailed picture of the negotiation of the PFJ. The Motion seeks primarily to (i) extend the responsive time period backwards by five months, through February 1, 2025, and (ii) compel collection of documents from eight additional custodians, none of whom is employed by Live Nation.

With respect to the relevant time period, Live Nation proposed July 1, 2025 because the principal settlement-related communications before that date were mere unrequited requests by Live Nation for engagement by the Department of Justice ("DOJ"). In other words, Live Nation was requesting engagement by the Antitrust Division of the DOJ, but the Division would not meet with Live Nation to discuss settlement until a September 2025 meeting with then Assistant Attorney General Slater. Live Nation's first written settlement offer followed on October 22, 2025.

Live Nation proposed collecting responsive information from the principal Live Nation personnel involved in settlement discussions: Live Nation's Chief Executive Officer and Director, Michael Rapino; President and Chief Financial Officer, Joe Berchtold; and Executive Vice-President for Corporate and Regulatory Affairs, Dan Wall. Given the depth of their engagement, Live Nation's proposed production will provide a detailed record of the negotiations that led to the PFJ. The Requesting States, however, have demanded documents from the eight additional, non-party custodians named in Live Nation's 16(g) filing. Only one of the additional custodians—Live Nation director Richard Grenell—is even affiliated with Live Nation. In requesting the addition of these eight custodians, the Requesting States are attempting to obtain from Live Nation discovery that would, in any other litigation, constitute third-party discovery. This discovery would be unusually burdensome, especially with respect to Live Nation's outside counsel. *See Brunckhorst* v. *Bischoff*, 2023 WL 3090950, at *5 (S.D.N.Y. Apr. 26, 2023) (noting that discovery of attorney records "will almost certainly lead to significant privilege and work product issues" and "distract [counsel] from its role in this litigation"). This burden is especially unwarranted with respect to Live Nation's outside lawyers, William Levi of Sidley Austin LLP, and Mike Davis of MRDLaw, who earlier attempted to engage DOJ but ultimately failed to initiate settlement discussions, and later had minimal involvement in the negotiation of what would ultimately become the PFJ.

Perhaps more importantly, the discovery is unlikely to yield material of any consequence. Searching files of outside counsel for communications with the DOJ would be fruitful only insofar as outside counsel had substantive written communications with the DOJ that were not shared with the Live Nation principals. There are likely few such communications for the simple reason that communications of substance were shared with Live Nation leadership.

Live Nation's proposal with respect to RFP 3 is similar: Live Nation will produce all non-privileged documents presented to the Live Nation Board of Directors related to the negotiation and terms of the PFJ dated from July 1, 2025 to June 12, 2026. The Requesting States likewise seek to extend the responsive window for this request back through February 1, 2025. Simply put, Live Nation expects that there will be few, if any, responsive documents from those additional months because the PFJ was not in active negotiation at that time. The additional burden that Live Nation would have to incur searching its records for potentially responsive documents, and screening them for privilege, is disproportionate to the needs of the Tunney Act.

## II. Live Nation's Discovery Will Provide Information Regarding the Divestiture Venues.

RFPs 7 and 17, and Rog 12 seek information regarding the selection of the venues at which Live Nation is required to give up exclusive booking rights under Section V of the PFJ ("Divestiture Venues"). This is an unusual demand because representatives for many of the Requesting States actively participated in the meetings with the DOJ that led to the selection of the Divestiture Venues, as well as the later unsuccessful settlement negotiations with the Requesting States. They were thus fully aware of the substance of those negotiations, including the fact that the Divestiture Venues were selected because they were allegedly controlled by Live Nation through exclusive booking agreements. While the Requesting States may disagree with that selection rationale, they already understand how the Divestiture Venues were selected.

Live Nation's production of settlement communications with the U.S. will show how the final set of Divestiture Venues evolved throughout negotiations. Live Nation has further agreed to provide two narrative descriptions, one regarding the substantive negotiations that led to the final PFJ and one regarding Live Nation's ownership, operating and booking rights at each Divestiture Venue. Finally, Live Nation will provide a 30(b)(6) witness to testify to, among other things, the selection of the Divestiture Venues. The Requesting States have failed to show why this proposal is insufficient.

RFP 17, which seeks financial reporting for Live Nation and each Major Concert Venue, is particularly inapt in the Tunney Act context. This request is a refresh of merits discovery, seeking databases produced in response to a CID and a merits RFP. Moreover, amphitheater-specific financials would not satisfy the Requesting States' stated need to establish the financial performance of the selected venues compared to other in-market amphitheaters.

## III. Live Nation Has Agreed to Produce Final Non-Privileged Implementation Policies.

To satisfy RFPs 9-12, Live Nation and the Requesting States have agreed in principle that Live Nation will produce all final, non-privileged implementation policies, along with a written narrative response addressing the operation of these procedures. However, because these policies are not yet final, the Requesting States seek production of all documents concerning these policies, including unfinished drafts and internal deliberation, which are irrelevant to the Court's public-interest inquiry. We respectfully submit that the Court should address the production schedule rather than order Live Nation to produce drafts. Live Nation confirms that each policy is in progress, and we anticipate being able to make a production by December 1, 2026.

## IV. Live Nation's Proposed Discovery Will Address the Appointment of the Monitor.

RFP 13 and Rog 17 seek all documents concerning the selection of the monitor and a detailed narrative description of the process, personnel involved, and decision-making steps concerning the same. This is another issue that was discussed at length in the unsuccessful settlement negotiations with the Requesting States. First, it was Live Nation's preference to appoint the same monitor who has been working with the company since 2020 and has a deep understanding of the live entertainment business as a result. The Requesting States may have wanted a monitor of their choosing, but they cannot claim ignorance as to why the monitor was chosen by the settling parties. Second, these requests are superfluous in light of Live Nation's

discovery proposal. The production of communications related to the PFJ will show how the monitor selection term evolved throughout negotiations. Moreover, to the extent the Requesting States have any remaining questions related to the monitor's appointment, they will have the opportunity to elicit testimony from Live Nation's 30(b)(6) witness on that topic. Given the scope of Live Nation's proposed discovery, these requests would likely add little factual information to the Court's Tunney analysis, but would significantly increase Live Nation's discovery burden.

* * *

Live Nation's proposed discovery package provides the States and the Court with more than enough information to inform the Court's limited public-interest determination. We respectfully request that the Court deny the Motion in full and grant further discovery only to the extent the Requesting States, after reviewing Live Nation's discovery package, make a specific showing that further discovery is warranted for the purposes of the Tunney Act.

*[signatures on following page]*

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ *David R. Marriott*
David R. Marriott
*Lead Trial Counsel*
Timothy L. O'Mara (admitted *pro hac vice*)
Jennifer L. Giordano
Andrew M. Gass (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

David.Marriott@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

SULLIVAN & CROMWELL LLP

/s/ *Adam S. Paris*
Adam S. Paris
1888 Century Park East
Los Angeles, CA 90067
Telephone: (310) 712-6600
Fax: (310) 712-8800
Email: parisa@sullcrom.com

Kyle W. Mach (admitted *pro hac vice*)
550 Hamilton Avenue
Palo Alto, CA 94301
Telephone: (650) 461-5600
Fax: (650) 461-5700
Email: machk@sullcrom.com

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

cc: All counsel of record (via ECF)