# EXHIBIT A

25-2703-cv
*Ringgold, et al. v. EssilorLuxottica S.A., et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of October, two thousand twenty-six.

PRESENT: DEBRA ANN LIVINGSTON,
SARAH A. L. MERRIAM,
MATTHEW A. SCHWARTZ,
*Circuit Judges.*

---

PAMELA RINGGOLD, ANTOINE ACOSTA, ANTHONY PERSUITTI, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

MONET JONAS, BRAD HOAG, JARRED RISTAU, REBECCA FROEHLICH, TARA FOSTER, FREDERICK ROZO, ISHA FATHMATH, PETER BROWN, ALAN PETERSON, MAUREEN SCHMIDT, KELLY BROWN, SALLY A. JAROSZYNSKI, JENNY JELTES, MICHELLE MORGAN, on behalf of themselves and all other similarly situated,

*Plaintiffs*,

v. 25-2703-cv

ESSILORLUXOTTICA S.A., ESSILOR INTERNATIONAL SAS, ESSILORLUXOTTICA USA INC., LUXOTTICA U.S. HOLDINGS CORP., LUXOTTICA OF AMERICA, INC., ESSILOR OF AMERICA, INC., ESSILOR LABORATORIES OF AMERICA, INC., ESSILORLUXOTTICA AMERICA SAS, LUXOTTICA GROUP S.P.A.,

*Defendants-Appellees*,

ESSILOR DOCTOR ALLIANCES CORPORATION, EOA HOLDING CO., ESSILOR OF AMERICA HOLDING COMPANY, INC., FRAMES FOR AMERICA, INC, COSTA DEL MAR, INC., OAKLEY, INC., VISION SOURCE, ESSILOR LABORATORIES OF AMERICA HOLDING CO., EYEMED VISION CARE L.L.C., VISION SOURCE, LLC, GRANDVISION BV, FOR EYES OPTICAL COMPANY, INC.,

*Defendants*.*

---

FOR PLAINTIFFS-APPELLANTS: RICHARD M. PAUL III (Laura C. Fellows, *on the brief*), Paul LLP, Kansas City, MO

FOR DEFENDANTS-APPELLEES: MELISSA ARBUS SHERRY (Christopher S. Yates, Belinda S. Lee, Ashley Bauer, Alicia R. Jovais, Latham & Watkins LLP, San Francisco, CA, *on the brief*), Latham & Watkins LLP, Washington, DC

* The Clerk of Court is respectfully directed to amend the caption as reflected above.

Appeal from the September 26, 2025, order of dismissal[1] of the United States District Court for the Southern District of New York (Vyskocil, *J.*).

**UPON DUE CONSIDERATION,** the order of the District Court is **AFFIRMED**.

Plaintiffs-appellants Pamela Ringgold, Antoine Acosta, and Anthony Persuitti (collectively, "plaintiffs") appeal from the District Court's dismissal of their amended putative class action complaint brought against defendants-appellees EssilorLuxottica S.A.; Luxottica Group S.p.A.; Essilor International S.A.S.; EssilorLuxottica America SAS; EssilorLuxottica USA Inc.; Essilor of America, Inc.; Essilor Laboratories of America, Inc.; and Luxottica of America, Inc. (collectively, "EssilorLuxottica").

Plaintiffs brought this action alleging that EssilorLuxottica violated the Sherman Act, 15 U.S.C. §1 and §2, and the Clayton Act, 15 U.S.C. §26, as well as the antitrust and consumer protection laws of numerous states.[2] *See* Joint App'x at 383-90. The District Court dismissed the federal antitrust claims on the ground that the Amended Complaint did not adequately "allege a plausible market definition." *In re Eyewear Antitrust Litig.*, No. 1:24CV04826(MKV), 2025 WL 2773064, at *12 (S.D.N.Y. Sep. 26, 2025). The District Court then declined to exercise supplemental jurisdiction over the state law claims, resulting in dismissal of the Amended Complaint in its entirety, without prejudice.

[1] Although all claims in the District Court have been dismissed or resolved, judgment has not entered, and the case remains pending on the Southern District of New York docket. Accordingly, we treat this appeal as an appeal of the order of dismissal.

[2] In the District Court two sets of plaintiffs filed separate putative class action complaints: the "Direct Purchasers" and the "Indirect Purchasers." *See In re Eyewear Antitrust Litig.*, No. 1:24CV04826(MKV), 2025 WL 2773064, at *1 (S.D.N.Y. Sep. 26, 2025). Only the Indirect Purchasers are appellants here.

*See id.* at *8 n.3. Plaintiffs declined to further amend their complaint and instead filed this appeal. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

"We review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 75 (2d Cir. 2025). "At this stage of the proceedings, we accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Id.* (citation modified).

## I. Federal Law Claims

As plaintiffs acknowledge, "[t]he crux of this appeal is whether [plaintiffs] plausibly alleged a relevant product market." Reply Br. at 3. They did not.

### A. Applicable Law

"[I]n order to survive a motion to dismiss, it is appropriate for a district court to assess whether the plaintiffs' complaint asserts sufficient facts to allege plausibly the existence of both a product and geographic market." *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016).[3]

"Our Court defines the relevant market as all products reasonably interchangeable by consumers for the same purposes." *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 (2d Cir. 2024) (citation modified). To adequately allege a relevant market, the complaint must "present a plausible basis for explaining why" the distinctions

[3] Here, only the product market is at issue.

it draws between participants and non-participants in the market make an actual difference to consumers. *See Concord Assocs.*, 817 F.3d at 54. "[M]erely asserting that a commodity is in some way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market." *Id.* (citation modified).

Furthermore, "[a] relevant product market consists of products that have reasonable interchangeability for the purposes for which they are produced – price, use and qualities considered." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (citation modified); *see also Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 237-38 (2d Cir. 2008). In other words, the relevant market must *include* only those products that are reasonably interchangeable and must *exclude* only those products that are meaningfully distinguishable from a consumer's perspective. *See PepsiCo*, 315 F.3d at 105 ("Products will be considered to be reasonably interchangeable if consumers treat them as acceptable substitutes." (citation modified)).

"Reasonable interchangeability sketches the boundaries of a market, but there may also be cognizable submarkets which themselves constitute the appropriate market for antitrust analysis." *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 496 (2d Cir. 2004). When a plaintiff alleges a "submarket," the submarket must itself constitute a product market for antitrust purposes. *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 64 (2d Cir. 2019). In this way, "[t]he term 'submarket' is somewhat of a misnomer [because] the 'submarket' analysis simply clarifies whether two products are in fact 'reasonable' substitutes and are therefore part of the same market."

*Geneva Pharms.*, 386 F.3d at 496.

**B. Discussion**

In the Amended Complaint, plaintiffs define the relevant market as the "Premium Eyewear Market" ("PEM"). Joint App'x at 358. Plaintiffs assert that the PEM includes three submarkets: Premium Prescription Lenses, Premium Sunglasses, and Premium Spectacle Frames. *See id.* at 358-59. When considering either the broader PEM or its purported submarkets, we conclude that plaintiffs fail to adequately allege a plausible relevant market.

**1. The "Premium Eyewear Market"**

Plaintiffs define the PEM as the retail market for "Premium Eyewear," as opposed to "non-premium, or value focused," eyewear. Joint App'x at 358. Plaintiffs allege that the PEM "distinguishes itself from the non-premium eyewear market because Premium Eyewear is meant to be high-end and constitute desirable fashion accessories that enable self-expression and enhance self-confidence as opposed to solely being a functional purchase." *Id.* at 359-60 (citation modified).

The PEM, as defined in the Amended Complaint, is not a plausible product market because the PEM does not include reasonably interchangeable products. Rather, the PEM, as defined in the Amended Complaint, is a market composed of "premium" eyewear products – prescription lenses, prescription sunglasses, non-prescription sunglasses, and frames. Plaintiffs concede, as they must, that "Premium Sunglasses, Premium Spectacle Frames, and Premium Lenses are not direct substitutes." Appellants' Br. at 27. Plaintiffs therefore have not "plead[ed] facts plausibly showing that [these]

products should be considered part of [a] distinct antitrust market[].” *Regeneron Pharms.*, 96 F.4th at 339. Because the PEM is overly inclusive, it does not itself qualify as a cognizable product market.

**2. The Three Purported Submarkets**

Plaintiffs also allege that the PEM includes three submarkets: (1) Premium Prescription Lenses, (2) Premium Sunglasses, and (3) Premium Spectacle Frames. *See* Joint App’x at 358-59.

*First*, the PEM includes “Premium Prescription Lenses” as a purported submarket. *Id.* at 359. But plaintiffs provide no explanation as to what makes “premium” lenses different from non-premium lenses.[4] Rather, premium lenses are simply those “manufactured and inserted into a spectacle frame, whether premium or not, to provide vision correction.” *Id.* This definition fails to show how the market for premium prescription lenses is any different from the larger market for all prescription lenses. *Cf. Chapman*, 546 F.3d at 238. Nor do plaintiffs explain why a consumer seeking to express herself or enhance her self-confidence – the key factor purportedly differentiating the

[4] At oral argument, plaintiffs for the first time argued that the Premium Prescription Lenses submarket includes *all* prescription lenses. This is by no means clear in the Amended Complaint, which consistently uses the “Premium” label to describe this submarket. *See, e.g.*, Joint App’x at 359. Plaintiffs’ new argument is further contradicted by their allegation that the “Premium Prescription Lenses” submarket is part of the broader PEM, which distinguishes itself from the non-premium eyewear market because it is “high-end.” *Id.* Plaintiffs cannot redefine the relevant market at oral argument. *See United States v. Barnes*, 158 F.3d 662, 672 (2d Cir. 1998) (“Normally, we will not consider arguments raised for the first time in a reply brief, let alone at or after oral argument.” (citation modified)).

premium market from the value market – would choose "premium" lenses.[5] Even accepting the factual allegations as true, the Amended Complaint fails to state a plausible market for premium lenses.

*Second*, the PEM includes a purported submarket of "Premium Sunglasses." Joint App'x at 358-59. Plaintiffs allege that this submarket includes "both plano and prescription lenses." *Id.* at 359. In the next sentence, however, plaintiffs state that "Premium Sunglasses" are *not* designed "to provide vision correction." *Id.* Plaintiffs offer no explanation as to how non-prescription sunglasses, not designed for vision correction, are in the same relevant market as prescription sunglasses. That is fatal to their claims. In the absence of nonconclusory allegations supporting the inference that the products within the alleged Premium Sunglasses submarket are interchangeable, this submarket is not a cognizable market.

*Third* is the proposed submarket of "Premium Spectacle Frames." *Id.* at 358. Though common sense suggests this could indeed be a cognizable market, the Amended Complaint does not plausibly allege such a market. Plaintiffs do not meaningfully differentiate the premium market from the value market or identify any concrete parameters defining such a market. Instead, plaintiffs appear to cherry-pick favorable brands into their alleged market without any "plausible explanation as to why [the] market should be [so] limited." *Regeneron Pharms.*, 96 F.4th at 338 (citation modified).

---

[5] Plaintiffs allege in the Amended Complaint that a consumer would not substitute premium *prescription* lenses with *non-prescription* lenses, but they do not allege that a consumer would not substitute *non-premium* prescription lenses for *premium* prescription lenses. *See* Joint App'x at 359.

As the District Court observed, plaintiffs do not distinguish their proposed market based on price; indeed, they place frames at identical price points in separate markets, putting EssilorLuxottica's frames in the Premium Spectacle Frames market, but frames at the same price-point from other sellers in the non-premium market. *See In re Eyewear Antitrust Litig.*, 2025 WL 2773064, at *12. In the absence of a plausible explanation, this defeats any argument of "a substantial gap in pricing indicative of separate markets." *Geneva Pharms.*, 386 F.3d at 497.

Similarly, plaintiffs fail to offer any nonconclusory allegations or "present a plausible basis for explaining why" Premium Spectacle Frames are distinct from non-Premium Spectacle Frames in terms of consumer preference. *Concord Assocs.*, 817 F.3d at 54; *see In re Eyewear Antitrust Litig.*, 2025 WL 2773064, at *12. To the contrary, plaintiffs expressly allege that consumers do in fact substitute "Premium Spectacle Frames" for non-premium frames; the Amended Complaint asserts that customers of a large *discount* eyewear chain "may upgrade to designer eyeglass frames like Ray-Ban." Joint App'x at 362 (citation modified). That same eyewear chain is described in the Amended Complaint as operating in "the value segment of the eyewear market," which is alleged to be "wholly separate from the" PEM – but it carries Ray-Ban frames, a brand asserted to be "premium." *Id.* at 361, 363, 362. This is illustrative of the substantial overlap between the purported premium and non-premium markets, which further renders

the market definition implausible.[6]

For these reasons, we conclude, as did the District Court, that the Amended Complaint fails to allege a plausible relevant market.

## II. <u>State Law Claims</u>

On appeal, plaintiffs contend that the District Court erred by declining to exercise supplemental jurisdiction over their state law claims because the District Court had jurisdiction under the Class Action Fairness Act ("CAFA"). We agree that the District Court should have evaluated whether jurisdiction was proper under CAFA. Any error by the District Court in its dismissal of the state law claims is harmless, however, because the state law claims fail in tandem with the federal law claims. Plaintiffs "do not dispute this." Reply Br. at 22 n.11.

Accordingly, because the Amended Complaint fails to adequately state any claim under the federal statutes cited, the state law claims likewise fail.

## III. <u>Order to File Consolidated Amended Complaint</u>

Plaintiffs contend that the District Court erred in ordering them to file a single consolidated amended complaint with the Direct Purchasers. That order, however, is not appealable, because plaintiffs expressly declined to further amend their complaint, rendering the order moot. *See* Letter, *In re Eyewear Antitrust Litig.*, No. 1:24CV04826(MKV) (S.D.N.Y. Oct. 17, 2025), Doc. #252 at 1. Plaintiffs' notice

---

[6] It is entirely possible that a plaintiff could plausibly allege a product market consisting of "luxury" or "premium" eyeglass frames. We hold only that plaintiffs failed to do so in the Amended Complaint.

indicating that they would not amend the complaint further did not state that their decision was in any way related to the requirement that the complaint be consolidated with the Direct Purchasers. *See id.* Furthermore, the Direct Purchasers notified the District Court – and these plaintiffs-appellants – that they were dismissing all of their claims, with prejudice, *before* these plaintiffs filed their letter disclaiming an intent to amend. *See* Stipulation of Voluntary Dismissal, *In re Eyewear Antitrust Litig.*, No. 1:24CV04826(MKV) (S.D.N.Y. Oct. 17, 2025), Doc. #251.[7] Plaintiffs cannot point to any harm they suffered as a result of the order, nor can they point to any relief they sought from the District Court on this issue that was denied. Accordingly, we do not consider this argument further.

* * *

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, the judgment dismissing plaintiffs' federal claims is **AFFIRMED**. The judgment dismissing plaintiffs' state law claims without prejudice for lack of subject matter jurisdiction is **MODIFIED** to dismiss the action with prejudice under Rule 12(b)(6), for failure to state a claim, and is **AFFIRMED**. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (modifying dismissal under Rule 12(b)(1) to dismissal under Rule 12(b)(6) where "a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion"); *In re Seganti*, 153 F.4th 272, 280 (2d Cir.

[7] The Direct Purchasers filed their initial stipulation of dismissal on October 17, 2025. Because of a deficiency with that filing, they subsequently filed a corrected stipulation on October 24, 2025. *See* Stipulation of Voluntary Dismissal, *In re Eyewear Antitrust Litig.*, No. 1:24CV04826(MKV) (S.D.N.Y. Oct. 24, 2025), Doc. #254.

2025) ("[W]e have expressly exercised [the] authority to modify a judgment of dismissal for lack of jurisdiction into a dismissal under Federal Rule of Civil Procedure 12(b)(6) with prejudice.").

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

